UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN WESLEY ROUTH,

    Defendant.
_____/

## DEFENDANT RYAN ROUTH'S MOTION TO RECUSE
## THE HONORABLE JUDGE AILEEN M. CANNON

    The Defendant in this case, Ryan Wesley Routh, respectfully moves Your Honor to recuse herself from this case, pursuant to the Due Process Clause and the federal recusal statute, 28 U.S.C. § 455. This motion is warranted due to the unique facts and circumstances of this case, and this Court's relationship to the alleged victim. Recusal by Your Honor is essential to preserve the appearance of impartiality.

    Mr. Routh stands accused of attempting to assassinate Donald J. Trump. He faces up to life in prison. This case has already attracted significant media attention. It will continue to do so, and this Court's rulings are likely to face intense public scrutiny. This motion presumes that this Court would preside over this case impartially. However, given the heightened stakes and the public scrutiny, there should not be any doubts about even the *appearance* of impartiality of the presiding judge.

Although Mr. Trump is the alleged victim here, he previously served as President of the United States. While in office, he nominated Your Honor to her current position as a U.S. District Judge on the Southern District of Florida. Your Honor thus owes her lifetime appointment to the alleged victim in this criminal case.

After Mr. Trump left office, he was charged in this District with 40 felony counts relating to his retention of classified documents. Your Honor recently presided over that criminal case, and ultimately dismissed the case against Mr. Trump.

Mr. Trump is the current Republican candidate for President in next month's election. On the campaign trail, he has repeatedly praised Your Honor for her rulings in his case. As the alleged victim here, he has a significant stake in the outcome of this case too. Were he to become President in the future, he would have authority to nominate Your Honor to a federal judgeship on a higher court were a vacancy to arise.

Taken together, these unprecedented facts and circumstances might create an appearance of partiality in the mind of the public. Accordingly, the Constitution and the federal recusal statute require Your Honor to recuse herself from this case.

## LEGAL STANDARDS

"It is axiomatic that 'a fair trial in a fair tribunal is basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955) (brackets omitted). Thus, "[t]he Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, justice must satisfy the appearance of justice.'" *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986) (quoting *In re Murchison*, 349 U.S. at 136 (additional quotation marks omitted).

This foundational principle is also codified in the federal recusal statute. As relevant here, 28 U.S.C. § 455(a) provides that "[a]ny . . . judge . . . of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." Under § 455(a), "a judge is under an affirmative, self-enforcing obligation to recuse [herself] *sua sponte* whenever the proper grounds exist." *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989); *accord United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir. 1989) (stating that a "district judge has the initial responsibility to recuse [herself] from a case). However, where the judge does not recuse *sua sponte*, "[a] party may move for the recusal of a judge under 28 U.S.C. § 455." *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013).

The Supreme Court has explained that the "very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 (1988); *see id*. at 860 (same). As the federal Judiciary's "'catchall' recusal provision," "what matters [for purposes of § 455(a)] is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal [i]s required whenever 'impartiality might reasonably be questioned.'" *Liteky v. United States*, 510 U.S. 540, 548 (1994) (quoting § 455(a)). "This overriding concern with appearances, as opposed to the existence in fact of any bias or prejudice, stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980); *see Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the Fifth Circuit handed down before October 1, 1981).

In accordance with § 455(a)'s text—mandating recusal whenever a judge's impartiality "might be *reasonably* be questioned"—recusal is evaluated on an "*objective* basis." *Liteky*, 510

3

U.S. at 548. In other words, § 455(a) "deals with the *objective appearance* of partiality," rendering the judge's "subjective" bias or knowledge "irrelevant." *Id*. at 553 n.2. Specifically, § 455(a) requires recusal where "an objective, disinterested, lay observer fully informed of the facts underlying the ground on which recusal [i]s sought would entertain a significant doubt about the judge's impartiality." *United States v. Curtin*, 78 F.4th 1299, 1310 (11th Cir. 2023) (quotation omitted).

Importantly, the Eleventh Circuit has repeatedly stressed that "'any doubts must be resolved in favor of recusal.'" *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (quoting *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003)). This too follows from the text of the recusal statute. In addition to the use of the word "shall," making recusal mandatory, "[t]he use of '*might reasonably be questioned*' in section 455(a) clearly mandates that it would be preferable for a judge to err on the side of caution and disqualify [herself] in a questionable case." *Potashnick*, 609 F.2d at 1112. Indeed, the language of § 455(a) was specifically designed to "eliminate the so-called 'duty to sit'" that had governed the previous recusal statute. *Id*.; *see Kelly*, 888 F.2d at 744 ("Section 455 does away with the old 'duty to sit' doctrine and requires judges to resolve any doubts they may have in favor of disqualification.").

The reason for this change, adopted back in 1974, was as follows: "the disqualification of a judge in any given case does not cause the delay or inconvenience which resulted in prior times. The growing number of federal judges, and the availability of rapid transportation to move those judges from place to place when necessary, make the decision to disqualify much less burdensome on the judicial system than in times past; any inconvenience which does arise is more than outweighed by the need to protect the dignity and integrity of the judicial process." *Potashnick*, 609 F.2d at 1112.

This pragmatic rationale applies with particular force here, where recusal is sought at the outset of the case—before the judge has expended any resources—and where the case is brought in a District with numerous other capable judges who are available to preside over the case without *any* possible appearance of partiality. *Cf. Bolin v. Story*, 225 F.3d 1234, 1238 (11th Cir. 2000) ("Under th[e] 'rule of necessity,' a judge is not disqualified due to a personal interest if there is no other judge available to hear the case," and this rule is "generally invoked in cases in which no judge *in the country* is capable of hearing the case.") (emphasis added).

**GROUNDS FOR DISQUALIFICATION**

"Recusal decisions under § 455(a) are extremely fact driven and must be judged on their unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *Moody*, 755 F.3d at 895 (quotation omitted). If any case illustrates the wisdom of that proposition, it is this one. The facts and circumstances of this case are *sui generis*. The specific grounds for recusal are set out below. The simple act of reassigning the case to another judge would vitiate them all.

    **A.    The alleged victim appointed Your Honor to the bench.**

As an initial matter, it is a historical fact that, while serving as the 45th President of the United States, Mr. Trump nominated Your Honor to her current judgeship in May 2020. By itself, this fact is by no means disqualifying. After all, federal judges and justices routinely preside over cases involving the President that nominated them. Indeed, the oath they take requires them to set aside any personal loyalty they might feel towards the President who appointed them. *See* 28 U.S.C. § 453.

At the same time, this dynamic must still factor into the recusal analysis. The reason "is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." *Liljeberg*, 486 U.S. at 864. Unlike judges and members of the legal profession, the public may not grasp that a judge is obligated to set aside any feelings of personal loyalty or gratitude. Indeed, members of the public may question whether doing so is even possible. So when a judge is presiding over a case involving the very President who appointed her, members of the public may suspect that the judge will wish to "return the favor."

In this case, that concern is particularly salient. Normally, a federal judge may be required to resolve a dispute involving an official policy, regulation, or program developed by the current

President's Administration. This case, however, involves no official policy, regulation, or program at all. Rather, a former President is involved in this case in a purely personal capacity as the alleged victim of a crime—and an assassination attempt no less. In the mind of the public, this visceral context may make it even more difficult for a judge to set aside personal feelings of loyalty or gratitude for the President that bestowed on her a lifetime appointment to the bench.

Finally, the unprecedented nature of this scenario militates in favor of recusal. Indeed, it is unclear whether this scenario—*i.e.*, a federal judge presiding over a criminal case where the very President who appointed her is the alleged victim of a violent crime—has ever occurred in the history of this country. At the very least, that the alleged victim in this criminal case appointed Your Honor to her current position is a factor that can and should be considered alongside the other factors discussed below.

### B. Mr. Trump has publicly praised this Court for its rulings.

While Mr. Trump is the alleged victim in this criminal case, this Court has previously presided over cases in which he was a civil plaintiff and a criminal defendant. During those cases, this Court issued some rulings that were favorable to Mr. Trump. One of the rulings was stayed and then vacated on appeal. *See Trump v. United States*, 54 F.4th 689 (11th Cir. 2022); *Trump v. United States*, 2022 WL 4366684 (11th Cir. 2022). Other rulings were characterized by some in the media as unorthodox. And, in July, this Court dismissed the criminal case against Mr. Trump in its entirety. That ruling is now the subject of an appeal in 11th Cir. No. 24-12311.  Compounding the potential appearance of partiality, Mr. Trump himself has positively invoked and repeatedly praised this Court in public for its rulings in his case.

While this Court had little control over how Mr. Trump responded to its rulings, Mr. Trump's social media page immediately invoked this Court's dismissal ruling as support for dismissing several other legal proceedings against him, including the federal criminal case brought by the Special Counsel in the District of Columba. *See* Donald J. Trump, Truth Social (July 15, 2024) ("this dismissal of the Lawless Indictment in Florida should be just the first step, followed quickly by the dismissal of ALL the Witch Hunts—The January 6th Hoax in Washington, D.C."). Mr. Trump's immediate invocation of the Court's dismissal ruling may have made it difficult for the public to disentangle this Court's ruling from Mr. Trump's political campaign.

A few days later, Mr. Trump praised this Court's ruling and Your Honor by name during his acceptance speech at the Republican National Convention—viewed by over 25 million people. John Koblin, *25 Million Watched Trump's Speech at the R.N.C. on Thursday*, N.Y. Times (July 19, 2024). He stated: "On Monday, a major ruling was handed down from a highly respected federal judge in Florida, Aileen Cannon, finding that the prosecutor and the fake documents case against me were totally unconstitutional, and the entire case was thrown out of court." The audience applauded after that line. The media also reported this aspect of his speech, further amplifying his praise of this Court and ruling. *See, e.g.*, Alia Shoaib, *Donald Trump Praises 'Highly Respected' Aileen Cannon in RNC Speech*, Newsweek (July 19, 2024).

Mr. Trump has otherwise publicly praised this Court, both before and after the dismissal. For example, commenting on a pending motion to continue the criminal trial early on in the case, Mr. Trump went on television and praised Your Honor: "I know it's a very highly respected judge. A very smart judge, and a very strong judge." When the host observed that Mr. Trump appointed Your Honor to the Court, he responded: "I did, and I'm very proud to have appointed her. But she's very smart and very strong, and loves our country. We need judges that love our country so

8

they do the right thing." Brett Samuels, *Trump Praises Judge Overseeing his Classified Documents Case, Saying She 'Loves Our Country'*, The Hill (July 16, 2023).

Just last month, Mr. Trump gave a press conference where he praised Your Honor by name again, stating: ". . . I wasn't surprised because I don't get friendly panels. I don't get friendly panels, but where we've had fair judges where we've had brilliant judges. Frankly, I, I don't know the judge in Florida. Judge Cannon don't know her at all. But, um, I think she's a brilliant woman. I think she handled a scam. It's a scam case. That's the documents case." *Donald Trump Press Conference After Legal Team Sought to Appeal Verdict in E. Jean Carroll Case*, YouTube, minute mark 25:28–25:34 (Sept. 6, 2024), https://www.youtube.com/watch?v=iTEdQTNVFds.

By repeatedly and publicly praising this Court by name for its rulings in his case, Mr. Trump has arguably bolstered the perception that the Court is partial in his favor. Moreover, were Mr. Trump to become President again in the future, he would be in a position to nominate Your Honor to a vacancy on a higher appellate court, including the U.S. Supreme Court. In the mind of the public, this prospect of a judicial promotion could arguably affect this Court's ability to be impartial in this case, where Mr. Trump is the alleged victim and has an interest in the outcome.

  **C. Recusal would remove any public perception that Mr. Trump's cases have assigned to this Court in a non-random manner.**

Finally, the media previously reported that the "odds" of this Court receiving either the civil lawsuit by Mr. Trump or the criminal case against Mr. Trump "were low," prompting questions about the randomness of the case assignments. Charlie Savage, *A Trump-Appointed Judge Who Showed him Favor Gets the Documents Case*, *supra*; *see* Charlie Savage, *Trump Appointee Will Remain Judge in Documents Case, Clerk Says*, N.Y. Times (June 10, 2023). This is the now

9

third case involving Mr. Trump that has been assigned to this Court, which has already been described as a "remarkable coincidence." Sean O'Driscoll, *Aileen Cannon Overseeing Ryan Routh Case 'Remarkable Coincidence—Lawyer*, Newsweek (Sept. 25, 2024). Given these very low odds, the public may suspect that Mr. Trump's cases have somehow been deliberately steered to this Court. That perception would irreparably damage the integrity of this Court as an institution, not to mention the judicial process. To be clear, there is no evidence that this case (or any other) was assigned in a non-random manner. But conspiracy theories have been based on less. Recusal would thus have the added benefit of preventing the public from harboring such a dangerous perception.

## CONCLUSION

This motion assumes that this Court has "no actual basis" and "would do [its] very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *In re Murchison*, 349 U.S. at 136 (quoting *Offutt v. United States*, 348 U.S. 11, 13 (1954)). The unprecedented facts and circumstances of this case, at the very least, create significant doubts about whether this Court could preside consistent with the requisite appearance of impartiality. And "any doubts must be resolved in favor of recusal." *In re Moody*, 755 F.3d at 895 (quotation omitted). Accordingly, Mr. Routh respectfully requests that this Court grant this motion and recuse from this case.

Pursuant to Local Rule 88.9, on October 2, 2024, counsel for Mr. Routh conferred with the government by phone to advise that the defense would be drafting a recusal motion. On October 16, 2024, counsel for Mr. Routh spoke to the government by phone and later emailed a draft of the

motion to the government. On October 17, 2024, the government replied that they are taking this motion under advisement.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

| s/ Kristy Militello | /Renee M. Sihvola |
|---|---|
| Kristy Militello | Renee M. Sihvola |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Attorney for the Defendant | Attorney for the Defendant |
| Florida Bar No. 0056366 | Florida Bar Number: 116070 |
| 250 South Australian Ave., Suite 400 | 250 South Australian Ave., Suite 400 |
| West Palm Beach, Florida 33401 | West Palm Beach, Florida 33401 |
| (561) 833-6288 – Telephone | (561) 833-6288 - Telephone |
| Kristy_Militello@fd.org | Renee_Sihvola@fd.org |

CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Kristy Militello
Kristy Militello