UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>24-80116-CR-CANNON/McCabe</u>

**UNITED STATES OF AMERICA**

vs.

**RYAN WESLEY ROUTH,**

  **Defendant.**

              /

## GOVERNMENT'S STATUS REPORT REGARDING DISCOVERY

 Pursuant to this Court's Order ([ECF No. 51]), the United States respectfully submits the following status report regarding discovery.

### Background

 On September 15, 2024, Defendant Ryan Routh, a convicted felon with a lengthy criminal history including a North Carolina conviction for possessing a weapon of mass death and destruction, attempted to kill then-Major Presidential Candidate, now President-Elect, Donald Trump. He did so by hiding on the perimeter of the Trump International Golf Course while the President-Elect was playing golf, and creating a sniper nest armed with a loaded SKS-style rifle bearing an obliterated serial number aimed directly at the course. When a Secret Service agent came across Routh in the tree line shortly before the President-Elect would have come into range, Routh targeted the agent before fleeing the golf course in a Nissan Xterra with a Florida license plate not registered to that vehicle.

 Law enforcement arrested Routh on September 15, and a federal grand jury later indicted him for multiple crimes giving rise to this prosecution. The Indictment ([ECF No. 21]) charges Routh with attempting to assassinate a Major Presidential Candidate, assaulting a federal officer,

being a felon in possession of a firearm, possessing a firearm with an obliterated serial number, and using a firearm in furtherance of a crime of violence. He faces life imprisonment if convicted of these charges. On September 23, 2024, Magistrate Judge McCabe detained Routh pending trial, finding that the defendant posed a danger to the community and a risk of flight due to, among other things, his history and strong evidence of his effort "to stalk [President-elect] Trump over a 30-day period in an attempt to assassinate him." (Det. Hrg. Tr.:129 ([ECF No. 17]).

Routh's apprehension, and the seriousness of this assassination attempt, by necessity prompted an intensive and wide-ranging reactive investigation into the Defendant's whereabouts and contacts prior to September 15. For example, as discussed at the pre-trial detention hearing, in the Defendant's vehicle alone law enforcement recovered six different cell phones (one of which contained a Google search of how to travel from Palm Beach County to Mexico), a passport with multiple entries, handwritten documents tracking the movements of the President-Elect, and a notebook containing dozens of pages filled with names and phone numbers pertaining to locations overseas. In its initial stages, as stated at the pretrial detention hearing, the investigation required a massive number of law enforcement agents and agencies, federal and state, working every day around the clock, learning information about Routh and developing a picture of his brazen assassination attempt and his movements across the United States, including to and from Hawaii, and multiple countries abroad, leading up to it.

One inevitable consequence of such an investigation is the large volume of potential discovery that must now be collected and reviewed by the prosecutors in this case and provided to the defense in preparation for trial. That discovery, as summarized below, includes a trove of law enforcement reporting, a substantial quantity of body-worn-camera footage from officers involved

2

in apprehending Routh, and a large amount of electronic data from Routh's electronic devices and accounts. The Government has worked diligently to review and compile items that must be produced as discovery in this case, and will continue to do so. We ask simply that the Court be mindful that this is an entirely reactive case, with no investigation of the assassination attempt before it happened, and also that the large volume of potential discovery gathered by investigators is commensurate with the grave seriousness and consequences of what Routh intended to do that afternoon.

## Discovery Provided to Date

### A. Documents and Electronic Data

The Government served its first written response to the Standing Discovery Order (SDO) on October 17, 2024, providing basic information about the case and the Defendant, but indicating that the lion's share of discovery would be made available once the Court entered a protective order (*see* [ECF No. 49]). The Court entered that Order on November 12, 2024 ([ECF No. 69]). The following day, the Government produced its first set of materials responsive to the SDO. We are attaching as Exhibit A to this report an index for that production, which included items Bates-stamped Gov 00001-777 and 1340-4112, consisting of the following:

- NCIC records for the Defendant;
- search warrants (no returns);
- photographs of the crime scene, of the Defendant, of the Nissan Xterra, photos taken by eyewitness, vehicle tires, a container from a North Carolina residence, which contained bullets, homemade weapons, and Defendant's letter to the "World" discussing his "assassination attempt on Donald Trump," the North Carolina residence itself, and the seized rifle;
- license plate reader (LPR) data;
- interstate nexus examination;
- consent and other forms/property receipts;
- drone footage of the crime scene;
- Defendant's travel records;

3

- Defendant's telephone subscriber and toll records;
- Copies of Defendant's prior convictions.

Immediately upon providing all these materials to the defense, the Government compiled additional discovery for production. That same day, November 13, the Government supplied these additional items to the defense in our Second SDO response ([ECF No. 71]). Attached as Exhibit B is an index for that production, which included Bates Numbers Gov 004113-5953, consisting of:

- FBI 302 reports[1]
- Laboratory reports and supporting documentation
- Evidence logs, property receipts, maps
- Defendant's jail communications and other letters written by Defendant
- Records obtained from third parties
- More photographs of crime scene, Nissan Xterra and items found therein
- Additional LPR data

The Government next provided the defense with a Third SDO response containing additional materials recently prepared for production (ECF No. 73]). The Government served its Third SDO response on November 21, including Bates Numbers Gov 005954-7523, consisting of the following items contained on the indices attached as Exhibit C to this report:

- Laboratory reports not previously disclosed and not part of the expert disclosure
- The attachments to all previously disclosed FBI reports
- Search Warrant returns
- Some body worn camera footage, including footage capturing Defendant's preliminary statements to law enforcement and an eyewitness's identification of Defendant
- Extractions of digital evidence seized in this case

---

[1] To be clear, our early disclosure (upon receipt) of FBI 302 interview reports is not required by any discovery rule and certainly not mandated by the Jencks Act. *See United States v. Judon*, 581 F.2d 553, 556 (5th Cir. 1978) (holding that FBI interview reports are not Jencks Act material and were thus not producible to defendant at trial).

4

B. **Expert Discovery**

Meanwhile, as required by this Court's pretrial Order ([ECF No. 51]), the Government on November 17 provided to the defense its initial expert disclosures in accordance with 16(a)(1)(G), and this Court's Local Rule 88.10(o)(3), summarizing information regarding areas of expert witness testimony that we reasonably anticipate offering at this time (*see* [ECF No. 72]). The Government also supplied the defense with supporting test and laboratory reports relating to those anticipated areas of expert testimony available at that time. This disclosure contained items Bates-numbered GovExp 00001-11,129, consisting of:

- Documents related to the FBI laboratory's evidence management protocols, SOPS and procedures

- Reports of experts not previously disclosed as well as CVs and supporting documents and photographs used to conduct laboratory analyses in this case.

The Government made an additional disclosure of expert-related photographs on November 20 and 21. They are Bates-numbered GovExp 0011130-11132 and GovExp 0011133-39.

C. **Physical Evidence**

The Government has also taken steps to aid the defense's review of physical evidence in the case (such as Xterra in which Routh fled) and to conduct a crime scene visit. Defense counsel advised us that they did not want to schedule any of these evidence views until they received more discovery and started their review of the discovery. Nonetheless, the Government has already engaged in multiple conversations on our end to consider the logistics of such evidence views (including at the golf course, which is privately-owned and has independent security and privacy concerns). Based upon those conversations, on November 22, the Government sent a detailed email to defense counsel identifying protocols for the evidence views and proposing a framework

5

for dates when those inspections can occur in the near future. The Government also explained that all of the items of evidence collected in this case are currently located in either the FBI facility in Miramar or at FBI labs in Quantico, Virginia. Items in South Florida are available for inspection upon reasonable notice; the items currently located in Virginia (including the firearm and some of Routh's letters) are still being processed. Once the processing is complete, the prosecution will request that those items to be returned to the FBI facility in Miramar where they can be presented for inspection.

### Anticipated Future Discovery from the Government

There are several areas of potential discovery that the prosecution team is continuing to gather and review. These include primarily (1) the remainder of body-worn camera and dashboard camera footage from the day of Routh's arrest, (2) traffic camera footage; and (3) security video obtained from private businesses. The prosecution team is in the process of obtaining and reviewing these materials and expects to have some or all of them available for production soon.

In addition, as we told the defense in our November 17 letter, the Government expects to make further expert disclosures, as the results of pending laboratory tests and data analyses become available, and undersigned counsel assess whether expert testimony in these areas may be needed.

### Defense Discovery

Finally, the Government has thus far received no discovery of any kind from the defense. The Government requested this reciprocal discovery in its First SDO response ([ECF No. 49] at 8), and reiterated that request in an email to defense counsel on November 22. The Government also on November 22 formally requested reciprocal expert discovery from the defendant. We

recognize that the defense team may be in the early stages of reviewing the discovery provided to it, but a significant amount of that discovery is the defendant's own or known to him. It is also evident already that this Defendant is not shy about contacting the news media to publicize his views on this case and the President-Elect, and we anticipate that there may be sizeable discovery that, under the rules, the defense will be required to produce to us before trial.

## Conclusion

The Government has complied with the Court's deadlines, and produced discovery in three SDO responses accompanied by detailed indices, as well as in separate communications with the defense. We will continue to comply with our obligations. The Government will, of course, be prepared to address any of these topics for the Court at the upcoming status conference.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   /s/ John Shipley
John C. Shipley
Florida Bar No. 69670
Christopher B. Browne
Florida Bar No. 91337
Mark Dispoto
Court Id. Number A5501143
Assistant United States Attorneys

U.S. Attorney's Office
Southern District of Florida
99 Northeast 4th Street, 8th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9111
E-mail: John.Shipley@usdoj.gov

            MATTHEW G. OLSEN
            ASSISTANT ATTORNEY GENERAL

By:  */s/ David C. Smith*
    David C. Smith, Trial Attorney
    Court ID No. A5503278
    Department of Justice, National Security Division
    950 Pennsylvania Avenue, NW
    Washington, DC 20530
    Telephone: (202) 514-0849
    Email: David.Smith5@usdoj.gov

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on OVEMBER 22, 2024.

                /s/ John C. Shipley
                Assistant United States Attorney