UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   24-80116-CR-CANNON

UNITED STATES OF AMERICA,
            Plaintiff,

vs.

RYAN WESLEY ROUTH,
            Defendant.
_____:

**DEFENDANT'S MOTION TO CONTINUE TRIAL
AND REVISE SCHEDULING ORDER**

Defendant, Ryan Wesley Routh, through counsel and pursuant to this Court's December 6 order [ECF. No. 81], advises this Court of the status of discovery and trial preparation, and requests to continue his trial date and extend pretrial deadlines. In support, Defendant states:

## I.    INTRODUCTION

Discovery delays and the extraordinary volume of discovery have made the current trial schedule incompatible with Mr. Routh's due process rights. The government's first discovery production only became accessible to Mr. Routh's counsel on November 19 – 56 days after his indictment. Two productions followed, a large portion of which became available on Saturday, December 7. The government also intends to produce significant additional discovery on two one-terabytes hard drives provided by the defense, and they have advised their discovery is ongoing.

1

The pace and quantity of discovery production, and the need to process disclosed materials into a usable form, prevent counsel at this time from providing a definitive estimate of the number of hours required for review. What is clear, however, is that the diligent efforts of counsel will be insufficient to prepare a case of this magnitude for trial on February 10, 2025. Proceeding with the scheduled trial or anytime soon thereafter– on charges punishable by life imprisonment – would result in a miscarriage of justice. To ensure that Mr. Routh receives assistance of counsel and a fair trial, the ends of justice will be served by continuing his trial date to December 2025 and revising the deadlines in the scheduling order accordingly.

## II.     BACKGROUND

Mr. Routh was indicted on September 24, 2024 for attempting to assassinate a Major Presidential Candidate, assaulting a federal officer, being a felon in possession of a firearm, possessing a firearm with an obliterated serial number, and using a firearm in furtherance of a crime of violence [ECF No. 21]. If convicted, he faces a possible sentence of life imprisonment. *Id.*

### A. *The government's initial discovery productions*

The Government mailed its first discovery production only after the Court entered a protective order on November 12, 2024 [ECF. No. 69]. After the government's mailing reached counsel's office, it then took several days to secure and upload the large volume of materials in a manner appropriate for review. As a result,

the first discovery disclosure became available to counsel on November 19. The second production was available to counsel on December 2, 2024.

The third discovery production required the digital transfer of files so large that counsel's IT department was required to intervene and the materials took several days to download. That task was not accomplished until December 7, 2024. Undersigned counsel has not yet started their review of these files from the third production and the materials downloaded in the last 48 hours are not included in the descriptions below.

### B. *The extraordinary volume of discovery*

The discovery received by the defense to date is voluminous and rivals that of the largest cases handled in this District. The third discovery production alone contained nearly two terabytes of data in the form of large digital downloads from phones, tablets, electronic disks, and computers.

The discovery, not including portions of the third production, so far includes:

- expert data/analyses from a firearms/toolmark examiner, latent fingerprint examiner, DNA analyst, and a ballistics crime scene analyst,

- electronic data downloaded from eighteen phones (Samsung SM-A326U: 104 GB of data of 19,672 files and 5,906 folders; ATT Calypso: 5.97 GB; Flip Phone: 735 MG; Tracphone: 11.8 GB; i-phone 8: 49.1 GB; i-phone 6: 10.6 GB; LG: 551 MB; Alcatel Cricket: 605 MB; myTouch 4G Slide: 1.51 GB; ZTE: 2.84 GB; Alcatel Streak: 856; Kyocera: 4.56 GB; Andriod: 6.49 GB; Nokia: 17.4 GB; Samsung SM-A025A: 19.6 GB; Alcatel Streak: 3.54 GB; ZTE: 2.55 GB; Android-Qualcomm: 8.96 GB),

- five phone company records,

- electronic data downloaded from three computers (<u>Dell</u>: 92.9 GB of 3,656 files and 793 folders; <u>HP Laptop</u>: 20.7 GB of data of 2,304 files and 719 folders; <u>Gateway Desktop</u>: 208 GB of 2,271 files and 714 folders),

- electronic data from three tablets (<u>iPad 6</u>: 29.1 GB; <u>iPad air 2</u>: 18.4 GB; <u>Amazon Fire 7</u>: 986 MB),

- electronic data from five electronic storage disks (<u>MicroSD</u>: 9.50 GB of 2,215 files and 719 folders; <u>USB disk</u>: 2.81 GB of 2,212 files and 720 folders; <u>CDRom</u>: 41.4 MB of 47 files and 7 folders; <u>SD card</u>: 2.36 GB of 2,202 files and 719 folders; <u>USB hdd</u>: 148 GB),

- potential exculpatory expert data of source exclusion by an FBI Laboratory analyst in Quantico, Virginia (not listed as a Federal Expert witness) from the Questioned Documents Unit with a discipline in shoe prints/tire treads examinations that "(Source Exclusion) Impression 12B does not correspond in outsole or tread design with the submitted footwear (shoes from Ryan Routh) or images of the tires (from Ryan Routh's vehicle),"

- data and reports from two FBI Laboratory Analysts in Quantico, Virginia (not listed as Federal Expert witnesses) in the forensic mineralogy/geology unit regarding her analysis on trace evidence from the Defendant and document analysis, regarding the origin of creation and visualizing obliterated handwriting, from an expert in the questioned documents division,

- video surveillance from drone footage, Palm Beach International Airport, and Family Dollar. Defense is still receiving traffic camera footage,

- financial records,[1]

- social media platforms,[2]

- retail records,[3]

---

1 Google Pay, AmEx, Air B&B, Craigslist, Rent A Home, JP Morgan, Chase Bank, First Hawaiian Bank, Mastercard, Citibank, Experian, Black, Pay Pal, Synchrony Bank, Capital One, Bancorp Bank, Coinbase, TransUnion, Western Union, Block, Equifax, Stripe, and Moneygram.

2 Twitter, WhatsAp, Gmail, Twitch, X Corp, Instagram, Linked In, Meta Platforms – Instagram, Meta Facebook, Meta Platforms Inc., Automatic Inc.

3 Dicks Sporting Goods, Uber, Home Depot, Fed Ex, Amazon.

- travel records,[4] including Fed Ex Records of 2.62 GB of 2,199 files and 720 folders and 2.36 GB of 2,195 files and 719 folders,
- electronic storage platforms,[5]
- around 3,000 photographs (50 GB),
- an unknown amount of jail calls/communications, per the Government's Fourth Response to the Standing Discovery Order, filed on December 4, 2024, and
- an unknown amount of "substantial quantity of body-worn camera footage," dashboard camera footage, and private business security video, not yet received, as mentioned in the Government's Discovery Status Report, filed on November 22, 2024.

Within each of these voluminous electronic disclosures, especially the cell phones, storage disks, and laptops, there are typically thousands of pages of pictures, videos, text messages, documents, notes, phone calls, internet history, location and historical data, and other data. Often this digital data requires the use of experts to review or to interpret. At this time, counsel does not have the forensic opinions of the government's experts who reviewed the digital devices in order to either guide the digital review or to compare their findings with our own.[6]

C. *Future disclosures*

On top of the extraordinary volume of discovery that the government has produced to date, the defense anticipates that additional discovery will amount to

---

4 Alaska Airlines, Hawaiian Airlines, American Airlines, Delta Airlines, Southwest, United Airlines, U-Haul, and Fed Ex.

5 Yahoo, Google, Foursquare, Dropbox, and Apple.

6 The government's cellular expert disclosure advised, "The substance of his testimony will be embodied in reports that will be provided to the Defendant upon receipt by the prosecution team."

several more terabytes of data. The government has not completed the task of copying and processing additional discovery materials onto a one-terabyte hard drive furnished by the defense. On December 5, 2024, the government requested that the defense provide another one-terabyte hard drive for still more discovery.

In their most recent status report [ECF No. 76], the government stated that it "expects to make further expert disclosures, as the results of pending laboratory tests and data analyses become available, and undersigned counsel assess whether expert testimony in these areas may be needed."

The government has also notified the defense of its intent to use *nine experts* to date. The government noticed a Cellular Analysis Data Team Agent but stated that, "the substance of his testimony will be embodied in reports that will be provided to the Defendant upon receipt by the prosecution team." In addition to this material information pending and not yet disclosed, the government has also notified the defense of their intent to use additional experts including:

- An unnamed FBI special agent with the special weapons and tactics team will provide expert opinions about "the Defendant's activities and positioning in connection with his attempted shooting of the victim." "The witness will testify regarding, among other things, the Defendant's observation point… reconnaissance, selection, measurement, uparmring…contents and tactical significance of the Defendant's notes and Internet research relating to measurement and targeting, as well as capacity of weapons system(s) seized from the crime scene. This witness will also testify regarding how and why a vantage point is desirable for a particular target, the factors that can affect a shot, the capacity of the weapon to include, the quantity of ammunition that can be stored and caliber and operation of the weapons system. This witness will testify about methods employed to avoid detection and sustainment of Defendant's FFP. This witness

will define terms of art in this field to include, "hold over," "hold off," "known zero," "magnification level of the optic," "scope," "rifle," "point of aim," "point of impact," "standard deviation of the weapon," "detachable box and fixed magazines," and "sporterized." "This witness's name, qualifications and past testimony will be provided upon identification of this witness."

- A future expert handwriting analyst that the "The United States expects to make additional disclosures, not yet available, related to a comparison of known samples of Defendant's handwriting with handwritings from items seized and in evidence."

### D. Mr. Routh's review of discovery

Mr. Routh's receipt and review of discovery materials has been further delayed while undersigned counsel's office satisfied the Bureau of Prison's requirements, which included removing certain materials from the discovery. Undersigned counsel was finally authorized to mail Mr. Routh a portion of his initial discovery on December 3, 2024. As of this writing, Mr. Routh has not received or been given access to the discovery materials mailed to him. It remains unclear whether Mr. Routh will be able to review any discovery before the December 11 status conference.

## III.   APPLICABLE STANDARDS

Before any person can be validly convicted and punished with imprisonment, that person must be afforded the right to assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution. *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995) (citing *Faretta v. California,* 422 U.S. 806, 807, 95 S. Ct. 2525, 2527, 45 L. Ed. 2d 562 (1975)). The denial of a motion for continuance of trial may in some cases vitiate the effect of the defendant's

fundamental right to assistance of counsel. *Id*. "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964).

The Eleventh Circuit has identified several factors that should guide trial courts when ruling on a motion to continue, including:

- the amount of time available for preparation,
- the likelihood of prejudice from denial,
- the accused's role in shortening the effective preparation time,
- the degree of complexity of the case, and
- the availability of discovery from the prosecution

*United States v. Jeri*, 869 F.3d 1247, 1257 (11th Cir. 2017); *United States v. Garmany*, 762 F.2d 929, 936 (11th Cir. 1985).

Those factors parallel the non-exhaustive list of factors a trial court considers when ruling on an "ends-of-justice" continuance under the Speedy Trial Act, including:

- the failure to grant the continuance would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice;
- the case is so unusual or complex that it is unreasonable to expect adequate preparation within the Speedy Trial Act's time limits; and,
- the failure to grant a continuance would deny counsel reasonable time for effective preparation, taking into account the exercise of due diligence.

*United States v. Dunn*, 83 F.4th 1305, 1314-15 (11th Cir. 2023) (quotation marks removed) (citing 18 U.S.C. § 3161(h)(7)(B)(i)-(iv)).

Even when a case is not "so unusual and so complex" to fit the criteria of Section 3161(h)(7)(B)(ii), appellate courts have recognized that an ends of justice continuance may be appropriate. *United States v. Fields*, 39 F.3d 439, 444 (3d Cir. 1994) (citing *United States v. Dota*, 33 F.3d 1179 (9th Cir. 1994) ("An ends of justice continuance may be justified on grounds that one side needs more time to prepare for trial . . . even though a case is not complex."). Voluminous discovery may justify granting a continuance under Section 3161(h)(7)(B)(iv) to allow reasonable time for effective preparation for trial. *United States v. Aryan*, No. 11-cr-20698, 2012 U.S. Dist. LEXIS 2419, at *6 (S.D. Fla. Jan. 9, 2012) (where government said their evidence included "many bankers boxes" of documents). *Cf.* S.D. Fla. L.R. 16.1(a)(3) (listing "volume of evidence" as a factor to consider when assigning civil cases to complex track).

This Court cited "extremely voluminous discovery" as a factor supporting a ten-month ends-of-justice continuance where discovery involved "hundreds of thousands of documents." *United States v. Gosney*, No. 22-80022-CR-CAN, 2022 U.S. Dist. LEXIS 237377, at *11 (S.D. Fla. June 10, 2022) ("entirely reasonable in light of the complexities of this case, the extremely voluminous discovery, and the expressed need for adequate preparation on both sides."). *Id.*; *see also United States v. Carver*, No. 22-80022-CR-CAN, 2022 U.S. Dist. LEXIS 95866, at *1 (S.D. Fla. May 9, 2022) (using

the term "extremely voluminous discovery" to refer to an initial production of around 90,000 documents and about 620,000 documents subject to filter review); *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 2005 U.S. Dist. LEXIS 577 (E.D.N.Y. 2005) (finding that case was properly designated as complex case pursuant to 18 USCS § 3161(h)(8)(B)(ii) "because of extraordinary volume of discovery").

The Section 3161(h)(7)(B) "ends-of-justice" factors also align with examples given in the Local Rules for reasons to extend pretrial deadlines in criminal cases:

> A defendant or the government may request, pursuant to this rule and Fed. R. Crim. P. 16(d) or Fed. R. Crim. P. 16.1(b), that the court exercise its discretion and alter the default deadlines established by this rule. Any such request shall set forth the reasons (*for example, to ensure sufficient time to provide effective assistance of counsel, prepare adequately for trial, find and secure an expert witness, or prepare the required expert disclosure*) and the factual circumstances that warrant the requested modification of the expert discovery timetable.

S.D. Fla. L.R. 88.10(o)(3) (emphasis added); *see also* Fed. R. Crim. P. 12.1(c)(2) ("At any time before trial, the court may extend or reset the deadline for pretrial motions.").

In this district, cases are often set for trial one year or more after indictment. *See e.g. United States v. Accime,* 23-60194-MD (indicted October of 2023 and trial set for January of 2025); *United States v. Pacheco,* 24-20253-JB (indicted June of 2024 and trial set May of 2025); *United States v. Blackma*n, 23-20271-DSL (indicted June of 2023 and trial set May of 2025); *United States v. Hernandez*, 22-20152-KMM (indicted April of 2022 and tried September of 2023); *United States v. Session*, 22-14074-AMC (indicted December of 2022 and tried September of 2024); *United States*

10

*v. Goyos*, 22-80022-AMC (indicted February of 2022 and tried September-October of 2023); *United States v. Suzanne Kaye,* 21-80039-RLR (initial appearance February 2021 and tried June of 2022); *United States v. Sean Finnell,* 20-80086-RS (initial appearance August 2020 and tried March 2022); *United States v. Kahn,* 19-80169-RLR (initial appearance September of 2019 and set for trial - prior to Covid - for October 2020); *United States v. Clifford Laines,* 18-CR-20980-CMA (indicted December of 2018 and tried March of 2020); *United States v. Johnson,* 18-20337-CMA (initial appearance in May of 2018 and trial set July of 2019); *United States v. Snyder*, 18-80111-RLR (initial appearance July 2017 and trial set July 2019); *United States v. Kachkar*, 16-20595-DPG (indicted August 2016 and tried January-February of 2019).

### IV.   ARGUMENT

A previously described, the discovery in this case is expansive. Just one terabyte has the capacity to hold text files equivalent to the information contained in enough books to fill twelve floors of a typical academic library. *See United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016). This case involves several terabytes of discovery materials and over nine expert witnesses.

Reading thousands of pages of materials, watching untold hours of video, and analyzing tens of thousands of digital pages of information will require many months. But of course, discovery review is much more complex than simply reading and retaining the information. Counsel must analyze the information determine what

should be investigated (which witnesses should be interviewed, scenes visited, evidence evaluated, etc.), what evidence is relevant, what evidence is reliable, what evidence requires expert review for analysis or to determine reliability, and to consider potential stipulations to save the court time and unnecessary witnesses. The local rules contemplate such legal prowess when stating that the Court may alter the pretrial deadlines to "ensure sufficient time to provide effective assistance of counsel, prepare adequately for trial, and, find and secure expert witnesses." *See* S.D. Fla. L.R. 88.10(o)(3).

To be clear, undersigned counsel and their investigator are diligently working on reviewing the discovery. At the same time, each has a full and complete set of separate federal defender cases. Due to counsel's duty for zealous advocacy for all clients, the review of all Mr. Routh's materials, while working on a full set of other cases, is expected to take many months. Only after review of the discovery materials may counsel start the arduous task of preparing for pretrial motions and for trial.

 A. *Defense preparation for pretrial motions and trial*

Undersigned counsel, and their client, need sufficient time to review the discovery and evaluate potential defenses. It is only after an initial review of the discovery is completed that undersigned counsel may determine whether a good-faith basis exists for any pre-trial motions to be filed before the Court. Then, time is needed to strategize the appropriate motions to file in conjunction with consultation with Mr. Routh, conduct legal research and actually draft the motions. Possible motions may

include a motion to dismiss, a motion to suppress evidence, and potentially motions to exclude or limit expert testimony. But as noted above, the government has not fully complied with their expert notices yet such that counsel does not have the required information to make these determinations. After a substantial portion of the discovery is reviewed, then counsel will need to schedule scene inspections and evidence inspections/views. Defense experts need to be retained to evaluate and analyze portions of the discovery as well.

After review of the increasing discovery, counsel needs time to review with Mr. Routh any available defenses in his case, including any possible affirmative defenses. Such defenses may require notice to the government, and undersigned counsel cannot notice any defense until after the discovery is adequately reviewed and discussed with Mr. Routh and the case investigated by the defense.

### B. Discovery outside the Southern District

Along with needing time to review and investigate the discovery described above, undersigned counsel also anticipates needing time to travel outside the district to review evidence and to interview witnesses. The government currently has evidence secured in Virginia and witnesses reside across the country from Hawaii to North Carolina. Travel requires agency approval, and hardest to navigate, travel requires time away from other court hearings/duties and other clients and their cases. Of course counsel is willing and able to make these arrangements, but these arrangements take time when counsel is duty-bound to other clients and courts.

### C. *The circumstances of Mr. Routh's detention*

Finally, each visit with Mr. Routh is burdensome and time-consuming because of the half-day travel required to FDC Miami and because the last two legal visits have required counsel to wait between 90 and 120 minutes for the BOP to bring Mr. Routh to the visitation area. Requiring such vast amounts of time to visit Mr. Routh limits counsel's ability to see and review discovery with him, as we must allot a full day to see Mr. Routh and schedule such visits around other court hearings and other cases. In the ordinary criminal case, undersigned counsel is able to travel locally to visit their clients and may meet with their clients with only 20 minutes to one hour of travel time. The local jails also offer video visitation for registered attorneys. This is simply not the situation with Mr. Routh's detainment at FDC and his special classification levels at their facility. FDC Miami also does not permit video visitation or legal phone calls with undersigned counsel's offices in West Palm Beach or Fort Pierce. And while FDC Miami does allow email access to defendants, undersigned counsels' emails are being reviewed by the government such that undersigned counsel cannot communicate anything of substance to their client without the government invading attorney-client privilege. These logistical difficulties require the defense to have substantially more time than usual to prepare Mr. Routh and his case for trial. *See Aryan*, No. 11-cr-20698, at *5 (considering impact of defendant's detention on trial preparation as circumstance when granting ends of justice continuance).

### D. *Requested relief*

As such, undersigned counsel respectfully request that this Court set a status check in six months. At that time, undersigned counsel will be in a better position to tell the Court regarding when a trial would be appropriate and comport with Mr. Routh's Constitutional rights to due process and effective assistance of counsel. At the status check, the Court could determine a trial date which would comport with justice, and such a trial could occur in more or less time the defense's best estimation for readiness at this time.

If the Court instead prefers to set the case for a later trial date, then undersigned counsel requests a date no earlier than December 2025. A trial date of December 2025 affords the defense approximately one year from the start of the receipt of discovery to prepare and is in keeping with the scheduling of large cases in this district, which are often set one-year out for trial. *See supra* at 10-11. Mr. Routh and his counsel agree that there is a sufficient basis to support an "ends-of-justice" continuance, such that the period from the date of filing this motion through the date when the Court sets trial would be excluded from the Speedy Trial Act time period. The defense submits that such a continuance is in the interest of justice and necessary to comport with Mr. Routh's constitutional right to effective assistance counsel, his constitutional right to present a complete defense, and his constitutional right to due process.

*E. The government's partial agreement*

Pursuant to Local Rule 88.9(a), undersigned counsel conferred with the government and their position is as follows:

> The Government will be prepared for trial in February 2025. The Government is amenable to a reasonable continuance, but opposes a continuance until December 2025, which is unreasonable given that much of the discovery is the defendant's, that stipulations are available to reduce areas of trial preparation, that the Crime Victims' Rights Act entitles victims to a trial free from unreasonable delay, and the Defendant's documented attempt, as the Government sees it, to influence the jury pool.[7]

## V.    CONCLUSION

For these reasons, proceeding to trial on February 10, 2025, or anytime soon thereafter, would deny Mr. Routh's counsel the reasonable time necessary for effective preparation and result in a miscarriage of justice. *See* 18 U.S.C. § 3161(h)(7)(B)(iv). The defense submits that the "extremely voluminous" discovery in this case rivals that of the largest criminal cases in this district. The large quantity of discovery, compounded with Mr. Routh's remote jail location, and undersigned

---

[7] The bases for the Government's opposition are unpersuasive. Because defense counsel has not even received, much less reviewed, all of the discovery in this case, counsel does not know whether "much of the discovery is the defendant's." But even if that were true, defense counsel must still review and become familiar with all of the discovery. Likewise, whether "stipulations are available to reduce areas of trial preparation" is not something that counsel can assess until reviewing all of the discovery and consulting with the appropriate experts. In addition, while the alleged victim has the "right to proceedings free from unreasonable delay," 18 U.S.C. § 3771(a)(7), the continuance request here is not "unreasonable" and, in any event, the alleged victim's statutory rights cannot overcome the defendant's constitutional rights. Finally, counsel has not yet reviewed any discovery that would support the claim that the defendant is attempting to influence the jury pool. Meanwhile, it is the government, not defense counsel, that has made statements to the press about this case.

counsel's small team requires the requested continuance to comport with Mr. Routh's rights to effective assistance of counsel and due process.

WHEREFORE, Defendant requests this Court to grant the above-styled motion and continue the motion deadline, calendar call, and trial date in this case.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
250 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 - Telephone
Kristy_Militello@fd.org

*s/Renee M. Sihvola*
Renee M. Sihvola
Assistant Federal Public Defender
Florida Bar No. 116070
109 North Second Street
Fort Pierce, Florida 34950
(772) 489-2123 - Telephone
Renee_Sihvola@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Renee M. Sihvola*
Renee M. Sihvola