UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON/McCabe

**UNITED STATES OF AMERICA**

vs.

**RYAN WESLEY ROUTH,**

    **Defendant.**

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR CONTINUANCE OF TRIAL AND REVISED DEADLINES (ECF 82)**

There is no "partial agreement" (ECF82:16) to the Defendant's request for a year-plus continuance until "no earlier than" December 2025. The United States can be ready for trial as scheduled in February 2025. As we told defense counsel, we do not object to a reasonable continuance, but December 2025 or beyond is not reasonable on this record. The reasons Routh offers for so lengthy a delay are unpersuasive, and his short-shrift of the victims' rights, and the public's right to a prompt and fair trial, are not acceptable.

**Background**

On September 15, 2024, Defendant Ryan Wesley Routh, a convicted felon with a lengthy criminal history including a North Carolina conviction for possessing a weapon of mass death and destruction, attempted to kill then-Major Presidential Candidate, now President-Elect, Donald J. Trump. He did so by hiding on the perimeter of the Trump International Golf Course while the President-Elect was playing golf, and creating a sniper nest armed with a loaded SKS-style rifle bearing an obliterated serial number aimed directly at the course. When a Secret Service agent came across Routh in the tree line shortly before the President-Elect would have come into range, Routh targeted the agent before fleeing the golf course in a Nissan Xterra with a Florida license

plate not registered to that vehicle.

Law enforcement arrested Routh on September 15, and a federal grand jury later indicted him for multiple crimes giving rise to this prosecution.  The Indictment ([ECF No. 21]) charges Routh with attempting to assassinate a Major Presidential Candidate, assaulting a federal officer, being a felon in possession of a firearm, possessing a firearm with an obliterated serial number, and using a firearm in furtherance of a crime of violence.  On September 23, 2024, Magistrate Judge McCabe detained Routh pending trial, finding that the Defendant posed a danger to the community and a risk of flight due to, among other things, his history and strong evidence of his effort "to stalk [President-elect] Trump over a 30-day period in an attempt to assassinate him." (Det. Hrg. Tr.:129 ([ECF No. 17]).

In its order granting the parties' joint request for a continuance (ECF 51), this Court reset trial for the two-week period starting February 10, 2024.  The Court also set deadlines for disclosures by the prosecution, including on expert discovery, and required the Government to file a detailed status report regarding discovery in advance of the upcoming status conference.  The United States has complied with each of those deadlines (as noted below, the defense has not complied with deadlines triggered by the Government's disclosures).  The Defendant has now moved to continue trial again to some unspecified date but no earlier than December 2025.

## Argument

**1. The Defendant's Reasons for Continuing Trial to December 2025 Are Unfounded.**

Routh claims that he needs at least a year to be ready for trial.  He offers a variety of justifications, many of which mischaracterize the facts and none of which supports so lengthy a delay.  We do not oppose a reasonable continuance if defense counsel requests one.  December

2025 is not reasonable.[1]

Below we address the primary reasons Routh offers for a lengthy continuance:

**(a) Volume of discovery**

The discovery is indeed substantial, but for at least four reasons, this does not compel a year-plus continuance.

First, while extremely grave, this is not a complex, multi-year fraud scheme, or a massive racketeering operation, or multi-defendant transactional smuggling network. Those types of offenses by definition involve significant discovery and require intensive document review. Routh's offenses in this case do not.

As we advised this Court in our discovery status report (ECF 76), Routh's assassination attempt by necessity prompted an intensive and wide-ranging reactive investigation into the Defendant's whereabouts and contacts prior to September 15. For example, in the Defendant's vehicle alone, law enforcement recovered six different cell phones (containing multiple searches for cheap flights from Palm Beach County to Mexico), a passport with multiple entries, handwritten documents tracking the movements of the President-Elect, and a notebook containing dozens of pages filled with names and phone numbers pertaining to locations overseas.

---

[1] The motion cites examples (ECF 82:10) of trials continued until a year after indictment. This case was indicted on September 24, 2024, so Routh is actually seeking a delay of well over a year after his indictment. In any event, whether to grant a continuance is a discretionary call that turns on the unique circumstances of each case, so precedent (either way) is less helpful. *See, e.g., United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976) ("A motion for a continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of that discretion. This issue must be decided on a case by case basis in light of the circumstances presented[.]" (citations omitted)). Whatever the approach in other prosecutions, this record – and these charges – do not presently support a continuance until December 2025.

3

In its initial stages, the investigation required a massive number of law enforcement agents and agencies, working every day around the clock, learning information about Routh and developing a picture of his movements across the United States, including to and from Hawaii, and multiple countries abroad. One inevitable consequence of such an investigation was the large volume of information collected by law enforcement trying to assess the threat. The trial team has chosen to be fulsome about that information, providing it as discovery above and beyond what the rules require. It does not follow, however, that trial must be delayed for a year.

<u>Second</u>, as the defense does not dispute, much of the discovery is the Defendant's own, consisting in large part of the content of his personal devices. The 18 cell phones they highlight, for example? (ECF82:7). Seventeen are the Defendant's. Almost all of the other devices are his as well. The contents of these devices are presumably well known to Routh. The vast majority of discovery we have produced is extractions from these devices. And while defense counsel may not be personally familiar with these devices, the lion's share of their contents likely has little relevance to any serious defense.

<u>Third</u>, a sizeable chunk of information by volume is extended body-worn camera and traffic camera footage from law enforcement recorded after the assassination attempt. We are skeptical, given the facts of this case and the charges, that this is the kind of material that will have great relevance to crafting a defense. In addition, of course, Routh knows as well as anyone his movements before and after the incident, and can share those facts with his lawyers.

<u>Fourth</u>, notwithstanding the overall volume of information, we have given the defense roadmaps for the Government's case and charges, including the criminal complaint and search warrant affidavits. The defense also has the benefit of the pretrial detention hearing which

4

included extremely detailed cross-examination of an FBI agent. Neither Routh nor his lawyers can plausibly claim not to know what this case is about, or suggest that they are wholly unable to move forward exploring potential defenses until they review every single item of discovery. That suggestion does not hold water.

**(b) "Missing" discovery**

The defense next contends that they cannot try this case anytime soon because some items of discovery have not yet been produced. That claim is unpersuasive as support for a year-plus continuance. We wrote in our status report (ECF 76) that the amount of outstanding discovery is relatively limited, consisting mostly of the remainder of body-worn, traffic and dashboard camera footage from the day of Routh's arrest as well as security video obtained from private businesses. It is unclear how these items, which are being compiled and will be produced as promptly as possible, make trial impossible before December 2025. The government is also awaiting pending laboratory tests and data analyses which it will produce when they become available, and undersigned counsel assess whether expert testimony in these areas may be needed. In all respects thus far and in the future, as the prosecution gathers additional information that must be produced as discovery, we will do so promptly mindful of our obligations and the Court's trial date.

As for the pending expert disclosures, given the detailed disclosures we have made (with substantial supporting documentation), this is certainly not a situation where the defense is stymied from moving forward because it has no idea what areas of expert testimony may be needed at trial. As we explained in our status report, the Government's initial expert disclosures, in many instances, contained far more than just the summary and synopses required at this stage by the rules. It is misleading to say that the "government has not fully complied with their expert notices

5

yet such that counsel does not have the required information to make [] determinations" about whether to file *Daubert* motions or retain experts of their own.[2]

Moreover, the rules require the parties to discuss stipulations that will speed up trial preparation and trial itself. *See, e.g.*, SDFL Local Rule 88.10(n). Some areas of potential expert testimony seem ideally suited to such stipulations, which will further reduce the burden on defense counsel and will allow them to focus instead on topics of genuine dispute. We wrote the following to defense counsel last Thursday, December 5, and as of today have received no response at all:

> More generally, there are measures the parties are required to discuss, such as stipulations, that may reduce your trial preparation needs, especially when it comes to areas of potential expert testimony. For example, are you disputing that the rifle and ammunition found at the scene are a firearm and ammunition as defined by statute and that they traveled in interstate commerce? Or that your client authored the letter addressed to the New York Times, which he left at the scene, and the "Dear World" letter he left in the storage bin at his former employee's house in North Carolina? Stipulations on these and other topics as to which there should not be dispute may obviate the need for you to spend time reviewing and preparing for expert testimony, and your time can be spend on other trial subjects. We are available for have those discussions anytime.

No one can compel the Defendant to stipulate on these subjects or any others, but undeniably there are ways, short of a year's continuance, for the Defendant and his counsel to focus their pretrial preparation resources on issues that matter.

**(c) "Delayed" discovery**

---

[2] Under the Local Rules, the Defendant's initial expert disclosures were due within 14 days of the Government's initial disclosures, which we made on November 17. We reiterated our request for reciprocal discovery on November 22. Nothing has been provided. And no other defense discovery has been forthcoming despite our multiple demands. We realize that the defense cannot generally be compelled to produce information that it does not seek to use, and we do understand the defense needs time to assess, but defense counsel indicated at the pretrial detention hearing that there are "records" supposedly showing Routh's good character, and it is evident from counsels' communications that the Defendant already plans to call one or more experts – creating reciprocal disclosure obligations.

6

Routh also suggests that the prosecution delayed producing discovery and this delay has hindered his preparation. He writes that the "government's first discovery production only became accessible to Mr. Routh's counsel on November 19 – 56 days after his indictment." (ECF 82:1). That claim is, again, misleading. The Government filed its initial SDO response on time on October 17, 2024, and indicated that tangible discovery would be produced as soon as the Court entered a protective order addressing how discovery could be maintained and used in this case. The Government tried to negotiate a protective order with the defense, but the defense objected, forcing the Government to file a contested motion (ECF 43). The defense then waited 8 days to oppose that motion (ECF 63), objecting to the entire idea of a protective order and prompting this Court to direct the parties to confer and seek a compromise if possible.

When the Court ultimately did enter a protective order on November 12, 2024 (ECF 69), the Government produced the vast majority of its discovery immediately thereafter. Specifically, the following day, November 13, the Government produced its first set of materials responsive to the SDO. Immediately upon providing all these materials to the defense, the Government compiled additional discovery for production. That same day, November 13, the Government supplied these additional items to the defense in our Second SDO response (ECF 71).

At no point during litigation about the protective order did the defense insist to this Court that the Government should be producing discovery anyway (a step that would, obviously, have made a protective order moot). Moreover, one of the sticking points between the parties was whether Routh could keep discovery materials with him at FDC-Miami, where he is housed. The defense complained about this provision, insisting to this Court that trial would happen sooner if he had the ability to keep and review discovery materials in custody. In part for that reason, we

7

agreed to allow him to do so, yet now even that measure is allegedly insufficient to keep this case on a reasonable track.

The defense complains that "Mr. Routh's receipt and review of discovery materials has been further delayed while undersigned counsel's office satisfied the Bureau of Prison's requirements, which included removing certain materials from the discovery." (ECF 82:7). That is not the prosecution's doing, and neither should it be a surprise to defense counsel, who agreed to language in the protective order limiting Routh's ability to have access to prohibited content while in jail, whether that content appears in discovery materials or in some other format. Routh's further FDC related complaints are no different than those of other defendants detained pretrial. This Defendant attempted to assassinate the President-elect, assaulted a Secret Service officer, and possessed a sniper rifle with an obliterated serial number despite having prior felony convictions, including possessing a weapon of mass death and destruction. The constraints on his liberty pending trial are entirely proper.[3]

The defense additionally suggests that only "[a]fter a substantial portion of the discovery is reviewed [can] counsel [] schedule scene inspections and evidence inspections/views." (ECF 82:13). This is the defense's own choice. We contacted defense counsel weeks ago about arrangements for visiting the crime scene and inspecting items of physical evidence, specifying the day(s) such inspections could occur and the requirements for making those visits happen.

---

3  Defense counsel write (ECF 82:14) that "while FDC Miami does allow email access to defendants, undersigned counsels' emails are being reviewed by the government such that undersigned counsel cannot communicate anything of substance to their client without the government invading attorney-client privilege." Whatever that statement is trying to suggest, it is wrong. The prosecution directed FDC to exclude email communications with counsel, and also has a filter team in place to review the communications in an abundance of caution.

Initially counsel advised that they did not want to see anything until they had reviewed discovery; our most recent message on this topic produced no reply at all. The defense can prepare for trial as it sees fit, but these are simply not fair critiques of the Government, or good reasons for delaying trial unreasonably.

**2. Powerful Reasons Support a Prompter Trial.**

The Defendant's motion downplays two of the most important considerations for a reasonable trial date: the rights of the victims, and Routh's ongoing attempts to taint the jury pool. These concerns are in addition to the more general rights of this Court, the public, prospective civilian witnesses, and the prosecution in a prompt trial.

The Crime Victims' Rights Act (18 U.S.C. § 3771(a)(7)) entitles a victim of a crime to "proceedings free from unreasonable delay." A December 2025 trial would not comply with those mandates. The victims here include not only the President-Elect, but the Secret Service agent who Routh assaulted as charged in Count 3 of the Indictment. Routh says that the rights of his victims are subordinate to his right to prepare for trial. Neither the statute nor the Constitution, however, gives a defendant carte blanche to delay trial needlessly without sufficient grounds. And there are no grounds for a December 2025 trial.

Meanwhile, with any delay comes the increased risk that Routh, through his deliberate pre-trial publicity campaign, will impermissibly influence the jury pool, which at minimum will make it harder for this Court to seat an impartial jury. We are confident this Court is aware by now that since his arrest Routh has been communicating regularly with outside media, seeking to share information with outlets nationally (*i.e.*, the website *Politico*), and locally (the Palm Beach Post). This is calculated. In a recorded October 15, 2024 call from FDC-Miami, for example, Routh

9

told a family member that he seeks publicity to aid his case at trial and to put out the word to jurors that he is, in his view, an honorable person.[4] The issue for today is not whether Routh has a right to make some of these public statements; the simple truth is that, the longer the delay before trial, the harder this Court's task at trial will be, and the more compromised a jury pool may result. *Compare Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991) ("Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right."). Defense counsel state in their motion that they have "not yet reviewed any discovery that would support the claim that the [D]efendant is attempting to influence the jury pool," (ECF 82:16 n.7), but we specifically flagged the October 15 jail call for them in discussions last week when this call, among others, was produced, and media reports about Routh's extra-judicial communications assert that Routh's defense counsel were contacted for comment.

### 3. For Different Reasons Than Those in the Motion, the Government Does Not Object To a Reasonable Continuance.

Refusing to assent to a continuance of at least a year is not "myopic insistence upon expeditiousness.'" ECF 82:8 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589-90 (1964)). We are nevertheless open to a reasonable continuance. We say that for several reasons.

One, the overall volume of discovery is significant, and there are items still to be developed and produced despite our ongoing best efforts. So if defense counsel insist that they need reasonable additional time to review discovery, we can accommodate that request without compromising the prosecution, especially since the Defendant is in custody. Two, the indictment

---

[4] We can make a recording of this call available to the Court upon request.

is only three months old, so the case is not stale. Three, the reality is that there will be contested pre-trial issues this Court will have to navigate, and from our perspective, we support a realistic trial date that builds in enough time for those issues to be resolved.

On that front, it is imperative that this Court, should it grant a continuance, also set firm deadlines for pre-trial motions and disclosure by the defense of potential expert testimony, including any mental health disclosures mandated by Fed. R. Crim. P. 12.2. In a recent discussion about scheduling, defense counsel raised the possibility of an insanity defense for Routh, a subject they say they need time to evaluate. If Routh did seek to claim insanity, that defense, even if meritless (as it would be), would cause a significant disruption to the pretrial and trial schedule. The Court should ensure that any continuance it does grant builds in firm deadlines for the defense to make its disclosures and raise any time-consuming pretrial issues, so that the new trial date will hold.

## **Conclusion**

The Defendant's request for a continuance until no later than December 2025 should be denied. We do not oppose a reasonable continuance of trial, provided that the Court, in addition to adjusting other portions of its pretrial order currently linked to a February 2025 trial, (1) set firm early deadlines for pretrial motions and any mental health related disclosures under Rule 12.2; and (2) expressly direct the Defendant to comply today and on an ongoing basis with his reciprocal discovery obligations under the rules, including disclosure as soon as they become available of defense discovery items and information regarding experts.

        Respectfully submitted,

        MARKENZY LAPOINTE
        UNITED STATES ATTORNEY

By:    /s/ John Shipley
        John C. Shipley
        Florida Bar No. 69670
        Christopher B. Browne
        Florida Bar No. 91337
        Mark Dispoto
        Court Id. Number A5501143
        Assistant United States Attorneys

        U.S. Attorney's Office
        Southern District of Florida
        99 Northeast 4th Street, 8th Floor
        Miami, Florida 33132-2111
        Telephone: (305) 961-9111
        E-mail: John.Shipley@usdoj.gov

        MATTHEW G. OLSEN
        ASSISTANT ATTORNEY GENERAL

By:    */s/ David C. Smith*
        David C. Smith, Trial Attorney
        Court ID No. A5503278
        Department of Justice, National Security Division
        950 Pennsylvania Avenue, NW
        Washington, DC 20530
        Telephone: (202) 514-0849
        Email: David.Smith5@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on December 10, 2024.

/s/ John C. Shipley
Assistant United States Attorney