UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN WESLEY ROUTH,

    Defendant.
_____/

## DEFENSE RESPONSE TO THE GOVERNMENT'S UPDATED STATUS REPORT [DE 103]

Mr. Routh files this pleading to correct and clarify various factual statements made by the government throughout the Government's Updated Status Report Regarding Discovery (DE 103).[1]

### DISCOVERY PROCEDURAL HISTORY

After the Court appointed Defense Counsel in this matter, on September 16, 2024, Defense filed notice of request for disclosures of expert witness summaries pursuant to Fed. R. Crim. P. 16(a)(1)(G) and paragraph N. DE 11. Arraignment on the Indictment occurred on September 30, 2024. DE 28. Thus, fourteen days later, the original discovery deadline occurred October 14, 2024. DE 28. Under Local Rule 88.10 of the Southern District of Florida, the Defendant's request for the Standing Discovery Order constitutes a discovery request under Fed. R. Crim. P. 16(a)(1)(A), (B), (C), (D), (E), and (F). On October 10, 2024, the government filed an Unopposed

---

[1] The government did not confer with undersigned counsel regarding their pleading.

1

Motion to Extend Initial Discovery Deadline, to which the Court extended the initial deadline to October 17, 2024. DE 38, 39. The government filed an Unopposed Motion to Continue Disclosure of Experts. DE 50. The Court then ordered that the United States' expert disclosure to occur on November 17, 2024. *See* Fed. R. Crim. P. 16(a)(1)(G)(ii). DE 51.

At the Status Conference on December 11, 2024 and surrounding pleadings, the government represented that it only had a limited amount of outstanding discovery items, including body worn camera and dash cam footage, security video, jail communications, and pending laboratory tests and data analyses, which would promptly be given to Defense. DE 76, 85, 88.

Since the Order Establishing Pre-Trial Deadlines on December 23, 2024. DE 91, the government subsequently filed the Sixth, Seventh, and Eighth Responses to the Standing Discovery Order on January 10, 2025, February 6, 2025, and February 28, 2025. DE 94, 97, and 101. The Sixth Discovery Response contained 561 GB of 22,426 files. The Seventh Discovery Response contained 108 GB of 6,470 files. The Eighth Discovery Response contained 27.7GB of 158,778 files. The discovery continues to involve several terabytes of information. From the defense review, it appears that more than a hundred federal agents have worked on the discovery items in this case.

## GOVERNMENT'S DISCOVERY COMPLIANCE

The government supplemented large amounts of discovery past the original deadlines and advised that more items are forthcoming. *See* Fed. R. Crim. P. 16(a);

Local Rule 88.10; DE 103:7. Per the Scheduling Order regarding Experts, filed on October 18, 2024 (DE. 51), the government expert disclosure deadline was scheduled for November 17, 2024 under Fed. R. Crim. P. 16(a)(1)(G)(ii). The government provided expert summaries on November 17, 2024 and February 3, 2025. However, for the expert of the location of cellular tower geographic locations, the government has still not yet identified his actual opinion and "the substance of his testimony (that) will be embodied in reports that will be provided to the Defendant upon receipt by the prosecution team."

Without detailing which items are currently in their possession, the government stated that it intends to make additional future discovery disclosures of

> Photographs and law enforcement reports memorializing a January 30, 2025 search of the Nissan Xterra; law enforcement reports summarizing third party interviews; limited, outstanding subpoena returns; U.S. Secret Service radio communications; and Cellebrite reports of electronic devices belonging to Routh, or belonging to third parties, that also contain communications with Routh.

[DE 103].[2] Nevertheless, the need for yet more large hard drives for discovery is a useful reminder of the extraordinary volume of terabytes of discovery in this case.[3]

---

[2] The government's insinuation that Counsel did not provide a hard drive for the Eighth Discovery Disclosure is inaccurate. "We have also repeatedly followed up – as recently as last week – with the defense about the availability of evidence that we told them required a hard drive which we had not yet received." [D.E. 103:4]. At the time of their 7:00pm filing, the government was in possession of the requested hard drive. The defense hand-delivered the requested hard drives to the Government in their Miami office, on March 3, 2025, prior to 3:00pm.

[3] In order to receive the additional discovery, the government requested a drive able to contain an additional seven terabytes of discovery. Our office does not have such large drives as part of our normal office supplies. As such, it was necessary for our technology department to special order a 10 terabyte drive. Last week, our office told

3

Simultaneously, the government improperly utilizes the Status Report as a mechanism to attack the Court's Scheduling Order. The government laments of "these late defense discovery deadlines" when it did not file any timely objection to the Court's Scheduling Order. *See* DE 103:8.

The government also detailed two Defense inquiries regarding copies of specific documents. Defense was under the impression that the government would be cooperative of two very simple questions without attempting to publically chastise the Defense under the guise of "not call(ing) out the defense." DE 103:4. The Defense would prefer to not publically identify discovery materials under the Protective Order and follow Florida Bar Guidelines for Professional Conduct, Subsection E, Communication with Adversaries.[4] The government also inappropriately utilizes the status report as a mechanism to make direct complaints about Mr. Routh exercising his First Amendment rights of self-expression.

## DEFENSE COMPLIANCE

The Defense is in compliance with the Court's Scheduling Order. DE 91. The government agrees that the Defense met the notice of insanity defense, notice of expert evidence of a mental condition, and scene visit deadline. The government also detailed the Defense viewing of additional discovery items. The Federal Rules of

---

the government when it would arrive and be delivered to their office, and our office delivered the drive on time.

[4] Subsections 2 and 3 provide, "Letters or email should not be written to ascribe to one's adversary a position that the adversary has not taken or to create "a record" of events that have not occurred. Unless specifically permitted or invited by the court, or unless the communications are relevant for purposes of attaching to certain filings, letters or email, between counsel should not be sent to judges." *Id.*

Evidence provide the Defense the right to inspect items held in evidence in the possession of the Federal Government. The Defense has also made requests for the ability to photograph and test discovery item(s) as permitted under Fed. R. Crim. Proc. 16 (a)(1)(E) and (F)(i). The Defense will provide more information to the Court regarding these requests at the status hearing, if requested.[5]

The government utilizes misdirection with a request for Defense "to provide information to us on a rolling or 'as available' basis." DE 103. Federal Rule of Criminal Procedure 16(b) does not impose such a deadline on defendants. The Rule provides:

> (1) *Information Subject to Disclosure.*
>
> (A) *Documents and Objects.* If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> **(i) the item is within the defendant's possession, custody, or control; and**
>
> **(ii) the defendant intends to use the item in the defendant's case-in-chief at trial.**
>
> (B) *Reports of Examinations and Tests.* If a defendant requests disclosure under Rule Rule 16(a)(1)(F) and the government complies, the defendant must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
>
> **(i) the item is within the defendant's possession, custody, or control; and**
>
> **(ii) the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony.**

---

[5] The Court's protective order prevents the detailing of the discovery by the defense at this time.

> (C) *Expert Witnesses* .
>
> (i) Duty to Disclose. At the government's request, the defendant must disclose to the government, in writing, the information required by (iii) for any testimony **that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial, if:**
>
> - the defendant requests disclosure under (a)(1)(G) and the government complies; or
> - the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> (ii) Time to Disclose. The court, by order or local rule, must set a time for the defendant to make the defendant's disclosures. The time must be sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence.

Emphasis added. To clarify defendant's rights under the United States Constitution as outlined in the 11th Circuit Pattern Jury Instruction B2.1 and B2.2, the Defense is not required to produce anything at all. If the Defense wishes to present evidence in its case in chief, then the Defense must produce that material(s). *See United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004).

Furthermore, while the government notes this is a "reactive case" to justify its ongoing discovery disclosures, DE 103:2, it fails to acknowledge that the preparation of a defense is similarly responsive to the government's discovery. A thorough, complete review of the discovery is required prior to the defense's public commitment to any particular theory of defense or proclamation of defense evidence. To do otherwise would likely constitute malpractice.

As such, the Scheduling Order in this matter does not impose any immediate or rolling deadlines on the Defense. The Defense Expert Disclosures (outside of mental health disclosures) are due on or before March 28, 2025 and non-expert

disclosures are due on or before June 6, 2025. While the government's Exhibit and Witness List are due July 28, 2025, the Defense Evidence and Witness List are due prior to Calendar Call on September 2, 2025. This schedule follows the normal litigation procedure and allows for the Defense to review the government's Exhibit and Witness list and then determine what, if any, additional evidence will be required at trial.

Moreover, the Defense is prohibited from disclosing confidential information that it does not intend to use at trial. While Counsel did not make public disclosures regarding the deadline of any notice for relief related to the Defendant's mental condition, Counsel diligently represented Mr. Routh to meet the requirements under Federal Rule of Criminal Procedure 12.2.

In direct contrast to the government's requests, the Defense is obligated to *not* produce information or documents that it examines under the Sixth Amendment right to counsel and Fifth Amendment due process provisions of the United States Constitution, which are not required pursuant to Rule 16(b). The work-product doctrine traces its roots to the Supreme Court's recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). The Supreme Court has recognized that the work-product doctrine is vital to "assur[e] the proper functioning of the criminal justice system," in that it "provid[es] a privileged area within which [a lawyer] can analyze and prepare his client's case." *See Nobles*, 422 U.S. at 238, 95 S.Ct. 2160; *see also In re Grand Jury Subpoenas*, 454 F.3d at 520

7

(explaining that "people should be free to make requests of their attorneys without fear, and that their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties"). Without that "privileged area," a lawyer's ability to plan and present his client's defense will be impaired. *See Nobles*, 422 U.S. at 238; *see also Hickman*, 329 U.S. at 511, 67 S.Ct. 385.

Work product protections, like the attorney-client privilege, protect criminal defense attorneys' ability to zealously represent their clients. *Waters v. United States*, 302 A.3d 522, 535 (D.C. 2023). Without those doctrines, "attorneys representing criminal defendants ... would have to worry constantly about whether their casefiles and client conversations would someday fall into the hands of the prosecution," thereby "inhibit[ing] the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Bittaker*, 331 F.3d at 722. "[D]oing away with [work product or attorney-client] privilege in all criminal cases would raise a nontrivial question whether defendants would still be getting effective assistance." *Id.* at 723 n.7. Allowing the government access to "every statement [the defendant] made to his first lawyer,"—which would ordinarily be protected by the attorney-client privilege—would unfairly force defendants to choose between risking a retrial severely skewed by the government's access to the privileged contents of his first counsel's casefile and forgoing a challenge to what may have been constitutionally defective assistance. *See Id.* at 723 (citing *Simmons*, 390 U.S. at 394, 88 S.Ct. 967).

8

When forced to choose between work product privilege and the ability to challenge effective assistance of counsel, "the right to a fair trial hangs on each side of the scale." *Id.* at 723 n.7. In summary, the defense should not reveal or disclose information which is not required by rule and would reveal work product information.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
250 South Australian Ave., Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 – Telephone
Kristy_Militello@fd.org

*s/Renee M. Sihvola*
Renee M. Sihvola
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar Number: 116070
109 N 2nd Ave
Ft. Pierce, Florida 34950
(772) 489-2123 - Telephone
Renee_Sihvola@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello