UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80116-AMC

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN WESLEY ROUTH,

    Defendant.
_____/

## MOTION TO COMPEL CONFIDENTIAL AND INDEPENDENT TESTING OR TO EXCLUDE GOVERNMENT'S EXPERT TESTIMONY

Defendant, Ryan Wesley Routh, by and through his undersigned counsel, requests the Court issue an order to compel confidential, independent expert inspection, photography, and testing of the firearm recovered in this case, or alternatively, to strike the government's expert testimony. Mr. Routh requests the Court enforce Federal Rule of Criminal Procedure 16(a)(1)(E) and (F), the Due Process Clause, the Sixth Amendment, and his right to present a complete defense under the United States Constitution. Specifically, Mr. Routh requests the Court issue an order compelling the government to permit defense expert inspection, photography, and testing of the Norinco SKS rifle and its parts recovered from the scene.

## FACTS

Mr. Routh is charged with Attempted Assassination of a Major Presidential Candidate, Possessing a Firearm in Furtherance of a Crime of Violence, Assaulting a

Federal Officer, Felon in Possession of a Firearm, and Possession of a Firearm with an Obliterated Serial Number. DE 21. At the scene of Trump International Golf Club in West Palm Beach on September 15, 2024, FBI Agents photographed and collected a Norinco rifle into evidence. DE 14. As discussed at the last status hearing, when the rifle was collected at the golf course, it had a scope attached by a combination of black tape, metal brackets, and silicone/putty material with a wrapper taped around the ocular lens of the scope. DE 105. The government submitted the rifle for function/operability testing with their firearm expert. *Id*. The government has not advised the defense of any outstanding or remaining firearm testing. The defense now seeks the opportunity for our expert to inspect, photograph, and test the rifle to evaluate the government's expert's findings, and to test for additional information that may be useful or helpful to the defense.

A defense evidence view was scheduled on February 25, 2025, so a defense expert, flying into town for the golf course scene visit could also view the evidence on the same day. The scene view was scheduled as late as possible, prior to the Court's deadline, to give the government sufficient time to finish any remaining testing and transport the firearm to Florida. Thus, the evidence view was conducted at the FBI building on February 25, 2025 and defense counsel and their experts viewed the firearm.[1] The government now does not oppose Defense ability to photograph

---

[1] Despite the explicit language of Fed. R. Crim. P. 16(a)(1)(E) and (F), allowing inspection, copies, and photographs of items in evidence, defense counsel was not permitted to bring photography equipment into the FBI for their evidence view. At the date of the visit, defense counsel asked both security and the evidence agents to confirm that they were unable to photograph the materials, given the discovery rules, and both sets of agents confirmed that photography was not permitted as the FBI prohibits photographs by non-FBI personnel in their building. Undersigned counsel asked the evidence agents if they would photograph the materials on their behalf, and they declined. Further, the evidence agents

evidence at the FBI facility, as long as the defense secures a court order to do so. The scope, black tape, brackets, and paper/plastic tubing were all removed from the rifle. *Id*. Defense counsel does not know the exact circumstances surrounding the removal of the these items from the scope, as those items were apparently boxed separately from the rifle and not made available for our evidence view.[2]

Due to the government disassembly of the firearm, the defense cannot inspect, measure, photograph, or test fire the firearm in its original state. Because such testing could have resulted in exculpatory material, the defense has been irreparably harmed. For example, it is now impossible for the defense to test whether the scope was attached in a wildly inaccurate or useless fashion, as it was taken off the rifle prior to any accuracy testing or location preservation by the government. Despite this spoliation, the defense does not have evidence, at this time, that the government acted in bad faith such that dismissal may be warranted.[3] *See e.g. Arizona v. Youngblood*, 488 US 51, 52 (1988) (failure to preserve "potentially useful evidence" does not constitute a denial of due process unless the defendant can show bad faith

---

stated that their instructions from the case agent(s) were that no photographs were permitted. At this point the defense team, who did not have access to phones or electronics, proceeded with the evidence view. At that point, the defense team decided that they would request photography during their expert testing of the rifle. Notably, at the request of defense counsel and to comport with the work product privilege, the agents present for the evidence view were independent and not directly involved in the case.

[2] Defense counsel asked the agents present for the evidence view the location of those items removed from the firearm but not boxed with the firearm (the tape, metal brackets, and the tube), and the agents at the evidence view stated that they did not have that information. Since then, the government has advised that they will make those items available for our review.

[3] Defense reserves its rights to cross-examine on the spoliation of the firearm, request a jury instruction, and seek any other remedy which may be appropriate if evidence of spoliation is introduced at the trial.

on the part of the police), *United States v. Brown,* 9 F.3d 907 (11th Cir. 1993) (at most, the police negligently destroyed a firearm but did not act in bad faith to warrant dismissal)*; United States v. Revolorio-Ramo*, 468 F.3d 771 (11th Cir. 2006) (destruction of evidence and poor photographic preservation was negligent and not an intent to deprive the defendant of favorable evidence).

To remedy this damage, the defense requests the opportunity to inspect and test to discover any additional information that may be revealed from the rifle, in its current state, that may be useful and helpful to the defense. The government objects "to any defense testing of the firearm," but would not oppose "a function test/dry-firing" with the FBI's safety approval measures. Upon consultation with defense experts, live fire testing would be insightful to potential defects in the rifle, accuracy of the rifle, and the capabilities/distance of the rifle. As discussed below, the defense is entitled to test for this information, which may validate or refute the government's expert's opinion testimony regarding the rifle's capabilities and to confirm or challenge the government's testing of operability.

## RIGHT OF DEFENSE TO TEST TANGIBLE OBJECTS IN EVIDENCE

The defense has a right to test the rifle pursuant to the United States Constitution and the Federal Discovery rules. The Fifth Amendment's Due Process Clause demands that, "criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta,* 467 US 479, 485 (1984). Furthermore, "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment [or Fifth Amendment] or in the Compulsory Process or Confrontation

Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986), *cf. Strickland v. Washington,* 466 U.S. 668, 684–685 (1984) ('The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment'). "To safeguard this right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta*, 467 US 479, 485 (1984) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)).

In addition, Fed. R. Crim. P. 16(a)(1)(E) mandates that the government must permit the defendant to inspect tangible objects within its possession, custody, or control if the item is material to preparing the defense or if the government intends to use the item in its case-in-chief. Notably, the "materiality" standard for purposes of Fed. R. Crim. P. 16 is a low threshold and satisfied if information would have helped in preparing a defense. *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013).

Finally, defense experts are entitled to "access on equal terms" to the government's evidence. *United States v. Shrake*, 515 F.3d 743, 747 (7th Cir. 2008) (citing *Wardius v. Oregon*, 412 U.S. 470 (1973)). Indeed, refusal to provide a defendant's expert with such equal access would give the Court "discretion to prevent the prosecution's expert from testifying—or at least to prevent [them] from testifying

to matters that [they] investigated using forensic tools that were not available to the defense expert." *Shrake*, 515 F.3d 743. Such equal access commonly includes access to prohibited materials, like the sexually explicit material in *Shrake*, but the discovery rules make no such limitations. "A defendant in a drug prosecution has a right to have an expert of his choosing perform an independent analysis on the seized substance." *United States v. Rolande-Gabriel*, 938 F.2d 1231, 1238 (11th Cir. 1991); *see also United States v. Butler*, 988 F.2d 537, 543 (5th Cir. 1993) ("a concomitant part of the examination or inspection [is] the right of the accused to have an independent chemical analysis performed on the seized substance."); *United States v. Ramonet*, 17-CR-80090-DMM, DE 23 (Oct. 3, 2017) (ordering transferring alleged methamphetamine to defense expert for independent testing). The district's local rules also explicitly permit defense testing of narcotics, which like child sexually explicit material is often illegal contraband, in order to comport with the Constitution and the federal discovery rules. *See* Local Rule 88.10(k) ("The government shall, upon request, deliver to any chemist selected by the defense, who is presently registered with the Attorney General in compliance with 21 U.S.C. §§ 822 and 823, 70 and 21 C.F.R. § 101.22(8), a sufficient representative sample of any alleged contraband which is the subject of this indictment, to allow independent chemical analysis of such sample"). Local Rule 88.10(l) and (m) also provides for independent, expert testing of automobiles, airplanes, and latent/palm prints.

Here, the defense merely requests equal expert access and independent testing for critical items of evidence: the rifle and its associated parts. The defense has hired

its own experts who wish to inspect, photograph, and test fire the rifle. Depending on their results, the defense may call one or more experts at trial to rebut or impeach the government's expert or to offer additional evidence.

The government objects to defense firearms testing, claiming at the status hearing on March 7, 2025 that "It is utterly unprecedented. I was going to suggest, if they want to raise the issue, they need to put it in a motion because it would be completely without precedent." Transcript, DE 107, pg 27. Yet, undersigned counsel Militello previously conducted similar expert firearm testing in the case of *United States v. Edwin Crawford*, 2016-cr-80170-RLR, DE 78, (July 14, 2017), and provided the government a copy of the *Crawford* Order on January 29, 2025 to attempt to reach an agreement regarding the expert testing. Thus, this request is not unprecedented.

In the *Crawford* case, the United States agreed to expert testing of two firearms and alleged silencers. *See* Exhibit 1. The items were held in evidence at a local ATF facility and were sent to a Michigan ATF facility for the defense expert in Michigan to conduct independent examination, including disassembly and test firing. *Id*. And while homicides and attempted homicides are rare in federal court in Palm Beach County, firearms are routinely sent to defense expert labs in homicide cases in state court. *See e.g.* Exhibits 2 a-c (agreed orders in *State of Florida. v. Belizaire*, 22CF002246; *State of Florida v. Kirkwood*, 21CF007822; and *State of Florida v. Shuler,* 17CF011929).

Notably, the United States has previously agreed to the testing firearm parts with the defendant's expert. For example, in *United States v Troy Cecsarini,* 2022-cr-

00184-TL, DE 26, (W.D. Wash. January 9, 2024), the parties agreed to transfer the firearm and related parts from the Customs and Border Protection office in Seattle, Washington to the defense expert's lab without court intervention. *See* Exhibit 3. A motion to continue states: "The defense expert is based outside of Atlanta, Georgia. Since December 2023, the defense has been working with the government and the lead agents to transfer the necessary exhibits to the defense expert. However, for various logistical and scheduling reasons, the exhibits did not get transferred until early January 2024." *Id.* This is one of the same experts the defense intends to use for testing in this case and the defense is willing to agree upon safety procedures.

To determine the validity of the government's expert findings, the defense must have equal access to the evidence. In this case, the government has conducted an operability test on the firearm but has not tested its accuracy or distance. The defense seeks to not only confirm or challenge operability, but also to conduct additional testing to assess the validity of other government expert opinions of its capability of target striking. The firearm's accuracy and effective range could impact the validity of the government's expert's opinion and certainly provide admissible defense rebuttal or impeachment evidence. Further, it may have been impossible for the defendant to commit the alleged crime if the firearm was defective, inaccurate, or had a limited range. Indeed, the government may be under an obligation to provide such information pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), per the Magistrate Judge's order on September 16, 2024 (DE 8) ("The government has a duty to disclose any evidence that goes to negating the defendants guilt, the credibility of

a witness, or that would reduce a potential sentence"), and Local Rule 88.10(c). *Brady* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Thus, the Court should also grant this motion to comport with Due Process.

This request is consistent with the principles of fairness and justice, ensuring that the defendant has a full and fair opportunity to prepare his defense. Specifically, such inspection and testing is necessary to properly investigate the physical evidence and discovery in the case, to provide effective assistance of counsel, to competently cross-examine the government's experts, and to determine whether witnesses should be called on the defendant's behalf. Without said testing, the defense would be forced to blindly accept the government's incomplete testing and their expert's forensic opinion. This does not comport with the Constitution or the discovery rules. The defense may challenge any part of the government's testing and the opinion(s) of their expert.

## **DEFENSE REQUEST FOR INDEPENDENT TESTING OF RIFLE**

In this matter, the defense requests this Court to permit the following inspection and testing, as outlined in defense Proposed Order to Permit Independent and Confidential Testing. *See* Defense Exhibit 4.

The defense is willing to conduct this testing at a government approved FBI, ATF, or other federal or state police firing range facility. Alternatively, the requested materials may be transported to the defense expert's laboratory and returned. For

either of these options, the defense will safeguard the evidence while it remains in defense possession and would comply with any reasonable government requests for transportation. This order would appropriately balance the government's interest in safeguarding the evidence with the defense interest to have equal access to the evidence and prepare a defense. There would be no undue prejudice to the government for the short duration of this expert testing. Unlike the government's prior testing, which disassembled the rifle and made testing of it in its original condition impossible, the defense testing will not further destroy the evidence. Besides objecting to the removal of "evidence from FBI's chain of custody", the government reserves stating their logistical position of defense testing unless and until the Court orders the ability of such testing.

Further, the defense will agree to reasonable procedural safeguards, as in *Crawford*, to preserve the evidence, such as having an independent evidence custodian present to monitor the integrity of the evidence. However, the agent should not record or videotape the procedure or discuss the testing with the government. *See United States v. Pecina*, 302 F.R.D. 492, 496 (N.D. Ind. 2014) ("The government shouldn't get a leg up in discrediting the defense expert's analysis by having a video of her work to criticize in court where the defense did not have the same opportunity.") This procure is not administratively onerous, as it would take a very short amount of time and not unnecessarily consume government resources.

## DEFENSE ALTERNATIVE REQUEST TO EXCLUDE ANY EXPERT FORENSIC EXAMINATION ABOUT THE FIREARM

Alternatively, if the Court does not compel the government to provide equal access to the rifle for independent testing, then the defense respectfully requests this Court exclude any government expert testimony regarding the actual or potential operability, function, or accuracy of the firearm. The Court has broad discretion in fashioning a remedy for discovery violations. *See* Fed.R.Crim.P. 16(d)(2). "In exercising its broad discretion to impose sanctions on the government for failure to comply with a discovery order, a district court should consider: '(1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith ...; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.'" *United States v. Peveto*, 881 F.2d 844, 863 (10th Cir.1989). Excluding the government's expert opinion regarding operability or function of the firearm is the type of remedy discussed in *Shrake*, 515 F.3d 743, when the government refused to allow equal access to evidence. Exclusion of such testimony is the only remedy here, if the defense is not permitted equal access to photograph, inspect, and to test and live fire the rifle.

WHEREFORE, the defendant respectfully requests this Court to enter an order permitting defense counsel and their experts to come to a federal or state facility for the above mentioned testing pursuant and/or to permit defense to obtain the rifle to be tested at a defense facility and expeditiously return said item, according to Federal Rules of Evidence 16b and the United States Constitution.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

| | |
|---|---|
| *s/ Kristy Militello* | *s/Renee M. Sihvola* |
| Kristy Militello | Renee M. Sihvola |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Attorney for the Defendant | Attorney for the Defendant |
| Florida Bar No. 0056366 | Florida Bar Number: 116070 |
| 250 South Australian Ave., Suite 400 | 109 N 2nd Ave |
| West Palm Beach, Florida 33401 | Ft. Pierce, Florida 34950 |
| (561) 833-6288 – Telephone | (772) 489-2123 - Telephone |
| Kristy_Militello@fd.org | Renee_Sihvola@fd.org |

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Renee Sihvola*
Renee Sihvola