UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON/McCabe

UNITED STATES OF AMERICA

vs.

RYAN WESLEY ROUTH,

    Defendant.
                                         /

### GOVERNMENT'S MOTION TO PRECLUDE LEGALLY PROHIBITED AND FACTUALLY BASELESS DEFENSES

    The Court is already "faced with an onerous burden in arriving at an impartial jury in this high-profile case." *United States v. Paradies*, 98 F.3d 1266, 1281 (11th Cir. 1996). This motion concerns what comes after that process: *keeping* the jury impartial and focused on the evidence. The Eleventh Circuit has held that a defense without support should not be presented to a jury. Here, the Defendant has already suggested he will try to mount certain defenses that are impermissible legally given the charges, or could not possibly be supported factually. To that end, we ask this Court to preclude Routh from raising such defenses, which could only serve to distract and confuse the jury by throwing concepts like "justification" and "impossibility" at them, hoping one juror will throw sand in the deliberative gears.

### Background

    This case arises out of the Defendant's calculated plan to assassinate now-President, then Major Presidential Candidate, Donald J. Trump (hereafter, "President Trump" or "the President") before he could be re-elected. Over the course of months, the Defendant – who possesses a Hawaii driver's license and has no ties to South Florida – intentionally plotted to kill President Trump, and took significant steps toward making that happen, culminating in his attempt to assassinate the President in West Palm Beach at the Trump International Golf Club on September 15, 2024, from

1

a sniper hide he carefully set up, using a military-grade SKS rifle that he possessed illegally. A Secret Service agent effectively thwarted the assassination when he unexpectedly came across Routh hiding near the 6th green. Routh targeted the agent, who then fired his service weapon in Routh's direction; Routh fled, running across the street and escaping in a car bearing a license plate that did not belong to him. Law enforcement eventually stopped the car and apprehended Routh in neighboring Martin County.

The indictment alleges five crimes. Count 1 charges Routh with the attempted assassination of a Major Presidential Candidate, contrary to 18 U.S.C. §351(c). It will be our burden to show that Routh intended to kill President Trump and took at least one "substantial step" toward doing so; a substantial step must be some act that strongly corroborates the intent. *See, e.g.*, *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001). Count 2 charges Routh with knowingly possessing and brandishing a firearm in furtherance of that assassination attempt, contrary to 18 U.S.C. §924(c)(1)(A)(ii). Count 3 charges that Routh intentionally assaulted a federal officer (the Secret Service agent), in violation of 18 U.S.C. §§111(a)(1) and (b). Count 4 alleges that Routh, a convicted felon, knowingly and unlawfully possessed a firearm, contrary to 18 U.S.C. §922(g)(1). Count 5 alleges that Routh knowingly possessed a firearm with an obliterated serial number, contrary to 18 U.S.C. §922(k).

## **Legal Standard**

A district court should exclude evidence and argument regarding a legally insufficient defense. *See, e.g., United States v. Bailey*, 444 U.S. 394, 416 (1980) ("it is a testament to the importance of trial by jury and the need to husband the resources necessary for that process by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses"). As the Eleventh Circuit has long recognized, evidence "based upon an invalid defense should be excluded because [it is] irrelevant as a matter of law to the charges of the indictment." *United States v. Anderson*, 872 F.2d 1508, 1516 n.12 (11th Cir. 1989); *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985) (same). The imperative that a defendant establish both the legal and factual basis for arguing a defense is mirrored by case law governing jury instructions, which

holds that "[a] defendant has the right to have the jury instructed on a theory of defense only if the proposed instruction presents a valid defense and if there has been some evidence adduced at trial relevant to that defense." *United States v. Duperval*, 777 F.3d 1324, 1334 (11th Cir. 2015) (holding defendant not entitled to a jury instruction where there was no evidence to support his defense). Moreover, it is not enough for the court simply to announce that a particular defense is off-limits; it must go further and exclude evidence or argument that would only relate primarily to that defense. *See, e.g.*, *United States v. Alvear*, 181 F. App'x 778, 780 (11th Cir. 2006).

## Argument

Each defense addressed below is untethered to the law, to the facts, or to both, and is therefore irrelevant, objectionable, and inadmissible.

### I.     The Court should exclude any type of "justification" defense.

The Court should exclude any defense based upon the perceived necessity or justification for any of the charged offenses – especially attempting to assassinate President Trump. The idea is outrageous, offensive to the rule of law, and an affront to this nation's history; but Routh has signaled that he intends to make just such arguments.

For example, in several emails from jail, Routh boasted about why he is in custody and, ostensibly, why he attempted to assassinate the President. For instance, in a January 29, 2025, email, Routh stated that he was jailed for doing his duty, responsibility, and obligation to humanity. In other email communications dated December 5, 2024, Routh attempted to set up a "legal defense fund," encouraging supporters to "stand together in grand recognizable solidarity beside Ryan Routh to defend all that is good in the world and to help save humanity and democracy for our children and the world." Dec. 5, 2024 Email from FDC-Miami. In that same call for support, Routh compared himself to the country's "forefathers" who "worried and fought to ensure our America never became a monarchy and while we whould (sic) always steer away from violence, the duty and responsibility to maintian (sic) and steward our democracy falls on each and every one of us." *Id*. These are only a few of many examples. Clear from these remarks is Routh's

3

intention to argue before a jury that his actions were in defense of some perceived "greater good" and that his actions were therefore necessary and justified.

We are unaware of any decision holding that necessity or justification may be argued as a defense to a charge of attempted assassination, assaulting a federal agent, brandishing a firearm in furtherance of a crime of violence, or possessing a gun with an obliterated serial number. While such defenses have been discussed in felon-in-possession prosecutions, the standard for allowing them to reach a jury (typically under the label "duress") is impossible for Routh to meet, as discussed below, and are reserved for truly "extraordinary circumstances." *United States v. Deleveaux*, 205 F. 3d 1292, 1298 (11th Cir. 2000). In this District, for example, justification-type defenses have been rejected repeatedly in terrorism cases or other criminal prosecutions where defendants suggested that perceived political, moral, or religious reasons made their criminal conduct necessary. *See, e.g., United States v. Grenon*, No. 21-20242-CR-Altonaga, DE184 (S.D. Fla. 2023) (religion); *United States v. Khan*, No. 11-20331-Cr-Scola, DE747:16 (S.D. Fla. 2013) (religion, politics, morality), *aff'd*, 794 1288 (11th Cir. 2015); *United States v. Batiste*, No. 06-20773-Cr-Lenard, DE1307:29 (S.D. Fla. 2010) (religion, politics, morality), *aff'd*, 661 F.3d 1105 (11th Cir. 2011); *United States v. Padilla, et al.*, No. 04-60001-Cr-Cooke (DE1189) (religion, politics, morality), *aff'd*, 657 F.3d 1085 (11th Cir. 2011); *see also Montgomery*, 772 F. 2d at 736 (affirming district court's refusal to admit evidence supporting defense of justification under international law where defendants had reasonable legal alternatives to criminal acts).

The Ninth Circuit's decision in *United States v. Aguilar*, 883 F. 2d 662 (9th Cir. 1989) is another apt example of the defense's unavailability. In *Aguilar*, the defendants, who were members of the sanctuary movement, were convicted of smuggling undocumented aliens from Central America across the border with Mexico and into the United States. They purposefully avoided Immigration and Naturalization Service (INS) inspection and the lawful entry process. The defendants claimed that they did so in order to save the aliens from persecution and death in their countries of origin, particularly El Salvador and Guatemala, which were then in the grip of particularly bloody civil wars. The trial court precluded the proposed necessity defense, and the

4

court of appeals affirmed, rejecting the defendants' argument that their failure to seek legal alternatives to the alien smuggling was due to the INS's continuing effort to frustrate asylum claims by individuals from these countries, which the defendants claimed rendered the process futile. *Id.* at 693. The court more broadly doubted the sufficiency of the proffer with respect to the imminent harm faced by the aliens, noting that the proffer failed to specify "that the particular aliens assisted were in danger of imminent harm. Instead, it refers to general atrocities committed by Salvadoran, Guatemalan, and Mexican authorities." *Id.* at 693 n.28*; see also United States v. Cottier*, 759 F. 2d 760, 762 (9th Cir. 1985) (rejecting defendant's argument that his violation of 18 U.S.C. § 1382, unlawful entry onto a military base, was justified and necessary because U.S. missile program was an imminent threat to human life and violation of international law) (citing *United States v. May*, 622 F.2d 1000, 1008 (9th Cir. 1981)); *United States v. Maxwell-Anthony*, 129 F. Supp. 2d 101, 105 (D.P.R. 2000) (rejecting justification defense based upon "alleged international law violations and potential harm to humanity").

Simply put, there is no legal basis for the Defendant to present a necessity, justification, or "greater good" defense to the charges, even if the concept were not outlandish in a democratic society. The prosecution must prove each element of the charged offenses beyond a reasonable doubt, including those elements relating to the Defendant's state of mind. But, if the jury finds the Defendant had the state of mind necessary to commit the crimes charged in the indictment, then it is not a defense that he believed that violating the law was religiously, politically, or morally justified, or that ultimate good would result as he sees it.

## II. The Court should exclude any defense of duress.

Routh may try to pigeonhole these themes of necessity and justification into the recognized affirmative defense of duress, arguing that he had no alternative to committing his crimes.[1] The

---

[1] The Eleventh Circuit has treated the concepts of duress, necessity and justification as interchangeable, applying the same standards to them. *See, e.g.*, 11th Cir. Pattern Jury Instr., Criminal S16. We have broken out necessity and justification in this motion only because the common understanding of those terms aligns more closely than duress with what we expect Routh will argue at trial. To the extent the Court does not reject justification or necessity as concepts in

Eleventh Circuit, however, has imposed severe restrictions on when a defendant can pursue a duress defense. Routh in this case cannot possibly meet any, let alone all, of the criteria for such a defense to reach the jury.

Defendants in murder or attempted murder cases, and in gun possession prosecutions, often argue that they had no alternative to their crimes – and accordingly their conduct should be excused by the jury, even if the Government proves the elements of the charged offenses. Defendants charged with these serious crimes often resort to claiming "duress" for a simple reason: they know jurors bring their own ideas about what duress means into the jury box, and that there's a high chance of confusion or nullification that would frustrate unanimity. Yet such defenses rarely reach juries for a similarly simple reason: unlike claims of inadequate investigation and the like, duress affirmatively requires a defendant "first produce or proffer evidence sufficient to prove the essential elements of the defense." *United States v. Amede*, 977 F.3d 1086, 1102 (11th Cir. 2020) (quoting *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985)); *see also United States v. Dicks*, 338 F.3d 1256, 1257 (11th Cir. 2003) (providing that "the defendant bears the burden of proving" an "affirmative defense to [a] criminal statute[ ]").

The duress defense is established only when the defendant: (1) "acted under an immediate threat of death or serious bodily injury"; (2) "had a well-grounded fear that the threat would be carried out"; and (3) "had no reasonable opportunity to escape or inform [the] police." *United States v. Wattleton*, 296 F.3d 1184, 1196 n.20 (11th Cir. 2002) (alteration in original) (quotation marks omitted); *see also United States v. Lee*, 694 F.2d 649, 654 (11th Cir. 1983) (concluding the defendant's failure to take advantage of the numerous reasonable opportunities he had to inform the police of the alleged duress he was under precluded any duress defense). And the Court of Appeals requires a showing that the defendant found himself in circumstances that were dire, extreme, and unusual through no doing of his own. *See Wattleton*, 296 F.3d at 1196 n.20; *see also*

---

this case out of hand, it should apply the same stringent criteria to those defenses that it would to a duress defense – criteria Routh cannot imaginably meet.

*Bailey*, 444 U.S. at 410 ("[I]f there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the [duress] defense[ ] will fail." (quotation marks omitted)).

The Eleventh Circuit pattern instruction, for example, requires the defendant to prove: (1) there was an unlawful and present, immediate, and impending threat of death or serious bodily harm to the Defendant or another," (2) "the Defendant's own negligent or reckless conduct did not create a situation where the Defendant would be forced to engage in crime," (3) "the Defendant had no reasonable legal alternative to violating the law," and (4) "avoiding the threatened harm caused the criminal action." Eleventh Cir. Pattern Instr., Criminal, S16; *see also United States v. Harris*, 7 F.4th 1276, 1292 (11th Cir. 2021) (quoting *Amede*, 977 at 1102). This analysis requires "'an objective inquiry into whether a defendant's conduct, although illegal, represented her only reasonable alternative to serious bodily injury.'" *Harris*, 7 F.4th at 1293 (quoting *United States v. Dixon*, 413 F.3d 520, 523 (5th Cir. 2005), *aff'd on other grounds*, 548 U.S.1 (2006)). The defendant bears the burden of proving duress as an affirmative defense by a preponderance of the evidence, with the defense not affecting the *mens rea* element. *Deleveaux*, 205 F.3d at 1297 ("We also conclude that this limited justification defense does not negate any element of § 922(g)(1), but is an affirmative defense to § 922(g)(1).").

The need for this combination of circumstances all being present is why mounting a necessity defense is incredibly unlikely even though the evidentiary "threshold burden is extremely low" for each of the elements in isolation. *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995). And indeed, the Eleventh Circuit has made clear that these four elements are an all-or-nothing proposition: that "[t]o be able to pursue a defense of duress, a defendant must (if asked) proffer evidence sufficient to prove *each* of the elements of that defense." *Alvear*, 181 F. App'x at 780 (citing *United States v. Alzate*, 47 F.3d 1103, 1104 (11th Cir. 1995)) (emphasis added); *see also Montgomery*, 772 F.2d at 736. Then, "[i]n the absence of a prima facie showing of duress, evidence of duress is irrelevant and may be excluded, and a jury instruction is not appropriate." *United States v. Ibarra-Pino*, 657 F.3d 1000, 1004 (9th Cir. 2011). That's why the Eleventh Circuit

7

has routinely affirmed the exclusion of duress defenses in cases where, for example, immediacy of harm is not present or there was an opportunity to escape.[2]

Routh cannot imaginably proffer evidence that his criminal conduct met all of these criteria. There is no evidence that his crimes, including the calculated targeting of the President, were due to "an immediate threat," let alone one of "imminent harm"; that he had a "well-founded belief," or any belief, that the threat would be carried out; or that he "had no reasonable opportunity to escape or inform police." *See Amede*, 977 F.3d at 1102. The Court should therefore exclude any defense of duress, as well as any evidence or argument primarily relevant to such a defense. *See Alvear*, 181 F. App'x at 780 (affirming exclusion of evidence—defendant's own testimony—regarding "threats and coercion, evidence that might have confused the issues and misled the jury into believing that Alvear's actions could be excused because of duress. The testimony Alvear sought to give would have provided the jurors with information that Alvear's acts were coerced despite the fact that he could not, as a matter of law, rely on the duress defense.").

### III. The Court should exclude any defense premised on the First Amendment.

The Defendant may also argue that his right to "free speech" or political expression protects his criminal conduct, at least on Count 1. Without control on the front end, jurors' preexisting and deeply-held beliefs about the First Amendment can easily sow confusion when they go back to deliberate. But Routh's First Amendment rights have no bearing on the charges in this case. As

---

[2] *See, e.g., Amede*, 977 F.3d at 1102; *United States v. Rice*, 259 F. App'x 300, 302 (11th Cir. 2007); *Foster*, 153 F. App'x 674, 676 (11th Cir. 2005); *United States v. Lee*, 694 F.2d 649, 654 (11th Cir. 1983); *United States v. Bell*, 214 F.3d 1299, 1301 (11th Cir. 2000) (no necessity justification for a § 922(g) defendant when the defendant's home was shot at four days before the gun was seized); *United States v. Taylor*, 457 F. App'x 835, 837 (11th Cir. 2012) (no duress defense to possession with intent charge where the supplier made a verbal threat but there was no physical harm and the defendant did not go to the police afterward); *Deleveaux*, 205 F. 3d at 1297 (expressing doubt that defendant's evidence warranted a justification instruction in the first place); *United States v. Parker*, 566 F.2d 1304, 1305-06 (5th Cir. 1978) (justification not established by defendant who retained possession of a gun for thirty minutes after being attacked in his home); *United States v. Scales*, 599 F.2d 78, 8 (5th Cir. 1979) (denying justification defense where defendant purchased a gun and gave it to his wife after their home had been burglarized).

a matter of law, no matter what evidentiary showings he might try to make, the First Amendment does not provide a defense should the Government prove the elements of the charged offenses.

In particular, the Supreme Court has recognized repeatedly that the First Amendment does not protect against violent acts. That's why the Supreme Court has long made clear that "[v]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact … are entitled to no constitutional protection," *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984), and that "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment," *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993). "These [Supreme Court] cases make clear that a line exists between expressions of belief, which are protected by the First Amendment, and threatened or actual uses of force, which are not." *United States v. Rahman*, 189 F.3d 88, 115 (2d Cir. 1999) (affirming conviction of World Trade Center bombing and other crimes).

The guiding principle that the First Amendment does not extend to violence defeats any potential First Amendment defense to the charges in this case. Courts have made clear that physical contact as mundane as spitting on or throwing an egg at a congressperson is not protected speech—that "[e]ven if meant only to punctuate the communication of a protest, hurling missiles at a speaker is not under any circumstances worthy of inclusion under the protection afforded symbolic speech no matter how entangled with forms of protected speech." *United States v. Calderon*, 655 F.2d 1037, 1039 (10th Cir. 1981); *see also United States v. Guerrero*, 667 F.2d 862, 868 (10th Cir. 1981) (same); *United States v. Masel*, 563 F.2d 322, 322-23 (7th Cir. 1977) (spitting on a senator not protected by First Amendment). More generally, courts in this District have often rejected before trial, or in jury instructions, defendants' claims that the First Amendment shielded their criminal conduct. *See, e.g., Padilla, supra*; *Khan, supra*; *United States v. Grenon*, No. 21-20242-CR-Altonaga, DE184 (S.D. Fla. 2023). So too judges elsewhere. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 127 (4th Cir. 2014) ("'The right of freedom of speech and to engage in peaceful assembly extends to one's religion and one's politics [but] the First Amendment is not a defense to the crimes charged in the indictment.'"). The sum of all this is that this Court should not

9

permit the Defendant to argue that his conduct enjoyed any form of First Amendment protection—a claim that has no basis in law or fact. If the prosecution proves the elements of the charged offenses, Routh is not entitled to acquittal regardless whether, in committing these crimes, Routh was seeking to exercise his right to free speech or political expression.

### IV.   The Court should exclude any defense of factual impossibility.

The defense suggested at the last status conference that Routh may be innocent of at least Count 1 if the SKS rifle he took to the golf course would not have hit his target, either because it was inoperable or because the target was out of range, and thus the President would not have been killed (Hearing Tr., ECF 107 at 31). Defense counsel were even more explicit in their recent motion to compel a "live-fire" test of the rifle, speculating that the rifle's failure to fire properly now during a test (by a paid defense expert six months after the crime) might show that it was "impossible" for Routh to have succeeded in killing the President on September 15 (ECF 114 at 5 8). But impossibility, or a defendant's inability to execute his plan, is simply not a defense to an attempt crime.

"A defendant's culpability for a charge of attempt depends only on the circumstances as he believes them to be, not as they really are." *United States v. Hsu*, 155 F.3d 189, 203 (3d Cir. 1998) (quotation marks omitted).  That is why "[o]n many occasions, [the Eleventh Circuit] has affirmed attempt convictions when the defendant could not have achieved the final required act because it would have been impossible to commit the actual crime." *United States v. Root*, 296 F.3d 1222, 1230 (11th Cir. 2002) (collecting cases).[3]

"All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt." *United States v. Williams*, 553 U.S. 285, 300 (2008) (quoting 2 W. LaFave, Substantive Criminal Law § 11.5(a)(2) (2d ed. 2003)). While "[l]egal impossibility occurs when the actions which the defendant performs, or sets in motion, even if fully carried out

---

[3]   *Root*'s holding, which also concerned a Sentencing Guidelines issue, was superseded by statute through Amendment 732 to the Sentencing Guidelines. *See United States v. Jerchower*, 631 F.3d 1181, 1186 (11th Cir. 2011).

10

as he desires, would not constitute a crime," *United States v. Conway*, 507 F.2d 1047, 1050 (5th Cir. 1975), "[f]actual impossibility denotes conduct where the objective is proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing it about." *Id*.

Courts have long applied the distinction between legal and factual impossibility to preclude defendants from raising whether they could actually execute their plans, and the importance of courts precluding these defenses rises as the scope and scale of an attempt ratchet up. That's why published cases from circuit after circuit (including the Eleventh) apply this principle to contexts ranging from attempted murder to material support of terrorists. *See, e.g., United States v. Mehanna*, 735 F.3d 32, 53 (1st Cir. 2013) (factual impossibility not a defense in attempting to provide material support knowing or intending its use in a conspiracy to kill persons abroad."); *United States v. Saunders*, 166 F.3d 907, 916 (7th Cir. 1999) ("factual impossibility is not a defense to a charge of attempted murder."); *United States v. Contreras*, 950 F.2d 232, 237 (5th Cir. 1991) (no factual impossibility defense for attempt to kill a witness even though the defendant "did not know where she lived"); *United States v. Temkin*, 797 F.3d 682, 690 (9th Cir. 2015) (factual impossibility not a defense to attempt to extort and kill); *see also, e.g., United States v. Innella*, 690 F.2d 834, 835 (11th Cir. 1982) (for attempted drug trafficking, "the defense of impossibility … is of no help.").

In rejecting these factual impossibility claims, courts have cut through defendants' attempts to distract juries from the real issue for attempt crimes: whether a "substantial step" occurred. In *Mehanna*, for example, the First Circuit affirmed a district court precluding a factual impossibility defense where a defendant dropped out of school and "flew to Yemen armed with the name of a possible al-Qu'ida liaison" despite there being no al-Qu'ida cell there, 735 F.3d at 53, correctly re-focusing the discussion on whether the defendant's actions—in particular, his flight to Yemen—constituted a substantial step for attempt purposes. Similarly in a case where the defendant incorrectly believed himself to be shooting at President Clinton, the D.C. Circuit explained that "under the statute and the common law of attempt which it incorporates, the identity of the person at whom [the defendant] fired his gun is irrelevant" because "in the days and hours before the

11

shooting, he engaged in numerous 'substantial steps' toward his objective of assassinating the President." *United States v. Duran*, 96 F.3d 1495, 1507 (D.C. Cir. 1996). The *Duran* circuit court did not need to expressly address factual impossibility because the defense did not appeal the *Duran* district court's sharp rejection of the claim. As the district judge explained, the defense's "semantical dance" of describing its argument that "the Defendant could not have been prosecuted under the statute had he succeeded in killing" the man he mistook for President Clinton as some type of "statutory construction argument combined with a jurisdictional argument," was nonsense because it was in truth "essentially one of legal impossibility." *United States v. Duran*, 884 F. Supp. 577, 579-80 (D.D.C. 1995), *aff'd*, 96 F.3d 1495. Which is all to say that no matter how a defendant tries to gussy it up, any denial that the defendant's plan would actually work is beside the point.

Those guiding principles make clear that this Court should preclude any defense based on factual impossibility—the notion that the Defendant could not have killed President Trump, whether due to poor planning, gun defects, intervention by law enforcement, or otherwise. Those considerations have nothing to do with whether the Defendant intended to kill President Trump and took a substantial step toward doing so, which is the heart of the crime charged as Count 1. To be clear: the Government is not asking the Court to preclude the defense from offering evidence relevant to those elements, but any such evidence is only relevant if it tends to prove something about the Defendant's state of mind—i.e., the "circumstances as he believe[d] them to be," *Hsu*, 155 F.3d at 204 — and must be limited in its permitted uses to that specific element.

V.    **The Court should exclude any defense of "victim-blaming."**

Whether he casts blame on President Trump personally, or the brave men and women in the Secret Service that were protecting President Trump when he was Major Presidential Candidate, the Court should exclude any defense based upon the supposed fault of others. Again, absolutely no case allows a defendant to argue that, even if the Government proves the elements of the charges against him, he should be acquitted because of the alleged misconduct or negligence of third parties. And because no such defense exists, the Court should exclude any evidence or

12

argument relating primarily to those topics.

Routh cannot argue, for example, he never would have made it to the Trump International Golf Club had law enforcement been more vigilant. Nor can Routh argue, having signaled as much in his prison communications, that his criminal conduct was appropriate because of the status and "principles" of the intended victim, or because he believes he is a better person than President Trump: "We must rally support and build a large group to stand behind me and back my case and defense---me must do all we can to show that my character is better than that of Trump as it is me against him." Dec. 2, 2024 Email from FDC-Miami. Courts routinely reject "victim-blaming" tactics in other prosecutions – sometimes by statute or rule *(see, e.g.*, FRE 412 in sex offenses cases), and other times relying on case law. *See, e.g., United States v. Svete*, 556 F.3d 1157, 1665 (11th Cir. 2009) ("'[t]he negligence of the victim in failing to discover a fraudulent scheme is not a defense'").

## VI. The Court should reject any "nullification" defense, in whatever form.

We have tried in this motion to identify the most likely impermissible defenses we will see from Routh, based upon his statements and those of his counsel to date. At this point, however, we have incomplete guidance as to what additional arguments may emerge during trial. While more tailored rulings, tied to specific pieces of evidence, may have to wait, the Court can today make clear that it will not allow any defense (or evidence or argument) that would serve no purpose only to invite jury nullification of this prosecution.

While a catch-all order to this effect is not needed in every case or for every defendant, Routh's communications and purported justifications for his actions make it, unfortunately, imperative here. We must be sure there will be no argument or testimony from the defendant for acquittal even if the government proves the elements of the charged offenses – whatever the supposed grounds for that acquittal. Courts routinely enter such orders and the Eleventh Circuit expressly forbids such arguments or testimony.

In *United States v. Funches*, 135 F. 3d 1405 (11th Cir. 1998), the Eleventh Circuit commented on evidence that the defendant insisted was relevant, but in reality was simply an

13

invitation to the jury to ignore the facts and law. As the court put it, the defendant's real contention, given his failure to proffer facts sufficient to support a purported affirmative defense, was that "he had a due process right to present evidence the only relevance of which is to inspire a jury to exercise its power of nullification." *Id.* at 1408. However, nullification is not a right of the jury, and the exercise of such power is a dereliction of the jury's sworn duty. *Id.*

A jury has no more "right to find a guilty defendant not guilty than it has to find a not guilty defendant guilty, and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." *Id.* at 1409 (citation and quotation marks omitted). "Because the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential for nullification is no basis for admitting otherwise irrelevant evidence." Other courts in this Circuit and elsewhere have made the same point. *See United States v. Baptista-Rodriguez*, 17 F. 3d 1354, 1363 (11th Cir. 1994) ("If the court determines that the defendant's proffered evidence is irrelevant or otherwise inadmissible, it should issue a ruling in limine precluding the introduction of that information at trial."); *United States v. Bifield*, 702 F. 2d 342, 350 (2nd Cir. 1983) ("A defendant's right to present a full defense, including the right to testify in his own behalf, is not without limits. In responding to the charges against him an accused must comply with the established rules of procedure and evidence, as must the prosecution, in order to insure a fair trial . . . A criminal defendant's right to present a full defense and to receive a fair trial does not entitle him to place before the jury evidence normally inadmissible."); *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995) ("[D]efendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the law."). Especially in a case like this one, where the defendant will surely seek to inject politics and personality into the proceedings, relying upon the Rules of Evidence is not enough. The Court should at the outset preclude any defense going primarily to nullification, and then apply that ruling going forward to screen specific pieces of evidence and argument the defense may offer

14

impermissibly at trial.

### VII. The Court should exclude any defense of "diminished capacity."

Routh has confirmed that he will not be pursing an insanity defense in this case or offering any expert testimony subject to Fed. R. Crim. P. 12.2 regarding his mental health.[4] So a formal insanity defense, and expert mental health testimony, are off the table for trial. But we remain concerned that Routh may slide in lay evidence supporting a defense of "diminished capacity" – in other words, that some alleged mental impairment affected his ability to commit any of the charged offenses. There is no such defense, however, and evidence that relates primarily to whether a defendant had the capacity to form criminal intent is forbidden absent an insanity defense. *See, e.g.*, *United States v. Westcott*, 83 F.3d 1354, 1358-59 (11th Cir. 1996); *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990).

As the Eleventh Circuit explained in *Cameron*, absent strict limits, the use of mental health-related evidence may "present a dangerously confusing theory of defense more akin to justification and excuse." *Id.* "Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury's from focusing on the actual presence or absence of mens rea, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of mens rea." *Id.* (citation and internal quotation marks omitted). The court in *Cameron* upheld the district judge's exclusion of proposed mental health evidence where the defendant failed to show how the proposed evidence would actually negate intent. *Id.* at 1068.

We do not know yet exactly what lay evidence of a mental health issue Routh may offer under the guise of disputing knowledge or intent. What the Court can do at this point, however, is rule plainly that, under *Cameron* and *Westcott*, evidence or argument relating primarily to Routh's

---

[4] The defense did not provide any notice of insanity defense or notice regarding mental health experts by February 3, 2025, as required by this Court's Order (ECF No. 91 at 6). Defense counsel confirmed this fact at the March 7 status conference (Hearing Tr., ECF No. 107 at 33).

alleged diminished capacity to form criminal intent is precluded.

### VIII. The Court should exclude any defense of abandonment.

Nor should Routh be able to defend this case on the grounds that he changed his mind at the last moment. Federal courts recognize no affirmative defense of abandonment where a defendant is charged with an attempt offense. *See United States v. Shelton*, 30 F.3d 702 (6th Cir. 1994) ("withdrawal, abandonment and renunciation, however characterized, do not provide a defense to an attempt crime"); *United States v. Bussey*, 507 F.2d 1096, 1098 (9th Cir. 1974) ("A voluntary abandonment of an attempt which has proceeded well beyond preparation as here, will not bar a conviction for the attempt."). *See also Puig v. United States*, No. 8:01-CR-252-T-17MSS, 2006 WL 1540260, at *7 (M.D. Fla. May 31, 2006) ("This [Eleventh] Circuit has never held that renunciation is a valid defense.").

The only Eleventh Circuit panel to consider the question found that, even if abandonment were a defense to an attempt crime, it would require evidence of "complete and voluntary renunciation," *see United States v. McDowell*, 705 F.2d 426, 428 (11th Cir. 1983). In that case, the Court of Appeals assumed, without deciding, that "renunciation is a valid defense under the proper circumstances," *id.* In doing so, the Eleventh Circuit rejected the appellant's suggestion that his conduct amounted to "renunciation" as defined by the Model Penal Code. *Id.* (citing Model Penal Code Sec. 5.01(4)).

Since *McDowell*, however, federal courts have uniformly rejected the Model Penal Code's recognition of the defense of abandonment. *See, e.g.*, *Temkin*, 797 F.3d at 690 ("Temkin's abandonment argument fails because abandonment is not a defense when as attempt, as here, 'has proceeded well beyond preparation.'" (quoting *United States v. Fleming*, 215 F.3d 930, 936 (9th Cir. 2000))); *United States v. Young*, 613 F.3d 735, 745 (8th Cir. 2010) ("We hold today that a defendant cannot abandon an attempt once it has been completed. We emphasize that all of our sister circuits that have faced this issue have either held that a defendant cannot abandon a completed attempt or have alluded to such a determination.") (citing cases from the Second, Sixth and Ninth Circuits).   Simply put, to the extent Routh tries to persuade the jury that he fled not

from the Secret Service but rather because he changed his mind, such a defense would be legally insufficient, because his attempt was already complete.

Moreover, as noted by the district court in *Puig*, even the hypothetical "renunciation" defense considered in *McDowell* "would require evidence of 'complete and voluntary renunciation,' not the 'I'm about to get arrested' version . . . ." 2006 WL 1540260, at *7 (quoting *McDowell*, 705 F.2d at 426) (internal citation omitted). Here, the only abandonment argument available to Routh would be precisely that: he fled when he realized he was about to get arrested (or shot). The defense can proffer no set of facts remotely showing that Routh completely and voluntarily abandoned his attempt on the President's life. *See United States v. Tilotta*, 588 F. Supp. 3d 1058, 1064 (S.D. Cal. 2022) (finding there is no affirmative defense of abandonment available to a defendant charged with an attempt offense and granting government's motion to preclude evidence that goes to an abandonment defense). Accordingly, the Court should, as a matter of law, preclude any defense of abandonment, and evidence or argument relating primarily to it.

### IX. The Court should reject these defenses now, and not delay until trial.

We are raising these topics now to comply with the Court's pretrial motions deadline, which the Court set early enough, we believe, precisely in order to address in advance foreseeable issues before they become problems that may delay or disrupt trial.[5] As set forth above, we have good reason to believe that the defense will raise all these defenses in some form or another – that is why we are bringing them to the Court's attention now. Significantly, we presented each of these potential defenses to defense counsel in a detailed, good faith email, and Routh did not agree to take any of them fully off the table.

We expect the defendant to deflect attention from the concerns we've raised by arguing that ruling on these defenses today would be premature. He would be mistaken, for at least three reasons, all foreshadowed above.

---

[5] The Government will file a separate motion *in limine* by the Court's July 8 deadline (*see* ECF 109 at 4) addressing more specific items of evidence and trial management issues.

One, case law from the Supreme Court and the Eleventh Circuit makes clear that a district court <u>should</u> rule in advance on any defense that is legally or factually improper for the jury to consider. Two, in most if not all instances, Routh could not possibly make out a sufficient factual showing to present these defenses (*i.e.*, necessity for attempting to assassinate a major presidential candidate) – so there is no good faith basis to wait until the defense case at a trial, especially because by that point the defendant may already have confused or misled the jury about the defenses available to him and what is relevant. Three, some of the defenses addressed above could not on their face provide any legal defense to the charged offenses (*i.e.*, the First Amendment, or impossibility as a basis to acquit on attempt). The landscape for those will look no different in September than today.

## Conclusion

For all of the foregoing reasons, the Court should preclude before trial all of the potential defenses identified in this motion, including evidence and argument that would be relevant primarily to them.

    Respectfully submitted,

    HAYDEN P. O'BYRNE
    UNITED STATES ATTORNEY

By:    <u>/s/ *John Shipley*</u>
    John C. Shipley
    Florida Bar No. 69670
    Christopher B. Browne
    Florida Bar No. 91337
    Maria K. Medetis
    Florida Bar No. 1012329
    Assistant United States Attorneys

    U.S. Attorney's Office
    Southern District of Florida
    99 Northeast 4th Street, 8th Floor
    Miami, Florida 33132-2111
    Telephone: (305) 961-9111
    E-mail: John.Shipley@usdoj.gov

                SUE BAI
                SUPERVISORY OFFICIAL PERFORMING THE
                DUTIES OF THE ASSISTANT ATTORNEY
                GENERAL FOR THE NATIONAL SECURITY
                DIVISION

By:    */s/ James Donnelly*
        James Donnelly, Trial Attorney
        Court ID No. A5503278
        Department of Justice, National Security Division
        950 Pennsylvania Avenue, NW
        Washington, DC 20530
        Telephone: (202) 514-0849

## CERTIFICATE OF CONFERRAL AND SERVICE

As required, counsel for the Government sought the Defendant's position on each of the potential defenses addressed in this motion. Specifically, on April 5 at 2:24 p.m., as part of a longer email addressing several anticipated pretrial motions, we sent a detailed message to both defense lawyers expressly identifying each potential defense addressed in this motion and asked them to let us know what if any areas could be streamlined for the Court. The next day, April 6, defense counsel replied that they would conference to see if they could reach agreement on anything. We followed up with defense counsel this morning, April 7, asking again for their position(s) before 3 p.m. so we would have time to finalize our motions before today's deadline. On Monday afternoon at 2:30 p.m., defense counsel sent us an email replying about a separate motion, but still said nothing about this one  The Government filed the foregoing document with the Clerk of the Court using CM/ECF on April 7, 2025.

                */s/ John C. Shipley*
                Assistant United States Attorney