UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-80116-CR-CANNON

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**RYAN WESLEY ROUTH**

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL LIVE FIRE TEST OF SEIZED RIFLE OR ALTERNATIVELY TO EXCLUDE UNITED STATES' EXPERT TESTIMONY

**THIS MATTER** comes before the Court upon Defendant's Motion to Compel Confidential and Independent Testing or to Exclude Government's Expert Testimony [ECF No. 114]. The Court has reviewed the Motion [ECF No. 114], the United States' Opposition [ECF No. 115], and Defendant's Reply in Support of the Motion [ECF No. 125]. The Court also held a hearing on the Motion on April 15, 2025 [ECF No. 127].

Upon full review, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART** as follows.

1. Because the United States seeks to present evidence and argument at trial that the seized rifle in this case was operational when barrel tested in the laboratory days after its seizure in September 2024 [ECF No. 115 p. 13], the Court determines that good cause

exists to authorize a confidential defense live fire test of the rifle limited to an examination of its actual or potential operability.[1]

2. Defendant's Motion otherwise fails to show good cause to compel a live fire test beyond a test for operability. Such a demand, likely unprecedented, is premised on a legally improper theory of factual impossibility; it relies on speculative and conclusory claims about the mere possibility of developing additional evidence and insights into the accuracy and range of the rifle; and it goes well beyond verifying or refuting the findings of the United States' expert who conducted the post-seizure live fire test and determined that the rifle was operable. Accordingly, the live fire test authorized by this Order is limited strictly to a test for operability and shall not be used for any other live-fire purpose, whether related to accuracy, effective range, or other measurement.

3. These determinations are not altered by the United States' intent to introduce additional expert evidence from a qualified sniper regarding the general capabilities of the type of rifle seized in this case (a Norinco semi-automatic rifle, Model SKS). Defendant is free to challenge such evidence through appropriate cross-examination and may, consistent with the deadlines set in this case, applicable law, and any other Court orders, offer competing evidence or argument regarding the general capabilities of a Norinco semi-automatic rifle, Model SKS.

4. The operability test shall be completed at a local federal facility on or before **May 15, 2025**; Defendant shall disclose the anticipated expert to the United States on or before

---

[1] Operability of the subject rifle is not an essential element of any of the offenses charged in the Indictment [ECF No. 21]. *See United States v. Adams*, 137 F.3d 1298, 1300 (11th Cir. 1998) (addressing 18 U.S.C. § 922(g)(1)); 18 U.S.C. § 351(a), (c); 11th Cir. Pattern Jury Instruction S11 (Attempt); 18 U.S.C. § 111(a)–(b).

      **May 2**, **2025**, if different from the previously disclosed expert as noted in open court; and the firearm shall be kept at all times in the presence of a non-prosecution team member of the FBI or other independent evidence custodian designated by the United States, consistent with the FBI's evidence-handling policies.

5. The designated individual as referenced in paragraph 4 must not provide any record related to the operability test or otherwise share any information or impressions from the test with any member of the prosecution team.  Defendant must advise the United States, however, when the testing is complete, document any chain of custody forms, and advise the United States that the evidence remains secure.

6. No member of the prosecution team shall be present for the operability test.

7. This Order is contingent on the defense expert executing a waiver of liability as requested by the applicable federal agency, upon such agency's request.  Should execution of such waiver present clear difficulty in effectuating this Order, despite meaningful conferral, the parties shall so advise the Court as promptly as possible via a Joint Report.

8. To the extent the parties have not already arranged a further opportunity for defense inspection of the firearm and any associated physical evidence (including photographing) [ECF No. 109], Defendant is authorized as part of this Order to conduct a further inspection of the firearm and related parts, if desired.  *See* Fed. R. Crim. P. 16(a)(1)(E).

9. This Order is sufficient to resolve the instant Motion and does not determine any other issue or motion in this case.

CASE NO. 24-80116-CR-CANNON

10. Nothing in this Order should be construed to weaken or delay Defendant's discovery obligations.  Fed. R. Crim. P. 16(b)(1)(C).[2]

11. Defense counsel is required to share a copy of this Order with the designated defense expert and ensure full compliance with the instructions set forth in this Order.

**ORDERED** in Chambers at Fort Pierce, Florida, this 15th day April 2025.

AILEEN M. CANNON
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record

---

[2] Should the results of the operability test generate reciprocal defense discovery, Defendant shall transmit such discovery to the United States no later than **May 30, 2025**.  In the event the United States seeks to challenge such expert testimony, the United States shall so advise the Court by motion no later than **June 9, 2025**.  The deadline for *Daubert* motions remains **April 29, 2025** [ECF No. 109 p. 4].