

U.S. Department of Justice

United States Attorney
Southern District of Florida



**GOVERNMENT EXHIBIT**

CASE NO. 24-80116-CR-Cannon

EXHIBIT NO. 2

*99 N.E. 4 Street*
*Miami, FL 33132*
*(305) 961-9100 - Telephone*
*(305) 530-6444 - Facsimile*

February 3, 2025

Kristy Militello
Assistant Federal Public Defender
Federal Public Defender's Office
250 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-5040

**Re: United States v. Routh, 24-87-0116-CR-CANNON/McCabe – Further Supplemental Expert Disclosures**

Dear Ms. Militello,

   Pursuant to the Court's December 23, 2024 Order, FRCP 16(a)(1)(G), and SDFL Local Rule 88.10(o)(3), the United States provides the following supplements to previously-produced synopses of information regarding areas of expert witness testimony that it anticipates at this time. We reserve the right to modify, amend and/or augment these areas of expert testimony, and the identities and opinions of specific proposed witness(es), as the investigation proceeds and the prosecution, including information from the defense, continues to develop closer to the date of trial, consistent with the Court's Orders:

1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

2. N▮▮▮ S▮▮▮▮, *Special Agent, Federal Bureau of Investigation, Special Weapons and Tactics Team*

   **Training/Qualifications:** Special Agent S▮▮▮▮'s statement of qualifications and past testimony are attached herein at GovExp011252-011253.

   **Summary of Testimony/Opinion and Basis:** Special Agent S▮▮▮▮ will, as the Government indicated in its initial expert disclosure, testify from his extensive special weapons and tactical expertise and training regarding the Defendant's activities and positioning in connection with his

attempted shooting of the victim. This witness will testify regarding, among other things, the Defendant's observation point, also known as the final firing point ("FFP"); Defendant's reconnaissance, selection, measurement, and "up-armoring" of the FFP; the contents and tactical significance of Defendant's notes and Internet research relating to measurement and targeting; as well as capacity of weapons system(s) seized from the crime scene. This witness will also testify regarding how and why a vantage point is desirable for a particular target, the factors that can affect a shot, the capacity of the weapon, the quantity of ammunition that can be stored and caliber and operation of the weapons system. This witness will testify about methods employed to avoid detection and sustainment of Defendant's FFP. This witness also will define terms of art in this field.

For example:

*Location of Final Firing Point:* The position chosen by the Defendant located outside the chain link fence and in line with a mostly unobstructed view of the 6th and 7th holes as a place to wait for President Trump to arrive was a good sniper "hide," also known as a final firing point. The location chosen by Routh provided a relatively easy shot at President Trump on the 6th hole even without a "zeroed" rifle scope or with iron sights because the cart path that the President would have driven on, as well as the 6th green and hole flag, were a close distance away from his location. The 6th hole was an optimal target location from Routh's sniper hide. Additionally, Routh had a relatively unobstructed view of the 7th fairway and green and the 7th hole flag from Routh's location along the fence line.

Routh's chosen location had 360-degree concealment, and he would not have been seen by those on Summit Road or the 6th green because of the natural vegetation providing cover. The armor plates that were placed inside the tote bag and backpack attached to the fence with enough

2

space between the placement of the two bags for a clear view shooting position, the loaded firearm that contained a magazine that could contain 30 rounds of ammunition with a round already in the chamber, the safety being off, and Routh's choice to position himself outside of the golf course with his vehicle parked close by, indicate that Routh was prepared to start a gunfight in a defensible position with an easy escape route. The position taken on the outside of the golf course was optimal for Routh's ability to balance shooting with getting away without harm. Items listed by Routh including a poncho, bug spray, and "quiet" plastic show that he was willing to position himself there for long periods of time and wanted items that would permit him to do so even in adverse and changing conditions.

*The SKS Rifle:* Routh's firearm recovered from the sniper hide was a Norinco SKS rifle made in China, that had a 30 round detachable box magazine inserted into the rifle. There were 11 rounds in the magazine and one round in the chamber for a total of 12 rounds. The witness is familiar with this type of weapons platform based upon his training and experience in the field, including deployments to Afghanistan. The rifle is a gas operated semi-automatic shoulder fired weapon that shoots a 7.62 x 39 mm round. It is semi-automatic because every time the trigger is depressed a round is fired. It is gas operated because a portion of high-pressure gas from the cartridge being fired is used to power a mechanism to extract the spent case and insert a new cartridge into the chamber so the individual is not required to cycle the action manually like on a bolt action rifle. In other words, a round can be fired as fast as an individual can pull the trigger. The SKS rifle and the similar AK-47 are Soviet style weapons platforms that are relatively easy and cheap to purchase in the United States. The close location of the cart path and the green to the 6th hole, and the number of rounds in the magazine, meant that anyone with any degree of familiarity with this rifle could have hit a target at those locations, among others. Because a round

was located in the chamber, Routh had at minimum some degree of familiarity with this weapon and understood that the rifle would not have fired unless a round was in the chamber as opposed to just being loaded into the magazine and inserted into the rifle without cycling the action to insert a round. The use of a high-capacity magazine allowed more rounds to be fired at the target, and the chain link fence could have been used to stabilize the weapon for firing. According to Special Agent S▇▇▇'s training and experience Routh would have been able to acquire his target and fire all of the rounds in the magazine in a matter of seconds.

3. 

Respectfully,

*/s/ John Shipley*
Assistant United States Attorney
Southern District of Florida