UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-AMC

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.

RYAN WESLEY ROUTH,

    Defendant.

_____/

## RYAN ROUTH'S RESPONSE TO THE GOVERNMENT'S MOTION TO ADMIT POTENTIAL 404(b) EVIDENCE (DE 122)

Ryan Routh, through counsel, responds to the government's motion to admit potential 404(b) evidence as follows.

## INTRODUCTION

The government seeks to introduce a wide array of evidence under Rule 404(b) or to complete the story of the charged offenses. Much of this evidence, however, is irrelevant, unduly prejudicial, or improper propensity evidence. As the Tenth Circuit has held, "Where evidence is offered under Fed. R. Evid. 404(b), the government bears the burden of showing that the proffered evidence is relevant to an issue other than character. The government must precisely articulate the evidentiary hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Youts*, 229 F.3d 1312, 1315 (10th Cir. 2000). Because "intent is the exception

most likely to blend with improper propensity uses," this Court must carefully scrutinize the government's proffered rationale. *United States v. Miller*, 673 F.3d 688, 698 (7th Cir. 2012).

This Court likewise should carefully scrutinize the government's attempts to introduce evidence under the "inextricably intertwined" admissibility rationale. Such evidence is admissible only in limited circumstances and "not a backdoor to get around other evidentiary rules. *United States v. Clay*, 667 F.3d 689, 697–698 (6th Cir. 2012).

## RULE 404(b) FRAMEWORK

Federal Rule of Evidence 404(b) states in pertinent part:

(1) Prohibited Uses: Evidence of a crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses: This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The Eleventh Circuit "use[s] a three-part test to determine whether other bad acts are admissible under Rule 404(b): (1) 'the evidence must be relevant to an issue other than the defendant's character'; (2) 'the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act'; and (3) 'the probative value of the evidence must not be substantially outweighed by its undue prejudice.'" *United States v. Holt*, 777 F.3d 1234, 1266 (11th Cir. 2015) (citing *United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010)). Rule 404(b) evidence

must bear a "reasonable relationship" to the issues at trial. *United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000).

Rule 404(b) demonstrates concern regarding other bad acts evidence being used to prove anything via propensity--a concern that appears in court opinions as early as 1886. *See, e.g., State v. Saunders*, 14 Or. 300, 309, 12 P. 441, 445 (1886), *overruled in part by State v. Marsh*, 260 Or. 416, 490 P.2d 491 (1971) ("Place a person on trial upon a criminal charge, and allow the prosecution to show by him that he has before been implicated in similar affairs, no matter what explanation of them he attempts to make, it will be more damaging evidence against him, and conduce more to his conviction, than direct testimony of his guilt in the particular case.").

Courts must be particularly careful when considering evidence purportedly offered to show intent, since it is "the exception most likely to blend with improper propensity evidence." *United States v. Miller*, 673 F.3d 688, 698 (7th Cir. 2012); *see also United States v. Matthews*, 431 F.3d 1296, 1313 (11th Cir. 2005) (Tjoflat, J., concurring) (noting that the caselaw addressing the admissibility of extrinsic evidence to prove intent in drug conspiracy cases "has evolved into [a doctrine] that undermines Rule 404(b) itself and represents a perversion of the origins of the circuit's doctrine in this context.").

When considering the Rule 403 analysis, the Court must consider the totality of the circumstances including, but not limited to prosecutorial need, overall similarity between the extrinsic act and the charged offense, and temporal remoteness.

3

*United States v. Perez*, 443 F.3d 772, 780 (11th Cir. 2006). The Court must also consider several factors in determining whether 404(b) evidence should be excluded under Rule 403, including "whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses." *United States v. Edouard*, 485 F.3d 1324, 1345 (11th Cir. 2007).

Because prior bad act evidence "has significant potential for prejudicial effect," it "should not be employed unless really necessary." *United States v. Jones*, 28 F.3d 1574, 1581 (11th Cir. 1994) (quoting *United States v. Baldarrama*, 566 F.2d 560, 568 (5th Cir. 1978)). "If the government has a strong case without the extrinsic offense, then the prejudice to the defendant will more likely outweigh the marginal probative value. 'In other words, if the government can do without such evidence, fairness dictates that it should[.]'" *Id.* (quoting *United States v. Pollock*, 926 F.2d 1044, 1049 (11th Cir. 1991)).

## INEXTRICABLY INTERTWINED FRAMEWORK

Evidence of criminal activity is intrinsic when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (internal quotation marks omitted). Evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an "integral and natural part of the witness's accounts of the circumstances surrounding

4

the offenses for which the defendant was indicted." *United States v. Estrada*, 969 F.3d 1245, 1274 (11th Cir. 2020) (cleaned up). Such evidence must still satisfy the requirements of Rule 403—that is, the probative value of the evidence must not be substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *Edouard*, 485 F.3d at 1344; Fed. R. Evid. 403.

### Defendant's Response to the Government's Proposed Evidence

The government submits that sections A-F are not extrinsic evidence and therefore not subject to Rule 404(b). However, in several instances, the evidence is properly subject to Rule 404(b) analysis and should be excluded on that basis or pursuant to Rules 401 or 403. The defense makes similar objections to sections G-H. Notably, the defense does not object to many portions of the evidence being admitted at trial.

### A. March-April 2024: Routh's Travel to and Activities in West Palm Beach.

The defense does not object to the admission of the evidence summarized in this section based on relevance or Rule 404(b) grounds but reserves the right to make objections at trial related to authentication, hearsay, or other evidentiary rules.[1]

### B. February 2024: Routh's Messaging with "Ramiro"

The defense objects to the admission of the February 2024 chats with Ramiro. While the defense does not object to the admission of evidence regarding Mr. Routh's

---

[1] The defense expressly reserves the right to make other evidentiary objections as appropriate at trial to all of the evidence and testimony described in this motion.

intended flight to Mexico—including the *September* chats with Ramiro—the *February* chats should be excluded for several reasons:

First, the government's attempt to frame these two conversations as an "evolution" is tenuous. The *February* chats involved bringing a family into the United States from Mexico. In the second chat, approximately six months later, Mr. Routh simply informed Ramiro that he would be traveling to Mexico later that month. (DE 122:9). These communications are better characterized as sporadic or episodic rather than evolving. The *February* chats are too attenuated from the charged offenses or Mr. Routh's alleged flight to Mexico to be admissible under Rules 401, 403, and 404(b).

Through the admission of these September chats, the government will argue that Mr. Routh earlier intended to commit another serious federal crime–alien smuggling. The government rightfully does not assert that the *February* chats are admissible under Rule 404(b). Notwithstanding, the government's stated theory of admissibility is flawed. Any evidence of Mr. Routh's purported attempt at alien smuggling, however, would violate Rules 401, 403, and 404(b).

Second, the government's stated relevance rationale is illogical. In the September chats with Ramiro, Mr. Routh indicated he would be in Mexico City after the 15th, with no indication that he needed Ramiro—as a professional smuggler—to assist him in entering Mexico. Mr. Routh's unrelated February conversations with Ramiro therefore are not necessary to "complete the story" of the charged offense, as they lack any temporal or causal connection. And the government's suggestion that Mr. Routh's

defense team might "misleadingly" argue that Mr. Routh "spontaneously" contacted Ramiro is unfounded. (DE 122:9).

Third, by the government's own accounting, this evidence is unnecessary to demonstrate Mr. Routh's allegedly planned flight to Mexico. The government has proffered abundant evidence of flight: internet flight searches (DE 14:5), "extensive web searches about travel to Mexico" (DE 122:9), and a "written escape route" (DE 122:15). Moreover, the government will present evidence that law enforcement stopped Mr. Routh on a highway in Martin County allegedly *in the act of fleeing. See United States v. Perez*, 443 F.3d 772, 780 (11th Cir. 2006).

Fourth, these chats are substantially more prejudicial than probative. If admitted, the jury will hear evidence that Mr. Routh allegedly conspired to commit a serious and highly politicized uncharged crime. The government cannot "back door" extrinsic act evidence under the "inextricably intertwined exception" to evade Rule 404(b)'s prohibitions. *Clay*, 667 F.3d at 698. The uncharged conduct occurred allegedly six months prior to the charged offenses. *Edouard*, 485 F.3d at 1345. "[I]f the other act is not sufficiently similar to the crime charged, it does not tell the jury anything about what the defendant intended... unless, of course, one argues (impermissibly) that the [other] act establishes that the defendant has criminal propensities.'" *United States v. Preston*, 873 F.3d 829, 840 (9th Cir. 2017) (cleaned up). Accordingly, the Court should exclude evidence that would lead the jury to believe that Mr. Routh has a propensity to violate the law.

### C. April 2024: Box Delivered to L.P. in North Carolina and "I.E.D. Manual" Found in Nearby Storage Trailer

The defense objects to this evidence as improper propensity evidence. Here, the government openly states its improper purpose: to show "at minimum proof of [Routh's] comfort with causing death to other human beings"—a clearly prohibited propensity purpose. (DE 122:10). The government's need to establish "intent" does not exempt it from compliance with the Federal Rules of Evidence. "Rule 404(b) does not provide a rule of automatic admission whenever bad acts evidence can be plausibly linked to 'another purpose,' such as intent." *United States v. Miller*, 673 F.3d 688, 696 (7th Cir. 2012); *United States v. Charley*, 1 F.4th 637 (9th Cir. 2021) (finding reversible error where the government introduced dissimilar prior assaults as Rule 404(b) evidence to purportedly prove intent in the charged assault). "This must be so because the 'list of exceptions in Rule 404(b), if applied mechanically, would overwhelm the central principle' that prevents the government from introducing raw propensity evidence." *Miller*, 673 F.3d at 696.

Alternatively, the government seeks to introduce this evidence as "inextricably intertwined" with the charged offense. (DE 122:10). To meet this theory of admission, the government must show that the evidence is "linked in time and circumstances with the charged crime" and concerns the "context, motive, and setup of the crime;" "form[s] an integral part of the crime;" or is "necessary to complete the story of the crime." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). The government's proffered evidence is too attenuated and speculative to meet this standard.

For example, the box was delivered to L.P. five months prior to the charged crimes, lacking the temporal relationship required for this alternative theory of admissibility. Additionally, the government does not establish when Mr. Routh last handled the IED manual, particularly given that he had moved out of the state a decade earlier. Mr. Routh did not have access to the box while he was hundreds of miles away in Florida allegedly committing the charged crimes.

Although the ammunition might otherwise be relevant to the felon in possession of a firearm count, Mr. Routh's abandonment of this material diminishes any probative value because it is not part of the motive or setup of the crime. The contents of the box, **apart from the letter**, are not "integral" to the charged crimes.

Moreover, there is no prosecutorial need for this evidence. According to the government's own summary:

> "This case arises out of the Defendant's calculated plan to assassinate now-President, then Major Presidential Candidate, Donald J. Trump... Over the course of months, the Defendant -- who possesses a Hawaii driver's license and has no ties to South Florida -- intentionally plotted to kill President Trump, and took significant steps toward making that happen, culminating in his attempt to assassinate the President in West Palm Beach at the Trump International Golf Club on September 15, 2024, from a sniper hide he carefully set up, using a military-grade SKS rifle that he possessed illegally."

(DE 115:2). The government's factual summary makes no mention of the evidence from the North Carolina box because this evidence is tangential at best. The "components of a destructive device" in the box and I.E.D. manual contain no relevant evidence to the charged offenses and, like the alien smuggling allegations, are particularly inflammatory.

### D. August 2024: Attempted Purchase of Anti-Aircraft Weapons

The defense does not object to this evidence based on relevance or Rule 404(b) grounds.

### E. August 2024: Attempted Purchase of .50 Caliber Rifle and Other Firearms

The defense does not object to this evidence based on relevance or Rule 404(b) grounds.

### F. August/September 2024: Routh's Use of Aliases, Flight from the Sniper Hide, and Possession of Stolen License Plates

The defense does not object to this evidence based on relevance or Rule 404(b) grounds.

### G. Routh's Past Felony Convictions

The defense objects to the admission of Mr. Routh's prior conviction for possession of a weapon of mass destruction ("WMD").[2] The government claims this conviction "is highly probative of [intent] on Count 1 because it corroborates his intent to engage in extraordinary and public destructive behavior." (DE 122:18). However, an "intent to engage in extraordinary and public destructive behavior" is not an element of any charged crime, and its relevance is suspect.

The prejudicial impact is severe: the term "weapons of mass destruction" evokes memories of the terror attacks of September 11, 2001. Even the government must concede that Mr. Routh's prior conviction for possession of dynamite in his place

---

2 The defense intends to stipulate that Mr. Routh was a convicted a felon, requiring a Rule 404(b) analysis for the admission of this crime.

of business bears no resemblance to those horrific events. The probative value of this conviction is negligible, while the prejudice is substantial.

"To differentiate between the illegitimate use of a prior conviction to show propensity and the proper use of a prior conviction to prove intent, the government must affirmatively show *why* a particular prior conviction tends to show the more forward-looking fact of purpose, design, or volition to commit the new crime." *Miller*, 673 F.3d at 699 (citation and internal quotation marks omitted). If the answer is "[s]he intended to do it before, ladies and gentlemen, so [s]he must have intended to do it again," then that evidence is inadmissible because it constitutes "precisely the forbidden propensity inference." *Id.*; *see also United States v. Hubert*, 138 F.3d 912, 914 (11th Cir. 1998) (holding that evidence of the defendant's prior drug dealings with the cooperating witness/co-conspirator was inadmissible in the instant drug conspiracy prosecution because it was "not necessary to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" and "had no value except to prove a criminal disposition in violation of the Federal Rule of Evidence 404(b)").

Contrary to the government's assertion, temporal remoteness is a relevant Rule 404(b) factor. *United States v. Perez*, 443 F.3d 772, 780 (11th Cir. 2006). The WMD conviction occurred 23 years before the currently charged conduct, making it temporally remote and diminishing its probative value. *United States v. Perrier*, 619 F. App'x 792, 797 (11th Cir. 2015) (district court erred in admitting evidence of 22-year-old conviction under Rule 403(b)).

11

The government argues that the "WMD conviction not only shows Routh's comfort with devices that may cause death or grave injury, but also shows that he was indeed capable of intending to do the extraordinary." (DE 122:18). Mr. Routh's "intent to do the extraordinary" is not an element of any charged crime. This argument demonstrates precisely how the government intends to use this evidence—by drawing an improper propensity inference.

The government further contends that "A prior conviction for possession [of] a weapon of mass death and destruction -- as dynamite would -- supports the idea that he was perfectly fine with the idea of committing an act of extreme violence in public causing massive public consequences." This characterization misrepresents Mr. Routh's prior conviction. Mr. Routh has no prior convictions for committing acts of extreme violence. Possession of dynamite is more analogous to the passive crime of carrying a concealed firearm, which is not a crime of violence. *See United States v. Archer*, 531 F.3d 1347, 1349 (11th Cir. 2008).

The government ignores a less nefarious explanation for Mr. Routh's possession of dynamite: his work in construction. Explosives used in demolition are common enough that the North Carolina Department of Labor maintains a website entitled "Does 'Blasting and Use of Explosives' Apply to you?" with information on regulatory compliance. *See  https://www.labor.nc.gov/does-blasting-and-use-explosives-apply-you* (last accessed April 21, 2025). The dynamite was found at Mr. Routh's construction

business location, suggesting that with proper permits, he may have been legally authorized to possess such materials. To twist these facts to fit the allegations in this case exemplifies precisely what Rule 404(b) was designed to prevent.

## H. Firearms Not the Subject of a Conviction

1.    The defense specifically objects to the statement that "police ended up with them all." This phrasing could lead the jury to infer that Mr. Routh used firearms to commit past crimes, although his criminal history does not reflect such conduct. The government may illustrate Mr. Routh's familiarity with firearms by admitting only the beginning of the quote: "I ow[n]ed an ak47 in North Carolina and a tech 9 and a bunch of guns..."

2.    No objection to this evidence based on relevance or Rule 404(b) grounds.

3.    Mr. Routh denies threatening anyone with a firearm 23 years ago. This alleged conduct has no legitimate basis for admissibility under Rule 404(b). Additionally, admission of a mere complaint or allegation of threats would violate Mr. Routh's Sixth Amendment right to confrontation and is inadmissible under the Federal Rules of Evidence. *United States v. Bailey*, 696 F.3d 794 (9th Cir. 2012) (finding reversible error where the government introduced an accusation alone without sufficient, independent evidence to support a finding that the prior 404(b) conduct occurred). Admitting this unproven conduct from 23 years ago would necessitate a "trial within a trial" where Mr. Routh would need to cross-examine witnesses regarding other alleged felonious, assaultive conduct. This evidence is unnecessary to the government's case and would not be an appropriate use of judicial resources. Even if the government

could prove these allegations, this evidence is too factually dissimilar to be admitted. *See supra* p.7-8.

4.     The defense objects to these unproven allegations as unreliable and ir-relevant. The government has not specified when this conduct allegedly occurred, except that it was approximately 23 years ago. In their proffer, the witnesses cannot recall the type of long gun and merely speculate that it "may have been an Uzi" or an "Uzi-like firearm." (DE 122:19). Even if this alleged conduct occurred more than 23 years ago, it would involve a time when Mr. Routh was otherwise permitted to law-fully possess firearms, rendering any relevancy to the charged offenses non-existent.

The government appears to be attempting to corroborate certain 404(b) evi-dence with other 404(b) evidence, which is improper. Mr. Routh has agreed to admit to his prior ownership of firearms from his statements in **H(1)** and **H(2)**. The remain-ing speculative evidence is duplicative, unnecessary, unreliable, and unduly prejudi-cial under Rule 403.

Regarding Rule 403, references to a machine gun evoke images of mass shoot-ings and dangerousness. If permitted to introduce this evidence, the jury would likely respond emotionally, concluding that Mr. Routh is a dangerous person who carries dangerous weapons (an improper propensity inference) and rendering a verdict based on fear rather than evidence related to the charged offenses. The remoteness of more than two decades further diminishes any probative value while heightening the prej-udicial impact.

**Defendant's Request for a Limiting Instruction**

For any evidence in this motion that is introduced at trial over the defendant's objection, the defendant respectfully requests the Court read the jury an appropriate limiting instruction.

## CONCLUSION

The defendant respectfully requests the Court exclude the evidence objected to in this response.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
250 South Australian Ave., Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 – Telephone
Kristy_Militello@fd.org

*s/Renee M. Sihvola*
Renee M. Sihvola
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar Number: 116070
109 N 2nd Ave
Ft. Pierce, Florida 34950
(772) 489-2123 - Telephone
Renee_Sihvola@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Renee Sihvola*
Renee Sihvola