UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-AMC

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN WESLEY ROUTH,

    Defendant.
_____/

**DEFENDANT RYAN ROUTH'S RESPONSE TO THE GOVERNMENT'S MOTION TO PRECLUDE DEFENSES (DE 119)**

The Defendant Ryan Routh, through counsel, responds to the government's Motion to Preclude Legally Prohibited and Factually Baseless Defenses. DE 119. The defense objects to the Government's attempt to force the defense to reveal its work product defense theory. Under the Fifth Amendment Due Process Clause and Sixth Amendment right to present a defense, the government cannot disparage or hinder the ability of an accused to mount a defense.

**Procedural History of Prosecution Request for Defense Theory**

Except for specific exceptions, enumerated under Federal Rules of Criminal Procedure 12, a court cannot require a defendant to declare his/her defense in advance of trial. In this matter, the Government has moved under all of those exceptions and then expands its demands for generalized affirmative defenses and

non-cognizable legal defenses. It is a blatant attempt to discover the defense and limit permissible evidence at trial.

Initially, the government demanded Notice of Insanity Defense. Under Federal Rule of Criminal Procedure 12.2(a), the Defense complied with the Court's Scheduling Order of Insanity Notice of February 3, 2025. DE 91. The Defense met the notice deadline of insanity defense. The Government now requires confirmation and seeks to exclude the possibility of a defense of diminished capacity under Fed. R. Crim. P. 12.2. Like insanity, the Defense complied with the Court's deadline of any Notice of Expert Evidence of a Mental Condition and Fed. R. Crim. P. 12.2.(b).

Subsequently, the government demanded Notice of an Alibi Defense under Federal Rule of Criminal Procedure 12.1(a)(1). D.E. 49. Upon the Court's Scheduling Order, the Court scheduled a deadline to disclose alibi evidence on or before March 28, 2025. D.E. 109. The defense has never violated Fed. R. Crim. P. 12.1 and abided by this Court Order as well.

Finally, the government demands this Court to rule upon additional potential defenses based upon their interpretation of Ryan Routh's personal electronic communication concerns for American democracy. The Government's basis for its motion to preclude these eight additional defenses is based upon pure speculation, a fishing-expedition, and fear for what the defense may present and/or argue at trial. Unlike defenses enumerated in Fed. R. Crim. P. 12.1 and 12.2, there is no advance notice requirement for the defense to declare any other defense. The Government requests an order precluding generalized affirmative defenses, such as justification,

necessity, and abandonment. These types of defenses that are admissible in certain types of cases after the defense admits to the elements of the alleged offenses. The defenses will only exist if the government can prove each element of the offense beyond a reasonable doubt. The government retains the burden of proof to which the Defense does not yield.

The Government also asks to censor defense from presenting information that are not legally recognized defenses, such as "victim-blaming" in sex offense cases and jury nullification, which are unnecessarily made. The government requests these rulings based upon Routh's personal email desire to "show that my character is better than that of Trump," and cites Federal Rule of Evidence 412, which prohibits evidence that the alleged victim engaged in other sexual behavior. Defense is left to inquire to which conduct the Prosecution is specifically referring. Unlike in the civil sexual abuse trial, *Carroll v. Trump*, 66 F. 4th 91 (2d Cir. 2023), Defense is not seeking to admit the testimony of two women who testified that President Trump sexually assaulted them in the past nor the recorded conversation in which he described kissing and grabbing women without first obtaining their consent.

### Defense Objection to Prosecutorial Demand for Defense Theory

To be clear, the Defense has not declared its potential defense in this matter and objects to any order for which it would be required to do so.

In direct contrast, the Defense is obligated to *not* produce its defense under the Sixth Amendment right to counsel and Fifth Amendment due process provisions of the United States Constitution. The work-product doctrine traces its roots to the

Supreme Court's recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor,* 329 U.S. 495, 510 (1947). The Supreme Court has recognized that the work-product doctrine is vital to "assur[e] the proper functioning of the criminal justice system," in that it "provid[es] a privileged area within which [a lawyer] can analyze and prepare his client's case." *See United States v. Nobles*, 422 U.S. 225, 238 (1975); *see also In re Grand Jury Subpoenas*, 454 F.3d at 520 (explaining that "people should be free to make requests of their attorneys without fear, and that their attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties"). Without that "privileged area," a lawyer's ability to plan and present his client's defense will be impaired. *See Nobles*, 422 U.S. at 238; *see also Hickman*, 329 U.S. at 511, 67 S.Ct. 385.

Work product protections, like the attorney-client privilege, protect criminal defense attorneys' ability to zealously represent their clients. *Waters v. United States*, 302 A.3d 522, 535 (D.C. 2023). Without those doctrines, "attorneys representing criminal defendants ... would have to worry constantly about whether their casefiles and client conversations would someday fall into the hands of the prosecution," thereby "inhibit[ing] the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Bittaker v. Woodford*, 331 F.3d 715, 722 (9th Cir. 2003). "[D]oing away with [work product or attorney-client] privilege in all criminal

cases would raise a nontrivial question whether defendants would still be getting effective assistance." *Id.* at 723 n.7. Thus, the Defense is prohibited from notifying the Prosecution of its defense strategy.

**First Amendment Objection**

The Government requests a Court Order prohibiting Mr. Routh from mentioning his exercise of self-expression and political expression protected by the First Amendment to the United States Constitution, but such a request does not comport with the law. The right to criticize the government is the "central meaning of the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964). "[D]ebate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts v. United States*, 394 U.S. 705, 708 (1969). The First Amendment protects "very crude offensive method[s] of stating a political opposition." *Id.* at 708. This Nation has chosen "to protect even hurtful speech on public issues to ensure that we do not stifle public debate." *Snyder v. Phelps*, 562 U.S. 443, 461 (2011). Importantly, speech that merely advocates force or violence, when it does not incite imminent lawless action, is protected under the First Amendment. *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969).

Instructing the jury on the First Amendment may be important because the government continues to cite Mr. Routh's various forms of political expression as suspect or even illegal. *See e.g.* DE 14:17; DE 103:8. But "speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled

to special protection." *Snyder*, 562 at 458. Social media and the internet are "the modern public square". *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). To that end, the Defense maintains its objection, first raised in its Response to Government's Motion for a Protective Order, of any Government attempt to unnecessarily infringe upon Mr. Routh's First Amendment Right to Free Speech. *See* D.E. 63:10. Article III Courts must "be eternally vigilant against [government] attempts to check the expression" of disfavored political views. *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting).

Of course, the defense will not argue that the First Amendment is an affirmative defense to an attempted assassination. However, the First Amendment may be relevant to any government introduction of Mr. Routh's letters to the press, his books, his political blog posts, his political social media posts, etc. It is therefore premature to order the omission of any mention of the First Amendment at trial, and the defense may later request the Court issue a First Amendment instruction to the jury.

**Defense Objection to Preclusion to Discuss Functionality of Firearm**

The defense also objects to any restriction on the ability to cross-examine, argue, or present information about the capability of the firearm in question. While factual impossibility[1] unknown to the Defendant may not be relevant, circumstances of impossibility can be relevant to what the accused believes. *United States v. Hsu*,

---

[1] "Factual impossibility occurs when the objective of the defendant is proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing about that objective." *United States v. Oviedo*, 525 F.2d 881, 883 (5th Cir. 1976)(citing *United States v. Conway*, 507 F.2d 1047, 1050 (5th Cir. 1975)).

155 F.3d 189, 203 (3d Cir. 1998). The question of what the Defendant believed for an inchoate offense is vital. *See United States v. Petit*, 841 F.2d 1546 (11th Cir. 1988). Both circumstantial and direct evidence of the defendant's intent are relevant for the charges in this matter. Additionally, the government specifically intends to present evidence of the rifle's capabilities for specific target strikes at the golf course. DE 130. Thus, the defense cannot be precluded from presenting relevant information of the Defendant's intent and/or to rebut government expert evidence with the rifle's lack of capacity.

## Conclusion

In conclusion, the defense will only seek to present a legally permissible defense and maintains its objection on unnecessary and unconstitutional intrusions on the defendant's work product and his ability to present a complete defense.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

| | |
|---|---|
| *s/ Kristy Militello* | *s/Renee M. Sihvola* |
| Kristy Militello | Renee M. Sihvola |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Attorney for the Defendant | Attorney for the Defendant |
| Florida Bar No. 0056366 | Florida Bar Number: 116070 |
| 250 South Australian Ave., Suite 400 | 109 N 2nd Ave |
| West Palm Beach, Florida 33401 | Ft. Pierce, Florida 34950 |
| (561) 833-6288 – Telephone | (772) 489-2123 - Telephone |
| Kristy_Militello@fd.org | Renee_Sihvola@fd.org |

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Renee Sihvola*
Renee Sihvola