UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-CANNON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN WESLEY ROUTH,

    Defendant.
_____/

**RYAN ROUTH'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS IDENTIFICATION (DE 135)**

## I.    INTRODUCTION

The government's response to Mr. Routh's Motion to Suppress Identification presents a dangerous precedent: denying a criminal defendant's fundamental right to challenge constitutionally defective evidence. The response advances both a procedural bar theory that contravenes basic constitutional principles and substantive arguments that ignore the totality of circumstances mandated by Supreme Court precedent. The Court should reject both approaches and grant an evidentiary hearing to address the serious constitutional deficiencies in the identification procedures employed in this case.

## II. THE GOVERNMENT'S PROCEDURAL BAR THEORY VIOLATES FUNDAMENTAL CONSTITUTIONAL PRINCIPLES

### A. The Government Improperly Attempts to Shift the Burden of Proof

The government's theory—that a defendant must file notice of alibi before challenging identification procedures—represents an unprecedented and constitutionally impermissible attempt to shift the burden of proof. The Supreme Court has consistently held that "the Due Process Clause protects the accused against conviction *except upon proof beyond a reasonable doubt* of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970) (emphasis added). This Eleventh Circuit's pattern jury instruction reflects this fundamental principle: "The Defendant does not have to prove [his] [her] innocence or produce any evidence at all. The Government must prove guilt beyond a reasonable doubt." 11th Cir. Crim. Pattern Jury Instructions, B2.1 (2024).

Identification is an essential element that the government must prove beyond a reasonable doubt. *See* 11th Cir. Crim. Pattern Jury Instructions, Special Instruction 3 (citing *United States v. Martinez*, 763 F.2d 1297, 1304 (11th Cir. 1985)). No federal court has ever conditioned a defendant's right to challenge identification procedures on first providing notice of alibi evidence. Such a requirement would effectively force defendants to waive their Fifth Amendment right against self-incrimination as a precondition to exercising their due process rights under the same amendment—a constitutional catch-22 that finds no support in our jurisprudence.

### B. The Court's Prior Inquiry Cannot Be Misconstrued as a Procedural Bar

The government mischaracterizes this Court's questioning at a status conference as somehow limiting Mr. Routh's right to challenge evidence. *See* DE 135:8 (citing DE 107:37). If interpreted as the government suggests, such a ruling would constitute improper prejudgment of trial evidence and violate Mr. Routh's presumption of innocence. The Court has not—and indeed could not—prohibit defense counsel from challenging evidence implicating an essential element of the offense. As this Court is well aware, identity has not yet been proven to a jury, and all evidence remains subject to proper constitutional challenge.

### III. THE IDENTIFICATION PROCEDURES WERE UNNECESSARILY SUGGESTIVE AND PRODUCED UNRELIABLE RESULTS

#### A. Law Enforcement Employed Multiple Condemned Identification Procedures

Law enforcement employed not one but two identification procedures in this case that have been "widely condemned" by the Supreme Court: a show-up and a single photograph display. *See Manson v. Brathwaite*, 432 U.S. 98, 111 (1977) (noting that the ALI Model Code "frowns upon the use of a show-up or the display of only a single photograph"); *Stovall v. Denno*, 388 U.S. 293, 302 (1967) ("The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned."). The Supreme Court has explicitly stated that "a primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances... is to deter law enforcement use of improper

lineups, show-ups, and photo arrays in the first place." *Perry v. New Hampshire*, 565 U.S. 228, 241 (2012).

Several contextual factors exacerbated the suggestive nature of these procedures:

    **1.**    The police transported the witness to I-95, using a law enforcement helicopter, specifically to view Mr. Routh;

    **2.**    The police placed Mr. Routh in handcuffs in a police vehicle, where he was surrounded by law enforcement;

    **3.**    The identification occurred on a closed highway with stopped traffic, creating unmistakable pressure on the witness to identify the suspect in this high-profile case;

    **4.**    Law enforcement failed to comply with the Palm Beach County Sheriff's Office ("PBSO") General Order 456.00, attached as Exhibit 1, which requires officers first to establish that a witness can "describe with certainty and confidence the suspect's detailed physical characteristics" before conducting a show-up because the witness' vague description was not detailed, certain, or confident;

    **5.**    The witness viewed Mr. Routh from such a distance that officers asked if they should "drive up closer" for the witness to see him (DE 135:28); and

    **6.**    FBI agents later showed the witness a single photograph of Mr. Routh, further cementing the suggestive identification through repetition.

The government's attempt to limit the Court's focus to the PBSO show-up instructions given once during this hours-long process ignores the Supreme Court's

mandate to consider the "totality of the circumstances." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

**B.     The Resulting Identification Was Demonstrably Unreliable**

Under the Supreme Court's reliability factors, this identification fails on multiple grounds:

**1.     Opportunity to view**: The witness had mere seconds to observe the suspect while simultaneously focusing on the object the suspect carried and the vehicle type—an impossible task that necessarily divided his attention. As the Tenth Circuit recently noted, stress and the presence of weapons significantly impact observation ability. *United States v. Gallegos*, 111 F.4th 1068, 1080 (10th Cir. 2024) ("The deleterious effect of stress on eyewitness accuracy is no less a concern when a suspect wields a weapon and may even be a bigger problem.").

**2.     Degree of attention**: While the witness may have been attentive to the vehicle, scientific research consistently demonstrates that "the physical distance between the witness and the perpetrator... directly affects the ability of the eyewitness to discern visual details, including features of the perpetrator." Nat'l Research Council, *Identifying the Culprit: Assessing Eyewitness Identification* 1, 92 (2014). No statement has been provided regarding how close this witness was to the suspect, but he was unable to provide accurate, distinguishable physical details.

3. **Accuracy of prior description**: The witness's description contained significant inaccuracies, including estimating the suspect as "early to mid-twenties" (when Mr. Routh is decades older), uncertainty about clothing details, and the impossibly mistaken claim that the suspect threw an object through a nonexistent sunroof.

4. **Level of certainty**: While the Government emphasizes the witness's eventual "99.9% certainty," this came only after multiple suggestive procedures. Contemporary scientific research overwhelmingly demonstrates that "witnesses exposed to suggestive procedures often experience subsequently inflated levels of certainty in the accuracy of their identifications." Nicholas A. Kahn-Fogel, *Manson and Its Progeny: An Empirical Analysis of American Eyewitness Law*, 3 Ala. C.R. & C.L.L. Rev. 175, 196 (2012). Indeed, the witness's initial response—"it does look like him"—reveals significant uncertainty that only later crystallized into claimed certainty after repeated exposure to the suspect.

5. **Time between crime and confrontation**: While the show-up occurred relatively soon after the incident, the witness was so far away that officers questioned whether he could even see Mr. Routh. Then, the single-photograph display occurred significantly later, further compounding the suggestiveness of the procedures.

### C. The Single-Photograph Identification Requires Suppression

The government's footnote suggesting they *may not* introduce the single-photograph identification does not render this issue moot. (DE 135:6 n.2). The government's stated intention "at this stage" creates no binding limitation on trial evidence. More importantly, the use of a single-photograph display by the FBI unduly influenced the witness by acting as confirmation that the suspect identified in the show-up was correct. This Court should suppress the evidence from this improper procedure and consider its impact on subsequent identifications in the totality analysis.

## IV. AN EVIDENTIARY HEARING IS REQUIRED

The government's objection to an evidentiary hearing ignores established precedent. When "critical facts are in dispute" and a "substantial claim is presented," an evidentiary "hearing is *required*." *United States v. Smith*, 546 F.2d 1275, 1279-80 (5th Cir. 1977) (emphasis added). Mr. Routh has presented "sufficiently specific allegations that, if proven, would result in relief." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000).

The factual disputes requiring resolution include:

**1.** The specific circumstances surrounding the show-up identification, including what was said to the witness at the golf course by law enforcement, what was said during the helicopter ride, and what was communicated before the official PBSO warnings were given;

**2.** The distance between the witness and the fleeing suspect at the golf course;

**3.** The distance between the witness and Mr. Routh at the show-up;

**4.** The exact instructions that were given to the witness when the FBI conducted their single photo lineup; and

**5.** The witness's initial level of certainty and confidence of his description of the suspect, prior to the show-up.

These disputed facts go directly to the heart of the constitutional analysis and cannot be resolved on the pleadings alone.

**V.   CONCLUSION**

Based on the foregoing, Mr. Routh respectfully requests that this Court reject the government's unprecedented procedural bar theory, grant an evidentiary hearing to resolve disputed factual issues; and following such hearing, and suppress all identifications tainted by the unnecessarily suggestive procedures employed in this case.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

*s/ Kristy Militello*
Kristy Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 0056366
250 South Australian Ave., Suite 400
West Palm Beach, Florida 33401
(561) 833-6288 – Telephone
Kristy_Militello@fd.org

*s/Renee M. Sihvola*
Renee M. Sihvola
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar Number: 116070
109 N 2nd Ave
Ft. Pierce, Florida 34950
(772) 489-2123 - Telephone
Renee_Sihvola@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Kristy Militello*
Kristy Militello