UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>24-80116-CR-CANNON/McCabe</u>

**UNITED STATES OF AMERICA**

vs.

**RYAN WESLEY ROUTH,**

 **Defendant.**
_____/

**<u>GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO ADMIT
POTENTIAL RULE 404(b) EVIDENCE (ECF 122)</u>**

 In his response (ECF 137) to the Government's Motion to Admit Potential Rule 404(b) Evidence (ECF 122), the Defendant agrees to the admissibility of some of the evidence identified by the Government.[1] The Government files this reply to identify which evidence remains at issue and aid the Court in its consideration. In particular, contents of the box seized in North Carolina that also contained Routh's "Dear World" assassination letter (which Routh concedes is admissible) cannot be plucked out and concealed from the jury arbitrarily as if they didn't exist without misleading jurors and improperly hampering the Government's proof.

**<u>Discussion</u>**

**A. <u>March-April 2024: Routh's Travel to and Activities in West Palm Beach (Resolved)</u>**

 The United States has sought to admit this evidence as direct or otherwise inextricably intertwined evidence of the charged conduct. (ECF122:6-8). In his reply, the Defendant states that he "does not object to the admission of the evidence summarized in this section on relevance or Rule 404(b) grounds." (ECF 137:5). So, for present purposes, the admissibility of this evidence

---

[1] The defense says it has no objection to these items under Rule 404(b) or on relevance grounds. It says it preserves other potential future objections, but unhelpfully never specifies what they might be. The Court can and should therefore rule today that these items are admissible (that is the whole idea, after all, we presume behind the Court's order requiring a 404(b) motion at this stage). If circumstances change, the Court can address their unknown objections later.

is uncontested, although we reiterate that no Rule 404(b) analysis is necessary to admit it and no Rule 404(b) instruction is needed.

### B. February 2024:  Routh Messaging with Contact for Post-Assassination Escape (Partially Unresolved)

The Government has sought to introduce chats between the Defendant and an individual named Ramiro between February 2024 and September 2024, culminating the day before the assassination attempt.  (ECF122:8-10); (Exhibits 1 and 2, attached hereto)[2].  These communications with Ramiro are direct evidence of Routh's attempt to assassinate President Trump because they show the Defendant planning his flight from law enforcement after committing the crime.  The case law is clear that "[e]vidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt." *United States v. Williams*, 541 F.3d 1087, 1089 (11th Cir. 2008).

The Defendant does not object to the admission of the September 2024 portion of the chat, where he says he will be in Mexico City on September 16.  (ECF 137:5-6).  Rather he seeks to exclude the February 2024 portion of the chat on the baseless contention that the "government will argue that Mr. Routh earlier intended to commit…alien smuggling." (ECF 137:6).  The Defendant, here, misses the point.

The Government does not intend to argue at trial that the Defendant is guilty of an attempted alien smuggling crime based upon the February chat or that he should be convicted of the pending charges because these February messages show that he facilitated alien smuggling.  Rather, the February messages put the September messages into a proper and understandable context for the jury.  Beyond the fact that the Defendant has known Ramiro for some time, the February chats show that Routh intentionally sought out a professional smuggler who specialized in clandestine migrant crossings as part of his plan to flee the United States post-assassination.

---

[2]   Given the Court's request already for items relating to Routh's prior convictions (ECF 131), we are attaching to our Reply the other items of potential 404(b) as to which there is still a dispute based upon the Defendant's Response.

2

The point here is that Ramiro is the human smuggler, and that Routh appealed to Ramiro in hatching his (Routh's) escape plan. The February and September communications should, therefore, be admitted in their entirety as direct evidence of the Defendant's guilt. To the extent the Court believes that a cautionary instruction is needed, we have no objection.

**C. April 2024: Components of Destructive Device and Multiple Rounds of Ammunition in Box Routh Delivered to L.P. and "I.E.D. Manual" in Nearby Storage Trailer (Unresolved)**

We have moved to introduce the improvised destructive device components (Exhibit 3, attached hereto) and multiple rounds of .50 caliber ammunition that were recovered from the North Carolina box that also contained Routh's "Dear World" letter, four of his burner phones, and items linked to the West Palm Beach assassination-reconnaissance trip he took immediately before storing the box at his friend's house. (ECF 122:10-11). Routh argues that the device components and ammunition, as well as a "Build Your Own I.E.D." manual found at a nearby storage trailer, are inadmissible.[3] His argument is unpersuasive. This evidence powerfully supports Routh's intent and plan to kill the President (Counts 1 and 2), and his knowing possession of ammunition as a convicted felon (Count 4).

---

[3] At one point, Routh says that he objects to the admissibility of the box's contents "apart from the letter." (ECF 137: 9). This may be unintended confusion, but for sure it makes no sense. The other items in the box were not and are not subject to any plausible 404(b) objection, which is why we did not address them in our motion (hence it is unclear how Routh can even object to them). For example, the box contained evidence of Routh's travel to West Palm immediately before he left this container with L.P. – and evidence of this trip, Routh concedes, is admissible. Burner phones and prepaid activation cards found in the box are directly tied to the March-April 2024 trip because they contain evidence of Routh's locations while in West Palm Beach during that specific time frame. Regardless, it would be wildly unfair to the Government and the jury to insist the prosecution present evidence from the box as if those items existed in isolation, rather than together in a contained storage unit. Simply put, we have no quarrel with the Court addressing the admissibility of the box's destructive device components and the ammunition – but those are the only items from the box in play. The rest of the box's contents undeniably come in.

Along the same lines, Routh's argument (ECF137:9) that evidence of the box's contents must be irrelevant because the Government's introductory summary of the facts did not mention them is absurd. Our summary was just that. It did not reference the entire universe of relevant facts, including facts that the Defendant now concedes are admissible.

The destructive device components – including a barrel, breech, and spring-loaded firing mechanism – and large-caliber ammunition were designed to construct an *improvised* device that would fire ammunition with deadly effect. (ECF 122:10-11). Possessing materials and ammunition that could be constructed into the breech and barrel of a lethal device, coupled with an instruction manual demonstrating his interest in such improvised or "homemade" weapons, accessories, and anti-ballistic armor, is at minimum proof of his comfort with causing death to other human beings, as there is no other purpose for such items; this goes directly to his intent to kill. His possession of these items also provides essential context for the West Palm Beach assassination-reconnaissance trip that immediately preceded the delivery of the box to L.P. Routh concedes that evidence of the reconnaissance is admissible, so it would be misleading to the jury to deny it proof of what Routh did, and possessed, virtually first thing upon returning from that trip. Likewise, the Defendant cannot divorce the "Dear World" letter from its proper context to suit himself; it was found alongside items whose only purpose would have been to murder other people. All of this evidence – the March-April 2024 trip, the entire contents of the box, and the "I.ED. Manual" – are links in a single chain of events leading to the September 15 assassination attempt.

The ammunition also has free-standing significance on Count 4, which charges Routh with being a felon in possession not just of a firearm, but also of ammunition on September 15. As we described with supporting case law in our motion, evidence that a felon possessed a gun or ammunition on a prior occasion is compelling proof that he did so knowingly and not accidentally on a later occasion (ECF 122:11). The .50 caliber ammunition also provides context for Routh's attempts, throughout August and September, to obtain a .50 caliber sniper rifle for the purpose of assassinating President Trump; it shows his familiarity with the ammunition for such a rifle, and his aptitude with such a weapon.

Routh's objections are identified with great brevity and have no merit. He says, without support, that his possession of the illicit items in the box was too temporally remote. Routh possessed these items a mere five months before September 15, hardly a serious passage of time.

4

Plus, if the March-April West Palm Beach trip is not objectionable due to remoteness or on any other basis, how can Routh's delivery of the box within a day of his return from his reconnaissance mission be too remote?  In any event, the Government will show at trial that Routh was messaging about the box's contents in the immediate lead-up to September 15.  The box was not "abandoned" never to be opened or seen again.

Routh also highlights that he did not have the destructive device components with him on September 15.  This totally misses the significance of those items for proving Routh's intent to kill, an intent that was hatched long before he drove to the golf course in the wee hours of that morning to set up his rifle and sniper hide.  Finally, Routh's cursory attempt to say why this evidence – and other items to which he objects – are not "inextricably intertwined" overlooks binding precedent, which establishes that evidence may be intrinsic, and thus not subject to Rule 404(b), in a wide variety of ways.  *See* ECF122:2-3 (explaining that evidence is intrinsic if it shows a crime committed in furtherance of the charged conduct but not charged in the indictment, or if pertains to the chain of events explaining the context, motive, and set-up of the charged conduct).  In summary, evidence of the box's destructive device components, including the .50 caliber ammunition, is admissible and not excludable under Rule 404(b) or on any other ground.[4]

### D. August 2024:  Attempted Purchase of Anti-Aircraft Weapons (Resolved)

The Government maintains that the Defendant's August 2024 attempt to purchase anti-aircraft weapons (ECF122:11-13) is direct evidence of his assassination attempt.  The defense does not object to this evidence on relevance or 404(b) grounds.  While we do not agree that this evidence should be analyzed under Rule 404(b) or the subject of a Rule 404(b) instruction, for present purposes, the issue is resolved.

---

[4]     We recognize that the I.E.D. manual came from a separate location (a trailer that housed Routh's roofing business) and was not in the box.  But Routh does not deny that it was his – he only says that the Government cannot prove when he last handled it (ECF137:9).  The manual connects to the destructive device components in the nearby box, and is further evidence of Routh's desire to build something designed to kill – that's what an I.E.D. does.  But to be clear, if the Court has concerns about admitting the manual, those concerns should not extend to the box's contents, which we believe are admissible in their entirety regardless.

### E. August 2024: Attempted Purchase of .50 Caliber Rifle and Other Firearms (Resolved)

The Government maintains that this evidence is direct proof of the assassination attempt. (ECF 122:13-14). The defense does not object to this evidence on relevance or 404(b) grounds. (ECF 137:10). While we do not agree that this evidence should be analyzed under Rule 404(b) or the subject of an instruction, for present purposes, the issue is resolved.

### F. August/September 2024: Routh's Use of Aliases, Flight from the Sniper Hide, and Possession of Stolen License Plates (Resolved)

The Defendant's August 2024 attempt to purchase anti-aircraft weapons is further direct evidence of his assassination attempt. (ECF 122:14-17). Here again, the defense does not object to this evidence on relevance or 404(b) grounds. We do not agree that this evidence should be analyzed under Rule 404(b) or the subject of a Rule 404(b) instruction, but for present purposes, the issue is resolved.

### G. Routh's Past Felony Convictions (Unresolved)

In his response, the Defendant indicates that he "intends to stipulate that [he] was a convicted felon…" (ECF 137:10). The stipulation, however, falls short of what the government must prove to convict on Count 4, namely, that the Defendant *knew* he was a convicted felon at the time of his possession of the rifle and ammunition. Unless and until the Defendant stipulates, not just to the fact of his prior convictions but <u>also</u> to his knowledge of his prior convictions, *all* of his prior felony convictions are fair game because they are direct evidence on the felon-in-possession count. *See United States v. Innocent*, 977 F.3d 1077, 1082 (11th Cir. 2020).

Whether the 2002 WMD conviction and the facts underlying it should be admitted regardless of a stipulation on Routh's knowledge of his felon status is addressed at pages 17 and 18 of our motion. *See also* (Exhibit 5, attached hereto). If the defense changes course and agrees to stipulate to both Routh's felon status and his knowledge of that status, we would rely upon the arguments in our motion as to the incident's admissibility. Certainly, with a cautionary instruction, evidence of the 2002 WMD possession does not unfairly prejudice this defendant, who has

portrayed himself falsely as a man of peace and non-violence. Indeed, the Defendant here is charged with, among other things, an attempted assassination. It is hard to imagine how the prior conviction for possession of a WMD could be *unduly* prejudicial considering the charge at issue: that he attempted to kill another human being.[5]

### H. Firearms Not the Subject of a Conviction

The Government has sought to introduce evidence of Routh's prior firearms possession that did not result in felony convictions to show his facility with especially dangerous firearms of the type he ultimately used on September 15. (ECF 122:19-20). This is particularly important because defense counsel made a point of arguing, as early as the pretrial detention hearing, that Routh's lack of training or certification in firearms went "to intent, it goes to the attempted assassination, if this is an individual who is trained in firearms, who can meet this specific intent versus a person who is less knowledgeable." (ECF 17, Det. Hrg. Tr: 71).

These prior instances of firearms possession tend to prove the Defendant's mental state as to Counts 2, 4, and 5. The case law is clear that "where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crimes charged," *United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003) (quotations and citations omitted), especially as it relates to firearms, *see e.g., United States v. Perpall*, 856 F. App'x 796, 799 (11th Cir. 2021).

To the extent the Defense argues that these other instances of firearms possession are inadmissible because they did not result in convictions, *see e.g.,* (ECF 137:13), that argument fails.

---

[5] Routh makes repeated allusions, in connection with the WMD conviction and past firearm possession incidents, to the alleged temporal remoteness of these events. We acknowledge that remoteness is a consideration under both Rule 404(b) and 403. As we wrote in our motion, however (ECF122:18), there is no bright line. "[D]ecisions on impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious value." *United States v. Pollock*, 926 F.2d 1044, 1048 (11th Cir. 1991). Remoteness matters mostly to the extent it diminishes the present value of the incident as proof of the defendant's intent, knowledge, or other permissible non-character uses. Here, by contrast, the length and breadth of Routh's experience with deadly devices arguably makes these past incidents more meaningful to his current crimes – not less.

By its own terms Rule 404(b) contemplates the admissibility not just of prior convictions but also of any "other crime, wrong, or act." *See also United States v. Ozuna*, 129 F. Supp. 1345, 1350 (S.D. Fla. January 23, 2001) ("Rule 404(b) evidence is not limited to criminal convictions, but can consist of uncharged crimes, wrongs, or other acts. Indeed, evidence of an act for which a defendant was previously acquitted can be submitted under Rule 404(b)) (citing *United States v. Cavin*, 39 F.3d 1299, 1311 (5th Cir. 1994)).

1. **April 26, 2022, Text Message (Partially Unresolved)**

In a text message dated April 26, 2022, Routh admitted "I ow[n]ed an ak47 in north Carolina and a tech 9 and a bunch of guns…police ended up with them all." (Exhibit 4). The Defendant seeks to censor the latter portion of the text, which states "police ended up with them all." (ECF 137:13). The Defendant seems to assert that this latter part of the text message will confuse the jury as to Mr. Routh's prior criminal history. First, there is no confusion, since the defendant will be stipulating to his status as a felon and (as discussed above) evidence of his four prior felonies right now must come in anyway as proof that he knew he was a felon. Second, any jury confusion could be avoided via a clear limiting jury instruction. Third, the entirety of the text is necessary to establish that these firearms were seized by police because they were, as he admits, unlawfully possessed by Routh. As such the entirety of the text is admissible to offer the proper context of the prior firearms possession.

2. **July 2022 and September 2024 Text Messages (Resolved)**

The Defendant agrees to the admissibility of these massages. (ECF 137:13). Accordingly, this issue is resolved.

3. **April 2002 Possession of Sawed-Off Shotgun (Unresolved)**

On April 12, 2002, the Defendant possessed a sawed-off shotgun and made threats to several individuals, including Greensboro, North Carolina law enforcement. Routh was arrested for this activity; however, the charged was eventually dismissed as part of Routh's guilty plea in the weapon of mass destruction case described above. The Defendant objects to the admissibility

of this evidence because he purports it to be unreliable. But he proffers nothing to suggest that this episode did not occur, or refute the police reports produced in discovery describing it. (Exhibit 5, attached hereto). If this evidence is allowed, the Government intends to introduce the testimony of the reporting law enforcement officers who witnessed the events relating to the sawed-off shotgun and threats. The reliability of this evidence can then be tested via cross-examination at trial—not via the extraordinary sanction of exclusion. *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (Rule 404(b) is a rule "of inclusion which allows extrinsic evidence unless it tends to prove only criminal propensity. The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite.") (quotation marks and alteration omitted). Accordingly, the evidence is reliable and properly admissible to rebut the Defendant's claim that he lacked the mental state to commit the charged offenses.

### 4. Routh's Possession of Uzi-Style Submachine Gun (Unresolved)

The Defendant also seeks to exclude testimonial evidence of his prior possession of an Uzi-style submachine gun in the early 2000s on the grounds that the evidence is unreliable and irrelevant. As previously explained, this prior possession of a firearm is highly relevant to establishing the Defendant's knowledge and intent to commit the charged crimes. As to reliability, the Defendant offers only a conclusory statement and nothing more to challenge the Government's proffered witness testimony, which will be subject cross-examination. That testimony, of course, comes from two witnesses (*see* Exhibits 6 and 7, attached hereto), and is corroborated by Routh's admission (addressed above) that he possessed a TEC-9 machine pistol that is nearly identical to an "Uzi" submachine gun. There is no question about its reliability.

### Conclusion

For the reasons explained here and in the Government's Motion (ECF 122), this Court should grant the motion in whole over the Defendant's objections.

         Respectfully submitted,

         HAYDEN P. O'BYRNE
         UNITED STATES ATTORNEY

By: */s/ John C. Shipley*
   John C. Shipley
   Florida Bar No. 69670
   Christopher B. Browne
   Florida Bar No. 91337
   Maria K. Medetis Long
   Florida Bar No. 1012329
   Assistant United States Attorneys

   United States Attorney's Office
   99 N.E. 4th Street
   Miami, Florida 33132
   Telephone: (305) 961-9119
   Email: john.shipley@usdoj.gov

   SUE BAI
   SUPERVISORY OFFICIAL PERFORMING THE DUTIES OF THE ASSISTANT ATTORNEY GENERAL FOR THE NATIONAL SECURITY DEIVISION

By: */s/ James Donnelly*
   James Donnelly, Trial Attorney
   Court ID No. A5503278
   Department of Justice, National Security Division
   950 Pennsylvania Avenue, NW
   Washington, D.C. 20530
   Telephone: (202) 514-0849
   james.donnelly3@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 28, 2025, I electronically filed the foregoing notice and exhibits with the Clerk of the Court using CM/ECF.

         */s/ John C. Shipley*
         John C. Shipley