UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-80116-CR-AMC

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RYAN WESLEY ROUTH,

    Defendant.
_____/

**RYAN WESLEY ROUTH'S REPLY TO GOVENRMENT'S RESPONSE TO HIS MOTION TO DISMISS UNDER THE SECOND AMENDMENT**

Ryan Wesley Routh, through undersigned counsel, submits the following Reply to the Government's Response (DE 136) to his Motion to Dismiss (DE 123).

## Introduction

As is typical, the government responds by denigrating Mr. Routh's defense team. In the initial paragraph of the government's response, the prosecutor claims that Mr. Routh's argument "ignores binding Eleventh Circuit precedent" and thereby implies the defense has acted unethically. (DE 136:1). To the contrary, Mr. Routh forthrightly acknowledged to this Court that "the government may argue that *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) and *United States v. Dubois*, 94 F.4th 1284, 1292 (11th Cir. 2024) (cleaned up), *cert. granted, judgment vacated, and remanded*, No. 24-5744 (U.S. Jan. 13, 2025) foreclose his challenge." (DE 123:2–3). Mr. Routh then asserted a good-faith argument that *United States v. Rahimi*, 602

1

U.S. 680, 681 (2024) and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) undermine *Rozier* to the point of abrogation. While the government may not appreciate Mr. Routh's arguments, to denigrate the defense by saying he has "ignored" binding Eleventh Circuit precedent when he has not is wildly inappropriate but unfortunately predictable.

> I. **Count 4 is Unconstitutional as Applied to Mr. Routh.**[1]
>
> **A. *Rahimi* and *Bruen* Abrogated Eleventh Circuit Precedent Because the Supreme Court Set Forth a New Standard for Evaluating Second Amendment Claims.**

In *Rozier*, the defendant challenged his conviction under § 922(g)(1), alleging he had a Second Amendment right to possess a gun for self-defense. 598 F.3d at 770. The Eleventh Circuit relied on *dicta* in *Heller* to conclude that felons are "disqualified from the exercise of Second Amendment rights." *Id.* at 771. But *Rahimi* expressly rejected that reliance on *Heller*'s *dicta*. *Rahimi*, 602 U.S. at 701–02. That rejection and the fundamental shift in the analysis of Second Amendment claims required by *Bruen* and *Rahimi* undermines *Rozier* to the point of abrogation.

*United States v. Archer* illustrates this point. In *Archer*, the Eleventh Circuit used the phrase "undermined to the point of abrogation" and applied *Begay v. United States*, 553 U.S. 137 (2008) to reject reliance on a prior panel opinion finding carrying a concealed weapon to be a crime of violence under the Sentencing Guidelines. The Eleventh Circuit rejected the prior opinion even though the Supreme Court addressed an entirely different predicate crime—because the Court set forth a new test. *Archer,*

---

[1] Mr. Routh continues to preserve his argument that § 922(g)(1) is facially unconstitutional.

2

531 F.3d 1347, 1352 (11th Cir. 2008). *Archer* concluded that because Supreme Court set forth a new standard to evaluate which crimes constitute "violent felonies" and "crimes of violence," the prior panel opinion had been undermined to the point of abrogation and the Court was bound to follow this new rule of law. *Id.* at 1352. Similarly, *Rahimi* abrogates *Rozier* because the Supreme Court set forth a new test.

*Heller*'s *dicta* that our Second Amendment right is limited to those who are "law-abiding and qualified individuals" and "excluding felons from those categories" cannot survive *Rahimi*'s express rejection of that *dicta*. And *Rahimi*'s rejection of that dicta demolishes and eviscerates what was the "fundamental prop" of *Rozier*. 602 U.S. at 701-02. Accordingly, *Rozier* has been abrogated.

### B. There is a circuit split, and the Third, Fifth and Sixth Circuits have concluded that *Rahimi* and *Bruen* abrogate their precedent.

The Third, Fifth, and Sixth Circuits all recognize that *Bruen* and *Rahimi* abrogate their prior precedents on the constitutionality of § 922(g)(1). For example, the Fifth Circuit recognized that *Bruen* constitutes an intervening change, "rendering our prior precedent obsolete." *United States v. Diaz*, 116 F.4th 458, 465 (5th Cir. 2024). Acknowledging that *Bruen*, and then *Rahimi*, reject prior modes of analysis, the Third Circuit concluded its prior precedent was abrogated. *Range v. Att'y Gen. United States*, 124 F.4th 218, 224–225 (3d Cir. 2024) (*en banc*). The court found that "[m]any courts around the country, including this one, overread [*Heller*'s] passing comment," that is, its *dicta*, about "any of the standards of scrutiny applied" to evaluating constitutional rights, when those courts applied means-end scrutiny after *Heller*. *Id.* The Sixth Circuit likewise concluded its precedent was abrogated after

3

exploring the approaches of various circuits. *United States v. Williams*, 113 F.4th 637, 645 (6th Cir. 2024) ("*Bruen* requires a history-and-tradition analysis that our circuit hasn't yet applied to this statute. That means we must revisit our prior precedent.").

### C. The government has not shown a relevantly similar historical regulation justifying a lifetime ban on possession of firearms by Mr. Routh, a non-violent felon.

The Court can consider "whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Bruen,* 597 U.S. at 27. But *Bruen* reminded us that "not all history is created equal." *Id.* at 34. The burden falls squarely on the government to "*affirmatively prove* that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19 (emphasis added). If the government cannot do so, § 922(g)(1) is unconstitutional as to Mr. Routh.

And the government cannot meet its burden to establish the requisite "'relevantly similar'" historical tradition. *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29. The "general societal problem" that § 922(g)(1) is designed to address—*i.e.*, felons with access to guns—is one "that has persisted since the 18th century." *Id.* at 27. Therefore, § 922(g)(1) is unconstitutional unless the government shows a robust tradition of relevantly similar historical regulation, which they have failed to do.

Importantly, Mr. Routh's prior convictions do not involve the use of force or physical injury or indicate that he posed a clear threat of physical violence to another. First, the government has presented no evidence that Mr. Routh's convictions for possessing stolen goods prove he poses a physical danger to others or that stolen good

4

*possession* is closely associated with physical danger. *Range,* 124 F.4th at 230–232 (holding that the government did not show that the principles underlying the Nation's historical tradition of firearms regulation support depriving defendant of his Second Amendment right to possess a firearm based on food stamp conviction).

Second, the government repeats its mantra that the "WMD conviction not only shows Routh's comfort with devices that may cause death or grave injury, but also shows that he was indeed capable of intending to do the extraordinary." *Compare* (DE 136:7) *with* (DE 122:18). Mr. Routh will repeat his responses: This characterization misrepresents Mr. Routh's prior conviction for which he received *probation*. This disposition reflects the view that neither the State of North Carolina nor the Court viewed his offense as violent. Indeed, *possession* of dynamite is more analogous to the passive crime of carrying a concealed firearm, which the Eleventh Circuit has held is not a crime of violence. *Archer*, 531 F.3d at 1349.

*Rahimi* illustrates a properly bounded as-applied analysis at odds with the government's view. Even though the record in *Rahimi* contained a wide range of sensational allegations, the Supreme Court stayed narrowly focused on those facts relevant to the defendant's legal challenge. *Rahimi* "had received notice and an opportunity to be heard," his restraining order "prohibited him from communicating with or threatening [his girlfriend]," and the order included a finding that he "represented 'a credible threat to the physical safety' of [his girlfriend] or her family," as required by § 922(g)(8)(C)(i). *Rahimi*, 602 U.S. 688–689. Because his restraining order met the requirements in § 922(g)(8)(C)(i) and was "temporary as applied to

5

Rahimi," § 922(g)(8)'s application to Rahimi was consistent with historical tradition. *Id*. at 702.

Specifically, the Court identified two regulatory traditions, involving surety statutes and affray statutes, which together confirmed that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id*. at 693–698. The Court then compared these traditions to § 922(g)(8)(C)(i) cases. First, the Court observed that this subsection "applies to individuals found to threaten the physical safety of another." *Id*. at 698. The statute therefore "restrict[ed] gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do." *Id*. Second, the Court noted that "Section 922(g)(8) applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another." *Id*. at 688–689. "That matche[d] the surety and going armed laws, which involved judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon." *Id*. at 699. Finally, "Section 922(g)(8) only prohibits firearm possession so long as the defendant 'is' subject to a restraining order," which "[i]n Rahimi's case . . . is one to two years after his release from prison, according to [Texas law]." *Id*. Section 922(g)(8)'s application to Rahimi was therefore "like surety bonds of limited duration." *Id*. For all these reasons, the Court concluded that "Section 922(g)(8) can be applied lawfully to Rahimi." *Id*.

In our case, the government has failed to show that Mr. Routh's prior convictions allow Congress to permanently disarm him. Mere possession of stolen

6

goods and dynamite are not necessarily violent and do not involve an immediate and direct threat of violence. These offenses can be contrasted with crimes against a person—like murder, rape, assault, and robbery. *Williams*, 113 F.4th at 658. Furthermore, Mr. Routh's prior possession convictions do not indicate an inherent and significant threat of danger. *Id.* at 659. Rather, these crimes may be committed without causing any physical harm to another person or the community. Because Mr. Routh's prior criminal record—stripped of the government's dramatic mischaracterizations—does not show he is a dangerous person, § 922(g) is unconstitutional as applied to him.

## II.     **18 U.S.C. § 922(k) is unconstitutional.**

In responding to Mr. Routh's motion to dismiss, the prosecution leans heavily on *United States v. Price*, 111 F.4th 392 (4th Cir. 2024), where the *en banc* Fourth Circuit found that §922(k) is constitutionally valid. This Court should decline to adopt the Fourth Circuit's new test. *Id.* at 426–27 (Richardson, J., dissenting)(criticizing majority for "Adopting a limitation that appears nowhere in the Second Amendment's plain text, the majority requires Price to prove that unmarked firearms are in common use for lawful purposes. It then dismisses Price's challenge by speculating about why a law-abiding citizen would prefer an unmarked firearm and drawing illogical inferences. This is not how Second Amendment challenges are supposed to proceed.").

Under *Bruen*, step one's only question is whether the Second Amendment's plain text covers the regulated conduct. The regulated conduct under §922(k) is

firearm possession, which is protected by the Second Amendment. *Heller*, 554 U.S. at 592. Therefore, for the reasons discussed above and in Mr. Routh's initial pleading, §922(k) regulates protected conduct. The absence of a serial number does not remove Mr. Routh's alleged firearm from the Amendment's plain text.

But even assuming, as the government suggests (DE 136:17–18), *Bruen*'s step one allowed an inquiry into "common use" and use for "lawful purposes," that is only one-half of the analysis. *Heller* described the "in common use at the time" requirement as being "fairly supported by the historical tradition of *prohibiting the carrying of dangerous and unusual weapons*." *Heller*, 554 U.S. at 627 (emphasis added). In other words, "in common use for lawful purposes" and "dangerous and unusual" are two ways of asking the same question. A weapon is protected by the Second Amendment as long as it either (1) is in common use for lawful purposes, or (2) is not "dangerous and unusual."

The prosecution has failed to show that unserialized firearms can be excluded on either basis. Dangerousness has to do with a firearm's functionality—*i.e.* whether a gun is made to shoot faster, cause bullets to hit with greater impact, increase the firearm's magazine capacity, or otherwise render a firearm more deadly. The lack of a serial number does none of those things.

Nor has the prosecution established that unserialized firearms are not "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. Importantly, an individual does not have to remove, obliterate, or alter a firearm's serial number in order to be criminally culpable under § 922(k); they only

have to possess the gun. A private citizen might possess an unserialized firearm because they received it as a gift, because they legally bought it from a non-licensed dealer, because the serial number wore away, or for any other number of innocuous reasons. Possessing an unserialized firearm is not inherently unlawful or inherently nefarious and is a perfectly legitimate exercise of the fundamental right to keep and bear arms. Indeed, § 922(k) recognizes the innocence of such conduct—by permitting the possession of an unserialized firearm manufactured before 1968.

This Court should not adopt the prosecution's naked, unsupported assertion that law-abiding citizens do not possess unserialized firearms for lawful purposes. And this Court should decline to follow the Fourth Circuit's fractured decision agreeing with this proposition.

Section 922(k) infringes on the right to self-defense by expressly prohibiting possession of a firearm. To any individual possessing a post-1968 unserialized firearm, they are subject to federal felony criminal jeopardy under § 922(k) unless they forfeit their constitutional right to self-defense. Otherwise, if convicted—besides being subject to five years in a federal prison—that person could become permanently stripped of their right to possess firearms. 18 U.S.C § 922(g)(1).

Accordingly, § 922(k)'s burden on possessing an unserialized firearm is both heavy and real. This is disproportionate and unreasonable-—where serialization does not impact firearm functionality, safety, or dangerousness, and § 922(k)'s burden can supposedly be alleviated by just possessing either a serialized or another pre-1968 unserialized firearm (assuming a given citizen is even capable of discerning the

9

difference). *Heller* made this point discussing the District of Columbia's ban on handguns in the home: "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed." *Heller*, 554 U.S., at 629.

The prosecution failed to meet its burden to present a "historical analogue" to 18 U.S.C. § 922(k). At this second step of the *Bruen* analysis, the prosecution did not, and cannot, proffer evidence showing a national firearm history and tradition from the time of the founding supporting § 922(k)'s serial number proscriptions. A statute is unconstitutional unless it comports with "the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130 (emphasis added). Presumably, requiring serial numbers on firearms is to address firearm violence and help law enforcement with solving firearm offenses. These problems existed in 1791 and certainly were not "unprecedented" or "unimaginable at the founding." Accordingly, the conduct prohibited by § 922(k) is protected by the Second Amendment and there is not a historical tradition of firearm regulation consistent with this statute, this Court should dismiss Count 5 as facially unconstitutional.

Respectfully submitted,

HECTOR A. DOPICO
Federal Public Defender

| | |
|---|---|
| *s/ Kristy Militello* | *s/Renee M. Sihvola* |
| Kristy Militello | Renee M. Sihvola |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Attorney for the Defendant | Attorney for the Defendant |
| Florida Bar No. 0056366 | Florida Bar Number: 116070 |
| 250 South Australian Ave., Suite 400 | 109 N 2nd Ave |
| West Palm Beach, Florida 33401 | Ft. Pierce, Florida 34950 |
| (561) 833-6288 – Telephone | (772) 489-2123 - Telephone |
| Kristy_Militello@fd.org | Renee_Sihvola@fd.org |

CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Renee Sihvola*
Renee Sihvola