UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-80116-CR-CANNON

**UNITED STATES OF AMERICA**,

v.

**RYAN WESLEY ROUTH**,

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
UNITED STATES' MOTION IN LIMINE**

**THIS MATTER** comes before the Court upon the United States' Motion in Limine, filed on July 8, 2025 (the "Motion") [ECF No. 191]. The Court has reviewed the Motion, Defendant's Response (filed by appointed counsel) [ECF No. 200], Defendant's *pro se* Response [ECF No. 198], the United States' Reply [ECF No. 204], and the full record.[1] The Court also heard argument on the Motion at the July 25, 2025, Motions Hearing [ECF No. 223].[2] Upon full review, the Motion is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Order.

\* \* \*

The United States seeks a pretrial ruling excluding various pieces of defense evidence and admitting portions of its own evidence [ECF No. 191]. The Motion covers nine topics. At the hearing, the Court addressed each topic individually [ECF No. 223]. The parties noted agreement

---

[1] Defendant's prior appointed counsel filed a Court-ordered Response to the Motion pending resolution of Defendant's motion to proceed *pro se* [ECF No. 193]. The Court also permitted Defendant to file a *pro se* Response to the Motion [ECF No. 198].

[2] Defendant Ryan Routh appeared *pro se* at the hearing following the Court's Order Granting Defendant's Motion to Waive Appointed Counsel, Authorizing Self-Representation, and Appointing Standby Counsel [ECF No. 208].

on some topics, which are memorialized in this Order. On the remaining disputed issues, the Court reasons as follows.

1. **Hearsay Statements (Topics I through IV)**

On topics I through IV, the United States seeks to prevent Defendant from introducing the following categories of evidence:

- Defendant's statements other than statements offered against him by the United States;

- Defendant's writings other than those offered against him by the United States;

- The remaining portion of Defendant's "Dear World" letter outside of the first page, which the United States seeks to introduce; and

- Statements by third parties about Defendant.

[ECF No. 191 pp. 3–9]. These four topics were discussed together at the hearing [ECF No. 223 p. 48].

The United States argues that any statement and/or writing in these four categories is presumptively inadmissible hearsay [ECF No. 191 pp. 3–9]. And to the extent that Defendant may seek to introduce statements and/or writings under the rule of completeness in Rule 106, the United States continues, that rule applies only if additional material is "relevant and necessary to qualify, explain, or place into context the portion already introduced"—which is not the case for any of Defendant's statements as listed in the defense disclosure [ECF No. 191 p. 5 (citing *United States v. Macrina*, 109 F.4th 1341, 1348 (11th Cir. 2024); ECF No. 191-1 (defense discovery disclosure)]. *See* Fed. R. Evid. 106. Defendant characterizes the United States' requests as overbroad and more properly addressed during trial [ECF No. 200 pp. 3–8].

At this juncture, subject to the settled principles set forth below, the Court **DEFERS** ruling on the admissibility of any discrete statements made by or about Defendant, except on the narrow issue of the "Dear World" letter, which the Court **GRANTS IN PART** as explained below.

As a general matter, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *United States v. Sanjar*, 876 F.3d 725, 739 (5th Cir. 2017) ("When offered by the government, a defendant's out-of-court statements are those of a party opponent and thus not hearsay. When offered by the defense, however, such statements are hearsay.") (internal citation omitted); *see United States v. Pulliam*, 973 F.3d 775, 783 (7th Cir. 2020) (same). Accordingly, if Defendant seeks to introduce any of his own out-of-court statements, whether oral or written, those statements are presumptively inadmissible hearsay. Subject to proper objections, the burden will be on Defendant, as the proponent, to establish the applicability of a proper hearsay exception or exclusion and to address any further objections to the disputed material. *See United States v. Kennard*, 472 F.3d 851, 855–86 (11th Cir. 2006). Additionally, for any of Defendant's statements introduced by the United States, Rule 106 "'does not automatically make the entire document admissible' once one portion has been introduced." *Macrina*, 109 F.4th at 1348 (quoting *United States v. Santos*, 947 F.3d 711, 730 (11th Cir. 2020)).[3] Rather, Rule 106 requires introduction of additional material in a statement only if that additional material "is relevant and . . . necessary to qualify, explain, or place into context the portion already introduced." *Id.* (quoting *Santos*, 947 F.3d at 730). Thus, to the extent Defendant objects to the partial introduction of any of his statements or writings, the burden will be on him to (1) raise a contemporaneous objection on the issue at the point of introduction, *see* Fed. R. Crim. P. 51(b); (2) explain, with particulars from the statement itself, why inclusion of additional portions of the statement is warranted under

---

[3] Rule 106 provides: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." Fed. R. Evid. 106.

3

Rule 106 and related authorities; and (3) address any other objections raised by the United States, including challenges to the relevance of the additional material.

This leaves for resolution herein only the United States' request to introduce a portion of Defendant's so-called "Dear World Letter" [ECF No. 223 p. 36 (United States noting the "one instance where we do ask the Court to make a ruling before trial")]. Upon review of both the limited proffered portion of the letter [ECF No. 25-6] as well as the full letter filed under seal [ECF No. 222], the Court hereby **grants** the Motion insofar as it seeks a pre-trial ruling permitting the United States to introduce the limited portion of the Dear World Letter (page 1 only) [*see* ECF No. 25-6 (first page of letter introduced as exhibit during detention hearing)]. The remainder of the letter is presumptively inadmissible hearsay and may be introduced only upon a sufficient and timely justification by Defendant as noted above. As a general matter, based on the Court's independent review of the entire letter, any potential relevance beyond page 1 is questionable at best. Nor does there appear to be anything in the balance of the letter whose introduction seems necessary to explain the context of the first page.

   2. **Character Evidence (Topic V)**

The United States next seeks to preclude the defense from offering evidence of the Defendant's supposed good character or good deeds unrelated to the charges in the Indictment [ECF No. 191 pp. 9–12]. The United States argues that "evidence of good conduct is not admissible to negate criminal intent" in the Eleventh Circuit [ECF No. 191 p. 9 (quoting *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991)]. The United States also argues that almost all of the items on the defense discovery production are marked as "character evidence" and exceed

the Eleventh Circuit's prohibition on evidence of general good conduct to negate criminal intent [ECF No. 191 p. 10; *see* ECF No. 191-1 (defense discovery disclosures)].[4]

In opposition, Defendant (both through prior appointed counsel and in his *pro se* capacity) argues that character evidence is admissible to "undermine" the requisite intent to kill on Count 1, by showing his pertinent character traits of "peacefulness and non-violence" [ECF No. 200 p. 9; ECF No. 199 p. 2 (*pro se* Response) ("Character is the whole of this entire case—there is nothing else. . . . Character is all there is—nothing else in the world matters. . . . Character is the only reason we are all here.").[5]

Rule 404(a) generally prohibits "[e]vidence of a person's character or character trait . . . to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). But in a criminal case, "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A). Some courts have explained that "pertinent" is synonymous with "relevant." *See United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981).[6]

---

[4] The United States discussed some of these items at the hearing. For example, the defense disclosure cites Defendant's Eagle Scout application from 1980, along with an Eagle Scout award [ECF No. 191-1 p. 2; ECF No. 223 pp. 48, 54–56]. Other items include a 1991 article from the Greensboro News purportedly discussing Defendant's role in putting up Halloween decorations, an article about a "burning trash problem," and letters of recommendation [ECF No. 191-1 pp. 3–4; ECF No. 223 pp. 53–54]. The defense disclosure chart provides only the file name, bates numbers, and nature of evidence, without any further description [ECF No. 191-1]. But the general "character" nature of some items is apparent.

[5] As background, and unaddressed in the instant Motion, Defendant also seeks to introduce the testimony of nine witnesses regarding his peacefulness, non-violence, and/or narcissism [ECF No. 242 pp. 2–3 (Order Denying in Part and Granting in Part Defendant's Motion to Subpoena Witnesses)]. The Court permitted Defendant to issue subpoenas to four identified witnesses, "subject to appropriate objections and the requirements of the Federal Rules of Evidence more broadly" [ECF No. 242 p. 3].

[6] *See also United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982) ("The word 'pertinent' is read as synonymous with 'relevant.'"); *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977)

5

Going further, pursuant to Rule 405, "[w]hen evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405(a). Importantly, however, "[s]pecific instances of conduct ordinarily may be used only '[w]hen a person's character or character trait is an essential element of the charge.'" *United States v. Ahmed*, 73 F.4th 1363, 1384 (11th Cir. 2023) (quoting Fed. R. Evid. 405(b)). "In other words," as the Eleventh Circuit has explained, "[e]vidence of good conduct [in the form of specific instances] is not admissible to negate criminal intent." *Id.* (quoting *Camejo*, 929 F.2d at 613). *See also United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (same) (affirming exclusion of defendant's legitimate business activities where defendant argued the evidence negated his intent to defraud as charged in the case).

Upon review of the parties' competing arguments and the above principles—and subject to particularized testimony, exhibits, and objections at trial—the Court determines that peacefulness and non-violence are generally "pertinent" traits under Rule 404(a), because Count 1 requires proof of intent to kill and Count 3 requires proof of a forcible assault.[7] Importantly, however, and pursuant to the restrictions in Rule 405, Defendant may introduce evidence of his purported peacefulness and non-violence only through "testimony about [his] reputation or by testimony in

---

("[A] character trait can only be 'pertinent' if its existence is relevant to the outcome of the case."), *overruled on other grounds by United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998).

[7] *See United States v. Darland*, 626 F.2d 1235, 1237 (5th Cir. 1980) (holding that peacefulness is a relevant trait to a robbery charge); *Commonwealth v. Green*, No. 920 EDA 2024, 2025 WL 1951931, at *5 (Pa. Super. Ct. July 16, 2025) (concluding that evidence of non-violence was relevant character evidence in prosecution for murder and assault); 1 McCormick on Evid. § 191.1 (9th ed.) ("One charged with theft might offer evidence of honesty, while someone accused of murder might show that he is peaceable, but not vice versa. A few general traits, like being law-abiding, seem relevant to almost any accusation."). *See also* 3 Jones on Evidence § 16:12 (7th ed. 2024) ("In a prosecution for a violent crime, the defendant's peacefulness, gentleness or nonviolence clearly is a pertinent trait.").

the form of an opinion." Fed. R. Evid. 405(a); *see Ahmed*, 73 F.4th at 1384; *United States v. Murphy*, No. 23-10781, 2024 WL 4847755, at *9–11 (11th Cir. Nov. 21, 2024). Accordingly, Defendant may not introduce evidence of "specific instances" of those character traits because neither of those traits constitutes "an essential element of a charge, claim, or defense" under Rule 405(b). *See United States v. McMahan*, 394 F. App'x 453, 463–64 (10th Cir. 2010) (rejecting effort to "employ evidence of specific instances of prior conduct to circumstantially prove his lack of intent"); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (holding defendant's effort to use "specific acts circumstantially to prove lack of intent . . . is not only disfavored, it is not permitted under Rule 405(b)"); *United States v. Kahn*, 768 F. App'x 266, 270 (5th Cir. 2019) (rejecting effort to introduce specific-act evidence "to demonstrate [defendant] did not act with the necessary criminal intent for the charged offenses") (citing *Marrero*, 904 F.2d at 259–60).[8] Nor is evidence of good conduct generally admissible to negate criminal intent, as the Eleventh Circuit has emphasized. *Ahmed*, 73 F.4th at 1384 (affirming exclusion of character testimony because it would have covered a defendant's "specific acts" unrelated to his criminal charges and be used to negate criminal intent); *Ellisor*, 522 F.3d at 1270; *Camejo*, 929 F.2d at 613. *See also Murphy*, 2024 WL 4847755, at *10. Indeed, "if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception of Rule 405(b) would swallow the general rule of 405(a) that proof of specific acts is not allowed." *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997). Defendant is therefore limited to introducing character

---

[8] "The relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion or reputation." 1 McCormick on Evidence § 187 (9th ed.).

7

evidence through opinion or reputation testimony only.[9] But if Defendant has evidence of his character trait that *does* actually constitute an essential element of any of the charges in this case, consistent with this Order, then he may make an appropriate proffer of proof at trial.[10]

Should Defendant proceed with introducing character evidence under Rule 405(a) as limited by this Order, the United States may cross examine that presentation by probing "specific instances of [Defendant's] conduct." Fed. R. Evid. 405(a); *see United States v. Ugha*, 789 F. App'x 758, 762 (11th Cir. 2019). The United States accurately noted at the hearing that Defendant's character evidence could potentially warrant revisiting portions of the Court's Order on the United States' 404(b) Motion barring the United States from introducing specific prior incidents [ECF No. 223 p. 53; *see* ECF No. 182]. Defendant has acknowledged that he understands this reality [ECF No. 223 p. 58 ("[Y]ou can throw the barn doors wide open and, you know, go back a hundred years.")].[11]

In sum, the United States' Motion on this topic is **granted in part and denied in part** in accordance with this Order.

---

[9] Insofar as there could be an argument that some of the purported "character evidence" could be admissible under Rule 404(b) as an "other act" rather than through Rule 404(a) as character evidence of a pertinent trait, the Court is unpersuaded under the current record. All of the proposed evidence by Defendant, at least to this point, is character evidence. Defendant cannot repackage character evidence under Rule 404(a) into prior-acts evidence under Rule 404(b), because the purpose of the evidence is still to show his purported character trait. Look no further than the defense discovery disclosure, where the vast majority of items are characterized as "character" evidence [ECF No. 191-1].

[10] The Court endeavored repeatedly during the hearing on July 25, 2025, to better understand the specific nature of any evidence Defendant wishes to introduce on this topic, but Defendant continued to make general, sweeping claims about the "cumulative situation" and could not really identify anything with any degree of reasonable specificity for the Court's consideration [ECF No. 223 pp. 58–60].

[11] Because the United States' Motion did not have occasion to foreshadow Defendant's assertion that "narcissism" is a pertinent character trait on Count 1, this Order reserves discussion of that matter for calendar call and/or trial if raised properly.

3. **Statements of co-conspirator Tina Cooper (Topic VI)**

The United States next seeks to admit statements by Tina Cooper and Ronnie Oxendine as "agent/employee/aider-and-abettor statements or, alternatively, as co-conspirator statements" under Rule 801(d)(D) and (E) [ECF No. 191 pp. 12–14]. These text messages, filed under seal after the hearing [ECF No. 222 (consisting of GX191-5, 191-6, 191-7, and 191-8 as marked during the hearing)], state that Defendant enlisted Cooper to obtain firearms, including the SKS rifle found at the scene, as well as a .50-caliber rifle [ECF No. 191 p. 12; ECF No. 223 p. 62]. As background, Cooper pleaded guilty in July 2025, in the Middle District of North Carolina, to conspiring with Defendant to transport a firearm (the SKS rifle at issue in this case); further, Oxendine expressly admitted his participation in the conspiracy [ECF No. 204 p. 6 (citing both individuals' criminal dockets in North Carolina)].

As explained by Defendant in his Response, and as confirmed at the hearing, Defendant has no objection to admission of any of the statements by Cooper and Oxendine [ECF No. 223 pp. 65–66]. The Motion is therefore **granted** on this topic due to the agreement of Defendant.[12]

---

[12] To the extent further discussion on the merits is necessary in light of appointed counsel's Response to the Motion, the Court concurs with the United States that it has established (by a preponderance of the evidence) the three elements necessary to admit a co-conspirator's statements under Rule 801(d)(2)(E) [ECF No. 200 p. 10 (citing *United States v. Hasner*, 340 F.3d 1261, 1274 (11th Cir. 2003) ("(1) existence of a conspiracy; (2) conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy")); *see* ECF No. 223 pp. 62–68 (argument during hearing)]. Cooper pled guilty to violating 18 U.S.C. § 933(a)(3) (among other provisions of 18 U.S.C. § 933), which as charged specifically criminalizes a conspiracy to ship, transport, transfer, cause to be transported, and otherwise dispose of a firearm (the SKS rifle). *See* Case No. 25-CR-97 (M.D.N.C.), ECF Nos. 1, 14; 18 U.S.C. § 933(a)(3). Cooper admitted in support of her guilty plea that, from July to August 2024, she conspired with Oxendine and Routh to sell and dispose of a firearm to a prohibited person (Routh). *See* Case No. 25-CR-97 (M.D.N.C.), ECF No. 16. Oxendine did not plead guilty to a conspiracy specifically, but he agreed in the factual basis in support of his plea on firearm charges to conspiring with Cooper and Routh to sell and dispose of

### 4. Any mention of punishment (Topic VII)

The United States next asks the Court to (1) instruct the jury at the start and end of trial that it cannot consider any potential punishment; and (2) prohibit Defendant from referencing punishment or the prospect of prison at any point during trial [ECF No. 191 pp. 14–17]. The United States roots this request in Defendant's repeated suggestion that he would like to be traded in a "prisoner swap," as well as other comments by Defendant (including during the July 25, 2025, hearing) regarding the length of a potential sentence [ECF No. 191 pp. 15–16; ECF No. 223 pp. 72–73]. Defendant's former appointed counsel (now standby counsel) agreed to stipulate to a bar on any discussion of punishment [ECF No. 200 p. 13], but Defendant showed an unclear commitment to do so at the hearing and indeed explicitly indicated an intent to discuss imprisonment [ECF No. 223 pp. 72–73 (claiming that he does not wish to mention punishment at trial but then affirming desire to reference "trading" himself in a prisoner swap as an alternative to life imprisonment)].

---

a firearm to a prohibited person (Routh). *See* Case No. 25-CR-108 (M.D.N.C.), ECF No. 10. More broadly, a conviction for conspiracy is not a prerequisite to admission of co-conspirator statements under Rule 801(d)(2)(E), provided the statements were made during and in furtherance of a conspiracy or a joint venture that included an opposing party [ECF No. 204 p. 6 (citing *United States v. Holland*, 117 F.4th 1352, 1354 (11th Cir. 2024)]. And, as noted, both Cooper and Oxendine admitted to making statements "during and in furtherance of a joint venture" that included Defendant, according to Oxendine and Cooper. *See* Case No. 25-CR-97 (M.D.N.C.), ECF No. 16; Case No. 25-CR-108 (M.D.N.C.), ECF No. 10. Finally, appointed counsel's *Crawford* argument runs counter to Eleventh Circuit precedent [ECF No. 204 p. 7 (citing *United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006) (explaining how, consistent with *Crawford*'s own suggestion, statements in furtherance of a conspiracy are not testimonial))].

Nothing in this Order should be construed to undermine the general principle that a "co-defendant's guilty plea may not be used as substantive evidence of the defendant's guilt." *United States v. McLain*, 823 F.2d 1457, 1465 (11th Cir. 1987), *overruled on other grounds by United States v. Watson*, 866 F.2d 381 (11th Cir. 1989).

Based on the Eleventh Circuit's clear authority, the United States' Motion on this issue is **granted**. Accordingly, the Court will instruct the jury that it must not consider punishment in any way. *See* 11th Cir. Pattern Jury Instr. B10.2 ("You must never consider punishment in any way to decide whether the Defendant is guilty or not guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide later."). Defendant is warned that he is prohibited, at any point during trial, from referencing punishment, prison, prisoner swaps, or any related topic that would implicate this prohibition. *See United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict.").

5. **Any argument of abandonment (Topic VIII)**

The United States next asks the Court to preclude Defendant from referring to abandonment in his opening statement or during jury selection [ECF No. 191 p. 17].[13] At the hearing, Defendant said he agreed to a ruling that precludes him from raising or insinuating an abandonment defense in his opening statement [ECF No. 223 p. 78]. The Court memorializes that ruling here and **grants in part** the United States' Motion on this topic; Defendant shall not refer to an abandonment defense in opening statements or jury selection.[14] Any effort to advance such

---

[13] The United States simultaneously maintains its request for the Court to entirely preclude Defendant from raising an abandonment defense at any time during trial [ECF No. 191 p. 17]. The United States originally made that request in its Motion to Preclude Legally Prohibited and Factually Baseless Defenses [ECF No. 119 pp. 16–17]. In the Order on that Motion, the Court declined to preclude an abandonment defense as a matter of law, noting that "arguments/objections should be raised via proper motion, consistent with the Court's Scheduling Order, and/or at trial in the context of particularized evidence" [ECF No. 181 pp. 3–4].

[14] While the Court maintains its reservation on a definitive ruling on an abandonment defense until the issue is potentially raised at trial in the context of specific evidence, Defendant should be mindful of the general contours and permissibility of an abandonment defense. *See United States v. McDowell*, 705 F.2d 426, 428 (11th Cir. 1983) (requiring an abandonment defense, assuming one if valid "under the proper circumstances," to manifest a "complete and voluntary

a defense will need to be supported by some evidence and legal support. *See generally United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir. 1990)

### 6. Evidence that could compromise the security of the President (Topic IX)

The final topic in the Motion is a request to preclude Defendant from eliciting or introducing evidence that could compromise the security of the President [ECF No. 191 pp. 17–19]. The United States lists nine specific areas of inquiry it wishes to exclude [ECF No. 191 pp. 18–19],[15] supplemented with a tenth topic at the hearing [ECF No. 223 p. 80 (adding the location of the President after the incident occurred)]. Defendant expressed no objection in his Response [ECF No. 198 p. 1] and confirmed that position at the hearing [ECF No. 223 pp. 79–80].[16] The United States' Motion on this issue is therefore **granted** due to stipulation of the parties, including as to the tenth specific area of inquiry added at the hearing.

---

renunciation"); *see also United States v. Temkin*, 797 F.3d 682, 690 (9th Cir. 2015) ("[A]bandonment is not a defense when an attempt . . . has proceeded well beyond preparation.") (internal citation omitted).

[15] The nine specific areas of inquiry are: "the number of personnel involved in the protection of the President on September 15 and/or more generally; duties and responsibilities of personnel (other than those testifying at trial) during a protection detail; areas or zones of responsibility of personnel (other than those testifying at trial) during protection detail; nomenclature used to identify personnel positions vis-à-vis the President (other than those testifying at trial); how communications among protection personnel are distributed among those personnel, Secret Service, and other law enforcement entities participating in the protection of the President at the golf course; the types of assets used in the protection of the President, generally and on September 15; information regarding the protective perimeter of the golf course; information regarding how the protective perimeter is established; and information regarding the number and type of personnel assigned to the protective perimeter " [ECF No. 191 pp. 18–19].

[16] Former appointed defense counsel also agreed "not to seek to introduce or illicit evidence in the public record for the purpose of compromising anyone's safety" [ECF No. 200 p. 14 (reserving proper impeachment)].

CASE NO. 24-80116-CR-CANNON

## CONCLUSION

For these reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The United States' Motion *in Limine* [ECF No. 191] is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Order.

2. Defendant is reminded that he will be bound by all of the Federal Rules of Evidence, the Rules of Criminal Procedure, and all Court orders and instructions.

**ORDERED** in Chambers in Fort Pierce, Florida, this 28th day of August 2025.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record / standby counsel

Ryan Routh, pro se (via standby counsel)