UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 24-cr-80116-AMC-1

UNITED STATES OF AMERICA,                    Fort Pierce, Florida

          Plaintiff,                  September 8, 2025

      vs.                                  8:49 a.m. - 4:50 p.m.

RYAN WESLEY ROUTH,

          Defendant.                  Pages 1 to 130
_____

TRANSCRIPT OF JURY TRIAL - DAY 1
BEFORE THE HONORABLE AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
               UNITED STATES ATTORNEY'S OFFICE
               JOHN SHIPLEY, ESQ.
               MARIA MEDETIS-LONG, ESQ.
               CHRISTOPHER BROWNE, ESQ.
               99 NE 4th Street
               Miami, Florida 33132

               U.S. DEPARTMENT OF JUSTICE
               JAMES M. DONNELLY, ESQ.
               950 Pennsylvania Avenue, NW
               Washington, DC 20530

FOR THE DEFENDANT:
               RYAN WESLEY ROUTH, PRO SE

AS STANDBY COUNSEL:
               FEDERAL PUBLIC DEFENDER'S OFFICE
               KRISTY MILITELLO, ESQ.
               RENEE SIHVOLA, ESQ.
               250 S. Australian Avenue
               Suite 400
               West Palm Beach, Florida 33401

STENOGRAPHICALLY REPORTED BY:

               LAURA E. MELTON, RMR, CRR, FPR
               Official Court Reporter to the
               Honorable Aileen M. Cannon
               United States District Court
               Fort Pierce, Florida

(Call to the Order of the Court.)

THE COURT:  Good morning.  All have a seat, please.

Okay.  Let's call the case.

COURTROOM DEPUTY:  Calling case United States of America v. Ryan Wesley Routh, Case Number 24-cr-80116-Cannon.

Counsel, please state your appearances for the record, starting with the United States.

MR. SHIPLEY:  Good morning, Your Honor.  John Shipley for the United States, along with Christopher Browne, Maria Medetis-Long, and Jim Donnelly.

THE COURT:  Good morning to all of you.  You may have a seat.

Ms. Medetis-Long, do you prefer to be addressed with the hyphenated full last name?

MS. MEDETIS-LONG:  If that's okay, Judge.

THE COURT:  Yes.  Okay.

All right.  Good morning, Mr. Routh.

MR. ROUTH:  Good morning.  Ryan Routh for the defense.

THE COURT:  Okay.  I can't hear you very well.

MR. ROUTH:  Ryan Routh for the defense.

THE COURT:  Thank you.  When you stand, if you want to just raise that microphone slightly so we can hear you, at all times, well, Mr. Routh.

Okay.  Appearances by standby counsel.

MS. MILITELLO:  Good morning, Your Honor.

Kristy Militello and Renee Sihvola present as standby counsel.

THE COURT:  Good morning to both of you.

All right.  We're here for just a brief morning session to run through a few items.  This is the first day of trial, and obviously jury selection is the first objective.  It's envisioned to be a three-day process.  We have three groups of jurors.  This is all outlined in the Court's order at docket entry 196.  Our jurors are arriving on a rolling basis at 8:00, 10:00, and 12:00 to fill out the questionnaire that has been provided to them.  We will be supplying those questionnaires on a rolling basis as quickly as possible.

Just as a matter of logistics, Mr. Shipley, where will your team be stationed during this time?

MR. SHIPLEY:  With the Court's permission, in the U.S. Attorney's Office on the third floor.

THE COURT:  Okay.  Then you should leave good contact information for you or any of your team members so we can have you come retrieve the paperwork.

Mr. Routh, we will be providing those filled-out questionnaires to the deputy marshal so they can give those to you for your own personal review.

MR. ROUTH:  (Nods head.)

THE COURT:  Do you have any questions about the review of the questionnaires, Mr. Routh?

MR. ROUTH:  No.  No.  No, Your Honor.

THE COURT:  Okay.  All right, then.  Again, I'm going back to the Court's jury order; this is 196.  Our first group of jurors, 1 through 60 -- I'm referring to this as Group 1 -- will be directed to return to the courthouse at 2:00 today for what I have termed preliminary jury instructions -- or excuse me, preliminary voir dire.  This segment will cover more basic topics like availability for a three-and-a-half-week trial, any particular hardships that are presented by that schedule and other sort of straightforward inquiries.  The notion here is that we can hopefully streamline this process a bit and then allow for more time tomorrow and the next day for more case-specific substantive inquiries.

All right.  As part of this process, I have taken a look at the proposed voir dire questions supplied by both sides.  I had just a couple of questions.

Is there, Mr. Shipley, any question on the defense list -- and I know this is under seal -- that the government would not have an opposition to?

MR. SHIPLEY:  There is not, Your Honor.

THE COURT:  Okay.  There is one item about whether a turtle being in the road, would one stop or move it?  Is that potentially something the government would be not opposed to perhaps as a counterbalance to the government's submission about contesting a traffic citation?

MR. SHIPLEY:  Your Honor, I don't think we would, not

in that form.  If there is a different formulation the defendant proposes both because of the, frankly, silliness of the formulation of the question and also because it appears to be driving towards, as a bunch of the other questions are also, a justification-type identifying jurors who are amenable to that type of argument, which the Court has ruled off-limits.  So no --

THE COURT:  So then what would be the basis for your traffic citation question?

MR. SHIPLEY:  Well, I think what that would involve is a person who has experience and what they would do in terms of how they respond to a situation in the law.  I don't think that's the same thing, if they were cited for a potential offense.  That's not the same thing as if you saw an animal running across the middle of the road.  I also think, again, there is a -- a lightening of the subject matter of this trial in the way that question is formulated.  If the defendant can pose it in a different way, that might be the one that we would be amenable to considering.

THE COURT:  Okay.  Mr. Routh, is there any other way to ask that turtle-type question?

MR. ROUTH:  I can substitute a different question if that makes life easier.  I mean -- I mean, I -- I --

THE COURT:  Well, none of the other questions on your list really have any bearing whatsoever.  And so I just -- I

thought potentially that question might be something you could work with.  If limited to that question, how would you phrase it?

MR. ROUTH:  I don't know how you would change it.  I mean, you know, if -- if someone was driving down the road and they saw a turtle in the road, would they stop?  I mean --

THE COURT:  And why do you think that question is a good question to ask of the venire?

MR. ROUTH:  Well, I don't think it's the best.  I put an X by it.  You know, you had asked for 10 and I listed 12.  And I X'd it -- put an X beside that one.  So that was the one that I felt had no real value.

THE COURT:  Okay.

MR. ROUTH:  So, yeah, I had X'd that one out.  So -- leaving 11, so --

THE COURT:  You'd X'd it out.  Okay, well, then I will take that question as withdrawn, and I will consider whether any of the other questions have merit.  Upon my initial review, they're all just really very much off-base, sir, and have absolutely no relevance to the process of jury selection.

MR. ROUTH:  I'm sorry.  How is that?  How are they off-base?

THE COURT:  Well, you're asking, for example, about students supporting Palestine --

MR. ROUTH:  Yes.  All of them --

THE COURT:  Hold on.  You can't interrupt, sir.

-- about purchasing Greenland and a host of other policy-oriented politically charged inquiries that really have no relevance whatsoever to the essential elements.  And so I understand your position.  You have submitted your questions, and that will be all.

The government's questions for the most part do relate to the subject matter of the case and are fair with a few exceptions.  So I will be incorporating most but not all of the questions offered by the United States.

Again, though, if there are specific questions that the parties think about as we move along, I will be providing an opportunity to both sides to offer any additional suggestions, so please keep those in mind and jot those down so I can consider those in due course.

Now let's shift gears and discuss the one pending motion that was filed, I think on Thursday or Friday.  This is a government motion seeking reciprocal Jencks material.

Mr. Routh, have you received a copy of this motion?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  Have you reviewed it, and what is your position on it?

MR. ROUTH:  I have no means by which to generate anything in the facility I am in now.  They have put in parentheses that standby counsel might be able to generate that

for them.  So I'm hoping that maybe Kristy or Renee could respond to that because I have no way to do anything.

THE COURT:  Okay.  Let me just ask you a few preliminary questions.  Right now, in your own possession, do you have any documents that could relate to the anticipated testimony of the witnesses I have authorized Rule 17(b) subpoenas for?

MR. ROUTH:  I have all of the exhibits that -- you know, the exhibits will -- will partner with the -- with the witnesses.

THE COURT:  Okay.

MR. ROUTH:  But no, there are no other documents.

THE COURT:  No other documents besides the ones you have already provided to the United States?

MR. ROUTH:  Exactly.

THE COURT:  Okay.

MR. ROUTH:  I'm in prison, so I have nothing else.

THE COURT:  Okay.  Ms. Militello or Sihvola, are you aware of any reciprocal Jencks material in the custody of the defendant or the defense team?

MS. MILITELLO:  Your Honor, I don't believe we have any.  We have been doing just a confirmatory email search, and so we're still doing that.  As the Court knows, ordinarily, we wouldn't provide Jencks at this stage.  So we will have a firm answer for the Court shortly.  But I don't believe so.

THE COURT:  Okay.  Then please complete whatever search you are in the process of conducting, and I will revisit this issue tomorrow at some point during the jury selection proceedings when we have a break.

Okay.  Anything further, Mr. Shipley, on that motion which remains pending?

MR. SHIPLEY:  Not for now, Judge.

THE COURT:  Okay.  All right.  Now, I did want to just check in with Mr. Routh and also with standby counsel on the Rule 17(b) subpoenas that have been issued, or at least authorized.  My understanding from the marshals is that those subpoenas are underway in terms of being served.  But I did want to provide an opportunity to the defense to indicate any issues with those proposed subpoenas.  Let me start with Ms. Militello.

MS. MILITELLO:  I'm not aware of any.  We were in contact with the U.S. Marshals Office and provided them any additional information they needed, and so it's my -- I haven't heard of any problems from them, and so I think everything is following the normal course.

THE COURT:  Okay.  And that would be for Mr. Oran Routh, Milsun -- I'm using last names -- Zuniga, and Hinshaw?

MS. MILITELLO:  Yes, and we also provided a subpoena -- our office did -- to Mr. McClay, as the Court instructed.

THE COURT:  Okay.  All right.  Okay.  So it seems like preparations are in order for those witnesses.

Mr. Routh, anything you wish to bring to the Court's attention with respect -- excuse me -- with respect to those specific individuals?

MR. ROUTH:  Yes.  Erick Zuniga is from Costa Rica, so he will not be joining us.  So he does not want to be deported.  He likes it in America.  So he will not be -- he will not be joining us.  He is from Costa Rica.

And Mr. Milsun, Atwill Milsun, he is planning to go to -- back to Vietnam.  He is from Vietnam initially.  So he is going back on the 24th.  So if something can happen prior to the 24th -- otherwise, he will not be able to join us either.

THE COURT:  Okay.  So he has firm travel arrangements on September 24th?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Have you discussed with him a potential change in his plans to accommodate his testimony?

MR. ROUTH:  If he can't make it here, that's fine.  Him going to Vietnam is more important -- more important than this.  So, yes.  So I told him to go.

THE COURT:  All right.  So you're withdrawing Mr. Milsun and Mr. Zuniga?

MR. ROUTH:  Yes, if it doesn't happen before the 24th.

THE COURT:  Okay.

MR. ROUTH:  Yes.

THE COURT:  But is Mr. Zuniga completely off the table?

MR. ROUTH:  Yes, he is completely off the table, yeah. He does not want to get arrested.

THE COURT:  Okay.  All right, then.

Ms. Militello, with respect to the proposed expert, Mr. McClay, is he fully coordinated for his trial testimony?

MS. MILITELLO:  Ms. Sihvola has been in contact with him.  I believe that his employment will honor the subpoena, so, of course, as much notice as we can give him the better, but, yes, he is prepared to come in as ordered and instructed by the Court.

THE COURT:  Okay.  All right.  Excellent.

Any other witness issues I should be aware of at this point, Mr. Shipley or Mr. Routh?  We will start with the government.

MR. SHIPLEY:  Not from the United States, Your Honor.

THE COURT:  Mr. Routh?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  All right.  And then finally, any other issues specific to jury selection?  First let me ask the United States.

MR. SHIPLEY:  No, Judge.  We're ready to go.

THE COURT:  Okay.  Mr. Routh, anything from a jury selection-specific perspective?

MR. ROUTH:  I have more questions if you do not like the questions that I submitted initially, but they're along the same vein, so, I mean -- I mean, questions for jurors are to get to their mindset as far as how they think.  And is that not -- not what we're supposed to be doing with jury questions? I mean --

THE COURT:  Okay.  So if you have extra questions, you should save those and reserve those for that opportunity I provide to you to offer any additional questions, but for now, you had your chance to submit the pretrial submission, which has been taken into consideration.

All right, then.  That's all I have for now.  I will direct the parties to reconvene here in the courtroom at 1:30 p.m. to address any issues related to jury selection specifically.  At that time, if there are any obvious issues for hardship purposes that you encounter in your review of the jury questionnaires, please be prepared to raise those with the Court so we're ready to efficiently proceed through that first phase of jury selection.

That concludes our morning session.  Please be on standby for receipt of the rolling questionnaires.  Again, please provide your contact information, and that is all for now.  Thank you.

MR. ROUTH:  Can I ask one question?  The jail situation is still the same as far as not being able to sleep.  I don't

know if they can move me to general population so maybe I can sleep.  I don't know if -- I just wanted to throw that out there.

THE COURT:  Thank you, Mr. Routh, but this is not the time to address that issue.  We are in recess.

(A recess was taken from 9:03 a.m. to 1:34 p.m.)

THE COURT:  Please be seated.  Everybody is present.

Okay.  This is a brief session just to see if there are any juror-specific issues that need to be addressed now.  Our jurors are scheduled to arrive on time at 2:00.  And we will get started with preliminary jury instructions -- excuse me, preliminary jury selection for Group 1 as soon as possible.

Mr. Shipley, or Mr. Browne?

MR. SHIPLEY:  Mr. Browne is going to handle jury selection this morning -- or this afternoon.  Thank you, Judge.

MR. BROWNE:  Thank you, Your Honor.

We are prepared to identify a number of prospective jurors by number who we believe may be subject to potential cause challenges.  And so it's clear, when we talk about cause challenges, Your Honor, we are going to include hardship challenges within that broader category, if that's okay with the Court.

THE COURT:  That's fine.

Mr. Routh, are you prepared to address these hardship-specific issues from the information provided in the

questionnaires?

MR. ROUTH: Yes. I have only been through part of them. So I haven't had a chance to go through -- I have been through half of them, so...

THE COURT: Okay. What number have you gotten through?

MR. ROUTH: I'm on 30. 30.

THE COURT: All right. Well, let's just go over -- this is all preliminary. This does not mean that any juror will be affirmatively stricken for cause. This is just, for purposes of efficiency, to flag any obvious concerns. And then we will go through the regular process and have a session afterward where we can discuss these matters more fully.

So Mr. Browne, I will let you begin.

MR. BROWNE: Thank you, Your Honor.

I will just proceed as best I can numerically. The first prospective juror that we've identified as a potential cause challenge is Juror Number 11, specifically with reference to that prospective juror's answer to question number 23 of the questionnaire.

THE COURT: Okay. All right.

Mr. Routh, you should just keep track of these observations, and then let me know if you have a contrary view. But, again, I will give you a full chance later to go through all for-cause challenges systematically.

I have taken your note, Mr. Browne. The next

individual you have identified, Mr. Browne.

MR. BROWNE:  Yes, Your Honor.  The next individual prospective juror is number 22; specifically, that prospective juror's answer to question number 22 of the questionnaire.

THE COURT:  Okay.  So let me understand.  You are not covering in this initial segment hardship issues.

MR. BROWNE:  We are as best we can, Your Honor.

THE COURT:  You are, okay.

MR. BROWNE:  These just happen to be, I would say, more Heartland cause-type challenges, the first few examples.

THE COURT:  Okay.  All right.  Please continue.

MR. BROWNE:  There is also, Your Honor, Prospective Juror Number 22's questionnaire, another potential reference in response to number 17 which, I think, is also related to the answer on 22.

THE COURT:  Okay.

MR. BROWNE:  Prospective Juror 29.  I want to note here, Your Honor, that we believe this prospective juror should be questioned outside the presence of the venire based on this prospective juror's answer to question number 22.

THE COURT:  Okay.  Next.

MR. BROWNE:  Prospective Juror Number 33, Your Honor. Specifically reference the response to question number 22.

THE COURT:  If you believe that any individual needs a private conference outside of the presence of the fellow

veniremembers, then please include that in your presentation at the moment.

MR. BROWNE:  In that case, Your Honor, I do think that that individual, 35, would also qualify for an -- excuse me, individual Prospective Juror Number 33 would also qualify for individualized questioning about his or her answer to that question.

THE COURT:  Assuming it's not already obvious.

Okay.  Next.

MR. BROWNE:  Yes, Your Honor.  Prospective Juror Number 35.

THE COURT:  That's a hardship concern due to employment or self-employment; correct?

MR. BROWNE:  It is, Your Honor.  There is also an issue that does require individualized, potentially, questioning about this prospective juror's answer to number 18.

THE COURT:  Okay.

MR. BROWNE:  Prospective Juror Number 37 we believe is a medical hardship based on his or her response to question number 16 and as expounded upon in their additional comments section on page 10 of Juror Number 37's questionnaire.

THE COURT:  Okay.

MR. BROWNE:  Juror Number 43, Your Honor, appears to be based on his or her response to question 16, a sole proprietor with a significant potential financial hardship.

THE COURT:  Next.

MR. BROWNE:  For the same reason, Your Honor, we believe Prospective Juror Number 44, who has identified a serious hardship, may also be a candidate for a cause challenge.

THE COURT:  Okay.  Next.

MR. BROWNE:  Juror Number 51, we believe, will need to be questioned outside the presence of the venire based on disclosures made in response to question number 18.

THE COURT:  Does that concern a prior conviction?

MR. BROWNE:  It does, Your Honor.

And the same is true of Juror Number 35.  The issue is with a disclosure issue.

THE COURT:  When you say "disclosure issue," you mean like lack of information provided?

MR. BROWNE:  A potential nondisclosure, Your Honor.

THE COURT:  Okay.  And what was the other juror number?

MR. BROWNE:  35.

THE COURT:  Okay.

MR. BROWNE:  Juror Number 54 we have identified as having potentially a hardship based on his or her responses to number 16.

THE COURT:  Okay.  Next.

MR. BROWNE:  Juror Number 55, based on that prospective juror's answers to question 16 as well as question number 22.

THE COURT:  And those concern generally what topics?

MR.  BROWNE:   22 concerns the inability to be fair in this particular criminal case.

THE COURT:  Right, but can you be more specific and less cryptic.  Is this a medical issue?  Is this a financial issue?  What's the situation?

MR.  BROWNE:   16 relates to trauma and medication.

THE COURT:  Okay.

MR.  BROWNE:   And specifically related to crimes of violence.  And I'm sorry -- 16 relates to trauma, mental hardship, and a disbelief in the justice system.

And 22 echos that inability to be fair based on lack of faith in the justice system.

THE COURT:  Okay.  Thank you.  Next.

MR.  BROWNE:   Juror Number 58 has answered in response to questions -- 23 that he cannot be fair because he has no faith in the Department of Justice.

THE COURT:  Okay.  All right.  Any others you have preliminarily identified?

MR.  BROWNE:   Juror Number 59, Your Honor, answered yes to question 24, which says that Juror Number 59 would be influenced by religion, race, color, sex, or ethnic background of a witness.

I would also note that that same juror, Your Honor may want to question outside of the presence about his or her

responses to number 13, which relates to a learning disability which may or may not have impacted that prospective juror's answers to some of these questions.

THE COURT: Okay. All right. Thank you.

Mr. Routh, do you have any juror numbers that you have flagged so far that you think fall in the clear for-cause category?

MR. ROUTH: Yes. I have gone through up to 28. I did not note the item that I noted that was -- was an issue, but I can just give you the numbers of the ones that I had problems with.

THE COURT: Okay. Just for the record, the questionnaires were provided approximately at 11:00 a.m. for this first stack of individuals, and it is now 1:45.

All right. Just give me the names -- excuse me, the numbers. Do not use names --

MR. ROUTH: Yes.

THE COURT: -- of any of the jurors that you have at least preliminarily considered to be for-cause worthy.

MR. ROUTH: Number 1. Number 4. Number 5.

THE COURT: Slow down, sir.

Do you have a basis for 1?

MR. ROUTH: Again, I didn't -- didn't -- I didn't have a pen, and then we had a -- went into a meeting with my attorneys, so I just -- you know, I was rushing through this as

quick as I -- again, I didn't write it down.

THE COURT:  All right.  Well, it's your obligation to be prepared, sir, and I will hear you out and give you a chance to present arguments.  And, like I said, we will visit with these prospective jurors at 2:00 or as close to 2:00 as possible.

If you have any particular jurors that actually have a basis for for-cause, and I'm open to hearing that on a preliminary basis now, but if you don't have any rationale, it's hard to proceed in this way.

MR. ROUTH:  Yeah, I'm not prepared to generate my rationale without, you know, reading back through it again.  I mean, so...

THE COURT:  Okay.  Well, just for the record, like I said, these questionnaires were provided with at least two hours' review for both sides -- actually, close to three hours.  So, with that, I'm going to step off the bench, unless there are any specific jury selection issues to address before we start assembling the jurors in the courtroom.

Mr. Browne.

MR. BROWNE:  Does Your Honor intend to read a list of witnesses at this stage of the process, or would you like the parties to do that?

THE COURT:  I will be doing that using the lists provided by the government and then drawing from the authorized

names provided by Mr. Routh, along with a few additional names provided in his third 17(b) request for character witnesses. There were three additional names.  I'm going to, out of an abundance of caution, list those, although they have not been authorized.  So, yes, I will be doing that during this phase, but I have all the names already.

Okay.  Anything else?

MR. BROWNE:  Yes, Your Honor.  Would the Court be amenable to us moving the chairs in kind of a U-formation so that we can look at this side of the courtroom?

THE COURT:  Yes, please do that.  Rearrange your seating so that there's enough space between you and the prospective jurors and so you can all see properly.

Mr. Routh, do you have any juror-specific questions or concerns to raise at this time?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.

MR. ROUTH:  No.

THE COURT:  Anything further from the United States?

MR. BROWNE:  No, thank you.

THE COURT:  All right.  Then please return at 2:00, and we will get started as soon as possible.  Thank you.

(A recess was taken from 1:48 p.m. to 2:06 p.m.)

(Group 1 Venire entered the courtroom.)

(Call to the Order of the Court.)

THE COURT:  Good afternoon.  You may all be seated.

All right.  Well, ladies and gentlemen, welcome to the federal courthouse in Fort Pierce.  It is always a pleasure to see all of your faces here assembled to perform the vital function of jury service.  My name is Aileen Cannon and I serve as a United States District Judge for the Southern District of Florida.  I will be presiding over this case which is styled United States of America v. Ryan Wesley Routh, Case Number 24-80116.

Before we get started this afternoon, I'm going to first ask our courtroom deputy to please swear you in as the prospective jurors in this case.  So please rise.

COURTROOM DEPUTY:  Please raise your right hand.  You and each of you do solemnly swear or affirm that you will well and truthfully answer all questions propounded to you touching upon your qualifications to serve as jurors in the case before the Court, so help you God?

And please say, "I do."

THE VENIRE:  I do.

COURTROOM DEPUTY:  Thank you.

THE COURT:  All right.  Thank you.  You may all have a seat.

I want to first begin, as I do each time I have the pleasure of addressing prospective jurors, by extending my sincere gratitude to all of you for being here on behalf of

myself, the entire Southern District of Florida, and the parties in this case.

The right to trial by jury is a cherished, recognized, and protected right in our United States Constitution, and it is one of the most important duties that a citizen is called upon to perform.  Our framework permits litigants to call upon members of their community to decide the outcome of a case in court.

And your role, ladies and gentlemen, is totally vital and indispensable to that system.  So while I can understand that perhaps some of you were not overly thrilled when you received the juror summons, I do want to take a moment to emphasize just how important jury service is and again thank you in advance for your service.

Now, I assume that at least for some of you, this is your first call to jury service, and this entire proceeding may feel totally unfamiliar and perhaps even a little intimidating.  I want to assure you not to feel inadequate or apprehensive.  I will do my very best to guide you throughout these proceedings and give you instructions about what your role and your duties will be.

Now, first things first, I want to get a few introductions out of the way, starting with our trusted court personnel for this trial.  We have to my bottom right, the courtroom deputies who will be assisting.  You may have already

met them.  We have with us Susana Moran and Warren Condon.  So please rise or -- thank you.  They are here to assist us in operating the day-to-day duties of the Court.

Now, directly in front of me, we have our court reporter, Ms. Laura Melton.  She is typing down and transcribing every word that is being said, including everything I'm saying, and all of the questions and answers that will be posed of you in just a few moments.  So to make her job easier, I ask that you please speak as audibly and as clearly as you can so that she can take down what you are saying.  And when you do have an opportunity to speak, please make sure that you raise your paddle facing outward so that we know exactly who is talking when.

Now, I'm going to pause here momentarily and cover some additional specific procedures about how I will be addressing you in the courtroom throughout these proceedings.

This is a public courtroom and it is a public proceeding.  As you can all see, we're here in public.  You should also know that these proceedings are being transmitted on a live feed to another location in the courthouse, and there are available seats here in the courtroom itself for members of the media or anybody else who wish to view these proceedings.

But although it is a public proceeding, we won't be addressing you by your name during this jury selection process or during the trial.  So please listen carefully.  And this is

by party agreement, I should add, with Court approval.

As I said, each of you is equipped with a juror paddle with a designated juror number.  Please understand that I will be referring to all of you using your numbers only.  So I won't be addressing you by name, nor will I be asking you to provide specific personal identifying information like your home address or the name of your spouse or your date of birth or things of that nature.  The parties are also, I should note, under the same expectation.  So that means that nobody during the jury selection process or in the public courtroom proceedings will be referring to your name in open court.

Now, a related point.  We have a prohibition in this courthouse on the use or possession of electronic devices by any unauthorized persons.  And so that means that nobody will be permitted to film or record this proceeding or to take your picture or photograph.  But, of course, I will be asking many questions of you, and some of these questions may touch upon private aspects of your life, including the nature of your employment and other areas.  But I won't be asking you to reveal your names or your specific personal identifying information, and so I ask that you please refrain from doing so as well.

Now, you might be wondering why are we using this anonymization procedure?  And the reason is, ladies and gentlemen, big picture, because we want to ensure a fair trial

for both sides, and we want to ensure the integrity of the jury in this case, which has and is expected to continue to attract a high degree of media publicity and attention.

One of the ways we can help to achieve that is by protecting you from any unwanted or improper contact by members of the news media or by the public more generally, again, by not disclosing your specific personal identifying information in open court.

Now, that said, this rule is not absolute, and there are some exceptions which I will now outline.  First, the jury clerk has a list of your names for official use by the Court and courthouse staff during the jury selection process.  So you should be aware of that.

Additionally, as you all know, you filled out juror questionnaires this morning when you came to the courthouse. Those questionnaires have been provided to the lawyers for the government and to the defense, but none of those questionnaires will be publicly disseminated outside of the courtroom or outside of the prosecution or defense teams, and the parties are under strict orders to keep those questionnaires strictly confidential.

Third and finally, if you do end up being chosen to serve as a juror on this case, your names will be provided to the United States Marshal for logistical purposes, strictly to ensure your arrival to and from the courthouse for trial each

day. And I will add here that if you are ultimately chosen to serve, we'll be employing a procedure to be described in more detail later for those who are chosen, whereby jurors will go to designated locations each morning for drop-off to be transported to the courthouse and then taken back there after the trial day. But again, your information will be used strictly for those logistical purposes and won't be disseminated outside of those official government channels.

So that's the overall procedure that we will be using during the jury selection process, but I want to also emphasize some important caveats that you should keep in mind. Number 1, we're not shielding your names from public view because any of us has any specific reason to believe that any of you would have been endangered or subject to improper pressures if your names had been disclosed. Instead, ladies and gentlemen, this is simply a precautionary measure to protect you from unwanted media attention and to make sure that both sides get a fair trial.

Number 2, none of this is in any way a reflection upon the defendant or the defense or anyone associated with the defense. Indeed, nobody in this room should view this anonymization procedure as reflecting negatively or adversely upon the defendant.

And that's a critical point, ladies and gentlemen. As I will emphasize to you in just a few moments, the defendant is

presumed innocent until proven guilty.  The indictment that has been brought against the defendant is only an accusation, nothing more.  The burden of proof lies with the United States government to prove the defendant guilty beyond a reasonable doubt before he may be found guilty.  And the defendant has no burden whatsoever to prove his innocence or to provide any evidence or to testify.

Now, all of these principles -- and I will describe them more later -- they're all fundamental.  But the reason why I mention them now briefly is because I don't want any of you to think something negative about the defendant or to draw any negative inference about the defendant because we're employing this no-name rule in open court.

So having said all of this, is there anybody in the courtroom who thinks they will hold it against the defendant that we're not using names publicly in the courtroom?

All right.  I see no hands.

Okay.  Now, a related topic that I would like to discuss is what may be interpreted as increased security in the courthouse.  Many factors play a part in security decisions, including the anticipated publicity that may be generated from a case, the number and types of witnesses who may be called, the length of the trial, and the necessity, of course, that all public trials take place in buildings that are secure and protected.  But what matters most, ladies and gentlemen, for

your purposes, is that you should not be concerned about your safety or the safety of anyone connected to this trial.  And above all, ladies and gentlemen, you must not allow these security measures to influence you in your consideration of the case, nor should the security measures be construed in any way against the defendant or the government.  These measures are intended merely to protect the parties in the case and all others associated in this proceeding.

At this point, does anybody here have any problems with what I have just said about security in the courthouse specifically?

Okay.  I see no hands.

All right.  Now, let me make one final introduction that I neglected to make earlier, and that's our trusted court security officer, Officer Blanford.  His job is to enforce the Court's orders and to take charge of the jury.  If you need information concerning your personal welfare, please reach out to Officer Blanford or the courtroom deputies, and they will try to help you.  But please do not address them or discuss with them any substantive issues concerning the case to be tried.

Now, with all of those preliminaries out of the way, I'm going to start out by asking the prosecution team members to introduce themselves briefly to you.

And then, Mr. Routh, I will call on you in just a

moment to introduce yourself.  So please hang tight just a moment, Mr. Routh.

We will now begin with the United States.

MR. SHIPLEY:  Good afternoon, everyone.  My name is John Shipley.  I'm an assistant United States attorney with the Southern District of Florida.  I will be trying this case along with my colleagues, and I will let them introduce themselves.  Good afternoon.

MR. BROWNE:  Good afternoon, everyone.  My name is Christopher Browne.  I'm also an assistant United States attorney representing the United States in this criminal trial.

MS. MEDETIS-LONG:  Good afternoon, everybody.  My name is Maria Medetis-Long.  I also am an assistant United States attorney representing the United States in this matter.

MR. DONNELLY:  Good morning, ladies and gentlemen.  My name is James Donnelly.  I'm a trial attorney with the United States Department of Justice representing the government in this case.

THE COURT:  All right.  Thank you.

Now you have been now been introduced to the prosecuting attorneys in this case.  I'm going to ask Mr. Routh in just a moment to introduce himself as well, along with his two standby attorneys.  But before I do so, ladies and gentlemen, I want to advise you that Mr. Routh has decided to represent himself in this trial and not to use the services of

an appointed lawyer. He has a constitutional right to make that decision; that is, to represent himself, and he has elected to do so. Importantly, though, that decision has no bearing on whether he is guilty or not guilty, and that decision must not affect your consideration of the case in any way.

I will have more to say about this topic later in the course of jury selection, but for now I wanted to let you know that Mr. Routh is acting as his own lawyer in the case, and he will be in charge of directing and controlling his defense. That said, I have appointed two standby attorneys -- sometimes we call them "standby counsel" -- and they're there to assist him, should he ask for their assistance, with basic procedural or logistical issues or if I as the Court determine that he needs assistance with procedural matters. But, again, Mr. Routh is in control of his defense without interference from standby counsel. And that, again, is his constitutional decision to make.

So, with that context Mr. Routh, please introduce yourself to the prospective jurors.

MR. ROUTH: I'm Ryan Wesley Routh. I'm the defendant. I'm sorry to bring you all in here. I'm sorry for that. Thank you for being here.

THE COURT: All right. Ms. Militello.

MS. MILITELLO: Good morning, everyone. Kristy

Militello and Renee Sihvola as standby counsel.

THE COURT: Thank you, Ms. Militello and Ms. Sihvola.

All right. Now, as you can see, the standby attorneys are seated near Mr. Routh but not at counsel table. Again, that's because Mr. Routh has availed himself of his right to represent himself. So with those introductions out of the way, I'm going to give you a brief overview of how this whole process will unfold.

This phase of jury selection that we're conducting today is preliminary in nature, and it's designed to streamline as much as we can to get certain things out of the way before we meet again tomorrow at 2:00 p.m. to discuss additional more substantive topics.

So for today, we're going to cover more basic areas about jury service in a criminal case, introduce you to the courthouse personnel, which I have mostly done already, along with the parties and counsel. We will talk about the anticipated schedule for this trial and a few more basic areas. And then tomorrow, we will continue the process of jury selection.

So this is not, to be clear, the full jury selection process. But our hope is that by doing it this way, we can streamline things and be as efficient as we can.

All right. Now, first things first. What is jury selection? Well, in, I think, most simple terms, it is a

process to choose jurors who are fair and impartial, who will follow the law as it is instructed to them by the Court, and who will evaluate the issues in this case based solely on the evidence that is presented during the official proceedings in the courtroom without being influenced by any other factors. So, to get there, to reach that goal, we must determine if your decision in this case would be influenced by opinions that you now hold or by some personal experience or special knowledge that you may have concerning the case to be tried.

And that is why, ladies and gentlemen, this thorough process is ultimately so important, so the parties and the Court can determine if there are individuals in this courtroom who aren't suited to sit on this case as jurors and should, thus, be excused.

In many ways, ladies and gentlemen, this is the most important part of the trial as we are about to pick the judges of the facts. I might bear the title of judge, but I won't decide the outcome in this case. My role is to see to it that the rules of the courtroom are followed, but it is the jurors who serve as judges of the facts. And that's a really powerful thing to say, and it always makes me a little emotional because one realizes the vital indispensable nature of jury service.

Now, I will warn you that this questioning does take time, and so I ask you in advance for your patience as we go through these various questions. Please also understand that

this questioning is not intended to pry into your personal affairs, but it's intended solely for the purpose of selecting a fair and impartial jury.

Now, if for whatever reason any of the questions I ask make you feel uncomfortable and you would prefer to discuss anything outside the presence of your fellow veniremembers, please let me know, and I will do my best to accommodate that. But please also understand that this is a public proceeding, so any of your answers would be given in the presence of the government prosecutors, the defendant, his standby attorneys, and any members of the public or media who are viewing these proceedings.

Ultimately, though, the most important thing to keep in mind, ladies and gentlemen, is that the only right answer is the truth. So please be fully candid and fully complete with your answers. I can understand that being in this courtroom can be a little intimidating, but, again, there can be no substitute for honesty.

So now, why are we here? We are here because an indictment has been filed informing the defendant in this case, Mr. Ryan Wesley Routh, that he has been accused of certain crimes. But as I will explain to you in more detail in a few moments, the indictment is not evidence. It is simply an accusation. And the defendant has responded to the indictment by saying that he is not guilty. So it is the government's

burden to prove beyond a reasonable doubt that the defendant is guilty before he can be found guilty.  And that is what you are here to determine.

Now, to give you a little bit more context, I'm going to summarize the charges in the indictment briefly which contains five alleged federal offenses.  Again, this indictment is not evidence and it's not proof of anything, it's just a list of charges.

The first charge is Count 1.  This alleges the offense of attempted assassination of a major presidential candidate.

Specifically, the indictment alleges that on or about September 15th of 2024, in Palm Beach County, in the Southern District of Florida, the defendant, Ryan Wesley Routh, did intentionally attempt to kill former president of the United States Donald J. Trump, a major presidential candidate at the time.

The second charge alleges the crime of possessing a firearm in furtherance of a crime of violence, specifically that on or about the same date of September 15th of 2024, in Palm Beach County, in the Southern District of Florida and elsewhere, the defendant, Mr. Routh, did knowingly possess a firearm in furtherance of a crime of violence.  That is the crime charged in Count 1.  And further, that Mr. Routh brandished a firearm in furtherance of Count 1.

Now, Count 3 alleges an assault of a federal officer.

Specifically, on September 15th of 2024, the same date I have referenced before, in Palm Beach County, in the Southern District of Florida, it is alleged that the defendant did forcibly assault, oppose, impede, intimidate, and interfere with a Secret Service Special Agent while that agent was engaged in and on account of the performance of his official duties with the intent to commit another felony, and that Mr. Routh used a deadly and dangerous weapon.

Count 4 charges Mr. Routh with allegedly knowingly possessing a firearm as a previously convicted felon. Specifically, that on September 15th of 2024, Mr. Routh, in Palm Beach County, in the Southern District of Florida and elsewhere, did knowingly possess a firearm and ammunition in and affecting interstate and foreign commerce, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

And then finally, Count 5 charges Mr. Routh with possessing a firearm with an obliterated serial number.  That is a separate federal offense, ladies and gentlemen, and in this case it is alleged that Mr. Routh, on September 15th of 2024, in Palm Beach County, in the Southern District of Florida and elsewhere, did knowingly possess a firearm which had the importer's and manufacturer's serial number removed, obliterated, and altered and had at any time been shipped and transported in interstate and foreign commerce.

So those are the charges in the indictment in this case; and again, that indictment, ladies and gentlemen, is not proof of guilt at all, it's not evidence, it's just merely an accusatory paper.  And I will discuss these concepts later. But for now, let me ask the prospective jurors just whether they have any prior contact with any of the specific prosecutors who have introduced themselves to you today.

So, to be clear, does anybody here know any of the government lawyers who are sitting at that prosecution table who introduced themselves to you a few moments ago?

Okay.  I see no hands.

Again, the names are John Shipley, Christopher Browne, Maria Medetis-Long, and John Donnelly.

Okay.  I see no hands.

Has anybody here had any business dealings with any of these attorneys, or has anybody here have -- does anybody here have any prior connection to any of those attorneys?

Okay.  Again, no hands.

Now, has anybody here ever personally spoken to or communicated with Mr. Ryan Routh?

Okay.  I see no hands.

Has anybody ever spoken to Mr. Routh indirectly, like through another person?

Okay.  I see no hands.

Has anybody here ever had any business dealings or

relationship with Mr. Routh?

Okay. No hands.

Now, same question, but for the standby attorneys, Ms. Kristy Militello and Ms. Renee Sihvola.

Does anybody here know either Ms. Militello or Ms. Sihvola?

Okay. I see no hands.

Has anybody here ever had any business dealings or interactions with Ms. Sihvola or Ms. Militello?

Again, no hands.

All right. Now let's discuss the important subject of schedule and length of anticipated trial.

All right. This case is expected to last approximately three and a half weeks. This was made clear to you in the questionnaires that you submitted this morning. And that would be starting this week and continuing through approximately October 1st of this year. The Court's schedule generally runs from 9:00 in the morning to 5:30 in the evening with about an hour or so break for lunch, along with two meaningful additional breaks, one in the morning and one in the afternoon, and sometimes additional breaks depending on the needs of the case.

Now, I know this question was referenced in the questionnaire like I mentioned, so if you answered yes to having a substantial particularized hardship with this proposed

schedule, I'm going to ask that you all please rise at this moment, showing me your paddle numbers, please.

Okay.  All right.  Let me just take a moment to jot all of your numbers down, so please bear with me.  I will try to do this in the order in which I see them.

Okay.  So we have 2, 3, 4, 6, 11, 14, 17, 22, 24, 25, 29, 30.  All right.  I'm trying to find you all here.  Thank you.  34.  35.  Then we have 37, 38, 41, 42, 43, 44, 46, 48, 54, 55, 58, 59, 60.

Okay.  And I will note just for the record that we have Juror Numbers 1 through 61 with us today.  Juror 57 had a clear medical issue and was unable to stay for the duration of today.  Okay.

So we are going to try to go as efficiently as we can, and I'm going to refer back to some of the content in the questionnaires for the folks who have stood up.  So let's see.  One moment.

All right.  We will start with Juror Number 2.  Please stand up and show us your juror number.

Okay.  What is the nature of your hardship, ma'am?

A PROSPECTIVE JUROR:  So currently I am serving as a project manager for a conference that we have coming up.  It's actually a nationwide literacy conference.  It will be held in Vero Beach, and it is in February.  We have our kickoff event is October 2nd, so we have quite a number of things to prepare

in advance of that kickoff event.  That is going to be held at Riverside Theatre.  You all are invited to attend.

So essentially, there is a lot of stuff that has to be accomplished between now and that time period, so it would be very difficult for me to do both jobs well at the same time.

THE COURT:  Okay.  Now, do you have a separate full-time job on top of the project manager?

A PROSPECTIVE JUROR:  So that is a component of my full-time job.  So my actual position is titled Program Implementation and Evaluation Manager, and in that role I also oversee all of our programs.  I work with The Learning Alliance.  Some of you may be familiar with them if you're from Indian River County.  So with The Learning Alliance, we have family connection centers, and within family connection centers we serve families and children ages zero to 5.

So as a part of that, I am the developer of a new curriculum.  I was actually recently hired to this position, so there is a lot of newness happening that I am responsible for making happen.  So essentially, my position is needed, as far as being a model and coach for our specialists that are providing that curriculum, that new curriculum that I have designed, to our families.

THE COURT:  Okay.  And one additional clarifying question.  For this conference that you're putting together, are you -- are you the only one doing that leadership-type

role, or do you have a team that could step in to assist?

A PROSPECTIVE JUROR:  So there is definitely a team that is involved, but I am the person who provides direct oversight.  I am the contact person.  Right now we're currently in the process of developing our sponsorship packet, so that is a huge piece that we need to push out and get initiated.  So by the end of this week, that has to be accomplished.

So getting up at 4:00 every morning, working on that prior to coming here may be a bit of a challenge, like I said, to do both jobs effectively.

THE COURT:  All right.  Do you think that would distract you from paying close attention to the trial if you were chosen to serve?

A PROSPECTIVE JUROR:  I don't think it would be a distraction, but I do think that we have to consider that it could be, as far as being able to attend as professionally as would be needed in a particular trial, I think that would be a concern because if I'm getting up early in the morning, having to work late in the evening to accomplish those other responsibilities in my current job, I think while I'm here from -- what was it, 9:00 to 5:30 or so?

THE COURT:  That's correct.

A PROSPECTIVE JUROR:  -- I think that it may be just a difficult -- difficult to attend and be present as much as would be needed in this particular case.

THE COURT:  Thank you.  Thank you.

Okay.  That's all I need from you at the moment, Juror 2.

Let's hear now from Juror 3.  Can you please provide some context, ma'am, for any serious hardship that you've indicated.

A PROSPECTIVE JUROR:  Yes.  So I work full-time.  I'm a single mom to a 2-year-old.  I live an hour away.  And his daycare opens at 7:00, so I don't know if I could really get here on time and drop him off on time.  His dad is in the military.  So I don't have any help really around with drop-off and pickup.  But, yeah, that's really, really it.

THE COURT:  No.  Thank you for sharing.  What's the latest time that you can pick up your child?

A PROSPECTIVE JUROR:  6:00, I believe.

THE COURT:  And do you have any relatives in the area or --

A PROSPECTIVE JUROR:  Yes.

THE COURT:  -- friends who can help you?

A PROSPECTIVE JUROR:  My parents do live in the area.

THE COURT:  Are they available to assist if you were selected to serve?

A PROSPECTIVE JUROR:  Well, they both work, and my mom is in Mexico at this -- for this week for work.  But my dad is around.  But he does work as well.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  But I guess they could -- he could drop him off, I suppose --

THE COURT:  Okay.

A PROSPECTIVE JUROR:  -- which may also be a hardship to him as well.

THE COURT:  All right.  Well, he is not here to describe it.

A PROSPECTIVE JUROR:  Oh, yes, of course.

THE COURT:  So I'm just going to go off of what you are telling me.  But of course, I have taken all of that down.  Thank you.  And we will give it some serious consideration.

All right.  I think we're now at Juror 4.  Do you have a particularized hardship?

A PROSPECTIVE JUROR:  The reason why I put "yes" to that answer is because I'm a part of an executive leadership team and part of the succession plan.  So in the month of September, the CEO is out of the country.  So he is gone.  I'm part of the succession plan.  The vice president of nursing will be leaving.  I will be covering for her during that time period.  I also support board committees and types of other meetings that I chair.  So that's the reason why I did place that there.

THE COURT:  And thank you, also, for sharing.

Of course, you know, you might imagine that everybody

in this room has professional and personal commitments.  And that's not by itself a reason to be excused from jury service unless it really poses a serious hardship.  Can you indicate, ma'am, with any more detail why jury service in this case would interfere with your professional obligations to that very serious level.

A PROSPECTIVE JUROR:  Well, meetings would not be -- I would not be able to attend because of the jury service.  And probably we would have to delegate that succession planning to another person --

THE COURT:  Okay.

A PROSPECTIVE JUROR:  -- since I would not be present.

THE COURT:  All right.  Thank you.  That's all for now.

Okay.  Let's hear from Juror 6.

A PROSPECTIVE JUROR:  So, Your Honor, I am a university professor.  I teach a very specific class for graduate students.  It's only taught twice -- or once per year, and graduate students need it for graduation.  That class only meets once per week.  So there are only 15 meetings.  My understanding is this could be up to three weeks.  It would be about one-fifth of the classes that I wouldn't be able to attend and teach.  I did give a mitigation plan, that being that I could attempt to identify context experts, but that would take me some time because the -- the subject that I teach is very, very specific.

THE COURT:  And what do you teach, sir?

A PROSPECTIVE JUROR:  I'm a fisheries biologist, and the class that I'm teaching is advanced fin fish aqua culture. So you can imagine those context experts are few and far between.

THE COURT:  Okay.  Well, let me ask:  Sitting here today, have you identified anybody that you could realistically reach out to to step in for potentially three missed classes?

A PROSPECTIVE JUROR:  I have currently identified one person to teach one of the classes that would be this Friday. And then I still haven't identified other context experts.

THE COURT:  Okay.  All right.  That's all I have for now, Juror 6.

Let's hear from Juror 11.

A PROSPECTIVE JUROR:  How are you doing, Your Honor?

THE COURT:  Well, thank you.  What is your hardship, sir?

A PROSPECTIVE JUROR:  I'm a sole provider for my family, a service manager for a roofing company.  And I have another small business I attend.

THE COURT:  Okay.  Do you own the roofing company?

A PROSPECTIVE JUROR:  No.  I'm a service manager.

THE COURT:  And you said you have another job as well? What's that job?

A PROSPECTIVE JUROR:  Yes.  It's a marine upholstery

business, small business I manage.

THE COURT:  Okay.  Are you the owner of the upholstery business?

A PROSPECTIVE JUROR:  Yes.  That one, I am.

THE COURT:  Now, let me ask you:  Have you -- or do you know whether you're employer would pay your salary in the normal course if you were chosen to serve on the jury?

A PROSPECTIVE JUROR:  I'm not sure, because I'm the one that pretty much does everything.  I provide service.  I meet with customers.  I send out emails.  I attend pre-bid meetings around the state, so -- and I would just have to catch up on a lot of work.

THE COURT:  Okay.  But can you, I guess, answer my question specifically.  Do you know if your employer, the roofing company, would pay your salary, or however it is that you get paid, if you were not at work in the normal business hours while you were chosen to serve?

A PROSPECTIVE JUROR:  Honestly, I'm not sure --

THE COURT:  Okay.  Thank you.

A PROSPECTIVE JUROR:  -- to be honest.

THE COURT:  All right.  That's all I have for you right now, sir.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Let's hear now from Juror 14.

A PROSPECTIVE JUROR:  I put down two items.  My son

attends elementary school.  I'm the normal pickup person at -- 5:30 is the latest.  Located more than 40-ish minutes away. That was concerning.  And the other is I teach AP chemistry, high school level, and I'm concerned that a substitute would sit in my classroom and not be able to teach content for that long.  That's concerning.  But that's my items.

THE COURT:  Understandable.  Do you have anybody else who could help you with the pickup for your child?

A PROSPECTIVE JUROR:  My husband occasionally can, but he's -- works later than my schedule, and I am the pickup person.

THE COURT:  Got it.  Got it.  Okay.

All right.  Thank you.  That's all I have for now, Juror Number 14.

Let's hear from Juror 17.

A PROSPECTIVE JUROR:  Yes, thank you.  I'm a warehouse manager for a company, and I'm the only one who knows where everything is.  And then the company is being -- changing some policies, and there has been a lot of changes.  And my hardship is that I won't be able to assist here at all.  I had a couple of associates that -- they're new, and they're just learning, and then I don't have anything -- anyone else to be in my position.  And the other thing is that --

THE COURT:  One moment, sir.  How many people work at the warehouse?

A PROSPECTIVE JUROR:  We are only three.

THE COURT:  Three total?

A PROSPECTIVE JUROR:  Myself and -- yes, with me.  And then there is --

THE COURT:  One moment, sir.  The other two people, could they --

A PROSPECTIVE JUROR:  No.

THE COURT:  -- do what you do, at least reasonably well, if you were chosen to serve?

A PROSPECTIVE JUROR:  No.  No.  I'm the only one certified with the forklift and they're not.

THE COURT:  Okay.  And then you were going to add something else.

A PROSPECTIVE JUROR:  Yes.  I'm the only one working at home.  My wife is not employed.  So I'm the only one that can provide right now.  I cannot -- I'm not sure if that company can pay me over these days, three weeks.

THE COURT:  Okay.  Thank you.  That's all I need for now.  If I need further information, I will come back to you, Juror 17.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Let's hear from Juror 22.

COURT SECURITY OFFICER:  This way.

A PROSPECTIVE JUROR:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  Primary caregiver for a 6- and a 5-year-old; first grade, kindergarten.  Sole pick up/drop-off.  My domestic partner works down in Palm Beach County from 8:00 to 5:30.  So she's out.  I do have relatives in the area that can assist sporadically, not really daily.  And then also on there, the other hardship was pre -- two predetermined flights out of the state for work:  One September 22nd, for three days; and one October 1, the Wednesday, for another two days.  Flights were booked.  They could be canceled.  But those are my --

THE COURT:  So when you go on your work trips, who assists you with the children?

A PROSPECTIVE JUROR:  Who assists me with the children?  The wife is there to help for those few days, and then the parents, they would be lined up for those sporadic helps.

THE COURT:  Okay.  All right.  Now, what's the latest time that you ordinarily pick up your children?

A PROSPECTIVE JUROR:  They go to school from 7:30 to 2:30.

THE COURT:  Okay.  Did I hear you say 5:30 as far as pickup time?

A PROSPECTIVE JUROR:  No.  The significant other works from 8:00 a.m. to 5:30 down in Palm Beach County.  That's why traditionally, she's not around for the pickup.

THE COURT:  Okay.  Okay.  But you're normally the one

picking the kids up at 2:30?

A PROSPECTIVE JUROR:  I pick them up and drop them off each day, and then sporadically, the parents are there to help, like a day like today.

THE COURT:  Okay.  All right.  That's all I need for now, sir.

Let's hear from Juror 24.

A PROSPECTIVE JUROR:  Hi.

THE COURT:  Good afternoon, ma'am.  Please tell me what your hardship is.

A PROSPECTIVE JUROR:  I have a special-needs daughter, and I am the primary caregiver.

THE COURT:  Okay.  Does your daughter go to school during the day or what are your arrangements?

A PROSPECTIVE JUROR:  She does.  I have a husband, but he is a high school teacher.  So he is at school by 7:00 a.m. I am the primary one to take -- take them to school.  He does pick up, but I wouldn't be able to be here at 9:00.

THE COURT:  So just -- well, I guess, walk me through that as far as if you were dropping your child off around 7:00, then would it be permissible or possible for you to get here by 9:00?

A PROSPECTIVE JUROR:  Her school starts later.  So drop-off isn't until 8:30 and I'm in north Vero.

THE COURT:  Okay.  All right.  So her school drop-off

is 8:30?

A PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  Okay.  Is there -- I'm forgetting what the name.  It's not aftercare; it's pre-care.  Is there something like that offered at her school?

A PROSPECTIVE JUROR:  There is, but with her special needs, I don't put her there.

THE COURT:  Got it.  Okay.  That's all I have.  Thank you, ma'am.

Let's hear from Juror 25.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  So I do have a full-time job as a pharmacist.  Excuse me.  And I'm also going through another legal matter where I have to vacate my home by October 4th.

THE COURT:  Okay.  So are you currently in the process of moving out, ma'am?

A PROSPECTIVE JUROR:  Yes.  Trying to locate another home, establish a mortgage.

THE COURT:  Okay.  Do you think all of those personal issues would interfere at all with your ability to focus and pay attention on something else?

A PROSPECTIVE JUROR:  Yes, unfortunately.

THE COURT:  Okay.  All right.  That's all I have, Juror 25.

Let's hear from Juror 29.

A PROSPECTIVE JUROR:  Your Honor, I have a small -- sorry -- auto repair shop, and I pretty much handle everyday organizational, jobs coming and going.  My wife does work there, but as far as -- she does the office work.  I pretty much handle the techs in the shop.

We do have two other things.  I have a 96-year-old mom that is currently going through cancer treatment.  And my wife or I, it's not unusual for us to have to get a phone call, we have to be there.  She does live in assisted living, but it can -- it can cause a problem there.

The only thing is, it's kind of minor, but we do have a flight going out September 20th, but that's not as -- not as vital as the other two.

THE COURT:  Okay.  And your flight, is that for work?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Now, you said you work at a small repair shop.  Are you the owner of that?

A PROSPECTIVE JUROR:  The owner of the shop, yes.

THE COURT:  Okay.  So when you take time off, or maybe take a vacation, who steps in to kind of run the mechanics?

A PROSPECTIVE JUROR:  Well, we do have a gentleman that works for us, he has been working for us for 13 years, he will do it.  Scheduling now, it's -- we become very busy.  And it's -- I mean, I could -- we could work around it, but, of

course, the shop's going to suffer because we have one less technician doing the job so we can't schedule as much work, so it turns into a financial issue.

THE COURT:  Okay.  All right, then.  That's all I have for Juror 29.

If I have further questions, I may come back to you, sir.

Okay.  All right.  Let's hear from Juror 30.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  My hardship would be financial. I don't work hourly or salary.  It's all commission.  If I'm not working, I'm not making income.  I'm the only provider in my household, so $50 a day wouldn't even cover the power bill or water or nothing.  So...

THE COURT:  And what's your employer?

A PROSPECTIVE JUROR:  Hulett Environmental Service.

THE COURT:  And what do you do for them?

A PROSPECTIVE JUROR:  I'm a pest technician.

THE COURT:  All right.  So did I understand you correctly, sir, that you earn wages strictly on commission?

A PROSPECTIVE JUROR:  It's commission, yes, ma'am.

THE COURT:  So do you know if your employer has any arrangements for folks when they're called to jury service?

A PROSPECTIVE JUROR:  Jury, I can't -- I don't know the

truthful answer to that, but my personal PEO, vacation/sick time has already been accounted for throughout the year.  And I already have four days that are accounted for, for the upcoming holidays.

THE COURT:  Okay.  All right.  I have taken all that down.  Thank you, Juror 30.

Let's hear from Juror 34.

A PROSPECTIVE JUROR:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  Currently enrolled in a massage therapy school, and the dates of this trial would cause me to miss about a third or -- to a quarter of the program.

THE COURT:  And where do you take the classes?

A PROSPECTIVE JUROR:  Lake Wales.

THE COURT:  What's the name of the school?

A PROSPECTIVE JUROR:  Preserva Med Spa Therapy.

THE COURT:  I'm having a little trouble hearing you, sir.

A PROSPECTIVE JUROR:  Sorry.  I will move a little closer.  It's Preserva Med Spa.

THE COURT:  Preserva?

A PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  So have you, I assume, already paid for tuition for this semester?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  All right.  That's all I have for now, sir.

Okay.  We're now at Juror 35, please.

A PROSPECTIVE JUROR:  Thank you for hearing me, Your Honor.  I would have requested this before I sent in the paperwork, but I had no idea that it was more than a week.

I'm a sole provider.  I am not making enough money to survive.  And I have one main company that does work for, and every couple years I get a big job where they get a new development.  They're a real estate developer.  Well, on the 14th of July, when I admitted my form, I was free during this time and it would not have been a problem.

They -- they called me at the end of October [sic] and said they wanted me there on the 12th, which is this Friday.  And I said, No, I've got jury duty that week.  So I said, I will come up Saturday, the 13th.

Said, Well, see if you can get out of jury duty or we can get you there early; we really like you.  I said, Well, right now, I can only come in the 13th.

But after walking in here, I found out the 13th doesn't work.

THE COURT:  Sir, just one moment.  So as I reminded everybody, our court reporter is trying to write everything down, and so it's a little bit hard when you speak quickly.

A PROSPECTIVE JUROR:  Okay.

THE COURT:  I will just have you repeat what you said a moment ago.

A PROSPECTIVE JUROR:  Okay.  The time required for me to be away, I have to be on this site to do four days' work in Sarasota.  It's a new development.  And I am the sole IT person for this company.

THE COURT:  Okay.  All right.  That's sufficient information for now, sir.  Thank you.

Let's hear from Juror 37.

A PROSPECTIVE JUROR:  Thank you.

Your Honor, my hardship is just a trip that was already planned.  I have a flight on Friday, the 12th, to Pennsylvania for a doctor's appointment on Monday, the 15th, to be -- talk to a previous doctor that has performed surgery on me that I may have to have laparoscopic surgery.  But it's something that could be -- it's not an emergency surgery, it's -- both the flights and the doctor's appointment could be rescheduled, but I would really need to know by this Wednesday to be able to do that, to have the time to appropriately reschedule those.  The flight, at my cost, slight cost, would be $50 to reschedule the flights, and then with the doctor's office.

THE COURT:  Do you have any sense for whether the doctor's office could fit you in reasonably quickly if you had to reschedule?

A PROSPECTIVE JUROR:  I would hope that they would do

it.  I would probably ask for it to be about six weeks out to make sure that this didn't happen a second time.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  But I'd prefer to keep the appointment.  I have been waiting -- you know, looking forward to it, but I didn't realize the length of the trial, so I didn't reschedule it previously.

THE COURT:  Understood.  And how long have you had this appointment?

A PROSPECTIVE JUROR:  I have had it about five weeks.  Since I -- I scheduled it after the survey that I sent in, but I did not realize we would have a three- to four-week period of time.

THE COURT:  Okay.  All right.  Thank you.

A PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  All right.  Let's turn now to Juror 38.

A PROSPECTIVE JUROR:  Hello, Your Honor.  Right now presently I'm under a doctor's care right now with high blood pressure.  I'm doing morning and afternoon check-in with blood pressure.  Don't handle stress at all.  I have got two appointments on Wednesday, and I have got three other ones, ultrasounds and stress tests, coming up through the month of September.  So that is my hardship.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  And the fact that I don't want to

be here.

THE COURT: All right. Wait. Before you hand off the mic, I have a couple of clarifying questions.

A PROSPECTIVE JUROR: That's fine.

THE COURT: Do you have appointments where you go see physical --

A PROSPECTIVE JUROR: I have all my paperwork right here (indicating).

THE COURT: No, I'm not asking you, sir, to give me any paperwork. I'm just asking a question.

Do you have, as we speak, appointments set up for this week and other weeks?

A PROSPECTIVE JUROR: Yes. On Wednesday, I have two appointments on Wednesday. And then I have to look at the paper to refer to it, but I've got other tests that are coming up in this month of September.

THE COURT: Okay. All right. That's -- that's sufficient for now. Thank you, sir.

Let's hear from -- from Juror 41, please.

A PROSPECTIVE JUROR: Good afternoon, Your Honor.

THE COURT: Good afternoon.

A PROSPECTIVE JUROR: I am a small business owner with four employees that I am responsible for looking at the jobs, estimating the costs, preparing the materials, and making sure my guys execute the jobs to the way that I propose them.

The amount of time that this is taking does present a hardship as I have a lot of business roles every week that is constantly demanding from me, I guess you could say.

THE COURT: Okay. And what kind of work do you do, sir?

A PROSPECTIVE JUROR: I'm an electrical contractor.

THE COURT: And I think you mentioned that you own this business?

A PROSPECTIVE JUROR: Yes.

THE COURT: All right. That's all I have for now. I may come back to you, sir.

Okay. Let's hear from Juror 42, please.

A PROSPECTIVE JUROR: Yes, Your Honor. I'm a small business owner also. September is the end of our fiscal year. Probably one of the times that I am committed to the job as much as any time, but also commercial insurance renewals also taking place during this month.

THE COURT: Okay. And so what type of business are you a president of, sir?

A PROSPECTIVE JUROR: Oil distribution, fuel distribution.

THE COURT: If you were asked to serve on this jury, could you make arrangements to tend to that work either after hours or after the trial?

A PROSPECTIVE JUROR: My travel distance is about an

hour and a half each day each way to come to the court.  So it would limit in the evenings the amount of time that I could commit to work.

THE COURT:  And how many miles from the courthouse do you live approximately?

A PROSPECTIVE JUROR:  I live over in Highlands County.  I think I'm about 70 or so miles, hour and a half drive.

THE COURT:  If you were permitted to stay at accommodations closer to the courthouse, would that alleviate the concern at all?

A PROSPECTIVE JUROR:  It might could help some, yes.  A lot of -- a lot of my things, though, it's helpful when I'm in the office.

THE COURT:  All right.  Okay.  And who else works there?

A PROSPECTIVE JUROR:  Family.  We have -- we do have family there.  I have a third generation working behind me.

THE COURT:  Okay.  Got it, sir.  Thank you.

A PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  All right.  Let's hear from Juror 43.

A PROSPECTIVE JUROR:  Hello, Your Honor.

THE COURT:  Hello.

A PROSPECTIVE JUROR:  I own Treasure Coast Thermography.  I am the only person trained in doing the scans.  That's -- I also have three kids, but it's not really a

hardship because I could -- I do have my other older children who can pick up my younger one, so that's not really a concern. As long as it would be done by October, the case, I really don't have a hardship.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Because that's my busy month with breast cancer awareness month, but if it's done before that, I wouldn't have a problem.

THE COURT:  Okay.  All right.  So you -- the type of work that you do -- I think you mentioned scanning; that's radiography?

A PROSPECTIVE JUROR:  It's infrared thermoscan, checking for inflammation and mostly breast cancer for women.

THE COURT:  Okay.  All right.  Thank you.  And so if you were called to serve on a jury for the month of September and potentially a couple of days in October --

A PROSPECTIVE JUROR:  Yes, as long as it would -- yeah, as -- yeah, I could do it.  Yeah.

THE COURT:  Okay.

Okay.  Let's hear from Juror 44.

A PROSPECTIVE JUROR:  Hello.  My hardship is really general in nature.  My wife and I own two small businesses.  We own and operate those.  My wife and I own two small businesses that we own and operate, and we have three small children that are in school that we take turns dropping off and picking up.

THE COURT:  Okay.  And what are the businesses that you own?

A PROSPECTIVE JUROR:  One is a senior relocation and downsizing, and one is a retail store.

THE COURT:  So I assume you have some staff members that help run these businesses?

A PROSPECTIVE JUROR:  Yeah.  We could manage without me being there, yeah.

THE COURT:  So if you were here serving as a juror with that schedule I have announced, would you be able to find arrangements for your children as far as pickup and drop-off?

A PROSPECTIVE JUROR:  Yeah, we could manage arrangements if we needed to.

THE COURT:  Okay.  All right.  Thank you, Juror 44.

Let's hear from Juror 46.

A PROSPECTIVE JUROR:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  Me and my husband own our construction company in Vero Beach.  He is in the field and I run the office, and I don't allow him on my computer.  I do all of the billing, all the appointments, and all the proposals.

THE COURT:  Okay.  Does anybody else in the office handle that type of office work?

A PROSPECTIVE JUROR:  No.  I'm the only one, and I run the office.  I'm it.

THE COURT:  Okay.  All right.  And all right, that's sufficient for now, ma'am.  I may come back to you --

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  -- a bit later.

Let's turn to Juror 48.

A PROSPECTIVE JUROR:  Good evening, Your Honor.  I will have a financial hardship.  I'm the only one that works in my house, and that would put me quite a bit behind.

THE COURT:  And where do you work now?

A PROSPECTIVE JUROR:  I work for an AC company called Long's Air Conditioning.

THE COURT:  Did you say Long's Air Conditioning?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  And do you know if that company would pay you your regular rate if you were chosen to serve as a juror?

A PROSPECTIVE JUROR:  I honestly don't know.

THE COURT:  Okay.  Thank you, Juror 48.

Let's hear from Juror 54.  Okay.

A PROSPECTIVE JUROR:  Hello, Your Honor.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  I am a stay-at-home mom, and we home-school our son, and so I am his teacher.  I am there to direct him, keep him on task, answer his questions, and make sure that he is learning throughout the day.

THE COURT: All right. And I assume there is nobody else who teaches him like you do?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. All right. That's all I have for now, ma'am. Thank you.

Let's see. Juror 55.

A PROSPECTIVE JUROR: Good afternoon, Your Honor.

THE COURT: Good afternoon.

A PROSPECTIVE JUROR: My reasoning is just financial hardship. I work commission. Kind of like that gentleman, if I don't work, I don't get paid. My employer, I'm fairly certain will not compensate me for my time gone. And I'm already in a really bad position right now financially. So I'm really worried about three weeks of no pay, because the $50 a day is just not going to do anything.

THE COURT: Okay. All right. Do you think if chosen to serve, you would be understandably maybe consumed with the financial pressures that you have described?

A PROSPECTIVE JUROR: I am under pretty heavy stress currently, yeah.

THE COURT: Okay.

A PROSPECTIVE JUROR: It would not get easier.

THE COURT: Okay. Thank you, Juror 55.

Let's hear from Juror 58. What is your stated hardship?

A PROSPECTIVE JUROR:  Good afternoon.  Mine is physical.  I also suffer from high blood pressure and atrial fibrillation.  I'm having a hard time pronouncing it.  And that's about a 50-mile ride one way, from where I live to here.  And it's a long day.  And my heart and my blood pressure is, like, going through the roof right now.  And I don't want to faint.

THE COURT:  Okay.  All right.  Thank you, sir.  You may have a seat.

Let's hear from Juror 59.

A PROSPECTIVE JUROR:  I'm currently a student in Indian River State College.

THE COURT:  Okay.  And what are you studying, sir?

A PROSPECTIVE JUROR:  Biology.

THE COURT:  Interesting.  Okay.  How long have you been going to school there?

A PROSPECTIVE JUROR:  About three years.

THE COURT:  Have you thought about what it would mean to your schooling if you were doing jury service for approximately three-and-a-half weeks?

A PROSPECTIVE JUROR:  It probably would affect my grades.  And it would probably affect my GPA.

THE COURT:  Okay.  All right.  That's all I have for now, sir.

And then I think we also have Juror 60 who stood up.

A PROSPECTIVE JUROR:  Hi.  I currently work with children with autism.  And they have severe behavior issues. I'm with them in school and at home, and I feel that being away for that much time would cause a lot of hardship for our families and myself.

THE COURT:  Okay.  And so just tell me a little bit more about where you work.

A PROSPECTIVE JUROR:  I work in the school with the child.  So I go to school with them.  I'm there from anywhere from 8:00 until about 2:00.  And then I work with another client that's in the evening at his house.

THE COURT:  Okay.  So you are assigned to particular children, and you assist them during the day?

A PROSPECTIVE JUROR:  Yes, Your Honor.

THE COURT:  Does anybody else ever step in when you're unable to?

A PROSPECTIVE JUROR:  Not really, no.

THE COURT:  Okay.  Have you ever taken any time off? And in and those instances, what's happened?

A PROSPECTIVE JUROR:  Yes.  It's a company based out of Port St. Lucie.  They are pretty understaffed, so it's pretty -- and I drive to these locations.  So some of them are Jupiter; the other one is in Winter Haven -- I mean in Winter Beach.  So we're pretty stretched thin when it comes to transportation and all those things.

THE COURT:  Okay.  That's sufficient for now, Juror 60.  Thank you.

All right.  Does anybody else have a specific hardship that they haven't already alerted the Court to in open court as we've gone through these various jurors?

All right.  I see no additional hands.

Are there any additional jurors who have indicated a stated hardship on the questionnaire but have not spoken up in court about that stated hardship?

Okay.  I see no additional hands.

All right.  Now, let me zoom out and touch on a different subject.  Does anybody here have any difficulty reading or speaking the English language?

Okay.  I see no hands.

Okay.  Does anybody here have any physical disabilities or impairments that could be of a hearing nature, sight or otherwise, that would render you incapable of performing your duties as a juror?

Okay.  I see no hands.

Now, some of you did indicate some information that could potentially fall in this category in the questionnaires.  So I may revisit this question, or at least some form of it, a little bit later during this session.

Okay.  What I'm going to do now, ladies and gentlemen, is I'm going to read out loud the names of the individuals on

the proposed witness lists provided by the parties in this case.  This doesn't mean necessarily that every single one of those individuals will actually come to testify, but they are potential witnesses.  So I will ask you if any of you know any of them or if any of you have any relationship whatsoever with them.  There are a number of these witnesses, so please pay close attention.  And I will take this in groups and then ask you periodically whether you know any of the names or recognize them at all.

So let's gets started.

Kristin Bailey, Special Agent, Federal Bureau of Investigation.  Cindy Barrois, spelled, B-A-R-R-O-I-S, Special Agent, Federal Bureau of Investigation.  Michael Brooks, Deputy, Palm Beach County Sheriff's Office.  And Erin Casey, Operational Media Specialist, Federal Bureau of Investigation.

Does anybody in the courtroom recognize any of those individuals?

I see no hands.  All right.

Next group.  Rachel A. Clay, Document Analyst - Forensic Examiner, Federal Bureau of Investigation. Brenden Clements, Special Agent, United States Secret Service. Erin Farais, F-A-R-A-I-S, Physical Scientist, Federal Bureau of Investigation.  And Robert Fercano, Special Agent, United States Secret Service.

Does anybody recognize any of those names or believe

they have any relationship or connection to any of them?

All right.  I see no hands.

Next we have Garett Foo, F-O-O, Special Agent, Federal Bureau of Investigation.  Tracy L. Fulk.  William Gale, Lieutenant, Palm Beach County Sheriff's Office.  And Curtis D. Gaul, Biologist, Federal Bureau of Investigation.

Does anybody recognize any of those names or believe they have any relationship with them?

No hands.

David Gilbert.  David Gilbert -- excuse me.  Special Agent, Federal Bureau of Investigation.  Jorge A. Gomez, Jr., Sergeant, Palm Beach County Sheriff's Office, also Jorge. Christopher Adam Goodrich, Special Agent, Federal Bureau of Investigation.  And Kara R. Gregor, Biologist - Forensic Examiner, Federal Bureau of Investigation.

Does anybody recognize any of those names or believe they have any knowledge or interaction with any of them?

No hands.

All right.  Now we are at Laura E. Haller, Digital Forensic Examiner/Special Agent, Federal Bureau of Investigation.  Jason B. Harris, Special Agent, United States Secret Service.  Dominick Healey, spelled, H-E-A-L-E-Y, Special Agent, Federal Bureau of Investigation.  And Christian Hlinka, H-L-I-N-K-A, Special Agent, United States Secret Service.

Same question.  Does anybody here recognize any of

those names or believe they have any relationship or association at all with them?

No hands.

Travas M. Holland, Sergeant Technician, United States Secret Service. Michael F. Kelly, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives. Patrick M. Lantry, Task Force Officer with the Federal Bureau of Investigation. And Austin Laufer, Detective, Palm Beach County Sheriff's Office.

Anybody recognize any of those names or believe they associate with them?

Okay. No hands.

Jerry Llanes, L-L-A-N-E-S, Digital Forensic Examiner, Federal Bureau of Investigation. José A. Loureiro, L-O-U-R-E-I-R-O, Special Agent, Federal Bureau of Investigation. Christopher Mayo, Special Agent, FBI. And Kenneth Mays, Detective, Palm Beach County Sheriff's Office.

Anybody recognize those names or believe they have an association or relationship?

No hands.

Okay. Tommy C. McGee. Kimberly J. McGreevy, Supervisory Special Agent with the FBI. Ronnie J. Oxendine. And A. Scott Patterson, Supervisory Special Agent with the FBI.

Anybody recognize any of those names?

I know this can get a little tedious, ladies and

gentlemen, but please make sure you continue to pay close attention.

Does anybody here have any knowledge or association with those individuals?

Okay.  No hands.

Matthew Perry, Special Agent, FBI.  Samuel Plata, Lazaro Plata, and Christian Plata.  That last name is P-L-A-T-A.

Does anybody recognize any of those individuals?

No hands.

We have Elizabeth Riddell, R-I-D-D-E-L-L, Digital Forensic Examiner with the FBI.  Kathryn Rose, Special Agent, FBI.  Nicholas Schnelle, Special Agent with the FBI, and Erich Smith, a Firearms and Toolmark Examiner with the FBI.

Does anybody recognize any of those names?

Okay.  I see no hands.

Kenny Smith, Detective, Palm Beach County Sheriff's Office.  Stephanie Stuart, Physical Scientist, Forensic Examiner, FBI.  Aaron Thompson and Gregory Turner, Special Agent with the FBI.

Does anybody recognize any of those names?

Okay.  No hands.

And then we have Randy S. Walters, Destructive Device Examiner, Bureau of Alcohol, Tobacco, Firearms and Explosives. Michael McClay, Oran Alexander Routh, Atwill Milsun, Erick

Zuniga, Marshall Hinshaw, John Tamura, John Keone Sayles, S-A-Y-L-E-S, and finally, Raymond Carrea.

Does anybody recognize any of those names?

Okay. I have -- I see no hands.

All right. Okay. Now, as I said earlier, ladies and gentlemen, we are here today because an indictment has been filed charging Mr. Routh with certain crimes. And he is called upon to respond to that indictment. The indictment, importantly, and I have said this now I think twice, is not evidence, and the defendant in this case responded to that accusation by saying four important words; I am not guilty.

Those words carry a great deal of weight, ladies and gentlemen, because we are now beginning a jury trial where the government bears the entire burden to prove the defendant guilty beyond a reasonable doubt before he may be found guilty of any offense charged against him.

And so, the fact that an indictment exists does not mean that what it alleges actually happened. That is what the jury is here to determine -- to determine, excuse me, and that is what the government is required to prove to you beyond a reasonable doubt.

Now, I'm going to touch upon some of those important criminal justice principles that I alluded to earlier. These include the presumption of innocence, the government's burden of proof, and the defendant's right to remain silent.

So by a show of hands, and please don't be shy, how many of you have heard of a defendant's presumption of innocence?

All right.  I know maybe you're a little tired, it's the afternoon, but I'm looking for full participation.

Okay.  I do see plenty of hands going up.

Okay.  Now, the indictment in this case, as I said, is merely the accusatory paper which states the charge or the charges against the defendant, but it's not evidence, and it shouldn't be treated as such.  Again, the defendant has indicated his belief that he is not guilty of all of the offenses, and he is presumed by the law to be innocent.

Every person, ladies and gentlemen, in this country who is charged with a crime is presumed innocent before -- until he or she is proven guilty.  And that right is guaranteed by our Constitution.  So if I were to send all of you back to the jury deliberation room right now as a hypothetical exercise and ask you all to render a verdict, the only lawful verdict that you could issue at this point would be not guilty.  Because, of course, that presumption of innocence holds and is sacred in this country.

Does anybody here have any difficulty accepting the presumption of innocence as the law?

I see no hands.

Now, the burden of proving the defendant's guilt rests,

as I have said, with his accuser, which in this case is the United States government.  And that burden is to prove the charges beyond a reasonable doubt.  So I'm now going to read to you the jury instruction that actually defines that burden of proof so that you all have a full understanding of what that principle consists of.  So here it goes.

The government's burden of proof is heavy, but it doesn't have to prove a defendant's guilt beyond all possible doubt.  The government's proof only has to exclude any reasonable doubt concerning the defendant's guilt.

A reasonable doubt is a real doubt, based on your reason and common sense after you have carefully and impartially considered all of the evidence in this case.  Proof beyond a reasonable doubt is proof that is so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs.

So that concludes the burden of proof instruction.

Does anybody here have any difficulty accepting that important proposition as the law?

I see no hands.

Okay.  Now, similarly, the government bears the entire burden of proof in this case.  That means in practical terms that there is nothing left for the defense.  There is nothing for Mr. Routh to prove or to disprove to you.

Does anybody have any difficulty accepting that as the

law?

No hands.

Now, same -- same active participation, ladies and gentlemen.  How many of you have heard of a defendant's right to remain silent?

Okay.  Even more.  Even more folks answering yes to that question.

Well, as I said before, the law does not require the defendant to prove his innocence or to provide any evidence at all or to testify.  And if a defendant elects not to testify, it is imperative that nobody use that against him or consider that in any way in their deliberations.  In other words, the government bears the entire burden of proof, and if the government fails to meet that burden, you must find the defendant not guilty.

Does anybody have any qualms or hesitation about accepting and applying the law regarding a defendant's right to remain silent?

I see no hands.

And so to repeat, if a defendant does not testify, you can't hold it against him.  So as an example, let's say the case is over, you all go back to the jury room, and you don't believe that the government has proven its case beyond and to the exclusion of a reasonable doubt.  At that point, you can't say to yourself or to your fellow jurors, Well, you know, I

don't really think the government proved its case, but I'm going to find the defendant guilty anyway because he didn't testify.

That sort of inference, that sort of thought is clearly impermissible, and you would not be allowed to engage in that thinking whatsoever.  You cannot hold that against the defendant.

Does anybody feel that they would not be able to follow the law on the defendant's right to remain silent?

I see no hands.

Now, to reach a verdict, you may have to decide which testimony to believe and which testimony not to believe.  And when you do this, when you evaluate the credibility of a witness, you, as you would in the normal course, evaluate a number of factors, including things like the witness's opportunity and ability to see, hear, or know the things the witness is testifying.

Another important thing you might think about for the witness is whether the wetness -- excuse me, whether the witness seems to -- like somebody who has a good memory, or, let's say, the witness's manner while he or she is testifying. Perhaps you would also consider whether the witness has any interests in the outcome of the case or any biases.  And you may also, of course, consider any other evidence that contradicts what the witness is saying on the witness stand.

Of course, then any other factor that would bear on the believability of the witness would be -- would be fair game to consider, and the Court ultimately would provide more specific instructions about evaluating credibility.

But sitting here today, ladies and gentlemen, is there anybody here who feels they would be unable to evaluate the credibility of witnesses as you're hearing evidence in this case?

All right.  I see no hands.

Now, you will also be instructed in clear terms to disregard the consequences of any verdict rendered.  In other words, you shall not be concerned with the imposition of sentence, and that is because the imposition of any sentence is the sole province of the judge, not the jury.

Is there anybody here who feels they would not be allowed -- excuse me -- they would not follow that principle of law?  In other words, not considering punishment in any way?

Okay.  I see no hands.

Now, moving on, this sort of touches upon the credibility point I just made a moment ago.  As jurors, you may disagree on what the evidence has shown.  Maybe one of you thinks the witness testified 100 percent truthfully, maybe another person thinks that the witness wasn't truthful, or maybe you think what the witness said is partially true and partially untrue.  All of that is perfectly acceptable.  And

after you retire to the jury room, you would then discuss all of the facts and see if you can reach a unanimous verdict.

But there is no room, ladies and gentlemen, and I will stop here and emphasize, there is no room for doubt concerning what the law is.  The law is what the Court instructs you it is, and you must be willing to accept the law as I present it to you even if you do not agree with the law.

Is there anybody here who feels they cannot follow the Court's instructions on the law?

I see no hands.

Okay.  All right.  Let's see.  That concludes my initial set of questions for this phase.  And so what we're going to do, ladies and gentlemen, please listen carefully. I'm going to direct you all to return to the jury assembly room on the second floor where you came into the courthouse this morning, and you're going to stay there, please, until you're given further instructions.  I'm going to ask that you please leave the jury paddles where they are so they don't get misplaced.  So please leave them on your respective chairs.

Now, I'm going to give you a series of warnings, and I expect full compliance with these.  Please do not discuss the case with anybody.  And that includes your fellow prospective jurors.  Or anybody else who you may come across in the jury room.  You are not allowed to discuss this case with anyone.

You're also completely forbidden from doing any

research or investigation about this case, either via the internet or through some other means.  It's tempting in this day and age to want to pick up your phone and maybe do searches, but what I'm telling you and directing you is not to engage in any sort of investigation or discussion about this case.

None of that can happen.  And the reason why, ladies and gentlemen, is that engaging in that type of activity can produce a decision that is not based on the law and the evidence presented in the courtroom, but rather, on some outside piece of information or on some outside influence that simply cannot be considered.

Again, the objective here, as I said in the beginning, is to select a fair and impartial jury that will follow the law and make a decision based only on the evidence presented in the courtroom.  And so that means, and I'm going to emphasize this again, that you cannot discuss this case with anyone, or permit anyone to discuss it with you, and you cannot read or listen to anything about this case in any way or conduct any type of investigation or research.

So that will conclude my initial remarks.  We will be back in touch as soon as we can.  I have some issues and matters to discuss with the parties.  But for now, let's all rise for the jury.  Please leave your paddles where they are and head to the second floor.  Thank you.

(The venire exited the courtroom.)

THE COURT:  All right.  Please have a seat.

Okay.  It is 3:37.  We're going to take a break until 3:50.  At that point, please be prepared to bring up to the Court any for-cause strikes as to this Group 1 based on information provided either in the juror questionnaires or during this initial jury selection process.

So, with that, we're in recess until 3:50.  Thank you.

(A recess was taken from 3:35 p.m. to 3:51 p.m.)

THE COURT:  All right.  You may all be seated. Everybody is present.

What we're going to do now is discuss any clear for-cause challenges, and if there is a specific need for a private conference as to any particular individual, then I would entertain that request and summon those discrete individuals from the jury assembly room back into the courtroom if it's necessary.  But again, we're going to have a full opportunity to meet with any leftover individuals tomorrow, so this would not be the last opportunity to speak to them.

With that observation, let's begin.  I'm going to alternate and give each side an opportunity to raise any clear for-case challenges.  Of course, you must provide a basis for the challenge, drawing either from the questionnaire or from the statements made in open court.  I know we've run through some of these preliminarily before, but now it's in a more

formal presentation, so let's begin with the government.  And I will flip-flop back and forth, Mr. Routh, to give you a chance to offer any of your comments as well.

So let's go with the first one, Mr. Browne.

MR. BROWNE:  Number 2 for cause, Your Honor.

THE COURT:  Okay.  What's your reason?

MR. BROWNE:  This particular prospective juror indicated a serious hardship.  Specifically, it appears that she is the entire organization as far as this upcoming event is concerned.  She indicated that she would effectively be working in the time that she is not actively serving on the jury.  And based on her position at the company, we think she's -- appears to be senior enough that her absence would, I guess, cause real problems for this upcoming event.

THE COURT:  Okay.  She also did indicate that then she would perhaps be not able to give the trial her full attention because she would be working after hours to make up for the daytime lost.  Okay.

Mr. Routh, do you have a position on Juror 2?  Do you agree that she should be stricken for cause because of her personal work issues?

MR. ROUTH:  Well, I think she would be a good juror, but I -- I'm open either way.  So either way is fine with me.

THE COURT:  All right.  So do you oppose a for-cause strike as to Juror 2?

MR. ROUTH:  I do not oppose.

THE COURT:  All right.  Then Juror Number 2 will be stricken for cause for the reasons provided by the government, which I agree amount to for cause under the circumstances presented.

Okay.  What's your next for-cause proposal, Mr. Browne?

MR. BROWNE:  Juror Number 6, Your Honor.  Based on the very specialized nature and the fact that he is teaching graduate students over a very narrow window, I just don't know that it's feasible for Prospective Juror Number 6 to get the coverage or the substitute that he would need to teach such a specialized subject matter to a group of graduate students whose, you know, eventual academic careers, I guess, rely on taking that course.  So we would ask for cause on that basis.

THE COURT:  Okay.  Any objection to for cause as to Juror 6, Mr. Routh?

MR. ROUTH:  Again, he would be an excellent juror but, again, I would yield to his profession.

THE COURT:  Okay.  So, to be clear, you're not opposing a for-cause strike as to Juror 6?

MR. ROUTH:  No.

THE COURT:  All right.  In light of the parties' agreement and the Court's independent review, Juror Number 6 will be stricken for cause.  I do agree that it would be not feasible for him to find an adequate substitute given the niche

subject he teaches, and I don't think it would be fair to subject those students to some sort of problem with their graduation.

Okay.  All right.  Next proposal.

MR. BROWNE:  From for the government, Your Honor?

THE COURT:  Yes.

MR. BROWNE:  Prospective Juror Number 11.

THE COURT:  Okay.  Please state your rationale.

MR. BROWNE:  First, based on the previously identified remarks in the juror questionnaire.  Specifically, he called the system corrupt, hypocritical, in response to question number 23.  In addition, Juror Number 11 also indicated that he would have financial hardship as a sole provider, and based on the nature of his business.  So for both those reasons, Your Honor, we think he should be cause.

THE COURT:  Okay.  Mr. Routh, any objection to for cause as to Juror 11?

MR. ROUTH:  No objection.

THE COURT:  Okay.  Juror 11 will be stricken for cause based both on his answer to question 23, where he doesn't believe in a fair trial, and also based on the financial hardship he indicated, and his lack of assurance that he would receive payment if chosen to serve on the jury.

Okay.  Mr. Routh -- excuse me -- Mr. Browne, please continue.

MR. BROWNE:  Prospective Juror Number 17.  He is one of three warehouse employees, Your Honor.  He indicated that his spouse is unemployed.  But he is the only employee at that warehouse who can drive a forklift, which I imagine is a pretty important task if you're running a warehouse.  So based on his own representations on the hardship to him and his business, we would ask that Prospective Juror 17 be excused.

THE COURT:  Okay.  Thank you.

Mr. Routh, do you agree with the for-cause strike as to 17?

MR. ROUTH:  I have no objections.

THE COURT:  All right.  Fair enough.

There is no objection from the defense.  And I agree that the financial hardship is sufficiently presented.  So Juror 17 will be stricken for cause.

So far we have stricken Jurors 2, 6, 11, and 17.

Next proposal?

MR. BROWNE:  Prospective Juror Number 22, Your Honor.

THE COURT:  You can go ahead and just give me a reason.

MR. BROWNE:  He indicates on number 22 in the questionnaire that he understands the defendant's actions, which, number 1, suggests he is familiar with the subject matter of the case, and further, is a problematic statement that certainly indicate bias, at a minimum.  Furthermore, this prospective juror also indicated that his 5- and 6-year-old

children and two pre-booked flights for work all create a hardship for him.  As a result, we think 22 should be excused for cause.

THE COURT:  Okay.  Mr. Routh, what is your position on Juror 22?

MR. ROUTH:  No objection.

THE COURT:  Okay.  Juror 22 will be stricken for cause for the reasons stated by the United States.  I note the work hardship with the flights and the caregiving duties as an additional reason, on top of the statements in the questionnaire.

Okay.  So Juror 22 will be stricken for cause.

Next proposal, Mr. Browne?

MR. BROWNE:  Prospective Juror Number 24, Your Honor, who indicated that her hardship is derived from her special-needs child.  She is apparently the only person who can drop that child off at school, and it certainly appears that this is her primary concern in her life and that she would not be able to focus as a result.

THE COURT:  Okay.  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Okay.  Juror 24 will be stricken for cause, given the hardship issues with her child.

All right.  Next proposal, Mr. Browne?

MR. BROWNE:  Yes, Your Honor.  Prospective Juror

Number 25 is in the middle of a divorce proceeding.  She indicated that she has to change her living situation, and that she appeared to me, at least, Your Honor, to be entirely focused on that.  And as a result, we would ask that she be excused for cause.

THE COURT:  Okay.  Mr. Routh, what's your position?

MR. ROUTH:  No objection.

THE COURT:  Okay.  Juror 25 will be stricken for cause.  She did, I think, quite clearly say she would not be able to focus on this trial, given the difficult divorce issues she's experiencing and the move that she has to plan and coordinate.

Okay.  All right.  Next proposal, Mr. Browne?

MR. BROWNE:  Prospective Juror 29 appears to be a sole proprietor.  Indicated that there would be a significant impact on his business.  And also from our perspective, he also indicated in his response to juror question number 22 that he could not be fair in this case, apparently based on something he knows about the defendant.  For all those reasons, we would ask for Prospective Juror 29 to be excused for cause.

THE COURT:  Would your for-cause challenge stand alone regardless of any such statements, or do you believe a private conference is necessary?

MR. BROWNE:  I believe that consistent with other sole proprietors, Your Honor, who we have asked to excuse for cause, we think that the self-proclaimed hardship at issue would

justify the cause in this case.

THE COURT: Okay. He did mention also some elderly parents with unexpected issues from their cancer treatment, along with a trip that he said was less important.

But let me ask Mr. Routh. What's your view on Juror 29?

MR. ROUTH: No objection.

THE COURT: Okay. So you have no objection to a for-cause strike as to Juror 29?

MR. ROUTH: No objection.

THE COURT: Okay. Juror 29 will be stricken for cause.

Okay. Mr. Browne.

MR. BROWNE: Prospective Juror 30, Your Honor. This is the prospective juror who indicated that he only gets paid by commission, and if he is not working, he does not get paid. He works in the pest control area, he said, and certainly suggested the financial ramifications for him.

THE COURT: Okay. Mr. Routh, any objection to striking for cause Juror 30?

MR. ROUTH: No objection, Your Honor.

THE COURT: Okay. Juror 30 will be stricken for cause based on the financial hardship presented.

Next.

MR. BROWNE: Your Honor, Prospective Juror 31, based entirely on the fact that he appeared to be sleeping during the

time where Your Honor was reading off the witnesses' names.  It wasn't a one-time occurrence.  And I conferred with both my co-counsel about it, and they both seem to -- they thought the same, that he was asleep and he was dozing off at various points during the Court's preliminary questioning.  So we don't think he is capable of paying attention in this case for three and a half weeks.

THE COURT:  Okay.  Let me -- Mr. Routh, I don't know -- were you able to see Juror 31 sleeping?

MR. ROUTH:  I was not paying attention to that, no.

THE COURT:  I didn't see it either.  So I think on this one, I'm going to deny the request, and we can take this up tomorrow with Juror 31.

Okay.  Next proposal, Mr. Browne?

MR. BROWNE:  Prospective Juror 33.  That's based on this prospective juror's responses to questions in the jury questionnaire, where she talks about the President and opines that felons should have their voting rights restored.  Also point the Court to her response to juror question 28, when asked a serious question of "Where do you get your news?" she indicates, "Television or my sugar mama."  We don't think this juror is taking this particularly seriously, Your Honor.  We ask that she be excused for cause as a result.

THE COURT:  Okay.  Mr. Routh, what's your position for Juror 33?

MR. ROUTH:  Well, I would obviously like to keep this juror.  So I don't know.

THE COURT:  Well, this is your time to tell me what your views are.  So you don't need to yield to anybody other than what you think is right.  So what's your position on Juror 33?

MR. ROUTH:  Well, you know, I just appreciate her thinking, and then -- in all of the questions.  So, I mean, you know, restoring -- you know, felons' rights being restored, you know, I can certainly relate with that.  So, you know, I certainly would appreciate keeping this juror.

THE COURT:  Okay.  I think this one merits some additional discussion tomorrow.  So we will keep her in the mix, but there is at least a preliminary basis, I think, to strike her for cause.  We will have to see where this inquiry goes.

Next proposal?

MR. BROWNE:  Prospective Juror 34, Your Honor, who pre-enrolled and prepaid for a massage therapy course, indicated that serving on this jury would make the prospective juror miss up to a third of his classes.

THE COURT:  Okay.  Mr. Routh, any objection to for cause as to Juror 34?

MR. ROUTH:  Again, he would be a great juror, but no objection.

THE COURT:  Okay.  Hearing no objection to 34, and based on the reasons provided, along with my own review, I will agree that Juror 34 shall be stricken for cause.  He indicated that he had spent a good amount of money on this program, and he would lose a quarter to a third of it.  I think that presents a sufficient hardship.

Okay.  Next proposal, Mr. Browne?

MR. BROWNE:  Prospective Juror 35.  Prospective Juror 35 indicated that this was a financial hardship.  If he were to serve, he would miss out on this apparently critical four-day contract in Sarasota.  He indicated, also, that he did not know of that business opportunity when he signed up for jury service, and he seemed very concerned about the impact it would have on his business.

THE COURT:  Okay.  Mr. Routh, any objection to for cause as to 35?

MR. ROUTH:  No objection, Your Honor.

THE COURT:  Okay.  Juror 35 will be stricken for cause. He was very focused on that project which has come about, and he can't -- he can't lose that job.

Okay.  Next proposal, Mr. Browne?

MR. BROWNE:  Prospective Juror 37 has her medical appointment in Pennsylvania.  She indicated it was a hardship. She seemed willing to serve, Your Honor, but under the circumstances, we think she should be excused for cause, given

the seriousness of, I guess, her impending surgery.

THE COURT: All right. Mr. Routh, what's your position on Juror 37?

MR. ROUTH: No objection.

THE COURT: Okay. Juror 37 will be stricken for cause. I do appreciate her willingness to serve, but given her medical needs and the hardship, it would cause her to have to reschedule that appointment out of state, I do believe a for-cause showing has been made.

Okay. Next proposal.

MR. BROWNE: Prospective Juror 38.

THE COURT: All right. This individual indicated various, I think, blood pressure issues with numerous ongoing appointments, and he was clearly concerned about that, and indicated he doesn't handle stress and that he didn't want to be here.

Mr. Routh, what's your position on Juror 38?

MR. ROUTH: No objection.

THE COURT: Okay. Juror 38 will be stricken for cause.

Next, Mr. Browne.

MR. BROWNE: Prospective Juror 41, financial hardship, sole proprietor, consistent with the Court's rulings on other sole proprietors who declared that they would suffer a loss of business as a result of serving, we would ask that 41 be excused for cause. He was the electrical contractor and owner

of his company.

THE COURT:  Okay.  Any objection, Mr. Routh?

MR. ROUTH:  Again, he would be an excellent juror, but no -- no problem.

THE COURT:  All right.  I think this is the individual who wrote like "one day at a time" in his questionnaire.  Is that right, Mr. Browne?

MR. BROWNE:  Your Honor, I would have to look.  I apologize.

MR. ROUTH:  He is the electrician.

MR. BROWNE:  Yes, in response to the juror question about hardship and which arrangements, if any, could be made.

THE COURT:  Okay.  All right.  Based on his answers in the questionnaire, supplemented in the colloquy, I will -- I will agree to the for-cause challenge as to Juror 41 which is unopposed.

Next, Mr. Browne.

MR. BROWNE:  Prospective Juror 43 who indicated that she is the only person at her infrared scanning business which screens cancer patients or prospective cancer patients.  She indicated she is the only person and the sole proprietor of that business.  We think that poses a financial hardship.

THE COURT:  She did, though, then say that she could do it, and it was September, wasn't as busy as October, and she sort of came around during the questioning to being more

willing to serve.

Do you have any thoughts on that?

MR. BROWNE:  No.  I would agree that that's the way she answered, but I believe she herself identified the hardship on the questionnaire.

THE COURT:  Okay.  Mr. Routh, what's your position for Juror 43?

MR. ROUTH:  I think she should be excused.  Her husband is in a lawsuit.  And, you know, legal issues.  So just I think excusing her would be the right thing to do.

THE COURT:  All right.  But let's set aside the husband and legal issues for a minute.  Can you give me any reason why you think she should be stricken for cause?

MR. ROUTH:  Well, I mean, just for work.  I mean, so, I mean, so like she explained.  She...

THE COURT:  Okay.  I'm going to deny this request for now.  It seemed like she would be able to serve and make arrangements.  I think she just repeatedly said she could do it.  And I think I'm not prepared at this point for Juror 43 to conclude she's unable to perform her duties as a juror.  But if this issue comes back tomorrow, I will make a note to inquire on her work commitments again.

So for now, 43 will stay in.

MR. ROUTH:  Yes, she is sole provider -- I mean, a sole proprietor, so, you know, she works for herself, so...

THE COURT:  Okay.  All right.  Thank you, Mr. Routh. We will discuss that tomorrow.  For now, Juror 43 is still in the mix.

Any other proposed for-cause challenges?

MR. BROWNE:  Prospective Juror 51.  This was a situation that we raised previously.  It appears to be multiple undisclosed arrests, despite a representation on the juror questionnaire that the prospective juror had pled guilty to one felony with adjudication withheld.

THE COURT:  Okay.  What's your position, Mr. Routh, on Juror 51?

MR. ROUTH:  No objection.

THE COURT:  Okay.  So you're okay with the for-cause strike as to Juror 51?

MR. ROUTH:  Sure.

THE COURT:  Okay.  Juror 51 will be stricken for cause based on the undisclosed information as represented by government counsel.

Let's continue.

MR. BROWNE:  Prospective Juror 54, Your Honor.

THE COURT:  All right.  This is the mother who is home-schooling her son.

Mr. Routh, do you have any thoughts on this juror?

MR. ROUTH:  Yeah, I think she should be stricken. You know, she says that, you know, things are not fair and so

forth and so on.  So, yeah, she should be excluded.

THE COURT:  All right.  Based on her hardship with the educational component that she described and again confirmed in open court, I will strike Juror 54 for cause.

Next, Mr. Browne.

MR. BROWNE:  Prospective Juror 55 indicated in response to the Court's question if he would be consumed by financial pressure, he indicated affirmatively and said he is already under pretty heavy stress as a result of his financial situation.  So --

THE COURT:  And he was a commission-only employee; correct?

MR. BROWNE:  That's my recollection.

THE COURT:  Okay.  Mr. Routh, what's your position on Juror 55?

MR. ROUTH:  Yeah, I would say it's a strike because he said plainly that he does not believe in the justice system.

THE COURT:  Okay.  All right.  Well, that very well might be an additional reason, but I think there is sufficient basis on his financial hardship to warrant a for-cause strike as to Juror 55.  So 55 will be stricken for cause.

Okay.  Mr. Browne.

MR. BROWNE:  Prospective Juror 58, who answered in response to question 23, quote, "no faith in our U.S. DOJ," end quote, indicating that he would be prevented from following the

Court's instructions on the law.

This prospective juror also indicated that because of his heart condition and blood pressure situation, that he was worried that he would faint, I think, during the time he was answering the Court's questions.  He seemed preoccupied with that, Your Honor.

THE COURT:  Yes.  I do recall the fainting comment, which was concerning all by itself.

Just taking another look here at the questionnaire. Okay.  Also, given his answer to question 23, indicates an inability to follow the Court's instructions.

I can't recall if I asked you, Mr. Routh, do you agree that we should strike for cause Juror 58?

MR. ROUTH:  Sure, we can strike.

THE COURT:  Okay.  Then Juror 58 will be stricken for cause without objection.

Mr. Browne.

MR. BROWNE:  Prospective Juror 59, again, Your Honor, indicated in response to -- this is not a 25-page questionnaire.  It's ten pages, and the answers are very straightforward.  And he said that he would take into consideration a witness's race and background when considering that witness's credibility.  Whether or not that was an error, I don't think we can speculate.

Again, given the amount of time these prospective

jurors had with this questionnaire, and the relative straightforwardness of the questions, I would also note that in response to question 13, this juror indicated that he has dyslexia.  This case has a large number of text message communications and other writings that the jurors will have to consider on very small screens, so I think for those reasons combined, Your Honor, we would ask that that juror, number 59, be excused for cause.

THE COURT:  What's your position, Mr. Routh?

MR. ROUTH:  I would say you can strike.  I mean, this is the gentleman that was in school and obviously struggling.  So I would hate to set back his education.

THE COURT:  Okay.  He did say he felt his grades would suffer.  I have some doubts that he would be able to follow along with the various exhibits, given the nature of the questionnaire, and I'm also concerned about question 24 with his affirmative answer to the religion, race, color, sex, or ethnic background of a witness question.

So for all of those reasons, Juror 59 will be stricken for cause.

Okay.  Mr. Browne.

MR. BROWNE:  Our last cause challenge with this round, Your Honor, Prospective Juror Number 60, who works in schools with autistic children, indicated that he is the only person who works in that capacity with certain children, at least one

of them.  He says -- he said at different times during the colloquy that the company itself is stretched thin, and we think that that would cause a hardship to his employer if he was selected, Your Honor.

THE COURT:  Okay.  All right.  Mr. Routh, what's your position on Juror 60?

MR. ROUTH:  Yeah, it's a very honorable profession, so I certainly wouldn't oppose to any of that.  So, yeah, he should continue his work.

THE COURT:  Okay.  So, to be clear, you don't object to a for-cause as to Juror 60.

MR. ROUTH:  No objection.

THE COURT:  Okay.  And then 60 will be stricken for cause.

Okay.  I'm going to just read out loud now the names of the folks who have been stricken for cause.  Please check your lists so you can correct me if I am incorrect.

The following jurors have been stricken for cause thus far.  Juror 2, 6, 11, 17, 22, 24, 25, 29, 30, 34, 35, 37, 38, 41, 51, 54, 55, 58, 59, 60, and then 57 was sick today and couldn't stick around.

Is that consistent with your list, Mr. Browne?

MR. BROWNE:  Yes, Your Honor.

THE COURT:  Okay.  Mr. Routh, is that consistent with your list?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  Are there any other issues that we need to discuss about this Group 1 component before we take a brief break to advise the jury section of the stricken jurors?

MR. BROWNE:  Not from the government, Your Honor.

THE COURT:  Mr. Routh.

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  All right.  Then what we're going to do is we're going to call back the entire group, and I'm going to in open court list out the names of the folks who no longer need to present themselves tomorrow and then give additional instructions to the people about returning for the second phase.

Anything further at this point, Mr. Browne?

MR. BROWNE:  Your Honor, just one brief thing.  Some judges tell the jurors at this stage that the parties, to the extent they see us around the courthouse, are under instructions not to speak to them, not to do polite things like hold the door or say "good morning."  I don't know if that's Your Honor's practice, but --

THE COURT:  I do do that.  I just didn't say that now because there hadn't yet been that occasion, but that is part of my standard -- standard commentary.  So I will make sure to include that.  Thank you for the reminder, though.

Okay.  Mr. Routh, do you have anything you wish to

share with the Court?

MR. ROUTH:   No, Your Honor.

THE COURT:   Okay.  All right, then.  We're in a brief break.  It's 4:22.  Please come back to the courtroom at approximately 4:35.  It will take a little bit of time to assemble all the jurors again.  Thank you.

(A recess was taken from 4:20 p.m. to 4:29 p.m.)

(Group 1 venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT:   Thank you.  Please all have a seat. Everybody is here.

All right.  I thank you for your continued patience, ladies and gentlemen.

What we're going to do now is I'm going to read out the list of individuals who will be excused from jury service at this time.  Everybody else will be required to return tomorrow. And I will give you some additional instructions about that.

So please listen carefully to the following juror numbers.  These individuals are excused from jury service in this case.

Juror 2, Juror 6, Juror 11, Juror 17, Juror 22, Juror 24, Juror 25, Juror 29, Juror 30, Juror 34, Juror 35, Juror 37, Juror 38, Juror 41, Juror 51, Juror 54, Juror 55, Juror 58, Juror 59, and Juror 60.

All of you, as I said, are excused from jury service.

But you should still report to the jury assembly room after today's hearing to receive any final instructions from the staff downstairs.

For everybody whose name I did not call, you are directed to return to the courthouse tomorrow, promptly, at 2:00 p.m. for continued jury selection.

Please listen carefully to the warnings I'm going to issue now.  These are going to look a lot like and sound a lot like the warnings I provided earlier about not conducting any investigation about the case or discussing it in any way.

Ladies and gentlemen, you are reminded not to discuss this case with anyone or to permit anyone to discuss it with you.  Also, remember that you are not to read or listen to anything touching on this case in any way.  If anybody should try to talk to you about it, please bring it to my attention promptly.  Again, you aren't allowed to talk about this case at all or to conduct any investigation whatsoever.

Keep in mind that you must not do any research or make any investigation about the case on your own.  Again, the only evidence will be the evidence that is presented in the official proceedings in the courtroom.  And so we want to be very certain not to permit any other material to influence the prospective jurors.

Also remember that you must not have any contact with the attorneys, parties, or witnesses in the case; if you happen

to come across them or see them in the hallways or by the restroom or really anywhere else.  They're not being rude, they're simply directed not to have any contact with you, and that includes simple pleasantries like opening the door and those sorts of things.  So please make sure that you avoid all contact with them.  They're not allowed to talk to you, and you are not permitted to talk to them.

So with those warnings, I'm going to wish you all a pleasant evening.  For those who have not been asked to return tomorrow, thank you for your service today.  For those who will be returning tomorrow, have a pleasant evening.  Please maintain adherence to the Court's instructions.  And we will now rise for the jurors.

One last housekeeping issue.  Please make sure you leave those paddles out where they are now.  We want to make sure we don't misplace them.  So please leave them there, and we will now rise for the jury.

All right.  You can start exiting.  Thank you, all.

(The venire exited the courtroom.)

THE COURT:  Please have a seat.

Okay.  Just as a reminder, we're going to be conducting preliminary jury selection like we did today but with Groups 2 and 3, starting with Group 2 at 8:30, and then scheduled to do the preliminary jury instruction with Group 3 at 11:00.

All of the questionnaires have been supplied to the

parties.  I imagine everybody needs a bit more time to review the additional questionnaires for Groups 2 and 3.

So, Mr. Routh, I'm going to direct the marshals to give you that additional time tonight.  So you will be permitted to stay in the courthouse for an extended time until 6:00 or 6:15, and then we will retrieve those questionnaires before you leave.  And then tomorrow, you'll be here approximately one hour before the start of proceedings so that you can finish up any additional review.

So, with that, are there any other issues we should address at this time, Mr. Browne or Mr. Shipley?

MR. SHIPLEY:  No, Your Honor, thank you.

THE COURT:  Okay.  Mr. Routh.

MR. ROUTH:  The government was able to lay out their cause challenges in that first group, but I -- I was not.  So I don't have any hardship challenges, but just -- just seven, seven cause challenges to share at some point in time.

THE COURT:  Okay.  So save those for tomorrow and raise those, but don't forget to bring those up, and then we will cover those to see if any of those should be stricken for cause as well.

Just so my understanding is clear and I can prepare, what numbers do you have on your list for for cause?

MR. ROUTH:  4 -- 4, 5, 8, 9, 16, 21, and 56.  Do you want me to call it out again?

THE COURT: Yes, please.

MR. ROUTH: Number 4, Number 5, Number 8, Number 9, 16, 21, and 56.

THE COURT: Okay. All right. So we will take those up tomorrow, and I will give you a chance to raise your arguments at that point.

All right. Mr. Routh, you did mention something earlier today about a sleep issue. This is similar to some comments you have made in the past. I wanted to give you a chance to make whatever argument you feel is necessary, and I will do my best to address it.

MR. ROUTH: Yes. You had mentioned in your response to the problem, that I didn't offer a solution. So I was just offering the solution of moving me to general population at the -- at the local jail, so that, you know, I could be moved away from all of the activity where it would be quieter. That's what Milo Thornton said would be quieter, would be to move me to general population -- would be so I could be able to sleep. So him and Captain Lyons said that was probably the best option.

THE COURT: Okay. All right.

MR. ROUTH: If not, if I can go to Miami on the weekends so at least I can sleep on a Saturday and Sunday. So I don't know.

THE COURT: All right. Well, sir, you are given

expanded discovery access in this case, and that requires you to be in an isolation cell, which, my understanding is, is in fact, much quieter than general population.  And so for those reasons, as far as any judicial requests you're making of me, I'm not going to make any recommendations.

Ultimately, of course, those decisions are up to the officials managing those institutions.  But I did want to note for the record that your current location gives you much more expanded discovery access than you otherwise would be receiving.  So that would conclude my remarks on that point.

Are there any other issues you wish to present before we close for the day, Mr. Routh?

MR. ROUTH:  Well, I would -- I would forego the discovery of -- you know, of the ability to use the computer for ten minutes a week.  You know, I would forego that to be able to sleep.  So I do not -- not need the computer.

THE COURT:  Okay.  All right.  Well, that's all I will say about that for now.  If you continue to have issues, you may raise them at a future time.

Anything else from the United States?

MR. SHIPLEY:  No, Your Honor.  Thank you.

THE COURT:  Anything else from the standby attorneys?

MS. MILITELLO:  Your Honor, just to clarify, may we keep the copies of the questionnaires to review this evening?

THE COURT:  Yes, you may.

MS. MILITELLO:  Thank you.

THE COURT:  All right.  Obviously, none of those questionnaires should be disseminated, nor should any of the content be disseminated under the Court's prior order.  So thank you.  Have a pleasant evening.  We will resume tomorrow promptly at 8:30.  Thank you.

(These proceedings concluded at 4:50 p.m.)

C E R T I F I C A T E


I hereby certify that the foregoing is an accurate

transcription of the proceedings in the above-entitled matter.


DATE:   09-08-2025          /s/Laura Melton
                            LAURA E. MELTON, RMR, CRR, FPR
                            Official Court Reporter
                            United States District Court
                            Southern District of Florida
                            Fort Pierce, Florida

| $ | 2 | 30 | 5 |
|---|---|---|---|

**$50** [3]_ - 53:14_, 56:20_, 64:14

### 1

**1** [16]_ - 4:3_, 13:12_, 19:20 _, 19:22_, 21:24_, 27:11_, 35:9_, 35:23_, 35:24_, 39:11_, 49:8_, 80:5_, 84:22_, 99:3_, 100:8
**10** [2]_ - 6:10_, 16:21
**100** [1]_ - 77:22
**10:00** [1]_ - 3:9
**11** [11]_ - 6:15_, 14:17_, 39:6_, 45:14_, 83:7_, 83:12_, 83:17_, 83:19_, 84:16_, 98:19_, 100:21
**11:00** [2]_ - 19:13_, 102:24
**12** [1]_ - 6:10
**12:00** [1]_ - 3:9
**12th** [2]_ - 55:14_, 56:12
**13** [3]_ - 19:1_, 52:23_, 97:3
**13th** [3]_ - 55:16_, 55:19_, 55:20
**14** [3]_ - 39:6_, 46:24_, 47:14
**14th** [1]_ - 55:11
**15** [1]_ - 44:19
**15th** [6]_ - 35:12_, 35:19_, 36:1_, 36:11_, 36:20_, 56:13
**16** [8]_ - 16:20_, 16:24_, 17:22_, 17:25_, 18:7_, 18:10_, 103:24_, 104:2
**17** [11]_ - 15:14_, 39:6_, 47:15_, 48:20_, 84:1_, 84:7_, 84:10_, 84:15_, 84:16_, 98:19_, 100:21
**17(b** [3]_ - 8:6_, 9:10_, 21:2
**18** [2]_ - 16:16_, 17:9
**196** [2]_ - 3:8_, 4:2
**1:30** [1]_ - 12:14
**1:34** [1]_ - 13:6
**1:45** [1]_ - 19:14
**1:48** [1]_ - 21:23
**1st** [1]_ - 38:17

**2** [14]_ - 27:19_, 39:6_, 39:18_, 42:3_, 81:5_, 81:19_, 81:25_, 82:2_, 84:16_, 98:19_, 100:21_, 102:22_, 102:23_, 103:2
**2-year-old** [1]_ - 42:8
**2024** [5]_ - 35:12_, 35:19_, 36:1_, 36:11_, 36:21
**20th** [1]_ - 52:13
**21** [2]_ - 103:24_, 104:3
**22** [19]_ - 15:3_, 15:4_, 15:15_, 15:20_, 15:23_, 17:25_, 18:2_, 18:12_, 39:6_, 48:22_, 84:18_, 84:20_, 85:2_, 85:5_, 85:7 _, 85:12_, 86:16_, 98:19_, 100:21
**22's** [1]_ - 15:13
**22nd** [1]_ - 49:7
**23** [6]_ - 14:18_, 18:16_, 83:12_, 83:20_, 95:24_, 96:10
**24** [8]_ - 18:21_, 39:6_, 50:7_, 85:14_, 85:22_, 97:16_, 98:19_, 100:22
**24-80116** [1]_ - 22:9
**24-cr-80116-Cannon** [1]_ - 2:5
**24th** [4]_ - 10:12_, 10:13_, 10:15_, 10:24
**25** [7]_ - 39:6_, 51:10_, 51:25_, 86:1_, 86:8_, 98:19_, 100:22
**25-page** [1]_ - 96:19
**28** [2]_ - 19:8_, 88:19
**29** [11]_ - 15:17_, 39:7_, 52:1_, 53:5_, 86:13_, 86:19_, 87:6_, 87:9_, 87:11_, 98:19_, 100:22
**2:00** [8]_ - 4:4_, 13:10_, 20:5_, 21:21_, 32:12_, 66:10_, 101:6
**2:06** [1]_ - 21:23
**2:30** [2]_ - 49:19_, 50:1
**2nd** [1]_ - 39:25

### 3

**3** [6]_ - 35:25_, 39:6_, 42:4 _, 102:23_, 102:24_, 103:2

**30** [10]_ - 14:6_, 39:7_, 53:8 _, 54:6_, 87:13_, 87:19_, 87:21_, 98:19_, 100:22
**31** [3]_ - 87:24_, 88:9_, 88:13
**33** [5]_ - 15:22_, 16:5_, 88:15_, 88:25_, 89:6
**34** [8]_ - 39:8_, 54:7_, 89:18_, 89:23_, 90:1_, 90:3_, 98:19_, 100:22
**35** [12]_ - 16:4_, 16:11_, 17:12_, 17:18_, 39:8_, 55:3_, 90:8_, 90:9_, 90:16 _, 90:18_, 98:19_, 100:22
**37** [8]_ - 16:18_, 39:8_, 56:9_, 90:22_, 91:3_, 91:5 _, 98:19_, 100:23
**37's** [1]_ - 16:21
**38** [7]_ - 39:8_, 57:16_, 91:11_, 91:17_, 91:19_, 98:19_, 100:23
**3:35** [1]_ - 80:9
**3:37** [1]_ - 80:3
**3:50** [2]_ - 80:4_, 80:8
**3:51** [1]_ - 80:9

### 4

**4** [7]_ - 19:20_, 36:9_, 39:6 _, 43:13_, 103:24_, 104:2
**40-ish** [1]_ - 47:2
**41** [7]_ - 39:8_, 58:19_, 91:21_, 91:24_, 92:15_, 98:20_, 100:23
**42** [2]_ - 39:8_, 59:12
**43** [8]_ - 16:23_, 39:8_, 60:20_, 92:18_, 93:7_, 93:19_, 93:23_, 94:2
**44** [4]_ - 17:3_, 39:8_, 61:20_, 62:14
**46** [2]_ - 39:8_, 62:15
**48** [3]_ - 39:8_, 63:5_, 63:18
**4:00** [1]_ - 41:8
**4:20** [1]_ - 100:7
**4:22** [1]_ - 100:4
**4:29** [1]_ - 100:7
**4:35** [1]_ - 100:5
**4:50** [1]_ - 106:7
**4th** [1]_ - 51:15

**5** [6]_ - 19:20_, 36:17_, 40:15_, 84:25_, 103:24_, 104:2
**5-year-old** [1]_ - 49:2
**50-mile** [1]_ - 65:4
**51** [7]_ - 17:7_, 94:5_, 94:11_, 94:14_, 94:16_, 98:20_, 100:23
**54** [7]_ - 17:20_, 39:9_, 63:19_, 94:20_, 95:4_, 98:20_, 100:23
**55** [10]_ - 17:24_, 39:9_, 64:6_, 64:23_, 95:6_, 95:15_, 95:21_, 98:20_, 100:23
**56** [2]_ - 103:24_, 104:3
**57** [2]_ - 39:11_, 98:20
**58** [8]_ - 18:15_, 39:9_, 64:24_, 95:23_, 96:13_, 96:15_, 98:20_, 100:24
**59** [9]_ - 18:20_, 18:21_, 39:9_, 65:10_, 96:18_, 97:7_, 97:19_, 98:20_, 100:24
**5:30** [6]_ - 38:18_, 41:21_, 47:2_, 49:4_, 49:20_, 49:23

### 6

**6** [12]_ - 39:6_, 44:14_, 45:13_, 49:1_, 82:7_, 82:10_, 82:16_, 82:20_, 82:23_, 84:16_, 98:19_, 100:21
**6-year-old** [1]_ - 84:25
**60** [10]_ - 4:3_, 39:9_, 65:25 _, 67:1_, 97:23_, 98:6_, 98:11_, 98:13_, 98:20_, 100:24
**61** [1]_ - 39:11
**6:00** [2]_ - 42:15_, 103:5
**6:15** [1]_ - 103:5

### 7

**70** [1]_ - 60:7
**7:00** [3]_ - 42:9_, 50:16_, 50:20
**7:30** [1]_ - 49:18

## 8

8 [2] - 103:24, 104:2
8:00 [4] - 3:9, 49:3, 49:23, 66:10
8:30 [4] - 50:24, 51:1, 102:23, 106:6

## 9

9 [2] - 103:24, 104:2
96-year-old [1] - 52:7
9:00 [4] - 38:18, 41:21, 50:18, 50:22
9:03 [1] - 13:6

## A

a.m [4] - 13:6, 19:13, 49:23, 50:16
Aaron [1] - 71:19
ability [3] - 51:21, 76:16, 105:14
able [21] - 7:25, 10:13, 12:25, 41:16, 44:8, 44:21, 47:5, 47:20, 50:18, 56:18, 62:10, 76:8, 81:16, 85:19, 86:9, 88:9, 93:17, 97:14, 103:14, 104:18, 105:16
absence [1] - 81:13
absolute [1] - 26:9
absolutely [1] - 6:20
abundance [1] - 21:4
AC [1] - 63:10
academic [1] - 82:13
accept [1] - 78:6
acceptable [1] - 77:25
accepting [4] - 73:22, 74:18, 74:25, 75:17
access [2] - 105:1, 105:9
accommodate [2] - 10:18, 34:7
accommodations [1] - 60:9
accomplish [1] - 41:19
accomplished [2] - 40:4, 41:7
account [1] - 36:6

accounted [2] - 54:2, 54:3
accusation [3] - 28:2, 34:24, 72:11
accusatory [2] - 37:4, 73:8
accused [1] - 34:21
accuser [1] - 74:1
achieve [1] - 26:4
act [1] - 74:15
acting [1] - 31:9
actions [1] - 84:21
active [1] - 75:3
actively [1] - 81:11
activity [2] - 79:8, 104:16
actual [1] - 40:9
Adam [1] - 69:13
add [3] - 25:1, 27:1, 48:12
addition [1] - 83:12
additional [22] - 7:13, 9:18, 12:9, 16:20, 21:1, 21:3, 24:15, 32:12, 38:20, 38:21, 40:23, 67:6, 67:7, 67:10, 85:10, 89:13, 95:19, 99:11, 100:17, 103:2, 103:4, 103:9
additionally [1] - 26:14
address [8] - 12:14, 13:5, 13:24, 20:18, 25:7, 29:19, 103:11, 104:11
addressed [2] - 2:13, 13:9
addressing [4] - 22:24, 24:15, 24:24, 25:5
adequate [1] - 82:25
adherence [1] - 102:12
adjudication [1] - 94:9
admitted [1] - 55:11
advance [3] - 23:14, 33:24, 40:1
advanced [1] - 45:3
adversely [1] - 27:22
advise [2] - 30:24, 99:4
affairs [2] - 34:2, 74:16
affect [3] - 31:5, 65:21, 65:22
affecting [1] - 36:14

affirm [1] - 22:14
affirmatively [2] - 14:9, 95:8
aftercare [1] - 51:4
afternoon [27] - 13:15, 22:1, 22:10, 30:4, 30:8, 30:9, 30:12, 38:20, 48:24, 48:25, 50:9, 51:11, 51:12, 53:9, 53:10, 54:8, 54:9, 57:19, 58:20, 58:21, 62:16, 62:17, 63:21, 64:7, 64:8, 65:1, 73:5
age [1] - 79:3
Agent [17] - 36:5, 68:11, 68:13, 68:21, 68:23, 69:3, 69:11, 69:13, 69:20, 69:21, 69:23, 69:24, 70:5, 70:15, 70:16, 70:22, 70:23
agent [5] - 36:5, 71:6, 71:12, 71:13, 71:20
ages [1] - 40:15
ago [3] - 37:10, 56:2, 77:20
agree [10] - 78:7, 81:20, 82:4, 82:24, 84:9, 84:13, 90:3, 92:15, 93:3, 96:12
agreement [2] - 25:1, 82:23
ahead [1] - 84:19
Aileen [1] - 22:5
Air [2] - 63:11, 63:12
Alcohol [2] - 70:6, 71:24
alerted [1] - 67:4
Alexander [1] - 71:25
alleged [3] - 35:6, 36:3, 36:20
allegedly [1] - 36:9
alleges [5] - 35:9, 35:11, 35:17, 35:25, 72:18
alleviate [1] - 60:9
alliance [1] - 40:12
Alliance [1] - 40:13
allow [3] - 4:11, 29:3, 62:20
allowed [5] - 76:5, 77:16, 78:24, 101:16, 102:6
alluded [1] - 72:23
alone [1] - 86:20

altered [1] - 36:24
alternate [1] - 80:21
amenable [3] - 5:5, 5:19, 21:9
America [3] - 2:5, 10:8, 22:8
ammunition [1] - 36:13
amount [5] - 59:1, 60:2, 82:4, 90:4, 96:25
Analyst [1] - 68:20
animal [1] - 5:14
announced [1] - 62:10
anonymization [2] - 25:24, 27:22
answer [16] - 8:25, 14:18, 15:4, 15:15, 15:20, 16:6, 16:16, 22:15, 34:14, 43:16, 46:13, 54:1, 63:24, 83:20, 96:10, 97:17
answered [5] - 18:15, 18:20, 38:24, 93:4, 95:23
answering [2] - 75:6, 96:5
answers [7] - 17:25, 19:3, 24:7, 34:9, 34:16, 92:13, 96:20
anticipated [4] - 8:5, 28:21, 32:18, 38:12
anyway [1] - 76:2
AP [1] - 47:3
apologize [1] - 92:9
appearances [2] - 2:6, 2:24
appeared [2] - 86:3, 87:25
applying [1] - 75:17
appointed [2] - 31:1, 31:11
appointment [6] - 56:13, 56:17, 57:5, 57:9, 90:23, 91:8
appointments [6] - 57:21, 58:5, 58:11, 58:14, 62:21, 91:14
appreciate [3] - 89:7, 89:11, 91:6
apprehensive [1] - 23:18
appropriately [1] - 56:19
approval [1] - 25:1

**aqua** [1] - 45:3

**area** [4] - 42:16, 42:20, 49:4, 87:16

**areas** [3] - 25:19, 32:14, 32:18

**argument** [2] - 5:6, 104:10

**arguments** [2] - 20:4, 104:5

**arrangements** [8] - 10:14, 50:14, 53:24, 59:23, 62:11, 62:13, 92:12, 93:18

**arrested** [1] - 11:4

**arrests** [1] - 94:7

**arrival** [1] - 26:25

**arrive** [1] - 13:10

**arriving** [1] - 3:8

**aside** [1] - 93:11

**asleep** [1] - 88:4

**aspects** [1] - 25:18

**assassination** [1] - 35:10

**assault** [2] - 35:25, 36:4

**assemble** [1] - 100:6

**assembled** [1] - 22:4

**assembling** [1] - 20:19

**assembly** [3] - 78:14, 80:16, 101:1

**assigned** [1] - 66:12

**assist** [7] - 24:2, 31:12, 41:1, 42:21, 47:20, 49:5, 66:13

**assistance** [2] - 31:13, 31:15

**assistant** [3] - 30:5, 30:10, 30:13

**assisted** [1] - 52:10

**assisting** [1] - 23:25

**assists** [2] - 49:12, 49:13

**associate** [1] - 70:11

**associated** [2] - 27:20, 29:8

**associates** [1] - 47:21

**association** [3] - 70:2, 70:19, 71:3

**assume** [4] - 23:15, 54:23, 62:5, 64:1

**assuming** [1] - 16:8

**assurance** [1] - 83:22

**assure** [1] - 23:18

**atrial** [1] - 65:2

**attempt** [2] - 35:14, 44:23

**attempted** [1] - 35:10

**attend** [7] - 40:2, 41:16, 41:24, 44:8, 44:22, 45:20, 46:10

**attends** [1] - 47:1

**attention** [11] - 10:4, 26:3, 27:17, 41:12, 51:22, 68:7, 71:2, 81:16, 88:6, 88:10, 101:15

**attorney** [4] - 30:5, 30:11, 30:14, 30:16

**Attorney's** [1] - 3:15

**attorneys** [11] - 19:25, 30:21, 30:23, 31:11, 32:3, 34:10, 37:16, 37:17, 38:3, 101:25, 105:22

**attract** [1] - 26:2

**Atwill** [2] - 10:10, 71:25

**audibly** [1] - 24:9

**Austin** [1] - 70:8

**authorized** [4] - 8:6, 9:11, 20:25, 21:5

**autism** [1] - 66:2

**autistic** [1] - 97:24

**auto** [1] - 52:3

**availability** [1] - 4:7

**available** [2] - 24:21, 42:21

**availed** [1] - 32:5

**avoid** [1] - 102:5

**aware** [4] - 8:19, 9:16, 11:14, 26:13

**awareness** [1] - 61:7

---

### B

**background** [3] - 18:22, 96:22, 97:18

**bad** [1] - 64:13

**Bailey** [1] - 68:11

**Barrois** [1] - 68:12

**BARROIS** [1] - 68:12

**base** [2] - 6:19, 6:22

**based** [28] - 15:19, 16:19, 16:24, 17:8, 17:21, 17:24, 18:12, 33:3, 66:20, 74:11, 79:9, 79:15, 80:5, 81:12, 82:7, 83:9, 83:13, 83:20, 83:21, 84:5, 86:17, 87:22, 87:24, 88:15, 90:2, 92:13, 94:17, 95:2

**basic** [4] - 4:6, 31:13, 32:14, 32:18

**basis** [10] - 3:8, 3:11, 5:8, 19:22, 20:8, 20:9, 80:22, 82:14, 89:14, 95:20

**Beach** [16] - 35:12, 35:20, 36:2, 36:12, 36:21, 39:24, 49:3, 49:23, 62:19, 66:24, 68:14, 69:5, 69:12, 70:8, 70:17, 71:17

**bear** [3] - 33:17, 39:4, 77:1

**bearing** [2] - 5:25, 31:4

**bears** [3] - 72:14, 74:21, 75:13

**become** [1] - 52:24

**begin** [5] - 14:13, 22:23, 30:3, 80:20, 81:1

**beginning** [2] - 72:13, 79:13

**behalf** [1] - 22:25

**behavior** [1] - 66:2

**behind** [2] - 60:17, 63:8

**belief** [1] - 73:11

**believability** [1] - 77:2

**bench** [1] - 20:17

**beside** [1] - 6:11

**best** [7] - 6:9, 14:15, 15:7, 23:19, 34:7, 104:11, 104:20

**better** [1] - 11:10

**between** [3] - 21:12, 40:4, 45:5

**beyond** [8] - 28:4, 35:1, 72:15, 72:20, 74:3, 74:8, 74:14, 75:23

**bias** [1] - 84:24

**biases** [1] - 76:23

**bid** [1] - 46:10

**big** [2] - 25:25, 55:9

**bill** [1] - 53:14

**billing** [1] - 62:21

**Biologist** [2] - 69:6, 69:14

**biologist** [1] - 45:2

**biology** [1] - 65:14

**birth** [1] - 25:7

**bit** [10] - 4:10, 35:4, 41:9, 55:24, 63:4, 63:8, 66:6, 67:23, 100:5, 103:1

**Blanford** [2] - 29:15, 29:18

**blood** [6] - 57:18, 57:19, 65:2, 65:5, 91:13, 96:3

**board** [1] - 43:21

**booked** [2] - 49:9, 85:1

**bottom** [1] - 23:24

**brandished** [1] - 35:24

**break** [5] - 9:4, 38:19, 80:3, 99:4, 100:4

**breaks** [2] - 38:20, 38:21

**breast** [2] - 61:7, 61:13

**Brenden** [1] - 68:21

**brief** [6] - 3:3, 13:8, 32:7, 99:4, 99:15, 100:3

**briefly** [3] - 28:10, 29:24, 35:5

**bring** [5] - 10:3, 31:22, 80:4, 101:15, 103:19

**broader** [1] - 13:21

**Brooks** [1] - 68:13

**brought** [1] - 28:2

**Browne** [29] - 2:9, 13:13, 13:14, 14:13, 14:25, 15:1, 20:20, 30:10, 37:12, 81:4, 82:6, 83:24, 85:13, 85:24, 86:12, 87:12, 88:14, 90:7, 90:21, 91:20, 92:7, 92:17, 95:5, 95:22, 96:17, 97:21, 98:22, 99:14, 103:11

**BROWNE** [64] - 13:16, 14:14, 15:2, 15:7, 15:9, 15:12, 15:17, 15:22, 16:3, 16:10, 16:14, 16:18, 16:23, 17:2, 17:7, 17:11, 17:16, 17:18, 17:20, 17:24, 18:2, 18:7, 18:9, 18:15, 18:20, 20:21, 21:8, 21:20, 30:9, 81:5, 81:7

_, 82:7_, 83:5_, 83:7_, 83:9_, 84:1_, 84:18_, 84:20_, 85:14_, 85:25_, 86:13_, 86:23_, 87:13_, 87:24_, 88:15_, 89:18_, 90:8_, 90:22_, 91:11_, 91:21_, 92:8_, 92:11_, 92:18_, 93:3_, 94:5_, 94:20_, 95:6_, 95:13_, 95:23_, 96:18_, 97:22_, 98:23_, 99:5_, 99:15

**buildings** [1]_ - 28:24

**bunch** [1]_ - 5:4

**burden** [13]_ - 28:3_, 28:6 _, 35:1_, 72:14_, 72:24_, 73:25_, 74:2_, 74:4_, 74:7 _, 74:17_, 74:22_, 75:13_, 75:14

**Bureau** [17]_ - 68:11_, 68:13_, 68:15_, 68:20_, 68:22_, 69:4_, 69:6_, 69:11_, 69:13_, 69:15_, 69:20_, 69:23_, 70:5_, 70:7_, 70:14_, 70:15_, 71:24

**business** [21]_ - 37:15_, 37:25_, 38:8_, 45:20_, 46:1_, 46:3_, 46:16_, 58:22_, 59:2_, 59:8_, 59:14_, 59:18_, 83:14_, 84:6_, 86:15_, 90:12_, 90:14_, 91:24_, 92:19_, 92:22

**businesses** [4]_ - 61:22 _, 61:23_, 62:1_, 62:6

**busy** [3]_ - 52:24_, 61:6_, 92:24

### C

**canceled** [1]_ - 49:9

**cancer** [6]_ - 52:8_, 61:7_, 61:13_, 87:3_, 92:20

**candid** [1]_ - 34:15

**candidate** [3]_ - 17:4_, 35:10_, 35:15

**Cannon** [1]_ - 22:5

**cannot** [7]_ - 18:16_, 48:16_, 76:6_, 78:8_, 79:12_, 79:17_, 79:18

**capable** [1]_ - 88:6

**capacity** [1]_ - 97:25

**Captain** [1]_ - 104:19

**care** [2]_ - 51:4_, 57:18

**careers** [1]_ - 82:13

**carefully** [5]_ - 24:25_, 74:12_, 78:13, 100:18_, 101:7

**caregiver** [2]_ - 49:1_, 50:12

**caregiving** [1]_ - 85:9

**Carrea** [1]_ - 72:2

**carry** [1]_ - 72:12

**case** [67]_ - 2:3_, 2:4_, 4:12_, 7:8_, 16:3_, 18:3_, 22:7_, 22:12, 22:16_, 23:2 _, 23:7_, 26:2_, 26:23_, 28:22_, 29:5_, 29:7_, 29:20_, 30:6_, 30:18_, 30:21_, 31:5_, 31:9_, 32:15_, 33:3_, 33:7_, 33:9 _, 33:13_, 33:18_, 34:20_, 36:20_, 37:2_, 38:13_, 38:22_, 41:25_, 44:4_, 61:3_, 68:2_, 72:10_, 73:7 _, 74:1_, 74:13_, 74:22_, 75:22_, 75:23_, 76:1_, 76:23_, 77:8_, 78:22_, 78:24_, 79:1_, 79:6_, 79:17_, 79:19_, 80:22_, 84:23_, 86:17_, 87:1_, 88:6_, 97:4_, 100:20_, 101:10_, 101:12_, 101:14 _, 101:16_, 101:19_, 101:25_, 105:1

**Case** [2]_ - 2:5_, 22:8

**case-specific** [1]_ - 4:12

**Casey** [1]_ - 68:14

**catch** [1]_ - 46:11

**category** [3]_ - 13:21_, 19:7_, 67:21

**cause-type** [1]_ - 15:10

**caution** [1]_ - 21:4

**caveats** [1]_ - 27:11

**cell** [1]_ - 105:2

**centers** [2]_ - 40:14

**CEO** [1]_ - 43:18

**certain** [6]_ - 32:11_, 34:21_, 64:12_, 72:7_, 97:25_, 101:22

**certainly** [6]_ - 84:24_, 85:17_, 87:16_, 89:10_, 89:11_, 98:8

**certified** [1]_ - 48:11

**chair** [1]_ - 43:22

**chairs** [2]_ - 21:9_, 78:19

**challenge** [7]_ - 14:17_, 17:5_, 41:9_, 80:23_, 86:20_, 92:15_, 97:22

**challenges** [11]_ - 13:19 _, 13:20_, 13:21_, 14:24_, 15:10_, 80:13_, 80:22_, 94:4_, 103:15_, 103:16_, 103:17

**chance** [7]_ - 12:10_, 14:3 _, 14:23_, 20:3_, 81:2_, 104:5_, 104:10

**change** [3]_ - 6:4_, 10:18 _, 86:2

**changes** [1]_ - 47:19

**changing** [1]_ - 47:18

**channels** [1]_ - 27:8

**character** [1]_ - 21:2

**charge** [5]_ - 29:16_, 31:10_, 35:9_, 35:17_, 73:8

**charged** [4]_ - 7:3_, 35:23 _, 72:16_, 73:14

**charges** [7]_ - 35:5_, 35:8 _, 36:9_, 36:17_, 37:1_, 73:9_, 74:3

**charging** [1]_ - 72:7

**check** [3]_ - 9:9_, 57:19_, 98:16

**check-in** [1]_ - 57:19

**checking** [1]_ - 61:13

**chemistry** [1]_ - 47:3

**cherished** [1]_ - 23:3

**child** [7]_ - 42:14_, 47:8_, 50:20_, 66:9_, 85:16_, 85:17_, 85:23

**children** [12]_ - 40:15_, 49:12_, 49:13_, 49:17_, 61:1_, 61:24_, 62:11_, 66:2_, 66:13_, 85:1_, 97:24_, 97:25

**choose** [1]_ - 33:1

**chosen** [10]_ - 26:22_, 27:1_, 27:3_, 41:13_, 46:7 _, 46:17_, 48:9_, 63:15_, 64:16_, 83:23

**Christian** [2]_ - 69:23_, 71:7

**Christopher** [5]_ - 2:9_, 30:10_, 37:12_, 69:13_, 70:16

**Cindy** [1]_ - 68:12

**circumstances** [2]_ - 82:4_, 90:25

**citation** [2]_ - 4:24_, 5:9

**cited** [1]_ - 5:13

**citizen** [1]_ - 23:5

**clarify** [1]_ - 105:23

**clarifying** [2]_ - 40:23_, 58:3

**class** [3]_ - 44:16_, 44:18 _, 45:3

**classes** [5]_ - 44:21_, 45:8, 45:10_, 54:13_, 89:21

**classroom** [1]_ - 47:5

**clay** [1]_ - 68:19

**clear** [12]_ - 13:19_, 19:6_, 32:21_, 37:8_, 38:14_, 39:11_, 77:10_, 80:12_, 80:21_, 82:19_, 98:10_, 103:22

**clearly** [4]_ - 24:10_, 76:4 _, 86:9_, 91:14

**Clements** [1]_ - 68:21

**clerk** [1]_ - 26:11

**client** [1]_ - 66:11

**close** [6]_ - 20:5_, 20:16_, 41:12_, 68:7_, 71:1_, 105:12

**closer** [2]_ - 54:20_, 60:9

**co** [1]_ - 88:3

**co-counsel** [1]_ - 88:3

**coach** [1]_ - 40:20

**Coast** [1]_ - 60:23

**colleagues** [1]_ - 30:7

**College** [1]_ - 65:12

**colloquy** [2]_ - 92:14_, 98:2

**color** [2]_ - 18:22_, 97:17

**combined** [1]_ - 97:7

**coming** [5]_ - 39:22_, 41:9_, 52:4_, 57:22_, 58:15

**comment** [1]_ - 96:7

**commentary** [1]_ - 99:23

**comments** [3]_ - 16:20_, 81:3_, 104:9

**commerce** [2]_ - 36:14_, 36:25

**commercial** [1]_ - 59:16

**commission** [6]_ - 53:12 _, 53:21_, 53:22_, 64:10_, 87:15_, 95:11

**commission-only** [1]_ - 95:11

**commit** [2]_ - 36:7_, 60:3

**commitments** [2]_ -

44:1_, 93:22
**committed** [1]_ - 59:15
**committees** [1]_ - 43:21
**common** [1]_ - 74:12
**communicated** [1]_ - 37:20
**communications** [1]_ - 97:5
**community** [1]_ - 23:7
**company** [15]_ - 45:19_, 45:21_, 46:15_, 47:17_, 47:18_, 48:16_, 55:8_, 56:6_, 62:19_, 63:10_, 63:14_, 66:20_, 81:12_, 92:1_, 98:2
**compensate** [1]_ - 64:12
**complete** [2]_ - 9:1_, 34:15
**completely** [3]_ - 11:2_, 11:3_, 78:25
**compliance** [1]_ - 78:21
**component** [3]_ - 40:8_, 95:3_, 99:3
**computer** [3]_ - 62:20_, 105:14_, 105:16
**concepts** [1]_ - 37:4
**concern** [7]_ - 16:12_, 17:10_, 18:1_, 41:18_, 60:10_, 61:2_, 85:18
**concerned** [7]_ - 29:1_, 47:4_, 77:12_, 81:10_, 90:13_, 91:14_, 97:16
**concerning** [8]_ - 29:17_, 29:20_, 33:9_, 47:3_, 47:6_, 74:10_, 78:4_, 96:8
**concerns** [3]_ - 14:10_, 18:2, 21:15
**conclude** [3]_ - 79:21_, 93:20_, 105:10
**concluded** [1]_ - 106:7
**concludes** [3]_ - 12:20_, 74:17_, 78:11
**condition** [1]_ - 96:3
**Conditioning** [2]_ - 63:11_, 63:12
**Condon** [1]_ - 24:1
**conduct** [2]_ - 79:19_, 101:17
**conducting** [4]_ - 9:2_, 32:9_, 101:9_, 102:21
**conference** [6]_ - 15:25_, 39:22_, 39:23_, 40:24_, 80:14_, 86:22

**conferred** [1]_ - 88:2
**confidential** [1]_ - 26:21
**confirmatory** [1]_ - 8:22
**confirmed** [1]_ - 95:3
**connected** [1]_ - 29:2
**connection** [4]_ - 37:17_, 40:14_, 69:1
**consequences** [1]_ - 77:11
**consider** [8]_ - 6:17_, 7:15_, 41:15_, 75:11_, 76:22_, 76:24_, 77:3_, 97:6
**consideration** [5]_ - 12:11_, 29:4_, 31:5_, 43:12_, 96:22
**considered** [3]_ - 19:19_, 74:13_, 79:12
**considering** [3]_ - 5:19_, 77:17_, 96:22
**consistent** [4]_ - 86:23_, 91:22_, 98:22_, 98:24
**consists** [1]_ - 74:6
**constantly** [1]_ - 59:3
**Constitution** [1]_ - 23:4
**constitution** [1]_ - 73:16
**constitutional** [2]_ - 31:1_, 31:17
**construction** [1]_ - 62:19
**construed** [1]_ - 29:5
**consumed** [2]_ - 64:17_, 95:7
**contact** [10]_ - 3:16_, 9:17_, 11:8_, 12:22_, 26:5_, 37:6_, 41:4_, 101:24_, 102:3_, 102:6
**contains** [1]_ - 35:6
**content** [3]_ - 39:15_, 47:5_, 106:4
**contesting** [1]_ - 4:24
**context** [6]_ - 31:19_, 35:4_, 42:5_, 44:23_, 45:4_, 45:11
**continue** [8]_ - 15:11_, 26:2_, 32:19_, 71:1_, 83:25_, 94:19_, 98:9_, 105:18
**continued** [2]_ - 100:12_, 101:6
**continuing** [1]_ - 38:16
**contract** [1]_ - 90:11

**contractor** [2]_ - 59:6_, 91:25
**contradicts** [1]_ - 76:25
**contrary** [1]_ - 14:22
**control** [2]_ - 31:16_, 87:16
**controlling** [1]_ - 31:10
**convicted** [2]_ - 36:10_, 36:15
**conviction** [1]_ - 17:10
**convincing** [1]_ - 74:14
**coordinate** [1]_ - 86:11
**coordinated** [1]_ - 11:7
**copies** [1]_ - 105:24
**copy** [1]_ - 7:19
**correct** [4]_ - 16:13_, 41:22_, 95:12_, 98:17
**correctly** [1]_ - 53:21
**corrupt** [1]_ - 83:11
**cost** [2]_ - 56:20
**Costa** [2]_ - 10:6_, 10:9
**costs** [1]_ - 58:24
**Counsel** [1]_ - 2:6
**counsel** [11]_ - 2:24_, 3:1_, 7:25_, 9:9_, 31:12_, 31:17_, 32:1_, 32:4_, 32:17_, 88:3_, 94:18
**Count** [6]_ - 35:9_, 35:23_, 35:24_, 35:25_, 36:9_, 36:17
**counterbalance** [1]_ - 4:23
**country** [3]_ - 43:18_, 73:13_, 73:21
**County** [15]_ - 35:12_, 35:20_, 36:2_, 36:12_, 36:21_, 40:13_, 49:3_, 49:23_, 60:6_, 68:14_, 69:5_, 69:12_, 70:8_, 70:17_, 71:17
**couple** [5]_ - 4:15_, 47:20_, 55:9_, 58:3_, 61:16
**course** [19]_ - 7:15_, 9:20_, 11:10_, 25:16_, 28:23_, 31:8, 43:9_, 43:11_, 43:25_, 46:7_, 53:1_, 73:20_, 76:14_, 76:24_, 77:1_, 80:22_, 82:14_, 89:19_, 105:6
**Court** [24]_ - 2:1_, 5:6_, 8:23_, 8:25_, 9:25_, 11:12_, 12:18_, 13:22_, 21:8_, 21:25, 22:17_, 24:3_, 25:1

_, 26:11_, 31:14_, 33:2_, 33:12_, 67:4_, 77:3_, 78:5_, 80:5_, 88:19_, 100:1_, 100:9
**court** [14]_ - 23:8_, 23:23_, 24:4, 25:11_, 26:8_, 28:13_, 29:14_, 55:23_, 60:1_, 67:4_, 67:9_, 80:24_, 95:4_, 99:10
**COURT** [294]_ - 2:2_, 2:11_, 2:16_, 2:19_, 2:21_, 3:2_, 3:16_, 3:23_, 4:1_, 4:20_, 5:8_, 5:20_, 5:24_, 6:7_, 6:13_, 6:16_, 6:23_, 7:1_, 7:21_, 8:3_, 8:11_, 8:13, 8:16_, 8:18_, 9:1_, 9:8_, 9:21_, 10:1_, 10:14_, 10:17_, 10:22_, 10:25_, 11:2_, 11:5_, 11:13_, 11:18_, 11:20_, 11:24_, 12:7_, 13:4_, 13:7_, 13:23_, 14:5_, 14:7_, 14:20_, 15:5_, 15:8_, 15:11_, 15:16_, 15:21_, 15:24_, 16:8_, 16:12_, 16:17_, 16:22_, 17:1_, 17:6_, 17:10_, 17:14_, 17:17_, 17:19_, 17:23_, 18:1_, 18:4_, 18:8_, 18:14_, 18:18_, 19:4_, 19:12_, 19:18_, 19:21_, 20:2_, 20:14_, 20:24_, 21:11_, 21:17_, 21:19_, 21:21_, 22:1_, 22:21_, 30:19_, 31:24_, 32:2_, 40:6_, 40:23_, 41:11_, 41:22_, 42:1_, 42:13_, 42:16_, 42:19_, 42:21_, 43:1_, 43:4_, 43:7_, 43:10_, 43:24_, 44:11_, 44:13_, 45:1_, 45:6_, 45:12_, 45:16_, 45:21_, 45:23_, 46:2_, 46:5_, 46:13_, 46:19_, 46:21_, 46:24_, 47:7_, 47:12_, 47:24_, 48:2_, 48:5_, 48:8_, 48:12_, 48:18_, 48:22_, 48:23_, 48:25_, 49:11_, 49:16_, 49:20_, 49:25_, 50:5_, 50:9_, 50:13_, 50:19_, 50:25_, 51:3_, 51:8_, 51:12_, 51:16_, 51:20_, 51:24_, 52:15_, 52:17_, 52:20_, 53:4_, 53:10_, 53:16_, 53:18_, 53:20_, 53:23_, 54:5_, 54:9_, 54:13_, 54:15_, 54:17_, 54:21_, 54:23_, 55:1_, 55:22_, 56:1_, 56:7_, 56:22_, 57:3_, 57:8_,

57:14_, 57:16_, 57:24_, 58:2_, 58:5_, 58:9_, 58:17_, 58:21_, 59:4_, 59:7_, 59:10_, 59:18_, 59:22_, 60:4_, 60:8_, 60:14_, 60:18_, 60:20_, 60:22_, 61:5_, 61:9_, 61:14_, 61:19_, 62:1_, 62:5_, 62:9_, 62:14_, 62:17_, 62:22_, 63:1_, 63:4_, 63:9_, 63:12_, 63:14_, 63:18_, 63:21_, 64:1_, 64:4_, 64:8_, 64:16, 64:21_, 64:23_, 65:8_, 65:13_, 65:15_, 65:18_, 65:23_, 66:6_, 66:12_, 66:15_, 66:18_, 67:1_, 80:2_, 80:10_, 81:6_, 81:15_, 81:24_, 82:2_, 82:15_, 82:19_, 82:22_, 83:6_, 83:8_, 83:16_, 83:19_, 84:8_, 84:12_, 84:19_, 85:4_, 85:7_, 85:20_, 85:22_, 86:6_, 86:8_, 86:20_, 87:2_, 87:8_, 87:11_, 87:18_, 87:21_, 88:8_, 88:11_, 88:24_, 89:3_, 89:12_, 89:22_, 90:1_, 90:15_, 90:18_, 91:2_, 91:5_, 91:12_, 91:19_, 92:2_, 92:5_, 92:13_, 92:23_, 93:6_, 93:11_, 93:16_, 94:1_, 94:10_, 94:13_, 94:16_, 94:21_, 95:2_, 95:11_, 95:14_, 95:18_, 96:7_, 96:15_, 97:9_, 97:13_, 98:5_, 98:10_, 98:13_, 98:24_, 99:2_, 99:6_, 99:8_, 99:21_, 100:3_, 100:10_, 102:20_, 103:13_, 103:18_, 104:1_, 104:4_, 104:21_, 104:25_, 105:17_, 105:22_, 105:25_, 106:2

**Court's** [16]_ - 3:7_, 3:14_, 4:2_, 10:3_, 29:16_, 38:17_, 78:9_, 82:23_, 88:5_, 91:22_, 95:7_, 96:1_, 96:5_, 96:11_, 102:12_, 106:4

**courthouse** [17]_ - 4:4_, 22:3_, 24:20_, 25:13_, 26:12_, 26:15_, 26:25_, 27:5_, 28:20_, 29:10_, 32:16_, 60:4_, 60:9_, 78:15_, 99:17_, 101:5_, 103:5

**courtroom** [27]_ - 12:13_, 20:19_, 21:10_, 21:24_, 22:11_, 23:25_, 24:16_,

24:17_, 24:21_, 25:10_, 26:18_, 28:15_, 28:16_, 29:18_, 33:5_, 33:12_, 33:19_, 34:16_, 68:16_, 79:10_, 79:16_, 80:1_, 80:16_, 100:4_, 100:8_, 101:21_, 102:19

**COURTROOM** [3]_ - 2:4_, 22:13_, 22:20

**cover** [5]_ - 4:6_, 24:14_, 32:14_, 53:14_, 103:20

**coverage** [1]_ - 82:11

**covering** [2]_ - 15:6_, 43:20

**create** [1]_ - 85:1

**credibility** [5]_ - 76:13_, 77:4_, 77:7_, 77:20_, 96:23

**crime** [6]_ - 35:17_, 35:18_, 35:22_, 35:23_, 36:15_, 73:14

**crimes** [3]_ - 18:9_, 34:22_, 72:7

**criminal** [4]_ - 18:3_, 30:11_, 32:15_, 72:23

**critical** [2]_ - 27:24_, 90:10

**cryptic** [1]_ - 18:5

**culture** [1]_ - 45:3

**current** [2]_ - 41:20_, 105:8

**curriculum** [3]_ - 40:17_, 40:21

**Curtis** [1]_ - 69:6

**custody** [1]_ - 8:19

**customers** [1]_ - 46:10

---

D

**dad** [2]_ - 42:10_, 42:24

**daily** [1]_ - 49:5

**dangerous** [1]_ - 36:8

**date** [3]_ - 25:7_, 35:19_, 36:1

**dates** [1]_ - 54:11

**daughter** [2]_ - 50:11_, 50:13

**David** [2]_ - 69:10

**day-to-day** [1]_ - 24:3

**daycare** [1]_ - 42:9

**days** [6]_ - 48:17_, 49:7_, 49:8_, 49:14_, 54:3_,

61:16

**days'** [1]_ - 56:4

**daytime** [1]_ - 81:18

**deadly** [1]_ - 36:8

**deal** [1]_ - 72:12

**dealings** [3]_ - 37:15_, 37:25_, 38:8

**decide** [3]_ - 23:7_, 33:18_, 76:11

**decided** [1]_ - 30:24

**decision** [7]_ - 31:2_, 31:3_, 31:5_, 31:18_, 33:7_, 79:9_, 79:15

**decisions** [2]_ - 28:20_, 105:6

**declared** [1]_ - 91:23

**defendant** [32]_ - 5:2_, 5:17_, 8:20_, 27:20_, 27:23_, 27:25_, 28:2_, 28:4_, 28:5_, 28:11_, 28:12_, 28:15_, 29:6_, 31:21_, 34:10_, 34:20_, 34:24_, 35:1_, 35:13_, 35:21_, 36:3_, 72:10_, 72:14_, 73:9_, 73:10_, 75:9_, 75:10_, 75:15_, 75:20_, 76:2_, 76:7_, 86:18

**defendant's** [9]_ - 72:25_, 73:2_, 73:25_, 74:8_, 74:10_, 75:4_, 75:17_, 76:9_, 84:21

**defense** [13]_ - 2:18_, 2:20_, 4:16_, 8:20_, 9:13_, 26:17_, 26:19_, 27:20_, 27:21_, 31:10_, 31:16_, 74:23_, 84:13

**defines** [1]_ - 74:4

**definitely** [1]_ - 41:2

**degree** [1]_ - 26:3

**delegate** [1]_ - 44:9

**deliberation** [1]_ - 73:17

**deliberations** [1]_ - 75:12

**demanding** [1]_ - 59:3

**deny** [2]_ - 88:12_, 93:16

**Department** [2]_ - 18:17_, 30:17

**deported** [1]_ - 10:7

**deputies** [2]_ - 23:25_, 29:18

**deputy** [2]_ - 3:20_, 22:11

**DEPUTY** [3]_ - 2:4_,

22:13_, 22:20

**Deputy** [1]_ - 68:14

**derived** [1]_ - 85:15

**describe** [2]_ - 28:8_, 43:8

**described** [3]_ - 27:2_, 64:18_, 95:3

**designated** [2]_ - 25:3_, 27:4

**designed** [2]_ - 32:10_, 40:22

**despite** [1]_ - 94:7

**destructive** [1]_ - 71:23

**detail** [3]_ - 27:3_, 34:22_, 44:4

**Detective** [2]_ - 70:8_, 70:17

**detective** [1]_ - 71:17

**determine** [6]_ - 31:14_, 33:6_, 33:12_, 35:3_, 72:19

**developer** [2]_ - 40:16_, 55:10

**developing** [1]_ - 41:5

**development** [2]_ - 55:10_, 56:5

**device** [1]_ - 71:23

**devices** [1]_ - 25:13

**different** [5]_ - 5:1_, 5:18_, 5:22_, 67:12_, 98:1

**difficult** [4]_ - 40:5_, 41:24_, 86:10

**difficulty** [4]_ - 67:12_, 73:22_, 74:18_, 74:25

**Digital** [2]_ - 69:19_, 70:13

**digital** [1]_ - 71:11

**dire** [2]_ - 4:6_, 4:14

**direct** [5]_ - 12:13_, 41:3_, 63:24_, 78:14_, 103:3

**directed** [3]_ - 4:4_, 101:5_, 102:3

**directing** [2]_ - 31:10_, 79:4

**directly** [1]_ - 24:4

**disabilities** [1]_ - 67:15

**disability** [1]_ - 19:1

**disagree** [1]_ - 77:21

**disbelief** [1]_ - 18:11

**disclosed** [1]_ - 27:15

**disclosing** [1]_ - 26:7

**disclosure** [2]_ - 17:13_, 17:14
**disclosures** [1]_ - 17:9
**discovery** [3]_ - 105:1_, 105:9_, 105:14
**discrete** [1]_ - 80:15
**discuss** [19]_ - 7:16_, 14:12_, 28:19_, 29:19_, 32:12_, 34:5_, 37:4_, 38:11_, 78:1_, 78:21_, 78:24_, 79:17_, 79:18_, 79:23_, 80:12_, 94:2_, 99:3_, 101:11_, 101:12
**discussed** [1]_ - 10:17
**discussing** [1]_ - 101:10
**discussion** [2]_ - 79:5_, 89:13
**disprove** [1]_ - 74:24
**disregard** [1]_ - 77:11
**disseminated** [4]_ - 26:18_, 27:8_, 106:3_, 106:4
**distance** [1]_ - 59:25
**distract** [1]_ - 41:12
**distraction** [1]_ - 41:15
**distribution** [2]_ - 59:20_, 59:21
**District** [9]_ - 22:6_, 23:1_, 30:6_, 35:13_, 35:20_, 36:3_, 36:12_, 36:21
**divorce** [2]_ - 86:1_, 86:10
**docket** [1]_ - 3:8
**doctor** [1]_ - 56:14
**doctor's** [5]_ - 56:13_, 56:17_, 56:21_, 56:23_, 57:18
**Document** [1]_ - 68:19
**documents** [3]_ - 8:5_, 8:12_, 8:13
**DOJ** [1]_ - 95:24
**domestic** [1]_ - 49:3
**Dominick** [1]_ - 69:22
**Donald** [1]_ - 35:15
**done** [3]_ - 32:16_, 61:3_, 61:7
**DONNELLY** [1]_ - 30:15
**Donnelly** [3]_ - 2:10_, 30:16_, 37:13
**door** [2]_ - 99:19_, 102:4
**doubt** [12]_ - 28:5_, 35:1_, 72:15_, 72:21_, 74:3_,

74:9_, 74:10_, 74:11_, 74:14_, 75:24_, 78:4
**doubts** [1]_ - 97:14
**down** [13]_ - 6:5_, 7:14_, 19:21_, 20:1_, 24:5_, 24:10_, 39:4_, 43:11_, 46:25_, 49:3_, 49:23_, 54:6_, 55:24
**downsizing** [1]_ - 62:4
**downstairs** [1]_ - 101:3
**dozing** [1]_ - 88:4
**draw** [1]_ - 28:11
**drawing** [2]_ - 20:25_, 80:23
**drive** [3]_ - 60:7_, 66:22_, 84:4
**driving** [2]_ - 5:4_, 6:5
**drop** [9]_ - 27:4_, 42:10_, 42:11_, 43:3_, 50:2_, 50:24_, 50:25_, 62:11_, 85:17
**drop-off** [5]_ - 27:4_, 42:11_, 50:24_, 50:25_, 62:11
**dropping** [2]_ - 50:20_, 61:25
**due** [2]_ - 7:15_, 16:12
**duration** [1]_ - 39:12
**during** [21]_ - 3:13_, 9:3_, 21:5_, 24:24_, 24:25_, 25:9_, 26:12_, 27:10_, 33:4_, 43:20_, 50:14_, 55:11_, 59:17_, 66:13_, 67:23_, 80:7_, 87:25_, 88:5_, 92:25_, 96:4_, 98:1
**duties** [7]_ - 23:5_, 23:20_, 24:3_, 36:7_, 67:18_, 85:9_, 93:20
**duty** [2]_ - 55:15_, 55:17
**dyslexia** [1]_ - 97:4

**E**

**early** [2]_ - 41:18_, 55:18
**earn** [1]_ - 53:21
**easier** [3]_ - 5:23_, 24:9_, 64:22
**echos** [1]_ - 18:12
**education** [1]_ - 97:12
**educational** [1]_ - 95:3
**effectively** [2]_ - 41:10_, 81:10
**efficiency** [1]_ - 14:10

**efficient** [1]_ - 32:23
**efficiently** [2]_ - 12:18_, 39:14
**either** [9]_ - 10:13_, 38:5_, 59:23_, 79:1_, 80:6_, 80:23_, 81:23_, 88:11
**elderly** [1]_ - 87:2
**elected** [1]_ - 31:3
**electrical** [2]_ - 59:6_, 91:25
**electrician** [1]_ - 92:10
**electronic** [1]_ - 25:13
**elects** [1]_ - 75:10
**elementary** [1]_ - 47:1
**elements** [1]_ - 7:4
**Elizabeth** [1]_ - 71:11
**elsewhere** [3]_ - 35:21_, 36:13_, 36:22
**email** [1]_ - 8:22
**emails** [1]_ - 46:10
**emergency** [1]_ - 56:16
**emotional** [1]_ - 33:21
**emphasize** [5]_ - 23:13_, 27:10_, 27:25_, 78:4_, 79:16
**employed** [1]_ - 48:15
**employee** [2]_ - 84:3_, 95:11
**employees** [2]_ - 58:23_, 84:2
**employer** [6]_ - 46:6_, 46:14_, 53:16_, 53:23_, 64:11_, 98:3
**employing** [2]_ - 27:2_, 28:12
**employment** [4]_ - 11:9_, 16:12_, 16:13_, 25:19
**encounter** [1]_ - 12:16
**end** [5]_ - 26:22_, 41:7_, 55:13_, 59:14_, 95:24
**endangered** [1]_ - 27:14
**enforce** [1]_ - 29:15
**engage** [2]_ - 76:5_, 79:5
**engaged** [1]_ - 36:6
**engaging** [1]_ - 79:8
**English** [1]_ - 67:13
**enrolled** [2]_ - 54:10_, 89:19
**ensure** [3]_ - 25:25_, 26:1_, 26:25
**entered** [2]_ - 21:24_,

100:8
**entertain** [1]_ - 80:15
**entire** [7]_ - 23:1_, 23:16_, 72:14_, 74:21_, 75:13_, 81:9_, 99:9
**entirely** [2]_ - 86:3_, 87:25
**entry** [1]_ - 3:8
**Environmental** [1]_ - 53:17
**envisioned** [1]_ - 3:6
**equipped** [1]_ - 25:2
**Erich** [1]_ - 71:13
**Erick** [2]_ - 10:6_, 71:25
**Erin** [2]_ - 68:14_, 68:22
**error** [1]_ - 96:23
**essential** [1]_ - 7:4
**essentially** [2]_ - 40:3_, 40:19
**establish** [1]_ - 51:19
**estate** [1]_ - 55:10
**estimating** [1]_ - 58:24
**ethnic** [2]_ - 18:22_, 97:18
**evaluate** [4]_ - 33:3_, 76:13_, 76:14_, 77:6
**evaluating** [1]_ - 77:4
**evaluation** [1]_ - 40:10
**evening** [8]_ - 38:18_, 41:19_, 63:6_, 66:11_, 102:9_, 102:11_, 105:24_, 106:5
**evenings** [1]_ - 60:2
**event** [4]_ - 39:24_, 40:1_, 81:9_, 81:14
**eventual** [1]_ - 82:13
**everyday** [1]_ - 52:3
**evidence** [16]_ - 28:7_, 33:4_, 34:23_, 35:7_, 37:3_, 72:10_, 73:9_, 74:13_, 75:9_, 76:24_, 77:7_, 77:21_, 79:10_, 79:15_, 101:20
**exactly** [2]_ - 8:15_, 24:13
**examiner** [4]_ - 71:12_, 71:14_, 71:19_, 71:24
**Examiner** [3]_ - 68:20_, 69:15_, 70:13
**Examiner/Special** [1]_ - 69:20
**example** [2]_ - 6:23_, 75:21
**examples** [1]_ - 15:10

**exceeding** [1] - 36:16
**excellent** [3] - 11:13, 82:17, 92:3
**exceptions** [2] - 7:9, 26:10
**exclude** [1] - 74:9
**excluded** [1] - 95:1
**exclusion** [1] - 75:24
**excuse** [12] - 4:5, 10:4, 13:11, 16:4, 19:15, 51:14, 69:10, 72:19, 76:19, 77:16, 83:24, 86:24
**excused** [14] - 33:14, 44:2, 84:7, 85:2, 86:5, 86:19, 88:23, 90:25, 91:25, 93:8, 97:8, 100:15, 100:19, 100:25
**excusing** [1] - 93:10
**execute** [1] - 58:25
**executive** [1] - 43:16
**exercise** [1] - 73:17
**exhibits** [3] - 8:8, 8:9, 97:15
**exists** [1] - 72:17
**exited** [2] - 80:1, 102:19
**exiting** [1] - 102:18
**expanded** [2] - 105:1, 105:9
**expect** [1] - 78:21
**expectation** [1] - 25:9
**expected** [2] - 26:2, 38:13
**experience** [2] - 5:11, 33:8
**experiencing** [1] - 86:11
**expert** [1] - 11:6
**experts** [3] - 44:23, 45:4, 45:11
**explain** [1] - 34:22
**explained** [1] - 93:15
**Explosives** [2] - 70:6, 71:24
**expounded** [1] - 16:20
**extended** [1] - 103:5
**extending** [1] - 22:24
**extent** [1] - 99:17
**extra** [1] - 12:7

**F**

**faces** [1] - 22:4
**facility** [1] - 7:24
**facing** [1] - 24:12
**fact** [5] - 57:25, 72:17, 82:8, 87:25, 105:3
**factor** [1] - 77:1
**factors** [3] - 28:20, 33:5, 76:15
**facts** [3] - 33:17, 33:20, 78:2
**fails** [1] - 75:14
**faint** [2] - 65:7, 96:4
**fainting** [1] - 96:7
**fair** [15] - 7:8, 18:2, 18:12, 18:16, 25:25, 27:17, 33:1, 34:3, 77:2, 79:14, 83:1, 83:21, 84:12, 86:17, 94:25
**fairly** [1] - 64:11
**faith** [3] - 18:13, 18:17, 95:24
**fall** [2] - 19:6, 67:21
**familiar** [2] - 40:12, 84:22
**families** [3] - 40:15, 40:22, 66:5
**family** [5] - 40:14, 45:19, 60:16, 60:17
**far** [14] - 12:4, 12:25, 19:6, 40:19, 41:16, 45:4, 49:20, 50:20, 52:5, 62:11, 81:9, 84:16, 98:19, 105:4
**Farais** [1] - 68:22
**FARAIS** [1] - 68:22
**FBI** [10] - 70:16, 70:22, 70:23, 71:6, 71:12, 71:13, 71:14, 71:19, 71:20
**feasible** [2] - 82:10, 82:25
**February** [1] - 39:24
**Federal** [15] - 68:11, 68:13, 68:15, 68:20, 68:22, 69:3, 69:6, 69:11, 69:13, 69:15, 69:20, 69:23, 70:7, 70:14, 70:15
**federal** [4] - 22:3, 35:6, 35:25, 36:19

**feed** [1] - 24:20
**fellow** [4] - 15:25, 34:6, 75:25, 78:22
**felon** [1] - 36:10
**felons** [1] - 88:18
**felons'** [1] - 89:9
**felony** [2] - 36:7, 94:9
**felt** [2] - 6:12, 97:13
**Fercano** [1] - 68:23
**few** [13] - 3:4, 7:8, 8:3, 15:10, 21:1, 23:22, 24:8, 27:25, 32:18, 34:22, 37:10, 45:4, 49:14
**fibrillation** [1] - 65:3
**field** [1] - 62:19
**fifth** [1] - 44:21
**filed** [3] - 7:17, 34:20, 72:7
**fill** [1] - 3:9
**filled** [2] - 3:19, 26:14
**filled-out** [1] - 3:19
**film** [1] - 25:15
**fin** [1] - 45:3
**final** [2] - 29:13, 101:2
**finally** [4] - 11:20, 26:22, 36:17, 72:2
**financial** [18] - 16:25, 18:5, 53:3, 53:11, 63:7, 64:9, 64:18, 83:13, 83:21, 84:14, 87:17, 87:22, 90:9, 91:21, 92:22, 95:7, 95:9, 95:20
**financially** [1] - 64:13
**fine** [4] - 10:19, 13:23, 58:4, 81:23
**finish** [1] - 103:8
**firearm** [7] - 35:18, 35:22, 35:24, 36:10, 36:13, 36:18, 36:22
**firearms** [1] - 71:14
**Firearms** [2] - 70:6, 71:24
**firm** [2] - 8:24, 10:14
**first** [21] - 3:4, 3:5, 4:2, 11:21, 12:18, 14:16, 15:10, 19:14, 22:11, 22:23, 23:16, 23:22, 26:10, 32:24, 35:9, 49:2, 81:4, 83:9, 103:15

**fiscal** [1] - 59:14
**fish** [1] - 45:3
**fisheries** [1] - 45:2
**fit** [1] - 56:23
**five** [2] - 35:6, 57:10
**flag** [1] - 14:10
**flagged** [1] - 19:6
**flight** [4] - 52:13, 52:15, 56:12, 56:20
**flights** [6] - 49:6, 49:9, 56:17, 56:21, 85:1, 85:9
**flip** [1] - 81:2
**flip-flop** [1] - 81:2
**floor** [3] - 3:15, 78:15, 79:25
**flop** [1] - 81:2
**Florida** [8] - 22:7, 23:1, 30:6, 35:13, 35:20, 36:3, 36:12, 36:21
**focus** [3] - 51:21, 85:19, 86:10
**focused** [2] - 86:4, 90:19
**folks** [5] - 39:16, 53:24, 75:6, 98:16, 99:10
**follow** [7] - 33:2, 76:8, 77:16, 78:8, 79:14, 96:11, 97:14
**followed** [1] - 33:19
**following** [4] - 9:20, 95:25, 98:18, 100:18
**Foo** [1] - 69:3
**FOO** [1] - 69:3
**for-case** [1] - 80:22
**for-cause** [18] - 14:24, 19:6, 19:19, 20:8, 80:5, 80:13, 81:24, 82:6, 82:20, 84:9, 86:20, 87:9, 91:9, 92:15, 94:4, 94:13, 95:20, 98:11
**forbidden** [1] - 78:25
**Force** [1] - 70:7
**forcibly** [1] - 36:4
**forego** [2] - 105:13, 105:15
**foreign** [2] - 36:14, 36:25
**forensic** [2] - 71:12, 71:18
**Forensic** [4] - 68:20, 69:14, 69:20, 70:13

forget [1] - 103:19
forgetting [1] - 51:3
forklift [2] - 48:11, 84:4
form [3] - 5:1, 55:11, 67:22
formal [1] - 81:1
formation [1] - 21:9
former [1] - 35:14
formulated [1] - 5:17
formulation [2] - 5:1, 5:3
Fort [1] - 22:3
forth [2] - 81:2, 95:1
forward [1] - 57:5
four [6] - 54:3, 56:4, 57:12, 58:23, 72:11, 90:11
four-day [1] - 90:11
four-week [1] - 57:12
framework [1] - 23:6
frankly [1] - 5:2
free [1] - 55:11
Friday [4] - 7:17, 45:10, 55:14, 56:12
friends [1] - 42:19
front [1] - 24:4
fuel [1] - 59:20
Fulk [1] - 69:4
full [12] - 2:14, 14:23, 32:21, 40:7, 40:9, 42:7, 51:13, 73:5, 74:5, 78:21, 80:17, 81:16
full-time [4] - 40:7, 40:9, 42:7, 51:13
fully [4] - 11:7, 14:12, 34:15
function [1] - 22:5
fundamental [1] - 28:9
furtherance [3] - 35:18, 35:22, 35:24
furthermore [1] - 84:24
future [1] - 105:19

### G

Gale [1] - 69:4
game [1] - 77:2
Garett [1] - 69:3
Gaul [1] - 69:6
gears [1] - 7:16

general [5] - 13:1, 61:22, 104:14, 104:18, 105:3
generally [3] - 18:1, 26:6, 38:17
generate [3] - 7:23, 7:25, 20:11
generated [1] - 28:21
generation [1] - 60:17
gentleman [3] - 52:22, 64:10, 97:11
gentlemen [26] - 22:2, 23:9, 25:25, 27:15, 27:24, 28:25, 29:3, 30:15, 30:24, 33:10, 33:15, 34:14, 36:19, 37:2, 67:24, 71:1, 72:6, 72:13, 73:13, 75:4, 77:5, 78:3, 78:13, 79:8, 100:13, 101:11
Gilbert [2] - 69:10
given [11] - 34:9, 78:17, 82:25, 85:23, 86:10, 90:25, 91:6, 96:10, 96:25, 97:15, 104:25
goal [1] - 33:6
God [1] - 22:17
Gomez [1] - 69:11
Goodrich [1] - 69:13
government [26] - 4:17, 4:22, 7:18, 11:16, 20:25, 26:17, 27:8, 28:4, 29:6, 30:17, 34:10, 37:9, 72:14, 72:20, 74:2, 74:21, 75:13, 75:14, 75:23, 76:1, 81:1, 82:3, 83:5, 94:18, 99:5, 103:14
government's [6] - 4:23, 7:7, 34:25, 72:24, 74:7, 74:9
GPA [1] - 65:22
grade [1] - 49:2
grades [2] - 65:22, 97:13
graduate [4] - 44:16, 44:18, 82:9, 82:12
graduation [2] - 44:18, 83:3
gratitude [1] - 22:25
great [2] - 72:12, 89:24
Greenland [1] - 7:2
Gregor [1] - 69:14
Gregory [1] - 71:19

group [5] - 4:2, 68:19, 82:12, 99:9, 103:15
Group [8] - 4:3, 13:12, 21:24, 80:5, 99:3, 100:8, 102:23, 102:24
Groups [2] - 102:22, 103:2
groups [2] - 3:6, 68:7
guaranteed [1] - 73:15
guess [7] - 43:2, 46:13, 50:19, 59:3, 81:13, 82:13, 91:1
guide [1] - 23:19
guilt [4] - 37:3, 73:25, 74:8, 74:10
guilty [17] - 28:1, 28:4, 28:5, 31:4, 34:25, 35:2, 72:11, 72:15, 73:11, 73:15, 73:19, 75:15, 76:2, 94:8
guys [1] - 58:25

### H

half [7] - 4:7, 14:4, 38:14, 60:1, 60:7, 65:20, 88:7
Haller [1] - 69:19
hallways [1] - 102:1
hand [2] - 22:13, 58:2
handle [6] - 13:14, 52:3, 52:6, 57:20, 62:23, 91:15
hands [36] - 28:17, 29:12, 37:11, 37:14, 37:18, 37:21, 37:24, 38:2, 38:7, 38:10, 67:6, 67:10, 67:14, 67:19, 68:18, 69:2, 69:9, 69:18, 70:3, 70:12, 70:20, 71:5, 71:10, 71:16, 71:22, 72:4, 73:1, 73:6, 73:24, 74:20, 75:2, 75:19, 76:10, 77:9, 77:18, 78:10
hang [1] - 30:1
hard [3] - 20:10, 55:24, 65:3
hardship [57] - 12:16, 13:20, 13:25, 15:6, 16:12, 16:19, 16:25, 17:4, 17:21, 18:11, 38:25, 39:20, 42:5, 43:5, 43:14, 44:3,

45:16, 47:19, 49:6, 50:10, 53:11, 56:11, 57:23, 59:2, 61:1, 61:4, 61:21, 63:7, 64:10, 64:25, 66:4, 67:3, 67:8, 67:9, 81:8, 83:13, 83:22, 84:6, 84:14, 85:2, 85:9, 85:15, 85:23, 86:25, 87:22, 90:6, 90:9, 90:23, 91:7, 91:21, 92:12, 92:22, 93:4, 95:2, 95:20, 98:3, 103:16
hardship-specific [1] - 13:25
hardships [1] - 4:8
Harris [1] - 69:21
hate [1] - 97:12
Haven [1] - 66:23
head [2] - 3:22, 79:25
Healey [1] - 69:22
HEALEY [1] - 69:22
hear [25] - 2:19, 2:22, 20:3, 42:4, 44:14, 45:14, 46:24, 47:15, 48:22, 49:20, 50:7, 51:10, 52:1, 53:8, 54:7, 56:9, 58:19, 59:12, 60:20, 61:20, 62:15, 63:19, 64:24, 65:10, 76:16
heard [3] - 9:19, 73:2, 75:4
hearing [7] - 20:8, 54:17, 55:4, 67:16, 77:7, 90:1, 101:2
heart [2] - 65:5, 96:3
Heartland [1] - 15:10
heavy [3] - 64:19, 74:7, 95:9
held [2] - 39:23, 40:1
hello [5] - 57:17, 60:21, 60:22, 61:21, 63:20
help [10] - 22:17, 26:4, 29:19, 42:11, 42:19, 47:8, 49:14, 50:3, 60:11, 62:6
helpful [1] - 60:12
helps [1] - 49:15
herself [2] - 93:4, 93:25
hesitation [2] - 74:15, 75:16
hi [2] - 50:8, 66:1
high [5] - 26:3, 47:4,

50:16_, 57:18_, 65:2

**Highlands** [1]_ - 60:6

**himself** [5]_ - 30:22_, 30:25_, 31:2_, 32:5_, 32:6

**Hinshaw** [2]_ - 9:23_, 72:1

**hired** [1]_ - 40:17

**Hlinka** [1]_ - 69:23

**HLINKA** [1]_ - 69:24

**hold** [6]_ - 7:1_, 28:15_, 33:8_, 75:21_, 76:6_, 99:19

**holds** [1]_ - 73:20

**holidays** [1]_ - 54:4

**Holland** [1]_ - 70:4

**home** [8]_ - 25:6_, 48:15_, 51:15_, 51:19_, 63:22_, 63:23_, 66:3_, 94:22

**home-school** [1]_ - 63:23

**home-schooling** [1]_ - 94:22

**honest** [1] - 46:20

**honestly** [2]_ - 46:18_, 63:17

**honesty** [1]_ - 34:18

**honor** [1]_ - 11:9

**Honor** [80]_ - 2:8_, 2:25_, 3:25_, 4:19_, 4:25_, 7:20_, 8:21_, 10:16_, 11:17_, 11:19_, 13:16_, 13:20_, 14:14_, 15:2_, 15:7_, 15:12_, 15:18_, 15:22_, 16:3_, 16:10_, 16:14_, 16:23_, 17:2_, 17:11_, 17:16_, 18:20_, 18:24_, 20:21_, 21:8_, 21:16_, 44:15_, 45:15_, 48:24_, 52:2_, 54:8_, 55:5_, 56:11_, 57:17_, 58:20_, 59:13_, 60:21_, 62:16_, 63:6_, 63:20_, 64:7_, 66:14_, 81:5_, 82:7_, 83:5_, 83:15_, 84:2_, 84:18_, 85:14_, 85:25_, 86:3_, 86:24_, 87:13_, 87:20_, 87:24_, 88:1_, 88:22_, 89:18_, 90:17_, 90:24_, 92:8_, 94:20_, 96:6_, 96:18_, 97:7_, 97:23_, 98:4_, 98:23_, 99:1_, 99:5_, 99:7_, 99:15_, 100:2_, 103:12_, 105:21_, 105:23

**Honor's** [1]_ - 99:20

**honorable** [1]_ - 98:7

**hope** [2]_ - 32:22_, 56:25

**hopefully** [1]_ - 4:10

**hoping** [1]_ - 8:1

**host** [1]_ - 7:2

**hour** [5]_ - 38:19_, 42:8_, 60:1_, 60:7_, 103:8

**hourly** [1]_ - 53:12

**hours** [4]_ - 20:16_, 46:17_, 59:24_, 81:17

**hours'** [1]_ - 20:16

**house** [2]_ - 63:8_, 66:11

**household** [1]_ - 53:14

**housekeeping** [1]_ - 102:14

**huge** [1]_ - 41:6

**Hulett** [1]_ - 53:17

**husband** [5]_ - 47:9_, 50:15_, 62:18_, 93:8_, 93:11

**hyphenated** [1]_ - 2:14

**hypocritical** [1]_ - 83:11

**hypothetical** [1]_ - 73:17

## I

**idea** [1]_ - 55:6

**identified** [10]_ - 14:16_, 15:1_, 17:3_, 17:20_, 18:19_, 45:7_, 45:9_, 45:11_, 83:9_, 93:4

**identify** [2]_ - 13:17_, 44:23

**identifying** [4]_ - 5:5_, 25:6_, 25:20_, 26:7

**imagine** [4]_ - 43:25_, 45:4_, 84:4_, 103:1

**impact** [2]_ - 86:14_, 90:13

**impacted** [1]_ - 19:2

**impairments** [1]_ - 67:16

**impartial** [3]_ - 33:1_, 34:3_, 79:14

**impartially** [1]_ - 74:13

**impede** [1]_ - 36:4

**impending** [1]_ - 91:1

**imperative** [1]_ - 75:11

**impermissible** [1]_ - 76:5

**implementation** [1]_ -

40:10

**important** [16]_ - 10:20_, 23:5_, 23:13_, 27:11_, 33:11_, 33:16_, 34:13_, 38:11_, 72:11_, 72:22_, 74:16_, 74:19_, 76:18_, 84:5_, 87:4

**importantly** [2]_ - 31:3_, 72:9

**importer's** [1]_ - 36:23

**imposition** [2]_ - 77:12_, 77:13

**imprisonment** [1]_ - 36:16

**improper** [2]_ - 26:5_, 27:14

**inability** [3]_ - 18:2_, 18:12_, 96:11

**inadequate** [1]_ - 23:18

**incapable** [1]_ - 67:17

**include** [4]_ - 13:20_, 16:1_, 72:24_, 99:24

**includes** [2]_ - 78:22_, 102:4

**including** [4]_ - 24:6_, 25:18_, 28:21_, 76:15

**income** [1]_ - 53:13

**incorporating** [1]_ - 7:9

**incorrect** [1]_ - 98:17

**increased** [1]_ - 28:19

**indeed** [1]_ - 27:21

**independent** [1]_ - 82:23

**Indian** [2]_ - 40:13_, 65:11

**indicate** [5]_ - 9:13_, 44:3_, 67:20_, 81:15_, 84:24

**indicated** [29]_ - 42:6_, 67:7_, 73:11_, 81:8_, 81:10_, 83:12_, 83:22_, 84:2_, 84:25_, 85:15_, 86:2_, 86:14_, 86:16_, 87:14_, 89:20_, 90:3_, 90:9_, 90:11_, 90:23_, 91:12_, 91:15_, 92:18_, 92:21_, 95:6_, 95:8_, 96:2_, 96:19_, 97:3_, 97:24

**indicates** [3]_ - 84:20_, 88:21_, 96:10

**indicating** [1]_ - 95:25

**indicating)** [1]_ - 58:8

**indictment** [14]_ - 28:1_, 34:20_, 34:23_, 34:24_, 35:5_, 35:6_, 35:11_, 37:1_, 37:2_, 72:6_, 72:8_,

72:17_, 73:7

**indirectly** [1]_ - 37:22

**indispensable** [2]_ - 23:10_, 33:22

**individual** [8]_ - 15:1_, 15:2_, 15:24_, 16:4_, 16:5_, 80:14_, 91:12_, 92:5

**individualized** [2]_ - 16:6_, 16:15

**individuals** [12]_ - 10:5_, 19:14_, 33:12_, 67:25_, 68:3_, 68:17_, 71:4_, 71:9_, 80:16_, 80:18_, 100:15_, 100:19

**inference** [2]_ - 28:12_, 76:4

**inflammation** [1]_ - 61:13

**influence** [3]_ - 29:4_, 79:11_, 101:22

**influenced** [3]_ - 18:22_, 33:5_, 33:7

**information** [16]_ - 3:17_, 9:18_, 12:22_, 13:25_, 17:15_, 25:6_, 25:21_, 26:7_, 27:6_, 29:17_, 48:19_, 56:8_, 67:20_, 79:11_, 80:6_, 94:17

**informing** [1]_ - 34:20

**infrared** [2]_ - 61:12_, 92:19

**initial** [5]_ - 6:18_, 15:6_, 78:12_, 79:21_, 80:7

**initiated** [1]_ - 41:6

**innocence** [6]_ - 28:6_, 72:24_, 73:3_, 73:20_, 73:23_, 75:9

**innocent** [3]_ - 28:1_, 73:12_, 73:14

**inquire** [1]_ - 93:21

**inquiries** [3]_ - 4:9_, 4:12_, 7:3

**inquiry** [1]_ - 89:15

**instances** [1]_ - 66:19

**instead** [1]_ - 27:15

**institutions** [1]_ - 105:7

**instructed** [4]_ - 9:25_, 11:11_, 33:2_, 77:10

**instruction** [3]_ - 74:4_, 74:17_, 102:24

**instructions** [13]_ - 4:5_, 13:11_, 23:20_, 77:4_, 78:9_, 78:17_, 96:1_, 96:11_, 99:12_, 99:18_,

100:17_, 101:2_, 102:12

**instructs** [1]_ - 78:5

**insurance** [1]_ - 59:16

**integrity** [1]_ - 26:1

**intend** [1]_ - 20:21

**intended** [3]_ - 29:7_, 34:1_, 34:2

**intent** [1]_ - 36:7

**intentionally** [1]_ - 35:14

**interaction** [1]_ - 69:17

**interactions** [1]_ - 38:9

**interesting** [1]_ - 65:15

**interests** [1]_ - 76:23

**interfere** [3]_ - 36:4_, 44:5_, 51:21

**interference** [1]_ - 31:16

**internet** [1]_ - 79:2

**interpreted** [1]_ - 28:19

**interrupt** [1]_ - 7:1

**interstate** [2]_ - 36:14_, 36:25

**intimidate** [1]_ - 36:4

**intimidating** [2]_ - 23:17_, 34:17

**introduce** [6]_ - 29:24_, 30:1_, 30:7_, 30:22_, 31:19_, 32:15

**introduced** [3]_ - 30:20_, 37:7_, 37:10

**introduction** [1]_ - 29:13

**introductions** [2]_ - 23:23_, 32:6

**Investigation** [15]_ - 68:12_, 68:13_, 68:15_, 68:20_, 68:23_, 69:4_, 69:6_, 69:11_, 69:14_, 69:15_, 69:21_, 69:23_, 70:7_, 70:14_, 70:16

**investigation** [6]_ - 79:1_, 79:5_, 79:20_, 101:10_, 101:17_, 101:19

**invited** [1]_ - 40:2

**involve** [1]_ - 5:10

**involved** [1]_ - 41:3

**isolation** [1]_ - 105:2

**issue** [17]_ - 9:3_, 13:5_, 16:14_, 17:12_, 17:13_, 17:14_, 18:5_, 18:6_, 19:9_, 39:12_, 53:3_, 73:19_, 86:25_, 93:21_, 101:8_, 102:14_, 104:8

**issued** [1]_ - 9:10

**issues** [26]_ - 9:14_, 11:14_, 11:21_, 12:14_, 12:15_, 13:9_, 13:25_, 15:6_, 20:18_, 29:20_, 31:14_, 33:3_, 51:21_, 66:2_, 79:22_, 81:21_, 85:23_, 86:10_, 87:3_, 91:13_, 93:9_, 93:12_, 99:2_, 103:10_, 105:11_, 105:18

**IT** [1]_ - 56:5

**item** [2]_ - 4:20_, 19:9

**items** [3]_ - 3:4_, 46:25_, 47:6

**itself** [4]_ - 24:21_, 44:2_, 96:8_, 98:2

## J

**jail** [2]_ - 12:24_, 104:15

**James** [1]_ - 30:16

**Jason** [1]_ - 69:21

**Jencks** [3]_ - 7:18_, 8:19_, 8:24

**Jerry** [1]_ - 70:13

**Jim** [1]_ - 2:10

**job** [12]_ - 24:9_, 29:15_, 40:7_, 40:9_, 41:20_, 45:23_, 45:24_, 51:13_, 53:2_, 55:9_, 59:15_, 90:20

**jobs** [5]_ - 40:5_, 41:10_, 52:4_, 58:23_, 58:25

**John** [6]_ - 2:8_, 30:5_, 37:12_, 37:13_, 72:1

**join** [1]_ - 10:13

**joining** [2]_ - 10:7_, 10:9

**Jorge** [2]_ - 69:11_, 69:12

**José** [1]_ - 70:14

**jot** [2]_ - 7:14_, 39:3

**Jr** [1]_ - 69:11

**Judge** [5]_ - 2:15_, 9:7_, 11:23_, 13:15_, 22:6

**judge** [2]_ - 33:17_, 77:14

**judges** [3]_ - 33:16_, 33:20_, 99:16

**judicial** [1]_ - 105:4

**July** [1]_ - 55:11

**Jupiter** [1]_ - 66:23

**JUROR** [128]_ - 39:21_, 40:8_, 41:2_, 41:14_, 41:23_, 42:7_, 42:15_,

42:18_, 42:20_, 42:23_, 43:2_, 43:5_, 43:9_, 43:15_, 44:7_, 44:12_, 44:15_, 45:2_, 45:9_, 45:15_, 45:18_, 45:22_, 45:25_, 46:4_, 46:8_, 46:18, 46:20_, 46:23_, 46:25_, 47:9_, 47:16_, 48:1_, 48:3_, 48:7_, 48:10_, 48:14_, 48:21_, 48:24_, 49:1_, 49:13_, 49:18_, 49:22_, 50:2_, 50:8_, 50:11_, 50:15_, 50:23_, 51:2_, 51:6_, 51:11_, 51:13_, 51:18_, 51:23_, 52:2_, 52:16_, 52:19_, 52:22_, 53:9_, 53:11_, 53:17_, 53:19_, 53:22_, 53:25_, 54:8_, 54:10_, 54:14_, 54:16_, 54:19_, 54:22_, 54:25_, 55:4_, 55:25_, 56:3_, 56:10_, 56:25_, 57:4_, 57:10_, 57:15_, 57:17_, 57:25_, 58:4_, 58:7_, 58:13_, 58:20_, 58:22_, 59:6_, 59:9_, 59:13_, 59:20_, 59:25_, 60:6_, 60:11_, 60:16_, 60:19_, 60:21_, 60:23_, 61:6_, 61:12_, 61:17_, 61:21_, 62:3_, 62:7_, 62:12_, 62:16_, 62:18_, 62:24_, 63:3_, 63:6_, 63:10_, 63:13_, 63:17_, 63:20_, 63:22_, 64:3_, 64:7_, 64:9_, 64:19_, 64:22_, 65:1_, 65:11_, 65:14_, 65:17_, 65:21_, 66:1_, 66:8_, 66:14_, 66:17_, 66:20

**juror** [43]_ - 13:9_, 14:8_, 14:16_, 15:3_, 15:18_, 17:17_, 18:24_, 19:5_, 21:14_, 23:12_, 25:2_, 25:3_, 26:14_, 26:23_, 39:11_, 39:19_, 62:9_, 63:16_, 67:18_, 80:6_, 81:7_, 81:22_, 82:17_, 83:10_, 84:25_, 86:16_, 87:14_, 88:19_, 88:22_, 89:2_, 89:11_, 89:21_, 89:24_, 92:3_, 92:11_, 93:20_, 94:7_, 94:8_, 94:23_, 96:2_, 97:3_, 97:7_, 100:18

**Juror** [149]_ - 14:17_, 15:13_, 15:17_, 15:22_, 16:5_, 16:10_, 16:18_, 16:21_, 16:23_, 17:3_, 17:7_, 17:12_, 17:20_, 17:24_, 18:15_, 18:20_,

18:21_, 39:11_, 39:18_, 42:3_, 42:4_, 43:13_, 44:14_, 45:13_, 45:14_, 46:24_, 47:14_, 47:15_, 48:20_, 48:22_, 50:7_, 51:10_, 51:25_, 52:1_, 53:5_, 53:8_, 54:6_, 54:7_, 55:3_, 56:9_, 57:16_, 58:19_, 59:12_, 60:20_, 61:20_, 62:14_, 62:15_, 63:5_, 63:18_, 63:19_, 64:6_, 64:23_, 64:24_, 65:10_, 65:25_, 67:1_, 81:19_, 81:25_, 82:2_, 82:7_, 82:10_, 82:16_, 82:20_, 82:23_, 83:7_, 83:12_, 83:17_, 83:19_, 84:1_, 84:7_, 84:15_, 84:18_, 85:5_, 85:7_, 85:12_, 85:14_, 85:22_, 85:25_, 86:8_, 86:13_, 86:19_, 87:6_, 87:9_, 87:11_, 87:13_, 87:19_, 87:21_, 87:24_, 88:9_, 88:13_, 88:15_, 88:25_, 89:6_, 89:18_, 89:23_, 90:3_, 90:8_, 90:9_, 90:18_, 90:22_, 91:3_, 91:5_, 91:11_, 91:17_, 91:19_, 91:21_, 92:15_, 92:18_, 93:7_, 93:19_, 94:2_, 94:5_, 94:11_, 94:14_, 94:16_, 94:20_, 95:4_, 95:6_, 95:15_, 95:21_, 95:23_, 96:13_, 96:15_, 96:18_, 97:19_, 97:23_, 98:6_, 98:11_, 98:19_, 100:21_, 100:22_, 100:23_, 100:24

**juror's** [7]_ - 14:18_, 15:4_, 15:20_, 16:16_, 17:25_, 19:2_, 88:16

**juror-specific** [2]_ - 13:9_, 21:14

**jurors** [34]_ - 3:7_, 3:8_, 4:3_, 5:5_, 12:3_, 13:10_, 13:18_, 19:18_, 20:5_, 20:7_, 20:19_, 21:13_, 22:12, 22:16_, 22:24_, 27:3_, 31:20_, 33:1_, 33:13_, 33:19_, 37:5_, 67:5_, 67:7_, 75:25_, 77:20_, 78:23_, 97:1_, 97:5_, 98:18_, 99:4_, 99:16_, 100:6_, 101:23_, 102:13

**Jurors** [1]_ - 84:16

**jury** [73]_ - 3:5_, 4:2_, 4:5_, 6:20_, 9:3_, 11:21_, 11:24_, 12:5_, 12:14_, 12:17_,

12:19_, 13:11_, 13:12_, 13:14_, 20:18_, 22:5_, 23:3_, 23:13_, 23:16_, 24:24_, 25:10_, 26:1_, 26:10_, 26:12_, 27:10_, 29:16_, 31:8_, 32:9_, 32:15_, 32:19_, 32:21_, 32:24_, 33:22_, 34:3_, 44:2_, 44:4_, 44:8_, 46:7_, 53:24_, 53:25_, 55:15_, 55:17_, 59:22_, 61:15_, 65:19_, 72:13_, 72:19_, 73:16_, 74:4_, 75:22_, 77:14_, 78:1_, 78:14_, 78:18_, 78:23_, 79:14_, 79:24_, 80:7_, 80:16_, 81:11_, 83:23_, 88:16_, 89:20_, 90:13_, 99:4_, 100:15_, 100:19_, 100:25_, 101:1_, 101:6_, 102:17_, 102:22_, 102:24

**justice** [4]_ - 18:11_, 18:13_, 72:23_, 95:17

**Justice** [2]_ - 18:17_, 30:17

**justification** [1]_ - 5:5

**justification-type** [1]_ - 5:5

**justify** [1]_ - 87:1

### K

**Kara** [1]_ - 69:14

**Kathryn** [1]_ - 71:12

**keep** [11]_ - 7:14_, 14:21_, 26:20_, 27:11_, 34:13_, 57:4_, 63:24_, 89:1_, 89:13_, 101:18_, 105:24

**keeping** [1]_ - 89:11

**Kelly** [1]_ - 70:5

**Kenneth** [1]_ - 70:17

**Kenny** [1]_ - 71:17

**Keone** [1]_ - 72:1

**kickoff** [2]_ - 39:24_, 40:1

**kids** [2]_ - 50:1_, 60:25

**kill** [1]_ - 35:14

**Kimberly** [1]_ - 70:21

**kind** [5]_ - 21:9_, 52:12_, 52:21_, 59:4_, 64:10

**kindergarten** [1]_ - 49:2

**knowing** [1]_ - 36:14

**knowingly** [4]_ - 35:21_, 36:9, 36:13_, 36:22

**knowledge** [3]_ - 33:8_,

69:17_, 71:3

**knows** [3]_ - 8:23_, 47:17_, 86:18

**Kristin** [1]_ - 68:11

**Kristy** [4]_ - 3:1_, 8:1_, 31:25_, 38:4

### L

**lack** [3]_ - 17:15_, 18:12_, 83:22

**ladies** [26]_ - 22:2_, 23:9_, 25:24_, 27:15_, 27:24_, 28:25_, 29:3_, 30:15_, 30:23_, 33:10_, 33:15_, 34:14_, 36:19_, 37:2_, 67:24_, 70:25_, 72:5_, 72:12_, 73:13_, 75:3_, 77:5_, 78:3_, 78:13_, 79:7, 100:13_, 101:11

**Lake** [1]_ - 54:14

**language** [1]_ - 67:13

**Lantry** [1]_ - 70:6

**laparoscopic** [1]_ - 56:15

**large** [1]_ - 97:4

**last** [7]_ - 2:14_, 9:22_, 38:13_, 71:7_, 80:19_, 97:22_, 102:14

**late** [1]_ - 41:19

**latest** [3]_ - 42:14_, 47:2_, 49:16

**Laufer** [1]_ - 70:8

**Laura** [2]_ - 24:5_, 69:19

**law** [18]_ - 5:12_, 33:2_, 73:12_, 73:23_, 74:19_, 75:1_, 75:8_, 75:17_, 76:9_, 77:17_, 78:5_, 78:6_, 78:7_, 78:9_, 79:9_, 79:14_, 96:1

**lawful** [1]_ - 73:18

**lawsuit** [1]_ - 93:9

**lawyer** [2]_ - 31:1_, 31:9

**lawyers** [2]_ - 26:16_, 37:9

**lay** [1]_ - 103:14

**Lazaro** [1]_ - 71:7

**leadership** [2]_ - 40:25_, 43:16

**leadership-type** [1]_ - 40:25

**learning** [4]_ - 19:1_, 40:11_, 47:21_, 63:25

**Learning** [1]_ - 40:13

**least** [10]_ - 9:10_, 19:19_, 20:15_, 23:15_, 48:8_, 67:22_, 86:3_, 89:14_, 97:25_, 104:23

**leave** [7]_ - 3:16_, 78:18_, 78:19_, 79:24_, 102:15_, 102:16_, 103:7

**leaving** [2]_ - 6:15_, 43:20

**left** [1]_ - 74:23

**leftover** [1]_ - 80:18

**legal** [3]_ - 51:15_, 93:9_, 93:12

**length** [3]_ - 28:23_, 38:12_, 57:6

**less** [3]_ - 18:5_, 53:1_, 87:4

**level** [2]_ - 44:6_, 47:4

**lies** [1]_ - 28:3

**Lieutenant** [1]_ - 69:5

**life** [3]_ - 5:23_, 25:18_, 85:18

**light** [1]_ - 82:22

**lightening** [1]_ - 5:16

**limit** [1]_ - 60:2

**limited** [1]_ - 6:2

**limits** [1]_ - 5:6

**lined** [1]_ - 49:15

**list** [11]_ - 4:17_, 5:25_, 20:21_, 21:4_, 26:11_, 35:8_, 98:22_, 98:25_, 99:10_, 100:15_, 103:23

**listed** [1]_ - 6:10

**listen** [6]_ - 24:25_, 78:13_, 79:18_, 100:18_, 101:7_, 101:13

**lists** [3]_ - 20:24_, 68:1_, 98:17

**literacy** [1]_ - 39:23

**litigants** [1]_ - 23:6

**live** [7]_ - 24:20_, 42:8_, 42:20_, 52:10_, 60:5_, 60:6_, 65:4

**living** [2]_ - 52:10_, 86:2

**Llanes** [1]_ - 70:13

**LLANES** [1]_ - 70:13

**local** [1]_ - 104:15

**locate** [1]_ - 51:18

**located** [1]_ - 47:2

**location** [2]_ - 24:20_, 105:8

**locations** [2]_ - 27:4_, 66:22

**logistical** [3]_ - 26:24_, 27:7_, 31:14

**logistics** [1]_ - 3:12

**LONG** [2]_ - 2:15_, 30:12

**Long's** [2]_ - 63:11_, 63:12

**look** [6]_ - 4:14_, 21:10_, 58:14_, 92:8_, 96:9_, 101:8

**looking** [3]_ - 57:5_, 58:23_, 73:5

**lose** [2]_ - 90:5_, 90:20

**loss** [1]_ - 91:23

**lost** [1]_ - 81:18

**loud** [2]_ - 67:25_, 98:15

**Loureiro** [1]_ - 70:14

**LOUREIRO** [1]_ - 70:15

**Lucie** [1]_ - 66:21

**lunch** [1]_ - 38:19

**Lyons** [1]_ - 104:19

### M

**ma'am** [10]_ - 39:20_, 42:5_, 44:4_, 50:9_, 51:9_, 51:17_, 53:22_, 54:25_, 63:2_, 64:5

**main** [1]_ - 55:8

**maintain** [1]_ - 102:12

**major** [2]_ - 35:10_, 35:15

**mama** [1]_ - 88:21

**manage** [3]_ - 46:1_, 62:7_, 62:12

**manager** [6]_ - 39:22_, 40:7_, 40:10_, 45:19_, 45:22_, 47:17

**managing** [1]_ - 105:7

**manner** [1]_ - 76:21

**manufacturer's** [1]_ - 36:23

**Maria** [3]_ - 2:9_, 30:13_, 37:13

**marine** [1]_ - 45:25

**marshal** [1]_ - 3:20

**Marshal** [1]_ - 26:24

**Marshall** [1]_ - 72:1

**marshals** [2]_ - 9:11_, 103:3

**Marshals** [1]_ - 9:17

massage [2] - 54:10, 89:19
material [3] - 7:18, 8:19, 101:22
materials [1] - 58:24
matter [7] - 3:12, 5:16, 7:8, 30:14, 51:15, 82:12, 84:23
matters [4] - 14:12, 28:25, 31:15, 79:23
Matthew [1] - 71:6
Mayo [1] - 70:16
Mays [1] - 70:17
McClay [3] - 9:25, 11:7, 71:25
McGee [1] - 70:21
McGreevy [1] - 70:21
mean [21] - 5:23, 6:5, 6:6, 12:3, 12:6, 14:8, 17:14, 20:13, 52:25, 65:18, 66:23, 68:2, 72:18, 89:8, 93:14, 93:15, 93:24, 97:10
meaningful [1] - 38:19
means [6] - 7:23, 25:9, 25:14, 74:22, 79:2, 79:16
measure [1] - 27:16
measures [3] - 29:4, 29:5, 29:6
mechanics [1] - 52:21
Med [2] - 54:16, 54:20
Medetis [4] - 2:10, 2:13, 30:13, 37:13
MEDETIS [2] - 2:15, 30:12
Medetis-Long [4] - 2:10, 2:13, 30:13, 37:13
MEDETIS-LONG [2] - 2:15, 30:12
media [5] - 24:22, 26:3, 26:6, 27:17, 34:11
Media [1] - 68:15
medical [5] - 16:19, 18:5, 39:12, 90:22, 91:6
medication [1] - 18:7
meet [4] - 32:12, 46:9, 75:14, 80:18
meeting [1] - 19:24
meetings [4] - 43:22,

44:7, 44:19, 46:10
meets [1] - 44:19
Melton [1] - 24:5
members [7] - 3:17, 23:7, 24:21, 26:5, 29:23, 34:11, 62:5
memory [1] - 76:20
mental [1] - 18:10
mention [3] - 28:10, 87:2, 104:7
mentioned [4] - 38:24, 59:7, 61:10, 104:12
merely [3] - 29:7, 37:3, 73:8
merit [1] - 6:18
merits [1] - 89:12
message [1] - 97:4
met [1] - 24:1
Mexico [1] - 42:24
Miami [1] - 104:22
mic [1] - 58:3
Michael [3] - 68:13, 70:5, 71:25
microphone [1] - 2:22
middle [2] - 5:15, 86:1
might [9] - 5:18, 6:1, 7:25, 25:23, 33:17, 43:25, 60:11, 76:18, 95:19
miles [2] - 60:4, 60:7
military [1] - 42:11
MILITELLO [8] - 2:25, 8:21, 9:16, 9:24, 11:8, 31:25, 105:23, 106:1
Militello [10] - 3:1, 8:18, 9:15, 11:6, 31:24, 32:1, 32:2, 38:4, 38:5, 38:9
Milo [1] - 104:17
Milsun [5] - 9:22, 10:10, 10:23, 71:25
mind [4] - 7:14, 27:11, 34:14, 101:18
mindset [1] - 12:4
mine [1] - 65:1
minimum [1] - 84:24
minor [1] - 52:12
minute [1] - 93:12
minutes [2] - 47:2, 105:15
misplace [1] - 102:16

misplaced [1] - 78:19
miss [3] - 54:12, 89:21, 90:10
missed [1] - 45:8
mitigation [1] - 44:22
mix [2] - 89:14, 94:3
model [1] - 40:20
mom [4] - 42:8, 42:23, 52:7, 63:22
moment [14] - 16:2, 23:12, 30:1, 30:2, 30:22, 39:2, 39:3, 39:17, 42:2, 47:24, 48:5, 55:22, 56:2, 77:20
momentarily [1] - 24:14
moments [4] - 24:8, 27:25, 34:23, 37:10
Monday [1] - 56:13
money [2] - 55:7, 90:4
month [7] - 43:17, 57:22, 58:16, 59:17, 61:6, 61:7, 61:15
Moran [1] - 24:1
morning [22] - 2:2, 2:8, 2:11, 2:17, 2:18, 2:25, 3:2, 3:3, 12:20, 13:15, 26:15, 27:4, 30:15, 31:25, 38:15, 38:18, 38:20, 41:8, 41:18, 57:19, 78:16, 99:19
mortgage [1] - 51:19
most [8] - 7:7, 7:9, 23:5, 28:25, 32:25, 33:15, 34:13, 74:16
mostly [2] - 32:16, 61:13
mother [1] - 94:21
motion [4] - 7:17, 7:18, 7:19, 9:5
move [6] - 4:21, 7:12, 13:1, 54:19, 86:11, 104:18
moved [1] - 104:15
moving [4] - 21:9, 51:17, 77:19, 104:14
MR [153] - 2:8, 2:18, 2:20, 3:14, 3:22, 3:25, 4:19, 4:25, 5:10, 5:22, 6:4, 6:9, 6:14, 6:21, 6:25, 7:20, 7:23, 8:8, 8:12, 8:15, 8:17,

9:7, 10:6, 10:16, 10:19, 10:24, 11:1, 11:3, 11:17, 11:19, 11:23, 12:1, 12:24, 13:14, 13:16, 14:2, 14:6, 14:14, 15:2, 15:7, 15:9, 15:12, 15:17, 15:22, 16:3, 16:10, 16:14, 16:18, 16:23, 17:2, 17:7, 17:11, 17:16, 17:18, 17:20, 17:24, 18:2, 18:7, 18:9, 18:15, 18:20, 19:8, 19:17, 19:20, 19:23, 20:11, 20:21, 21:8, 21:16, 21:18, 21:20, 30:4, 30:9, 30:15, 31:21, 81:5, 81:7, 81:22, 82:1, 82:7, 82:17, 82:21, 83:5, 83:7, 83:9, 83:18, 84:1, 84:11, 84:18, 84:20, 85:6, 85:14, 85:21, 85:25, 86:7, 86:13, 86:23, 87:7, 87:10, 87:13, 87:20, 87:24, 88:10, 88:15, 89:1, 89:7, 89:18, 89:24, 90:8, 90:17, 90:22, 91:4, 91:11, 91:18, 91:21, 92:3, 92:8, 92:10, 92:11, 92:18, 93:3, 93:8, 93:14, 93:24, 94:5, 94:12, 94:15, 94:20, 94:24, 95:6, 95:13, 95:16, 95:23, 96:14, 96:18, 97:10, 97:22, 98:7, 98:12, 98:23, 99:1, 99:5, 99:7, 99:15, 100:2, 103:12, 103:14, 103:24, 104:2, 104:12, 104:22, 105:13, 105:21
MS [10] - 2:15, 2:25, 8:21, 9:16, 9:24, 11:8, 30:12, 31:25, 105:23, 106:1
multiple [1] - 94:6
must [8] - 29:3, 31:5, 33:6, 75:14, 78:6, 80:22, 101:18, 101:24

### N

name [15] - 2:14, 22:5, 24:24, 25:5, 25:7, 25:11, 28:13, 30:4, 30:9, 30:12, 30:16, 51:4, 54:15, 71:7,

101:4

**names** [29] - 9:22, 19:15, 19:16, 21:1, 21:3, 21:6, 25:20, 26:11, 26:23, 27:12, 27:15, 28:16, 37:12, 67:25, 68:8, 68:25, 69:7, 69:16, 70:1, 70:10, 70:18, 70:24, 71:15, 71:21, 72:3, 88:1, 98:15, 99:10

**narrow** [1] - 82:9

**nationwide** [1] - 39:23

**nature** [10] - 25:8, 25:18, 32:10, 33:22, 39:20, 61:22, 67:16, 82:8, 83:14, 97:15

**near** [1] - 32:4

**necessarily** [1] - 68:2

**necessary** [3] - 80:17, 86:22, 104:10

**necessity** [1] - 28:23

**need** [16] - 13:9, 17:7, 29:16, 41:6, 42:2, 44:18, 48:18, 48:19, 50:5, 56:18, 80:13, 82:11, 89:4, 99:3, 99:11, 105:16

**needed** [5] - 9:18, 40:19, 41:17, 41:25, 62:13

**needs** [8] - 15:24, 31:15, 38:21, 50:11, 51:7, 85:16, 91:7, 103:1

**negative** [2] - 28:11, 28:12

**negatively** [1] - 27:22

**neglected** [1] - 29:14

**new** [5] - 40:16, 40:21, 47:21, 55:9, 56:5

**newness** [1] - 40:18

**news** [2] - 26:6, 88:20

**next** [26] - 4:11, 14:25, 15:2, 15:21, 16:9, 17:1, 17:6, 17:23, 18:14, 68:19, 69:3, 82:6, 83:4, 84:17, 85:13, 85:24, 86:12, 87:23, 88:14, 89:17, 90:7, 90:21, 91:10, 91:20, 92:17, 95:5

**niche** [1] - 82:25

**Nicholas** [1] - 71:13

**no-name** [1] - 28:13

**nobody** [5] - 25:9, 25:14, 27:21, 64:1, 75:11

**nondisclosure** [1] - 17:16

**none** [5] - 5:24, 26:17, 27:19, 79:7, 106:2

**normal** [5] - 9:20, 46:7, 46:16, 47:1, 76:14

**normally** [1] - 49:25

**north** [1] - 50:24

**note** [10] - 14:25, 15:17, 18:24, 19:9, 25:8, 39:10, 85:8, 93:21, 97:2, 105:7

**noted** [1] - 19:9

**nothing** [5] - 8:17, 28:3, 53:15, 74:23

**notice** [1] - 11:10

**notion** [1] - 4:9

**Number** [34] - 2:5, 14:17, 15:13, 15:22, 16:5, 16:11, 16:18, 16:21, 16:23, 17:3, 17:7, 17:12, 17:20, 17:24, 18:15, 18:20, 18:21, 22:9, 39:18, 47:14, 82:2, 82:7, 82:10, 82:23, 83:7, 83:12, 84:1, 84:18, 85:14, 86:1, 97:23, 104:2

**number** [37] - 13:17, 13:18, 14:5, 14:18, 15:3, 15:4, 15:14, 15:20, 15:23, 16:16, 16:20, 17:9, 17:17, 17:22, 17:25, 19:1, 19:20, 25:3, 27:11, 27:19, 28:22, 36:18, 36:23, 39:19, 39:25, 68:6, 76:15, 81:5, 83:12, 84:20, 84:22, 86:16, 97:4, 97:7, 104:2

**Numbers** [1] - 39:11

**numbers** [8] - 19:5, 19:10, 19:16, 25:4, 39:2, 39:4, 100:19, 103:23

**numerically** [1] - 14:15

**numerous** [1] - 91:13

**nursing** [1] - 43:19

**O**

**object** [1] - 98:10

**objection** [24] - 82:15, 83:16, 83:18, 84:13, 85:6, 85:20, 85:21, 86:7, 87:7, 87:8, 87:10, 87:18, 87:20, 89:22, 89:25, 90:1, 90:15, 90:17, 91:4, 91:18, 92:2, 94:12, 96:16, 98:12

**objections** [1] - 84:11

**objective** [2] - 3:5, 79:13

**obligation** [1] - 20:2

**obligations** [1] - 44:5

**obliterated** [2] - 36:18, 36:24

**observation** [1] - 80:20

**observations** [1] - 14:22

**obvious** [3] - 12:15, 14:10, 16:8

**obviously** [4] - 3:5, 89:1, 97:11, 106:2

**occasion** [1] - 99:22

**occasionally** [1] - 47:9

**occurrence** [1] - 88:2

**October** [8] - 38:17, 39:25, 49:8, 51:15, 55:13, 61:3, 61:16, 92:24

**off-base** [2] - 6:19, 6:22

**off-limits** [1] - 5:6

**offense** [4] - 5:14, 35:9, 36:19, 72:16

**offenses** [2] - 35:6, 73:12

**offer** [4] - 7:13, 12:9, 81:3, 104:13

**offered** [2] - 7:10, 51:5

**offering** [1] - 104:14

**Office** [8] - 3:15, 9:17, 68:14, 69:5, 69:12, 70:9, 70:17, 71:18

**office** [9] - 9:25, 52:5, 56:21, 56:23, 60:13, 62:20, 62:22, 62:23, 62:25

**OFFICER** [1] - 48:23

**officer** [2] - 29:15,

35:25

**Officer** [3] - 29:15, 29:18, 70:7

**official** [5] - 26:11, 27:8, 33:4, 36:6, 101:20

**officials** [1] - 105:7

**oil** [1] - 59:20

**older** [1] - 61:1

**once** [2] - 44:17, 44:19

**one** [57] - 4:20, 4:21, 5:18, 6:11, 6:14, 7:16, 12:24, 23:5, 26:4, 29:13, 33:22, 36:16, 38:20, 39:17, 40:23, 40:25, 44:21, 45:9, 45:10, 46:4, 46:8, 47:17, 47:24, 48:5, 48:10, 48:14, 48:15, 49:7, 49:8, 49:25, 50:17, 53:1, 55:8, 55:22, 59:15, 61:2, 62:3, 62:4, 62:24, 63:7, 65:4, 66:23, 68:2, 77:21, 81:4, 84:1, 88:2, 88:12, 89:12, 92:6, 94:8, 97:25, 99:15, 102:14, 103:7

**one-fifth** [1] - 44:21

**one-time** [1] - 88:2

**ones** [3] - 8:13, 19:10, 57:21

**ongoing** [1] - 91:13

**open** [9] - 20:8, 25:11, 26:8, 28:13, 67:4, 80:24, 81:23, 95:4, 99:10

**opening** [1] - 102:4

**opens** [1] - 42:9

**operate** [2] - 61:23, 61:24

**operating** [1] - 24:3

**Operational** [1] - 68:15

**opines** [1] - 88:17

**opinions** [1] - 33:7

**opportunity** [9] - 7:13, 9:13, 12:8, 24:11, 76:16, 80:18, 80:19, 80:21, 90:12

**oppose** [4] - 36:4, 81:24, 82:1, 98:8

**opposed** [1] - 4:22

**opposing** [1] - 82:19

**opposition** [1] - 4:18

**option** [1] - 104:20

**Oran** [2] - 9:22, 71:25
**order** [6] - 3:7, 4:2, 10:2, 39:5, 100:9, 106:4
**Order** [2] - 2:1, 21:25
**ordered** [1] - 11:11
**orders** [2] - 26:20, 29:16
**ordinarily** [2] - 8:23, 49:17
**organization** [1] - 81:9
**organizational** [1] - 52:4
**oriented** [1] - 7:3
**otherwise** [3] - 10:13, 67:17, 105:9
**outcome** [3] - 23:7, 33:18, 76:23
**outline** [1] - 26:10
**outlined** [1] - 3:7
**outside** [10] - 15:19, 15:25, 17:8, 18:25, 26:18, 26:19, 27:8, 34:6, 79:11
**outward** [1] - 24:12
**overall** [1] - 27:9
**overly** [1] - 23:11
**oversee** [1] - 40:11
**oversight** [1] - 41:4
**overview** [1] - 32:7
**own** [16] - 3:21, 8:4, 31:9, 45:21, 59:7, 60:23, 61:22, 61:23, 61:24, 62:2, 62:18, 74:16, 84:6, 90:2, 101:19
**owner** [6] - 46:2, 52:18, 52:19, 58:22, 59:14, 91:25
**Oxendine** [1] - 70:22

**P**

**P-L-A-T-A** [1] - 71:8
**p.m** [11] - 12:14, 13:6, 21:23, 32:12, 80:9, 100:7, 101:6, 106:7
**packet** [1] - 41:5
**paddle** [3] - 24:12, 25:2, 39:2
**paddles** [3] - 78:18, 79:24, 102:15

**page** [1] - 16:21
**pages** [1] - 96:20
**paid** [5] - 46:16, 54:23, 64:11, 87:14, 87:15
**Palestine** [1] - 6:24
**Palm** [13] - 35:12, 35:20, 36:2, 36:12, 36:21, 49:3, 49:23, 68:14, 69:5, 69:12, 70:8, 70:17, 71:17
**paper** [3] - 37:4, 58:15, 73:8
**paperwork** [4] - 3:18, 55:6, 58:7, 58:10
**parentheses** [1] - 7:25
**parents** [4] - 42:20, 49:15, 50:3, 87:3
**part** [10] - 4:13, 7:7, 14:2, 28:20, 33:16, 40:16, 43:16, 43:17, 43:19, 99:22
**partially** [2] - 77:24, 77:25
**participation** [2] - 73:5, 75:3
**particular** [8] - 4:8, 18:3, 20:7, 41:17, 41:25, 66:12, 80:14, 81:7
**particularized** [2] - 38:25, 43:14
**particularly** [1] - 88:22
**parties** [14] - 7:12, 12:13, 20:23, 23:2, 25:8, 26:19, 29:7, 32:17, 33:11, 68:1, 79:23, 99:16, 101:25, 103:1
**parties'** [1] - 82:22
**partner** [2] - 8:9, 49:3
**party** [1] - 25:1
**past** [1] - 104:9
**patience** [2] - 33:24, 100:12
**patients** [2] - 92:20
**Patrick** [1] - 70:6
**Patterson** [1] - 70:23
**pause** [1] - 24:14
**pay** [8] - 46:6, 46:15, 48:17, 51:22, 63:15, 64:14, 68:6, 71:1
**paying** [3] - 41:12, 88:6, 88:10

**payment** [1] - 83:23
**pen** [1] - 19:24
**pending** [2] - 7:16, 9:6
**Pennsylvania** [2] - 56:12, 90:23
**PEO** [1] - 54:1
**people** [3] - 47:24, 48:5, 99:12
**per** [2] - 44:17, 44:19
**percent** [1] - 77:22
**perfectly** [1] - 77:25
**perform** [3] - 22:4, 23:6, 93:20
**performance** [1] - 36:6
**performed** [1] - 56:14
**performing** [1] - 67:17
**perhaps** [5] - 4:23, 23:11, 23:17, 76:22, 81:16
**period** [3] - 40:4, 43:21, 57:12
**periodically** [1] - 68:8
**permissible** [1] - 50:21
**permission** [1] - 3:14
**permit** [3] - 79:17, 101:12, 101:22
**permits** [1] - 23:6
**permitted** [4] - 25:15, 60:8, 102:7, 103:4
**Perry** [1] - 71:6
**person** [16] - 5:11, 37:23, 41:3, 41:4, 44:10, 45:10, 47:1, 47:11, 56:5, 60:24, 73:13, 77:23, 85:16, 92:19, 92:21, 97:24
**personal** [11] - 3:21, 25:6, 25:20, 26:7, 29:17, 33:8, 34:1, 44:1, 51:20, 54:1, 81:21
**personally** [1] - 37:19
**personnel** [2] - 23:24, 32:16
**persons** [1] - 25:14
**perspective** [2] - 11:25, 86:15
**pest** [2] - 53:19, 87:16
**pharmacist** [1] - 51:14
**phase** [5] - 12:19, 21:5, 32:9, 78:12, 99:13
**phone** [2] - 52:9, 79:3

**photograph** [1] - 25:16
**phrase** [1] - 6:2
**physical** [4] - 58:6, 65:2, 67:15, 71:18
**Physical** [1] - 68:22
**pick** [8] - 33:16, 42:14, 49:2, 49:17, 50:2, 50:18, 61:2, 79:3
**picking** [2] - 50:1, 61:25
**pickup** [7] - 42:12, 47:1, 47:8, 47:10, 49:21, 49:24, 62:11
**picture** [2] - 25:16, 25:25
**piece** [2] - 41:6, 79:11
**Pierce** [1] - 22:3
**place** [3] - 28:24, 43:22, 59:17
**plainly** [1] - 95:17
**plan** [4] - 43:17, 43:19, 44:22, 86:11
**planned** [1] - 56:12
**planning** [2] - 10:10, 44:9
**plans** [1] - 10:18
**Plata** [3] - 71:6, 71:7
**play** [1] - 28:20
**pleasant** [3] - 102:9, 102:11, 106:5
**pleasantries** [1] - 102:4
**pleasure** [2] - 22:3, 22:24
**pled** [1] - 94:8
**plenty** [1] - 73:6
**point** [15] - 9:3, 11:15, 25:12, 27:24, 29:9, 73:19, 75:24, 77:20, 80:4, 88:19, 93:19, 99:14, 103:17, 104:6, 105:10
**points** [1] - 88:5
**policies** [1] - 47:19
**policy** [1] - 7:3
**policy-oriented** [1] - 7:3
**polite** [1] - 99:18
**politically** [1] - 7:3
**population** [4] - 13:1, 104:14, 104:18, 105:3
**Port** [1] - 66:21

**pose** [1]_ - 5:18
**posed** [1]_ - 24:8
**poses** [2]_ - 44:3_, 92:22
**position** [20]_ - 7:5_, 7:22
_, 40:9_, 40:17_, 40:19_,
47:23_, 64:13_, 81:12_,
81:19_, 85:4_, 86:6_,
88:24_, 89:5_, 91:2_,
91:17_, 93:6_, 94:10_,
95:14_, 97:9_, 98:6
**possess** [3]_ - 35:21_,
36:13_, 36:22
**possessing** [3]_ - 35:17
_, 36:10_, 36:18
**possession** [2]_ - 8:4_,
25:13
**possible** [6]_ - 3:11_,
13:12_, 20:6_, 21:22_,
50:21_, 74:8
**potential** [8]_ - 5:13_,
10:17_, 13:18_, 14:16_,
15:13_, 16:25_, 17:16_,
68:4
**potentially** [7]_ - 4:22_,
6:1_, 16:15_, 17:21_, 45:8
_, 61:16_, 67:21
**power** [1]_ - 53:14
**powerful** [1]_ - 33:20
**practical** [1]_ - 74:22
**practice** [1]_ - 99:20
**pre** [5]_ - 46:10_, 49:6_,
51:4_, 85:1_, 89:19
**pre-bid** [1]_ - 46:10
**pre-booked** [1]_ - 85:1
**pre-care** [1]_ - 51:4
**pre-enrolled** [1]_ - 89:19
**precautionary** [1]_ -
27:16
**predetermined** [1]_ -
49:6
**prefer** [3]_ - 2:13_, 34:5_,
57:4
**preliminaries** [1]_ -
29:22
**preliminarily** [3]_ -
18:19_, 19:19_, 80:25
**preliminary** [12]_ - 4:5_,
4:6_, 8:4_, 13:11_, 13:12
_, 14:8_, 20:9_, 32:10_,
88:5_, 89:14_, 102:22_,
102:24
**preoccupied** [1]_ - 96:5
**prepaid** [1]_ - 89:19

**preparations** [1]_ - 10:2
**prepare** [2]_ - 39:25_,
103:22
**prepared** [8]_ - 11:11_,
12:17_, 13:17_, 13:24_,
20:3_, 20:11_, 80:4_,
93:19
**preparing** [1]_ - 58:24
**presence** [6]_ - 15:19_,
15:25_, 17:8_, 18:25_,
34:6_, 34:9
**present** [10]_ - 3:1_, 13:7
_, 20:4_, 41:24_, 44:12_,
59:1_, 78:6_, 80:11_,
99:11_, 105:11
**presentation** [2]_ - 16:1
_, 81:1
**presented** [8]_ - 4:8_,
33:4_, 79:10_, 79:15_,
82:5_, 84:14_, 87:22_,
101:20
**presently** [1]_ - 57:18
**presents** [1]_ - 90:6
**Preserva** [3]_ - 54:16_,
54:20_, 54:21
**president** [3]_ - 35:14_,
43:19_, 59:19
**President** [1]_ - 88:17
**presidential** [2]_ - 35:10
_, 35:15
**presiding** [1]_ - 22:7
**pressure** [7]_ - 57:19_,
57:20_, 65:2_, 65:5_,
91:13_, 95:8_, 96:3
**pressures** [2]_ - 27:14_,
64:18
**presumed** [3]_ - 28:1_,
73:12_, 73:14
**presumption** [4]_ -
72:24_, 73:2_, 73:20_,
73:23
**pretrial** [1]_ - 12:10
**pretty** [9]_ - 46:9_, 52:3_,
52:5_, 64:19_, 66:21_,
66:22_, 66:24_, 84:4_,
95:9
**prevented** [1]_ - 95:25
**previous** [1]_ - 56:14
**previously** [5]_ - 36:10_,
36:15_, 57:7_, 83:9_, 94:6
**primary** [4]_ - 49:1_,
50:12_, 50:17_, 85:18
**principle** [2]_ - 74:6_,

77:16
**principles** [2]_ - 28:8_,
72:23
**prison** [1]_ - 8:17
**private** [4]_ - 15:25_,
25:18_, 80:14_, 86:21
**problem** [6]_ - 52:11_,
55:12_, 61:8_, 83:2_, 92:4
_, 104:13
**problematic** [1]_ - 84:23
**problems** [4]_ - 9:19_,
19:10_, 29:9_, 81:14
**procedural** [2]_ - 31:13_,
31:15
**procedure** [4]_ - 25:24_,
27:2_, 27:9_, 27:22
**procedures** [1]_ - 24:15
**proceed** [3]_ - 12:18_,
14:15_, 20:10
**proceeding** [7]_ - 23:16
_, 24:18_, 24:23_, 25:15_,
29:8_, 34:8_, 86:1
**proceedings** [11]_ - 9:4
_, 23:19_, 24:16_, 24:19_,
24:22_, 25:11_, 33:4_,
34:12_, 101:21_, 103:8_,
106:7
**process** [19]_ - 3:6_, 4:10
_, 4:13_, 6:20_, 9:2_,
14:11_, 20:22_, 24:24_,
25:10_, 26:12_, 27:10_,
32:8_, 32:19_, 32:22_,
33:1_, 33:11_, 41:5_,
51:16_, 80:7
**proclaimed** [1]_ - 86:25
**produce** [1]_ - 79:9
**profession** [2]_ - 82:18_,
98:7
**professional** [2]_ - 44:1
_, 44:5
**professionally** [1]_ -
41:16
**professor** [1]_ - 44:16
**program** [3]_ - 40:9_,
54:12_, 90:4
**programs** [1]_ - 40:11
**prohibition** [1]_ - 25:12
**project** [3]_ - 39:22_, 40:7
_, 90:19
**promptly** [3]_ - 101:5_,
101:16_, 106:6
**pronouncing** [1]_ - 65:3
**proof** [12]_ - 28:3_, 35:7_,

37:3_, 72:25_, 74:5_, 74:7
_, 74:9_, 74:13_, 74:14_,
74:17_, 74:22_, 75:13
**properly** [1]_ - 21:13
**proposal** [11]_ - 82:6_,
83:4_, 84:17_, 85:13_,
85:24_, 86:12_, 88:14_,
89:17_, 90:7_, 90:21_,
91:10
**proposals** [1]_ - 62:21
**propose** [1]_ - 58:25
**proposed** [6]_ - 4:14_,
9:14_, 11:6_, 38:25_, 68:1
_, 94:4
**proposes** [1]_ - 5:2
**proposition** [1]_ - 74:19
**propounded** [1] - 22:15
**proprietor** [5]_ - 16:24_,
86:14_, 91:22_, 92:21_,
93:25
**proprietors** [2]_ - 86:24
_, 91:23
**prosecuting** [1]_ - 30:21
**prosecution** [3]_ - 26:19
_, 29:23_, 37:9
**prosecutors** [2]_ - 34:10
_, 37:7
**PROSPECTIVE** [128]_ -
39:21_, 40:8_, 41:2_,
41:14_, 41:23_, 42:7_,
42:15_, 42:18_, 42:20_,
42:23_, 43:2_, 43:5, 43:9
_, 43:15_, 44:7_, 44:12_,
44:15_, 45:2_, 45:9_,
45:15_, 45:18_, 45:22_,
45:25_, 46:4_, 46:8_,
46:18, 46:20_, 46:23_,
46:25_, 47:9_, 47:16_,
48:1_, 48:3_, 48:7_, 48:10
_, 48:14_, 48:21_, 48:24_,
49:1_, 49:13_, 49:18_,
49:22_, 50:2_, 50:8_,
50:11_, 50:15_, 50:23_,
51:2_, 51:6_, 51:11_,
51:13_, 51:18_, 51:23_,
52:2_, 52:16_, 52:19_,
52:22_, 53:9_, 53:11_,
53:17_, 53:19_, 53:22_,
53:25_, 54:8_, 54:10_,
54:14_, 54:16_, 54:19_,
54:22_, 54:25_, 55:4_,
55:25_, 56:3_, 56:10_,
56:25_, 57:4_, 57:10_,
57:15_, 57:17_, 57:25_,
58:4_, 58:7_, 58:13_,
58:20_, 58:22_, 59:6_,
59:9_, 59:13_, 59:20_,

Case 9:24-cr-80116-AMC   Document 325   Entered on FLSD Docket 09/29/2025   Page 124 of 130

124

59:25_, 60:6_, 60:11_, 60:16_, 60:19_, 60:21_, 60:23_, 61:6_, 61:12_, 61:17_, 61:21_, 62:3_, 62:7_, 62:12_, 62:16_, 62:18_, 62:24_, 63:3_, 63:6_, 63:10_, 63:13_, 63:17_, 63:20_, 63:22_, 64:3_, 64:7_, 64:9_, 64:19_, 64:22_, 65:1_, 65:11_, 65:14_, 65:17_, 65:21_, 66:1_, 66:8_, 66:14_, 66:17_, 66:20

**Prospective** [9]_ - 82:10_, 83:7_, 84:1_, 84:7_, 84:18_, 85:25_, 86:19_, 87:24_, 97:23

**prospective** [50]_ - 13:17_, 14:16_, 14:18_, 15:3, 15:12_, 15:17_, 15:18_, 15:20_, 15:22_, 16:5, 16:10_, 16:16_, 16:18_, 17:3_, 17:24_, 19:2_, 20:5_, 21:13_, 22:12_, 22:24_, 31:20_, 37:5_, 78:22_, 81:7_, 84:25_, 85:14_, 86:13_, 87:13_, 87:14_, 88:15_, 88:16_, 89:18_, 89:20_, 90:8_, 90:22_, 91:11_, 91:21_, 92:18_, 92:20_, 94:5_, 94:8_, 94:20_, 95:6_, 95:23_, 96:2_, 96:18_, 96:25_, 101:23

**protect** [2]_ - 27:16_, 29:7

**protected** [2]_ - 23:4_, 28:25

**protecting** [1]_ - 26:5

**prove** [9]_ - 28:4_, 28:6_, 35:1_, 72:14_, 72:20_, 74:2_, 74:8_, 74:24_, 75:9

**proved** [1]_ - 76:1

**proven** [3]_ - 28:1_, 73:15_, 75:23

**provide** [12]_ - 8:24_, 9:13_, 12:9_, 12:22_, 25:5_, 28:6_, 42:4_, 46:9_, 48:16_, 75:9_, 77:3_, 80:22

**provided** [18]_ - 3:10_, 8:14_, 9:17_, 9:24_, 13:25_, 17:15_, 19:13_, 20:15_, 20:25_, 21:1_, 21:2_, 26:16_, 26:23_, 68:1_, 80:6_, 82:3_, 90:2_, 101:9

**provider** [5]_ - 45:18_, 53:13_, 55:7_, 83:13_, 93:24

**provides** [1]_ - 41:3

**providing** [3]_ - 3:19_, 7:12_, 40:21

**province** [1]_ - 77:14

**proving** [1]_ - 73:25

**pry** [1]_ - 34:1

**public** [10]_ - 24:17_, 24:18_, 24:23_, 25:10_, 26:6_, 27:12_, 28:24_, 34:8_, 34:11

**publicity** [2]_ - 26:3_, 28:21

**publicly** [2]_ - 26:18_, 28:16

**punishable** [1]_ - 36:15

**punishment** [1]_ - 77:17

**purchasing** [1]_ - 7:2

**purpose** [1]_ - 34:2

**purposes** [5]_ - 12:16_, 14:10_, 26:24_, 27:7_, 29:1

**push** [1]_ - 41:6

**put** [7]_ - 6:9_, 6:11_, 7:24_, 43:15_, 46:25_, 51:7_, 63:8

**putting** [1]_ - 40:24

## Q

**qualifications** [1] - 22:16

**qualify** [2]_ - 16:4_, 16:5

**qualms** [1]_ - 75:16

**quarter** [2]_ - 54:12_, 90:5

**questioned** [2]_ - 15:19_, 17:8

**questioning** [6]_ - 16:6_, 16:15_, 33:23_, 34:1_, 88:5_, 92:25

**questionnaire** [20]_ - 3:9_, 14:19_, 15:4_, 15:13_, 16:21_, 38:24_, 67:8_, 80:23_, 83:10_, 84:21_, 85:11_, 88:17_, 92:6_, 92:14_, 93:5_, 94:8_, 96:9_, 96:20_, 97:1_, 97:16

**questionnaires** [21]_ - 3:11_, 3:20_, 3:24_, 12:17_, 12:21_, 14:1_, 19:13_, 20:15_, 26:15_, 26:16_, 26:17_, 26:20_, 38:15_, 39:16_, 67:21_, 80:6_, 102:25_, 103:2_, 103:6_, 93:24

105:24_, 106:3

**questions** [34]_ - 3:23_, 4:14_, 4:15_, 5:4_, 5:24_, 6:18_, 7:5_, 7:7_, 7:10_, 7:11_, 8:4_, 12:1_, 12:2_, 12:3_, 12:5_, 12:7_, 12:9_, 18:16_, 19:3_, 21:14_, 22:15_, 24:7_, 25:17_, 33:25_, 34:4_, 53:6_, 58:3_, 63:24_, 78:12_, 88:16_, 89:8_, 96:5_, 97:2

**quick** [1]_ - 20:1

**quickly** [3]_ - 3:11_, 55:24_, 56:23

**quieter** [3]_ - 104:16_, 104:17_, 105:3

**quite** [3]_ - 39:25_, 63:8_, 86:9

**quote** [2]_ - 95:24_, 95:25

## R

**race** [3]_ - 18:22_, 96:22_, 97:17

**Rachel** [1]_ - 68:19

**radiography** [1]_ - 61:11

**raise** [9]_ - 2:22_, 12:17_, 21:15_, 22:13_, 24:12_, 80:21_, 103:18_, 104:5_, 105:19

**raised** [1]_ - 94:6

**ramifications** [1]_ - 87:17

**Randy** [1]_ - 71:23

**rate** [1]_ - 63:15

**rather** [1]_ - 79:10

**rationale** [3]_ - 20:9_, 20:12_, 83:8

**Raymond** [1]_ - 72:2

**reach** [5]_ - 29:17_, 33:6_, 45:8_, 76:11_, 78:2

**read** [7]_ - 20:21_, 67:25_, 74:3_, 79:18_, 98:15_, 100:14_, 101:13

**reading** [3]_ - 20:12_, 67:13_, 88:1

**ready** [2]_ - 11:23_, 12:18

**real** [4]_ - 6:12_, 55:10_, 74:11_, 81:13

**realistically** [1]_ - 45:7

**realize** [2]_ - 57:6_, 57:12

**realizes** [1]_ - 33:22

**really** [21]_ - 5:25_, 6:19_,

7:3_, 33:20_, 42:9_, 42:11_, 42:12_, 44:3_, 49:5_, 55:18_, 56:18_, 60:25_, 61:2_, 61:3_, 61:21_, 64:13_, 64:14_, 66:17_, 76:1_, 102:2

**rearrange** [1]_ - 21:11

**reason** [15]_ - 17:2_, 25:24_, 27:13_, 28:9_, 34:4_, 43:15_, 43:22_, 44:2_, 74:12_, 79:7_, 81:6_, 84:19_, 85:10_, 93:12_, 95:19

**reasonable** [9]_ - 28:4_, 35:1_, 72:15_, 72:21_, 74:3_, 74:10_, 74:11_, 74:14_, 75:24

**reasonably** [2]_ - 48:8_, 56:23

**reasoning** [1]_ - 64:9

**reasons** [8]_ - 82:3_, 83:14_, 85:8_, 86:18_, 90:2_, 97:6_, 97:19_, 105:4

**receipt** [1]_ - 12:21

**receive** [2]_ - 83:23_, 101:2

**received** [2]_ - 7:19_, 23:12

**receiving** [1]_ - 105:10

**recently** [1]_ - 40:17

**recess** [6]_ - 13:5_, 13:6_, 21:23_, 80:8_, 80:9_, 100:7

**reciprocal** [2]_ - 7:18_, 8:19

**recognize** [13]_ - 68:8_, 68:16_, 68:25_, 69:7_, 69:16_, 69:25_, 70:10_, 70:18_, 70:24_, 71:9_, 71:15_, 71:21_, 72:3

**recognized** [1]_ - 23:3

**recollection** [1]_ - 95:13

**recommendations** [1]_ - 105:5

**reconvene** [1]_ - 12:13

**record** [6]_ - 2:6_, 19:12_, 20:14_, 25:15_, 39:10_, 105:8

**refer** [2]_ - 39:15_, 58:15

**reference** [3]_ - 14:17_, 15:13_, 15:23

**referenced** [2]_ - 36:2_, 38:23

**referring** [3]_ - 4:3_, 25:4_, 25:11

**reflecting** [1]_ - 27:22

**reflection** [1]_ - 27:19

**refrain** [1]_ - 25:21

**regarding** [1]_ - 75:17

**regardless** [1]_ - 86:21

**regular** [2]_ - 14:11_, 63:15

**relate** [3]_ - 7:7_, 8:5_, 89:10

**related** [5]_ - 12:14_, 15:14_, 18:9_, 25:12_, 28:18

**relates** [3]_ - 18:7_, 18:10_, 19:1

**relationship** [6]_ - 38:1_, 68:5_, 69:1_, 69:8_, 70:1_, 70:19

**relative** [1]_ - 97:1

**relatives** [2]_ - 42:16_, 49:4

**relevance** [2]_ - 6:20_, 7:4

**religion** [2]_ - 18:22_, 97:17

**relocation** [1]_ - 62:3

**rely** [2]_ - 74:15_, 82:13

**remain** [4]_ - 72:25_, 75:5_, 75:18_, 76:9

**remains** [1]_ - 9:6

**remarks** [3]_ - 79:21_, 83:10_, 105:10

**remember** [2]_ - 101:13_, 101:24

**reminded** [2]_ - 55:22_, 101:11

**reminder** [2]_ - 99:24_, 102:21

**removed** [1]_ - 36:23

**render** [2]_ - 67:17_, 73:18

**rendered** [1]_ - 77:11

**Renee** [4]_ - 3:1_, 8:1_, 32:1_, 38:4

**renewals** [1]_ - 59:16

**repair** [2]_ - 52:3_, 52:18

**repeat** [2]_ - 56:1_, 75:20

**repeatedly** [1]_ - 93:18

**report** [1]_ - 101:1

**reporter** [2]_ - 24:5_,

55:23

**represent** [3]_ - 30:25_, 31:2_, 32:6

**representation** [1]_ - 94:7

**representations** [1]_ - 84:6

**represented** [1]_ - 94:17

**representing** [3]_ - 30:11_, 30:14_, 30:17

**request** [4]_ - 21:2_, 80:15_, 88:12_, 93:16

**requested** [1]_ - 55:5

**requests** [1]_ - 105:4

**require** [2]_ - 16:15_, 75:8

**required** [3]_ - 56:3_, 72:20_, 100:16

**requires** [1]_ - 105:1

**reschedule** [5]_ - 56:19_, 56:20_, 56:24_, 57:7_, 91:8

**rescheduled** [1]_ - 56:17

**research** [3]_ - 79:1_, 79:20_, 101:18

**reserve** [1]_ - 12:8

**respect** [3]_ - 10:4_, 11:6

**respective** [1]_ - 78:19

**respond** [3]_ - 5:12_, 8:2_, 72:8

**responded** [2]_ - 34:24_, 72:10

**response** [15]_ - 15:14_, 15:23_, 16:19_, 16:24_, 17:9_, 18:15_, 83:11_, 86:16_, 88:19_, 92:11_, 95:6_, 95:24_, 96:19_, 97:3_, 104:12

**responses** [3]_ - 17:21_, 19:1_, 88:16

**responsibilities** [1]_ - 41:20

**responsible** [2]_ - 40:18_, 58:23

**restored** [2]_ - 88:18_, 89:9

**restoring** [1]_ - 89:9

**restroom** [1]_ - 102:2

**rests** [1]_ - 73:25

**result** [6]_ - 85:2_, 85:19_, 86:4_, 88:23_, 91:24_, 95:9

**resume** [1]_ - 106:5

**retail** [1]_ - 62:4

**retire** [1]_ - 78:1

**retrieve** [2]_ - 3:18_, 103:6

**return** [6]_ - 4:4_, 21:21_, 78:14_, 100:16_, 101:5_, 102:9

**returning** [2]_ - 99:12_, 102:11

**reveal** [1]_ - 25:20

**review** [10]_ - 3:21_, 3:23_, 6:18_, 12:16_, 20:16_, 82:23_, 90:2_, 103:1_, 103:9_, 105:24

**reviewed** [1]_ - 7:21

**revisit** [2]_ - 9:2_, 67:22

**Rica** [2]_ - 10:6_, 10:9

**Riddell** [1]_ - 71:11

**RIDDELL** [1]_ - 71:11

**ride** [1]_ - 65:4

**rights** [2]_ - 88:18_, 89:9

**rise** [6]_ - 22:12_, 24:2_, 39:1_, 79:24_, 102:13_, 102:17

**River** [2]_ - 40:13_, 65:12

**Riverside** [1]_ - 40:2

**road** [4]_ - 4:21_, 5:15_, 6:5_, 6:6

**Robert** [1]_ - 68:23

**role** [5]_ - 23:9_, 23:20_, 33:18_, 40:10_, 41:1

**roles** [1]_ - 59:2

**rolling** [3]_ - 3:8_, 3:11_, 12:21

**Ronnie** [1]_ - 70:22

**roof** [1]_ - 65:6

**roofing** [3]_ - 45:19_, 45:21_, 46:15

**room** [11]_ - 27:21_, 44:1_, 73:17_, 75:22_, 78:1_, 78:3_, 78:4_, 78:14_, 78:24_, 80:16_, 101:1

**Rose** [1]_ - 71:12

**round** [1]_ - 97:22

**Routh** [80]_ - 2:5_, 2:17_, 2:18_, 2:20_, 2:23_, 3:19_, 3:24_, 5:20_, 7:19_, 9:9_, 9:22_, 10:3_, 11:15_, 11:18_, 11:24_, 13:4_, 13:24_, 14:21_, 19:5_, 21:1_, 21:14_, 22:8_,

29:25_, 30:2_, 30:21_, 30:24_, 31:9_, 31:16_, 31:19_, 31:21_, 32:4_, 32:5_, 34:21_, 35:13_, 35:21_, 35:23_, 36:8_, 36:9_, 36:11_, 36:17_, 36:20_, 37:20_, 37:22_, 38:1_, 71:25_, 72:7_, 74:24_, 81:2_, 81:19_, 82:16_, 83:16_, 83:24_, 84:9_, 85:4_, 85:20_, 86:6_, 87:5_, 87:18_, 88:8_, 88:24_, 89:22_, 90:15_, 91:2_, 91:17_, 92:2_, 93:6_, 94:1_, 94:10_, 94:23_, 95:14_, 96:12_, 97:9_, 98:5_, 98:24_, 99:6_, 99:25_, 103:3_, 103:13_, 104:7_, 105:12

**ROUTH** [76]_ - 2:18_, 2:20_, 3:22_, 3:25_, 5:22_, 6:4_, 6:9_, 6:14_, 6:21_, 6:25_, 7:20_, 7:23_, 8:8_, 8:12_, 8:15_, 8:17_, 10:6_, 10:16_, 10:19_, 10:24_, 11:1_, 11:3_, 11:19_, 12:1_, 12:24_, 14:2_, 14:6_, 19:8_, 19:17_, 19:20_, 19:23_, 20:11_, 21:16_, 21:18_, 31:21_, 81:22_, 82:1_, 82:17_, 82:21_, 83:18_, 84:11_, 85:6_, 85:21_, 86:7_, 87:7_, 87:10_, 87:20_, 88:10_, 89:1_, 89:7_, 89:24_, 90:17_, 91:4_, 91:18_, 92:3_, 92:10_, 93:8_, 93:14_, 93:24_, 94:12_, 94:15_, 94:24_, 95:16_, 96:14_, 97:10_, 98:7_, 98:12_, 99:1_, 99:7_, 100:2_, 103:14_, 103:24_, 104:2_, 104:12_, 104:22_, 105:13

**rude** [1]_ - 102:2

**rule** [2]_ - 26:9_, 28:13

**Rule** [2]_ - 8:6_, 9:10

**ruled** [1]_ - 5:6

**rules** [1]_ - 33:19

**rulings** [1]_ - 91:22

**run** [6]_ - 3:4_, 52:21_, 62:6_, 62:20_, 62:24_, 80:24

**running** [2]_ - 5:15_, 84:5

**runs** [1]_ - 38:17

**rushing** [1]_ - 19:25

**Ryan** [8]_ - 2:5_, 2:18_,

2:20_, 22:8_, 31:21_, 34:21_, 35:13_, 37:20

## S

sacred [1]_ - 73:20
safety [2]_ - 29:2
salary [3]_ - 46:6_, 46:15_, 53:12
Samuel [1]_ - 71:6
Sarasota [2]_ - 56:5_, 90:11
Saturday [2]_ - 55:16_, 104:23
save [2]_ - 12:8_, 103:18
saw [2]_ - 5:14_, 6:6
Sayles [1]_ - 72:1
SAYLES [1]_ - 72:2
scanning [2]_ - 61:10_, 92:19
scans [1]_ - 60:24
schedule [8]_ - 4:8_, 32:18_, 38:12_, 38:17_, 39:1_, 47:10_, 53:2_, 62:10
scheduled [3]_ - 13:10_, 57:11, 102:23
scheduling [1]_ - 52:24
Schnelle [1]_ - 71:13
school [20]_ - 47:1_, 47:4_, 49:18_, 50:13_, 50:16_, 50:17_, 50:23_, 50:25_, 51:5_, 54:11_, 54:15_, 61:25_, 63:23_, 65:16_, 66:3_, 66:8_, 66:9_, 85:17_, 97:11
schooling [2]_ - 65:19_, 94:22
schools [1]_ - 97:23
Scientist [1]_ - 68:22
scientist [1]_ - 71:18
Scott [1]_ - 70:23
screens [2]_ - 92:20_, 97:6
seal [1]_ - 4:17
search [2]_ - 8:22_, 9:1
searches [1]_ - 79:4
seat [7]_ - 2:2_, 2:12_, 22:22_, 65:9_, 80:2_, 100:10_, 102:20
seated [4]_ - 13:7_, 22:1_, 32:4_, 80:10

seating [1]_ - 21:12
seats [1]_ - 24:21
second [5]_ - 35:17_, 57:2_, 78:15_, 79:25_, 99:12
Secret [6]_ - 36:5_, 68:21_, 68:24_, 69:22_, 69:24_, 70:5
section [2]_ - 16:21_, 99:4
secure [1]_ - 28:24
SECURITY [1]_ - 48:23
security [6]_ - 28:19_, 28:20_, 29:4_, 29:5_, 29:10_, 29:15
see [43]_ - 13:8_, 21:13_, 22:4_, 24:18_, 28:17_, 29:12_, 32:3_, 33:18_, 37:11_, 37:14_, 37:21_, 37:24_, 38:7_, 39:5_, 39:16_, 55:17_, 58:5_, 64:6_, 67:6_, 67:10_, 67:14_, 67:19_, 68:18_, 69:2_, 71:16_, 72:4_, 73:6_, 73:24_, 74:20_, 75:19_, 76:10_, 76:16_, 77:9_, 77:18_, 78:2_, 78:10_, 78:11_, 88:9_, 88:11_, 89:15_, 99:17_, 102:1_, 103:20
seeking [1]_ - 7:18
seem [1]_ - 88:3
segment [2]_ - 4:6_, 15:6
select [1]_ - 79:14
selected [2]_ - 42:22_, 98:4
selecting [1]_ - 34:2
selection [22]_ - 3:5_, 6:20_, 9:3_, 11:21_, 11:25_, 12:14_, 12:19_, 13:12_, 13:15_, 20:18_, 24:24_, 25:10_, 26:12_, 27:10_, 31:8_, 32:9_, 32:20_, 32:21_, 32:25_, 80:7_, 101:6_, 102:22
selection-specific [1]_ - 11:25
self [2]_ - 16:13_, 86:25
self-employment [1]_ - 16:13
self-proclaimed [1]_ - 86:25
semester [1]_ - 54:24
send [2]_ - 46:10_, 73:16

senior [2]_ - 62:3_, 81:13
sense [2]_ - 56:22_, 74:12
sent [2]_ - 55:5_, 57:11
sentence [2]_ - 77:13
separate [2]_ - 36:19_, 40:6
September [14]_ - 10:15_, 35:12_, 35:19_, 36:1_, 36:11_, 36:20_, 43:18_, 49:7_, 52:13_, 57:23_, 58:16_, 59:14_, 61:15_, 92:24
Sergeant [2]_ - 69:12_, 70:4
serial [2]_ - 36:18_, 36:23
series [1]_ - 78:20
serious [7]_ - 17:4_, 42:5_, 43:12_, 44:3_, 44:6_, 81:8_, 88:20
seriously [1]_ - 88:22
seriousness [1]_ - 91:1
serve [21]_ - 22:5, 22:16_, 26:23_, 27:2_, 33:20_, 40:15_, 41:13_, 42:22_, 46:7_, 46:17_, 48:9_, 59:22_, 61:15_, 63:15_, 64:17_, 83:23_, 90:10_, 90:24_, 91:6_, 93:1_, 93:17
served [1]_ - 9:12
Service [7]_ - 36:5_, 53:17_, 68:21_, 68:24_, 69:22_, 69:24_, 70:5
service [19]_ - 22:5_, 23:13_, 23:14_, 23:16_, 32:15_, 33:22_, 44:2_, 44:4_, 44:8_, 45:19_, 45:22_, 46:9_, 53:24_, 65:19_, 90:13_, 100:15_, 100:19_, 100:25_, 102:10
services [1]_ - 30:25
serving [5]_ - 39:21_, 62:9_, 81:11_, 89:20_, 91:24
session [5]_ - 3:3_, 12:20_, 13:8_, 14:11_, 67:23
set [4]_ - 58:11_, 78:12_, 93:11_, 97:12
seven [2]_ - 103:16_, 103:17
severe [1]_ - 66:2
sex [2]_ - 18:22_, 97:17
shall [2]_ - 77:12_, 90:3
share [2]_ - 100:1_,

103:17
sharing [2]_ - 42:13_, 43:24
she.. [1]_ - 93:15
Sheriff's [6]_ - 68:14_, 69:5_, 69:12_, 70:8_, 70:17_, 71:17
shielding [1]_ - 27:12
shift [1]_ - 7:16
SHIPLEY [12]_ - 2:8_, 3:14, 4:19_, 4:25_, 5:10_, 9:7_, 11:17_, 11:23_, 13:14_, 30:4_, 103:12_, 105:21
Shipley [9]_ - 2:8_, 3:12_, 4:16_, 9:5_, 11:15_, 13:13_, 30:5_, 37:12_, 103:11
shipped [1]_ - 36:24
shop [4]_ - 52:3_, 52:6_, 52:18_, 52:19
shop's [1]_ - 53:1
shortly [1]_ - 8:25
show [2]_ - 39:19_, 73:1
showing [2]_ - 39:2_, 91:9
shown [1]_ - 77:21
shy [1]_ - 73:1
sic [1]_ - 55:13
sick [1]_ - 98:20
side [2]_ - 21:10_, 80:21
sides [5]_ - 4:15_, 7:13_, 20:16_, 26:1_, 27:17
sight [1]_ - 67:16
signed [1]_ - 90:12
significant [3]_ - 16:25_, 49:22_, 86:14
Sihvola [8]_ - 3:1_, 8:18_, 11:8_, 32:1_, 32:2_, 38:4_, 38:6_, 38:9
silent [4]_ - 72:25_, 75:5_, 75:18_, 76:9
silliness [1]_ - 5:2
similar [1]_ - 104:8
similarly [1]_ - 74:21
simple [2]_ - 32:25_, 102:4
simply [4]_ - 27:16_, 34:23_, 79:12_, 102:3
sincere [1]_ - 22:25
single [2]_ - 42:8_, 68:2
sit [2]_ - 33:13_, 47:5

**site** [1]_ - 56:4

**sitting** [3]_ - 37:9_, 45:6_, 77:5

**situation** [7]_ - 5:12_, 12:24_, 18:6_, 86:2_, 94:6 _, 95:10_, 96:3

**six** [1]_ - 57:1

**sleep** [6]_ - 12:25_, 13:2_, 104:8_, 104:19_, 104:23_, 105:16

**sleeping** [2]_ - 87:25_, 88:9

**slight** [1]_ - 56:20

**slightly** [1]_ - 2:22

**slow** [1]_ - 19:21

**small** [10]_ - 45:20_, 46:1 _, 52:2_, 52:17_, 58:22_, 59:13_, 61:22_, 61:23_, 61:24_, 97:6

**Smith** [2]_ - 71:14_, 71:17

**so..** [4]_ - 14:4_, 20:13_, 53:15_, 93:25

**sole** [14]_ - 16:24_, 45:18_, 49:2_, 55:7_, 56:5_, 77:14 _, 83:13_, 86:13_, 86:23_, 91:22_, 91:23_, 92:21_, 93:24

**solely** [2]_ - 33:3_, 34:2

**solemnly** [1] - 22:14

**solution** [2]_ - 104:13_, 104:14

**someone** [1]_ - 6:5

**sometimes** [2]_ - 31:11_, 38:21

**son** [3]_ - 46:25_, 63:23_, 94:22

**soon** [3]_ - 13:12_, 21:22_, 79:22

**sorry** [6]_ - 6:21_, 18:10_, 31:22_, 52:3_, 54:19

**sort** [7]_ - 4:9_, 76:4_, 77:19_, 79:5_, 83:2_, 92:25

**sorts** [1]_ - 102:5

**sound** [1]_ - 101:8

**Southern** [8]_ - 22:6_, 23:1_, 30:6_, 35:12_, 35:20_, 36:2_, 36:12_, 36:21

**Spa** [2]_ - 54:16_, 54:20

**space** [1]_ - 21:12

**speaking** [1]_ - 67:13

**Special** [15]_ - 36:5_, 68:11_, 68:12_, 68:21_, 68:23_, 69:3_, 69:13_, 69:21_, 69:22_, 69:24_, 70:5_, 70:15_, 70:16_, 70:22_, 70:23

**special** [9]_ - 33:8_, 50:11 _, 51:6_, 69:10_, 71:6_, 71:12_, 71:13_, 71:19_, 85:16

**special-needs** [2]_ - 50:11_, 85:16

**Specialist** [1]_ - 68:15

**specialists** [1]_ - 40:20

**specialized** [2]_ - 82:8_, 82:12

**specific** [21]_ - 4:12_, 7:11_, 10:5_, 11:21_, 11:25_, 13:9_, 13:25_, 18:4_, 20:18_, 21:14_, 24:15_, 25:6_, 25:20_, 26:7_, 27:13_, 37:6_, 77:3_, 80:13

**specifically** [13]_ - 12:15 _, 14:17_, 15:3_, 15:23_, 18:9_, 29:11_, 35:11_, 35:18_, 36:1_, 36:11_, 46:14_, 81:8_, 83:10

**speculate** [1]_ - 96:24

**spelled** [2]_ - 68:12_, 69:22

**spent** [1]_ - 90:4

**spoken** [3]_ - 37:19_, 37:22_, 67:8

**sponsorship** [1]_ - 41:5

**sporadic** [1]_ - 49:15

**sporadically** [2]_ - 49:5 _, 50:3

**spouse** [2]_ - 25:7_, 84:3

**St** [1]_ - 66:21

**stack** [1]_ - 19:14

**staff** [3]_ - 26:12_, 62:5_, 101:3

**stage** [3]_ - 8:24_, 20:22_, 99:16

**stand** [4]_ - 2:21_, 39:19_, 76:25_, 86:20

**standard** [2]_ - 99:23

**standby** [14]_ - 2:24_, 3:1 _, 7:25_, 9:9_, 12:21_, 30:23_, 31:11_, 31:12_, 31:17_, 32:1_, 32:3_, 34:10_, 38:3_, 105:22

**start** [7]_ - 9:14_, 11:15_, 20:19_, 29:23_, 39:18_, 102:18_, 103:8

**started** [4]_ - 13:11_, 21:22_, 22:10_, 68:10

**starting** [4]_ - 2:7_, 23:23 _, 38:16_, 102:23

**starts** [1]_ - 50:23

**state** [5]_ - 2:6_, 46:11_, 49:7_, 83:8_, 91:8

**State** [1]_ - 65:12

**statement** [1]_ - 84:23

**statements** [3]_ - 80:24 _, 85:10_, 86:21

**states** [1]_ - 73:8

**States** [29]_ - 2:4_, 2:7_, 2:9_, 7:10_, 8:14_, 11:17 _, 11:22_, 21:19_, 22:6_, 22:8_, 23:4_, 26:24_, 28:3 _, 30:3_, 30:5_, 30:10_, 30:11_, 30:13_, 30:14_, 30:17_, 35:15_, 68:21_, 68:24_, 69:21_, 69:24_, 70:4_, 74:2_, 85:8_, 105:20

**stationed** [1]_ - 3:13

**stay** [6]_ - 39:12_, 60:8_, 63:22_, 78:16_, 93:23_, 103:5

**stay-at-home** [1]_ - 63:22

**step** [4]_ - 20:17_, 41:1_, 45:8_, 66:15

**Stephanie** [1]_ - 71:18

**steps** [1]_ - 52:21

**stick** [1]_ - 98:21

**still** [5]_ - 8:23_, 12:25_, 45:11_, 94:2_, 101:1

**stood** [2]_ - 39:16_, 65:25

**stop** [3]_ - 4:21_, 6:6_, 78:4

**store** [1]_ - 62:4

**straightforward** [2]_ - 4:9_, 96:21

**straightforwardness** [1]_ - 97:2

**streamline** [3]_ - 4:10_, 32:10_, 32:23

**stress** [5]_ - 57:20_, 57:22 _, 64:19_, 91:15_, 95:9

**stretched** [2]_ - 66:24_, 98:2

**stricken** [28]_ - 14:9_,

81:20_, 82:3_, 82:24_, 83:19_, 84:15_, 84:16_, 85:7_, 85:12_, 85:22_, 86:8_, 87:11_, 87:21_, 90:3_, 90:18_, 91:5_, 91:19_, 93:13_, 94:16_, 94:24_, 95:21_, 96:15_, 97:19_, 98:13_, 98:16_, 98:18_, 99:4_, 103:20

**strict** [1]_ - 26:20

**strictly** [4]_ - 26:20_, 26:24_, 27:7_, 53:21

**strike** [12]_ - 81:25_, 82:20 _, 84:9_, 87:9_, 89:15_, 94:14_, 95:4_, 95:16_, 95:20_, 96:13_, 96:14_, 97:10

**strikes** [1]_ - 80:5

**striking** [1]_ - 87:18

**struggling** [1]_ - 97:11

**Stuart** [1]_ - 71:18

**student** [1]_ - 65:11

**students** [6]_ - 6:24_, 44:17_, 44:18_, 82:9_, 82:12_, 83:2

**studying** [1]_ - 65:13

**stuff** [1]_ - 40:3

**styled** [1]_ - 22:7

**subject** [11]_ - 5:16_, 7:8 _, 13:18_, 27:14_, 38:11_, 44:24_, 67:12_, 82:12_, 83:1_, 83:2_, 84:22

**submission** [2]_ - 4:23_, 12:10

**submit** [1]_ - 12:10

**submitted** [3]_ - 7:5_, 12:2_, 38:15

**subpoena** [2]_ - 9:24_, 11:9

**subpoenas** [4]_ - 8:7_, 9:10_, 9:12_, 9:14

**substantial** [1]_ - 38:25

**substantive** [3]_ - 4:12_, 29:20_, 32:13

**substitute** [5]_ - 5:22_, 34:18_, 47:4_, 82:11_, 82:25

**succession** [3]_ - 43:17 _, 43:19_, 44:9

**suffer** [4]_ - 53:1_, 65:2_, 91:23_, 97:14

**sufficient** [6]_ - 56:7_, 58:18_, 63:2_, 67:1_, 90:6 _, 95:19

**sufficiently** [1] - 84:14
**sugar** [1] - 88:21
**suggested** [1] - 87:17
**suggestions** [1] - 7:13
**suggests** [1] - 84:22
**suited** [1] - 33:13
**summarize** [1] - 35:5
**summon** [1] - 80:15
**summons** [1] - 23:12
**Sunday** [1] - 104:23
**Supervisory** [2] - 70:22, 70:23
**supplemented** [1] - 92:14
**supplied** [2] - 4:14, 102:25
**supplying** [1] - 3:10
**support** [1] - 43:21
**supporting** [1] - 6:24
**suppose** [1] - 43:3
**supposed** [1] - 12:5
**surgery** [4] - 56:14, 56:15, 56:16, 91:1
**survey** [1] - 57:11
**survive** [1] - 55:8
**Susana** [1] - 24:1
**swear** [2] - 22:11, 22:14
**system** [5] - 18:11, 18:13, 23:10, 83:11, 95:17
**systematically** [1] - 14:24

### T

**table** [4] - 11:2, 11:3, 32:4, 37:9
**talks** [1] - 88:17
**Tamura** [1] - 72:1
**task** [2] - 63:24, 84:5
**Task** [1] - 70:7
**taught** [1] - 44:17
**teach** [8] - 44:16, 44:22, 44:24, 45:1, 45:10, 47:3, 47:5, 82:11
**teacher** [2] - 50:16, 63:23
**teaches** [2] - 64:2, 83:1
**teaching** [2] - 45:3, 82:8

**team** [7] - 3:13, 3:17, 8:20, 29:23, 41:1, 41:2, 43:17
**teams** [1] - 26:19
**technician** [2] - 53:2, 53:19
**Technician** [1] - 70:4
**techs** [1] - 52:6
**tedious** [1] - 70:25
**Television** [1] - 88:21
**tempting** [1] - 79:2
**ten** [2] - 96:20, 105:15
**tend** [1] - 59:23
**term** [1] - 36:16
**termed** [1] - 4:5
**terms** [5] - 5:11, 9:12, 32:25, 74:22, 77:10
**testified** [1] - 77:22
**testify** [6] - 28:7, 68:3, 75:10, 75:20, 76:3
**testifying** [2] - 76:17, 76:21
**testimony** [5] - 8:6, 10:18, 11:7, 76:12
**tests** [2] - 57:22, 58:15
**text** [1] - 97:4
**THE** [294] - 2:2, 2:11, 2:16, 2:19, 2:21, 3:2, 3:16, 3:23, 4:1, 4:20, 5:8, 5:20, 5:24, 6:7, 6:13, 6:16, 6:23, 7:1, 7:21, 8:3, 8:11, 8:13, 8:16, 8:18, 9:1, 9:8, 9:21, 10:1, 10:14, 10:17, 10:22, 10:25, 11:2, 11:5, 11:13, 11:18, 11:20, 11:24, 12:7, 13:4, 13:7, 13:23, 14:5, 14:7, 14:20, 15:5, 15:8, 15:11, 15:16, 15:21, 15:24, 16:8, 16:12, 16:17, 16:22, 17:1, 17:6, 17:10, 17:14, 17:17, 17:19, 17:23, 18:1, 18:4, 18:8, 18:14, 18:18, 19:4, 19:12, 19:18, 19:21, 20:2, 20:14, 20:24, 21:11, 21:17, 21:19, 21:21, 22:1, 22:19, 22:21, 30:19, 31:24, 32:2, 40:6, 40:23, 41:11, 41:22, 42:1, 42:13, 42:16, 42:19, 42:21,

43:1, 43:4, 43:7, 43:10, 43:24, 44:11, 44:13, 45:1, 45:6, 45:12, 45:16, 45:21, 45:23, 46:2, 46:5, 46:13, 46:19, 46:21, 46:24, 47:7, 47:12, 47:24, 48:2, 48:5, 48:8, 48:12, 48:18, 48:22, 48:25, 49:11, 49:16, 49:20, 49:25, 50:5, 50:9, 50:13, 50:19, 50:25, 51:3, 51:8, 51:12, 51:16, 51:20, 51:24, 52:15, 52:17, 52:20, 53:4, 53:10, 53:16, 53:18, 53:20, 53:23, 54:5, 54:9, 54:13, 54:15, 54:17, 54:21, 54:23, 55:1, 55:22, 56:1, 56:7, 56:22, 57:3, 57:8, 57:14, 57:16, 57:24, 58:2, 58:5, 58:9, 58:17, 58:21, 59:4, 59:7, 59:10, 59:18, 59:22, 60:4, 60:8, 60:14, 60:18, 60:20, 60:22, 61:5, 61:9, 61:14, 61:19, 62:1, 62:5, 62:9, 62:14, 62:17, 62:22, 63:1, 63:4, 63:9, 63:12, 63:14, 63:18, 63:21, 64:1, 64:4, 64:8, 64:16, 64:21, 64:23, 65:8, 65:13, 65:15, 65:18, 65:23, 66:6, 66:12, 66:15, 66:18, 67:1, 80:2, 80:10, 81:6, 81:15, 81:24, 82:2, 82:15, 82:19, 82:22, 83:6, 83:8, 83:16, 83:19, 84:8, 84:12, 84:19, 85:4, 85:7, 85:20, 85:22, 86:6, 86:8, 86:20, 87:2, 87:8, 87:11, 87:18, 87:21, 88:8, 88:11, 88:24, 89:3, 89:12, 89:22, 90:1, 90:15, 90:18, 91:2, 91:5, 91:12, 91:19, 92:2, 92:5, 92:13, 92:23, 93:6, 93:11, 93:16, 94:1, 94:10, 94:13, 94:16, 94:21, 95:2, 95:11, 95:14, 95:18, 96:7, 96:15, 97:9, 97:13, 98:5, 98:10, 98:13, 98:24, 99:2, 99:6, 99:8, 99:21, 100:3, 100:10,

102:20, 103:13, 103:18, 104:1, 104:4, 104:21, 104:25, 105:17, 105:22, 105:25, 106:2
**Theatre** [1] - 40:2
**themselves** [5] - 29:24, 30:7, 37:7, 37:10, 99:11
**therapy** [2] - 54:11, 89:19
**Therapy** [1] - 54:16
**thermography** [1] - 60:24
**thermoscan** [1] - 61:12
**thin** [2] - 66:24, 98:2
**thinking** [2] - 76:6, 89:8
**thinks** [3] - 28:15, 77:22, 77:23
**third** [7] - 3:15, 21:2, 26:22, 54:12, 60:17, 89:21, 90:5
**Thompson** [1] - 71:19
**Thornton** [1] - 104:17
**thorough** [1] - 33:10
**thoughts** [2] - 93:2, 94:23
**three** [21] - 3:6, 4:7, 20:16, 21:3, 38:14, 44:20, 45:8, 48:1, 48:2, 48:17, 49:7, 57:12, 57:21, 60:25, 61:24, 64:14, 65:17, 65:20, 84:2, 88:6
**three-and-a-half** [1] - 65:20
**three-and-a-half-week** [1] - 4:7
**three-day** [1] - 3:6
**thrilled** [1] - 23:11
**throughout** [4] - 23:19, 24:16, 54:2, 63:25
**throw** [1] - 13:2
**Thursday** [1] - 7:17
**tight** [1] - 30:1
**tired** [1] - 73:4
**title** [1] - 33:17
**titled** [1] - 40:9
**Tobacco** [2] - 70:6, 71:24
**today** [14] - 4:4, 32:10, 32:14, 37:7, 39:11,

39:12_, 45:7_, 50:4_, 72:6_, 77:5_, 98:20_, 102:10_, 102:22_, 104:8

**today's** [1]_ - 101:2

**together** [1]_ - 40:24

**Tommy** [1]_ - 70:21

**tomorrow** [18]_ - 4:11_, 9:3_, 32:12_, 32:19_, 80:18_, 88:13_, 89:13_, 93:21_, 94:2_, 99:11_, 100:16_, 101:5_, 102:10_, 102:11_, 103:7_, 103:18_, 104:5_, 106:5

**tonight** [1]_ - 103:4

**toolmark** [1]_ - 71:14

**top** [2]_ - 40:7_, 85:10

**topic** [2]_ - 28:18_, 31:7

**topics** [3]_ - 4:7_, 18:1_, 32:13

**total** [1]_ - 48:2

**totally** [2]_ - 23:9_, 23:17

**touch** [4]_ - 25:17_, 67:11_, 72:22_, 79:22

**touches** [1]_ - 77:19

**touching** [2] - 22:15_, 101:14

**towards** [1]_ - 5:4

**track** [1]_ - 14:21

**Tracy** [1]_ - 69:4

**traditionally** [1]_ - 49:24

**traffic** [2]_ - 4:24_, 5:9

**trained** [1]_ - 60:24

**transcribing** [1]_ - 24:6

**transmitted** [1]_ - 24:19

**transportation** [1]_ - 66:25

**transported** [2]_ - 27:5_, 36:25

**trauma** [2]_ - 18:7_, 18:10

**Travas** [1]_ - 70:4

**travel** [2]_ - 10:14_, 59:25

**Treasure** [1]_ - 60:23

**treated** [1]_ - 73:10

**treatment** [2]_ - 52:8_, 87:3

**trial** [28]_ - 3:4_, 4:7_, 5:16_, 11:7_, 23:3_, 23:24_, 24:25_, 25:25_, 26:25_, 27:6_, 27:18_, 28:23_, 29:2_, 30:11_, 30:16_, 30:25_, 32:18_, 33:16_, 38:12_, 41:12_, 41:17_,

54:11_, 57:6_, 59:24_, 72:13_, 81:16_, 83:21_, 86:10

**trials** [1]_ - 28:24

**tried** [2]_ - 29:21_, 33:9

**trip** [2]_ - 56:11_, 87:4

**trips** [1]_ - 49:11

**trouble** [1]_ - 54:17

**true** [2]_ - 17:12_, 77:24

**Trump** [1]_ - 35:15

**trusted** [2]_ - 23:23_, 29:14

**truth** [1]_ - 34:15

**truthful** [2]_ - 54:1_, 77:23

**truthfully** [2] - 22:15_, 77:22

**try** [4]_ - 29:19_, 39:4_, 39:14_, 101:15

**trying** [4]_ - 30:6_, 39:7_, 51:18_, 55:23

**tuition** [1]_ - 54:24

**turn** [2]_ - 57:16_, 63:5

**Turner** [1]_ - 71:19

**turns** [2]_ - 53:3_, 61:25

**turtle** [3]_ - 4:21_, 5:21_, 6:6

**turtle-type** [1]_ - 5:21

**twice** [2]_ - 44:17_, 72:9

**two** [15]_ - 20:15_, 30:23_, 31:11_, 38:19_, 46:25_, 48:5_, 49:6_, 49:8_, 52:7_, 52:14_, 57:20_, 58:13_, 61:22_, 61:23_, 85:1

**type** [10]_ - 5:5_, 5:6_, 5:21_, 15:10_, 40:25_, 59:18_, 61:9_, 62:23_, 79:8_, 79:19

**types** [2]_ - 28:22_, 43:21

**typing** [1]_ - 24:5

### U

**U-formation** [1]_ - 21:9

**U.S** [3]_ - 3:15_, 9:17_, 95:24

**ultimately** [5]_ - 27:1_, 33:11_, 34:13_, 77:3_, 105:6

**ultrasounds** [1]_ - 57:22

**unable** [4]_ - 39:12_, 66:16_, 77:6_, 93:20

**unanimous** [1]_ - 78:2

**unauthorized** [1]_ - 25:14

**uncomfortable** [1]_ - 34:5

**under** [10]_ - 4:17_, 25:9_, 26:20_, 57:18_, 64:19_, 82:4_, 90:24_, 95:9_, 99:17_, 106:4

**understaffed** [1]_ - 66:21

**understandable** [1]_ - 47:7

**understandably** [1]_ - 64:17

**understood** [1]_ - 57:8

**underway** [1]_ - 9:12

**undisclosed** [2]_ - 94:7_, 94:17

**unemployed** [1]_ - 84:3

**unexpected** [1]_ - 87:3

**unfamiliar** [1]_ - 23:17

**unfold** [1]_ - 32:8

**unfortunately** [1]_ - 51:23

**United** [29]_ - 2:4_, 2:7_, 2:9_, 7:10_, 8:14_, 11:17_, 11:22_, 21:19_, 22:6_, 22:8_, 23:4_, 26:24_, 28:3_, 30:3_, 30:5_, 30:10_, 30:11_, 30:13_, 30:14_, 30:16_, 35:15_, 68:21_, 68:24_, 69:21_, 69:24_, 70:4_, 74:2_, 85:8_, 105:20

**university** [1]_ - 44:15

**unless** [2]_ - 20:17_, 44:3

**unopposed** [1]_ - 92:16

**untrue** [1]_ - 77:25

**unusual** [1]_ - 52:9

**unwanted** [2]_ - 26:5_, 27:16

**up** [34]_ - 19:8_, 26:22_, 39:16_, 39:19_, 39:22_, 41:8_, 41:18_, 42:14_, 44:20_, 46:11_, 49:15_, 49:17_, 50:1_, 50:2_, 50:18_, 55:16_, 57:22_, 58:11_, 58:16_, 61:2_, 61:25_, 65:25_, 67:8_, 73:6_, 79:3_, 80:4_, 81:17_, 88:12_, 89:21_, 90:12_, 103:8_, 103:19_, 104:4_, 105:6

**up/drop** [1]_ - 49:2

**up/drop-off** [1]_ - 49:2

**upcoming** [3]_ - 54:3_, 81:9_, 81:14

**upholstery** [2]_ - 45:25_, 46:2

### V

**vacate** [1]_ - 51:15

**vacation** [1]_ - 52:21

**vacation/sick** [1]_ - 54:1

**value** [1]_ - 6:12

**various** [5]_ - 33:25_, 67:5_, 88:4_, 91:13_, 97:15

**vein** [1]_ - 12:3

**Venire** [1]_ - 21:24

**venire** [6]_ - 6:8_, 15:19_, 17:8_, 80:1_, 100:8_, 102:19

**VENIRE** [1]_ - 22:19

**veniremembers** [2]_ - 16:1_, 34:6

**verdict** [5]_ - 73:18_, 76:11_, 77:11_, 78:2

**Vero** [3]_ - 39:24_, 50:24_, 62:19

**via** [1]_ - 79:1

**vice** [1]_ - 43:19

**Vietnam** [3]_ - 10:11_, 10:20

**view** [5]_ - 14:22_, 24:22_, 27:12_, 27:21_, 87:5

**viewing** [1]_ - 34:11

**views** [1]_ - 89:4

**violence** [3]_ - 18:10_, 35:18_, 35:22

**visit** [1]_ - 20:4

**vital** [4]_ - 22:4_, 23:9_, 33:22_, 52:14

**voir** [2]_ - 4:6_, 4:14

**voting** [1]_ - 88:18

### W

**wages** [1]_ - 53:21

**wait** [1]_ - 58:2

**waiting** [1]_ - 57:5

**Wales** [1]_ - 54:14

**walk** [1]_ - 50:19

**walking** [1]_ - 55:20

**Walters** [1]_ - 71:23

**warehouse** [5]_ - 47:16_, 47:25_, 84:2_, 84:4_, 84:5

**warn** [1]_ - 33:23

**warnings** [4]_ - 78:20_, 101:7_, 101:9_, 102:8

**warrant** [1]_ - 95:20

**Warren** [1]_ - 24:1

**water** [1]_ - 53:15

**ways** [2]_ - 26:4_, 33:15

**weapon** [1]_ - 36:8

**Wednesday** [5]_ - 49:8_, 56:18_, 57:21_, 58:13_, 58:14

**week** [11]_ - 4:7_, 38:16_, 41:7_, 42:24_, 44:19_, 55:6_, 55:15_, 57:12_, 58:12_, 59:2_, 105:15

**weekends** [1]_ - 104:23

**weeks** [9]_ - 38:14_, 44:20_ _, 48:17_, 57:1_, 57:10_, 58:12_, 64:14_, 65:20_, 88:7

**weight** [1]_ - 72:12

**welcome** [1]_ - 22:2

**welfare** [1]_ - 29:17

**Wesley** [5]_ - 2:5_, 22:8_, 31:21_, 34:21_, 35:13

**wetness** [1]_ - 76:19

**whatsoever** [6]_ - 5:25_, 7:4_, 28:6_, 68:5_, 76:6_, 101:17

**whereby** [1]_ - 27:3

**whole** [1]_ - 32:7

**wife** [6]_ - 48:15_, 49:14_, 52:4_, 52:8_, 61:22_, 61:23

**William** [1]_ - 69:4

**willing** [4]_ - 74:15_, 78:6_ _, 90:24_, 93:1

**willingness** [1]_ - 91:6

**window** [1]_ - 82:9

**Winter** [2]_ - 66:23

**wish** [5]_ - 10:3_, 24:22_, 99:25_, 102:8_, 105:11

**withdrawing** [1]_ - 10:22

**withdrawn** [1]_ - 6:17

**withheld** [1]_ - 94:9

**witness** [15]_ - 11:14_, 18:23_, 68:1_, 76:14_, 76:17_, 76:19_, 76:20_, 76:22_, 76:25_, 77:2_, 77:22_, 77:23_, 77:24_, 97:18

**witness's** [4]_ - 76:15_, 76:21_, 96:22_, 96:23

**witnesses** [10]_ - 8:6_, 8:10_, 10:2_, 20:22_, 21:2_ _, 28:22_, 68:4_, 68:6_, 77:7_, 101:25

**witnesses'** [1]_ - 88:1

**women** [1]_ - 61:13

**wondering** [1]_ - 25:23

**word** [1]_ - 24:6

**words** [5]_ - 72:11_, 72:12_ _, 75:12_, 77:12_, 77:17

**works** [10]_ - 47:10_, 49:3_ _, 49:22_, 52:23_, 60:14_, 63:7_, 87:16_, 93:25_, 97:23_, 97:25

**worried** [2]_ - 64:14_, 96:4

**worthy** [1]_ - 19:19

**write** [2]_ - 20:1_, 55:23

**writings** [1]_ - 97:5

**wrote** [1]_ - 92:6

### X

**X'd** [3]_ - 6:11_, 6:14_, 6:16

### Y

**year** [5]_ - 36:16_, 38:17_, 44:17_, 54:2_, 59:14

**years** [3]_ - 52:23_, 55:9_, 65:17

**yield** [2]_ - 82:18_, 89:4

**younger** [1]_ - 61:2

**yourself** [3]_ - 30:1_, 31:20_, 75:25

### Z

**zero** [1]_ - 40:15

**zoom** [1]_ - 67:11

**Zuniga** [5]_ - 9:22_, 10:6_, 10:23_, 11:2_, 72:1