UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 24-cr-80116-AMC-1

UNITED STATES OF AMERICA,                    Fort Pierce, Florida

            Plaintiff,                       September 9, 2025

        vs.                                  8:29 a.m. - 5:43 p.m.

RYAN WESLEY ROUTH,

            Defendant.                       Pages 1 to 294
_____

TRANSCRIPT OF JURY TRIAL - DAY 2
BEFORE THE HONORABLE AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
                            UNITED STATES ATTORNEY'S OFFICE
                            JOHN SHIPLEY, ESQ.
                            MARIA MEDETIS-LONG, ESQ.
                            CHRISTOPHER BROWNE, ESQ.
                            99 NE 4th Street
                            Miami, Florida 33132

                            U.S. DEPARTMENT OF JUSTICE
                            JAMES M. DONNELLY, ESQ.
                            950 Pennsylvania Avenue, NW
                            Washington, DC 20530

FOR THE DEFENDANT:
                            RYAN WESLEY ROUTH, PRO SE

AS STANDBY COUNSEL:
                            FEDERAL PUBLIC DEFENDER'S OFFICE
                            KRISTY MILITELLO, ESQ.
                            RENEE SIHVOLA, ESQ.
                            250 S. Australian Avenue
                            Suite 400
                            West Palm Beach, Florida 33401

STENOGRAPHICALLY REPORTED BY:

                            LAURA E. MELTON, RMR, CRR, FPR
                            Official Court Reporter to the
                            Honorable Aileen M. Cannon
                            United States District Court
                            Fort Pierce, Florida

(Call to the Order of the Court.)

THE COURT:  Good morning.  Let's get appearances, and I will note that everybody is here.

All right.  Mr. Shipley, please begin.

MR. SHIPLEY:  Good morning, Your Honor.  John Shipley, Christopher Browne, Maria Medetis-Long, and James Donnelly for the United States.

MR. DONNELLEY:  Good morning.

MR. BROWNE:  Good morning, Judge.

MS. MEDETIS-LONG:  Good morning.

THE COURT:  Good morning.

Mr. Routh.

MR. ROUTH:  Ryan Routh for the defense.

THE COURT:  Good morning.

Ms. Militello and Ms. Sihvola.

MS. MILITELLO:  Good morning, Your Honor.  Kristy Militello and Ms. Sihvola both present as standby counsel.

THE COURT:  Excellent.  Good morning to you all.  And everybody may be seated.

This is day 2 of trial and day 2 of jury selection, Case Number 24-cr-80116.  We will begin with preliminary jury selection with Group 2.

Are there any issues regarding jury selection to raise at this time?  Mr. Shipley or Mr. Browne.

MR. SHIPLEY:  Only one request, Your Honor.  Yesterday

when we did introductions in front of the jury, the defendant made a point of saying that, "I'm sorry to bring you all in here.  I'm sorry for that.  Thank you for being here."

There should be no addressing the jury in that way by the parties.  Whatever the impact of crocodile tears, that was not appropriate, and the defendant should be instructed not to comment like that.

THE COURT:  All right.  Mr. Routh.

MR. ROUTH:  Yeah, Mr. Browne brought that up yesterday.  So we had already covered that.  Yeah, I understand.

THE COURT:  I don't recall Mr. Browne mentioning this.  But are you acknowledging that it would just be a strict introduction with no additional commentary?

MR. ROUTH:  Yes.  Mr. Browne said, you know, no interaction, no holding doors, no comments, no -- so he inferenced that.

THE COURT:  I see.  Okay.  All right.

Okay.  Do you have any jury selection issues to raise with the Court or any other matters to address, Mr. Routh?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  Well, then I will step off the bench momentarily.  We have, I think, all of the jurors with the exception of one who should be arriving momentarily.  And they will be positioned in the courtroom as we did yesterday.  So thank you.  Please stand by.

(A recess was taken from 8:31 a.m. to 8:41 a.m.)

(The venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT:  Good morning.  You may all have a seat.

Welcome, ladies and gentlemen, to the federal district courthouse in Fort Pierce, Florida.  It's always a pleasure to see members of our community assembled to perform the important function of jury service, and it's always humbling for me to see this in action.

My name is Aileen Cannon, and I serve as a United States District Judge for the Southern District of Florida.  I will be presiding over this criminal case, which is styled United States of America v. Ryan Wesley Routh, Case Number 24-80116.

Before we get started this morning, I'm going to ask our courtroom deputy, Ms. Moran, to swear you in as the prospective jurors in this case, so please rise momentarily for the oath.

COURTROOM DEPUTY:  Will all prospective jurors please raise your right hand.

You and each of you do solemnly swear or affirm that you will well and truthfully answer all questions propounded to you, touching upon your qualifications to serve as jurors in the case before the Court, so help you God?

Please say "I do."

THE VENIRE:  I do.

THE COURT:  Thank you.  Please have a seat.

Now, I want to begin by extending my sincere gratitude to all of you for being here, both personally on my own behalf as well as the behalf of all of the judges of the Southern District of Florida, and the parties in this case.

The right to a trial by jury is a right that is cherished and protected -- protected in our constitutional republic.  And indeed, it is one of the most important duties that a citizen is called upon to perform.  And so our framework -- and you may all understand this, and I think a video was -- is ordinarily played for prospective jurors -- permits citizens to choose members of their community to decide the outcome of a case that ends up in court.  And your role, ladies and gentlemen, is vital and indispensable to that system.  So while some of you may not have been overly thrilled when you got the juror summons in the mail, I do want to emphasize and stress to you just how important jury service is in our society.

Now, perhaps some of you have been to jury selection before and you are familiar with how this process works.  Perhaps this is the first time for jury selection as to some of you.  Either way, I want to assure you not to feel apprehensive or inadequate.  And I will do my best, of course, to help guide you through this process and give you information and

instructions on what your role and duties will be.

I would now like to make some introductions to you so you know who is who in this courtroom, and I will start with our courtroom deputies, Ms. Moran and Mr. Condon, who are seated to my bottom right.  They're here to assist us with the day-to-day operation of the Court.

Now, directly in front of me is Ms. Laura Melton.  She has the very tough job of writing down every single word that is said in this courtroom, including everything that I'm saying right now, and all of the questions that will be asked of you and all the answers that are provided.

So to make her job easier, I ask that you please speak as audibly and as clearly as you can when you are called upon to speak, and that when you do so, you please raise up your paddle with your designated juror number on it facing outward so we know who is speaking when.

Now, I'm going to pause here briefly and just give you a few more instructions about how I will be addressing you in the courtroom during this trial and during this jury selection process.

This is, of course, a public proceeding, and there are members of the public and the media in this courtroom right now.  We also have a live feed into a secondary location in the courthouse for anybody who doesn't fit in the space allotted here or who simply wishes to view the proceedings from that

location.

That said, I won't be referring to you by your names or asking you any personal identifying information, like your spouse's name or your home address or your date of birth. And I will be using just those designated juror numbers that you have been given and allotted on those juror paddles.

The parties are also under an obligation to comply with this procedure, and this is all by party agreement and Court approval. So that means that nobody during this jury selection process, or in the public proceedings more generally, will be referring to your name in open court.

And then I will make a related point that in this courthouse, there is no permissible use of electronic devices for recording or photographing. So just like we won't be using your names in open court, there won't be any photographing or recording or video of this proceeding.

Now, that said, of course, I will be asking you a lot of questions as part of this important jury selection process. And those questions will touch upon private aspects of your life, like the nature of your employment, for example, but again, I won't be asking you to reveal your names in open court, and I ask that you please refrain from doing so as well.

Now, you might be asking yourself why are we going about things in this manner? Well, the reason is, as a big-picture point, that we want to ensure a fair trial for both

sides and we want to ensure the integrity of the jury in this case, which is expected to garner a high degree of media publicity and attention.  And one of the ways we can achieve that is by protecting you from any unwanted or improper contact by members of the media or by members of the public more generally, again, by not making your names or specific personal information public.

That said, this rule is subject to some exceptions, so it's not an absolute one.  One of them is that the jury clerk, of course, has a list of all of your names for official purposes only, and that list has been provided to the Court for purposes of jury selection.

Secondarily, as you all know, you came yesterday and you filled out some questionnaires.  Those questionnaires, of course, have your information, and they have been supplied to both the Court as well as the parties in this case, again for purposes of jury selection, but those questionnaires are not to be disseminated outside of the prosecution or defense teams, and they're under strict orders to keep those questionnaires confidential.

Third and finally, if you do end up getting selected for this jury, your names will be given to the United States Marshal for use by her staff, and this is for logistical purposes only, to ensure your transportation to and from the courthouse.  I will make some more comments about this later,

but I do want to mention now that if you are chosen for this jury, we will be employing a procedure whereby jurors will go to designated locations in the morning and then get driven to the courthouse and back to that location at the end of the trial day.  And so for that purpose, your names would be shared with the U.S. Marshal strictly for those logistical purpose, but again, not disseminated outside of those government channels.

So that's the overall procedure that we're going to be using for jurors in this case.  But before I move past this subject, I do want to emphasize a few important points. Number 1, we're not shielding your names because any of us has any specific or concrete reason to believe that you would be endangered or subject to any improper pressure if your names had been disclosed.  This is simply a precautionary measure to protect you from unwanted or improper contact by the media in this case of high publicity.

Secondly, none of this is in any way a reflection upon the defendant or the defense or anyone associated with the defense.  Indeed, nobody in this room should view the anonymization procedure as reflecting negatively or adversely upon the defendant.

And that's an important point, ladies and gentlemen. Because as I will emphasize to you throughout this jury selection process, and during the trial itself, the defendant

is presumed innocent until proven guilty.

The indictment that has been brought by the government against the defendant is only an accusation, nothing more. The burden of proof is on the United States government to prove the defendant guilty beyond a reasonable doubt before he may be found guilty of any offense. And the defendant, importantly, has no burden whatsoever to prove his innocence or to present any evidence at all or to testify.

And so all of these principles, and I will discuss them in greater detail later, are important and essential. But I'm bringing them up now because I don't want any of you to think something negative about the defendant because we're employing this no-name rule in open court.

So having said all of that, is there anybody here who thinks they will hold it against the defendant or the defense team that we're not disclosing names in the public courtroom?

Okay. I see no hands.

All right. Now, on a related subject, I do want to mention and address what may be interpreted as increased security in the courthouse. There are many factors that play a part in security decisions, including the anticipated publicity that a case is expected to generate, the number and types of witnesses that may be called to testify, the length of the trial and, of course, the overall necessity to conduct public trials in secure spaces.

But what matters most, ladies and gentlemen, for your purposes is that you should not be concerned with your safety or with the safety of anyone connected to this trial.  And most of all, you should not allow these security measures to influence you at all in your consideration of the case.  Nor should these security measures be held against either party, either the government or the defendant.  They're intended merely to protect the parties in this case and all others associated with the proceeding.

Does anybody here have any problems with any of the security-related comments I have made regarding this courthouse or this trial?

Okay.  I see no hands.

Now, I'm going to make another introduction.  This is Officer Blanford to my left.  He is our court security officer. His job is to enforce the Court's orders and take charge of the jury.  If you need information concerning your personal welfare, please reach out to Officer Blanford or to the courtroom deputies whom I have introduced, but please don't question any of them about the substance of the case or the matters to be tried.

So with all of that out of the way, I'm now going to shift to a second set of introductions.  And I will begin with the prosecutors for the United States who are all seated at that table.  And they will now introduce themselves to you.

MR. SHIPLEY:  Good morning, everyone.  My name is John Shipley.  I'm an assistant United States attorney with the Southern District of Florida.

MR. BROWNE:  Good morning.  My name is Christopher Browne.  I'm an assistant United States attorney.

MS. MEDETIS-LONG:  Good morning.  My name is Maria Medetis-Long.  I, too, am an assistant United States attorney.

MR. DONNELLY:  Ladies and gentlemen, good morning.  My name is James Donnelly.  I'm an attorney with the United States Department of Justice.

THE COURT:  Thank you.  All right.

Now, you have been introduced to the prosecuting attorneys in this case.  I'm going to ask Mr. Routh to introduce himself to you in a moment, as well as his two standby attorneys.

Before I do that, though, I do want to advise you, ladies and gentlemen, that Mr. Routh has decided to represent himself in this case and not to use the services of an appointed lawyer.  He has a constitutional right to make that decision, ladies and gentlemen, that is, to represent himself.  And that decision shall have no bearing on whether he is guilty or not guilty, and it must not affect your consideration of this case in any way.  I will address this issue in greater detail throughout the proceedings, but for now I did want to let you know that Mr. Routh is acting as his own lawyer in this

case, and that he will be in charge of his defense and controlling his defense.

That said, I have appointed two standby attorneys, sometimes we refer to them as standby counsel, to assist him should he ask for their assistance on basic procedural or logistical issues, or if I as the Court determine that assistance with procedural matters would be helpful.  But, again, Mr. Routh is in control of his defense, he is directing that without interference from standby counsel, and he has that constitutional right to make that decision.

So with all of that context, Mr. Routh, please introduce yourself to the prospective jurors.

MR. ROUTH:  Good morning.  I'm sorry.  Good morning. My name is Ryan Routh for the defense.  Thank you.

THE COURT:  Thank you, Mr. Routh.

Ms. Militello.

MS. MILITELLO:  Good morning, ladies and gentlemen. Kristy Militello and Renee Sihvola as standby counsel.

THE COURT:  Thank you.

All right.  Now I'm going to give you just a little bit of an overview about how this jury selection process will unfold.  Excuse me.  This phase of jury selection is preliminary in nature, to try to streamline things as much as possible and clear out certain straightforward topics, but then I would have a second opportunity with you all tomorrow at

8:00 a.m. to discuss additional substantive topics.  So for today, we are going to cover more basic areas like the folks in the courtroom whom I have introduced, the parties, and the attorneys in this case, the anticipated schedule for this trial, and a few more basic areas, some of which are covered also in the questionnaires you filled out.  And then tomorrow, we will meet again in the morning to cover additional substantive areas that have a greater connection to the case specifically.

So this is not the full jury selection process; I do want to advise you of that.  It's merely designed to try to streamline things and run through the jury selection process as efficiently as we can.

All right.  Now, I do want to make sure everybody is paying close attention.  This process does take time, and I do ask for your patience in advance.  So please bear with us as we go through everything.

Now, I do want to just in big-picture terms describe for you what is jury selection.  You may be wondering what that is and why we do this.  Well, as a broad matter, jury selection is a process designed to choose jurors who are fair and impartial, who will follow the law as it is instructed to them by the Court, and who will evaluate the issues in the case based only on the evidence that is presented in the courtroom and the law that is instructed to them without being influenced

by any other factors.  And so to get there, to achieve that goal of fairness and impartiality as jurors, we need to determine if your decision in this case would be influenced by opinions that you now hold or by some personal experience or special knowledge that you may have concerning the case to be tried.  And that is why this thorough process is so important, and it's so the Court and the parties can determine if there are people in this room who aren't suited to sit on this case as jurors and should, thus, be excused.

In many ways, ladies and gentlemen, this really is the most important part of the trial as we are about to pick the judges of the facts.  I might bear the title of District Judge, but I do not decide the outcome.  I see to it that the rules of the courtroom are followed, but it's the jurors who serve as judges of the facts.  So I hope you realize just how powerful that obligation is.

As I said, this process does take time.  It's not intended, I would add, to pry into your personal affairs.  It's simply done for the purpose of obtaining a fair and impartial jury.

If any of my questions make you feel uncomfortable, and you prefer to answer outside the presence of the prospective jury members, then please speak up and let me know.  I will arrange for that.  But, of course, this is a public proceeding, so any of your answers would be given in the context of the

attorneys for both sides, as well as the parties and any members of the public who are viewing this proceeding.

Ultimately, though, the biggest duty and the most important one to keep in mind is that the only right answer to any of my questions is the truth, and you must be fully candid and fully complete with all of your answers.  There is no substitute for honesty, even though I know sometimes it can be a little bit awkward and maybe a little intimidating to speak up with these many people around you.

Now, we are here because there has been an indictment that has been filed, informing Mr. Routh as the defendant in this case that he has been accused of certain crimes.  But as I will cover later, the indictment is not evidence.  It's simply an accusation.  And the defendant has responded to the indictment by saying that he is not guilty.  So it is the government's entire burden to prove beyond a reasonable doubt that the defendant is guilty before he may be found guilty of any offense.  And that is what the jury is here to determine.

To give you a little bit more context as we wrap our heads around jury selection, I do want to give you a summary of the charges in this case.  They're contained in an indictment that has five separate counts.  The first of them is Count 1, and Count 1 alleges the offense of attempted assassination of a major presidential candidate.  Specifically, the indictment alleges -- and forgive me if I'm looking down, but I want to

make sure I'm reading everything precisely -- that on or about September 15th of 2024 in Palm Beach County, in the Southern District of Florida, the defendant, Ryan Wesley Routh, did intentionally attempt to kill former president and then-presidential candidate Donald J. Trump, a major presidential candidate at that time.

The second charge alleges the crime of possessing a firearm in furtherance of a crime of violence, specifically, that on or about the same date of September 15th of 2024 in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, Mr. Routh, did knowingly possess a firearm in furtherance of a crime of violence, that is the crime charged in Count 1.  And further, that Mr. Routh brandished a firearm in furtherance of Count 1.

Count 3 alleges assault of a federal officer. Specifically, on that same date of September 15, 2024, in Palm Beach County, in the Southern District of Florida, it is alleged that the defendant did forcibly assault, oppose, impede, intimidate, and interfere with a Secret Service special agent while that agent was engaged in and on account of the performance of his official duties with the intent to commit another felony and that Mr. Routh used a deadly and dangerous weapon.

Now, moving to Count 4, this offense charges Mr. Routh with knowingly possessing a firearm as a previously convicted

felon, specifically, that on September 15th of 2024, Mr. Routh in Palm Beach County, in the Southern District of Florida and elsewhere, did knowingly possess a firearm and ammunition in and affecting interstate and foreign commerce, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

And finally, Count 5 charges Mr. Routh with possessing a firearm with an obliterated serial number.  And in this case, it is alleged that Mr. Routh on September 15, 2024, in Palm Beach County, in the Southern District of Florida and elsewhere, did knowingly possess a firearm which had the importer's and manufacturer's serial number removed, obliterated, and altered, and had at any time been shipped and transported in interstate and foreign commerce.

So those are the charges in this case.  And, again, that indictment is not proof of guilt, and I will discuss that later.

But for now, let me return to the introductions that we handled a few moments ago and ask the prospective jurors if any of you know or have any relationship or interaction with any of the government prosecuting attorneys who introduced themselves a moment ago.  That would be John Shipley, Christopher Browne, Maria Medetis-Long, or James Donnelly.

Okay.  I see no hands.

Related question, a bit repetitive.  But does anybody

here have any business dealings with any of those attorneys?

Okay.  And does anybody here have any connection to them whatsoever?

Okay.  No hands to both of those questions.

Now, has anybody ever personally spoken to or communicated with Mr. Routh?

Okay.  I see no hands.

Has anybody spoken or communicated with him indirectly through an intermediary or through any other means?

All right.  I see no hands.

Does anybody here have any history of interacting or having a prior business or other type of relationship with Mr. Routh?

No hands.

All right.  Now I will ask the same questions, but regarding the standby attorneys, Ms. Militello and Ms. Sihvola.

Does anybody here know Ms. Kristy Militello or Ms. Renee Sihvola?

Okay.  No hands.

Now we're going to address the subject of anticipated schedule.  This issue was flagged in the juror questionnaire that you filled out yesterday.  And so I will repeat the overall schedule and then -- and discuss any specific hardships that anybody in this room might have with that.

So as you know, this case is expected to last

approximately three and a half weeks, starting this week, and continuing through approximately October 1st.  The Court's schedule generally runs from 9:00 to 5:30 in the evening.  We take about an hour or so lunch for breaks, sometimes longer.  And we have at least two meaningful breaks, sometimes more, depending upon the needs of the case.

So having heard all of that, is there anybody who has a special problem with this anticipated schedule?  And so, first, I'm going to ask for anybody who answered "yes" to this question on the questionnaires, please stand at this time with your paddles raised, and I will just take down all of your juror numbers, and then we will go one by one.

Okay.  All right.  Thank you.  Let's start.  Okay.  We have 64, 69, 74, 77, 79, 81, 83, 84.

If you guys could all have a seat so I could see clearly in the back.  Thank you.

All right.  We have 101, 104, 107, 110, 111, 115.  And I think I have covered everybody, unless I'm missing someone.

Yes, ma'am.

A PROSPECTIVE JUROR:  What was the question?

THE COURT:  Yes.  My question is whether on that questionnaire -- you can stand up.  Thank you so much.  Whether you indicated on the questionnaire that you have a serious hardship with the schedule in this case.

A PROSPECTIVE JUROR:  Okay.  No.

THE COURT:  Okay.  Thank you.  And that is a good example.

If anybody needs for me to clarify any of my questions, or if you don't hear me properly, don't be shy.  This is the time to ask for that clarification, and I will do my best to speak up.

Okay.  Is there --

A PROSPECTIVE JUROR:  Is the hardship --

THE COURT:  One moment.  I will wait for you to get the microphone.

A PROSPECTIVE JUROR:  I was just wondering if the hardship was a trip scheduled or if that was something different?

THE COURT:  That would be in the same category.  So if that's one of your concerns then, yes, I would like to address that with you.

What's your juror number, ma'am?

A PROSPECTIVE JUROR:  111.

THE COURT:  111.  I have you down here.  Okay.  Thank you.

All right.  Are there any -- oh, and then 119.  I see you in the back.

A PROSPECTIVE JUROR:  I have 113.

THE COURT:  And 113.

I do want to stay organized, folks, and try to do this

in an orderly fashion, so I will add Juror 86. Please have a seat.

Now, if you have already raised your paddles on this question, you don't need to raise them again.

Are there any other jurors in this room who have a serious hardship with that schedule either listed on the questionnaire or something they wish to raise now?

Okay. If that's your situation, please stand at this time.

All right. I have 94. 113 I have already accounted for. And 114. Okay. Thank you.

All right. So we're going to start in order with Juror 64. Let me get my bearings here, sir.

What is your hardship? And, yes, please stand, and we will wait for you to get the microphone, Juror 64.

A PROSPECTIVE JUROR: Thank you.

I have two main hardships. The first would be I don't receive any compensation for the time missed at work. So I would be approximately three weeks without pay. The second is a trip scheduled out of town that would be September 19, 20, 21st.

THE COURT: Okay. And what do you do for work, sir?

A PROSPECTIVE JUROR: I work at a specialty coffee roaster as the lead barista.

THE COURT: Okay. And so I think what you have told me

is that you don't get paid unless you're physically at work; is that right?

A PROSPECTIVE JUROR:  Correct.  Correct.

THE COURT:  Do you know if your employer can make arrangements to pay you your regular weekly rate for purposes of jury service?

A PROSPECTIVE JUROR:  To the best of my knowledge, I don't believe so.  I can inquire.  But...

THE COURT:  Okay.  But you're not sure at this point.

A PROSPECTIVE JUROR:  Correct.

THE COURT:  Okay. All right.  And then the trip you mentioned, is that for work or is that a personal trip?

A PROSPECTIVE JUROR:  No, it's a personal trip.  It is with my girlfriend and her parents.  Yes.

THE COURT:  Okay.  And arrangements, have you made those for that trip?

A PROSPECTIVE JUROR:  Yes.  So hotels have been booked and tickets as well.  We are going to Epic Universe at Orlando.

THE COURT:  Oh, I hear it's very fun.  Okay.  Thank you.

A PROSPECTIVE JUROR:  Uh-huh.

(Cell phone interruption.)

THE COURT:  All right.  Thank you.  You may have a seat.

For anybody who has their phone, please, I ask that you

turn them all off or silent them so we don't have any interruptions.

All right.  Let's hear now from Juror 69.  We're focused now on hardships related to this schedule.

A PROSPECTIVE JUROR:  Yes.  It's also a financial hardship.  Childcare.  I gotta pick my kids up every day before 5:30, so...

THE COURT:  Okay.  All right.  And let's discuss the financial hardship.  Can you elaborate a bit, sir?

A PROSPECTIVE JUROR:  Yeah.  I also do not get paid from my work to be here, so...

THE COURT:  And what do you do for work?

A PROSPECTIVE JUROR:  I'm an electrician.

THE COURT:  Do you know if your company has any sort of arrangement for employees who are called to serve on a jury?

A PROSPECTIVE JUROR:  No, they don't.

THE COURT:  All right.  Okay.  And then your family obligations, what do those entail?

A PROSPECTIVE JUROR:  I drop my kids off every morning. I have three kids.  I have an infant as well.  So I got to be there to kind of take care of them, and I also pick them up every day after work, so...

THE COURT:  And you pick them up at around what time?

A PROSPECTIVE JUROR:  Usually I have to be at my son's school by, like, 3:30.

THE COURT:  Is there anybody in your family or in your circle of friends or relatives who can assist you?

A PROSPECTIVE JUROR:  Not every day, no.

THE COURT:  All right.  That's all for now, sir.  I will perhaps have other questions for you as we go along.

Let's hear from Juror 74.

Good morning.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  All right.  Please describe your scheduling-related hardship.

A PROSPECTIVE JUROR:  I just have underlying medical conditions that will require me to take frequent breaks.  And also, I have a hardship at work, being that we're preparing for elections.  So it's a very critical time right now.

THE COURT:  Okay.  And where do you work?

A PROSPECTIVE JUROR:  I work at the Supervisor of Elections office in St. Lucie County.  And we have a City of Fort Pierce election coming up shortly.

THE COURT:  And when is that?

A PROSPECTIVE JUROR:  November 4th.

THE COURT:  Okay.  If you were to be called for jury service, would there be other employees within the office that could take over your duties for the duration of the trial?

A PROSPECTIVE JUROR:  Unfortunately, no.

THE COURT:  Okay.  Thank you.  Please have a seat.

All right.  Let's hear from Juror 77.

A PROSPECTIVE JUROR:  I also have a trip scheduled, from September 28th to October 7th.

THE COURT:  Okay.  I had made a note of that.

Can you clarify the dates for the trip, please.

A PROSPECTIVE JUROR:  Yeah, it's -- sorry --

THE COURT:  Just speak up a little bit.

A PROSPECTIVE JUROR:  September 28th, a Monday, to the following Monday.

THE COURT:  Okay.  All right.  And is this -- is this a personal trip?

A PROSPECTIVE JUROR:  Yes.  It's -- my husband has every year, he does an annual company trip.  So the room's all booked and everything.

THE COURT:  I'm not hearing you.

A PROSPECTIVE JUROR:  I'm sorry.  The room's already booked.  It's an annual trip he does for his company.

THE COURT:  Okay.  I have taken that down.  Thank you, ma'am.  Please have a seat.

A PROSPECTIVE JUROR:  Okay.  Thank you.

THE COURT:  Okay.  We're now at Juror 79.

A PROSPECTIVE JUROR:  Thank you.  Good morning.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  I have two concerns and they're both medical.  One has to do with -- I have glaucoma, and I

require -- I have a specialist meeting that's going to take place in a couple of days.  If I cancel it, and I have already checked, the earliest that I could get another scheduled date is February of next year.  That's a bit of a problem.

Secondly, I require narcotic medication to manage my pain in my systems.  And there are many restrictions, and I have to be there in person in order for it to be approved.  And it's done on a monthly basis.

THE COURT:  Okay.  Thank you.  I have made a note of all of those concerns, sir.  You can pass the microphone along to Juror 81.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  I'm a single mom, and I'm the sole financial provider for my household.  And if I were to be missing that much time from work, I would face serious financial hardship.

THE COURT:  Okay.  And where do you work?

A PROSPECTIVE JUROR:  South Florida Orthopaedics.

THE COURT:  Have you looked into at all whether South Florida Orthopaedics would help you or --

A PROSPECTIVE JUROR:  They compensate for the first day.

THE COURT:  I see.  Okay.  All right.  Well, then I have taken all of that down, ma'am.  You may have a seat, and

please pass the microphone on to Juror 83.

A PROSPECTIVE JUROR:  Good morning.  I have two hardships.  One is I am an office admin and a service manager for an electrical company.  I'm the only office staff member. I could do a lot of my work remotely, but I would need access to a computer for at least a couple of hours a day.  I can pick up some of it in the evening, but there is some stuff that would be more time sensitive.

Additionally would be I have two young children.  I currently have split custody of them, so I don't have a say over who picks them up.  On my day, it does have to be me currently with our current agreement.  So I would run the risk of not seeing my children.  I have to pick them up.  They're about an hour away from here, and they have to be picked up by 6:00.

THE COURT:  Okay.  I have jotted all of that down. Thank you, sir.

A PROSPECTIVE JUROR:  No worries.

THE COURT:  Okay.  Juror 84.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  My burden is due to my family. My wife's career takes her out of the house from, like, 5 or 6 in the morning until past dinnertime, so I'm in the pickup line or drop-off line at 9 in the morning, in the pickup line again

at 2:30.  And she also travels to the west coast of Florida every other Wednesday and Thursday for her career.

So I'm pretty much a stay-at-home parent, and proud to be, but in terms of getting the kids where they need to be, it's been a struggle for the last two days.  And just thinking about it for three or four weeks would definitely be a big problem.

THE COURT:  Okay.  Now, do you have a network locally that could chip in to help you, grandparents or any --

A PROSPECTIVE JUROR:  So far, we called on neighbors and friends for drop-off and pickup yesterday and today.  But -- so, I mean, potentially we could do that, but who is to say they'll be available for that length of time?

THE COURT:  Okay.  Thank you.  I have made a note of all of this.  Thank you, Juror 84.

I just want to make sure I got your juror number correct, sir.

A PROSPECTIVE JUROR:  Yes.  See.  84.

THE COURT:  Yes.  84.  Okay.  Thank you.

All right.  We now are at Juror 86.

A PROSPECTIVE JUROR:  Hello.  How are you doing?

THE COURT:  Hello.

A PROSPECTIVE JUROR:  So my hardships would be school and work.  I don't receive any compensation for missing that much time.  And I will be missing my lectures as well.

THE COURT:  Okay.  Where do you go to school?

A PROSPECTIVE JUROR:  Indian River.

THE COURT:  And what are you studying?

A PROSPECTIVE JUROR:  Dental hygiene.

THE COURT:  And you said you also work?  What are you doing for work?

A PROSPECTIVE JUROR:  I'm a senior sales lead at Xfinity.  But we don't receive any compensation for not being there.

THE COURT:  Okay.  And right now are you taking a full semester at Indian River college?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  All right.  Thank you.  You may have a seat.

Our next juror in this category is Juror 94, if I have got the numbers right.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  My two hardships are, one, I'm the only source of income in my household currently.  And then two, I am unsure if my work offers financial assistance to -- for doing jury duty for three weeks.

I work for a company called Herzog doing railroad work and maintaining a railroad at night.  I work from -- I drive from Fort Pierce all the way up to Orlando airport basically

every night Monday through Friday.  Well, Sunday through Thursday.  But I don't -- I'm unsure if they offer anything for jury duty.  I know they've recently put on the time sheet that I came here for jury duty yesterday, but I don't know if they're doing it for today.  I still went to work last night, so I'm running off of no sleep.

THE COURT:  I was just going to ask, what are your hours at night?

A PROSPECTIVE JUROR:  I work from 11:00 till 7:00 a.m. in the morning.

THE COURT:  Okay.  All right.  Okay.  That's all I have for now.  If anything else comes up, I will be sure to get back to you, Juror 94.

Okay.  Let's hear from Juror 101.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  My mother-in-law passed away 3:30 this morning in New Jersey.  And --

THE COURT:  I'm very sorry to hear that.

A PROSPECTIVE JUROR:  Thank you.  Thank you.

THE COURT:  So is that going to require any sort of travel or --

A PROSPECTIVE JUROR:  Yes.  I'm going to try to drive tomorrow, if possible, to head up there.

THE COURT:  Okay.  Thank you, ma'am.  You may have a

seat.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  All right.  Juror 104.

A PROSPECTIVE JUROR:  Good morning, Your Honor.  My situation is I'm an attorney.  I'm a solo practitioner.  And prior to receiving the summons, I was -- had planned a trip, and I just returned on Sunday.  So I have been out of my office for three weeks, basically, and to be not in my office for another four weeks would be difficult.  I do estate planning work.  Many times, clients are in hospice care and need things done immediately.  So it would just be difficult planning-wise to be out of the office again for another potentially three weeks.

THE COURT:  Okay.  And I think you mentioned you are a solo practitioner.  Do you have any other associates or partners who do the legal work?

A PROSPECTIVE JUROR:  I do have a paralegal.  So it's -- some things could be handled.  So I wouldn't call it a severe hardship, but it would just be very difficult.  And I do have another attorney in the office, but we are separate PAs.

THE COURT:  Okay.  So he or she wouldn't be working on your specific matters?

A PROSPECTIVE JUROR:  No, she would not.

THE COURT:  Okay.  All right.  That's all I need for now.  I may again come back to you as well, Juror 104.

Let's hear from Juror 107.

A PROSPECTIVE JUROR:  Good morning, Your Honor.  I'm the head of household of my house.  I have a 12-year-old daughter that I take to school and pick up at 3:30.  She's very active.  She's also an all-star cheer.  My job does compensate an hourly pay, but I also work on commission, so I can't get commission if I'm not there.  My commission pays my bills.

THE COURT:  Okay.  So you do have some payment, but it's just not what you would overall receive if you were in the office; is that right?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Now, for purposes of your daughter pickup, who else, if anybody, could help you with those obligations?

A PROSPECTIVE JUROR:  My son works.  So it's just me and my son right now.

THE COURT:  Would he be able to do any of the transportation?

A PROSPECTIVE JUROR:  I can ask him but, I mean, he is not required to.  So, I mean, this morning when I left home at 5:30 to come down here, I was calling her phone.  She's 12 years old.  So it's like -- I mean, she has a game today, so it was hard.

THE COURT:  I understand.  Okay.  All right.  Thank you, Juror 107.

Let's hear from Juror 110.

A PROSPECTIVE JUROR: Thank you. Good morning. My hardship is, next week I have a company audit. The week after that, I am conducting an audit in Oklahoma. And tomorrow, I have a doctor's appointment.

THE COURT: Okay. Let's break that down just a little bit. What do you do for work?

A PROSPECTIVE JUROR: I am a -- I work as [sic] a counseling agency. So next week, we're getting a program audit for our BIP program.

THE COURT: So some of the stuff is not something I know. So if you could tell me, What is a BIP program?

A PROSPECTIVE JUROR: Batterers' Intervention Program. So it's -- DCF is auditing us next week. And then I'm also a CARF auditor. So I have an audit scheduled for CARF on the 22nd in Oklahoma.

THE COURT: Okay. Now your doctor's appointment tomorrow, at what time is that?

A PROSPECTIVE JUROR: 8:00 a.m.

THE COURT: So for this auditing procedure and the two audits you have referenced, do you work as part of a team?

A PROSPECTIVE JUROR: I'm the clinical director and one of the owners of the company.

THE COURT: So if you were serving on a jury, would there be any other members in your office or in your

organization who could step in to assist with the auditing functions?

A PROSPECTIVE JUROR:  Possibly for the first one but not for the second.

THE COURT:  And why is that?

A PROSPECTIVE JUROR:  Because that one has been scheduled for six months, and there is only two of us.  It's a different agency; it's the CARF accreditation agency.

THE COURT:  Understood.  That's CARF, C-A-R-F?

A PROSPECTIVE JUROR:  Yeah.

THE COURT:  Got it.  Okay.  All right.  Thank you, Juror 110.

Let's hear from Juror 111.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  My only hardship was with the schedule.  I had a trip planned on October 1st through the 5th.

THE COURT:  Is that a personal or work trip?

A PROSPECTIVE JUROR:  A personal.

THE COURT:  And have you made arrangements for that trip?

A PROSPECTIVE JUROR:  We do.  We have flights and hotels.

THE COURT:  Other than that trip from October 1 through the 5th, do you have any other hardships to report?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Thank you, Juror 111.

Let's hear from Juror 113.

A PROSPECTIVE JUROR:  I -- I basically work on commissions only.  I do get a very small compensation, but my commissions -- and I am the only one who -- on my mortgage to pay.  So that would be a huge hurt -- setback for me, especially three weeks.

THE COURT:  And where do you work?

A PROSPECTIVE JUROR:  I am an insurance agent at Your Way Insurance.  I work remote.

THE COURT:  Is that the type of work that you could do during other hours of the day?

A PROSPECTIVE JUROR:  No.  The company closes at 6:00 p.m.

THE COURT:  Okay.  All right.  Thank you, ma'am. That's all I have for now.

Let's shift to Juror 114.

A PROSPECTIVE JUROR:  Yeah, good morning.  In my case, it will be transportation.  It's a 75-mile drive from my home to here, and I don't have access to a family car or a personal car.  And also, I run a hydroponic farm, and staying away from the farm for three weeks will be detrimental to the farm.  We are going into a critical stage where the plants are, you know, shifting to reproductive, and I need to be at the farm.

THE COURT:  Okay.  So approximately how many miles did you say you live from --

A PROSPECTIVE JUROR:  75 miles.

THE COURT:  If you were permitted to stay closer to the courthouse, not at your own expense but at court expense, would that alleviate your driving concern?

A PROSPECTIVE JUROR:  It would, but then it would be the other situation where I need to be at the farm for -- like, the most -- the longest I can stay away from the farm is for four or five days, no more than that.

THE COURT:  And who else works at the farm?

A PROSPECTIVE JUROR:  I have a group of around ten local people, but I'm in charge of this.  I know the fertility, pest control, and all those programs.  So I got to be there, pretty much, every single day.

THE COURT:  Okay.  Thank you.  That's all I have for you, sir.

Let's hear from Juror 115.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  I have a doctor's appointment on September 22nd at 11:00 in Jupiter, a dental procedure on September 23rd in Palm Beach Gardens at 9:00 a.m., and then I'm leaving on a trip September 24th through -- I'm going to Toronto, and then from Toronto to New York on the weekend of

September 26th, and then back to Canada through October 8th.

THE COURT:  Okay.  The trip to Canada and to New York, is that for work?

A PROSPECTIVE JUROR:  Personal.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I had cleared two weeks and then put everything in that third week.

THE COURT:  I see.  Okay.  That makes sense with the dates.  Okay.  All right.  I may have some additional follow-up, but for now, that's sufficient.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Okay.  Let me hear from Juror 119.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  Mine is financial.

THE COURT:  Could you give us a little bit more information, please.

A PROSPECTIVE JUROR:  I'm a self-employed flooring installer, and I'm cancelling jobs as we speak, and I don't think I can financially do that.

THE COURT:  Okay.  So you're self-employed.  Do you run your own business?

A PROSPECTIVE JUROR:  Yes, my own business.

THE COURT:  Okay.  And I take it from your answer that there is no one else that works with you who could do what you

do?

A PROSPECTIVE JUROR:  Exactly.

THE COURT:  Okay.  All right.  Thank you, Juror 119.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Okay.  All right.  We've run through the jurors who have identified a scheduling-related hardship.

I want to now talk about a different form of potential hardship, and that's whether anybody here has a medical hardship of any kind that would interfere with their abilities to perform their duties as a juror.  So we will start with that category.  Anybody who has issues in this realm, please stand up and show me your paddle numbers.

Okay.  All right.  So we have 74.  And I spoke to you a little bit ago.

We have 71, 79, 62.  I don't think I see any other hands in the back.  Okay.  So all have a seat, and we will do the same thing.

Starting with Juror 62.

A PROSPECTIVE JUROR:  I just need to be -- if I stayed sitting too long -- I have a rare form of blood cancer, and so I'm on chemo.  And so if I sit too long, my legs go numb.  So I just need to move every once in a while.  So it's not horrible, but it's just something that might preclude sitting in a chair for a couple hours.

THE COURT:  Okay.  One moment, sir.  Okay.  Well, first

off, I'm sorry that you are going through that. You seem quite --

A PROSPECTIVE JUROR: (Indicating) it's better than the prostate cancer I had three years ago. So, you know, that's much better.

THE COURT: Goodness. Well, let me ask you a few questions. This is our jury box, as you can see, and it's not unusual to have jurors who have similar needs to stand up, really, at their -- at their discretion during the course of the trial. If you were, for example, chosen to serve on the jury, and sitting at one of those farther chairs with that ability to stand up whenever you needed to, would that be enough to help you?

A PROSPECTIVE JUROR: Oh, absolutely. I just, I got to get more blood to the legs, and so I have to, you know, fidget.

THE COURT: Okay. Now, other than the standing issue, do you have any other medical concerns that stem from your situation, like doctors' appointments or any other things like that?

A PROSPECTIVE JUROR: No. Everything is clear.

THE COURT: Okay. Okay. That's all I have, Juror 62. Thank you.

Let's hear from Juror 74.

A PROSPECTIVE JUROR: Yes. I'm diabetic. And I'm on new medications which kind of tend to drop my blood sugars low.

But I have been uncontrolled for a while.  I didn't take my medication because I was afraid I would drop low today, and I didn't take it yesterday until after I left here.  So that's one of the things where I would need to take frequent breaks, if necessary, to take my medication.  And I do have some other underlying conditions such as congestive heart failure.  They kind of have me on medication for that, and I kind of get dizzy at times.  But, you know, so there is that.

THE COURT:  And so overall, with all of the issues that you're facing, do you think those would interfere in general with your ability to fully focus on an important case?

A PROSPECTIVE JUROR:  No, I don't think it would.  I just would need to have breaks as necessary.  And I -- I have a CGM on.  So I turn my phone off because it alerts if I go low or high, and I didn't want to disrupt the Court.

THE COURT:  Oh, okay.  Well, thank you for letting me know.  We certainly don't want anybody to have any sort of adverse health consequence as a result of jury service.  So I have taken all of that down, ma'am.  Thank you.

Let's hear from Juror 71, I think.  I might have missed Juror 71.

A PROSPECTIVE JUROR:  Hello, Your Honor.  I wanted to go back to the first question, the hardship.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I missed that.  The medical is

not me, it's my wife.  She is going to have a surgery.  We are still waiting on the doctor.  And also, the hardship is I'm a self-contractor.  I do grocery delivery.  And also, I own a food trailer.  So I have no help.  Like if I don't go out, I don't make any money.

THE COURT:  Okay.  So let's take that one by one.  You said your wife has a surgery?

A PROSPECTIVE JUROR:  Yes.  And we are still waiting on the doctor.  I'm not sure when is the date until the doctor confirm the date.  But it's sometime this month.

THE COURT:  Okay.  And then you mentioned the grocery delivery and the food trailer.  Is that like a food truck?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Does anybody take it out when you're not there?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Still working -- I just started.  I have no one.

THE COURT:  What kind of food do you serve?

A PROSPECTIVE JUROR:  Caribbean-Haitian food.

THE COURT:  Well, maybe you should come by the courthouse every now and then.  No, I'm just joking.

A PROSPECTIVE JUROR:  Yes.  Yes.

THE COURT:  Okay.  Let's see.  And then the grocery

work, is that on commission?

A PROSPECTIVE JUROR:  Yeah, no.  Instacart.

THE COURT:  I got it.  Okay.  So perhaps you're aware, does Instacart offer any sort of arrangement for drivers who aren't able to do the work?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  All right.  Then I have taken all of that down, sir.  Thank you.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Okay.  And then I think we have Juror 79.

A PROSPECTIVE JUROR:  Yes, Your Honor.

THE COURT:  Yes.  And thank you, sir, for being thorough and addressing this issue too.  I took down the notes from the prior answer, and I think we have adequately covered this topic with you.  I have all of that written down, so no need for additional discussion.  Thank you, Juror 79.

A PROSPECTIVE JUROR:  Thank you.  Thank you, Your Honor.

THE COURT:  Okay.  I see a juror in the back.  Again, I need to be able to address this in an orderly fashion.  So the question is, does anybody have a medical hardship that they haven't already alerted the Court to?  And I see one juror, 92, wishing to be heard.

A PROSPECTIVE JUROR:  Good morning, Your Honor.  I did answer it on the questionnaire.  This is my first time being

called for jury duty, so I wanted to be completely open about it. I do suffer from autoimmune. I have rheumatoid arthritis and fibromyalgia, and I do have four herniated discs. But as I heard earlier, if I do have breaks in between or if I can stand or shift, I can make adjustments.

I did drive yesterday. It was a two-hour drive. And this morning, just to give my back a break, my husband drove me. So I can work around it; I just wanted to be completely open about my health condition.

THE COURT: Okay. All right. That's good to know. Thank you.

And generally, how many breaks would you say you need to make sure that you're okay?

A PROSPECTIVE JUROR: I do work an eight-, ten-hour shift every day. I'm an office manager for a financial institution, so every three to four hours I do take a break. Sometimes I do work -- I do work with a standing desk. So I do know how to work around my condition. I'm fully functional. I have done it for many, many years. So I just wanted to be open about it.

THE COURT: Thank you. And that's --

A PROSPECTIVE JUROR: And I do also suffer from migraines, but I do know how to address them when they onset.

THE COURT: Okay. All right. Thank you. Thank you for sharing. And, again, thank you for all -- everybody's

candor.  I know it can be a little difficult to share personal details but, again, that's the purpose of jury selection.

Okay.  All right.  I think that covers everybody who wished to express a medical hardship or a scheduling-related hardship.  So seeing no additional hands, I will shift gears.

Does anybody here have any difficulty reading or speaking the English language?

I see no hands.

Now, I'm going to ask a question that's related to the medical hardship, so if you have already discussed that topic, no need to stand up again, but I do want to ask a bigger-picture question.

Does anybody here have any physical disabilities or impairment that could be of a hearing nature or a sight nature, or anything in the physical disability realm that would render you incapable of performing your duty as a juror?  Again, if you have already spoken up on this subject, I have your information.  I'm just looking for anybody else who might have a physical impairment that would interfere with their ability to serve.

Okay.  Juror 80.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning, sir.

A PROSPECTIVE JUROR:  Before I was -- even when I stopped breathing for six minutes and it caused permanent brain

damage, so I have a hard time with my short-term memory.  It's not terrible, but sometimes I can't remember a lot of things that are -- so it's hard to focus and hard to try to remember stuff.

THE COURT:  Okay.  So this trial is expected to have a lot of witnesses and a lot of evidence.  Do you think your stated memory issues, sir, would make it difficult for you to follow and keep track of, closely, all of the evidence that is presented?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I also have attention deficit disorder, but I -- I have that in control for the most part.  But it is hard to remember some stuff because it just -- if it slips from my mind, it's just -- it's gone --

THE COURT:  Okay.

A PROSPECTIVE JUROR:  -- and I can't remember.

THE COURT:  Thank you.  Thank you for sharing and advising us of that.

Okay.  I see no additional hands on this physical impairment topic, so I'm going to -- I'm going to move on to the next task here.  And that's to read out loud the names of the individuals who may come to testify in this trial.  It doesn't mean that necessarily any of them will come to testify, but I do want to read out loud all of these names, and I ask

that you all pay very close attention to these names.  I will give them to you in chunks so it's not too overwhelming, but the point here is to make sure or to inquire and find out whether any of you know or have any relationship with any of the anticipated witnesses to be called in this case.

So let's start off with Kristin Bailey, Special Agent, Federal Bureau of Investigation.  Cindy Barrois, B-A-R-R-O-I-S, Special Agent, Federal Bureau of Investigation.  Michael Brooks, Deputy with the Palm Beach County Sheriff's Office. And Erin Casey, Operational Media Specialist, FBI.

Does anybody recognize or have any relationship with any of those individuals?

I see one juror, 106.

A PROSPECTIVE JUROR:  I work with the Palm Beach County Sheriff's Office.  I know Deputy Brooks.  Sergeant Brooks I believe now.

THE COURT:  One moment, sir -- ma'am, excuse me.  I didn't quite catch all that you said.  And I want to just make sure that I'm getting to the right place here.

So you mentioned you work where?

A PROSPECTIVE JUROR:  Palm Beach County Sheriff's Office.

THE COURT:  Okay.  And so do you know any of the folks whose names I listed?

A PROSPECTIVE JUROR:  Brooks.

THE COURT: Brooks.

What's your position at the Palm Beach County Sheriff's Office?

A PROSPECTIVE JUROR: I am a forensic imaging specialist.

THE COURT: Okay. So would you say you have regular contact with Mr. Brooks?

A PROSPECTIVE JUROR: I no longer work on road patrol. So not regularly, but, yes, I work in the violent crimes division. So, yeah.

THE COURT: Okay. And so then just in general, do you think your work at the Palm Beach County's office -- excuse me, Palm Beach County Sheriff's Office and your knowledge of Mr. Brooks and maybe the Palm Beach County Sheriff's Office more broadly, do you think that would at all affect your ability to hear the evidence in this case, objectively, to both sides?

A PROSPECTIVE JUROR: Yes. I feel like that would bias me.

THE COURT: All right. Thank you, ma'am. You may have a seat.

Does anybody else recognize those four names I have listed out so far?

Okay. No additional names for that -- excuse me, no additional hands for that segment.

Let's shift now to the next set of names.

Rachel Clay, Document Analyst - Forensic Examiner, FBI. Brenden Clements, Special Agent, United States Secret Service. Erin Farais, F-A-R-A-I-S, Physical Scientist, Federal Bureau of Investigation.  Robert Fercano, Special Agent, United States Secret Service.  And Garett Foo, F-O-O, Special Agent, FBI.

Does anybody recognize any of those names?

Okay.  Does anybody have any known interaction or relationship with them?

Okay.  No hands.

All right.  Then we have Tracy Fulk, F-U-L-K.  William Gale, Lieutenant, Palm Beach County Sheriff's Office.  Curtis Gaul, Biologist with the FBI.  David Gilbert, Special Agent, FBI.  And Jorge Gomez Junior, Sergeant with Palm Beach County Sheriff's Office.

Does anybody other than Juror 106, who may know those individuals, does anybody other than Juror 106 recognize any of those names?

Okay.  I see no additional hands.

Let's ask now about Christopher Adam Goodrich, Special Agent, FBI.  Kara Gregor, G-R-E-G-O-R, Biologist-Forensic Examiner with the FBI.  Laura E. Haller, H-A-L-L-E-R, Digital Forensic Examiner/Special Agent, FBI.  And Jason Harris, Special Agent, United States Secret Service.

Does anybody recognize any of those names?

Okay.  No hands.

Dominick Healey, Special Agent, FBI.  Christian Hlinka, Special Agent, United States Secret Service.  Travas Holland, Sergeant Technician, United States Secret Service.  And Michael Kelly, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives.

Anybody recognize any of those names or believe they have any interaction with them?

Okay.  All right.  Then we will shift gears.  I see no hands.

To Patrick Lantry, Task Force Officer, Federal Bureau of Investigation.  Austin Laufer, Detective, Palm Beach County Sheriff's Office.  Jerry Llanes, Digital Forensic Examiner with the FBI.  And Jose Loureiro, L-O-U-R-E-I-R-O, Special Agent with the FBI.

Does anybody recognize those names?

Okay.  No hands.

Moving on.  Christopher Mayo, Special Agent, FBI. Kenneth Mays, Detective with the Palm Beach County Sheriff's Office.  Tommy C. McGee.  Kimberly J. McGreevy, Supervisory Special Agent with the FBI.  And Ronnie Jay Oxendine.

Does anybody recognize any of those names?

No hands.

Okay.  A. Scott Patterson, Supervisory Special Agent with the FBI.  Matthew S. Perry, Special Agent, FBI.  Samuel

Plata, Lazaro Plata, and Christian Plata.

Does anybody recognize or believe they have any relationship with those individuals?

No hands.  All right.

Now we have Elizabeth Riddell, Digital Forensic Examiner, FBI.  Kathryn Rose, Special Agent, FBI.  Nicholas Schnelle, Special Agent, FBI.  Erich D. Smith, Firearms/Toolmark Examiner, FBI.  And Kenny Smith, Detective, Palm Beach County Sheriff's Office.

Does anybody recognize any of those names?

Again, no hands.

Okay.  Stephanie Stewart, Physical Scientist/Forensic Examiner with the FBI.  Aaron Thompson.  Gregory L. Turner, Special Agent, FBI.  And Randy Walters, Destructive Device Examiner, Bureau of Alcohol, Tobacco, Firearms and Explosives.

No hands reported.

All right.  To continue:  Michael McClay.  Oran Alexander Routh.  Atwill Milsun.  Erick Zuniga. Marshall Hinshaw.  John Tamura.  John Keone Sayles, spelled S-A-Y-L-E-S.  And Raymond Carrea.

Does anybody recognize any of those names?

Okay.  No hands.

All right.  That was a lengthy list.  So thank you again for your patience.

As I said earlier, ladies and gentlemen, we are here

today because an indictment has been filed informing Mr. Routh that he's accused of certain crimes, and as I indicated, he is called upon to respond to that indictment.

In this case, the defendant has indicated that he is not guilty.  And those words carry a great deal of weight, ladies and gentlemen, because we're beginning a jury trial where the government is required to prove the defendant guilty beyond a reasonable doubt before he may be found guilty of any offense charged.  And so the fact that an indictment exists doesn't mean that what it alleges actually happened.  That is what the jury is here to determine, and that is what the government must prove to you beyond a reasonable doubt.

There are some important underlying concepts that I would like to touch upon with you, and the first is the presumption of innocence.  By a show of hands, how many in this room has heard that concept, the presumption of innocence?

Don't be shy.  All right.  Good.  I see a lot of -- I see a lot of raised hands.

Well, the indictment in a criminal case -- and this is, again, a repetition of what I have already said -- is just an accusatory paper that states the charge or the charges that are lodged against a defendant, but it isn't evidence against the defendant or anyone else.  And, as I said, the defendant has entered a plea of not guilty, which means he is presumed by the law to be innocent.

Every person charged with a crime in this country is presumed innocent. That right is guaranteed by our Constitution. And so, if I were to send all of you back to the jury deliberation room right now, just as a hypothetical exercise, and ask you to render a verdict, the only lawful verdict that you could come back with would be not guilty, of course, because the defendant is presumed innocent, and, of course, no evidence has been presented.

And so, hearing what I have just said, is there anybody in this room that has any difficulty or hesitation accepting and upholding that presumption of innocence which is so important in our system?

Okay. I see Juror 113 in the back. All right. Let me just ask a general question, ma'am. Do you think you could follow the presumption of innocence, yes or no?

A PROSPECTIVE JUROR: It would be very hard for me because I am MAGA and I love my President and I followed this from -- live on TV. And I already have -- I feel it would be very hard for me to be swayed on how I feel.

THE COURT: Okay. Thank you for indicating that. I have jotted that down. That's all I need from Juror 113. Did I get your number right?

A PROSPECTIVE JUROR: 113. (Indicating.)

THE COURT: Okay. Got it. Thank you.

Okay. Does anybody else have any belief about this

presumption of innocence, that they could not follow and uphold that presumption of innocence?

Okay.  I see no additional hands.

All right.  Now, a related subject is the burden of proof.  That burden of proof, like I have said, is on the defendant's accuser, which, in this case, is the United States government, and the burden is to prove the charges beyond a reasonable doubt.  So what I'm going to do now, ladies and gentlemen, so that we're all on the same page, is I'm actually going to read to you the specific jury instruction that I would give to the chosen jury at the end of the trial as it pertains to the definition of reasonable doubt.  So here it goes. Please listen up.

"The government's burden of proof is heavy, but it doesn't have to prove a defendant's guilt beyond all possible doubt.  The government's proof only has to exclude any reasonable doubt concerning the defendant's guilt.  A reasonable doubt is a real doubt based on your reason and common sense, after you have carefully and impartially considered all of the evidence in the case.  Proof beyond a reasonable doubt is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs."

So that's the so-called "burden of proof instruction" that jurors are required to follow.  And I want to ask:  Does

anybody here have any difficulty accepting that proposition as the law?

I see no hands.

All right.  Now, a spin-off and very important related topic is that the government bears the entire burden of proof.  That means there is nothing left over for the defendant.  He doesn't have to prove his innocence or present any evidence at all or testify.

Does anybody have any difficulty or hesitation accepting that as the law?

No hands.

Another related subject on this issue is the defendant's right to remain silent.  Has anybody heard about that before, through TV or just any other experience?  All right.  Again, I know it's the morning.  Maybe we all need a second cup of coffee.  But by a show of hands, how many have heard of that concept?

Okay.  Thank you.  That's -- that's an active group.  And so let me just touch on this subject again.

"The law does not require the defendant to prove his innocence or to provide any evidence at all.  And if a defendant elects not to testify, you can't consider that in any way during your deliberations.  Why?  Because the government bears the entire burden to prove a defendant's guilt beyond a reasonable doubt, and if the government fails to meet that

burden, you must find the defendant not guilty."

So if a defendant elects not to testify, again, it would be impermissible to hold that decision against him. And so again, another little hypothetical exercise. If you were to be chosen for this jury, and then the trial is over, let's say you go back into the jury room with your fellow jurors and you start to talk about this case, it would be clearly off-limits and impermissible to think something like this: You know, I don't believe the government proved its case, but I'm going to hold -- I'm going to find the defendant guilty anyway because he didn't testify.

That sort of inference, that sort of thinking, or that sort of thought process is entirely off-base and prohibited in the law.

So is there anybody here who would hold it against a defendant who elected not to testify or to provide any evidence during a trial?

Okay. I see no hands.

Is there anybody who feels they would not be able to follow the law as it concerns a defendant's right to remain silent?

No hands.

Now, to reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. When you consider a witness's testimony -- and a witness would come

and sit in this witness box, be sworn to tell the truth, and then answer questions. So it would be the jury's job to evaluate the credibility of any witness who comes to testify.

That whole process involves consideration of a number of factors, and I will run through a few.

"You can consider things like the witness's opportunity and ability to see, hear, or know the things the witness is testifying about. You might also consider the witness's memory and if they come across as somebody who remembers what they're testifying about. It would also be appropriate, for example, to consider the manner in which the witness is testifying. Is it somebody that strikes you as someone who is telling the truth? Now, it might also be important for you to consider whether the witness has any specific interests or bias associated with the case. And, of course, if there is any other evidence that's been presented that would contradict or go against what the witness has said."

Those types of factors are all the types of factors that you would engage with in determining the credibility of any given witness, and, of course, any other factors that affect the person's believability.

Does anybody here feel that they would be unable to evaluate the credibility of witnesses as you're hearing evidence in this case?

I see no hands.

Now, you will be asked and instructed to disregard the consequences of any verdict rendered. So let me be clear here. Jurors are not allowed to concern themselves with the imposition of any sentence. Why? Because the imposition of any sentence is the sole province of the judge, not the jury.

Does anybody here have any difficulty accepting that as the law?

No hands.

Okay. Now, I talked a moment ago about weighing credibility. This is somewhat related. As jurors, you might disagree on what the evidence has shown, perhaps one of you believes one witness but not another witness, or maybe you believe part of what a witness says but maybe not another part. That is perfectly acceptable, but what is not acceptable is for jurors to disregard the law that is given to them to follow.

And so my question, ladies and gentlemen, is: Is there anybody here who would not be able to follow the Court's instructions to you on the law?

I see no hands.

And then I will just touch again on this subject.

"Of course, after you retire to the jury room, it would be your duty to discuss the facts and see if you can reach a unanimous verdict. But, again, there is no room for doubt concerning the law, even if you disagree with the law."

So let me ask again. Is there anybody here who feels

they would not be able to follow the Court's instructions on the law?

No hands.

All right.  Let's see.  Okay.  That -- ladies and gentlemen, we are now at 10:00.  We have been going for about an hour and a half.  So presumably, you all need a break.  What we're going to do now is I'm going to direct you to go back to that jury assembly room.  Before I do, though, I'm going to give you some specific instructions and cautionary warnings.  So please hang tight.

One other housekeeping matter, because we have those paddles and we don't want to lose them, I'm going to ask that you please leave them on the chairs where you're sitting so that we keep track of them.

I did want to make one other point just as far as the jurors, that, I think, Juror 76 was not able to join us today due to transportation issues outside of his or her control.  So that -- there is no Juror 76, in case the parties were wondering about that number.

All right.  So before I let you go back to the jury assembly room -- and, again, you are not allowed to leave the courthouse, ladies and gentlemen.  We will try to get back to you as soon as we can with further instructions.  I do want to give you some important things to keep in mind.

You are not allowed to discuss the case with anybody,

and that includes any of your prospective jury members or anybody downstairs or anybody you may come across or anybody you call.  The point is, there can be no discussion about this case at all, nor can there be any investigation or research or looking up anything related to this case.  I know in this day and age of constant electronic communication, it might very well be tempting to look up on your phone something related to this case, but that is strictly prohibited.  So I'm making that all very clear to you that I expect full compliance with that.

In addition, you're not allowed to have any contact with any of the parties, attorneys, or anybody else associated with the witnesses in this case.  So if you happen to see them either in the restroom or elsewhere around the courthouse, they're not being rude or arrogant, they're just specifically forbidden to have any contact with you.

So, again, no talking about the case with anybody, no research or investigation of any kind.  And the reason we make such a big deal about this, ladies and gentlemen, is because we need to make sure that we protect that right to a fair trial, and an essential piece of that is to make sure the jurors consider only the evidence that is presented in the courtroom and the instructions on the law, not any other material or any other influence that is outside of the official courtroom proceeding.

And so, with that, I'm going to direct you all, please,

to return to that jury assembly room.  Leave the paddles where they are, and we will be in touch with you as soon as we can.

All rise for the jurors.

(The venire exited the courtroom.)

THE COURT:  Okay.  Thank you.

You may all be seated.  It is 10:11.  We're going to take a break until 10:30.  Please consider any for-cause challenges to Group 2, and be prepared to raise your specific reasons for each of them.

Anything to address at this time, Mr. Browne?

MR. BROWNE:  No, thank you, Your Honor.

THE COURT:  Mr. Routh?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  Then 10:30 is our time to resume. Thank you.

(A recess was taken from 10:10 a.m. to 10:31 a.m.)

THE COURT:  All right.  Thank you.  Please be seated. Everybody is present.

We're going to discuss for-cause challenges now for Group 2 based on information provided in the questionnaires or provided in the -- our session just now for preliminary jury selection.  This time, Mr. Routh, I'm going to start with you. So we are dealing now with Group 2 only.  And that is Jurors 62 --

MR. ROUTH:  I feel --

THE COURT:  One moment.  62 through 121.  And, like I said, 76 is not -- is not in the mix anymore.

So let me start with you, Mr. Routh.  Do you have any for-cause challenges to raise for this group?  And let's take them in order.

MR. ROUTH:  Well, I felt yesterday went very smoothly with the prosecution laying out their list and then me supplementing since they're better prepared than I.

THE COURT:  Okay.  So you're asking me to start with them first today?

MR. ROUTH:  Yes.  If you don't mind.

THE COURT:  Okay.  Then I will do that.  But please make sure that you speak up if you have any for-cause challenges that you want to raise, and then I will come back to you at the end.

MR. ROUTH:  Certainly.

THE COURT:  Okay.  All right.  Then, Mr. Browne, will you be taking the lead again today?

MR. BROWNE:  Yes, Your Honor, if that's okay.

THE COURT:  Okay.  Can you please move the mic closer to you.  Thank you.

All right.  Let's begin with the first for-cause challenge for Group 2.

MR. BROWNE:  64, based on financial hardship.

THE COURT:  Okay.  This is the barista, Mr. Routh, who

has a trip, and he indicated he is not paid unless he works.

Do you have an objection to a for-cause strike as to him?

MR. ROUTH:  No objection.

THE COURT:  Okay.  64 will be stricken for cause.

Next.

MR. BROWNE:  69, based on financial hardship and childcare.

THE COURT:  Okay.  This is the electrician, Mr. Routh, who has to pick up his children at around 3:30 and has no additional help.

MR. ROUTH:  Yeah.

THE COURT:  Do you agree that he should be stricken for cause?

MR. ROUTH:  Yes.  No objection.

THE COURT:  Okay.  69 will be stricken for cause.

MR. BROWNE:  Number 71, based on financial hardship and the impending wife's surgery.

THE COURT:  Okay.  Mr. Routh, this is the gentleman who works for Instacart and has a food truck, and they're waiting for information about an impending surgery.

Do you agree that he should be stricken for cause?

MR. ROUTH:  Yeah, no, objection.

THE COURT:  Okay.  71 stricken for cause.

MR. BROWNE:  74, based on medical hardship.  I think

the last fact, Your Honor, that she has to keep her phone on at all times to monitor her blood sugar I think carries it over in terms of her medical hardship as well as her preexisting conditions.

THE COURT:  Okay.  Mr. Routh, do you agree?

MR. ROUTH:  Yes, I agree.

THE COURT:  Okay.  74 will be stricken for cause based on the medical hardship concerns.

All right.  Next, Mr. Browne.

MR. BROWNE:  Prospective Number 77, based on a prebooked week-long company trip.

THE COURT:  All right.  So this was, I think, the woman who has a work trip for -- or an annual thing for her husband's work.

Do you agree that this juror should be stricken for cause?

MR. ROUTH:  No objection.

THE COURT:  Okay.  77 is stricken for cause.

MR. BROWNE:  79, based on medical hardship.

THE COURT:  All right.  This was the gentleman, Mr. Routh, who has glaucoma and various medical appointments.

Do you agree that he should be stricken for cause?

MR. ROUTH:  Yes.  No objection.

THE COURT:  79 stricken for cause.

MR. BROWNE:  Prospective Juror Number 80, based on

general hardship and inability to follow along based on short-term memory issues.

THE COURT:  Okay.  Mr. Routh, do you agree?

MR. ROUTH:  I agree.

THE COURT:  Okay.  Juror 80 will be stricken for cause.

MR. BROWNE:  81, based on financial harm -- hardship. She indicated she would only be compensated for her first day of jury service.

THE COURT:  Okay.  So, Mr. Routh, this was a single mother with financial hardship.  She's the sole provider.  She works at an orthopedic office, but they cover only her first day of jury service.

Do you agree?

MR. ROUTH:  I agree.

THE COURT:  Okay.  Juror 81 will be stricken for cause.

MR. BROWNE:  82 for cause, Your Honor.  Prospective Juror 82 is related by marriage to a staff operations specialist who is an integral part of the investigative team.

THE COURT:  Hold on one moment.  Let me -- I don't recall that -- did 82 speak up today, or is this from the questionnaire?

MR. BROWNE:  This is based on a disclosure that the FBI employee made when she recognized Prospective Juror 82's name as being married to her cousin.

THE COURT:  Okay.  One moment.  Okay.  So this is

Juror 36.  And is there something on the questionnaire that is -- is indicative of what you're suggesting?

MR. BROWNE:  No, Your Honor, this is Prospective Juror Number 82.

THE COURT:  Oh, I'm sorry.  It's 82.  Did I not say --

Yes, okay.  Juror 82, I'm looking at this person's questionnaire.  Is there anything in this questionnaire that speaks to what you're talking about?

MR. BROWNE:  No, Your Honor.  That's based on the FBI employee identifying that person as being related by marriage.

THE COURT:  Okay.  All right.  Mr. Routh, do you have any objection to this for cause?

MR. ROUTH:  No objection.

THE COURT:  Okay.  82 will be stricken for cause.  One moment.

Okay.  Next, Mr. Browne.

MR. BROWNE:  83, based on financial hardship and childcare.

THE COURT:  Do you agree, Mr. Routh?

MR. ROUTH:  I agree.

THE COURT:  Okay.  83 will be stricken for cause.

MR. BROWNE:  86, based on financial hardship and the fact that he is a full-time student who indicated that he would have to miss classes at Indian River college.

THE COURT:  All right.  So this is a student, and I

think he also indicated in his questionnaire that he would lose focus and his grades would suffer.

Do you agree that 86 should be stricken for cause?

MR. ROUTH:  I agree, Your Honor.

THE COURT:  Okay.  86 will be stricken for cause.

I want to go back to Juror 84.  My notes show that he has some sort of school drop-off issue also, would need to call neighbors.

Mr. Browne, any thoughts on 84?

MR. BROWNE:  My understanding, Judge, is he indicated that he is a stay-at-home parent, and I believe -- I don't know if the Court asked specifically when pickup time was.

THE COURT:  I think this is the gentleman whose wife has a busy career and she travels a bunch and is working most of the day.  Is that the same person?

MR. BROWNE:  I do recall that, Your Honor.

THE COURT:  Okay.  Well, it seemed like he had some real issues with regularity in terms of picking up the children.

What's the government's position?

MR. BROWNE:  No objection to cause.

THE COURT:  Mr. Routh?

MR. ROUTH:  Yeah, no objection.  I think they discussed the October 30th surgery or something so, yes, no objection.

THE COURT:  Okay.  I don't recall any surgery, but I do

remember this being a childcare issue.

Okay.  So 84 will be stricken for cause.

All right.  Staying in order, I did have a note from the questionnaire on 85.

MR. BROWNE:  Your Honor, we think that that prospective juror should be questioned in terms of follow-up.  She had indicated that she wasn't sure or that she didn't think she could be fair based on her experience working at the Department of Corrections.  But we don't think it is a black-and-white admission that she cannot be fair in this case.  We think follow-up is more appropriate.

THE COURT:  Okay.  Mr. Routh, what's your position on Juror 85?

MR. ROUTH:  Yes, I think she should be relieved based on question number 22, and she was also -- her house was robbed, and various issues.

THE COURT:  Okay.  So I don't know about the robbery as a reason, but I do agree with the defense that this juror should be stricken for cause based on the answer to 22, which concerns an inability to be fair and impartial based on her view regarding the believability of inmates.

So 85 will be stricken for cause.

MR. BROWNE:  We already addressed number 86, Your Honor.

THE COURT:  Yes, I did.

MR. BROWNE:  And then the next cause challenge from the United States would be Prospective Juror 94.  This is the individual --

THE COURT:  Let's just -- let's address 92 for a minute.  This was a woman who was forthcoming with some medical issues but seemed like she could handle jury service so long as she had enough breaks.

What's your position on 92?

MR. BROWNE:  She's able to work with those same conditions.  She indicated that she's comfortable making accommodations for herself.  She works, for example, at a standing desk, and that if given enough breaks, she feels confident that she could serve.

THE COURT:  Okay.  Mr. Routh, what's your view?

MR. ROUTH:  She can be relieved.  I mean --

THE COURT:  Well, can you give me a little bit more -- less casual.  What do you think about Juror 92?

MR. ROUTH:  Well, I mean, she has medical issues so, I mean, just given the medical issues --

THE COURT:  Well, the question is do the medical issues rise to the point where they would interfere with her ability to serve?  And I think Mr. Browne is correctly relaying what the prospective juror said, which is that she does have these concerns, but she's fully functional, she works around them, she works full-time, and that if given enough standing

opportunities, she would be okay.

So in light of all of that, what is your position?

MR. ROUTH:  No objection either way.

THE COURT:  Okay.  Well, in light of the absence of a defense position either way, I'm going to keep Juror 92 in the mix, given her responses.

Next juror for cause, Mr. Browne.

MR. BROWNE:  94, Your Honor, based on financial hardship.  There is also an indication in the questionnaire about not trusting the U.S. court system.

THE COURT:  Okay.  So, Mr. Routh, this was a gentleman who works overnight and hadn't slept at all.  He works maintaining railroads.  What is your position on him?

MR. ROUTH:  Yeah, he has a 7th grade -- 7th grade education so, yes, he should be relieved.

THE COURT:  Okay.  All right.  Well, for the reasons related to his financial hardship and the overnight work, I think it's clear he wouldn't be able to maintain attention during the trial.  So Juror 94 will be stricken for cause.

Next, Mr. Browne.

MR. BROWNE:  Prospective Juror Number 99, Your Honor, based on nondisclosure of criminal history.

THE COURT:  Before we get there, any thoughts on 98?  I think there was some potential hardship listed for Juror 98.

MR. BROWNE:  That prospective juror did not stand up

and identify any hardship when asked by the Court.  It's also not clear from the questionnaire what the nature of the hardship is.  I have in my notes that she believed her service would cause a hardship to her church where she volunteers, and to a pet.  And I just don't know if that qualifies without additional follow-up by the Court.

THE COURT:  All right.  Okay.  So we will then hold off on any final decisions for Juror 98 and keep her in the mix at this point.

So let's get back to 99.  The government's indicated a nondisclosure of criminal history, Mr. Routh.  What's your position on a for-cause strike as to 99?

MR. ROUTH:  Yes.  I would say 99 be -- be stricken.

THE COURT:  Okay.  Juror 99 will be stricken for cause with agreement of both parties.

Next.

MR. BROWNE:  Prospective Juror 101, who just lost her mother-in-law.

THE COURT:  Okay.  Any objection, Mr. Routh?  This is the woman who needs to drive tomorrow to New Jersey because of the passing of her mother-in-law.

MR. ROUTH:  Yeah.  That's not a problem.  Her husband is also a cop.

THE COURT:  Okay.  All right.  She will be stricken for cause.  This is 101.

All right.  Next.

MR. BROWNE:  104, the sole practitioner at her law firm, who just returned from a lengthy trip, indicated she has clients in hospice who need immediate attention.  We'd ask that she be excused for cause.

THE COURT:  Mr. Routh, what is your view?

MR. ROUTH:  No objection.

THE COURT:  Okay.  104 will be -- will be stricken for cause.

All right.  Next.

MR. BROWNE:  106, the PBSO employee.

THE COURT:  Okay.  This one is pretty clear.

Mr. Routh, do you agree that 106 should be stricken for cause?

MR. ROUTH:  Most certainly.

THE COURT:  Okay.  106 is stricken for cause.

Next.

MR. BROWNE:  Prospective Juror 107.  Financial hardship.  Indicated she would -- relies on commission to pay her bills.

THE COURT:  Yes.  She has a young daughter with activities and the commissions pay her bills.  She's head of household.

Mr. Routh, what's your view?

MR. ROUTH:  No objection.

THE COURT:  Okay.  107 will be stricken for cause.

Mr. Browne.

MR. BROWNE:  Prospective Juror 110, who needs to, I suppose, prepare for two audits, one in Oklahoma.  She indicated she is the company owner and that she alone can handle the audit in Oklahoma.

THE COURT:  Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  Okay.  110 will be stricken for cause due to the professional commitments she indicated as clinical director of an organization experiencing some audits.

Okay.  Next.

MR. BROWNE:  113.

THE COURT:  All right.  So you're skipping over 111.  That person indicated a personal trip starting on October 1.  Is that because maybe the length of trial has shortened a bit?

MR. BROWNE:  Yes, Your Honor.  And also, I think, based on the Court's own projection of the length of trial, I have a feeling that that's not going to interfere with Juror Number 111's trip.  But we would defer to the Court.

THE COURT:  Okay.  Mr. Routh, what's your view?

MR. ROUTH:  Oh, I think 111 is a fine juror, so...

THE COURT:  Okay.  We will keep her in then.

Let's get back to 113, Mr. Browne.

MR. BROWNE:  Your Honor, I'm sorry.  Before we move on

from 111, though, we would ask if the Court could potentially follow up and just ask her if that October 1st trip is going to be looming large over, you know, deliberations, or over, you know, her ability to serve as a juror.  We don't know the nature of that trip, only that it's prebooked and it's four days long.  So if the Court wouldn't mind inquiring further of 111, we would appreciate it.

THE COURT:  Okay.  So tomorrow, when we have this, like, substantive round of jury selection with Group 2, I'm going to give each side an opportunity to raise any additional questions.  So please remind me of that so I don't forget to follow up with Juror 111.

Are we now at 113?

MR. BROWNE:  Yes, Your Honor.

THE COURT:  Okay.  What's your view with this one?

MR. BROWNE:  This is a self-declared bias who also works on commissions.

THE COURT:  Oh, yes.  Okay.  All right.  This is the person who works in insurance.  She gets a little bit of money regularly, but it's mostly commission.  And it would be, I think, she said "a huge setback" if she had to serve on jury selection.  And I'm pretty sure she made additional -- yes, she made additional comments that were not consistent with a fair and impartial jury.

So do you agree, Mr. Routh, that 113 should be stricken

for cause?

MR. ROUTH:  Yes.

THE COURT:  Okay.  So 113 will be stricken for cause.

Next.

MR. BROWNE:  114, the farm manager, based on financial hardship, the distance he has to travel, and it appears that he has a managerial role at the farm at a critical time.  So we would ask that he be excused on that basis.

THE COURT:  Okay.  So the distance alone is not by itself a reason, given the distance, and Court rules to accommodate that.  But the farm employment is more concerning.

Mr. Routh, what's your view?

MR. ROUTH:  Well, I think he also mentioned he didn't have a vehicle.  So in his paperwork, he said he didn't have a vehicle.  So getting here, I think, is a problem.

THE COURT:  That's true.  That's a good catch.

Okay.  So 114 will be stricken for cause.  Did I say -- yeah, 114.

All right.  Next.

MR. BROWNE:  115 for cause, based on prearranged travel.  And by way of disclosure, Prospective Juror 115 works at a law firm where my wife is also a partner.

THE COURT:  Okay.  All right.  So this person had various appointments he had set up, I think, in the back half of September, and then another trip, and now we have some more

information.

Mr. Routh, what's your position?

MR. ROUTH:  Obviously, a conflict of interest.

THE COURT:  All right.  115 will be stricken for cause without objection.

All right.  Next.

MR. BROWNE:  119, based on financial hardship.  And apparently, 119 is also the sole caregiver for an elder parent, and, furthermore, 119 did not disclose prior convictions.

THE COURT:  Mr. Routh, any objection to a for-cause strike as to 119?

MR. ROUTH:  No objection, Your Honor.

THE COURT:  Okay.  119 will be stricken for cause.

Next.

MR. BROWNE:  Could I have a moment, Your Honor?

THE COURT:  Yes.

MR. BROWNE:  That's all we have in Group 2, Your Honor.

THE COURT:  Okay.  Thank you.

Mr. Routh, do you have any additional for-cause strikes to offer for Group 2?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  Let's take those one by one. Remember, you have to provide a reason.

MR. ROUTH:  Right, exactly.

So just for tidiness -- I don't know -- 76, I'm

assuming is going to be eliminated?

THE COURT:  Yes.  76 had some sort of car issue and never showed up today.  So 76 is out of the mix.

MR. ROUTH:  Okay.  I had 78 had hypertension and high cholesterol and hearing loss and all kinds of medical issues.

THE COURT:  Wait.  Okay.  Let's stop there.

Mr. Routh, do you think that I should ask more questions of this juror about the extent of the hearing loss, or do you think it's enough with what we have in the questionnaire to say he or she is unable to perform?

MR. ROUTH:  Well, they had the high cholesterol and the hypertension and all sorts of things noted that were --

THE COURT:  Well, those conditions by themselves, you know, I don't think would be enough.  Maybe hearing loss is a problem.

MR. ROUTH:  All right.  So, you know, just -- they had a DUI, also, and some other items.  So I defer to you.  So whatever you say.

THE COURT:  Well, no.  I want to make sure you have an opportunity to be heard.  What's your ultimate position on this juror?

MR. ROUTH:  I would obviously like to exclude this juror, so...

THE COURT:  Okay.  What's the government's position?

MR. BROWNE:  Your Honor, we think additional follow-up

is appropriate to determine the extent of the hearing loss.

THE COURT:  Okay.  That's what I will do.  Please make a note to ask for this follow-up hearing-loss-related question for Juror 78, which we will do tomorrow.

Okay.  Mr. Routh, any other for cause to propose?

MR. ROUTH:  Yes.  Juror Number 98.  She spoke about only following God's law.  So, I mean, I don't think she's going to be fair and impartial if she's just following God's law.

THE COURT:  All right.  Let's see.  This is Juror 98.

All right.  What's the government's position?  This person has written to this question:  "Do you have any beliefs or opinions which might prevent you from following the Court's instructions on the law?"

She checked "yes" and "no," and then wrote, quote, "So long as the Court's instructions don't go against God's law as pro-life, no death penalty."

What is the government's position?

MR.  BROWNE:  No objection to excusing for cause.

THE COURT:  Okay.  So Juror 98 will be stricken for cause.

Okay.  Mr. Routh, next.

MR. ROUTH:  I think 107 was listing a financial hardship.

THE COURT:  She's already been stricken for cause.

She's the household -- head of household with the commission issue.

MR. ROUTH:  Okay.  Okay.

THE COURT:  Am I correct, Mr. Browne?

MR. BROWNE:  Yes, Your Honor.

THE COURT:  Okay.

MR. ROUTH:  Okay.  Yeah.  I just misread my numbers. Okay.  I'm sorry.  Thanks.  I'm sorry about that.

THE COURT:  That's okay.  Next one.

MR. ROUTH:  That's it.

THE COURT:  That's it.  Okay.

All right.  Any additional for-cause strikes from the government or the defense?  Last chance at this point.  Again, we still have a final chance for for-cause discussion for Group 2 after tomorrow.

Mr. Browne.

MR. BROWNE:  No, Your Honor.

THE COURT:  Mr. Routh.

MR. ROUTH:  Number 87 said that she was abused by her father.  So I don't know if that rises to the level of -- if -- if the abuse is worthy of excluding.

THE COURT:  Again, you know, trauma and experiences are necessary to consider, but not warranting a for-cause strike unless they actually mean the person can't be fair and impartial.

MR. ROUTH:  Okay.

THE COURT:  So let's take a look here at that answer. Okay.  We will have to inquire about this juror, 87.  Private inquiry, I think, is warranted to follow up on question 19.

Okay.  Is that it, Mr. Routh?

MR. ROUTH:  That's it, Your Honor.  Thank you very much.

THE COURT:  Okay.  It's 11:00.  I'm going to step off the bench momentarily so that court staff can gather our jurors from Group 2 back in the courtroom as before.  So please take a brief break and return to the courtroom as soon as possible. Thank you.

(A recess was taken from 10:58 a.m. to 11:07 a.m.)

(The venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT:  Thank you.  Please have a seat.  And thank you for your continued patience.  Everybody is here.

All right, ladies and gentlemen, what I'm going to do now is read out loud the names of the jurors who have been excused from jury service.  You will be then asked to return to the jury assembly room to receive a certificate of attendance, but your responsibilities will end after that.

For anybody whose names I do not call, you're expected to return to the courthouse tomorrow at 8:30 a.m. for a second round of jury selection, as I indicated, so we can ask some

more questions of all of you.

So please listen carefully.  These are the folks who are excused from jury service.

Juror 64, Juror 69, Juror 71, Juror 74, Juror 77, Juror 79, Juror 80, Juror 81, Juror 82, Juror 83, Juror 84, Juror 85, Juror 86, Juror 94, Juror 98, Juror 99, Juror 101, Juror 104, Juror 106, Juror 107, Juror 110, Juror 113, Juror 114, Juror 115, Juror 119.

So that concludes the list for now.  Those who have been excused for jury service, I want to thank you all, as I said at the beginning, for being here.  Please do return to the jury room.  And for all of you who need to return tomorrow, please listen carefully.  I'm going to give you similar warnings to the ones I indicated right before the break.

And that's, of course, to not discuss this case with anybody, or to let anybody discuss it with you.  If anybody should discuss it with you, please bring it to my attention promptly.  Keep in mind that you must not conduct any research or make any investigation about the case.  The only evidence, again, will be the testimony and the evidence presented in the courtroom.  And the jurors must stay focused solely on that, along with the law as it is given to them.

Remember, you are not allowed to have any contact with the attorneys, parties, or witnesses in the case.  They're not being arrogant or aloof, they're just instructed not to have

any contact, just as you are not permitted to talk with them.

So, again, no discussing this case in any way. You can tell folks that you work with or live with that you are required to come for jury service, but nothing beyond that. And, of course, no investigation or research of any kind, whether on the internet, any social media app, or any -- any forum whatsoever.

So with those cautionary words, I will thank you all again, ask you to rise. Please do leave those paddles again where they are, and we will see the remaining jurors tomorrow. Thank you.

A PROSPECTIVE JUROR: Thank you. And good luck with the trial.

(The venire exited the courtroom.)

THE COURT: All right. It's now 11:20. We have our Group 3 jurors arriving and getting prearranged for preliminary jury selection as to that final group, so we will need another brief break to assemble them in the courtroom.

Are there any issues we should address now, Mr. Browne, or any government attorney?

MR. BROWNE: No, Your Honor.

THE COURT: Mr. Routh.

MR. ROUTH: No, Your Honor.

THE COURT: Okay. So it's 11:20. We will try to get started as close to 11:30 as we can. And as a reminder, at

2:00 we're resuming the substantive piece of jury selection with Group 1.

So, with that, we will take a brief break.  Please be ready, of course, for Group 3 preliminary jury instruction. That is all.  Thank you.

(A recess was taken from 11:17 a.m. to 11:31 a.m.)

(The venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT:  Good morning.  Please be seated.

All right.  Ladies and gentlemen, good morning.  It's still the morning for a little bit.  Welcome to the federal courthouse in Fort Pierce.  My name is Aileen Cannon, and I serve as a United States District Judge in this district.  I will be presiding over this case, which is styled United States of America v. Ryan Wesley Routh, Case Number 24-80116.

First things first, let's swear you all in.  So Ms. Moran, one of the courtroom deputies, will swear you in now as the prospective jurors.  Please rise.

COURTROOM DEPUTY:  Will all prospective jurors please raise your right hand.

You and each of you do solemnly swear or affirm that you will well and truthfully answer all questions propounded to you, touching upon your qualifications to serve as jurors in the case before the Court, so help you God?

Please say "I do."

THE VENIRE:  I do.

THE COURT:  All right.  Thank you.  You may all take a seat.

All right.  I want to begin as I always do when I have the pleasure of seeing members of our community assemble together for the function of jury service, to thank you for being here on behalf of myself, the entire Southern District of Florida, and the parties in this case.

I think you may all have been presented with a video yesterday when you showed up to jury selection to fill out the questionnaires.  So in line with those sentiments, I want to let you know just how cherished, recognized, and preserved the jury trial right is in our country.  It is, of course, part of our United States Constitution, and it is one of the most important duties that a citizen is called upon to perform.

Our system allows litigants to select members of their community to decide the outcome of a case that ends up in court.  And your role, ladies and gentlemen, as prospective jurors and ultimately if you're chosen to serve, is indispensable to that system.  So while sometimes jury service can present an inconvenience, either professionally or personally, I do want to take a moment to emphasize just how important and special and profound the function of jury service is in our country, so I hope you all recognize that.

Now, in looking at the questionnaires, some of you, I

think, have served on juries before, some of you have not.  So this might all seem fairly normal.  Perhaps it seems completely unfamiliar and maybe even a little intimidating.  Well, rest assured, do not feel apprehensive or inadequate at all.  I will do my very best to try to guide you through this process and give you instructions as we go along about what your role and what your duties will be.

I now want to make some important introductions so you know who is who in the courtroom, and I will start first with our courtroom deputies who are for this trial Susana Moran and Warren Condon.  They are here to assist us in coordinating the day-to-day operation of the Court, and they are, of course, our trusted helpers here for this trial, as you will come to learn.

Second, in front of me we have Ms. Laura Melton.  She is our court reporter.  And her job is a tough one.  It's to take down every single word that is said in the courtroom at all times, including all of the questions and answers that I will ask of you in a few moments.  So to make her job easier, I ask that you please speak as audibly and clearly as you can, using the microphone, which we will hand one by one to each of you, and to also present your juror numbers facing out so we know who is speaking when.

I will pause here now to give you some more detail about how I will be addressing you in the courtroom.

This is a public trial and a public proceeding.  There

are members of the public and/or the media in the courtroom right now.  There are also folks who may be viewing this proceeding through a live feed that we have to another location in this courthouse.  And so this is a public proceeding, but we won't be using your specific names or asking you to reveal personal identifying information during this proceeding, things like the name of your spouse or your date of birth or your home address.  And we will be using just that juror number that you have been designated with your paddles to help us follow along.  This is by party agreement and Court approval, so everybody will be abiding by that procedure.  That means that nobody during the jury selection process or in the public courtroom proceedings will be referring to your name in open court.

Now, a related point.  We have a prohibition in this courthouse on the use of electronic devices by those unauthorized to have them, so there also won't be any electronic recording or video-taking or photographs of the jurors in this matter.  Of course, though, it is my obligation to conduct jury selection, and part of that will require asking many questions, some of which touch upon personal aspects in your life.  But when I do that, I won't be asking you to reveal, like I said, your name or any specific personal identifying information.

You may be asking yourself, why are we using this procedure?  Well, the reason is because we want to ensure a

fair trial for both sides, and we want to ensure the integrity of this jury, specifically in this case, given the high publicity that has been generated and is expected to continue to generate. One of the ways we do that is by protecting you from any unwanted or improper contact by the media or members of the public, again, by not making your name -- by not revealing your name or any other specific personal identifying information.

Now, this rule, this mechanism is not an absolute one. We have, of course, some exceptions to this one, the first being that the clerk has a list of all of your names for official courtroom use, and that has been provided to me for -- for jury selection purposes.

Second, you also filled out lengthy questionnaires yesterday when you arrived to the courthouse. Those questionnaires have been given to the parties for their review during jury selection, but none of those questionnaires will be disseminated outside of the prosecution or defense teams, and they're to be kept strictly confidential.

Third and finally, if you do end up getting chosen to serve on this jury, your names will be provided to the U.S. Marshal and her staff for logistical purposes only, and that would be for transportation to and from the courthouse. On that specific point, if you do end up getting chosen for this jury, we're going to be employing a procedure whereby jurors

would drive each morning to designated locations and then get driven from those locations to the courthouse and then back to those locations to make the transport easier and, again, to avoid that potential improper or unwanted media contact or any other public interference.

So that's the overall procedure for referencing jurors during this trial.  I want to emphasize, though, a few caveats and considerations to keep in mind.  Number one, we're not using this no-name rule because any of us has any specific or concrete reason to believe that any of you would be subject to improper pressure or would have been endangered if your names had been disclosed.  Instead, this is simply a precautionary measure to protect you from any unwanted media attention and to make sure, again, that both sides receive a fair trial.

Secondly, none of this -- and this is an important point, I will emphasize -- is in any way a reflection upon the defendant or the defense or anyone associated with the defense. Indeed, nobody in this room should view this anonymization procedure as reflecting negatively or adversely upon the defendant.  And that's a critical point, because as I will go over later, the defendant is presumed innocent until proven guilty.  The indictment that has been brought against him is only an accusation and nothing more.  The burden of proof lies entirely and at all times with the United States government to prove beyond a reasonable doubt the defendant's guilt before he

may be found guilty of any offense.  And, of course, the defendant has no burden whatsoever to prove his innocence or to provide any evidence or to testify.

All of those principles are fundamental to our criminal justice system, and I reference them now because I don't want any of you to think that this no-name procedure that we've elected to employ for this trial speaks negatively or should be considered negatively toward the defendant.

So having said all of this, is there anybody in this room who thinks they would hold it against the defendant that we're not using jurors' names publicly in the courtroom?

Okay.  I see no hands.

Now, one other related point.  You may have seen some increased security at the courthouse.  Many factors play into that security decision, including the anticipated publicity that may be generated from a case, the number and types of witnesses that might be called, the length of the anticipated trial, and any other host of issues, including, of course, the need to maintain secure facilities for public trials.  But what matters most, ladies and gentlemen, for your purposes is that you should not be concerned about your safety or the safety of anyone connected to this trial.

And above all, you must not allow these security measures to influence you in your consideration of the case, nor should you construe these security measures either for or

against either party in this case.  These are here just to protect all parties in the case and all others associated with the proceeding.

Does anybody here have any problems with the security comments I have just made regarding the courthouse?

Okay.  I see no hands.

Now, I'm going to introduce you also to Officer Blanford.  He is standing up now.  He is our court security officer, and his job is to enforce the Court's orders and take charge of the jury.

If you happen to need information concerning your personal welfare, please feel free to ask Officer Blanford for assistance, or the courtroom deputies, but please make sure that you don't discuss with them or ask them anything substantive about the case to be tried.

Now, at this point, I'm going to ask the prosecutors who are sitting at that table directly in front of me to introduce themselves to you, so let's proceed with that.

Mr. Shipley.

MR. SHIPLEY:  Good morning, everyone.  My name is John Shipley.  I am an assistant United States attorney here in the Southern District of Florida.

MR. BROWNE:  Good morning, ladies and gentlemen.  My name is Christopher Browne.  I'm an assistant United States attorney.

MS. MEDETIS-LONG:  Good morning, ladies and gentlemen. My name is Maria Medetis-Long, and I, too, am an assistant United States attorney in the Southern District of Florida.

MR. DONNELLY:  Good morning, ladies and gentlemen.  My name is James Donnelly.  I'm an attorney with the Department of Justice.

THE COURT:  Thank you, all.

Okay.  Now, I'm going to ask Mr. Routh to introduce himself to you as well, along with his two standby attorneys. Before I do that, though, ladies and gentlemen, please be aware that Mr. Routh has decided to represent himself in this trial and not to use the services of an appointed lawyer.  He has a constitutional right to make that decision, that is, to represent himself.  And that decision has no bearing on whether he is guilty or not guilty of any of the charged crimes, and it must not affect your consideration of the case.  I will make additional comments about this topic later on in the course of jury selection and trial.  But for now, I did want to let you all know that Mr. Routh is acting as his own lawyer in the case, and that means that as his own lawyer, he is in charge of directing and controlling his defense.  That said, I have appointed him two standby attorneys, or two standby counsel, as we call them, to assist Mr. Routh should he request their assistance with basic procedural or logistical items or if I as a Court determine that such assistance is necessary.  But,

again, Mr. Routh has elected to assert his constitutional right to self-representation.  That's his choice to make.  You shall not hold it against him in any way, and he is in control of his defense.

So, with that, Mr. Routh, please go ahead and introduce yourself.

MR. ROUTH:  Ryan Routh for the defense.

THE COURT:  Thank you.

Ms. Militello.

MS. MILITELLO:  Good morning, ladies and gentlemen. I'm Kristy Militello, and this is my co-counsel, Renee Sihvola, and we are the standby counsel.

THE COURT:  Thank you very much.

All right.  Now, just to give you a little bit of an overview for how things will unfold today.  This phase is basically preliminary jury instructions -- preliminary jury selection, excuse me.  The purpose here is to try to streamline certain topics that are easier to address and to get some of those things out of the way, so that tomorrow we can visit with you again at -- I want to make sure I get the time right.  I don't want to misspeak.  One moment.  8:30 a.m., so we can conduct additional questioning for purposes of jury selection tomorrow.  So this is the preliminary phase of jury selection, and there will be an additional opportunity tomorrow morning to gather again for purpose of more questions.

So, again, today is preliminary in nature. We're going to do things like introduce you to the courthouse staff, which I have done, the parties in the case. We will discuss the anticipated schedule for the trial, any particular hardships that you have alerted the Court to. And then we will meet again tomorrow for additional questions.

All right. Now, what is jury selection? I would say, if asked to describe it in one word or one line, it's that it's a process by which we choose jurors who are fair and impartial, who will follow the law as it is instructed to them by the Court, and who will evaluate the issues in this case based only on the evidence presented in the official proceedings in the courtroom without being influenced by any other factors.

In service of that goal, we have an obligation to determine if your decision in this case would be influenced by any opinions that you now hold or by some personal experience or some personal knowledge that you might have about the case that is before you. That is why, ladies and gentlemen, this process is so thorough and why we take so much time and effort to do it properly, and that is because we want the Court and the parties to be able to determine if there are persons in this courtroom that aren't suited to serve as jurors in this particular case and should, thus, be excused.

In many ways, ladies and gentlemen, this is the most important part of the trial, as we are about to pick the judges

of the facts of the case.  I might bear the title of Judge, but I will not decide the outcome.  And that's important.  My role is to see to it that all of the rules of the courtroom are followed, but it is the jurors who serve as judges of the facts.

I'm going to pause just so that we can make sure everybody is paying attention.  Thank you.

MR. ROUTH:  I'm sorry.

THE COURT:  Okay.  All right.  Now, this questioning does take time, so I ask for your patience in advance.  Please also understand that none of my questions are intended to pry into your personal affairs.  They're simply, again, designed to choose a fair and impartial jury that will listen only to the law as it is provided to them and the evidence presented in the courtroom.  Again, this questioning does take time.  So I thank you in advance for your patience.

I also want to let you know that if there is any question that makes you feel uncomfortable, or you would prefer to speak to the Court and to the parties outside the presence of your prospective juror members, you can ask me for that, and we can arrange for those private conferences.  But they're not fully private, I will let you know, because, of course, it's a private -- a public proceeding -- excuse me -- so any responses would be in the presence of the attorneys, the parties, and any folks from the public or media who are viewing this proceeding.

Ultimately, though, if I could emphasize one rule, it would, of course, be that your answers must be fully candid and fully complete.  They can't -- we can't afford any room for dishonesty or for lack of truth.  So please make sure that you're being fully forthright with the Court with all of the questions that I will ask.

Now, why are we here, ladies and gentlemen?  We're here because an indictment has been filed informing the defendant, Mr. Routh, in this case, that he has been accused of certain crimes.  But as I will explain to you, the indictment is not evidence, it's simply an accusation.  And Mr. Routh has responded to the indictment by saying that he is not guilty. So it is the government's burden to prove beyond a reasonable doubt that the defendant is guilty before he may be found guilty of any offense.  And that is what the jury is here to determine.

I'm going to discuss those -- those concepts with you in a bit more detail, including the presumption of innocence and other related principles, but I do want to give you, now, just for context, a summary of the charges that are alleged in this case, and there are five.

The first is Count 1.  It alleges the offense of attempted assassination of a major presidential candidate. Specifically, the indictment alleges that on or about September 15th of 2024, in Palm Beach County, in the Southern

District of Florida, the defendant, Ryan Wesley Routh, did intentionally attempt to kill former president of the United States, Donald J. Trump, a major presidential candidate at the time, and now current president.

The second charge alleges the crime of possessing a firearm in furtherance of a crime of violence.  Specifically, that on or about the same date of September 15, 2024, in Palm Beach County, in the Southern District of Florida and elsewhere, the defendant, Mr. Routh, did knowingly possess a firearm in furtherance of a crime of violence, that is, the crime charged in Count 1, and further, that Mr. Routh brandished a firearm in furtherance of Count 1.

Turning to Count 3.  Count 3 alleges assault of a federal officer, specifically, that on September 15th of 2024 in Palm Beach County, in the Southern District of Florida, it is alleged that the defendant did forcibly assault, oppose, impede, intimidate, and interfere with a Secret Service special agent while that agent was engaged in and on account of the performance of his official duties with the intent to commit another felony, and that Mr. Routh used a deadly and dangerous weapon.

Count 4 charges Mr. Routh with knowingly possessing a firearm as a previously convicted felon, specifically, that on that same date of September 15, 2024, Mr. Routh in Palm Beach County, in the Southern District of Florida, did -- and

elsewhere did knowingly possess a firearm and ammunition in and affecting interstate and foreign commerce, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

And finally, Count 5, ladies and gentlemen, charges Mr. Routh with the separate offense of possessing a firearm with an obliterated serial number.  In this case, it is alleged that Mr. Routh on September 15, 2024, in Palm Beach County in the Southern District of Florida and elsewhere, did knowingly possess a firearm which had the importer's and manufacturer's serial number removed, obliterated, and altered, and had at any time been shipped and transported in interstate and foreign commerce.

So those are the allegations in the indictment, and, again, that indictment is not proof of guilt.  I will discuss those issues further.

But for now, let me get back -- excuse me -- I have done a lot of talking, and so my voice is a little crackly.

I'm going to ask the prospective jurors if any of you happen to know any of the government lawyers who are sitting at that prosecution table who introduced themselves to you earlier?  The names are:  John Shipley, Christopher Browne, Maria Medetis-Long, and James Donnelly.

I see no hands.

Has anybody ever had any interactions with them or any

business dealings or anything of that nature?

Okay.  No hands.

Now, has anybody ever personally spoken to or communicated with Mr. Ryan Wesley Routh, the defendant in this case?

No hands.

Has anybody indirectly communicated with Mr. Routh through another person, let's say, or through an internet or other forum?

Okay.  Okay.  All right.  One moment.  Let me just jot this information down.  I don't, sir, want you to provide your answer quite yet.  I just want you to tell me in very general terms, have you ever personally spoken to Mr. Routh?

A PROSPECTIVE JUROR:  No.

THE COURT:  Do you have any friends, relatives, or close associates who have spoken to him?

A PROSPECTIVE JUROR:  No.

THE COURT:  Have you ever communicated on the internet with Mr. Routh or with any of Mr. Routh's family members, as far as you're aware?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  All right.  Well, what I will do then, sir, is just put a pin in that.  Oh, I want to make sure I got your right number.  This is Juror 163.  And I will ask to speak with you outside the presence of your fellow jurors.  So

with that -- that's Juror 163.

Any other folks who have any contact, whatsoever, with Mr. Routh or with any of his family members or associates, as far as you're aware?

Okay.  All right.  I see no additional hands.

All right.  Now, has anybody ever personally dealt with or interacted with the standby attorneys in this case, Ms. Kristy Militello or Ms. Renee Sihvola?

Okay.  I see no hands.

All right.  Then let's shift gears.  We're now going to discuss the important topic of schedule and anticipated length of trial.  This subject was raised in the questionnaire that you all filled out, and you were informed in that questionnaire, as I will now repeat, that this trial is anticipated to last approximately three and a half weeks until, approximately, October 1st.  Our schedule generally runs from 9:00 in the morning until 5:30 in the evening.  We take at least a one-hour break, sometimes longer, and we have additional breaks, at least one in the morning and one in the afternoon, plus any other breaks that are needed throughout the day, to address the needs of this case.

Having heard that overall anticipated schedule, I'm going to now ask:  Anybody who on the questionnaire listed a substantial hardship with that schedule, please rise at this time and show me your paddle numbers.

All right.  Please remain standing so I can jot everything down in order, and then I will progressively ask you to sit down so I could see clearly the folks in the back.

We have 123, 124, 125; you may have a seat.  Then we have 131, 132, 136; please have a seat.  140, 142, and 143.  Shifting now to 145, 147, 151, 152.  All right.  And then we have 156, 157, 160, 164, 170, 174, 175, 177, 178, and 180.

Okay.  So I'm going to take these one at a time.  I will make a broad point that, of course, general inconvenience is not a reason to excuse any juror from prospective jury service, but, of course, we want to be attentive and sensitive to any specific hardships that you may be experiencing or anticipate -- anticipate experiencing as a result of jury service.

So, with that, we're going to start with the first in sequence, Juror 123.  If you could please stand up.  All right.  I did note on your questionnaire, I think you work as a lab assistant, ma'am; is that correct?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  What's your financial hardship?

A PROSPECTIVE JUROR:  I have to use my personal time off.  And when I do, they don't reimburse me.

THE COURT:  Okay.  All right.  So I take it you've looked into whether your company pays employees while they're performing jury service.  And what have you learned?

A PROSPECTIVE JUROR:  They only use my personal time off.

THE COURT:  Okay.  All right.  Do you have any other means of earning income?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Thank you.  Please have a seat.

Okay.  Let's speak to Juror 124.  Please pass the mic off.

All right.  What is your specific hardship?

A PROSPECTIVE JUROR:  I -- I am retired, but I do have a flight planned for October 1st.

THE COURT:  Okay.  Is that a personal trip?

A PROSPECTIVE JUROR:  Yes, it is.

THE COURT:  Okay.  Other than that personal trip, do you have any other specific hardships with the schedule that is anticipated?

A PROSPECTIVE JUROR:  I don't believe so.  Not that I could not get out of.

THE COURT:  Okay.  Thank you, ma'am.  Please have a seat.

We will now turn to Juror 125.  Please tell me what your hardship is.

A PROSPECTIVE JUROR:  Just professionally meeting tax deadlines for my clients, September 15th and October 15th mainly being the extended due date, the deadlines.

THE COURT:  Okay.  Let me understand this fully.  So are you a CPA, sir?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  So we all might think that April 15th is the deadline, but what are you saying?

A PROSPECTIVE JUROR:  Anybody with an extended return -- they start with March 15th is the deadline for S-corporations, partnerships.  They get --

THE COURT:  Slow down just a little bit.  Remember, Ms. Melton is feverishly trying to write everything down.

A PROSPECTIVE JUROR:  So the S-corporations, partnerships' returns that are initially due March 15th are extended to September 15th, and then individuals, trusts, estates, otherwise C-corporations with the original due date of April 15th, are all extended to October 15th.  And it's a common practice to extend returns.

THE COURT:  Got it.  Got it.  So in light of those upcoming deadlines, is there anybody else in your office who could assist you to meet those deadlines?

A PROSPECTIVE JUROR:  I do have employees.

THE COURT:  Okay.  So then I guess in your own words, what would be -- what would be the hardship if you were asked to serve for three and a half weeks?

A PROSPECTIVE JUROR:  Just as I said, and I'm in the role where I have to review the work of my employees.

THE COURT:  Got it.  All right.  Thank you, Juror 125.  You may have a seat.

Okay.  Juror 131.  Okay.  Sorry for the delay.  What is your hardship, ma'am?

A PROSPECTIVE JUROR:  I'm self-employed.  I own my own marketing consulting company.  And I'm it.  So if I'm out for three and a half weeks, then my clients don't get serviced.

THE COURT:  And is that your sole source of income?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Thank you, ma'am.  You may have a seat.  And please pass the mic off to 132.

A PROSPECTIVE JUROR:  Hi.  I'm also self-employed.  I'm a pediatric therapist.  I'm a 1099 employee.  I subcontract, and so I have no time off or -- I'm sole -- I'm sole income.

THE COURT:  Okay.  All right.  And what do you do for work?

A PROSPECTIVE JUROR:  I'm a pediatric occupational therapist.  I treat medically fragile and developmentally delayed children.

THE COURT:  All right.  Thank you, ma'am.  That's all I have for now.

Let's hear from Juror 136.

Good afternoon, sir.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  What is your hardship?

A PROSPECTIVE JUROR:  Okay.  My hardship, not necessarily myself.  I'm concerned about a -- an -- my coworker and my employment.  I work for a small dental lab.  There is five of us in the office.  We do all our business by pick up and delivery, and I am one of two delivery drivers.  And our area ranges as far south as Delray, as far west as Okeechobee, as far north as Viera.  And, you know, with myself being out for three and a half weeks, that's going to put the entire workload of covering that rather large geographic area to one delivery driver.

And while, you know -- so it's not necessarily a burden for me, but I'm afraid it might put a pretty heavy burden on them.

THE COURT:  Okay.  All right.  And so you said this is a dental lab, and so you're transporting maybe models or --

A PROSPECTIVE JUROR:  Well, yes.  Crowns, dentures, implants.

THE COURT:  Understood.  Okay.  That's all I have for now, Juror 136.

Let's hear from Juror 140.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.  What's your financial hardship, ma'am?

A PROSPECTIVE JUROR:  I own a hair salon, and I am kind of the sole breadwinner.  So if I'm out of work for three

weeks, my business doesn't make money, and I don't bring home a paycheck.

THE COURT:  Okay.  All right.  Do you have any employees at the salon?

A PROSPECTIVE JUROR:  We have part-time workers. Myself and one other employee are the only full-time workers.

THE COURT:  Understood.  Okay.  That's all I have at the moment, but I may return.

And that applies to anybody.  I might come back and ask you some follow-up.  But you can have a seat now, and pass the mic to 142.

A PROSPECTIVE JUROR:  Hi.

THE COURT:  Hello.  Good afternoon.  What is your concern with the schedule?

A PROSPECTIVE JUROR:  I work full-time for a company from my home in -- here in Florida, but they're in Boston.  I'm a corporate paralegal, the only one on the staff.  I work for general counsel.  There are several issues ongoing right now that they really need my help with.  So to be out for three and a half weeks would be difficult, not impossible.

THE COURT:  And what's the name of your employer?

A PROSPECTIVE JUROR:  Shorelight, LLC.

THE COURT:  What type of legal work do they do?

A PROSPECTIVE JUROR:  The company itself is -- assists international college students in finding places in the

United States to go to school and then helps them -- basically a concierge service to help them get through the visa process, get settled at school, and kind of hold their hands through the first year of college in the United States.

THE COURT:  Okay.  So if you were to be called to serve on a jury, do you think the company could make reasonable arrangements to deal with that temporary absence?

A PROSPECTIVE JUROR:  Yeah.  It -- it means I'm going to be working at night.  But that's -- that's okay.  I mean, that's what it is.

THE COURT:  Well, let's follow up.  So if you had to do some after-hours work to catch up, do you still think you would be able to pay close attention to the important matters being presented in the courtroom?

A PROSPECTIVE JUROR:  I think it could work out.

THE COURT:  Okay.  Thank you, ma'am.

A PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  All right.  Let's hear from Juror 143.

A PROSPECTIVE JUROR:  Hello.

THE COURT:  Hello.  Good afternoon.  What is your issue with the schedule?

A PROSPECTIVE JUROR:  Mainly it's the financial burden on my family.  I'm the bulk breadwinner, so my wife does work, but I make up most of the household income.  And so not working for three and a half week -- weeks would push us back

significantly.

THE COURT:  So where do you work?

A PROSPECTIVE JUROR:  I work at a hospital.  HCA Florida.

THE COURT:  Okay.  And do you know if HCA would cover your salary or wages if you were called to serve on a jury?

A PROSPECTIVE JUROR:  I know that they covered the first day, which was yesterday, from -- per my manager that I talked to.  But I have never confirmed with HR yet to get a firm -- if they would cover the three weeks.

THE COURT:  Is that something that you could look into and get an answer for us tomorrow?

A PROSPECTIVE JUROR:  Yes, I can.

THE COURT:  Okay.  All right.  Thank you.  Please have a seat.

All right.  Next up is 145.

A PROSPECTIVE JUROR:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.  What is your concern, sir, with the anticipated schedule?

A PROSPECTIVE JUROR:  So I have an 88-year-old mother that I take care of.  She is in assisted living, but I am her care provider, outside of the normal activities that she is provided for at her assisted living.  I also have a 4 1/2-year-old that I take to school every morning and pick up at 2:30.  And then just this morning, my wife informed me that

we have an uncle that passed away this morning, in South Carolina, and we would really like to be there on Saturday.

THE COURT:  Okay.  For the -- for your young son and the transportation, is there anybody who could help you with that?

A PROSPECTIVE JUROR:  No, ma'am.  Both of our older children work.  And my wife is a chiropractor in Stuart, and she is usually there from 7:00 in the morning until about 7:00 at night.

THE COURT:  Okay.  All right.  And then the -- the trip that you would have to take for your loss, would that require you to be out of town for how many days?

A PROSPECTIVE JUROR:  Conceivably, we would leave Thursday night, maybe Friday morning.  I assume the funeral is going to be on Saturday.

THE COURT:  Okay.  All right.  Thank you, Juror 145. Please have a seat.

Let's hear from Juror 147.

A PROSPECTIVE JUROR:  Good morning -- or good afternoon.  Yeah, I have a trip planned.  I'm leaving on October 2nd.  I'm happy if we're done by October 1st.  But I have paid for it, and it's a nine-day trip, so...

THE COURT:  Okay.  And where are you going?

A PROSPECTIVE JUROR:  I'm going on a cruise.

THE COURT:  Very nice.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  All right.  But that begins October 2?

A PROSPECTIVE JUROR:  2nd.

THE COURT:  Okay.  Other than that preplanned cruise, do you have any other conflicts with the schedule?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you.

All right.  Let's hear from Juror 151.

A PROSPECTIVE JUROR:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  I am also on a cruise beginning October 3rd.

THE COURT:  Is it the same cruise?

A PROSPECTIVE JUROR:  It is not.  No.

THE COURT:  Okay.  Where are you going?

A PROSPECTIVE JUROR:  Southern Caribbean.

THE COURT:  All right.  And yours begins October 3rd?

A PROSPECTIVE JUROR:  Yes.  Friday, October 3rd.

THE COURT:  Any other conflicts other than that?

A PROSPECTIVE JUROR:  No.  Not for scheduling.

THE COURT:  Okay.  Thank you.  Please have a seat, Juror 151.

Let's hear from Juror 152.

A PROSPECTIVE JUROR:  Yes.  Hi.  We have -- my husband

and I have plans every weekend to go see -- my son attends University of West Florida, and he made the football team out of practice squad.  And once we heard he made the team, we made arrangements to go to Pensacola for the next five weekends, and we leave on a Thursday.

So there -- I did try to book, between tickets and Airbnbs and cars, nonrefundable rates because they're less expensive, so I'm sure some of that I would have to eat.  I would lose out.

THE COURT:  Understood.  Okay.  Thank you, Juror 152.

Let's hear from Juror 156.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  Mine is more work overload.  I am the VP of HR in my organization.  And if I don't work for three and a half weeks, I do have to work overnight like every day, even on the weekends.  I don't really have somebody I can pass on my workload to, so it will cause me a whole a lot of stress.

THE COURT:  Okay.  And where do you work?

A PROSPECTIVE JUROR:  Boys & Girls Clubs of St. Lucie County.

THE COURT:  Is there anybody else in the HR department?

A PROSPECTIVE JUROR:  I do, but they are not able to take on the tasks that I normally perform on a daily basis.

THE COURT:  Okay.  So hypothetically, if you were

chosen for the jury and you had to do some catch-up work at night, how would that affect you at all?

A PROSPECTIVE JUROR: Stressed. A whole lot of stress, because pretty soon we're all going to have open enrollment.

THE COURT: Okay. And would that stress -- do you think it would interfere at all with your ability to pay attention and focus on the trial?

A PROSPECTIVE JUROR: Most likely, yes.

THE COURT: Okay. Thank you. Please have a seat.

A PROSPECTIVE JUROR: Thank you.

THE COURT: All right. 157, please.

A PROSPECTIVE JUROR: Good afternoon, Your Honor.

THE COURT: Good afternoon.

A PROSPECTIVE JUROR: So I teach five different preps at high school, including journalism, and during this month I'm capturing 1,800 students. Obviously, with the delay here -- and everybody knows if you have a substitute in your classroom, that progress doesn't happen as a normal teacher would. And, again, there are ad sales -- also are in this time frame when they have to submit, and obviously with our ad sales, that accounts for almost $25,000 worth of our yearbook.

THE COURT: Okay. So I just want to make sure I understand everything. Where do you work?

A PROSPECTIVE JUROR: Okeechobee High School.

THE COURT: Okay. And you said you teach five

different preps.  What does that mean?

A PROSPECTIVE JUROR:  Yes, ma'am.  Five different -- I have five different assigned curriculum for those different classes.

THE COURT:  Understood.  Okay.  And then you're also in charge of ad sales for the yearbook?

A PROSPECTIVE JUROR:  And I also do the yearbook as well.

THE COURT:  Okay.  Do you know or have you looked into what the substitute situation would be for your five separate preps?

A PROSPECTIVE JUROR:  It would be a sub, but, you know, it's just the hardship of then working after hours, after this, to then accommodate to meet giving lesson plans and stuff of that nature.

THE COURT:  Okay.  Thank you, sir.  That's all I have for now.  You may have a seat.

Let's hear from Juror 160.

A PROSPECTIVE JUROR:  Good afternoon, Judge.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  I don't have the hardships some of the other people have.  But I -- my wife is a full-time college student.  My daughter is a full-time college student.  I'm the sole provider.  My daughter is married and gets help with her young husband.  They're a brand-new couple, but I do

help them both out.  I'm the sole provider at home, and I do work two jobs to keep up with it.

THE COURT:  So what do you do for work?

A PROSPECTIVE JUROR:  I'm an estimator and overseeing a utility contractor for PaveCo Contracting, and I'm a consultant for my own company, CAT Consulting.

THE COURT:  All right.  So the consulting business, you own?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  And then the estimator work, is that for a different company?

A PROSPECTIVE JUROR:  Yes, ma'am.  It's PaveCo Contracting.

THE COURT:  Okay.  So just in your own words, do you think you could make it work, be a juror and still keep things afloat financially?

A PROSPECTIVE JUROR:  Financially, I could.  I got enough in savings to get by.  It's just what I would -- no telling -- I get a percentage of the jobs that I get, different contractors, and there is no telling what I would lose in three weeks of not working.  You know, I work during the day. They're not going to answer the phone at night.

THE COURT:  Okay.  All right.  Okay.  That's -- that's sufficient for now, sir.  160.  Thank you.

Let's hear from 164.  Good afternoon.  Please tell me

what your difficulty is with the schedule.

A PROSPECTIVE JUROR:  Yes.  I'm the only one working in my household, and my daughter is out in college, and my son is in college here.  So if I lose any day of work, I wouldn't be able to pay my bills.

THE COURT:  Okay.  Where do you work?

A PROSPECTIVE JUROR:  Home health aide overnight and daytime.

THE COURT:  Home health aide?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Do you work for a company?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  And what's that company?

A PROSPECTIVE JUROR:  Treasure Coast Homecare.

THE COURT:  Do you know if Treasure Coast Homecare has any arrangements for employees who are called to serve on a jury?

A PROSPECTIVE JUROR:  No.

THE COURT:  Is that something that you could inquire and find out, would they pay you your wages for the duration of jury service?

A PROSPECTIVE JUROR:  I can ask, but I don't think they will pay for it.  And my other job is self-employed.  So they would not pay me.

THE COURT:  I'm sorry.  You said your other job is

what?

A PROSPECTIVE JUROR:  It's self-employed.  They would not pay for my time off.

THE COURT:  Okay.  But now you are referring to another job, not your current one?

A PROSPECTIVE JUROR:  No.  I have two jobs.

THE COURT:  Oh, okay.  What's your other job?

A PROSPECTIVE JUROR:  It's -- both of them is home health aide, one that employed me, and the other one is self-employed.

THE COURT:  Okay.  And so the one where you are hired by a company, the Treasure Coast company, is that something you could look into and ask somebody in HR, potentially, whether they would cover your wages?

A PROSPECTIVE JUROR:  Yes.  I can ask.

THE COURT:  Okay.  All right.  Thank you.  Please have a seat.

A PROSPECTIVE JUROR:  Plus, my son is in college, and I only -- he is not driving.  So I have to take him to class four days a week --

THE COURT:  Okay.

A PROSPECTIVE JUROR:  -- so --

THE COURT:  And where does he go to school?

A PROSPECTIVE JUROR:  IRSC in Vero, and here in Fort Pierce.

THE COURT:  So when you are unable to take him to college, who drives him, or how does he get there?

A PROSPECTIVE JUROR:  I have to drive him.  Like today, he has class at 1:00.  I have to take him before I come at 11:00.  So he will spend the day.  So if I can't take him, he won't be able -- for three weeks, he will have to drop out.

THE COURT:  Okay.  All right.  Thank you for your explanation, Juror 164.  Please have a seat.

Okay.  Let's hear from Juror 170.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  I work for a small brewery in Boynton Beach.  I am the only brewer and manager there, and I have only one assistant.  We've grown over 75 percent in the last year and we're already overwhelmed.  I'm the only one who can produce our product.

THE COURT:  Okay.  And what's the name of the brewery?

A PROSPECTIVE JUROR:  Copperpoint Brewing Company.

THE COURT:  Okay.  Thank you, sir.  Please have a seat.

174.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  Well, I have a doctor's appointment on 9/15, and it's for a -- an answer whether or not they're going to operate on one of my carotid arteries.

Basically, that's it.

THE COURT: Okay. All right, sir. Thank you very much. You can have a seat.

Let's hear from Juror 175.

A PROSPECTIVE JUROR: Good afternoon.

THE COURT: Good afternoon.

A PROSPECTIVE JUROR: Just to clarify, it would not be a severe hardship for me, but it would be very difficult with my work. I am a property manager of a self-managed condominium. And there is no one to fill my role. I could do my work in the evenings and on the weekend. And, you know, if I was selected, I certainly could serve, but it would be difficult.

THE COURT: Do you think that you could overcome those challenges and still give the trial your full and undivided attention while you were here?

A PROSPECTIVE JUROR: Yes, I could.

THE COURT: Okay. Thank you. Please have a seat, Juror 175.

Let's hear from 177.

A PROSPECTIVE JUROR: Good morning, Your Honor. I have two kids with severe medical issues, and one of them is having to have surgery soon.

THE COURT: All right. Raise the microphone, if you don't mind, sir, a little bit. I think I heard you say you

have two children with severe medical issues.

A PROSPECTIVE JUROR:  Yes, ma'am, and one of them has to have surgery within the next couple weeks.

THE COURT:  Okay.  Is that surgery something that's been scheduled?

A PROSPECTIVE JUROR:  Well, my wife is actually going to see the doctor today to discuss everything and when we can schedule it.

THE COURT:  Okay.  All right.  Thank you, sir.  Please have a seat.

A PROSPECTIVE JUROR:  Yes, ma'am.

A PROSPECTIVE JUROR:  Good afternoon, Your Honor.  I'm working in --

THE COURT:  This is 178.  Sorry, just to be clear, you are 178?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Thank you.  Sorry for interrupting.

A PROSPECTIVE JUROR:  Yeah.  I'm working at a restaurant in Sarasota, so -- as a manager.  If I'm selected as a juror, three to five weeks, I don't think the -- this will affect the restaurant's regular operation.  Okay?

THE COURT:  Okay.  All right.  So it's three and a half weeks.  Just want to make sure that nobody is confused and think it's a five-week anticipated schedule.

But -- so in what county do you live, sir?

A PROSPECTIVE JUROR:  I live here in St. Lucie County.

THE COURT:  Okay.  But then you're doing a job in Sarasota?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  So like yesterday, or the day before, you -- you're driving and then coming back?

A PROSPECTIVE JUROR:  Yeah.  I come back on Sunday evening, Sunday night.

THE COURT:  Okay.  Have you talked with anybody at the restaurant about your jury service and how they could potentially, you know, deal with your absence?

A PROSPECTIVE JUROR:  I told them, but they said they cannot find anybody to take my place in such short time.

THE COURT:  All right.

A PROSPECTIVE JUROR:  And one more -- one more thing. I leave my ex-wife.  He (phonetic) retired.  He is -- has disabilities.  Her eyes are bad.  I have to take care of her. We have appointment for eye doctor this coming Thursday to Palm Beach.

THE COURT:  So were you planning on taking her?

A PROSPECTIVE JUROR:  Yes.  Yeah.

THE COURT:  Okay.  All right, sir.  I think that's enough for now.  I may come back to you, Juror 178.

Let's hear, now, from 180, please.

A PROSPECTIVE JUROR:  Good afternoon.  I am

self-employed, and I work in -- as a fitness instructor in multiple modalities.  It is not a financial hardship.  The hard part would be my private clients.  I see seven people a week, and I teach three classes a week.  There is no one else to do these classes or to work with my private clients.  And three weeks is an extended period of time for people not to be exercising those modalities.  I do Pilates, water aerobics, and I am also at a nursing home teaching Zumba, chair Zumba.

THE COURT:  Great.  Great.  And so just in the event that you ever have to take time off, let's say, for a vacation --

A PROSPECTIVE JUROR:  The classes, they get canceled.

THE COURT:  Okay.  So is it something that you could, even with potentially some difficulty for your clients, just be out of the office, let's say, for three weeks?

A PROSPECTIVE JUROR:  It would be difficult for the people that I serve, yes.

THE COURT:  Okay.  All right.  Thank you.  Very well, Juror 180.  I have taken all of that down.  Okay.

Anybody else who wishes to report a specific hardship with the schedule that we've discussed?

I have one more juror, 122.

A PROSPECTIVE JUROR:  Yes.  So it's not necessarily a hardship, but I had a one-week vacation I had planned in the past.  It's coming up on the 18th of this month.

THE COURT:  Okay.  You're Juror 122.  And where is your vacation?

A PROSPECTIVE JUROR:  In Colorado.

THE COURT:  Okay.  And what are the dates?

A PROSPECTIVE JUROR:  Starting on the 18th.

THE COURT:  So September 18th?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Did you indicate this in the questionnaire?

A PROSPECTIVE JUROR:  No, I did not.

THE COURT:  So who is going with you on the trip?

A PROSPECTIVE JUROR:  Me and my wife.  And my daughter.

THE COURT:  Okay.  And have you prebooked anything?

A PROSPECTIVE JUROR:  Yes.  She did.

THE COURT:  Okay.  Do you know where you are staying?

A PROSPECTIVE JUROR:  I'm not sure of the name of the hotel, but I know it's in the mountains.

THE COURT:  Oh, very nice.  Okay.  All right.

Is there any means for you to reschedule this trip?

A PROSPECTIVE JUROR:  I'm not 100 percent sure.  I could ask her.  She's the one who dealt with all the booking and stuff like that.

THE COURT:  Okay.  All right.  Thank you, Juror 122.

All right.  Seeing no additional jurors voicing any scheduling-specific hardships, let me shift to another

potential hardship category, and that is medical hardships.

Is there anybody here who has a physical disability or an impairment or something in that realm that, either indicated in the questionnaire or wish to do so now, that could affect their ability to serve as a juror in this case?

So with that, please, like we did before, if anybody here has a medical hardship to report, I ask that you please stand and show me your paddle numbers.

All right.  I have 167.

Anybody else?  Okay.

So 167, sir, you will be given a microphone in just a second.  Can you tell me what your hardship is, sir?

A PROSPECTIVE JUROR:  Good afternoon.  I had a heart attack in January.  I had two stents put in, and I have not physically been cleared by my doctor yet.  I still have to do the stress test and all of that stuff, which was scheduled with an appointment next week.

THE COURT:  Okay.  When is your appointment, the day?

A PROSPECTIVE JUROR:  It's Tuesday.

THE COURT:  Okay.  All right.  So September 16th, does that sound right?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  All right.  Thank you, sir.

Any other folks who wish to report a medical hardship?

All right.  I see no additional hands.

What I'm going to do now, ladies and gentlemen, is read out loud the names of potential witnesses that might come to testify during this trial.  I'm going to ask that you all listen very carefully so that you could tell me later whether you recognize any of these names or whether you have ever interacted or believe you have interacted with any of them.  So let's begin.

Kristin Bailey, Special Agent, FBI.  Cindy Barrois, B-A-R-R-O-I-S, Special Agent, FBI.  Michael Brooks, Deputy, Palm Beach County Sheriff's Office.  Erin Casey, Operational Media Specialist, FBI.  And Rachel Clay, Document Analyst - Forensic Examiner, FBI.

Did anybody recognize that set of names?

Okay.  I see no hands.

There are a lot of other witnesses.  I'm going to go through them in these segments, so, again, please stay focused.

The next group is Brenden Clements, Special Agent, United States Secret Service.  Erin Farais, F-A-R-A-I-S, Physical Scientist, FBI.  Robert Fercano, Special Agent, United States Secret Service.  Garett Foo, Special Agent, FBI.  And Tracy Fulk, F-U-L-K.

Does anybody recognize or believe they have any interaction or association with those folks?

Okay.  No hands.

William Gale, Lieutenant, Palm Beach County Sheriff's

Office.  Curtis Gaul, Biologist, FBI.  David Gilbert, Special Agent, FBI.  Jorge Gomez Junior, Sergeant with Palm Beach County Sheriff's Office.  And Christopher Adam Goodrich, Special Agent, FBI.

Anybody recognize any of those names?

No hands.

Kara Gregor, Biologist-Forensic Examiner, FBI.  Laura Haller, H-A-L-L-E-R, Digital Forensic Examiner/Special Agent, FBI.  Jason Harris, Special Agent, United States Secret Service.  Dominick Healey, Special Agent, FBI.  And Christian Hlinka, Special Agent, United States Secret Service.

Does anybody recognize any of those names?

No hands.

Travas Holland, Sergeant Technician, United States Secret Service.  Michael Kelly, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives.  Patrick Lantry, Task Force Officer, Federal Bureau of Investigation.  And Austin Laufer, Detective, Palm Beach County Sheriff's Office.

Does anybody recognize any of those names?

No hands.

Jerry Llanes, L-L- --

Oh, I see one.  161.  Sorry.  I went a little too quickly there.

Let's get the microphone to Juror 161, please.

A PROSPECTIVE JUROR:  Hi, Judge.

THE COURT:  Hello.

A PROSPECTIVE JUROR:  Could you repeat the ATF person that you mentioned?

THE COURT:  Yes.  Michael F. Kelly, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives.

A PROSPECTIVE JUROR:  Okay.  That's not -- not who I was thinking of.

THE COURT:  Okay.  Thank you.

All right.  We will continue.

Jerry Llanes, L-L-A-N-E-S, Digital Forensic Examiner, FBI.  Jose Loureiro, L-O-U-R-E-I-R-O, Special Agent, FBI. Christopher Mayo, Special Agent, FBI.  Kenneth Mays, Detective, Palm Beach County Sheriff's Office.  Tommy McGee.  And Kimberly McGreevy, Supervisory Special Agent, FBI.

Does anybody recognize any of those names?

No hands.

Ronnie Jay Oxendine.  A. Scott Patterson, Supervisory Special Agent, FBI.  Matthew Perry, Special Agent, FBI.  And Samuel Plata, Lazaro Plata, and Christian Plata.

Does anybody recognize any of those names?

Okay.  Now, let's continue.  Elizabeth Riddell, Digital Forensic Examiner, FBI.  Kathryn Rose, Special Agent, FBI. Nicholas Schnelle, Special Agent, FBI.  Erich Smith, Firearms/Toolmark Examiner with the FBI.  And Kenny Smith, Detective, Palm Beach County Sheriff's Office.

All right.  I see no hands for that group.

Stephanie Stewart, Physical Scientist/Forensic Examiner, FBI.  Aaron Thompson.  Gregory Turner, Special Agent FBI.  Randy Walters, Destructive Device Examiner, Bureau of Alcohol, Tobacco, Firearms and Explosives.

Anybody recognize those names?

No hands.

Michael McClay.  Oran Alexander Routh.  Atwill Milsun.  Erick Zuniga.  Marshall Hinshaw.  John Tamura.  John Keone Sayles.  And Raymond Carrea.

Does anybody recognize any of those names?

Okay.  No hands.

Now, as I said earlier today, ladies and gentlemen, we're here today because an indictment has been filed informing Mr. Routh that he is accused of certain crimes, and he is called upon to respond to that indictment.  In this case, the defendant responded by saying the words:  I am not guilty.  And those words carry a great deal of weight, ladies and gentlemen, because we are now beginning a jury trial where the government is required to prove beyond a reasonable doubt that the defendant is guilty before he may be found guilty.

And so the fact that an indictment exists does not mean that what it alleges actually happened.  That is what the jury is here to determine, and that is what the government must prove to you beyond a reasonable doubt.

There are some big-picture concepts in our criminal justice system, and I would like to touch upon those.  I have alluded to them already.  The first is the presumption of innocence.

By a show of hands -- and please don't be shy.  I know it's getting close to lunchtime, but please let me know, by just a show of hands, who has heard of a defendant's presumption of innocence?

All right.  Thank you.

Well, again, that would all make sense because the indictment in a criminal case is merely the accusatory paper which states the charge or the charges to be determined at a trial.  But an indictment is not evidence against the defendant or anyone else.  And in this case, like I said, the defendant has entered a plea of not guilty.  So he is presumed by the law to be innocent.  Every person charged with a crime in this country is presumed innocent, and that right is guaranteed by the Constitution.

So if I were to send all of you back into the jury deliberation room right now and ask you to render a verdict, the only lawful verdict that you could come back with is not guilty; again, because of that presumption of innocence and, of course, no evidence has been presented.

Does anybody here have any difficulty accepting that presumption of innocence as the law?

I see no hands.  Oh, I see Juror 125.

What would you like to share with us, sir?

A PROSPECTIVE JUROR:  Just wanted to disclose that -- I don't know if it is an issue or not --

THE COURT:  One moment.  We need the mic.

A PROSPECTIVE JUROR:  I just wanted to disclose, I'm not sure if this is an issue or not, but I was at the scene when the defendant was arrested.

THE COURT: Okay.  All right.  Thank you.  Let me just make sure that I make a note of that.

That's all for now.  Thank you, sir.

Okay.  Let's see.  Anybody else have any difficulty accepting that presumption of innocence as the law?

Okay.  Now, the burden of proof rests with the accuser in this case, and in this case it's the United States government.  So that means the burden of proof lies entirely with the United States, and it's a burden to prove any charge beyond a reasonable doubt.

I'm going to read to you now the jury instruction that I read to all jurors defining that burden of proof.  So please listen carefully.

"The government's burden of proof is heavy, but it doesn't have to prove a defendant's guilt beyond all possible doubt.  The government's proof only has to exclude any reasonable doubt concerning the defendant's guilt.  A

reasonable doubt is a real doubt based on your reason and common sense, after you have carefully and impartially considered all of the evidence in this case.  Proof beyond a reasonable doubt is proof so convincing that you would be willing to rely and act on it without hesitation in the most important of your own affairs."

So having read that burden of proof instruction, is there anybody here who would have any difficulty accepting that burden of proof as the law?

All right.  I see no hands.

Let's shift, then, and this is a spinoff, a very related subject to what I have just said, and that's that the government bears the entire burden of proof.  In other words, there is nothing left over for the defense.  The defense doesn't have to prove the defendant's innocence or disprove it or provide any evidence at all or testify.  And that's critical.

Does anybody here have any hesitation accepting the principle that it is the government that bears the entire burden of proof, not the defendant?

Okay.  I see no hands.

Now, along these same lines, has anybody here -- again, by a show of hands, don't be shy -- who here has heard of a defendant's right to remain silent?

Okay.  Lots of hands.  Again, that's because the law

does not require the defendant to prove his innocence or to provide any evidence at all.  And so if a defendant chooses not to testify, you cannot consider that against the defendant during your deliberations or during your consideration of the case.  Again, that's because the government bears the entire burden to prove a defendant's guilt beyond a reasonable doubt before a defendant can be found guilty, and if the government fails to meet that burden, you must find the defendant not guilty.

So then let me illustrate with an example.  Let's say this case is over, and I instruct the selected jurors to go back into the jury deliberation room to discuss the case, you can't say to yourself at that point, you know, I don't really think the government met its burden of proof here, and I think there is a reasonable doubt.  But I'm, nevertheless, going to find the defendant guilty because he didn't testify.

That sort of thinking, that sort of inference or conclusion would be entirely wrong, and impermissible, and it's not allowed in the law.

So is anybody here having any hesitation or doubt about applying that -- that rule, which is, that you shall not hold anything against the defendant or any defendant who chooses not to testify or to present any evidence?

Okay.  I see no hands.

Now, to reach a verdict, you will have to hear and

consider the credibility of witnesses who come testify. And as you heard me read out loud many names, there are a lot of people who are expected to testify in this trial.

When you're considering a witness's credibility, it's normal, as we do in our day-to-day lives, to think, well, do I think this person's actually telling the truth?

Well, how do you get there? How do you make that decision?

There are a lot of factors you can -- you can take into account, and one of them is did the witness have a good opportunity and ability to see, hear, or know the things the witness is testifying about? Is the witness somebody who strikes you as having a good memory? What's the manner of the witness while he or she is testifying? Does the witness potentially have an interest or a bias in the outcome of the case? Is there any other evidence that you've heard that might go against or contradict what the witness has said, and is there any other factor that you think indicates one way or another whether the witness is telling the truth?

So all of those factors are sort of normal processes that we all go through when evaluating the credibility of anybody, and those same factors in the real world apply to your service as prospective jurors.

Is there anybody here who feels they would be unable to evaluate the credibility of witnesses as you're hearing

evidence in the case?

I see no hands.

All right. Now, let me shift gears and ask another question. You will be asked if chosen to serve on this jury to disregard the consequences of any verdict rendered. That means you cannot be concerned with the imposition of any sentence. Why? Because the imposition of any sentence is the sole province of the judge, not the jury.

Does anybody here have any difficulty accepting that as the law?

No hands.

Now, as jurors, you may disagree about what the evidence shows. Maybe one of you thinks the witness A or B or C was telling the truth, or maybe you think the witness was telling partly truthful things, but maybe wasn't fully truthful -- fully truthful. All of that is normal and perfectly acceptable, and that would, of course, be a matter to discuss with your fellow jurors after you retire to the jury room to see if you can reach a unanimous verdict. But there is no room -- and I will emphasize this, there is no room, ladies and gentlemen, for any doubt concerning the law. The law is what the Court instructs you it is. And you must be willing to accept and apply the law as it is presented to you, even if you disagree with the law.

Is there anybody here who cannot follow the Court's

instructions on the law?

I see no hands.

All right. One moment. Just hang tight.

Okay. All right. What I'm going to ask you all to do, now, is go back to the jury assembly room for just a little while so that I can discuss certain issues with the parties. We will try to get back to you as soon as we can. I'm going to give some mornings -- excuse me -- some warnings before you go.

One juror, I do request that you stay back for some additional questioning. That's Juror 163. So you'll be asked to stay behind for just a brief questioning.

Everybody else, please, again, like I said, go to the jury selection room to await further instructions.

But a few things: Number 1, please make sure you leave those paddles where you are, on your chairs, or on the ledge. We want to make sure we don't lose those. Secondly -- and this is very important, ladies and gentlemen -- you cannot talk about this case in any way, and that includes talking with people in the prospective jury pool. That's a flat-out, clear black-and-white prohibition. So you cannot talk with anyone, either prospective juror members, folks in your family, work, whatever it may be. Nor can you conduct any investigation about this case. Whether on the internet, a social media application, or any other platform, there simply can't be any form of investigation or research or review about this case.

Why am I making such a big deal about this, ladies and gentlemen? That's because we must ensure a fair trial, and a key way we do that is by ensuring that the jurors consider only the evidence in the courtroom and nothing else. That's why we must ensure that no jurors are influenced by any exterior material. So please make sure that you abide by that instruction.

Also, if you happen to see any of the lawyers or the parties or the witnesses in this case at any time, you can't have any interaction with them, and that includes even simple things like a "Good morning." They're not trying to be rude or disrespectful. They're just instructed not to have any contact with you, just like you're not allowed to have any contact with them.

And so, with all of those admonitions, I'm going to again ask you to go to the jury selection room, please, for further instructions.

All rise for the jury, except for the one juror who I've asked to stay behind.

You can start exiting.

(The venire exited the courtroom.)

THE COURT: There is a juror who's speaking to the CSO. What is your juror number, sir?

A PROSPECTIVE JUROR: 129.

THE COURT: Okay. Sir, why don't you stay back as

well.  But I'm going to ask you to step right outside the courthouse -- I mean, courtroom.  So don't go to the second floor, just stand right there.  We will come get you in just a second, Juror 129.

All right.  You may all have a seat.

Juror 163, we will give you the microphone, please.

All right.  I thought it would be prudent to just better understand why you answered "yes" to one of my questions which had to do with, I think, having previously interacted with Mr. Routh.

A PROSPECTIVE JUROR:  Essentially, it was indirectly, but he -- a couple of days before he was arrested, he called my company and left a voicemail stating -- I work for a construction company -- and he stated that he thought that someone was stealing from --

THE COURT:  Okay.  How about that.  So where do you work?

A PROSPECTIVE JUROR:  Edens Construction.

THE COURT:  How do you spell that?

A PROSPECTIVE JUROR:  E-D-E-N-S.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Edens Benton, actually, is what we are called now.

THE COURT:  Okay.  All right.  That's all we need, sir.  Thank you very much.  You may go to the jury selection room,

and we will give you further instructions.

Let's please summon that last juror, 129.

(Prospective juror exited the courtroom.)

THE COURT:  All right.  I overheard.  I don't know what you were saying, but I just want to make sure you have a chance, sir, to let us know anything that you think is relevant.

A PROSPECTIVE JUROR:  Well, I -- I have met Trump personally.  I had breakfast with him and Melania, so -- and they offered me a job at -- where this incident supposedly happened.

THE COURT:  Okay.  All right.  And when was that approximately?

A PROSPECTIVE JUROR:  Oh, gosh, 25 years ago, when they built Trump International.

THE COURT:  When was the last time you had any contact with them?

A PROSPECTIVE JUROR:  That was it.  I turned the job down.

THE COURT:  Have you ever worked for any other business associated with the President or any of his companies?

A PROSPECTIVE JUROR:  No, not that I know of.  I work for golf course -- a golf course superintendent.

THE COURT:  Okay.  Now, that interaction you say you had many years ago, would that -- and we're expecting full

candor here, of course, as with all questions -- would that prior interaction have any effect on your ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Are you certain of that?

A PROSPECTIVE JUROR:  I -- I have a lot of respect for both of them.  They were very nice to me.  We had breakfast and it lasted quite some time, but I turned the job down.

THE COURT:  Okay.  All right.  Very well, sir.  Thank you.  You can return to the second-floor jury selection room.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  It's 1:01.  We're a little bit behind schedule, but we're okay.  We will probably have to push back our 2:00 to probably closer to 2:45.  I want to give the parties a break to assess any for-cause challenges for this last group.

It's 1:01 -- or excuse me, 12:58.  Please return to the courtroom at 1:12 and be prepared, like we have been doing, to address for-cause challenges.  Thank you.

(A recess was taken from 12:58 p.m. to 1:12 p.m.)

THE COURT:  Okay.  All right.  Everybody is here.

I did want to make a point.  There was a juror in this last segment that didn't show up, regrettably.  He filled out a questionnaire but didn't come today, and that's 127.  So 127 won't be considered.

I also wanted to make a note.  Ms. Moran, a quick question.

COURTROOM DEPUTY:  Yes.

THE COURT:  Okay.  All right.  172; I have been informed a courtroom deputy knows that Juror 172.  Didn't work in the same office, but worked at a different courthouse location, is not close personal friends with this person, but is an acquaintance in a kind of limited way.

I did want to advise the parties of this.  If there is any issue, full transparency, you should be aware they know each other.  This is Juror 172.

So, with that, let's engage in the same process that we have been in the past.

Mr. Routh, is it still your preference that I start with the government on the for-cause challenges?

MR. ROUTH:  Certainly, yes, Your Honor.

THE COURT:  Okay.  Okay.

All right.  Mr. Browne.

MR. BROWNE:  Thank you, Your Honor.

First cause challenge, Prospective Juror 122, based on his prescheduled vacation on the 18th.

THE COURT:  All right.  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  122 will be stricken for cause.

Next.

MR. BROWNE:   123, based on financial hardship.

THE COURT:  Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  This is the lab tech or assistant who doesn't have any other income and had to use PTO.  Okay.  123 is stricken for cause.

MR. BROWNE:   125, based on financial hardship and the upcoming filing deadline of 9/15.

THE COURT:  Okay.  Mr. Routh, this is the CPA who has those other deadlines coming up with having to review the work of his employees.  He also made an additional comment.  What is your position for Juror 125?

MR. ROUTH:  Yes, he should be excluded.  He was at the scene, you know, and that was brought up --

THE COURT:  Okay.

MR. ROUTH:  -- about presumed innocent.

THE COURT:  Okay.  Very well.  125 will be stricken for cause.

Okay.  Next.

MR. BROWNE:   131, based on financial hardship. Indicated she was self-employed and the sole source of income in her family.

THE COURT:  Okay.  What's your position, Mr. Routh, on 131?

MR. ROUTH:  Yeah.  No objection.

THE COURT:  131 will be stricken for cause.

There was also 126.  I don't know if this individual spoke up.  But the questionnaire referred to being a dental front desk employee, and not sure how her job would pay her.

Any thoughts on 126?

MR. BROWNE:  She did not self-identify as having a hardship, Your Honor.  So we didn't ask for a cause on that basis.

THE COURT:  Okay.  All right.  Then we will leave her in the mix, unless you disagree, Mr. Routh.

MR. ROUTH:  Well, I think she did list the hardship.  I think she may have -- didn't check the box, but I think she wrote it on the next page and explains her hardship.  And I don't know why she didn't stand up, but anyway.

THE COURT:  All right.  Well, we will do further questioning on Juror 126, and that would be for tomorrow's session.

Okay.  Next for-cause challenge, Mr. Browne.

MR. BROWNE:  Number 131, based on financial hardship.

THE COURT:  Okay.  131 is --

Mr. Routh.

MR. ROUTH:  Yeah.  No objection.

THE COURT:  Okay.  131 is stricken for cause.  I think we had already done that, if I'm not mistaken.

Next.

MR. BROWNE:  Just a moment, Your Honor.  132, Your Honor.

THE COURT:  Okay.  This is the 1099 employee therapist with the financial hardship.

Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  132 will be stricken for cause.

Next.

MR. BROWNE:  136 for cause, based on financial hardship and nondisclosure of criminal history.  It's the delivery driver for the dental company.

THE COURT:  Yes.  Okay.

Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  Okay.  136 will be stricken for cause.

There was 134 that reported a family vacation on September 26th from the questionnaire, unless I'm mistaken.

MR. BROWNE:  That's true, Your Honor, but I don't believe that person stood up when the Court asked about scheduling hardships.

THE COURT:  Okay.  All right.  Then we will leave Juror 134 in the mix.

Okay.  Next.

MR. BROWNE:  Prospective Juror 140.  Sole proprietor and has childcare issues.  This is the self-employed

hairstylist, Your Honor.

THE COURT: Okay. Mr. Routh.

MR. ROUTH: Yeah, they're dealing with children, so no objection.

THE COURT: 140 will be stricken for cause.

Next.

MR. BROWNE: Your Honor, this is based on the observations of counsel for the government and the FBI. Prospective Juror 141 appeared to be checking her phone during the duration of questioning and during the preliminary instructions as well as her smart watch. We don't think that she should be selected based on that.

THE COURT: All right. Mr. Routh.

MR. ROUTH: What number was that? I'm sorry.

THE COURT: 141.

MR. ROUTH: 141. So -- I have no objection.

THE COURT: So you're okay with the for-cause strike?

MR. ROUTH: Sure.

THE COURT: Okay. 141 will be stricken for cause. I also believe this juror indicated some potential language difficulty. He [sic] checked the box for "partially" on English language fluency and then checked the "yes" box, so there is a question there. But in any case, all right, the parties agree to the for-cause as to 141. So 141 will be stricken.

Mr. Browne.

MR. BROWNE:  Your Honor, 142, we're not moving for cause based on her response that she could, quote, work out the situation and it would be difficult and not impossible for her to serve.  I don't know if the Court views 142 differently. We're not moving for cause on 142.

THE COURT:  Okay.  Mr. Routh.

MR. ROUTH:  Well, you know, she said that she would have to work at night, and I feel like if she had to work numerous hours at night to catch up on her work, that she would not be able to pay attention during the day.  And she was kidnapped and raped as a child, or something of that nature, so I think she should be excused.

THE COURT:  Okay.  Well, on the work issues alone, I do think she ultimately indicated clearly that she would be able to work it out; and I think I also followed up with respect to her focus, and she affirmed that she would be able to.  There is that prior traumatic incident, so I will leave her in the jury pool for now and inquire tomorrow of that.

Please make a note of that, Mr. Routh, so that you can remind me of that topic.

Okay.  Next, Mr. Browne.

MR. BROWNE:  145 recently had a death in the family and also cares for an elderly mother.  Based on those conflicts, we would ask 145 be excused for cause.

THE COURT: Mr. Routh.

MR. ROUTH: No objection.

THE COURT: Okay. 145 will be stricken for cause. He is the gentleman with the 4-year-old and no other transportation assistance.

Next.

MR. BROWNE: 152, Your Honor, is the juror who had made travel arrangements five weeks in advance for her son's football games.

THE COURT: Okay. Mr. Routh.

MR. ROUTH: Also issues with numbers 17, 22, and 23 about law enforcement treating unfairly. So I would say to strike.

THE COURT: All right. So we're talking now about Juror 152. Is that who you are referencing?

MR. ROUTH: Yes, Your Honor.

THE COURT: Okay. I think those are valid concerns, Mr. Routh. And there is also the issue with the travel. So 152 will be stricken for cause.

Next.

MR. BROWNE: Number 156, Your Honor.

THE COURT: Okay. This is the woman who works at the Boys & Girls Club in HR. She would be overloaded and very stressed, and I think said she would be impacted by that.

Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  Okay.  156 will be stricken for cause.

Mr. Browne.

MR. BROWNE:  160, Your Honor.

THE COURT:  Okay.  This is the gentleman who has two jobs, one as an estimator, another as a consultant.  He is the sole provider.

Mr. Routh, what is your position?

MR. ROUTH:  Yeah, there are certainly issues on 14, 16, and 22.  He says that no one is innocent.

THE COURT:  Okay.

MR. ROUTH:  That doesn't help me.

THE COURT:  All right.  Yes, this individual has reported some concentration challenges, hearing potentially limited.  And then there is that answer to 22, as you've pointed out, Mr. Routh.

So, yes, 160 needs to be stricken for cause.

Next.

MR. BROWNE:  Your Honor, I have a note on Prospective Juror 161 that this individual is a full-time student, but I cannot locate the questionnaire at the moment.  We just ask for some follow-up with Prospective Juror 161 on schedule and whether or not sitting as a juror would affect his or her grades or availability to attend class.

THE COURT:  Okay.  We will do that tomorrow, then,

unless 161 is otherwise stricken for cause following my interaction with Mr. Routh in a moment when we are done with the government's proposals.

Next.

MR. ROUTH: Did you want to discuss 161 or not?

THE COURT: I will come back to you, and then you can tell me any others that you think need to be stricken for cause.

MR. ROUTH: Okay.

THE COURT: Mr. Browne.

MR. BROWNE: 163, Your Honor, is the prospective juror who addressed the Court first of the two during the break.

THE COURT: All right. Do you agree that Mr. -- 163 should be stricken for cause?

MR. ROUTH: Yes, Your Honor.

THE COURT: Okay. 163 will be stricken for cause.

Mr. Browne.

MR. BROWNE: 164.

THE COURT: Okay. This is the woman who works in home health, has two different jobs. Also has a son who she takes to school. Didn't seem very interested in being here, to say the least.

What is your position, Mr. Routh?

MR. ROUTH: Yeah, no objection.

THE COURT: 164 will be stricken for cause.

MR. BROWNE:  165, Your Honor, based on undisclosed arrest.

THE COURT:  Mr. Routh.

MR. ROUTH:  No objection.  They trained to be a sheriff, so...

THE COURT:  165 will be stricken for cause.

Next.

MR. BROWNE:  167, Your Honor, based on medical hardship and a recent heart attack.

THE COURT:  Mr. Routh.

MR. ROUTH:  Yes.  Again, number 22 and 26.

THE COURT:  Okay.  Well, I think standing alone, the heart attack with the stress test appointment next week is reason enough to excuse this juror for cause.  167 is stricken.

Mr. Browne.

MR. BROWNE:  170, based on a financial hardship.  A small business owner.

THE COURT:  Mr. Routh.

MR. ROUTH:  Sorry.  What number again?

THE COURT:  170.  This is the gentleman who works at a brewery called Copperpoint, and he is the only person who knows how to do the brewery work.

MR. ROUTH:  No objection, so...

THE COURT:  170 will be stricken for cause.

Next.

MR. ROUTH:  Doesn't believe in justice, yeah.

MR. BROWNE:  174, based on medical hardship and his 9/15 appointment.

THE COURT:  Oh, yes.  This was the gentleman who is going to be checking one of his arteries.  That's concerning. I think he should focus on that.

Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  174 will be stricken for cause.

MR. BROWNE:  177, Your Honor, based on his representation that he had two children with severe medical issues, one of whom needs surgery.

THE COURT:  Mr. Routh.

MR. ROUTH:  I agree.  He was a sheriff, so...

THE COURT:  Okay.  177 is stricken for cause.

MR. BROWNE:  178 is the gentleman who needs to travel to Sarasota for work.

THE COURT:  And there is also an eye doctor appointment with his wife who has a disability.

Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  178 is stricken for cause.

Mr. Browne.

MR. BROWNE:  Finally, 180, Your Honor.  Just apparent financial hardship and what she represents is a hardship on her

clients.

THE COURT:  Well, it wasn't a financial hardship on her.  It was an unavailability for her physical exercise clients.

Mr. Routh, what's your position?

MR. ROUTH:  On number 22, her political beliefs.  She made it obvious that it's about Republicans and all that good stuff.  The Republican club.  Conservative.

THE COURT:  All right.  Well, I don't think those views alone are sufficient.  But in any case, she did really harp on the absence for her clients, so I will agree on that basis to strike 180 for cause.

Okay.  Now, Mr. Routh, this is your chance to give me any others from this group that you think should be stricken for cause.

MR. ROUTH:  Right.  Start with 124.  So they have a flight on October 1st.

THE COURT:  Okay.  I think consistent with our prior view on an October 1st, that we have elected to keep those folks in the jury pool for now.  Is that still the government's view?

MR. BROWNE:  It is, Your Honor.

THE COURT:  Okay.

MR. ROUTH:  Her sister works at the jail.  So, you know, she's in law enforcement.  So...

THE COURT:  All right.  Well, tomorrow we will talk about whether any of those law enforcement ties would affect their ability to be fair.  But I don't think her reported scheduling issue is a reason, and there were no other scheduling conflicts identified.  So this request as to 124 is denied.

Next, Mr. Routh.

MR. ROUTH:  Number 129.  So this was the gentleman that just spoke about meeting the Trumps and being offered a job at the -- at the golf course.  And having -- having lunch with Mr. Trump and his wife, and all of that.  So, I mean, that should speak for itself.

THE COURT:  Okay.  What's the government's view?

MR. BROWNE:  It certainly doesn't.  This gentleman specifically said he could be fair after, you know, considerable thoughtfulness.  He said it absolutely would not affect him.  So based on the answer of the witness [sic], he should not be stricken.

THE COURT:  Okay.  I'm going to deny the for-cause challenge as to 129.  This was a breakfast or lunch 25 years ago; no job accepted; no other affiliation with the alleged victim in this case; and an affirmation on the record that this person could be fair.

That said, if you have any other questions for this prospective juror, Mr. Routh, you can let me know when we have

that chance.  And obviously, he will be subject to additional questioning tomorrow.  But I don't think right now there is a for-cause basis.  So 129 won't be granted at this time.

Okay.  Mr. Routh, next.

MR. ROUTH:  131 had a -- hardships, so...

THE COURT:  That juror is already out.

MR. ROUTH:  131?  Okay.  I'm sorry.

THE COURT:  That's okay.

MR. ROUTH:  Okay.  So 140.  So was hardship.

THE COURT:  That's also out.

MR. ROUTH:  Okay.  142 said they could not pay attention if they had to work all night catching up on work, so...

THE COURT:  Right.  This is the corporate paralegal.  I think we've touched upon this before, and we will leave her in the mix now because I think she did affirm she would be able to work it out.

MR. ROUTH:  Okay.  Yeah.  143, then?  So again, hardship at work.

THE COURT:  All right.  Yes, let's inquire.  This is a good one to flag.

Mr. Browne.

MR. BROWNE:  My understanding, Your Honor, is that although he claimed he was the bulk breadwinner, he has supplemental income in the family.  And he works for a large

hospital, which, I have every reason to believe, would compensate a full-time employee for jury service. This is not a self-employed person. This is someone who works for a large corporation. And the Court also asked that prospective juror, specifically, to follow up and find out.

THE COURT: Yes. Okay. I did. Thank you for the reminder. He works for HCA, which I believe is a big entity, and my guess, although I don't know, is that they have arrangements for this sort of thing. Hence, I don't think we have a basis now to believe he would experience a severe financial hardship warranting a for-cause strike. So your request as to 143 will be denied at this time.

Next, Mr. Routh.

MR. ROUTH: 151. This gentleman served as a police officer for 25 years.

THE COURT: Okay. For the same reasons I denied your request on another juror, based solely on a prior law enforcement connection, I'm going to deny that request. We will touch upon that subject tomorrow.

MR. ROUTH: He also has the cruise on October 3rd. So these -- this is the cruise gentleman that has to go on a cruise on the 3rd. So I don't know.

THE COURT: Okay. Yes, thank you. I don't consider October 3rd as a disqualifying date at this point, and no other scheduling conflicts were identified.

MR. ROUTH:  Okay.

THE COURT:  So let's turn to your next proposal.

MR. ROUTH:  Juror 154.  So this number 22 issue, you know, plainly states that they're racist and negative comments about Republicans.  So definitely some issues.  Speaks about strict gun laws and...

THE COURT:  Okay.  What's the government's position on this juror?

MR. BROWNE:  Just a moment, Your Honor.

THE COURT:  What's concerning here is the racial prejudice issues.

MR. BROWNE:  We have no objection to a cause challenge.

THE COURT:  Okay.  So I will grant your request unopposed, Mr. Routh, as to 154, who will be stricken for cause.

MR. ROUTH:  Okay.

THE COURT:  Yes.

MR. ROUTH:  Number 158.  Number 21 just says that they could not be fair because of violence and abuse in the past, so...

THE COURT:  Mr. Browne.

MR. BROWNE:  Indicates in 21 that the prospective juror's close friend or family member was the victim of violent abuse.  I think this needs further follow-up, Judge.

THE COURT:  Okay.  I do agree with that.  There is not

enough information in this questionnaire to make a good conclusion.  So I will make a note here for private inquiry.

Which question is that, Mr. Routh?  That was question 22?

MR. ROUTH:  21.

THE COURT:  21.  Okay.  All right.

Next, Mr. Routh.

MR. ROUTH:  Number 161.  That was the gentleman that stood up and said that he might have known one of the ATF agents.  I mean, obviously, if he might know one, he certainly does know others.  So he is pretty well-connected to the ATF, but certainly should --

THE COURT:  Okay.  I think you might be adding things that weren't presented.  He asked me to repeat a name.  He then said, no, that's not the name.  There was no other information to indicate that he is somehow well-versed in the ATF personnel or anything of that nature.

Mr. Browne, anything further for this juror?

MR. BROWNE:  No, Your Honor, there is no basis to strike this juror based on a clarification that he asked for.

THE COURT:  This is the full-time student, though, which we need to speak about anyhow.  Okay.

So the for cause that you provided so far, Mr. Routh, is not enough on 161.  But we will talk to him about his student obligations.

Next, Mr. Routh.

MR. ROUTH:  162 was just dealing with the child with the eye surgery and having to take care of surgery situations. So didn't know if we should cover that.

THE COURT:  Mr. Browne.

MR. BROWNE:  According to my notes, Your Honor, this prospective juror did not self-identify as having a hardship in court.

THE COURT:  That's my recollection as well.  I have nothing there in that category.

MR. ROUTH:  Well, I think it's on the paperwork, though.  I think it's in his paperwork.  He may not have stood up, but he did note that he was caring for his son that had eye surgery that was 16 years old.

THE COURT:  That's true.  Okay.  Mr. Routh, I will agree with you on this one.  162 will be stricken for cause because there is sufficient detail in the questionnaire about a specific appointment for a minor related to surgery, and that's -- well, actually, now that I look at it, it's -- it was for -- it was for today.  So maybe that issue is no longer pressing.

What do you think, Mr. Routh?

MR. ROUTH:  I can't imagine someone's eye being healed in a day.  I don't -- you know...

THE COURT:  Okay.  Well, because this person didn't

voice a hardship and because the date of the appointment has now passed, I think it's worth an additional question before we eliminate this juror. So I'm going to reconsider that prior ruling as to 162, who remains in the mix at this time.

MR. ROUTH: Okay.

THE COURT: Okay. Next, Mr. Routh.

MR. ROUTH: 168. Just have issues with number 21 and 22.

THE COURT: Can you describe, please.

MR. ROUTH: Something about sexual predators and not being able to be fair, so...

THE COURT: Mr. Browne.

MR. BROWNE: I don't have the questionnaire in front of me. But that's not what this case is about, Your Honor. So there is no reason to believe that this prospective juror cannot be fair in this case. And at a minimum, that requires follow-up, I think, from the Court.

THE COURT: Okay. For-cause challenge at this time denied as to 168.

Next, Mr. Routh.

MR. ROUTH: 170 -- 175. The uncle is a police officer, and the gentleman claimed that they were not able to concentrate.

THE COURT: Mr. Browne.

MR. BROWNE: Your Honor, I have in my notes, quote, "I

certainly could serve." In fact, this prospective juror made a point of acknowledging that his hardship was much less than other prospective jurors'.

THE COURT: Okay. For-cause challenge as to 175, denied. I do have my record showing that he affirmed that he could work and that he was okay to serve.

Okay. Any others in this category, Mr. Routh?

MR. ROUTH: Yeah. 180.

THE COURT: That's already been stricken.

MR. ROUTH: Okay. Okay. I'm sorry.

THE COURT: Okay. Any others, Mr. Routh?

MR. ROUTH: That's it.

THE COURT: Any from the government?

MR. BROWNE: No, Your Honor.

THE COURT: Okay. We will be taking a break very soon, but for now, we are going to advise the jurors of who can be released so they can go on their merry way. We will then take at least a 45-minute lunch and begin late with our Group 1 substantive jury selection. So please stand by for the assembly of jurors in Group 3, and we will do that as quickly as we can. Thank you.

(A recess was taken from 1:41 p.m. to 1:49 p.m.)

(The venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT: Thank you. Please have a seat.

Thank you, ladies and gentlemen, for your continued patience.  What we are going to do now is read out loud the names of the jurors who have been excused from jury service, and if I don't call your name, that means that you need to return to the courthouse tomorrow at 8:30 a.m. for that second half of jury selection that I referenced before.

Regardless of whether you are excused today or have to return tomorrow, I please ask that you return to the jury assembly room briefly to be given a certificate of attendance and to receive any further instructions from the jury section downstairs.

So, again, if I read out loud your juror number now, that means you're excused from jury service in this case.  If I do not, that means you have to come back tomorrow at 8:30 in the morning.

The following jurors are excused from jury service in this case:  Juror 122, Juror 123, Juror 125, Juror 127, Juror 131, Juror 132, Juror 136, Juror 140, Juror 141, Juror 145, Juror 152, Juror 154, Juror 156, Juror 160, Juror 163, Juror 164, Juror 165, Juror 167, Juror 170, Juror 174, Juror 177, Juror 178, and Juror 180.

So to all of you who have been excused, thank you very much for your attendance and your patience today.  I know you must be hungry.  I apologize for keeping you over the lunch hour, but that does conclude your jury service.

And for everybody else, I will see you all tomorrow at 8:30.  Before I let you all go, though, I am going to repeat a lot of what I said before.  And this is, again, very important.

You shall not discuss this case with anyone.  That includes your prospective jury members or anybody else that you know or talk to.  You cannot conduct any investigation about this case in any way, shape, or form.  That includes on the internet or on any social media application or platform, even if I haven't listed it specifically.  You're also prohibited from having any contact with any of the attorneys, parties, or witnesses in the case.  Again, they're not being rude, they're just not allowed to talk to you.  And the obligation is reciprocal in that sense.

So with those very important cautionary instructions not to have any contact or discussion about this case or research, I will wish you all a pleasant rest of your day and evening, and see the remaining folks tomorrow at 8:30.  Thank you.

Please rise for the jury.

You may excuse yourselves.  Thank you.

Oh, paddles; please leave those here.  Thank you.  I forgot to mention that.

(The venire exited the courtroom.)

THE COURT:  Okay.  Thank you.  We're going to be in recess until 2:45, and then we will head straight into that

second phase of jury selection with Group 1.

Any emergency issues to raise now, or anything pressing from the government?

MR. BROWNE:  No.  Thank you, Your Honor.

THE COURT:  Mr. Routh.

MR. ROUTH:  A couple of items.  Atwill Milsun -- something changed in his travel plans and he will -- he has changed that to -- something happened and he will be here.  So he is available.  So...

THE COURT:  That's good.

Can somebody please stop that door from moving.  Okay.

Anything else you wish to raise, Mr. Routh?

MR. ROUTH:  We're still working on Erick Zuniga. He was -- I don't know.  He may have all of the documents that are required to be legal.  I'm not sure.  So we're working on that still.

But it was suggested, also, that -- that possibly Palm Beach would be a jail facility where I might be able to sleep.  Just, you know, just talking about with my custody situation, the noise and the complete lack of sleep impedes my ability to adequately represent myself.  I cannot exercise my right -- right to self-representation without adequate -- adequate sleep.  So I got three hours of sleep last night, so...

THE COURT:  Okay.  Thank you.  We will take our break

now.  The court personnel certainly needs one.  So we will be back in session at 2:45, like I said.  Thank you.

(A recess was taken from 2:00 p.m. to 2:55 p.m.)

(Call to the order of the Court.)

THE COURT:  Thank you for your prompt arrival today. Everybody is present.

Again, I will call the case, which is United States of America v. Ryan Wesley Routh, Case Number 24-80116.  As we did yesterday, we will begin with the oath for prospective jurors. Ms. Moran.

COURTROOM DEPUTY:  Will all prospective jurors please rise and raise your right hand.

Do you and each of you do solemnly swear or affirm that you will well and truthfully answer all questions propounded to you, touching upon your qualifications to serve as jurors in the case before the Court, so help you God?

THE VENIRE:  I do.

THE COURT:  Thank you.

Please be seated.

COURT SECURITY OFFICER:  Judge, no volume in the other courtroom.

THE COURT:  No volume.  Okay.  I'm being told there is no volume in the overflow.  Can we please alert our IT folks of that fact.

COURT SECURITY OFFICER:  Got it.

THE COURT:  It's working now?  Thank you, Officer.

Okay.  So thank you for your prompt arrival.  As I said, yesterday we covered some preliminary topics, such as the schedule and some other fundamental principles in our criminal justice system.  As a result of that process, we were able to excuse some jurors to streamline things, so today's focus will be a little bit different.

I will have some particular questions to ask of you, some of which may be drawn from the answers you provided on your questionnaires.  And I will also have some questions that have been provided by the parties.  This process, again, does take time, and so I will again emphasize that what matters is ultimately the truth, so, again, please be fully candid and complete with your answers.

Yesterday I described and summarized the allegations in the indictment in this case.  Those were the five counts that I went through, going from Count 1, the charge of attempted assassination of a major presidential candidate, through Count 5, possession of a firearm with an obliterated serial number.  I'm not going to repeat all of those allegations again, ladies and gentlemen, but I will ask you some questions about the nature of those allegations and whether those allegations have any bearing on your individual abilities to be fair and impartial jurors if chosen to serve in this case.

So let's get started.  Some of these questions are

really in no particular order, so bear with me if you feel that some of this is a little bit all over the place, although we, of course, have striven to make this as understandable as possible.

All right.  Now, first of all, have you, any member of your family, or any close friend ever been employed by a law enforcement agency?  This was a topic addressed in the questionnaire to some extent, but now I want to dive a little bit more deeply into this issue.

So if you answered yes to that question or if you answer yes now, this is the question:  Have you, any member of your family, or any close friend ever been employed by a law enforcement agency, please raise your paddles at this time.

Okay.  I will do as I did yesterday and just write them all down.  We have 5, 9, 10, 13, 21, 28, 31, 32, 36, 39, 40, 42, and 53.

Okay.  So let's start with Juror 5.  If you could please stand and let me know what your connection to law enforcement is, either personally or through members of your family or close friends or associates.

A PROSPECTIVE JUROR:  Well, my husband and I both work for the Department of Corrections.  And he was a lieutenant in Martin Correctional and Indian River Correctional.  And I worked for both as well, but I worked in the office.

THE COURT:  Okay.  One moment.  So this is Juror 5.

Are you currently working for the Department of Corrections?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Speak up a little.

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  And when did you stop working for DOC?

A PROSPECTIVE JUROR:  2003.

THE COURT:  What was your position there?

A PROSPECTIVE JUROR:  Classification.

THE COURT:  Classification.  And then you mentioned your spouse.

A PROSPECTIVE JUROR:  Yes.  He was a lieutenant.

THE COURT:  Okay.  Does he still work there?

A PROSPECTIVE JUROR:  Yes.  No.  I'm sorry.  He doesn't.  He retired in 2013.

THE COURT:  Okay.  Now, other than you and your husband with this prior correctional officer experience -- excuse me -- have you ever worked in any other law enforcement capacity?

A PROSPECTIVE JUROR:  No.

THE COURT:  Do you have any other close friends or relatives who have?

A PROSPECTIVE JUROR:  I do.

THE COURT:  So briefly describe, please.

A PROSPECTIVE JUROR:  I have a sheriff's officer that

works for St. Lucie County.

THE COURT:  That's a friend of yours?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Anybody else?

A PROSPECTIVE JUROR:  Department of Corrections -- I mean, I have probably about six or seven of them.

THE COURT:  That you still keep in touch with perhaps?

A PROSPECTIVE JUROR:  Correct.

THE COURT:  Okay.  So, now, understanding that you worked -- oh, by the way, how long did you work at DOC?

A PROSPECTIVE JUROR:  For about nine years.

THE COURT:  Okay.  Knowing that you worked for DOC for some, you know, meaningful period of time, and your husband as well, and you have some friends that still work there, or at least you keep in touch with them, does any of that in your mind make you think that you wouldn't be able to be a fair and impartial juror in this case?

A PROSPECTIVE JUROR:  I don't know.

THE COURT:  So let me ask a follow-up question.  There are going to be various law enforcement witnesses who come testify in this trial.  Do you think that your prior experience working at the Department of Corrections or, of course, your husband's prior work would affect your -- your evaluation of those witnesses' testimony?

A PROSPECTIVE JUROR:  No.

THE COURT: So then earlier when you said you weren't sure whether your prior work would affect your impartiality, what do you mean by that?

A PROSPECTIVE JUROR: Honestly, I'm not -- it -- it's a confusing situation. Trying to be not partial in this situation just would be difficult.

THE COURT: Okay. All right. I may come back to you, ma'am, but for now, that's sufficient. Thank you.

Okay. Let's hear from Juror 9.

Good afternoon.

A PROSPECTIVE JUROR: Good afternoon.

THE COURT: This is Juror 9. Please tell me and describe briefly the extent of any law enforcement contacts that you might have had in your life.

A PROSPECTIVE JUROR: My brother was a deputy with the St. Lucie County Sheriff's Department. He retired from there in 20 -- yeah, 2001.

THE COURT: Okay. Any other relatives or friends?

A PROSPECTIVE JUROR: (Shakes head.)

THE COURT: Okay. And you personally, I assume, have not worked in law enforcement?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. What about your spouse?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. All right. Now, is there anything

about your brother's former employment at the St. Lucie County Sheriff's Department that would affect your ability to evaluate the evidence in this case objectively?

A PROSPECTIVE JUROR:  No, I don't think so.

THE COURT:  Okay.  Thank you, ma'am.  Please be seated.

All right.  Let's hear from Juror 10.

Good afternoon, sir.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  You can go ahead.  You probably know my question.

A PROSPECTIVE JUROR:  I have two brother-in-laws that are West Virginia state troopers -- well, retired state troopers.

THE COURT:  Okay.  When did they retire, if you know?

A PROSPECTIVE JUROR:  Maybe five, ten years ago maybe.

THE COURT:  Okay.  So it's been a few years.

A PROSPECTIVE JUROR:  It's been a while.

THE COURT:  Have you ever worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  Has your spouse, if you have a spouse, ever worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Is there anything about your brothers' former employment as state troopers in West Virginia, I think you said, that would affect your ability to be fair and

impartial if chosen to serve?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you, sir.  You may be seated.

Let's hear from Juror 13.

A PROSPECTIVE JUROR:  Hello.

THE COURT:  Good afternoon.  All right.  Same question.

A PROSPECTIVE JUROR:  My uncle had a career with the FBI.

THE COURT:  Do you know when that career ended?

A PROSPECTIVE JUROR:  It was more than 20 years ago.

THE COURT:  Okay.  Do you have any other relatives or close family members or associates that have worked in law enforcement?

A PROSPECTIVE JUROR:  On my husband's side, he has family members who worked for district attorneys in South Florida.

THE COURT:  Okay.  And then you personally, have you ever worked in law enforcement?

A PROSPECTIVE JUROR:  I have not.  But in the course of my professional job, we do deal with a lot of law enforcement.

THE COURT:  Okay.  So let's touch on that.  What do you do for work?

A PROSPECTIVE JUROR:  I'm one of the owners of a forensic engineering firm, and we provide expert witness services.

THE COURT:  So what's your profession by trade?  Engineer?

A PROSPECTIVE JUROR:  I'm an office manager.  My husband is an engineer, and we employ mechanical engineers.

THE COURT:  Okay.  So then, I guess, in the course of your office manager role, do you have occasion to interact with law enforcement folks?

A PROSPECTIVE JUROR:  My employees do, and I have in the past, yes, just to get information for our cases, yes.

THE COURT:  Would any of that interaction or that, you know, I guess, indirect relationship, would that in your mind affect your ability to be fair and impartial if chosen to serve on -- as a juror in this case?

A PROSPECTIVE JUROR:  Possibly.

THE COURT:  And why do you say that?

A PROSPECTIVE JUROR:  I have seen a lot of what happens in court cases.  So perhaps I would have a more nuanced understanding of what's going on.

THE COURT:  Okay.  And when you say "nuanced understanding," can you be a little more specific?

A PROSPECTIVE JUROR:  We have had cases where law enforcement has -- they have been witnesses, and we have kind of seen how they have testified and how our job has been to be sort of a neutral party in a court case.

THE COURT:  Understood.  Okay.

Now, let me ask you about your uncle.  Anything about his former FBI career that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  What about your husband's, I guess, relationship with maybe some prosecutors on the stateside?  Would that have any impact?

A PROSPECTIVE JUROR:  I don't think so, no.

THE COURT:  Okay.  This concern that you have identified of the nuances that you may have seen and acquired over time in your professional role, do you think that would affect your overall ability to be fair and impartial?

A PROSPECTIVE JUROR:  Possibly.

THE COURT:  Okay.  Thank you, ma'am.  Please be seated.

All right.  Then let's hear from Juror 21, please.

A PROSPECTIVE JUROR:  Hello, Your Honor.

THE COURT:  Good afternoon, sir.  All right.  Describe for me briefly, please, either your contacts or experience in law enforcement, and then any of your family members.

A PROSPECTIVE JUROR:  I have four stepchildren that are police officers up in Pennsylvania.

THE COURT:  Okay.  Any others to report?

A PROSPECTIVE JUROR:  No.  That's about it.

THE COURT:  Okay.  And is there anything about your stepkids working as police officers that would affect your

ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No.

THE COURT:  And just to -- just so that I'm clear, are they currently working as police officers?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  All right.  Thank you.  Please have a seat.

All right.  Juror 28.

A PROSPECTIVE JUROR:  Hi.  Good afternoon.

THE COURT:  Good afternoon.

A PROSPECTIVE JUROR:  My daughter is a police officer.

THE COURT:  And where does she work?

A PROSPECTIVE JUROR:  Sebastian Police Department.

THE COURT:  Have you ever worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  Besides your daughter, any other relatives or close friends or associates?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  So then with respect to your daughter's job, do you think that would have any impact or influence on you in being a fair and impartial juror?

A PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Okay.  Please have a seat.

All right.  Juror 31.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.  Same series of questions, sir.  So you have the floor.

A PROSPECTIVE JUROR:  I'm not sure exact role.  My sister worked at the sheriff's department for a couple of years.

THE COURT:  Do you know if she still works there?

A PROSPECTIVE JUROR:  She doesn't.

THE COURT:  Any other relatives or close associates who have worked in law enforcement?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Is there anything about your sister's former work at the sheriff's department that would in any way affect your ability to be a fair and impartial juror?

A PROSPECTIVE JUROR:  No, not at all.

THE COURT:  Okay.  All right.  Please have a seat.

Okay.  Let's now hear from Juror 32.

A PROSPECTIVE JUROR:  Good afternoon, Your Honor.  My oldest brother was a Department of Corrections officer 25 years ago in Upstate New York, retired.  My oldest brother was a police officer, deputy sheriff in Upstate New York.  He has been retired for about five years.

THE COURT:  Okay.  Have you ever personally worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  Has your spouse?

A PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Okay.  Is there anything about your -- your brother -- I think you mentioned two brothers; is that right?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Anything about their work in law enforcement, years ago, like you have described it to me, that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR:  Not at all.

THE COURT:  Very well.  Thank you, Juror 32.

Okay.  Juror 36.

A PROSPECTIVE JUROR:  Hello, Your Honor.

THE COURT:  Hello.  All right.  Same question.  What would you like to share?

A PROSPECTIVE JUROR:  My mom was the -- was the former deputy clerk for Judge Maynard in this office.  She retired in 2021.  And then a close family friend is the court security officer, Larry.  And then as well as -- my other close family friend was the former IT director of the 19th Judicial Circuit.  And then for myself, I wasn't directly in law enforcement, but I worked with them as a victim advocate for the 19th Judicial Circuit.  And then I still have friends who still work there.

THE COURT:  Okay.  So let's try to go one by one there.

A PROSPECTIVE JUROR:  Sorry.

THE COURT:  No.  Thank you.  That's exactly what I was looking for, a full picture.  Okay.  So let's see.  Your mom's

former work as a courtroom deputy in this courthouse, do you think that would have any impact in your ability to be fully objective and fair and impartial?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  What about your role as a victim advocate?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  What about your friendship with a court security officer?  I take it that's Officer Blanford?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Anything about your family's relationship with him that would in any way influence your ability to be fair, objective, and impartial?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Is there anything else about your relationship to the Court system, or anything of that nature that you think at all would impede your ability to be objective?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  All right.  Any other family members or friends that I haven't heard have worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Then very well.  Thank you, Juror 36.  Please have a seat.

We're now at Juror 39.

A PROSPECTIVE JUROR:  Hello.

THE COURT:  Hello.

A PROSPECTIVE JUROR:  My cousin just went through the academy with the St. Lucie department and is now an officer.

THE COURT:  Okay.  Is there anything about your cousin's role as a police officer or his training that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Okay.  Any other relatives or associates who have law enforcement ties?

A PROSPECTIVE JUROR:  My uncle -- great uncle is a public defender with this federal district.

THE COURT:  Okay.  Okay.  So do you -- we touched upon this a little bit yesterday.  But have you ever met either of the standby attorneys?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Have you ever interacted with them?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Have you ever received information about them?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  All right, then.  That is all. Thank you.

Let's hear from Juror 40.

A PROSPECTIVE JUROR:  My husband is a retired Palm

Beach County deputy.  He retired in 2018.  I did not know him when he was a deputy.  We were both widowed and met in 2019.  I have a blended family with my husband, so his son-in-law is a Palm Beach County sheriff currently.

THE COURT:  Okay.  Do any of your children work in law enforcement besides your son-in-law?

A PROSPECTIVE JUROR:  No.  My daughter is a dentist.

THE COURT:  Okay.  And then I assume you personally haven't worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  All right.  So anything about your husband's current -- sorry -- former role as a Palm Beach County deputy before you married that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  All right.  Please have a seat.

42.

A PROSPECTIVE JUROR:  Yes, Your Honor.  My son-in-law worked for Florida Fish and Wildlife, and he left the agency about three years ago.

THE COURT:  Any other relatives, associates that have worked in law enforcement?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  And I assume you haven't either?

A PROSPECTIVE JUROR:  Could what?

THE COURT:  You haven't either worked in law enforcement?

A PROSPECTIVE JUROR:  I have not.

THE COURT:  Okay.  Anything about your son-in-law's former work with the Florida Fish and Wildlife department, if I'm saying that correctly, that would affect your ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Thank you.  Please have a seat.

Okay.  Let's see.  Let's hear now from Juror 43.

A PROSPECTIVE JUROR:  I don't have anybody in law enforcement.

THE COURT:  Oh, I'm sorry.  I misread the number.  It's 53.  Thank you.

A PROSPECTIVE JUROR:  Yes.  I have very close friends who work for Florida Highway Patrol, Indian River County Sheriff's Department.  And I have a very close friend who works for the federal courthouse.

THE COURT:  Do you know if your very close friend who works in the federal courthouse is in this courthouse?

A PROSPECTIVE JUROR:  He works here, yes.  Ron Daniels.

THE COURT:  Okay.  All right.  He is a CSO, a court security officer?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  All right.  So let's unpack that a

little bit.  You have mentioned that you have various close friends who work in law enforcement, and then you have a court security officer who may have some prior law enforcement experience in addition to his current role.  Is there anything about those relationships, ma'am, or your friendships with them that would affect your ability to be entirely fair and objective if chosen to serve?

A PROSPECTIVE JUROR:  No.  No.

THE COURT:  Okay.  Thank you.  Please have a seat.

All right.  All right.  So that -- that covers that question.  Let's move on, seeing no additional hands.

All right.  Now, does anybody here have any particularly negative or positive feelings about law enforcement that you simply wouldn't be able to set aside if selected to serve on this jury?

I see no hands.

All right.  Now, as I mentioned, that you will be hearing from various law enforcement witnesses in this case who will come to testify.  Does anybody here think that they will automatically believe one of those witnesses just because those folks work in law enforcement?

I see no hands.

Now, shifting gears a little bit.  Is anybody here familiar with or has any knowledge about a Chinese-made military rifle known as a Norinco SKS?

I see no hands.

Now, as you heard, the alleged victim in Count 1 is current President Trump, at the time then a major presidential candidate.  Has anybody here ever been employed by any entity or organization that is owned, operated, or controlled by President Trump or his businesses?

I see no hands.

All right.  Now, as you also heard yesterday, Mr. Routh is charged in this case in one of the counts with possessing a firearm and ammunition as a previously convicted felon.

Ms. Moran, do we have a bottle of water that we can give to Mr. Routh?  Thank you.

MR. ROUTH:  I am sick.  So if you don't sleep, you get sick.

THE COURT:  All right.  Thank you, Ms. Moran.

Okay.  I will instruct you that if you're chosen to serve on this jury, that it is a federal crime for a person who is previously convicted of a felony to possess a firearm or ammunition, provided the person actually possesses the firearm, the firearm traveled in interstate or foreign commerce, and the person knew they had been convicted of a felony prior to possessing the firearm.

Is there anybody here who, based on their beliefs about firearms or anything else, just has a fundamental problem with the idea of convicting a previously convicted felon for

knowingly possessing a firearm or ammunition?

All right.  Juror 16.  All right.  Let's pass the mic to Juror 16, please.

A PROSPECTIVE JUROR:  Good afternoon.

THE COURT:  Good afternoon.  You know, I have a note here to speak with you in private about a couple of other items in your questionnaire, so I think it might be most efficient for me to handle all of those questions in one fell swoop.  So we are going to pause this and defer this question, but I will make a note, Juror 16.  Thank you.

Okay.  Anybody else who has a fundamental problem with the idea of convicting a previously convicted felon for knowingly possessing a firearm or ammunition?

All right.  I see no hands.

Now, is there anybody here who believes that American political leaders can be or should be targets of physical violence?

I see no hands.

Now, along similar lines, is there anybody here who disagrees with the idea that we should keep our elected and appointed officials safe, regardless of their political party or their political views or policies?

I see no hands.

All right.  I'm going to shift gears here a little bit. As I mentioned yesterday when I was going over the procedure

for not using names in the courtroom, I mentioned media publicity that has -- has been generated and is expected to continue, at least to some extent. My questions are now going to be a little bit more geared towards that topic; specifically, whether any of you have heard or read anything about this case either in the news or through some other form.

So if any of you believes they have heard or read anything about this case, either on the news or social media or anything, please raise your paddles at this time.

All right. I'm going to -- I'm going to just jot down the numbers.

Okay. So it's clearly a majority of you all have heard or read something about this case before today. And that's not entirely surprising, ladies and gentlemen, because cases that generate media attention pose a likelihood of that sort of pretrial publicity. So let me just get a few examples. I will start with, let's see, Juror Number 1.

If you could stand up, sir, briefly, and just in general terms tell us what it is that you heard.

A PROSPECTIVE JUROR: I viewed the news when he was arrested.

THE COURT: Okay. All right. Thank you. All right. Now pass on the mic, please, to Juror 3.

A PROSPECTIVE JUROR: I also viewed the news when he was arrested, and only really know general information about

what happened.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  So...

THE COURT:  All right.  Fair enough.  Now let's take Juror 4.

I'm not going to go through each and every one of you, in case you are wondering how long this process will take.

Juror 4.

A PROSPECTIVE JUROR:  Same for me.  I viewed it when it had happened.  I have not seen anything recently, though.

THE COURT:  Okay.  All right.  Juror 5.

A PROSPECTIVE JUROR:  Also, on the news, social media.

THE COURT:  Okay.  All right.  So let's see.  Anybody here in this room has heard anything uniquely different from just sort of the general news reports that have been referenced so far?

Okay.  All right.  I see no hands.

As I said, it's not unusual for a case that generates publicity to have prospective jurors who have heard or read something about it.  So that's, like I said, not entirely surprising.  But what is important, ladies and gentlemen, for me to emphasize, and this is very important, is that nothing you may have heard or read about this case or about Mr. Routh or about any of the allegations can have any role whatsoever in your consideration of this case.

And this gets back to what I was saying yesterday at the end, especially where I was harping about this, that all that can be considered lawfully is the evidence that is presented in the courtroom; that means the testimony of the witnesses and the exhibits that are presented during the official trial.  Nothing else can be considered besides the evidence and the law that I present to you.

And so my question, ladies and gentlemen, is that, is there anybody here who feels they would not be able to set aside any news reports or allegations or references that you may have heard about this case, in evaluating the evidence to be presented, and, in doing so, objectively and fairly to both sides?

Juror 16.  All right.  Let me make a note.

Okay.  For the same reasons I indicated before, ma'am, we will just take this all up together.

I see Juror 19.  Okay.  I will make a note of that, sir, as well.

I see no additional hands.

So, again, is there anybody here who feels, other than the two that have raised their hands, that feel they would not be able to put aside any of those news reports or other information and evaluate this case just on the evidence and the law that is presented to you?

Okay.  Juror 48.  All right.  We will meet with you

privately too, sir.

Okay.  All right.  Okay.  Now, let me talk about another subject.  For those of you who may have heard news about the allegations in this case, you may have also heard news reports about a different incident that happened related to the alleged victim in this case, President Trump, and that was last summer in Butler, Pennsylvania.

I want to emphasize to you all, however, that this case is obviously not that case.  So what happened in Butler, Pennsylvania, should have no role whatsoever to play in your evaluation of the evidence in this case, and you should not in any way think that Mr. Routh is guilty because some other person did something else to President Trump at some other point.

Is there anybody here who would not be able to put aside whatever they might have heard regarding the incident in Butler, Pennsylvania, and base your decision solely on the evidence presented in this courtroom?

I see no hands.

Okay.  Now, as I said yesterday, Count 1 alleges that Mr. Routh attempted to assassinate then-presidential candidate Donald J. Trump.  I'm going to give you ultimately, if you're chosen to serve as jurors, a definition of what an attempt means in the law.  But in general terms, it's basically when somebody tries to do something illegal and they do so

intentionally but they don't succeed.

So in this case, to be clear, the defendant is not charged with actually killing anyone.

Does anybody here have a problem with the idea of convicting a person for attempting to kill, even if the person didn't ultimately complete the job or accomplish the person's goal?

I see no hands.

Now, you will also hear the term "assassination" get referenced as part of Count 1, and some of you might be familiar with that term.  What's important, though, for purposes of Count 1, is that the term "assassination" means killing or murder.

Is there anybody here who does not understand that trying to assassinate someone means trying to kill someone?

I see no hands.

All right.  Now, yesterday I mentioned to you, and you were able to see, that Mr. Routh is representing himself, and he continues to do so after electing to exercise his constitutional right to self-representation.

Is there anybody here who would hold it against Mr. Routh that he is choosing constitutionally to represent himself?

I see no hands.

Is there anybody here who will decide if Mr. Routh is

guilty or not guilty because he is representing himself?

I see no hands.

All right.  Now, we will discuss a little bit more the allegation in Count 1.  As I said yesterday, Mr. Routh is charged in that count with attempted assassination of a major presidential candidate.

Now, the term "major presidential candidate" is actually a legally defined term, and the parties in this case agree, that's both the prosecution and Mr. Routh, that Donald J. Trump, in fact, was a major presidential candidate on September 15th of last year.  So that particular issue, the status of the alleged victim in this case, President Trump, is not something that is in dispute, ladies and gentlemen.

What is in dispute on Count 1 is whether Mr. Routh intended to kill the major presidential candidate, Mr. Trump, and whether Mr. Routh's intent was strongly corroborated by taking a substantial step toward committing the crime of killing that major presidential candidate.

So why am I mentioning this?  Because in many respects, ladies and gentlemen, the identity of the major presidential candidate in this case is not a controlling feature.  In fact, the same statute would apply to criminalize -- criminalize, excuse me, an attempted assassination of any other major presidential candidate.  That could have been, let's say, last year, Vice President Kamala Harris, or former Secretary of

State Hillary Clinton in 2016, or former Governor Mitt Romney in 2012, or former Senator John McCain in 2008, and so on and so forth, going all the way back in our history until as of when this statute was passed.

And so ultimately, where I'm getting with this, ladies and gentlemen, is that whether you like President Trump or you dislike him, or whether maybe you have mixed views or no views at all has no bearing on this case, and it cannot factor into your decision-making whatsoever.  This is a very important point, so I want to emphasize and take a little bit more time here.

Ultimately, ladies and gentlemen, you simply cannot let your personal views about President Trump or his policies factor into your decision-making at all.

Is there anybody in this room who cannot follow that instruction?

All right.  Juror 33.  All right.  I have a note, ma'am, based on your questionnaire also to schedule a brief private conference.  So I think, as we will do with other jurors, we will have that opportunity to discuss that with you.

That's Juror 33.

Okay.  All right.  I see no additional hands.

Now, let me ask it another way.  Is there anybody in this room sitting here today who is thinking to themselves, "You know, I really like Donald Trump, and because of that, I

just don't think I can be a fair and impartial juror in this case to both sides"?

I see no hands.

Now, let me flip that around.  Is there anybody here who dislikes President Trump a lot or a little and is thinking, "You know, I just really do not care for him.  I think he is a bad president" or a person -- or whatever one may think, and because of those feelings, you're thinking to yourself, "You know, I just can't be fair and impartial to both sides"?

All right.  I see no additional hands.

And obviously, we will get a chance to reference any of these subjects in the private conferences for any of the folks who have already answered.

All right.  Now, I want to emphasize that these feelings can go both ways.  Perhaps you, like I said, like President Trump a lot and, thus, maybe you would think to give an edge to the prosecution because of your positive feelings towards the President.  Or maybe you dislike the President a lot and you would like to give an edge to the defense because of your negative feelings towards the President.  But whichever way it goes -- and this is the key, ladies and gentlemen -- relying on your personal feelings about the President to evaluate or think about this case is not allowed.  Why? Because all that matters, again, is the evidence that is presented in the official courtroom and the law as I instruct

you it is, not your personal views of any elected officials.

Is there anybody here who does not feel that they can honor that expectation?

I see no additional hands.

All right. Now, I want to address the concepts of sympathy and prejudice for a moment, and I think this follows naturally from what we've already been discussing. Sometimes we might feel sorry for people in difficult situations, and, unfortunately, sometimes we might also feel prejudice. But neither sympathy nor prejudice can factor into your deliberations or consideration of this case. You, like I said yesterday, are judges of the facts if you're chosen to serve as jurors. And so if you allow emotions or your personal feelings to cloud your decision-making, you would not be fulfilling your responsibilities as jurors.

Is there anybody here who feels they could not put their personal feelings aside and be objective and fair to both parties?

All right. Thank you, Juror 16. All right. We will touch upon that when we meet momentarily. Okay.

Okay. Now, does anybody here who hasn't already stood up and indicated a concern, which I have jotted down -- does anybody else have any other reason why you could not give this case your undivided attention and render an impartial verdict based only on the evidence presented to you and the law as I

present it?

I see no hands.

All right.  Okay.  All right.  Now, the next set of questions could be a little bit personal.  They concern whether any of you have been victims of any crimes.  This subject came up in the questionnaire, and so I'm going to ask at this time: Is anybody in this room a victim of a crime, either you personally or someone very close to you?

Okay.  All right.  One moment.  A lot of papers here. I'm trying to keep everything in order.

Okay.  Keep those paddles up, if you can.  I have Juror 5, 16, 23, 28, 31, 32, 48, 52, and 61.

Okay.  So now I'm going to ask a big question and then see if I need to visit with any of you in addition.

For any of you have -- who have been the victim of any crimes or who know people who have, does anybody in that category feel that those experiences would make them unable to serve as fair and impartial jurors if chosen to serve?

All right.  Juror 16.  Okay.

All right.  Juror 31.  Okay.

Keep holding those up so I don't miss you.

I have Juror 5.  And then there is Juror 48.

Okay.  So for those jurors who answered yes to this question, these are -- just to be clear, these are folks, and please correct me if I'm wrong, who feel they could not be fair

and impartial jurors because of a prior experience as a victim in a criminal matter.  This would be the jurors that we just referenced, 31, 5 -- please raise your paddles one more time. 31, 5, 16, and 48.

Do you all agree with how I have described that?  Just by a nod, let me -- let me hear -- all right.  Well, just to make sure the record is clear, let's hand the mics out, starting with Juror 5.

Is it your view, ma'am, that your prior experience as a victim of a crime would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Thank you.

Let's hear from Juror 31.

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Thank you, Juror 31.

16.

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Thank you.

And finally, 48.

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Thank you.

And thank you for sharing.  I know these conversations can be difficult.

Is there anybody else in this room who has experienced

any sort of criminal activity that would affect their right to be -- their ability, excuse me, to be fair and impartial if chosen to serve as jurors in this case?

Okay.  I see no additional hands.

All right.  All right.  Now, is there anybody here who has specialized knowledge regarding firearms?  And I'm not referencing just general possession, lawful possession of firearms, but anything more specialized, more unique.  Let's see.  Anybody raising their hands to this question?

No.  Okay.  All right.

Well, that concludes my questions for this segment, but again, I never want to give you the all-clear just yet.  I do need to give you those same warnings that I always do.  And we are now at 3:43.  So what we will do is, I will give you those same instructions.  You will return to the jury assembly room. I will have some matters to discuss with the parties.  And then we will bring you back into the courtroom.  We may have to do that once or twice, just as a warning.

But for now, let me remind you all that you're prohibited entirely from having any, of course, contact with the parties, lawyers, or witnesses in the case, from discussing this case with anyone, including your prospective juror members, and from conducting any research of any kind about this case.  So please make sure to keep compliance with that rule.

Now, before you all get ready to stand up, I am going to announce the names of the jurors who should stay back for some individual conferences.  The way we're going to do this is that we're going to have that list, and then we are going to have everybody who is asked to stay back be right outside the courtroom, and then we will call you in one by one so we can have that conversation outside the presence of your fellow panel members.

So hang tight while I assemble that list of folks whom I would like to meet with in a more private setting.

Okay.  One moment.

Okay.  Thank you for your patience.  These folks, please, should stay back.  The lowest numbers should stay in the courtroom.  Everybody else, when the time is right, just assemble right outside of the courtroom, and somebody will call you in one by one.

These are the Numbers:  3, 5, 11, 14, 16, 19, 31, 33, 43, and 48.

So, with that, everybody else please go to the jury assembly room and we will call you back as soon as possible.  All right.  Leave the paddles again, and my apologies for not reminding you.

(The venire exited the courtroom.)

THE COURT:  All right.  Thank you.  We should have Juror 3, please.  If you could call her in.

Everybody else may have a seat.

A PROSPECTIVE JUROR:  Sorry about that.

THE COURT:  Oh, that's okay.  There is a lot of musical chairs here.

I just wanted to have another opportunity, ma'am, to discuss with you any specific hardship issues that you might be encountering.  I know your questionnaire mentioned that you're a single mom.  I think you touched upon this yesterday.  Do you think that your personal circumstances would affect your ability to perform your functions as a juror in this case?

A PROSPECTIVE JUROR:  No.  I did find out today at work that I would be paid for my jury service if I had to.  So that was -- made me feel a little bit better.

And then the pickup -- I did talk to my dad, and he would be able to do pickups.  I mean, he didn't really want to, but if he would have to, it would be manageable.  But -- so the earliest I could drop him off would be 7:00 in the morning.  And I live -- it's like 50 minutes away.  So I would be dropping him off at 7:00, driving here, get here at, like, 7:50, and then possibly be here on time at 8:00 a.m.  It's just cutting it kind of close.

THE COURT:  All right.  But hearing what you're saying about the timing, if you were able to get to whatever designated location is provided to you by 8:00 or 8:15, is that something you could achieve?

A PROSPECTIVE JUROR:  8:00 or 8:15?  Yes.

THE COURT:  Okay.  All right.  That's all I have for you.  Thank you.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Let's hear now from Juror 5, please.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  Good afternoon.  I had one leftover note from your questionnaire.  I think you made a comment about you're slightly hard-of-hearing?

A PROSPECTIVE JUROR:  A little bit.

THE COURT:  Have you had any trouble hearing anything that I have said?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  What about what any of the other -- other jurors have said?

A PROSPECTIVE JUROR:  No.

THE COURT:  All right.  So do you feel like you have been able to hear everything okay?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  All right.  Now I know you mentioned the situation with the being a victim of a crime.  You also mentioned that your prior work as a Department of Corrections officer might make it hard for you to be fair.  Do you still maintain doubts, ma'am, about your ability to be fair and

impartial?

A PROSPECTIVE JUROR: I think -- not necessarily because of where I worked. I think it's more because of the -- what happened and that situation as far as, you know, being a victim of a crime.

THE COURT: Okay.

A PROSPECTIVE JUROR: That would be -- make me a little more impartial.

THE COURT: Understood. And just in general terms without going into detail, what was the nature of that offense?

A PROSPECTIVE JUROR: It was my daughter's ex-boyfriend. He held her, tried to choke her at school.

THE COURT: Okay.

A PROSPECTIVE JUROR: And then came home, had a gun pointed to my husband and myself, and escorted us back into the house, and then shot up my car. And then he was on the run for three days, which, they couldn't find him --

THE COURT: Okay.

A PROSPECTIVE JUROR: -- so -- until they did, and we were able to finally breathe a little bit, but...

THE COURT: Okay. Thank you. Thank you. And I know those are probably traumatic experiences to have to relive in this setting. So thank you. That's all I have, Juror 5.

Let's now please call in Juror 11.

(Prospective juror exited the courtroom.)

COURTROOM DEPUTY:  Can you double-check that number, Judge.  I have them as having been --

THE COURT:  Oh, yes.  You are correct, Mr. Condon.  I'm not sure how I missed that.  Juror 11 is not with us any longer.  Let's go to Juror 14, please.

COURTROOM DEPUTY:  Very good, Judge.

(Prospective juror entered the courtroom.)

THE COURT:  Good afternoon, ma'am.  I wanted to touch base and circle back on some of your comments from yesterday.  I know you are a chemistry teacher, I think you said?

A PROSPECTIVE JUROR:  Correct.

THE COURT:  Okay.  And I think you also mentioned that you have a son who needs to be picked up before 5:30?

A PROSPECTIVE JUROR:  Correct.

THE COURT:  All right.  Have you been able to make any arrangements to potentially assist with those pickup obligations?

A PROSPECTIVE JUROR:  So, yesterday and today, my husband, with request from his employer, so he is normally not able to get there on time.

THE COURT:  Okay.  Do you think it would present a hardship to your husband to have to do that on a regular basis for the next three and a half weeks potentially?

A PROSPECTIVE JUROR:  Potentially, yes.

THE COURT:  Is there anything else you wish to share

with the Court with respect to your personal circumstances and how that -- they might affect your ability to perform your functions if chosen to serve?

A PROSPECTIVE JUROR:  I suppose the concern of my son being at school from 7:00 a.m. until 5:30 if he were to have to stay the full time.  That's a long day for a little 7-year-old.

THE COURT:  That's true.  Okay.  All right.  Do you think that might -- I don't want to say distract you -- but do you think it might --

A PROSPECTIVE JUROR:  I would try my best.

THE COURT:  -- put you a little bit preoccupied with your son's well-being?

A PROSPECTIVE JUROR:  It would be on my mind, but it would -- I would try my best to serve.

THE COURT:  Okay.  All right.  Thank you.  That's all I have, ma'am.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Let's hear from Juror 16, please.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  Okay.  This will be brief, ma'am.  In your questionnaire, you mentioned a couple of things regarding potentially a balance issue that you have and maybe another medical concern.

A PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  Do those issues present any sort of medical hardship to you?

A PROSPECTIVE JUROR:  No.  It's just, now, I -- I'm -- I have to lean to stand up straight.  I get a little (indicating).

THE COURT:  Does that balance issue affect your ability to pay attention for longer periods of time?

A PROSPECTIVE JUROR:  No, not -- nothing mental.  It's strictly physical.

THE COURT:  Okay.  Is there any issue with the balance concern from sitting for extended --

A PROSPECTIVE JUROR:  No.

THE COURT:  -- periods of time?

A PROSPECTIVE JUROR:  Not at all.

THE COURT:  Okay.  All right.  Now, you mentioned a number of times some questions about your -- your ability to be fair in this case.  So let me just confirm a few things.

I think you mentioned you have been the victim of a crime in the past?

A PROSPECTIVE JUROR:  My family member.

THE COURT:  Okay.  And in just very brief terms, what did that involve?

A PROSPECTIVE JUROR:  My first cousin was shot and killed.  And the nature of the crime -- although it was a long time ago -- we're a very close family.  And the problem is the

crime was never solved.  So every year we still celebrate my cousin's life.  So it's still always at the apex of our thoughts.

THE COURT:  Of course.  And if you would prefer to take a seat, make it easier for you, that would be totally fine, of course.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Do you think that sort of recurring family member loss would affect your ability to be fair and impartial in this case?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I do uphold the Second Amendment, and I appreciate anyone who would like to exercise that right, but anybody that abuses it, I have no -- I would not be fair.

THE COURT:  Okay.  All right.  Well, thank you very much.  That's all we have for Juror 16.

Let's bring in Juror 19.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  All right.  Good to see you again, sir.  I have in my notes that you indicated some inability to be fair and impartial.  I wanted to hear from you in your own words. What would you like to share?

A PROSPECTIVE JUROR:  I have seen a lot on social media

and TV, and I talked to a lot people about this incident before, a lot of conversation in my person before.  So for me to run it now into this sounds like a coincident because there is so much in the circle before that I have listened to, have heard.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Personally for me, it's -- it's hard to deal with this because I do have personal and mixed feelings with this as well.

THE COURT:  Okay.  Fair enough.  Thank you.  That's all I have or need to ask at this time.  You may be excused.

Let's hear from Juror 31.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

A PROSPECTIVE JUROR:  Hello.

THE COURT:  Hello.  All right, Juror 31.  Let's see.  I think you answered affirmatively clearly that you didn't think you could be fair because you have been the victim of a crime in the past.  Is that still your belief, sir?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  All right.  I had one other question to ask of you, sir.  Yesterday when we were going through jury selection, do you remember if you were perhaps a little sleepy and maybe dozing off?  No one is you judging you; we are just wanting to make sure that our jurors are fully alert.

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  All right.  Well, that's all I have.  You may be excused.

We will hear now from Juror 33.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  Hello, Juror 33.  So you raised your hand a couple of times, and I think you have indicated that you would have some hesitation about being fair and impartial in this case.  I wanted to give you a chance briefly to share any thoughts with us.

A PROSPECTIVE JUROR:  I just -- me personally, I just -- I don't like Trump, period.

THE COURT:  Do you think that those feelings would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR:  In regards to between the defendant and the prosecution?

THE COURT:  Well, yes.  In this case which concerns allegations that Mr. Routh attempted to kill now-President Trump, former candidate Donald J. Trump, do you think your personal feelings towards the president or his policies would impact your ability to be fair?

A PROSPECTIVE JUROR:  I -- I don't know.

THE COURT:  But is it fair to say that you have some doubts about whether you could be fair?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Well, that's efficient.  Thank you, ma'am.  Please be excused.  Go to the jury room, and we will call you back as soon as possible.

Now we are at 43, Mr. Condon.

COURTROOM DEPUTY:  Yes, Judge.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  Okay.  Good afternoon, ma'am.  I wanted to circle back on something that had come up yesterday.  I understand you work as a sole proprietor, is that right, doing thermoscans?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Obviously we -- here, as we select a jury, we don't want any jurors to be feeling a specific hardship that would either cause a real concern for them personally or distract them from their full attention to the case.  So I just wanted to give you another opportunity to indicate to the Court whether any of your professional obligations running your business would affect your ability to perform your functions as a fair and impartial juror.

A PROSPECTIVE JUROR:  No.  I don't think that would.  But we -- my husband is involved in a civil business lawsuit, and it's getting ready to -- it's a bench trial, but it's getting ready to go to that.  So that may distract me.

THE COURT:  Okay.  Fair enough.  And I think you may have referenced that in the questionnaire too.  Is that right?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Are you going to be involved in that at all?  Or it's just the collateral damage, so to speak --

A PROSPECTIVE JUROR:  Exactly.

THE COURT:  -- at home?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  All right, then.  Well, thank you.  That's all I have, Juror 43.

Let's go to the final one in this phase, 48.

COURTROOM DEPUTY:  Yes, Judge.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  All right.  Hello, Juror 48.

A PROSPECTIVE JUROR:  Yes, Your Honor.

THE COURT:  Thank you for your patience.

Let's see.  I wanted to have an opportunity to touch base with you on your ability to be fair.  I think you raised your paddle when I asked the question about being the victim of a crime or knowing somebody who has been.  Just in general terms, what did that concern?

A PROSPECTIVE JUROR:  What was the question again?

THE COURT:  Sorry for being maybe confusing.

What's the nature of the prior incident that caused you

to be a victim of a crime?

A PROSPECTIVE JUROR:  Oh.  It's actually my daughter. She was -- a domestic violence with her boyfriend, and it was so bad that she ended up on Baker's Act for a little while. And that actually just created a resentment on me on this -- somebody that creates harm to others, you know?  And it just -- just can't take it.

THE COURT:  Okay.  So would it be fair to say, sir, that you don't think you could be fully fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  I don't think I would be fairly impartial.  And if you say to me -- now, to me, somebody that already knows something and they still do it, I mean, to me they're -- they're guilty.

THE COURT:  All right.  Thank you, sir.  You may be excused.  Please go to the jury assembly room, and we will call you back when the time is right.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  What we're going to do now, ladies and gentlemen -- you may all have a seat, please.

Just briefly, I want to meet with the lawyers and with Mr. Routh to see if anybody proposes any additional substantive questions for this remaining group of still-eligible prospective jurors from Group 1.

Any other questions or follow-up from the

United States?

MR. BROWNE:  Yes, Your Honor.  With respect to Prospective Juror Number 61, she had answered on the questionnaire that she was, in fact, the victim of a crime, specifically a mugging at knifepoint, but I don't believe that she raised her paddle when the Court asked if anybody on the panel had been a victim of such a crime.  We would like for the Court to address that with Juror Number 61 and perhaps go through the follow-up colloquy about if there is anything about that incident that would make her question her ability to be fair and impartial.

THE COURT:  Okay.  Any others?

MR. BROWNE:  Just one moment, Your Honor.

THE COURT:  All right.  Anything else from the United States?  I do want to move along.

MR. BROWNE:  No, Your Honor.  That's it.

THE COURT:  Any other big-picture topics that you think need to be addressed that were not addressed?

MR. BROWNE:  No.  Thank you, Your Honor.

THE COURT:  Okay.  Now, Mr. Routh, I know you told me you had a series of other questions that you had written down. So now would be the time for you to propose any other questions that you think need to be asked, either, like, new topics entirely or specific follow-up for any jurors who have already been questioned.

MR. ROUTH:  Yeah, just a list of questions.  Do you want me to run down it real fast?

THE COURT:  Yes, but not so fast so Ms. Melton can't take it down.

MR. ROUTH:  Okay.  So Juror Number 1, you know, why didn't they raise their hand for hardship when they wrote it down in their questionnaire, number 16.

THE COURT:  Okay.

MR. ROUTH:  On to the next?

THE COURT:  Yes.  Hold on.  I just want to make sure I have my running list here.

Mr. Browne, the juror number that you wanted more inquiry on is what?

MR. BROWNE:  Number 61, Your Honor.

THE COURT:  Okay.  And Mr. Routh has asked for 1.

Okay.  Next.

MR. ROUTH:  Number 4 never answered questions 22 and 34, you know, about their convictions and about their beliefs, you know?  So they didn't answer those questions.  So...

THE COURT:  All right.  Mr. Browne or Mr. Shipley, anybody with the questionnaires handy, is it, in fact, the case that Juror 4 did not answer questions 22 and 34?

MR. BROWNE:  22 does not appear to have a checkmark.

THE COURT:  And 34 too?

MR. BROWNE:  34 is a "what, if any" question.  So it

doesn't appear that -- there is nothing written, but it says: What, if any, social media platforms do you actively use?

THE COURT:  Okay.  And that 22 question again is what?

MR. BROWNE:  That relates to:  Do you have any beliefs or convictions that would make it difficult for you to be a fair and impartial juror?

THE COURT:  Okay.  Okay.  Thank you.

All right.  Mr. Routh, any other specific follow-up that you recommend?

MR. ROUTH:  Yeah, I have got like six more.  So...

THE COURT:  Okay.

MR. ROUTH:  Number 15, explain question number 17 about the prior law enforcement.  I don't think they covered that. So Juror Number 15.

THE COURT:  All right.  I'm going to have to retrieve my stack of questionnaires for this set, which I don't have at the moment.  So I will look into whether Juror 15 --

MR. ROUTH:  All right.

THE COURT:  -- checked that or didn't indicate that.

MR. ROUTH:  All right.  Number 18, he had a friend that possessed a hand -- a man-made bomb, and the charges are still pending.  So I just -- seemed somewhat suspect.

THE COURT:  All right.  Momentarily, I'm going to look at the questionnaire for 15.  And you mentioned that this person hadn't answered questions about law enforcement

contacts.

MR. ROUTH:  Yeah, I would just seek an explanation.

THE COURT:  All right.  So you're looking for an explanation there.  Okay.

MR. BROWNE:  Your Honor, in our view, the question is fully answered.  It describes the person who was involved, the nature of the crime, and the outcome.

THE COURT:  I think Mr. Routh is referring to question 17.

MR. ROUTH:  Yes.

THE COURT:  So there is no explanation there.  That's what he is referring to.  I think he is correct about that.

MR. BROWNE:  I'm sorry.  I thought we are on to Juror Number 18.

THE COURT:  Yes, I went back.  All right.  So that's 15, but now we're going to talk about 18.

What's your concern with 18, Mr. Routh?

MR. ROUTH:  Well, just, you know, a friend possessing a homemade bomb, I mean, and the case is still pending.  I just -- it just seemed, you know, fairly radical.

THE COURT:  All right.  That's for a friend, though, not the actual juror?

MR. ROUTH:  Yeah, it's for a friend, but, I mean, if it's a close friend, I --

THE COURT:  Okay.  All right.  Any other jurors that

you wish to inquire of more, Mr. Routh?

MR. ROUTH:  Yeah.  Number -- questions 22 and 24.

THE COURT:  Sorry.  Let's keep the numbers straight.  Which juror number are you talking about now?

MR. ROUTH:  Jury 20 -- Juror Number 20.  Questions number 22 and 24 for Juror Number 20; so about his beliefs.

THE COURT:  Slow down.

Ms. Moran, do you have a copy of the Juror 20 questionnaire, please?

COURTROOM DEPUTY:  (Tendering item.)

THE COURT:  Thank you.

Okay.  All right.  That does, I think, warrant some additional inquiry, sir.  So we will put that on the list.

Who else?

MR. ROUTH:  Juror Number 21, question 22; again, about beliefs.

COURTROOM DEPUTY:  (Tendering item.)

THE COURT:  Thank you, Ms. Moran.

Does the government have a view on this juror?  There is a comment about whether maybe the person wouldn't be fair and impartial if the case, I guess, concerned children or elderly victims.

MR. BROWNE:  I don't know what bearing that has, Your Honor, on this case.  And, again, at no point did that prospective juror raise his hand and say that he couldn't be

fair in any of the questions that the Court asked about the actual subject matter of the case.

THE COURT:  Okay.  I concur with the United States on Juror 21.  I don't think any additional colloquy is necessary.

Mr. Routh.

MR. ROUTH:  Number -- Juror Number 40.  We just were missing page 4.  We didn't raise that yesterday.  So page 4 was missing out of the questionnaire.  I don't know if it's a --

THE COURT:  One moment.

COURTROOM DEPUTY:  (Tendering item.)

MR. BROWNE:  The government is also missing page 4, Your Honor.

THE COURT:  All right.  We will have to look into this. Where is the page 4 for juror questionnaire 40?  Okay.

Okay.  Mr. Routh, any others?

MR. ROUTH:  Yes.  On 42, we were dealing yesterday with the gentleman with the oil company, and his year-end was September 30th, and having to drive three hours.  And we were going to look into possible accommodations.  And he was going to have to work at night, and I don't know why we didn't exclude him.  But just revisiting Juror 42, his hardship.

THE COURT:  Okay.  All right.  My recollection -- he is a third-generation business, and there are other folks in the office that could help for the duration of the trial.  But out of an abundance of caution, I'll invite him in for some

additional cycling through that topic.

Okay.  Any others, Mr. Routh?

MR. ROUTH:  On Number 46, I don't know how we landed yesterday.  But the husband and wife, self-employed construction business.  But, you know, extreme hardship as far as not being able to work for the three weeks.  I don't know -- I don't know how we landed on not letting them out of jury duty.

THE COURT:  What's the government's view on 46?

MR. BROWNE:  Just a moment.

Your Honor, I don't recall this juror articulating any specific hardship.  I recall her saying that she works in office and the husband works out in the field, but at no point in my notes is it reflected that she is not able to serve.

THE COURT:  All right.  This juror, I think, was asked repeatedly whether there would be any interference with the functions of a -- of a juror.  Did not answer "yes" to any of those questions.  And I think I was quite thorough on those subjects, so I don't think we need to delay matters with more individual questioning of 46.

Next, Mr. Routh.

MR. ROUTH:  On Juror Number 50.  So the answers to the questions 4 and 5.  You know, we don't have a copy of answers for 4 and 5 -- or pages 4 and 5.

COURTROOM DEPUTY:  (Tendering item.)

THE COURT: That's true. I'm not sure why those are missing. So this is Juror 50, pages 4 and 5. Okay. We will -- we will look into that as soon as possible.

MR. ROUTH: Okay. Juror Number 56. The answer to number 26 was not complete. That was the question about firearms. And so he noted that he had some issues and problems, but then he didn't explain. He said, "yes," but then didn't explain. So I don't know if he can explain further his problems with firearms and so forth and so on. He is the gentleman with the hypertension and the diabetes and the heart medication.

THE COURT: All right. Slow down.

Okay. So Juror 56 did answer "yes" to question 26. So that does merit additional inquiry.

Does the government agree?

MR. BROWNE: No objection.

THE COURT: Okay. So we will do that for Juror 56.

Any others, Mr. Routh?

MR. ROUTH: No, Your Honor. That's it.

THE COURT: Okay. Now, let me give you a chance. Like I said, you wrote down some other questions, and I want you to please tell me what those are so I can consider whether they are worthy of being asked.

MR. ROUTH: Just -- just the general, you know, as far as --

THE COURT:  Can you be -- sorry to interrupt.  Can you be clear.  Move that microphone base, please, towards you, and just be clear with your questions.

MR. ROUTH:  Okay.  All right.  So, you know, dealing with these people with the media, I don't know, you know, if they have seen a lot of media, and it's not coming into evidence, then, I mean, would -- I don't know.  Do we need to do individual voir dire based on what they know?  And if it's not going to be evidence in the trial, then, you know, how are we supposed to read it into the record or not?  I mean, so that's just --

THE COURT:  Okay.  Mr. Browne, what's your position on that question, which is not entirely clear what the judicial request for relief is?  But what do you -- what do you think?

MR. BROWNE:  The Court's colloquy was especially thorough on media coverage.  And each and every prospective juror that was questioned about what effect viewing media coverage would have all responded -- with a couple of exceptions that we have marked down, all responded that it would not affect their deliberations in any way.

THE COURT:  Okay.  All right.  Next question that you would propose, Mr. Routh?  I don't believe any additional inquiry is required, given the Court's lengthy colloquy on that subject.

MR. ROUTH:  As far as general questions, I tabled all

of the questions because all of the general questions that I had lined up were in line with the original ten that I had submitted, so...

THE COURT:  So the original ten, going off memory, concerned things like the Washington Redskins, whether to purchase Greenland.  Let's see, maybe topics about illegal immigration --

MR. ROUTH:  Right.

THE COURT:  -- and other sorts of things like that.

As I indicated yesterday, those particular policy positions that you might hold have no bearing on the essential elements of this case.

These other questions that you've thought about, are they like those questions that I have already rejected?

MR. ROUTH:  Yeah, they're all in the same vein. They're the same, same, same, same thought process.  So, yeah, they're specific questions.

THE COURT:  All right.  About public policy matters, like, whether to fund Ukraine if we have debt in this country and things like that?

MR. ROUTH:  Yeah, along those lines, yeah.  Yeah, general questions, so -- but yeah.

THE COURT:  Okay.

MR. ROUTH:  So it's okay.

THE COURT:  All right.  Well, for the reasons I have

already said, I don't see any relevance to those topics.  And I think it would, in fact, go quite against the Court's explanation that personal views, good or bad, of elected officials aren't relevant to the essential elements of the offenses charged.

So, with that, we're going to take a break now.  I'm going to go back and try to assemble some of these missing pages.  We will make a list of the folks who require individual questioning, and then we will bring them in.  And then after that, unless there is a need for more questioning, we will go through, with the parties only, any additional for-cause strikes, and then do as we did yesterday, bring them all in as a group and release all the excused jurors.

Any questions or concerns?

MR. BROWNE:  No, Your Honor.

THE COURT:  Mr. Routh.

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay, then.  We're -- it's 4:25.  Please come back at 4:35.  Sorry to make the breaks short, but we're nearing the end of the workday.

(A recess was taken from 4:22 p.m. to 4:46 p.m.)

THE COURT:  Please be seated.  Okay.  We have lined up outside some jurors for individual questioning.  I want to make a note that Juror 20 didn't show up today, so will be stricken from the panel.  There was apparently some confusion.  She

indicated she thought she had been stricken and had some other transportation problem.  So she's not on the panel any longer, or he.  This is Juror 20.

I have also made sure to supply full copies of those two questionnaires that were missing.  That would have been for Juror 50 and Juror 40.  Have the parties received those?

MR. BROWNE:  Yes, Your Honor.

THE COURT:  Any concerns based on those additional pages?

MR. BROWNE:  Yes, Your Honor.  With respect to prospective Juror 50, based on the disclosure on page 5 of the theft arrest, we did a criminal history check and determined that there were multiple felony arrests that were not disclosed in Juror 50's questionnaire.

THE COURT:  Okay.  Mr. Routh, do you have any position on whether Juror 50 should be stricken for cause?

MR. ROUTH:  You can strike that juror.  That's not a problem.

THE COURT:  Okay.  Juror 50, then, will be stricken for cause by agreement of the parties.

One moment.  All right.  And we're awaiting some additional documentation.

All right.  The other juror whose pages we provided -- these were inadvertently not copied in the original stacks -- is Juror 40.

Any concerns with that juror, Mr. Browne?

MR. BROWNE:  No, Your Honor.

THE COURT:  Mr. Routh.

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  So do you still think, Mr. Routh, that we need to engage in individual questioning with Juror 40?

MR. ROUTH:  No, Your Honor.

THE COURT:  Does the government think individual questioning is necessary?

MR. BROWNE:  No, Your Honor.

THE COURT:  Okay.

Okay.  All right.  Then let's start, please, with Juror 1, who should be outside.

(Prospective juror entered the courtroom.)

THE COURT:  Good afternoon, sir.  This should be brief. We just wanted to touch base on one of your answers to the questionnaire.  When asked whether there would be a substantial hardship, I think you indicated that there would be based on loss of income.  And I understand, you work as a welder and for another boat lift company; is that right?

A PROSPECTIVE JUROR:  Yes, Your Honor.

THE COURT:  Okay.  Now, do you believe, sir, there would be a serious financial hardship to you or to your family if you were selected to serve on this jury?

A PROSPECTIVE JUROR:  If it extends to three and a half

to four weeks, yes.

THE COURT:  Okay.  So if we were to maintain the original expected schedule, which takes us to approximately October 1, would your answer be the same, that that would pose a hardship to your family?

A PROSPECTIVE JUROR:  Yes, Your Honor.

THE COURT:  Okay.  We talked about this a bit earlier, and I don't know if you -- if you raised your hand during the official questioning in the courtroom.  Is that because you were just having some doubts about the extent of the hardship, or what was going on there?

A PROSPECTIVE JUROR:  Yes, Your Honor.  I was having doubts about being able to, you know, do this financially.

THE COURT:  Okay.  And is it still the case, sir, that if you were called to jury service, you wouldn't be making any money in your current positions?

A PROSPECTIVE JUROR:  That is correct.

THE COURT:  All right, then.  Okay.  Well, thank you, sir.  That's all I have for now.  You can go back to the jury selection room, and we will call you back as soon as humanly possible.

(Prospective juror exited the courtroom.)

THE COURT:  All right.  Mr. Condon, please bring in the next juror, who I believe is 4.

COURTROOM DEPUTY:  Correct.

(Prospective juror entered the courtroom.)

THE COURT: Good afternoon, ma'am. This should be brief. I just wanted to follow up on a question that I believe you may have overlooked in the questionnaire, and it's question 22. It asks you whether you have any beliefs or convictions that would make it difficult for you to be fair and impartial as a juror in a criminal case or to sit in judgment of the defendant. How do you answer that question, yes or no?

A PROSPECTIVE JUROR: I do not. I do not. And I'm sorry I missed that question.

THE COURT: Okay. So is it clear you do not have any such beliefs that would make it difficult for you to be fair?

A PROSPECTIVE JUROR: Correct.

THE COURT: All right. Thank you very much, ma'am. That's all we have. And actually, one final question.

Anything else that you could come up with in your mind, experiences or otherwise, that would affect your impartiality or your objectivity?

A PROSPECTIVE JUROR: No.

THE COURT: All right. Thank you, ma'am. Please be excused. You may return to the jury selection room. I should be clear with that. You are not free to go, but we will call you back as soon as possible.

(Prospective juror exited the courtroom.)

THE COURT: And, Mr. Condon, if you can make sure that

the folks know to go to the jury selection room and not to leave the courthouse, please.

COURTROOM DEPUTY:  Yes, Judge.

THE COURT:  Okay.  Okay.  We're now going to speak with Juror 15.

(Prospective juror entered the courtroom.)

THE COURT:  Good afternoon, sir.  Right over here. This should be brief.

In your questionnaire -- this is Juror 15 -- I believe you answered that -- let me just do this.  Are you currently involved in any lawsuits, sir?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  This, I think, is what prompted this inquiry.  So I see here that you do have a close friend or family member who has worked in law enforcement; is that right?

A PROSPECTIVE JUROR:  No.

THE COURT:  All right.  Well, let me just ask again. Have you or a close friend or family member ever worked in any law enforcement-related job or agency such as the local police, federal law enforcement, or as a private security guard?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  So your questionnaire -- and this is Juror 15 -- does say yes to that question.  Was that just an oversight, sir, on the part of you when you were filling out the questionnaire?

A PROSPECTIVE JUROR:  Well, my sister's husband, she's -- he's like a security guard, I think, in Indian River. I don't know if that -- that's probably what I was thinking.

THE COURT:  Okay.  Your sister's husband?

A PROSPECTIVE JUROR:  Uh-huh.

THE COURT:  All right.  Is there anything about your sister's husband's job as a security guard -- well, actually, let me step back for a minute.

Do you know where he works actually?

A PROSPECTIVE JUROR:  The reason why I -- I know that is because I was a reference on his application when he was applying for that security job in Indian River.  So I don't know exactly where.

THE COURT:  Okay.  All right.  Does his employment in any way affect your ability to be a fair and impartial juror?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  And as far as your understanding of the questionnaire, were you in any way trying not to provide accurate information in the questionnaire?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  And so was your questionnaire fully truthful and candid?

A PROSPECTIVE JUROR:  Correct.

THE COURT:  All right.  Thank you, sir.  You may be excused.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  All right.  Mr. Condon, it is now time for Juror 18.

(Prospective juror entered the courtroom.)

THE COURT:  Good afternoon, Juror 18.  Let's see.  I wanted to ask you briefly about one of the answers in your questionnaire.  I think you indicated that you have a friend who was involved in some sort of criminal activity that is alleged pending trial now, and it's possession of a man-made bomb.  There is some other references there to other prior convictions of people that you know.

Let me ask you, ma'am:  Is there anything about your friend's pending criminal case or anybody else that you know who has had any criminal history that would affect your ability to be fair and impartial if chosen to serve as a juror in this case?

A PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Okay.  Thank you.  You may be excused to the jury selection room.  We will call you back as soon as we can.  Thank you.

(Prospective juror exited the courtroom.)

THE COURT:  All right.  21, please.  And I should say, actually, Mr. Condon, before you bring in 21, actually --

Actually, sir, can you excuse yourself just momentarily.  We will call you back in in just a second.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  I wanted to pause here momentarily.  Oh, and all the folks in the gallery, I never said that you can sit down.  So my apologies.  Please feel free to sit down if you wish.

This juror, 21, I was advised moments ago that he apparently took a photograph in the courtroom and was asked by the marshals to delete it.  That's obviously concerning.  And so I wanted to bring that to the parties' attention to see if there is agreement on a for-cause strike as to this person or if additional questioning is warranted.

Mr. Browne.

MR. BROWNE:  No, Your Honor.  We think an admonition is sufficient.  We don't believe a for-cause strike is appropriate.  I don't know that they have been instructed specifically; and, if so, this appears to be a lapse.  So we're okay with an admonition, but we don't think a for-cause strike is justified.

THE COURT:  Okay.  Mr. Routh, what do you think?

MR. ROUTH:  Yeah, I think he should be removed.  I mean, if he is breaking the rules already, I mean, really?  So...

THE COURT:  Right.  No, that would be a concern if there had been an explicit instruction to the jurors not to take photographs; and although I think it would have been

unusual for anybody to do that, at the very least, I don't know if I was explicit.  So for that reason, I will bring Mr. -- Juror 21 in and inquire of this issue.

Thank you.

Mr. Condon.

(Prospective juror entered the courtroom.)

THE COURT:  Good afternoon, sir.  Thank you for your patience.  It was brought to my attention, sir, that you may have attempted to take a photograph, using your phone, of something in the courtroom.

Did that happen?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  And what did you take a picture of?

A PROSPECTIVE JUROR:  I just took a picture over that way (indicating).  That's all.

THE COURT:  First of all, I can't hear you.

A PROSPECTIVE JUROR:  I took a picture towards the defendant.  That's all.

THE COURT:  Okay.  And did you hear me earlier last -- when we were together yesterday when I was explaining how there would be no electronic recording or photographing of the proceedings?

A PROSPECTIVE JUROR:  Yeah.  I thought you meant like while we were in court when we were picked.  I thought you meant while we were in court while we were picked.  I didn't

know you meant like before the actual case.

THE COURT:  Okay.  So did you -- when you took that photograph, did you know that you were or think you were violating a court rule?

A PROSPECTIVE JUROR:  No.  I mean -- I mean, I thought that it was -- that that rule was while we're in the courtroom during the case going on --

THE COURT:  Okay.

A PROSPECTIVE JUROR:  -- didn't want nobody knowing about it.

THE COURT:  So if I were to tell you now in very clear terms that there is absolutely no room for use of any phones in any way at any point, including during jury selection, could you commit to me 100 percent that you would follow that instruction?

A PROSPECTIVE JUROR:  Absolutely.

THE COURT:  Okay.  And do you have any doubts about your overall ability to comply with the Court's instructions on the law?

A PROSPECTIVE JUROR:  No, not at all.

THE COURT:  I'm going to need you to speak up into the microphone.

A PROSPECTIVE JUROR:  No, I said, yes, I 100 percent would comply.

THE COURT:  Okay.  And then final question.  Anything

else in your background or experiences, sir, that would make you feel that you cannot be a fair and impartial juror in this case?

A PROSPECTIVE JUROR:  Nope, nothing.

THE COURT:  Okay.  Thank you.  You may return to the jury selection room, and we will let you know what's next as soon as possible.

A PROSPECTIVE JUROR:  Thank you.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  Let's visit with 42, please.

(Prospective juror entered the courtroom.)

THE COURT:  All right.  Good afternoon, sir.  I wanted to circle back with you.  I know yesterday we had talked about your business.  And I think you're in a busy period of time at work; is that right?

A PROSPECTIVE JUROR:  That's correct.

THE COURT:  Okay.  I think you also said that you have some additional family members who work with you at the office?

A PROSPECTIVE JUROR:  I do, yes.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Which carries on the day-to-day operations of the business.

THE COURT:  So my ultimate question, sir, is:  Do you think you could give this case your undivided attention if chosen to serve as a juror?

A PROSPECTIVE JUROR:  I will make it happen, yes, ma'am.

THE COURT:  All right.  Do you have any doubts about that?

A PROSPECTIVE JUROR:  No.

THE COURT:  All right.  And is there anything in your background or experiences that would affect your ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Thank you.  Please return to the jury selection room, and we will give you further instructions as soon as possible.

(Prospective juror exited the courtroom.)

THE COURT:  All right.  That was Juror 42.

Okay.  56, please.

MR. BROWNE:  Your Honor, our notes reflect that Juror Number 46 was the prospective juror needing additional inquiry as opposed to 56.  Right.  46 and then 56.  And I think Your Honor just called for 56.

(Prospective juror entered the courtroom.)

THE COURT:  So basically we're missing 46?

MR. BROWNE:  That's our understanding.

THE COURT:  Okay.  Mr. Condon, while I'm visiting here with Juror 56, if you could please call up Juror 46 from the jury selection room, or have somebody assist you with that,

please.

COURTROOM DEPUTY:  Sure.

THE COURT:  All right.

COURTROOM DEPUTY:  Very good.

THE COURT:  What's your juror number, sir?

A PROSPECTIVE JUROR:  56.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Juror number?

THE COURT:  Yes.  Are you Juror 56?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  All right.  Please, first off, put the microphone closer to you so I could ask any questions.

There is a question on the questionnaire that I just wanted to ask you about.  So this is the question, and you said yes.

"Do you have any opinions concerning firearms or the laws governing firearms that would affect your ability to be fair and impartial in any criminal case that might involve the possession or use of firearms?"  And you said yes.

And so I just wanted to inquire:  Do you at this point, having gone through this jury selection process, do you have any opinions concerning firearms in any way that you think would call into question your ability to be a fair and impartial juror if chosen to serve?

A PROSPECTIVE JUROR:  Just the basic, how to use the

firearm.  That's the only thing I know.

THE COURT:  Okay.  So I think what you are telling me is you -- you know how to use a firearm?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Do you have any opinions about firearms that would affect your ability to be fair as a juror in this case?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Do you have any doubts or issues with your impartiality if you were chosen to be a juror?

A PROSPECTIVE JUROR:  The problem that I have troubling right now, ma'am, is my -- I cannot control my blood pressure.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I'm having a hard time.  Right now my systolic and diastolic is very high.

THE COURT:  Okay.  Thank you for letting us know.  And you did indicate that you have hypertension.

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  So are you concerned that serving on a trial of this -- of this length perhaps would affect your health in any way?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  All right.  That's all I have, Juror 56.  Thank you.  You may return to the jury selection room for further instructions.  Do not leave the courthouse,

please.

A PROSPECTIVE JUROR:  Okay.  Thank you, ma'am.

(Prospective juror exited the courtroom.)

COURTROOM DEPUTY:  which juror would you like next, Judge?

THE COURT:  Do we have 61?

COURTROOM DEPUTY:  I have 61 and 46 outside.

THE COURT:  Okay.  We've already done 42; is that correct?

COURTROOM DEPUTY:  Correct.

THE COURT:  Okay.  So -- and we just visited with 56. So let's turn to 46, please.

COURTROOM DEPUTY:  Perfect.

(Prospective juror entered the courtroom.)

THE COURT:  Okay.  Nice to see you again.  Thank you. This is Juror 46.  I just wanted to go back and refresh my memory a little bit.  I understand you work at a construction office with your husband?

A PROSPECTIVE JUROR:  That is correct.

THE COURT:  Okay.  And I think you mentioned yesterday that you're in charge of all of the office work and you're kind of trusted to do that type of work; correct?

A PROSPECTIVE JUROR:  Correct, yeah.  It's a small company.

THE COURT:  Okay.  Do you think that if you were chosen

to serve on the jury, that it would present a hardship to your family or to your business?

A PROSPECTIVE JUROR:  It would.  I mean, I could work morning or night, but it is just the two of us that run the company.

THE COURT:  So just, you know, hypothetically, if you were doing that after-hours work, do you think that would take away from your ability to be fully present and paying attention to the trial during the -- during the trial hours?

A PROSPECTIVE JUROR:  No.  I think I could probably handle it.

THE COURT:  Okay.  Now, obviously for us, we want to make sure that our jurors are committed and can really be focused.  And so I'm just going to ask you directly, do you think you can perform the full functions of a juror?

A PROSPECTIVE JUROR:  I believe I could.

THE COURT:  Okay.  Thank you, ma'am.  You may return to the jury selection room, and I will give you further instructions, along with the group, as soon as possible.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  All right.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  And now we have, finally, Juror 61.

(Prospective juror entered the courtroom.)

THE COURT:  Okay.  Thank you, ma'am.  We are going as

quickly as we can.

I wanted to inquire about a subject that you mentioned in your questionnaire.  And I'm sorry, again, to have to bring up personal experiences.  But I did see here that you were a victim of a mugging at knifepoint; is that correct?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  And when did that happen?

A PROSPECTIVE JUROR:  I think my mid-, late 20s; so over 25 years ago.

THE COURT:  Okay.  Now, I can imagine that was a traumatic experience.  Is there anything about that experience that would affect your ability today to be a fair and impartial juror if chosen to serve?

A PROSPECTIVE JUROR:  No.

THE COURT:  All right.  Is there anything in your background or experiences otherwise, that I haven't otherwise touched upon, that would affect your objectivity or your fairness and impartiality?

A PROSPECTIVE JUROR:  No.

THE COURT:  All right.  Thank you, ma'am.  Please return to the jury selection room, and we will be in touch as soon as possible.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  What we're going to do now is go through final for-cause challenges for the Group 1 jurors.

Mr. Routh, do you still wish that I begin with the government and then go back to you afterward?

MR. ROUTH:  Sure.

THE COURT:  Okay.  All right.  So we, of course, have already stricken some members from Group 1.  That was yesterday.  This is focused on any folks who now need to be stricken for cause based on additional jury selection.

So, with that, Mr. Browne, please go to the first one.

MR. BROWNE:  Your Honor, I'm going to do my best to go in numerical order, beginning with Prospective Juror Number 1 based on financial hardship.

THE COURT:  Any objection to the financial hardship exclusion for Juror 1, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Okay.  1 will be stricken for the financial hardship concerns.

Okay.  Next.

MR. BROWNE:  Prospective Juror Number 5.

THE COURT:  Any objection to a for-cause strike as to Juror 5, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Okay.  I agree with that, of course.  This person said he or she could not be fair due to a prior victim situation.

Okay.  All right.  Next, Mr. Browne.

MR. BROWNE:  Prospective Juror 13, who indicated that her nuanced understanding of court proceedings could, quote, "possibly affect her ability," end quote, to be fair.

THE COURT:  Mr. Routh, do you agree?

MR. ROUTH:  I think she would be an excellent juror. So I would like to keep her, but...

THE COURT:  All right.  So I'm hearing that you opposed a for-cause challenge as to Juror 13.  My notes show that she did say, I think, twice that she had this feeling of being possibly unfair.  I think that does cause some real concern.

Mr. Routh, what is your view on that, on her statements?

MR. ROUTH:  I think she was leaning towards being fair, and given the fact that she's in the legal profession, she understands how all of this works.  So, I mean, she seemed like the ideal juror in my eyes.

THE COURT:  Okay.  Response?

MR. BROWNE:  Your Honor, her response necessarily suggests that she's going to bring something other than the evidence in court to her deliberations.  She talked about it specifically and said, My experience around courts and trials and, specifically, law enforcement officers -- is what is going to make her possibly unfair.

That is against the Court's instruction, obviously, and is not appropriate.  We think a cause challenge is the correct

course here.

THE COURT: Okay. I agree with -- with the request for Juror 13 because she did twice say that she felt she would be possibly unfair. And that's enough to cause enough concern about her impartiality. So for that reason, Juror 13 will be stricken for cause over the defendant's objection.

Okay. Mr. Browne.

MR. BROWNE: Prospective Juror 14.

THE COURT: What's your position? Why?

MR. BROWNE: I think ultimately it's for hardship, Your Honor. This is somebody who did everything she could to see how she would work out her childcare situation. But ultimately, I just wasn't satisfied that she would be able to focus on that as opposed to her concern, I think as she put it, about a very long day from 7:30 until about 5:00 for her 7-year-old. That seemed to be at the forefront of her mind. So we're asking for cause.

THE COURT: Mr. Routh.

MR. ROUTH: No real objection.

THE COURT: Okay. So do you have an objection to for-cause as to 14?

MR. ROUTH: No. That's okay. I think the -- the chemistry teacher and trying to cover her classes and stuff of that nature, so no problem.

THE COURT: Okay. Juror 14 will be stricken for cause.

I do have lingering concerns, both for her classroom commitments, and then most especially with her young son and the childcare situation with that.

Okay.  Next.

MR.  BROWNE:   Prospective Juror 16.   This person indicated directly and repeatedly that she could not be fair for a number of reasons.

THE COURT:  Mr. Routh.

MR.  ROUTH:  Yeah, no objection.

THE COURT:  16 will be stricken for cause.

MR.  BROWNE:   Prospective Juror 19.

THE COURT:  And just so we're on track, 20, like I said, did not show today.  So that person should not be considered, obviously.  And I think now you said 19.

MR.  BROWNE:  I apologize.  Yes, Your Honor.

THE COURT:  Okay.  So 19.  Your reasons are?

MR.  BROWNE:  It was a bit cryptic, but ultimately, it was as a result of not just his exposure to media coverage but also his personal engagement with others online about this case.  Although he didn't say how, he said he could not be fair as a result of his discussions of this specific case.

THE COURT:  Oh, that's true.  Okay.  Yes.

Mr. Routh, any objection to for-cause as to 19?

MR.  ROUTH:  Yeah, no objection.

THE COURT:  Okay.  19 will be stricken for cause.

Next.

MR. BROWNE:  Prospective Juror 31 indicated directly that based on a situation in which he himself was a victim, he could not be fair.

THE COURT:  Mr. Routh, what's your position on 31? This person said he had been the victim of a crime and he couldn't be fair.

MR. ROUTH:  No objection.

THE COURT:  Okay.  31 will be stricken for cause.

Next.

MR. BROWNE:  Prospective Juror 33 said unequivocally that because of the victim in our case, she could not be fair.

THE COURT:  Any objection, Mr. Routh, to for-cause as to 33?

MR. ROUTH:  No objection.

THE COURT:  33 will be stricken for cause for the reasons stated by the prospective juror which amount to for-cause.

Okay.  Next.

MR. BROWNE:  Prospective Juror 43.  Although she indicated a financial hardship, she seemed primarily concerned with the impending civil trial involving her husband.  The Court asked her if the collateral damage would affect her, and she indicated that it would.

THE COURT:  Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  43 will be stricken for cause because of that pending civil matter that has her attention, as she said.

Next.

MR. BROWNE:  Prospective Juror 48 indicated because of his daughter's prior status as a victim and the consequences of that, he could not be fair in this type of case.

THE COURT:  Mr. Routh.

MR. ROUTH:  I think it would be a good juror, but no objection.

THE COURT:  Hearing no objection from the defense, 48 will be stricken for cause.  And I also independently agree based on the "can't be fair" answer.  Okay.

MR. BROWNE:  Prospective Juror 50 is already stricken. I apologize.

THE COURT:  Wait.  I don't know if that's the case.

MR. BROWNE:  It was.  This was the non-disclosed criminal history that we brought to the Court's attention after receiving the complete questionnaire from Number 50.

THE COURT:  Oh, yes.  This just happened a moment ago. Okay.

Mr. Routh, do you recall that?

MR. ROUTH:  Yes.

THE COURT:  Okay.  So Juror 50 will be stricken for the undisclosed criminal conviction issue that was addressed

earlier.

Next.

MR. BROWNE:  Prospective Juror 56, who indicated that he was very concerned about controlling his blood pressure, and that that would be a distraction for him if he were to be selected.

THE COURT:  Okay.  Any objection, Mr. Routh?

MR. ROUTH:  Most certainly.  Yes, he needs to go.  Yeah.

THE COURT:  Okay.  56 will be stricken for cause due to his medical issue.

Mr. Browne, any others?

MR. BROWNE:  No additional cause challenges from the government, Your Honor.

THE COURT:  Any additional cause challenges from Mr. Routh?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  Let's go.

MR. ROUTH:  Number 4.

THE COURT:  What's your reason?

MR. ROUTH:  Just that they -- they can't be fair.  I mean, you know, again, we just hashed that out.  So I guess they claim that they could be fair, but I don't believe it.

THE COURT:  Do you have anything specific you can point to, Mr. Routh, for this suggestion that this person can't be

fair?

MR. ROUTH:  No.

THE COURT:  Okay.  Anything from the United States for Juror 4?

MR. BROWNE:  No, Your Honor.  The juror answered the question under oath and indicated they could be fair.

THE COURT:  Okay.  Well, then I don't see a basis to strike this juror.  I don't have anything in my records to indicate this person indicated a lack of fairness or any other concerns.  So I will be denying that request.

Next, Mr. Routh.

MR. ROUTH:  Number 8.  I'm not sure if we discussed it prior.  He was in a fight in school.  So...

THE COURT:  Mr. Browne.

MR. BROWNE:  My understanding is this stemmed from a high school incident and the prospective juror was sentenced to probation.  No questions were asked that would indicate that that would have any effect on this juror at all.  So we don't believe there is a basis for cause.

THE COURT:  Okay.  No for-cause basis has been shown by the defendant as to number 8, who has indicated no reason he couldn't be fair based on an old high school fight of some kind.

Okay.  Next.

MR. ROUTH:  Just revisiting the ones that we've

discussed.  18.

THE COURT:  One moment.  One moment.

MR. ROUTH:  The friend with the man-made bomb.

THE COURT:  Okay.  So this person specifically said just a moment ago that she would have no issues based on that matter her friend is dealing with.

So do you still wish to proceed on a for-cause challenge as to Juror 18?

MR. ROUTH:  Yes, if possible.

THE COURT:  Do you have any other reason?

MR. ROUTH:  No.  Just that.

THE COURT:  Okay.  Anything from the government?

MR. BROWNE:  Again, Your Honor, the prospective juror answered the question directly under oath that it would not cause her to be unfair.

THE COURT:  Okay.  For-cause request as to 18, denied.  No reason to use a for-cause for this person.

Okay.  Next, Mr. Routh.

MR. ROUTH:  Again, just revisiting number 43, the -- the one with the two kids that owns their own business.  So was that satisfactory as far as the answer?

THE COURT:  43.  This is the civil lawsuit.  This person has already been stricken.

MR. ROUTH:  Oh, they have.  Okay.  I'm sorry.

THE COURT:  Okay.  So 43 is out.

MR. ROUTH:  Okay.  My fault.

THE COURT:  Next.

MR. ROUTH:  46, the one who spoke about their husband-and-wife construction business.  She said that she could try to make it work.

THE COURT:  Okay.  What's the government's position?

MR. BROWNE:  She said exactly that, Your Honor.  The original colloquy was thorough.  The follow-up colloquy was even more thorough.  And when asked specifically whether she would be distracted, she said she would do her absolute best and indicated that it would not be a problem for her to serve.

THE COURT:  Okay.  I agree.  No for-cause as to Juror 46.  So denied.

Next.

MR. ROUTH:  On Juror 21 that was taking the picture, I just, you know, find that hard to believe, but, you know, why was he even taking a picture?  Why was he taking a picture of me?  I don't -- I don't understand that whole process.

THE COURT:  What's the government's position?

MR. BROWNE:  Again, we don't see it as a basis for a cause challenge, Judge.  There is no indication that that would impact his fairness.  The Court went further to ask if there was anything else in his background or anything about this juror that would not allow him to serve and be fair, and his answer was repeatedly no.

He answered the same set of questions --

THE COURT:  Okay.  I'm going to agree with the defense on this, although he did come around and say he could be fair. The fact that he was taking a picture in the -- in the direction of the defendant, I think, causes enough concern to wonder why he would be interested in doing that to begin with, even if he didn't think he was violating a court rule.  So for that reason, 21 will be stricken for cause.

Next, Mr. Routh.

MR. ROUTH:  That's it, Your Honor.

THE COURT:  Okay.  All right.  We're going to now call up this entire group, announce who is excused, and then have them come back tomorrow.  The designated time for this batch is -- can someone remind me?

MS. SIHVOLA:  8:30.

THE COURT:  8:30?  For Group 1, too?  Or is that 2:00?

MS. SIHVOLA:  Oh, I'm sorry, Your Honor.  Groups 2 and 3 were 8:30.  Excuse me.

THE COURT:  All right.  It's 2:00.

So, with that, it is 5:29.  We will take a very, very brief break just for the purpose of assembling the jurors so we can get them out as soon as possible.  Thank you.

(A recess was taken from 5:26 p.m. to 5:31 p.m.)

(The venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT:  Thank you.  Please be seated.

All right.  Thank you again for your continued patience and attention.  I'm now going to read out loud the names of the jurors who have been excused and will not be required to return.  After I'm done with that, I will read out loud the names of the jurors who must come back tomorrow at 2:00 p.m.  So here we go.  These are the jurors who have been excused from this group for jury service.

And we have Juror 1, excused.  Juror 5, excused.  Juror 13, excused.  Juror 14, excused.  Juror 16, Juror 19, and Juror 20, excused.  Juror 21, excused.  Juror 31, excused.  Juror 33, excused.  Juror 43, excused.  Juror 48, excused.  Juror 50, excused.  Juror 56, excused.  And that's it.

So the folks who should be coming back tomorrow, and that's at 2:00, please be prompt, are the following people: Juror 3, Juror 4, Juror 7, Juror 8, Juror 9, Juror 10, Juror 12, Juror 15, Juror 18, Juror 23, Juror 26, Juror 27, Juror 28, Juror 32, Juror 36, Juror 39, Juror 40, Juror 42, Juror 44, Juror 45, Juror 46, Juror 47, Juror 49, Juror 52, Juror 53, and Juror 61.

Does anybody have any questions about whether they are excused or need to return tomorrow?

Okay.  All right.  So for those who have been excused, thank you for your service for being here the last couple of days.  Please return one final time to the jury selection room

just to receive any outgoing paperwork.

For those who must return tomorrow, please make sure you're on time and that you come at 2:00.  I will again be very clear about the Court's instructions not to discuss this case with anyone or to discuss -- or to let anybody discuss it with you.  There shall be no investigation or research or review or looking up anything about the case on any media or other forum.  And there should be no discussion or association with, of course, any of the attorneys or parties or witnesses in the case.

So with all of those important instructions, let's rise for the jury.  And have a pleasant evening.  We will see the remaining jurors tomorrow.

A PROSPECTIVE JUROR:  Paddles here or --

THE COURT:  Oh, paddles stay.  Thank you.

(The venire exited the courtroom.)

THE COURT:  All right.  Please have a seat.

We will begin the day tomorrow at 8:30 with all the remaining jurors from Groups 2 and 3.  By my count, I think we have 70 still left in that pool, which means they won't all fit in the courtroom at one time.  So we're going to do as I initially instructed in the order and deal with the first 60.  If at that point there becomes a need to do further voir dire with the ten folks who are waiting, then we will do that.  But for now, the morning session will be with the Groups 2 and 3

combined, all of the still-eligible folks to be addressed there with more substantive questions.  And then the Group 1 still-eligible jurors come back at 2:00.

Any questions or issues regarding jury selection?

MR. SHIPLEY:  Not regarding jury selection, Your Honor, but I did need to put on the record and again ask for the Court's assistance with regard to the gratuitous comments from the defendant.

As Your Honor will remember when you asked the question to the jury about whether they could set aside any feelings they may have about firearms and apply the law that a convicted felon is not entitled to have a gun, Mr. Routh coughed. Your Honor graciously offered him water, and that was the occasion for him to announce, gratuitously to the jury -- the exact quote was, Well, that's what happens when you don't sleep; you get sick.

It was audible, deliberate, and an escalation of exactly what happened yesterday.  We are going down this path. He is not going to adhere to the very rules that I think in a couple of instances he referenced was important for the Court to follow.

THE COURT:  Okay.  Mr. Routh, you can't have those sorts of gratuitous outbursts.  If you have a concern to raise with the Court, you can do so outside the presence of the jury. But unless there is something specifically relevant related to

evidence, you can't have those random comments.

Do you understand?

MR. ROUTH: Certainly. I apologize.

THE COURT: Okay. All right. Then tomorrow we will begin normal schedule. Please be here at 8:30.

Any final issues to raise from the defense?

MR. ROUTH: Yes. There was a question that I forgot, so if I could just give that to you really quick. As he mentioned about, you know, can the -- can the jury, you know, presume me innocent even if I have been convicted as a felon. So, you know, I think if you could add that to the questions as far as, you know, considering the fact that I'm a felon, if they can be fair and impartial given that fact.

THE COURT: Okay. So you're asking me to add this to the questions for the Group 2 and 3 jurors?

MR. ROUTH: Yes, yes, yes. Yes, yes. You had asked earlier if I had questions, and I had forgotten that question. I'm sorry.

THE COURT: Okay. I will ask a version of that question tomorrow morning with the remaining jurors. But I will say that I think the colloquy with the Group 1 jurors was very thorough, and there is no need to retread that ground with them. But I will, as a courtesy, let you ask this question out of turn, even though you have been given multiple chances to present your questions on a timely basis.

Okay.

MR. ROUTH:  Thank you.

THE COURT:  All right.  With no additional issues to address, have a nice evening.  We will start again at 8:30. Thank you.

(These proceedings concluded at 5:43 p.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate

transcription of the proceedings in the above-entitled matter.


DATE:   09-09-2025          /s/Laura Melton
                            LAURA E. MELTON, RMR, CRR, FPR
                            Official Court Reporter
                            United States District Court
                            Southern District of Florida
                            Fort Pierce, Florida

**$**

**$25,000** [1]‗ - 111:21

**1**

**1** [36]‗ - 9:12‗, 16:22‗, 16:23‗, 17:13‗, 17:14‗, 35:24‗, 73:15‗, 83:2‗, 95:22‗, 96:11‗, 96:12‗, 133:14‗, 157:18‗, 160:1‗, 162:17‗, 179:2‗, 181:17‗, 184:20‗, 185:10‗, 185:12‗, 186:4‗, 186:14‗, 205:24‗, 207:5‗, 207:15‗, 218:13‗, 219:4‗, 233:25‗, 234:5‗, 234:10‗, 234:13‗, 234:15‗, 244:16‗, 245:9‗, 247:2‗, 248:21

**1,800** [1]‗ - 111:16

**1/2-year-old** [1]‗ - 107:24

**10** [3]‗ - 163:15‗, 167:6‗, 245:16

**100** [3]‗ - 121:20‗, 226:14‗, 226:23

**101** [5]‗ - 20:17‗, 31:14‗, 71:17‗, 71:25‗, 81:6

**104** [6]‗ - 20:17‗, 32:3‗, 32:25‗, 72:2‗, 72:8‗, 81:7

**106** [7]‗ - 47:13‗, 49:16‗, 49:17‗, 72:11‗, 72:13‗, 72:16‗, 81:7

**107** [7]‗ - 20:17‗, 33:1‗, 33:25‗, 72:18‗, 73:1‗, 78:23‗, 81:7

**1099** [2]‗ - 103:13‗, 141:3

**10:00** [1]‗ - 59:5

**10:10** [1]‗ - 61:16

**10:11** [1]‗ - 61:6

**10:30** [2]‗ - 61:7‗, 61:14

**10:31** [1]‗ - 61:16

**10:58** [1]‗ - 80:13

**11** [3]‗ - 193:17‗, 196:24‗, 197:4

**110** [6]‗ - 20:17‗, 34:1‗, 35:12‗, 73:3‗, 73:9‗, 81:7

**111** [10]‗ - 20:17‗, 21:18‗, 21:19‗, 35:13‗, 36:2‗, 73:14‗, 73:22‗, 74:1‗, 74:7‗, 74:12

**111's** [1]‗ - 73:20

**113** [13] - 21:23‗, 21:24‗,

22:10‗, 36:3‗, 53:13‗, 53:21‗, 53:23‗, 73:13‗, 73:24‗, 74:13‗, 74:25‗, 75:3‗, 81:7

**114** [6]‗ - 22:11‗, 36:18‗, 75:5‗, 75:17‗, 75:18‗, 81:8

**115** [6]‗ - 20:17‗, 37:18‗, 75:20‗, 75:21‗, 76:4‗, 81:8

**119** [9]‗ - 21:21‗, 38:12‗, 39:3‗, 76:7‗, 76:8‗, 76:9‗, 76:11‗, 76:13‗, 81:8

**11:00** [4]‗ - 31:9‗, 37:22‗, 80:8‗, 116:5

**11:07** [1]‗ - 80:13

**11:17** [1]‗ - 83:6

**11:20** [2]‗ - 82:15‗, 82:24

**11:30** [1]‗ - 82:25

**11:31** [1]‗ - 83:6

**12** [2]‗ - 33:22‗, 245:17

**12-year-old** [1]‗ - 33:3

**121** [1]‗ - 62:1

**122** [6]‗ - 120:22‗, 121:1‗, 121:23‗, 138:20‗, 138:24‗, 158:17

**123** [5]‗ - 100:4‗, 100:16‗, 139:1‗, 139:5‗, 158:17

**124** [4]‗ - 100:4‗, 101:7‗, 149:16‗, 150:5

**125** [8]‗ - 100:4‗, 101:21‗, 103:1‗, 128:1‗, 139:7‗, 139:12‗, 139:17‗, 158:17

**126** [3]‗ - 140:2‗, 140:5‗, 140:16

**127** [3]‗ - 137:24‗, 158:17

**129** [6]‗ - 134:24‗, 135:4‗, 136:2‗, 150:8‗, 150:20‗, 151:3

**12:58** [2]‗ - 137:17‗, 137:20

**13** [7]‗ - 163:15‗, 168:4‗, 235:1‗, 235:8‗, 236:3‗, 236:5‗, 245:10

**131** [11]‗ - 100:5‗, 103:3‗, 139:20‗, 139:24‗, 140:1‗, 140:19‗, 140:20‗, 140:23‗, 151:5‗, 151:7‗, 158:18

**132** [5]‗ - 100:5‗, 103:11‗, 141:1‗, 141:7‗, 158:18

**134** [2]‗ - 141:16‗, 141:22

**136** [6]‗ - 100:5‗, 103:22‗, 104:19‗, 141:9‗, 141:15‗, 158:18

**14** [7]‗ - 145:9‗, 193:17‗, 197:5‗, 236:8‗, 236:21‗, 236:25‗, 245:10

**140** [6]‗ - 100:5‗, 104:20‗, 141:24‗, 142:5‗, 151:9‗, 158:18

**141** [7]‗ - 142:9‗, 142:15‗, 142:16‗, 142:19‗, 142:24‗, 158:18

**142** [6]‗ - 100:5‗, 105:11‗, 143:2‗, 143:5‗, 143:6‗, 151:11

**143** [4]‗ - 100:5‗, 106:18‗, 151:18‗, 152:12

**145** [7]‗ - 100:6‗, 107:16‗, 108:17‗, 143:23‗, 143:25‗, 144:3‗, 158:19

**147** [2]‗ - 100:6‗, 108:19

**15** [14]‗ - 17:16‗, 18:9‗, 96:7‗, 96:24‗, 97:8‗, 208:12‗, 208:14‗, 208:17‗, 208:24‗, 209:16‗, 221:5‗, 221:9‗, 221:23‗, 245:17

**151** [4]‗ - 100:6‗, 109:9‗, 109:23‗, 152:14

**152** [7]‗ - 100:6‗, 109:24‗, 110:10‗, 144:7‗, 144:15‗, 144:19‗, 158:19

**154** [3]‗ - 153:3‗, 153:14‗, 158:19

**156** [5]‗ - 100:7‗, 110:11‗, 144:21‗, 145:2‗, 158:19

**157** [2]‗ - 100:7‗, 111:11

**158** [1]‗ - 153:18

**15th** [14]‗ - 17:2‗, 17:9‗, 18:1‗, 95:25‗, 96:14‗, 101:24‗, 102:5‗, 102:7‗, 102:12‗, 102:13‗, 102:15‗, 186:11

**16** [18]‗ - 145:9‗, 155:14‗, 180:2‗, 180:3‗, 180:10‗, 183:14‗, 189:19‗, 190:12‗, 190:19‗, 191:4‗, 191:17‗, 193:17‗, 198:18‗, 200:17‗, 207:7‗, 237:5‗, 237:10‗, 245:10

**160** [6]‗ - 100:7‗, 112:18‗, 113:24‗, 145:4‗, 145:17‗, 158:19

**161** [8]‗ - 124:22‗, 124:24‗, 145:20‗, 145:22‗, 146:1‗, 146:5‗, 154:8‗, 154:24

**162** [3]‗ - 155:2‗, 155:16‗,

156:4

**163** [8]‗ - 98:24‗, 99:1‗, 133:10‗, 135:6‗, 146:11‗, 146:13‗, 146:16‗, 158:20

**164** [6]‗ - 100:7‗, 113:25‗, 116:8‗, 146:18‗, 146:25‗, 158:20

**165** [3]‗ - 147:1‗, 147:6‗, 158:20

**167** [5]‗ - 122:9‗, 122:11‗, 147:8‗, 147:14‗, 158:20

**168** [2]‗ - 156:7‗, 156:19

**16th** [1]‗ - 122:20

**17** [3]‗ - 144:11‗, 208:12‗, 209:9

**170** [7]‗ - 100:7‗, 116:9‗, 147:16‗, 147:20‗, 147:24‗, 156:21‗, 158:20

**172** [3]‗ - 138:4‗, 138:5‗, 138:11

**174** [5]‗ - 100:7‗, 116:20‗, 148:2‗, 148:9‗, 158:21

**175** [5]‗ - 100:7‗, 117:4‗, 117:19‗, 156:21‗, 157:4

**177** [5]‗ - 100:7‗, 117:20‗, 148:10‗, 148:15‗, 158:21

**178** [7]‗ - 100:7‗, 118:14‗, 118:15‗, 119:23‗, 148:16‗, 148:22‗, 158:21

**18** [10]‗ - 208:20‗, 209:14‗, 209:16‗, 209:17‗, 223:3‗, 223:5‗, 242:1‗, 242:8‗, 242:16‗, 245:17

**180** [7]‗ - 100:7‗, 119:24‗, 120:19‗, 148:24‗, 149:12‗, 157:8‗, 158:21

**18th** [4]‗ - 120:25‗, 121:5‗, 121:6‗, 138:21

**19** [11]‗ - 22:20‗, 80:4‗, 183:17‗, 193:17‗, 200:18‗, 237:11‗, 237:14‗, 237:16‗, 237:23‗, 237:25‗, 245:10

**19th** [2]‗ - 173:18‗, 173:20

**1:00** [1]‗ - 116:4

**1:01** [2]‗ - 137:12‗, 137:17

**1:12** [2]‗ - 137:18‗, 137:20

**1:41** [1]‗ - 157:22

**1:49** [1]‗ - 157:22

**1st** [8]‗ - 20:2‗, 35:17‗, 74:2‗, 99:16‗, 101:11‗, 108:22‗, 149:17‗, 149:19

## 2

**2** [17]_ - 2:20_, 2:22_, 61:8_, 61:20_, 61:23_, 62:23_, 74:9_, 76:17_, 76:20_, 79:15_, 80:10_, 109:3_, 244:17_, 246:19_, 246:25_, 248:15

**20** [11]_ - 22:20_, 166:17_, 168:10_, 210:5_, 210:6_, 210:8_, 216:24_, 217:3_, 237:12_, 245:11

**2001** [1]_ - 166:17

**2003** [1]_ - 164:8

**2008** [1]_ - 187:2

**2012** [1]_ - 187:2

**2013** [1]_ - 164:16

**2016** [1]_ - 187:1

**2018** [1]_ - 176:1

**2019** [1]_ - 176:2

**2021** [1]_ - 173:16

**2024** [10]_ - 17:2_, 17:9_, 17:16_, 18:1_, 18:9_, 95:25_, 96:7_, 96:14_, 96:24_, 97:8

**20s** [1]_ - 233:8

**21** [16]_ - 153:18_, 153:22_, 154:5_, 154:6_, 156:7_, 163:15_, 170:15_, 210:15_, 211:4_, 223:22_, 223:23_, 224:6_, 225:3_, 243:15_, 244:8_, 245:11

**21st** [1]_ - 22:21

**22** [18]_ - 68:15_, 68:19_, 144:11_, 145:10_, 145:15_, 147:11_, 149:6_, 153:3_, 154:4_, 156:8_, 207:17_, 207:22_, 207:23_, 208:3_, 210:2_, 210:6_, 210:15_, 220:5

**22nd** [2]_ - 34:16_, 37:22

**23** [3]_ - 144:11_, 190:12_, 245:17

**23rd** [1]_ - 37:23

**24** [2]_ - 210:2_, 210:6

**24-80116** [3]_ - 4:14_, 83:15_, 161:8

**24-cr-80116** [1]_ - 2:21

**24th** [1]_ - 37:24

**25** [5]_ - 136:14_, 150:20_, 152:15_, 172:18_, 233:9

**26** [4]_ - 147:11_, 213:5_, 213:13_, 245:17

**26th** [2]_ - 38:1_, 141:17

**27** [1]_ - 245:17

**28** [4]_ - 163:15_, 171:8_, 190:12_, 245:18

**28th** [2]_ - 26:3_, 26:8

**2:00** [9]_ - 83:1_, 137:14_, 161:3_, 244:16_, 244:19_, 245:6_, 245:15_, 246:3_, 247:3

**2:30** [2]_ - 29:1_, 107:25

**2:45** [3]_ - 137:14_, 159:25_, 161:2

**2:55** [1]_ - 161:3

**2nd** [2]_ - 108:22_, 109:4

## 3

**3** [14]_ - 17:15_, 82:16_, 83:4_, 96:13_, 157:20_, 181:23_, 193:17_, 193:25_, 244:18_, 245:16_, 246:19_, 246:25_, 248:15

**30th** [2]_ - 67:24_, 211:18

**31** [15]_ - 163:15_, 171:24_, 190:12_, 190:20_, 191:3_, 191:4_, 191:14_, 191:16_, 193:17_, 201:12_, 201:16_, 238:2_, 238:5_, 238:9_, 245:11

**32** [5]_ - 163:15_, 172:16_, 173:9_, 190:12_, 245:18

**33** [9]_ - 187:17_, 187:21_, 193:17_, 202:4_, 202:7_, 238:11_, 238:14_, 238:16_, 245:12

**34** [4]_ - 207:18_, 207:22_, 207:24_, 207:25

**36** [5]_ - 66:1_, 163:15_, 173:10_, 174:24_, 245:18

**39** [3]_ - 163:15_, 174:25_, 245:18

**3:30** [4]_ - 24:25_, 31:17_, 33:4_, 63:10

**3:43** [1]_ - 192:14

**3rd** [6]_ - 109:13_, 109:18_, 109:19_, 152:20_, 152:22_, 152:24

## 4

**4** [19]_ - 17:24_, 96:22_, 107:24_, 182:5_, 182:8_, 207:17_, 207:22_, 211:7_,

211:11_, 211:14_, 212:23_, 212:24_, 213:2_, 219:24_, 240:19_, 241:4_, 245:16

**4-year-old** [1]_ - 144:4

**40** [8]_ - 163:15_, 175:24_, 211:6_, 211:14_, 217:6_, 217:25_, 218:6_, 245:18

**42** [8]_ - 163:16_, 176:17_, 211:16_, 211:21_, 227:10_, 228:14_, 231:8_, 245:18

**43** [10]_ - 177:10_, 193:18_, 203:5_, 204:10_, 238:20_, 239:2_, 242:19_, 242:22_, 242:25_, 245:12

**44** [1]_ - 245:19

**45** [1]_ - 245:19

**45-minute** [1]_ - 157:18

**46** [13]_ - 212:3_, 212:9_, 212:20_, 228:17_, 228:18_, 228:21_, 228:24_, 231:7_, 231:12_, 231:16_, 243:3_, 243:13_, 245:19

**47** [1]_ - 245:19

**48** [11]_ - 183:25_, 190:12_, 190:22_, 191:4_, 191:20_, 193:18_, 204:11_, 204:15_, 239:5_, 239:11_, 245:12

**49** [1]_ - 245:19

**4:22** [1]_ - 216:21

**4:25** [1]_ - 216:18

**4:35** [1]_ - 216:19

**4:46** [1]_ - 216:21

**4th** [1]_ - 25:20

## 5

**5** [24]_ - 18:7_, 28:23_, 97:5_, 162:19_, 163:15_, 163:17_, 163:25_, 182:11_, 190:12_, 190:22_, 191:3_, 191:4_, 191:8_, 193:17_, 195:5_, 196:23_, 212:23_, 212:24_, 213:2_, 217:11_, 234:18_, 234:20_, 245:9

**50** [11]_ - 194:18_, 212:22_, 213:2_, 217:6_, 217:11_, 217:16_, 217:19_, 239:14_, 239:19_, 239:24_, 245:13

**50's** [1]_ - 217:14

**52** [2]_ - 190:12_, 245:19

**53** [3]_ - 163:16_, 177:14_, 245:20

**56** [15]_ - 213:4_, 213:13_, 213:17_, 228:15_, 228:18_, 228:19_, 228:24_, 229:6_, 229:9_, 230:24_, 231:11_, 240:3_, 240:10_, 245:13

**5:00** [1]_ - 236:15

**5:26** [1]_ - 244:23

**5:29** [1]_ - 244:20

**5:30** [6]_ - 20:3_, 24:7_, 33:21_, 99:17_, 197:13_, 198:5

**5:31** [1]_ - 244:23

**5:43** [1]_ - 249:6

**5th** [2]_ - 35:17_, 35:25

## 6

**6** [1]_ - 28:23

**60** [1]_ - 246:22

**61** [8]_ - 190:12_, 206:3_, 206:8_, 207:14_, 231:6_, 231:7_, 232:23_, 245:20

**62** [5]_ - 39:15_, 39:18_, 40:21_, 61:24_, 62:1

**64** [6]_ - 20:14_, 22:13_, 22:15_, 62:24_, 63:5_, 81:4

**69** [5]_ - 20:14_, 24:3_, 63:7_, 63:16_, 81:4

**6:00** [2]_ - 28:15_, 36:15

## 7

**7** [1]_ - 245:16

**7-year-old** [2]_ - 198:6_, 236:16

**70** [1]_ - 246:20

**71** [6]_ - 39:15_, 41:20_, 41:21_, 63:17_, 63:24_, 81:4

**74** [7]_ - 20:14_, 25:6_, 39:13_, 40:23_, 63:25_, 64:7_, 81:4

**75** [2]_ - 37:3_, 116:14

**75-mile** [1]_ - 36:20

**76** [6]_ - 59:16_, 59:18_, 62:2_, 76:25_, 77:2_, 77:3

**77** [5]_ - 20:14_, 26:1_,

64:10_, 64:18_, 81:4
**78** [2]_ - 77:4_, 78:4
**79** [8]_ - 20:14_, 26:21_, 39:15_, 43:10_, 43:16_, 64:19_, 64:24_, 81:5
**7:00** [6]_ - 31:9_, 108:9_, 108:10_, 194:17_, 194:19 _, 198:5
**7:30** [1]_ - 236:15
**7:50** [1]_ - 194:20
**7th** [3]_ - 26:3_, 70:14

**8**

**8** [3]_ - 241:12_, 241:21_, 245:16
**80** [4]_ - 45:21_, 64:25_, 65:5, 81:5
**81** [5]_ - 20:14_, 27:11_, 65:6, 65:15_, 81:5
**82** [8]_ - 65:16_, 65:17_, 65:20_, 66:4, 66:5_, 66:6 _, 66:14_, 81:5
**82's** [1]_ - 65:23
**83** [5]_ - 20:14_, 28:1_, 66:17_, 66:21_, 81:5
**84** [9]_ - 20:14_, 28:19_, 29:15_, 29:18_, 29:19_, 67:6_, 67:9_, 68:2_, 81:5
**85** [4]_ - 68:4_, 68:13_, 68:22_, 81:6
**86** [7]_ - 22:1_, 29:20_, 66:22_, 67:3_, 67:5_, 68:23_, 81:6
**87** [2]_ - 79:19_, 80:3
**88-year-old** [1]_ - 107:20
**8:00** [5]_ - 14:1_, 34:19_, 194:20_, 194:24_, 195:1
**8:15** [2]_ - 194:24_, 195:1
**8:30** [12]_ - 80:24_, 92:21_, 158:5_, 158:14_, 159:2_, 159:17_, 244:15_, 244:16 _, 244:18_, 246:18_, 248:5_, 249:4
**8:31** [1]_ - 4:1
**8:41** [1]_ - 4:1
**8th** [1]_ - 38:1

**9**

**9** [5]_ - 28:25_, 163:15_, 166:9_, 166:12_, 245:16

**9/15** [3]_ - 116:24_, 139:8_, 148:3
**92** [5]_ - 43:22_, 69:4_, 69:8_, 69:17_, 70:5
**94** [7]_ - 22:10_, 30:15_, 31:13_, 69:2_, 70:8_, 70:19_, 81:6
**98** [7]_ - 70:23_, 70:24_, 71:8_, 78:6_, 78:10_, 78:20_, 81:6
**99** [6]_ - 70:21_, 71:10_, 71:12_, 71:13_, 71:14_, 81:6
**9:00** [3]_ - 20:3_, 37:23_, 99:17

**A**

**a.m** [17]_ - 4:1_, 14:1_, 31:9_, 34:19_, 37:23_, 61:16_, 80:13_, 80:24_, 83:6_, 92:21_, 158:5_, 194:20_, 198:5
**Aaron** [2]_ - 51:13_, 126:3
**abide** [1]_ - 134:6
**abiding** [1]_ - 86:11
**abilities** [2]_ - 39:9_, 162:23
**ability** [51]_ - 40:12_, 41:11_, 45:19_, 48:16_, 57:7_, 69:21_, 74:4_, 111:6_, 122:5_, 131:11_, 137:2_, 150:3_, 160:21_, 167:2_, 167:25_, 169:12_, 170:2_, 170:12_, 171:1_, 172:13_, 173:7_, 174:2_, 174:13_, 174:17_, 175:7_, 176:13_, 177:6_, 178:6_, 191:10_, 192:2_, 194:10_, 195:25_, 198:2_, 199:6_, 199:16_, 200:9_, 202:15_, 202:22_, 203:20_, 204:19 _, 206:10_, 222:15_, 223:14_, 226:18_, 228:7_, 229:17_, 229:23_, 230:6_, 232:8_, 233:12_, 235:3
**able** [38]_ - 33:17_, 43:5_, 43:20_, 56:19_, 58:17_, 59:1_, 59:16_, 69:9_, 70:18_, 93:21_, 106:13_, 110:23_, 114:5_, 116:6_, 143:11_, 143:15_, 143:17 _, 151:16_, 156:11_, 156:22_, 160:18_, 162:5_, 165:16_, 178:14_, 183:9_, 183:22_, 184:15_, 185:18

_, 194:15_, 194:23_, 195:19_, 196:20_, 197:15 _, 197:20_, 212:6_, 212:14_, 219:13_, 236:13
**absence** [4]_ - 70:4_, 106:7_, 119:11_, 149:11
**absolute** [3]_ - 8:9_, 87:9 _, 243:10
**absolutely** [4]_ - 40:14_, 150:16_, 226:12_, 226:16
**abundance** [1]_ - 211:25
**abuse** [3]_ - 79:21_, 153:19_, 153:24
**abused** [1]_ - 79:19
**abuses** [1]_ - 200:15
**academy** [1]_ - 175:4
**accept** [1]_ - 132:23
**acceptable** [3]_ - 58:14_, 132:17
**accepted** [1]_ - 150:21
**accepting** [9]_ - 53:10_, 55:1_, 55:10_, 58:6_, 127:24_, 128:13_, 129:8_, 129:18_, 132:9
**access** [2]_ - 28:5_, 36:21
**accommodate** [2]_ - 75:11_, 112:14
**accommodations** [2]_ - 69:11_, 211:19
**accomplish** [1]_ - 185:6
**according** [1]_ - 155:6
**account** [3]_ - 17:20_, 96:18_, 131:10
**accounted** [1]_ - 22:10
**accounts** [1]_ - 111:21
**accreditation** [1]_ - 35:8
**accurate** [1]_ - 222:19
**accusation** [4]_ - 10:3_, 16:14_, 88:23_, 95:11
**accusatory** [2]_ - 52:21_, 127:11
**accused** [4]_ - 16:12_, 52:2_, 95:9_, 126:15
**accuser** [2]_ - 54:6_, 128:14
**achieve** [3]_ - 8:3_, 15:1_, 194:25
**acknowledging** [2]_ - 3:12_, 157:2
**acquaintance** [1]_ - 138:8
**acquired** [1]_ - 170:10

**Act** [1]_ - 205:4
**act** [2]_ - 54:22_, 129:5
**acting** [2]_ - 12:25_, 91:19
**action** [1]_ - 4:9
**active** [2]_ - 33:5_, 55:18
**actively** [1]_ - 208:2
**activities** [2]_ - 72:22_, 107:22
**activity** [2]_ - 192:1_, 223:8
**actual** [3]_ - 209:22_, 211:2_, 226:1
**ad** [3]_ - 111:19_, 111:20_, 112:6
**Adam** [2]_ - 49:20_, 124:3
**add** [4]_ - 15:18_, 22:1_, 248:11_, 248:14
**adding** [1]_ - 154:13
**addition** [3]_ - 60:10_, 178:4_, 190:14
**additional** [53]_ - 3:13_, 14:1_, 14:7_, 38:9_, 43:16 _, 45:5_, 46:20_, 48:24_, 48:25_, 49:19_, 54:3_, 63:11_, 71:6_, 74:10_, 74:22_, 74:23_, 76:19_, 77:25_, 79:12_, 91:17_, 92:22_, 92:24_, 93:6_, 99:5_, 99:19_, 121:24_, 122:25_, 133:10_, 139:11 _, 151:1_, 156:2_, 178:11 _, 183:19_, 187:22_, 188:10_, 189:4_, 192:4_, 205:22_, 210:13_, 211:4_, 212:1_, 213:14_, 214:22_, 216:11_, 217:8_, 217:22_, 224:11_, 227:18_, 228:17 _, 234:7_, 240:13_, 240:15_, 249:3
**additionally** [1]_ - 28:9
**address** [18]_ - 3:19_, 7:4 _, 10:19_, 12:23_, 19:20_, 21:15_, 43:20_, 44:23_, 61:10_, 69:4_, 82:19_, 86:8_, 92:18_, 99:21_, 137:19_, 189:5_, 206:8_, 249:4
**addressed** [7]_ - 68:23_, 146:12_, 163:7_, 206:18_, 239:25_, 247:1
**addressing** [4]_ - 3:4_, 6:18_, 43:13_, 85:24
**adequate** [2]_ - 160:23
**adequately** [2]_ - 43:14_, 160:21

**adhere** [1] - 247:19

**adjustments** [1] - 44:5

**admin** [1] - 28:3

**admission** [1] - 68:10

**admonition** [2] - 224:13, 224:17

**admonitions** [1] - 134:15

**advance** [4] - 14:16, 94:10, 94:16, 144:8

**adverse** [1] - 41:18

**adversely** [2] - 9:21, 88:19

**advise** [4] - 12:16, 14:11, 138:9, 157:16

**advised** [1] - 224:6

**advising** [1] - 46:19

**advocate** [2] - 173:20, 174:6

**aerobics** [1] - 120:7

**affairs** [4] - 15:18, 54:23, 94:12, 129:6

**affect** [44] - 12:22, 48:15, 57:21, 91:16, 111:2, 118:21, 122:4, 145:23, 150:2, 150:17, 165:23, 166:2, 167:2, 167:25, 169:12, 170:2, 170:12, 170:25, 172:13, 173:7, 175:7, 176:13, 177:6, 178:6, 191:10, 192:1, 194:9, 198:2, 199:6, 200:9, 202:15, 203:20, 214:20, 220:17, 222:15, 223:14, 228:7, 229:17, 230:6, 230:20, 233:12, 233:17, 235:3, 238:23

**affecting** [2] - 18:4, 97:2

**affiliation** [1] - 150:21

**affirm** [4] - 4:21, 83:21, 151:16, 161:13

**affirmation** [1] - 150:22

**affirmatively** [1] - 201:17

**affirmed** [2] - 143:17, 157:5

**afford** [1] - 95:3

**afloat** [1] - 113:16

**afraid** [2] - 41:2, 104:12

**after-hours** [2] - 106:12, 232:7

**afternoon** [49] - 99:20, 103:23, 104:21, 104:22, 105:13, 106:20, 107:17, 107:18, 108:21, 109:10, 109:11, 110:12, 110:13, 111:12, 111:13, 112:19, 112:20, 113:25, 116:10, 116:11, 116:21, 116:22, 117:5, 117:6, 118:12, 119:25, 122:13, 166:10, 166:11, 167:7, 167:8, 168:6, 170:17, 171:9, 171:10, 171:25, 172:1, 172:17, 180:4, 180:5, 195:8, 197:8, 203:9, 218:15, 220:2, 221:7, 223:5, 225:7, 227:12

**age** [1] - 60:6

**agency** [7] - 34:9, 35:8, 163:7, 163:13, 176:19, 221:19

**Agent** [35] - 49:13, 49:21, 49:23, 49:24, 50:2, 50:3, 50:5, 50:18, 50:21, 50:24, 50:25, 51:6, 51:7, 51:14, 123:8, 123:9, 123:17, 123:19, 123:20, 124:2, 124:4, 124:8, 124:9, 124:10, 124:11, 124:15, 125:4, 125:11, 125:12, 125:14, 125:18, 125:22, 125:23, 126:3

**agent** [11] - 17:20, 36:10, 47:6, 47:8, 49:3, 49:5, 49:6, 50:14, 96:18

**agents** [1] - 154:10

**ago** [18] - 18:19, 18:22, 39:14, 40:4, 58:9, 136:14, 136:25, 150:21, 167:15, 168:10, 172:19, 173:6, 176:20, 199:25, 224:6, 233:9, 239:20, 242:5

**agree** [32] - 63:13, 63:22, 64:5, 64:6, 64:15, 64:22, 65:3, 65:4, 65:13, 65:14, 66:19, 66:20, 67:3, 67:4, 68:18, 72:13, 74:25, 142:24, 146:13, 148:14, 149:11, 153:25, 155:16, 186:9, 191:5, 213:15, 234:22, 235:4,

236:2, 239:12, 243:12, 244:2

**agreement** [6] - 7:8, 28:12, 71:15, 86:10, 217:20, 224:10

**ahead** [2] - 92:5, 167:9

**aide** [3] - 114:7, 114:9, 115:9

**Aileen** [2] - 4:10, 83:12

**Airbnbs** [1] - 110:7

**airport** [1] - 30:25

**Alcohol** [5] - 50:5, 51:15, 124:16, 125:5, 126:5

**alert** [2] - 161:23, 201:25

**alerted** [2] - 43:22, 93:5

**alerts** [1] - 41:14

**Alexander** [2] - 51:18, 126:8

**all-clear** [1] - 192:12

**all-star** [1] - 33:5

**allegation** [1] - 186:4

**allegations** [9] - 97:14, 162:15, 162:20, 162:22, 162:23, 182:24, 183:10, 184:4, 202:19

**alleged** [10] - 17:18, 18:9, 95:20, 96:16, 97:7, 150:21, 179:2, 184:6, 186:12, 223:9

**alleges** [11] - 16:23, 16:25, 17:7, 17:15, 52:10, 95:22, 95:24, 96:5, 96:13, 126:23, 184:20

**alleviate** [1] - 37:6

**allotted** [2] - 6:24, 7:6

**allow** [4] - 11:4, 89:23, 189:13, 243:24

**allowed** [9] - 58:3, 59:21, 59:25, 60:10, 81:23, 130:19, 134:13, 159:12, 188:23

**allows** [1] - 84:16

**alluded** [1] - 127:3

**almost** [1] - 111:21

**alone** [5] - 73:5, 75:9, 143:14, 147:12, 149:10

**aloof** [1] - 81:25

**altered** [2] - 18:13, 97:11

**Amendment** [1] - 200:13

**America** [3] - 4:13, 83:15, 161:8

**American** [1] - 180:15

**ammunition** [6] - 18:3, 97:1, 179:10, 179:19, 180:1, 180:13

**amount** [1] - 238:17

**analyst** [2] - 49:2, 123:11

**and..** [1] - 153:6

**announce** [3] - 193:2, 244:12, 247:14

**annual** [3] - 26:13, 26:17, 64:13

**anonymization** [2] - 9:21, 88:18

**answer** [28] - 4:22, 15:22, 16:4, 38:24, 43:14, 43:25, 57:2, 68:19, 80:2, 83:22, 98:12, 107:12, 113:22, 116:24, 145:15, 150:17, 161:14, 163:11, 207:19, 207:22, 212:17, 213:4, 213:13, 219:4, 220:8, 239:13, 242:21, 243:25

**answered** [14] - 20:9, 135:8, 163:10, 188:13, 190:23, 201:17, 206:3, 207:17, 208:25, 209:6, 221:10, 241:5, 242:14, 244:1

**answers** [11] - 6:11, 15:25, 16:6, 85:17, 95:2, 162:9, 162:14, 212:22, 212:23, 218:16, 223:6

**anticipate** [2] - 100:13

**anticipated** [14] - 10:21, 14:4, 19:20, 20:8, 47:5, 89:15, 89:17, 93:4, 99:11, 99:15, 99:22, 101:16, 107:19, 118:24

**anyhow** [1] - 154:22

**anyway** [2] - 56:10, 140:14

**apex** [1] - 200:2

**apologies** [2] - 193:21, 224:4

**apologize** [4] - 158:24, 237:15, 239:15, 248:3

**app** [1] - 82:6

**apparent** [1] - 148:24

**appear** [2] - 207:23, 208:1

**appearances** [1] - 2:2

**appeared** [1] - 142:9

**application** [3] - 133:24, 159:8, 222:11

**applies** [1] - 105:9

**apply** [4] - 131:22, 132:23, 186:22, 247:11

**applying** [2] - 130:21, 222:12

**appointed** [5] - 12:19, 13:3, 91:12, 91:22, 180:21

**appointment** [12] - 34:5, 34:17, 37:21, 116:24, 119:18, 122:17, 122:18, 147:13, 148:3, 148:18, 155:18, 156:1

**appointments** [3] - 40:18, 64:21, 75:24

**appreciate** [2] - 74:7, 200:14

**apprehensive** [2] - 5:23, 85:4

**appropriate** [6] - 3:6, 57:10, 68:11, 78:1, 224:15, 235:25

**approval** [2] - 7:9, 86:10

**approved** [1] - 27:7

**April** [2] - 102:5, 102:15

**area** [2] - 104:6, 104:9

**areas** [3] - 14:2, 14:5, 14:8

**arrange** [2] - 15:24, 94:21

**arrangement** [2] - 24:15, 43:4

**arrangements** [9] - 23:5, 23:15, 35:20, 106:7, 110:4, 114:16, 144:8, 152:9, 197:16

**arrest** [2] - 147:2, 217:12

**arrested** [4] - 128:8, 135:12, 181:21, 181:25

**arrests** [1] - 217:13

**arrival** [2] - 161:5, 162:2

**arrived** [1] - 87:15

**arriving** [2] - 3:23, 82:16

**arrogant** [2] - 60:14, 81:25

**arteries** [2] - 116:25, 148:5

**arthritis** [1] - 44:2

**articulating** [1] - 212:11

**aside** [6] - 178:14, 183:10, 183:22, 184:16, 189:17, 247:10

**aspects** [2] - 7:19, 86:20

**assassinate** [2] - 184:21, 185:15

**assassination** [7] - 16:23, 95:23, 162:18, 185:9, 185:12, 186:5, 186:23

**assault** [4] - 17:15, 17:18, 96:13, 96:16

**assemble** [5] - 82:18, 84:5, 193:9, 193:15, 216:7

**assembled** [1] - 4:7

**assembling** [1] - 244:21

**assembly** [10] - 59:8, 59:21, 61:1, 80:21, 133:5, 157:20, 158:9, 192:15, 193:20, 205:16

**assert** [1] - 92:1

**assess** [1] - 137:15

**assigned** [1] - 112:3

**assist** [9] - 6:5, 13:4, 25:2, 35:1, 85:11, 91:23, 102:19, 197:16, 228:25

**assistance** [8] - 13:5, 13:7, 30:21, 90:13, 91:24, 91:25, 144:5, 247:7

**assistant** [9] - 12:2, 12:5, 12:7, 90:21, 90:24, 91:2, 100:18, 116:14, 139:4

**assisted** [2] - 107:21, 107:23

**assists** [1] - 105:24

**associated** [7] - 9:19, 11:9, 57:15, 60:11, 88:17, 90:2, 136:21

**associates** [9] - 32:15, 98:16, 99:3, 163:20, 168:12, 171:17, 172:8, 175:9, 176:21

**association** [2] - 123:23, 246:8

**assume** [4] - 108:15, 166:20, 176:8, 176:24

**assuming** [1] - 77:1

**assure** [1] - 5:23

**assured** [1] - 85:4

**ATF** [4] - 125:2, 154:9, 154:11, 154:16

**attack** [3] - 122:14, 147:9, 147:13

**attempt** [3] - 17:4, 96:2, 184:23

**attempted** [8] - 16:23, 95:23, 162:17, 184:21, 186:5, 186:23, 202:19, 225:9

**attempting** [1] - 185:5

**attend** [1] - 145:24

**attendance** [3] - 80:21, 158:9, 158:23

**attends** [1] - 110:1

**attention** [25] - 8:3, 14:15, 46:12, 47:1, 70:18, 72:4, 81:17, 88:13, 94:7, 106:13, 111:7, 117:16, 143:11, 151:12, 181:15, 189:24, 199:7, 203:17, 224:9, 225:8, 227:24, 232:8, 239:3, 239:18, 245:3

**attentive** [1] - 100:11

**attorney** [11] - 12:2, 12:5, 12:7, 12:9, 32:5, 32:20, 82:20, 90:21, 90:25, 91:3, 91:5

**attorneys** [18] - 12:13, 12:15, 13:3, 14:4, 16:1, 18:21, 19:1, 19:16, 60:11, 81:24, 91:9, 91:22, 94:24, 99:7, 159:10, 168:15, 175:15, 246:9

**Atwill** [3] - 51:18, 126:8, 160:6

**audible** [1] - 247:17

**audibly** [2] - 6:13, 85:19

**audit** [5] - 34:3, 34:4, 34:9, 34:15, 73:6

**auditing** [3] - 34:14, 34:20, 35:1

**auditor** [1] - 34:15

**audits** [3] - 34:21, 73:4, 73:11

**Austin** [2] - 50:12, 124:18

**autoimmune** [1] - 44:2

**automatically** [1] - 178:20

**availability** [1] - 145:24

**available** [2] - 29:13, 160:9

**avoid** [1] - 88:4

**await** [1] - 133:13

**awaiting** [1] - 217:21

**aware** [5] - 43:3, 91:10, 98:20, 99:4, 138:10

**awkward** [1] - 16:8

**B**

**background** [4] - 227:1, 228:7, 233:16, 243:23

**bad** [4] - 119:17, 188:7, 205:4, 216:3

**bailey** [1] - 47:6

**Bailey** [1] - 123:8

**Baker's** [1] - 205:4

**balance** [3] - 198:23, 199:6, 199:10

**barista** [2] - 22:24, 62:25

**Barrois** [2] - 47:7, 123:8

**BARROIS** [2] - 47:7, 123:9

**base** [6] - 56:13, 184:17, 197:9, 204:19, 214:2, 218:16

**based** [60] - 14:24, 54:18, 61:20, 62:24, 63:7, 63:17, 63:25, 64:7, 64:10, 64:19, 64:25, 65:1, 65:6, 65:22, 66:9, 66:17, 66:22, 68:8, 68:14, 68:19, 68:20, 70:8, 70:22, 73:17, 75:5, 75:20, 76:7, 93:11, 129:1, 138:20, 139:1, 139:7, 139:20, 140:19, 141:9, 142:7, 142:12, 143:3, 143:24, 147:1, 147:8, 147:16, 148:2, 148:10, 150:17, 152:17, 154:20, 179:23,

187:18_, 189:25_, 214:8_, 217:8_, 217:11_, 218:18_, 234:7_, 234:11_, 238:3_, 239:13_, 241:22_, 242:5

**basic** [5]_ - 13:5_, 14:2_, 14:5_, 91:24_, 229:25

**basis** [14]_ - 27:8_, 75:8_, 110:24_, 140:8_, 149:11_, 151:3_, 152:10_, 154:19_, 197:22_, 241:7_, 241:19_, 241:20_, 243:20_, 248:25

**batch** [1]_ - 244:13

**batterers'** [1]_ - 34:13

**Beach** [35]_ - 17:2_, 17:10_, 17:17_, 18:2_, 18:10_, 37:23_, 47:9_, 47:14_, 47:21_, 48:2_, 48:12_, 48:13_, 48:14_, 49:12_, 49:14_, 50:12_, 50:19_, 51:9_, 95:25_, 96:8_, 96:15_, 96:24_, 97:8_, 116:13_, 119:19_, 123:10_, 123:25_, 124:2_, 124:18_, 125:13_, 125:25_, 160:18_, 176:1_, 176:4_, 176:12

**bear** [4]_ - 14:16_, 15:12_, 94:1_, 163:1

**bearing** [6]_ - 12:21_, 91:14_, 162:23_, 187:8_, 210:23_, 215:11

**bearings** [1]_ - 22:13

**bears** [5]_ - 55:5_, 55:24_, 129:13_, 129:19_, 130:5

**becomes** [1]_ - 246:23

**begin** [13]_ - 2:4_, 2:21_, 5:3_, 11:23_, 62:22_, 84:4_, 123:7_, 157:18_, 161:9_, 234:1_, 244:6_, 246:18_, 248:5

**beginning** [5]_ - 52:6_, 81:11_, 109:12_, 126:19_, 234:10

**begins** [2]_ - 109:3_, 109:18

**behalf** [3]_ - 5:4_, 5:5_, 84:7

**behind** [3]_ - 133:11_, 134:19_, 137:13

**belief** [2]_ - 53:25_, 201:19

**beliefs** [9]_ - 78:12_, 149:6_, 179:23_, 207:18_, 208:4_, 210:6_, 210:16_, 220:5_, 220:12

**believability** [2]_ - 57:21

_, 68:21

**believes** [3]_ - 58:12_, 180:15_, 181:7

**bench** [3]_ - 3:21_, 80:9_, 203:24

**Benton** [1]_ - 135:22

**best** [8]_ - 5:24_, 21:5_, 23:7_, 85:5_, 198:10_, 198:14_, 234:9_, 243:10

**better** [5]_ - 40:3_, 40:5_, 62:8_, 135:8_, 194:13

**between** [3]_ - 44:4_, 110:6_, 202:16

**beyond** [17]_ - 10:5_, 16:16_, 52:8_, 52:12_, 54:7_, 54:15_, 54:20_, 55:24_, 82:4_, 88:25_, 95:13_, 126:20_, 126:25_, 128:18_, 128:23_, 129:3_, 130:6

**bias** [4]_ - 48:18_, 57:14_, 74:16_, 131:15

**big** [9]_ - 7:25_, 14:18_, 29:6_, 60:18_, 127:1_, 134:1_, 152:7_, 190:13_, 206:17

**big-picture** [4]_ - 7:25_, 14:18_, 127:1_, 206:17

**bigger** [1]_ - 45:12

**bigger-picture** [1]_ - 45:12

**biggest** [1]_ - 16:3

**bills** [4]_ - 33:7_, 72:20_, 72:22_, 114:5

**biologist** [4]_ - 49:13_, 49:21_, 124:1_, 124:7

**biologist-forensic** [2]_ - 49:21_, 124:7

**BIP** [2]_ - 34:10_, 34:12

**birth** [2]_ - 7:4_, 86:7

**bit** [37]_ - 13:20_, 16:8_, 16:19_, 18:25_, 24:9_, 26:7_, 27:4_, 34:7_, 38:16_, 39:14_, 69:16_, 73:16_, 74:19_, 83:11_, 92:14_, 95:18_, 102:9_, 117:25_, 137:12_, 162:7_, 163:2_, 163:9_, 175:14_, 178:1_, 178:23_, 180:24_, 181:4_, 186:3_, 187:10_, 190:4_, 194:13_, 195:11_, 196:20_, 198:11_, 219:7_, 231:17_, 237:17

**black** [2]_ - 68:9_, 133:20

**black-and-white** [2]_ -

68:9_, 133:20

**Blanford** [5]_ - 11:15_, 11:18_, 90:8_, 90:12_, 174:9

**blended** [1]_ - 176:3

**blood** [6]_ - 39:20_, 40:15_, 40:25_, 64:2_, 230:12_, 240:4

**boat** [1]_ - 218:20

**bomb** [4]_ - 208:21_, 209:19_, 223:10_, 242:3

**book** [1]_ - 110:6

**booked** [3]_ - 23:17_, 26:14_, 26:17

**booking** [1]_ - 121:21

**Boston** [1]_ - 105:16

**bottle** [1]_ - 179:11

**bottom** [1]_ - 6:5

**box** [5]_ - 40:7_, 57:1_, 140:12_, 142:21_, 142:22

**boyfriend** [2]_ - 196:12_, 205:3

**Boynton** [1]_ - 116:13

**Boys** [2]_ - 110:20_, 144:23

**brain** [1]_ - 45:25

**brand** [1]_ - 112:25

**brand-new** [1]_ - 112:25

**brandished** [2]_ - 17:14_, 96:12

**breadwinner** [3]_ - 104:25_, 106:23_, 151:24

**break** [16]_ - 34:6_, 44:7_, 44:16_, 59:6_, 61:7_, 80:11_, 81:14_, 82:18_, 83:3_, 99:18_, 137:15_, 146:12_, 157:15_, 160:25_, 216:6_, 244:21

**breakfast** [3]_ - 136:9_, 137:7_, 150:20

**breaking** [1]_ - 224:21

**breaks** [12]_ - 20:4_, 20:5_, 25:12_, 41:4_, 41:13_, 44:4_, 44:12_, 69:7_, 69:12_, 99:19_, 99:20_, 216:19

**breathe** [1]_ - 196:20

**breathing** [1]_ - 45:25

**Brenden** [2]_ - 49:3_, 123:17

**brewer** [1]_ - 116:13

**brewery** [4]_ - 116:12_,

116:17_, 147:21_, 147:22

**Brewing** [1]_ - 116:18

**brief** [11]_ - 80:11_, 82:18_, 83:3_, 133:11_, 187:18_, 198:21_, 199:21_, 218:15_, 220:3_, 221:8_, 244:21

**briefly** [9]_ - 6:17_, 158:9_, 164:24_, 166:13_, 170:18_, 181:18_, 202:10_, 205:21_, 223:6

**bring** [13]_ - 3:2_, 81:17_, 105:1_, 192:17_, 200:18_, 216:9_, 216:12_, 219:23_, 223:23_, 224:9_, 225:2_, 233:3_, 235:19

**bringing** [1]_ - 10:11

**broad** [2]_ - 14:20_, 100:9

**broadly** [1]_ - 48:15

**Brooks** [8]_ - 47:9_, 47:15_, 47:25_, 48:1_, 48:7_, 48:14_, 123:9

**brother** [5]_ - 166:15_, 167:11_, 172:18_, 172:19_, 173:3

**brother's** [1]_ - 167:1

**brother-in-laws** [1]_ - 167:11

**brothers** [1]_ - 173:3

**brothers'** [1]_ - 167:24

**brought** [6]_ - 3:9_, 10:2_, 88:22_, 139:14_, 225:8_, 239:18

**Browne** [47]_ - 2:6_, 2:24_, 3:9_, 3:11_, 3:14_, 12:5_, 18:22_, 61:10_, 62:17_, 64:9_, 66:16_, 67:9_, 69:22_, 70:7_, 70:20_, 73:2_, 73:24_, 79:4_, 79:16_, 82:19_, 90:24_, 97:22_, 138:18_, 140:18_, 143:1_, 143:22_, 145:3_, 146:10_, 146:17_, 147:15_, 148:23_, 151:22_, 153:21_, 154:18_, 155:5_, 156:12_, 156:24_, 207:12_, 207:20_, 214:12_, 218:1_, 224:12_, 234:8_, 234:25_, 236:7_, 240:12_, 241:14

**BROWNE** [133] - 2:9_, 12:4_, 61:11_, 62:19_, 62:24_, 63:7_, 63:17_, 63:25_, 64:10_, 64:19_, 64:25_, 65:6_, 65:16_, 65:22_, 66:3_, 66:9_,

66:17_, 66:22_, 67:10_, 67:16_, 67:21_, 68:5_, 68:23_, 69:1_, 69:9_, 70:8_, 70:21_, 70:25_, 71:17_, 72:2_, 72:11_, 72:18_, 73:3_, 73:13_, 73:17_, 73:25_, 74:14_, 74:16_, 75:5_, 75:20_, 76:7_, 76:15_, 76:17_, 77:25_, 78:19_, 79:5_, 79:17_, 82:21_, 90:23_, 138:19_, 139:1_, 139:7_, 139:20_, 140:6_, 140:19_, 141:1_, 141:9_, 141:18_, 141:24_, 142:7_, 143:2_, 143:23_, 144:7_, 144:21_, 145:4_, 145:19, 146:11, 146:18_, 147:1_, 147:8_, 147:16_, 148:2, 148:10_, 148:16, 148:24, 149:22_, 150:14_, 151:23_, 153:9_, 153:12_, 153:22_, 154:19, 155:6_, 156:13_, 156:25, 157:14_, 160:4_, 206:2_, 206:13_, 206:16_, 206:19_, 207:14_, 207:23_, 207:25_, 208:4_, 209:5_, 209:13_, 210:23_, 211:11_, 212:10_, 213:16_, 214:15_, 216:15_, 217:7_, 217:10_, 218:2_, 218:10_, 224:13_, 228:16_, 228:22_, 234:9_, 234:18_, 235:1_, 235:18_, 236:8_, 236:10_, 237:5_, 237:11_, 237:15_, 237:17_, 238:2_, 238:11_, 238:20_, 239:5_, 239:14_, 239:17_, 240:3_, 240:13_, 241:5_, 241:15_, 242:13_, 243:7_, 243:20

**built** [1]_ - 136:15

**bulk** [2]_ - 106:23_, 151:24

**bunch** [1]_ - 67:14

**burden** [30]_ - 10:4_, 10:7_, 16:16_, 28:22_, 54:4_, 54:5_, 54:7_, 54:14_, 54:24_, 55:5_, 55:24_, 56:1_, 88:23_, 89:2_, 95:13_, 104:11_, 104:12_, 106:22_, 128:14_, 128:16_, 128:17_, 128:20_, 128:22_, 129:7_, 129:9_, 129:13_, 129:20_, 130:6_, 130:8_, 130:14

**Bureau** [10]_ - 47:7_, 47:8_, 49:4_, 50:5_, 50:11_, 51:15_, 124:15_, 124:17_, 125:5_, 126:4

**business** [19]_ - 19:1_, 19:12_, 38:22_, 38:23_, 98:1_, 104:4_, 105:1_, 113:7_, 136:20_, 147:17_, 203:20_, 203:23_, 211:23_, 212:5_, 227:14_, 227:22_, 232:2_, 242:20_, 243:4

**businesses** [1]_ - 179:6

**busy** [2]_ - 67:14_, 227:14

**but..** [3]_ - 23:8_, 196:20_, 235:6

**Butler** [3]_ - 184:7_, 184:9_, 184:17

## C

**C-corporations** [1]_ - 102:14

**Canada** [2]_ - 38:1_, 38:2

**cancel** [1]_ - 27:2

**canceled** [1]_ - 120:12

**cancelling** [1]_ - 38:19

**cancer** [2]_ - 39:20_, 40:4

**candid** [4]_ - 16:5_, 95:2_, 162:13_, 222:22

**candidate** [16]_ - 16:24_, 17:5_, 17:6_, 95:23_, 96:3_, 162:18_, 179:4_, 184:21_, 186:6_, 186:7_, 186:10_, 186:15_, 186:18_, 186:21_, 186:24_, 202:20

**candor** [2]_ - 45:1_, 137:1

**Cannon** [2]_ - 4:10_, 83:12

**cannot** [16]_ - 68:10_, 119:13_, 130:3_, 132:6_, 132:25_, 133:17_, 133:20_, 145:21_, 156:16_, 159:6_, 160:21_, 187:8_, 187:12_, 187:15_, 227:2_, 230:12

**capacity** [1]_ - 164:19

**capturing** [1]_ - 111:16

**car** [4]_ - 36:21_, 36:22_, 77:2_, 196:16

**care** [7]_ - 24:21_, 32:10_, 107:21_, 107:22_, 119:17_, 155:3_, 188:6

**career** [6]_ - 28:23_, 29:2_, 67:14_, 168:7_, 168:9_, 170:2

**carefully** [6]_ - 54:19_,

81:2_, 81:13_, 123:4_, 128:21_, 129:2

**caregiver** [1]_ - 76:8

**cares** [1]_ - 143:24

**CARF** [5]_ - 34:15_, 35:8_, 35:9

**Caribbean** [2]_ - 42:21_, 109:17

**Caribbean-Haitian** [1]_ - 42:21

**caring** [1]_ - 155:13

**Carolina** [1]_ - 108:2

**carotid** [1]_ - 116:25

**Carrea** [2]_ - 51:20_, 126:10

**carries** [2]_ - 64:2_, 227:21

**carry** [2]_ - 52:5_, 126:18

**cars** [1]_ - 110:7

**Case** [4]_ - 2:21_, 4:13_, 83:15_, 161:8

**case** [172]_ - 4:12_, 4:17_, 4:24_, 5:6_, 5:14_, 8:2_, 8:16_, 9:10_, 9:17_, 10:22_, 11:5_, 11:8_, 11:20_, 12:13_, 12:18_, 12:23_, 13:1_, 14:4_, 14:8_, 14:23_, 15:3_, 15:5_, 15:8_, 16:12_, 16:21_, 18:8_, 18:15_, 19:25_, 20:6_, 20:24_, 36:19_, 41:11_, 47:5_, 48:16_, 52:4_, 52:19_, 54:6_, 54:20_, 56:7_, 56:9_, 57:15_, 57:24_, 59:18_, 59:25_, 60:4_, 60:5_, 60:8_, 60:12_, 60:16_, 68:10_, 81:15_, 81:19_, 81:24_, 82:2_, 83:14, 83:24_, 84:8_, 84:17_, 87:2_, 89:16_, 89:24_, 90:1_, 90:2_, 90:15_, 91:16_, 91:20_, 93:3_, 93:11_, 93:15_, 93:17_, 93:23_, 94:1_, 95:9_, 95:21_, 97:7_, 98:5_, 99:7_, 99:21_, 122:5_, 126:16_, 127:11_, 127:14_, 128:15_, 129:3_, 130:5_, 130:11_, 130:12_, 131:16_, 132:1_, 133:18_, 133:23_, 133:25_, 134:9_, 142:23_, 149:10_, 150:22_, 156:14_, 156:16_, 158:13_, 158:17_, 159:4_, 159:7_, 159:11_, 159:15_, 161:7_, 161:16_, 162:16_, 162:24_, 165:17_, 167:3_,

169:13_, 169:24_, 178:18_, 179:9_, 181:6_, 181:8_, 181:13_, 182:7_, 182:18_, 182:23_, 182:25_, 183:11_, 183:23_, 184:4_, 184:6_, 184:8_, 184:9_, 184:11_, 185:2_, 186:8_, 186:12_, 186:21_, 187:8_, 188:2_, 188:23_, 189:11_, 189:24_, 192:3_, 192:21_, 192:22_, 192:24_, 194:10_, 199:17_, 200:10_, 202:10_, 202:18_, 203:18_, 207:21_, 209:19_, 210:21_, 210:24_, 211:2_, 215:12_, 219:14_, 220:7_, 223:13_, 223:16_, 226:1_, 226:7_, 227:3_, 227:24_, 229:18_, 230:7_, 237:20_, 237:21_, 238:12_, 239:7_, 239:16_, 246:4_, 246:7_, 246:10

**cases** [4]_ - 169:9_, 169:17_, 169:21_, 181:14

**Casey** [2]_ - 47:10_, 123:10

**casual** [1]_ - 69:17

**CAT** [1]_ - 113:6

**catch** [5]_ - 47:18_, 75:16_, 106:12_, 111:1_, 143:10

**catch-up** [1]_ - 111:1

**catching** [1]_ - 151:12

**category** [7]_ - 21:14_, 30:15_, 39:11_, 122:1_, 155:10_, 157:7_, 190:17

**caused** [2]_ - 45:25_, 204:25

**causes** [1]_ - 244:5

**caution** [1]_ - 211:25

**cautionary** [3]_ - 59:9_, 82:8_, 159:14

**caveats** [1]_ - 88:7

**celebrate** [1]_ - 200:1

**Cell** [1]_ - 23:22

**certain** [8]_ - 13:24_, 16:12_, 52:2_, 92:18_, 95:9_, 126:15_, 133:6_, 137:5

**certainly** [13]_ - 41:17_, 62:16_, 72:15_, 117:12_, 138:16_, 145:9_, 150:14_, 154:10_, 154:12_, 157:1_, 161:1_, 240:8_, 248:3

**certificate** [2]_ - 80:21_, 158:9

**CGM** [1] - 41:14

**chair** [2] - 39:23, 120:8

**chairs** [4] - 40:11, 59:13, 133:15, 194:4

**challenge** [12] - 62:23, 69:1, 138:20, 140:18, 150:20, 153:12, 156:18, 157:4, 235:8, 235:25, 242:8, 243:21

**challenges** [12] - 61:8, 61:19, 62:4, 62:14, 117:15, 137:15, 137:19, 138:15, 145:14, 233:25, 240:13, 240:15

**chance** [8] - 79:13, 79:14, 136:6, 149:13, 151:1, 188:11, 202:10, 213:20

**chances** [1] - 248:24

**changed** [2] - 160:7, 160:8

**channels** [1] - 9:8

**charge** [13] - 11:16, 13:1, 17:7, 37:13, 52:21, 90:10, 91:20, 96:5, 112:6, 127:12, 128:17, 162:17, 231:21

**charged** [10] - 17:13, 52:9, 53:1, 91:15, 96:11, 127:16, 179:9, 185:3, 186:5, 216:5

**charges** [11] - 16:21, 17:24, 18:7, 18:15, 52:21, 54:7, 95:20, 96:22, 97:5, 127:12, 208:21

**check** [3] - 140:12, 197:1, 217:12

**checked** [5] - 27:3, 78:15, 142:21, 142:22, 208:19

**checking** [2] - 142:9, 148:5

**checkmark** [1] - 207:23

**cheer** [1] - 33:5

**chemistry** [2] - 197:10, 236:23

**chemo** [1] - 39:21

**cherished** [2] - 5:8, 84:12

**child** [2] - 143:12, 155:2

**childcare** [7] - 24:6, 63:8, 66:18, 68:1, 141:25, 236:12, 237:3

**children** [11] - 28:9, 28:13, 63:10, 67:19, 103:19, 108:8, 118:1, 142:3, 148:11, 176:5, 210:21

**Chinese** [1] - 178:24

**Chinese-made** [1] - 178:24

**chip** [1] - 29:9

**chiropractor** [1] - 108:8

**choice** [1] - 92:2

**choke** [1] - 196:12

**cholesterol** [2] - 77:5, 77:11

**choose** [4] - 5:13, 14:21, 93:9, 94:13

**chooses** [2] - 130:2, 130:22

**choosing** [1] - 185:22

**chosen** [30] - 9:1, 40:10, 54:11, 56:5, 84:19, 87:20, 87:24, 111:1, 132:4, 137:3, 162:24, 168:1, 169:12, 171:1, 177:7, 178:7, 179:16, 184:23, 189:12, 190:18, 192:3, 198:3, 205:10, 223:15, 227:25, 228:8, 229:24, 230:10, 231:25, 233:13

**Christian** [4] - 50:2, 51:1, 124:10, 125:19

**Christopher** [9] - 2:6, 12:5, 18:22, 49:20, 50:18, 90:24, 97:22, 124:3, 125:12

**chunks** [1] - 47:2

**church** [1] - 71:4

**Cindy** [2] - 47:7, 123:8

**circle** [5] - 25:2, 197:9, 201:4, 203:10, 227:13

**Circuit** [2] - 173:18, 173:21

**circumstances** [2] - 194:9, 198:1

**citizen** [2] - 5:10, 84:15

**citizens** [1] - 5:13

**City** [1] - 25:17

**civil** [4] - 203:23, 238:22, 239:3, 242:22

**claim** [1] - 240:23

**claimed** [2] - 151:24,

156:22

**clarification** [2] - 21:5, 154:20

**clarify** [3] - 21:3, 26:5, 117:7

**class** [3] - 115:19, 116:4, 145:24

**classes** [6] - 66:24, 112:4, 120:4, 120:5, 120:12, 236:23

**classification** [2] - 164:10, 164:11

**classroom** [2] - 111:17, 237:1

**Clay** [2] - 49:2, 123:11

**clear** [21] - 13:24, 40:20, 58:2, 60:9, 70:18, 71:2, 72:12, 118:14, 133:19, 171:3, 185:2, 190:24, 191:7, 192:12, 214:2, 214:3, 214:13, 220:11, 220:22, 226:11, 246:4

**cleared** [2] - 38:6, 122:15

**clearly** [8] - 6:13, 20:16, 56:7, 85:19, 100:3, 143:15, 181:12, 201:17

**Clements** [2] - 49:3, 123:17

**clerk** [3] - 8:9, 87:11, 173:15

**clients** [10] - 32:10, 72:4, 101:24, 103:7, 120:3, 120:5, 120:14, 149:1, 149:4, 149:11

**clinical** [2] - 34:22, 73:10

**Clinton** [1] - 187:1

**close** [27] - 14:15, 47:1, 82:25, 98:16, 106:13, 127:6, 138:7, 153:23, 163:6, 163:12, 163:20, 164:21, 168:12, 171:17, 172:8, 173:16, 173:17, 177:15, 177:17, 177:19, 178:1, 190:8, 194:21, 199:25, 209:24, 221:14, 221:18

**closely** [1] - 46:8

**closer** [4] - 37:4, 62:20, 137:14, 229:12

**closes** [1] - 36:14

**cloud** [1] - 189:14

**Club** [1] - 144:23

**club** [1] - 149:8

**Clubs** [1] - 110:20

**co** [1] - 92:11

**co-counsel** [1] - 92:11

**Coast** [3] - 114:14, 114:15, 115:12

**coast** [1] - 29:1

**coffee** [2] - 22:23, 55:16

**coincident** [1] - 201:3

**collateral** [2] - 204:5, 238:23

**college** [10] - 30:11, 66:24, 105:25, 106:4, 112:23, 114:3, 114:4, 115:18, 116:2

**colloquy** [7] - 206:9, 211:4, 214:15, 214:23, 243:8, 248:21

**Colorado** [1] - 121:3

**combined** [1] - 247:1

**comfortable** [1] - 69:10

**coming** [7] - 25:18, 119:6, 119:18, 120:25, 139:10, 214:6, 245:14

**comment** [4] - 3:7, 139:11, 195:9, 210:20

**commentary** [1] - 3:13

**comments** [10] - 3:15, 8:25, 11:11, 74:23, 90:5, 91:17, 153:5, 197:9, 247:7, 248:1

**commerce** [5] - 18:4, 18:14, 97:2, 97:13, 179:20

**commission** [7] - 33:6, 33:7, 43:1, 72:19, 74:20, 79:1

**commissions** [4] - 36:5, 36:6, 72:22, 74:17

**commit** [3] - 17:21, 96:19, 226:14

**commitments** [2] - 73:10, 237:2

**committed** [1] - 232:13

**committing** [1] - 186:17

**common** [3] - 54:19, 102:16, 129:2

**communicated** [5] - 19:6, 19:8, 98:4, 98:7, 98:18

**communication** [1] - 60:6

**community** [4] - 4:7, 5:13, 84:5, 84:17

**companies** [1] - 136:21

**company** [28] - 24:14, 26:13, 26:17, 28:4, 30:23, 34:3, 34:23, 36:14, 64:11, 73:5, 100:24, 103:6, 105:15, 105:24, 106:6, 113:6, 113:11, 114:11, 114:13, 115:12, 135:13, 135:14, 141:11, 211:17, 218:20, 231:24, 232:5

**Company** [1] - 116:18

**compensate** [3] - 27:22, 33:5, 152:2

**compensated** [1] - 65:7

**compensation** [4] - 22:18, 29:24, 30:8, 36:5

**complete** [7] - 16:6, 95:3, 160:20, 162:14, 185:6, 213:5, 239:19

**completely** [3] - 44:1, 44:8, 85:2

**compliance** [2] - 60:9, 192:24

**comply** [3] - 7:7, 226:18, 226:24

**computer** [1] - 28:6

**conceivably** [1] - 108:14

**concentrate** [1] - 156:23

**concentration** [1] - 145:14

**concept** [2] - 52:16, 55:17

**concepts** [4] - 52:13, 95:17, 127:1, 189:5

**concern** [19] - 37:6, 58:3, 105:14, 107:18, 170:9, 189:22, 190:4, 198:4, 198:24, 199:11, 203:16, 204:22, 209:17, 224:23, 235:10, 236:4, 236:14, 244:5, 247:23

**concerned** [9] - 11:2, 89:21, 104:2, 132:6, 210:21, 215:5, 230:19,

238:21, 240:4

**concerning** [13] - 11:17, 15:5, 54:17, 58:24, 75:11, 90:11, 128:25, 132:21, 148:5, 153:10, 224:8, 229:16, 229:22

**concerns** [16] - 21:15, 26:24, 27:10, 40:17, 56:20, 64:8, 68:20, 69:24, 144:17, 202:18, 216:14, 217:8, 218:1, 234:16, 237:1, 241:10

**concierge** [1] - 106:2

**conclude** [1] - 158:25

**concluded** [1] - 249:6

**concludes** [2] - 81:9, 192:11

**conclusion** [2] - 130:18, 154:2

**concrete** [2] - 9:13, 88:10

**concur** [1] - 211:3

**condition** [2] - 44:9, 44:18

**conditions** [5] - 25:12, 41:6, 64:4, 69:10, 77:13

**condominium** [1] - 117:10

**Condon** [10] - 6:4, 85:11, 197:3, 203:5, 219:23, 220:25, 223:2, 223:23, 225:5, 228:23

**conduct** [6] - 10:24, 81:18, 86:19, 92:22, 133:22, 159:6

**conducting** [2] - 34:4, 192:23

**conference** [1] - 187:19

**conferences** [3] - 94:21, 188:12, 193:3

**confident** [1] - 69:13

**confidential** [2] - 8:20, 87:19

**confirm** [2] - 42:10, 199:17

**confirmed** [1] - 107:9

**conflict** [1] - 76:3

**conflicts** [5] - 109:6, 109:20, 143:24, 150:5, 152:25

**confused** [1] - 118:23

**confusing** [2] - 166:5, 204:24

**confusion** [1] - 216:25

**congestive** [1] - 41:6

**connected** [3] - 11:3, 89:22, 154:11

**connection** [4] - 14:8, 19:2, 152:18, 163:18

**consequence** [1] - 41:18

**consequences** [3] - 58:2, 132:5, 239:6

**conservative** [1] - 149:8

**consider** [14] - 55:22, 56:25, 57:6, 57:8, 57:11, 57:13, 60:21, 61:7, 79:23, 130:3, 131:1, 134:3, 152:23, 213:22

**considerable** [1] - 150:16

**consideration** [8] - 11:5, 12:22, 57:4, 89:24, 91:16, 130:4, 182:25, 189:11

**considerations** [1] - 88:8

**considered** [7] - 54:20, 89:8, 129:3, 137:25, 183:3, 183:6, 237:14

**considering** [2] - 131:4, 248:12

**consistent** [2] - 74:23, 149:18

**constant** [1] - 60:6

**Constitution** [2] - 53:3, 84:14

**constitution** [1] - 127:18

**constitutional** [6] - 5:8, 12:19, 13:10, 91:13, 92:1, 185:20

**constitutionally** [1] - 185:22

**construction** [4] - 135:14, 212:5, 231:17, 243:4

**Construction** [1] - 135:18

**construe** [1] - 89:25

**consultant** [2] - 113:5, 145:6

**consulting** [2] - 103:6, 113:7

**Consulting** [1] - 113:6

**contact** [16] - 8:4, 9:16, 48:7, 60:10, 60:15, 81:23, 82:1, 87:5, 88:4, 99:2, 134:12, 134:13, 136:16, 159:10, 159:15, 192:20

**contacts** [3] - 166:13, 170:18, 209:1

**contained** [1] - 16:21

**context** [4] - 13:11, 15:25, 16:19, 95:20

**continue** [5] - 51:17, 87:3, 125:9, 125:21, 181:3

**continued** [3] - 80:17, 158:1, 245:2

**continues** [1] - 185:19

**continuing** [1] - 20:2

**Contracting** [2] - 113:5, 113:13

**contractor** [2] - 42:3, 113:5

**contractors** [1] - 113:20

**contradict** [2] - 57:16, 131:17

**control** [6] - 13:8, 37:14, 46:13, 59:17, 92:3, 230:12

**controlled** [1] - 179:5

**controlling** [4] - 13:2, 91:21, 186:21, 240:4

**conversation** [2] - 193:7, 201:2

**conversations** [1] - 191:23

**convicted** [11] - 17:25, 18:5, 96:23, 97:3, 179:10, 179:18, 179:21, 179:25, 180:12, 247:11, 248:10

**convicting** [3] - 179:25, 180:12, 185:5

**conviction** [1] - 239:25

**convictions** [5] - 76:9, 207:18, 208:5, 220:5, 223:11

**convincing** [2] - 54:21, 129:4

**coordinating** [1] - 85:11

**cop** [1] - 71:23

**copied** [1] - 217:24

**copies** [1] - 217:4
**Copperpoint** [2] - 116:18, 147:21
**copy** [2] - 210:8, 212:23
**corporate** [2] - 105:17, 151:14
**corporation** [1] - 152:4
**corporations** [3] - 102:8, 102:11, 102:14
**correct** [24] - 23:3, 23:10, 29:17, 79:4, 100:18, 165:8, 190:25, 197:3, 197:11, 197:14, 209:12, 219:17, 219:25, 220:13, 222:23, 227:16, 231:9, 231:10, 231:19, 231:22, 231:23, 233:5, 235:25
**correctional** [2] - 163:23, 164:18
**Correctional** [1] - 163:23
**Corrections** [7] - 68:9, 163:22, 164:2, 165:5, 165:22, 172:18, 195:23
**correctly** [2] - 69:22, 177:6
**corroborated** [1] - 186:16
**coughed** [1] - 247:12
**counsel** [9] - 2:17, 13:4, 13:9, 13:18, 91:22, 92:11, 92:12, 105:18, 142:8
**counseling** [1] - 34:9
**count** [2] - 186:5, 246:19
**Count** [22] - 16:22, 16:23, 17:13, 17:14, 17:15, 17:24, 18:7, 95:22, 96:11, 96:12, 96:13, 96:22, 97:5, 162:17, 162:19, 179:2, 184:20, 185:10, 185:12, 186:4, 186:14
**country** [5] - 53:1, 84:13, 84:24, 127:17, 215:19
**counts** [3] - 16:22, 162:16, 179:9
**county** [1] - 118:25
**County** [37] - 17:2, 17:10, 17:17, 18:2, 18:10, 25:17, 47:9, 47:14, 47:21, 48:2,

48:13, 48:14, 49:12, 49:14, 50:12, 50:19, 51:9, 95:25, 96:8, 96:15, 96:25, 97:8, 110:21, 119:1, 123:10, 123:25, 124:3, 124:18, 125:13, 125:25, 165:1, 166:16, 167:1, 176:1, 176:4, 176:13, 177:16
**County's** [1] - 48:12
**couple** [14] - 27:2, 28:6, 39:24, 112:25, 118:3, 135:12, 160:6, 172:4, 180:6, 198:22, 202:8, 214:18, 245:24, 247:20
**course** [44] - 5:24, 6:21, 7:17, 8:10, 8:15, 10:24, 15:24, 40:9, 53:7, 53:8, 57:15, 57:20, 58:21, 81:15, 82:5, 83:4, 84:13, 85:12, 86:18, 87:10, 89:1, 89:18, 91:17, 94:22, 95:2, 100:9, 100:11, 127:23, 132:17, 136:23, 137:1, 150:10, 163:3, 165:22, 168:19, 169:5, 192:20, 200:4, 200:6, 234:4, 234:22, 236:1, 246:9
**court** [28] - 5:14, 7:11, 7:15, 7:22, 10:13, 11:15, 37:5, 70:10, 80:9, 84:18, 85:15, 86:10, 86:13, 90:8, 155:8, 161:1, 169:17, 169:24, 173:16, 174:8, 177:22, 178:2, 225:24, 225:25, 226:4, 235:2, 235:20, 244:7
**Court** [50] - 2:1, 3:19, 4:3, 4:24, 6:6, 7:8, 8:11, 8:16, 13:6, 14:23, 15:7, 41:15, 43:22, 67:12, 71:1, 71:6, 73:20, 74:1, 74:6, 75:10, 80:15, 83:8, 83:24, 85:12, 91:25, 93:5, 93:11, 93:20, 94:19, 95:5, 132:22, 141:19, 143:5, 146:12, 152:4, 156:17, 157:24, 161:4, 161:16, 174:16, 198:1, 203:19, 206:6, 206:8, 211:1, 238:23, 243:22, 244:25, 247:20, 247:24
**COURT** [863] - 2:2, 2:11,

2:14, 2:18, 3:8, 3:11, 3:17, 3:21, 4:4, 5:2, 12:11, 13:15, 13:19, 20:21, 21:1, 21:9, 21:14, 21:19, 21:24, 22:22, 22:25, 23:4, 23:9, 23:11, 23:15, 23:19, 23:23, 24:8, 24:12, 24:14, 24:17, 24:23, 25:1, 25:4, 25:9, 25:15, 25:19, 25:21, 25:25, 26:4, 26:7, 26:10, 26:15, 26:18, 26:21, 26:23, 27:9, 27:13, 27:18, 27:20, 27:24, 28:16, 28:19, 28:21, 29:8, 29:14, 29:19, 29:22, 30:1, 30:3, 30:5, 30:10, 30:13, 30:18, 31:7, 31:11, 31:16, 31:19, 31:21, 31:25, 32:3, 32:14, 32:21, 32:24, 33:8, 33:12, 33:17, 33:24, 34:6, 34:11, 34:17, 34:20, 34:24, 35:5, 35:9, 35:11, 35:15, 35:18, 35:20, 35:24, 36:2, 36:9, 36:12, 36:16, 37:1, 37:4, 37:11, 37:16, 37:20, 38:2, 38:5, 38:8, 38:12, 38:14, 38:16, 38:21, 38:24, 39:3, 39:5, 39:25, 40:6, 40:16, 40:21, 41:9, 41:16, 41:24, 42:6, 42:11, 42:14, 42:17, 42:20, 42:22, 42:25, 43:3, 43:7, 43:10, 43:12, 43:19, 44:10, 44:21, 44:24, 45:23, 46:5, 46:11, 46:16, 46:18, 47:17, 47:23, 48:1, 48:6, 48:11, 48:20, 53:20, 53:24, 61:5, 61:12, 61:14, 61:17, 62:1, 62:9, 62:12, 62:17, 62:20, 62:25, 63:5, 63:9, 63:13, 63:16, 63:19, 63:24, 64:5, 64:7, 64:12, 64:18, 64:20, 64:24, 65:3, 65:5, 65:9, 65:15, 65:19, 65:25, 66:5, 66:11, 66:14, 66:19, 66:21, 66:25, 67:5, 67:13, 67:17, 67:22, 67:25, 68:12, 68:17, 68:25, 69:4, 69:14, 69:16, 69:20,

70:4, 70:11, 70:16, 70:23, 71:7, 71:14, 71:19, 71:24, 72:6, 72:8, 72:12, 72:16, 72:21, 73:1, 73:7, 73:9, 73:14, 73:21, 73:23, 74:8, 74:15, 74:18, 75:3, 75:9, 75:16, 75:23, 76:4, 76:10, 76:13, 76:16, 76:18, 76:22, 77:2, 77:6, 77:13, 77:19, 77:24, 78:2, 78:10, 78:20, 78:25, 79:4, 79:6, 79:9, 79:11, 79:18, 79:22, 80:2, 80:8, 80:16, 82:15, 82:22, 82:24, 83:9, 84:2, 91:7, 92:8, 92:13, 94:9, 98:15, 98:18, 98:22, 100:20, 100:23, 101:3, 101:6, 101:12, 101:14, 101:19, 102:1, 102:4, 102:9, 102:17, 102:21, 103:1, 103:8, 103:10, 103:15, 103:20, 103:25, 104:14, 104:18, 104:22, 105:3, 105:7, 105:13, 105:21, 105:23, 106:5, 106:11, 106:16, 106:18, 106:20, 107:2, 107:5, 107:11, 107:14, 107:18, 108:4, 108:11, 108:17, 108:24, 109:1, 109:3, 109:5, 109:8, 109:11, 109:14, 109:16, 109:18, 109:20, 109:22, 110:10, 110:13, 110:19, 110:22, 110:25, 111:5, 111:9, 111:11, 111:13, 111:22, 111:25, 112:5, 112:9, 112:16, 112:20, 113:3, 113:7, 113:10, 113:14, 113:23, 114:6, 114:9, 114:11, 114:13, 114:15, 114:19, 114:25, 115:4, 115:7, 115:11, 115:16, 115:21, 115:23, 116:1, 116:7, 116:11, 116:17, 116:19, 116:22, 117:2, 117:6, 117:14, 117:18, 117:24, 118:4, 118:9, 118:14, 118:17, 118:22, 119:2, 119:5, 119:9, 119:14, 119:20, 119:22, 120:9, 120:13, 120:18, 121:1, 121:4, 121:6, 121:8, 121:11, 121:13, 121:15, 121:18

, 121:23, 122:18, 122:20, 122:23, 125:1, 125:4, 125:8, 128:5, 128:9, 134:22, 134:25, 135:16, 135:19, 135:21, 135:24, 136:4, 136:12, 136:16, 136:20, 136:24, 137:5, 137:9, 137:12, 137:21, 138:4, 138:17, 138:22, 138:24, 139:2, 139:4, 139:9, 139:15, 139:17, 139:23, 140:1, 140:9, 140:15, 140:20, 140:23, 141:3, 141:7, 141:12, 141:15, 141:21, 142:2, 142:5, 142:13, 142:15, 142:17, 142:19, 143:7, 143:14, 144:1, 144:3, 144:10, 144:14, 144:17, 144:22, 145:2, 145:5, 145:11, 145:13, 145:25, 146:6, 146:10, 146:13, 146:16, 146:19, 146:25, 147:3, 147:6, 147:10, 147:12, 147:18, 147:20, 147:24, 148:4, 148:9, 148:13, 148:15, 148:18, 148:22, 149:2, 149:9, 149:18, 149:23, 150:1, 150:13, 150:19, 151:6, 151:8, 151:10, 151:14, 151:20, 152:6, 152:16, 152:23, 153:2, 153:7, 153:10, 153:13, 153:17, 153:21, 153:25, 154:6, 154:13, 154:21, 155:5, 155:9, 155:15, 155:25, 156:6, 156:9, 156:12, 156:18, 156:24, 157:4, 157:9, 157:11, 157:13, 157:15, 157:25, 159:24, 160:5, 160:10, 160:25, 161:5, 161:18, 161:20, 161:22, 161:25, 162:1, 163:25, 164:4, 164:6, 164:9, 164:11, 164:14, 164:17, 164:21, 164:24, 165:2, 165:4, 165:7, 165:9, 165:12, 165:19, 166:1, 166:7, 166:12, 166:18, 166:20, 166:23, 166:25, 167:5, 167:9, 167:14, 167:16, 167:18, 167:20, 167:23, 168:3, 168:6, 168:9, 168:11, 168:17, 168:21, 169:1, 169:5, 169:10, 169:15, 169:19,

169:25, 170:5, 170:9, 170:14, 170:17, 170:22, 170:24, 171:3, 171:6, 171:10, 171:12, 171:14, 171:16, 171:19, 171:23, 172:1, 172:6, 172:8, 172:11, 172:15, 172:22, 172:25, 173:2, 173:5, 173:9, 173:12, 173:22, 173:24, 174:5, 174:8, 174:11, 174:15, 174:20, 174:23, 175:2, 175:5, 175:9, 175:13, 175:17, 175:19, 175:22, 176:5, 176:8, 176:11, 176:16, 176:21, 176:24, 177:1, 177:4, 177:9, 177:13, 177:19, 177:22, 177:25, 178:9, 179:15, 180:5, 181:22, 182:2, 182:4, 182:11, 182:13, 191:13, 191:16, 191:19, 191:22, 193:24, 194:3, 194:22, 195:2, 195:5, 195:8, 195:12, 195:15, 195:18, 195:21, 196:6, 196:9, 196:13, 196:18, 196:21, 197:3, 197:8, 197:12, 197:15, 197:21, 197:25, 198:7, 198:11, 198:15, 198:18, 198:21, 199:1, 199:6, 199:10, 199:13, 199:15, 199:21, 200:4, 200:8, 200:12, 200:16, 200:21, 201:6, 201:10, 201:16, 201:21, 202:2, 202:7, 202:14, 202:18, 202:24, 203:2, 203:9, 203:14, 204:1, 204:4, 204:7, 204:9, 204:15, 204:17, 204:24, 205:8, 205:15, 205:19, 206:12, 206:14, 206:17, 206:20, 207:3, 207:8, 207:10, 207:15, 207:20, 207:24, 208:3, 208:7, 208:11, 208:15, 208:19, 208:23, 209:3, 209:8, 209:11, 209:15, 209:21, 209:25, 210:3, 210:7, 210:11, 210:18, 211:3, 211:9, 211:13, 211:22, 212:9, 212:15, 213:1, 213:12, 213:17, 213:20, 214:1, 214:12, 214:21, 215:4, 215:9, 215:18, 215:23, 215:25, 216:16, 216:18, 216:22

, 217:8, 217:15, 217:19, 218:3, 218:5, 218:8, 218:11, 218:15, 218:22, 219:2, 219:7, 219:14, 219:18, 219:23, 220:2, 220:11, 220:14, 220:20, 220:25, 221:4, 221:7, 221:13, 221:17, 221:22, 222:4, 222:6, 222:14, 222:17, 222:21, 222:24, 223:2, 223:5, 223:18, 223:22, 224:2, 224:19, 224:23, 225:7, 225:13, 225:16, 225:19, 226:2, 226:8, 226:11, 226:17, 226:21, 226:25, 227:5, 227:10, 227:12, 227:17, 227:20, 227:23, 228:3, 228:6, 228:10, 228:14, 228:21, 228:23, 229:3, 229:5, 229:7, 229:9, 229:11, 230:2, 230:5, 230:9, 230:13, 230:16, 230:19, 230:23, 231:6, 231:8, 231:11, 231:15, 231:20, 231:25, 232:6, 232:12, 232:17, 232:21, 232:23, 232:25, 233:7, 233:10, 233:15, 233:20, 233:24, 234:4, 234:12, 234:15, 234:19, 234:22, 235:4, 235:7, 235:17, 236:2, 236:9, 236:18, 236:20, 236:25, 237:8, 237:10, 237:12, 237:16, 237:22, 237:25, 238:5, 238:9, 238:13, 238:16, 238:25, 239:2, 239:8, 239:11, 239:16, 239:20, 239:24, 240:7, 240:10, 240:15, 240:18, 240:20, 240:24, 241:3, 241:7, 241:14, 241:20, 242:2, 242:4, 242:10, 242:12, 242:16, 242:22, 242:25, 243:2, 243:6, 243:12, 243:19, 244:2, 244:11, 244:16, 244:19, 245:1, 246:15, 246:17, 247:22, 248:4, 248:14, 248:19, 249:3

**Court's** [17] - 11:16, 20:2, 58:17, 59:1, 73:18, 78:13, 78:16, 90:9, 132:25, 214:15, 214:23, 216:2, 226:18,

235:24, 239:18, 246:4, 247:7

**courtesy** [1] - 248:23

**courthouse** [30] - 4:6, 6:24, 7:13, 8:25, 9:4, 10:20, 11:11, 37:5, 42:23, 59:22, 60:13, 80:24, 83:12, 86:4, 86:15, 87:15, 87:23, 88:2, 89:14, 90:5, 93:2, 135:2, 138:6, 158:5, 174:1, 177:18, 177:20, 221:2, 230:25

**COURTROOM** [20] - 4:19, 83:19, 138:3, 161:11, 197:1, 197:6, 203:6, 204:12, 210:10, 210:17, 211:10, 212:25, 219:25, 221:3, 229:2, 229:4, 231:4, 231:7, 231:10, 231:13

**courtroom** [101] - 3:24, 4:2, 4:16, 6:3, 6:4, 6:9, 6:19, 6:22, 10:16, 11:19, 14:3, 14:24, 15:14, 60:21, 60:23, 61:4, 80:10, 80:11, 80:14, 81:21, 82:14, 82:18, 83:7, 83:17, 85:9, 85:10, 85:16, 85:24, 86:1, 86:12, 87:12, 89:11, 90:13, 93:13, 93:22, 94:3, 94:15, 106:14, 134:4, 134:21, 135:2, 136:3, 137:11, 137:18, 138:5, 157:23, 159:23, 161:21, 174:1, 181:1, 183:4, 184:18, 188:25, 192:17, 193:6, 193:14, 193:15, 193:23, 195:6, 195:7, 196:25, 197:7, 198:19, 198:20, 200:19, 200:20, 201:13, 201:14, 202:5, 202:6, 203:7, 203:8, 204:13, 204:14, 205:18, 218:14, 219:9, 219:22, 220:1, 220:24, 221:6, 223:1, 223:4, 223:21, 224:1, 224:7, 225:6, 225:10, 226:6, 227:9, 227:11, 228:13, 228:20, 231:3, 231:14, 232:22, 232:24, 233:23, 244:24, 246:16, 246:21

**courts** [1] - 235:21

**cousin** [3] - 65:24, 175:3, 199:23

**cousin's** [2] - 175:6, 200:2
**cover** [9] - 14:2, 14:7, 16:13, 65:11, 107:5, 107:10, 115:14, 155:4, 236:23
**coverage** [3] - 214:16, 214:18, 237:18
**covered** [7] - 3:10, 14:5, 20:18, 43:14, 107:7, 162:3, 208:13
**covering** [1] - 104:9
**covers** [2] - 45:3, 178:10
**coworker** [1] - 104:2
**CPA** [2] - 102:2, 139:9
**crackly** [1] - 97:18
**created** [1] - 205:5
**creates** [1] - 205:6
**credibility** [8] - 57:3, 57:19, 57:23, 58:10, 131:1, 131:4, 131:21, 131:25
**crime** [28] - 17:7, 17:8, 17:12, 17:13, 18:5, 53:1, 96:5, 96:6, 96:10, 96:11, 97:3, 127:16, 179:17, 186:17, 190:7, 191:10, 195:22, 196:5, 199:19, 199:24, 200:1, 201:18, 204:21, 205:1, 206:4, 206:7, 209:7, 238:6
**crimes** [8] - 16:12, 48:9, 52:2, 91:15, 95:10, 126:15, 190:5, 190:16
**criminal** [19] - 4:12, 52:19, 70:22, 71:11, 89:4, 127:1, 127:11, 141:10, 162:4, 191:2, 192:1, 217:12, 220:7, 223:8, 223:13, 223:14, 229:18, 239:18, 239:25
**criminalize** [2] - 186:22
**critical** [5] - 25:14, 36:24, 75:7, 88:20, 129:17
**crocodile** [1] - 3:5
**crowns** [1] - 104:16
**cruise** [7] - 108:25, 109:5, 109:12, 109:14, 152:20, 152:21, 152:22
**cryptic** [1] - 237:17
**CSO** [2] - 134:22,

177:22
**cup** [1] - 55:16
**current** [7] - 28:12, 96:4, 115:5, 176:12, 178:4, 179:3, 219:16
**curriculum** [1] - 112:3
**Curtis** [2] - 49:12, 124:1
**custody** [2] - 28:10, 160:19
**cutting** [1] - 194:21
**cycling** [1] - 212:1

## D

**dad** [1] - 194:14
**daily** [1] - 110:24
**damage** [3] - 46:1, 204:5, 238:23
**dangerous** [2] - 17:22, 96:20
**Daniels** [1] - 177:21
**date** [13] - 7:4, 17:9, 17:16, 27:3, 42:9, 42:10, 86:7, 96:7, 96:24, 101:25, 102:14, 152:24, 156:1
**dates** [3] - 26:5, 38:9, 121:4
**daughter** [11] - 33:4, 33:12, 72:21, 112:23, 112:24, 114:3, 121:12, 171:11, 171:16, 176:7, 205:2
**daughter's** [3] - 171:20, 196:11, 239:6
**David** [2] - 49:13, 124:1
**day-to-day** [4] - 6:6, 85:12, 131:5, 227:21
**days** [9] - 27:2, 29:5, 37:10, 74:6, 108:13, 115:20, 135:12, 196:17, 245:25
**daytime** [1] - 114:8
**DCF** [1] - 34:14
**deadline** [3] - 102:5, 102:7, 139:8
**deadlines** [5] - 101:24, 101:25, 102:18, 102:19, 139:10
**deadly** [2] - 17:22, 96:20
**deal** [9] - 52:5, 60:18, 106:7, 119:11, 126:18,

134:1, 168:20, 201:8, 246:22
**dealing** [6] - 61:23, 142:3, 155:2, 211:16, 214:4, 242:6
**dealings** [2] - 19:1, 98:1
**dealt** [2] - 99:6, 121:21
**death** [2] - 78:17, 143:23
**debt** [1] - 215:19
**decide** [6] - 5:13, 15:13, 56:23, 84:17, 94:2, 185:25
**decided** [2] - 12:17, 91:11
**decision** [14] - 12:20, 12:21, 13:10, 15:3, 56:3, 89:15, 91:13, 91:14, 93:15, 131:8, 184:17, 187:9, 187:14, 189:14
**decision-making** [3] - 187:9, 187:14, 189:14
**decisions** [2] - 10:21, 71:8
**declared** [1] - 74:16
**deeply** [1] - 163:9
**defendant** [63] - 3:1, 3:6, 9:19, 9:22, 9:25, 10:3, 10:5, 10:6, 10:12, 10:15, 11:7, 16:11, 16:14, 16:17, 17:3, 17:11, 17:18, 52:4, 52:7, 52:22, 52:23, 53:7, 55:6, 55:20, 55:22, 56:1, 56:2, 56:10, 56:16, 88:17, 88:20, 88:21, 89:2, 89:8, 89:10, 95:8, 95:14, 96:1, 96:9, 96:16, 98:4, 126:17, 126:21, 127:13, 127:14, 128:8, 129:20, 130:1, 130:2, 130:3, 130:7, 130:8, 130:16, 130:22, 185:2, 202:17, 220:8, 225:18, 241:21, 244:5, 247:8
**defendant's** [14] - 54:6, 54:15, 54:17, 55:13, 55:24, 56:20, 88:25, 127:7, 128:23, 128:25, 129:15, 129:24, 130:6, 236:6
**defender** [1] - 175:12

**defense** [24] - 2:13, 8:18, 9:19, 9:20, 10:15, 13:1, 13:2, 13:8, 13:14, 68:18, 70:5, 79:13, 87:18, 88:17, 91:21, 92:4, 92:7, 129:14, 188:19, 239:11, 244:2, 248:6
**defer** [3] - 73:20, 77:17, 180:9
**deficit** [1] - 46:12
**defined** [1] - 186:8
**defining** [1] - 128:20
**definitely** [2] - 29:6, 153:5
**definition** [2] - 54:12, 184:23
**degree** [1] - 8:2
**delay** [3] - 103:3, 111:16, 212:19
**delayed** [1] - 103:19
**delete** [1] - 224:8
**deliberate** [1] - 247:17
**deliberation** [3] - 53:4, 127:20, 130:12
**deliberations** [6] - 55:23, 74:3, 130:4, 189:11, 214:20, 235:20
**delivery** [6] - 42:3, 42:12, 104:5, 104:10, 141:10
**Delray** [1] - 104:6
**denied** [7] - 150:6, 152:12, 152:16, 156:19, 157:5, 242:16, 243:13
**dental** [6] - 30:4, 37:22, 104:3, 104:15, 140:3, 141:11
**dentist** [1] - 176:7
**dentures** [1] - 104:16
**deny** [2] - 150:19, 152:18
**denying** [1] - 241:10
**Department** [12] - 12:10, 68:8, 91:5, 163:22, 164:1, 165:5, 165:22, 167:2, 171:13, 172:18, 177:17, 195:23
**department** [6] - 110:22, 166:16, 172:4, 172:12, 175:4, 177:5
**deputies** [5] - 6:4, 11:19, 83:17, 85:10,

90:13

**Deputy** [1] - 47:9

**deputy** [11] - 4:16, 47:15, 123:9, 138:5, 166:15, 172:20, 173:15, 174:1, 176:1, 176:2, 176:13

**DEPUTY** [20] - 4:19, 83:19, 138:3, 161:11, 197:1, 197:6, 203:6, 204:12, 210:10, 210:17, 211:10, 212:25, 219:25, 221:3, 229:2, 229:4, 231:4, 231:7, 231:10, 231:13

**describe** [7] - 14:18, 25:9, 93:8, 156:9, 164:24, 166:13, 170:17

**described** [3] - 162:15, 173:6, 191:5

**describes** [1] - 209:6

**designated** [7] - 6:15, 7:5, 9:3, 86:9, 88:1, 194:24, 244:13

**designed** [3] - 14:11, 14:21, 94:12

**desk** [3] - 44:17, 69:12, 140:4

**destructive** [1] - 126:4

**Destructive** [1] - 51:14

**detail** [6] - 10:10, 12:24, 85:23, 95:18, 155:17, 196:10

**details** [1] - 45:2

**detective** [6] - 50:12, 50:19, 51:8, 124:18, 125:12, 125:25

**determine** [11] - 13:6, 15:3, 15:7, 16:18, 52:11, 78:1, 91:25, 93:15, 93:21, 95:16, 126:24

**determined** [2] - 127:12, 217:12

**determining** [1] - 57:19

**detrimental** [1] - 36:23

**developmentally** [1] - 103:18

**device** [1] - 126:4

**Device** [1] - 51:14

**devices** [2] - 7:13, 86:15

**diabetes** [1] - 213:10

**diabetic** [1] - 40:24

**diastolic** [1] - 230:15

**different** [15] - 21:13, 35:8, 39:7, 111:14, 112:1, 112:2, 112:3, 113:11, 113:19, 138:6, 146:20, 162:7, 182:14, 184:5

**differently** [1] - 143:5

**difficult** [16] - 32:9, 32:11, 32:19, 45:1, 46:7, 105:20, 117:8, 117:13, 120:16, 143:4, 166:6, 189:8, 191:24, 208:5, 220:6, 220:12

**difficulty** [12] - 45:6, 53:10, 55:1, 55:9, 58:6, 114:1, 120:14, 127:24, 128:12, 129:8, 132:9, 142:21

**digital** [6] - 49:22, 50:13, 51:5, 124:8, 125:10, 125:21

**dinnertime** [1] - 28:24

**dire** [2] - 214:8, 246:23

**direct** [2] - 59:7, 60:25

**directing** [2] - 13:8, 91:21

**direction** [1] - 244:5

**directly** [7] - 6:7, 90:17, 173:19, 232:14, 237:6, 238:2, 242:14

**director** [3] - 34:22, 73:11, 173:18

**disabilities** [2] - 45:13, 119:17

**disability** [3] - 45:15, 122:2, 148:19

**disagree** [5] - 58:11, 58:24, 132:12, 132:24, 140:10

**disagrees** [1] - 180:20

**disclose** [3] - 76:9, 128:3, 128:6

**disclosed** [4] - 9:15, 88:12, 217:13, 239:17

**disclosing** [1] - 10:16

**disclosure** [3] - 65:22, 75:21, 217:11

**discretion** [1] - 40:9

**discs** [1] - 44:3

**discuss** [29] - 10:9, 14:1, 18:16, 19:23, 24:8, 58:22, 59:25, 61:19, 81:15, 81:16,

81:17, 90:14, 93:3, 95:17, 97:15, 99:11, 118:7, 130:12, 132:18, 133:6, 146:5, 159:4, 186:3, 187:20, 192:16, 194:6, 246:4, 246:5

**discussed** [5] - 45:10, 67:23, 120:21, 241:12, 242:1

**discussing** [3] - 82:2, 189:7, 192:22

**discussion** [5] - 43:16, 60:3, 79:14, 159:15, 246:8

**discussions** [1] - 237:21

**dishonesty** [1] - 95:4

**dislike** [2] - 187:7, 188:18

**dislikes** [1] - 188:5

**disorder** [1] - 46:13

**disprove** [1] - 129:15

**dispute** [2] - 186:13, 186:14

**disqualifying** [1] - 152:24

**disregard** [3] - 58:1, 58:15, 132:5

**disrespectful** [1] - 134:12

**disrupt** [1] - 41:15

**disseminated** [3] - 8:18, 9:7, 87:18

**distance** [3] - 75:6, 75:9, 75:10

**distract** [3] - 198:8, 203:17, 203:25

**distracted** [1] - 243:10

**distraction** [1] - 240:5

**district** [5] - 4:5, 4:11, 83:13, 168:15, 175:12

**District** [18] - 4:11, 5:6, 12:3, 15:12, 17:3, 17:10, 17:17, 18:2, 18:10, 83:13, 84:7, 90:22, 91:3, 96:1, 96:8, 96:15, 96:25, 97:9

**dive** [1] - 163:8

**division** [1] - 48:10

**dizzy** [1] - 41:7

**DOC** [3] - 164:7, 165:10, 165:12

**doctor** [7] - 42:2, 42:9,

118:7, 119:18, 122:15, 148:18

**doctor's** [4] - 34:5, 34:17, 37:21, 116:23

**doctors'** [1] - 40:18

**document** [2] - 49:2, 123:11

**documentation** [1] - 217:22

**documents** [1] - 160:14

**domestic** [1] - 205:3

**Dominick** [2] - 50:2, 124:10

**Donald** [6] - 17:5, 96:3, 184:22, 186:10, 187:25, 202:20

**done** [11] - 15:19, 27:8, 32:11, 44:19, 93:3, 97:18, 108:22, 140:24, 146:2, 231:8, 245:5

**DONNELLEY** [1] - 2:8

**DONNELLY** [2] - 12:8, 91:4

**Donnelly** [5] - 2:6, 12:9, 18:23, 91:5, 97:23

**door** [1] - 160:11

**doors** [1] - 3:15

**double** [1] - 197:1

**double-check** [1] - 197:1

**doubt** [27] - 10:5, 16:16, 52:8, 52:12, 54:8, 54:12, 54:16, 54:17, 54:18, 54:21, 55:25, 58:23, 88:25, 95:14, 126:20, 126:25, 128:18, 128:24, 128:25, 129:1, 129:4, 130:6, 130:15, 130:20, 132:21

**doubts** [7] - 195:25, 202:25, 219:10, 219:13, 226:17, 228:3, 230:9

**down** [37] - 6:8, 16:25, 20:11, 21:19, 26:18, 27:25, 28:16, 33:21, 34:6, 41:19, 43:8, 43:13, 43:15, 53:21, 85:16, 98:11, 100:2, 100:3, 102:9, 102:10, 120:19, 136:19, 137:8, 163:15, 181:10, 189:22, 206:21, 207:2, 207:4, 207:7, 210:7, 213:12, 213:21, 214:19, 224:4, 247:18

**downstairs** [2] - 60:2, 158:11

**dozing** [1] - 201:24

**drawn** [1] - 162:9

**drive** [9] - 30:24, 31:23, 36:20, 44:6, 71:20, 88:1, 116:3, 211:18

**driven** [2] - 9:3, 88:2

**driver** [2] - 104:10, 141:11

**drivers** [2] - 43:4, 104:5

**drives** [1] - 116:2

**driving** [4] - 37:6, 115:19, 119:6, 194:19

**drop** [8] - 24:19, 28:25, 29:11, 40:25, 41:2, 67:7, 116:6, 194:17

**drop-off** [3] - 28:25, 29:11, 67:7

**dropping** [1] - 194:19

**drove** [1] - 44:7

**due** [8] - 28:22, 59:17, 73:9, 101:25, 102:12, 102:14, 234:23, 240:10

**DUI** [1] - 77:17

**duration** [4] - 25:23, 114:20, 142:10, 211:24

**during** [28] - 6:19, 7:9, 9:25, 36:13, 40:9, 55:23, 56:17, 70:19, 86:6, 86:12, 87:17, 88:7, 111:15, 113:21, 123:3, 130:4, 142:9, 142:10, 143:11, 146:12, 183:5, 219:8, 226:7, 226:13, 232:9

**duties** [8] - 5:9, 6:1, 17:21, 25:23, 39:10, 84:15, 85:7, 96:19

**duty** [8] - 16:3, 30:22, 31:3, 31:4, 44:1, 45:16, 58:22, 212:8

E

**E-D-E-N-S** [1] - 135:20

**earliest** [2] - 27:3, 194:17

**earning** [1] - 101:4

**easier** [5] - 6:12, 85:18, 88:3, 92:18, 200:5

**eat** [1] - 110:8

**Edens** [2] - 135:18,

135:22

**edge** [2] - 188:17, 188:19

**education** [1] - 70:15

**effect** [3] - 137:2, 214:17, 241:18

**efficient** [2] - 180:7, 203:2

**efficiently** [1] - 14:13

**effort** [1] - 93:19

**eight** [1] - 44:14

**either** [22] - 5:23, 11:6, 11:7, 22:6, 60:13, 70:3, 70:5, 84:21, 89:25, 90:1, 122:3, 133:21, 163:19, 170:18, 175:14, 176:24, 177:1, 181:6, 181:8, 190:7, 203:16, 206:23

**elaborate** [1] - 24:9

**elder** [1] - 76:8

**elderly** [2] - 143:24, 210:22

**elected** [7] - 56:16, 89:7, 92:1, 149:19, 180:20, 189:1, 216:3

**electing** [1] - 185:19

**election** [1] - 25:18

**elections** [2] - 25:14, 25:17

**electrical** [1] - 28:4

**electrician** [2] - 24:13, 63:9

**electronic** [5] - 7:13, 60:6, 86:15, 86:17, 225:21

**elects** [2] - 55:22, 56:2

**elements** [2] - 215:12, 216:4

**eligible** [3] - 205:23, 247:1, 247:3

**eliminate** [1] - 156:3

**eliminated** [1] - 77:1

**Elizabeth** [2] - 51:5, 125:21

**elsewhere** [7] - 17:11, 18:3, 18:11, 60:13, 96:9, 97:1, 97:9

**emergency** [1] - 160:2

**emotions** [1] - 189:13

**emphasize** [13] - 5:18, 9:11, 9:24, 84:22, 88:7, 88:16, 95:1, 132:20,

162:12, 182:22, 184:8, 187:10, 188:14

**employ** [2] - 89:7, 169:4

**employed** [16] - 38:18, 38:21, 103:5, 103:12, 114:23, 115:2, 115:9, 115:10, 120:1, 139:21, 141:25, 152:3, 163:6, 163:12, 179:4, 212:4

**employee** [8] - 65:23, 66:10, 72:11, 103:13, 105:6, 140:4, 141:3, 152:2

**employees** [9] - 24:15, 25:22, 100:24, 102:20, 102:25, 105:4, 114:16, 139:11, 169:8

**employer** [3] - 23:4, 105:21, 197:19

**employing** [3] - 9:2, 10:12, 87:25

**employment** [6] - 7:20, 75:11, 104:3, 167:1, 167:24, 222:14

**encountering** [1] - 194:7

**end** [11] - 8:21, 9:4, 54:11, 62:15, 80:22, 87:20, 87:24, 183:2, 211:17, 216:20, 235:3

**endangered** [2] - 9:14, 88:11

**ended** [2] - 168:9, 205:4

**ends** [2] - 5:14, 84:17

**enforce** [2] - 11:16, 90:9

**enforcement** [42] - 144:12, 149:25, 150:2, 152:18, 163:7, 163:13, 163:19, 164:19, 165:20, 166:13, 166:21, 167:18, 167:21, 168:13, 168:18, 168:20, 169:7, 169:22, 170:19, 171:14, 172:9, 172:23, 173:6, 173:19, 174:21, 175:10, 176:6, 176:9, 176:22, 177:2, 177:12, 178:2, 178:3, 178:14, 178:18, 178:21, 208:13, 208:25, 221:15, 221:19, 221:20, 235:22

**enforcement-related** [1] - 221:19

**engage** [3] - 57:19,

138:12, 218:6

**engaged** [2] - 17:20, 96:18

**engagement** [1] - 237:19

**engineer** [2] - 169:2, 169:4

**engineering** [1] - 168:24

**engineers** [1] - 169:4

**English** [2] - 45:7, 142:22

**enrollment** [1] - 111:4

**ensure** [7] - 7:25, 8:1, 8:24, 86:25, 87:1, 134:2, 134:5

**ensuring** [1] - 134:3

**entail** [1] - 24:18

**entered** [24] - 4:2, 52:24, 80:14, 83:7, 127:15, 157:23, 195:7, 197:7, 198:20, 200:20, 201:14, 202:6, 203:8, 204:14, 218:14, 220:1, 221:6, 223:4, 225:6, 227:11, 228:20, 231:14, 232:24, 244:24

**entire** [9] - 16:16, 55:5, 55:24, 84:7, 104:8, 129:13, 129:19, 130:5, 244:12

**entirely** [10] - 56:13, 88:24, 128:16, 130:18, 178:6, 181:14, 182:20, 192:20, 206:24, 214:13

**entitled** [1] - 247:12

**entity** [2] - 152:7, 179:4

**epic** [1] - 23:18

**Erich** [2] - 51:7, 125:23

**Erick** [3] - 51:18, 126:9, 160:13

**Erin** [4] - 47:10, 49:4, 123:10, 123:18

**escalation** [1] - 247:17

**escorted** [1] - 196:15

**especially** [4] - 36:8, 183:2, 214:15, 237:2

**essential** [4] - 10:10, 60:20, 215:11, 216:4

**essentially** [1] - 135:11

**estate** [1] - 32:9

**estates** [1] - 102:14

**estimator** [3] - 113:4,

113:10_, 145:6

**evaluate** [8]_ - 14:23_, 57:3_, 57:23_, 93:11_, 131:25_, 167:2_, 183:23_, 188:23

**evaluating** [2]_ - 131:21_, 183:11

**evaluation** [2]_ - 165:23_, 184:11

**evening** [7]_ - 20:3_, 28:7_, 99:17_, 119:8_, 159:17_, 246:12_, 249:4

**evenings** [1]_ - 117:11

**event** [1]_ - 120:9

**evidence** [45]_ - 10:8_, 14:24_, 16:13_, 46:6_, 46:8_, 48:16_, 52:22_, 53:8_, 54:20_, 55:7_, 55:21_, 56:16_, 57:16_, 57:24_, 58:11_, 60:21_, 81:19_, 81:20_, 89:3_, 93:12_, 94:14_, 95:11_, 127:13_, 127:23_, 129:3_, 129:16_, 130:2_, 130:23_, 131:16_, 132:1_, 132:13_, 134:4_, 167:3_, 183:3_, 183:7_, 183:11_, 183:23_, 184:11_, 184:18_, 188:24_, 189:25_, 214:7_, 214:9_, 235:20_, 248:1

**ex** [2]_ - 119:16_, 196:12

**ex-boyfriend** [1]_ - 196:12

**ex-wife** [1]_ - 119:16

**exact** [2]_ - 172:3_, 247:15

**exactly** [7]_ - 39:2_, 76:24_, 173:24_, 204:6_, 222:13_, 243:7_, 247:18

**Examiner** [2]_ - 51:13_, 51:15

**examiner** [12]_ - 49:2_, 49:22_, 50:13_, 51:6_, 51:8_, 123:12_, 124:7_, 125:10_, 125:22_, 125:24_, 126:3_, 126:4

**examiner/Special** [2]_ - 49:23_, 124:8

**example** [6]_ - 7:20_, 21:2_, 40:10_, 57:10_, 69:11_, 130:10

**examples** [1]_ - 181:16

**exceeding** [2]_ - 18:6_, 97:4

**excellent** [2]_ - 2:18_, 235:5

**except** [1]_ - 134:18

**exception** [1]_ - 3:23

**exceptions** [3]_ - 8:8_, 87:10_, 214:19

**exclude** [4]_ - 54:16_, 77:22_, 128:24_, 211:21

**excluded** [1]_ - 139:13

**excluding** [1]_ - 79:21

**exclusion** [1]_ - 234:13

**Excuse** [1]_ - 244:18

**excuse** [17]_ - 13:22_, 47:17_, 48:12_, 48:24_, 92:17_, 94:23_, 97:17_, 100:10_, 133:8_, 137:17_, 147:14_, 159:20_, 162:6_, 164:18_, 186:23_, 192:2_, 223:24

**excused** [39]_ - 15:9_, 72:5_, 75:8_, 80:20_, 81:3_, 81:10_, 93:23_, 143:13_, 143:25_, 158:3_, 158:7_, 158:13_, 158:16_, 158:22_, 201:11_, 202:3_, 203:3_, 205:16_, 216:13_, 220:21_, 222:25_, 223:18_, 244:12_, 245:4_, 245:7_, 245:9_, 245:10_, 245:11_, 245:12_, 245:13_, 245:22_, 245:23

**excusing** [1]_ - 78:19

**exercise** [6]_ - 53:5_, 56:4_, 149:3_, 160:21_, 185:19_, 200:14

**exercising** [1]_ - 120:7

**exhibits** [1]_ - 183:5

**exists** [2]_ - 52:9_, 126:22

**exited** [27]_ - 61:4_, 82:14_, 134:21_, 136:3_, 137:11_, 159:23_, 193:23_, 195:6_, 196:25_, 198:19_, 200:19_, 201:13_, 202:5_, 203:7_, 204:13_, 205:18_, 219:22_, 220:24_, 223:1_, 223:21_, 224:1_, 227:9_, 228:13_, 231:3_, 232:22_, 233:23_, 246:16

**exiting** [1]_ - 134:20

**expect** [1]_ - 60:9

**expectation** [1]_ - 189:3

**expected** [9]_ - 8:2_, 10:22_, 19:25_, 46:5_, 80:23_, 87:3_, 131:3_, 181:2_, 219:3

**expecting** [1]_ - 136:25

**expense** [2]_ - 37:5

**expensive** [1]_ - 110:8

**experience** [14]_ - 15:4_, 55:14_, 68:8_, 93:16_, 152:10_, 164:18_, 165:21_, 170:18_, 178:4_, 191:1_, 191:9_, 233:11_, 235:21

**experienced** [1]_ - 191:25

**experiences** [8]_ - 79:22_, 190:17_, 196:22_, 220:17_, 227:1_, 228:7_, 233:4_, 233:16

**experiencing** [3]_ - 73:11_, 100:12_, 100:13

**expert** [1]_ - 168:24

**explain** [5]_ - 95:10_, 208:12_, 213:7_, 213:8

**explaining** [1]_ - 225:20

**explains** [1]_ - 140:13

**explanation** [5]_ - 116:8_, 209:2_, 209:4_, 209:11_, 216:3

**explicit** [2]_ - 224:24_, 225:2

**Explosives** [5]_ - 50:6_, 51:15_, 124:16_, 125:5_, 126:5

**exposure** [1]_ - 237:18

**express** [1]_ - 45:4

**extend** [1]_ - 102:16

**extended** [6]_ - 101:25_, 102:6_, 102:13_, 102:15_, 120:6_, 199:11

**extending** [1]_ - 5:3

**extends** [1]_ - 218:25

**extent** [6]_ - 77:8_, 78:1_, 163:8_, 166:13_, 181:3_, 219:10

**exterior** [1]_ - 134:5

**extreme** [1]_ - 212:5

**eye** [5]_ - 119:18_, 148:18_, 155:3_, 155:13_, 155:23

**eyes** [2]_ - 119:17_, 235:16

---

F

---

**F-U-L-K** [2]_ - 49:11_, 123:21

**face** [1]_ - 27:16

**facilities** [1]_ - 89:19

**facility** [1]_ - 160:18

**facing** [3]_ - 6:15_, 41:10_, 85:21

**fact** [15]_ - 52:9_, 64:1_, 66:23_, 126:22_, 157:1_, 161:24_, 186:10_, 186:21_, 206:4_, 207:21_, 216:2_, 235:14_, 244:4_, 248:12_, 248:13

**factor** [4]_ - 131:18_, 187:8_, 187:14_, 189:10

**factors** [11]_ - 10:20_, 15:1_, 57:5_, 57:18_, 57:20_, 89:14_, 93:13_, 131:9_, 131:20_, 131:22

**facts** [6]_ - 15:12_, 15:15_, 58:22_, 94:1_, 94:5_, 189:12

**fails** [2]_ - 55:25_, 130:8

**failure** [1]_ - 41:6

**fair** [96]_ - 7:25_, 14:21_, 15:19_, 60:19_, 68:8_, 68:10_, 68:20_, 74:23_, 78:8_, 79:24_, 87:1_, 88:14_, 93:9_, 94:13_, 134:2_, 137:2_, 150:3_, 150:15_, 150:23_, 153:19_, 156:11_, 156:16_, 162:24_, 165:16_, 167:25_, 169:12_, 170:2_, 170:12_, 171:1_, 171:21_, 172:13_, 173:7_, 174:3_, 174:13_, 175:7_, 176:14_, 177:7_, 178:6_, 182:4_, 188:1_, 188:9_, 189:17_, 190:18_, 190:25_, 191:10_, 192:2_, 195:24_, 195:25_, 199:17_, 200:9_, 200:15_, 200:22_, 201:10_, 201:18_, 202:9_, 202:15_, 202:22_, 202:24_, 202:25_, 203:21_, 204:1_, 204:19_, 205:8_, 205:9_, 206:11_, 208:6_, 210:20_, 211:1_, 220:6_, 220:12_, 222:15_, 223:15_, 227:2_, 228:8_, 229:18_, 229:23_, 230:6_, 233:12_, 234:23_, 235:3_, 235:13_, 237:6_, 237:20_, 238:4_, 238:7_, 238:12_, 239:7_, 239:13_, 240:21_, 240:23_, 241:1_, 241:6_, 241:22_, 243:24_, 244:3_, 248:13

**fairly** [4]_ - 85:2_, 183:12_, 205:11_, 209:20

**fairness** [4]_ - 15:2_, 233:18_, 241:9_, 243:22
**familiar** [3]_ - 5:21_, 178:24_, 185:11
**family** [32]_ - 24:17_, 25:1_, 28:22_, 36:21_, 98:19_, 99:3_, 106:23_, 133:21_, 139:22_, 141:16_, 143:23_, 151:25_, 153:23_, 163:6_, 163:12_, 163:20_, 168:12_, 168:15_, 170:19_, 173:16_, 173:17_, 174:20_, 176:3_, 199:20_, 199:25_, 200:8_, 218:23_, 219:5_, 221:15_, 221:18_, 227:18_, 232:2
**family's** [1]_ - 174:11
**far** [17]_ - 29:10_, 48:23_, 59:15_, 98:20_, 99:4_, 104:6_, 104:7_, 154:23_, 182:16_, 196:4_, 212:5_, 213:24_, 214:25_, 222:17_, 242:21_, 248:12
**Farais** [2]_ - 49:4_, 123:18
**FARAIS** [2]_ - 49:4_, 123:18
**farm** [10]_ - 36:22_, 36:23_, 36:25_, 37:8_, 37:9_, 37:11_, 75:5_, 75:7_, 75:11
**fashion** [2]_ - 22:1_, 43:20
**fast** [2]_ - 207:2_, 207:3
**father** [1]_ - 79:20
**fault** [1]_ - 243:1
**FBI** [50]_ - 47:10_, 49:2_, 49:6_, 49:13_, 49:14_, 49:21_, 49:22_, 49:23_, 50:2_, 50:14_, 50:15_, 50:18_, 50:21_, 50:25_, 51:6_, 51:7_, 51:8_, 51:13_, 51:14_, 65:22_, 66:9_, 123:8_, 123:9_, 123:11_, 123:12_, 123:19_, 123:20_, 124:1_, 124:2_, 124:4_, 124:7_, 124:9_, 124:10_, 125:11_, 125:12_, 125:14_, 125:18_, 125:22_, 125:23_, 125:24_, 126:3_, 126:4_, 142:8_, 168:8_, 170:2
**feature** [1]_ - 186:21
**February** [1]_ - 27:4
**Federal** [5]_ - 47:7_, 47:8_, 49:4_, 50:11_, 124:17
**federal** [9]_ - 4:5_, 17:15_,

83:11_, 96:14_, 175:12_, 177:18_, 177:20_, 179:17_, 221:20
**feed** [2]_ - 6:23_, 86:3
**feelings** [12]_ - 178:13_, 188:8_, 188:15_, 188:17_, 188:20_, 188:22_, 189:13_, 189:17_, 201:9_, 202:14_, 202:21_, 247:10
**fell** [1]_ - 180:8
**fellow** [4]_ - 56:6_, 98:25_, 132:18_, 193:7
**felon** [8]_ - 18:1_, 96:23_, 179:10_, 179:25_, 180:12_, 247:12_, 248:10_, 248:12
**felony** [5]_ - 17:22_, 96:20_, 179:18_, 179:21_, 217:13
**felt** [2]_ - 62:6_, 236:3
**Fercano** [2]_ - 49:5_, 123:19
**fertility** [1]_ - 37:13
**feverishly** [1]_ - 102:10
**few** [12]_ - 6:18_, 9:11_, 14:5_, 18:19_, 40:6_, 57:5_, 85:18_, 88:7_, 133:14_, 167:16_, 181:16_, 199:17
**fibromyalgia** [1]_ - 44:3
**fidget** [1]_ - 40:15
**field** [1]_ - 212:13
**fight** [2]_ - 241:13_, 241:22
**filed** [4]_ - 16:11_, 52:1_, 95:8_, 126:14
**filing** [1]_ - 139:8
**fill** [2]_ - 84:10_, 117:10
**filled** [6]_ - 8:14_, 14:6_, 19:22_, 87:14_, 99:13_, 137:23
**filling** [1]_ - 221:24
**final** [9]_ - 71:8_, 79:14_, 82:17_, 204:11_, 220:15_, 226:25_, 233:25_, 245:25_, 248:6
**finally** [8]_ - 8:21_, 18:7_, 87:20_, 97:5_, 148:24_, 191:20_, 196:20_, 232:23
**financial** [39]_ - 24:5_, 24:9_, 27:15_, 27:17_, 30:21_, 38:15_, 44:15_, 62:24_, 63:7_, 63:17_, 65:6_, 65:10_, 66:17_, 66:22_, 70:8_, 70:17_,

72:18_, 75:5_, 76:7_, 78:23_, 100:20_, 104:22_, 106:22_, 120:2_, 139:1_, 139:7_, 139:20_, 140:19_, 141:4_, 141:9_, 147:16_, 148:25_, 149:2_, 152:11_, 218:23_, 234:11_, 234:12_, 234:15_, 238:21
**financially** [4]_ - 38:20_, 113:16_, 113:17_, 219:13
**fine** [2]_ - 73:22_, 200:5
**firearm** [24]_ - 17:8_, 17:12_, 17:14_, 17:25_, 18:3_, 18:8_, 18:11_, 96:6_, 96:10_, 96:12_, 96:23_, 97:1_, 97:6_, 97:10_, 162:19_, 179:10_, 179:18_, 179:19_, 179:20_, 179:22_, 180:1_, 180:13_, 230:1_, 230:3
**firearms** [11]_ - 179:24_, 192:6_, 192:8_, 213:6_, 213:9_, 229:16_, 229:17_, 229:19_, 229:22_, 230:5_, 247:11
**Firearms** [5]_ - 50:5_, 51:15_, 124:16_, 125:5_, 126:5
**firearms/toolmark** [2]_ - 51:8_, 125:24
**firm** [4]_ - 72:3_, 75:22_, 107:10_, 168:24
**first** [31]_ - 5:22_, 16:22_, 20:8_, 22:17_, 27:22_, 35:3_, 39:25_, 41:23_, 43:25_, 52:14_, 62:10_, 62:22_, 65:7_, 65:11_, 83:16_, 85:9_, 87:10_, 95:22_, 100:15_, 106:4_, 107:8_, 127:3_, 138:20_, 146:12_, 163:5_, 199:23_, 225:16_, 229:11_, 234:8_, 246:22
**Fish** [2]_ - 176:19_, 177:5
**fit** [2]_ - 6:24_, 246:20
**fitness** [1]_ - 120:1
**five** [16]_ - 16:22_, 37:10_, 95:21_, 104:4_, 110:4_, 111:14_, 111:25_, 112:2_, 112:3_, 112:10_, 118:20_, 118:24_, 144:8_, 162:16_, 167:15_, 172:21
**five-week** [1]_ - 118:24
**flag** [1]_ - 151:21
**flagged** [1]_ - 19:21
**flat** [1]_ - 133:19

**flat-out** [1]_ - 133:19
**flight** [2]_ - 101:11_, 149:17
**flights** [1]_ - 35:22
**flip** [1]_ - 188:4
**floor** [3]_ - 135:3_, 137:10_, 172:2
**flooring** [1]_ - 38:18
**Florida** [27]_ - 4:6_, 4:12_, 5:6_, 12:3_, 17:3_, 17:10_, 17:17_, 18:2_, 18:10_, 27:19_, 27:21_, 29:1_, 84:8_, 90:22_, 91:3_, 96:1_, 96:8_, 96:15_, 96:25_, 97:9_, 105:16_, 107:4_, 110:2_, 168:16_, 176:19_, 177:5_, 177:16
**fluency** [1]_ - 142:22
**focus** [8]_ - 41:11_, 46:3_, 67:2_, 111:7_, 143:17_, 148:6_, 162:6_, 236:14
**focused** [5]_ - 24:4_, 81:21_, 123:16_, 232:14_, 234:6
**folks** [29]_ - 14:2_, 21:25_, 47:23_, 81:2_, 82:3_, 86:2_, 94:25_, 99:2_, 100:3_, 122:24_, 123:23_, 133:21_, 149:20_, 159:17_, 161:23_, 169:7_, 178:21_, 188:12_, 190:24_, 193:9_, 193:12_, 211:23_, 216:8_, 221:1_, 224:3_, 234:6_, 245:14_, 246:24_, 247:1
**follow** [38]_ - 14:22_, 38:10_, 46:8_, 53:15_, 54:1_, 54:25_, 56:20_, 58:15_, 58:17_, 59:1_, 65:1_, 68:6_, 68:11_, 71:6_, 74:2_, 74:12_, 77:25_, 78:3_, 80:4_, 86:9_, 93:10_, 105:10_, 106:11_, 132:25_, 145:22_, 152:5_, 153:24_, 156:17_, 165:19_, 187:15_, 205:25_, 206:9_, 206:24_, 208:8_, 220:3_, 226:14_, 243:8_, 247:21
**follow-up** [16]_ - 38:10_, 68:6_, 68:11_, 71:6_, 77:25_, 78:3_, 105:10_, 145:22_, 153:24_, 156:17_, 165:19_, 205:25_, 206:9_, 206:24_, 208:8_, 243:8
**followed** [4]_ - 15:14_, 53:17_, 94:4_, 143:16

**following** [7] - 26:9, 78:7, 78:8, 78:13, 146:1, 158:16, 245:15
**follows** [1] - 189:6
**Foo** [2] - 49:6, 123:20
**FOO** [1] - 49:6
**food** [6] - 42:4, 42:12, 42:20, 42:21, 63:20
**football** [2] - 110:2, 144:9
**for-cause** [39] - 61:7, 61:19, 62:4, 62:13, 62:22, 63:2, 71:12, 76:10, 76:19, 79:12, 79:14, 79:23, 137:15, 137:19, 138:15, 140:18, 142:17, 142:24, 150:19, 151:3, 152:11, 156:18, 157:4, 216:11, 224:10, 224:14, 224:17, 233:25, 234:19, 235:8, 236:21, 237:23, 238:13, 238:18, 241:20, 242:7, 242:16, 242:17, 243:12
**forbidden** [1] - 60:15
**force** [2] - 50:11, 124:17
**forcibly** [2] - 17:18, 96:16
**forefront** [1] - 236:16
**foreign** [5] - 18:4, 18:14, 97:2, 97:12, 179:20
**forensic** [11] - 48:4, 49:21, 49:23, 50:13, 51:5, 123:12, 124:7, 124:8, 125:10, 125:22, 168:24
**Forensic** [1] - 49:2
**forget** [1] - 74:11
**forgive** [1] - 16:25
**forgot** [2] - 159:22, 248:7
**forgotten** [1] - 248:17
**form** [5] - 39:7, 39:20, 133:25, 159:7, 181:6
**former** [15] - 17:4, 96:2, 167:1, 167:24, 170:2, 172:12, 173:14, 173:18, 174:1, 176:12, 177:5, 186:25, 187:1, 187:2, 202:20
**Fort** [5] - 4:6, 25:18, 30:25, 83:12, 115:25
**forth** [2] - 187:3, 213:9

**forthcoming** [1] - 69:5
**forthright** [1] - 95:5
**forum** [3] - 82:7, 98:9, 246:7
**four** [10] - 29:6, 32:9, 37:10, 44:3, 44:16, 48:22, 74:5, 115:19, 170:20, 219:1
**fragile** [1] - 103:18
**frame** [1] - 111:19
**framework** [1] - 5:11
**free** [3] - 90:12, 220:22, 224:4
**frequent** [2] - 25:12, 41:4
**Friday** [3] - 31:1, 108:15, 109:19
**friend** [18] - 153:23, 163:6, 163:12, 165:2, 173:16, 173:18, 177:17, 177:19, 208:20, 209:18, 209:21, 209:23, 209:24, 221:14, 221:18, 223:7, 242:3, 242:6
**friend's** [1] - 223:13
**friends** [13] - 25:2, 29:11, 98:15, 138:7, 163:20, 164:21, 165:14, 166:18, 171:17, 173:21, 174:21, 177:15, 178:2
**friendship** [1] - 174:8
**friendships** [1] - 178:5
**front** [6] - 3:1, 6:7, 85:14, 90:17, 140:4, 156:13
**fulfilling** [1] - 189:14
**Fulk** [2] - 49:11, 123:21
**full** [20] - 14:10, 30:10, 60:9, 66:23, 69:25, 105:6, 105:15, 112:22, 112:23, 117:15, 136:25, 138:10, 145:20, 152:2, 154:21, 173:25, 198:6, 203:17, 217:4, 232:15
**full-time** [9] - 66:23, 69:25, 105:6, 105:15, 112:22, 112:23, 145:20, 152:2, 154:21
**fully** [19] - 16:5, 16:6, 41:11, 44:18, 69:24, 94:22, 95:2, 95:3, 95:5, 102:1, 132:15,

132:16, 162:13, 174:2, 201:25, 205:9, 209:6, 222:21, 232:8
**fun** [1] - 23:19
**function** [3] - 4:8, 84:6, 84:23
**functional** [2] - 44:18, 69:24
**functions** [6] - 35:2, 194:10, 198:3, 203:21, 212:17, 232:15
**fund** [1] - 215:19
**fundamental** [4] - 89:4, 162:4, 179:24, 180:11
**funeral** [1] - 108:15
**furtherance** [6] - 17:8, 17:12, 17:14, 96:6, 96:10, 96:12
**furthermore** [1] - 76:9

### G

**Gale** [2] - 49:12, 123:25
**gallery** [1] - 224:3
**game** [1] - 33:22
**games** [1] - 144:9
**Gardens** [1] - 37:23
**Garett** [2] - 49:6, 123:20
**garner** [1] - 8:2
**gather** [2] - 80:9, 92:25
**Gaul** [2] - 49:13, 124:1
**geared** [1] - 181:4
**gears** [6] - 45:5, 50:9, 99:10, 132:3, 178:23, 180:24
**general** [18] - 41:10, 48:11, 53:14, 65:1, 98:12, 100:9, 105:18, 181:19, 181:25, 182:15, 184:24, 192:7, 196:9, 204:21, 213:24, 214:25, 215:1, 215:22
**generally** [5] - 7:10, 8:6, 20:3, 44:12, 99:16
**generate** [3] - 10:22, 87:4, 181:15
**generated** [3] - 87:3, 89:16, 181:2
**generates** [1] - 182:18
**generation** [1] - 211:23
**gentleman** [17] - 63:19

64:20, 67:13, 70:11, 144:4, 145:5, 147:20, 148:4, 148:16, 150:8, 150:14, 152:14, 152:21, 154:8, 156:22, 211:17, 213:10
**gentlemen** [46] - 4:5, 5:15, 9:23, 11:1, 12:8, 12:17, 12:20, 13:17, 15:10, 51:25, 52:6, 54:9, 58:16, 59:5, 59:22, 60:18, 80:18, 83:10, 84:18, 89:20, 90:23, 91:1, 91:4, 91:10, 92:10, 93:18, 93:24, 95:7, 97:5, 123:1, 126:13, 126:18, 132:21, 133:17, 134:2, 158:1, 162:21, 181:14, 182:21, 183:8, 186:13, 186:20, 187:6, 187:12, 188:21, 205:20
**geographic** [1] - 104:9
**Gilbert** [2] - 49:13, 124:1
**girlfriend** [1] - 23:14
**Girls** [2] - 110:20, 144:23
**given** [19] - 7:6, 8:22, 15:25, 57:20, 58:15, 69:12, 69:19, 69:25, 70:6, 75:10, 81:22, 87:2, 87:16, 122:11, 158:9, 214:23, 235:14, 248:13, 248:24
**glaucoma** [2] - 26:25, 64:21
**goal** [3] - 15:2, 93:14, 185:7
**God** [3] - 4:24, 83:24, 161:16
**God's** [3] - 78:7, 78:8, 78:16
**golf** [3] - 136:23, 150:10
**Gomez** [2] - 49:14, 124:2
**goodness** [1] - 40:6
**Goodrich** [2] - 49:20, 124:3
**gosh** [1] - 136:14
**gotta** [1] - 24:6
**governing** [1] - 229:17
**government** [35] - 9:7, 10:2, 10:4, 11:7, 18:21, 52:7, 52:12, 54:7, 55:5, 55:23, 55:25,

56:9_, 79:13_, 82:20_, 88:24_, 97:20_, 126:19_, 126:24_, 128:16_, 129:13_, 129:19_, 130:5_, 130:7_, 130:14_, 138:15_, 142:8_, 157:13_, 160:3_, 210:19_, 211:11_, 213:15_, 218:8_, 234:2_, 240:14_, 242:12

**government's** [18]_ - 16:16_, 54:14_, 54:16_, 67:20_, 71:10_, 77:24_, 78:11_, 78:18_, 95:13_, 128:22_, 128:24_, 146:3_, 149:20_, 150:13_, 153:7_, 212:9_, 243:6_, 243:19

**governor** [1]_ - 187:1

**graciously** [1]_ - 247:13

**grade** [2]_ - 70:14

**grades** [2]_ - 67:2_, 145:24

**grandparents** [1]_ - 29:9

**grant** [1]_ - 153:13

**granted** [1]_ - 151:3

**gratitude** [1]_ - 5:3

**gratuitous** [2]_ - 247:7_, 247:23

**gratuitously** [1]_ - 247:14

**great** [5]_ - 52:5_, 120:9_, 126:18_, 175:11

**greater** [3]_ - 10:10_, 12:23_, 14:8

**Greenland** [1]_ - 215:6

**Gregor** [2]_ - 49:21_, 124:7

**GREGOR** [1]_ - 49:21

**Gregory** [2]_ - 51:13_, 126:3

**grocery** [3]_ - 42:3_, 42:11_, 42:25

**ground** [1]_ - 248:22

**Group** [23]_ - 2:22_, 61:8_, 61:20_, 61:23_, 62:23_, 74:9_, 76:17_, 76:20_, 79:15_, 80:10_, 82:16_, 83:2_, 83:4_, 157:18_, 157:20_, 160:1_, 205:24_, 233:25_, 234:5_, 244:16_, 247:2_, 248:15_, 248:21

**group** [13]_ - 37:12_, 55:18_, 62:4_, 82:17_, 123:17_, 126:1_, 137:16_, 149:14_, 205:23_, 216:13

_, 232:19_, 244:12_, 245:8

**Groups** [1]_ - 244:17

**groups** [2]_ - 246:19_, 246:25

**grown** [1]_ - 116:14

**guaranteed** [2]_ - 53:2_, 127:17

**guard** [3]_ - 221:20_, 222:2_, 222:7

**guess** [7]_ - 102:21_, 152:8_, 169:5_, 169:11_, 170:5_, 210:21_, 240:22

**guide** [2]_ - 5:24_, 85:5

**guilt** [9]_ - 18:16_, 54:15_, 54:17_, 55:24_, 88:25_, 97:15_, 128:23_, 128:25_, 130:6

**guilty** [34]_ - 10:1_, 10:5_, 10:6_, 12:21_, 12:22_, 16:15_, 16:17_, 52:5_, 52:7_, 52:8_, 52:24_, 53:6_, 56:1_, 56:10_, 88:22_, 89:1_, 91:15_, 95:12_, 95:14_, 95:15_, 126:17_, 126:21_, 127:15_, 127:22_, 130:7_, 130:9_, 130:16_, 184:12_, 186:1_, 205:14

**gun** [3]_ - 153:6_, 196:14_, 247:12

**guys** [1]_ - 20:15

H

**hair** [1]_ - 104:24

**hairstylist** [1]_ - 142:1

**Haitian** [1]_ - 42:21

**half** [14]_ - 20:1_, 59:6_, 75:24_, 99:15_, 102:23_, 103:7_, 104:8_, 105:20_, 106:25_, 110:16_, 118:22_, 158:6_, 197:23_, 218:25

**Haller** [2]_ - 49:22_, 124:8

**HALLER** [2]_ - 49:22_, 124:8

**hand** [10]_ - 4:20_, 83:20_, 85:20_, 161:12_, 191:7_, 202:7_, 207:6_, 208:21_, 210:25_, 219:8

**handle** [4]_ - 69:6_, 73:6_, 180:8_, 232:11

**handled** [2]_ - 18:19_,

32:18

**hands** [87]_ - 10:17_, 11:13_, 18:24_, 19:4_, 19:7_, 19:10_, 19:14_, 19:19_, 39:16_, 45:5_, 45:8_, 46:20_, 48:25_, 49:10_, 49:19_, 50:1_, 50:10_, 50:17_, 50:23_, 51:4_, 51:11_, 51:16_, 51:22_, 52:15_, 52:18_, 54:3_, 55:3_, 55:11_, 55:16_, 56:18_, 56:22_, 57:25_, 58:8_, 58:19_, 59:3_, 89:12_, 90:6_, 97:24_, 98:2_, 98:6_, 99:5_, 99:9_, 106:3_, 122:25_, 123:14_, 123:24_, 124:6_, 124:13_, 124:20_, 125:16_, 126:1_, 126:7_, 126:12_, 127:5_, 127:7_, 128:1_, 129:10_, 129:21_, 129:23_, 129:25_, 130:24_, 132:2_, 132:11_, 133:2_, 178:11_, 178:16_, 178:22_, 179:1_, 179:7_, 180:14_, 180:18_, 180:23_, 182:17_, 183:19_, 183:21_, 184:19_, 185:8_, 185:16_, 185:24_, 186:2_, 187:22_, 188:3_, 188:10_, 189:4_, 190:2_, 192:4_, 192:9

**handy** [1]_ - 207:21

**hang** [3]_ - 59:10_, 133:3_, 193:9

**happy** [1]_ - 108:22

**hard** [13]_ - 33:23_, 46:1_, 46:3_, 46:14_, 53:16_, 53:19_, 120:2_, 195:10_, 195:24_, 201:8_, 230:14_, 243:16

**hard-of-hearing** [1]_ - 195:10

**hardship** [101]_ - 20:24_, 21:8_, 21:12_, 22:6_, 22:14_, 24:6_, 24:9_, 25:10_, 25:13_, 27:17_, 32:19_, 34:3_, 35:16_, 39:6_, 39:8_, 39:9_, 41:23_, 42:2_, 43:21_, 45:4_, 45:5_, 45:10_, 62:24_, 63:7_, 63:17_, 63:25_, 64:3_, 64:8_, 64:19_, 65:1_, 65:6_, 65:10_, 66:17_, 66:22_, 70:9_, 70:17_, 70:24_, 71:1_, 71:3_, 71:4_, 72:19_, 75:6_, 76:7_, 78:24_, 99:24_, 100:20_, 101:9_, 101:22_, 102:22_,

103:4_, 103:25_, 104:1_, 104:23_, 112:13_, 117:8_, 120:2_, 120:20_, 120:24_, 122:1_, 122:7_, 122:12_, 122:24_, 139:1_, 139:7_, 139:20_, 140:7_, 140:11_, 140:13_, 140:19_, 141:4_, 141:9_, 147:8_, 147:16_, 148:2_, 148:25_, 149:2_, 151:9_, 151:19_, 152:11_, 155:7_, 156:1_, 157:2_, 194:6_, 197:22_, 199:2_, 203:16_, 207:6_, 211:21_, 212:5_, 212:12_, 218:18_, 218:23_, 219:5_, 219:10_, 232:1_, 234:11_, 234:12_, 234:16_, 236:10_, 238:21

**hardships** [15]_ - 19:23_, 22:17_, 24:4_, 28:3_, 29:23_, 30:19_, 35:25_, 93:4_, 100:12_, 101:15_, 112:21_, 121:25_, 122:1_, 141:20_, 151:5

**harm** [2]_ - 65:6_, 205:6

**harp** [1]_ - 149:10

**harping** [1]_ - 183:2

**Harris** [3]_ - 49:23_, 124:9_, 186:25

**hashed** [1]_ - 240:22

**HCA** [3]_ - 107:3_, 107:5_, 152:7

**head** [6]_ - 31:24_, 33:3_, 72:22_, 79:1_, 159:25_, 166:19

**heads** [1]_ - 16:20

**healed** [1]_ - 155:23

**Healey** [2]_ - 50:2_, 124:10

**health** [7]_ - 41:18_, 44:9_, 114:7_, 114:9_, 115:9_, 146:20_, 230:21

**hear** [50]_ - 21:4_, 23:19_, 24:3_, 25:6_, 26:1_, 31:14_, 31:19_, 33:1_, 34:1_, 35:13_, 36:3_, 37:18_, 38:12_, 40:23_, 41:20_, 48:16_, 57:7_, 103:22_, 104:20_, 106:18_, 108:19_, 109:9_, 109:24_, 110:11_, 112:18_, 113:25_, 116:9_, 117:4_, 117:20_, 119:24_, 130:25_, 131:11_, 166:9_, 167:6_, 168:4_, 170:15_, 172:16_, 175:24_, 177:10_, 185:9_, 191:6_, 191:14_, 195:5_, 195:19_, 198:18_, 200:23

_, 201:12_, 202:4_, 225:16_, 225:19

**heard** [29]_ - 20:7_, 43:23_, 44:4_, 52:16_, 55:13_, 55:17_, 77:20_, 99:22_, 110:3_, 117:25_, 127:7_, 129:23_, 131:2_, 131:16_, 174:21_, 179:2_, 179:8_, 181:5_, 181:7_, 181:12_, 181:19_, 182:14_, 182:19_, 182:23_, 183:11_, 184:3_, 184:4_, 184:16_, 201:5

**hearing** [17]_ - 26:15_, 45:14_, 53:9_, 57:23_, 77:5_, 77:8_, 77:14_, 78:1_, 78:3_, 131:25_, 145:14_, 178:18_, 194:22_, 195:10_, 195:12_, 235:7_, 239:11

**hearing-loss-related** [1]_ - 78:3

**heart** [5]_ - 41:6_, 122:13_, 147:9_, 147:13_, 213:10

**heavy** [3]_ - 54:14_, 104:12_, 128:22

**held** [2]_ - 11:6_, 196:12

**hello** [17]_ - 29:21_, 29:22_, 41:22_, 105:13_, 106:19_, 106:20_, 125:1_, 168:5_, 170:16_, 173:11_, 173:12_, 175:1_, 175:2_, 201:15_, 201:16_, 202:7_, 204:15

**help** [18]_ - 4:24_, 5:24_, 27:21_, 29:9_, 33:13_, 40:13_, 42:4_, 63:11, 83:24_, 86:9_, 105:19_, 106:2_, 108:5_, 112:24_, 113:1_, 145:12_, 161:16_, 211:24

**helpers** [1]_ - 85:13

**helpful** [1]_ - 13:7

**helps** [1]_ - 106:1

**hence** [1]_ - 152:9

**herniated** [1]_ - 44:3

**herself** [1]_ - 69:11

**Herzog** [1]_ - 30:23

**hesitation** [7]_ - 53:10_, 54:22_, 55:9_, 129:5_, 129:18_, 130:20_, 202:9

**hi** [5]_ - 103:12_, 105:12_, 109:25_, 124:25_, 171:9

**high** [10]_ - 8:2_, 9:17_, 41:15_, 77:4_, 77:11_,

87:2_, 111:15_, 230:15_, 241:16_, 241:22

**High** [1]_ - 111:24

**Highway** [1]_ - 177:16

**Hillary** [1]_ - 187:1

**himself** [10]_ - 12:14_, 12:18_, 12:20_, 91:9_, 91:11_, 91:14_, 185:18_, 185:23_, 186:1_, 238:3

**Hinshaw** [2]_ - 51:19_, 126:9

**hired** [1]_ - 115:11

**history** [8]_ - 19:11_, 70:22_, 71:11_, 141:10_, 187:3_, 217:12_, 223:14_, 239:18

**Hlinka** [2]_ - 50:2_, 124:11

**hold** [15]_ - 10:15_, 15:4_, 56:3_, 56:10_, 56:15_, 65:19_, 71:7_, 89:10_, 92:3_, 93:16_, 106:3_, 130:21_, 185:21_, 207:10_, 215:11

**holding** [2]_ - 3:15_, 190:21

**Holland** [2]_ - 50:3_, 124:14

**home** [16]_ - 7:4_, 29:3_, 33:20_, 36:20_, 67:11_, 86:7_, 105:1_, 105:16_, 113:1_, 114:7_, 114:9_, 115:8_, 120:8_, 146:19_, 196:14_, 204:7

**Homecare** [2]_ - 114:14_, 114:15

**homemade** [1]_ - 209:19

**honestly** [1]_ - 166:4

**honesty** [1]_ - 16:7

**Honor** [124]_ - 2:5_, 2:16_, 2:25_, 3:20_, 27:12_, 28:20_, 31:15_, 32:4_, 33:2_, 35:14_, 37:19_, 41:22_, 43:11_, 43:18_, 43:24_, 45:22_, 61:11_, 61:13_, 62:19_, 64:1_, 65:16_, 66:3_, 66:9_, 67:4_, 67:16_, 68:5_, 68:24_, 70:8_, 70:21_, 73:17_, 73:25_, 74:14_, 76:12_, 76:15_, 76:17_, 76:21_, 77:25_, 79:5_, 79:17_, 80:6_, 82:21_, 82:23_, 107:17_, 109:10_, 111:12_, 117:21_, 118:12_, 138:16_, 138:19_, 140:7_, 141:1_, 141:2_, 141:18_,

142:1_, 142:7_, 143:2_, 144:7_, 144:16_, 144:21_, 145:4_, 145:19_, 146:11_, 146:15_, 147:1_, 147:8_, 148:10_, 148:24_, 149:22_, 151:23_, 153:9_, 154:19_, 155:6_, 156:14_, 156:25_, 157:14_, 160:4_, 170:16_, 171:22_, 172:17_, 173:1_, 173:11_, 175:8_, 176:15_, 176:18_, 204:16_, 206:2_, 206:13_, 206:16_, 206:19_, 207:14_, 209:5_, 210:24_, 211:12_, 212:11_, 213:19_, 216:15_, 216:17_, 217:7_, 217:10_, 218:2_, 218:4_, 218:7_, 218:10_, 218:21_, 219:6_, 219:12_, 223:17_, 224:13_, 228:16_, 228:19_, 234:9_, 235:18_, 236:11_, 237:15_, 240:14_, 240:17_, 241:5_, 242:13_, 243:7_, 244:10_, 244:17_, 247:5_, 247:9_, 247:13

**honor** [1]_ - 189:3

**hope** [2]_ - 15:15_, 84:24

**horrible** [1]_ - 39:22

**hospice** [2]_ - 32:10_, 72:4

**hospital** [2]_ - 107:3_, 152:1

**host** [1]_ - 89:18

**hotel** [1]_ - 121:17

**hotels** [2]_ - 23:17_, 35:23

**hour** [7]_ - 20:4_, 28:14_, 44:6_, 44:14_, 59:6_, 99:18_, 158:25

**hourly** [1]_ - 33:6

**hours** [12]_ - 28:6_, 31:8_, 36:13_, 39:24_, 44:16_, 106:12_, 112:13_, 143:10_, 160:23_, 211:18_, 232:7_, 232:9

**house** [4]_ - 28:23_, 33:3_, 68:15_, 196:16

**household** [8]_ - 27:15_, 30:20_, 33:3_, 72:23_, 79:1_, 106:24_, 114:3

**housekeeping** [1]_ - 59:11

**HR** [5]_ - 107:9_, 110:15_, 110:22_, 115:13_, 144:23

**huge** [2]_ - 36:7_, 74:21

**humanly** [1]_ - 219:20

**humbling** [1]_ - 4:8

**hungry** [1]_ - 158:24

**hurt** [1]_ - 36:7

**husband** [22]_ - 26:12_, 44:7_, 71:22_, 109:25_, 112:25_, 163:21_, 164:17_, 165:13_, 169:4_, 175:25_, 176:3_, 196:15_, 197:19_, 197:22_, 203:23_, 212:4_, 212:13_, 222:1_, 222:4_, 231:18_, 238:22_, 243:4

**husband's** [6]_ - 64:13_, 165:23_, 168:14_, 170:5_, 176:12_, 222:7

**husband-and-wife** [1]_ - 243:4

**hydroponic** [1]_ - 36:22

**hygiene** [1]_ - 30:4

**hypertension** [4]_ - 77:4_, 77:12_, 213:10_, 230:17

**hypothetical** [2]_ - 53:4_, 56:4

**hypothetically** [2]_ - 110:25_, 232:6

**I**

**idea** [4]_ - 179:25_, 180:12_, 180:20_, 185:4

**ideal** [1]_ - 235:16

**identified** [4]_ - 39:6_, 150:5_, 152:25_, 170:10

**identify** [3]_ - 71:1_, 140:6_, 155:7

**identifying** [5]_ - 7:3_, 66:10_, 86:6_, 86:23_, 87:7

**identity** [1]_ - 186:20

**illegal** [2]_ - 184:25_, 215:6

**illustrate** [1]_ - 130:10

**imagine** [2]_ - 155:23_, 233:10

**imaging** [1]_ - 48:4

**immediate** [1]_ - 72:4

**immediately** [1]_ - 32:11

**immigration** [1]_ - 215:7

**impact** [6]_ - 3:5_, 170:7_, 171:20_, 174:2_, 202:22_, 243:22

**impacted** [1]_ - 144:24

**impairment** [4]_ - 45:14_, 45:19_, 46:21_, 122:3

**impartial** [52]_ - 14:22_, 15:19_, 68:20_, 74:24_, 78:8_, 79:25_, 93:9_, 94:13_, 137:3_, 162:24_, 165:17_, 168:1_, 169:12_, 170:3_, 170:12_, 171:1_, 171:21_, 172:13_, 173:7_, 174:3_, 174:13_, 175:7_, 176:14_, 177:7_, 188:1_, 188:9_, 189:24_, 190:18_, 191:1_, 191:11_, 192:2_, 196:1_, 196:8_, 200:9_, 200:23_, 202:9_, 202:15_, 203:21_, 205:9_, 205:12_, 206:11_, 208:6_, 210:21_, 220:6_, 222:15_, 223:15_, 227:2_, 228:8_, 229:18_, 229:24_, 233:12_, 248:13

**impartiality** [6]_ - 15:2_, 166:2_, 220:17_, 230:10_, 233:18_, 236:5

**impartially** [2]_ - 54:19_, 129:2

**impede** [3]_ - 17:19_, 96:17_, 174:17

**impedes** [1]_ - 160:20

**impending** [3]_ - 63:18_, 63:21_, 238:22

**impermissible** [3]_ - 56:3_, 56:8_, 130:18

**implants** [1]_ - 104:17

**important** [35]_ - 4:7_, 5:9_, 5:18_, 7:18_, 9:11_, 9:23_, 10:10_, 15:6_, 15:11_, 16:4_, 41:11_, 52:13_, 53:12_, 54:23_, 55:4_, 57:13_, 59:24_, 84:15_, 84:23_, 85:8_, 88:15_, 93:25_, 94:2_, 99:11_, 106:13_, 129:6_, 133:17_, 159:3_, 159:14_, 182:21_, 182:22_, 185:11_, 187:9_, 246:11_, 247:20

**importantly** [1]_ - 10:6

**importer's** [2]_ - 18:12_, 97:10

**imposition** [4]_ - 58:4_, 132:6_, 132:7

**impossible** [2]_ - 105:20_, 143:4

**imprisonment** [2]_ - 18:6_, 97:3

**improper** [6]_ - 8:4_, 9:14_

_, 9:16_, 87:5_, 88:4_, 88:11

**inability** [3]_ - 65:1_, 68:20_, 200:22

**inadequate** [2]_ - 5:24_, 85:4

**inadvertently** [1]_ - 217:24

**incapable** [1]_ - 45:16

**incident** [8]_ - 136:10_, 143:18_, 184:5_, 184:16_, 201:1_, 204:25_, 206:10_, 241:16

**includes** [5]_ - 60:1_, 133:18_, 134:10_, 159:5_, 159:7

**including** [9]_ - 6:9_, 10:21_, 85:17_, 89:15_, 89:18_, 95:18_, 111:15_, 192:22_, 226:13

**income** [9]_ - 30:20_, 101:4_, 103:8_, 103:14_, 106:24_, 139:5_, 139:21_, 151:25_, 218:19

**inconvenience** [2]_ - 84:21_, 100:9

**increased** [2]_ - 10:19_, 89:14

**indeed** [3]_ - 5:9_, 9:20_, 88:18

**independently** [1]_ - 239:12

**Indian** [7]_ - 30:2_, 30:11_, 66:24_, 163:23_, 177:16_, 222:2_, 222:12

**indicate** [7]_ - 121:8_, 154:16_, 203:19_, 208:19_, 230:17_, 241:9_, 241:17

**indicated** [41]_ - 20:23_, 52:2_, 52:4_, 63:1_, 65:7_, 66:23_, 67:1_, 67:10_, 68:7_, 69:10_, 71:10_, 72:3_, 72:19_, 73:5_, 73:10_, 73:15_, 80:25_, 81:14_, 122:3_, 139:21_, 142:20_, 143:15_, 183:15_, 189:22_, 200:22_, 202:8_, 215:10_, 217:1_, 218:18_, 223:7_, 235:1_, 237:6_, 238:2_, 238:21_, 238:24_, 239:5_, 240:3_, 241:6_, 241:9_, 241:21_, 243:11

**indicates** [2]_ - 131:18_, 153:22

**indicating** [3]_ - 40:3_, 53:20_, 53:23

**indicating)** [2]_ - 199:5_, 225:15

**indication** [2]_ - 70:9_, 243:21

**indicative** [1]_ - 66:2

**indictment** [24]_ - 10:2_, 16:10_, 16:13_, 16:15_, 16:21_, 16:24_, 18:16_, 52:1_, 52:3_, 52:9_, 52:19_, 88:22_, 95:8_, 95:10_, 95:12_, 95:24_, 97:14_, 97:15_, 126:14_, 126:16_, 126:22_, 127:11_, 127:13_, 162:16

**indirect** [1]_ - 169:11

**indirectly** [3]_ - 19:8_, 98:7_, 135:11

**indispensable** [2]_ - 5:15_, 84:20

**individual** [12]_ - 69:3_, 140:2_, 145:13_, 145:20_, 162:23_, 193:3_, 212:20_, 214:8_, 216:8_, 216:23_, 218:6_, 218:8

**individuals** [5]_ - 46:23_, 47:12_, 49:17_, 51:3_, 102:13

**infant** [1]_ - 24:20

**inference** [2]_ - 56:12_, 130:17

**inferenced** [1]_ - 3:16

**influence** [5]_ - 11:5_, 60:23_, 89:24_, 171:21_, 174:12

**influenced** [5]_ - 14:25_, 15:3_, 93:13_, 93:15_, 134:5

**information** [22]_ - 5:25_, 7:3_, 8:7_, 8:15_, 11:17_, 38:17_, 45:18_, 61:20_, 63:21_, 76:1_, 86:6_, 86:23_, 87:8_, 90:11_, 98:11_, 154:1_, 154:15_, 169:9_, 175:19_, 181:25_, 183:23_, 222:19

**informed** [3]_ - 99:13_, 107:25_, 138:5

**informing** [4]_ - 16:11_, 52:1_, 95:8_, 126:14

**inmates** [1]_ - 68:21

**innocence** [18]_ - 10:7_, 52:15_, 52:16_, 53:11_, 53:15_, 54:1_, 54:2_, 55:7_

_, 55:21_, 89:2_, 95:18_, 127:4_, 127:8_, 127:22_, 127:25_, 128:13_, 129:15_, 130:1

**innocent** [10]_ - 10:1_, 52:25_, 53:2_, 53:7_, 88:21_, 127:16_, 127:17_, 139:16_, 145:10_, 248:10

**inquire** [10]_ - 23:8_, 47:3_, 80:3_, 114:19_, 143:19_, 151:20_, 210:1_, 225:3_, 229:20_, 233:2

**inquiring** [1]_ - 74:6

**inquiry** [8]_ - 80:4_, 154:2_, 207:13_, 210:13_, 213:14_, 214:23_, 221:14_, 228:17

**Instacart** [3]_ - 43:2_, 43:4_, 63:20

**installer** [1]_ - 38:19

**instances** [1]_ - 247:20

**instead** [1]_ - 88:12

**institution** [1]_ - 44:16

**instruct** [3]_ - 130:11_, 179:16_, 188:25

**instructed** [9]_ - 3:6_, 14:22_, 14:25_, 58:1_, 81:25_, 93:10_, 134:12_, 224:15_, 246:22

**instruction** [10]_ - 54:10_, 54:24_, 83:4_, 128:19_, 129:7_, 134:7_, 187:16_, 224:24_, 226:15_, 235:24

**instructions** [25]_ - 6:1_, 6:18_, 58:18_, 59:1_, 59:9_, 59:23_, 60:22_, 78:14_, 78:16_, 85:6_, 92:16_, 133:1_, 133:13_, 134:17_, 136:1_, 142:11_, 158:10_, 159:14_, 192:15_, 226:18_, 228:11_, 230:25_, 232:19_, 246:4_, 246:11

**instructor** [1]_ - 120:1

**instructs** [1]_ - 132:22

**insurance** [2]_ - 36:10_, 74:19

**Insurance** [1]_ - 36:11

**integral** [1]_ - 65:18

**integrity** [2]_ - 8:1_, 87:1

**intended** [4]_ - 11:7_, 15:18_, 94:11_, 186:15

**intent** [3]_ - 17:21_, 96:19_, 186:16

**intentionally** [3]_ - 17:4

_, 96:2_, 185:1

**interact** [1]_ - 169:6

**interacted** [5]_ - 99:7_, 123:6_, 135:9_, 175:17

**interacting** [1]_ - 19:11

**interaction** [10]_ - 3:15_, 18:20_, 49:8_, 50:8_, 123:23_, 134:10_, 136:24_, _, 137:2_, 146:2_, 169:10

**interactions** [1]_ - 97:25

**interest** [2]_ - 76:3_, 131:15

**interested** [2]_ - 146:21_, 244:6

**interests** [1]_ - 57:14

**interfere** [8]_ - 17:19_, 39:9_, 41:10_, 45:19_, 69:21_, 73:19_, 96:17_, 111:6

**interference** [3]_ - 13:9_, _, 88:5_, 212:16

**intermediary** [1]_ - 19:9

**International** [1]_ - 136:15

**international** [1]_ - 105:25

**internet** [5]_ - 82:6_, 98:8_, _, 98:18_, 133:23_, 159:8

**interpreted** [1]_ - 10:19

**interrupt** [1]_ - 214:1

**interrupting** [1]_ - 118:17

**interruption** [1]_ - 23:22

**interruptions** [1]_ - 24:2

**interstate** [5]_ - 18:4_, 18:14_, 97:2_, 97:12_, 179:20

**Intervention** [1]_ - 34:13

**intimidate** [2]_ - 17:19_, 96:17

**intimidating** [2]_ - 16:8_, 85:3

**introduce** [8]_ - 11:25_, 12:14_, 13:12_, 90:7_, 90:18_, 91:8_, 92:5_, 93:2

**introduced** [5]_ - 11:19_, 12:12_, 14:3_, 18:21_, 97:21

**introduction** [2]_ - 3:13_, _, 11:14

**introductions** [5]_ - 3:1_, _, 6:2_, 11:23_, 18:18_, 85:8

**investigation** [8]_ - 60:4_, _, 60:17_, 81:19_, 82:5_, 133:22_, 133:25_, 159:6_, 246:6

**Investigation** [5]_ - 47:7_, _, 47:8_, 49:5_, 50:12_, 124:17

**investigative** [1]_ - 65:18

**invite** [1]_ - 211:25

**involve** [2]_ - 199:22_, 229:18

**involved** [5]_ - 203:23_, 204:4_, 209:6_, 221:11_, 223:8

**involves** [1]_ - 57:4

**involving** [1]_ - 238:22

**IRSC** [1]_ - 115:24

**issue** [25]_ - 12:23_, 19:21_, _, 40:16_, 43:13_, 55:12_, 67:7_, 68:1_, 77:2_, 79:2_, _, 106:20, 128:4_, 128:7_, 138:10_, 144:18_, 150:4_, 153:3_, 155:20_, 163:9_, 186:11_, 198:23_, 199:6_, 199:10_, 225:3_, 239:25_, 240:11

**issues** [41]_ - 2:23_, 3:18_, _, 13:6_, 14:23_, 39:11_, 41:9_, 46:7_, 59:17_, 65:2_, _, 67:18_, 68:16_, 69:6_, 69:18_, 69:19_, 69:20_, 77:5_, 82:19_, 89:18_, 93:11_, 97:16_, 105:18_, 117:22_, 118:1_, 133:6_, 141:25_, 143:14_, 144:11_, _, 145:9_, 148:12_, 153:5_, _, 153:11_, 156:7_, 160:2_, _, 194:6_, 199:1_, 213:6_, 230:9_, 242:5_, 247:4_, 248:6_, 249:3

**IT** [2]_ - 161:23_, 173:18

**item** [4]_ - 210:10_, 210:17_, _, 211:10_, 212:25

**items** [4]_ - 77:17_, 91:24_, _, 160:6_, 180:6

**itself** [4]_ - 9:25_, 75:10_, 105:24_, 150:12

## J

**jail** [2]_ - 149:24_, 160:18

**James** [5]_ - 2:6_, 12:9_, 18:23_, 91:5_, 97:23

**January** [1]_ - 122:14

**Jason** [2]_ - 49:23_, 124:9

**Jay** [2]_ - 50:21_, 125:17

**Jerry** [3]_ - 50:13_, 124:21_, _, 125:10

**Jersey** [2]_ - 31:18_, 71:20

**job** [26]_ - 6:8_, 6:12_, 11:16_, 33:5_, 57:2_, 85:15_, 85:18_, 90:9_, 114:23_, 114:25_, 115:5_, 115:7_, 119:2_, 136:10_, 136:18_, 137:8_, 140:4_, 150:9_, 150:21_, 168:20_, 169:23_, 171:20_, 185:6_, 221:19_, 222:7_, 222:12

**jobs** [6]_ - 38:19_, 113:2_, 113:19_, 115:6_, 145:6_, 146:20

**John** [10]_ - 2:5_, 12:2_, 18:22_, 51:19_, 90:20_, 97:22_, 126:9_, 187:2

**join** [1]_ - 59:16

**joking** [1]_ - 42:23

**Jorge** [2]_ - 49:14_, 124:2

**Jose** [2]_ - 50:14_, 125:11

**jot** [3]_ - 98:10_, 100:1_, 181:10

**jotted** [3]_ - 28:16_, 53:21_, _, 189:22

**journalism** [1]_ - 111:15

**judge** [3]_ - 4:11_, 58:5_, 132:8

**Judge** [17]_ - 2:9_, 15:12_, 67:10_, 83:13_, 94:1_, 112:19_, 124:25_, 153:24_, _, 161:20_, 173:15_, 197:2_, 197:6_, 203:6_, 204:12_, 221:3_, 231:5_, 243:21

**judges** [6]_ - 5:5_, 15:12_, 15:15_, 93:25_, 94:4_, 189:12

**judging** [1]_ - 201:24

**judgment** [1]_ - 220:7

**Judicial** [2]_ - 173:18_, 173:20

**judicial** [1]_ - 214:13

**junior** [2]_ - 49:14_, 124:2

**Jupiter** [1]_ - 37:22

**juries** [1]_ - 85:1

**juror** [144]_ - 5:17_, 6:15_, 7:5_, 7:6_, 19:21_, 20:12_, _, 21:17_, 29:16_, 30:15_, 39:10_, 43:19_, 43:22_,

45:16_, 47:13_, 64:15_, 68:6_, 68:18_, 69:23_, 70:7_, 70:25_, 73:22_, 74:4_, 77:8_, 77:21_, 77:23_, 80:3_, 85:21_, 86:8_, 94:20_, 100:10_, 113:15_, 118:20_, 120:22_, _, 122:5_, 133:9_, 133:21_, _, 134:18_, 134:22_, 134:23_, 136:2_, 136:3_, 137:11_, 137:22_, 142:20_, _, 144:7_, 145:23_, 146:11_, 147:14_, 150:25_, _, 151:6_, 152:4_, 152:17_, _, 153:8_, 154:18_, 154:20_, 155:7_, 156:3_, 156:15_, 157:1_, 158:12_, 165:17_, 169:13_, 171:21_, _, 172:13_, 188:1_, 192:23_, 194:10_, 195:6_, 195:7_, 196:25_, 197:7_, 198:19_, 198:20_, 200:19_, _, 200:20_, 201:13_, 201:14_, 202:5_, 202:6_, 203:7_, 203:8_, 203:21_, 204:13_, 204:14_, 205:18_, _, 207:12_, 208:6_, 209:22_, 210:4_, 210:19_, 210:25_, 211:14_, 212:11_, _, 212:15_, 212:17_, 214:17_, 217:17_, 217:23_, _, 218:1_, 218:14_, 219:22_, 219:24_, 220:1_, 220:7_, 220:24_, 221:6_, 222:15_, 223:1_, 223:4_, 223:15_, 223:21_, 224:1_, 224:6_, 225:6_, 227:2_, 227:9_, 227:11_, 227:25_, 228:13_, 228:17_, 228:20_, _, 229:5_, 229:8_, 229:24_, _, 230:6_, 230:10_, 231:3_, _, 231:4_, 231:14_, 232:15_, 232:22_, 232:24_, _, 233:13_, 233:23_, 235:5_, 235:16_, 238:17_, 239:9_, 241:5_, 241:8_, 241:16_, 241:18_, 242:13_, _, 243:24

**Juror** [322]_ - 22:1_, 22:13_, _, 22:15_, 24:3_, 25:6_, 26:1_, 26:21_, 27:11_, 28:1_, 28:19_, 29:15_, 29:20_, 30:15_, 31:13_, 31:14_, 32:3_, 32:25_, 33:1_, 33:25_, 34:1_, 35:12_, 35:13_, 36:2_, 36:3_, 36:18_, 37:18_, 38:12_, 39:3_, 39:18_, 40:21_, 40:23_, 41:20_, 41:21_, 43:10_, 43:16_,

45:21_, 49:16_, 49:17_, 53:13_, 53:21_, 59:16_, 59:18_, 64:25_, 65:5_, 65:15_, 65:17_, 65:23_, 66:1_, 66:3_, 66:6_, 67:6_, 68:13_, 69:2_, 69:17_, 70:5_, 70:19_, 70:21_, 70:24_, 71:8_, 71:14_, 71:17_, 72:18_, 73:3_, 73:19_, 74:12_, 75:21_, 78:4_, 78:6_, 78:10_, 78:20_, 81:4_, 81:5_, 81:6_, 81:7_, 81:8_, 98:24_, 99:1_, 100:16_, 101:7_, 101:21_, 103:1_, 103:3_, 103:22_, 104:19_, 104:20_, 106:18_, 108:17_, 108:19_, 109:9_, 109:23_, 109:24_, 110:10_, 110:11_, 112:18_, 116:8_, 116:9_, 117:4_, 117:19_, 119:23_, 120:19_, 121:1_, 121:23_, 124:24_, 128:1_, 133:10_, 135:4_, 135:6_, 138:5_, 138:11_, 138:20_, 139:12_, 140:16_, 141:22_, 141:24_, 142:9_, 144:15_, 145:20_, 145:22_, 153:3_, 158:17_, 158:18_, 158:19_, 158:20_, 158:21_, 163:17_, 163:25_, 166:9_, 166:12_, 167:6_, 168:4_, 170:15_, 171:8_, 171:24_, 172:16_, 173:9_, 173:10_, 174:24_, 174:25_, 175:24_, 177:10_, 180:2_, 180:3_, 180:10_, 181:17_, 181:23_, 182:5_, 182:8_, 182:11_, 183:14_, 183:17_, 183:25_, 187:17_, 187:21_, 189:19_, 190:12_, 190:19_, 190:20_, 190:22_, 191:8_, 191:14_, 191:16_, 193:25_, 195:5_, 196:23_, 196:24_, 197:4_, 197:5_, 198:18_, 200:17_, 200:18_, 201:12_, 201:16_, 202:4_, 202:7_, 204:10_, 204:15_, 206:3_, 206:8_, 207:5_, 207:22_, 208:14_, 208:17_, 209:13_, 210:5_, 210:6_, 210:8_, 210:15_, 211:4_, 211:6_, 211:21_, 212:22_, 213:2_, 213:4_, 213:13_, 213:17_, 216:24_, 217:3_, 217:6_, 217:11_, 217:14_, 217:16_, 217:19_, 217:25_, 218:6_, 218:13_, 221:5_, 221:9_, 221:23_, 223:3_, 223:5_,

225:3_, 228:14_, 228:16_, 228:24_, 229:9_, 230:24_, 231:16_, 232:23_, 234:10_, 234:13_, 234:18_, 234:20_, 235:1_, 235:8_, 236:3_, 236:5_, 236:8_, 236:25_, 237:5_, 237:11_, 238:2_, 238:11_, 238:20_, 239:5_, 239:14_, 239:24_, 240:3_, 241:4_, 242:8_, 243:13_, 243:15_, 245:9_, 245:10_, 245:11_, 245:12_, 245:13_, 245:16_, 245:17_, 245:18_, 245:19_, 245:20

JUROR [483]_ - 20:20_, 20:25_, 21:8_, 21:11_, 21:18, 21:23_, 22:16_, 22:23_, 23:3_, 23:7_, 23:10_, 23:13_, 23:17, 23:21_, 24:5_, 24:10_, 24:13_, 24:16_, 24:19_, 24:24_, 25:3_, 25:8_, 25:11_, 25:16_, 25:20_, 25:24_, 26:2_, 26:6_, 26:8_, 26:12_, 26:16_, 26:20_, 26:22_, 26:24_, 27:12_, 27:14_, 27:19_, 27:22_, 28:2_, 28:18_, 28:20_, 28:22_, 29:10_, 29:18_, 29:21_, 29:23_, 30:2_, 30:4_, 30:7_, 30:12_, 30:17_, 30:19_, 31:9_, 31:15_, 31:17_, 31:20_, 31:23_, 32:2_, 32:4_, 32:17_, 32:23_, 33:2_, 33:11_, 33:15_, 33:19_, 34:2_, 34:8_, 34:13_, 34:19_, 34:22_, 35:3_, 35:6_, 35:10_, 35:14_, 35:16_, 35:19_, 35:22_, 36:1_, 36:4_, 36:10_, 36:14_, 36:19_, 37:3_, 37:7_, 37:12_, 37:19_, 37:21_, 38:4_, 38:6_, 38:11_, 38:13_, 38:15_, 38:18_, 38:23_, 39:2_, 39:4_, 39:19_, 40:3_, 40:14_, 40:20_, 40:24_, 41:12_, 41:22_, 41:25_, 42:8_, 42:13_, 42:16_, 42:18_, 42:21_, 42:24_, 43:2_, 43:6_, 43:9_, 43:11_, 43:17_, 43:24_, 44:14_, 44:22_, 45:22_, 45:24_, 46:10_, 46:12_, 46:17_, 47:14_, 47:21_, 47:25_, 48:4_, 48:8_, 48:18_, 53:16_, 53:23_, 82:12_, 98:14_, 98:17_, 98:21_,

100:19_, 100:21_, 101:1_, 101:5_, 101:10_, 101:13_, 101:17_, 101:23_, 102:3_, 102:6_, 102:11_, 102:20_, 102:24_, 103:5_, 103:9_, 103:12_, 103:17_, 103:24_, 104:1_, 104:16_, 104:21_, 104:24_, 105:5_, 105:12_, 105:15_, 105:22_, 105:24_, 106:8_, 106:15_, 106:17_, 106:19_, 106:22_, 107:3_, 107:7_, 107:13_, 107:17_, 107:20_, 108:7_, 108:14_, 108:20_, 108:25_, 109:2_, 109:4_, 109:7_, 109:10_, 109:12_, 109:15_, 109:17_, 109:19_, 109:21_, 109:25_, 110:12_, 110:14_, 110:20_, 110:23_, 111:3_, 111:8_, 111:10_, 111:12_, 111:14_, 111:24_, 112:2_, 112:7_, 112:12_, 112:19_, 112:21_, 113:4_, 113:9_, 113:12_, 113:17_, 114:2_, 114:7_, 114:10_, 114:12_, 114:14_, 114:18_, 114:22_, 115:2_, 115:6_, 115:8_, 115:15_, 115:18_, 115:22_, 115:24_, 116:3_, 116:10_, 116:12_, 116:18_, 116:21_, 116:23_, 117:5_, 117:7_, 117:17_, 117:21_, 118:2_, 118:6_, 118:11_, 118:12_, 118:16_, 118:18_, 119:1_, 119:4_, 119:7_, 119:12_, 119:15_, 119:21_, 119:25_, 120:12_, 120:16_, 120:23_, 121:3_, 121:5_, 121:7_, 121:10_, 121:12_, 121:14_, 121:16_, 121:20_, 122:13_, 122:19_, 122:22_, 124:25_, 125:2_, 125:6_, 128:3_, 128:6_, 134:24_, 135:11_, 135:18_, 135:20_, 135:22_, 136:8_, 136:14_, 136:18_, 136:22_, 137:4_, 137:6_, 163:21_, 164:3_, 164:5_, 164:8_, 164:10_, 164:13_, 164:15_, 164:20_, 164:23_, 164:25_, 165:3_, 165:5_, 165:8_, 165:11_, 165:18_, 165:25_, 166:4_, 166:11_, 166:15_, 166:19_, 166:22_, 166:24_, 167:4_, 167:8_, 167:11_, 167:15_, 167:17_, 167:19_, 167:22_, 168:2_, 168:5_

168:7_, 168:10_, 168:14_, 168:19_, 168:23_, 169:3_, 169:8_, 169:14_, 169:16_, 169:21_, 170:4_, 170:8_, 170:13_, 170:16_, 170:20_, 170:23_, 171:2_, 171:5_, 171:9_, 171:11_, 171:13_, 171:15_, 171:18_, 171:22_, 171:25_, 172:3_, 172:7_, 172:10_, 172:14_, 172:17_, 172:24_, 173:1_, 173:4_, 173:8_, 173:11_, 173:14_, 173:23_, 174:4_, 174:7_, 174:10_, 174:14_, 174:19_, 174:22_, 175:1_, 175:3_, 175:8_, 175:11_, 175:16_, 175:18_, 175:21_, 175:25_, 176:7_, 176:10_, 176:15_, 176:18_, 176:23_, 176:25_, 177:3_, 177:8_, 177:11_, 177:15_, 177:21_, 177:24_, 178:8_, 180:4_, 181:20_, 181:24_, 182:3_, 182:9_, 182:12_, 191:12_, 191:15_, 191:18_, 191:21_, 194:2_, 194:11_, 195:1_, 195:4_, 195:11_, 195:14_, 195:17_, 195:20_, 196:2_, 196:7_, 196:11_, 196:14_, 196:19_, 197:11_, 197:14_, 197:18_, 197:24_, 198:4_, 198:10_, 198:13_, 198:17_, 198:25_, 199:3_, 199:8_, 199:12_, 199:14_, 199:20_, 199:23_, 200:7_, 200:11_, 200:13_, 200:25_, 201:7_, 201:15_, 201:20_, 202:1_, 202:12_, 202:16_, 202:23_, 203:1_, 203:13_, 203:22_, 204:3_, 204:6_, 204:8_, 204:16_, 204:23_, 205:2_, 205:11_, 218:21_, 218:25_, 219:6_, 219:12_, 219:17_, 220:9_, 220:13_, 220:19_, 221:12_, 221:16_, 221:21_, 222:1_, 222:5_, 222:10_, 222:16_, 222:20_, 222:23_, 223:17_, 225:12_, 225:14_, 225:17_, 225:23_, 226:5_, 226:9_, 226:16_, 226:20_, 226:23_, 227:4_, 227:8_, 227:16_, 227:19_, 227:21_, 228:1_, 228:5_, 228:9_, 229:6_, 229:8_, 229:10_, 229:25_, 230:4_, 230:8_, 230:11_, 230:14_, 230:18_, 230:22

_, 231:2_, 231:19_, 231:23_, 232:3_, 232:10_, 232:16_, 232:20_, 233:6_, 233:8_, 233:14_, 233:19_, 246:14

**juror's** [1]_ - 153:23

**Jurors** [1]_ - 61:24

**jurors** [90]_ - 3:22_, 4:17_, 4:19_, 4:23_, 5:12_, 9:2_, 9:10_, 13:12_, 14:21_, 15:2_, 15:9_, 15:14_, 18:19_, 22:5_, 39:6_, 40:8_, 54:25_, 56:6_, 58:3_, 58:10_, 58:15_, 59:16_, 60:20_, 61:3_, 80:9_, 80:19_, 81:21_, 82:10_, 82:16_, 83:18_, 83:19, 83:23_, 84:19_, 86:18_, 87:25_, 88:6_, 93:9_, 93:22_, 94:4_, 97:19_, 98:25_, 121:24_, 128:20_, 130:11_, 131:23_, 132:12_, 132:18_, 134:3_, 134:5_, 157:16_, 157:20_, 158:3_, 158:16_, 161:9_, 161:11_, 161:15_, 162:6_, 162:24_, 182:19_, 184:23_, 187:20_, 189:13_, 189:15_, 190:18_, 190:23_, 191:1_, 191:2_, 192:3_, 193:2_, 195:16_, 201:25_, 203:15_, 205:24_, 206:24_, 209:25_, 216:13_, 216:23_, 224:24_, 232:13_, 233:25_, 244:21_, 245:4_, 245:6_, 245:7_, 246:13_, 246:19_, 247:3_, 248:15_, 248:20_, 248:21

**jurors'** [2]_ - 89:11_, 157:3

**jury** [169]_ - 2:20_, 2:21_, 2:23_, 3:1_, 3:4_, 3:18_, 4:8_, 5:7_, 5:18_, 5:20_, 5:22_, 6:19_, 7:9_, 7:18_, 8:1_, 8:9_, 8:12_, 8:17_, 8:22_, 9:2_, 9:24_, 11:17_, 13:21_, 13:22_, 14:10_, 14:12_, 14:19_, 14:20_, 15:20_, 15:23_, 16:18_, 16:20_, 23:6_, 24:15_, 25:21_, 30:22_, 31:3_, 31:4_, 34:24_, 40:7_, 40:11_, 41:18_, 44:1_, 45:2_, 52:6_, 52:11_, 53:4_, 54:10_, 54:11_, 56:5_, 56:6_, 58:5_, 58:21_, 59:8_, 59:20_, 60:1_, 61:1_, 61:21_, 65:8_, 65:12_, 69:6_, 74:9_, 74:21_,

74:24_, 80:20_, 80:21_, 80:25_, 81:3_, 81:10_, 81:12_, 82:4_, 82:17_, 83:1_, 83:4_, 84:6_, 84:10_, 84:13_, 84:20_, 84:23_, 86:12_, 86:19_, 87:2_, 87:13_, 87:17_, 87:21_, 87:25_, 90:10_, 91:18_, 92:16_, 92:22_, 92:23_, 93:7_, 94:13_, 95:15_, 100:10_, 100:13_, 100:25_, 106:6_, 107:6_, 111:1_, 114:17_, 114:21_, 119:10_, 126:19_, 126:23_, 127:19_, 128:19_, 130:12_, 132:4_, 132:8_, 132:18_, 133:5_, 133:13_, 133:19_, 134:16_, 134:18_, 135:25_, 137:10_, 143:19_, 149:20_, 152:2_, 157:19_, 158:3_, 158:6_, 158:8_, 158:10_, 158:13_, 158:16_, 158:25_, 159:5_, 159:19_, 160:1_, 178:15_, 179:17_, 192:15_, 193:19_, 194:12_, 201:22_, 203:3_, 203:15_, 205:16_, 210:5_, 212:8_, 218:24_, 219:15_, 219:19_, 220:21_, 221:1_, 223:19_, 226:13_, 227:6_, 228:11_, 228:25_, 229:21_, 230:24_, 232:1_, 232:18_, 233:21_, 234:7_, 245:8_, 245:25_, 246:12_, 247:4_, 247:5_, 247:10_, 247:14_, 247:24_, 248:9

**jury's** [1]_ - 57:2

**Justice** [2]_ - 12:10_, 91:6

**justice** [4]_ - 89:5_, 127:2_, 148:1_, 162:5

**justified** [1]_ - 224:18

## K

**Kamala** [1]_ - 186:25

**Kara** [2]_ - 49:21_, 124:7

**Kathryn** [2]_ - 51:6_, 125:22

**keep** [23]_ - 8:19_, 16:4_, 46:8_, 59:14_, 59:24_, 64:1_, 70:5_, 71:8_, 73:23_, 81:18_, 88:8_, 113:2_, 113:15_, 149:19_, 165:7_, 165:15_, 180:20_, 190:10_, 190:11_, 190:21_, 192:24_, 210:3_, 235:6

**keeping** [1]_ - 158:24

**Kelly** [3]_ - 50:5_, 124:15_, 125:4

**Kenneth** [2]_ - 50:19_, 125:12

**Kenny** [2]_ - 51:8_, 125:24

**Keone** [2]_ - 51:19_, 126:9

**kept** [1]_ - 87:19

**key** [2]_ - 134:3_, 188:21

**kidnapped** [1]_ - 143:12

**kids** [6]_ - 24:6_, 24:19_, 24:20_, 29:4_, 117:22_, 242:20

**kill** [6]_ - 17:4_, 96:2_, 185:5_, 185:15_, 186:15_, 202:19

**killed** [1]_ - 199:24

**killing** [3]_ - 185:3_, 185:13_, 186:18

**Kimberly** [2]_ - 50:20_, 125:13

**kind** [16]_ - 24:21_, 39:9_, 40:25_, 41:7_, 42:20_, 60:17_, 82:5_, 104:24_, 106:3_, 138:8_, 169:22_, 192:23_, 194:21_, 231:21_, 241:23

**kinds** [1]_ - 77:5

**knifepoint** [2]_ - 206:5_, 233:5

**know..** [1]_ - 155:24

**knowing** [5]_ - 18:4_, 97:2_, 165:12_, 204:21_, 226:9

**knowingly** [10]_ - 17:11_, 17:25_, 18:3_, 18:11_, 96:9_, 96:22_, 97:1_, 97:9_, 180:1_, 180:13

**knowledge** [6]_ - 15:5_, 23:7_, 48:13_, 93:17_, 178:24_, 192:6

**known** [3]_ - 49:8_, 154:9_, 178:25

**knows** [4]_ - 111:17_, 138:5_, 147:21_, 205:13

**Kristin** [2]_ - 47:6_, 123:8

**Kristy** [5]_ - 2:16_, 13:18_, 19:17_, 92:11_, 99:8

## L

**lab** [4]_ - 100:17_, 104:3_,

104:15_, 139:4

**lack** [3]_ - 95:4_, 160:20_, 241:9

**ladies** [46]_ - 4:5_, 5:15_, 9:23_, 11:1_, 12:8_, 12:17_, 12:20_, 13:17_, 15:10_, 51:25_, 52:6_, 54:8_, 58:16_, 59:4_, 59:22_, 60:18_, 80:18_, 83:10_, 84:18_, 89:20_, 90:23_, 91:1_, 91:4_, 91:10_, 92:10_, 93:18_, 93:24_, 95:7_, 97:5_, 123:1_, 126:13_, 126:18_, 132:20_, 133:17_, 134:1_, 158:1_, 162:21_, 181:14_, 182:21_, 183:8_, 186:13_, 186:20_, 187:5_, 187:12_, 188:21_, 205:19

**landed** [2]_ - 212:3_, 212:7

**language** [3]_ - 45:7_, 142:20_, 142:22

**Lantry** [2]_ - 50:11_, 124:16

**lapse** [1]_ - 224:16

**large** [4]_ - 74:3_, 104:9_, 151:25_, 152:3

**Larry** [1]_ - 173:17

**last** [17]_ - 19:25_, 29:5_, 31:5_, 64:1_, 79:13_, 99:15_, 116:15_, 136:2_, 136:16_, 137:16_, 137:23_, 160:23_, 184:7_, 186:11_, 186:24_, 225:20_, 245:24

**lasted** [1]_ - 137:8

**late** [2]_ - 157:18_, 233:8

**Laufer** [2]_ - 50:12_, 124:18

**Laura** [4]_ - 6:7_, 49:22_, 85:14_, 124:7

**law** [91]_ - 14:22_, 14:25_, 31:17_, 52:25_, 55:2_, 55:10_, 55:20_, 56:14_, 56:20_, 58:7_, 58:15_, 58:18_, 58:24_, 59:2_, 60:22_, 71:18_, 71:21_, 72:2_, 75:22_, 78:7_, 78:9_, 78:14_, 78:16_, 81:22_, 93:10_, 94:14_, 127:15_, 127:25_, 128:13_, 129:9_, 129:25_, 130:19_, 132:10_, 132:21_, 132:23_, 132:24_, 133:1_, 144:12_, 149:25_, 150:2_, 152:17_, 163:6_, 163:12_, 163:18_,

164:19_, 165:20_, 166:13_, 166:21_, 167:18_, 167:21_, 168:12_, 168:18_, 168:20_, 169:7_, 169:21_, 170:19_, 171:14_, 172:9_, 172:23_, 173:5_, 173:19_, 174:21_, 175:10_, 176:3_, 176:5_, 176:6_, 176:9_, 176:18_, 176:22_, 177:1_, 177:11_, 178:2_, 178:3_, 178:13_, 178:18_, 178:21_, 183:7_, 183:24_, 184:24_, 188:25_, 189:25_, 208:13_, 208:25_, 221:15_, 221:19_, 221:20_, 226:19_, 235:22_, 247:11

**law's** [1]_ - 177:4

**lawful** [3]_ - 53:5_, 127:21_, 192:7

**lawfully** [1]_ - 183:3

**laws** [3]_ - 153:6_, 167:11_, 229:17

**lawsuit** [2]_ - 203:23_, 242:22

**lawsuits** [1]_ - 221:11

**lawyer** [5]_ - 12:19_, 12:25_, 91:12_, 91:19_, 91:20

**lawyers** [4]_ - 97:20_, 134:8_, 192:21_, 205:21

**laying** [1]_ - 62:7

**Lazaro** [2]_ - 51:1_, 125:19

**lead** [3]_ - 22:24_, 30:7_, 62:18

**leaders** [1]_ - 180:16

**lean** [1]_ - 199:4

**leaning** [1]_ - 235:13

**learn** [1]_ - 85:13

**learned** [1]_ - 100:25

**least** [9]_ - 20:5_, 28:6_, 99:18_, 99:19_, 146:22_, 157:18_, 165:15_, 181:3_, 225:1

**leave** [16]_ - 59:13_, 59:21_, 61:1_, 82:9_, 108:14_, 110:5_, 119:16_, 133:14_, 140:9_, 141:21_, 143:18_, 151:15_, 159:21_, 193:21_, 221:2_, 230:25

**leaving** [2]_ - 37:24_, 108:21

**lectures** [1]_ - 29:25

**ledge** [1]_ - 133:15

**left** [8]_ - 11:15_, 33:20_, 41:3_, 55:6_, 129:14_, 135:13_, 176:19_, 246:20

**leftover** [1]_ - 195:8

**legal** [4]_ - 32:16_, 105:23_, 160:15_, 235:14

**legally** [1]_ - 186:8

**legs** [2]_ - 39:21_, 40:15

**length** [7]_ - 10:23_, 29:13_, 73:16_, 73:18_, 89:17_, 99:11_, 230:20

**lengthy** [4]_ - 51:23_, 72:3_, 87:14_, 214:23

**less** [3]_ - 69:17_, 110:7_, 157:2

**lesson** [1]_ - 112:14

**letting** [3]_ - 41:16_, 212:7_, 230:16

**level** [1]_ - 79:20

**lies** [2]_ - 88:23_, 128:16

**lieutenant** [4]_ - 49:12_, 123:25_, 163:22_, 164:13

**life** [5]_ - 7:20_, 78:17_, 86:21_, 166:14_, 200:2

**lift** [1]_ - 218:20

**light** [3]_ - 70:2_, 70:4_, 102:17

**likelihood** [1]_ - 181:15

**likely** [1]_ - 111:8

**limited** [2]_ - 138:8_, 145:15

**limits** [1]_ - 56:7

**line** [6]_ - 28:24_, 28:25_, 84:11_, 93:8_, 215:2

**lined** [2]_ - 215:2_, 216:22

**lines** [3]_ - 129:22_, 180:19_, 215:21

**lingering** [1]_ - 237:1

**list** [13]_ - 8:10_, 8:11_, 51:23_, 62:7_, 81:9_, 87:11_, 140:11_, 193:4_, 193:9_, 207:1_, 207:11_, 210:13_, 216:8

**listed** [6]_ - 22:6_, 47:24_, 48:23_, 70:24_, 99:23_, 159:9

**listen** [6]_ - 54:13_, 81:2_, 81:13_, 94:13_, 123:4_, 128:21

**listened** [1]_ - 201:4

**listing** [1]_ - 78:23

**litigants** [1]_ - 84:16

**live** [8]_ - 6:23_, 37:2_, 53:18_, 82:3_, 86:3_, 118:25_, 119:1_, 194:18

**lives** [1]_ - 131:5

**living** [2]_ - 107:21_, 107:23

**LL** [1]_ - 124:21

**Llanes** [3]_ - 50:13_, 124:21_, 125:10

**LLANES** [1]_ - 125:10

**LLC** [1]_ - 105:22

**local** [2]_ - 37:13_, 221:19

**locally** [1]_ - 29:8

**locate** [1]_ - 145:21

**location** [6]_ - 6:23_, 7:1_, 9:4_, 86:3_, 138:7_, 194:24

**locations** [4]_ - 9:3_, 88:1_, 88:2_, 88:3

**lodged** [1]_ - 52:22

**logistical** [5]_ - 8:23_, 9:6_, 13:6_, 87:22_, 91:24

**LONG** [3]_ - 2:10_, 12:6_, 91:1

**longest** [1]_ - 37:9

**look** [10]_ - 60:7_, 80:2_, 107:11_, 115:13_, 155:19_, 208:17_, 208:23_, 211:13_, 211:19_, 213:3

**looked** [3]_ - 27:20_, 100:24_, 112:9

**looking** [8]_ - 16:25_, 45:18_, 60:5_, 66:6_, 84:25_, 173:25_, 209:3_, 246:7

**looming** [1]_ - 74:3

**lose** [6]_ - 59:12_, 67:1_, 110:9_, 113:20_, 114:4_, 133:16

**loss** [8]_ - 77:5_, 77:8_, 77:14_, 78:1_, 78:3_, 108:12_, 200:9_, 218:19

**lost** [1]_ - 71:17

**loud** [9]_ - 46:22_, 46:25_, 80:19_, 123:2_, 131:2_, 158:2_, 158:12_, 245:3_, 245:5

**Loureiro** [2]_ - 50:14_, 125:11

**LOUREIRO** [2]_ - 50:14_, 125:11

**love** [1]_ - 53:17

**low** [3]_ - 40:25_, 41:2_,

41:14

**lowest** [1]_ - 193:13

**Lucie** [7]_ - 25:17_, 110:21_, 119:1_, 165:1_, 166:16_, 167:1_, 175:4

**luck** [1]_ - 82:12

**lunch** [5]_ - 20:4_, 150:10_, 150:20_, 157:18_, 158:24

**lunchtime** [1]_ - 127:6

## M

**ma'am** [76]_ - 20:19_, 21:17_, 26:19_, 27:25_, 30:12_, 31:25_, 33:11_, 36:1_, 36:16_, 41:19_, 47:17_, 48:20_, 53:14_, 100:18_, 100:19_, 101:5_, 101:19_, 102:3_, 103:4_, 103:10_, 103:20_, 104:23_, 106:16_, 108:7_, 112:2_, 113:9_, 113:12_, 118:2_, 118:11_, 121:7_, 137:4_, 166:8_, 167:5_, 170:14_, 172:10_, 173:4_, 174:4_, 174:7_, 174:14_, 175:16_, 175:18_, 175:21_, 176:23_, 177:8_, 178:5_, 183:15_, 187:18_, 191:9_, 191:15_, 191:18_, 191:21_, 194:5_, 195:25_, 197:8_, 198:16_, 198:21_, 201:20_, 202:1_, 203:3_, 203:9_, 220:2_, 220:14_, 220:20_, 223:12_, 228:2_, 228:9_, 229:10_, 230:4_, 230:8_, 230:12_, 230:18_, 230:22_, 231:2_, 232:17_, 232:25_, 233:20

**MAGA** [1]_ - 53:17

**mail** [1]_ - 5:17

**main** [1]_ - 22:17

**maintain** [4]_ - 70:18_, 89:19_, 195:25_, 219:2

**maintaining** [2]_ - 30:24_, 70:13

**major** [13]_ - 16:24_, 17:5_, 95:23_, 96:3_, 162:18_, 179:3_, 186:5_, 186:7_, 186:10_, 186:15_, 186:18_, 186:20_, 186:23

**majority** [1]_ - 181:12

**man** [3]_ - 208:21_, 223:9_, 242:3

**man-made** [3]_ - 208:21_

_, 223:9_, 242:3

**manage** [1]_ - 27:5

**manageable** [1]_ - 194:16

**managed** [1]_ - 117:9

**manager** [9]_ - 28:3_, 44:15_, 75:5_, 107:8_, 116:13_, 117:9_, 118:19_, 169:3_, 169:6

**managerial** [1]_ - 75:7

**manner** [3]_ - 7:24_, 57:11_, 131:13

**manufacturer's** [2]_ - 18:12_, 97:10

**March** [2]_ - 102:7_, 102:12

**Maria** [5]_ - 2:6_, 12:6_, 18:23_, 91:2_, 97:23

**marked** [1]_ - 214:19

**marketing** [1]_ - 103:6

**marriage** [2]_ - 65:17_, 66:10

**married** [3]_ - 65:24_, 112:24_, 176:13

**Marshal** [3]_ - 8:23_, 9:6_, 87:22

**Marshall** [2]_ - 51:19_, 126:9

**marshals** [1]_ - 224:8

**Martin** [1]_ - 163:23

**material** [2]_ - 60:22_, 134:6

**matter** [8]_ - 14:20_, 59:11_, 86:18_, 132:17_, 191:2_, 211:2_, 239:3_, 242:6

**matters** [12]_ - 3:19_, 11:1_, 11:21_, 13:7_, 32:22_, 89:20_, 106:13_, 162:12_, 188:24_, 192:16_, 212:19_, 215:18

**Matthew** [2]_ - 50:25_, 125:18

**Maynard** [1]_ - 173:15

**Mayo** [2]_ - 50:18_, 125:12

**Mays** [2]_ - 50:19_, 125:12

**McCain** [1]_ - 187:2

**McClay** [2]_ - 51:17_, 126:8

**McGee** [2]_ - 50:20_, 125:13

**McGreevy** [2]_ - 50:20_, 125:14

**mean** [32]_ - 29:12_, 33:19_, 33:20_, 33:22_, 46:24_, 52:10_, 69:15_, 69:18_, 69:19_, 78:7_, 79:24_, 106:9_, 112:1_, 126:22_, 135:2_, 150:11_, 154:10_, 165:6_, 166:3_, 194:15_, 205:13_, 209:19_, 209:23_, 214:7_, 214:10_, 224:21_, 226:5_, 232:3_, 235:15_, 240:22

**meaningful** [2]_ - 20:5_, 165:13

**means** [19]_ - 7:9_, 19:9_, 52:24_, 55:6_, 86:11_, 91:20_, 101:4_, 106:8_, 121:19_, 128:16_, 132:5_, 158:4_, 158:13_, 158:14_, 183:4_, 184:24_, 185:12_, 185:15_, 246:20

**meant** [3]_ - 225:23_, 225:25_, 226:1

**measure** [2]_ - 9:15_, 88:13

**measures** [4]_ - 11:4_, 11:6_, 89:24_, 89:25

**mechanical** [1]_ - 169:4

**mechanism** [1]_ - 87:9

**Medetis** [5]_ - 2:6_, 12:7_, 18:23_, 91:2_, 97:23

**MEDETIS** [3]_ - 2:10_, 12:6_, 91:1

**Medetis-Long** [5]_ - 2:6_, 12:7_, 18:23_, 91:2_, 97:23

**MEDETIS-LONG** [3]_ - 2:10_, 12:6_, 91:1

**media** [26]_ - 6:22_, 8:2_, 8:5_, 9:16_, 47:10_, 82:6_, 86:1_, 87:5_, 88:4_, 88:13_, 94:25_, 123:11_, 133:23_, 159:8_, 181:1_, 181:8_, 181:15_, 182:12_, 200:25_, 208:2_, 214:5_, 214:6_, 214:16_, 214:17_, 237:18_, 246:7

**medical** [29]_ - 25:11_, 26:25_, 39:8_, 40:17_, 41:25_, 43:21_, 45:4_, 45:10_, 63:25_, 64:3_, 64:8_, 64:19_, 64:21_, 69:5_, 69:18_, 69:19_, 69:20_, 77:5_, 117:22_, 118:1_, 122:1_, 122:7_, 122:24_, 147:8_, 148:2_, 148:11_, 198:24_, 199:1_, 240:11

**medically** [1]_ - 103:18

**medication** [5]_ - 27:5_, 41:2_, 41:5_, 41:7_, 213:11

**medications** [1]_ - 40:25

**meet** [10]_ - 14:7_, 55:25_, 93:5_, 102:19_, 112:14_, 130:8_, 183:25_, 189:20_, 193:10_, 205:21

**meeting** [3]_ - 27:1_, 101:23_, 150:9

**Melania** [1]_ - 136:9

**Melton** [4]_ - 6:7_, 85:14_, 102:10_, 207:3

**member** [8]_ - 28:4_, 153:23_, 163:5_, 163:11_, 199:20_, 200:9_, 221:15_, 221:18

**members** [27]_ - 4:7_, 5:13_, 6:22_, 8:5_, 15:23_, 16:2_, 34:25_, 60:1_, 84:5_, 84:16_, 86:1_, 87:5_, 94:20_, 98:19_, 99:3_, 133:21_, 159:5_, 163:19_, 168:12_, 168:15_, 170:19_, 174:20_, 192:23_, 193:8_, 227:18_, 234:5

**memory** [7]_ - 46:1_, 46:7_, 57:8_, 65:2_, 131:13_, 215:4_, 231:17

**mental** [1]_ - 199:8

**mention** [3]_ - 9:1_, 10:19_, 159:22

**mentioned** [24]_ - 23:12_, 32:14_, 42:11_, 47:20_, 75:13_, 125:3_, 164:11_, 173:3_, 178:1_, 178:17_, 180:25_, 181:1_, 185:17_, 194:7_, 195:21_, 195:23_, 197:12_, 198:22_, 199:15_, 199:18_, 208:24_, 231:20_, 233:2_, 248:9

**mentioning** [2]_ - 3:11_, 186:19

**merely** [3]_ - 11:8_, 14:11_, 127:11

**merit** [1]_ - 213:14

**merry** [1]_ - 157:17

**met** [4]_ - 130:14_, 136:8_, 175:14_, 176:2

**mic** [7]_ - 62:20_, 101:7_, 103:11_, 105:11_, 128:5_, 180:2_, 181:23

**Michael** [7]_ - 47:8_, 50:4_, 51:17_, 123:9_, 124:15

_, 125:4_, 126:8

**microphone** [12]_ - 21:10_, 22:15_, 27:10_, 28:1_, 85:20_, 117:24_, 122:11_, 124:24_, 135:6_, 214:2_, 226:22_, 229:12

**mics** [1]_ - 191:7

**mid** [1]_ - 233:8

**might** [37]_ - 7:23_, 15:12_, 19:24_, 39:23_, 41:20_, 45:18_, 57:8_, 57:13_, 58:10_, 60:6_, 78:13_, 85:2_, 89:17_, 93:17_, 94:1_, 102:4_, 104:12_, 105:9_, 123:2_, 131:16_, 154:9_, 154:10_, 154:13_, 160:18_, 166:14_, 180:7_, 184:16_, 185:10_, 189:8_, 189:9_, 194:6_, 195:24_, 198:2_, 198:8_, 198:9_, 215:11_, 229:18

**migraines** [1]_ - 44:23

**miles** [2]_ - 37:1_, 37:3

**military** [1]_ - 178:25

**Militello** [9]_ - 2:15_, 2:17_, 13:16_, 13:18_, 19:16_, 19:17_, 92:9_, 92:11_, 99:8

**MILITELLO** [3]_ - 2:16_, 13:17_, 92:10

**Milsun** [3]_ - 51:18_, 126:8_, 160:6

**mind** [13]_ - 16:4_, 46:15_, 59:24_, 62:11_, 74:6_, 81:18_, 88:8_, 117:25_, 165:16_, 169:12_, 198:13_, 220:16_, 236:16

**mine** [2]_ - 38:15_, 110:14

**minimum** [1]_ - 156:16

**minor** [1]_ - 155:18

**minute** [2]_ - 69:5_, 222:8

**minutes** [2]_ - 45:25_, 194:18

**misread** [2]_ - 79:7_, 177:13

**miss** [2]_ - 66:24_, 190:21

**missed** [5]_ - 22:18_, 41:20_, 41:25_, 197:4_, 220:10

**missing** [11]_ - 20:18_, 27:16_, 29:24_, 29:25_, 211:7_, 211:8_, 211:11_, 213:2_, 216:7_, 217:5_, 228:21

**misspeak** [1]_ - 92:21

**mistaken** [2] - 140:24, 141:17

**Mitt** [1] - 187:1

**mix** [8] - 62:2, 70:6, 71:8, 77:3, 140:10, 141:22, 151:16, 156:4

**mixed** [2] - 187:7, 201:8

**modalities** [2] - 120:2, 120:7

**models** [1] - 104:15

**mom** [3] - 27:14, 173:14, 194:8

**mom's** [1] - 173:25

**moment** [34] - 12:14, 18:22, 21:9, 39:25, 47:17, 58:9, 62:1, 65:19, 65:25, 66:15, 76:15, 84:22, 92:21, 98:10, 105:8, 128:5, 133:3, 141:1, 145:21, 146:2, 153:9, 163:25, 189:6, 190:9, 193:11, 206:13, 208:17, 211:9, 212:10, 217:21, 239:20, 242:2, 242:5

**momentarily** [8] - 3:22, 3:23, 4:17, 80:9, 189:20, 208:23, 223:25, 224:2

**moments** [3] - 18:19, 85:18, 224:6

**Monday** [3] - 26:8, 26:9, 31:1

**money** [4] - 42:5, 74:19, 105:1, 219:16

**monitor** [1] - 64:2

**month** [3] - 42:10, 111:15, 120:25

**monthly** [1] - 27:8

**months** [1] - 35:7

**Moran** [10] - 4:16, 6:4, 83:17, 85:10, 138:1, 161:10, 179:11, 179:15, 210:8, 210:18

**morning** [79] - 2:2, 2:5, 2:8, 2:9, 2:10, 2:11, 2:14, 2:16, 2:18, 4:4, 4:15, 9:3, 12:1, 12:4, 12:6, 12:8, 13:13, 13:17, 14:7, 24:19, 25:7, 25:8, 26:22, 26:23, 27:12, 27:13, 28:2, 28:20, 28:21, 28:24, 28:25, 30:17, 30:18, 31:10, 31:15,

31:16, 31:18, 32:4, 33:2, 33:20, 34:2, 35:14, 35:15, 36:19, 37:19, 37:20, 38:13, 38:14, 43:24, 44:7, 45:22, 45:23, 55:15, 83:9, 83:10, 83:11, 88:1, 90:20, 90:23, 91:1, 91:4, 92:10, 92:24, 99:17, 99:19, 107:24, 107:25, 108:1, 108:9, 108:15, 108:20, 117:21, 134:11, 158:15, 194:17, 232:4, 246:25, 248:20

**mornings** [1] - 133:8

**mortgage** [1] - 36:6

**most** [19] - 5:9, 11:1, 11:3, 15:11, 16:3, 37:9, 46:13, 54:22, 67:14, 72:15, 84:14, 89:20, 93:24, 106:24, 111:8, 129:5, 180:7, 237:2, 240:8

**mostly** [1] - 74:20

**mother** [6] - 31:17, 65:10, 71:18, 71:21, 107:20, 143:24

**mother-in-law** [3] - 31:17, 71:18, 71:21

**mountains** [1] - 121:17

**move** [8] - 9:10, 39:22, 46:21, 62:20, 73:25, 178:11, 206:15, 214:2

**moving** [5] - 17:24, 50:18, 143:2, 143:6, 160:11

**MR** [327] - 2:5, 2:8, 2:9, 2:13, 2:25, 3:9, 3:14, 3:20, 12:1, 12:4, 12:8, 13:13, 61:11, 61:13, 61:25, 62:6, 62:11, 62:16, 62:19, 62:24, 63:4, 63:7, 63:12, 63:15, 63:17, 63:23, 63:25, 64:6, 64:10, 64:17, 64:19, 64:23, 64:25, 65:4, 65:6, 65:14, 65:16, 65:22, 66:3, 66:9, 66:13, 66:17, 66:20, 66:22, 67:4, 67:10, 67:16, 67:21, 67:23, 68:5, 68:14, 68:23, 69:1, 69:9, 69:15, 69:18, 70:3, 70:8, 70:14, 70:21, 70:25, 71:13, 71:17, 71:22, 72:2,

72:7, 72:11, 72:15, 72:18, 72:25, 73:3, 73:8, 73:13, 73:17, 73:22, 73:25, 74:14, 74:16, 75:2, 75:5, 75:13, 75:20, 76:3, 76:7, 76:12, 76:15, 76:17, 76:21, 76:24, 77:4, 77:11, 77:16, 77:22, 77:25, 78:6, 78:19, 78:23, 79:3, 79:5, 79:7, 79:10, 79:17, 79:19, 80:1, 80:6, 82:21, 82:23, 90:20, 90:23, 91:4, 92:7, 94:8, 138:16, 138:19, 138:23, 139:1, 139:3, 139:7, 139:13, 139:16, 139:20, 139:25, 140:6, 140:11, 140:19, 140:22, 141:1, 141:6, 141:9, 141:14, 141:18, 141:24, 142:3, 142:7, 142:14, 142:16, 142:18, 143:2, 143:8, 143:23, 144:2, 144:7, 144:11, 144:16, 144:21, 145:1, 145:4, 145:9, 145:12, 145:19, 146:5, 146:9, 146:11, 146:15, 146:18, 146:24, 147:1, 147:4, 147:8, 147:11, 147:16, 147:19, 147:23, 148:1, 148:2, 148:8, 148:10, 148:14, 148:16, 148:21, 148:24, 149:6, 149:16, 149:22, 149:24, 150:8, 150:14, 151:5, 151:7, 151:9, 151:11, 151:18, 151:23, 152:14, 152:20, 153:1, 153:3, 153:9, 153:12, 153:16, 153:18, 153:22, 154:5, 154:8, 154:19, 155:2, 155:6, 155:11, 155:23, 156:5, 156:7, 156:10, 156:13, 156:21, 156:25, 157:8, 157:10, 157:12, 157:14, 160:4, 160:6, 160:13, 179:13, 206:2, 206:13, 206:16, 206:19, 207:1, 207:5, 207:9, 207:14, 207:17, 207:23, 207:25, 208:4, 208:10, 208:12, 208:18, 208:20, 209:2, 209:5, 209:10, 209:13, 209:18, 209:23, 210:2, 210:5, 210:15, 210:23, 211:6, 211:11, 211:16,

212:3, 212:10, 212:22, 213:4, 213:16, 213:19, 213:24, 214:4, 214:15, 214:25, 215:8, 215:15, 215:21, 215:24, 216:15, 216:17, 217:7, 217:10, 217:17, 218:2, 218:4, 218:7, 218:10, 224:13, 224:20, 228:16, 228:22, 234:3, 234:9, 234:14, 234:18, 234:21, 235:1, 235:5, 235:13, 235:18, 236:8, 236:10, 236:19, 236:22, 237:5, 237:9, 237:11, 237:15, 237:17, 237:24, 238:2, 238:8, 238:11, 238:15, 238:20, 239:1, 239:5, 239:9, 239:14, 239:17, 239:23, 240:3, 240:8, 240:13, 240:17, 240:19, 240:21, 241:2, 241:5, 241:12, 241:15, 241:25, 242:3, 242:9, 242:11, 242:13, 242:19, 242:24, 243:1, 243:3, 243:7, 243:15, 243:20, 244:10, 247:5, 248:3, 248:7, 248:16, 249:2

**MS** [8] - 2:10, 2:16, 12:6, 13:17, 91:1, 92:10, 244:15, 244:17

**mugging** [2] - 206:5, 233:5

**multiple** [3] - 120:2, 217:13, 248:24

**murder** [1] - 185:13

**musical** [1] - 194:3

**must** [17] - 12:22, 16:5, 52:12, 56:1, 81:18, 81:21, 89:23, 91:16, 95:2, 126:24, 130:8, 132:22, 134:2, 134:5, 158:24, 245:6, 246:2

N

**name** [28] - 4:10, 7:4, 7:11, 10:13, 12:1, 12:4, 12:6, 12:9, 13:14, 65:23, 83:12, 86:7, 86:13, 86:22, 87:6, 87:7, 88:9, 89:6, 90:20, 90:24, 91:2, 91:5, 105:21, 116:17, 121:16, 154:14, 154:15, 158:4

**names** [49] - 7:2, 7:15, 7:21, 8:6, 8:10, 8:22, 9:5, 9:12, 9:14, 10:16, 46:22, 46:25, 47:1, 47:24, 48:22, 48:24, 49:1, 49:7, 49:18, 49:25, 50:7, 50:16, 50:22, 51:10, 51:21, 80:19, 80:23, 86:5, 87:11, 87:21, 88:11, 89:11, 97:22, 123:2, 123:5, 123:13, 124:5, 124:12, 124:19, 125:15, 125:20, 126:6, 126:11, 131:2, 158:3, 181:1, 193:2, 245:3, 245:6

**narcotic** [1] - 27:5

**naturally** [1] - 189:7

**nature** [18] - 7:20, 13:23, 45:14, 71:2, 74:5, 93:1, 98:1, 112:15, 143:12, 154:17, 162:22, 174:16, 196:10, 199:24, 204:25, 209:7, 236:24

**nearing** [1] - 216:20

**necessarily** [6] - 46:24, 104:2, 104:11, 120:23, 196:2, 235:18

**necessary** [6] - 41:5, 41:13, 79:23, 91:25, 211:4, 218:9

**necessity** [1] - 10:24

**need** [48] - 11:17, 15:2, 22:4, 28:5, 29:4, 32:10, 32:24, 36:25, 37:8, 39:19, 39:22, 41:4, 41:13, 43:16, 43:20, 44:12, 45:11, 53:21, 55:15, 59:6, 60:19, 67:7, 72:4, 81:12, 82:17, 89:19, 90:11, 105:19, 128:5, 135:24, 146:7, 154:22, 158:4, 190:14, 192:13, 201:11, 206:18, 206:23, 212:19, 214:7, 216:10, 218:6, 226:21, 234:6, 245:22, 246:23, 247:6, 248:22

**needed** [2] - 40:12, 99:20

**needing** [1] - 228:17

**needs** [13] - 20:6, 21:3, 40:8, 71:20, 73:3, 99:21, 145:17, 148:12,

148:16, 153:24, 161:1, 197:13, 240:8

**negative** [4] - 10:12, 153:4, 178:13, 188:20

**negatively** [4] - 9:21, 88:19, 89:7, 89:8

**neighbors** [2] - 29:10, 67:8

**network** [1] - 29:8

**neutral** [1] - 169:24

**never** [6] - 77:3, 107:9, 192:12, 200:1, 207:17, 224:3

**nevertheless** [1] - 130:15

**new** [3] - 40:25, 112:25, 206:23

**New** [6] - 31:18, 37:25, 38:2, 71:20, 172:19, 172:20

**news** [10] - 181:6, 181:8, 181:20, 181:24, 182:12, 182:15, 183:10, 183:22, 184:3, 184:5

**next** [76] - 27:4, 30:15, 34:3, 34:9, 34:14, 46:22, 49:1, 63:6, 64:9, 66:16, 69:1, 70:7, 70:20, 71:16, 72:1, 72:10, 72:17, 73:12, 75:4, 75:19, 76:6, 76:14, 78:22, 79:9, 107:16, 110:4, 118:3, 122:17, 123:17, 138:25, 139:19, 140:13, 140:18, 140:25, 141:8, 141:23, 142:6, 143:22, 144:6, 144:20, 145:18, 146:4, 147:7, 147:13, 147:25, 150:7, 151:4, 152:13, 153:2, 154:7, 155:1, 156:6, 156:20, 190:3, 197:23, 207:9, 207:16, 212:21, 214:21, 219:24, 227:6, 231:4, 234:17, 234:25, 237:4, 238:1, 238:10, 238:19, 239:4, 240:2, 241:11, 241:24, 242:18, 243:2, 243:14, 244:9

**nice** [5] - 109:1, 121:18, 137:7, 231:15, 249:4

**Nicholas** [2] - 51:6, 125:23

**night** [16] - 30:24, 31:1, 31:5, 31:8, 106:9, 108:10, 108:15, 111:2,

113:22, 119:8, 143:9, 143:10, 151:12, 160:24, 211:20, 232:4

**nine** [2] - 108:23, 165:11

**nine-day** [1] - 108:23

**no-name** [3] - 10:13, 88:9, 89:6

**nobody** [6] - 7:9, 9:20, 86:11, 88:18, 118:23, 226:9

**noise** [1] - 160:20

**non** [1] - 239:17

**non-disclosed** [1] - 239:17

**nondisclosure** [3] - 70:22, 71:11, 141:10

**none** [4] - 9:18, 87:17, 88:15, 94:11

**nonrefundable** [1] - 110:7

**Norinco** [1] - 178:25

**normal** [7] - 85:2, 107:22, 111:18, 131:5, 131:20, 132:16, 248:5

**normally** [2] - 110:24, 197:19

**north** [1] - 104:7

**note** [20] - 2:3, 26:4, 27:9, 29:14, 68:3, 78:3, 100:17, 128:10, 138:1, 143:20, 145:19, 154:2, 155:13, 180:5, 180:10, 183:14, 183:17, 187:17, 195:8, 216:24

**noted** [2] - 77:12, 213:6

**notes** [9] - 43:13, 67:6, 71:3, 155:6, 156:25, 200:22, 212:14, 228:16, 235:8

**nothing** [12] - 10:3, 55:6, 82:4, 88:23, 129:14, 134:4, 155:10, 182:22, 183:6, 199:8, 208:1, 227:4

**November** [1] - 25:20

**now-President** [1] - 202:20

**nuanced** [3] - 169:17, 169:19, 235:2

**nuances** [1] - 170:10

**numb** [1] - 39:21

**number** [58] - 6:15, 9:12, 10:22, 18:8,

18:12, 21:17, 29:16, 53:22, 57:4, 59:19, 63:17, 64:10, 68:15, 68:23, 79:19, 86:8, 88:8, 89:16, 97:7, 97:11, 98:24, 133:14, 134:23, 140:19, 142:14, 144:21, 147:11, 147:19, 149:6, 150:8, 153:3, 153:18, 154:8, 156:7, 158:12, 162:20, 177:13, 197:1, 199:16, 207:7, 207:12, 207:14, 207:17, 208:12, 208:20, 210:4, 210:6, 211:6, 213:5, 229:5, 229:8, 237:7, 240:19, 241:12, 241:21, 242:19

**Number** [27] - 2:21, 4:14, 64:25, 66:4, 70:21, 73:20, 78:6, 83:15, 161:8, 181:17, 206:3, 206:8, 207:5, 208:14, 209:14, 210:2, 210:5, 210:6, 210:15, 211:6, 212:3, 212:22, 213:4, 228:17, 234:10, 234:18, 239:19

**numbers** [12] - 7:5, 20:12, 30:16, 39:12, 79:7, 85:21, 99:25, 122:8, 144:11, 181:11, 193:13, 210:3

**Numbers** [1] - 193:17

**numerical** [1] - 234:10

**numerous** [1] - 143:10

**nursing** [1] - 120:8

## O

**oath** [4] - 4:18, 161:9, 241:6, 242:14

**objection** [55] - 63:2, 63:4, 63:15, 63:23, 64:17, 64:23, 66:12, 66:13, 67:21, 67:23, 67:24, 70:3, 71:19, 72:7, 72:25, 73:8, 76:5, 76:10, 76:12, 78:19, 138:22, 138:23, 139:3, 139:25, 140:22, 141:6, 141:14, 142:4, 142:16, 144:2, 145:1, 146:24, 147:4, 147:23, 148:8, 148:21, 153:12, 213:16, 234:12, 234:14, 234:19, 234:21, 236:6, 236:19, 236:20, 237:9,

237:23_, 237:24_, 238:8_, 238:13_, 238:15_, 239:1_, 239:10_, 239:11_, 240:7

**objective** [5]_ - 174:3_, 174:13_, 174:18_, 178:7_, 189:17

**objectively** [3]_ - 48:16_, 167:3_, 183:12

**objectivity** [2]_ - 220:18_, 233:17

**obligation** [5]_ - 7:7_, 15:16_, 86:18_, 93:14_, 159:12

**obligations** [5]_ - 24:18_, 33:14_, 154:25_, 197:17_, 203:20

**obliterated** [5]_ - 18:8_, 18:13_, 97:7_, 97:11_, 162:19

**observations** [1]_ - 142:8

**obtaining** [1]_ - 15:19

**obvious** [1]_ - 149:7

**obviously** [13]_ - 76:3_, 77:22_, 111:16_, 111:20_, 151:1_, 154:10_, 184:9_, 188:11_, 203:14_, 224:8_, 232:12_, 235:24_, 237:14

**occasion** [2]_ - 169:6_, 247:14

**occupational** [1]_ - 103:17

**October** [23]_ - 20:2_, 26:3_, 35:17_, 35:24_, 38:1_, 67:24_, 73:15_, 74:2_, 99:16_, 101:11_, 101:24_, 102:15_, 108:22_, 109:3_, 109:13_, 109:18_, 109:19_, 149:17_, 149:19_, 152:20_, 152:24_, 219:4

**off-base** [1]_ - 56:13

**off-limits** [1]_ - 56:7

**offense** [10]_ - 10:6_, 16:18_, 16:23_, 17:24_, 52:9_, 89:1_, 95:15_, 95:22_, 97:6_, 196:10

**offenses** [1]_ - 216:5

**offer** [3]_ - 31:2_, 43:4_, 76:20

**offered** [3]_ - 136:10_, 150:9_, 247:13

**offers** [1]_ - 30:21

**office** [26]_ - 25:17_, 25:22_, 28:3_, 28:4_, 32:7_,

32:8_, 32:12_, 32:20_, 33:10_, 34:25_, 44:15_, 48:12_, 65:11_, 102:18_, 104:4_, 120:15_, 138:6_, 163:24_, 169:3_, 169:6_, 173:15_, 211:24_, 212:13_, 227:18_, 231:18_, 231:21

**Office** [17]_ - 47:9_, 47:15_, 47:22_, 48:3_, 48:13_, 48:14_, 49:12_, 49:15_, 50:13_, 50:20_, 51:9_, 123:10_, 124:1_, 124:3_, 124:18_, 125:13_, 125:25

**Officer** [6]_ - 11:15_, 11:18_, 90:8_, 90:12_, 162:1_, 174:9

**OFFICER** [2]_ - 161:20_, 161:25

**officer** [20]_ - 11:15_, 17:15_, 50:11_, 90:9_, 96:14_, 124:17_, 152:15_, 156:21_, 164:18_, 164:25_, 171:11_, 172:18_, 172:20_, 173:17_, 174:9_, 175:4_, 175:6_, 177:23_, 178:3_, 195:24

**officers** [4]_ - 170:21_, 170:25_, 171:4_, 235:22

**official** [9]_ - 8:10_, 17:21_, 60:23_, 87:12_, 93:12_, 96:19_, 183:6_, 188:25_, 219:9

**officials** [3]_ - 180:21_, 189:1_, 216:4

**oil** [1]_ - 211:17

**Okeechobee** [2]_ - 104:6_, 111:24

**Oklahoma** [4]_ - 34:4_, 34:16_, 73:4_, 73:6

**old** [3]_ - 33:22_, 155:14_, 241:22

**older** [1]_ - 108:7

**oldest** [2]_ - 172:18_, 172:19

**once** [3]_ - 39:22_, 110:3_, 192:18

**one** [135]_ - 2:25_, 3:23_, 5:9_, 8:3_, 8:9_, 16:4_, 18:6_, 20:12_, 21:9_, 21:15_, 26:25_, 28:3_, 30:19_, 34:22_, 35:3_, 35:6_, 36:6_, 38:25_, 39:25_, 40:11_, 41:4_, 42:6_, 42:19_, 43:22_, 47:13_, 47:17_, 58:11_,

58:12_, 59:11_, 59:15_, 62:1_, 65:19_, 65:25_, 66:14_, 72:12_, 73:4_, 74:15_, 76:22_, 79:9_, 83:17_, 84:14_, 85:15_, 85:20_, 87:4_, 87:9_, 87:10_, 88:8_, 89:13_, 92:21_, 93:8_, 95:1_, 97:4_, 98:10_, 99:18_, 99:19_, 100:8_, 104:5_, 104:9_, 105:6_, 105:17_, 114:2_, 115:5_, 115:9_, 115:11_, 116:14_, 116:15_, 116:25_, 117:10_, 117:22_, 118:2_, 119:15_, 120:4_, 120:22_, 120:24_, 121:21_, 124:22_, 128:5_, 131:10_, 131:18_, 132:13_, 133:3_, 133:9_, 134:18_, 135:8_, 145:6_, 145:10_, 148:5_, 148:12_, 151:21_, 154:9_, 154:10_, 155:16_, 161:1_, 163:25_, 168:23_, 173:22_, 178:20_, 179:9_, 180:8_, 182:6_, 188:7_, 190:9_, 191:3_, 193:6_, 193:11_, 193:16_, 195:8_, 201:21_, 201:24_, 204:11_, 206:13_, 211:9_, 217:21_, 218:16_, 220:15_, 223:6_, 234:8_, 242:2_, 242:20_, 243:3_, 245:25_, 246:21

**one-hour** [1]_ - 99:18

**one-week** [1]_ - 120:24

**ones** [2]_ - 81:14_, 241:25

**ongoing** [1]_ - 105:18

**online** [1]_ - 237:19

**onset** [1]_ - 44:23

**open** [9]_ - 7:11_, 7:15_, 7:21_, 10:13_, 44:1_, 44:9_, 44:19_, 86:13_, 111:4

**operate** [1]_ - 116:25

**operated** [1]_ - 179:5

**operation** [3]_ - 6:6_, 85:12_, 118:21

**operational** [2]_ - 47:10_, 123:10

**operations** [2]_ - 65:17_, 227:22

**opinions** [6]_ - 15:4_, 78:13_, 93:16_, 229:16_, 229:22_, 230:5

**opportunities** [1]_ - 70:1

**opportunity** [10]_ -

13:25_, 57:6_, 74:10_, 77:20_, 92:24_, 131:11_, 187:20_, 194:5_, 203:18_, 204:18

**oppose** [2]_ - 17:18_, 96:16

**opposed** [3]_ - 228:18_, 235:7_, 236:14

**Oran** [2]_ - 51:17_, 126:8

**Order** [1]_ - 2:1

**order** [15]_ - 4:3_, 22:12_, 27:7_, 62:5_, 68:3_, 80:15_, 83:8_, 100:2_, 157:24_, 161:4_, 163:1_, 190:10_, 234:10_, 244:25_, 246:22

**orderly** [2]_ - 22:1_, 43:20

**orders** [3]_ - 8:19_, 11:16_, 90:9

**ordinarily** [1]_ - 5:12

**organization** [4]_ - 35:1_, 73:11_, 110:15_, 179:5

**organized** [1]_ - 21:25

**original** [6]_ - 102:14_, 215:2_, 215:4_, 217:24_, 219:3_, 243:8

**Orlando** [2]_ - 23:18_, 30:25

**Orthopaedics** [2]_ - 27:19_, 27:21

**orthopedic** [1]_ - 65:11

**otherwise** [5]_ - 102:14_, 146:1_, 220:17_, 233:16

**outbursts** [1]_ - 247:23

**outcome** [6]_ - 5:14_, 15:13_, 84:17_, 94:2_, 131:15_, 209:7

**outgoing** [1]_ - 246:1

**outside** [17]_ - 8:18_, 9:7_, 15:22_, 59:17_, 60:23_, 87:18_, 94:19_, 98:25_, 107:22_, 135:1_, 193:5_, 193:7_, 193:15_, 216:23_, 218:13_, 231:7_, 247:24

**outward** [1]_ - 6:15

**overall** [9]_ - 9:9_, 10:24_, 19:23_, 33:9_, 41:9_, 88:6_, 99:22_, 170:12_, 226:18

**overcome** [1]_ - 117:14

**overflow** [1]_ - 161:23

**overheard** [1]_ - 136:4

**overload** [1]_ - 110:14

**overloaded** [1]_ - 144:23

**overlooked** [1] - 220:4
**overly** [1] - 5:16
**overnight** [4] - 70:12, 70:17, 110:16, 114:7
**overseeing** [1] - 113:4
**oversight** [1] - 221:24
**overview** [2] - 13:21, 92:15
**overwhelmed** [1] - 116:15
**overwhelming** [1] - 47:2
**own** [20] - 5:4, 12:25, 37:5, 38:22, 38:23, 42:3, 54:23, 73:18, 91:19, 91:20, 102:21, 103:5, 104:24, 113:6, 113:8, 113:14, 129:6, 200:23, 242:20
**owned** [1] - 179:5
**owner** [2] - 73:5, 147:17
**owners** [2] - 34:23, 168:23
**owns** [1] - 242:20
**Oxendine** [2] - 50:21, 125:17

### P

**p.m** [13] - 36:15, 137:20, 157:22, 161:3, 216:21, 244:23, 245:6, 249:6
**paddle** [6] - 6:15, 39:12, 99:25, 122:8, 204:20, 206:6
**paddles** [16] - 7:6, 20:11, 22:3, 59:12, 61:1, 82:9, 86:9, 133:15, 159:21, 163:13, 181:9, 190:11, 191:3, 193:21, 246:14, 246:15
**page** [7] - 54:9, 140:13, 211:7, 211:11, 211:14, 217:11
**pages** [5] - 212:24, 213:2, 216:8, 217:9, 217:23
**paid** [5] - 23:1, 24:10, 63:1, 108:23, 194:12
**pain** [1] - 27:6
**Palm** [34] - 17:2, 17:10, 17:16, 18:2, 18:9,

37:23, 47:9, 47:14, 47:21, 48:2, 48:12, 48:13, 48:14, 49:12, 49:14, 50:12, 50:19, 51:9, 95:25, 96:7, 96:15, 96:24, 97:8, 119:19, 123:10, 123:25, 124:2, 124:18, 125:13, 125:25, 160:18, 175:25, 176:4, 176:12
**panel** [4] - 193:8, 206:7, 216:25, 217:2
**paper** [2] - 52:21, 127:11
**papers** [1] - 190:9
**paperwork** [4] - 75:14, 155:11, 155:12, 246:1
**paralegal** [3] - 32:17, 105:17, 151:14
**parent** [3] - 29:3, 67:11, 76:8
**parents** [1] - 23:14
**part** [15] - 7:18, 10:21, 15:11, 34:21, 46:13, 58:13, 65:18, 84:13, 86:19, 93:25, 105:5, 120:3, 185:10, 221:24
**part-time** [1] - 105:5
**partial** [1] - 166:5
**partially** [1] - 142:21
**particular** [6] - 93:4, 93:23, 162:8, 163:1, 186:11, 215:10
**particularly** [1] - 178:13
**parties** [34] - 3:5, 5:6, 7:7, 8:16, 11:8, 14:3, 15:7, 16:1, 59:18, 60:11, 71:15, 81:24, 84:8, 87:16, 90:2, 93:3, 93:21, 94:19, 94:24, 133:6, 134:9, 137:15, 138:9, 142:24, 159:10, 162:11, 186:8, 189:18, 192:16, 192:21, 216:11, 217:6, 217:20, 246:9
**parties'** [1] - 224:9
**partly** [1] - 132:15
**partner** [1] - 75:22
**partners** [1] - 32:16
**partnerships** [1] - 102:8
**partnerships'** [1] - 102:12
**party** [6] - 7:8, 11:6,

86:10, 90:1, 169:24, 180:21
**PAs** [1] - 32:20
**pass** [8] - 27:10, 28:1, 101:7, 103:11, 105:10, 110:17, 180:2, 181:23
**passed** [4] - 31:17, 108:1, 156:2, 187:4
**passing** [1] - 71:21
**past** [8] - 9:10, 28:24, 120:25, 138:13, 153:19, 169:9, 199:19, 201:19
**path** [1] - 247:18
**patience** [11] - 14:16, 51:24, 80:17, 94:10, 94:16, 158:2, 158:23, 193:12, 204:17, 225:8, 245:2
**Patrick** [2] - 50:11, 124:16
**patrol** [1] - 48:8
**Patrol** [1] - 177:16
**Patterson** [2] - 50:24, 125:17
**pause** [5] - 6:17, 85:23, 94:6, 180:9, 224:2
**PaveCo** [2] - 113:5, 113:12
**pay** [18] - 22:19, 23:5, 33:6, 36:7, 47:1, 72:19, 72:22, 106:13, 111:6, 114:5, 114:20, 114:23, 114:24, 115:3, 140:4, 143:11, 151:11, 199:7
**paycheck** [1] - 105:2
**paying** [3] - 14:15, 94:7, 232:8
**payment** [1] - 33:8
**pays** [2] - 33:7, 100:24
**PBSO** [1] - 72:11
**pediatric** [2] - 103:13, 103:17
**penalty** [1] - 78:17
**pending** [5] - 208:22, 209:19, 223:9, 223:13, 239:3
**Pennsylvania** [4] - 170:21, 184:7, 184:10, 184:17
**Pensacola** [1] - 110:4
**people** [15] - 15:8, 16:9, 37:13, 112:22, 120:3,

120:6, 120:17, 131:3, 133:19, 189:8, 190:16, 201:1, 214:5, 223:11, 245:15
**per** [1] - 107:8
**percent** [4] - 116:14, 121:20, 226:14, 226:23
**percentage** [1] - 113:19
**perfect** [1] - 231:13
**perfectly** [2] - 58:14, 132:17
**perform** [10] - 4:7, 5:10, 39:10, 77:10, 84:15, 110:24, 194:10, 198:2, 203:21, 232:15
**performance** [2] - 17:21, 96:19
**performing** [2] - 45:16, 100:25
**perhaps** [12] - 5:20, 5:22, 25:5, 43:3, 58:11, 85:2, 165:7, 169:17, 188:15, 201:23, 206:8, 230:20
**period** [4] - 120:6, 165:13, 202:13, 227:14
**periods** [2] - 199:7, 199:13
**permanent** [1] - 45:25
**permissible** [1] - 7:13
**permits** [1] - 5:13
**permitted** [2] - 37:4, 82:1
**Perry** [2] - 50:25, 125:18
**person** [39] - 27:7, 53:1, 66:10, 67:15, 73:15, 74:19, 75:23, 78:12, 79:24, 98:8, 125:2, 127:16, 138:7, 141:19, 147:21, 150:23, 152:3, 155:25, 179:17, 179:19, 179:21, 184:13, 185:5, 188:7, 201:2, 208:25, 209:6, 210:20, 224:10, 234:23, 237:5, 237:13, 238:6, 240:25, 241:9, 242:4, 242:17, 242:23
**person's** [4] - 57:21, 66:6, 131:6, 185:6
**personal** [40] - 7:3, 8:6, 11:17, 15:4, 15:18, 23:12, 23:13, 26:11, 35:18, 35:19, 36:21, 38:4, 45:1, 73:15, 86:6,

_, 86:20_, 86:22_, 87:7_, 90:12_, 93:16_, 93:17_, 94:12_, 100:21_, 101:1_, 101:12_, 101:14_, 138:7_, 187:13_, 188:22_, 189:1_, 189:13_, 189:17_, 190:4_, 194:9_, 198:1_, 201:8_, 202:21_, 216:3_, 233:4_, 237:19

**personally** [16]_ - 5:4_, 19:5_, 84:22_, 98:3_, 98:13_, 99:6_, 136:9_, 163:19_, 166:20_, 168:17_, 172:22_, 176:8_, 190:8_, 201:7_, 202:12_, 203:17

**personnel** [2]_ - 154:16_, 161:1

**persons** [1]_ - 93:21

**pertains** [1]_ - 54:11

**pest** [1]_ - 37:14

**pet** [1]_ - 71:5

**phase** [5]_ - 13:22_, 92:15_, 92:23_, 160:1_, 204:11

**phone** [9]_ - 23:22_, 23:25_, 33:21_, 41:14_, 60:7_, 64:1_, 113:22_, 142:9_, 225:9

**phones** [1]_ - 226:12

**phonetic** [1]_ - 119:16

**photograph** [3]_ - 224:7_, 225:9_, 226:3

**photographing** [3]_ - 7:14_, 7:15_, 225:21

**photographs** [2]_ - 86:17_, 224:25

**Physical** [1]_ - 51:12

**physical** [11]_ - 45:13_, 45:15_, 45:19_, 46:20_, 49:4_, 122:2_, 123:19_, 126:2_, 149:3_, 180:16_, 199:9

**physically** [2]_ - 23:1_, 122:15

**pick** [11]_ - 15:11_, 24:6_, 24:21_, 24:23_, 28:6_, 28:13_, 33:4_, 63:10_, 93:25_, 104:4_, 107:24

**picked** [4]_ - 28:14_, 197:13_, 225:24_, 225:25

**picking** [1]_ - 67:18

**picks** [1]_ - 28:11

**pickup** [7]_ - 28:24_, 28:25_, 29:11_, 33:13_, 67:12_, 194:14_, 197:16

**pickups** [1]_ - 194:15

**picture** [13]_ - 7:25_, 14:18_, 45:12_, 127:1_, 173:25_, 206:17_, 225:13_, 225:14_, 225:17_, 243:15_, 243:17_, 244:4

**piece** [2]_ - 60:20_, 83:1

**Pierce** [5]_ - 4:6_, 25:18_, 30:25_, 83:12_, 115:25

**Pilates** [1]_ - 120:7

**pin** [1]_ - 98:23

**place** [4]_ - 27:2_, 47:19_, 119:13_, 163:2

**places** [1]_ - 105:25

**plainly** [1]_ - 153:4

**planned** [5]_ - 32:6_, 35:17_, 101:11_, 108:21_, 120:24

**planning** [3]_ - 32:9_, 32:11_, 119:20

**planning-wise** [1]_ - 32:11

**plans** [3]_ - 110:1_, 112:14_, 160:7

**plants** [1]_ - 36:24

**Plata** [6]_ - 51:1_, 125:19

**platform** [2]_ - 133:24_, 159:8

**platforms** [1]_ - 208:2

**play** [3]_ - 10:20_, 89:14_, 184:10

**played** [1]_ - 5:12

**plea** [2]_ - 52:24_, 127:15

**pleasant** [2]_ - 159:16_, 246:12

**pleasure** [2]_ - 4:6_, 84:5

**plus** [2]_ - 99:20_, 115:18

**point** [30]_ - 3:2_, 7:12_, 7:25_, 9:23_, 23:9_, 47:3_, 59:15_, 60:3_, 69:21_, 71:9_, 79:13_, 86:14_, 87:24_, 88:16_, 88:20_, 89:13_, 90:16_, 100:9_, 130:13_, 137:22_, 152:24_, 157:2_, 184:14_, 187:10_, 210:24_, 212:13_, 226:13_, 229:20_, 240:24_, 246:23

**pointed** [2]_ - 145:16_, 196:15

**points** [1]_ - 9:11

**Police** [1]_ - 171:13

**police** [9]_ - 152:14_,

156:21_, 170:21_, 170:25_, 171:4_, 171:11_, 172:20_, 175:6_, 221:19

**policies** [3]_ - 180:22_, 187:13_, 202:22

**policy** [2]_ - 215:10_, 215:18

**political** [4]_ - 149:6_, 180:16_, 180:21_, 180:22

**pool** [4]_ - 133:19_, 143:19_, 149:20_, 246:20

**pose** [2]_ - 181:15_, 219:4

**position** [26]_ - 48:2_, 67:20_, 68:12_, 69:8_, 70:2_, 70:5_, 70:13_, 71:12_, 76:2_, 77:20_, 77:24_, 78:11_, 78:18_, 139:12_, 139:23_, 145:8_, 146:23_, 149:5_, 153:7_, 164:9_, 214:12_, 217:15_, 236:9_, 238:5_, 243:6_, 243:19

**positioned** [1]_ - 3:24

**positions** [2]_ - 215:11_, 219:16

**positive** [2]_ - 178:13_, 188:17

**possess** [7]_ - 17:11_, 18:3_, 18:11_, 96:9_, 97:1_, 97:10_, 179:18

**possessed** [1]_ - 208:21

**possesses** [1]_ - 179:19

**possessing** [11]_ - 17:7_, 17:25_, 18:7_, 96:5_, 96:22_, 97:6_, 179:9_, 179:22_, 180:1_, 180:13_, 209:18

**possession** [5]_ - 162:19_, 192:7_, 223:9_, 229:19

**possible** [18]_ - 13:24_, 31:24_, 54:15_, 80:11_, 128:23_, 163:4_, 193:20_, 203:4_, 211:19_, 213:3_, 219:21_, 220:23_, 227:7_, 228:12_, 232:19_, 233:22_, 242:9_, 244:22

**possibly** [9]_ - 35:3_, 160:17_, 169:14_, 170:13_, 194:20_, 235:3_, 235:10_, 235:23_, 236:4

**potential** [6]_ - 39:7_, 70:24_, 88:4_, 122:1_, 123:2_, 142:20

**potentially** [12]_ - 29:12_, 32:12_, 74:1_, 115:13_,

119:11_, 120:14_, 131:15_, 145:14_, 197:16_, 197:23_, 197:24_, 198:23

**powerful** [1]_ - 15:15

**practice** [2]_ - 102:16_, 110:3

**practitioner** [3]_ - 32:5_, 32:15_, 72:2

**prearranged** [2]_ - 75:20_, 82:16

**prebooked** [3]_ - 64:11_, 74:5_, 121:13

**precautionary** [2]_ - 9:15_, 88:12

**precisely** [1]_ - 17:1

**preclude** [1]_ - 39:23

**predators** [1]_ - 156:10

**preexisting** [1]_ - 64:3

**prefer** [3]_ - 15:22_, 94:18_, 200:4

**preference** [1]_ - 138:14

**prejudice** [4]_ - 153:11_, 189:6_, 189:9_, 189:10

**preliminary** [11]_ - 2:21_, 13:23_, 61:21_, 82:16_, 83:4_, 92:16_, 92:23_, 93:1_, 142:10_, 162:3

**preoccupied** [1]_ - 198:11

**prepare** [1]_ - 73:4

**prepared** [3]_ - 61:8_, 62:8_, 137:18

**preparing** [1]_ - 25:13

**preplanned** [1]_ - 109:5

**preps** [3]_ - 111:14_, 112:1_, 112:11

**prescheduled** [1]_ - 138:21

**presence** [6]_ - 15:22_, 94:19_, 94:24_, 98:25_, 193:7_, 247:24

**present** [15]_ - 2:17_, 10:7_, 55:7_, 61:18_, 84:21_, 85:21_, 130:23_, 161:6_, 183:7_, 190:1_, 197:21_, 199:1_, 232:1_, 232:8_, 248:25

**presented** [20]_ - 14:24_, 46:9_, 53:8_, 57:16_, 60:21_, 81:20_, 84:9_, 93:12_, 94:14_, 106:14_, 127:23_, 132:23_, 154:14_, 183:4_, 183:5_, 183:12_, 183:24_, 184:18_,

188:25_, 189:25
**preserved** [1]_ - 84:12
**President** [13]_ - 53:17_, 136:21_, 179:3_, 179:6_, 184:6_, 184:13_, 186:12_, 186:25_, 187:6_, 187:13_, 188:5_, 188:16_, 202:20
**president** [9]_ - 17:4_, 96:2_, 96:4_, 188:7_, 188:18_, 188:20_, 188:22_, 202:21
**presidential** [15]_ - 16:24_, 17:5_, 17:6_, 95:23_, 96:3_, 162:18_, 179:3_, 184:21_, 186:6_, 186:7_, 186:10_, 186:15_, 186:18_, 186:20_, 186:24
**presiding** [2]_ - 4:12_, 83:14
**pressing** [2]_ - 155:21_, 160:2
**pressure** [4]_ - 9:14_, 88:11_, 230:12_, 240:4
**presumably** [1]_ - 59:6
**presume** [1]_ - 248:10
**presumed** [8]_ - 10:1_, 52:24_, 53:2_, 53:7_, 88:21_, 127:15_, 127:17_, 139:16
**presumption** [12]_ - 52:15_, 52:16_, 53:11_, 53:15_, 54:1_, 54:2_, 95:18_, 127:3_, 127:8_, 127:22_, 127:25_, 128:13
**pretrial** [1]_ - 181:16
**pretty** [7]_ - 29:3_, 37:15_, 72:12_, 74:22_, 104:12_, 111:4_, 154:11
**prevent** [1]_ - 78:13
**previously** [9]_ - 17:25_, 18:5_, 96:23_, 97:3_, 135:9_, 179:10_, 179:18_, 179:25_, 180:12
**primarily** [1]_ - 238:21
**principle** [1]_ - 129:19
**principles** [4]_ - 10:9_, 89:4_, 95:19_, 162:4
**private** [13]_ - 7:19_, 80:3_, 94:21_, 94:22_, 94:23_, 120:3_, 120:5_, 154:2_, 180:6_, 187:19_, 188:12_, 193:10_, 221:20
**privately** [1]_ - 184:1
**pro** [1]_ - 78:17

**pro-life** [1]_ - 78:17
**probation** [1]_ - 241:17
**problem** [15]_ - 20:8_, 27:4_, 29:7_, 71:22_, 75:15_, 77:15_, 179:24_, 180:11_, 185:4_, 199:25_, 217:2_, 217:18_, 230:11_, 236:24_, 243:11
**problems** [4]_ - 11:10_, 90:4_, 213:7_, 213:9
**procedural** [3]_ - 13:5_, 13:7_, 91:24
**procedure** [13]_ - 7:8_, 9:2_, 9:9_, 9:21_, 34:20_, 37:22_, 86:11_, 86:25_, 87:25_, 88:6_, 88:19_, 89:6_, 180:25
**proceed** [2]_ - 90:18_, 242:7
**proceeding** [13]_ - 6:21_, 7:16_, 11:9_, 15:24_, 16:2_, 60:24_, 85:25_, 86:3_, 86:4_, 86:6_, 90:3_, 94:23_, 94:25
**proceedings** [8]_ - 6:25_, 7:10_, 12:24_, 86:13_, 93:12_, 225:22_, 235:2_, 249:6
**process** [27]_ - 5:21_, 5:25_, 6:20_, 7:10_, 7:18_, 9:25_, 13:21_, 14:10_, 14:12_, 14:15_, 14:21_, 15:6_, 15:17_, 56:13_, 57:4_, 85:5_, 86:12_, 93:9_, 93:19_, 106:2_, 138:12_, 162:5_, 162:11_, 182:7_, 215:16_, 229:21_, 243:18
**processes** [1]_ - 131:20
**produce** [1]_ - 116:16
**product** [1]_ - 116:16
**profession** [2]_ - 169:1_, 235:14
**professional** [4]_ - 73:10_, 168:20_, 170:11_, 203:19
**professionally** [2]_ - 84:21_, 101:23
**profound** [1]_ - 84:23
**program** [3]_ - 34:9_, 34:10_, 34:12
**Program** [1]_ - 34:13
**programs** [1]_ - 37:14
**progress** [1]_ - 111:18

**progressively** [1]_ - 100:2
**prohibited** [4]_ - 56:13_, 60:8_, 159:9_, 192:20
**prohibition** [2]_ - 86:14_, 133:20
**projection** [1]_ - 73:18
**prompt** [3]_ - 161:5_, 162:2, 245:15
**prompted** [1]_ - 221:13
**promptly** [1]_ - 81:18
**proof** [24]_ - 10:4_, 18:16_, 54:5_, 54:14_, 54:16_, 54:20_, 54:21_, 54:24_, 55:5_, 88:23_, 97:15_, 128:14_, 128:16_, 128:20_, 128:22_, 128:24_, 129:3_, 129:4_, 129:7_, 129:9_, 129:13_, 129:20_, 130:14
**properly** [2]_ - 21:4_, 93:20
**property** [1]_ - 117:9
**proposal** [1]_ - 153:2
**proposals** [1]_ - 146:3
**propose** [3]_ - 78:5_, 206:22_, 214:22
**proposes** [1]_ - 205:22
**proposition** [1]_ - 55:1
**propounded** [3]_ - 4:22, 83:22_, 161:14
**proprietor** [2]_ - 141:24_, 203:11
**prosecuting** [2]_ - 12:12_, 18:21
**prosecution** [7]_ - 8:18_, 62:7_, 87:18_, 97:21_, 186:9_, 188:17_, 202:17
**prosecutors** [3]_ - 11:24_, 90:16_, 170:6
**Prospective** [8]_ - 64:25_, 66:3_, 70:21_, 75:21_, 138:20_, 206:3_, 234:10_, 234:18
**prospective** [99]_ - 4:17_, 4:19_, 5:12_, 13:12_, 15:22_, 18:19_, 60:1_, 64:10_, 65:16_, 65:23_, 68:5_, 69:2_, 69:23_, 70:25_, 71:17_, 72:18_, 73:3_, 83:18_, 83:19_, 84:18_, 94:20_, 97:19_, 100:10_, 131:23_, 133:19_, 133:21_, 136:3_,

137:11_, 141:24_, 142:9_, 145:19_, 145:22_, 146:11_, 150:25_, 152:4_, 153:22_, 155:7_, 156:15_, 157:1_, 157:3_, 159:5_, 161:9_, 161:11_, 182:19_, 192:22_, 195:6_, 195:7_, 196:25_, 197:7_, 198:19_, 198:20_, 200:19_, 200:20_, 201:13_, 201:14_, 202:5_, 202:6_, 203:7_, 203:8_, 204:13_, 204:14_, 205:18_, 205:24_, 210:25_, 214:16_, 217:11_, 218:14_, 219:22_, 220:1_, 220:24_, 221:6_, 223:1_, 223:4_, 223:21_, 224:1_, 225:6_, 227:9_, 227:11_, 228:13_, 228:17_, 228:20_, 231:3_, 231:14_, 232:22_, 232:24_, 233:23_, 235:1_, 236:8_, 237:5_, 237:11_, 238:2_, 238:11_, 238:17_, 238:20_, 239:5_, 239:14_, 240:3_, 241:16_, 242:13
**PROSPECTIVE** [483]_ - 20:20_, 20:25_, 21:8_, 21:11_, 21:18, 21:23_, 22:16_, 22:23_, 23:3_, 23:7_, 23:10_, 23:13_, 23:17, 23:21_, 24:5_, 24:10_, 24:13_, 24:16_, 24:19_, 24:24_, 25:3_, 25:8_, 25:11_, 25:16_, 25:20_, 25:24_, 26:2_, 26:6_, 26:8_, 26:12_, 26:16_, 26:20_, 26:22_, 26:24_, 27:12_, 27:14_, 27:19_, 27:22_, 28:2_, 28:18_, 28:20_, 28:22_, 29:10_, 29:18_, 29:21_, 29:23_, 30:2_, 30:4_, 30:7_, 30:12_, 30:17_, 30:19_, 31:9_, 31:15_, 31:17_, 31:20_, 31:23_, 32:2_, 32:4_, 32:17_, 32:23_, 33:2_, 33:11_, 33:15_, 33:19_, 34:2_, 34:8_, 34:13_, 34:19_, 34:22_, 35:3_, 35:6_, 35:10_, 35:14_, 35:16_, 35:19_, 35:22_, 36:1_, 36:4_, 36:10_, 36:14_, 36:19_, 37:3_, 37:7_, 37:12_, 37:19_, 37:21_, 38:4_, 38:6_, 38:11_, 38:13_, 38:15_, 38:18_, 38:23_, 39:2_, 39:4_, 39:19_, 40:3_, 40:14_, 40:20_, 40:24_,

41:12_, 41:22_, 41:25_, 42:8_, 42:13_, 42:16_, 42:18_, 42:21_, 42:24_, 43:2_, 43:6_, 43:9_, 43:11_, 43:17_, 43:24_, 44:14_, 44:22_, 45:22_, 45:24_, 46:10_, 46:12_, 46:17_, 47:14_, 47:21_, 47:25_, 48:4_, 48:8_, 48:18_, 53:16_, 53:23_, 82:12_, 98:14_, 98:17_, 98:21_, 100:19_, 100:21_, 101:1_, 101:5_, 101:10_, 101:13_, 101:17_, 101:23_, 102:3_, 102:6_, 102:11_, 102:20_, 102:24_, 103:5_, 103:9_, 103:12_, 103:17_, 103:24_, 104:1_, 104:16_, 104:21_, 104:24_, 105:5_, 105:12_, 105:15_, 105:22_, 105:24_, 106:8_, 106:15_, 106:17_, 106:19_, 106:22_, 107:3_, 107:7_, 107:13_, 107:17_, 107:20_, 108:7_, 108:14_, 108:20_, 108:25_, 109:2_, 109:4_, 109:7_, 109:10_, 109:12_, 109:15_, 109:17_, 109:19_, 109:21_, 109:25_, 110:12_, 110:14_, 110:20_, 110:23_, 111:3_, 111:8_, 111:10_, 111:12_, 111:14_, 111:24_, 112:2_, 112:7_, 112:12_, 112:19_, 112:21_, 113:4_, 113:9_, 113:12_, 113:17_, 114:2_, 114:7_, 114:10_, 114:12_, 114:14_, 114:18_, 114:22_, 115:2_, 115:6_, 115:8_, 115:15_, 115:18_, 115:22_, 115:24_, 116:3_, 116:10_, 116:12_, 116:18_, 116:21_, 116:23_, 117:5_, 117:7_, 117:17_, 117:21_, 118:2_, 118:6_, 118:11_, 118:12_, 118:16_, 118:18_, 119:1_, 119:4_, 119:7_, 119:12_, 119:15_, 119:21_, 119:25_, 120:12_, 120:16_, 120:23_, 121:3_, 121:5_, 121:7_, 121:10_, 121:12_, 121:14_, 121:16_, 121:20_, 122:13_, 122:19_, 122:22_, 124:25_, 125:2_, 125:6_, 128:3_, 128:6_, 134:24_, 135:11_, 135:18_, 135:20_, 135:22_, 136:8_, 136:14_, 136:18_, 136:22_, 137:4_, 137:6_,

163:21_, 164:3_, 164:5_, 164:8_, 164:10_, 164:13_, 164:15_, 164:20_, 164:23_, 164:25_, 165:3_, 165:5_, 165:8_, 165:11_, 165:18_, 165:25_, 166:4_, 166:11_, 166:15_, 166:19_, 166:22_, 166:24_, 167:4_, 167:8_, 167:11_, 167:15_, 167:17_, 167:19_, 167:22_, 168:2_, 168:5_, 168:7_, 168:10_, 168:14_, 168:19_, 168:23_, 169:3_, 169:8_, 169:14_, 169:16_, 169:21_, 170:4_, 170:8_, 170:13_, 170:16_, 170:20_, 170:23_, 171:2_, 171:5_, 171:9_, 171:11_, 171:13_, 171:15_, 171:18_, 171:22_, 171:25_, 172:3_, 172:7_, 172:10_, 172:14_, 172:17_, 172:24_, 173:1_, 173:4_, 173:8_, 173:11_, 173:14_, 173:23_, 174:4_, 174:7_, 174:10_, 174:14_, 174:19_, 174:22_, 175:1_, 175:3_, 175:8_, 175:11_, 175:16_, 175:18_, 175:21_, 175:25_, 176:7_, 176:10_, 176:15_, 176:18_, 176:23_, 176:25_, 177:3_, 177:8_, 177:11_, 177:15_, 177:21_, 177:24_, 178:8_, 180:4_, 181:20_, 181:24_, 182:3_, 182:9_, 182:12_, 191:12_, 191:15_, 191:18_, 191:21_, 194:2_, 194:11_, 195:1_, 195:4_, 195:11_, 195:14_, 195:17_, 195:20_, 196:2_, 196:7_, 196:11_, 196:14_, 196:19_, 197:11_, 197:14_, 197:18_, 197:24_, 198:4_, 198:10_, 198:13_, 198:17_, 198:25_, 199:3_, 199:8_, 199:12_, 199:14_, 199:20_, 199:23_, 200:7_, 200:11_, 200:13_, 200:25_, 201:7_, 201:15_, 201:20_, 202:1_, 202:12_, 202:16_, 202:23_, 203:1_, 203:13_, 203:22_, 204:3_, 204:6_, 204:8_, 204:16_, 204:23_, 205:2_, 205:11_, 218:21_, 218:25_, 219:6_, 219:12_, 219:17_, 220:9_, 220:13_, 220:19_, 221:12_, 221:16_, 221:21_, 222:1_, 222:5_, 222:10_,

222:16_, 222:20_, 222:23_, 223:17_, 225:12_, 225:14_, 225:17_, 225:23_, 226:5_, 226:9_, 226:16_, 226:20_, 226:23_, 227:4_, 227:8_, 227:16_, 227:19_, 227:21_, 228:1_, 228:5_, 228:9_, 229:6_, 229:8_, 229:10_, 229:25_, 230:4_, 230:8_, 230:11_, 230:14_, 230:18_, 230:22_, 231:2_, 231:19_, 231:23_, 232:3_, 232:10_, 232:16_, 232:20_, 233:6_, 233:8_, 233:14_, 233:19_, 246:14

**prostate** [1]_ - 40:4
**protect** [5]_ - 9:16_, 11:8_, 60:19_, 88:13_, 90:2
**protected** [2]_ - 5:8
**protecting** [2]_ - 8:4_, 87:4
**proud** [1]_ - 29:3
**prove** [20]_ - 10:4_, 10:7_, 16:16_, 52:7_, 52:12_, 54:7_, 54:15_, 55:7_, 55:20_, 55:24_, 88:25_, 89:2_, 95:13_, 126:20_, 126:25_, 128:17_, 128:23_, 129:15_, 130:1_, 130:6
**proved** [1]_ - 56:9
**proven** [2]_ - 10:1_, 88:21
**provide** [9]_ - 55:21_, 56:16_, 76:23_, 89:3_, 98:11_, 129:16_, 130:2_, 168:24_, 222:18
**provided** [14]_ - 6:11_, 8:11_, 61:20_, 61:21_, 87:12_, 87:21_, 94:14_, 107:23_, 154:23_, 162:9_, 162:11_, 179:19_, 194:24_, 217:23
**provider** [6]_ - 27:15_, 65:10_, 107:22_, 112:24_, 113:1_, 145:7
**province** [2]_ - 58:5_, 132:8
**prudent** [1]_ - 135:7
**pry** [2]_ - 15:18_, 94:11
**PTO** [1]_ - 139:5
**public** [21]_ - 6:21_, 6:22_, 7:10_, 8:5_, 8:7_, 10:16_, 10:24_, 15:24_, 16:2_, 85:25_, 86:1_, 86:4_, 86:12_, 87:6_, 88:5_, 89:19_, 94:23_, 94:25_,

175:12_, 215:18
**publicity** [8]_ - 8:3_, 9:17_, 10:21_, 87:3_, 89:15_, 181:2_, 181:16_, 182:19
**publicly** [1]_ - 89:11
**punishable** [2]_ - 18:5_, 97:3
**purchase** [1]_ - 215:6
**purpose** [7]_ - 9:5_, 9:6_, 15:19_, 45:2_, 92:17_, 92:25_, 244:21
**purposes** [12]_ - 8:11_, 8:12_, 8:17_, 8:24_, 11:2_, 23:5_, 33:12_, 87:13_, 87:22_, 89:20_, 92:22_, 185:12
**push** [2]_ - 106:25_, 137:13
**put** [14]_ - 31:3_, 38:7_, 98:23_, 104:8_, 104:12_, 122:14_, 183:22_, 184:15_, 189:16_, 198:11_, 210:13_, 229:11_, 236:14_, 247:6

## Q

**qualifications** [3]_ - 4:23, 83:23_, 161:15
**qualifies** [1]_ - 71:5
**questioned** [3]_ - 68:6_, 206:25_, 214:17
**questioning** [16]_ - 92:22_, 94:9_, 94:15_, 133:10_, 133:11_, 140:16_, 142:10_, 151:2_, 212:20_, 216:9_, 216:10_, 216:23_, 218:6_, 218:9_, 219:9_, 224:11
**questionnaire** [54]_ - 19:21_, 20:22_, 20:23_, 22:7_, 43:25_, 65:21_, 66:1_, 66:7_, 67:1_, 68:4_, 70:9_, 71:2_, 77:10_, 99:12_, 99:14_, 99:23_, 100:17_, 121:9_, 122:4_, 137:24_, 140:3_, 141:17_, 145:21_, 154:1_, 155:17_, 156:13_, 163:8_, 180:7_, 187:18_, 190:6_, 194:7_, 195:9_, 198:22_, 204:2_, 206:4_, 207:7_, 208:24_, 210:9_, 211:8_, 211:14_, 217:14_, 218:17_, 220:4_, 221:9_, 221:22_, 221:25_, 222:18_, 222:19_, 222:21

_, 223:7_, 229:13_, 233:3_, 239:19

**questionnaires** [16]_ - 8:14_, 8:17_, 8:19_, 14:6_, 20:10_, 61:20_, 84:11_, 84:25_, 87:14_, 87:16_, 87:17_, 162:10_, 207:21_, 208:16_, 217:5

**questions** [70]_ - 4:22_, 6:10_, 7:18_, 7:19_, 15:21_, 16:5_, 19:4_, 19:15_, 21:3_, 25:5_, 40:7_, 57:2_, 74:11_, 77:8_, 81:1, 83:22_, 85:17_, 86:20_, 92:25_, 93:6_, 94:11_, 95:6_, 135:8_, 137:1_, 150:24_, 161:14_, 162:8_, 162:10_, 162:21_, 162:25_, 172:1_, 180:8_, 181:3_, 190:4_, 192:11_, 199:16_, 205:23_, 205:25_, 206:21_, 206:22_, 207:1_, 207:17_, 207:19_, 207:22_, 208:25_, 210:2_, 210:5_, 211:1_, 212:18_, 212:23_, 213:21_, 214:3_, 214:25_, 215:1_, 215:13_, 215:14_, 215:17_, 215:22_, 216:14_, 229:12_, 241:17_, 244:1_, 245:21_, 247:2_, 247:4_, 248:11_, 248:15_, 248:17_, 248:25

**quick** [2]_ - 138:1_, 248:8

**quickly** [3]_ - 124:23_, 157:20_, 233:1

**quite** [6]_ - 40:2_, 47:18_, 98:12_, 137:8_, 212:18_, 216:2

**quote** [6]_ - 78:15_, 143:3_, 156:25_, 235:2_, 235:3_, 247:15

## R

**Rachel** [2]_ - 49:2_, 123:11

**racial** [1]_ - 153:10

**racist** [1]_ - 153:4

**radical** [1]_ - 209:20

**railroad** [2]_ - 30:23_, 30:24

**railroads** [1]_ - 70:13

**raise** [23]_ - 2:23_, 3:18_, 4:20_, 6:14_, 22:4_, 22:7_, 61:8_, 62:4_, 62:14_, 74:10_, 83:20_, 117:24_,

160:2_, 160:12_, 161:12_, 163:13_, 181:9_, 191:3_, 207:6_, 210:25_, 211:7_, 247:23_, 248:6

**raised** [9]_ - 20:11_, 22:3_, 52:18_, 99:12_, 183:21_, 202:7_, 204:19_, 206:6_, 219:8

**raising** [1]_ - 192:9

**random** [1]_ - 248:1

**Randy** [2]_ - 51:14_, 126:4

**ranges** [1]_ - 104:6

**raped** [1]_ - 143:12

**rare** [1]_ - 39:20

**rate** [1]_ - 23:5

**rates** [1]_ - 110:7

**rather** [1]_ - 104:9

**Raymond** [2]_ - 51:20_, 126:10

**reach** [5]_ - 11:18_, 56:23_, 58:22_, 130:25_, 132:19

**read** [19]_ - 46:22_, 46:25_, 54:10_, 80:19_, 123:1_, 128:19_, 128:20_, 129:7_, 131:2_, 158:2_, 158:12_, 181:5_, 181:7_, 181:13_, 182:19_, 182:23_, 214:10_, 245:3_, 245:5

**reading** [2]_ - 17:1_, 45:6

**ready** [4]_ - 83:4_, 193:1_, 203:24_, 203:25

**real** [8]_ - 54:18_, 67:18_, 129:1_, 131:22_, 203:16_, 207:2_, 235:10_, 236:19

**realize** [1]_ - 15:15

**really** [15]_ - 15:10_, 40:9_, 105:19_, 108:2_, 110:17_, 130:13_, 149:10_, 163:1_, 181:25_, 187:25_, 188:6_, 194:15_, 224:21_, 232:13_, 248:8

**realm** [3]_ - 39:11_, 45:15_, 122:3

**reason** [24]_ - 7:24_, 9:13_, 54:18_, 60:17_, 68:18_, 75:10_, 76:23_, 86:25_, 88:10_, 100:10_, 129:1_, 147:14_, 150:4_, 152:1_, 156:15_, 189:23_, 222:10_, 225:2_, 236:5_, 240:20_, 241:21_, 242:10_, 242:17_, 244:8

**reasonable** [21]_ - 10:5_, 16:16_, 52:8_, 52:12_,

54:8_, 54:12_, 54:17_, 54:18_, 54:21_, 55:25_, 88:25_, 95:13_, 106:6_, 126:20_, 126:25_, 128:18_, 128:25_, 129:1_, 129:4_, 130:6_, 130:15

**reasons** [8]_ - 61:9_, 70:16_, 152:16_, 183:15_, 215:25_, 237:7_, 237:16_, 238:17

**receive** [8]_ - 22:18_, 29:24_, 30:8_, 33:9_, 80:21_, 88:14_, 158:10_, 246:1

**received** [2]_ - 175:19_, 217:6

**receiving** [2]_ - 32:6_, 239:19

**recent** [1]_ - 147:9

**recently** [3]_ - 31:3_, 143:23_, 182:10

**recess** [10]_ - 4:1_, 61:16_, 80:13_, 83:6_, 137:20_, 157:22_, 159:25_, 161:3_, 216:21_, 244:23

**reciprocal** [1]_ - 159:13

**recognize** [22]_ - 47:11_, 48:22_, 49:7_, 49:17_, 49:25_, 50:7_, 50:16_, 50:22_, 51:2_, 51:10_, 51:21_, 84:24_, 123:5_, 123:13_, 123:22_, 124:5_, 124:12_, 124:19_, 125:15_, 125:20_, 126:6_, 126:11

**recognized** [2]_ - 65:23_, 84:12

**recollection** [2]_ - 155:9_, 211:22

**recommend** [1]_ - 208:9

**reconsider** [1]_ - 156:3

**record** [5]_ - 150:22_, 157:5_, 191:7_, 214:10_, 247:6

**recording** [4]_ - 7:14_, 7:16_, 86:17_, 225:21

**records** [1]_ - 241:8

**recurring** [1]_ - 200:8

**Redskins** [1]_ - 215:5

**refer** [1]_ - 13:4

**reference** [3]_ - 89:5_, 188:11_, 222:11

**referenced** [7]_ - 34:21_, 158:6_, 182:15_, 185:10_, 191:3_, 204:2_, 247:20

**references** [2]_ - 183:10_, 223:10

**referencing** [3]_ - 88:6_, 144:15_, 192:7

**referred** [1]_ - 140:3

**referring** [6]_ - 7:2_, 7:11_, 86:13_, 115:4_, 209:8_, 209:12

**reflect** [1]_ - 228:16

**reflected** [1]_ - 212:14

**reflecting** [2]_ - 9:21_, 88:19

**reflection** [2]_ - 9:18_, 88:16

**refrain** [1]_ - 7:22

**refresh** [1]_ - 231:16

**regard** [1]_ - 247:7

**regarding** [10]_ - 2:23_, 11:11_, 19:16_, 68:21_, 90:5_, 184:16_, 192:6_, 198:22_, 247:4_, 247:5

**regardless** [2]_ - 158:7_, 180:21

**regards** [1]_ - 202:16

**regrettably** [1]_ - 137:23

**regular** [4]_ - 23:5_, 48:6_, 118:21_, 197:22

**regularity** [1]_ - 67:18

**regularly** [2]_ - 48:9_, 74:20

**reimburse** [1]_ - 100:22

**rejected** [1]_ - 215:14

**related** [27]_ - 7:12_, 10:18_, 11:11_, 18:25_, 24:4_, 25:10_, 39:6_, 45:4_, 45:9_, 54:4_, 55:4_, 55:12_, 58:10_, 60:5_, 60:7_, 65:17_, 66:10_, 70:17_, 78:3_, 86:14_, 89:13_, 95:19_, 129:12_, 155:18_, 184:5_, 221:19_, 247:25

**relates** [1]_ - 208:4

**relationship** [10]_ - 18:20_, 19:12_, 47:4_, 47:11_, 49:9_, 51:3_, 169:11_, 170:6_, 174:12_, 174:16

**relationships** [1]_ - 178:5

**relatives** [9]_ - 25:2_, 98:15_, 164:22_, 166:18_, 168:11_, 171:16_, 172:8_, 175:9_, 176:21

**relaying** [1] - 69:22
**release** [1] - 216:13
**released** [1] - 157:17
**relevance** [1] - 216:1
**relevant** [3] - 136:7, 216:4, 247:25
**relief** [1] - 214:14
**relies** [1] - 72:19
**relieved** [3] - 68:14, 69:15, 70:15
**relive** [1] - 196:22
**rely** [2] - 54:22, 129:5
**relying** [1] - 188:22
**remain** [4] - 55:13, 56:20, 100:1, 129:24
**remaining** [6] - 82:10, 159:17, 205:23, 246:13, 246:19, 248:20
**remains** [1] - 156:4
**remember** [10] - 46:2, 46:3, 46:14, 46:17, 68:1, 76:23, 81:23, 102:9, 201:23, 247:9
**remembers** [1] - 57:9
**remind** [4] - 74:11, 143:21, 192:19, 244:14
**reminder** [2] - 82:25, 152:7
**reminding** [1] - 193:22
**remote** [1] - 36:11
**remotely** [1] - 28:5
**removed** [3] - 18:12, 97:11, 224:20
**render** [4] - 45:15, 53:5, 127:20, 189:24
**rendered** [2] - 58:2, 132:5
**Renee** [4] - 13:18, 19:18, 92:11, 99:8
**repeat** [6] - 19:22, 99:14, 125:2, 154:14, 159:2, 162:20
**repeatedly** [3] - 212:16, 237:6, 243:25
**repetition** [1] - 52:20
**repetitive** [1] - 18:25
**report** [5] - 35:25, 120:20, 122:7, 122:24, 170:22
**reported** [4] - 51:16, 141:16, 145:14, 150:3
**reporter** [1] - 85:15

**reports** [4] - 182:15, 183:10, 183:22, 184:5
**represent** [6] - 12:17, 12:20, 91:11, 91:14, 160:21, 185:22
**representation** [4] - 92:2, 148:11, 160:22, 185:20
**representing** [2] - 185:18, 186:1
**represents** [1] - 148:25
**reproductive** [1] - 36:25
**republic** [1] - 5:9
**Republican** [1] - 149:8
**Republicans** [2] - 149:7, 153:5
**request** [13] - 2:25, 91:23, 133:9, 150:5, 152:12, 152:17, 152:18, 153:13, 197:19, 214:14, 236:2, 241:10, 242:16
**require** [9] - 25:12, 27:1, 27:5, 31:21, 55:20, 86:19, 108:12, 130:1, 216:8
**required** [8] - 33:20, 52:7, 54:25, 82:4, 126:20, 160:15, 214:23, 245:4
**requires** [1] - 156:16
**reschedule** [1] - 121:19
**research** [8] - 60:4, 60:17, 81:18, 82:5, 133:25, 159:16, 192:23, 246:6
**resentment** [1] - 205:5
**respect** [6] - 137:6, 143:16, 171:19, 198:1, 206:2, 217:10
**respects** [1] - 186:19
**respond** [2] - 52:3, 126:16
**responded** [5] - 16:14, 95:12, 126:17, 214:18, 214:19
**response** [3] - 143:3, 235:17, 235:18
**responses** [2] - 70:6, 94:23
**responsibilities** [2] - 80:22, 189:15
**rest** [2] - 85:3, 159:16

**restaurant** [2] - 118:19, 119:10
**restaurant's** [1] - 118:21
**restrictions** [1] - 27:6
**restroom** [1] - 60:13
**rests** [1] - 128:14
**result** [5] - 41:18, 100:13, 162:5, 237:18, 237:21
**resume** [1] - 61:14
**resuming** [1] - 83:1
**retire** [3] - 58:21, 132:18, 167:14
**retired** [10] - 101:10, 119:16, 164:16, 166:16, 167:12, 172:19, 172:21, 173:15, 175:25, 176:1
**retread** [1] - 248:22
**retrieve** [1] - 208:15
**return** [25] - 18:18, 61:1, 80:11, 80:20, 80:24, 81:11, 81:12, 102:7, 105:8, 137:10, 137:17, 158:5, 158:8, 192:15, 220:21, 227:5, 228:10, 230:24, 232:17, 233:21, 245:5, 245:22, 245:25, 246:2
**returned** [2] - 32:7, 72:3
**returns** [2] - 102:12, 102:16
**reveal** [3] - 7:21, 86:5, 86:22
**revealing** [1] - 87:7
**review** [5] - 87:16, 102:25, 133:25, 139:10, 246:6
**revisiting** [3] - 211:21, 241:25, 242:19
**rheumatoid** [1] - 44:2
**Riddell** [2] - 51:5, 125:21
**rifle** [1] - 178:25
**rise** [10] - 4:17, 61:3, 69:21, 82:9, 83:18, 99:24, 134:18, 159:19, 161:12, 246:11
**rises** [1] - 79:20
**risk** [1] - 28:12
**River** [7] - 30:2, 30:11,

66:24, 163:23, 177:16, 222:2, 222:12
**road** [1] - 48:8
**roaster** [1] - 22:24
**robbed** [1] - 68:16
**robbery** [1] - 68:17
**Robert** [2] - 49:5, 123:19
**role** [17] - 5:14, 6:1, 75:7, 84:18, 85:6, 94:2, 102:25, 117:10, 169:6, 170:11, 172:3, 174:5, 175:6, 176:12, 178:4, 182:24, 184:10
**Romney** [1] - 187:1
**Ron** [1] - 177:21
**Ronnie** [2] - 50:21, 125:17
**room** [50] - 9:20, 15:8, 19:24, 22:5, 52:16, 53:4, 53:10, 56:6, 58:21, 58:23, 59:8, 59:21, 61:1, 80:21, 81:12, 88:18, 89:10, 95:3, 127:20, 130:12, 132:19, 132:20, 133:5, 133:13, 134:16, 135:25, 137:10, 158:9, 182:14, 187:15, 187:24, 190:7, 191:25, 192:15, 193:20, 203:3, 205:16, 219:20, 220:21, 221:1, 223:19, 226:12, 227:6, 228:11, 228:25, 230:25, 232:18, 233:21, 245:25
**room's** [2] - 26:13, 26:16
**Rose** [2] - 51:6, 125:22
**round** [2] - 74:9, 80:25
**Routh** [183] - 2:12, 2:13, 3:8, 3:19, 4:13, 12:13, 12:17, 12:25, 13:8, 13:11, 13:14, 13:15, 16:11, 17:3, 17:11, 17:13, 17:22, 17:24, 18:1, 18:7, 18:9, 19:6, 19:13, 51:18, 52:1, 61:12, 61:22, 62:3, 62:25, 63:9, 63:19, 64:5, 64:21, 65:3, 65:9, 66:11, 66:19, 67:22, 68:12, 69:14, 70:11, 71:11, 71:19, 72:6, 72:13, 72:24, 73:7, 73:21, 74:25, 75:12, 76:2,

76:10_, 76:19_, 77:7_, 78:5_, 78:22_, 79:18_, 80:5_, 82:22_, 83:15_, 91:8_, 91:11_, 91:19_, 91:23_, 92:1_, 92:5_, 92:7_, 95:9_, 95:11_, 96:1_, 96:9_, 96:11_, 96:20_, 96:22_, 96:24_, 97:6_, 97:8_, 98:4_, 98:7_, 98:13_, 98:19_, 99:3_, 126:8_, 126:15_, 135:10_, 138:14_, 138:22_, 139:2_, 139:9_, 139:23_, 140:10_, 140:21_, 141:5_, 141:13_, 142:2_, 142:13_, 143:7_, 143:20_, 144:1_, 144:10_, 144:18_, 144:25_, 145:8_, 145:16_, 146:2_, 146:23_, 147:3_, 147:10_, 147:18_, 148:7_, 148:13_, 148:20_, 149:5_, 149:13_, 150:7_, 150:25_, 151:4_, 152:13_, 153:14_, 154:3_, 154:7_, 154:23_, 155:1_, 155:15_, 155:22_, 156:6_, 156:20_, 157:7_, 157:11_, 160:5_, 160:12_, 161:8_, 179:8_, 179:12_, 182:23_, 184:12_, 184:21_, 185:18_, 185:22_, 185:25_, 186:4_, 186:9_, 186:14_, 202:19_, 205:22_, 206:20_, 207:15_, 208:8_, 209:8_, 209:17_, 210:1_, 211:5_, 211:15_, 212:2_, 212:21_, 213:18_, 214:22_, 216:16_, 217:15_, 218:3_, 218:5_, 224:19_, 234:1_, 234:13_, 234:20_, 235:4_, 235:11_, 236:18_, 237:8_, 237:23_, 238:5_, 238:13_, 238:25_, 239:8_, 239:22_, 240:7_, 240:16_, 240:25_, 241:11_, 242:18_, 244:9_, 247:12_, 247:22

**ROUTH** [186]_ - 2:13_, 3:9_, 3:14_, 3:20_, 13:13_, 61:13_, 61:25_, 62:6_, 62:11_, 62:16_, 63:4_, 63:12_, 63:15_, 63:23_, 64:6_, 64:17_, 64:23_, 65:4_, 65:14_, 66:13_, 66:20_, 67:4_, 67:23_, 68:14_, 69:15_, 69:18_, 70:3_, 70:14_, 71:13_, 71:22_, 72:7_, 72:15_, 72:25_, 73:8_, 73:22_, 75:2_, 75:13_, 76:3_, 76:12_, 76:21_, 76:24_, 77:4_, 77:11_, 77:16_,

77:22_, 78:6_, 78:23_, 79:3_, 79:7_, 79:10_, 79:19_, 80:1_, 80:6_, 82:23_, 92:7_, 94:8_, 138:16_, 138:23_, 139:3_, 139:13_, 139:16_, 139:25_, 140:11_, 140:22_, 141:6_, 141:14_, 142:3_, 142:14_, 142:16_, 142:18_, 143:8_, 144:2_, 144:11_, 144:16_, 145:1_, 145:9_, 145:12_, 146:5_, 146:9_, 146:15_, 146:24_, 147:4_, 147:11_, 147:19_, 147:23_, 148:1_, 148:8_, 148:14_, 148:21_, 149:6_, 149:16_, 149:24_, 150:8_, 151:5_, 151:7_, 151:9_, 151:11_, 151:18_, 152:14_, 152:20_, 153:1_, 153:3_, 153:16_, 153:18_, 154:5_, 154:8_, 155:2_, 155:11_, 155:23_, 156:5_, 156:7_, 156:10_, 156:21_, 157:8_, 157:10_, 157:12_, 160:6_, 160:13_, 179:13_, 207:1_, 207:5_, 207:9_, 207:17_, 208:10_, 208:12_, 208:18_, 208:20_, 209:2_, 209:10_, 209:18_, 209:23_, 210:2_, 210:5_, 210:15_, 211:6_, 211:16_, 212:3_, 212:22_, 213:4_, 213:19_, 213:24_, 214:4_, 214:25_, 215:8_, 215:15_, 215:21_, 215:24_, 216:17_, 217:17_, 218:4_, 218:7_, 224:20_, 234:3_, 234:14_, 234:21_, 235:5_, 235:13_, 236:19_, 236:22_, 237:9_, 237:24_, 238:8_, 238:15_, 239:1_, 239:9_, 239:23_, 240:8_, 240:17_, 240:19_, 240:21_, 241:2_, 241:12_, 241:25_, 242:3_, 242:9_, 242:11_, 242:19_, 242:24_, 243:1_, 243:3_, 243:15_, 244:10_, 248:3_, 248:7_, 248:16_, 249:2

**Routh's** [2]_ - 98:19_, 186:16

**rude** [3]_ - 60:14_, 134:11_, 159:11

**rule** [10]_ - 8:8_, 10:13_, 87:9_, 88:9_, 95:1_, 130:21_, 192:25_, 226:4_, 226:6_, 244:7

**rules** [5]_ - 15:13_, 75:10_, 94:3_, 224:21_, 247:19

**ruling** [1]_ - 156:4
**run** [10]_ - 14:12_, 28:12_, 36:22_, 38:21_, 39:5_, 57:5_, 196:16_, 201:3_, 207:2_, 232:4
**running** [3]_ - 31:6_, 203:20_, 207:11
**runs** [2]_ - 20:3_, 99:16
**Ryan** [9]_ - 2:13_, 4:13_, 13:14_, 17:3_, 83:15_, 92:7_, 96:1_, 98:4_, 161:8

### S

**S-A-Y-L-E-S** [1]_ - 51:20
**S-corporations** [2]_ - 102:8_, 102:11
**safe** [1]_ - 180:21
**safety** [4]_ - 11:2_, 11:3_, 89:21
**salary** [1]_ - 107:6
**sales** [4]_ - 30:7_, 111:19_, 111:20_, 112:6
**salon** [2]_ - 104:24_, 105:4
**Samuel** [2]_ - 50:25_, 125:19
**Sarasota** [3]_ - 118:19_, 119:3_, 148:17
**satisfactory** [1]_ - 242:21
**satisfied** [1]_ - 236:13
**Saturday** [2]_ - 108:3_, 108:16
**savings** [1]_ - 113:18
**Sayles** [2]_ - 51:19_, 126:10
**scene** [2]_ - 128:7_, 139:14
**schedule** [29]_ - 14:4_, 19:21_, 19:23_, 20:3_, 20:8_, 20:24_, 22:6_, 24:4_, 35:17_, 93:4_, 99:11_, 99:16_, 99:22_, 99:24_, 101:15_, 105:14_, 106:21_, 107:19_, 109:6_, 114:1_, 118:8_, 118:24_, 120:21_, 137:13_, 145:22_, 162:4_, 187:18_, 219:3_, 248:5
**scheduled** [8]_ - 21:12_, 22:20_, 26:2_, 27:3_, 34:15_, 35:7_, 118:5_, 122:16

**scheduling** [9]_ - 25:10_, 39:6_, 45:4_, 109:21_, 121:25_, 141:20_, 150:4_, 150:5_, 152:25
**scheduling-related** [3]_ - 25:10_, 39:6_, 45:4
**scheduling-specific** [1]_ - 121:25
**Schnelle** [2]_ - 51:7_, 125:23
**School** [1]_ - 111:24
**school** [16]_ - 24:25_, 29:23_, 30:1_, 33:4_, 67:7_, 106:1_, 106:3_, 107:24_, 111:15_, 115:23_, 146:21_, 196:12_, 198:5_, 241:13_, 241:16_, 241:22
**scientist** [2]_ - 49:4_, 123:19
**Scientist/Forensic** [1]_ - 51:12
**scientist/Forensic** [1]_ - 126:2
**Scott** [2]_ - 50:24_, 125:17
**seat** [45]_ - 4:4_, 5:2_, 20:15_, 22:2_, 23:24_, 25:25_, 26:19_, 27:25_, 30:14_, 32:1_, 39:16_, 48:21_, 80:16_, 84:3_, 100:4_, 100:5_, 101:6_, 101:20_, 103:2_, 103:11_, 105:10_, 107:15_, 108:18_, 109:22_, 111:9_, 112:17_, 115:17_, 116:8_, 116:19_, 117:3_, 117:18_, 118:10_, 135:5_, 157:25_, 171:7_, 171:23_, 172:15_, 174:24_, 176:16_, 177:9_, 178:9_, 194:1_, 200:5_, 205:20_, 246:17
**seated** [12]_ - 2:19_, 6:5_, 11:24_, 61:6_, 61:17_, 83:9_, 161:19_, 167:5_, 168:3_, 170:14_, 216:22_, 245:1
**Sebastian** [1]_ - 171:13
**Second** [1]_ - 200:13
**second** [17]_ - 11:23_, 13:25_, 17:7_, 22:19_, 35:4_, 55:16_, 80:24_, 85:14_, 87:14_, 96:5_, 122:12_, 135:2_, 135:4_, 137:10_, 158:5_, 160:1_, 223:25
**second-floor** [1]_ - 137:10

**secondarily** [1] - 8:13

**secondary** [1] - 6:23

**secondly** [4] - 9:18, 27:5, 88:15, 133:16

**Secret** [12] - 17:19, 49:3, 49:6, 49:24, 50:3, 50:4, 96:17, 123:18, 123:20, 124:9, 124:11, 124:15

**Secretary** [1] - 186:25

**section** [1] - 158:10

**secure** [2] - 10:25, 89:19

**SECURITY** [2] - 161:20, 161:25

**security** [20] - 10:20, 10:21, 11:4, 11:6, 11:11, 11:15, 89:14, 89:15, 89:23, 89:25, 90:4, 90:9, 173:16, 174:9, 177:23, 178:3, 221:20, 222:2, 222:7, 222:12

**security-related** [1] - 11:11

**see** [108] - 3:17, 4:7, 4:9, 10:17, 11:13, 15:13, 18:24, 19:7, 19:10, 20:15, 21:21, 27:24, 29:18, 38:8, 39:15, 40:7, 42:25, 43:19, 43:22, 45:8, 46:20, 47:13, 49:19, 50:9, 52:17, 52:18, 53:13, 54:3, 55:3, 56:18, 57:7, 57:25, 58:19, 58:22, 59:4, 60:12, 78:10, 82:10, 89:12, 90:6, 94:3, 97:24, 99:5, 99:9, 100:3, 110:1, 118:7, 120:3, 122:25, 123:14, 124:22, 126:1, 128:1, 128:12, 129:10, 129:21, 130:24, 131:11, 132:2, 132:19, 133:2, 134:8, 159:1, 159:17, 173:25, 177:10, 178:16, 178:22, 179:1, 179:7, 180:14, 180:18, 180:23, 181:17, 182:13, 182:17, 183:17, 183:19, 184:19, 185:8, 185:16, 185:18, 185:24, 186:2, 187:22, 188:3, 188:10, 189:4, 190:2, 190:14, 192:4, 192:9, 200:21, 201:16, 204:18, 205:22, 215:6,

216:1, 221:14, 223:5, 224:9, 231:15, 233:4, 236:12, 241:7, 243:20, 246:12

**seeing** [5] - 28:13, 45:5, 84:5, 121:24, 178:11

**seek** [1] - 209:2

**seem** [3] - 40:1, 85:2, 146:21

**segment** [3] - 48:25, 137:23, 192:11

**segments** [1] - 123:16

**select** [2] - 84:16, 203:14

**selected** [8] - 8:21, 117:12, 118:19, 130:11, 142:12, 178:15, 218:24, 240:6

**selection** [60] - 2:20, 2:22, 2:23, 3:18, 5:20, 5:22, 6:19, 7:9, 7:18, 8:12, 8:17, 9:25, 13:21, 13:22, 14:10, 14:12, 14:19, 14:20, 16:20, 45:2, 61:22, 74:9, 74:22, 80:25, 82:17, 83:1, 84:10, 86:12, 86:19, 87:13, 87:17, 91:18, 92:17, 92:22, 92:23, 93:7, 133:13, 134:16, 135:25, 137:10, 157:19, 158:6, 160:1, 201:23, 219:20, 220:21, 221:1, 223:19, 226:13, 227:6, 228:11, 228:25, 229:21, 230:24, 232:18, 233:21, 234:7, 245:25, 247:4, 247:5

**self** [20] - 38:18, 38:21, 42:3, 74:16, 92:2, 103:5, 103:12, 114:23, 115:2, 115:10, 117:9, 120:1, 139:21, 140:6, 141:25, 152:3, 155:7, 160:22, 185:20, 212:4

**self-contractor** [1] - 42:3

**self-declared** [1] - 74:16

**self-employed** [12] - 38:18, 38:21, 103:5, 103:12, 114:23, 115:2, 115:10, 120:1, 139:21, 141:25, 152:3, 212:4

**self-identify** [2] - 140:6, 155:7

**self-managed** [1] - 117:9

**self-representation** [3] - 92:2, 160:22, 185:20

**semester** [1] - 30:11

**senator** [1] - 187:2

**send** [2] - 53:3, 127:19

**senior** [1] - 30:7

**sense** [5] - 38:8, 54:19, 127:10, 129:2, 159:13

**sensitive** [2] - 28:8, 100:11

**sentence** [4] - 58:4, 58:5, 132:6, 132:7

**sentenced** [1] - 241:16

**sentiments** [1] - 84:11

**separate** [4] - 16:22, 32:20, 97:6, 112:10

**September** [25] - 17:2, 17:9, 17:16, 18:1, 18:9, 22:20, 26:3, 26:8, 37:22, 37:23, 37:24, 38:1, 75:25, 95:25, 96:7, 96:14, 96:24, 97:8, 101:24, 102:13, 121:6, 122:20, 141:17, 186:11, 211:18

**sequence** [1] - 100:16

**sergeant** [5] - 47:15, 49:14, 50:4, 124:2, 124:14

**serial** [5] - 18:8, 18:12, 97:7, 97:11, 162:19

**series** [2] - 172:1, 206:21

**serious** [4] - 20:23, 22:6, 27:16, 218:23

**serve** [56] - 4:10, 4:23, 15:14, 24:15, 40:10, 42:20, 45:20, 69:13, 69:22, 74:4, 74:21, 83:13, 83:23, 84:19, 87:21, 93:22, 94:4, 102:23, 106:5, 107:6, 114:16, 117:12, 120:17, 122:5, 132:4, 137:3, 143:5, 157:1, 157:6, 161:15, 162:24, 168:1, 169:13, 171:1, 177:7, 178:7, 178:15, 179:17, 184:23, 189:12, 190:18, 192:3, 198:3, 198:14, 205:10, 212:14, 218:24, 223:15, 227:25,

228:8, 229:24, 232:1, 233:13, 243:11, 243:24

**served** [2] - 85:1, 152:14

**Service** [12] - 17:19, 49:3, 49:6, 49:24, 50:3, 50:4, 96:17, 123:18, 123:20, 124:10, 124:11, 124:15

**service** [34] - 4:8, 5:18, 23:6, 25:22, 28:3, 41:18, 65:8, 65:12, 69:6, 71:3, 80:20, 81:3, 81:10, 82:4, 84:6, 84:20, 84:23, 93:14, 100:11, 100:14, 100:25, 106:2, 114:21, 119:10, 131:23, 152:2, 158:3, 158:13, 158:16, 158:25, 194:12, 219:15, 245:8, 245:24

**serviced** [1] - 103:7

**services** [3] - 12:18, 91:12, 168:25

**serving** [2] - 34:24, 230:19

**session** [4] - 61:21, 140:17, 161:2, 246:25

**set** [10] - 11:23, 49:1, 75:24, 123:13, 178:14, 183:9, 190:3, 208:16, 244:1, 247:10

**setback** [2] - 36:7, 74:21

**setting** [2] - 193:10, 196:23

**settled** [1] - 106:3

**seven** [2] - 120:3, 165:6

**several** [1] - 105:18

**severe** [6] - 32:19, 117:8, 117:22, 118:1, 148:11, 152:10

**sexual** [1] - 156:10

**Shakes** [1] - 166:19

**shall** [5] - 12:21, 92:2, 130:21, 159:4, 246:6

**shape** [1] - 159:7

**share** [6] - 45:1, 128:2, 173:13, 197:25, 200:24, 202:10

**shared** [1] - 9:5

**sharing** [3] - 44:25, 46:18, 191:23

**sheet** [1]_ - 31:3

**sheriff** [4]_ - 147:5_, 148:14_, 172:20_, 176:4

**Sheriff's** [19]_ - 47:9_, 47:15_, 47:21_, 48:2_, 48:13_, 48:14_, 49:12_, 49:15_, 50:13_, 50:19_, 51:9_, 123:10_, 123:25_, 124:3_, 124:18_, 125:13_, 125:25_, 167:2_, 177:17

**sheriff's** [4]_ - 164:25_, 166:16_, 172:4_, 172:12

**shielding** [1]_ - 9:12

**shift** [12]_ - 11:23_, 36:18_, 44:5_, 44:15_, 45:5_, 49:1_, 50:9_, 99:10_, 121:25_, 129:11_, 132:3_, 180:24

**shifting** [3]_ - 36:25_, 100:6_, 178:23

**Shipley** [9]_ - 2:4_, 2:5_, 2:24_, 12:2_, 18:22_, 90:19_, 90:21_, 97:22_, 207:20

**SHIPLEY** [5]_ - 2:5_, 2:25_, 12:1_, 90:20_, 247:5

**shipped** [2]_ - 18:13_, 97:12

**Shorelight** [1]_ - 105:22

**short** [4]_ - 46:1_, 65:2_, 119:13_, 216:19

**short-term** [2]_ - 46:1_, 65:2

**shortened** [1]_ - 73:16

**shortly** [1]_ - 25:18

**shot** [2]_ - 196:16_, 199:23

**show** [13]_ - 39:12_, 52:15_, 55:16_, 67:6_, 99:25_, 122:8_, 127:5_, 127:7_, 129:23_, 137:23_, 216:24_, 235:8_, 237:13

**showed** [2]_ - 77:3_, 84:10

**showing** [1]_ - 157:5

**shown** [2]_ - 58:11_, 241:20

**shows** [1]_ - 132:13

**shy** [4]_ - 21:4_, 52:17_, 127:5_, 129:23

**sic** [3]_ - 34:8_, 142:21_, 150:17

**sick** [3]_ - 179:13_, 179:14_, 247:16

**side** [2]_ - 74:10_, 168:14

**sides** [8]_ - 8:1_, 16:1_, 48:17_, 87:1_, 88:14_, 183:13_, 188:2_, 188:9

**sight** [1]_ - 45:14

**significantly** [1]_ - 107:1

**SIHVOLA** [2]_ - 244:15_, 244:17

**Sihvola** [7]_ - 2:15_, 2:17_, 13:18_, 19:16_, 19:18_, 92:11_, 99:8

**silent** [4]_ - 24:1_, 55:13_, 56:21_, 129:24

**similar** [3]_ - 40:8_, 81:13_, 180:19

**simple** [1]_ - 134:10

**simply** [10]_ - 6:25_, 9:15_, 15:19_, 16:13_, 88:12_, 94:12_, 95:11_, 133:24_, 178:14_, 187:12

**sincere** [1]_ - 5:3

**single** [6]_ - 6:8_, 27:14_, 37:15_, 65:9_, 85:16_, 194:8

**sister** [2]_ - 149:24_, 172:4

**sister's** [4]_ - 172:12_, 222:1_, 222:4_, 222:7

**sit** [7]_ - 15:8_, 39:21_, 57:1_, 100:3_, 220:7_, 224:4

**sitting** [9]_ - 39:20_, 39:23_, 40:11_, 59:13_, 90:17_, 97:20_, 145:23_, 187:24_, 199:11

**situation** [15]_ - 22:8_, 32:5_, 37:8_, 40:18_, 112:10_, 143:4_, 160:20_, 166:5_, 166:6_, 195:22_, 196:4_, 234:24_, 236:12_, 237:3_, 238:3

**situations** [2]_ - 155:3_, 189:8

**six** [4]_ - 35:7_, 45:25_, 165:6_, 208:10

**skipping** [1]_ - 73:14

**SKS** [1]_ - 178:25

**sleep** [7]_ - 31:6_, 160:19_, 160:20_, 160:23_, 179:13_, 247:16

**sleepy** [1]_ - 201:23

**slept** [1]_ - 70:12

**slightly** [1]_ - 195:10

**slips** [1]_ - 46:15

**slow** [3]_ - 102:9_, 210:7_, 213:12

**small** [5]_ - 36:5_, 104:3_, 116:12_, 147:17_, 231:23

**smart** [1]_ - 142:11

**Smith** [4]_ - 51:7_, 51:8_, 125:23_, 125:24

**smoothly** [1]_ - 62:6

**so-called** [1]_ - 54:24

**so..** [22]_ - 24:7_, 24:11_, 24:22_, 73:22_, 77:23_, 108:23_, 147:5_, 147:23_, 148:14_, 149:25_, 151:5_, 151:13_, 153:20_, 156:11_, 160:9_, 160:24_, 182:3_, 207:19_, 208:10_, 215:3_, 224:22_, 241:13

**social** [7]_ - 82:6_, 133:23_, 159:8_, 181:8_, 182:12_, 200:25_, 208:2

**society** [1]_ - 5:19

**sole** [16]_ - 27:15_, 58:5_, 65:10_, 72:2_, 76:8_, 103:8_, 103:14_, 104:25_, 112:24_, 113:1_, 132:7_, 139:21_, 141:24_, 145:7_, 203:11

**solely** [3]_ - 81:21_, 152:17_, 184:17

**solemnly** [3]_ - 4:21_, 83:21_, 161:13

**solo** [2]_ - 32:5_, 32:15

**solved** [1]_ - 200:1

**someone** [8]_ - 20:18_, 57:12_, 135:15_, 152:3_, 185:15_, 190:8_, 244:14

**sometime** [1]_ - 42:10

**sometimes** [10]_ - 13:4_, 16:7_, 20:4_, 20:5_, 44:17_, 46:2_, 84:20_, 99:18_, 189:7_, 189:9

**somewhat** [2]_ - 58:10_, 208:22

**son** [15]_ - 33:15_, 33:16_, 108:4_, 110:1_, 114:3_, 115:18_, 146:20_, 155:13_, 176:3_, 176:6_, 176:18_, 177:4_, 197:13_, 198:4_, 237:2

**son's** [3]_ - 24:24_, 144:8_, 198:12

**son-in-law** [3]_ - 176:3_, 176:6_, 176:18

**son-in-law's** [1]_ - 177:4

**soon** [18]_ - 59:23_, 61:2_, 80:11_, 111:4_, 117:23_, 133:7_, 157:15_, 193:20_, 203:4_, 213:3_, 219:20_, 220:23_, 223:19_, 227:7_, 228:12_, 232:19_, 233:22_, 244:22

**sorry** [37]_ - 3:2_, 3:3_, 13:13_, 26:6_, 26:16_, 31:19_, 40:1_, 66:5_, 73:25_, 79:8_, 94:8_, 103:3_, 114:25_, 118:14_, 118:17_, 124:22_, 142:14_, 147:19_, 151:7_, 157:10_, 164:15_, 173:23_, 176:12_, 177:13_, 189:8_, 194:2_, 204:24_, 209:13_, 210:3_, 214:1_, 216:19_, 220:10_, 233:3_, 242:24_, 244:17_, 248:18

**sort** [20]_ - 24:14_, 31:21_, 41:17_, 43:4_, 56:12_, 56:13_, 67:7_, 77:2_, 130:17_, 131:20_, 152:9_, 169:24_, 181:15_, 182:15_, 192:1_, 199:1_, 200:8_, 223:8

**sorts** [3]_ - 77:12_, 215:9_, 247:23

**sound** [1]_ - 122:21

**sounds** [1]_ - 201:3

**source** [3]_ - 30:20_, 103:8_, 139:21

**South** [4]_ - 27:19_, 27:20_, 108:2_, 168:15

**south** [1]_ - 104:6

**Southern** [16]_ - 4:11_, 5:5_, 12:3_, 17:2_, 17:10_, 17:17_, 18:2_, 18:10_, 84:7_, 90:22_, 91:3_, 95:25_, 96:8_, 96:15_, 96:25_, 97:9

**southern** [1]_ - 109:17

**space** [1]_ - 6:24

**spaces** [1]_ - 10:25

**speaking** [4]_ - 6:16_, 45:7_, 85:22_, 134:22

**speaks** [3]_ - 66:8_, 89:7_, 153:5

**special** [11]_ - 15:5_, 17:19_, 20:8_, 47:6_, 47:8_, 49:3_, 49:5_, 49:6_, 50:14_, 84:23_, 96:17

**Special** [33]_ - 49:13_, 49:20_, 49:24_, 50:2_, 50:3_, 50:5_, 50:18_,

50:21_, 50:24_, 50:25_, 51:6_, 51:7_, 51:14_, 123:8_, 123:9_, 123:17_, 123:19_, 123:20_, 124:1_, 124:4_, 124:9_, 124:10_, 124:11_, 124:15_, 125:4_, 125:11_, 125:12_, 125:14 _, 125:18_, 125:22_, 125:23_, 126:3

**specialist** [5]_ - 27:1_, 47:10_, 48:5_, 65:18_, 123:11

**specialized** [2]_ - 192:6 _, 192:8

**specialty** [1]_ - 22:23

**specific** [28]_ - 8:6_, 9:13 _, 19:23_, 32:22_, 54:10_, 57:14_, 59:9_, 61:8_, 86:5 _, 86:22_, 87:7_, 87:24_, 88:9_, 100:12_, 101:9_, 101:15_, 120:20_, 121:25 _, 155:18_, 169:20_, 194:6_, 203:15_, 206:24_, 208:8_, 212:12_, 215:17_, 237:21_, 240:24

**specifically** [23]_ - 14:9 _, 16:24_, 17:8_, 17:16_, 18:1_, 60:14_, 67:12_, 87:2_, 95:24_, 96:6_, 96:14_, 96:23_, 150:15_, 152:5_, 159:9_, 181:5_, 206:5_, 224:16_, 235:21_, 235:22_, 242:4_, 243:9_, 247:25

**spell** [1]_ - 135:19

**spelled** [1]_ - 51:19

**spend** [1]_ - 116:5

**spin** [1]_ - 55:4

**spin-off** [1]_ - 55:4

**spinoff** [1]_ - 129:11

**split** [1]_ - 28:10

**spoken** [6]_ - 19:5_, 19:8 _, 45:17_, 98:3_, 98:13_, 98:16

**spouse** [6]_ - 86:7_, 164:12_, 166:23_, 167:20 _, 172:25

**spouse's** [1]_ - 7:4

**squad** [1]_ - 110:3

**St** [7]_ - 25:17_, 110:21_, 119:1_, 165:1_, 166:16_, 167:1_, 175:4

**stack** [1]_ - 208:16

**stacks** [1]_ - 217:24

**staff** [7]_ - 8:23_, 28:4_,

65:17_, 80:9_, 87:22_, 93:2_, 105:17

**stage** [1]_ - 36:24

**stand** [20]_ - 3:25_, 20:10 _, 20:22_, 22:8_, 22:14_, 39:11_, 40:8_, 40:12_, 44:4_, 45:11_, 70:25_, 100:16_, 122:8_, 135:3_, 140:14_, 157:19_, 163:18 _, 181:18_, 193:1_, 199:4

**standby** [13]_ - 2:17_, 12:15_, 13:3_, 13:4_, 13:9 _, 13:18_, 19:16_, 91:9_, 91:22_, 92:12_, 99:7_, 175:15

**standing** [7]_ - 40:16_, 44:17_, 69:12_, 69:25_, 90:8_, 100:1_, 147:12

**star** [1]_ - 33:5

**start** [19]_ - 6:3_, 20:13_, 22:12_, 39:10_, 47:6_, 56:7_, 61:22_, 62:3_, 62:9 _, 85:9_, 100:15_, 102:7_, 134:20_, 138:14_, 149:16 _, 163:17_, 181:17_, 218:12_, 249:4

**started** [4]_ - 4:15_, 42:18 _, 82:25_, 162:25

**starting** [5]_ - 20:1_, 39:18_, 73:15_, 121:5_, 191:8

**State** [1]_ - 187:1

**state** [3]_ - 167:12_, 167:24

**statements** [1]_ - 235:12

**states** [3]_ - 52:21_, 127:12_, 153:4

**States** [39]_ - 2:7_, 4:11_, 4:13_, 8:22_, 10:4_, 11:24 _, 12:2_, 12:5_, 12:7_, 12:9_, 49:3_, 49:5_, 49:24 _, 50:3_, 50:4_, 54:6_, 69:2_, 83:13_, 83:14_, 84:14_, 88:24_, 90:21_, 90:24_, 91:3_, 96:3_, 106:1_, 106:4_, 123:18_, 123:20_, 124:9_, 124:11_, 124:14_, 128:15_, 128:17 _, 161:7_, 206:1_, 206:15 _, 211:3_, 241:3

**stateside** [1]_ - 170:6

**stating** [1]_ - 135:13

**status** [2]_ - 186:12_, 239:6

**statute** [2]_ - 186:22_, 187:4

**stay** [17]_ - 21:25_, 29:3_, 37:4_, 37:9_, 67:11_, 81:21_, 123:16_, 133:9_, 133:11_, 134:19_, 134:25 _, 193:2_, 193:5_, 193:13 _, 198:6_, 246:15

**stay-at-home** [2]_ - 29:3 _, 67:11

**stayed** [1]_ - 39:19

**staying** [3]_ - 36:22_, 68:3_, 121:15

**stealing** [1]_ - 135:15

**stem** [1]_ - 40:17

**stemmed** [1]_ - 241:15

**stents** [1]_ - 122:14

**step** [6]_ - 3:21_, 35:1_, 80:8_, 135:1_, 186:17_, 222:8

**stepchildren** [1]_ - 170:20

**Stephanie** [2]_ - 51:12_, 126:2

**stepkids** [1]_ - 170:25

**Stewart** [2]_ - 51:12_, 126:2

**still** [35]_ - 31:5_, 42:2_, 42:8_, 42:18_, 79:14_, 83:11_, 106:12_, 113:15_, 117:15_, 122:15_, 138:14 _, 149:20_, 160:13_, 160:16_, 164:14_, 165:7_, 165:14_, 172:6_, 173:21_, 195:24_, 200:1_, 200:2_, 201:19_, 205:13_, 205:23 _, 208:21_, 209:19_, 218:5_, 219:14_, 234:1_, 242:7_, 246:20_, 247:1_, 247:3

**still-eligible** [3]_ - 205:23_, 247:1_, 247:3

**stood** [4]_ - 141:19_, 154:9_, 155:12_, 189:21

**stop** [3]_ - 77:6_, 160:11_, 164:6

**stopped** [1]_ - 45:25

**straight** [3]_ - 159:25_, 199:4_, 210:3

**straightforward** [1]_ - 13:24

**streamline** [4]_ - 13:23_, 14:12_, 92:17_, 162:6

**stress** [6]_ - 5:18_, 110:18 _, 111:3_, 111:5_, 122:16 _, 147:13

**stressed** [2]_ - 111:3_, 144:24

**stricken** [85]_ - 63:5_, 63:13_, 63:16_, 63:22_, 63:24_, 64:7_, 64:15_, 64:18_, 64:22_, 64:24_, 65:5_, 65:15_, 66:14_, 66:21_, 67:3_, 67:5_, 68:2 _, 68:19_, 68:22_, 70:19_, 71:13_, 71:14_, 71:24_, 72:8_, 72:13_, 72:16_, 73:1_, 73:9_, 74:25_, 75:3 _, 75:17_, 76:4_, 76:13_, 78:20_, 78:25_, 138:24_, 139:6_, 139:17_, 140:1_, 140:23_, 141:7_, 141:15_, 142:5_, 142:19_, 142:25_, 144:3_, 144:19_, 145:2_, 145:17_, 146:1_, 146:7_, 146:14_, 146:16_, 146:25 _, 147:6_, 147:14_, 147:24_, 148:9_, 148:15_, 148:22_, 149:14_, 150:18 _, 153:14_, 155:16_, 157:9_, 216:24_, 217:1_, 217:16_, 217:19_, 234:5_, 234:7_, 234:15_, 236:6_, 236:25_, 237:10_, 237:25 _, 238:9_, 238:16_, 239:2 _, 239:12_, 239:14_, 239:24_, 240:10_, 242:23 _, 244:8

**strict** [3]_ - 3:12_, 8:19_, 153:6

**strictly** [4]_ - 9:6_, 60:8_, 87:19_, 199:9

**strike** [15]_ - 63:2_, 71:12 _, 76:11_, 79:23_, 142:17 _, 144:13_, 149:12_, 152:11_, 154:20_, 217:17 _, 224:10_, 224:14_, 224:17_, 234:19_, 241:8

**strikes** [5]_ - 57:12_, 76:19_, 79:12_, 131:13_, 216:12

**striven** [1]_ - 163:3

**strongly** [1]_ - 186:16

**struggle** [1]_ - 29:5

**Stuart** [1]_ - 108:8

**student** [7]_ - 66:23_, 66:25_, 112:23_, 145:20_, 154:21_, 154:25

**students** [2]_ - 105:25_, 111:16

**studying** [1]_ - 30:3

**stuff** [9]_ - 28:7_, 34:11_, 46:4_, 46:14_, 112:14_,

121:22_, 122:16_, 149:8_, 236:23

**styled** [2]_ - 4:13_, 83:14

**sub** [1]_ - 112:12

**subcontract** [1]_ - 103:13

**subject** [20]_ - 8:8_, 9:11_, 9:14_, 10:18_, 19:20_, 45:17_, 54:4_, 55:12_, 55:19_, 58:20_, 88:10_, 99:12_, 129:12_, 151:1_, 152:19_, 184:3_, 190:5_, 211:2_, 214:24_, 233:2

**subjects** [2]_ - 188:12_, 212:19

**submit** [1]_ - 111:20

**submitted** [1]_ - 215:3

**substance** [1]_ - 11:20

**substantial** [3]_ - 99:24_, 186:17_, 218:17

**substantive** [8]_ - 14:1_, 14:8_, 74:9_, 83:1_, 90:15_, 157:19_, 205:22_, 247:2

**substitute** [3]_ - 16:7_, 111:17_, 112:10

**succeed** [1]_ - 185:1

**suffer** [3]_ - 44:2_, 44:22_, 67:2

**sufficient** [6]_ - 38:10_, 113:24_, 149:10_, 155:17_, 166:8_, 224:14

**sugar** [1]_ - 64:2

**sugars** [1]_ - 40:25

**suggested** [1]_ - 160:17

**suggesting** [1]_ - 66:2

**suggestion** [1]_ - 240:25

**suggests** [1]_ - 235:19

**suited** [2]_ - 15:8_, 93:22

**summarized** [1]_ - 162:15

**summary** [2]_ - 16:20_, 95:20

**summer** [1]_ - 184:7

**summon** [1]_ - 136:2

**summons** [2]_ - 5:17_, 32:6

**Sunday** [4]_ - 31:1_, 32:7_, 119:7_, 119:8

**superintendent** [1]_ - 136:23

**supervisor** [1]_ - 25:16

**supervisory** [4]_ - 50:20_, 50:24_, 125:14_, 125:17

**supplemental** [1]_ - 151:25

**supplementing** [1]_ - 62:8

**supplied** [1]_ - 8:15

**supply** [1]_ - 217:4

**suppose** [2]_ - 73:4_, 198:4

**supposed** [1]_ - 214:10

**supposedly** [1]_ - 136:10

**surgery** [14]_ - 42:1_, 42:7_, 63:18_, 63:21_, 67:24_, 67:25_, 117:23_, 118:3_, 118:4_, 148:12_, 155:3_, 155:14_, 155:18

**surprising** [2]_ - 181:14_, 182:21

**Susana** [1]_ - 85:10

**suspect** [1]_ - 208:22

**swayed** [1]_ - 53:19

**swear** [6]_ - 4:16_, 4:21_, 83:16_, 83:17_, 83:21_, 161:13

**swoop** [1]_ - 180:8

**sworn** [1]_ - 57:1

**sympathy** [2]_ - 189:6_, 189:10

**system** [9]_ - 5:16_, 53:12_, 70:10_, 84:16_, 84:20_, 89:5_, 127:2_, 162:5_, 174:16

**systems** [1]_ - 27:6

**systolic** [1]_ - 230:15

---

## T

**table** [3]_ - 11:25_, 90:17_, 97:21

**tabled** [1]_ - 214:25

**Tamura** [2]_ - 51:19_, 126:9

**targets** [1]_ - 180:16

**task** [3]_ - 46:22_, 50:11_, 124:17

**tasks** [1]_ - 110:24

**tax** [1]_ - 101:23

**teach** [3]_ - 111:14_, 111:25_, 120:4

**teacher** [3]_ - 111:18_, 197:10_, 236:23

**teaching** [1]_ - 120:8

**team** [5]_ - 10:16_, 34:21_, 65:18_, 110:2_, 110:3

**teams** [2]_ - 8:18_, 87:18

**tears** [1]_ - 3:5

**tech** [1]_ - 139:4

**technician** [2]_ - 50:4_, 124:14

**temporary** [1]_ - 106:7

**tempting** [1]_ - 60:7

**ten** [6]_ - 37:12_, 44:14_, 167:15_, 215:2_, 215:4_, 246:24

**ten-hour** [1]_ - 44:14

**tend** [1]_ - 40:25

**Tendering** [4]_ - 210:10_, 210:17_, 211:10_, 212:25

**term** [9]_ - 18:6_, 46:1_, 65:2_, 97:4_, 185:9_, 185:11_, 185:12_, 186:7_, 186:8

**terms** [12]_ - 14:18_, 29:4_, 64:3_, 67:18_, 68:6_, 98:13_, 181:19_, 184:24_, 196:9_, 199:21_, 204:22_, 226:12

**terrible** [1]_ - 46:2

**test** [2]_ - 122:16_, 147:13

**testified** [1]_ - 169:23

**testify** [20]_ - 10:8_, 10:23_, 46:23_, 46:24_, 55:8_, 55:22_, 56:2_, 56:11_, 56:16_, 57:3_, 89:3_, 123:3_, 129:16_, 130:3_, 130:16_, 130:23_, 131:1_, 131:3_, 165:21_, 178:19

**testifying** [5]_ - 57:8_, 57:10_, 57:11_, 131:12_, 131:14

**testimony** [6]_ - 56:24_, 56:25_, 81:20_, 165:24_, 183:4

**THE** [864]_ - 2:2_, 2:11_, 2:14_, 2:18_, 3:8_, 3:11_, 3:17_, 3:21_, 4:4_, 5:1_, 5:2_, 12:11_, 13:15_, 13:19_, 20:21_, 21:1_, 21:9_, 21:14_, 21:19_, 21:24_, 22:22_, 22:25_, 23:4_, 23:9_, 23:11_, 23:15_, 23:19_, 23:23_,

24:8_, 24:12_, 24:14_, 24:17_, 24:23_, 25:1_, 25:4_, 25:9_, 25:15_, 25:19_, 25:21_, 25:25_, 26:4_, 26:7_, 26:10_, 26:15_, 26:18_, 26:21_, 26:23_, 27:9_, 27:13_, 27:18_, 27:20_, 27:24_, 28:16_, 28:19_, 28:21_, 29:8_, 29:14_, 29:19_, 29:22_, 30:1_, 30:3_, 30:5_, 30:10_, 30:13_, 30:18_, 31:7_, 31:11_, 31:16_, 31:19_, 31:21_, 31:25_, 32:3_, 32:14_, 32:21_, 32:24_, 33:8_, 33:12_, 33:17_, 33:24_, 34:6_, 34:11_, 34:17_, 34:20_, 34:24_, 35:5_, 35:9_, 35:11_, 35:15_, 35:18_, 35:20_, 35:24_, 36:2_, 36:9_, 36:12_, 36:16_, 37:1_, 37:4_, 37:11_, 37:16_, 37:20_, 38:2_, 38:5_, 38:8_, 38:12_, 38:14_, 38:16_, 38:21_, 38:24_, 39:3_, 39:5_, 39:25_, 40:6_, 40:16_, 40:21_, 41:9_, 41:16_, 41:24_, 42:6_, 42:11_, 42:14_, 42:17_, 42:20_, 42:22_, 42:25_, 43:3_, 43:7_, 43:10_, 43:12_, 43:19_, 44:10_, 44:21_, 44:24_, 45:23_, 46:5_, 46:11_, 46:16_, 46:18_, 47:17_, 47:23_, 48:1_, 48:6_, 48:11_, 48:20_, 53:20_, 53:24_, 61:5_, 61:12_, 61:14_, 61:17_, 62:1_, 62:9_, 62:12_, 62:17_, 62:20_, 62:25_, 63:5_, 63:9_, 63:13_, 63:16_, 63:19_, 63:24_, 64:5_, 64:7_, 64:12_, 64:18_, 64:20_, 64:24_, 65:3_, 65:5_, 65:9_, 65:15_, 65:19_, 65:25_, 66:5_, 66:11_, 66:14_, 66:19_, 66:21_, 66:25_, 67:5_, 67:13_, 67:17_, 67:22_, 67:25_, 68:12_, 68:17_, 68:25_, 69:4_, 69:14_, 69:16_, 69:20_, 70:4_, 70:11_, 70:16_, 70:23_, 71:7_, 71:14_, 71:19_, 71:24_, 72:6_, 72:8_, 72:12_, 72:16_, 72:21_, 73:1_, 73:7_, 73:9_, 73:14_, 73:21_, 73:23_, 74:8_, 74:15_, 74:18_, 75:3_,

75:9_, 75:16_, 75:23_, 76:4_, 76:10_, 76:13_, 76:16_, 76:18_, 76:22_, 77:2_, 77:6_, 77:13_, 77:19_, 77:24_, 78:2_, 78:10_, 78:20_, 78:25_, 79:4_, 79:6_, 79:9_, 79:11_, 79:18_, 79:22_, 80:2_, 80:8_, 80:16_, 82:15_, 82:22_, 82:24_, 83:9_, 84:1_, 84:2_, 91:7_, 92:8_, 92:13_, 94:9_, 98:15_, 98:18_, 98:22_, 100:20_, 100:23_, 101:3_, 101:6_, 101:12_, 101:14_, 101:19_, 102:1_, 102:4_, 102:9_, 102:17_, 102:21_, 103:1_, 103:8_, 103:10_, 103:15_, 103:20_, 103:25_, 104:14_, 104:18_, 104:22_, 105:3_, 105:7_, 105:13_, 105:21_, 105:23_, 106:5_, 106:11_, 106:16_, 106:18_, 106:20_, 107:2_, 107:5_, 107:11_, 107:14_, 107:18_, 108:4_, 108:11_, 108:17_, 108:24_, 109:1_, 109:3_, 109:5_, 109:8_, 109:11_, 109:14_, 109:16_, 109:18_, 109:20_, 109:22_, 110:10_, 110:13_, 110:19_, 110:22_, 110:25_, 111:5_, 111:9_, 111:11_, 111:13_, 111:22_, 111:25_, 112:5_, 112:9_, 112:16_, 112:20_, 113:3_, 113:7_, 113:10_, 113:14_, 113:23_, 114:6_, 114:9_, 114:11_, 114:13_, 114:15_, 114:19_, 114:25_, 115:4_, 115:7_, 115:11_, 115:16_, 115:21_, 115:23_, 116:1_, 116:7_, 116:11_, 116:17_, 116:19_, 116:22_, 117:2_, 117:6_, 117:14_, 117:18_, 117:24_, 118:4_, 118:9_, 118:14_, 118:17_, 118:22_, 119:2_, 119:5_, 119:9_, 119:14_, 119:20_, 119:22_, 120:9_, 120:13_, 120:18_, 121:1_, 121:4_, 121:6_, 121:8_, 121:11_, 121:13_, 121:15_, 121:18_, 121:23_, 122:18_, 122:20_, 122:23_, 125:1_, 125:4_, 125:8, 128:5_, 128:9_, 134:22_, 134:25_, 135:16_, 135:19, 135:21_, 135:24_, 136:4_, 136:12_, 136:16_, 136:20_, 136:24

_, 137:5_, 137:9_, 137:12_, 137:21_, 138:4_, 138:17_, 138:22_, 138:24_, 139:2_, 139:4_, 139:9, 139:15_, 139:17_, 139:23_, 140:1_, 140:9_, 140:15_, 140:20_, 140:23_, 141:3_, 141:7_, 141:12_, 141:15_, 141:21_, 142:2_, 142:5_, 142:13_, 142:15_, 142:17_, 142:19_, 143:7_, 143:14_, 144:1_, 144:3_, 144:10_, 144:14_, 144:17_, 144:22_, 145:2_, 145:5_, 145:11_, 145:13_, 145:25_, 146:6_, 146:10_, 146:13_, 146:16_, 146:19_, 146:25_, 147:3_, 147:6_, 147:10_, 147:12_, 147:18_, 147:20_, 147:24_, 148:4_, 148:9_, 148:13_, 148:15_, 148:18_, 148:22_, 149:2_, 149:9_, 149:18_, 149:23_, 150:1_, 150:13_, 150:19_, 151:6_, 151:8_, 151:10_, 151:14_, 151:20_, 152:6_, 152:16_, 152:23_, 153:2_, 153:7_, 153:10_, 153:13_, 153:17_, 153:21_, 153:25_, 154:6_, 154:13_, 154:21_, 155:5_, 155:9_, 155:15_, 155:25_, 156:6_, 156:9_, 156:12_, 156:18_, 156:24_, 157:4_, 157:9_, 157:11_, 157:13_, 157:15_, 157:25_, 159:24_, 160:5_, 160:10_, 160:25_, 161:5_, 161:17_, 161:18_, 161:22_, 162:1_, 163:25_, 164:4_, 164:6_, 164:9_, 164:11_, 164:14_, 164:17_, 164:21_, 164:24_, 165:2_, 165:4_, 165:7_, 165:9_, 165:12_, 165:19_, 166:1_, 166:7_, 166:12_, 166:18_, 166:20_, 166:23_, 166:25_, 167:5_, 167:9_, 167:14_, 167:16_, 167:18_, 167:20_, 167:23_, 168:3_, 168:6_, 168:9_, 168:11_, 168:17_, 168:21_, 169:1_, 169:5_, 169:10_, 169:15_, 169:19_, 169:25_, 170:5_, 170:9_, 170:14_, 170:17_, 170:22_, 170:24_, 171:3_, 171:6_, 171:10_, 171:12_, 171:14_, 171:16_, 171:19_, 171:23_, 172:1_, 172:6_, 172:8_, 172:11_, 172:15_, 172:22_, 172:25

_, 173:2_, 173:5_, 173:9_, 173:12_, 173:22_, 173:24_, 174:5_, 174:8_, 174:11_, 174:15_, 174:20_, 174:23_, 175:2_, 175:5_, 175:9_, 175:13_, 175:17_, 175:19_, 175:22_, 176:5_, 176:8_, 176:11_, 176:16_, 176:21_, 176:24_, 177:1_, 177:4_, 177:9_, 177:13_, 177:19_, 177:22_, 177:25_, 178:9_, 179:15_, 180:5_, 181:22_, 182:2_, 182:4_, 182:11_, 182:13_, 191:13_, 191:16_, 191:19_, 191:22_, 193:24_, 194:3_, 194:22_, 195:2_, 195:5_, 195:8_, 195:12_, 195:15_, 195:18_, 195:21_, 196:6_, 196:9_, 196:13_, 196:18_, 196:21_, 197:3_, 197:8_, 197:12_, 197:15_, 197:21_, 197:25_, 198:7_, 198:11_, 198:15_, 198:18_, 198:21_, 199:1_, 199:6_, 199:10_, 199:13_, 199:15_, 199:21_, 200:4_, 200:8_, 200:12_, 200:16_, 200:21_, 201:6_, 201:10_, 201:16_, 201:21_, 202:2_, 202:7_, 202:14_, 202:18_, 202:24_, 203:2_, 203:9_, 203:14_, 204:1_, 204:4_, 204:7_, 204:9_, 204:15_, 204:17_, 204:24_, 205:8_, 205:15_, 205:19_, 206:12_, 206:14_, 206:17_, 206:20_, 207:3_, 207:8_, 207:10_, 207:15_, 207:20_, 207:24_, 208:3_, 208:7_, 208:11_, 208:15_, 208:19_, 208:23_, 209:3_, 209:8_, 209:11_, 209:15_, 209:21_, 209:25_, 210:3_, 210:7_, 210:11_, 210:18_, 211:3_, 211:9_, 211:13_, 211:22_, 212:9_, 212:15_, 213:1_, 213:12_, 213:17_, 213:20_, 214:1_, 214:12_, 214:21_, 215:4_, 215:9_, 215:18, 215:23_, 215:25_, 216:16_, 216:18_, 216:22_, 217:8_, 217:15_, 217:19_, 218:3_, 218:5_, 218:8_, 218:11_, 218:15_, 218:22_, 219:2_, 219:7_, 219:14_, 219:18_, 219:23_, 220:2_, 220:11_, 220:14_, 220:20_, 220:25_, 221:4_, 221:7_, 221:13

_, 221:17_, 221:22_, 222:4_, 222:6_, 222:14_, 222:17_, 222:21_, 222:24_, 223:2_, 223:5_, 223:18_, 223:22_, 224:2_, 224:19_, 224:23_, 225:7_, 225:13_, 225:16_, 225:19_, 226:2_, 226:8_, 226:11_, 226:17_, 226:21_, 226:25_, 227:5_, 227:10_, 227:12_, 227:17, 227:20_, 227:23_, 228:3_, 228:6_, 228:10_, 228:14_, 228:21_, 228:23_, 229:3_, 229:5_, 229:7_, 229:9_, 229:11_, 230:2_, 230:5_, 230:9_, 230:13_, 230:16_, 230:19_, 230:23_, 231:6_, 231:8_, 231:11_, 231:15_, 231:20_, 231:25_, 232:6_, 232:12_, 232:17_, 232:21_, 232:23_, 232:25_, 233:7_, 233:10_, 233:15_, 233:20_, 233:24_, 234:4_, 234:12_, 234:15_, 234:19_, 234:22_, 235:4_, 235:7_, 235:17_, 236:2_, 236:9_, 236:18_, 236:20_, 236:25_, 237:8_, 237:10_, 237:12_, 237:16_, 237:22_, 237:25_, 238:5_, 238:9_, 238:13_, 238:16_, 238:25_, 239:2_, 239:8_, 239:11_, 239:16_, 239:20_, 239:24_, 240:7_, 240:10_, 240:15_, 240:18_, 240:20_, 240:24_, 241:3_, 241:7_, 241:14_, 241:20_, 242:2_, 242:4_, 242:10_, 242:12_, 242:16_, 242:22_, 242:25_, 243:2_, 243:6_, 243:12_, 243:19_, 244:2_, 244:11_, 244:16_, 244:19_, 245:1_, 246:15_, 246:17_, 247:22_, 248:4_, 248:14_, 248:19_, 249:3

**theft** [1]_ - 217:12

**themselves** [7]_ - 11:25_, 18:21_, 58:3_, 77:13_, 90:18_, 97:21_, 187:24

**then-presidential** [2]_ - 17:5_, 184:21

**therapist** [3]_ - 103:13_, 103:18_, 141:3

**thermoscans** [1]_ - 203:12

**they've** [1]_ - 31:3

**thinking** [8]_ - 29:5_,

56:12_, 125:7_, 130:17_, 187:24_, 188:5_, 188:8_, 222:3

**thinks** [3]_ - 10:15_, 89:10 _, 132:13

**third** [4]_ - 8:21_, 38:7_, 87:20_, 211:23

**third-generation** [1]_ - 211:23

**Thompson** [2]_ - 51:13_, 126:3

**thorough** [8]_ - 15:6_, 43:13_, 93:19_, 212:18_, 214:16_, 243:8_, 243:9_, 248:22

**thoughtfulness** [1]_ - 150:16

**thoughts** [5]_ - 67:9_, 70:23_, 140:5_, 200:3_, 202:11

**three** [34]_ - 20:1_, 22:19_, 24:20_, 29:6_, 30:22_, 32:8_, 32:12_, 36:8_, 36:23_, 40:4_, 44:16_, 99:15_, 102:23_, 103:7_, 104:8_, 104:25_, 105:19_, 106:25_, 107:10_, 110:15 _, 113:20_, 116:6_, 118:20_, 118:22_, 120:4_, 120:5_, 120:15_, 160:23_, 176:20_, 196:17_, 197:23 _, 211:18_, 212:6_, 218:25

**thrilled** [1]_ - 5:16

**throughout** [3]_ - 9:24_, 12:24_, 99:20

**Thursday** [5]_ - 29:2_, 31:2_, 108:15_, 110:5_, 119:18

**tickets** [2]_ - 23:18_, 110:6

**tidiness** [1]_ - 76:25

**ties** [2]_ - 150:2_, 175:10

**tight** [3]_ - 59:10_, 133:3_, 193:9

**timely** [1]_ - 248:25

**timing** [1]_ - 194:23

**title** [2]_ - 15:12_, 94:1

**Tobacco** [5]_ - 50:5_, 51:15_, 124:16_, 125:5_, 126:5

**today** [29]_ - 14:2_, 29:11 _, 31:5_, 33:22_, 41:2_, 52:1_, 59:16_, 62:10_, 62:18_, 65:20_, 77:3_,

92:15_, 93:1_, 116:3_, 118:7_, 126:13_, 126:14_, 137:24_, 155:20_, 158:7_, 158:23_, 161:5_, 181:13_, 187:24_, 194:11_, 197:18 _, 216:24_, 233:12_, 237:13

**today's** [1]_ - 162:6

**together** [3]_ - 84:6_, 183:16_, 225:20

**Tommy** [2]_ - 50:20_, 125:13

**tomorrow** [36]_ - 13:25_, 14:6_, 31:24_, 34:4_, 34:18_, 71:20_, 74:8_, 78:4_, 79:15_, 80:24_, 81:12_, 82:10_, 92:19_, 92:23_, 92:24_, 93:6_, 107:12_, 143:19_, 145:25 _, 150:1_, 151:2_, 152:19 _, 158:5_, 158:8_, 158:14 _, 159:1_, 159:17_, 244:13_, 245:6_, 245:14_, 245:22_, 246:2_, 246:13_, 246:18_, 248:4_, 248:20

**tomorrow's** [1]_ - 140:16

**took** [5]_ - 43:13_, 224:7_, 225:14_, 225:17_, 226:2

**topic** [10]_ - 43:15_, 45:10 _, 46:21_, 55:5_, 91:17_, 99:11_, 143:21_, 163:7_, 181:4_, 212:1

**topics** [8]_ - 13:24_, 14:1 _, 92:18_, 162:3_, 206:17 _, 206:23_, 215:6_, 216:1

**Toronto** [2]_ - 37:25

**totally** [1]_ - 200:5

**touch** [16]_ - 7:19_, 52:14 _, 55:19_, 58:20_, 61:2_, 86:20_, 127:2_, 152:19_, 165:7_, 165:15_, 168:21_, 189:20_, 197:8_, 204:18_, 218:16_, 233:21

**touched** [4]_ - 151:15_, 175:13_, 194:8_, 233:17

**touching** [3]_ - 4:23_, 83:23_, 161:15

**tough** [2]_ - 6:8_, 85:15

**toward** [2]_ - 89:8_, 186:17

**towards** [7]_ - 181:4_, 188:18_, 188:20_, 202:21 _, 214:2_, 225:17_, 235:13

**town** [2]_ - 22:20_, 108:13

**track** [3]_ - 46:8_, 59:14_,

237:12

**Tracy** [2]_ - 49:11_, 123:21

**trade** [1]_ - 169:1

**trailer** [2]_ - 42:4_, 42:12

**trained** [1]_ - 147:4

**training** [1]_ - 175:6

**transparency** [1]_ - 138:10

**transport** [1]_ - 88:3

**transportation** [8]_ - 8:24_, 33:18_, 36:20_, 59:17_, 87:23_, 108:5_, 144:5_, 217:2

**transported** [2]_ - 18:14 _, 97:12

**transporting** [1]_ - 104:15

**trauma** [1]_ - 79:22

**traumatic** [3]_ - 143:18_, 196:22_, 233:11

**Travas** [2]_ - 50:3_, 124:14

**travel** [7]_ - 31:22_, 75:6_, 75:21_, 144:8_, 144:18_, 148:16_, 160:7

**traveled** [1]_ - 179:20

**travels** [2]_ - 29:1_, 67:14

**Treasure** [3]_ - 114:14_, 114:15_, 115:12

**treat** [1]_ - 103:18

**treating** [1]_ - 144:12

**trial** [57]_ - 2:20_, 5:7_, 6:19_, 7:25_, 9:5_, 9:25_, 10:24_, 11:3_, 11:12_, 14:5_, 15:11_, 25:23_, 40:10_, 46:5_, 46:23_, 52:6_, 54:11_, 56:5_, 56:17_, 60:19_, 70:19_, 73:16_, 73:18_, 82:13_, 84:13_, 85:10_, 85:13_, 85:25_, 87:1_, 88:7_, 88:14_, 89:7_, 89:18_, 89:22_, 91:11_, 91:18_, 93:4_, 93:25_, 99:12_, 99:14_, 111:7_, 117:15_, 123:3_, 126:19_, 127:13_, 131:3_, 134:2_, 165:21_, 183:6_, 203:24_, 211:24_, 214:9_, 223:9_, 230:20_, 232:9_, 238:22

**trials** [3]_ - 10:25_, 89:19_, 235:21

**tried** [4]_ - 11:21_, 15:6_,

90:15_, 196:12

**tries** [1]_ - 184:25

**trip** [34]_ - 21:12_, 22:20_, 23:11_, 23:12_, 23:13_, 23:16_, 26:2_, 26:5_, 26:11_, 26:13_, 26:17_, 32:6_, 35:17_, 35:18_, 35:21_, 35:24_, 37:24_, 38:2_, 63:1_, 64:11_, 64:13_, 72:3_, 73:15_, 73:20_, 74:2_, 74:5_, 75:25_, 101:12_, 101:14_, 108:11_, 108:21_, 108:23 _, 121:11_, 121:19

**troopers** [3]_ - 167:12_, 167:13_, 167:24

**trouble** [1]_ - 195:12

**troubling** [1]_ - 230:11

**truck** [2]_ - 42:12_, 63:20

**true** [6]_ - 75:16_, 141:18_, 155:15_, 198:7_, 213:1_, 237:22

**Trump** [21]_ - 17:5_, 96:3 _, 136:8_, 136:15_, 150:11_, 179:3_, 179:6_, 184:6_, 184:13_, 184:22_, 186:10_, 186:12_, 186:15 _, 187:6_, 187:13_, 187:25_, 188:5_, 188:16_, 202:13_, 202:20

**Trumps** [1]_ - 150:9

**trusted** [2]_ - 85:13_, 231:22

**trusting** [1]_ - 70:10

**trusts** [1]_ - 102:13

**truth** [8]_ - 16:5_, 57:1_, 57:13_, 95:4_, 131:6_, 131:19_, 132:14_, 162:13

**truthful** [4]_ - 132:15_, 132:16_, 222:22

**truthfully** [3]_ - 4:22_, 83:22_, 161:14

**try** [16]_ - 13:23_, 14:11_, 21:25_, 31:23_, 46:3_, 59:22_, 82:24_, 85:5_, 92:17_, 110:6_, 133:7_, 173:22_, 198:10_, 198:14 _, 216:7_, 243:5

**trying** [8]_ - 102:10_, 134:11_, 166:5_, 185:15_, 190:10_, 222:18_, 236:23

**Tuesday** [1]_ - 122:19

**turn** [6]_ - 24:1_, 41:14_, 101:21_, 153:2_, 231:12_, 248:24

**turned** [2]_ - 136:18_, 137:8

**Turner** [2]_ - 51:13_, 126:3

**turning** [1]_ - 96:13

**TV** [3]_ - 53:18_, 55:14_, 201:1

**twice** [3]_ - 192:18_, 235:9_, 236:3

**two** [34]_ - 12:14_, 13:3_, 20:5_, 22:17_, 26:24_, 28:2_, 28:9_, 29:5_, 30:19_, 30:21_, 34:20_, 35:7_, 38:6_, 44:6_, 73:4_, 91:9_, 91:22_, 104:5_, 113:2_, 115:6_, 117:22_, 118:1_, 122:14_, 145:5_, 146:12_, 146:20_, 148:11_, 167:11_, 173:3_, 183:21_, 217:5_, 232:4_, 242:20

**two-hour** [1]_ - 44:6

**type** [5]_ - 19:12_, 36:12_, 105:23_, 231:22_, 239:7

**types** [4]_ - 10:22_, 57:18_, 89:16

---

**U**

---

**U.S** [3]_ - 9:6_, 70:10_, 87:21

**Ukraine** [1]_ - 215:19

**ultimate** [2]_ - 77:20_, 227:23

**ultimately** [12]_ - 16:3_, 84:19_, 95:1_, 143:15_, 162:13_, 184:22_, 185:6_, 187:5_, 187:12_, 236:10_, 236:13_, 237:17

**unable** [5]_ - 57:22_, 77:10_, 116:1_, 131:24_, 190:17

**unanimous** [2]_ - 58:23_, 132:19

**unauthorized** [1]_ - 86:16

**unavailability** [1]_ - 149:3

**uncle** [6]_ - 108:1_, 156:21_, 168:7_, 170:1_, 175:11

**uncomfortable** [2]_ - 15:21_, 94:18

**uncontrolled** [1]_ - 41:1

**under** [4]_ - 7:7_, 8:19_,

241:6_, 242:14

**underlying** [3]_ - 25:11_, 41:6_, 52:13

**understandable** [1]_ - 163:3

**understood** [7]_ - 35:9_, 104:18_, 105:7_, 110:10_, 112:5_, 169:25_, 196:9

**undisclosed** [2]_ - 147:1_, 239:25

**undivided** [3]_ - 117:15_, 189:24_, 227:24

**unequivocally** [1]_ - 238:11

**unfair** [4]_ - 235:10_, 235:23_, 236:4_, 242:15

**unfairly** [1]_ - 144:12

**unfamiliar** [1]_ - 85:3

**unfold** [2]_ - 13:22_, 92:15

**unfortunately** [2]_ - 25:24_, 189:9

**unique** [1]_ - 192:8

**uniquely** [1]_ - 182:14

**United** [39]_ - 2:7_, 4:11_, 4:13_, 8:22_, 10:4_, 11:24_, 12:2_, 12:5_, 12:7_, 12:9_, 49:3_, 49:5_, 49:24_, 50:3_, 50:4_, 54:6_, 69:2_, 83:13_, 83:14_, 84:14_, 88:24_, 90:21_, 90:24_, 91:3_, 96:3_, 106:1_, 106:4_, 123:18_, 123:20_, 124:9_, 124:11_, 124:14_, 128:15_, 128:17_, 161:7_, 206:1_, 206:15_, 211:3_, 241:3

**universe** [1]_ - 23:18

**University** [1]_ - 110:2

**unless** [9]_ - 20:18_, 23:1_, 63:1_, 79:24_, 140:10_, 141:17_, 146:1_, 216:10_, 247:25

**unopposed** [1]_ - 153:14

**unpack** [1]_ - 177:25

**unsure** [2]_ - 30:21_, 31:2

**unusual** [3]_ - 40:8_, 182:18_, 225:1

**unwanted** [5]_ - 8:4_, 9:16_, 87:5_, 88:4_, 88:13

**up** [107]_ - 3:9_, 5:14_, 6:14_, 8:21_, 10:11_, 15:23_, 16:9_, 20:22_, 21:6_, 24:6_, 24:21_, 24:23_, 25:18_,

26:7_, 28:7_, 28:11_, 28:13_, 28:14_, 30:25_, 31:12_, 31:24_, 33:4_, 38:10_, 39:12_, 40:8_, 40:12_, 45:11_, 45:17_, 54:13_, 60:5_, 60:7_, 62:13_, 63:10_, 65:20_, 67:18_, 68:6_, 68:11_, 70:25_, 71:6_, 74:2_, 74:12_, 75:24_, 77:3_, 77:25_, 78:3_, 80:4_, 84:10_, 84:17_, 87:20_, 87:24_, 90:8_, 100:16_, 104:4_, 105:10_, 106:11_, 106:12_, 106:24_, 107:16_, 107:24_, 111:1_, 113:2_, 120:25_, 137:23_, 139:10_, 139:14_, 140:3_, 140:14_, 141:19_, 143:10_, 143:16_, 145:22_, 151:12_, 152:5_, 153:24_, 154:9_, 155:13_, 156:17_, 164:4_, 165:19_, 170:21_, 181:18_, 183:16_, 189:22_, 190:6_, 190:11_, 190:21_, 193:1_, 196:16_, 197:13_, 199:4_, 203:10_, 205:4_, 205:25_, 206:9_, 206:24_, 208:8_, 215:2_, 216:22_, 216:24_, 220:3_, 220:16_, 226:21_, 228:24_, 233:4_, 243:8_, 244:12_, 246:7

**upcoming** [2]_ - 102:18_, 139:8

**uphold** [2]_ - 54:1_, 200:13

**upholding** [1]_ - 53:11

**Upstate** [2]_ - 172:19_, 172:20

**utility** [1]_ - 113:5

---

**V**

---

**vacation** [5]_ - 120:11_, 120:24_, 121:2_, 138:21_, 141:16

**valid** [1]_ - 144:17

**various** [6]_ - 64:21_, 68:16_, 75:24_, 165:20_, 178:1_, 178:18

**vehicle** [2]_ - 75:14_, 75:15

**vein** [1]_ - 215:15

**VENIRE** [3]_ - 5:1_, 84:1_, 161:17

**venire** [11]_ - 4:2_, 61:4_,

80:14_, 82:14_, 83:7_, 134:21_, 157:23_, 159:23_, 193:23_, 244:24_, 246:16

**verdict** [11]_ - 53:5_, 53:6_, 56:23_, 58:2_, 58:23_, 127:20_, 127:21_, 130:25_, 132:5_, 132:19_, 189:24

**Vero** [1]_ - 115:24

**versed** [1]_ - 154:16

**version** [1]_ - 248:19

**Vice** [1]_ - 186:25

**victim** [25]_ - 150:22_, 153:23_, 173:20_, 174:5_, 179:2_, 184:6_, 186:12_, 190:7_, 190:15_, 191:1_, 191:10_, 195:22_, 196:5_, 199:18_, 201:18_, 204:20_, 205:1_, 206:4_, 206:7_, 233:5_, 234:23_, 238:3_, 238:6_, 238:12_, 239:6

**victims** [2]_ - 190:5_, 210:22

**video** [4]_ - 5:12_, 7:16_, 84:9_, 86:17

**video-taking** [1]_ - 86:17

**Viera** [1]_ - 104:7

**view** [18]_ - 6:25_, 9:20_, 68:21_, 69:14_, 72:6_, 72:24_, 73:21_, 74:15_, 75:12_, 88:18_, 149:19_, 149:21_, 150:13_, 191:9_, 209:5_, 210:19_, 212:9_, 235:11

**viewed** [3]_ - 181:20_, 181:24_, 182:9

**viewing** [4]_ - 16:2_, 86:2_, 94:25_, 214:17

**views** [8]_ - 143:5_, 149:9_, 180:22_, 187:7_, 187:13_, 189:1_, 216:3

**violating** [2]_ - 226:4_, 244:7

**violence** [7]_ - 17:8_, 17:12_, 96:6_, 96:10_, 153:19_, 180:17_, 205:3

**violent** [2]_ - 48:9_, 153:23

**Virginia** [2]_ - 167:12_, 167:24

**visa** [1]_ - 106:2

**visit** [3]_ - 92:19_, 190:14_, 227:10

**visited** [1] - 231:11

**visiting** [1] - 228:23

**vital** [1] - 5:15

**voice** [2] - 97:18, 156:1

**voicemail** [1] - 135:13

**voicing** [1] - 121:24

**voir** [2] - 214:8, 246:23

**volume** [3] - 161:20, 161:22, 161:23

**volunteers** [1] - 71:4

**VP** [1] - 110:15

## W

**wages** [3] - 107:6, 114:20, 115:14

**wait** [4] - 21:9, 22:15, 77:6, 239:16

**waiting** [4] - 42:2, 42:8, 63:20, 246:24

**Walters** [2] - 51:14, 126:4

**warning** [1] - 192:18

**warnings** [4] - 59:9, 81:14, 133:8, 192:13

**warrant** [1] - 210:12

**warranted** [2] - 80:4, 224:11

**warranting** [2] - 79:23, 152:11

**Warren** [1] - 85:11

**Washington** [1] - 215:5

**watch** [1] - 142:11

**water** [3] - 120:7, 179:11, 247:13

**ways** [5] - 8:3, 15:10, 87:4, 93:24, 188:15

**weapon** [2] - 17:23, 96:21

**Wednesday** [1] - 29:2

**week** [15] - 20:1, 34:3, 34:9, 34:14, 38:7, 64:11, 106:25, 115:20, 118:24, 120:3, 120:4, 120:24, 122:17, 147:13

**week-long** [1] - 64:11

**weekend** [3] - 37:25, 110:1, 117:11

**weekends** [2] - 110:4, 110:17

**weekly** [1] - 23:5

**weeks** [30] - 20:1, 22:19, 29:6, 30:22, 32:8, 32:9, 32:13, 36:8, 36:23, 38:6, 99:15, 102:23, 103:7, 104:8, 105:1, 105:20, 106:25, 107:10, 110:16, 113:21, 116:6, 118:3, 118:20, 118:23, 120:6, 120:15, 144:8, 197:23, 212:6, 219:1

**weighing** [1] - 58:9

**weight** [2] - 52:5, 126:18

**welcome** [2] - 4:5, 83:11

**welder** [1] - 218:19

**welfare** [2] - 11:18, 90:12

**well-being** [1] - 198:12

**well-connected** [1] - 154:11

**well-versed** [1] - 154:16

**Wesley** [6] - 4:13, 17:3, 83:15, 96:1, 98:4, 161:8

**west** [3] - 29:1, 104:6, 110:2

**West** [2] - 167:12, 167:24

**whatsoever** [8] - 10:7, 19:3, 82:7, 89:2, 99:2, 182:24, 184:10, 187:9

**whereby** [2] - 9:2, 87:25

**whichever** [1] - 188:20

**white** [2] - 68:9, 133:20

**whole** [4] - 57:4, 110:18, 111:3, 243:18

**widowed** [1] - 176:2

**wife** [15] - 42:1, 42:7, 67:13, 75:22, 106:23, 107:25, 108:8, 112:22, 118:6, 119:16, 121:12, 148:19, 150:11, 212:4, 243:4

**wife's** [2] - 28:23, 63:18

**Wildlife** [2] - 176:19, 177:5

**William** [2] - 49:11, 123:25

**willing** [3] - 54:22,

129:5, 132:22

**wise** [1] - 32:11

**wish** [10] - 22:7, 122:4, 122:24, 159:16, 160:12, 197:25, 210:1, 224:5, 234:1, 242:7

**wished** [1] - 45:4

**wishes** [2] - 6:25, 120:20

**wishing** [1] - 43:23

**witness** [22] - 56:25, 57:1, 57:3, 57:7, 57:11, 57:14, 57:17, 57:20, 58:12, 58:13, 131:10, 131:12, 131:14, 131:17, 131:19, 132:13, 132:14, 150:17, 168:24

**witness's** [4] - 56:25, 57:6, 57:8, 131:4

**witnesses** [20] - 10:23, 46:6, 47:5, 57:23, 60:12, 81:24, 89:17, 123:2, 123:15, 131:1, 131:25, 134:9, 159:11, 165:20, 169:22, 178:18, 178:20, 183:5, 192:21, 246:9

**witnesses'** [1] - 165:24

**woman** [5] - 64:12, 69:5, 71:20, 144:22, 146:19

**wonder** [1] - 244:6

**wondering** [4] - 14:19, 21:11, 59:19, 182:7

**word** [3] - 6:8, 85:16, 93:8

**words** [8] - 52:5, 82:8, 102:21, 113:14, 126:17, 126:18, 129:13, 200:23

**workday** [1] - 216:20

**workers** [2] - 105:5, 105:6

**workload** [2] - 104:9, 110:18

**works** [31] - 5:21, 33:15, 37:11, 38:25, 63:1, 63:20, 65:11, 69:11, 69:24, 69:25, 70:12, 74:17, 74:19, 75:21, 144:22, 146:19, 147:20, 149:24, 151:25, 152:3, 152:7, 165:1, 172:6, 177:17, 177:20, 177:21, 212:12, 212:13, 222:9, 235:15

**world** [1] - 131:22

**worries** [1] - 28:18

**worth** [2] - 111:21, 156:2

**worthy** [2] - 79:21, 213:23

**wrap** [1] - 16:19

**write** [2] - 102:10, 163:14

**writing** [1] - 6:8

**written** [4] - 43:15, 78:12, 206:21, 208:1

**wrote** [4] - 78:15, 140:13, 207:6, 213:21

## X

**Xfinity** [1] - 30:8

## Y

**year** [10] - 18:6, 26:13, 27:4, 97:4, 106:4, 116:15, 186:11, 186:25, 200:1, 211:17

**year-end** [1] - 211:17

**yearbook** [3] - 111:21, 112:6, 112:7

**years** [18] - 33:22, 40:4, 44:19, 136:14, 136:25, 150:20, 152:15, 155:14, 165:11, 167:15, 167:16, 168:10, 172:5, 172:18, 172:21, 173:6, 176:20, 233:9

**yesterday** [41] - 2:25, 3:9, 3:24, 8:13, 19:22, 29:11, 31:4, 41:3, 44:6, 62:6, 84:10, 87:15, 107:8, 119:5, 161:9, 162:3, 162:15, 163:14, 175:14, 179:8, 180:25, 183:1, 184:20, 185:17, 186:4, 189:12, 194:8, 197:9, 197:18, 201:22, 203:10, 211:7, 211:16, 212:4, 215:10, 216:12, 225:20, 227:13, 231:20, 234:6, 247:18

**York** [4] - 37:25, 38:2, 172:19, 172:20

**young** [5] - 28:9, 72:21

_, 108:4_, 112:25_, 237:2

**yourself** [7]_ - 7:23_, 13:12_, 86:24_, 92:6_, 130:13_, 188:8_, 223:24

**yourselves** [1]_ - 159:20

## Z

**Zumba** [2]_ - 120:8

**Zuniga** [3]_ - 51:18_, 126:9_, 160:13