UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 24-cr-80116-AMC-1

UNITED STATES OF AMERICA,                    Fort Pierce, Florida

                   Plaintiff,                September 10, 2025

              vs.                            8:34 a.m. - 2:58 p.m.

RYAN WESLEY ROUTH,

                   Defendant.                Pages 1 to 185
_____
                 TRANSCRIPT OF JURY TRIAL - DAY 3
              BEFORE THE HONORABLE AILEEN M. CANNON
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
                              UNITED STATES ATTORNEY'S OFFICE
                              JOHN SHIPLEY, ESQ.
                              MARIA MEDETIS-LONG, ESQ.
                              CHRISTOPHER BROWNE, ESQ.
                              99 NE 4th Street
                              Miami, Florida 33132

                              U.S. DEPARTMENT OF JUSTICE
                              JAMES M. DONNELLY, ESQ.
                              950 Pennsylvania Avenue, NW
                              Washington, DC 20530

FOR THE DEFENDANT:
                              RYAN WESLEY ROUTH, PRO SE

AS STANDBY COUNSEL:
                              FEDERAL PUBLIC DEFENDER'S OFFICE
                              KRISTY MILITELLO, ESQ.
                              RENEE SIHVOLA, ESQ.
                              250 S. Australian Avenue
                              Suite 400
                              West Palm Beach, Florida 33401

STENOGRAPHICALLY REPORTED BY:

                              LAURA E. MELTON, RMR, CRR, FPR
                              Official Court Reporter to the
                              Honorable Aileen M. Cannon
                              United States District Court
                              Fort Pierce, Florida

E X A M I N A T I O N S

| Witness/Proceedings | Page |
|---|---|
| JURY SWORN | 139 |

E X H I B I T S

GOVERNMENT FOR IDENTIFICATION

| Exhibit | Page |
|---|---|
| NONE | |

DEFENDANT FOR IDENTIFICATION

| Exhibit | Page |
|---|---|
| NONE | |

GOVERNMENT ADMITTED EXHIBITS

| Exhibit | Page |
|---|---|
| NONE | |

DEFENDANT ADMITTED EXHIBITS

| Exhibit | Page |
|---|---|
| NONE | |

JOINT EXHIBITS

| Exhibit | Page |
|---|---|
| NONE | |

(Call to the Order of the Court.)

THE COURT:  Good morning.

MR. BROWNE:  Good morning.

THE COURT:  Everybody is seated.  Please have a seat. Let's call the case.

COURTROOM DEPUTY:  Calling case United States of America v. Ryan Wesley Routh, Case Number 24-cr-80116-Cannon.

Counsel, please state your appearances for the record, starting with the United States.

MR. SHIPLEY:  Good morning, Your Honor.  John Shipley, Christopher Browne, Maria Medetis-Long, and James Donnelly for the United States.

THE COURT:  Good morning.

MR. BROWNE:  Good morning.

MS. MEDETIS-LONG:  Good morning, Your Honor.

MR. ROUTH:  Ryan Routh for the defense.

THE COURT:  Good morning, Mr. Routh.

MS. MILITELLO:  Good morning, Your Honor. Kristy Militello and Renee Sihvola, standby counsel.

THE COURT:  Good morning.

All right.  This is day 3 of trial, our final day we anticipate for jury selection purposes.  Our jurors in this Group 2 and 3 block are gathering as we speak to be brought in momentarily.  We do have two jurors, one of whom has a daughter, or a child, with COVID -- that's Juror 139 -- and did

not present herself.  There is also a Juror 100, who reported car troubles, and so I wanted to raise that with the parties.

Any objection to proceeding without these folks at this time?

MR. ROUTH:  No, Your Honor.

MR. BROWNE:  Just one moment, Your Honor.

No objection.

THE COURT:  Okay.  So we won't have with us today 100 or 139.

Any other issues to raise before I step off the bench to assemble the jurors?

Mr. Shipley.

MR. SHIPLEY:  Just very briefly, Your Honor.  Thank you, yesterday, for the voir dire that you did with the jurors and it was thorough.  We did have one request, and just to clarify something that the Court may not know.  Obviously, there -- with regard to the Butler assassination, there is no argument and no evidence that the defendant was involved in that, but there are text messages where the defendant is referencing it, as well as web searches related to it that will be coming in as part of the evidence in the case.

So we reviewed our proposed question and the transcript from yesterday, and I would simply ask that the Court can give the exact question that it did yesterday.  But the Court had indicated what happened in Butler, Pennsylvania, should have no

role whatsoever to play in your convaluation [sic] of the evidence.  So if I could propose the Court either not use that line, or a different line, just so there is no idea in the juror's head that they can't consider the evidence that's coming in of the text messages and web searches as relevant to the defendant's intent.  That's all.

THE COURT:  What other language would you propose then?

MR. SHIPLEY:  My suggestion is just strike that sentence, Your Honor.

THE COURT:  All right.  I will consider it.  I'm not sure.

Okay.  Mr. Routh, any thoughts on that issue?

MR. ROUTH:  No issue with that.  So whatever -- whatever the judge decides.

THE COURT:  Okay.  All right, then.

Okay.  So, Mr. Routh, do you have any matters to raise with the Court regarding jury selection?

MR. ROUTH:  No, Your -- no, Your Honor.

THE COURT:  Okay.  Well, then, we will be in a brief recess.  Just to be clear, the jurors that will be assembled today, like I said, are ready, are a mixture of Group 2 and 3. We do have a few extra that exceed the 60 number, so we will be directing those additional individuals to wait in the jury selection room for this first phase.  And if there is a need to conduct voir dire as to that last cohort, then we will.  But if

there are sufficient jurors remaining, taking into account allotted strikes, then we may not have to do that.

So, with that, I will take a brief recess and see the parties shortly.  Thank you.

(A recess was taken from 8:38 a.m. to 8:50 a.m.)

(The venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT:  Good morning.  Thank you for being here on time, ladies and gentlemen.  You may have a seat.

All right.  I will again call the case.  This is Case Number 24-80116, United States of America v. Ryan Wesley Routh.

Ms. Moran, please deliver the oath for prospective jurors.

COURTROOM DEPUTY:  Will all prospective jurors please rise and raise your right hand.

Do you and each of you do solemnly swear or affirm that you will well and truthfully answer all questions propounded to you, touching upon your qualifications to serve as jurors in the case before the Court, so help you God?

THE VENIRE:  I do.

COURTROOM DEPUTY:  Thank you.

THE COURT:  Thank you.  Please all have a seat again.

Well, whether it was Monday or Tuesday, we have by now covered various preliminary topics with you.  And so the goal today is to move past some of those more basic areas and

address some more case-specific questions, again, for the purpose of ensuring that we select a fair and impartial jury that can evaluate the evidence in this case based only on what they hear in the courtroom and the instructions to them on the law.

Before I get started, just for housekeeping purposes, I'm going to ask you all to raise your paddle so we can confirm who is here in the room at this time and basically take roll call.  It was my understanding that Jurors 100 and 139 were not available today, but I have been informed that they are, in fact, here.  So 100 and 139 are, I believe, present, but we will confirm that momentarily.  Okay.

All right.  The jurors who should be in this room -- and maybe we can do this another way.  Okay.  Actually, yes, keep the paddles up.  All right.  We should have 62, we do; 63, 65, 66, 67, 68, and 70.  Those are all here.  Thank you.  You can lower your paddles.

We also have 72, 73, 75, 78, 87, 88, 89, and 90.  Those are all here.  Thank you, ladies and gentlemen.

Now to the back row of the juror box:  91, 92, 93, 95, 96, 97, 100, and 102.  All right.  You are all here.  Thank you.

Okay.  And now we're at those assembled chairs in the back.  We have 103, 105, 108, and 109.  Those are all here.  Thank you.

Now, in the left-side gallery:  111, 112, 116, 117, 118, 120, and 121.  Thank you, sir.  You are all here.

Okay.  So shifting to that remaining set, we have 124, 126, 128, 129, 130, 133, 134, 135.  You're all here.

Now, 137.  Thank you.  138, 139, 142, 143, 144.  Thank you.

146, 147, 148, 149, 150, 151, 153, 155, 157, 158, 159, and 161.  Thank you.

Okay.  So we have ten jurors who are in the jury assembly room, and those are 162, 166, 168, 169, 171, 172, 173, 175, 176, and 179.

Okay.  All right.  Thank you for that.

We want to make sure that we keep track of all the numbers and don't lose track of anybody.

All right.  Okay.  So as I said, today's focus will be a little bit different.  But the ultimate expectation remains the same, ladies and gentlemen.  The only right answer is the truth, so continue to be candid and fully complete in all your answers.  Obviously, I understand speaking up in a room of this size can be a little bit intimidating, but we again need to select a fair and impartial juror -- jury, and the only way we get there is through the truth.  So thank you.

All right.  Now, yesterday, or maybe it was Monday -- I'm losing track of the days now -- you heard about the allegations in this case, and I summarized those for you.

There are five alleged offenses in the indictment, starting with Count 1, which is -- as you may remember, is the charge of attempted assassination of a major presidential candidate, through Count 5 of the indictment, which alleges possession of a firearm with an obliterated serial number.  I'm not going to rehash all of those counts, but I am going to ask you questions about the nature of those allegations and whether those allegations in any way bear on your individual abilities as prospective jurors to be fair and impartial if chosen to serve in this case in particular.  So we will now get started.

Some of these questions might touch upon answers that you already provided in the questionnaires, so there is a little bit of duplication, but there is a reason behind them -- the methodology.  We want to just, again, continue to be thorough.

So my first question for all of you is, is as follows: Have you, any member of your family, or any close friend ever been employed by a law enforcement agency?

So this -- this topic was raised in the questionnaire, so you still need to raise your paddles even if you already answered the question.  And so please keep those all high up so I can jot them down like we have done in the past.

Okay.  I'm seeing 72.  Oh, excuse me.  Are you raising your paddle, sir?  Okay.  67 is the first, then 72, 73, 78, 88, 91, 92.  We also have 105, 112, 120, 121, 124, 143, 150, 151,

157, and 161.  Okay.  So we will take you one at a time, starting with Juror 67.  Let's please get you the microphone.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning, sir.  Okay.  Let me get my bearings here.  Why don't you describe for us the nature of any contacts that you have with folks who have worked in law enforcement.

A PROSPECTIVE JUROR:  My cousins, they live in Virginia, and they work for the FBI.

THE COURT:  Okay.  You said "cousins"?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  So several cousins?

A PROSPECTIVE JUROR:  Two.  Yes.

THE COURT:  Two.  Okay.  And are they currently working for the FBI?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  And you said in Virginia?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Do you ever discuss with them the nature of their work?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Is there any part of you that thinks you would be unable to be fair and impartial in this case because your cousins currently work in Virginia for the FBI?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  All right.  Now, let me ask you a related question.  There will be a series of law enforcement witnesses who come testify in this trial, and many of them will be current law enforcement officers in one capacity or another. Do you think you're going to believe those witnesses just because they work in law enforcement, or would you evaluate their credibility just like you would evaluate any witness's credibility?

A PROSPECTIVE JUROR:  Any -- any witness's.

THE COURT:  Okay.  Thank you, sir.  Please have a seat.

All right.  Let's shift now to Juror 72.

A PROSPECTIVE JUROR:  My deceased husband was a -- a police officer.

THE COURT:  Okay.  And I'm sorry for your loss.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Where did he work?

A PROSPECTIVE JUROR:  In the City of Lauderhill in Broward County.

THE COURT:  Do you know how long he served?

A PROSPECTIVE JUROR:  Just -- just over 20 years.

THE COURT:  Okay.  Now, have you ever worked in law enforcement?

A PROSPECTIVE JUROR:  I have not.

THE COURT:  And other than your deceased husband, any other relatives or close friends who have worked in law

enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Now, I can imagine that being married to a law enforcement officer for a long time, you potentially had conversations with your husband about the nature of his work.  Would that be a fair characterization?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you think that that close relationship with your husband would at all affect your ability to be fair and impartial if chosen to serve in this case?

A PROSPECTIVE JUROR:  It would not.

THE COURT:  Okay.  Thank you, ma'am.

All right.  Let's hear from Juror 73.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning, sir.  Same question.

A PROSPECTIVE JUROR:  Yes.  I have a father-in-law that was in law enforcement here locally for 50 years.

THE COURT:  Do you know the agency he worked for?

A PROSPECTIVE JUROR:  St. Lucie County Sheriff for approximately 25 and Fort Pierce Police for approximately 25.

THE COURT:  Okay.  Does he still work for either of those agencies?

A PROSPECTIVE JUROR:  No.  He is retired.

THE COURT:  Okay.  Other than your father-in-law, any other relatives or close friends in law enforcement?

A PROSPECTIVE JUROR: I have a close friend in the Secret Service.

THE COURT: Do you know where your close friend is based out of?

A PROSPECTIVE JUROR: Here.

THE COURT: Okay. Now, as you will come to learn, there will be some -- some witnesses who currently work for the Secret Service, and they will be called upon to testify in this case. Is there anything about your close friendship with a Secret Service agent at the moment that would in any way influence or color your evaluation of this case?

A PROSPECTIVE JUROR: No.

THE COURT: What about your father-in-law's very lengthy career in law enforcement? Is there anything about that that would influence your ability to be completely objective and fair if chosen to serve?

A PROSPECTIVE JUROR: No.

THE COURT: All right. Thank you, sir. Please have a seat.

All right. The next person, Officer Blanford, is -- is 78.

Good morning, sir.

A PROSPECTIVE JUROR: Good morning.

THE COURT: I think you can guess what I'm going to ask you, but it concerns your ties to law enforcement. So why

don't you describe those for us.

A PROSPECTIVE JUROR:  Okay.  I will.  My grandfather was a career policeman, attained the rank of captain, West Hartford, Connecticut, Police Department.  My dad was a career police officer; he achieved the rank of sergeant.  Again, West Hartford Police Department.

I had two uncles on my mother's side, my grandfather's sons, one achieved the rank of captain and -- Hartford, Connecticut, Police Department.  And my other uncle achieved the rank of sergeant in Enfield, Connecticut, Police Department.

I currently have two nephews that are cops, one in Chicago, and the other one in Kingston, New York.

THE COURT:  Okay.  All right.  So that's -- that's a lot of family connections in law enforcement, all in Connecticut or in the Northeast.

What do you do for work, might I ask?

A PROSPECTIVE JUROR:  I'm retired.

THE COURT:  Okay.  What did you do before you retired?

A PROSPECTIVE JUROR:  I managed a restaurant for 28 years, and then I managed -- I was a facility and banquet manager at an Elks club, and this is all in Vermont.

And then I relocated to Florida about eight years ago. And I worked at -- in the deli at Winn-Dixie here in Fort Pierce for a few years.

THE COURT:  Okay.  All right.  Now, being around your grandpa and your father and your uncles, and maybe your nephews currently, do you talk to them about the nature of their career or -- in the past or presently?

A PROSPECTIVE JUROR:  Well, I mean, growing up, we did all the time, you know, family gatherings and everything. Sure.

THE COURT:  And do you think any of those interactions or those conversations or just the relationship in general would have any impact on your ability to be an impartial juror in this case, which would mean considering only the evidence presented in the courtroom and the law as it is presented to you?

A PROSPECTIVE JUROR:  Right.  I'm certain I could be impartial.

THE COURT:  All right.  Very well, sir.  Thank you.

Officer Blanford, please pass the microphone to 88.

Good morning.

A PROSPECTIVE JUROR:  Good morning.  I have an -- aunts and a uncle that are retired police, one in Maryland, Baltimore County, I believe, and one here in St. Lucie County, I believe. They retired about 30 years ago.

THE COURT:  Have you had any recent conversations, let's say within the last five years, with either your retired aunt or uncle about their law enforcement profession?

A PROSPECTIVE JUROR:  With the exception of my aunts who ran the D.A.R.E. program, no.

THE COURT:  Okay.  Is there anything about your relatives' former employment or your relationship with them in more broad terms that would in any way impact your ability to be fair if chosen to serve, ma'am?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you.  Please have a seat.

All right.  Next is 91.  Good morning, ma'am.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Describe for us, please, your relationships with folks in law enforcement.

A PROSPECTIVE JUROR:  A nephew, a CO, in Indian River County.

THE COURT:  So he currently works there?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Do you know how long he has been a correctional officer?

A PROSPECTIVE JUROR:  Seven-plus years.

THE COURT:  Any other relatives who have a role in corrections or in law enforcement more broadly?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Is there anything about your nephew's current work as a correctional officer that would in any way directly or indirectly impact your ability to be a fair

and impartial juror in this case?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Please have a seat.

All right.  Juror 92?

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning.  All right.  Same question.

A PROSPECTIVE JUROR:  I currently have a cousin that works for the FBI out of Colorado.

THE COURT:  Do you keep in regular contact with your cousin?

A PROSPECTIVE JUROR:  Only about their kids' stories.

THE COURT:  Okay.  So do you ever have any conversations with him or her about the work that he or she is doing at the FBI in Colorado?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Is there anything about your relative's work for the FBI that would impact your ability to be fair, knowing that there will be various witnesses from the FBI who come testify as witnesses?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Please have a seat.

Let's hear from 105.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning.  I thought you were over here.  Okay.  All right.  Please answer the question.

A PROSPECTIVE JUROR:  My father was -- well, he is a retired ATF agent.

THE COURT:  Do you know when he retired?

A PROSPECTIVE JUROR:  It was when I was a kid.  I'm not sure of the exact year.

THE COURT:  Okay.  Any other relatives who work in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  Do you work in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  What do you do?

A PROSPECTIVE JUROR:  I'm a tattoo artist and a volleyball coach.

THE COURT:  Now, growing up with -- with a dad as an ATF agent, do you think that that relationship or your interactions, maybe conversations you had with your father growing up, would in any way sort of stick in your mind and prevent you from being a fair and impartial juror if chosen to serve?

A PROSPECTIVE JUROR:  Not at all, no.

THE COURT:  Okay.  All right.  That's all I have, Juror 105.  Thank you.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Let's hear from 112.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  I have a sister that's an administrative assistant at the West Palm Beach Sheriff's Department.

THE COURT:  Do you ever talk to your sister about the nature of her work?

A PROSPECTIVE JUROR:  No.

THE COURT:  Does she ever share any information with you about what she's doing for work?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Any other relatives that work in law enforcement or any close friends that you might have?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  So then zooming out a little bit, is there anything about your sister's work as an miff assistant in law enforcement that would have any bearing or relevance at all in your mind if you were chosen to serve as a juror?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Please have a seat.

Okay.  Officer Blanford, 120, please.

A PROSPECTIVE JUROR:  Good morning.  My husband works for the Port St. Lucie County Sheriff's department.

THE COURT:  And what is his current title?

A PROSPECTIVE JUROR:  He is a deputy sheriff.

THE COURT:  Do you know how long he has worked there?

A PROSPECTIVE JUROR:  18 years.

THE COURT:  Has he worked for any other agencies outside of the Port St. Lucie Sheriff's department?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  What about you?  Have you ever worked in law enforcement?

A PROSPECTIVE JUROR:  I haven't.

THE COURT:  And what do you do for work currently?

A PROSPECTIVE JUROR:  I work as a home healthcare worker.

THE COURT:  Okay.  Do you have any other relatives or close friends or associates who work in law enforcement?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Now, presumably, your husband has friends of his own within the department; is that right?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Does your husband ever talk with you about the nature of his work?

A PROSPECTIVE JUROR:  We talk about our jobs but not certain nature.

THE COURT:  Okay.  Is there anything about your husband's lengthy and current role as a deputy sheriff or his relationships with others who work there, or maybe in other agencies, that would at all affect your ability to be 100 percent objective in this case if chosen to serve as a

juror?

A PROSPECTIVE JUROR:  I don't think so.

THE COURT:  Do you have any hesitations in answering that question?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Thank you.  Please have a seat.

Okay.  121.  Same question, sir.

A PROSPECTIVE JUROR:  I have two cousins who formerly worked for the St. Lucie County corrections department.  I hope that counts.

THE COURT:  No, that's accurate.  And that's complete. Thank you.

Okay.  And do you know when they stopped working there?

A PROSPECTIVE JUROR:  I believe it was in the last three years.

THE COURT:  Other than those two cousins, any others, any other relatives or close associates who have law enforcement connections?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  How about you?  What do you do for work?

A PROSPECTIVE JUROR:  I work in retail.  I work at a pet store.

THE COURT:  All right.  Is there anything about your cousins' former employment at the correctional -- in the

correctional industry or space that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR:  I don't believe so.

THE COURT:  All right.  Do you have any doubts about answering that question?  Of course, our ultimate goal here is to have jurors who can be 100 percent objective, considering only the evidence in the courtroom, without being influenced by any other factor.  So do you have any concerns, sir, about your relationships with your cousins as former correctional officers, having any impact at all in your evaluation of this case?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you.  Please have a seat.

Okay.  Juror 124, please.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  My sister was a -- assistant administrator at the St. Lucie County correctional institute, and I did do volunteer work there with her in helping type up prisoners' records.

THE COURT:  Do you remember when you were doing that volunteer work, roughly?

A PROSPECTIVE JUROR:  It's been many years ago.

THE COURT:  Does your sister still work there?

A PROSPECTIVE JUROR:  No.  She is retired.

THE COURT:  And how long ago was that, roughly?

A PROSPECTIVE JUROR:  Years ago.  Probably 20 years ago, I would guess.

THE COURT:  And what do you do currently for work?

A PROSPECTIVE JUROR:  I am retired.  I used to bill insurance for physicians' offices, and collection work.

THE COURT:  Is there anything about your sister's work many years ago or your volunteer work with her, helping with clerical duties in the correctional institute, that would at all have any impact -- same question that I have been asking -- that would at all have any impact on your ability to be a fair and impartial juror if chosen to serve in this case?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you.  Please have a seat, Juror 124.

Let's hear from Juror 143.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  Yes.  I was a previous law enforcement.  I worked with the Highlands County Sheriff's Office as a deputy sheriff from January 2020 to August 2020.

THE COURT:  Okay.  So that was approximately nine months?

A PROSPECTIVE JUROR:  Yes, that's correct.

THE COURT:  And did you have any prior jobs in law

enforcement?

A PROSPECTIVE JUROR:  No, ma'am.  No.

THE COURT:  So after you left the Highlands County Sheriff's Office, where did you go work?

A PROSPECTIVE JUROR:  I changed careers into healthcare IT, which I'm currently working at.

THE COURT:  And actually on that point, that reminds me, sir, you work with HCA; is that correct?

A PROSPECTIVE JUROR:  That is correct.

THE COURT:  Were you able, after our last conversation, to determine whether your employer would cover your wages or salary if called upon to serve?

A PROSPECTIVE JUROR:  Yes.  I did reach out to HR, and they did state they will for the whole period -- time of doing jury duty.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Does that alleviate any financial concern you might have had in the past?

A PROSPECTIVE JUROR:  Yes, it does.

THE COURT:  Okay.  Now, having left law enforcement and chosen a different career path, in brief terms, can you describe for us why you chose to make that decision?

A PROSPECTIVE JUROR:  It was mainly due to -- I will be honest.  It was just income.  Law enforcement, there is not --

you know, starting, there is not a lot of money.  So it was very difficult at first.  And, you know, I made the decision to cut ties after nine months.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  Yeah.

THE COURT:  All right.  Thank you.  Other than that stint that you held as a Highlands County Sheriff's Office deputy -- was that your title?

A PROSPECTIVE JUROR:  Deputy sheriff, yes.

THE COURT:  Deputy sheriff.  Do you have any other relatives or close friends who work in law enforcement?

A PROSPECTIVE JUROR:  Yes, I do.  Yeah, I -- one of the lieutenants in my church, he works at the Highlands County Sheriff's Office.  He is a lieutenant for the courts.

THE COURT:  Anybody else?

A PROSPECTIVE JUROR:  Close?  No.

THE COURT:  Okay.  So hearing that you have worked in law enforcement, albeit somewhat briefly, and hearing that you still have relationships with at least one close friend who is in law enforcement, does any of that give you any pause whatsoever in your ability to be fully fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you, Juror 143.

Let's hear from Juror 150.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning, sir.  Please go ahead.

A PROSPECTIVE JUROR:  Yes.  My older brother was a cop; I got two cousins that's cops; and my niece is a New York State trooper.

THE COURT:  Are you from the northeast originally, sir?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  And when did you move to Florida?

A PROSPECTIVE JUROR:  About ten years ago.

THE COURT:  Have you ever worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  And what do you do for work at the moment?

A PROSPECTIVE JUROR:  I'm retired.  I was a union carpenter.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  And I have a bunch of friends that were correction officers.

THE COURT:  Okay.  Do you still keep in touch with them?

A PROSPECTIVE JUROR:  Yes, I go up every year --

THE COURT:  All right.

A PROSPECTIVE JUROR:  -- a couple times.  Like, I was supposed to go up tomorrow, but I'm here instead -- for 9/11.

THE COURT:  Okay.  Was that a preplanned trip, sir?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  We want to ensure that no jurors have any specific hardships that might affect them in sensitive ways, and that might be one of them.  I want to give you an opportunity, sir.  Is there anything about that trip that not being able to go would cause any concern?

A PROSPECTIVE JUROR:  Yeah, I think it might.

THE COURT:  Okay.  And did you make arrangements already in terms of hotel or flight or driving?

A PROSPECTIVE JUROR:  For what?

THE COURT:  For the trip?

A PROSPECTIVE JUROR:  Oh, no.  I go stay with family.

THE COURT:  Okay.  And do you normally fly or drive?

A PROSPECTIVE JUROR:  I fly up.

THE COURT:  So do you have a ticket right now at the moment?

A PROSPECTIVE JUROR:  No.  I canceled it.

THE COURT:  Okay.  Are you wishing at this point to -- to express any hardship with a potential jury service in this case, or are you comfortable being considered for jury service despite the trip that you potentially could reschedule if -- if you chose to?

A PROSPECTIVE JUROR:  I think it's a little late now, but...

THE COURT:  Okay.  Fair enough.  Well, thank you, sir, for your commitment to the court.

Let me continue with this line of inquiry regarding your family members.  When you see them, like you said, on these trips that you go up north, do you ever talk to them about their work?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  And through those conversations, does it ever make you feel that maybe you would give an edge to law enforcement because of your ties with them?

A PROSPECTIVE JUROR:  Truthfully, yes, I think so.

THE COURT:  Okay.  All right.  That's all I have. Thank you, Juror 150.

Let's hear from Juror 151.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  I am a retired law enforcement officer from Maryland.

THE COURT:  And how long did you work as a law enforcement officer?

A PROSPECTIVE JUROR:  A little over 25 years.

THE COURT:  Can you just briefly walk me through your career.  I know it's probably hard to do in a little capsule, but just in terms of the positions that you held and where.

A PROSPECTIVE JUROR:  Well, I started at entry level. I retired as a lieutenant.  But I did drug enforcement, K-9, criminal investigations, patrol.

THE COURT:  Okay.  All right.  And that was all in Maryland?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  So I perhaps asked you this, but when did you retire?

A PROSPECTIVE JUROR:  2014.

THE COURT:  Okay.  Do you still keep in touch with any law enforcement friends?

A PROSPECTIVE JUROR:  Of course.

THE COURT:  And what about any relatives?  Do you have any relatives in law enforcement?

A PROSPECTIVE JUROR:  Not currently, no.

THE COURT:  All right.  So taking that all together, your lengthy career and your friends who still work in law enforcement, is there anything about that that gives you any hesitation in your ability to be 100 percent objective to both sides in this case?

A PROSPECTIVE JUROR:  Absolutely not.

THE COURT:  Okay.  Thank you, sir.  Please have a seat.

All right.  157, please.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.  All right.  Let's hear from you, sir, about your law enforcement connections.

A PROSPECTIVE JUROR:  I have a cousin who is married to, I don't know if he is a lieutenant or a sergeant, in

Okeechobee County Sheriff's Department.

THE COURT:  Okay.  Anybody else?

A PROSPECTIVE JUROR:  I just have some -- obviously some friends that -- not close friends, but friends that also work in that same department.

THE COURT:  Okay.  Is there anything about your cousin's spouse, I think, as you have indicated, and any of your friends working in law enforcement, either in corrections or otherwise, that would have any sort of influence on your ability to, like I said, consider just the evidence that is presented in this case without being influenced by any other prior relationship or prior influence or anything of that sort?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Now, I do have a note here, sir, that you work as a high school teacher; right?

A PROSPECTIVE JUROR:  That is correct.

THE COURT:  Okay.  And I think you said to us the other day that you also work in the yearbook office?

A PROSPECTIVE JUROR:  That is correct, as part of the role as an educator in Okeechobee.

THE COURT:  Okay.  Do you have any updates from the school in terms of how -- how they would go about dealing with your potential absence?

A PROSPECTIVE JUROR:  Probably just by me handling it, after 5:30 until whatever time, via email or messaging them.

THE COURT:  And that's for the lesson plans and things like that?

A PROSPECTIVE JUROR:  Correct.

THE COURT:  Okay.  So just knowing that, do you feel that you could still perform your functions as a juror, paying full attention to the evidence during the trial day?

A PROSPECTIVE JUROR:  I do.  I do.  I believe I can.

THE COURT:  Okay.  Thank you, sir.  Please have a seat.

Okay.  We are now at 161.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning, sir.

A PROSPECTIVE JUROR:  I have a cousin who is a diplomat, and I also have a sister-in-law who works for the DA office.

THE COURT:  Okay.  So do you know which DA's office that is?

A PROSPECTIVE JUROR:  It's the Florida DA office in Orlando.

THE COURT:  Okay.  And then when you say "diplomat," is that in a foreign country?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Let me just rewind on some other topic, and I will circle back to this.  What do you do for work at the moment, or are you in school?

A PROSPECTIVE JUROR:  I'm a software systems

integration specialist.

THE COURT:  Can you describe for me what that entails.

A PROSPECTIVE JUROR:  Sure.  Data flowing into applications, like mobile applications, web applications, things like that.

THE COURT:  Okay.  One moment.

All right.  So I'm just referring back to your questionnaire, sir.  Are you currently in any sort of educational program?

A PROSPECTIVE JUROR:  I am.

THE COURT:  Okay.  And what are you studying?

A PROSPECTIVE JUROR:  Technical management information security with a minor in aerospace engineering.

THE COURT:  So do you do those studies after the regular workday?  How are you balancing the full-time job and school?

A PROSPECTIVE JUROR:  Sure.  I have two classes per semester; they're online courses.  And I usually complete most of my work during the weekend.  I have a full-time job as well.

THE COURT:  Okay.  All right.  Do you have any concerns about keeping up with both your studies and your -- and your work if chosen to serve as a juror in this case?

A PROSPECTIVE JUROR:  I do not, since my work is actually complying with giving me this time during jury duty.

THE COURT:  Okay.  Very well, Juror 161.  Thank you.

Let me get back to the other topic.  One moment.

Okay.  So you mentioned your relative who is a diplomat outside of the country, and then you have a relative -- is that right? -- who is a state prosecutor?

A PROSPECTIVE JUROR:  Not a prosecutor.  They just work for the district attorney's office.

THE COURT:  Oh, okay.

A PROSPECTIVE JUROR:  It's my sister-in-law.

THE COURT:  Do you know what she does specifically?

A PROSPECTIVE JUROR:  I don't know specifically.  I know that she just reviews cases, and I believe it's for juveniles.

THE COURT:  So is she a lawyer, to your knowledge?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Obviously there are prosecutors here representing the United States.  Is there anything about your relationship with your relative who works in some capacity at the DA's office, though not as a lawyer, which would impact your ability to be fair and objective to both sides in this case, both the prosecutors and the defense?

A PROSPECTIVE JUROR:  Not at all.

THE COURT:  Okay.  And is there anything at all as far as your -- your relationship to a diplomat or, again, to this DA connection that would have any bearing at all on your objectivity?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you, 161.  You may have a seat.

Okay.  That completes the list of folks who raised their hands to this question.  Is there anybody who I have not covered on the subject of law enforcement connections?

Okay.

A PROSPECTIVE JUROR:  I raised my paddle.

THE COURT:  Okay.  Let's get the mic to 126.

A PROSPECTIVE JUROR:  I apologize.  I didn't realize it was for any connection.

THE COURT:  That's okay.  That's okay.  We want to make sure we get everybody an opportunity.

So you're Juror 126?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  And why don't you answer the question.

A PROSPECTIVE JUROR:  When I was a child, my mother was briefly married to a correctional officer, but she was married to many people after that, so...

THE COURT:  Okay.  Okay.  Do you have any sense about when that might have been?

A PROSPECTIVE JUROR:  Oh, yeah.  I was like 6 to 10.  6 to 11.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  He wasn't a correctional officer

the whole time.  He actually fell and broke his back and had surgery that went wrong, so he was -- he is disabled now.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  And he is the father of my brother also.

THE COURT:  Okay.  All right.  Thank you for sharing.

Is there any other relative in your network --

A PROSPECTIVE JUROR:  No.

THE COURT:  -- or friend?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  And is there anything about that prior marriage of your mom's that might have any impact as far as you being able to evaluate law enforcement witnesses in this case without giving them any sort of plus or minus?

A PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  And do you feel confident that you could be 100 percent fair and objective to both sides if chosen to serve?

A PROSPECTIVE JUROR:  I do.

THE COURT:  Okay.  Thank you, Juror 126.  You may have a seat.

I see no additional hands, although, yes, now some are popping up.  So let's continue the process with -- Officer Blanford, let's get back to the lower numbers.

We have 68 over here.

A PROSPECTIVE JUROR:  Hello.  In high school, I was in the St. Lucie County Sheriff's Academy for like a year.  I don't think that will really change anything.  It was just me and my friends wanted to do something, like, cool.  So...

THE COURT:  All right.  So I am not familiar with this program.  So what is it?  It's a high school internship, or how do you describe it?

A PROSPECTIVE JUROR:  How would I -- anyone who is, like, interested in joining the sheriff's, in high school, or I don't know what the age limit is, can go into the program.  And we do, like -- you know, the fairgrounds, the people who, like, guide people in, we do things like that.  Just --

THE COURT:  Okay.

A PROSPECTIVE JUROR:  -- small little sheriff things that they want us to do.  So...

THE COURT:  And when was that, if you remember?

A PROSPECTIVE JUROR:  2015.

THE COURT:  So when did you graduate high school?

A PROSPECTIVE JUROR:  2016.

THE COURT:  And what are you doing for work now?

A PROSPECTIVE JUROR:  I don't work.

THE COURT:  Okay.  Have you had any jobs since graduating from high school?

A PROSPECTIVE JUROR:  Yeah.  I was in the military.

THE COURT:  Okay.  In which branch?

A PROSPECTIVE JUROR:  Army.

THE COURT:  And when did that end?

A PROSPECTIVE JUROR:  2020.

THE COURT:  Okay.  All right.  Now, obviously you decided you didn't want to go into the sheriff's office specifically.  Is there anything about participating in that academy program that would have any bearing at all on your ability to be a fair and impartial juror?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Do you have any other friends or relatives who work in law enforcement at the moment?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  I know it could be a little bit hard sometimes to rack your brain to figure out, you know, who might fit that description.

A PROSPECTIVE JUROR:  But I have a lot of friends.  So...

THE COURT:  Okay.  All right.  Well, life is busy, that's for sure.

Okay.  All right.  Thank you, Juror 68.

Any other jurors?  I think a few more were raised in the back.  So let's -- let's hear from 108 now.

A PROSPECTIVE JUROR:  Good morning.  My uncle works at the Okeechobee County Sheriff's Office.

THE COURT:  Okay.  And do you know what he does there?

A PROSPECTIVE JUROR:  He is a deputy sheriff.  We don't really speak too much.  He is pretty busy.

THE COURT:  Okay.  Have you ever talked with him about the nature of his work?

A PROSPECTIVE JUROR:  No.

THE COURT:  Other than your uncle, anybody else in law enforcement?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  What do you do for work?

A PROSPECTIVE JUROR:  A registered nurse.  I do home health.

THE COURT:  Is there anything about your uncle's current employment that would have any bearing on your ability to be entirely fair and objective to both sides?

A PROSPECTIVE JUROR:  Absolutely not.

THE COURT:  Okay.  Thank you, sir.

That's Juror 108.  Let's go to the next juror.

I see 109.  For -- one moment.  Everybody, let's do this one final time.  Anybody who hasn't reported a connection to law enforcement, please do this now, and I will take down all of the paddles so that we don't lose anybody here.

So we have 109 left, 111, and then 133 and 153.

Okay.  All right.  Let's go to 109.

A PROSPECTIVE JUROR:  Good morning.  I just wanted to mention that I grew up with a father who was in the military,

but not here in the United States.

THE COURT:  Okay.  Okay.  Have you ever served in the military?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Other than your father who served in the military, abroad, is there anybody else in your family or network --

A PROSPECTIVE JUROR:  No.

THE COURT:  -- that works in law enforcement or that has worked in law enforcement?

A PROSPECTIVE JUROR:  No.  No.

THE COURT:  Okay.  Now, is there anything about your father's military experience that would have any bearing at all on your ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No.  I just wanted to mention that.

THE COURT:  I appreciate your -- your completeness. Thank you very much, Juror 109.

Let's hear from Juror 111.

A PROSPECTIVE JUROR:  Good morning.  I have an uncle who I don't see very often, but he is a former ATF agent. Retired 20 years ago.

THE COURT:  Okay.  And before he retired, did you ever engage in conversations with him about his work?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Any other relatives or friends who work in law enforcement?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  How about you?  What do you do for work?

A PROSPECTIVE JUROR:  I'm an elementary school teacher.

THE COURT:  And where do you teach?

A PROSPECTIVE JUROR:  Seawind Elementary in Martin County.

THE COURT:  Okay.  Is there anything about your former -- I'm sorry, did you say it was an uncle?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Is there anything about your uncle's former work in the ATF that would impact your ability to be fair and impartial?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Now, I think there are a few folks that work in the ATF that I referenced the other day when reading the prospective witnesses, so one or more of individuals associated with the ATF may come to testify in this trial.

Does that change your answer at all in considering whether you can be fair and impartial?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Thank you very much.  Please have a seat.

133.

A PROSPECTIVE JUROR:  Hello, Your Honor.  This might be a little nitpicky, but my mother was adopted and her biological brother in Michigan at some point was a cop.

THE COURT:  Okay.  No.  Thank you.  I really -- this is exactly -- I always emphasize full completeness and candor, and thank you for honoring that directive.

Okay.  So what you have told me is that your mother was adopted, and her biological brother had some sort of police officer experience; is that right?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Do you know at all when that might have been?

A PROSPECTIVE JUROR:  No idea.

THE COURT:  Okay.  Do you have any connection or ties or discussions with that person?

A PROSPECTIVE JUROR:  I have met him about three times in my life as an adult.

THE COURT:  And like how long ago was the last time you saw him?

A PROSPECTIVE JUROR:  I actually did see him last year for about an hour.

THE COURT:  Okay.  Okay.  Is there anything at all about your sort of limited interactions with this individual that would have any bearing whatsoever or any influence at all

on your ability to be a fair and impartial juror?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you, Juror 133.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  And then, finally, we have 153.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning, sir.

A PROSPECTIVE JUROR:  My connections are reported, but I didn't know if you needed any further clarifications upon that.

THE COURT:  Oh, okay.  Let's see.  All right.  Well, why don't you then keep me up -- get me up to speed.  Who are the folks in your world that work in law enforcement or that have in the past?

A PROSPECTIVE JUROR:  I have many friends that worked in law enforcement, both as police officers and corrections officers, who are retired, and they are in my social network.

THE COURT:  Okay.  Have you ever worked in law enforcement?

A PROSPECTIVE JUROR:  No.

THE COURT:  What do you do for work?

A PROSPECTIVE JUROR:  I'm retired.

THE COURT:  From what?

A PROSPECTIVE JUROR:  Very broad.  Manufacturing management, human resources management, engineering.  Very

broad.

THE COURT: Okay. All right. So you've heard me say that there are going to be a number of witnesses who work in law enforcement, come testify during this trial. It sounds like have you a -- a pretty significant network of friends with law enforcement connections. Do you have any reason to believe that you would have any problems being 100 percent fair and impartial to both sides if chosen to serve?

A PROSPECTIVE JUROR: Not at all.

THE COURT: Okay. All right. Was there any other information, sir, that you wanted to share regarding this subject?

A PROSPECTIVE JUROR: No. No. We're good.

THE COURT: Okay. And is there anything in your experiences or background that would in any way call into question your ability to be fair and impartial if chosen to serve in this case?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. Thank you, sir. You may have a seat.

Okay. Juror 65.

Thank you, Mr. Condon.

It looks like we have one more juror on this topic. Juror 65.

A PROSPECTIVE JUROR: I didn't think it matters, so I

didn't raise this before.  But I work partly in asset protection at my job.  I'm a customer host at Walmart, but part of it is also asset protection.  I do talk to police officers and everything just as acquaintances and everything.

THE COURT:  Okay.  So for those who might not know exactly what it means to work in asset protection, can you just give me a high-level summary.

A PROSPECTIVE JUROR:  I'm a customer host, so I greet people when they come in the door.  But also, I am -- for people that are higher than me, as asset protection, they will tell me -- they send me pictures of people that have been known to steal from our store already.  So I do, you know, look out for people.  I will alert them when I do see somebody from my pictures.  I will, like -- when the person goes out the door, is suspected, they get in front of them and I get behind them, and then we walk them to the back office where they -- I just sit there as a witness.  I don't do anything else.  And, you know, sometimes police are called in to arrest them or trespass them from our store.

THE COURT:  Okay.  All right.  Is there anything about that work, seeing, you know, these arrests potentially taking place, or issues regarding potential criminal activity at your place of work, that you think would have any influence at all in your ability to consider just the evidence that's presented in this courtroom?

A PROSPECTIVE JUROR:  No.  I can be fair.

THE COURT:  And I know you currently work for Walmart. What other jobs have you had in the past?

A PROSPECTIVE JUROR:  I have worked at Walmart, the store I'm at now, almost -- about 24 1/2 years.  I have worked as a cashier.  I have worked as cash office.  I have worked at the service desk.  I have done online grocery and --

THE COURT:  Okay.  So it sounds like a lot of things.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Okay.  All right.  And then just one final broad question.  Is there anything in your background or experiences, ma'am, that you think would impact your ability to be fair and impartial if chosen to serve as a juror in this case?

A PROSPECTIVE JUROR:  No.  I will be fair.

THE COURT:  Okay.  One moment.

Okay.  Just while I'm having the opportunity to speak with you, I did want to ask you one question.  On the questionnaire, you did answer yes to question 18, which concerns any prior arrests or convictions.  Are you familiar with your answer to that question?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  And without getting into the details of that conduct, is there anything about that experience, having gone through that, that would in any way creep into your

thinking or consideration of this case if you were chosen to serve?

A PROSPECTIVE JUROR:  No.  I will be fair.

THE COURT:  Okay.  And then, roughly, when did that incident or conviction take place?

A PROSPECTIVE JUROR:  32 years ago.

THE COURT:  All right.  All right.  Have you had any other issues in the -- in the criminal justice system since that time?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  All right.  That's all I have.  Thank you, Juror 65.

Okay.  All right.  130 in the back.  Okay.

A PROSPECTIVE JUROR:  Never quite sure where to put this piece of my life into the jury surveys that I've been part of.  In the back of my survey is the details of the company that I'm the business manager for.  My husband for the last 40 years has been producing a piece of software that produces court documents.  So it's not law enforcement, it's not entirely legal, but it is related to the proceedings in a courtroom.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I have also -- I retired in 2020. I was a teacher for around 30 years, mostly math, mostly middle school, private/public in the state of Florida and in the state

of Vermont.

THE COURT:  Okay.  Thank you.  Now this software, did you have a hand in creating it?

A PROSPECTIVE JUROR:  I do not do the coding.  I simply pay the bills and make sure that the calendar is met and that the accountants are talked to.

THE COURT:  Okay.  And what's the name of the program?

A PROSPECTIVE JUROR:  I can't reveal that.  I asked my husband last night, and he said he would prefer not to reveal it because of the size of the -- the size of the market and the number of vendors out there.  That would be personally identifying into -- information.  It is, however, in my jury summary.

THE COURT:  Okay. All right.  But you mentioned that this is -- it produces court documents?

A PROSPECTIVE JUROR:  It produces court documents.  It produces the transcription.

THE COURT:  Okay.  Understood.  So you must have a deep appreciation for our court reporter who is feverishly typing.

A PROSPECTIVE JUROR:  That is why I have been giving her the heads-up, and I'm not doing that now because I know that she has to focus on that work intensely.

THE COURT:  Okay.  Very well.  Thank you, and thank you for providing that clarification.

I see no additional hands.  So we will move on to the

next topic.  All right.  And it's a little bit related.

Does anybody here have any particularly negative or positive feelings about law enforcement or toward law enforcement that you simply would not be able to put aside if selected to serve on this jury?  I see no hands.

Okay.  Now, I asked, I think, this question to one juror, but I'm going to now ask this to the entire group.  As I said, you might be hearing from law enforcement agents and other government agents who may testify during the trial.  Does anybody here think that they will automatically believe the testimony of a law enforcement officer or a government agent just because that person works in law enforcement?

Officer Blanford, I can't quite see in the back.  If you don't mind.  Thank you.  Okay.  I see no hands.

All right.  Now, shifting gears a little bit.  Is there anybody who is familiar with or has knowledge about a Chinese-made military rifle known as a Norinco SKS?

No hands.

Now, I mentioned the other day that the alleged victim in Count 1 is current-President Trump, at the time, a major presidential candidate.  Is anybody here employed by or ever has been employed by any entity or organization owned, operated, or controlled by President Trump or his businesses?

Okay.  Juror 120 -- excuse me, 102.  All right.  Good morning, ma'am.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  This is 102.  Please describe the nature of your connection to any businesses or organizations owned or operated by President Trump.

A PROSPECTIVE JUROR:  In 1996, Trump opened a casino in northwest Indiana, and I was a casino host for him for ten years until it went bankrupt.

THE COURT:  That was in Indiana?

A PROSPECTIVE JUROR:  Gary.  Gary, Indiana.

THE COURT:  Okay.  After that employment ended, did you ever again work for any entity or organization owned or operated by President Trump or his businesses?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Now, in the course of working there, did you ever have occasion to meet him personally?

A PROSPECTIVE JUROR:  Many times.

THE COURT:  And when was the last time that you interacted with him personally?

A PROSPECTIVE JUROR:  I don't think it survived ten years.  So 2000 -- no, probably -- they opened up in '96, and they were closed by -- in -- within ten years.

THE COURT:  Okay.  So do you think maybe around 2006 or so?

A PROSPECTIVE JUROR:  It was before that, because I moved here in 2007, so -- and I worked for Majestic Star, the

other -- his competition after that.  I think it was before "The Apprentice."

THE COURT:  Okay.  All right.  Fair enough.  And what do you do now?

A PROSPECTIVE JUROR:  I'm retired casino host.  I worked at Hard Rock Casino for the last 17 years.

THE COURT:  Okay.  Is there anything about those interactions or conversations or meetings that you say you have had in the past with President Trump that would have any impact at all in your ability to evaluate this case?

A PROSPECTIVE JUROR:  No, because that was Trump, the businessman, and this is Trump, the candidate.  And what I did was basically walk him to dinners.  And when we would have events or the Miss America Pageant we held in Gary, Indiana for a couple years, I would be with the contestants and then introducing him to the contestants or our high rollers.  It was my job to escort him to dinners and to meet our valuable players at the time.

THE COURT:  Okay.  Do you have any hesitation, ma'am, in your ability to consider the evidence in this case based only on what is presented in the courtroom without being influenced at all by any prior interactions or meetings or moments or time with the alleged victim underlying Count 1?

A PROSPECTIVE JUROR:  My personality is that I would be very fair.

THE COURT:  Okay.  Is there anything in your background or experiences that have not yet -- that I have not yet asked you about -- excuse me -- that you think would raise any doubts about your impartiality?

A PROSPECTIVE JUROR:  Well, one time, he threw me a manuscript that somebody put in a paper bag.  And he literally threw it at me because he didn't want to hold it.  And the security came and got it, and they laughed and said, oh, he probably just thought it was a bomb.  And it was kind of a big joke at the time, how I was the sucker to get the manuscript and he didn't want it.  But that was so long ago.  And --

THE COURT:  Do you hold any hard feelings about that incident?

A PROSPECTIVE JUROR:  Oh, no.  I just think it's funny. It's a nice story to tell when you are drinking wine and telling your friends.

THE COURT:  Okay.  All right.  Very well.  So if chosen to serve, would you be 100 percent able to serve your --

A PROSPECTIVE JUROR:  Absolutely.

THE COURT:  One moment.  I will finish -- to serve your function as a juror without any bias or influence in either direction?

A PROSPECTIVE JUROR:  Absolutely, because he wasn't the victim; it was the other people.  And it's the FBI or whoever. I don't see him as the victim in this case.  Maybe the target,

but not the -- he wasn't the -- the victim, is how I look at it.

THE COURT:  All right.  Thank you.  Please have a seat, Juror 102.

Let's hear from any other jurors who answered that question.  And I just need to get back on track here a bit. Anybody else here who has ever been employed by any entity or organization owned, operated, or controlled by President Trump or his businesses?

Okay.  I see no additional hands.

All right.  Okay.  Now, as you heard yesterday, Mr. Routh is charged in this case with possessing a firearm and ammunition as a convicted felon.  I'm going to instruct you, if you're chosen to serve as a juror in this case, that it is a federal crime for a person who has been previously convicted of a felony to possess a firearm or ammunition, provided that person, number 1, actually possesses the firearm on the date in question; number 2, traveled in interstate or foreign commerce -- and I don't want to be imprecise here.  I'm referring to the firearm traveling in interstate or foreign commerce.  And also, that the person who is alleged to have possessed the firearm knew that they had been convicted of a felony prior to possessing the firearm or ammunition.

Those are the parts of the alleged offense, or, as we call them, "the elements of the alleged offense."  And so I say

all of this as a lead-up to this question.

Is there anybody here who, based on their beliefs about firearms or anything else, just has a fundamental problem with the idea of convicting a previously convicted felon for knowingly possessing a firearm or ammunition?

Okay.  I see no hands.

Is there anybody here who believes that American political leaders can be or should be targets of physical violence?

No hands.

Now, along similar lines, is there anybody here who disagrees with the idea that we should keep our elected and appointed officials safe, regardless of whatever political party they may be a part of?

Now, relatedly, does anybody here disagree with the idea that we should keep our elected and appointed officials safe regardless of whatever political views or policies they may promote?

I see no hands.

Okay.  Now, I'm going to shift gears and introduce a different topic.  Again, this is related to the allegations in this case.

I mentioned when we first began that this case has generated publicity and is expected to continue to do so.  One of my obligations and one of the reasons why we perform this

thorough process of jury selection is to make sure that none of that publicity that any of you might have encountered would have any impact at all on your ability to be fair and impartial in this case.

So, with that background, let me ask:  Just by a show of hands, who in this room has heard or read something about this case on the news or on social media or through any other means?  So please go ahead and raise your paddles.

Okay.  It does seem like most everybody, with a few exceptions, has heard something about this case.

Now, let me just -- keep your paddles up momentarily. Let me just randomly select a few of you to call on.  Let's see.  Okay.  Let's start with Juror 97.

Juror 97, please stand up.

What -- what did you hear or read about this case?

A PROSPECTIVE JUROR:  When -- when the event happened, I saw it on the news.  And then recently when it was coming to trial, I saw the date it was going to be.  But other than that, not much.

THE COURT:  Okay.  All right.  Thank you, Juror 97.

Let me hear from Juror 93.

A PROSPECTIVE JUROR:  Good morning.  I heard about it when it was happening, and so I watched some live news coverage at the time.  And I watch the morning news locally to get the news and the weather and the -- and so sometimes they will

report on different developments that have happened, but I can't say I followed it, but it's one of those things that I remember hearing about it.

THE COURT:  Okay.  Fair enough.

Let's now hear from --

And you are which juror, ma'am?

A PROSPECTIVE JUROR:  93.

THE COURT:  93.  Thank you.

Okay.  Let's hear from 73.

A PROSPECTIVE JUROR:  Yes.  Just on the local news also.

THE COURT:  Did you follow the story closely?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  All right.

137.  Again, I'm just picking names at random.

A PROSPECTIVE JUROR:  I only saw it when they broke the news, when they went live that day.

THE COURT:  Did you subsequently follow the story?

A PROSPECTIVE JUROR:  No.  I have a honey-do list.

THE COURT:  All right.  That's good advice.  Okay.  All right.

Let's see what other -- let's try 148.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  Good morning.  What did you hear or read about the allegations in this case?

A PROSPECTIVE JUROR:  Well, when it first happened, I saw it on the news.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  And then I kind of lost track.  I really hadn't been following anything.  And when I got my jury summons, I think it was Sunday, a friend of mine said that it was this case that was coming up in this court.  And I just read the very brief article on it.

THE COURT:  Okay.  All right.  Understood.  And that was before we all met in this courtroom to talk?

A PROSPECTIVE JUROR:  Yes, yes, absolutely.

THE COURT:  Okay.  All right.  Thank you very much, Juror -- and you are 148?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  All right.  So we've seen, and I think it's obvious here, that most people have heard or read something about this case in the news.  And that's not entirely surprising, again, because cases that generate publicity are, of course, more likely to be heard or seen by folks in our community.  But what is essential, ladies and gentlemen, and what I must emphasize and really highlight, is that nothing you may have heard or read about this case or about Mr. Routh can have any role whatsoever in your consideration of this case.

And this gets back to what I said yesterday or the day before.  And, really, this is kind of the guiding light that I

want you all to think about carefully at this moment.

All that is permissible to consider in this case is the evidence that is permitted -- excuse me, introduced in the official proceedings in the courtroom and the law that I provide to the jurors.  And so when I say the word "evidence," I mean the actual witnesses who come and provide sworn testimony in that witness box or the documents or the pieces of physical evidence that are introduced and authorized by me to be introduced in the official proceedings.

Beyond those things, you cannot consider anything else you may have heard or read or maybe insinuated or heard from a friend, et cetera, et cetera.  All of that other stuff has to be completely eliminated from your consideration of this case.

So knowing that, is there anybody here who feels they would not be able to put aside those news reports or that other information provided to them and judge this case based only on the evidence and the law presented to you in the courtroom?

Okay.  I see 126 and 124.  Okay.  All right.  I see no other hands besides those two.

We're going to meet with you privately, 126 and 124, so just give me a moment to jot that down.

And this is an unrelated topic, but it is for Juror 126.

I just note, ma'am, that on your questionnaire, I think you said you work in the front desk of a dental office?

A PROSPECTIVE JUROR:  Correct.  I did mention hardship, and the reason I did not put my paddle up yesterday was because I was under the impression I would be paid throughout the entirety.  But I did bring my handbook today that says it's only two days, so that would create a hardship for my household as I am the provider for my household.

THE COURT:  Okay.  I'm glad I asked, and I'm glad you looked into that.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  So let me make a note of that.

So, to be clear, your employer is willing to cover two days but nothing past that?

A PROSPECTIVE JUROR:  Correct.

THE COURT:  Okay.  And do you have any other source of income?

A PROSPECTIVE JUROR:  I'm a CPR instructor, though I have not had many calls for that recently, but I do -- I have an LLC for CPR --

THE COURT:  Okay.

A PROSPECTIVE JUROR:  -- training.

THE COURT:  Okay.  Thank you.

A PROSPECTIVE JUROR:  But if anyone needs CPR.

THE COURT:  Well, let's hope not.  Okay.  Okay.  All right.

Okay.  That's all I have at the moment.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Okay.  Now, of course, you know, like I said in the beginning, this process can be a little intimidating, and talking to everybody in this public setting may be a little bit awkward, but again I stress the importance of selecting a fair and impartial jury in this case.

So again, is there anybody here who simply cannot put aside what he or she may have heard about this case from some other source and focus just on the evidence presented during the trial itself and the law as I present it to you?

I see no additional hands.

Okay.  Now, for those of you who may have indicated that you heard about this case, you may have also heard about a different attempt on President Trump's life last summer, specifically in Butler, Pennsylvania.  I want to emphasize to all of you, ladies and gentlemen, that this case is unequivocally not that case.

And so unless there was evidence that is admitted in this proceeding that references the events in Butler, Pennsylvania, you should not consider the incident in Butler, Pennsylvania, when you evaluate the evidence in this case, and you should not in any way think that Mr. Routh is guilty because some other person did something else to President Trump at some other point.

Is there anybody here who would not be able to put

aside whatever they might have heard regarding the incident in Butler, Pennsylvania, and again, base their decision solely on the evidence that is presented in this courtroom?

I see no hands.

Okay.  Now, this is a good segue for me to ask another question, and that concerns any evidence of a prior conviction.

As I mentioned the day we gathered, the defendant is charged with five alleged crimes in the indictment.  Again, that indictment is not evidence, it's simply an accusation, and the government bears the entire burden of proof to prove the defendant guilty beyond a reasonable doubt before he can be found guilty of any offense charged against him.

One of those alleged crimes requires, as one of its elements, the United States to prove that Mr. Routh, on September 15th, 2024, had previously been convicted in a court of a crime punishable by imprisonment for more than one year, or in shorthand, a felony.

So you will hear in this case, and it is agreed by the parties, that Mr. Routh had, as of September 15th, 2024, been previously convicted of a felony.  But I want to caution you, ladies and gentlemen, that Mr. Routh is only on trial for the specific crimes that are charged in the indictment, not any other crime in the past or any other conduct in the past.

And so you're not permitted to say to yourself, you know, he was convicted in the -- in the past of a crime, so

I'm going to conclude, based on that prior conviction, that Mr. Routh probably committed the current crimes he is charged with committing in this case.

Is there anybody here who feels that they would convict Mr. Routh simply because you believe that he committed an act in the past that is not charged in the indictment?

I see no hands.

Now, in some limited instances, the law does permit jurors to consider evidence of acts that were allegedly done by a defendant that may be similar to acts with which the defendant is currently charged.  But if that were to happen, you would be specifically instructed on the limited ways in which you can consider what we call similar acts evidence.  For example, to show that the defendant had the state of mind or intent necessary to commit a crime charged in the indictment. And I would instruct you and expect, of course, full adherence to the -- to the rules provided that you would be allowed to consider that evidence only for the limited purposes that I say you can consider that evidence for.

Is there anybody here who feels they would not be able to follow the Court's instructions on the law regarding how to consider any such similar acts evidence presented during the trial?

I see no hands.

Okay.  All right.  Okay.  Let's see.  Now, as I

mentioned, Mr. Routh is charged in Count 1 with attempting to assassinate then-presidential candidate Donald Trump.  And I will, if you're chosen to serve as a juror in this case, give you a formal legal definition of what an attempt is.  But basically, an attempt is when somebody tries to do something illegal and does so intentionally, even if they don't succeed.

So in this case, Mr. Routh is not charged, to be clear, with actually killing anyone.

Does anybody here have a problem with the idea of convicting a person for attempting to kill, even if the person didn't ultimately complete the job or accomplish the person's goal?

All right.  I see no hands.

Now, you will also hear the term "assassination," and I have used it because it is the description of Count 1, that attempted assassination offense.  Again, just an allegation, ladies and gentlemen.  And so, some of you might be familiar with it -- with the term "assassination" or the verb "assassinate."  What's important, though, for purposes of Count 1 is that assassination is synonymous with killing.  Is there anybody here who does not understand that trying to assassinate someone means trying to kill someone?

I see no hands.

All right.  Now, I also mentioned yesterday when we were doing our introductions that Mr. Routh is representing

himself after electing to exercise his constitutional right to self-representation.  Is there anybody here who thinks they would hold it against Mr. Routh that he is representing himself?

Okay.  I see no hands.

Is there anybody here who thinks they will make a decision about his guilt or innocence because he has chosen to represent himself?

I see no hands.

All right.  Now, let's continue with our discussion. Again, focused on Count 1.  As I said, Mr. Routh is charged in that count with attempted assassination of a major presidential candidate.  The term "major presidential candidate" is a legally defined term, and the parties in this case have stipulated or agreed that Donald J. Trump, in fact, was a major presidential candidate on September 15th of 2024.

So that particular issue, in other words, the status of President Trump as of September 15, 2024, is not something that is in dispute in this case.  Again, all parties agree that he was a major presidential candidate at the time.  What is, though, importantly in dispute is whether Mr. Routh intended to kill the major presidential candidate and whether Mr. Routh's intent was strongly corroborated by his taking a substantial step toward committing the crime of killing that major presidential candidate.

Why am I mentioning all of this?  Because, ladies and gentlemen, in many ways, the identity, the actual specific identity of the major presidential candidate in this case is not a controlling feature.  In fact, the same statute that is charged in Count 1 would apply to criminalize an attempted assassination of any other major presidential candidate.  And I will just name a few that you might remember in recent history. Let's say, Vice President Kamala Harris in last year's election, or former Secretary of State Hillary Clinton in 2016, or Governor Romney in 2012, or McCain, Senator McCain in 2008, and so on and so forth.  All of those folks were major presidential candidates, and the same law that is charged in Count 1 would apply to any attempted assassination against those individuals.

And so, ultimately, whether you like President Trump or you dislike him, or whether you have mixed views about him, or maybe you have no views about him, that has no relevance and no bearing on this case, and it cannot factor into your decision-making at all if you're chosen to serve as jurors.

I'm going to emphasize again this point, ladies and gentlemen.  Again, you cannot let your personal views about President Trump or his policies factor into your decision-making at all.

Is there anybody here listening to what I'm saying that is thinking to themselves, you know what, I can't follow that

instruction?  I just have such strong views about him, one way or the other, good or bad, that I don't think I can be fair and impartial.

I see no hands.

All right.  Now, let me flip it around.  Let's say there is somebody in the room here who is very much in favor of the President or his policies.  Is anybody here in that vein, thinking to themselves, you know, I really like President Trump and what he is doing, and so I just don't think I can be fair and impartial if chosen to serve in this case?

I see no hands.

And then on the flip side, is there anybody here who is of a different view and thinks the President is not doing well or doing what you think he should be doing, and because of those feelings, you just don't think you can be a fair and impartial juror to both sides in this case?

No hands.

All right.  Now, of course, these feelings, they can go one way or the other, and I think I have made that clear.  You can maybe like President Trump a lot, and then think, oh, I will give an edge to the prosecution because of that.  Or maybe you dislike him a lot, and you think you might give an edge to the defense because of your dislike.  Whichever way it goes, ladies and gentlemen, relying on your personal feelings about the President to evaluate or think about this case is not

allowed.  And why?  Again, I go back to that guiding light I mentioned.  All that matters is the evidence presented in the case, and that's in the official proceedings from witnesses and exhibits and the law as I present it to you, not your personal views about any elected officials.

So wrapping up this segment, is there anybody here, for whatever reason, who does not think they can consider this case objectively and fairly to both sides?

I see no hands.

Now, let me address the concepts of sympathy and prejudice for a moment.  And this, I think, follows from our conversation just a moment ago.  Sometimes we might feel sorry for people in difficult situations and sometimes, unfortunately, we might also feel prejudice.  But neither sympathy nor prejudice can factor into your deliberations or consideration of the case.  You, again, as I said the other day, are judges of the facts if chosen to serve.  And that's a really profound obligation.  So if you let your emotions cloud your decision-making, you would not be fulfilling your oath as jurors in this case.

Is there anybody here who feels they could not put their personal feelings aside as jurors?

I see no hands.

All right.  All right.  Now, does anybody here who hasn't already stood up have any other reason why you think you

could not give this case your undivided attention and render an impartial verdict based only on the evidence presented to you and the law as I present it?

I see no hands.

All right.  Now, I'm going to ask a few questions of individual jurors.  Again, the goal here is to assemble a fair and impartial jury, ladies and gentlemen.  I'm going to ask broad questions.  And then, same practice of holding up your paddle, please.

Is there anybody here who has been the victim of a crime?  And I know the questionnaire mentioned this, and I know the subject is hard to bring up and to talk about.  So, with that acknowledgement, I still am going to ask all of you to be candid about this question.  And please keep your paddles up, and let me know who in this room has been the victim of a crime.

One moment.  Okay.  We have 65, 62, 70, 88, 103, 105, 133, 135, 142, 148, and 147.

Yes.  Thank you, 142.  Okay.

All right.  So let's start with Juror 62.  Oh, actually we will do this.  Before I get into the details of any of these particular experiences as victims, is there anybody who answered yes to that question who thinks, you know, having gone through that experience as a victim of a crime, and whatever collateral consequences that might have brought, I just don't

think I'm suitable to be a juror in a criminal case?

Now, is there anybody in that same category who has experienced a crime of any sort who is thinking to themselves, I don't think I could be a fair and impartial juror in this case?

Okay.  I see no hands to either question.

All right.  Sometimes those experiences as victims can come back in ways that you might not expect, ladies and gentlemen.  Does anybody here who answered yes to this question have any qualms or doubts about their ability to be fair and impartial to both sides if chosen to serve?

No hands.

Is there anybody here who answered yes to this question that wishes to share more information about that experience in a more private context?

I see no hands.  Okay.

Now let me ask, is there anybody here who has specialized knowledge regarding firearms or specialized training?

Okay.  So let's cover this topic.  We have 137, 138, 139, 151, and 161.  And 66?

A PROSPECTIVE JUROR:  (Nods head.)

THE COURT:  Okay.  All right.  So let's start with 66.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  Thank you, sir.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  What do you do for work?

A PROSPECTIVE JUROR:  I work for FPL, the Flor- -- the power company.

THE COURT:  And what do you do for the power company?

A PROSPECTIVE JUROR:  I'm a foreman.

THE COURT:  Foreman.

A PROSPECTIVE JUROR:  There 30 years.

THE COURT:  30 years?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  So just briefly, what's the nature of your specialized knowledge or training regarding firearms?

A PROSPECTIVE JUROR:  I don't know if this counts, but like a concealed weapon holder.  Is that -- is that what you are looking for?  I'm not sure.  I just brought that up.

THE COURT:  No.  That's fair -- that's fair to mention. And I think it's always better to err on the side of caution with these questions.  So if you're on the line and you're not sure whether you should raise your paddle, please, of course, do so.

Okay.  So have you a concealed weapons permit.  Other than that, do you have any other special training or experience?

A PROSPECTIVE JUROR:  No.

THE COURT:  I have to be able to hear you.

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  All right.  Thank you.  That's all, Juror 66.

137.

A PROSPECTIVE JUROR:  I have a CCL license.  I was raised in the military.  The base that we were at or the fort that my father was at is a training ground for SEALs, rangers, and they have an extensive firing range.  In the Air -- when I was in the Air Force, I was trained to be the speed bump.  I was stationed in North -- or South Korea at the north end as a bomb loader in the Air Force.  And we were the ones that you left behind if the base is overrun.  So I was trained in -- with a .45 and a shotgun.

THE COURT:  Thank you for your service, sir.

So you have mentioned to me that you -- going back to your childhood, and then we will get to your military experience.  Where did you grow up?

A PROSPECTIVE JUROR:  Sierra Vista, Arizona. Fort Huachuca is the Army post.

THE COURT:  Can you spell the Army post name again?

A PROSPECTIVE JUROR:  Not really.

THE COURT:  Okay.  Well, I won't -- it's not a spelling bee.

A PROSPECTIVE JUROR:  H-A-U-C-H-U-A [sic].

THE COURT:  Okay.  Thank you.

All right.  So growing up there, you said you were kind of in -- in the vicinity or -- or close to firearms training?

A PROSPECTIVE JUROR:  My father took us all the time.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I have shot a .50 caliber off of a Humvee when I was -- I think I was 12.

THE COURT:  Okay.  And then did you carry that training and knowledge through your experience in the military?

A PROSPECTIVE JUROR:  No.  I loaded bombs in the military.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I loaded them on jets and on bombers.  I loaded conventional weapons and nuclear weapons.

THE COURT:  All right.  So with all of that in your background, do you think that would in any way interfere with your ability to be a fair and impartial juror in this case?

A PROSPECTIVE JUROR:  Not at all.

THE COURT:  Okay.  All right.  Thank you, sir.  You may have a seat.

138.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  I have taken quite a few classes from X Delta Force, and I listed on my survey, competitive shooting is my hobby.

THE COURT:  Is that like skeet shooting or what's the -- the layman's term for that?

A PROSPECTIVE JUROR:  No.  The initials are IDPA; that's International Defensive Pistol Association.

THE COURT:  Okay.  And so you were in the military also?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  No, ma'am.  Okay.  All right.

Anything about your interest in professional shooting or in the classes that you have taken over time that you think would influence you in any way, shape, or form in your evaluation of the evidence in this case?

A PROSPECTIVE JUROR:  No, Your Honor.

THE COURT:  Okay.  All right.  Thank you, sir.  Please have a seat.

139.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Good morning.

A PROSPECTIVE JUROR:  I have Army experience, five years, and I currently work for the nuclear plant, security. We do training throughout the year.  Actually, I was supposed to go tomorrow; I will see how it goes here.  But, you know, just training all the time.

THE COURT:  Okay.  And that -- that training, that's for your current job at the nuclear plant?

A PROSPECTIVE JUROR:  Yes, that's correct.

THE COURT:  Okay.  So in the course of your Army experience or in your current position, do you handle or need to be equipped with firearms?

A PROSPECTIVE JUROR:  Yes.  Every day.

THE COURT:  Okay.  Do you take any, like, ongoing classes?  I think you're potentially referencing that in the training, but do you take ongoing classes and instruction on use of firearms?

A PROSPECTIVE JUROR:  Yes.  Throughout the year.  We have our own range.

THE COURT:  Okay.  Is there anything about your specific experience and your continuing learning that you think would influence your ability to be a fair and impartial juror in this case?

A PROSPECTIVE JUROR:  No, it doesn't.

THE COURT:  Okay.  Thank you, Juror 139.  You may have a seat.

151.

A PROSPECTIVE JUROR:  Good morning again.

THE COURT:  Good morning again.

A PROSPECTIVE JUROR:  Again, 25 years in law enforcement.  So...

THE COURT:  I guess it speaks for itself.

A PROSPECTIVE JUROR:  I would assume, yes.

THE COURT: Okay. Same question to you. Is there anything about that prior law enforcement experience and, of course, the experience that you have handling firearms and learning about them that would influence your ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR: Not at all.

THE COURT: Would you still be willing to consider just the evidence that's presented in the courtroom, nothing else?

A PROSPECTIVE JUROR: Absolutely.

THE COURT: All right. Thank you, sir.

And 161.

A PROSPECTIVE JUROR: I currently have my CCW. I also had a G license in security about ten years ago. And I am in competitive shooting, as well, today.

THE COURT: Okay. How long, roughly, have you held these licenses?

A PROSPECTIVE JUROR: The concealed, I have had for almost 12 years. And the G license is long expired, probably 10 years ago.

THE COURT: Okay. But you enjoy as a hobby the competitive shooting?

A PROSPECTIVE JUROR: Correct.

THE COURT: Okay. Anything about any of that that you've -- that you've shared with us that would impact your ability to be fair and impartial?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  And same question to you.  Do you think you would be able to focus and consider only the evidence presented in the courtroom and the law?

A PROSPECTIVE JUROR:  Of course.

THE COURT:  All right.  Thank you, sir.  Please have a seat.

Anybody else who wishes to describe any specialized knowledge or training in firearms?

Okay.  Juror 68.  All right.  Let me get to where I need to be.

So I think you mentioned earlier that you were in the Army; is that right?

A PROSPECTIVE JUROR:  Yeah.  I didn't realize -- you know, my basic knowledge wasn't everyone's basic knowledge.  So...

THE COURT:  That's -- no, that's fair.  Sometimes we all, you know, need to be reminded that, of course, there is all sorts of experiences out there.

So what about your experience?  Tell me a little bit about, you know, the extent of your knowledge regarding firearms.

A PROSPECTIVE JUROR:  Specialized training in M4s, M16s.  Automatic assault rifles.  Handguns.  I have my concealed carry license as well.  So anything like that.

THE COURT:  Okay.  Same question to you, Juror 68.  Is there anything about your knowledge and the training and the licenses that you possess that would in any way influence your ability to be a fair and impartial juror?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  And do you think you, too, could set all that aside and just focus on the evidence that's presented in the courtroom and the law as I present it?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  Thank you.  Please have a seat.

Okay.  143.

A PROSPECTIVE JUROR:  Yes.  So previous law enforcement and specialized training in police academy, and then also in the sheriff's office as well.

THE COURT:  Okay.  Do you have any doubt, sir, about your ability to be fair and impartial, given your prior training and experience using or possessing firearms?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Thank you.  You may have a seat.

I see no additional hands.

All right.  Just hang tight.  I'm going to just make sure I haven't overlooked anything.  And we are due for a break soon, so bear with me just one moment.

All right.  I'm going to call out the name -- the names of a few juror numbers who I'm going to ask that you stay in

the courtroom for brief additional questioning.  Everybody, please stay in your seats, though, until I release you all to that jury assembly room.  Again, this is just going to be for a break, and we will call you back as soon as possible.

This would be Juror 65, Juror 78, Juror 87, Juror 111, Juror 124, Juror 126, Juror 134, Juror 142, Juror 158, and that -- that is all.

So if I have called your name, please stay in your seats.  Everybody else, you will be instructed to go to the jury assembly --

Is there a question, ma'am?

A PROSPECTIVE JUROR:  Yes, I just --

THE COURT:  One moment.  We need to get you a microphone, and I need to know what your juror number is.

This is Juror 100.

A PROSPECTIVE JUROR:  Hi, Your Honor.

THE COURT:  Hello.

A PROSPECTIVE JUROR:  I just wanted to mention, yesterday I didn't have a hardship, but on my way home from this yesterday, my car broke down.  And I got it to the dealership, but I have no idea when I'm going to get it back.

THE COURT:  Okay.  And is that --

A PROSPECTIVE JUROR:  I think you mentioned that.

THE COURT:  Is that your only vehicle?

A PROSPECTIVE JUROR:  Yes, it is.

THE COURT:  Okay.  So obviously jury service would require you to be present and able to get to the courthouse each day.

At this point, are you concerned that you'll have real difficulties accomplishing that?

A PROSPECTIVE JUROR:  Well, in the past when I have had problems, it's taken weeks to get parts in, so I really don't know.  They're assessing it sometime today.  But it was kind of late yesterday, so they weren't able to look at it.

THE COURT:  Okay. All right.  Thank you.  Thank you for letting us know.

And so right now, the car is in the shop, and you don't have an ETA on when it will be fixed?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Is there anybody in your circle of friends or family that could take on the job of driving you to and from court each day for the next few weeks if chosen to serve?

A PROSPECTIVE JUROR:  My husband has a car, but he travels for work, so I can't guarantee anything.

THE COURT:  Understood.  Okay.  All right.  Thank you.

Okay.  And on that subject, is there anybody here who has a newly developed special hardship that has arisen in the last, you know, day or so since we last had this conversation?  Again, I'm not referring to just general inconvenience that, of

course, sometimes is naturally attendant to jury service, but specific things like illnesses that have arisen or specific concerns that I should be aware of?

Okay.  I see no additional hands.

All right.  Excuse me.  With that, please all rise.  We will rise as well.  Leave your paddles where they are.  And before you go, I will again sound -- I'm sorry if I sound like a broken record, but please listen carefully.

You cannot discuss this case in any way.  That means even having little tiny comments with your prospective jurors. There can't be any communication about this case with anyone whatsoever.  And that's a hard-and-fast rule.

The same rule applies in terms of no investigation, no communication, no posting about this case on any source or website or platform, and obviously no research or investigation about this case.  It's important, ladies and gentlemen, and imperative that we again focus just on the evidence presented in the courtroom and the law, nothing else.

So with those admonitions, please do return to the second floor, and we will call you back as soon as possible. But the folks that I have listed out, please stay in your seats.

All right.  Thank you.  Everybody else may now exit.

All rise for the jurors.

(Some of the venire exited the courtroom.)

THE COURT:  All right.  I'm just going to again jot down your numbers so I can stay fully organized here, ladies and gentlemen.  If you could please raise your paddles.

We have with us back, for additional inquiry, 65, 78, 87, 111, 124, 126, 134, 142, and 158.

Okay.  So what I'm going to ask you all to do now is to step right outside the courtroom, and keep your order from lowest number to highest number.  We will call you back in one by one as soon as we can.  I'm just going to address a few matters momentarily with the parties, and then we will call you in individually.

So, with that, let's rise for this set of jurors.  Please don't stray past right outside of the courtroom.

(The remaining venire exited the courtroom.)

THE COURT:  All right.  You may all have a seat.

You have the list of folks I called back.  Are there any other individuals from either side that are not in this segment that you think merit or warrant specific additional inquiry?  I will ask first the government.

MR. BROWNE:   Just one moment, Your Honor.

Your Honor, 65 is already on the list, and I don't know precisely which areas the Court intends to ask about.  But we would just ask that -- I know the Court already asked about the prior.  Would it also be possible to ask Prospective Juror 65 if she was able to reach a verdict in the two jury trials where

she previously served as a juror?

THE COURT:  Yes.  That's a permissible question.  I will ask that.

Okay.  Anything else for Juror 65?  Anything -- do you think any more inquiry is necessary regarding the prior conviction?

MR. BROWNE:  I don't believe so given the age, Your Honor.

THE COURT:  Okay.  All right.  Any other jurors that you think merit individual questioning outside of the ones I have already called?

MR. BROWNE:  One moment.

Your Honor, Juror Number 68 had indicated in the questionnaire a staunch opposition to the death penalty.  That hasn't come up in voir dire yet.  We would just ask that the Court question that juror, establish, if the Court deems it appropriate, that this is not a death penalty case and that if her views on capital punishment would inform her ability to be fair and impartial in this case.  And perhaps if she would be -- if she remembered the Court's admonition about not considering punishment, that might be one suggested way to do it, Your Honor.

THE COURT:  Okay.  Any others?

MR. BROWNE:  Juror 70, who indicated that she was a victim of a bank robbery.  We would just ask if the Court could

specifically inquire whether, as a result of that incident, she was required to testify.

THE COURT:  Why is that important?

MR. BROWNE:  Well, I think there was a general question about whether or not their experience as a victim would impact their ability to be fair and impartial.  I just want to know if that's something that she would take into consideration if she was to observe a witness, whether her own experiences as a witness would potentially impact her ability to consider that testimony.

THE COURT:  Okay.  Any others?  I would like to wrap this up soon.

MR. BROWNE:  Nothing else, Your Honor.  Oh, I'm sorry. 87.  I apologize.

THE COURT:  87, I already have on the list.

MR. BROWNE:  I understand.  I just don't know if the Court's intention was to follow up on the situation with the father's conduct.

THE COURT:  I have a note on question 19; is that it?

MR. BROWNE:  Let me look.  Yes, Your Honor.  That's the subject matter we were going to ask about follow-up.

THE COURT:  Okay.  That's on my agenda.

MR. BROWNE:  Thank you, Your Honor.  That's it.

THE COURT:  Okay.

Mr. Routh, any other folks from this batch -- this, of

course, combines Groups 2 and 3 with ten leftovers who are waiting -- that you think need to be asked specific questions?

MR. ROUTH:  Yes.  I have three.

And I wanted to mention, also, just so we can note for appeal that, like, 90 to 95 percent of the people said that they had seen media.  And the people that you spoke with said that they had seen the video of my arrest.  So I just wanted to, for the record, just to note that fact, that the majority of the people had seen the video of me being arrested and -- and had read media.  So, you know...

THE COURT:  Right.  And I think the record is clear that many did and most did, in fact, raise their hands, and that was in the transcript.  So you will have that there for use in any way you think is legally permissible, sir.

Okay.  What are the extra numbers?

MR. ROUTH:  Number 73, he was the one with friends in Secret Service.  So just -- just wanting to see if he spoke to any of his Secret Service friends in relationship to this situation.  So...

THE COURT:  Okay.  Fair enough.  What others?

MR. ROUTH:  134 just had the family vacation that we were going to follow up on, I believe.

THE COURT:  Yes, that's on my list.

MR. ROUTH:  Yep.  And 158 had the domestic violence and emotional abuse.  So just didn't know if you had that on -- on

your list also.

THE COURT:  Yes.  And I'm doing my best here to remember all of the issues that people have raised before so that I can include all those concerns.  And, yes, that's for question 21, Juror 158.

MR. ROUTH:  -58.  Yeah, you got it.  That's it.

THE COURT:  Okay.

MR. ROUTH:  Thank you so much.

THE COURT:  All right.  Then, Mr. Condon, if you could, while we're doing this, call from downstairs up these four additional folks:  68, 70, 73, and 134.

COURTROOM DEPUTY:  134 was under this panel.

THE COURT:  That's true.  See, you're ahead of the game.  So it's just three more:  68, 70, and 73.

COURTROOM DEPUTY:  Yes, Judge.

THE COURT:  Okay.  But we will now start with 65.

COURTROOM DEPUTY:  Very well.

COURT SECURITY OFFICER:  Your Honor, would you like that juror to be at the lectern or the mic?

(Prospective juror entered the courtroom.)

THE COURT:  I think how we did it yesterday is fine, sir.  Thank you.

COURT SECURITY OFFICER:  All right.

THE COURT:  All right.  Good morning, Juror 65.  If you want to just come over here.  Either you can remain standing

there or have a seat wherever you are more comfortable.  I had a chance to talk with you before, so this will be brief.  Let's see.  Let me just make reference to the questionnaire.  One moment.  Have you ever served on a jury before?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you remember, roughly, when that was?

A PROSPECTIVE JUROR:  I was, like, 19.  So, like 43 years ago.

THE COURT:  Okay.  And was that one prior jury service or more than one?

A PROSPECTIVE JUROR:  It might have been two.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I don't -- it was so long.  I remember at 19.  But I thought I had another one, but I'm not positive.

THE COURT:  Okay.  Now, for the one you remember, do you know if you were the foreperson?

A PROSPECTIVE JUROR:  Was I a foreperson?  No.

THE COURT:  Okay.  And for that one, do you remember whether the jury was able to reach a verdict?  Don't tell me what the verdict was.  I just want to know, do you remember if the jury reached --

A PROSPECTIVE JUROR:  For the first thing that I wrote down?  Is that what you're asking about?

THE COURT:  Well, you have told me that you recall at

least one --

A PROSPECTIVE JUROR:  Right.

THE COURT:  -- prior jury service.

A PROSPECTIVE JUROR:  Okay.  The one that I'm quite sure about -- there was -- actually, I think I was -- the first time I did jury duty service is -- it was more than one case. The first case that I wrote down, yeah, we -- we came to --

THE COURT:  You came to a verdict?

A PROSPECTIVE JUROR:  Yes.  Yeah.

THE COURT:  Okay.  Did you -- do you have any recollection of being on a jury that did not reach a verdict?

A PROSPECTIVE JUROR:  I think there was -- yeah.  The same time, I think there was also one that we thought the person was --

THE COURT:  I don't -- like I said --

A PROSPECTIVE JUROR:  Oh, I'm sorry.

THE COURT:  -- I don't need to know the details.

A PROSPECTIVE JUROR:  Okay.

THE COURT:  I just want to know, like, up or down, do you think you reached a verdict?

A PROSPECTIVE JUROR:  Yeah.  We -- we couldn't make -- can you ask me the question again.  I'm sorry.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  I just forgot really quickly what you asked me.

THE COURT:  That's okay.  That's okay.  There have been a lot of questions.  Do you have any recollection of being on a jury that did not reach a verdict?

A PROSPECTIVE JUROR:  The second one, I -- I think we did reach a verdict.

THE COURT:  Okay.  All right.  That is all I have for now.  So thank you.  Please return to the jury selection room, and continue to follow the Court's instructions.  Thank you.

(Prospective juror exited the courtroom.)

THE COURT:  All right.  Juror 78, please.

(Prospective juror entered the courtroom.)

THE COURT:  Okay.  Good morning, sir.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  You are Juror 78?

A PROSPECTIVE JUROR:  Correct.

THE COURT:  Okay.  I just had a brief question for you, sir.  In your questionnaire, to question 15, you answered that you have some hearing loss.  And I just wanted to cover that a little bit.  Obviously, we're going to have a lot of witnesses who come testify, and lawyers talking, and I'll be talking.  We will all be equipped with microphones, and I try to make a big deal about making sure everybody has a microphone at all times.  Have you been able to hear everything that I have said during this entire jury selection process?

A PROSPECTIVE JUROR:  Yes, I have.

THE COURT:  Have you been able to hear what your fellow prospective jurors have said?

A PROSPECTIVE JUROR:  A few of them, I had a little bit of a hard time.  Some of the ones that when they were in the back and they held the microphone (indicating) a little bit lower, you know -- like, you know, some of the words were garbled.

THE COURT:  Okay.  But when those folks were asked to speak up with the microphone, were you able, then, to hear what they were saying?

A PROSPECTIVE JUROR:  Yes, yes.

THE COURT:  Okay.  So, of course, you see here the setup of this courtroom.  There's a witness box here and there's a microphone.  Do you think if you were chosen to serve as a juror, you would have any trouble hearing the witnesses and the lawyers in this case?

A PROSPECTIVE JUROR:  No, I don't think so.

THE COURT:  Okay.  And let's say there were a moment where you couldn't hear something properly because the audio was mumbled for whatever reason, would you feel comfortable raising your hand and letting me know, "Judge, I can't hear that well," so I could make corrective measures?

A PROSPECTIVE JUROR:  Sure.

THE COURT:  Okay.  Do you have any other health issues that you think would pose a hardship for you to serve as a

juror?

A PROSPECTIVE JUROR:  No, not really, no, besides the other senior maladies.  You know, I have a little arthritis and stuff, but I'm -- I'm otherwise fairly healthy.

THE COURT:  Okay.  So if -- you feel like you could perform your functions as a juror?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Anything in your background or experiences that would impede your ability to be fair and impartial?

A PROSPECTIVE JUROR:  No.  No, I don't think so.

THE COURT:  Okay.

A PROSPECTIVE JUROR:  You know, I -- I -- you know, I have been on both sides of the law enforcement thing.  Like I said, you know, I grew up around it with my uncles and my father and everything else.  And, you know, I know that, you know, I'm not either pro or con.  I have had some experiences on the negative side with law enforcement.  So I know they're not all saints, and there is bad actors also.

THE COURT:  Very well.  So do you feel like you could be objective to both sides and fair?

A PROSPECTIVE JUROR:  Oh, absolutely.

THE COURT:  Okay.  Well that's all.  Thank you, sir.  You can go to the second floor now and await further instructions.  Please leave your paddle over here.  And, again, continue to follow my instructions.

A PROSPECTIVE JUROR:  Thank you.

THE COURT:  All right.  Juror 87, please.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  Hello.  This is Juror 87.

Thank you for your patience, ma'am.  I wanted to address a matter that you raised in the questionnaire.  This concerned whether anybody in your immediate family had ever brought or participated in any legal proceedings of either a civil or criminal nature, and whether you were a defendant, witness, victim of a crime or in any other capacity in connection with those proceedings.

You mentioned a difficult prior situation regarding your father being accused of sexual abuse, with those charges dropped.  Is there anything about that prior experience, ma'am, that would affect your ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No.

THE COURT:  And were you the victim in that incident?

A PROSPECTIVE JUROR:  Nothing happened.  So I don't consider myself a victim.  But it was me and my siblings that he was accused of, yes.

THE COURT:  Okay.  And did you during that situation ever have to go to court in reference to that?

A PROSPECTIVE JUROR:  I do not think so.  I was very

young.  But from the information I have, like, growing up, from my parents, there was never any court hearing or anything.

THE COURT:  Okay.  So then just zooming out a bit, is there anything about that experience, either in the court system or not, or how it was resolved or anything about it that leaves any sort of kind of maybe bad taste in your mouth or lingering feeling of injustice in either direction that you think would somehow influence your evaluation of this case if chosen to serve?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Anything else in your background or experiences that would interfere with your ability to be a fair juror?

A PROSPECTIVE JUROR:  I don't think so, no.

THE COURT:  Okay.  Thank you.  That's all I have, Juror 87.

Let's hear now from Juror 111.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  All right.  Good morning.  Thank you for your patience.

This is Juror 111.  Okay.  Just one moment.

What do you do for work?

A PROSPECTIVE JUROR:  I'm an elementary school teacher.

THE COURT:  You did tell us that, yes.  How long have

you been teaching?

A PROSPECTIVE JUROR:  This is my 31st year.

THE COURT:  And what ages?  I think elementary school, you said?

A PROSPECTIVE JUROR:  Yes, ma'am.  I taught special ed for ten years, second grade for 20, and I'm in third grade for the first time.

THE COURT:  I think you mentioned to us a while ago that you have a trip, right, planned on October 1st?

A PROSPECTIVE JUROR:  Yes, ma'am.

THE COURT:  Okay.  And where is that to?

A PROSPECTIVE JUROR:  Maine.

THE COURT:  Okay.  Just to be clear, other than that trip, do you have any other hardships to report?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  Do you have any reason to believe you would not be able to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  Thank you very much.  That's all for Juror 111.

Now we will have 124, please.

And, Mr. Condon, if you could be careful with that door.  It tends to make a lot of noise.

COURTROOM DEPUTY:  Yes.

THE COURT:  Thank you.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  All right.  Thank you, Juror 124.  What do you do for work?

A PROSPECTIVE JUROR:  I am retired now.  I used to do insurance billing and collections.

THE COURT:  Thank you.  Yes, I just want to make sure I can hear you well.  And I think you told us that.

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  You have a sister who works as an administrative assistant in corrections?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Got it.  And I think you told us also that you have a flight that you have planned for October 1st?

A PROSPECTIVE JUROR:  Yes, that's correct.

THE COURT:  Okay.  Other than that trip, do you have any other scheduling conflicts or hardships?

A PROSPECTIVE JUROR:  No, not that I can try to rearrange.

THE COURT:  Understood.  Okay.

Now, you also mentioned to us that you have a relative who was arrested on a drug offense.  She lives in another state.  Is there anything about her arrest or any of the

consequences associated with that that would affect your ability to be fair and impartial?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. Now, I see here, too, that you served on a jury before, twice; is that right?

A PROSPECTIVE JUROR: Yes.

THE COURT: And in those instances -- well, I guess one was a regular jury like this one, and the other one was a grand jury?

A PROSPECTIVE JUROR: Correct.

THE COURT: So on the -- on the regular jury, I will describe it that way, do you recall whether the jury reached a verdict?

A PROSPECTIVE JUROR: It's been so long ago, I really don't remember.

THE COURT: Okay. Do you remember if you were the foreperson, or the person who came into the courtroom and spoke for the jury?

A PROSPECTIVE JUROR: No.

THE COURT: Okay. So you weren't the --

A PROSPECTIVE JUROR: No, I was not.

THE COURT: Okay. All right. All right. Is there anything in your background or experiences, ma'am, that you think would interfere with your ability to be a fair and impartial juror?

A PROSPECTIVE JUROR: No.

THE COURT: You hesitated just a little bit, and so I want to probe there. Do you have any hesitation at all about your ability, like I have said a number of times, to just focus on the evidence presented in the courtroom and the law, nothing else, regardless of whatever experience or information you may have received at a prior point?

A PROSPECTIVE JUROR: Yeah, probably.

THE COURT: And what do you mean by that?

A PROSPECTIVE JUROR: Well, prior to even coming here, I figured it was going to be about this case because I had prior knowledge from the media. I did search up some stuff, too, and I also remember it from last year.

THE COURT: Fair enough. And so having absorbed that information, do you -- do you hesitate in your ability to be a fair and impartial juror for this particular case?

A PROSPECTIVE JUROR: Yes, I do.

THE COURT: Okay. That's all. Thank you, ma'am. You may return to the jury assembly room and await further instructions. Thank you.

A PROSPECTIVE JUROR: Thank you.

(Prospective juror exited the courtroom.)

THE COURT: Okay. We're now at Juror 126.

(Prospective juror entered the courtroom.)

THE COURT: Good morning, ma'am.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  All right.  I know you have talked to us about the hardship issues with your --

A PROSPECTIVE JUROR:  Yes.

THE COURT:  -- with your work.  I think you also raised your hand when I asked whether anybody would have any difficulty setting aside any potential media coverage they had encountered.

In light of those two issues, do you think you would be a suitable jury -- juror for this case?

A PROSPECTIVE JUROR:  I think it would be a disservice for the defendant if I were a juror on this case.

THE COURT:  All right.  Then thank you very much.  You may return to the jury selection room for further instructions, but please, of course, stay in the courthouse.  Thank you.

All right.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  All right.  We are now at 134.

COURTROOM DEPUTY:  Yes, Judge.

(Prospective juror entered the courtroom.)

THE COURT:  All right.  Good morning, sir.

A PROSPECTIVE JUROR:  Good morning, Your Honor.

THE COURT:  Okay.  I just wanted to touch upon something brief, and that's a family vacation that you had reported on your questionnaire, about a family vacation in

September, or September 26th.

Does that present a hardship to you, sir?

A PROSPECTIVE JUROR:  No, it doesn't.  Listen, I mean, I could reschedule that.  It's just me and my wife going to get away for a few days.  But I can reschedule anytime, and we're just going to go -- I get five weeks' a year vacation, so just trying to use some time up.  I had it planned, but it's nothing I can't reschedule.

THE COURT:  Okay.  All right.  So having to reschedule that, do you think it would interfere with your focus or maybe make you feel a little bit annoyed, perhaps, that you couldn't go on your trip?

A PROSPECTIVE JUROR:  No, no.  We do those all -- we do them all the time, so -- it was planned, but, I mean, I can -- I'm not going to lose any money or lose anything over it, so it's not a big deal.

THE COURT:  Okay.  And what do you do for work?

A PROSPECTIVE JUROR:  I'm a director of supply planning for a large commercial printer.  Oversee 34 sites.  I have got six planners that work for me.  We kind of -- I kind of oversee rough-cut capacity planning for wine and spirits, beverage, you know, liquor labels.  Pretty much everything we print in the grocery store -- we print everything.

THE COURT:  Okay.  All right.  Now, we have gone through a lot of questions, sir.  I'm just going to wrap up

here.  Is there anything in your background or experiences that would affect your ability to be fair and impartial if chosen to serve?

A PROSPECTIVE JUROR:  No.  Actually, what I do every day is kind of what you guys are asking for, I mean.  I mean, literally, I take emotion out of everything we do.  And we look at metrics and data and make decisions every day on what we're going to do.  So...

THE COURT:  And do you have any doubt about my instructions, which are, all that you can consider, if chosen to serve, is the evidence presented in this courtroom alone and the instructions on the law?

A PROSPECTIVE JUROR:  No, I have no problem with that at all, Your Honor.

THE COURT:  Okay.  Very well.  Thank you, Juror 134. Please return to the jury assembly room, and we will give you further instructions.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  142, please.

All right.  This is Juror 142.  Hello again.

A PROSPECTIVE JUROR:  Hi.  Hi.

THE COURT:  One moment.  Okay.  So just wanted to touch upon a couple of items in your questionnaire, ma'am.

This is Juror 142.

I noted that you indicated yes to the hardship question because you work full-time, and then you said that you would work after jury duty as an accommodation to alleviate that hardship.

Is there anything about that arrangement, the having to work after hours, that you think would take away from your duty as a juror?

A PROSPECTIVE JUROR:  I don't think so, no.  I spoke with both general and deputy counsel yesterday, and although they're not happy that I would be gone for that period of time, they think that I can, you know, not have to put full-time into, when I leave here, work all evening.  So just do some cleanup things during the day.  So I should be okay.

THE COURT:  Okay.  And do you think that they might hold it against you, hypothetically, that you're not there because you're in jury service?

A PROSPECTIVE JUROR:  No, not at all.

THE COURT:  Okay.  All right.  All right.  Now, on a more difficult subject -- this is answer 21 to your questionnaire -- you referenced a difficult incident regarding a violent crime against you 45 years ago.

Without getting into all of the details of that, I did want to make sure, ma'am, that none of that would -- would impact your consideration of this case.  But let me -- let me just hear from you in your own words, having gone through that

experience, does that difficult moment -- do you think it will come back and maybe impact or influence the way you see courtrooms or the criminal justice system or anything that could even indirectly touch upon this case?

A PROSPECTIVE JUROR:  No, I don't.

THE COURT:  Do you feel confident that you could fully set that traumatic experience aside and, of course, not hold it against anybody in this room, focusing just on the evidence presented?

A PROSPECTIVE JUROR:  I do feel so.

THE COURT:  Is there anything in your background or experiences that would impact or negatively affect your ability to be a fair and impartial juror?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  All right.  And do you have any hesitation about the Court's requirement that you follow all instructions?

A PROSPECTIVE JUROR:  I do not.

THE COURT:  Okay.  Then very well.  Please return to the jury selection room for further instructions, Juror 142.

A PROSPECTIVE JUROR:  Thank you.

(Prospective juror exited the courtroom.)

THE COURT:  158, please.

(Prospective juror entered the courtroom.)

THE COURT:  Good morning, sir.

A PROSPECTIVE JUROR:  Good morning.

THE COURT:  All right.  So this is Juror 158.  Let's see here.  You indicated yes to question 21, have you or a close friend or family member ever been a victim of any violent crime.  This -- this came up in today's discussion, and I just wanted to dig a little deeper.

Is there anything about the incident involving a close friend, I think five years ago, you said, regarding domestic violence, that would impact your ability to be fair and impartial in this case?

A PROSPECTIVE JUROR:  No, not right now.  They got out of it, and everything is smooth now.  So I think I would have a, you know, fair mind on everything.

THE COURT:  Okay.  Did you ever have a role to play in that case or in that situation?

A PROSPECTIVE JUROR:  No.  No.  Other than just talking to me.  You know, I didn't go to court or anything with that or any part of the law enforcement side of that.

THE COURT:  Okay.  So are you certain that none of that would, you know, indirectly potentially creep into your decision-making or thinking about this case?

A PROSPECTIVE JUROR:  Nope.  I would be clear-minded.

THE COURT:  Okay.  Anything in your background or experiences, sir, that would affect your ability to be completely fair, objective, and impartial to both sides?

A PROSPECTIVE JUROR:  Nope.

THE COURT:  Okay.  Thank you, sir.  You may return to the jury selection room for further instructions.

A PROSPECTIVE JUROR:  Thank you.

(Prospective juror exited the courtroom.)

THE COURT:  All right.  Mr. Condon, let's hear now from Juror 168, please.

COURTROOM DEPUTY:  You got it, Judge.

(Prospective juror entered the courtroom.)

THE COURT:  All right.  Hello again, Juror 68.  I just wanted to touch base on another item in the questionnaire.  And this is a response to 22.  The question is:  "Do you have any beliefs or convictions that would make it difficult for you to be fair and impartial in a criminal case or to sit in judgment of the defendant?"

And you answered "yes," with the answer:  "Don't believe in putting anyone to death.  Believe jail or, et cetera, would be best option."

So on that subject, did you hear me during jury selection mention how jurors are completely forbidden from considering punishment in a criminal case?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Do you think you could fully abide by that instruction?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  So although you have indicated this concern about the death penalty, do you feel 100 percent sure that you could put that aside and not let it impact at all your decision-making if chosen to serve?

A PROSPECTIVE JUROR:  Yes, ma'am.  I -- I realize what my duty is.  And I don't have a say on the outcome, but just, you know, the facts.  So...

THE COURT:  Exactly.  Very, very well said.

Anything in your background or experiences, ma'am, that would otherwise affect your impartiality?

A PROSPECTIVE JUROR:  No, ma'am.

THE COURT:  Okay.  That's all for now.  Juror 68, you may return to the jury selection room.

(Prospective juror exited the courtroom.)

THE COURT:  Okay.  70, please.

(Prospective juror entered the courtroom.)

THE COURT:  Hello.  This is Juror 70.

Just briefly, what do you do for work?

A PROSPECTIVE JUROR:  I'm a banker.

THE COURT:  All right.  And how long have you been a banker?

A PROSPECTIVE JUROR:  45 years.

THE COURT:  Wow.  Okay.  So maybe you're good with numbers.

A PROSPECTIVE JUROR:  Well, I don't know.  I try to be.

THE COURT:  Okay.  Fair enough.  Well, the reason why I thought it would be worthwhile to briefly chat is because you indicated on the questionnaire that you were a victim of a bank robbery; is that correct?

A PROSPECTIVE JUROR:  That is correct.

THE COURT:  And how long ago was that?

A PROSPECTIVE JUROR:  I was trying to think last night. I think it was about 19- -- in the 1990s, somewhere in there.

THE COURT:  Okay.  Do you know if that resulted in a criminal case?

A PROSPECTIVE JUROR:  It -- I don't know that they were ever captured.

THE COURT:  Okay.  All right.  So let's -- I guess, going back, trying to remember this stuff can be difficult.  Do you know if you ever had to go to court to testify in that case?

A PROSPECTIVE JUROR:  I did not.

THE COURT:  Okay.  Do you know if you ever had to deal with the police in connection with that case in terms of giving a statement or any other activity?

A PROSPECTIVE JUROR:  Yes, I did.

THE COURT:  Okay.  Is there anything about that difficult experience -- I think you said, maybe in the 1990s -- that would in any way feature in your thinking or decision-making now if you were chosen to serve as a juror?

A PROSPECTIVE JUROR:  No, there would not.

THE COURT:  Do you have any doubts about your ability to be completely fair, objective, and impartial to both sides if chosen to serve?

A PROSPECTIVE JUROR:  No, I don't.

THE COURT:  Okay.  And do you feel -- and I will just say this the other way in the affirmative -- do you feel like you could be completely fair and impartial to both sides?

A PROSPECTIVE JUROR:  Yes, I do.

THE COURT:  All right.  Thank you.  That's all I have, Juror 70.

Let's hear from Juror 73.

(Prospective juror exited the courtroom.)

(Prospective juror entered the courtroom.)

THE COURT:  Okay.  All right.  Hello again, sir.  And thank you for your continued patience.

A PROSPECTIVE JUROR:  Hi.

THE COURT:  This is Juror 73.

All right.  I think you mentioned that you have a close friend who is in the Secret Service; am I right?

A PROSPECTIVE JUROR:  Yes.

THE COURT:  Okay.  Now, I think as was clear, that this case has generated some media publicity, and we do anticipate a Secret Service agent or agents, plural, testifying as witnesses in this case.  I asked you, generally, whether that

relationship would have any impact on your decision-making. And, correct me if I'm wrong, but I think you said you could be fair and impartial; is that right?

A PROSPECTIVE JUROR:  Yes, correct.

THE COURT:  Okay.  Now, more specifically, have you spoken to your Secret Service friend about the allegations in this case specifically?

A PROSPECTIVE JUROR:  No.

THE COURT:  Okay.  So then just to reiterate, is there anything at all about your friendship with this person who is in the Secret Service that would at all come into your decision-making when you're evaluating things and the facts as a juror in this case?

A PROSPECTIVE JUROR:  No, not at all.

THE COURT:  Okay.  Very well.  Thank you, Juror 73.

You may return to the jury selection room, and we will call you back as soon as possible.

(Prospective juror exited the courtroom.)

THE COURT:  We're about to take a break.  Everybody may be seated.  I just have one additional topic to address.

As I want to do with each group, I want to give the parties an opportunity to propose any additional questions that I haven't yet asked.

So, with that, anything else from the United States?

MR. BROWNE:  Your Honor, we would ask that prospective

Juror 100 be excused for cause.  She's the woman who had the --

THE COURT:  Oh, okay.  I don't want to take up for-causes right now.  I'm just asking for, like, new questions, new topics, that you think I haven't adequately addressed.

MR. BROWNE:  Nothing from the United States.

THE COURT:  Okay.  Mr. Routh.

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  All right.  Well, it's 11:22.  We're going to be in recess until 11:40.

During that time, please get together your thoughts on for-cause strikes for this batch.  We will run through that, and then we will bring them all up in a group to do, as we've done in the past, and release those excused jurors.

As you're thinking about all of this, please give some additional thought to whether you think we need to engage in additional jury selection for the ten jurors in waiting who have been patient downstairs.  So try to anticipate, as best you can, so we end up with enough jurors.

And that's all for now.  So please return to the room -- courtroom at 11:40.  Thank you.

(A recess was taken from 11:22 a.m. to 11:48 a.m.)

THE COURT:  All right.  Everybody is present.  Thank you.  You may have a seat unless you are addressing the Court. Let's do as we have been doing.

Mr. Routh, is it still your preference that I ask the government first?

MR. ROUTH:  Sure.  That makes it easy.

THE COURT:  Okay.  All right, then.  We are now dealing with this consolidated Group 2 and 3 batch, which is -- one moment.  I'm looking for something.

Yeah.  I think we are running from 62 all the way to 161, obviously, not continuous because some have been stricken, but that's our segment.

Okay.  So, Mr. Browne, please raise your first for-cause proposal for this cohort.

MR. BROWNE:  Prospective Juror 100.

THE COURT:  You can go ahead and give me your reason.

MR. BROWNE:  This is the individual -- indicated her car broke down yesterday at some point, and she did not know when it would be repaired.

THE COURT:  Mr. Routh.

MR. ROUTH:  No objection.

THE COURT:  Okay.  100 will be stricken for cause for those reasons.

Next.

MR. BROWNE:  Prospective Juror 102.  This is the prospective juror who indicated, number 1, that she was a former employee of the victim in Count 1.  And in her words, quote, "He wasn't the victim.  That's not how I look at it,"

end quote.

That was from her response to the Court's questions. And that's especially problematic, Judge, given that Your Honor has instructed all three groups that the President is, in fact, an alleged victim in this case.  So the fact that she made a statement that he is not the victim, and that's not how she views it, based at least in part on her own personal experience, is the reason for the cause challenge.

THE COURT:  Well, for there to be a victim, there needs to be a crime, and that's to be determined.  So I don't know if her views on that subject necessarily are alone problematic; although, it may indicate that she has certain conceptions about the case factually that she couldn't set aside.

Mr. Routh, what's your view?

MR. ROUTH:  I think she expressed everything clearly, that she'd set everything aside, and everything was just light and breezy, and I think she explained herself very well in all the interactions she had with Trump and -- and so I think she would be a great juror.  So I say -- I say no.

THE COURT:  Any follow-up, Mr. Browne?

MR. BROWNE:  Again, there is potential bias here.  I mean, this prospective juror acknowledged that based on her own personal dealings, in which, you know, apparently this -- the alleged victim in this case apparently threw something at her. She made a point of saying that, you know, once that company

went bankrupt, she went to work for the competition, and that she brings that story up all the time.  She claimed it was in a joking manner, but obviously, that's not somebody, you know, who has personal experience with a key -- you know, figure in the case.  We think that there is ample evidence of potential bias in her responses based on those anecdotes, as well as, again, her statement that in her view, this is not a victim.

She also said, maybe he was the target, which, again, is injecting her own personal views into this case based on, apparently, her own experience and whatever else she knows about the case.

THE COURT:  Okay.  I think for those latter reasons, I'm ultimately going to grant the for-cause challenge as to Juror 102.  It's not because she commented that she didn't see a victim, necessarily; it's more because she seems to have already come up with a conclusion about the facts in this case.  And so for those reasons, I have significant doubts that she could honor her obligation to look at the evidence alone and not be influenced by any other factor, which is an obligation all jurors must uphold.  So for those reasons, 102 will be stricken for cause over the defendant's objection.

Next.

MR. BROWNE:  Prospective Juror 124 indicated she would be biased based on media accounts.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No.  That's fairly obvious.

THE COURT:  Okay.  124 will be stricken for cause.

MR. BROWNE:  Prospective Juror 126 indicated that it would be a disservice to the defendant for her to serve as a juror.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  Again, blatantly obvious.

THE COURT:  126 will be stricken for cause.

MR. BROWNE:  Prospective Juror 150 indicated that, based on his relationships with former law enforcement officers, he doubted his ability to be fair.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  150 will be stricken for cause.

MR. BROWNE:  That's all we have, Your Honor.

THE COURT:  Okay.  Mr. Routh, do you have any other proposals for for-cause challenges?

MR. ROUTH:  Certainly.  If we could revisit 78. You know, the gentleman claimed that he was okay with hearing and, you know, he skipped on past his hypertension and high cholesterol, and his dad was a career cop, and just seemed like lots of things working against this gentleman.

THE COURT:  Okay.  Well, it's not unusual to have more maladies, I think, as he said, as one gets older.  That's an unfortunate part of life.  But he seemed very capable, as far

as I could tell, evaluating his demeanor and his overall functioning, to perform his duties as a juror, I think was quite thorough in his hearing-related issues, and he was affirmative that he could hear me speaking with the microphone. To the extent he had difficulty with folks in the back, mumbled, that is something that he indicated would not be a problem for witnesses or for lawyers using the mic, and that if he ever had a need for additional audio, that he would make that concern known to me.

So I don't believe that any of the physical issues you've identified are sufficient to warrant a for-cause strike as to 78. The challenge will be denied.

And with respect to the law enforcement ties in Connecticut or the Northeast, he, again, affirmed repeatedly that he could be fair despite those connections. So 78 -- 78 will not be stricken for cause.

Okay. Next, Mr. Routh.

MR. ROUTH: 129, just the gentleman that had met Mr. Trump decades ago, just -- just revisiting that quickly.

MR. BROWNE: Your Honor, I believe the Court denied that cause challenge on the same basis already.

THE COURT: Yes, I did. I don't see how a breakfast 25 years ago, with no job hired, no indication of any bias in either direction, and he, again, affirmed his ability to be fair. So I don't see a for-cause basis for 129, as I already

ruled.  So 129 will be in over the defendant's objection.

MR. ROUTH:  Okay.  142, you know, been kidnapped and abused, was a victim.  So just -- you know, she's got her work situation that is stressful as far as having to do work after class -- after -- after -- and working with that -- the visas for the students and all that, doesn't seem fair to make her work after -- after jury duty.

THE COURT:  Mr. Browne.

MR. BROWNE:  With respect to the issue of the 45-year-old crime of which she was a victim, the Court was very thorough in its colloquy of this juror.  And she indicated that it would absolutely not cause her any issues.

With respect to the conflict, again, this prospective juror ultimately told this Court that she would make it work and that she had developed additional information, I believe, since yesterday, that there would be allowances, and that, although her management wasn't happy about it, that it would, nevertheless, work out.  And she went further and said they're not going to hold it against me.  That's a specific question that the Court asked her.

So she's willing to serve.  She said she could be fair. We don't believe it's a basis for a cause challenge.

THE COURT:  I agree for those reasons.  142 will stay in over the defendant's objection.

Next, Mr. Routh.

MR. ROUTH: 143, you know, he had trained for nine months as a law enforcement officer just to -- you know, if you have that mindset that you want to go out and, you know, take people down and enforce the law and do that type of work, it just seems prejudicial. So I would say 143 is -- is problematic.

THE COURT: So is your view that anybody who has ever worked in law enforcement is just per se incapable of being a juror in a criminal case?

MR. ROUTH: Most definitely. I mean, it's a conflict of interest.

THE COURT: All right. Well, I take your view. I don't agree with it at all. I think folks can, as they did in this jury selection process, follow the Court's instructions and affirm their duties as jurors despite their experiences. And this person, this is Juror 143, he made a career change, in any event. He worked, I think, only nine months, and he was clear in his ability to be fair.

He also is willing to serve. He has looked into the income situation at his employer, and so I don't really see anything in this picture that would lead to a for-cause.

So 143 will stay in over your objection.

Next.

MR. ROUTH: Have we already canceled 150 because of the September 11th trip?

THE COURT:  Mr. Browne, I believe 150 has been stricken because of maybe --

MR. BROWNE:  We moved on the basis of self-declared bias.

MR. ROUTH:  Yeah, Okay.  All right.  Good deal.

So 151, again, they had a cruise on the 3rd, and, you know, 25 years as a cop.  Again, I mean, just seems -- you're a police officer for 25 years.

THE COURT:  Okay.

MR. ROUTH:  The whole job is arresting people.

THE COURT:  Okay.  Any response, Mr. Browne?

MR. BROWNE:  With respect to the conflict, we've had prospective jurors with trips earlier than that who have not been released on cause grounds, and this particular Prospective Juror Number 151 was unequivocal.  When asked whether he could be 100 percent objective, his response was, quote, "Absolutely" -- or if he would have any problems, his response was "Absolutely not."

So for the same reasons the Court already said, I mean, it can't be that every single former law enforcement officer cannot serve as a juror in this case.

THE COURT:  Okay.  I agree with the government.  This person was unequivocal in his fairness answers.  No basis for for-cause.  So 151 is in.

Although, of course, Mr. Routh, when I deny your

for-cause challenge, it doesn't mean that you lose your peremptories.  You could still strike these folks --

MR. ROUTH:  Yeah.

THE COURT:  -- for no reason.  So, of course, keep that in mind.

MR. ROUTH:  Certainly.  Thank you very much.

THE COURT:  Okay.  Next.

MR. ROUTH:  Just 1 -- 170.  Is 170 still -- they had said that they do not believe in the justice system.

THE COURT:  170 is the brewer who has already been stricken for cause.

MR. ROUTH:  Okay.  Okay.  All right.

175.  This was the guy that was the property manager that didn't have anybody to do his work and said he would have to do it on nights and weekends and had nobody to fill.  I just don't feel good about having this gentleman have to work nights and weekends because of me.  So, you know, that's not fair and not nice.  So if he could be relieved, that would be nice.

THE COURT:  All right.  Mr. Browne.

MR. BROWNE:  I don't believe these prospective jurors were actually fully instructed and voir dire'd.  I believe he belongs to the group that was -- that remained outside, Your Honor.

THE COURT:  That's correct.

So, Mr. Routh, we have 10 folks who didn't fit in the

courtroom because we're maxed out at 60.

MR. ROUTH:  Okay.

THE COURT:  So he is in that last batch of ten.

MR. ROUTH:  Okay.  My apologies.

THE COURT:  So I don't think it's a good idea now to address those.

Do you have any other for-cause challenges before Juror -- or I should say between Juror 62 and 161?

MR. ROUTH:  That's it.  That's all of them.

THE COURT:  Okay. Okay.  Mr. Browne, then can you read out loud the numbers of the jurors who have been stricken in this last batch, this last run.

MR. BROWNE:  As far as the cause challenges for this last batch beginning with 100, 102, 124, 126, and 150.

THE COURT:  Is that consistent with your list, Mr. Routh?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  All right.  So then let me ask the parties:  Based on these additional for-cause strikes and the number of available jurors at this point, without resorting to the last ten, do the parties believe we should proceed now into full jury selection, or engage in further voir dire for those last ten?

MR. BROWNE:  We do not believe we need to engage in further voir dire.  But as far as going to the final stage of

jury selection, we would just ask for one five-minute break to address the additional cause challenges that the Court granted.

THE COURT:  What is your numerical look here as far as how many still-eligible jurors do we have?

MR. BROWNE:  We believe that we are not -- let me come at it a different way, Judge.  We don't think we are going to exceed 90 in terms of the overall number of prospective jurors left.  We don't think we're going to get beyond that.  We think for --

THE COURT:  So let me ask this:  Do you think -- is -- are you very comfortable in saying that you don't think we'll run out of jurors?

MR. BROWNE:  Yes.

THE COURT:  Okay.  Mr. Routh, how do you feel about that?

MR. ROUTH:  Yes.  We have plenty of jurors.  My math, we have a surplus.

THE COURT:  Okay.  And I agree with that.  So what we're going to do -- it's 12:04.  We're going to take a ten-minute break.  This is our last break until we proceed straight into jury selection.

I want to repeat what I have said in prior orders.  There will be no back strikes under any circumstances.  Each person -- each party, excuse me, will be allotted the standard number of peremptories under the federal rules, plus there are

four peremptories for the selection of four alternates, if I'm not mistaken, according to my prior order.

Is that consistent with the parties' understanding?

MR. BROWNE:  Three additional peremptories for four alternates.  That's correct.

THE COURT:  Okay.  That's true.

Mr. Routh, do you recall those numbers, three additional peremptories for the selection of four alternates?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  All right.  So no back strikes under any circumstances.  You can't use any unused strikes for -- that you didn't use in the nonalternate section to then use for the alternates.

Does all of that make sense to you?

MR. ROUTH:  Logical, yes, Your Honor.

THE COURT:  Mr. Browne.

MR. BROWNE:  Yes, Your Honor.

THE COURT:  Okay.  All right.  So we're in break until 12:15, and then we will shift immediately into final jury selection.  Thank you.

(A recess was taken from 12:06 p.m. to 12:21 p.m.)

THE COURT:  All right.  Everybody is present.  You may have a seat.

All right.  I'm going to alternate, starting with the United States, and then heading to you, of course, taking into

account any peremptories exercised.

So, with that, Mr. Browne, are you going to be handling this portion?

MR. BROWNE: Yes, Your Honor. May I remain seated so that I don't look down at the documents?

THE COURT: Yes. Okay.

Mr. Browne, do you accept or reject Juror Number 3?

MR. BROWNE: Accept.

THE COURT: Mr. Routh, do you accept or reject Juror 3?

MR. ROUTH: Accept.

THE COURT: Juror 3 will be accepted and be our first juror.

Mr. Routh, do you accept or reject Juror Number 4?

MR. ROUTH: Reject Number 4.

THE COURT: Defense has used its first peremptory as to Juror Number 4.

Mr. Browne, accept or reject Juror 7?

MR. BROWNE: Accept.

THE COURT: Mr. Routh, accept or reject Juror 7?

MR. ROUTH: Accept.

THE COURT: Juror 7 will be accepted and be our second juror.

Mr. Routh, accept or reject Juror Number 8?

MR. ROUTH: Reject.

THE COURT: Defense has used its second peremptory.

Mr. Browne, accept or reject Juror 9?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, accept or reject Juror 9?

MR. ROUTH:  Accept.

THE COURT:  Juror 9 will be accepted and be our third juror.

Mr. Routh, accept or reject Juror 10?

MR. ROUTH:  Accept Number 10.

I wanted to mention also I think --

THE COURT:  This is not the time for legal argument.

MR. ROUTH:  Okay.  Accept.

THE COURT:  So Mr. Routh has accepted Juror 10.  What's the government's position?

MR. BROWNE:  Accept.

THE COURT:  Juror 10 will be accepted as our fourth juror.

Mr. Browne, accept or reject Juror 12?

MR. BROWNE:  Reject.

THE COURT:  Government has used its first peremptory.

Mr. Routh, accept or reject Juror 15?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, accept or reject Juror 15?

MR. BROWNE:  Reject.

THE COURT:  Government has used its second peremptory.

Mr. Browne, accept or reject Juror 18?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, accept or reject Juror 18?

MR. ROUTH:  Reject.

THE COURT:  Okay.  Defense has used its third peremptory on Juror 18.

Mr. Routh, accept or reject Juror 23?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, accept or reject Juror 23?

MR. BROWNE:  Reject.

THE COURT:  Government has used its third peremptory on Juror 23.

Mr. Browne, accept or reject Juror 26?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, accept or reject Juror 26?

MR. ROUTH:  Accept.

THE COURT:  Juror 26 will be accepted and will be our fifth, as in five, juror.

Mr. Routh, accept or reject Juror 27?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, accept or reject Juror 27?

MR. BROWNE:  Accept.

THE COURT:  Juror 27 will be accepted as our sixth juror.

Mr. Browne, accept or reject Juror 28?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, accept or reject Juror 28?

MR. ROUTH:  Accept.

THE COURT:  Juror 28 will be accepted as our Juror Number 7.

Mr. Routh, accept or reject Juror Number 32?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, accept or reject Juror 32?

MR. BROWNE:  Accept.

THE COURT:  Juror 32 will be accepted and be our eighth juror.

Mr. Browne, accept or reject Juror 36?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, accept or reject Juror 36?

MR. ROUTH:  Accept.

THE COURT:  Juror 36 will be accepted and be our ninth juror.

Mr. Routh, accept or reject Juror 39?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, accept or reject Juror 39?

MR. BROWNE:  Reject.

THE COURT:  Government has exercised a peremptory as to 39, and that is its fourth peremptory.

Okay.  Mr. Browne, accept or reject Juror 40?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, accept or reject Juror 40?

MR. ROUTH:  Accept.

THE COURT:  Juror 40 will be accepted as our tenth juror.

Mr. Routh, accept or reject Juror 42?

MR. ROUTH:  Reject.

THE COURT:  All right.  42 is rejected by defense peremptory number 4.

Mr. Browne, accept or reject Juror 44?

MR. BROWNE:  Reject.

THE COURT:  Government has used its fifth peremptory on Juror 44.

Mr. Routh, accept or reject Juror 45?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, accept or reject Juror 45?

MR. BROWNE:  Accept.

THE COURT:  Juror 45 will be accepted and be our 11th juror.

Mr. Browne, accept or reject Juror 46?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, accept or reject Juror 46?

MR. ROUTH:  Reject.

THE COURT:  Juror 46 will be rejected by defense peremptory number 5.

Mr. Routh, accept or reject Juror 47?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, accept or reject Juror 47?

MR. BROWNE:  Reject.

THE COURT:  Juror 47 will be rejected, and that is the government's sixth peremptory.

All right.  That means that I'm going to ask you, Mr. Routh, whether you accept or reject Juror 49.

MR. ROUTH:  I just want to recognize the Batson objection, I mean, because they've stricken, now, two African Americans out of a very small pool.  So they accepted one, and I just wanted to bring that to your awareness.

THE COURT:  Okay.  I want to pause here for just a moment.  We had a conversation about the inability to have hybrid counsel.  And it seems to me like you are using your attorneys for more than merely procedural and technical things.

So as far as this is concerned, are you enlisting the advice of your attorneys for substantive matters?  I don't know what -- I don't want to know what they are.  Just answer my questions.

MR. ROUTH:  No.  They had suggested --

THE COURT:  I don't want to know about what they're telling you.  I'm just asking, are you asking them to give you help on things other than procedure and technicalities?

MR. ROUTH:  No.  I was going to say they -- they suggested maybe sitting with me.  I'm like, no, I have got this.  So, you know --

THE COURT:  Okay.

MR. ROUTH:  -- they're offering more help, and I'm turning down their help.  It was just, they --

THE COURT:  Well, I'm hearing whispers coming from --

MR. ROUTH:  Whispers?

THE COURT:  -- coming -- I heard a whisper just a moment ago regarding legal advice, and I want to make sure that we're following the procedures carefully.

So, with that, are you raising a Batson challenge, Mr. Routh?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  And your rationale is what?

MR. ROUTH:  Well, they have removed a -- a -- the great majority --

THE COURT:  Which two jurors are you claiming were removed improperly?

MR. ROUTH:  Well, I'm just -- they removed 15 and 47 --

THE COURT:  Okay.

MR. ROUTH:  -- out of a -- a pool of 40, I mean.

THE COURT:  All right, then.

MR. ROUTH:  So, I mean, it's --

THE COURT:  I will give the government a few moments to assess the juror numbers and address this issue.

MR. BROWNE:  Thank you, Your Honor.

MR. ROUTH:  I mean, I'm fine if nothing changes, but I

just wanted to recognize the fact.

THE COURT:  So then, I want to make sure the record is clear.  Are you raising an objection, or are you not raising an objection?

MR. ROUTH:  I just wanted to make it on the record for appeal that, you know, there is a issue of eliminating African-American jurors.  So, you know, just wanted to -- to be on the record.  So...

THE COURT:  So just, can you be very clear.  Are you raising a Batson challenge, yes or no?

MR. ROUTH:  I think we've got our jury.  So we don't need to change our jury.  So we're -- we're fine with the jury selection that we have.  I just wanted to recognize the fact that we have a racist situation that is occurring.  So just, I wanted to raise that issue.  I mean, it's blatantly obvious.

THE COURT:  Okay.  All right.  It's not clear to me that an objection is even being raised, but let me hear from the United States on this issue.

MR. BROWNE:  Your Honor, as an initial matter, the only African-American prospective juror that I have identified is 36, that we accepted immediately.

The Prospective Juror Number 15, I believe, is Haitian American, and gave inconsistent answers on a very simple question about whether he knew somebody in law enforcement.

According to my notes, I don't believe 47, which is the

other prospective juror the defendant claims is African American, actually is.  This individual had a close friend with a drug-trafficking conviction, and based on my notes, appeared to have at least some language barrier based on responses to questioning by the Court.  Even if there was an objection raised, Your Honor, we think it's a frivolous one.

THE COURT:  Okay.  Mr. Routh, I want to make sure you have enough time to consider those reasons provided by the United States, so --

MR. ROUTH:  Again, that's adequate.

THE COURT:  Okay.  So do you no longer wish to raise a concern that you believe any sort of racist strikes have been employed?

MR. ROUTH:  It doesn't affect our process.  It doesn't affect our process.  We -- we've -- so we can move forward.

THE COURT:  Okay.  Well, hearing no meaningful objection that's been either properly raised or maintained, I'm going to deny it to the extent it was even made.  It seems to me like the United States has offered a legitimate, nondiscriminatory reasons for their peremptory strikes in this case, and there has been no counter showing, certainly by the defense.  And ultimately, it's the conclusion of the Court that there has been no showing of purposeful discrimination.

So, with that, let's -- let's continue to where we left off.  We had accepted our 11th juror.

Madam Reporter, can you take me back to before this issue arose, and just read back what was happening at that time.

THE STENOGRAPHER:  Yes.

(A portion of the record was read back.)

THE COURT:  All right.  So because the government has used up its peremptories for the selection of Jurors 1 through 12, I will now ask you, Mr. Routh, whether you accept or reject Juror 49.

MR. ROUTH:  Accept.

THE COURT:  Okay.  Juror 49 will then be our 12th juror.

Okay.  With that, we will turn back to the government to start the selection of our four alternates.  This leads us to Juror Number 52.

Do you accept or reject, Mr. Browne, Juror 52 as Alternate Number 1?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, do you accept Juror 52 as Alternate Number 1?

MR. ROUTH:  Accept.

THE COURT:  Juror 52 will be accepted as Alternate Number 1.

Mr. Routh, do you accept or reject Juror 53 as Alternate Number 2?

MR. ROUTH:  Reject.

THE COURT:  Okay.  Defense has used its first of three peremptories for the selection of alternates.

Mr. Browne, do you accept or reject Juror 61 as Alternate Number 2?

MR. BROWNE:  Reject.

THE COURT:  Government has used its first peremptory for the selection of alternates.

Mr. Routh, do you accept or reject Juror 62 as Alternate Number 2?

MR. ROUTH:  Accept.

THE COURT:  Mr. Browne, do you accept or reject Juror 62 as Alternate Number 2?

MR. BROWNE:  Accept.

THE COURT:  Okay.  Juror 62, then, will be accepted as our second alternate.

Mr. Browne, do you accept or reject Juror Number 63 as Alternate Number 3?

MR. BROWNE:  Accept.

THE COURT:  Mr. Routh, do you accept Juror 63 as Alternate Number 3?

MR. ROUTH:  Accept.

THE COURT:  Okay.  That means that Juror 63 will be accepted as Alternate Number 3.

Mr. Routh, do you accept or reject Juror Number 65 as

Alternate Number 4?

MR. ROUTH: Reject.

THE COURT: Okay. Defense has used its second of three peremptories on the selection of alternates.

And that's for Juror 65, which leads me to ask, Mr. Browne, do you accept or reject Juror 66 as Alternate Number 4?

MR. BROWNE: Accept.

THE COURT: Mr. Routh, do you accept or reject Juror 66 as Alternate Number 4?

MR. ROUTH: Reject.

THE COURT: Okay. Juror 66, then, will be rejected by the defense's third peremptory for the selection of alternates.

Okay. You have no more peremptories for alternates, Mr. Routh.

So let me ask the United States, does the United States accept or reject Juror 67 as Alternate Number 4?

MR. SHIPLEY: Just one moment, Your Honor.

MR. BROWNE: Accept.

THE COURT: Juror 67 will be accepted and be our fourth alternate.

Okay. That should conclude the selection of the jury for this case. I'm going to go back and read out loud the juror numbers that have been chosen. Please carefully check your lists so we are all on the same page.

The jury for this case is as follows:  Number 3, Number 7, Number 9, Number 10, Number 26, Number 27, Number 28, Number 32, Number 36, Number 40, Number 45, Number 49; and then our four alternates are:  52, 62, 63, and 67.

Does that match your list, Mr. Browne?

MR. BROWNE:  It does, Your Honor.

THE COURT:  Mr. Routh, does that match your list?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  All right.  It is 12:43.  Our Group 1 jurors were asked to come back at 2:00, so that is a good return time.  We will then take a little bit of a longer lunch today, until 2:00, at which point we will invite -- the reason why I'm hesitating is because we have approximately 80 folks left.  They're not all going to fit in the courtroom.

So in order to announce the actual jurors, we will bring in as many as we can fit in through the 60, and we will advise them of whether they have been chosen, release those that have not been chosen, and then do the same thing to advise the last batch of whether they have been chosen, which shouldn't be, I don't believe, any additional jurors, given where we landed.

Any concerns with that structure?

MR. BROWNE:  Not from the United States.

THE COURT:  Mr. Routh.

MR. ROUTH:  Sounds wonderful.

THE COURT: Okay. All right. Well, then, have a nice lunch, and we will resume at 2:00.

(A recess was taken from 12:45 p.m. to 2:10 p.m.)

(The venire entered the courtroom.)

(Call to the order of the Court.)

THE COURT: Good afternoon. Please, you may all have a seat. Everybody is here.

Okay. Thank you, ladies and gentlemen, for your continued patience and diligence. What I'm going to do now is read out loud the names of the jurors that have been selected to serve for this trial.

If I call your name, of course stay seated. For those whose names I do not call, I will give you further instructions, so don't exit the courtroom just yet. And so here we go.

The jurors for this trial are as follows: 3, 7, 9, 10, 26, 27, 28, 32, 36, 40, 45, 49, 52, 62, 63, and 67.

If I have called your name, please stand up at this time. Or your number, I should say.

Okay. I just want to make sure that we have the full set here. May I please see your paddles.

THE JURORS: (Complied.)

THE COURT: Thank you. Okay. Thank you. Please stay standing.

For everybody whose names I have not called, thank you

for your service the last few days.  As I said in the beginning, it's always a humbling experience for me to see members of our community join to perform this important function.  That concludes your service in this case, but I will ask you one final thing, which is to go to the jury selection room for any final instructions or certificates of attendance if those will be distributed.

So, with that, let's rise for the other jurors who will now exit the courtroom.  Please leave the paddles where they are.  Thank you.

(The remaining venire exited the courtroom.)

THE COURT:  Okay.  Thank you.  Now, please stay standing for just a moment while we assemble you in the juror chairs.  I'm going to ask the court staff to please call in the remaining jurors who did not fit in the courtroom for this initial session so we can give them their final thank you.

But as we're doing this, Ms. Moran, if you could seat these jurors in their appropriate chairs.  And then if we could please call back those additional jurors who didn't fit, Mr. Condon.  Thank you.

So in order of the numbers, basically, that black chair in the back would be where Juror 3 sits, and so on and so forth.  You can go ahead and -- it's a little bit cumbersome, but take your appropriate seats, please.

Mr. Condon, are the remaining jurors on their way up?

COURTROOM DEPUTY:  Yes, they're on their way up.

THE COURT:  Excellent.  Thank you.

Okay.  Ladies and gentlemen, folks in the gallery, you may have a seat as we just await the arrival of the additional jurors.

(Pause in proceedings.)

A JUROR:  Your Honor, I just wanted to elaborate on something from yesterday, if that's okay.

THE COURT:  One moment.  I want to make sure our courtroom deputies can be back with us before we -- just hang tight one moment, ma'am.  And you are Juror?

A JUROR:  28.

THE COURT:  28.

A JUROR:  It won't affect how I serve.  I just wanted to make sure I mentioned it.

THE COURT:  Okay.  Officer Blanford, can you equip Juror 28 with a microphone, please.

COURT SECURITY OFFICER:  Yes.

THE COURT:  Thank you.

All right.  We may as well get started to save some time.

What did you wish to share, ma'am?

A JUROR:  I thought of two additional contacts.  One is a former contact for law enforcement.  It's been, like, 15 or 20 years.  So I didn't know if that mattered.

And then my daughter, who is a police officer, she recently started dating a Brevard County sheriff.  But I don't -- like, he just comes over like for dinner and stuff. But I don't have any contact with him outside of that.

THE COURT:  Okay.  All right.  Very well.  Now, based on those --

One moment, Ms. Moran.  If you could just hold everybody back temporarily just one additional moment.

Is there any doubt in your mind that you could perform your function as a -- as a juror fairly, impartially, and objectively, despite your relationships with members in law enforcement or your daughter's relationship?

A JUROR:  No, ma'am.  Not outside -- like I will be able to serve partial- -- fair.

THE COURT:  Okay.  And you're fully certain of that; is that correct?

A JUROR:  Uh-huh.

THE COURT:  Okay.  All right.  Thank you for sharing.

What I'm going to do now is just invite you to the jury deliberation room, all.  Just temporarily.  But I'm going to caution you again:  There can be no discussion about this case at all, even amongst yourselves.  No communication, no research, nothing.

And I know I've repeated all of this many times now, and you will continue to hear this, but just for purposes of me

being able to handle a couple of items outside of your presence, I'm going to ask that you go into that back area just for a few moments, and then we will call you back in.  But please, again, maintain adherence to those instructions.  Thank you.

A JUROR:  I apologize.

(The jury exited the courtroom at 2:29 p.m.)

THE COURT:  All right.  Thank you, Officer.  You may all be seated.

I did want to give the parties any opportunity to address the most recent comments that were made.

Mr. Browne.

MR. BROWNE:  Nothing from the government, Your Honor.

THE COURT:  Okay.  Mr. Routh.

MR. ROUTH:  It's unfortunate she didn't bring it up earlier, but it's water under the bridge, so no big deal.  We will move forward.

THE COURT:  Okay.  Hearing no objection from either side and seeing no independent reason myself to believe that this juror is ill-equipped to serve, we will do this.  We will call them back in, and then we will do as we initially planned, which is to bring in everybody else, let them go, released, and then formally begin.

So let's bring in the jurors from the back area, Officer.  Thank you.

And while that's happening, Ms. Moran, please feel free to bring in the other group.

COURTROOM DEPUTY:  Yes, Judge.

(The venire entered the courtroom.)

(The jury entered the courtroom at 2:31 p.m.)

THE COURT:  All right.  Thank you.  Please be seated.

To all the prospective jurors in the back, I didn't want the proceeding to end without me formally thanking you for your service.  You have not been chosen to serve on this jury, so this will be the final step in the process for you.  But I ask that you please return to the jury selection room for any final instructions that the courthouse staff might have for you.  But that does conclude your duty.  Thank you again.

Let's rise one final time for the jurors who will be leaving us.  Thank you.

(The venire exited the courtroom.)

THE COURT:  All right.  Thank you.  Please have a seat.

Any rearrangement of chairs can happen now.

Okay.  At this time, ladies and gentlemen, I will ask our courtroom deputy to swear you in as the jury in this case.

COURTROOM DEPUTY:  Will the members of the jury please rise and raise your right hand.

Do you and each of you do solemnly swear or affirm that you will well and truthfully try the issues herein in the case before the Court and a true verdict render, according to the

evidence and the law given to you by the Court, so help you God?

THE JURY:  I do.

THE COURT:  Thank you.  Please have a seat.

All right.  Now that you have been sworn as our jury for this case, I will explain some basic principles about a criminal trial and your duty as jurors.

These are what we call preliminary jury instructions. At the end of the trial, I will give you more detailed instructions.

Now, we covered a little bit of this during jury selection, so you will hear similar themes.  Sometimes criminal trials attract the attention of the media and the public.  The level of interest is unpredictable and not within my control. This case may attract an unusual amount of attention, so there may be curiosity about the participants:  the lawyers, witnesses, defendant, judge, perhaps even the jurors.

People may ask questions to learn more about the case. Even though these questions may be well intentioned, they may still distract you from your duties as a juror.  These questions can be awkward or inconvenient for you, your family, and your friends.  They could be part of unwanted and improper approaches towards you from outside the courtroom.

During your service as a juror, you must not discuss this case with anyone.  And even after the case is finished,

you will never be required to explain your verdict or your jury service to anyone.

Your names and personal information, like I indicated to you during jury selection, will be known only to court personnel and the parties, as I explained, and will not be disclosed.

So for all of those reasons I mentioned during jury selection, to discourage unwanted media or improper contact from the public, telephone calls, letters, and questions, you name it, you will be referred to only by your juror number, like we have been doing.

The defendant in this case, as you have been informed, is Mr. Ryan Wesley Routh.  And as I indicated, the indictment in this matter contains five counts or charges against Mr. Routh.

What I'm going to do now -- and this, again, will be a bit repetitive of our jury selection procedure -- is to read to you the indictment.

Count 1.  On or about September 15, 2024, in Palm Beach County, in the Southern District of Florida, the defendant, Ryan Wesley Routh, did intentionally attempt to kill former president of the United States Donald J. Trump, a major presidential candidate, as defined in Title 18, United States Code, Section 3056, in violation of Title 18, United States Code, Section 351(c).

Count 2.  On or about September 15 of 2024, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, Ryan Wesley Routh, did knowingly possess a firearm in furtherance of a crime of violence, that is, a violation of Title 18, United States Code, Section 351(c), as set forth in Count 1 of this indictment for which the defendant may be prosecuted in a court of the United States in violation of Title 18, United States Code, Section 924(c)(1)(A).  Pursuant to Title 18, United States Code, Section 924(c)(1)(A)(ii), it is further alleged that the firearm was brandished.

Count 3.  On or about September 15, 2024, in Palm Beach County, in the Southern District of Florida, the defendant, Ryan Wesley Routh, did forcibly assault, oppose, impede, intimidate, and interfere with Secret Service Special Agent Number 1, an officer and employee of the United States and of an agency in any branch of the United States government as designated in Title 18, United States Code, Section 1114, that is, the United States Secret Service while Secret Service Special Agent Number 1 was engaged in and on account of the performance of his official duties with the intent to commit another felony in violation of Title 18, United States Code, Section 111 (a)(1).

Pursuant to Title 18, United States Code, Section 111(b), it is further alleged that the defendant used a

deadly and dangerous weapon.

Count 4. On or about September 15, 2024, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, Ryan Wesley Routh, did knowingly possess a firearm and ammunition in and affecting interstate and foreign commerce, knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of Title 18, United States Code, Section 922(g)(1).

And Count 5. Possession of a firearm with an obliterated serial number. On or about September 15, 2024, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, Ryan Wesley Routh, did knowingly possess a firearm, which has had the importer's and manufacturer's serial number removed, obliterated, and altered, and had at any time been shipped and transported in interstate and foreign commerce in violation of Title 18, United States Code, Section 922(k).

All right. And I will go through a lot of the concepts that I did during jury selection about the indictment not being proof of anything, as well as the burden of proof. So you can expect those subjects to come up in just a moment.

For now, I will address the issue of punishment. Each count of the indictment charges a separate crime. You must consider each crime and the evidence relating to it separately.

I caution you that the defendant is on trial only for the specific crimes charged in the indictment.  You are here to determine from the evidence in this case whether the defendant is guilty or not guilty of those specific crimes.  You must never consider punishment, in any way, to decide whether the defendant is guilty or not guilty.  And if you find the defendant guilty, the punishment is for the judge alone to decide later.

Mr. Routh, as I have indicated to you, has decided to represent himself in this trial and not to use the services of a lawyer.  He has a constitutional right to do that.  His decision has no bearing on whether he is guilty or not guilty, and it must not affect your consideration of the case.

Because Mr. Routh has decided to act as his own lawyer, you will hear him speak at various times during the trial.  He may make an opening statement and a closing argument.  He may ask questions of witnesses, make objections, and argue legal issues to the Court.

I want to remind you that when Mr. Routh speaks in these parts of the trial in a capacity as his own lawyer, he is acting as a lawyer in this case, and his words are not evidence, just like the arguments of counsel for the government are not evidence either.  The only evidence in this case comes from witnesses who testify under oath on the witness stand, and from exhibits that are admitted.

Now, the duty of the jury.  It will be your duty to decide what happened so you can determine whether the defendant is guilty or not guilty of the crimes charged in the indictment.  At the end of the trial, I will explain the law that you must follow to reach your verdict.  You must follow the law as I explain it to you, even if you do not agree with the law.

Now, what is evidence?  You must decide the case solely on the evidence presented here in the courtroom.  Evidence can come in many forms.  It can be testimony about what somebody saw or heard or smelled.  It can be an exhibit admitted into evidence.  It can be someone's opinion.

Now, some evidence may prove a fact indirectly, like a witness who saw wet grass outside and people walking into the courthouse carrying wet umbrellas but may not have actually seen it rain.  Indirect evidence -- we sometimes call that circumstantial evidence -- is simply a chain of circumstances that proves a fact.

As far as a law is concerned, ladies and gentlemen, it makes no difference whether evidence is direct evidence or indirect or circumstantial evidence.  You may choose to believe or disbelieve either kind of evidence, and you should give every piece of evidence whatever weight you think it deserves.

Now, what is not evidence?  There are certain things that are not evidence and must not be considered as evidence,

and I will list those for you now.

The statements and the arguments of the lawyers or the parties acting as lawyers in their own defense.  In their opening statements and closing arguments, the lawyers and Mr. Routh, as I said, acting as his own lawyer, will discuss the case, but their remarks are not evidence.

Questions and objections of the lawyers.  The lawyers' questions are not evidence either.  Only the witnesses' answers are evidence.  So you shouldn't think that something is true just because a lawyer's question or Mr. Routh acting as his own lawyer's question suggests that something is true based on the question alone.  For instance, if a lawyer asks a witness, "Mr. Jones, you saw the defendant hit his sister, didn't you?" that question, in and of itself, is not evidence whatsoever of what the witness saw or what the defendant did unless the witness agrees with the question.

Now, there are rules of evidence that control what can be received or admitted into evidence.  When a lawyer or a party asks a question or offers an exhibit into evidence, and a lawyer or a party on the other side thinks that that piece of evidence is not permitted by the rules of evidence, that lawyer or that party may raise an objection to the exhibit.  If I overrule the objection, then the question may be answered or the exhibit can be received into evidence.  But if I sustain the objection, then the question cannot be answered, and the

exhibit cannot be received.

Ultimately, whenever I sustain an objection to a question, you must ignore the question and not try to guess at what the answer might have been.

Also, sometimes I might order that any particular piece of evidence or maybe a statement be stricken and that you disregard it or ignore it entirely.  That means that when you're deciding the case, you must not consider that stricken evidence.

Now, sometimes we have evidence that is admitted only for a limited purpose.  When I instruct you that a particular item of evidence has been admitted for a limited purpose only, you must consider that evidence only for that limited purpose and no other purpose.

The government and the defendant have agreed to certain facts in the form of stipulations.  Those are agreements, and you will be instructed to treat those facts as having been proved.  And when there is a stipulation to -- to bring up, you will be alerted to those particular stipulations during trial.

Let's shift now to talk about credibility of witnesses. And we, again -- we briefly mentioned these items during jury selection.

In reaching your verdict, you may have to decide what testimony to believe, and what testimony not to believe.  You can believe everything that a witness says or part of it or

none of it. In considering the testimony of any witness, you may take into account a host of factors: Number 1, the opportunity and ability of the witness to see or hear or know the things the witness is testifying about. The witness's memory. The witness's manner while he or she is testifying. The witness's interest in the outcome of the case, and any bias or prejudice that the witness might have. Perhaps whether other evidence contradicts what the witness is saying. Also, the reasonableness of the witness's testimony in light of all of the evidence that's presented. And any other factors that bear on a witness's believability.

I will give you additional guidelines for determining credibility of witnesses at the end of the case.

Now, as you know, this is a criminal case. And there are some basic principles about a criminal proceeding that you must bear in mind.

First, the defendant is presumed innocent until proven guilty. The indictment against the defendant brought by the government is only an accusation, nothing more. It is not proof of guilt or anything else. The defendant, therefore, starts out with a fully clean slate.

Second, the burden of proof is on the government until the very end of the case. The defendant has no burden to prove his innocence or to present any evidence or to testify. Since the defendant has the right to remain silent and may choose

whether to testify, you cannot legally put any weight on a defendant's choice not to testify.

It is not evidence.

Third, the government must prove the defendant's guilt beyond a reasonable doubt.  I read to you that instruction earlier in jury selection.  But bear in mind that the level of proof required is high.

Now, let's discuss briefly the conduct of the jury. And this will, again, sound familiar.  Our law requires jurors to follow certain instructions regarding their personal conduct in order to assure a just and fair trial.

I'm going to give you those instructions now, and, again, they're going to -- they're going to remind you of my repeated statements.  So here we go.

Do not talk either amongst yourselves or with anyone else about anything related to the case.  You may tell the people with whom you live and your employer that you are a juror, and you can give them information about when you will be required to be in court, but you may not under any circumstances discuss with them or with anything else -- with anyone else anything related to the case.

Do not at any time during the trial request, accept, agree to accept, or discuss with any person any type of payment or benefit in return for supplying any information about the trial.  You must promptly tell me about any incidents you know

of involving an attempt by any person to improperly influence you or any member of the jury.

Do not visit or view the premises or place where the charged crimes were allegedly committed or any other premises or place involved in the case.  And you must not use things like internet maps or Google Earth or any other program or device to search for a view of any location discussed in the testimony.

Do not read, watch, or listen to any accounts or discussions related to the case which may be reported by newspapers, television, radio, the internet or any other form of news media, even if I haven't specifically mentioned it. And so that would include, of course, social media and anything on YouTube or anything like that anywhere in the internet ether.

Do not attempt to research any fact, issue or law related to the case, whether by discussions with others, by library or internet research or by any other reasons or source.

Again, we all live in this age of constant electronic communication and research.  And I want to emphasize that, in addition to not being allowed to speak face-to-face with anyone about the case, you can't communicate with anyone about the case by any other means, of course, telephone, text messages, email, internet chat rooms, blogs, social networking apps, et cetera.  Again, no use of technology or social media to post

or communicate about this case, even if I haven't specifically itemized it here.

Again, you must not provide any information about the case to anyone.  No search of the physical locations.  And ultimately, again, this is all to ensure a fair trial, ladies and gentlemen.  And our law, accordingly, sets forth serious consequences if these rules are not followed.  I trust that you understand and appreciate the importance of following these rules.  And in accord with your oath and promise, I expect you to do so in accordance with all the instructions that I have provided.

All right.  Keep bearing with me.  We have a few additional instructions to give to you at this time.

The First Amendment to the United States Constitution establishes certain rights which benefit everyone.  The First Amendment provides in part that Congress shall make no law abridging the freedom of speech.  A person is free to express any point of view.  But the First Amendment does not protect the kind of alleged criminal activity that is charged in this case.

So having instructed you concerning the rights of the defendant pursuant to the First Amendment, I also instruct you that the First Amendment is not a defense to the crimes charged in this indictment.  If the government proves all of the elements of those crimes beyond a reasonable doubt, you must

return a verdict of guilty regardless of whether the defendant's conduct had some connection to a claim of free speech.

I instruct you as well that in deciding whether the government has met its burden of proof, you may consider the defendant's statements which are admitted as evidence during the trial and give them whatever weight you wish to give those statements.

Taking notes.  If you wish, you may take notes to help you remember what witnesses say.  And we will give you notepads for that purpose.  If you do take notes, though, please, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  It's important that you do not let note-taking distract you from hearing the testimony of the witnesses or reviewing the exhibits as they're being presented.  And when you leave the courtroom, your notes should be left in the jury room, closed for no outside viewing.  And ultimately, whether or not you take notes, you should rely on your own memory of what was said by each of the witnesses and what you see in the exhibits.  Notes are there to assist your memory only, they're not entitled to any greater weight than your memory or impression about the evidence.

Now, how will this trial proceed in terms of overall structure?  For purposes of planning and organization, and because we're nearing 3:00, the presentation of opening

statements will take place starting tomorrow at 9:00 a.m.  So once I am completed with these preliminary instructions, you will be free to go for today, but we will begin afresh tomorrow morning at 9:00 a.m.  At that time, the government will make an opening statement, which, I will tell you, is simply an outline to help you understand the evidence as it is being presented. Next, the defendant may, but he does not have to make an opening statement.

And remember, opening statements are neither evidence nor argument.  They're just supposed to be an outline to help you understand the evidence as its being presented.

The government will then, after closing -- excuse me -- after opening statements are completed, will begin to present its witnesses, one by one, and the defendant may cross-examine those witnesses.

Following the government's case, the defendant may, if he wishes to, present witnesses whom the government can then cross-examine.  And then after all of the evidence has been presented, the parties will come back to you and present their closing arguments to try to summarize and interpret the evidence for you, and I will instruct you on the law that you must follow.

After that, you will go to the jury room to decide your verdict.

So that completes my preliminary instructions to you,

ladies and gentlemen.  What's going to happen now is you're going to be instructed to go to the jury deliberation room.  At that point you are going to receive a few additional instructions from the U.S. Marshal staff in terms of where to meet each morning for the pickup and drop-off locations.  So there will be a brief discussion on that logistical topic alone.  And then you will be free to go.  But we do expect your prompt arrival every day so that we can get started on time.

And, again, please make sure you adhere to all of the rules that I have announced now repeatedly.  So thank you very much.  Let's all rise for the jury.

A JUROR:  Do we leave these?

THE COURT:  Sure.  You can leave them right there. Thank you very much.

(The jury exited the courtroom at 2:55 p.m.)

THE COURT:  Okay.  Please have a seat.

Mr. Condon or Ms. Moran, if you could ensure that the marshal service is there to give that quick debrief.  And then I will hear from the parties if there is anything further before we adjourn for the day.

Mr. Shipley or Mr. Browne.

MR. SHIPLEY:  Nothing from the United States, Your Honor.

THE COURT:  Okay.  Mr. Routh.

MR. ROUTH:  Just on Erick Zuniga, he says that he has

all the paperwork and is willing to come, but we're not going to take that risk, so -- you know, even if you have all the paperwork in this day and age, it doesn't mean anything.  So he will not be -- he will not be appearing.

THE COURT:  Okay.  Okay.  Do you have any other witness updates, sir?

MR. ROUTH:  No.  Again, Atwill Milsun is good to arrive.

THE COURT:  Okay.  All right.  Then, of course, Oran Routh, and who is the third individual, sir?

MR. ROUTH:  Marshall Hinshaw.

THE COURT:  Okay.  He is also on board?

MR. ROUTH:  Yes, sir.  Yes, ma'am, I'm sorry.

THE COURT:  All right, then.  Ms. Militello, briefly, you mentioned that defense was conducting an internet email sweep to see if -- any Jencks that you may have in the defense custody.  Has that been completed?

MS. MILITELLO:  Yes.  We don't have any Jencks.

THE COURT:  Okay.  All right.  And to confirm, Mr. Routh, do you have any statements by these anticipated witnesses that you think would touch upon their anticipated testimony?

MR. ROUTH:  Not at all.  There is nothing.

THE COURT:  Okay.  All right, then.  What specific additional action does the government believe is necessary on

its pending Jencks motion?

MR. SHIPLEY:  Nothing, Your Honor.  We will inquire of the witnesses and go from there.  Thank you.

THE COURT:  Okay, then.  That is all for today.  Have a nice evening.  We will resume tomorrow at 8:45, please. Thank you.

(These proceedings concluded at 2:57 p.m.)

C E R T I F I C A T E


I hereby certify that the foregoing is an accurate

transcription of the proceedings in the above-entitled matter.


DATE:   09-10-2025          /s/Laura Melton
                            LAURA E. MELTON, RMR, CRR, FPR
                            Official Court Reporter
                            United States District Court
                            Southern District of Florida
                            Fort Pierce, Florida

**'**

**'96** [1]_ - 49:20

**1**

**1** [23]_ - 9:2_, 48:20_, 50:23_, 52:17_, 62:1_, 62:15_, 62:20_, 63:11_, 64:5_, 64:13_, 108:23_, 108:24_, 116:8_, 129:7_, 129:17_, 129:20_, 129:23_, 132:10_, 140:19_, 141:6_, 141:16_, 141:20_, 147:2

**1/2** [1]_ - 45:5

**10** [9]_ - 34:22_, 74:19_, 116:25_, 121:7_, 121:8_, 121:12_, 121:15_, 132:2_, 133:16

**100** [18]_ - 4:1_, 4:8_, 7:9_, 7:11_, 7:21_, 20:25_, 22:6_, 29:16_, 35:17_, 43:7_, 51:18_, 77:15_, 103:2_, 107:1_, 108:12_, 108:19_, 115:16_, 117:14

**102** [8]_ - 7:21_, 48:24_, 49:2_, 52:4_, 108:22_, 110:14_, 110:20_, 117:14

**103** [2]_ - 7:24_, 67:17

**105** [5]_ - 7:24_, 9:25_, 17:22_, 18:22_, 67:17

**108** [3]_ - 7:24_, 37:22_, 38:17

**109** [5]_ - 7:24_, 38:18_, 38:22_, 38:23_, 39:18

**11** [1]_ - 34:23

**111** [9]_ - 8:1_, 38:22_, 39:19_, 77:5_, 80:5_, 91:17_, 91:22_, 92:21_, 141:23

**111(b** [1]_ - 141:25

**1114** [1]_ - 141:18

**112** [3]_ - 8:1_, 9:25_, 18:24

**116** [1]_ - 8:1

**117** [1]_ - 8:1

**118** [1]_ - 8:2

**11:22** [2]_ - 107:9_, 107:22

**11:40** [2]_ - 107:10_, 107:21

**11:48** [1]_ - 107:22

**11th** [3]_ - 114:25_, 124:16_, 128:25

**12** [4]_ - 71:6_, 74:18_, 121:17_, 129:8

**120** [4]_ - 8:2_, 9:25_, 19:20_, 48:24

**121** [3]_ - 8:2_, 9:25_, 21:7

**124** [13]_ - 8:3_, 9:25_, 22:14_, 23:15_, 57:18_, 57:20_, 77:6_, 80:5_, 92:22_, 93:4_, 110:23_, 111:2_, 117:14

**126** [13]_ - 8:4_, 34:9_, 34:14_, 35:20_, 57:18_, 57:20_, 57:23_, 77:6_, 80:5_, 95:23_, 111:3_, 111:8_, 117:14

**128** [1]_ - 8:4

**129** [4]_ - 8:4_, 112:18_, 112:25_, 113:1

**12:04** [1]_ - 118:19

**12:06** [1]_ - 119:21

**12:15** [1]_ - 119:19

**12:21** [1]_ - 119:21

**12:43** [1]_ - 132:9

**12:45** [1]_ - 133:3

**12th** [1]_ - 129:11

**130** [2]_ - 8:4_, 46:13

**133** [5]_ - 8:4_, 38:22_, 41:1_, 42:3_, 67:18

**134** [8]_ - 8:4_, 77:6_, 80:5_, 83:21_, 84:11_, 84:12_, 96:18_, 98:15

**135** [2]_ - 8:4_, 67:18

**137** [4]_ - 8:5_, 55:15_, 68:20_, 70:4

**138** [3]_ - 8:5_, 68:20_, 71:20

**139** [8]_ - 3:25_, 4:9_, 7:9_, 7:11_, 8:5_, 68:21_, 72:16_, 73:17

**142** [11]_ - 8:5_, 67:18_, 67:19_, 77:6_, 80:5_, 98:20_, 98:21_, 98:25_, 100:20_, 113:2_, 113:23

**143** [9]_ - 8:5_, 9:25_, 23:16_, 25:24_, 76:11_, 114:1_, 114:5_, 114:16_, 114:22

**144** [1]_ - 8:5

**146** [1]_ - 8:7

**147** [2]_ - 8:7_, 67:18

**148** [4]_ - 8:7_, 55:22_, 56:13_, 67:18

**149** [1]_ - 8:7

**15** [12]_ - 63:18_, 87:17_, 121:20_, 121:22_, 126:17_, 127:22_, 135:24_, 140:19_, 141:1_, 141:12_, 142:2_, 142:11

**150** [9]_ - 8:7_, 9:25_, 25:25_, 28:11_, 111:9_, 111:14_, 114:24_, 115:1_, 117:14

**151** [8]_ - 8:7_, 9:25_, 28:12_, 68:21_, 73:19_, 115:6_, 115:15_, 115:24

**153** [3]_ - 8:7_, 38:22_, 42:5

**155** [1]_ - 8:7

**157** [3]_ - 8:7_, 10:1_, 29:20

**158** [7]_ - 8:7_, 77:6_, 80:5_, 83:24_, 84:5_, 100:23_, 101:2

**159** [1]_ - 8:7

**15th** [3]_ - 60:15_, 60:19_, 63:16

**161** [9]_ - 8:8_, 10:1_, 31:9_, 32:25_, 34:2_, 68:21_, 74:11_, 108:8_, 117:8

**162** [1]_ - 8:10

**166** [1]_ - 8:10

**168** [2]_ - 8:10_, 102:7

**169** [1]_ - 8:10

**17** [1]_ - 50:6

**170** [3]_ - 116:8_, 116:10

**171** [1]_ - 8:10

**172** [1]_ - 8:10

**173** [1]_ - 8:10

**175** [2]_ - 8:11_, 116:13

**176** [1]_ - 8:11

**179** [1]_ - 8:11

**18** [15]_ - 20:1_, 45:19_, 121:25_, 122:2_, 122:5_, 140:23_, 140:24_, 141:5_, 141:8_, 141:9_, 141:18_, 141:22_, 141:24_, 142:8_, 142:17

**19** [4]_ - 82:19_, 85:7_, 85:14_, 104:8

**1990s** [2]_ - 104:8_, 104:23

**1996** [1]_ - 49:5

**1st** [2]_ - 92:9_, 93:16

**2**

**2** [10]_ - 3:23_, 5:21_, 52:18_, 83:1_, 108:5_, 129:25_, 130:5_, 130:10_, 130:13_, 141:1

**20** [5]_ - 11:20_, 23:2_, 39:22_, 92:6_, 135:25

**2000** [1]_ - 49:20

**2006** [1]_ - 49:22

**2007** [1]_ - 49:25

**2008** [1]_ - 64:10

**2012** [1]_ - 64:10

**2014** [1]_ - 29:6

**2015** [1]_ - 36:17

**2016** [2]_ - 36:19_, 64:9

**2020** [4]_ - 23:21_, 37:3_, 46:23

**2024** [9]_ - 60:15_, 60:19_, 63:16_, 63:18_, 140:19_, 141:1_, 141:12_, 142:2_, 142:11

**21** [3]_ - 84:5_, 99:19_, 101:3

**22** [1]_ - 102:12

**23** [3]_ - 122:6_, 122:8_, 122:11

**24** [1]_ - 45:5

**24-80116** [1]_ - 6:11

**24-cr-80116-Cannon** [1]_ - 3:7

**25** [7]_ - 12:20_, 28:19_, 73:22_, 112:23_, 115:7_, 115:8

**26** [5]_ - 122:12_, 122:14_, 122:16_, 132:2_, 133:17

**26th** [1]_ - 97:1

**27** [5]_ - 122:18_, 122:20_, 122:22_, 132:2_, 133:17

**28** [9]_ - 14:21_, 122:24_, 123:1_, 123:3_, 132:2_, 133:17, 135:12_, 135:13_, 135:17

**2:00** [3]_ - 132:10_, 132:12_, 133:2

**2:10** [1]_ - 133:3

**2:29** [1]_ - 137:7

**2:31** [1]_ - 138:5

**2:55** [1]_ - 153:15

**2:57** [1]_ - 155:7

## 3

**3** [15]_ - 3:21_, 3:23_, 5:21_, 83:1_, 108:5_, 120:7_, 120:9_, 120:11_, 130:18_, 130:21_, 130:24_, 132:1_, 133:16_, 134:22_, 141:12

**30** [4]_ - 15:22_, 46:24_, 69:8_, 69:9

**3056** [1]_ - 140:24

**31st** [1]_ - 92:2

**32** [6]_ - 46:6_, 123:5_, 123:7_, 123:9_, 132:3_, 133:17

**34** [1]_ - 97:19

**351(c** [1]_ - 141:6

**351(c)** [1]_ - 140:25

**36** [6]_ - 123:11_, 123:13_, 123:15_, 127:21_, 132:3_, 133:17

**39** [3]_ - 123:17_, 123:19_, 123:22

**3:00** [1]_ - 151:25

**3rd** [1]_ - 115:6

## 4

**4** [9]_ - 120:13_, 120:14_, 120:16_, 124:7_, 131:1_, 131:7_, 131:10_, 131:17_, 142:2

**40** [7]_ - 46:18_, 123:23_, 123:25_, 124:2_, 126:19_, 132:3_, 133:17

**42** [2]_ - 124:4_, 124:6

**43** [1]_ - 85:8

**44** [2]_ - 124:8_, 124:11

**45** [8]_ - 70:13_, 99:21_, 103:22_, 124:12_, 124:14_, 124:16_, 132:3_, 133:17

**45-year-old** [1]_ - 113:10

**46** [3]_ - 124:18_, 124:20_, 124:22

**47** [5]_ - 124:24_, 125:1_, 125:3_, 126:17_, 127:25

**49** [5]_ - 125:6_, 129:9_, 129:11_, 132:3_, 133:17

## 5

**5** [3]_ - 9:4_, 124:23_,

142:10

**50** [2]_ - 12:17_, 71:5

**52** [6]_ - 129:15_, 129:16_, 129:19_, 129:22_, 132:4_, 133:17

**53** [1]_ - 129:24

**58** [1]_ - 84:6

**5:30** [1]_ - 30:25

## 6

**6** [2]_ - 34:22

**60** [3]_ - 5:22_, 117:1_, 132:16

**61** [1]_ - 130:4

**62** [10]_ - 7:15_, 67:17_, 67:20_, 108:7_, 117:8_, 130:9_, 130:13_, 130:15_, 132:4_, 133:17

**63** [6]_ - 7:15_, 130:17_, 130:20_, 130:23_, 132:4_, 133:17

**65** [14]_ - 7:16_, 43:21_, 43:24_, 46:12_, 67:17_, 77:5_, 80:4_, 80:21_, 80:24_, 81:4_, 84:16_, 84:24_, 130:25_, 131:5

**66** [7]_ - 7:16_, 68:21_, 68:23_, 70:3_, 131:6_, 131:9_, 131:12

**67** [7]_ - 7:16_, 9:24_, 10:2_, 131:17_, 131:20_, 132:4_, 133:17

**68** [10]_ - 7:16_, 35:25_, 37:20_, 75:10_, 76:1_, 81:13_, 84:11_, 84:14_, 102:10_, 103:12

## 7

**7** [6]_ - 120:17_, 120:19_, 120:21_, 123:4_, 132:2_, 133:16

**70** [8]_ - 7:16_, 67:17_, 81:24_, 84:11_, 84:14_, 103:15_, 103:17_, 105:11

**72** [4]_ - 7:18_, 9:23_, 9:24_, 11:11

**73** [10]_ - 7:18_, 9:24_, 12:13_, 55:9_, 83:16_, 84:11_, 84:14_, 105:12_, 105:18_, 106:15

**75** [1]_ - 7:18

**78** [11]_ - 7:18_, 9:24_,

13:21_, 77:5_, 80:4_, 87:10_, 87:14_, 111:18_, 112:12_, 112:15

## 8

**8** [1]_ - 120:23

**80** [1]_ - 132:13

**87** [8]_ - 7:18_, 77:5_, 80:5_, 82:14_, 82:15_, 90:2_, 90:5_, 91:16

**88** [4]_ - 7:18_, 9:24_, 15:17_, 67:17

**89** [1]_ - 7:18

**8:38** [1]_ - 6:5

**8:45** [1]_ - 155:5

**8:50** [1]_ - 6:5

## 9

**9** [5]_ - 121:1_, 121:3_, 121:5_, 132:2_, 133:16

**9/11** [1]_ - 26:23

**90** [3]_ - 7:18_, 83:5_, 118:7

**91** [3]_ - 7:20_, 9:25_, 16:9

**92** [3]_ - 7:20_, 9:25_, 17:4

**922(g)(1)** [1]_ - 142:9

**922(k)** [1]_ - 142:18

**924(c)(1)(A)** [1]_ - 141:9

**924(c)(1)(A)(ii** [1]_ - 141:10

**93** [4]_ - 7:20_, 54:21_, 55:7_, 55:8

**95** [2]_ - 7:20_, 83:5

**96** [1]_ - 7:21

**97** [4]_ - 7:21_, 54:13_, 54:14_, 54:20

**9:00** [2]_ - 152:1_, 152:4

## A

**a)(1)** [1]_ - 141:23

**a.m** [6]_ - 6:5_, 107:22_, 152:1_, 152:4

**abide** [1]_ - 102:23

**abilities** [1]_ - 9:8

**ability** [50]_ - 12:9_, 13:15_, 15:10_, 16:5_, 16:25_, 17:17_, 20:24_, 22:1_, 23:11_, 25:21_, 29:16_,

30:10_, 33:19_, 37:8_, 38:13_, 39:14_, 40:13_, 42:1_, 43:16_, 44:24_, 45:12_, 50:10_, 50:20_, 54:3_, 68:10_, 71:16_, 73:14_, 74:4_, 74:25_, 76:4_, 76:16_, 81:18_, 82:6_, 82:9_, 89:9_, 90:16_, 91:12_, 94:2_, 94:24_, 95:4_, 95:15_, 98:2_, 100:12_, 101:9_, 101:24_, 105:2_, 111:11_, 112:24_, 114:18_, 147:3

**able** [20]_ - 24:10_, 27:5_, 35:13_, 48:4_, 51:18_, 57:15_, 59:25_, 61:20_, 69:25_, 75:3_, 78:2_, 78:9_, 80:25_, 85:20_, 87:23_, 88:1_, 88:9_, 92:17_, 136:14_, 137:1

**abridging** [1]_ - 150:17

**abroad** [1]_ - 39:6

**absence** [1]_ - 30:23

**absolutely** [8]_ - 29:18_, 38:15_, 51:19_, 51:23_, 56:11_, 74:9_, 89:21_, 113:12

**Absolutely** [2]_ - 115:17_, 115:18

**absorbed** [1]_ - 95:14

**abuse** [2]_ - 83:25_, 90:14

**abused** [1]_ - 113:3

**academy** [3]_ - 36:2_, 37:7_, 76:13

**accept** [92]_ - 120:7_, 120:8_, 120:9_, 120:10_, 120:13_, 120:17_, 120:18_, 120:19_, 120:20_, 120:23_, 121:1_, 121:2_, 121:3_, 121:4_, 121:7_, 121:8_, 121:11_, 121:14_, 121:17_, 121:20_, 121:21_, 121:22_, 121:25_, 122:1_, 122:2_, 122:6_, 122:7_, 122:8_, 122:12_, 122:13_, 122:14_, 122:15_, 122:18_, 122:19_, 122:20_, 122:21_, 122:24_, 122:25_, 123:1_, 123:2_, 123:5_, 123:6_, 123:7_, 123:8_, 123:11_, 123:12_, 123:13_, 123:14_, 123:17_, 123:18_, 123:19_, 123:23_, 123:24_, 123:25_, 124:1_, 124:4_, 124:8_, 124:12_, 124:13_, 124:14_, 124:15_, 124:18_, 124:19_, 124:20_, 124:24

_, 124:25_, 125:1_, 125:6_, 129:8_, 129:10_, 129:16_, 129:18_, 129:19_, 129:21_, 129:24_, 130:4_, 130:9_, 130:11_, 130:12_, 130:14_, 130:17_, 130:19_, 130:20_, 130:22_, 130:25_, 131:6_, 131:8_, 131:9_, 131:17_, 131:19_, 148:22_, 148:23

**accepted** [19]_ - 120:11_, 120:21_, 121:5_, 121:12_, 121:15_, 122:16_, 122:22_, 123:3_, 123:9_, 123:15_, 124:2_, 124:16_, 125:9_, 127:21_, 128:25_, 129:22_, 130:15_, 130:24_, 131:20

**accommodation** [1]_ - 99:3

**accomplish** [1]_ - 62:11

**accomplishing** [1]_ - 78:5

**accord** [1]_ - 150:9

**accordance** [1]_ - 150:10

**according** [3]_ - 119:2_, 127:25_, 138:25

**accordingly** [1]_ - 150:6

**account** [4]_ - 6:1_, 120:1_, 141:20_, 147:2

**accountants** [1]_ - 47:6

**accounts** [2]_ - 110:24_, 149:9

**accurate** [1]_ - 21:11

**accusation** [2]_ - 60:9_, 147:19

**accused** [2]_ - 90:14_, 90:22

**achieved** [3]_ - 14:5_, 14:8_, 14:9

**acknowledged** [1]_ - 109:22

**acknowledgement** [1]_ - 67:13

**acquaintances** [1]_ - 44:4

**act** [2]_ - 61:5_, 143:14

**acting** [4]_ - 143:21_, 145:3_, 145:5_, 145:10

**action** [1]_ - 154:25

**activity** [3]_ - 44:22_, 104:20_, 150:19

**actors** [1]_ - 89:18

**acts** [4]_ - 61:9_, 61:10_, 61:13_, 61:22

**actual** [3]_ - 57:6_, 64:2_, 132:15

**addition** [1]_ - 149:21

**additional** [30]_ - 5:23_, 35:22_, 47:25_, 52:10_, 59:11_, 76:20_, 77:1_, 79:4_, 80:4_, 80:18_, 84:11_, 106:20_, 106:22_, 107:16_, 107:17_, 112:8_, 113:15_, 117:19_, 118:2_, 119:4_, 119:8_, 132:20_, 134:19_, 135:4_, 135:23_, 136:8_, 147:12_, 150:13_, 153:3_, 154:25

**address** [10]_ - 7:1_, 66:10_, 80:9_, 90:7_, 106:20_, 117:6_, 118:2_, 126:23_, 137:11_, 142:23

**addressed** [1]_ - 107:5

**addressing** [1]_ - 107:24

**adequate** [1]_ - 128:10

**adequately** [1]_ - 107:4

**adhere** [1]_ - 153:9

**adherence** [2]_ - 61:16_, 137:4

**adjourn** [1]_ - 153:20

**administrative** [2]_ - 19:3_, 93:12

**administrator** [1]_ - 22:18

**admitted** [7]_ - 59:18_, 143:25_, 144:11_, 145:18_, 146:10_, 146:12_, 151:6

**admonition** [1]_ - 81:20

**admonitions** [1]_ - 79:19

**adopted** [2]_ - 41:3_, 41:9

**adult** [1]_ - 41:18

**advice** [3]_ - 55:20_, 125:16_, 126:7

**advise** [2]_ - 132:17_, 132:18

**aerospace** [1]_ - 32:13

**affect** [14]_ - 12:9_, 20:24_, 22:1_, 27:2_, 90:16_, 94:1_, 98:2_, 100:12_, 101:24_, 103:10_, 128:14_, 128:15_, 135:14_, 143:13

**affecting** [1]_ - 142:5

**affirm** [3]_ - 6:16_, 114:15

_, 138:23

**affirmed** [2]_ - 112:14_, 112:24

**afresh** [1]_ - 152:3

**African** [4]_ - 125:8_, 127:7_, 127:20_, 128:1

**African-American** [2]_ - 127:7_, 127:20

**afternoon** [1]_ - 133:6

**age** [4]_ - 36:10_, 81:7_, 149:19_, 154:3

**agencies** [3]_ - 12:22_, 20:2_, 20:24

**agency** [3]_ - 9:18_, 12:18_, 141:17

**agenda** [1]_ - 82:22

**Agent** [2]_ - 141:15_, 141:20

**agent** [6]_ - 13:10_, 18:2_, 18:15_, 39:21_, 48:11_, 105:24

**agents** [3]_ - 48:8_, 48:9_, 105:24

**ages** [1]_ - 92:3

**ago** [24]_ - 14:23_, 15:22_, 22:23_, 23:1_, 23:2_, 23:3_, 23:8_, 26:9_, 39:22_, 41:19_, 46:6_, 51:11_, 66:12_, 74:13_, 74:19_, 85:8_, 92:8_, 94:14_, 99:21_, 101:8_, 104:6_, 112:19_, 112:23_, 126:7

**agree** [7]_ - 63:19_, 113:23_, 114:13_, 115:22_, 118:18_, 144:6_, 148:23

**agreed** [3]_ - 60:18_, 63:15_, 146:15

**agreements** [1]_ - 146:16

**agrees** [1]_ - 145:16

**ahead** [5]_ - 26:2_, 54:8_, 84:13_, 108:13_, 134:23

**Air** [3]_ - 70:8_, 70:9_, 70:11

**albeit** [1]_ - 25:18

**alert** [1]_ - 44:13

**alerted** [1]_ - 146:19

**allegation** [1]_ - 62:16

**allegations** [6]_ - 8:25_, 9:7_, 9:8_, 53:21_, 55:25_, 106:6

**alleged** [13]_ - 9:1_, 48:19

_, 50:23_, 52:21_, 52:24_, 52:25_, 60:8_, 60:13_, 109:5_, 109:24_, 141:10_, 141:25_, 150:19

**allegedly** [2]_ - 61:9_, 149:4

**alleges** [1]_ - 9:4

**alleviate** [2]_ - 24:18_, 99:3

**allotted** [2]_ - 6:2_, 118:24

**allowances** [1]_ - 113:16

**allowed** [3]_ - 61:17_, 66:1_, 149:21

**almost** [2]_ - 45:5_, 74:18

**alone** [6]_ - 98:11_, 109:11_, 110:18_, 143:7_, 145:12_, 153:7

**altered** [1]_ - 142:15

**Alternate** [14]_ - 129:17_, 129:20_, 129:22_, 129:25_, 130:5_, 130:10_, 130:13_, 130:18_, 130:21_, 130:24_, 131:1_, 131:6_, 131:10_, 131:17

**alternate** [3]_ - 119:24_, 130:16_, 131:21

**alternates** [11]_ - 119:1_, 119:5_, 119:8_, 119:13_, 129:14_, 130:3_, 130:8_, 131:4_, 131:13_, 131:14_, 132:4

**Amendment** [5]_ - 150:14_, 150:16_, 150:18_, 150:22_, 150:23

**America** [3]_ - 3:7_, 6:11_, 50:14

**American** [5]_ - 53:7_, 127:7_, 127:20_, 127:23_, 128:2

**Americans** [1]_ - 125:9

**ammunition** [5]_ - 52:13_, 52:16_, 52:23_, 53:5_, 142:5

**amount** [1]_ - 139:15

**ample** [1]_ - 110:5

**anecdotes** [1]_ - 110:6

**announce** [1]_ - 132:15

**announced** [1]_ - 153:10

**annoyed** [1]_ - 97:11

**answer** [11]_ - 6:17_, 8:17_, 17:25_, 34:16_, 40:21_, 45:19_, 45:21_, 99:19_, 102:16_, 125:17_, 146:4

**answered** [9]_ - 9:21_, 52:5_, 67:23_, 68:9_, 68:13_, 87:17_, 102:16_, 145:23_, 145:25

**answering** [2]_ - 21:3_, 22:5

**answers** [5]_ - 8:19_, 9:11_, 115:23_, 127:23_, 145:8

**anticipate** [3]_ - 3:22_, 105:23_, 107:18

**anticipated** [2]_ - 154:20 _, 154:21

**anytime** [1]_ - 97:5

**apologies** [1]_ - 117:4

**apologize** [3]_ - 34:10_, 82:14_, 137:6

**appeal** [2]_ - 83:5_, 127:6

**appearances** [1]_ - 3:8

**appeared** [1]_ - 128:3

**appearing** [1]_ - 154:4

**applications** [3]_ - 32:4

**applies** [1]_ - 79:13

**apply** [2]_ - 64:5_, 64:13

**appointed** [2]_ - 53:13_, 53:16

**appreciate** [2]_ - 39:17_, 150:8

**appreciation** [1]_ - 47:19

**Apprentice** [1]_ - 50:2

**approaches** [1]_ - 139:23

**appropriate** [3]_ - 81:17 _, 134:18_, 134:24

**apps** [1]_ - 149:24

**area** [2]_ - 137:2_, 137:24

**areas** [2]_ - 6:25_, 80:22

**argue** [1]_ - 143:17

**argument** [4]_ - 4:18_, 121:10_, 143:16_, 152:10

**arguments** [4]_ - 143:22 _, 145:2_, 145:4_, 152:20

**arisen** [2]_ - 78:23_, 79:2

**Arizona** [1]_ - 70:18

**Army** [6]_ - 37:1_, 70:19_, 70:20_, 72:19_, 73:2_, 75:13

**arose** [1]_ - 129:2

**arrangement** [1]_ - 99:5

**arrangements** [1]_ -

27:7

**arrest** [3]_ - 44:18_, 83:7_, 93:25

**arrested** [2]_ - 83:9_, 93:24

**arresting** [1]_ - 115:10

**arrests** [2]_ - 44:21_, 45:20

**arrival** [2]_ - 135:4_, 153:8

**arrive** [1]_ - 154:8

**arthritis** [1]_ - 89:3

**article** [1]_ - 56:8

**artist** [1]_ - 18:12

**aside** [11]_ - 48:4_, 57:15 _, 59:8_, 60:1_, 66:22_, 76:7_, 96:7_, 100:7_, 103:3_, 109:13_, 109:16

**assassinate** [3]_ - 62:2_, 62:19_, 62:22

**assassination** [9]_ - 4:17_, 9:3_, 62:14_, 62:16 _, 62:18_, 62:20_, 63:12_, 64:6_, 64:13

**assault** [2]_ - 75:24_, 141:14

**assemble** [3]_ - 4:11_, 67:6_, 134:13

**assembled** [2]_ - 5:20_, 7:23

**assembly** [5]_ - 8:10_, 77:3_, 77:10_, 95:19_, 98:16

**assess** [1]_ - 126:23

**assessing** [1]_ - 78:8

**asset** [4]_ - 44:1_, 44:3_, 44:6_, 44:10

**assist** [1]_ - 151:20

**assistant** [4]_ - 19:3_, 19:15_, 22:17_, 93:12

**associated** [2]_ - 40:19_, 94:1

**associates** [2]_ - 20:12_, 21:17

**Association** [1]_ - 72:4

**assume** [1]_ - 73:25

**assure** [1]_ - 148:11

**ATF** [6]_ - 18:2_, 18:15_, 39:21_, 40:13_, 40:17_, 40:19

**attained** [1]_ - 14:3

**attempt** [6]_ - 59:14_, 62:4_, 62:5_, 140:21_,

149:1_, 149:16

**attempted** [5]_ - 9:3_, 62:16_, 63:12_, 64:5_, 64:13

**attempting** [2]_ - 62:1_, 62:10

**attendance** [1]_ - 134:6

**attendant** [1]_ - 79:1

**attention** [4]_ - 31:6_, 67:1_, 139:13_, 139:15

**attorney's** [1]_ - 33:6

**attorneys** [2]_ - 125:14_, 125:16

**attract** [2]_ - 139:13_, 139:15

**Atwill** [1]_ - 154:7

**audio** [2]_ - 88:19_, 112:8

**August** [1]_ - 23:21

**aunt** [1]_ - 15:25

**aunts** [2]_ - 15:19_, 16:1

**authorized** [1]_ - 57:8

**automatic** [1]_ - 75:24

**automatically** [1]_ - 48:10

**available** [2]_ - 7:10_, 117:20

**await** [3]_ - 89:23_, 95:19 _, 135:4

**aware** [1]_ - 79:3

**awareness** [1]_ - 125:10

**awkward** [2]_ - 59:5_, 139:21

**B**

**background** [12]_ - 43:15_, 45:11_, 51:1_, 54:5_, 71:15_, 89:8_, 91:11_, 94:23_, 98:1_, 100:11_, 101:23_, 103:9

**bad** [3]_ - 65:2_, 89:18_, 91:6

**bag** [1]_ - 51:6

**balancing** [1]_ - 32:15

**Baltimore** [1]_ - 15:20

**bank** [2]_ - 81:25_, 104:3

**banker** [2]_ - 103:19_, 103:21

**bankrupt** [2]_ - 49:7_, 110:1

**banquet** [1]_ - 14:21

**barrier** [1]_ - 128:4

**base** [4]_ - 60:2_, 70:6_, 70:12_, 102:11

**based** [18]_ - 7:3_, 13:4_, 50:20_, 53:2_, 57:16_, 61:1_, 67:2_, 109:7_, 109:22_, 110:6_, 110:9_, 110:24_, 111:10_, 117:19 _, 128:3_, 128:4_, 136:5_, 145:11

**basic** [5]_ - 6:25_, 75:15_, 139:6_, 147:15

**basis** [5]_ - 112:21_, 112:25_, 113:22_, 115:3_, 115:23

**batch** [7]_ - 82:25_, 107:12_, 108:5_, 117:3_, 117:12_, 117:14_, 132:19

**Batson** [3]_ - 125:7_, 126:9_, 127:10

**Beach** [6]_ - 19:3_, 140:19 _, 141:2_, 141:12_, 142:2 _, 142:12

**bear** [5]_ - 9:8_, 76:23_, 147:11_, 147:16_, 148:6

**bearing** [9]_ - 19:16_, 33:24_, 37:7_, 38:13_, 39:13_, 41:25_, 64:18_, 143:12_, 150:12

**bearings** [1]_ - 10:5

**bears** [1]_ - 60:10

**bee** [1]_ - 70:23

**began** [1]_ - 53:23

**begin** [3]_ - 137:23_, 152:3_, 152:13

**beginning** [3]_ - 59:3_, 117:14_, 134:2

**behind** [3]_ - 9:13_, 44:15 _, 70:12

**beliefs** [2]_ - 53:2_, 102:13

**believability** [1]_ - 147:11

**believes** [1]_ - 53:7

**belongs** [1]_ - 116:22

**bench** [1]_ - 4:10

**benefit** [2]_ - 148:24_, 150:15

**best** [3]_ - 84:2_, 102:18_, 107:18

**better** [1]_ - 69:17

**between** [1]_ - 117:8

**beverage** [1]_ - 97:21

**beyond** [5]_ - 57:10_, 60:11_, 118:8_, 148:5_, 150:25

**bias** [6]_ - 51:21_, 109:21 _, 110:6_, 112:23_, 115:4 _, 147:6

**biased** [1]_ - 110:24

**big** [4]_ - 51:9_, 87:21_, 97:16_, 137:16

**bill** [1]_ - 23:5

**billing** [1]_ - 93:7

**bills** [1]_ - 47:5

**biological** [2]_ - 41:3_, 41:9

**bit** [20]_ - 8:16_, 8:20_, 9:13_, 19:14_, 37:13_, 48:1_, 48:15_, 52:6_, 59:5 _, 75:20_, 87:19_, 88:3_, 88:5_, 91:3_, 95:2_, 97:11 _, 132:11_, 134:23_, 139:11_, 140:17

**black** [1]_ - 134:21

**Blanford** [6]_ - 13:20_, 15:17_, 19:20_, 35:24_, 48:13_, 135:16

**blatantly** [2]_ - 111:7_, 127:15

**block** [1]_ - 3:23

**blogs** [1]_ - 149:24

**board** [1]_ - 154:12

**bomb** [2]_ - 51:9_, 70:11

**bombers** [1]_ - 71:13

**bombs** [1]_ - 71:9

**box** [3]_ - 7:20_, 57:7_, 88:13

**brain** [1]_ - 37:14

**branch** [2]_ - 36:25_, 141:17

**brandished** [1]_ - 141:11

**break** [7]_ - 76:22_, 77:4_, 106:19_, 118:1_, 118:20_, 119:18

**breakfast** [1]_ - 112:22

**breezy** [1]_ - 109:17

**Brevard** [1]_ - 136:2

**brewer** [1]_ - 116:10

**bridge** [1]_ - 137:16

**brief** [9]_ - 5:19_, 6:3_, 24:22_, 56:8_, 77:1_, 85:2 _, 87:16_, 96:24_, 153:6

**briefly** [10]_ - 4:13_, 25:18 _, 28:20_, 34:18_, 69:11_,

103:18_, 104:2_, 146:21_, 148:8_, 154:14

**bring** [10]_ - 58:4_, 67:12_, 107:13_, 125:10_, 132:16 _, 137:15_, 137:22_, 137:24_, 138:2_, 146:18

**brings** [1]_ - 110:2

**broad** [5]_ - 16:5_, 42:24_, 43:1_, 45:11_, 67:8

**broadly** [1]_ - 16:21

**broke** [4]_ - 35:1_, 55:16_, 77:20_, 108:15

**broken** [1]_ - 79:8

**brother** [4]_ - 26:3_, 35:5 _, 41:4_, 41:9

**brought** [5]_ - 3:23_, 67:25_, 69:15_, 90:9_, 147:18

**Broward** [1]_ - 11:18

**BROWNE** [64]_ - 3:3_, 3:14_, 4:6_, 80:20_, 81:7 _, 81:12_, 81:24_, 82:4_, 82:13_, 82:16_, 82:20_, 82:23_, 106:25_, 107:6_, 108:12_, 108:14_, 108:22 _, 109:21_, 110:23_, 111:3_, 111:9_, 111:15_, 112:20_, 113:9_, 115:3_, 115:12_, 116:20_, 117:13 _, 117:24_, 118:5_, 118:13_, 119:4_, 119:17_, 120:4_, 120:8_, 120:18_, 121:2_, 121:14_, 121:18_, 121:23_, 122:1_, 122:9_, 122:13_, 122:21_, 122:25 _, 123:8_, 123:12_, 123:20_, 123:24_, 124:9_, 124:15_, 124:19_, 125:2_, 126:24_, 127:19_, 129:18 _, 130:6_, 130:14_, 130:19_, 131:8_, 131:19_, 132:6_, 132:23_, 137:13

**Browne** [36]_ - 3:11_, 108:10_, 109:20_, 113:8_, 115:1_, 115:11_, 116:19_, 117:10_, 119:16_, 120:2_, 120:7_, 120:17_, 121:1_, 121:17_, 121:22_, 121:25 _, 122:8_, 122:12_, 122:20_, 122:24_, 123:7_, 123:11_, 123:19_, 123:23 _, 124:8_, 124:14_, 124:18_, 125:1_, 129:16_, 130:4_, 130:12_, 130:17_, 131:6_, 132:5_, 137:12_, 153:21

**bump** [1]_ - 70:9

**bunch** [1]_ - 26:16

**burden** [5]_ - 60:10_, 142:21_, 147:22_, 147:23 _, 151:5

**business** [1]_ - 46:17

**businesses** [4]_ - 48:23 _, 49:3_, 49:12_, 52:9

**businessman** [1]_ - 50:12

**busy** [2]_ - 37:18_, 38:2

**but..** [1]_ - 27:23

**Butler** [6]_ - 4:17_, 4:25_, 59:15_, 59:19_, 59:20_, 60:2

## C

**calendar** [1]_ - 47:5

**caliber** [1]_ - 71:5

**canceled** [2]_ - 27:16_, 114:24

**candid** [2]_ - 8:18_, 67:14

**candidate** [13]_ - 9:3_, 48:21_, 50:12_, 62:2_, 63:13_, 63:16_, 63:20_, 63:22_, 63:25_, 64:3_, 64:6_, 140:23

**candidates** [1]_ - 64:12

**candor** [1]_ - 41:6

**cannot** [9]_ - 57:10_, 59:7 _, 64:18_, 64:21_, 79:9_, 115:21_, 145:25_, 146:1_, 148:1

**capable** [1]_ - 111:25

**capacity** [5]_ - 11:4_, 33:17_, 90:11_, 97:21_, 143:20

**capital** [1]_ - 81:18

**capsule** [1]_ - 28:21

**captain** [2]_ - 14:3_, 14:8

**captured** [1]_ - 104:12

**car** [5]_ - 4:2_, 77:20_, 78:12_, 78:19_, 108:15

**career** [9]_ - 13:14_, 14:3 _, 14:4_, 15:3_, 24:22_, 28:21_, 29:14_, 111:21_, 114:16

**careers** [1]_ - 24:5

**careful** [1]_ - 92:23

**carefully** [4]_ - 57:1_, 79:8_, 126:8_, 131:24

**carpenter** [1]_ - 26:14

**carry** [2]_ - 71:7_, 75:25

**carrying** [1]_ - 144:15

**case** [146]_ - 3:5_, 3:6_, 4:21_, 6:10_, 6:19_, 7:1_, 7:3_, 8:25_, 9:10_, 10:23 _, 12:10_, 13:9_, 13:11_, 15:11_, 17:1_, 20:25_, 22:11_, 23:12_, 27:19_, 29:17_, 30:11_, 32:22_, 33:20_, 35:14_, 43:17_, 45:14_, 46:1_, 50:10_, 50:20_, 51:25_, 52:12_, 52:14_, 53:22_, 53:23_, 54:4_, 54:7_, 54:10_, 54:15_, 55:25_, 56:7_, 56:17_, 56:22_, 56:23_, 57:2_, 57:13_, 57:16_, 59:6_, 59:8_, 59:13_, 59:16_, 59:17_, 59:21_, 60:18_, 61:3_, 62:3_, 62:7 _, 63:14_, 63:19_, 64:3_, 64:18_, 65:10_, 65:16_, 65:25_, 66:3_, 66:7_, 66:16_, 66:20_, 67:1_, 68:1_, 68:5_, 71:16_, 72:12_, 73:15_, 79:9_, 79:11_, 79:14_, 79:16_, 81:17_, 81:19_, 86:6_, 86:7_, 88:16_, 91:8_, 95:11_, 95:16_, 96:10_, 96:12_, 99:24_, 100:4_, 101:10_, 101:15_, 101:21 _, 102:14_, 102:21_, 104:10_, 104:16_, 104:19 _, 105:23_, 105:25_, 106:7_, 106:13_, 109:5_, 109:13_, 109:24_, 110:5_, 110:9_, 110:11_, 110:16_, 114:9_, 115:21_, 128:21_, 131:23_, 132:1_, 134:4_, 136:21_, 138:20_, 138:24 _, 139:6_, 139:15_, 139:18_, 139:25_, 140:12 _, 143:3_, 143:13_, 143:21_, 143:23_, 144:8_, 145:6_, 146:8_, 147:6_, 147:13_, 147:14_, 147:23 _, 148:16_, 148:21_, 149:5_, 149:10_, 149:17_, 149:22_, 149:23_, 150:1_, 150:4_, 150:20_, 151:13_, 152:16

**Case** [2]_ - 3:7_, 6:10

**case-specific** [1]_ - 7:1

**cases** [2]_ - 33:11_, 56:18

**cash** [1]_ - 45:6

**cashier** [1]_ - 45:6

**casino** [3]_ - 49:5_, 49:6_,

50:5

**Casino** [1] - 50:6

**category** [1] - 68:2

**causes** [1] - 107:3

**caution** [4] - 60:20, 69:17, 136:21, 143:1

**CCL** [1] - 70:5

**CCW** [1] - 74:12

**certain** [9] - 15:14, 20:20, 101:19, 109:12, 136:15, 144:24, 146:15, 148:10, 150:15

**certainly** [3] - 111:18, 116:6, 128:21

**certificates** [1] - 134:6

**cetera** [4] - 57:12, 102:18, 149:25

**chain** [1] - 144:17

**chair** [1] - 134:21

**chairs** [4] - 7:23, 134:14, 134:18, 138:18

**challenge** [8] - 109:8, 110:13, 112:12, 112:21, 113:22, 116:1, 126:9, 127:10

**challenges** [4] - 111:17, 117:7, 117:13, 118:2

**chance** [1] - 85:2

**change** [4] - 36:3, 40:21, 114:16, 127:12

**changed** [1] - 24:5

**changes** [1] - 126:25

**characterization** [1] - 12:6

**charge** [1] - 9:2

**charged** [18] - 52:12, 60:8, 60:12, 60:22, 61:2, 61:6, 61:11, 61:15, 62:1, 62:7, 63:11, 64:5, 64:12, 143:2, 144:3, 149:4, 150:19, 150:23

**charges** [3] - 90:14, 140:14, 142:24

**chat** [2] - 104:2, 149:24

**check** [1] - 131:24

**Chicago** [1] - 14:13

**child** [2] - 3:25, 34:17

**childhood** [1] - 70:16

**Chinese** [1] - 48:17

**Chinese-made** [1] - 48:17

**choice** [1] - 148:2

**cholesterol** [1] - 111:21

**choose** [2] - 144:21, 147:25

**chose** [2] - 24:23, 27:21

**chosen** [41] - 9:9, 12:10, 13:16, 16:6, 18:18, 19:17, 20:25, 23:12, 24:22, 25:22, 32:22, 35:17, 39:14, 43:8, 43:16, 45:13, 46:1, 51:17, 52:14, 62:3, 63:7, 64:19, 65:10, 66:17, 68:11, 74:5, 78:17, 88:14, 90:17, 91:9, 92:17, 98:2, 98:10, 103:4, 104:25, 105:4, 131:24, 132:17, 132:18, 132:19, 138:9

**Christopher** [1] - 3:11

**church** [1] - 25:13

**circle** [2] - 31:23, 78:15

**circumstances** [4] - 118:23, 119:11, 144:17, 148:20

**circumstantial** [2] - 144:17, 144:21

**City** [1] - 11:17

**civil** [1] - 90:10

**claim** [1] - 151:2

**claimed** [2] - 110:2, 111:19

**claiming** [1] - 126:15

**claims** [1] - 128:1

**clarification** [1] - 47:24

**clarifications** [1] - 42:9

**clarify** [1] - 4:16

**class** [1] - 113:5

**classes** [5] - 32:17, 71:23, 72:10, 73:7, 73:8

**clean** [1] - 147:21

**cleanup** [1] - 99:13

**clear** [12] - 5:20, 58:11, 62:7, 65:19, 83:11, 92:13, 101:22, 105:22, 114:18, 127:3, 127:9, 127:16

**clear-minded** [1] - 101:22

**clearly** [1] - 109:15

**clerical** [1] - 23:9

**Clinton** [1] - 64:9

**close** [19] - 9:17, 11:25, 12:8, 12:25, 13:1, 13:3, 13:9, 19:12, 20:12, 21:17, 25:11, 25:16, 25:19, 30:4, 71:2, 101:4, 101:7, 105:19, 128:2

**closed** [2] - 49:21, 151:17

**closely** [1] - 55:12

**closing** [4] - 143:16, 145:4, 152:12, 152:20

**cloud** [1] - 66:18

**club** [1] - 14:22

**CO** [1] - 16:13

**coach** [1] - 18:13

**Code** [10] - 140:24, 140:25, 141:5, 141:8, 141:10, 141:18, 141:22, 141:24, 142:8, 142:18

**coding** [1] - 47:4

**cohort** [2] - 5:25, 108:11

**collateral** [1] - 67:25

**collection** [1] - 23:6

**collections** [1] - 93:7

**colloquy** [1] - 113:11

**color** [1] - 13:11

**Colorado** [2] - 17:8, 17:14

**combines** [1] - 83:1

**comfortable** [4] - 27:19, 85:1, 88:20, 118:11

**coming** [7] - 4:21, 5:5, 54:17, 56:7, 95:10, 126:4, 126:6

**commented** [1] - 110:14

**comments** [2] - 79:10, 137:11

**commerce** [4] - 52:19, 52:21, 142:6, 142:17

**commercial** [1] - 97:19

**commit** [2] - 61:15, 141:21

**commitment** [1] - 27:25

**committed** [3] - 61:2, 61:5, 149:4

**committing** [2] - 61:3, 63:24

**communicate** [2] - 149:22, 150:1

**communication** [4] - 79:11, 79:14, 136:22, 149:20

**community** [2] - 56:20, 134:3

**company** [4] - 46:16, 69:4, 69:5, 109:25

**competition** [2] - 50:1, 110:1

**competitive** [3] - 71:24, 74:14, 74:21

**complete** [4] - 8:18, 21:11, 32:18, 62:11

**completed** [3] - 152:2, 152:13, 154:17

**completely** [6] - 13:15, 57:13, 101:25, 102:20, 105:3, 105:8

**completeness** [2] - 39:17, 41:6

**completes** [2] - 34:4, 152:25

**Complied** [1] - 133:22

**complying** [1] - 32:24

**con** [1] - 89:16

**concealed** [4] - 69:14, 69:21, 74:17, 75:25

**conceptions** [1] - 109:12

**concepts** [2] - 66:10, 142:19

**concern** [5] - 24:18, 27:5, 103:1, 112:9, 128:12

**concerned** [4] - 78:4, 90:8, 125:15, 144:19

**concerning** [1] - 150:21

**concerns** [8] - 13:25, 22:8, 32:20, 45:20, 60:6, 79:3, 84:4, 132:22

**conclude** [3] - 61:1, 131:22, 138:13

**concluded** [1] - 155:7

**concludes** [1] - 134:4

**conclusion** [2] - 110:16, 128:22

**Condon** [7] - 43:22, 84:9, 92:23, 102:6, 134:20, 134:25, 153:17

**conduct** [7] - 5:25,

45:24_, 60:23_, 82:18_, 148:8_, 148:10_, 151:2

**conducting** [1]_ - 154:15

**confident** [2]_ - 35:16_, 100:6

**confirm** [3]_ - 7:7_, 7:12_, 154:19

**conflict** [3]_ - 113:13_, 114:10_, 115:12

**conflicts** [1]_ - 93:19

**Congress** [1]_ - 150:16

**Connecticut** [5]_ - 14:4_, 14:9_, 14:10_, 14:16_, 112:14

**connection** [8]_ - 33:24_, 34:11_, 38:19_, 41:15_, 49:3_, 90:12_, 104:19_, 151:2

**connections** [7]_ - 14:15_, 21:18_, 29:23_, 34:6_, 42:8_, 43:6_, 112:15

**consequences** [3]_ - 67:25_, 94:1_, 150:7

**consider** [25]_ - 5:4_, 5:10_, 30:10_, 44:24_, 50:20_, 57:2_, 57:10_, 59:20_, 61:9_, 61:13_, 61:18_, 61:19_, 61:22_, 66:7_, 74:7_, 75:3_, 82:9_, 90:21_, 98:10_, 128:8_, 142:25_, 143:5_, 146:8_, 146:13_, 151:5

**consideration** [7]_ - 46:1_, 56:23_, 57:13_, 66:16_, 82:7_, 99:24_, 143:13

**considered** [2]_ - 27:19_, 144:25

**considering** [6]_ - 15:11_, 22:6_, 40:21_, 81:21_, 102:21_, 147:1

**consistent** [2]_ - 117:15_, 119:3

**consolidated** [1]_ - 108:5

**constant** [1]_ - 149:19

**Constitution** [1]_ - 150:14

**constitutional** [2]_ - 63:1_, 143:11

**contact** [4]_ - 17:9_, 135:24_, 136:4_, 140:8

**contacts** [2]_ - 10:6_, 135:23

**contains** [1]_ - 140:14

**contestants** [2]_ - 50:15_, 50:16

**context** [1]_ - 68:15

**continue** [10]_ - 8:18_, 9:14_, 28:1_, 35:23_, 53:24_, 63:10_, 87:8_, 89:25_, 128:24_, 136:25

**continued** [2]_ - 105:16_, 133:9

**continuing** [1]_ - 73:13

**continuous** [1]_ - 108:8

**contradicts** [1]_ - 147:8

**control** [2]_ - 139:14_, 145:17

**controlled** [2]_ - 48:23_, 52:8

**controlling** [1]_ - 64:4

**convaluation** [1]_ - 5:1

**conventional** [1]_ - 71:13

**conversation** [4]_ - 24:10_, 66:12_, 78:24_, 125:12

**conversations** [8]_ - 12:5_, 15:9_, 15:23_, 17:13_, 18:16_, 28:6_, 39:24_, 50:8

**convict** [1]_ - 61:4

**convicted** [8]_ - 52:13_, 52:15_, 52:22_, 53:4_, 60:15_, 60:20_, 60:25_, 142:6

**convicting** [2]_ - 53:4_, 62:10

**conviction** [5]_ - 46:5_, 60:6_, 61:1_, 81:6_, 128:3

**convictions** [2]_ - 45:20_, 102:13

**cool** [1]_ - 36:4

**cop** [4]_ - 26:3_, 41:4_, 111:21_, 115:7

**cops** [2]_ - 14:12_, 26:4

**correct** [20]_ - 23:24_, 24:8_, 24:9_, 30:16_, 30:19_, 31:3_, 58:1_, 58:13_, 73:1_, 74:22_, 87:15_, 93:17_, 94:10_, 104:4_, 104:5_, 106:2_, 106:4_, 116:24_, 119:5_, 136:16

**correction** [1]_ - 26:17

**correctional** [9]_ - 16:18_

_, 16:24_, 21:25_, 22:1_, 22:9_, 22:18_, 23:9_, 34:18_, 34:25

**corrections** [5]_ - 16:21_, 21:9_, 30:8_, 42:16_, 93:12

**corrective** [1]_ - 88:22

**corroborated** [1]_ - 63:23

**Counsel** [1]_ - 3:8

**counsel** [4]_ - 3:19_, 99:9_, 125:13_, 143:22

**count** [2]_ - 63:12_, 142:24

**Count** [17]_ - 9:2_, 9:4_, 48:20_, 50:23_, 62:1_, 62:15_, 62:20_, 63:11_, 64:5_, 64:13_, 108:24_, 140:19_, 141:1_, 141:6_, 141:12_, 142:2_, 142:10

**counter** [1]_ - 128:21

**country** [2]_ - 31:20_, 33:3

**counts** [4]_ - 9:6_, 21:10_, 69:13_, 140:14

**county** [2]_ - 15:21_, 19:22

**County** [20]_ - 11:18_, 12:19_, 15:21_, 16:14_, 21:9_, 22:18_, 23:20_, 24:3_, 25:7_, 25:13_, 30:1_, 36:2_, 37:24_, 40:8_, 136:2_, 140:20_, 141:2_, 141:13_, 142:3_, 142:12

**couple** [4]_ - 26:22_, 50:15_, 98:24_, 137:1

**course** [24]_ - 22:5_, 29:9_, 49:14_, 56:19_, 59:2_, 61:16_, 65:18_, 69:19_, 73:2_, 74:3_, 75:5_, 75:18_, 79:1_, 83:1_, 88:12_, 96:15_, 100:7_, 115:25_, 116:4_, 119:25_, 133:12_, 149:13_, 149:23_, 154:9

**courses** [1]_ - 32:18

**Court** [25]_ - 3:1_, 4:16_, 4:23_, 4:24_, 5:2_, 5:17_, 6:7_, 6:19_, 80:22_, 80:23_, 81:16_, 81:25_, 107:24_, 112:20_, 113:10_, 113:14_, 113:20_, 115:19_, 118:2_, 128:5_, 128:22_, 133:5_, 138:25_, 139:1_, 143:18

**court** [18]_ - 27:25_, 46:19_, 47:15_, 47:16_, 47:19_,

56:7_, 60:15_, 78:17_, 81:16_, 90:24_, 91:2_, 91:4_, 101:17_, 104:15_, 134:14_, 140:4_, 141:7_, 148:19

**COURT** [611]_ - 3:2_, 3:4_, 3:13_, 3:17_, 3:20_, 4:8_, 5:7_, 5:10_, 5:15_, 5:19_, 6:8_, 6:22_, 10:4_, 10:10_, 10:12_, 10:14_, 10:17_, 10:19_, 10:22_, 11:1_, 11:10_, 11:14_, 11:16_, 11:19_, 11:21_, 11:24_, 12:3_, 12:8_, 12:12_, 12:15_, 12:18_, 12:21_, 12:24_, 13:3_, 13:6_, 13:13_, 13:18_, 13:24_, 14:14_, 14:19_, 15:1_, 15:8_, 15:16_, 15:23_, 16:3_, 16:8_, 16:11_, 16:15_, 16:17_, 16:20_, 16:23_, 17:3_, 17:6_, 17:9_, 17:12_, 17:16_, 17:21_, 17:24_, 18:3_, 18:6_, 18:9_, 18:11_, 18:14_, 18:21_, 18:24_, 19:1_, 19:5_, 19:8_, 19:11_, 19:14_, 19:19_, 19:23_, 19:25_, 20:2_, 20:5_, 20:8_, 20:11_, 20:14_, 20:17_, 20:21_, 21:3_, 21:6_, 21:11_, 21:16_, 21:20_, 21:24_, 22:4_, 22:13_, 22:16_, 22:21_, 22:24_, 23:1_, 23:4_, 23:7_, 23:14_, 23:18_, 23:22_, 23:25_, 24:3_, 24:7_, 24:10, 24:16_, 24:18_, 24:21_, 25:4_, 25:6_, 25:10_, 25:15_, 25:17_, 25:24_, 26:2_, 26:6_, 26:8_, 26:10_, 26:12_, 26:15_, 26:18_, 26:21_, 26:24_, 27:1_, 27:7_, 27:10_, 27:12_, 27:14_, 27:17_, 27:24_, 28:6_, 28:10_, 28:14_, 28:17_, 28:20_, 29:1_, 29:4_, 29:7_, 29:10_, 29:13_, 29:19_, 29:22_, 30:2_, 30:6_, 30:14_, 30:17_, 30:21_, 31:1_, 31:4_, 31:8_, 31:11_, 31:15_, 31:19_, 31:22_, 32:2_, 32:6_, 32:11_, 32:14_, 32:20_, 32:25_, 33:7_, 33:9_, 33:13_, 33:15_, 33:22_, 34:2_, 34:9_, 34:12_, 34:16_, 34:20_, 34:24_, 35:3_, 35:6_, 35:9_, 35:11_,

35:16_, 35:20_, 36:5_, 36:13_, 36:16_, 36:18_, 36:20_, 36:22_, 36:25_, 37:2_, 37:4_, 37:10_, 37:13_, 37:18_, 37:25_, 38:3_, 38:6_, 38:9_, 38:12_, 38:16_, 39:2_, 39:5_, 39:9_, 39:12_, 39:17_, 39:23_, 40:1_, 40:4_, 40:6_, 40:9_, 40:12_, 40:16_, 40:24_, 41:5_, 41:12_, 41:15_, 41:19_, 41:23_, 42:3_, 42:5_, 42:7_, 42:11_, 42:18_, 42:21_, 42:23_, 43:2_, 43:10_, 43:14_, 43:19_, 44:5_, 44:20_, 45:2_, 45:8_, 45:10_, 45:16_, 45:23_, 46:4_, 46:7_, 46:11_, 46:22_, 47:2_, 47:7_, 47:14_, 47:18_, 47:23_, 49:2_, 49:8_, 49:10_, 49:14_, 49:17_, 49:22_, 50:3_, 50:7_, 50:19_, 51:1_, 51:12_, 51:17_, 51:20_, 52:3_, 54:20_, 55:4_, 55:8_, 55:12_, 55:14_, 55:18_, 55:20_, 55:24_, 56:3_, 56:9_, 56:12_, 56:15_, 58:7_, 58:10_, 58:14_, 58:19_, 58:21_, 58:23_, 59:2_, 68:23_, 68:25_, 69:2_, 69:5_, 69:7_, 69:9_, 69:11_, 69:16_, 69:25_, 70:2_, 70:14_, 70:20_, 70:22_, 70:25_, 71:4_, 71:7_, 71:11_, 71:14_, 71:18_, 71:22_, 72:1_, 72:5_, 72:8_, 72:14_, 72:18_, 72:24_, 73:2_, 73:6_, 73:12_, 73:17_, 73:21_, 73:24_, 74:1_, 74:7_, 74:10_, 74:15_, 74:20_, 74:23_, 75:2_, 75:6_, 75:17_, 76:1_, 76:6_, 76:10_, 76:15_, 76:19_, 77:13_, 77:17_, 77:22_, 77:24_, 78:1_, 78:10_, 78:15_, 78:21_, 80:1_, 80:15_, 81:2_, 81:9_, 81:23_, 82:3_, 82:11_, 82:15_, 82:19_, 82:22_, 82:24_, 83:11_, 83:20_, 83:23_, 84:2, 84:7_, 84:9_, 84:13_, 84:16_, 84:18_, 84:21, 84:23_, 84:24_, 85:6_, 85:9_, 85:12_, 85:16_, 85:19_, 85:25_, 86:3_, 86:8_, 86:10_, 86:15_, 86:17_, 86:19_, 86:23_, 87:1_, 87:6_,

87:10_, 87:12_, 87:14_, 87:16_, 88:1_, 88:8_, 88:12_, 88:18_, 88:24_, 89:5_, 89:8_, 89:11_, 89:19_, 89:22_, 90:2_, 90:5_, 90:19_, 90:23_, 91:3_, 91:11_, 91:15_, 91:20_, 91:25_, 92:3_, 92:8_, 92:11_, 92:13_, 92:16_, 92:20_, 93:1_, 93:4_, 93:8_, 93:11_, 93:14_, 93:18_, 93:22_, 94:4_, 94:7_, 94:11_, 94:16_, 94:20_, 94:22_, 95:2_, 95:9_, 95:14_, 95:18_, 95:23_, 95:25_, 96:2_, 96:5_, 96:13_, 96:18_, 96:21_, 96:23_, 97:9_, 97:17_, 97:24_, 98:9_, 98:15_, 98:20_, 98:23_, 99:14_, 99:18_, 100:6_, 100:11_, 100:15_, 100:19_, 100:23_, 100:25_, 101:2_, 101:14_, 101:19_, 101:23_, 102:2_, 102:6_, 102:10_, 102:23_, 103:1_, 103:8_, 103:12_, 103:15_, 103:17_, 103:20_, 103:23_, 104:1_, 104:6_, 104:9_, 104:13_, 104:18_, 104:22_, 105:2_, 105:6_, 105:10_, 105:15_, 105:18_, 105:22_, 106:5_, 106:9_, 106:15_, 106:19_, 107:2_, 107:7_, 107:9_, 107:23_, 108:4_, 108:13_, 108:17_, 108:19_, 109:9_, 109:20_, 110:12_, 110:25_, 111:2_, 111:6_, 111:8_, 111:12_, 111:14_, 111:16_, 111:23_, 112:22_, 113:8_, 113:23_, 114:7_, 114:12_, 115:1_, 115:9_, 115:11_, 115:22_, 116:4_, 116:7_, 116:10_, 116:19_, 116:24_, 117:3_, 117:5_, 117:10_, 117:15_, 117:18_, 118:3_, 118:10_, 118:14_, 118:18_, 119:6_, 119:10_, 119:16_, 119:18_, 119:22_, 120:6_, 120:9_, 120:11_, 120:15_, 120:19_, 120:21_, 120:25_, 121:3_, 121:5_, 121:10_, 121:12_, 121:15_, 121:19_, 121:22_, 121:24_, 122:2_, 122:4_, 122:8_, 122:10_, 122:14_, 122:16_, 122:20_, 122:22_, 123:1_, 123:3_, 123:7_, 123:9_, 123:13_, 123:15_,

123:19_, 123:21_, 123:25_, 124:2_, 124:6_, 124:10_, 124:14_, 124:16_, 124:20_, 124:22_, 125:1_, 125:3_, 125:11_, 125:20, 126:1_, 126:4_, 126:6_, 126:12_, 126:15_, 126:18_, 126:20_, 126:22_, 127:2_, 127:9_, 127:16_, 128:7_, 128:11_, 128:16_, 129:6_, 129:11_, 129:19_, 129:22_, 130:2_, 130:7_, 130:12_, 130:15_, 130:20_, 130:23_, 131:3_, 131:9_, 131:12_, 131:20_, 132:7_, 132:9_, 132:24_, 133:1_, 133:6_, 133:23_, 134:12_, 135:2_, 135:9_, 135:13_, 135:16_, 135:18, 135:19_, 136:5_, 136:15_, 136:18_, 137:8_, 137:14_, 137:18_, 138:6_, 138:17_, 139:4_, 153:13_, 153:16_, 153:24_, 154:5_, 154:9_, 154:12_, 154:14_, 154:19_, 154:24_, 155:4

Court's [7]_ - 61:21_, 81:20_, 82:17_, 87:8_, 100:16_, 109:2_, 114:14

courthouse [4]_ - 78:2_, 96:15_, 138:12_, 144:15

courtroom [66]_ - 6:6_, 7:4_, 15:12_, 22:7_, 44:25_, 46:21_, 50:21_, 56:10_, 57:4_, 57:17_, 60:3_, 74:8_, 75:4_, 76:8_, 77:1_, 79:18_, 79:25_, 80:7_, 80:13_, 80:14_, 84:20_, 87:9_, 87:11_, 88:13_, 90:3_, 90:4_, 91:18_, 91:19_, 93:2_, 93:3_, 94:17_, 95:5_, 95:22_, 95:24_, 96:17_, 96:20_, 98:11, 98:18_, 98:19_, 100:22_, 100:24_, 102:5_, 102:9_, 103:14_, 103:16_, 105:13_, 105:14_, 106:18_, 107:21_, 117:1_, 132:14_, 133:4_, 133:14_, 134:9_, 134:11_, 134:15_, 135:10_, 137:7_, 138:4_, 138:5_, 138:16_, 138:20_, 139:23_, 144:9_, 151:16_, 153:15

COURTROOM [12]_ - 3:6_, 6:14_, 6:21_, 84:12_, 84:15_, 84:17_, 92:25_, 96:19_, 102:8_, 135:1_, 138:3_, 138:21

courtrooms [1]_ - 100:3

courts [1]_ - 25:14

cousin [4]_ - 17:7_, 17:10_, 29:24_, 31:12

cousin's [1]_ - 30:7

cousins [8]_ - 10:8_, 10:10_, 10:12_, 10:24_, 21:8_, 21:16_, 22:9_, 26:4

cousins' [1]_ - 21:25

cover [4]_ - 24:11_, 58:11_, 68:20_, 87:18

coverage [2]_ - 54:23_, 96:7

covered [3]_ - 6:24_, 34:6_, 139:11

COVID [1]_ - 3:25

CPR [3]_ - 58:16_, 58:18_, 58:22

create [1]_ - 58:5

creating [1]_ - 47:3

credibility [4]_ - 11:7_, 11:8_, 146:20_, 147:13

creep [2]_ - 45:25_, 101:20

crime [19]_ - 52:15_, 60:16_, 60:23_, 60:25_, 61:15_, 63:24_, 67:11_, 67:16_, 67:24_, 68:3_, 90:11_, 99:21_, 101:5_, 109:10_, 113:10_, 141:4_, 142:7_, 142:24_, 142:25

crimes [10]_ - 60:8_, 60:13_, 60:22_, 61:2_, 143:2_, 143:4_, 144:3_, 149:4_, 150:23_, 150:25

criminal [15]_ - 28:25_, 44:22_, 46:8_, 68:1_, 90:10_, 100:3_, 102:14_, 102:21_, 104:10_, 114:9_, 139:7_, 139:12_, 147:14_, 147:15_, 150:19

criminalize [1]_ - 64:5

cross [2]_ - 152:14_, 152:18

cross-examine [2]_ - 152:14, 152:18

cruise [1]_ - 115:6

cumbersome [1]_ - 134:23

curiosity [1]_ - 139:16

current [9]_ - 11:4_, 16:24_, 19:23_, 20:22_, 38:13_, 48:20_, 61:2_, 72:25_, 73:3

**current-President** [1] - 48:20

**custody** [1] - 154:17

**customer** [2] - 44:2, 44:8

**cut** [2] - 25:3, 97:21

### D

**D.A.R.E** [1] - 16:2

**DA** [3] - 31:13, 31:17, 33:24

**DA's** [2] - 31:15, 33:18

**dad** [3] - 14:4, 18:14, 111:21

**dangerous** [1] - 142:1

**data** [2] - 32:3, 98:7

**date** [2] - 52:17, 54:18

**dating** [1] - 136:2

**daughter** [2] - 3:25, 136:1

**daughter's** [1] - 136:12

**days** [5] - 8:24, 58:5, 58:12, 97:5, 134:1

**deadly** [1] - 142:1

**deal** [5] - 87:22, 97:16, 104:18, 115:5, 137:16

**dealership** [1] - 77:21

**dealing** [2] - 30:22, 108:4

**dealings** [1] - 109:23

**death** [4] - 81:14, 81:17, 102:17, 103:2

**debrief** [1] - 153:18

**decades** [1] - 112:19

**deceased** [2] - 11:12, 11:24

**decide** [7] - 143:5, 143:8, 144:2, 144:8, 146:23, 151:13, 152:23

**decided** [3] - 37:5, 143:9, 143:14

**decides** [1] - 5:14

**deciding** [2] - 146:8, 151:4

**decision** [13] - 24:23, 25:2, 60:2, 63:7, 64:19, 64:23, 66:19, 101:21, 103:4, 104:25, 106:1, 106:12, 143:12

**decision-making** [8] -

64:19, 64:23, 66:19, 101:21, 103:4, 104:25, 106:1, 106:12

**decisions** [1] - 98:7

**declared** [1] - 115:3

**deems** [1] - 81:16

**deep** [1] - 47:18

**deeper** [1] - 101:6

**defendant** [38] - 4:18, 4:19, 60:7, 60:11, 61:10, 61:11, 61:14, 90:10, 96:12, 102:15, 111:4, 128:1, 139:17, 140:12, 140:20, 141:3, 141:7, 141:13, 141:25, 142:4, 142:13, 143:1, 143:3, 143:6, 143:7, 144:2, 145:13, 145:15, 146:15, 147:17, 147:18, 147:20, 147:23, 147:25, 150:22, 152:7, 152:14, 152:16

**defendant's** [8] - 5:6, 110:21, 113:1, 113:24, 148:2, 148:4, 151:2, 151:6

**defense** [15] - 3:16, 33:20, 65:23, 120:15, 120:25, 122:4, 124:6, 124:22, 128:22, 130:2, 131:3, 145:3, 150:23, 154:15, 154:16

**defense's** [1] - 131:13

**Defensive** [1] - 72:4

**defined** [2] - 63:14, 140:23

**definitely** [1] - 114:10

**definition** [1] - 62:4

**deli** [1] - 14:24

**deliberation** [2] - 136:20, 153:2

**deliberations** [1] - 66:15

**deliver** [1] - 6:12

**Delta** [1] - 71:24

**demeanor** [1] - 112:1

**denied** [2] - 112:12, 112:20

**dental** [1] - 57:25

**deny** [2] - 115:25, 128:18

**Department** [6] - 14:4, 14:6, 14:9, 14:11, 19:4, 30:1

**department** [5] - 19:22, 20:3, 20:15, 21:9, 30:5

**deputies** [1] - 135:10

**DEPUTY** [12] - 3:6, 6:14, 6:21, 84:12, 84:15, 84:17, 92:25, 96:19, 102:8, 135:1, 138:3, 138:21

**deputy** [9] - 19:24, 20:22, 23:21, 25:8, 25:9, 25:10, 38:1, 99:9, 138:20

**describe** [9] - 10:5, 14:1, 16:11, 24:23, 32:2, 36:7, 49:2, 75:8, 94:12

**description** [2] - 37:15, 62:15

**deserves** [1] - 144:23

**designated** [1] - 141:18

**desk** [2] - 45:7, 57:25

**despite** [4] - 27:20, 112:15, 114:15, 136:11

**detailed** [1] - 139:9

**details** [5] - 45:23, 46:16, 67:21, 86:17, 99:22

**determine** [3] - 24:11, 143:3, 144:2

**determined** [1] - 109:10

**determining** [1] - 147:12

**developed** [2] - 78:23, 113:15

**developments** [1] - 55:1

**device** [1] - 149:7

**difference** [1] - 144:20

**different** [8] - 5:3, 8:16, 24:22, 53:21, 55:1, 59:14, 65:13, 118:6

**difficult** [9] - 25:2, 66:13, 90:13, 99:19, 99:20, 100:1, 102:13, 104:14, 104:23

**difficulties** [1] - 78:5

**difficulty** [2] - 96:7, 112:5

**dig** [1] - 101:6

**diligence** [1] - 133:9

**dinner** [1] - 136:3

**dinners** [2] - 50:13,

50:17

**diplomat** [4] - 31:13, 31:19, 33:2, 33:23

**dire** [5] - 4:14, 5:25, 81:15, 117:22, 117:25

**dire'd** [1] - 116:21

**direct** [1] - 144:20

**directing** [1] - 5:23

**direction** [3] - 51:22, 91:7, 112:24

**directive** [1] - 41:7

**directly** [1] - 16:25

**director** [1] - 97:18

**disabled** [1] - 35:2

**disagree** [1] - 53:15

**disagrees** [1] - 53:12

**disbelieve** [1] - 144:22

**disclosed** [1] - 140:6

**discourage** [1] - 140:8

**discrimination** [1] - 128:23

**discuss** [7] - 10:19, 79:9, 139:24, 145:5, 148:8, 148:20, 148:23

**discussed** [1] - 149:7

**discussion** [4] - 63:10, 101:5, 136:21, 153:6

**discussions** [3] - 41:16, 149:10, 149:17

**dislike** [3] - 64:16, 65:22, 65:23

**dispute** [2] - 63:19, 63:21

**disregard** [1] - 146:7

**disservice** [2] - 96:11, 111:4

**distract** [2] - 139:20, 151:14

**distributed** [1] - 134:7

**district** [1] - 33:6

**District** [5] - 140:20, 141:2, 141:13, 142:3, 142:12

**Dixie** [1] - 14:24

**documents** [5] - 46:19, 47:15, 47:16, 57:7, 120:5

**domestic** [2] - 83:24, 101:8

**Donald** [3] - 62:2, 63:15, 140:22

**done** [4] - 9:22, 45:7, 61:9, 107:14
**Donnelly** [1] - 3:11
**door** [3] - 44:9, 44:14, 92:24
**doubt** [6] - 60:11, 76:15, 98:9, 136:9, 148:5, 150:25
**doubted** [1] - 111:11
**doubts** [5] - 22:4, 51:3, 68:10, 105:2, 110:17
**down** [12] - 9:22, 38:20, 57:21, 77:20, 80:2, 85:24, 86:7, 86:19, 108:15, 114:4, 120:5, 126:3
**downstairs** [2] - 84:10, 107:18
**drinking** [1] - 51:15
**drive** [1] - 27:12
**driving** [2] - 27:8, 78:16
**drop** [1] - 153:5
**drop-off** [1] - 153:5
**dropped** [1] - 90:15
**drug** [3] - 28:24, 93:24, 128:3
**drug-trafficking** [1] - 128:3
**due** [2] - 24:24, 76:22
**duplication** [1] - 9:13
**during** [22] - 31:6, 32:19, 32:24, 43:4, 48:9, 59:9, 61:22, 87:23, 90:23, 99:13, 102:19, 107:11, 139:11, 139:24, 140:4, 140:7, 142:20, 143:15, 146:19, 146:21, 148:22, 151:6
**duties** [5] - 23:9, 112:2, 114:15, 139:20, 141:21
**duty** [11] - 24:15, 32:24, 86:6, 99:3, 99:6, 103:6, 113:7, 138:13, 139:7, 144:1

E

**Earth** [1] - 149:6
**easy** [1] - 108:3
**ed** [1] - 92:5
**edge** [3] - 28:7, 65:21, 65:22

**educational** [1] - 32:9
**educator** [1] - 30:20
**eight** [1] - 14:23
**eighth** [1] - 123:9
**either** [19] - 5:2, 12:21, 15:24, 30:8, 51:21, 68:6, 80:17, 84:25, 89:16, 90:9, 91:4, 91:7, 112:24, 128:17, 137:18, 143:23, 144:22, 145:8, 148:15
**elaborate** [1] - 135:7
**elected** [3] - 53:12, 53:16, 66:5
**electing** [1] - 63:1
**election** [1] - 64:9
**electronic** [1] - 149:19
**elementary** [4] - 40:5, 40:7, 91:24, 92:3
**elements** [3] - 52:25, 60:14, 150:25
**eligible** [1] - 118:4
**eliminated** [1] - 57:13
**eliminating** [1] - 127:6
**Elks** [1] - 14:22
**elsewhere** [3] - 141:3, 142:3, 142:13
**email** [3] - 30:25, 149:24, 154:15
**emotion** [1] - 98:6
**emotional** [1] - 83:25
**emotions** [1] - 66:18
**emphasize** [5] - 41:6, 56:21, 59:15, 64:20, 149:20
**employed** [5] - 9:18, 48:21, 48:22, 52:7, 128:13
**employee** [2] - 108:24, 141:16
**employer** [4] - 24:11, 58:11, 114:20, 148:17
**employment** [4] - 16:4, 21:25, 38:13, 49:10
**encountered** [2] - 54:2, 96:8
**end** [9] - 37:2, 70:10, 107:19, 109:1, 138:8, 139:9, 144:4, 147:13, 147:23
**ended** [1] - 49:10
**Enfield** [1] - 14:10

**enforce** [1] - 114:4
**enforcement** [73] - 9:18, 10:7, 11:2, 11:4, 11:6, 11:22, 12:1, 12:4, 12:17, 12:25, 13:14, 13:25, 14:15, 15:25, 16:12, 16:21, 18:7, 18:9, 19:12, 19:16, 20:6, 20:12, 21:18, 23:20, 24:1, 24:21, 24:25, 25:11, 25:18, 25:20, 26:10, 28:8, 28:15, 28:18, 28:24, 29:8, 29:11, 29:15, 29:23, 30:8, 34:6, 35:13, 37:11, 38:7, 38:20, 39:9, 39:10, 40:2, 42:13, 42:16, 42:19, 43:4, 43:6, 46:19, 48:3, 48:4, 48:8, 48:11, 48:12, 73:23, 74:2, 76:12, 89:13, 89:17, 101:18, 111:10, 112:13, 114:2, 114:8, 115:20, 127:24, 135:24, 136:12
**engage** [4] - 39:24, 107:16, 117:22, 117:24
**engaged** [1] - 141:20
**engineering** [2] - 32:13, 42:25
**enjoy** [1] - 74:20
**enlisting** [1] - 125:15
**ensure** [3] - 27:1, 150:5, 153:17
**ensuring** [1] - 7:2
**entails** [1] - 32:2
**entered** [16] - 6:6, 84:20, 87:11, 90:4, 91:19, 93:3, 95:24, 96:20, 98:19, 100:24, 102:9, 103:16, 105:14, 133:4, 138:4, 138:5
**entire** [3] - 48:7, 60:10, 87:24
**entirely** [4] - 38:14, 46:20, 56:17, 146:7
**entirety** [1] - 58:4
**entitled** [1] - 151:21
**entity** [3] - 48:22, 49:11, 52:7
**entry** [1] - 28:23
**equip** [1] - 135:16
**equipped** [3] - 73:4, 87:21, 137:20

**Erick** [1] - 153:25
**err** [1] - 69:17
**escort** [1] - 50:17
**especially** [1] - 109:3
**essential** [1] - 56:20
**establish** [1] - 81:16
**establishes** [1] - 150:15
**et** [4] - 57:12, 102:18, 149:25
**ETA** [1] - 78:13
**ether** [1] - 149:15
**evaluate** [7] - 7:3, 11:6, 11:7, 35:13, 50:10, 59:21, 65:25
**evaluating** [2] - 106:12, 112:1
**evaluation** [4] - 13:11, 22:10, 72:12, 91:8
**evening** [2] - 99:12, 155:5
**event** [2] - 54:16, 114:17
**events** [2] - 50:14, 59:19
**evidence** [85] - 4:18, 4:21, 5:2, 5:4, 7:3, 15:11, 22:7, 30:10, 31:6, 44:24, 50:20, 57:3, 57:5, 57:8, 57:17, 59:9, 59:18, 59:21, 60:3, 60:6, 60:9, 61:9, 61:13, 61:18, 61:19, 61:22, 66:2, 67:2, 72:12, 74:8, 75:3, 76:7, 79:17, 95:5, 98:11, 100:8, 110:5, 110:18, 139:1, 142:25, 143:3, 143:22, 143:23, 144:8, 144:9, 144:12, 144:13, 144:16, 144:17, 144:20, 144:21, 144:22, 144:23, 144:24, 144:25, 145:6, 145:8, 145:9, 145:14, 145:17, 145:18, 145:19, 145:21, 145:24, 146:6, 146:9, 146:10, 146:12, 146:13, 147:8, 147:10, 147:24, 148:3, 151:6, 151:22, 152:6, 152:9, 152:11, 152:18, 152:21
**exact** [2] - 4:24, 18:5
**exactly** [3] - 41:6, 44:6, 103:8

examine [2]_ - 152:14_, 152:18
example [1]_ - 61:14
exceed [2]_ - 5:22_, 118:7
exceeding [1]_ - 142:7
excellent [1]_ - 135:2
exception [1]_ - 16:1
exceptions [1]_ - 54:10
excuse [7]_ - 9:23_, 48:24_, 51:3_, 57:3_, 79:5_, 118:24_, 152:12
excused [2]_ - 107:1_, 107:14
exercise [1]_ - 63:1
exercised [2]_ - 120:1_, 123:21
exhibit [5]_ - 144:11_, 145:19, 145:22, 145:24_, 146:1
exhibits [4]_ - 66:4_, 143:25_, 151:15_, 151:20
exit [3]_ - 79:23_, 133:14_, 134:9
exited [18]_ - 79:25_, 80:14_, 87:9_, 90:3_, 91:18_, 93:2_, 95:22_, 96:17, 98:18_, 100:22_, 102:5_, 103:14_, 105:13_, 106:18_, 134:11_, 137:7_, 138:16_, 153:15
expect [5]_ - 61:16_, 68:8_, 142:22_, 150:9_, 153:7
expectation [1]_ - 8:16
expected [1]_ - 53:24
experience [26]_ - 39:13_, 41:10_, 45:24_, 67:24_, 68:14_, 69:23_, 70:17_, 71:8_, 72:19_, 73:3_, 73:13_, 74:2_, 74:3_, 75:20_, 76:17_, 82:5_, 90:15_, 91:4_, 95:6_, 100:1_, 100:7_, 104:23_, 109:8_, 110:4_, 110:10_, 134:2
experienced [1]_ - 68:3
experiences [16]_ - 43:15_, 45:12_, 51:2_, 67:22_, 68:7_, 75:19_, 82:8_, 89:8_, 89:17_, 91:12_, 94:23_, 98:1_, 100:12_, 101:24_, 103:9_, 114:15
expired [1]_ - 74:18
explain [4]_ - 139:6_,

140:1_, 144:4_, 144:6
explained [2]_ - 109:17_, 140:5
express [2]_ - 27:18_, 150:17
expressed [1]_ - 109:15
extensive [1]_ - 70:8
extent [3]_ - 75:21_, 112:5_, 128:18
extra [2]_ - 5:22_, 83:15

**F**

face [2]_ - 149:21
face-to-face [1]_ - 149:21
facility [1]_ - 14:21
fact [12]_ - 7:11_, 63:15_, 64:4_, 83:8_, 83:12_, 109:4_, 109:5_, 127:1_, 127:13_, 144:13_, 144:18_, 149:16
factor [5]_ - 22:8_, 64:18_, 64:22_, 66:15_, 110:19
factors [2]_ - 147:2_, 147:10
facts [6]_ - 66:17_, 103:7_, 106:12_, 110:16_, 146:16_, 146:17
factually [1]_ - 109:13
fair [81]_ - 7:2_, 8:21_, 9:9_, 10:23_, 12:6_, 12:9_, 13:16_, 16:6_, 16:25_, 17:18_, 18:18_, 22:2_, 23:11_, 25:21_, 27:24_, 33:19_, 35:17_, 37:8_, 38:14_, 39:14_, 40:14_, 40:22_, 42:1_, 43:7_, 43:16_, 45:1_, 45:13_, 45:15_, 46:3_, 50:3_, 50:25_, 54:3_, 55:4_, 59:6_, 65:2_, 65:9_, 65:15_, 67:6_, 68:4_, 68:10_, 69:16_, 71:16_, 73:14_, 74:5_, 74:25_, 75:17_, 76:4_, 76:16_, 81:19_, 82:6_, 83:20_, 89:9_, 89:20_, 90:16_, 91:12_, 92:17_, 94:2_, 94:24_, 95:14_, 95:16_, 98:2_, 100:13_, 101:9_, 101:13_, 101:25_, 102:14_, 104:1_, 105:3_, 105:8_, 106:3_, 111:11_, 112:15_, 112:25_, 113:6_, 113:21_, 114:18_, 116:17_, 136:14_,

148:11_, 150:5
fairgrounds [1]_ - 36:11
fairly [4]_ - 66:8_, 89:4_, 111:1_, 136:10
fairness [1]_ - 115:23
familiar [5]_ - 36:5_, 45:20_, 48:16_, 62:17_, 148:9
family [13]_ - 9:17_, 14:15_, 15:6_, 27:11_, 28:2_, 39:6_, 78:16_, 83:21_, 90:8_, 96:24_, 96:25_, 101:4_, 139:21
far [9]_ - 33:22_, 35:12_, 111:25_, 113:4_, 117:13_, 117:25_, 118:3_, 125:15_, 144:19
fast [1]_ - 79:12
father [13]_ - 12:16_, 12:24_, 13:13_, 15:2_, 18:1_, 18:16_, 35:4_, 38:25_, 39:5_, 70:7_, 71:3_, 89:15_, 90:14
father's [2]_ - 39:13_, 82:18
father-in-law [2]_ - 12:16_, 12:24
father-in-law's [1]_ - 13:13
favor [1]_ - 65:6
FBI [8]_ - 10:9_, 10:15_, 10:24_, 17:8_, 17:14_, 17:17_, 17:19_, 51:24
feature [2]_ - 64:4_, 104:24
federal [2]_ - 52:15_, 118:25
feelings [6]_ - 48:3_, 51:12_, 65:15_, 65:18_, 65:24_, 66:22
fell [1]_ - 35:1
fellow [2]_ - 88:1_, 151:12
felon [2]_ - 52:13_, 53:4
felony [5]_ - 52:16_, 52:23_, 60:17_, 60:20_, 141:22
feverishly [1]_ - 47:19
few [19]_ - 5:22_, 14:25_, 37:21_, 40:16_, 54:9_, 54:12_, 64:7_, 67:5_, 71:23_, 76:25_, 78:17_, 80:9_, 88:3_, 97:5_, 126:22_, 134:1_, 137:3_, 150:12_, 153:3
fifth [2]_ - 122:17_, 124:10

figure [2]_ - 37:14_, 110:4
figured [1]_ - 95:11
fill [1]_ - 116:15
final [11]_ - 3:21_, 38:19_, 45:11_, 117:25_, 119:19_, 134:5_, 134:6_, 134:16_, 138:10_, 138:12_, 138:14
finally [1]_ - 42:5
financial [1]_ - 24:18
fine [3]_ - 84:21_, 126:25_, 127:12
finish [1]_ - 51:20
finished [1]_ - 139:25
firearm [13]_ - 9:5_, 52:12_, 52:16_, 52:17_, 52:20_, 52:22_, 52:23_, 53:5_, 141:4_, 141:11_, 142:4_, 142:10_, 142:14
firearms [10]_ - 53:3_, 68:18_, 69:12_, 71:2_, 73:4_, 73:9_, 74:3_, 75:9_, 75:22_, 76:17
firing [1]_ - 70:8
First [5]_ - 150:14_, 150:15_, 150:18_, 150:22_, 150:23
first [19]_ - 5:24_, 9:16_, 9:24_, 25:2_, 53:23_, 56:1_, 80:19_, 85:23_, 86:5_, 86:7_, 92:7_, 108:2_, 108:10_, 120:11_, 120:15_, 121:19_, 130:2_, 130:7_, 147:17
fit [6]_ - 37:15_, 116:25_, 132:14_, 132:16_, 134:15_, 134:19
five [9]_ - 9:1_, 15:24_, 60:8_, 72:19_, 97:6_, 101:8_, 118:1_, 122:17_, 140:14
five-minute [1]_ - 118:1
fixed [1]_ - 78:13
flight [2]_ - 27:8_, 93:15
flip [2]_ - 65:5_, 65:12
floor [2]_ - 79:20_, 89:23
Flor [1]_ - 69:3
Florida [9]_ - 14:23_, 26:8_, 31:17_, 46:25_, 140:20_, 141:2_, 141:13_, 142:3_, 142:12
flowing [1]_ - 32:3
fly [2]_ - 27:12_, 27:13
focus [8]_ - 8:15_, 47:22_,

59:9_, 75:3_, 76:7_, 79:17 _, 95:4_, 97:10

**focused** [1]_ - 63:11

**focusing** [1]_ - 100:8

**folks** [19]_ - 4:3_, 10:6_, 16:12_, 34:4_, 40:16_, 42:13_, 56:19_, 64:11_, 79:21_, 80:16_, 82:25_, 84:11_, 88:8_, 112:5_, 114:13_, 116:2_, 116:25_, 132:14_, 135:3

**follow** [16]_ - 55:12_, 55:18_, 61:21_, 64:25_, 82:17_, 82:21_, 83:22_, 87:8_, 89:25_, 100:16_, 109:20_, 114:14_, 144:5_, 148:10_, 152:22

**follow-up** [2]_ - 82:21_, 109:20

**followed** [2]_ - 55:2_, 150:7

**following** [4]_ - 56:5_, 126:8_, 150:8_, 152:16

**follows** [4]_ - 9:16_, 66:11 _, 132:1_, 133:16

**for-cause** [11]_ - 107:12 _, 108:11_, 110:13_, 111:17_, 112:11_, 112:25 _, 114:21_, 115:24_, 116:1_, 117:7_, 117:19

**for-causes** [1]_ - 107:3

**forbidden** [1]_ - 102:20

**Force** [3]_ - 70:9_, 70:11_, 71:24

**forcibly** [1]_ - 141:14

**foreign** [5]_ - 31:20_, 52:18_, 52:20_, 142:5_, 142:17

**foreman** [2]_ - 69:6_, 69:7

**foreperson** [3]_ - 85:17_, 85:18_, 94:17

**forgot** [1]_ - 86:24

**form** [3]_ - 72:11_, 146:16 _, 149:11

**formal** [1]_ - 62:4

**formally** [2]_ - 137:23_, 138:8

**former** [12]_ - 16:4_, 21:25_, 22:9_, 39:21_, 40:10_, 40:13_, 64:9_, 108:24_, 111:10_, 115:20 _, 135:24_, 140:21

**formerly** [1]_ - 21:8

**forms** [1]_ - 144:10

**fort** [1]_ - 70:6

**Fort** [3]_ - 12:20_, 14:25_, 70:19

**forth** [4]_ - 64:11_, 134:23 _, 141:6_, 150:6

**forward** [2]_ - 128:15_, 137:17

**four** [7]_ - 84:10_, 119:1_, 119:4_, 119:8_, 129:14_, 132:4

**fourth** [3]_ - 121:15_, 123:22_, 131:20

**FPL** [1]_ - 69:3

**free** [5]_ - 138:1_, 150:17_, 151:2_, 152:3_, 153:7

**freedom** [1]_ - 150:17

**friend** [12]_ - 9:17_, 13:1_, 13:3_, 25:19_, 35:9_, 56:6 _, 57:12_, 101:4_, 101:8_, 105:20_, 106:6_, 128:2

**friends** [24]_ - 11:25_, 12:25_, 19:12_, 20:12_, 20:15_, 25:11_, 26:16_, 29:8_, 29:14_, 30:4_, 30:8 _, 36:4_, 37:10_, 37:16_, 40:1_, 42:15_, 43:5_, 51:16_, 78:16_, 83:16_, 83:18_, 139:22

**friendship** [2]_ - 13:9_, 106:10

**frivolous** [1]_ - 128:6

**front** [2]_ - 44:15_, 57:25

**fulfilling** [1]_ - 66:19

**full** [9]_ - 31:6_, 32:15_, 32:19_, 41:6_, 61:16_, 99:2_, 99:11_, 117:22_, 133:20

**full-time** [4]_ - 32:15_, 32:19_, 99:2_, 99:11

**fully** [8]_ - 8:18_, 25:21_, 80:2_, 100:6_, 102:23_, 116:21_, 136:15_, 147:21

**function** [3]_ - 51:21_, 134:4_, 136:10

**functioning** [1]_ - 112:2

**functions** [2]_ - 31:5_, 89:6

**fundamental** [1]_ - 53:3

**funny** [1]_ - 51:14

**furtherance** [1]_ - 141:4

**G**

**gallery** [2]_ - 8:1_, 135:3

**game** [1]_ - 84:14

**garbled** [1]_ - 88:7

**Gary** [3]_ - 49:9_, 50:14

**gathered** [1]_ - 60:7

**gathering** [1]_ - 3:23

**gatherings** [1]_ - 15:6

**gears** [2]_ - 48:15_, 53:20

**general** [4]_ - 15:9_, 78:25_, 82:4_, 99:9

**generally** [1]_ - 105:25

**generate** [1]_ - 56:18

**generated** [2]_ - 53:24_, 105:23

**gentleman** [4]_ - 111:19 _, 111:22_, 112:18_, 116:16

**gentlemen** [20]_ - 6:9_, 7:19_, 8:17_, 56:20_, 59:16_, 60:21_, 62:17_, 64:2_, 64:21_, 65:24_, 67:7_, 68:9_, 79:16_, 80:3 _, 133:8_, 135:3_, 138:19 _, 144:19_, 150:6_, 153:1

**given** [5]_ - 76:16_, 81:7_, 109:3_, 132:20_, 139:1

**glad** [2]_ - 58:7

**goal** [4]_ - 6:24_, 22:5_, 62:12_, 67:6

**God** [2]_ - 6:19_, 139:2

**Google** [1]_ - 149:6

**government** [28]_ - 48:9 _, 48:11_, 60:10_, 80:19_, 108:2_, 115:22_, 121:19_, 121:24_, 122:10_, 123:21 _, 124:10_, 126:22_, 129:6_, 129:13_, 130:7_, 137:13_, 141:17_, 143:22 _, 146:15_, 147:19_, 147:22_, 148:4_, 150:24_, 151:5_, 152:4_, 152:12_, 152:17_, 154:25

**government's** [3]_ - 121:13_, 125:4_, 152:16

**Governor** [1]_ - 64:10

**grade** [2]_ - 92:6

**graduate** [1]_ - 36:18

**graduating** [1]_ - 36:23

**grand** [1]_ - 94:8

**grandfather** [1]_ - 14:2

**grandfather's** [1]_ - 14:7

**grandpa** [1]_ - 15:2

**grant** [1]_ - 110:13

**granted** [1]_ - 118:2

**grass** [1]_ - 144:14

**great** [2]_ - 109:19_, 126:13

**greater** [1]_ - 151:21

**greet** [1]_ - 44:8

**grew** [2]_ - 38:25_, 89:14

**grocery** [2]_ - 45:7_, 97:23

**ground** [1]_ - 70:7

**grounds** [1]_ - 115:14

**Group** [4]_ - 3:23_, 5:21_, 108:5_, 132:10

**group** [5]_ - 48:7_, 106:21 _, 107:13_, 116:22_, 138:2

**Groups** [1]_ - 83:1

**groups** [1]_ - 109:4

**grow** [1]_ - 70:17

**growing** [5]_ - 15:5_, 18:14_, 18:17_, 71:1_, 91:1

**guarantee** [1]_ - 78:20

**guess** [6]_ - 13:24_, 23:3 _, 73:24_, 94:7_, 104:13_, 146:3

**guide** [1]_ - 36:12

**guidelines** [1]_ - 147:12

**guiding** [2]_ - 56:25_, 66:1

**guilt** [3]_ - 63:7_, 147:20_, 148:4

**guilty** [14]_ - 59:22_, 60:11 _, 60:12_, 143:4_, 143:6_, 143:7_, 143:12_, 144:3_, 147:18_, 151:1

**guy** [1]_ - 116:13

**guys** [1]_ - 98:5

**H**

**Haitian** [1]_ - 127:22

**hand** [5]_ - 6:15_, 47:3_, 88:21_, 96:6_, 138:22

**handbook** [1]_ - 58:4

**handguns** [1]_ - 75:24

**handle** [2]_ - 73:3_, 137:1

**handling** [3]_ - 30:24_, 74:3_, 120:2

**hands** [32]_ - 34:5_, 35:22_, 47:25_, 48:5_, 48:14_, 48:18_, 52:10_, 53:6_, 53:10_, 53:19_, 54:6_, 57:19_, 59:11_, 60:4_, 61:7_, 61:24_, 62:13_, 62:23_, 63:5_, 63:9_, 65:4_, 65:11_, 65:17_, 66:9_, 66:23_, 67:4_, 68:6_, 68:12_, 68:16_, 76:20_, 79:4_, 83:12

**hang** [2]_ - 76:21_, 135:10

**happy** [2]_ - 99:10_, 113:17

**Hard** [1]_ - 50:6

**hard** [6]_ - 28:21_, 37:13_, 51:12_, 67:12_, 79:12_, 88:4

**hard-and-fast** [1]_ - 79:12

**hardship** [10]_ - 27:18_, 58:1_, 58:5_, 77:19_, 78:23_, 88:25_, 96:3_, 97:2_, 99:1_, 99:4

**hardships** [3]_ - 27:2_, 92:14_, 93:19

**Harris** [1]_ - 64:8

**Hartford** [3]_ - 14:4_, 14:6_, 14:8

**HAUCHUA** [1]_ - 70:24

**HCA** [1]_ - 24:8

**head** [2]_ - 5:4_, 68:22

**heading** [1]_ - 119:25

**heads** [1]_ - 47:21

**heads-up** [1]_ - 47:21

**health** [2]_ - 38:11_, 88:24

**healthcare** [2]_ - 20:9_, 24:5

**healthy** [1]_ - 89:4

**hear** [37]_ - 7:4_, 12:13_, 17:22_, 18:24_, 23:16_, 25:25_, 28:12_, 29:22_, 37:22_, 39:19_, 52:5_, 54:15_, 54:21_, 55:5_, 55:9_, 55:24_, 60:18_, 62:14_, 69:25_, 87:23_, 88:1_, 88:9_, 88:19_, 88:21_, 91:17_, 93:9_, 99:25_, 102:6_, 102:19_, 105:12_, 112:4_, 127:17_, 136:25_, 139:12_, 143:15_, 147:3_, 153:19

**heard** [17]_ - 8:24_, 43:2_, 52:11_, 54:6_, 54:10_, 54:22_, 56:16_, 56:19_, 56:22_, 57:11_, 59:8_, 59:13_, 60:1_, 126:6_, 144:11

**hearing** [13]_ - 25:17_, 25:18_, 48:8_, 55:3_, 87:18_, 88:15_, 91:2_, 111:19_, 112:3_, 126:4_, 128:16_, 137:18_, 151:14

**hearing-related** [1]_ - 112:3

**held** [5]_ - 25:7_, 28:22_, 50:14_, 74:15_, 88:5

**hello** [8]_ - 36:1_, 41:2_, 77:17_, 90:5_, 98:21_, 102:10_, 103:17_, 105:15

**help** [8]_ - 6:19_, 125:22_, 126:2_, 126:3_, 139:1_, 151:9_, 152:6_, 152:10

**helping** [2]_ - 22:19_, 23:8

**herein** [1]_ - 138:24

**herself** [2]_ - 4:1_, 109:17

**hesitate** [1]_ - 95:15

**hesitated** [1]_ - 95:2

**hesitating** [1]_ - 132:13

**hesitation** [4]_ - 29:16_, 50:19_, 95:3_, 100:16

**hesitations** [1]_ - 21:3

**hi** [4]_ - 77:16_, 98:22_, 105:17

**high** [11]_ - 9:21_, 30:15_, 36:1_, 36:6_, 36:9_, 36:18_, 36:23_, 44:7_, 50:16_, 111:20_, 148:7

**high-level** [1]_ - 44:7

**higher** [1]_ - 44:10

**highest** [1]_ - 80:8

**Highlands** [4]_ - 23:20_, 24:3_, 25:7_, 25:13

**highlight** [1]_ - 56:21

**Hillary** [1]_ - 64:9

**himself** [4]_ - 63:1_, 63:4_, 63:8_, 143:10

**Hinshaw** [1]_ - 154:11

**hired** [1]_ - 112:23

**history** [1]_ - 64:7

**hit** [1]_ - 145:13

**hobby** [2]_ - 71:25_, 74:20

**hold** [7]_ - 51:7_, 51:12_,

63:3_, 99:15_, 100:7_, 113:19_, 136:7

**holder** [1]_ - 69:14

**holding** [1]_ - 67:8

**home** [3]_ - 20:9_, 38:10_, 77:19

**honest** [1]_ - 24:25

**honey** [1]_ - 55:19

**honey-do** [1]_ - 55:19

**honor** [1]_ - 110:18

**Honor** [52]_ - 3:10_, 3:15_, 3:18_, 4:5_, 4:6_, 4:13_, 5:9_, 5:18_, 23:17_, 28:13_, 29:21_, 31:10_, 35:15_, 41:2_, 69:1_, 71:21_, 72:13_, 72:17_, 77:16_, 80:20_, 80:21_, 81:8_, 81:13_, 81:22_, 82:13_, 82:20_, 82:23_, 84:18_, 96:22_, 98:14_, 106:25_, 107:8_, 109:3_, 111:15_, 112:20_, 116:23_, 117:17_, 119:9_, 119:15_, 119:17_, 120:4_, 126:11_, 126:24_, 127:19_, 128:6_, 131:18_, 132:6_, 132:8_, 135:7_, 137:13_, 153:23_, 155:2

**honoring** [1]_ - 41:7

**hope** [2]_ - 21:9_, 58:23

**host** [5]_ - 44:2_, 44:8_, 49:6_, 50:5_, 147:2

**hotel** [1]_ - 27:8

**hour** [1]_ - 41:22

**hours** [1]_ - 99:6

**household** [2]_ - 58:5_, 58:6

**housekeeping** [1]_ - 7:6

**HR** [1]_ - 24:13

**Huachuca** [1]_ - 70:19

**human** [1]_ - 42:25

**humbling** [1]_ - 134:2

**Humvee** [1]_ - 71:6

**husband** [10]_ - 11:12_, 11:24_, 12:5_, 12:9_, 19:21_, 20:14_, 20:17_, 46:17_, 47:9_, 78:19

**husband's** [1]_ - 20:22

**hybrid** [1]_ - 125:13

**hypertension** [1]_ - 111:20

**hypothetically** [1]_ - 99:15

**I**

**idea** [8]_ - 5:3_, 41:14_, 53:4_, 53:12_, 53:16_, 62:9_, 77:21_, 117:5

**identified** [2]_ - 112:11_, 127:20

**identifying** [1]_ - 47:12

**identity** [2]_ - 64:2_, 64:3

**IDPA** [1]_ - 72:3

**ignore** [2]_ - 146:3_, 146:7

**ill** [1]_ - 137:20

**ill-equipped** [1]_ - 137:20

**illegal** [1]_ - 62:6

**illnesses** [1]_ - 79:2

**imagine** [1]_ - 12:3

**immediate** [1]_ - 90:8

**immediately** [2]_ - 119:19_, 127:21

**impact** [22]_ - 15:10_, 16:5_, 16:25_, 17:17_, 22:10_, 23:10_, 23:11_, 33:18_, 35:12_, 40:13_, 45:12_, 50:9_, 54:3_, 74:24_, 82:5_, 82:9_, 99:24_, 100:2_, 100:12_, 101:9_, 103:3_, 106:1

**impartial** [51]_ - 7:2_, 8:21_, 9:9_, 10:23_, 12:10_, 15:10_, 15:15_, 17:1_, 18:18_, 22:2_, 23:12_, 25:21_, 37:8_, 39:14_, 40:14_, 40:22_, 42:1_, 43:8_, 43:16_, 45:13_, 54:3_, 59:6_, 65:3_, 65:10_, 65:16_, 67:2_, 67:7_, 68:4_, 68:11_, 71:16_, 73:14_, 74:5_, 74:25_, 76:4_, 76:16_, 81:19_, 82:6_, 89:9_, 90:16_, 92:17_, 94:2_, 94:25_, 95:16_, 98:2_, 100:13_, 101:10_, 101:25_, 102:14_, 105:3_, 105:8_, 106:3

**impartiality** [2]_ - 51:4_, 103:10

**impartially** [1]_ - 136:10

**impede** [2]_ - 89:9_, 141:14

**imperative** [1]_ - 79:17

**importance** [2]_ - 59:5_, 150:8

**important** [5] - 62:19, 79:16, 82:3, 134:3, 151:13

**importantly** [1] - 63:21

**importer's** [1] - 142:14

**imprecise** [1] - 52:19

**impression** [2] - 58:3, 151:22

**imprisonment** [2] - 60:16, 142:7

**improper** [2] - 139:22, 140:8

**improperly** [2] - 126:16, 149:1

**inability** [1] - 125:12

**incapable** [1] - 114:8

**incident** [8] - 46:5, 51:13, 59:20, 60:1, 82:1, 90:19, 99:20, 101:7

**incidents** [1] - 148:25

**include** [2] - 84:4, 149:13

**income** [3] - 24:25, 58:15, 114:20

**inconsistent** [1] - 127:23

**inconvenience** [1] - 78:25

**inconvenient** [1] - 139:21

**independent** [1] - 137:19

**Indian** [1] - 16:13

**Indiana** [4] - 49:6, 49:8, 49:9, 50:14

**indicate** [1] - 109:12

**indicated** [19] - 4:25, 30:7, 59:12, 81:13, 81:24, 99:1, 101:3, 103:1, 104:3, 108:14, 108:23, 110:23, 111:3, 111:9, 112:6, 113:11, 140:3, 140:13, 143:9

**indicating** [1] - 88:5

**indication** [1] - 112:23

**indictment** [16] - 9:1, 9:4, 60:8, 60:9, 60:22, 61:6, 61:15, 140:13, 140:18, 141:6, 142:20, 142:24, 143:2, 144:4, 147:18, 150:24

**indirect** [2] - 144:16,

144:21

**indirectly** [4] - 16:25, 100:4, 101:20, 144:13

**individual** [7] - 9:8, 41:24, 67:6, 81:10, 108:14, 128:2, 154:10

**individually** [1] - 80:11

**individuals** [4] - 5:23, 40:19, 64:14, 80:17

**industry** [1] - 22:1

**influence** [14] - 13:11, 13:15, 30:9, 30:12, 41:25, 44:23, 51:21, 72:11, 73:14, 74:4, 76:3, 91:8, 100:2, 149:1

**influenced** [4] - 22:7, 30:11, 50:22, 110:19

**inform** [1] - 81:18

**information** [14] - 19:8, 32:12, 43:11, 47:12, 57:16, 68:14, 91:1, 95:6, 95:15, 113:15, 140:3, 148:18, 148:24, 150:3

**informed** [2] - 7:10, 140:12

**initial** [2] - 127:19, 134:16

**initials** [1] - 72:3

**injecting** [1] - 110:9

**injustice** [1] - 91:7

**innocence** [2] - 63:7, 147:24

**innocent** [1] - 147:17

**inquire** [2] - 82:1, 155:2

**inquiry** [4] - 28:1, 80:4, 80:19, 81:5

**insinuated** [1] - 57:11

**instance** [1] - 145:12

**instances** [2] - 61:8, 94:7

**instead** [1] - 26:23

**institute** [2] - 22:18, 23:9

**instruct** [6] - 52:13, 61:16, 146:11, 150:22, 151:4, 152:21

**instructed** [7] - 61:12, 77:9, 109:4, 116:21, 146:17, 150:21, 153:2

**instruction** [4] - 65:1, 73:8, 102:24, 148:5

**instructions** [27] - 7:4, 61:21, 87:8, 89:24, 89:25, 95:20, 96:14, 98:10, 98:12, 98:17, 100:17, 100:20, 102:3, 114:14, 133:14, 134:6, 137:4, 138:12, 139:8, 139:10, 148:10, 148:12, 150:10, 150:13, 152:2, 152:25, 153:4

**instructor** [1] - 58:16

**insurance** [2] - 23:6, 93:7

**integration** [1] - 32:1

**intended** [1] - 63:21

**intends** [1] - 80:22

**intensely** [1] - 47:22

**intent** [4] - 5:6, 61:15, 63:23, 141:21

**intention** [1] - 82:17

**intentionally** [2] - 62:6, 140:21

**intentioned** [1] - 139:19

**interacted** [1] - 49:18

**interactions** [6] - 15:8, 18:16, 41:24, 50:8, 50:22, 109:18

**interest** [4] - 72:9, 114:11, 139:14, 147:6

**interested** [1] - 36:9

**interfere** [5] - 71:15, 91:12, 94:24, 97:10, 141:15

**International** [1] - 72:4

**internet** [6] - 149:6, 149:11, 149:14, 149:18, 149:24, 154:15

**internship** [1] - 36:6

**interpret** [1] - 152:20

**interstate** [4] - 52:18, 52:20, 142:5, 142:16

**intimidate** [1] - 141:15

**intimidating** [2] - 8:20, 59:4

**introduce** [1] - 53:20

**introduced** [3] - 57:3, 57:8, 57:9

**introducing** [1] - 50:16

**introductions** [1] - 62:25

**investigation** [2] - 79:13, 79:15

**investigations** [1] - 28:25

**invite** [2] - 132:12, 136:19

**involved** [2] - 4:18, 149:5

**involving** [2] - 101:7, 149:1

**issue** [11] - 5:12, 5:13, 63:17, 113:9, 126:23, 127:6, 127:15, 127:18, 129:2, 142:23, 149:16

**issues** [12] - 4:10, 44:22, 46:8, 84:3, 88:24, 96:3, 96:9, 112:3, 112:10, 113:12, 138:24, 143:18

**IT** [1] - 24:6

**item** [2] - 102:11, 146:12

**itemized** [1] - 150:2

**items** [3] - 98:24, 137:1, 146:21

**itself** [3] - 59:10, 73:24, 145:14

## J

**jail** [1] - 102:17

**James** [1] - 3:11

**January** [1] - 23:21

**Jencks** [3] - 154:16, 154:18, 155:1

**jets** [1] - 71:12

**job** [9] - 32:15, 32:19, 44:2, 50:17, 62:11, 72:25, 78:16, 112:23, 115:10

**jobs** [4] - 20:19, 23:25, 36:22, 45:3

**John** [1] - 3:10

**join** [1] - 134:3

**joining** [1] - 36:9

**joke** [1] - 51:10

**joking** [1] - 110:3

**Jones** [1] - 145:13

**jot** [3] - 9:22, 57:21, 80:1

**judge** [4] - 5:14, 57:16, 139:17, 143:7

**Judge** [7] - 84:15, 88:21, 96:19, 102:8, 109:3, 118:6, 138:3

**judges** [1] - 66:17

**judgment** [1] - 102:14

**juror** [101] - 7:20, 8:21, 15:10, 17:1, 18:18, 19:17, 21:1, 23:12, 31:5, 32:22, 37:8, 38:17, 42:1, 43:23, 45:13, 48:7, 51:21, 52:14, 55:6, 56:13, 62:3, 65:16, 68:1, 68:4, 71:16, 73:14, 76:4, 76:25, 77:14, 81:1, 81:16, 84:19, 84:20, 87:9, 87:11, 88:15, 89:1, 89:6, 90:3, 90:4, 91:13, 91:18, 91:19, 93:2, 93:3, 94:25, 95:16, 95:22, 95:24, 96:10, 96:12, 96:17, 96:20, 98:18, 98:19, 99:7, 100:13, 100:22, 100:24, 102:5, 102:9, 103:14, 103:16, 104:25, 105:13, 105:14, 106:13, 106:18, 108:23, 109:19, 109:22, 111:5, 112:2, 113:11, 113:14, 114:9, 115:21, 117:8, 120:12, 120:22, 121:6, 121:16, 122:17, 122:23, 123:10, 123:16, 124:3, 124:17, 126:23, 127:20, 128:1, 128:25, 129:12, 131:24, 134:13, 136:10, 137:20, 139:20, 139:24, 140:10, 148:18

**JUROR** [418] - 10:3, 10:8, 10:11, 10:13, 10:16, 10:18, 10:21, 10:25, 11:9, 11:12, 11:15, 11:17, 11:20, 11:23, 12:2, 12:7, 12:11, 12:14, 12:16, 12:19, 12:23, 13:1, 13:5, 13:12, 13:17, 13:23, 14:2, 14:18, 14:20, 15:5, 15:14, 15:19, 16:1, 16:7, 16:10, 16:13, 16:16, 16:19, 16:22, 17:2, 17:5, 17:7, 17:11, 17:15, 17:20, 17:23, 18:1, 18:4, 18:8, 18:10, 18:12, 18:20, 18:23, 18:25, 19:2, 19:7, 19:10, 19:13, 19:18, 19:21, 19:24, 20:1, 20:4, 20:7, 20:9, 20:13, 20:16, 20:19, 21:2,

21:5, 21:8, 21:14, 21:19, 21:22, 22:3, 22:12, 22:15, 22:17, 22:23, 22:25, 23:2, 23:5, 23:13, 23:17, 23:19, 23:24, 24:2, 24:5, 24:9, 24:13, 24:17, 24:20, 24:24, 25:5, 25:9, 25:12, 25:16, 25:23, 26:1, 26:3, 26:7, 26:9, 26:11, 26:13, 26:16, 26:20, 26:22, 26:25, 27:6, 27:9, 27:11, 27:13, 27:16, 27:22, 28:5, 28:9, 28:13, 28:15, 28:19, 28:23, 29:3, 29:6, 29:9, 29:12, 29:18, 29:21, 29:24, 30:3, 30:13, 30:16, 30:19, 30:24, 31:3, 31:7, 31:10, 31:12, 31:17, 31:21, 31:25, 32:3, 32:10, 32:12, 32:17, 32:23, 33:5, 33:8, 33:10, 33:14, 33:21, 34:1, 34:8, 34:10, 34:15, 34:17, 34:22, 34:25, 35:4, 35:8, 35:10, 35:15, 35:19, 36:1, 36:8, 36:14, 36:17, 36:19, 36:21, 36:24, 37:1, 37:3, 37:9, 37:12, 37:16, 37:23, 38:1, 38:5, 38:8, 38:10, 38:15, 38:24, 39:4, 39:8, 39:11, 39:15, 39:20, 39:25, 40:3, 40:5, 40:7, 40:11, 40:15, 40:23, 41:2, 41:11, 41:14, 41:17, 41:21, 42:2, 42:4, 42:6, 42:8, 42:15, 42:20, 42:22, 42:24, 43:9, 43:13, 43:18, 43:25, 44:8, 45:1, 45:4, 45:9, 45:15, 45:22, 46:3, 46:6, 46:10, 46:14, 46:23, 47:4, 47:8, 47:16, 47:20, 49:1, 49:5, 49:9, 49:13, 49:16, 49:19, 49:24, 50:5, 50:11, 50:24, 51:5, 51:14, 51:19, 51:23, 54:16, 54:22, 55:7, 55:10, 55:13, 55:16, 55:19, 55:23, 56:1, 56:4, 56:11, 56:14, 58:1, 58:9, 58:13, 58:16, 58:20, 58:22,

59:1, 68:22, 68:24, 69:1, 69:3, 69:6, 69:8, 69:10, 69:13, 69:24, 70:1, 70:5, 70:18, 70:21, 70:24, 71:3, 71:5, 71:9, 71:12, 71:17, 71:21, 71:23, 72:3, 72:7, 72:13, 72:17, 72:19, 73:1, 73:5, 73:10, 73:16, 73:20, 73:22, 73:25, 74:6, 74:9, 74:12, 74:17, 74:22, 75:1, 75:5, 75:14, 75:23, 76:5, 76:9, 76:12, 76:18, 77:12, 77:16, 77:18, 77:23, 77:25, 78:6, 78:14, 78:19, 85:5, 85:7, 85:11, 85:13, 85:18, 85:23, 86:2, 86:4, 86:9, 86:12, 86:16, 86:18, 86:21, 86:24, 87:4, 87:13, 87:15, 87:25, 88:3, 88:11, 88:17, 88:23, 89:2, 89:7, 89:10, 89:12, 89:21, 90:1, 90:18, 90:20, 90:25, 91:10, 91:14, 91:24, 92:2, 92:5, 92:10, 92:12, 92:15, 92:19, 93:6, 93:10, 93:13, 93:17, 93:20, 94:3, 94:6, 94:10, 94:14, 94:19, 94:21, 95:1, 95:8, 95:10, 95:17, 95:21, 96:1, 96:4, 96:11, 96:22, 97:3, 97:13, 97:18, 98:4, 98:13, 98:22, 99:8, 99:17, 100:5, 100:10, 100:14, 100:18, 100:21, 101:1, 101:11, 101:16, 101:22, 102:1, 102:4, 102:22, 102:25, 103:5, 103:11, 103:19, 103:22, 103:25, 104:5, 104:7, 104:11, 104:17, 104:21, 105:1, 105:5, 105:9, 105:17, 105:21, 106:4, 106:8, 106:14, 135:7, 135:12, 135:14, 135:23, 136:13, 136:17, 137:6, 153:12

**Juror** [169] - 3:25, 4:1, 10:2, 11:11, 12:13, 17:4, 18:22, 22:14, 23:15, 23:16, 25:24, 25:25, 28:11, 28:12,

32:25, 34:14, 35:20, 37:20, 38:17, 39:18, 39:19, 42:3, 43:21, 43:24, 46:12, 48:24, 52:4, 54:13, 54:14, 54:20, 54:21, 57:23, 67:20, 70:3, 73:17, 75:10, 76:1, 77:5, 77:6, 77:15, 80:24, 81:4, 81:13, 81:24, 84:5, 84:24, 87:10, 87:14, 90:2, 90:5, 91:16, 91:17, 91:22, 92:21, 93:4, 95:23, 98:15, 98:21, 98:25, 100:20, 101:2, 102:7, 102:10, 103:12, 103:17, 105:11, 105:12, 105:18, 106:15, 107:1, 108:12, 108:22, 110:14, 110:23, 111:3, 111:9, 114:16, 115:15, 117:8, 120:7, 120:9, 120:11, 120:13, 120:16, 120:17, 120:19, 120:21, 120:23, 121:1, 121:3, 121:5, 121:7, 121:12, 121:15, 121:17, 121:20, 121:22, 121:25, 122:2, 122:5, 122:6, 122:8, 122:11, 122:12, 122:14, 122:16, 122:18, 122:20, 122:22, 122:24, 123:1, 123:3, 123:5, 123:7, 123:9, 123:11, 123:13, 123:15, 123:17, 123:19, 123:23, 123:25, 124:2, 124:4, 124:8, 124:11, 124:12, 124:14, 124:16, 124:18, 124:20, 124:22, 124:24, 125:1, 125:3, 125:6, 127:22, 129:9, 129:11, 129:15, 129:16, 129:19, 129:22, 129:24, 130:4, 130:9, 130:13, 130:15, 130:17, 130:20, 130:23, 130:25, 131:5, 131:6, 131:9, 131:12, 131:17, 131:20, 134:22, 135:11, 135:17

**juror's** [1] - 5:4

**jurors** [61] - 3:22, 3:24, 4:11, 4:14, 5:20, 6:1, 6:13, 6:14, 6:18, 7:13, 8:9, 9:9, 22:6, 27:1, 37:21, 52:5, 57:5, 61:9, 64:19, 66:20, 66:22, 67:6, 79:10, 79:24,

80:12_, 81:9_, 88:2_, 102:20_, 107:14_, 107:17_, 107:19_, 110:20_, 114:15_, 115:13_, 116:20_, 117:11_, 117:20_, 118:4_, 118:7_, 118:12_, 118:16_, 126:15_, 127:7_, 132:10_, 132:15_, 132:20_, 133:10_, 133:16_, 134:8_, 134:15_, 134:18_, 134:19_, 134:25_, 135:5_, 137:24_, 138:7_, 138:14_, 139:7_, 139:17_, 148:9_, 151:12

**JURORS** [1]_ - 133:22

**Jurors** [2]_ - 7:9_, 129:7

**JURY** [1]_ - 139:3

**jury** [88]_ - 3:22_, 5:17_, 5:23_, 7:2_, 8:9_, 8:21_, 24:15_, 27:18_, 27:19_, 32:24_, 46:15_, 47:12_, 48:5_, 54:1_, 56:5_, 59:6_, 67:7_, 77:3_, 77:10_, 78:1_, 79:1_, 80:25_, 85:4_, 85:9_, 85:20_, 85:22_, 86:3_, 86:6_, 86:11_, 87:3_, 87:7_, 87:24_, 94:5_, 94:8_, 94:9_, 94:11_, 94:12_, 94:18_, 95:19_, 96:10_, 96:14_, 98:16_, 99:3_, 99:16_, 100:20_, 102:3_, 102:19_, 103:13_, 106:16_, 107:17_, 113:7_, 114:14_, 117:22_, 118:1_, 118:21_, 119:19_, 127:11_, 127:12_, 131:22_, 132:1_, 134:5_, 136:19_, 137:7_, 138:5_, 138:9_, 138:11_, 138:20_, 138:21_, 139:5_, 139:8_, 139:11_, 140:1_, 140:4_, 140:7_, 140:17_, 142:20_, 144:1_, 146:21_, 148:6_, 148:8_, 149:2_, 151:13_, 151:17_, 152:23_, 153:2_, 153:11_, 153:15

**justice** [3]_ - 46:8_, 100:3_, 116:9

**juveniles** [1]_ - 33:12

### K

**K-9** [1]_ - 28:24

**Kamala** [1]_ - 64:8

**keep** [15]_ - 7:15_, 8:13_, 9:21_, 17:9_, 26:18_, 29:7_, 42:12_, 53:12_, 53:16_,

54:11_, 67:14_, 80:7_, 116:4_, 150:12_, 151:12

**keeping** [1]_ - 32:21

**key** [1]_ - 110:4

**kid** [1]_ - 18:4

**kidnapped** [1]_ - 113:2

**kids'** [1]_ - 17:11

**kill** [4]_ - 62:10_, 62:22_, 63:22_, 140:21

**killing** [3]_ - 62:8_, 62:20_, 63:24

**kind** [11]_ - 51:9_, 56:4_, 56:25_, 71:1_, 78:8_, 91:6_, 97:20_, 98:5_, 144:22_, 150:19

**Kingston** [1]_ - 14:13

**know..** [1]_ - 83:10

**knowing** [4]_ - 17:18_, 31:4_, 57:14_, 142:6

**knowingly** [4]_ - 53:5_, 141:3_, 142:4_, 142:13

**knowledge** [11]_ - 33:13_, 48:16_, 68:18_, 69:12_, 71:8_, 75:9_, 75:15_, 75:21_, 76:2_, 95:12

**known** [4]_ - 44:11_, 48:17_, 112:9_, 140:4

**knows** [1]_ - 110:10

**Korea** [1]_ - 70:10

**Kristy** [1]_ - 3:19

### L

**labels** [1]_ - 97:22

**ladies** [20]_ - 6:9_, 7:19_, 8:17_, 56:20_, 59:16_, 60:21_, 62:17_, 64:1_, 64:20_, 65:24_, 67:7_, 68:8_, 79:16_, 80:2_, 133:8_, 135:3_, 138:19_, 144:19_, 150:5_, 153:1

**landed** [1]_ - 132:21

**language** [2]_ - 5:7_, 128:4

**large** [1]_ - 97:19

**last** [25]_ - 5:25_, 15:24_, 21:14_, 24:10_, 41:19_, 41:21_, 46:17_, 47:9_, 49:17_, 50:6_, 59:14_, 64:8_, 78:24_, 95:13_, 104:7_, 117:3_, 117:12_, 117:14_, 117:21_, 117:23_, 118:20_, 132:19_,

134:1

**late** [2]_ - 27:22_, 78:9

**latter** [1]_ - 110:12

**Lauderhill** [1]_ - 11:17

**laughed** [1]_ - 51:8

**law** [102]_ - 7:5_, 9:18_, 10:6_, 11:2_, 11:4_, 11:6_, 11:21_, 11:25_, 12:4_, 12:16_, 12:17_, 12:24_, 12:25_, 13:14_, 13:25_, 14:15_, 15:12_, 15:25_, 16:12_, 16:21_, 18:6_, 18:9_, 19:11_, 19:16_, 20:6_, 20:12_, 21:17_, 23:19_, 23:25_, 24:21_, 24:25_, 25:11_, 25:18_, 25:20_, 26:10_, 28:7_, 28:15_, 28:17_, 29:8_, 29:11_, 29:14_, 29:23_, 30:8_, 31:13_, 33:8_, 34:6_, 35:13_, 37:11_, 38:6_, 38:20_, 39:9_, 39:10_, 40:2_, 42:13_, 42:16_, 42:18_, 43:4_, 43:6_, 46:19_, 48:3_, 48:8_, 48:11_, 48:12_, 57:4_, 57:17_, 59:10_, 61:8_, 61:21_, 64:12_, 66:4_, 67:3_, 73:22_, 74:2_, 75:4_, 76:8_, 76:12_, 79:18_, 89:13_, 89:17_, 95:5_, 98:12_, 101:18_, 111:10_, 112:13_, 114:2_, 114:4_, 114:8_, 115:20_, 127:24_, 135:24_, 136:11_, 139:1_, 144:4_, 144:6_, 144:7_, 144:19_, 148:9_, 149:16_, 150:6_, 150:16_, 152:21

**law's** [1]_ - 13:13

**lawyer** [11]_ - 33:13_, 33:18_, 143:11_, 143:14_, 143:20_, 143:21_, 145:5_, 145:12_, 145:18_, 145:20_, 145:21

**lawyer's** [2]_ - 145:10_, 145:11

**lawyers** [8]_ - 87:20_, 88:16_, 112:7_, 139:16_, 145:2_, 145:3_, 145:4_, 145:7

**lawyers'** [1]_ - 145:7

**layman's** [1]_ - 72:2

**lead** [2]_ - 53:1_, 114:21

**lead-up** [1]_ - 53:1

**leaders** [1]_ - 53:8

**leads** [2]_ - 129:14_, 131:5

**learn** [2]_ - 13:6_, 139:18

**learning** [2]_ - 73:13_, 74:4

**least** [4]_ - 25:19_, 86:1_, 109:7_, 128:4

**leave** [7]_ - 79:6_, 89:24_, 99:12_, 134:9_, 151:16_, 153:12_, 153:13

**leaves** [1]_ - 91:6

**leaving** [1]_ - 138:15

**lectern** [1]_ - 84:19

**left** [9]_ - 8:1_, 24:3_, 24:21_, 38:22_, 70:12_, 118:8_, 128:24_, 132:14_, 151:17

**left-side** [1]_ - 8:1

**leftovers** [1]_ - 83:1

**legal** [6]_ - 46:20_, 62:4_, 90:9_, 121:10_, 126:7_, 143:17

**legally** [3]_ - 63:14_, 83:14_, 148:1

**legitimate** [1]_ - 128:19

**lengthy** [3]_ - 13:14_, 20:22_, 29:14

**lesson** [1]_ - 31:1

**letters** [1]_ - 140:9

**letting** [2]_ - 78:11_, 88:21

**level** [4]_ - 28:23_, 44:7_, 139:14_, 148:6

**library** [1]_ - 149:18

**license** [4]_ - 70:5_, 74:13_, 74:18_, 75:25

**licenses** [2]_ - 74:16_, 76:3

**lieutenant** [3]_ - 25:14_, 28:24_, 29:25

**lieutenants** [1]_ - 25:13

**life** [5]_ - 37:18_, 41:18_, 46:15_, 59:14_, 111:25

**light** [5]_ - 56:25_, 66:1_, 96:9_, 109:16_, 147:9

**likely** [1]_ - 56:19

**limit** [1]_ - 36:10

**limited** [7]_ - 41:24_, 61:8_, 61:12_, 61:18_, 146:11_, 146:12_, 146:13

**line** [4]_ - 5:3_, 28:1_, 69:18

**lines** [1]_ - 53:11

**lingering** [1]_ - 91:7

**liquor** [1]_ - 97:22

**list** [11] - 34:4, 55:19, 80:16, 80:21, 82:15, 83:23, 84:1, 117:15, 132:5, 132:7, 145:1
**listed** [2] - 71:24, 79:21
**listen** [3] - 79:8, 97:3, 149:9
**listening** [1] - 64:24
**lists** [1] - 131:25
**literally** [2] - 51:6, 98:6
**live** [5] - 10:8, 54:23, 55:17, 148:17, 149:19
**lives** [1] - 93:24
**LLC** [1] - 58:18
**loaded** [3] - 71:9, 71:12, 71:13
**loader** [1] - 70:11
**local** [1] - 55:10
**locally** [2] - 12:17, 54:24
**location** [1] - 149:7
**locations** [2] - 150:4, 153:5
**logical** [1] - 119:15
**logistical** [1] - 153:6
**LONG** [1] - 3:15
**look** [9] - 44:12, 52:1, 78:9, 82:20, 98:6, 108:25, 110:18, 118:3, 120:5
**looked** [2] - 58:8, 114:19
**looking** [2] - 69:15, 108:6
**looks** [1] - 43:23
**lose** [5] - 8:14, 38:21, 97:15, 116:1
**losing** [1] - 8:24
**loss** [2] - 11:14, 87:18
**lost** [1] - 56:4
**loud** [3] - 117:11, 131:23, 133:10
**lower** [3] - 7:17, 35:24, 88:6
**lowest** [1] - 80:8
**Lucie** [7] - 12:19, 15:21, 19:22, 20:3, 21:9, 22:18, 36:2
**lunch** [2] - 132:12, 133:2

**M**

**M16s** [1] - 75:24
**M4s** [1] - 75:23
**ma'am** [51] - 10:18, 10:21, 10:25, 12:12, 16:6, 16:9, 17:15, 17:20, 20:4, 20:13, 21:5, 24:2, 30:13, 37:9, 37:12, 38:8, 39:4, 39:25, 40:3, 40:11, 40:15, 40:23, 45:12, 48:25, 50:19, 55:6, 57:24, 70:1, 72:7, 72:8, 75:1, 76:5, 76:9, 77:11, 90:6, 90:15, 92:5, 92:10, 92:19, 94:23, 95:18, 95:25, 98:24, 99:23, 103:5, 103:9, 103:11, 135:11, 135:22, 136:13, 154:13
**madam** [1] - 129:1
**Maine** [1] - 92:12
**maintain** [1] - 137:4
**maintained** [1] - 128:17
**Majestic** [1] - 49:25
**major** [12] - 9:3, 48:20, 63:12, 63:13, 63:15, 63:20, 63:22, 63:24, 64:3, 64:6, 64:11, 140:22
**majority** [2] - 83:8, 126:14
**maladies** [2] - 89:3, 111:24
**managed** [2] - 14:20, 14:21
**management** [4] - 32:12, 42:25, 113:17
**manager** [3] - 14:22, 46:17, 116:13
**manner** [2] - 110:3, 147:5
**manufacturer's** [1] - 142:15
**manufacturing** [1] - 42:24
**manuscript** [2] - 51:6, 51:10
**maps** [1] - 149:6
**Maria** [1] - 3:11
**market** [1] - 47:10
**marriage** [1] - 35:12

**married** [4] - 12:4, 29:24, 34:18
**Marshal** [1] - 153:4
**marshal** [1] - 153:18
**Marshall** [1] - 154:11
**Martin** [1] - 40:7
**Maryland** [3] - 15:20, 28:16, 29:2
**match** [2] - 132:5, 132:7
**math** [2] - 46:24, 118:16
**matter** [4] - 82:21, 90:7, 127:19, 140:14
**mattered** [1] - 135:25
**matters** [5] - 5:16, 43:25, 66:2, 80:10, 125:16
**maxed** [1] - 117:1
**McCain** [2] - 64:10
**mean** [19] - 15:5, 15:11, 57:6, 95:9, 97:3, 97:14, 98:5, 109:22, 114:10, 115:7, 115:19, 116:1, 125:8, 126:19, 126:21, 126:25, 127:15, 154:3
**meaningful** [1] - 128:16
**means** [8] - 44:6, 54:8, 62:22, 79:9, 125:5, 130:23, 146:7, 149:23
**measures** [1] - 88:22
**Medetis** [1] - 3:11
**MEDETIS** [1] - 3:15
**Medetis-Long** [1] - 3:11
**MEDETIS-LONG** [1] - 3:15
**media** [12] - 54:7, 83:6, 83:10, 95:12, 96:7, 105:23, 110:24, 139:13, 140:8, 149:12, 149:13, 149:25
**meet** [4] - 49:15, 50:17, 57:20, 153:5
**meetings** [2] - 50:8, 50:22
**member** [3] - 9:17, 101:4, 149:2
**members** [4] - 28:2, 134:3, 136:11, 138:21
**memory** [4] - 147:5, 151:19, 151:21, 151:22
**mention** [8] - 38:25, 39:15, 58:1, 69:16,

77:18, 83:4, 102:20, 121:9
**mentioned** [21] - 33:2, 47:14, 48:19, 53:23, 60:7, 62:1, 62:24, 66:2, 67:11, 70:15, 75:12, 77:23, 90:13, 92:8, 93:23, 105:19, 135:15, 140:7, 146:21, 149:12, 154:15
**mentioning** [1] - 64:1
**merely** [1] - 125:14
**merit** [2] - 80:18, 81:10
**messages** [3] - 4:19, 5:5, 149:23
**messaging** [1] - 30:25
**met** [5] - 41:17, 47:5, 56:10, 112:18, 151:5
**methodology** [1] - 9:14
**metrics** [1] - 98:7
**mic** [3] - 34:9, 84:19, 112:7
**Michigan** [1] - 41:4
**microphone** [9] - 10:2, 15:17, 77:14, 87:22, 88:5, 88:9, 88:14, 112:4, 135:17
**microphones** [1] - 87:21
**middle** [1] - 46:24
**miff** [1] - 19:15
**might** [30] - 9:11, 14:17, 19:12, 24:19, 27:2, 27:3, 27:6, 34:21, 35:12, 37:14, 41:2, 41:12, 44:5, 48:8, 54:2, 60:1, 62:17, 64:7, 65:22, 66:12, 66:14, 67:25, 68:8, 81:21, 85:11, 99:14, 138:12, 146:4, 146:5, 147:7
**military** [11] - 36:24, 38:25, 39:3, 39:6, 39:13, 48:17, 70:6, 70:16, 71:8, 71:10, 72:5
**MILITELLO** [2] - 3:18, 154:18
**Militello** [2] - 3:19, 154:14
**Milsun** [1] - 154:7
**mind** [9] - 18:17, 19:17, 48:14, 61:14, 101:13, 116:5, 136:9, 147:16, 148:6

**minded** [1]_ - 101:22
**mindset** [1]_ - 114:3
**mine** [1]_ - 56:6
**minor** [1]_ - 32:13
**minus** [1]_ - 35:14
**minute** [2]_ - 118:1_, 118:20
**Miss** [1]_ - 50:14
**mistaken** [1]_ - 119:2
**mixed** [1]_ - 64:16
**mixture** [1]_ - 5:21
**mobile** [1]_ - 32:4
**mom's** [1]_ - 35:12
**moment** [36]_ - 4:6_, 13:10_, 26:12_, 27:15_, 31:24_, 32:6_, 33:1_, 37:11_, 38:18_, 45:16_, 51:20_, 57:1_, 57:21_, 58:25_, 66:11_, 66:12_, 67:17_, 76:23_, 77:13_, 80:20_, 81:12_, 85:4_, 88:18_, 91:22_, 98:23_, 100:1_, 108:6_, 125:12_, 126:7_, 131:18_, 134:13_, 135:9_, 135:11_, 136:7_, 136:8_, 142:22
**momentarily** [4]_ - 3:24 _, 7:12_, 54:11_, 80:10
**moments** [3]_ - 50:23_, 126:22_, 137:3
**Monday** [2]_ - 6:23_, 8:23
**money** [2]_ - 25:1_, 97:15
**months** [4]_ - 23:23_, 25:3_, 114:2_, 114:17
**Moran** [5]_ - 6:12_, 134:17 _, 136:7_, 138:1_, 153:17
**morning** [69]_ - 3:2_, 3:3 _, 3:10_, 3:13_, 3:14_, 3:15_, 3:17_, 3:18_, 3:20 _, 6:8_, 10:3_, 10:4_, 12:14_, 12:15_, 13:22_, 13:23_, 15:18_, 15:19_, 16:9_, 16:10_, 17:5_, 17:6 _, 17:23_, 17:24_, 18:25_, 19:1_, 19:21_, 22:15_, 22:16_, 23:17_, 23:18_, 26:1_, 26:2_, 28:13_, 28:14_, 29:21_, 29:22_, 31:10_, 31:11_, 37:23_, 38:24_, 39:20_, 42:6_, 42:7_, 48:25_, 49:1_, 54:22 _, 54:24_, 55:23_, 55:24_, 69:1_, 71:21_, 71:22_, 72:17_, 72:18_, 73:20_, 73:21_, 84:24_, 87:12_,

87:13_, 91:20_, 95:25_, 96:1_, 96:21_, 96:22_, 100:25_, 101:1_, 152:4_, 153:5
**most** [6]_ - 32:18_, 54:9_, 56:16_, 83:12_, 114:10_, 137:11
**mostly** [2]_ - 46:24
**mother** [3]_ - 34:17_, 41:3 _, 41:8
**mother's** [1]_ - 14:7
**motion** [1]_ - 155:1
**mouth** [1]_ - 91:6
**move** [5]_ - 6:25_, 26:8_, 47:25_, 128:15_, 137:17
**moved** [2]_ - 49:25_, 115:3
**MR** [157]_ - 3:3_, 3:10_, 3:14_, 3:16_, 4:5_, 4:6_, 4:13_, 5:8_, 5:13_, 5:18_, 80:20_, 81:7_, 81:12_, 81:24_, 82:4_, 82:13_, 82:16_, 82:20_, 82:23_, 83:3_, 83:16_, 83:21_, 83:24_, 84:6_, 84:8_, 106:25_, 107:6_, 107:8_, 108:3_, 108:12_, 108:14_, 108:18_, 108:22_, 109:15 _, 109:21_, 110:23_, 111:1_, 111:3_, 111:7_, 111:9_, 111:13_, 111:15_, 111:18_, 112:18_, 112:20 _, 113:2_, 113:9_, 114:1_, 114:10_, 114:24_, 115:3_, 115:5_, 115:10_, 115:12, 116:3_, 116:6_, 116:8_, 116:12_, 116:20_, 117:2_, 117:4_, 117:9_, 117:13_, 117:17_, 117:24_, 118:5_, 118:13_, 118:16_, 119:4_, 119:9_, 119:15_, 119:17_, 120:4_, 120:8_, 120:10_, 120:14_, 120:18_, 120:20 _, 120:24_, 121:2_, 121:4 _, 121:8_, 121:11_, 121:14_, 121:18_, 121:21 _, 121:23_, 122:1_, 122:3 _, 122:7_, 122:9_, 122:13 _, 122:15_, 122:19_, 122:21_, 122:25_, 123:2_, 123:6_, 123:8_, 123:12_, 123:14_, 123:18_, 123:20 _, 123:24_, 124:1_, 124:5 _, 124:9_, 124:13_, 124:15_, 124:19_, 124:21 _, 124:25_, 125:2_, 125:7 _, 125:19_, 125:23_, 126:2_, 126:5_, 126:11_,

126:13_, 126:17_, 126:19 _, 126:21_, 126:24_, 126:25_, 127:5_, 127:11_, 127:19_, 128:10_, 128:14 _, 129:10_, 129:18_, 129:21_, 130:1_, 130:6_, 130:11_, 130:14_, 130:19 _, 130:22_, 131:2_, 131:8 _, 131:11_, 131:18_, 131:19_, 132:6_, 132:8_, 132:23_, 132:25_, 137:13 _, 137:15_, 153:22_, 153:25_, 154:7_, 154:11_, 154:13_, 154:23_, 155:2
**MS** [3]_ - 3:15_, 3:18_, 154:18
**mumbled** [2]_ - 88:20_, 112:6
**must** [21]_ - 47:18_, 56:21 _, 110:20_, 139:24_, 142:24_, 143:4_, 143:13_, 144:5_, 144:8_, 144:25_, 146:3_, 146:8_, 146:13_, 147:16_, 148:4_, 148:25_, 149:5_, 150:3_, 150:25_, 152:22

### N

**name** [8]_ - 47:7_, 64:7_, 70:20_, 76:24_, 77:8_, 133:12_, 133:18_, 140:10
**names** [6]_ - 55:15_, 76:24_, 133:10_, 133:13_, 133:25_, 140:3
**naturally** [1]_ - 79:1
**nature** [12]_ - 9:7_, 10:5_, 10:20_, 12:6_, 15:3_, 19:6 _, 20:18_, 20:20_, 38:4_, 49:2_, 69:11_, 90:10
**nearing** [1]_ - 151:25
**necessarily** [2]_ - 109:11 _, 110:15
**necessary** [3]_ - 61:15_, 81:5_, 154:25
**need** [15]_ - 5:24_, 8:20_, 9:20_, 52:6_, 73:3_, 75:11 _, 75:18_, 77:13_, 77:14_, 83:2_, 86:17_, 107:16_, 112:8_, 117:24_, 127:12
**needed** [1]_ - 42:9
**needs** [2]_ - 58:22_, 109:9
**negative** [2]_ - 48:2_, 89:17
**negatively** [1]_ - 100:12

**nephew** [1]_ - 16:13
**nephew's** [1]_ - 16:24
**nephews** [2]_ - 14:12_, 15:2
**network** [4]_ - 35:7_, 39:7 _, 42:17_, 43:5
**networking** [1]_ - 149:24
**never** [4]_ - 46:14_, 91:2_, 140:1_, 143:5
**nevertheless** [1]_ - 113:18
**new** [2]_ - 107:3_, 107:4
**New** [2]_ - 14:13_, 26:4
**newly** [1]_ - 78:23
**news** [11]_ - 54:7_, 54:17_, 54:23_, 54:24_, 54:25_, 55:10_, 55:17_, 56:2_, 56:17_, 57:15_, 149:12
**newspapers** [1]_ - 149:11
**next** [12]_ - 13:20_, 16:9_, 38:17_, 48:1_, 78:17_, 108:21_, 110:22_, 112:17 _, 113:25_, 114:23_, 116:7_, 152:7
**nice** [5]_ - 51:15_, 116:18 _, 133:1_, 155:5
**niece** [1]_ - 26:4
**night** [2]_ - 47:9_, 104:7
**nights** [2]_ - 116:15_, 116:16
**nine** [4]_ - 23:22_, 25:3_, 114:1_, 114:17
**ninth** [1]_ - 123:15
**nitpicky** [1]_ - 41:3
**nobody** [1]_ - 116:15
**noise** [1]_ - 92:24
**nonalternate** [1]_ - 119:12
**nondiscriminatory** [1] _ - 128:20
**none** [4]_ - 54:1_, 99:23_, 101:19_, 147:1
**Norinco** [1]_ - 48:17
**normally** [1]_ - 27:12
**North** [1]_ - 70:10
**north** [2]_ - 28:3_, 70:10
**northeast** [3]_ - 14:16_, 26:6_, 112:14
**northwest** [1]_ - 49:6
**note** [7]_ - 30:14_, 57:24_, 58:10_, 82:19_, 83:4_,

83:8_, 151:14

**note-taking** [1]_ - 151:14

**noted** [1]_ - 99:1

**notepads** [1]_ - 151:10

**notes** [8]_ - 127:25_, 128:3_, 151:9, 151:11_, 151:16, 151:18, 151:20

**nothing** [16]_ - 56:21_, 58:12_, 74:8_, 79:18_, 82:13_, 90:20_, 95:5_, 97:7_, 107:6_, 126:25_, 136:23_, 137:13_, 147:19 _, 153:22_, 154:23_, 155:2

**nuclear** [3]_ - 71:13_, 72:20_, 72:25

**number** [26]_ - 5:22_, 9:5 _, 43:3_, 47:11_, 52:17_, 52:18_, 77:14_, 80:8_, 83:16_, 95:4_, 108:23_, 117:20_, 118:7_, 118:25_, 120:14_, 124:7_, 124:23_, 132:1_, 133:19_, 140:10_, 141:16_, 141:20_, 142:11 _, 142:15_, 147:2

**Number** [40]_ - 3:7_, 6:11 _, 81:13_, 115:15_, 120:7 _, 120:13_, 120:16_, 120:23_, 121:8_, 123:4_, 123:5_, 127:22_, 129:15_, 129:17_, 129:20_, 129:23 _, 129:25_, 130:5_, 130:10_, 130:13_, 130:17 _, 130:18_, 130:21_, 130:24_, 130:25_, 131:1_, 131:7_, 131:10_, 131:17_, 132:2_, 132:3

**numbers** [11]_ - 8:14_, 35:24_, 76:25_, 80:2_, 83:15_, 103:24_, 117:11_, 119:7_, 126:23_, 131:24_, 134:21

**numerical** [1]_ - 118:3

**nurse** [1]_ - 38:10

### O

**oath** [4]_ - 6:12_, 66:19_, 143:24_, 150:9

**objection** [22]_ - 4:3_, 4:7 _, 108:18_, 110:21_, 110:25_, 111:6_, 111:12_, 111:13_, 113:1_, 113:24_, 114:22_, 125:8_, 127:3_, 127:4_, 127:17_, 128:5_, 128:17_, 137:18_, 145:22

_, 145:23_, 145:25_, 146:2

**objections** [2]_ - 143:17 _, 145:7

**objective** [11]_ - 13:16_, 20:25_, 22:6_, 29:16_, 33:19_, 35:17_, 38:14_, 89:20_, 101:25_, 105:3_, 115:16

**objectively** [2]_ - 66:8_, 136:11

**objectivity** [1]_ - 33:25

**obligation** [3]_ - 66:18_, 110:18_, 110:19

**obligations** [1]_ - 53:25

**obliterated** [3]_ - 9:5_, 142:11_, 142:15

**observe** [1]_ - 82:8

**obvious** [4]_ - 56:16_, 111:1_, 111:7_, 127:15

**obviously** [10]_ - 4:16_, 8:19_, 30:3_, 33:15_, 37:4 _, 78:1_, 79:15_, 87:19_, 108:8_, 110:3

**occasion** [1]_ - 49:15

**occurring** [1]_ - 127:14

**October** [2]_ - 92:9_, 93:16

**offense** [5]_ - 52:24_, 52:25_, 60:12_, 62:16_, 93:24

**offenses** [1]_ - 9:1

**offered** [1]_ - 128:19

**offering** [1]_ - 126:2

**offers** [1]_ - 145:19

**Office** [5]_ - 23:21_, 24:4_, 25:7_, 25:14_, 37:24

**office** [11]_ - 30:18_, 31:14 _, 31:15_, 31:17_, 33:6_, 33:18_, 37:5_, 44:16_, 45:6_, 57:25_, 76:14

**Officer** [8]_ - 13:20_, 15:17_, 19:20_, 35:23_, 48:13_, 135:16_, 137:8_, 137:25

**officer** [16]_ - 11:13_, 12:4 _, 14:5_, 16:18_, 16:24_, 28:16_, 28:18_, 34:18_, 34:25_, 41:10_, 48:11_, 114:2_, 115:8_, 115:20_, 136:1_, 141:16

**OFFICER** [3]_ - 84:18, 84:23, 135:18

**officers** [7]_ - 11:4_,

22:10_, 26:17_, 42:16_, 42:17_, 44:3_, 111:11

**offices** [1]_ - 23:6

**official** [4]_ - 57:4_, 57:9_, 66:3_, 141:21

**officials** [3]_ - 53:13_, 53:16_, 66:5

**often** [1]_ - 39:21

**Okeechobee** [3]_ - 30:1 _, 30:20_, 37:24

**older** [2]_ - 26:3_, 111:24

**once** [2]_ - 109:25_, 152:2

**one** [75]_ - 3:24_, 4:6_, 4:15_, 10:1_, 11:4_, 14:8 _, 14:12_, 14:13_, 15:20_, 15:21_, 25:12_, 25:19_, 27:3_, 32:6_, 33:1_, 38:18 _, 38:19_, 40:18_, 43:23_, 45:10_, 45:16_, 45:18_, 48:6_, 51:5_, 51:20_, 53:24_, 53:25_, 55:2_, 60:13_, 60:16_, 65:1_, 65:19_, 67:17_, 76:23_, 77:13_, 80:8_, 80:9_, 80:20_, 81:12_, 81:21_, 83:16_, 85:3_, 85:9_, 85:10_, 85:14_, 85:16_, 85:19_, 86:1_, 86:4_, 86:6 _, 86:13_, 87:4_, 91:22_, 94:7_, 94:8_, 98:23_, 106:20_, 108:5_, 111:24_, 118:1_, 125:9_, 128:6_, 131:18_, 134:5_, 135:9_, 135:11_, 135:23_, 136:7_, 136:8_, 138:14_, 142:7_, 152:14

**ones** [3]_ - 70:11_, 81:10_, 88:4

**ongoing** [2]_ - 73:6_, 73:8

**online** [2]_ - 32:18_, 45:7

**opened** [2]_ - 49:5_, 49:20

**opening** [7]_ - 143:16_, 145:4_, 151:25_, 152:5_, 152:8_, 152:9_, 152:13

**operated** [4]_ - 48:23_, 49:4_, 49:12_, 52:8

**opinion** [1]_ - 144:12

**opportunity** [6]_ - 27:4_, 34:13_, 45:17_, 106:22_, 137:10_, 147:3

**oppose** [1]_ - 141:14

**opposition** [1]_ - 81:14

**option** [1]_ - 102:18

**Oran** [1]_ - 154:9

**Order** [1]_ - 3:1

**order** [8]_ - 6:7_, 80:7_, 119:2_, 132:15_, 133:5_, 134:21_, 146:5_, 148:11

**orders** [1]_ - 118:22

**organization** [4]_ - 48:22_, 49:11_, 52:8_, 151:24

**organizations** [1]_ - 49:3

**organized** [1]_ - 80:2

**originally** [1]_ - 26:6

**Orlando** [1]_ - 31:18

**otherwise** [3]_ - 30:9_, 89:4_, 103:10

**outcome** [2]_ - 103:6_, 147:6

**outline** [2]_ - 152:5_, 152:10

**outside** [12]_ - 20:3_, 33:3 _, 80:7_, 80:13_, 81:10_, 116:22_, 136:4_, 136:13_, 137:1_, 139:23_, 144:14_, 151:17

**overall** [3]_ - 112:1_, 118:7_, 151:23

**overlooked** [1]_ - 76:22

**overrule** [1]_ - 145:23

**overrun** [1]_ - 70:12

**oversee** [2]_ - 97:19_, 97:20

**own** [14]_ - 20:15_, 73:11_, 82:8_, 99:25_, 109:7_, 109:22_, 110:9_, 110:10_, 143:14_, 143:20_, 145:3_, 145:5_, 145:10_, 151:19

**owned** [4]_ - 48:22_, 49:3 _, 49:11_, 52:8

### P

**p.m** [8]_ - 119:21_, 133:3_, 137:7_, 138:5_, 153:15_, 155:7

**paddle** [7]_ - 7:7_, 9:24_, 34:8_, 58:2_, 67:9_, 69:19 _, 89:24

**paddles** [11]_ - 7:15_, 7:17_, 9:20_, 38:21_, 54:8 _, 54:11_, 67:14_, 79:6_, 80:3_, 133:21_, 134:9

**page** [1]_ - 131:25

**Pageant** [1]_ - 50:14
**paid** [1]_ - 58:3
**Palm** [6]_ - 19:3_, 140:19_, 141:1_, 141:12_, 142:2_, 142:12
**panel** [1]_ - 84:12
**paper** [1]_ - 51:6
**paperwork** [2]_ - 154:1_, 154:3
**parents** [1]_ - 91:2
**part** [12]_ - 4:21_, 10:22_, 30:19_, 44:2_, 46:15_, 53:14_, 101:18_, 109:7_, 111:25_, 139:22_, 146:25 _, 150:16
**partial** [1]_ - 136:14
**participants** [1]_ - 139:16
**participated** [1]_ - 90:9
**participating** [1]_ - 37:6
**particular** [8]_ - 9:10_, 63:17_, 67:22_, 95:16_, 115:14_, 146:5_, 146:11_, 146:19
**particularly** [1]_ - 48:2
**parties** [14]_ - 4:2_, 6:4_, 60:19_, 63:14_, 63:19_, 80:10_, 106:22_, 117:19_, 117:21_, 137:10_, 140:5_, 145:3_, 152:19_, 153:19
**parties'** [1]_ - 119:3
**partly** [1]_ - 44:1
**parts** [3]_ - 52:24_, 78:7_, 143:20
**party** [5]_ - 53:14_, 118:24 _, 145:19_, 145:20_, 145:22
**pass** [1]_ - 15:17
**past** [16]_ - 6:25_, 9:22_, 15:4_, 24:19_, 42:14_, 45:3_, 50:9_, 58:12_, 60:23_, 60:25_, 61:6_, 78:6_, 80:13_, 107:14_, 111:20
**path** [1]_ - 24:22
**patience** [4]_ - 90:6_, 91:21_, 105:16_, 133:9
**patient** [1]_ - 107:18
**patrol** [1]_ - 28:25
**pause** [2]_ - 25:20_, 125:11
**Pause** [1]_ - 135:6
**pay** [1]_ - 47:5

**paying** [1]_ - 31:5
**payment** [1]_ - 148:23
**penalty** [3]_ - 81:14_, 81:17_, 103:2
**pending** [1]_ - 155:1
**Pennsylvania** [5]_ - 4:25_, 59:15_, 59:20_, 59:21_, 60:2
**people** [19]_ - 34:19_, 36:11_, 36:12_, 44:9_, 44:10_, 44:11_, 44:13_, 51:24_, 56:16_, 66:13_, 83:5_, 83:6_, 83:9_, 84:3 _, 114:4_, 115:10_, 139:18_, 144:14_, 148:17
**per** [2]_ - 32:17_, 114:8
**percent** [9]_ - 20:25_, 22:6_, 29:16_, 35:17_, 43:7_, 51:18_, 83:5_, 103:2_, 115:16
**peremptories** [10]_ - 116:2_, 118:25_, 119:1_, 119:4_, 119:8_, 120:1_, 129:7_, 130:3_, 131:4_, 131:14
**peremptory** [15]_ - 120:15_, 120:25_, 121:19 _, 121:24_, 122:5_, 122:10_, 123:21_, 123:22 _, 124:7_, 124:10_, 124:23_, 125:4_, 128:20_, 130:7_, 131:13
**perform** [6]_ - 31:5_, 53:25_, 89:6_, 112:2_, 134:3_, 136:9
**performance** [1]_ - 141:21
**perhaps** [5]_ - 29:4_, 81:19_, 97:11_, 139:17_, 147:7
**period** [2]_ - 24:14_, 99:10
**permissible** [3]_ - 57:2_, 81:2_, 83:14
**permit** [2]_ - 61:8_, 69:21
**permitted** [3]_ - 57:3_, 60:24_, 145:21
**person** [19]_ - 13:20_, 41:16_, 44:14_, 48:12_, 52:15_, 52:17_, 52:21_, 59:23_, 62:10_, 86:14_, 94:17_, 106:10_, 114:16_, 115:23_, 118:24_, 148:23 _, 149:1_, 150:17
**person's** [1]_ - 62:11

**personal** [10]_ - 64:21_, 65:24_, 66:4_, 66:22_, 109:7_, 109:23_, 110:4_, 110:9_, 140:3_, 148:10
**personality** [1]_ - 50:24
**personally** [3]_ - 47:11_, 49:15_, 49:18
**personnel** [1]_ - 140:5
**pet** [1]_ - 21:23
**phase** [1]_ - 5:24
**physical** [4]_ - 53:8_, 57:8_, 112:10_, 150:4
**physicians'** [1]_ - 23:6
**picking** [1]_ - 55:15
**pickup** [1]_ - 153:5
**picture** [1]_ - 114:21
**pictures** [2]_ - 44:11_, 44:14
**piece** [5]_ - 46:15_, 46:18 _, 144:23_, 145:20_, 146:5
**pieces** [1]_ - 57:7
**Pierce** [2]_ - 12:20_, 14:25
**Pistol** [1]_ - 72:4
**place** [6]_ - 44:22_, 44:23 _, 46:5_, 149:3_, 149:5_, 152:1
**planned** [5]_ - 92:9_, 93:15_, 97:7_, 97:14_, 137:21
**planners** [1]_ - 97:20
**planning** [3]_ - 97:18_, 97:21_, 151:24
**plans** [1]_ - 31:1
**plant** [2]_ - 72:20_, 72:25
**platform** [1]_ - 79:15
**play** [2]_ - 5:1_, 101:14
**players** [1]_ - 50:18
**plenty** [1]_ - 118:16
**plural** [1]_ - 105:24
**plus** [3]_ - 16:19_, 35:14_, 118:25
**point** [13]_ - 24:7_, 27:17_, 41:4_, 59:24_, 64:20_, 78:4_, 95:7_, 108:15_, 109:25_, 117:20_, 132:12 _, 150:18_, 153:3
**police** [12]_ - 11:13_, 12:20_, 14:5_, 15:20_, 41:9_, 42:16_, 44:3_, 44:18_, 76:13_, 104:19_, 115:8_, 136:1

**Police** [4]_ - 14:4_, 14:6_, 14:9_, 14:10
**policeman** [1]_ - 14:3
**policies** [3]_ - 53:17_, 64:22_, 65:7
**political** [3]_ - 53:8_, 53:13_, 53:17
**pool** [2]_ - 125:9_, 126:19
**popping** [1]_ - 35:23
**Port** [2]_ - 19:22_, 20:3
**portion** [2]_ - 120:3_, 129:5
**pose** [1]_ - 88:25
**position** [2]_ - 73:3_, 121:13
**positions** [1]_ - 28:22
**positive** [2]_ - 48:3_, 85:15
**possess** [5]_ - 52:16_, 76:3_, 141:4_, 142:4_, 142:14
**possessed** [1]_ - 52:22
**possesses** [1]_ - 52:17
**possessing** [4]_ - 52:12 _, 52:23_, 53:5_, 76:17
**possession** [2]_ - 9:4_, 142:10
**possible** [4]_ - 77:4_, 79:20_, 80:24_, 106:17
**post** [3]_ - 70:19_, 70:20_, 149:25
**posting** [1]_ - 79:14
**potential** [6]_ - 27:18_, 30:23_, 44:22_, 96:7_, 109:21_, 110:5
**potentially** [6]_ - 12:5_, 27:20_, 44:21_, 73:7_, 82:9_, 101:20
**power** [2]_ - 69:4_, 69:5
**practice** [1]_ - 67:8
**precisely** [1]_ - 80:22
**prefer** [1]_ - 47:9
**preference** [1]_ - 108:1
**prejudice** [4]_ - 66:11_, 66:14_, 66:15_, 147:7
**prejudicial** [1]_ - 114:5
**preliminary** [4]_ - 6:24_, 139:8_, 152:2_, 152:25
**premises** [2]_ - 149:3_, 149:4
**preplanned** [1]_ - 26:24

**presence** [1] - 137:2

**present** [14] - 4:1, 7:11, 59:10, 66:4, 67:3, 76:8, 78:2, 97:2, 107:23, 119:22, 147:24, 152:13, 152:17, 152:19

**presentation** [1] - 151:25

**presented** [24] - 15:12, 30:11, 44:24, 50:21, 57:17, 59:9, 60:3, 61:22, 66:2, 67:2, 74:8, 75:3, 76:7, 79:17, 95:5, 98:11, 100:9, 144:9, 147:10, 151:16, 152:6, 152:11, 152:19

**presently** [1] - 15:4

**president** [1] - 140:22

**President** [18] - 48:20, 48:23, 49:4, 49:12, 50:9, 52:8, 59:14, 59:23, 63:18, 64:8, 64:15, 64:22, 65:7, 65:8, 65:13, 65:20, 65:25, 109:4

**presidential** [13] - 9:3, 48:21, 62:2, 63:12, 63:13, 63:16, 63:20, 63:22, 63:25, 64:3, 64:6, 64:12, 140:23

**presumably** [1] - 20:14

**presumed** [1] - 147:17

**pretty** [3] - 38:2, 43:5, 97:22

**prevent** [1] - 18:18

**previous** [2] - 23:19, 76:12

**previously** [6] - 52:15, 53:4, 60:15, 60:20, 81:1, 142:6

**principles** [2] - 139:6, 147:15

**print** [2] - 97:22, 97:23

**printer** [1] - 97:19

**prisoners'** [1] - 22:20

**private** [1] - 68:15

**private/public** [1] - 46:25

**privately** [1] - 57:20

**pro** [1] - 89:16

**probe** [1] - 95:3

**problem** [4] - 53:3, 62:9, 98:13, 112:7

**problematic** [3] - 109:3, 109:11, 114:6

**problems** [3] - 43:7, 78:7, 115:17

**procedural** [1] - 125:14

**procedure** [2] - 125:22, 140:17

**procedures** [1] - 126:8

**proceed** [3] - 117:21, 118:20, 151:23

**proceeding** [4] - 4:3, 59:19, 138:8, 147:15

**proceedings** [8] - 46:20, 57:4, 57:9, 66:3, 90:9, 90:12, 135:6, 155:7

**process** [8] - 35:23, 54:1, 59:3, 87:24, 114:14, 128:14, 128:15, 138:10

**produces** [4] - 46:18, 47:15, 47:16, 47:17

**producing** [1] - 46:18

**profession** [1] - 15:25

**professional** [1] - 72:9

**profound** [1] - 66:18

**program** [7] - 16:2, 32:9, 36:6, 36:10, 37:7, 47:7, 149:6

**promise** [1] - 150:9

**promote** [1] - 53:18

**prompt** [1] - 153:8

**promptly** [1] - 148:25

**proof** [7] - 60:10, 142:21, 147:20, 147:22, 148:7, 151:5

**properly** [2] - 88:19, 128:17

**property** [1] - 116:13

**proposal** [1] - 108:11

**proposals** [1] - 111:17

**propose** [3] - 5:2, 5:7, 106:22

**proposed** [1] - 4:22

**propounded** [1] - 6:17

**prosecuted** [1] - 141:7

**prosecution** [1] - 65:21

**prosecutor** [2] - 33:4, 33:5

**prosecutors** [2] - 33:15, 33:20

**Prospective** [2] -

115:14, 127:22

**prospective** [46] - 6:12, 6:14, 9:9, 40:18, 79:10, 80:24, 84:20, 87:9, 87:11, 88:2, 90:3, 90:4, 91:18, 91:19, 93:2, 93:3, 95:22, 95:24, 96:17, 96:20, 98:18, 98:19, 100:22, 100:24, 102:5, 102:9, 103:14, 103:16, 105:13, 105:14, 106:18, 106:25, 108:12, 108:22, 108:23, 109:22, 110:23, 111:3, 111:9, 113:13, 115:13, 116:20, 118:7, 127:20, 128:1, 138:7

**PROSPECTIVE** [410] - 10:3, 10:8, 10:11, 10:13, 10:16, 10:18, 10:21, 10:25, 11:9, 11:12, 11:15, 11:17, 11:20, 11:23, 12:2, 12:7, 12:11, 12:14, 12:16, 12:19, 12:23, 13:1, 13:5, 13:12, 13:17, 13:23, 14:2, 14:18, 14:20, 15:5, 15:14, 15:19, 16:1, 16:7, 16:10, 16:13, 16:16, 16:19, 16:22, 17:2, 17:5, 17:7, 17:11, 17:15, 17:20, 17:23, 18:1, 18:4, 18:8, 18:10, 18:12, 18:20, 18:23, 18:25, 19:2, 19:7, 19:10, 19:13, 19:18, 19:21, 19:24, 20:1, 20:4, 20:7, 20:9, 20:13, 20:16, 20:19, 21:2, 21:5, 21:8, 21:14, 21:19, 21:22, 22:3, 22:12, 22:15, 22:17, 22:23, 22:25, 23:2, 23:5, 23:13, 23:17, 23:19, 23:24, 24:2, 24:5, 24:9, 24:13, 24:17, 24:20, 24:24, 25:5, 25:9, 25:12, 25:16, 25:23, 26:1, 26:3, 26:7, 26:9, 26:11, 26:13, 26:16, 26:20, 26:22, 26:25, 27:6, 27:9, 27:11, 27:13, 27:16, 27:22, 28:5, 28:9, 28:13, 28:15, 28:19, 28:23, 29:3, 29:6, 29:9, 29:12, 29:18, 29:21, 29:24,

30:3, 30:13, 30:16, 30:19, 30:24, 31:3, 31:7, 31:10, 31:12, 31:17, 31:21, 31:25, 32:3, 32:10, 32:12, 32:17, 32:23, 33:5, 33:8, 33:10, 33:14, 33:21, 34:1, 34:8, 34:10, 34:15, 34:17, 34:22, 34:25, 35:4, 35:8, 35:10, 35:15, 35:19, 36:1, 36:8, 36:14, 36:17, 36:19, 36:21, 36:24, 37:1, 37:3, 37:9, 37:12, 37:16, 37:23, 38:1, 38:5, 38:8, 38:10, 38:15, 38:24, 39:4, 39:8, 39:11, 39:15, 39:20, 39:25, 40:3, 40:5, 40:7, 40:11, 40:15, 40:23, 41:2, 41:11, 41:14, 41:17, 41:21, 42:2, 42:4, 42:6, 42:8, 42:15, 42:20, 42:22, 42:24, 43:9, 43:13, 43:18, 43:25, 44:8, 45:1, 45:4, 45:9, 45:15, 45:22, 46:3, 46:6, 46:10, 46:14, 46:23, 47:4, 47:8, 47:16, 47:20, 49:1, 49:5, 49:9, 49:13, 49:16, 49:19, 49:24, 50:5, 50:11, 50:24, 51:5, 51:14, 51:19, 51:23, 54:16, 54:22, 55:7, 55:10, 55:13, 55:16, 55:19, 55:23, 56:1, 56:4, 56:11, 56:14, 58:1, 58:9, 58:13, 58:16, 58:20, 58:22, 59:1, 68:22, 68:24, 69:1, 69:3, 69:6, 69:8, 69:10, 69:13, 69:24, 70:1, 70:5, 70:18, 70:21, 70:24, 71:3, 71:5, 71:9, 71:12, 71:17, 71:21, 71:23, 72:3, 72:7, 72:13, 72:17, 72:19, 73:1, 73:5, 73:10, 73:16, 73:20, 73:22, 73:25, 74:6, 74:9, 74:12, 74:17, 74:22, 75:1, 75:5, 75:14, 75:23, 76:5, 76:9, 76:12, 76:18, 77:12, 77:16, 77:18, 77:23, 77:25, 78:6, 78:14, 78:19, 85:5, 85:7, 85:11,

85:13_, 85:18_, 85:23_, 86:2_, 86:4_, 86:9_, 86:12, 86:16_, 86:18_, 86:21_, 86:24_, 87:4_, 87:13, 87:15, 87:25_, 88:3_, 88:11_, 88:17_, 88:23, 89:2_, 89:7_, 89:10_, 89:12_, 89:21_, 90:1_, 90:18_, 90:20_, 90:25_, 91:10_, 91:14_, 91:24_, 92:2_, 92:5_, 92:10_, 92:12_, 92:15_, 92:19_, 93:6_, 93:10_, 93:13_, 93:17_, 93:20_, 94:3_, 94:6_, 94:10_, 94:14_, 94:19_, 94:21_, 95:1_, 95:8_, 95:10_, 95:17_, 95:21_, 96:1_, 96:4_, 96:11_, 96:22_, 97:3_, 97:13_, 97:18_, 98:4_, 98:13_, 98:22_, 99:8_, 99:17_, 100:5_, 100:10_, 100:14_, 100:18_, 100:21_, 101:1_, 101:11_, 101:16_, 101:22_, 102:1_, 102:4_, 102:22_, 102:25_, 103:5_, 103:11_, 103:19_, 103:22_, 103:25_, 104:5_, 104:7_, 104:11_, 104:17_, 104:21_, 105:1_, 105:5_, 105:9_, 105:17, 105:21_, 106:4_, 106:8_, 106:14

**protect** [1]_ - 150:18

**protection** [4]_ - 44:2_, 44:3_, 44:6_, 44:10

**prove** [5]_ - 60:10_, 60:14_, 144:13_, 147:23_, 148:4

**proved** [1]_ - 146:18

**proven** [1]_ - 147:17

**proves** [2]_ - 144:18_, 150:24

**provide** [3]_ - 57:5_, 57:6_, 150:3

**provided** [6]_ - 9:12_, 52:16_, 57:16_, 61:17_, 128:8_, 150:11

**provider** [1]_ - 58:6

**provides** [1]_ - 150:16

**providing** [1]_ - 47:24

**public** [3]_ - 59:4_, 139:13_, 140:9

**publicity** [4]_ - 53:24_, 54:2_, 56:18_, 105:23

**punishable** [2]_ - 60:16_, 142:7

**punishment** [6]_ - 81:18_, 81:21_, 102:21_, 142:23_, 143:5_, 143:7

**purpose** [6]_ - 7:2_, 146:11, 146:12, 146:13_, 146:14_, 151:11

**purposeful** [1]_ - 128:23

**purposes** [6]_ - 3:22_, 7:6_, 61:18_, 62:19_, 136:25_, 151:24

**pursuant** [3]_ - 141:9_, 141:24_, 150:22

**put** [11]_ - 46:14_, 48:4_, 51:6_, 57:15_, 58:2_, 59:7_, 59:25_, 66:21_, 99:11_, 103:3_, 148:1

**putting** [1]_ - 102:17

## Q

**qualifications** [1]_ - 6:18

**qualms** [1]_ - 68:10

**questioning** [3]_ - 77:1_, 81:10_, 128:5

**questionnaire** [14]_ - 9:19_, 32:8_, 45:19_, 57:24_, 67:11_, 81:14_, 85:3_, 87:17_, 90:7_, 96:25_, 98:24_, 99:20_, 102:11_, 104:3

**questionnaires** [1]_ - 9:12

**questions** [21]_ - 6:17_, 7:1_, 9:6_, 9:11_, 67:5_, 67:8_, 69:18_, 83:2_, 87:2_, 97:25_, 106:22_, 107:4_, 109:2_, 125:18_, 139:18_, 139:19_, 139:21_, 140:9_, 143:17_, 145:7_, 145:8

**quick** [1]_ - 153:18

**quickly** [2]_ - 86:24_, 112:19

**quite** [5]_ - 46:14_, 48:13_, 71:23_, 86:4_, 112:3

**quote** [3]_ - 108:25_, 109:1_, 115:16

## R

**racist** [2]_ - 127:14_, 128:12

**rack** [1]_ - 37:14

**radio** [1]_ - 149:11

**rain** [1]_ - 144:16

**raise** [17]_ - 4:2_, 4:10_, 5:16_, 6:15_, 7:7_, 9:20_, 44:1_, 51:3_, 54:8_, 69:19_, 80:3_, 83:12_, 108:10_, 127:15_, 128:11_, 138:22_, 145:22

**raised** [11]_ - 9:19_, 34:4_, 34:8_, 37:21_, 70:6_, 84:3_, 90:7_, 96:5_, 127:17_, 128:6_, 128:17

**raising** [6]_ - 9:23_, 88:21_, 126:9_, 127:3_, 127:10

**ran** [1]_ - 16:2

**random** [1]_ - 55:15

**randomly** [1]_ - 54:12

**range** [2]_ - 70:8_, 73:11

**rangers** [1]_ - 70:7

**rank** [4]_ - 14:3_, 14:5_, 14:8_, 14:10

**rationale** [1]_ - 126:12

**reach** [7]_ - 24:13_, 80:25_, 85:20_, 86:11_, 87:3_, 87:5_, 144:5

**reached** [3]_ - 85:22_, 86:20_, 94:12

**reaching** [1]_ - 146:23

**read** [16]_ - 54:6_, 54:15_, 55:24_, 56:8_, 56:16_, 56:22_, 57:11_, 83:10_, 117:10_, 129:2_, 129:5_, 131:23_, 133:10_, 140:17_, 148:5_, 149:9

**reading** [1]_ - 40:18

**ready** [1]_ - 5:21

**real** [1]_ - 78:4

**realize** [3]_ - 34:10_, 75:14_, 103:5

**really** [14]_ - 36:3_, 38:2_, 41:5_, 56:5_, 56:21_, 56:25_, 65:8_, 66:18_, 70:21_, 78:7_, 86:24_, 89:2_, 94:14_, 114:20

**rearrange** [1]_ - 93:21

**rearrangement** [1]_ - 138:18

**reason** [13]_ - 9:13_, 43:6_, 58:2_, 66:7_, 66:25_, 88:20_, 92:16_, 104:1_, 108:13_, 109:8_, 116:4_, 132:13_, 137:19

**reasonable** [3]_ - 60:11_, 148:5_, 150:25

**reasonableness** [1]_ - 147:9

**reasons** [11]_ - 53:25_, 108:20_, 110:12_, 110:17_, 110:20_, 113:23_, 115:19_, 128:8_, 128:20_, 140:7_, 149:18

**receive** [1]_ - 153:3

**received** [4]_ - 95:7_, 145:18_, 145:24_, 146:1

**recent** [3]_ - 15:23_, 64:7_, 137:11

**recently** [3]_ - 54:17_, 58:17_, 136:2

**recess** [7]_ - 5:20_, 6:3_, 6:5_, 107:10_, 107:22_, 119:21_, 133:3

**recognize** [3]_ - 125:7_, 127:1_, 127:13

**recollection** [2]_ - 86:11_, 87:2

**record** [8]_ - 3:8_, 79:8_, 83:8_, 83:11_, 127:2_, 127:5_, 127:8_, 129:5

**records** [1]_ - 22:20

**reference** [2]_ - 85:3_, 90:24

**referenced** [2]_ - 40:17_, 99:20

**references** [1]_ - 59:19

**referencing** [2]_ - 4:20_, 73:7

**referred** [1]_ - 140:10

**referring** [3]_ - 32:7_, 52:20_, 78:25

**regard** [1]_ - 4:17

**regarding** [15]_ - 5:17_, 28:1_, 43:11_, 44:22_, 60:1_, 61:21_, 68:18_, 69:12_, 75:21_, 81:5_, 90:13_, 99:20_, 101:8_, 126:7_, 148:10

**regardless** [4]_ - 53:13_, 53:17_, 95:6_, 151:1

**registered** [1]_ - 38:10

**regular** [4]_ - 17:9_, 32:15_, 94:8_, 94:11

**rehash** [1]_ - 9:6

**reiterate** [1]_ - 106:9

**reject** [65]_ - 120:7_, 120:9_, 120:13_, 120:14_, 120:17_, 120:19_, 120:23_, 120:24_, 121:1_, 121:3_, 121:7_, 121:17_,

121:18_, 121:20_, 121:22_, 121:23_, 121:25_, 122:2_, 122:3_, 122:6_, 122:8_, 122:9_, 122:12_, 122:14_, 122:18_, 122:20_, 122:24_, 123:1_, 123:5_, 123:7_, 123:11_, 123:13_, 123:17_, 123:19_, 123:20_, 123:23_, 123:25_, 124:4_, 124:5_, 124:8_, 124:9_, 124:12_, 124:14_, 124:18_, 124:20_, 124:21_, 124:24_, 125:1_, 125:2_, 125:6_, 129:9_, 129:16_, 129:24_, 130:1_, 130:4_, 130:6_, 130:9_, 130:12_, 130:17_, 130:25_, 131:2_, 131:6_, 131:9_, 131:11_, 131:17

**rejected** [4]_ - 124:6_, 124:22_, 125:3_, 131:12

**related** [10]_ - 4:20_, 11:2_, 46:20_, 48:1_, 53:21_, 112:3_, 148:16_, 148:21_, 149:10_, 149:17

**relatedly** [1]_ - 53:15

**relating** [1]_ - 142:25

**relationship** [10]_ - 12:8_, 15:9_, 16:4_, 18:15_, 30:12_, 33:17_, 33:23_, 83:18_, 106:1_, 136:12

**relationships** [6]_ - 16:11_, 20:23_, 22:9_, 25:19_, 111:10_, 136:11

**relative** [5]_ - 33:2_, 33:3_, 33:17_, 35:7_, 93:23

**relative's** [1]_ - 17:17

**relatives** [12]_ - 11:25_, 12:25_, 16:20_, 18:6_, 19:11_, 20:11_, 21:17_, 25:11_, 29:10_, 29:11_, 37:11_, 40:1

**relatives'** [1]_ - 16:4

**release** [3]_ - 77:2_, 107:14_, 132:17

**released** [2]_ - 115:14_, 137:22

**relevance** [2]_ - 19:16_, 64:17

**relevant** [1]_ - 5:5

**relieved** [1]_ - 116:18

**relocated** [1]_ - 14:23

**rely** [1]_ - 151:18

**relying** [1]_ - 65:24

**remain** [3]_ - 84:25_,

120:4_, 147:25

**remained** [1]_ - 116:22

**remaining** [6]_ - 6:1_, 8:3_, 80:14_, 134:11_, 134:15_, 134:25

**remains** [1]_ - 8:16

**remarks** [1]_ - 145:6

**remember** [17]_ - 9:2_, 22:21_, 36:16_, 55:3_, 64:7_, 84:3_, 85:6_, 85:14_, 85:16_, 85:19_, 85:21_, 94:15_, 94:16_, 95:13_, 104:14_, 151:10_, 152:9

**remembered** [1]_ - 81:20

**remind** [2]_ - 143:19_, 148:13

**reminded** [1]_ - 75:18

**reminds** [1]_ - 24:7

**removed** [4]_ - 126:13_, 126:16_, 126:17_, 142:15

**render** [2]_ - 67:1_, 138:25

**Renee** [1]_ - 3:19

**repaired** [1]_ - 108:16

**repeat** [1]_ - 118:22

**repeated** [2]_ - 136:24_, 148:14

**repeatedly** [2]_ - 112:14_, 153:10

**repetitive** [1]_ - 140:17

**report** [2]_ - 55:1_, 92:14

**reported** [5]_ - 4:1_, 38:19_, 42:8_, 96:25_, 149:10

**reporter** [1]_ - 47:19

**Reporter** [1]_ - 129:1

**reports** [1]_ - 57:15

**represent** [2]_ - 63:8_, 143:10

**representation** [1]_ - 63:2

**representing** [3]_ - 33:16_, 62:25_, 63:3

**request** [2]_ - 4:15_, 148:22

**require** [1]_ - 78:2

**required** [4]_ - 82:2_, 140:1_, 148:7_, 148:19

**requirement** [1]_ - 100:16

**requires** [2]_ - 60:13_,

148:9

**reschedule** [5]_ - 27:20_, 97:4_, 97:5_, 97:8_, 97:9

**research** [5]_ - 79:15_, 136:23_, 149:16_, 149:18_, 149:20

**resolved** [1]_ - 91:5

**resorting** [1]_ - 117:20

**resources** [1]_ - 42:25

**respect** [4]_ - 112:13_, 113:9_, 113:13_, 115:12

**response** [5]_ - 102:12_, 109:2_, 115:11_, 115:16_, 115:17

**responses** [2]_ - 110:6_, 128:4

**restaurant** [1]_ - 14:20

**result** [1]_ - 82:1

**resulted** [1]_ - 104:9

**resume** [2]_ - 133:2_, 155:5

**retail** [1]_ - 21:22

**retire** [1]_ - 29:5

**retired** [20]_ - 12:23_, 14:18_, 14:19_, 15:20_, 15:22_, 15:24_, 18:2_, 18:3_, 22:25_, 23:5_, 26:13_, 28:15_, 28:24_, 39:22_, 39:23_, 42:17_, 42:22_, 46:23_, 50:5_, 93:6

**return** [14]_ - 79:19_, 87:7_, 95:19_, 96:14_, 98:16_, 100:19_, 102:2_, 103:13_, 106:16_, 107:20_, 132:11_, 138:11_, 148:24_, 151:1

**reveal** [2]_ - 47:8_, 47:9

**reviewed** [1]_ - 4:22

**reviewing** [1]_ - 151:15

**reviews** [1]_ - 33:11

**revisit** [1]_ - 111:18

**revisiting** [1]_ - 112:19

**rewind** [1]_ - 31:22

**rifle** [1]_ - 48:17

**rifles** [1]_ - 75:24

**rights** [2]_ - 150:15_, 150:21

**rise** [9]_ - 6:15_, 79:5_, 79:6_, 79:24_, 80:12_, 134:8_, 138:14_, 138:22_, 153:11

**risk** [1]_ - 154:2

**River** [1]_ - 16:13

**robbery** [2]_ - 81:25_, 104:4

**Rock** [1]_ - 50:6

**role** [6]_ - 5:1_, 16:20_, 20:22_, 30:20_, 56:23_, 101:14

**roll** [1]_ - 7:8

**rollers** [1]_ - 50:16

**Romney** [1]_ - 64:10

**room** [26]_ - 5:24_, 7:8_, 7:13_, 8:10_, 8:19_, 54:6_, 65:6_, 67:15_, 77:3_, 87:7_, 95:19_, 96:14_, 98:16_, 100:8_, 100:20_, 102:3_, 103:13_, 106:16_, 107:21_, 134:6_, 136:20_, 138:11_, 151:13_, 151:17_, 152:23_, 153:2

**rooms** [1]_ - 149:24

**rough** [1]_ - 97:21

**rough-cut** [1]_ - 97:21

**roughly** [5]_ - 22:22_, 23:1_, 46:4_, 74:15_, 85:6

**Routh** [86]_ - 3:7_, 3:16_, 3:17_, 5:12_, 5:16_, 6:11_, 52:12_, 56:22_, 59:22_, 60:14_, 60:19_, 60:21_, 61:2_, 61:5_, 62:1_, 62:7_, 62:25_, 63:3_, 63:11_, 63:21_, 82:25_, 107:7_, 108:1_, 108:17_, 109:14_, 110:25_, 111:6_, 111:12_, 111:16_, 112:17_, 113:25_, 115:25_, 116:25_, 117:16_, 118:14_, 119:7_, 120:9_, 120:13_, 120:19_, 120:23_, 121:3_, 121:7_, 121:12_, 121:20_, 122:2_, 122:6_, 122:14_, 122:18_, 123:1_, 123:5_, 123:13_, 123:17_, 123:25_, 124:4_, 124:12_, 124:20_, 124:24_, 125:6_, 126:10_, 128:7_, 129:8_, 129:19_, 129:24_, 130:9_, 130:20_, 130:25_, 131:9_, 131:15_, 132:7_, 132:24_, 137:14_, 140:13_, 140:15_, 140:21_, 141:3_, 141:14_, 142:4_, 142:13_, 143:9_, 143:14_, 143:19_, 145:5_, 145:10_, 153:24_, 154:10_, 154:20

**ROUTH** [87]_ - 3:16_, 4:5

_, 5:13_, 5:18_, 83:3_, 83:16_, 83:21_, 83:24_, 84:6_, 84:8_, 107:8_, 108:3_, 108:18_, 109:15_, 111:1_, 111:7_, 111:13_, 111:18_, 112:18_, 113:2_, 114:1_, 114:10_, 114:24_, 115:5_, 115:10, 116:3_, 116:6_, 116:8_, 116:12_, 117:2_, 117:4_, 117:9_, 117:17_, 118:16_, 119:9_, 119:15_, 120:10_, 120:14 _, 120:20_, 120:24_, 121:4_, 121:8_, 121:11_, 121:21_, 122:3_, 122:7_, 122:15_, 122:19_, 123:2_, 123:6_, 123:14_, 123:18_, 124:1_, 124:5_, 124:13_, 124:21_, 124:25_, 125:7_, 125:19_, 125:23_, 126:2_, 126:5_, 126:11_, 126:13_, 126:17_, 126:19_, 126:21 _, 126:25_, 127:5_, 127:11_, 128:10_, 128:14 _, 129:10_, 129:21_, 130:1_, 130:11_, 130:22_, 131:2_, 131:11_, 132:8_, 132:25_, 137:15_, 153:25 _, 154:7_, 154:11_, 154:13_, 154:23

**Routh's** [1]_ - 63:22

**row** [1]_ - 7:20

**rule** [2]_ - 79:12_, 79:13

**ruled** [1]_ - 113:1

**rules** [7]_ - 61:17_, 118:25 _, 145:17_, 145:21_, 150:7_, 150:9_, 153:10

**run** [3]_ - 107:12_, 117:12 _, 118:12

**running** [1]_ - 108:7

**Ryan** [9]_ - 3:7_, 3:16_, 6:11_, 140:13_, 140:21_, 141:3_, 141:14_, 142:4_, 142:13

### S

**safe** [2]_ - 53:13_, 53:17

**saints** [1]_ - 89:18

**salary** [1]_ - 24:12

**save** [1]_ - 135:20

**saw** [9]_ - 41:20_, 54:17_, 54:18_, 55:16_, 56:2_, 144:11_, 144:14_, 145:13 _, 145:15

**scheduling** [1]_ - 93:19

**school** [13]_ - 30:15_, 30:22_, 31:24_, 32:16_, 36:1_, 36:6_, 36:9_, 36:18 _, 36:23_, 40:5_, 46:25_, 91:24_, 92:3

**se** [1]_ - 114:8

**SEALs** [1]_ - 70:7

**search** [3]_ - 95:12_, 149:7_, 150:4

**searches** [2]_ - 4:20_, 5:5

**seat** [35]_ - 3:4_, 6:9_, 6:22 _, 11:10_, 13:19_, 16:8_, 17:3_, 17:21_, 19:19_, 21:6_, 22:13_, 23:14_, 29:19_, 31:8_, 34:3_, 35:21_, 40:25_, 43:20_, 52:3_, 71:19_, 72:15_, 73:18_, 75:7_, 76:10_, 76:19_, 80:15_, 85:1_, 107:24_, 119:23_, 133:7_, 134:17_, 135:4_, 138:17_, 139:4_, 153:16

**seated** [6]_ - 3:4_, 106:20 _, 120:4_, 133:12_, 137:9 _, 138:6

**seats** [4]_ - 77:2_, 77:9_, 79:22_, 134:24

**Seawind** [1]_ - 40:7

**second** [10]_ - 79:20_, 87:4_, 89:23_, 92:6_, 120:21_, 120:25_, 121:24 _, 130:16_, 131:3_, 147:22

**Secret** [12]_ - 13:2_, 13:8 _, 13:10_, 83:17_, 83:18_, 105:20_, 105:24_, 106:6_, 106:11_, 141:15_, 141:19

**Secretary** [1]_ - 64:9

**Section** [10]_ - 140:24_, 140:25_, 141:6_, 141:9_, 141:10_, 141:18_, 141:23 _, 141:25_, 142:9_, 142:18

**section** [1]_ - 119:12

**security** [4]_ - 32:13_, 51:8_, 72:20_, 74:13

**SECURITY** [3]_ - 84:18, 84:23_, 135:18

**see** [55]_ - 6:3_, 28:2_, 35:22_, 38:18_, 39:21_, 41:21_, 42:11_, 44:13_, 47:25_, 48:5_, 48:13_, 48:14_, 51:25_, 52:10_, 53:6_, 53:19_, 54:13_, 55:22_, 57:18_, 59:11_, 60:4_, 61:7_, 61:24_,

61:25_, 62:13_, 62:23_, 63:5_, 63:9_, 65:4_, 65:11 _, 66:9_, 66:23_, 67:4_, 68:6_, 68:16_, 72:22_, 76:20_, 79:4_, 83:17_, 84:13_, 85:3_, 88:12_, 94:4_, 100:2_, 101:3_, 110:14_, 112:22_, 112:25 _, 114:20_, 133:21_, 134:2_, 147:3_, 151:20_, 154:16

**seeing** [3]_ - 9:23_, 44:21 _, 137:19

**seem** [2]_ - 54:9_, 113:6

**segment** [3]_ - 66:6_, 80:18_, 108:9

**segue** [1]_ - 60:5

**select** [3]_ - 7:2_, 8:21_, 54:12

**selected** [2]_ - 48:5_, 133:10

**selecting** [1]_ - 59:6

**selection** [37]_ - 3:22_, 5:17_, 5:24_, 54:1_, 87:7 _, 87:24_, 96:14_, 100:20 _, 102:3_, 102:20_, 103:13_, 106:16_, 107:17 _, 114:14_, 117:22_, 118:1_, 118:21_, 119:1_, 119:8_, 119:20_, 127:13_, 129:7_, 129:14_, 130:3_, 130:8_, 131:4_, 131:13_, 131:22_, 134:5_, 138:11_, 139:12_, 140:4_, 140:8_, 140:17_, 142:20_, 146:22 _, 148:6

**self** [2]_ - 63:2_, 115:3

**self-declared** [1]_ - 115:3

**self-representation** [1]_ - 63:2

**semester** [1]_ - 32:18

**Senator** [1]_ - 64:10

**send** [1]_ - 44:11

**senior** [1]_ - 89:3

**sense** [2]_ - 34:20_, 119:14

**sensitive** [1]_ - 27:2

**sentence** [1]_ - 5:9

**separate** [1]_ - 142:24

**separately** [1]_ - 142:25

**September** [12]_ - 60:15 _, 60:19_, 63:16_, 63:18_, 97:1_, 114:25_, 140:19_, 141:1_, 141:12_, 142:2_,

142:11

**sergeant** [3]_ - 14:5_, 14:10_, 29:25

**serial** [3]_ - 9:5_, 142:11_, 142:15

**series** [1]_ - 11:2

**serious** [1]_ - 150:6

**serve** [49]_ - 6:18_, 9:9_, 12:10_, 13:16_, 16:6_, 18:19_, 19:17_, 20:25_, 23:12_, 24:12_, 25:22_, 32:22_, 35:18_, 39:14_, 43:8_, 43:17_, 45:13_, 46:2_, 48:5_, 51:18_, 51:20_, 52:14_, 62:3_, 64:19_, 65:10_, 66:17_, 68:11_, 74:5_, 78:18_, 88:14_, 88:25_, 90:17_, 91:9_, 92:18_, 98:3_, 98:11_, 103:4_, 104:25_, 105:4_, 111:4_, 113:21_, 114:19_, 115:21_, 133:11 _, 135:14_, 136:14_, 137:20_, 138:9

**served** [6]_ - 11:19_, 39:2 _, 39:5_, 81:1_, 85:4_, 94:5

**service** [16]_ - 27:18_, 27:20_, 45:7_, 70:14_, 78:1_, 79:1_, 85:9_, 86:3 _, 86:6_, 99:16_, 134:1_, 134:4_, 138:9_, 139:24_, 140:2_, 153:18

**Service** [12]_ - 13:2_, 13:8 _, 13:10_, 83:17_, 83:18_, 105:20_, 105:24_, 106:6_, 106:11_, 141:15_, 141:19

**services** [1]_ - 143:10

**session** [1]_ - 134:16

**set** [8]_ - 8:3_, 76:6_, 80:12 _, 100:7_, 109:13_, 109:16_, 133:21_, 141:6

**sets** [1]_ - 150:6

**setting** [2]_ - 59:4_, 96:7

**setup** [1]_ - 88:13

**seven** [1]_ - 16:19

**seven-plus** [1]_ - 16:19

**several** [1]_ - 10:12

**sexual** [1]_ - 90:14

**shall** [1]_ - 150:16

**shape** [1]_ - 72:11

**share** [4]_ - 19:8_, 43:11_, 68:14_, 135:22

**shared** [1]_ - 74:24

**sharing** [2]_ - 35:6_, 136:18

**sheriff** [9]_ - 12:19_, 19:24_, 20:22_, 23:21_, 25:9_, 25:10_, 36:14_, 38:1_, 136:2

**Sheriff's** [7]_ - 19:3_, 23:20_, 24:4_, 25:7_, 25:14_, 30:1_, 37:24

**sheriff's** [6]_ - 19:22_, 20:3_, 36:2_, 36:9_, 37:5_, 76:14

**shift** [4]_ - 11:11_, 53:20_, 119:19_, 146:20

**shifting** [2]_ - 8:3_, 48:15

**SHIPLEY** [6]_ - 3:10_, 4:13_, 5:8_, 131:18_, 153:22_, 155:2

**Shipley** [3]_ - 3:10_, 4:12_, 153:21

**shipped** [1]_ - 142:16

**shooting** [5]_ - 71:25_, 72:1_, 72:9_, 74:14_, 74:21

**shop** [1]_ - 78:12

**shorthand** [1]_ - 60:17

**shortly** [1]_ - 6:4

**shot** [1]_ - 71:5

**shotgun** [1]_ - 70:13

**show** [2]_ - 54:5_, 61:14

**showing** [2]_ - 128:21_, 128:23

**siblings** [1]_ - 90:21

**sic** [1]_ - 5:1

**sic]** [1]_ - 70:24

**side** [9]_ - 8:1_, 14:7_, 65:12_, 69:17_, 80:17_, 89:17_, 101:18_, 137:19_, 145:20

**sides** [13]_ - 29:17_, 33:19_, 35:17_, 38:14_, 43:8_, 65:16_, 66:8_, 68:11_, 89:13_, 89:20_, 101:25_, 105:3_, 105:8

**Sierra** [1]_ - 70:18

**significant** [2]_ - 43:5_, 110:17

**Sihvola** [1]_ - 3:19

**silent** [1]_ - 147:25

**similar** [5]_ - 53:11_, 61:10_, 61:13_, 61:22_, 139:12

**simple** [1]_ - 127:23

**simply** [8]_ - 4:23_, 47:4_, 48:4_, 59:7_, 60:9_, 61:5_, 144:17_, 152:5

**single** [1]_ - 115:20

**sister** [8]_ - 19:2_, 19:5_, 22:17_, 22:24_, 31:13_, 33:8_, 93:11_, 145:13

**sister's** [2]_ - 19:15_, 23:7

**sister-in-law** [2]_ - 31:13_, 33:8

**sit** [2]_ - 44:17_, 102:14

**sites** [1]_ - 97:19

**sits** [1]_ - 134:22

**sitting** [1]_ - 125:24

**situation** [8]_ - 82:17_, 83:19_, 90:13_, 90:23_, 101:15_, 113:4_, 114:20_, 127:14

**situations** [1]_ - 66:13

**six** [1]_ - 97:20

**sixth** [2]_ - 122:22_, 125:4

**size** [3]_ - 8:20_, 47:10

**skeet** [1]_ - 72:1

**skipped** [1]_ - 111:20

**SKS** [1]_ - 48:17

**slate** [1]_ - 147:21

**small** [2]_ - 36:14_, 125:9

**smelled** [1]_ - 144:11

**smooth** [1]_ - 101:12

**so..** [10]_ - 34:19_, 36:4_, 36:15_, 37:17_, 73:23_, 75:16_, 83:19_, 98:8_, 103:7_, 127:8

**social** [5]_ - 42:17_, 54:7_, 149:13_, 149:24_, 149:25

**software** [3]_ - 31:25_, 46:18_, 47:2

**solely** [2]_ - 60:2_, 144:8

**solemnly** [2]_ - 6:16_, 138:23

**someone** [2]_ - 62:22

**sometime** [1]_ - 78:8

**sometimes** [12]_ - 37:14_, 44:18_, 54:25_, 66:12_, 66:13_, 68:7_, 75:17_, 79:1_, 139:12_, 144:16_, 146:5_, 146:10

**somewhat** [1]_ - 25:18

**somewhere** [1]_ - 104:8

**sons** [1]_ - 14:8

**soon** [6]_ - 76:23_, 77:4_,

79:20_, 80:9_, 82:12_, 106:17

**sorry** [8]_ - 11:14_, 40:10_, 66:12_, 79:7_, 82:13_, 86:16_, 86:22_, 154:13

**sort** [10]_ - 18:17_, 30:9_, 30:12_, 32:8_, 35:14_, 41:9_, 41:24_, 68:3_, 91:6_, 128:12

**sorts** [1]_ - 75:19

**sound** [3]_ - 79:7_, 148:9

**sounds** [3]_ - 43:4_, 45:8_, 132:25

**source** [4]_ - 58:14_, 59:9_, 79:14_, 149:18

**South** [1]_ - 70:10

**Southern** [5]_ - 140:20_, 141:2_, 141:13_, 142:3_, 142:12

**space** [1]_ - 22:1

**speaking** [2]_ - 8:19_, 112:4

**speaks** [2]_ - 73:24_, 143:19

**special** [3]_ - 69:22_, 78:23_, 92:5

**Special** [2]_ - 141:15_, 141:20

**specialist** [1]_ - 32:1

**specialized** [6]_ - 68:18_, 69:12_, 75:8_, 75:23_, 76:13

**specific** [13]_ - 7:1_, 27:2_, 60:22_, 64:2_, 73:13_, 79:2_, 80:18_, 83:2_, 113:19_, 143:2_, 143:4_, 154:24

**specifically** [10]_ - 33:9_, 33:10_, 37:6_, 59:15_, 61:12_, 82:1_, 106:5_, 106:7_, 149:12_, 150:1

**speech** [2]_ - 150:17_, 151:3

**speed** [2]_ - 42:12_, 70:9

**spell** [1]_ - 70:20

**spelling** [1]_ - 70:22

**spirits** [1]_ - 97:21

**spoken** [1]_ - 106:6

**spouse** [1]_ - 30:7

**St** [7]_ - 12:19_, 15:21_, 19:22_, 20:3_, 21:9_, 22:18_, 36:2

**staff** [3]_ - 134:14_, 138:12

_, 153:4

**stage** [1]_ - 117:25

**stand** [3]_ - 54:14_, 133:18_, 143:24

**standard** [1]_ - 118:24

**standby** [1]_ - 3:19

**standing** [3]_ - 84:25_, 133:24_, 134:13

**Star** [1]_ - 49:25

**start** [5]_ - 54:13_, 67:20_, 68:23_, 84:16_, 129:14

**started** [6]_ - 7:6_, 9:10_, 28:23_, 135:20_, 136:2_, 153:8

**starting** [6]_ - 3:9_, 9:1_, 10:2_, 25:1_, 119:24_, 152:1

**starts** [1]_ - 147:21

**State** [2]_ - 26:4_, 64:9

**state** [7]_ - 3:8_, 24:14_, 33:4_, 46:25_, 61:14_, 93:25

**statement** [7]_ - 104:20_, 109:6_, 110:7_, 143:16_, 146:6_, 152:5_, 152:8

**statements** [9]_ - 145:2_, 145:4_, 148:14_, 151:6_, 151:8_, 152:1_, 152:9_, 152:13_, 154:20

**States** [33]_ - 3:6_, 3:9_, 3:12_, 6:11_, 33:16_, 39:1_, 60:14_, 106:24_, 107:6_, 119:25_, 127:18_, 128:9_, 128:19_, 131:16_, 132:23_, 140:22_, 140:23_, 140:24_, 141:5_, 141:8_, 141:9_, 141:16_, 141:17_, 141:18_, 141:19_, 141:22_, 141:24_, 142:8_, 142:17_, 150:14_, 153:22

**stationed** [1]_ - 70:10

**status** [1]_ - 63:17

**statute** [1]_ - 64:4

**staunch** [1]_ - 81:14

**stay** [12]_ - 27:11_, 76:25_, 77:2_, 77:8_, 79:21_, 80:2_, 96:15_, 113:23_, 114:22_, 133:12_, 133:23_, 134:12

**steal** [1]_ - 44:12

**STENOGRAPHER** [1]_ - 129:4

**step** [4]_ - 4:10_, 63:24_,

80:7_, 138:10

**stick** [1]_ - 18:17

**still** [15]_ - 9:20_, 12:21_, 22:24_, 25:19_, 26:18_, 29:7_, 29:14_, 31:5_, 67:13_, 74:7_, 108:1_, 116:2_, 116:8_, 118:4_, 139:20

**still-eligible** [1]_ - 118:4

**stint** [1]_ - 25:7

**stipulated** [1]_ - 63:15

**stipulation** [1]_ - 146:18

**stipulations** [2]_ - 146:16_, 146:19

**stood** [1]_ - 66:25

**stopped** [1]_ - 21:13

**store** [5]_ - 21:23_, 44:12 _, 44:19_, 45:5_, 97:23

**stories** [1]_ - 17:11

**story** [4]_ - 51:15_, 55:12_, 55:18_, 110:2

**straight** [1]_ - 118:21

**stray** [1]_ - 80:13

**stress** [1]_ - 59:5

**stressful** [1]_ - 113:4

**stricken** [13]_ - 108:8_, 108:19_, 110:21_, 111:2_, 111:8_, 111:14_, 112:16_, 115:1_, 116:11_, 117:11_, 125:8_, 146:6_, 146:8

**strike** [3]_ - 5:8_, 112:11_, 116:2

**strikes** [8]_ - 6:2_, 107:12 _, 117:19_, 118:23_, 119:10_, 119:11_, 128:12 _, 128:20

**strong** [1]_ - 65:1

**strongly** [1]_ - 63:23

**structure** [2]_ - 132:22_, 151:24

**students** [1]_ - 113:6

**studies** [2]_ - 32:14_, 32:21

**studying** [1]_ - 32:11

**stuff** [5]_ - 57:12_, 89:4_, 95:12_, 104:14_, 136:3

**subject** [8]_ - 34:6_, 43:12_, 67:12_, 78:22_, 82:21_, 99:19_, 102:19_, 109:11

**subjects** [1]_ - 142:22

**subsequently** [1]_ -

55:18

**substantial** [1]_ - 63:23

**substantive** [1]_ - 125:16

**succeed** [1]_ - 62:6

**sucker** [1]_ - 51:10

**sufficient** [2]_ - 6:1_, 112:11

**suggested** [3]_ - 81:21_, 125:19, 125:24

**suggestion** [1]_ - 5:8

**suggests** [1]_ - 145:11

**suitable** [2]_ - 68:1_, 96:10

**summarize** [1]_ - 152:20

**summarized** [1]_ - 8:25

**summary** [2]_ - 44:7_, 47:13

**summer** [1]_ - 59:14

**summons** [1]_ - 56:6

**Sunday** [1]_ - 56:6

**supply** [1]_ - 97:18

**supplying** [1]_ - 148:24

**supposed** [3]_ - 26:23_, 72:21_, 152:10

**surgery** [1]_ - 35:2

**surplus** [1]_ - 118:17

**surprising** [1]_ - 56:18

**survey** [2]_ - 46:16_, 71:24

**surveys** [1]_ - 46:15

**survived** [1]_ - 49:19

**suspected** [1]_ - 44:15

**sustain** [2]_ - 145:24_, 146:2

**swear** [3]_ - 6:16_, 138:20 _, 138:23

**sweep** [1]_ - 154:16

**sworn** [2]_ - 57:6_, 139:5

**sympathy** [2]_ - 66:10_, 66:15

**synonymous** [1]_ - 62:20

**system** [4]_ - 46:8_, 91:5 _, 100:3_, 116:9

**systems** [1]_ - 31:25

### T

**target** [2]_ - 51:25_, 110:8

**targets** [1]_ - 53:8

**taste** [1]_ - 91:6

**tattoo** [1]_ - 18:12

**taught** [1]_ - 92:5

**teach** [1]_ - 40:6

**teacher** [4]_ - 30:15_, 40:5_, 46:24_, 91:24

**teaching** [1]_ - 92:1

**technical** [2]_ - 32:12_, 125:14

**technicalities** [1]_ - 125:22

**technology** [1]_ - 149:25

**telephone** [2]_ - 140:9_, 149:23

**television** [1]_ - 149:11

**temporarily** [2]_ - 136:8 _, 136:20

**ten** [13]_ - 8:9_, 26:9_, 49:6 _, 49:19_, 49:21_, 74:13_, 83:1_, 92:6_, 107:17_, 117:3_, 117:21_, 117:23_, 118:20

**ten-minute** [1]_ - 118:20

**tends** [1]_ - 92:24

**tenth** [1]_ - 124:2

**term** [6]_ - 62:14_, 62:18_, 63:13_, 63:14_, 72:2_, 142:7

**terms** [10]_ - 16:5_, 24:22 _, 27:8_, 28:22_, 30:22_, 79:13_, 104:19_, 118:7_, 151:23_, 153:4

**testify** [13]_ - 11:3_, 13:8_, 17:19_, 40:19_, 43:4_, 48:9_, 82:2_, 87:20_, 104:15_, 143:24_, 147:24 _, 148:1_, 148:2

**testifying** [3]_ - 105:24_, 147:4_, 147:5

**testimony** [11]_ - 48:11_, 57:7_, 82:10_, 144:10_, 146:24_, 147:1_, 147:9_, 149:8_, 151:14_, 154:22

**text** [3]_ - 4:19_, 5:5_, 149:23

**thanking** [1]_ - 138:8

**THE** [612]_ - 3:2_, 3:4_, 3:13_, 3:17_, 3:20_, 4:8_, 5:7_, 5:10_, 5:15_, 5:19_, 6:8_, 6:20_, 6:22_, 10:4_, 10:10_, 10:12_, 10:14_, 10:17_, 10:19_, 10:22_, 11:1_, 11:10_, 11:14_,

11:16_, 11:19_, 11:21_, 11:24_, 12:3_, 12:8_, 12:12_, 12:15_, 12:18_, 12:21_, 12:24_, 13:3_, 13:6_, 13:13_, 13:18_, 13:24_, 14:14_, 14:19_, 15:1_, 15:8_, 15:16_, 15:23_, 16:3_, 16:8_, 16:11_, 16:15_, 16:17_, 16:20_, 16:23_, 17:3_, 17:6_, 17:9_, 17:12_, 17:16_, 17:21_, 17:24_, 18:3_, 18:6_, 18:9_, 18:11 _, 18:14_, 18:21_, 18:24_, 19:1_, 19:5_, 19:8_, 19:11 _, 19:14_, 19:19_, 19:23_, 19:25_, 20:2_, 20:5_, 20:8 _, 20:11_, 20:14_, 20:17_, 20:21_, 21:3_, 21:6_, 21:11_, 21:16_, 21:20_, 21:24_, 22:4_, 22:13_, 22:16_, 22:21_, 22:24_, 23:1_, 23:4_, 23:7_, 23:14 _, 23:18_, 23:22_, 23:25_, 24:3_, 24:7_, 24:10, 24:16 _, 24:18_, 24:21_, 25:4_, 25:6_, 25:10_, 25:15_, 25:17_, 25:24_, 26:2_, 26:6_, 26:8_, 26:10_, 26:12_, 26:15_, 26:18_, 26:21_, 26:24_, 27:1_, 27:7_, 27:10_, 27:12_, 27:14_, 27:17_, 27:24_, 28:6_, 28:10_, 28:14_, 28:17_, 28:20_, 29:1_, 29:4_, 29:7_, 29:10_, 29:13_, 29:19_, 29:22_, 30:2_, 30:6_, 30:14_, 30:17_, 30:21_, 31:1_, 31:4_, 31:8_, 31:11_, 31:15_, 31:19_, 31:22_, 32:2_, 32:6_, 32:11_, 32:14_, 32:20_, 32:25_, 33:7_, 33:9_, 33:13_, 33:15_, 33:22_, 34:2_, 34:9_, 34:12_, 34:16_, 34:20_, 34:24_, 35:3_, 35:6_, 35:9_, 35:11_, 35:16_, 35:20_, 36:5_, 36:13_, 36:16_, 36:18_, 36:20_, 36:22_, 36:25_, 37:2_, 37:4_, 37:10_, 37:13_, 37:18_, 37:25_, 38:3_, 38:6_, 38:9_, 38:12 _, 38:16_, 39:2_, 39:5_, 39:9_, 39:12_, 39:17_, 39:23_, 40:1_, 40:4_, 40:6 _, 40:9_, 40:12_, 40:16_, 40:24_, 41:5_, 41:12_, 41:15_, 41:19_, 41:23_, 42:3_, 42:5_, 42:7_, 42:11

_, 42:18_, 42:21_, 42:23_, 43:2_, 43:10_, 43:14_, 43:19_, 44:5_, 44:20_, 45:2_, 45:8_, 45:10_, 45:16_, 45:23_, 46:4_, 46:7_, 46:11_, 46:22_, 47:2_, 47:7_, 47:14_, 47:18_, 47:23_, 49:2_, 49:8_, 49:10_, 49:14_, 49:17_, 49:22_, 50:3_, 50:7_, 50:19_, 51:1_, 51:12_, 51:17_, 51:20_, 52:3_, 54:20_, 55:4_, 55:8_, 55:12_, 55:14_, 55:18_, 55:20_, 55:24_, 56:3_, 56:9_, 56:12_, 56:15_, 58:7_, 58:10_, 58:14_, 58:19_, 58:21_, 58:23_, 59:2_, 68:23_, 68:25_, 69:2_, 69:5_, 69:7_, 69:9_, 69:11_, 69:16_, 69:25_, 70:2_, 70:14_, 70:20_, 70:22_, 70:25_, 71:4_, 71:7_, 71:11_, 71:14_, 71:18_, 71:22_, 72:1_, 72:5_, 72:8_, 72:14_, 72:18_, 72:24_, 73:2_, 73:6_, 73:12_, 73:17_, 73:21_, 73:24_, 74:1_, 74:7_, 74:10_, 74:15_, 74:20_, 74:23_, 75:2_, 75:6_, 75:17_, 76:1_, 76:6_, 76:10_, 76:15_, 76:19_, 77:13_, 77:17_, 77:22_, 77:24_, 78:1_, 78:10_, 78:15_, 78:21_, 80:1_, 80:15_, 81:2_, 81:9_, 81:23_, 82:3_, 82:11_, 82:15_, 82:19_, 82:22_, 82:24_, 83:11_, 83:20_, 83:23_, 84:2, 84:7_, 84:9_, 84:13_, 84:16_, 84:21_, 84:24_, 85:6_, 85:9_, 85:12_, 85:16_, 85:19_, 85:25_, 86:3_, 86:8_, 86:10_, 86:15_, 86:17_, 86:19_, 86:23_, 87:1_, 87:6_, 87:10_, 87:12_, 87:14_, 87:16_, 88:1_, 88:8_, 88:12_, 88:18_, 88:24_, 89:5_, 89:8_, 89:11_, 89:19_, 89:22_, 90:2_, 90:5_, 90:19_, 90:23_, 91:3_, 91:11_, 91:15_, 91:20_, 91:25_, 92:3_, 92:8_, 92:11_, 92:13_, 92:16_, 92:20_, 93:1_, 93:4_, 93:8_, 93:11_, 93:14_, 93:18_, 93:22_, 94:4_, 94:7_, 94:11_, 94:16_, 94:20_, 94:22_,

95:2_, 95:9_, 95:14_, 95:18_, 95:23_, 95:25_, 96:2_, 96:5_, 96:13_, 96:18_, 96:21_, 96:23_, 97:9_, 97:17_, 97:24_, 98:9_, 98:15_, 98:20_, 98:23_, 99:14_, 99:18_, 100:6_, 100:11_, 100:15_, 100:19_, 100:23_, 100:25_, 101:2_, 101:14_, 101:19_, 101:23_, 102:2_, 102:6_, 102:10_, 102:23_, 103:1_, 103:8_, 103:12_, 103:15_, 103:17_, 103:20_, 103:23_, 104:1_, 104:6_, 104:9_, 104:13_, 104:18_, 104:22_, 105:2_, 105:6_, 105:10_, 105:15_, 105:18_, 105:22_, 106:5_, 106:9_, 106:15_, 106:19_, 107:2_, 107:7_, 107:9_, 107:23_, 108:4_, 108:13_, 108:17_, 108:19_, 109:9_, 109:20_, 110:12_, 110:25_, 111:2_, 111:6_, 111:8_, 111:12_, 111:14_, 111:16_, 111:23_, 112:22_, 113:8_, 113:23_, 114:7_, 114:12_, 115:1_, 115:9_, 115:11_, 115:22_, 116:4_, 116:7_, 116:10_, 116:19_, 116:24_, 117:3_, 117:5_, 117:10_, 117:15_, 117:18_, 118:3_, 118:10_, 118:14_, 118:18_, 119:6_, 119:10_, 119:16_, 119:18_, 119:22_, 120:6_, 120:9_, 120:11_, 120:15_, 120:19_, 120:21_, 120:25_, 121:3_, 121:5_, 121:10_, 121:12_, 121:15_, 121:19_, 121:22_, 121:24_, 122:2_, 122:4_, 122:8_, 122:10_, 122:14_, 122:16_, 122:20_, 122:22_, 123:1_, 123:3_, 123:7_, 123:9_, 123:13_, 123:15_, 123:19_, 123:21_, 123:25_, 124:2_, 124:6_, 124:10_, 124:14_, 124:16_, 124:20_, 124:22_, 125:1_, 125:3_, 125:11_, 125:20, 126:1_, 126:4_, 126:6_, 126:12_, 126:15_, 126:18_, 126:20_, 126:22_, 127:2_, 127:9_, 127:16_, 128:7_, 128:11_, 128:16_, 129:4_, 129:6_, 129:11_, 129:19_, 129:22_, 130:2_, 130:7_, 130:12_, 130:15_, 130:20_, 130:23_, 131:3_,

131:9_, 131:12_, 131:20_, 132:7_, 132:9_, 132:24_, 133:1_, 133:6_, 133:22_, 133:23_, 134:12_, 135:2_, 135:9_, 135:13_, 135:16, 135:19_, 136:5_, 136:15_, 136:18_, 137:8_, 137:14_, 137:18_, 138:6_, 138:17_, 139:3_, 139:4_, 153:13_, 153:16_, 153:24_, 154:5_, 154:9_, 154:12_, 154:14_, 154:19_, 154:24_, 155:4

**themes** [1]_ - 139:12

**themselves** [3]_ - 64:25_, 65:8_, 68:3

**then-presidential** [1]_ - 62:2

**therefore** [1]_ - 147:20

**they've** [1]_ - 125:8

**thinking** [7]_ - 46:1_, 64:25_, 65:8_, 68:3_, 101:21_, 104:24_, 107:15

**thinks** [6]_ - 10:22_, 63:2_, 63:6_, 65:13_, 67:23_, 145:20

**third** [7]_ - 92:6_, 121:5_, 122:4_, 122:10_, 131:13_, 148:4_, 154:10

**thorough** [5]_ - 4:15_, 9:15_, 54:1_, 112:3_, 113:11

**thoughts** [2]_ - 5:12_, 107:11

**three** [9]_ - 21:15_, 41:17_, 83:3_, 84:14_, 109:4_, 119:4_, 119:7_, 130:2_, 131:3

**threw** [3]_ - 51:5_, 51:7_, 109:24

**throughout** [3]_ - 58:3_, 72:21_, 73:10

**ticket** [1]_ - 27:14

**ties** [5]_ - 13:25_, 25:3_, 28:8_, 41:15_, 112:13

**tight** [2]_ - 76:21_, 135:11

**tiny** [1]_ - 79:10

**title** [2]_ - 19:23_, 25:8

**Title** [10]_ - 140:23_, 140:24_, 141:5_, 141:8_, 141:9_, 141:18_, 141:22_, 141:24_, 142:8_, 142:17

**today** [10]_ - 4:8_, 5:21_, 6:25_, 7:10_, 58:4_, 74:14_, 78:8_, 132:12_, 152:3_, 155:4

**today's** [2]_ - 8:15_, 101:5

**together** [2]_ - 29:13_, 107:11

**tomorrow** [5]_ - 26:23_, 72:22_, 152:1_, 152:3_, 155:5

**took** [1]_ - 71:3

**topic** [10]_ - 9:19_, 31:23_, 33:1_, 43:23_, 48:1_, 53:21_, 57:22_, 68:20_, 106:20_, 153:6

**topics** [2]_ - 6:24_, 107:4

**touch** [8]_ - 9:11_, 26:18_, 29:7_, 96:23_, 98:23_, 100:4_, 102:11_, 154:21

**touching** [1]_ - 6:18

**toward** [2]_ - 48:3_, 63:24

**towards** [1]_ - 139:23

**track** [5]_ - 8:13_, 8:14_, 8:24_, 52:6_, 56:4

**trafficking** [1]_ - 128:3

**trained** [3]_ - 70:9_, 70:12_, 114:1

**training** [16]_ - 58:20_, 68:19_, 69:12_, 69:22_, 70:7_, 71:2_, 71:7_, 72:21_, 72:23_, 72:24_, 73:8_, 75:9_, 75:23_, 76:2_, 76:13_, 76:17

**transcript** [2]_ - 4:22_, 83:13

**transcription** [1]_ - 47:17

**transported** [1]_ - 142:16

**traumatic** [1]_ - 100:7

**traveled** [1]_ - 52:18

**traveling** [1]_ - 52:20

**travels** [1]_ - 78:20

**treat** [1]_ - 146:17

**trespass** [1]_ - 44:19

**trial** [26]_ - 3:21_, 11:3_, 31:6_, 40:20_, 43:4_, 48:9_, 54:18_, 59:10_, 60:21_, 61:23_, 133:11_, 133:16_, 139:7_, 139:9_, 143:1_, 143:10_, 143:15_, 143:20_, 144:4_, 146:19_, 148:11_, 148:22_, 148:25_, 150:5_, 151:7_, 151:23

**trials** [2]_ - 80:25_, 139:13

**tries** [1]_ - 62:5

**trip** [9]_ - 26:24_, 27:4_,

27:10_, 27:20_, 92:9_, 92:14_, 93:18_, 97:12_, 114:25

**trips** [2]_ - 28:3_, 115:13

**trooper** [1]_ - 26:5

**trouble** [1]_ - 88:15

**troubles** [1]_ - 4:2

**true** [5]_ - 84:13_, 119:6_, 138:25, 145:9_, 145:11

**Trump** [20]_ - 48:20_, 48:23_, 49:4_, 49:5_, 49:12_, 50:9_, 50:11_, 50:12_, 52:8_, 59:23_, 62:2_, 63:15_, 63:18_, 64:15_, 64:22_, 65:8_, 65:20_, 109:18_, 112:19_, 140:22

**Trump's** [1]_ - 59:14

**trust** [1]_ - 150:7

**truth** [2]_ - 8:18_, 8:22

**truthfully** [3]_ - 6:17_, 28:9_, 138:24

**try** [8]_ - 55:22_, 87:21_, 93:20_, 103:25_, 107:18_, 138:24, 146:3_, 152:20

**trying** [5]_ - 62:21_, 62:22_, 97:7_, 104:7_, 104:14

**Tuesday** [1]_ - 6:23

**turn** [1]_ - 129:13

**turning** [1]_ - 126:3

**twice** [1]_ - 94:5

**two** [18]_ - 3:24_, 10:13_, 10:14_, 14:7_, 14:12_, 21:8_, 21:16_, 26:4_, 32:17_, 57:19_, 58:5_, 58:11_, 80:25_, 85:11_, 96:9_, 125:8_, 126:15_, 135:23

**type** [3]_ - 22:19_, 114:4_, 148:23

**typing** [1]_ - 47:19

U

**U.S** [1]_ - 153:4

**ultimate** [2]_ - 8:16_, 22:5

**ultimately** [8]_ - 62:11_, 64:15_, 110:13_, 113:14_, 128:22_, 146:2_, 150:5_, 151:18

**umbrellas** [1]_ - 144:15

**unable** [1]_ - 10:23

**uncle** [7]_ - 14:9_, 15:20_,

15:25_, 37:23_, 38:6_, 39:20_, 40:10

**uncle's** [2]_ - 38:12_, 40:12

**uncles** [3]_ - 14:7_, 15:2_, 89:14

**under** [8]_ - 58:3_, 84:12_, 118:23_, 118:25_, 119:10_, 137:16_, 143:24_, 148:19

**underlying** [1]_ - 50:23

**understood** [4]_ - 47:18_, 56:9_, 78:21_, 93:22

**undivided** [1]_ - 67:1

**unequivocal** [2]_ - 115:15_, 115:23

**unequivocally** [1]_ - 59:17

**unfortunate** [2]_ - 111:25_, 137:15

**unfortunately** [1]_ - 66:14

**union** [1]_ - 26:13

**United** [33]_ - 3:6_, 3:9_, 3:12_, 6:11_, 33:16_, 39:1_, 60:14_, 106:24_, 107:6_, 119:25_, 127:18_, 128:9_, 128:19_, 131:16_, 132:23_, 140:22_, 140:23_, 140:24_, 141:5_, 141:8_, 141:9_, 141:16_, 141:17_, 141:18_, 141:19_, 141:22_, 141:24_, 142:8_, 142:17_, 150:14_, 153:22

**unless** [3]_ - 59:18_, 107:24_, 145:15

**unpredictable** [1]_ - 139:14

**unrelated** [1]_ - 57:22

**unused** [1]_ - 119:11

**unusual** [2]_ - 111:23_, 139:15

**unwanted** [2]_ - 139:22_, 140:8

**up** [58]_ - 7:15_, 8:19_, 9:21_, 15:5_, 18:14_, 18:17_, 22:19_, 26:20_, 26:23_, 27:13_, 28:3_, 32:21_, 35:23_, 38:25_, 42:12_, 47:21_, 49:20_, 53:1_, 54:11_, 54:14_, 56:7_, 58:2_, 66:6_, 66:25_, 67:8_, 67:12_, 67:14_, 69:15_, 70:17_, 71:1_,

81:15_, 82:12_, 82:17_, 82:21_, 83:22_, 84:10_, 86:19_, 88:9_, 89:14_, 91:1_, 95:12_, 97:7_, 97:25_, 101:5_, 107:2_, 107:13_, 107:19_, 109:20_, 110:2_, 110:16_, 129:7_, 133:18_, 134:25_, 135:1_, 137:15_, 142:22_, 146:18

**updates** [2]_ - 30:21_, 154:6

**uphold** [1]_ - 110:20

V

**vacation** [4]_ - 83:21_, 96:24_, 96:25_, 97:6

**valuable** [1]_ - 50:17

**various** [3]_ - 6:24_, 17:18_, 143:15

**vehicle** [1]_ - 77:24

**vein** [1]_ - 65:7

**vendors** [1]_ - 47:11

**venire** [7]_ - 6:6_, 79:25_, 80:14_, 133:4_, 134:11_, 138:4_, 138:16

**VENIRE** [1]_ - 6:20

**verb** [1]_ - 62:18

**verdict** [16]_ - 67:2_, 80:25_, 85:20_, 85:21_, 86:8_, 86:11_, 86:20_, 87:3_, 87:5_, 94:13_, 138:25_, 140:1_, 144:5_, 146:23_, 151:1_, 152:24

**Vermont** [2]_ - 14:22_, 47:1

**via** [1]_ - 30:25

**Vice** [1]_ - 64:8

**vicinity** [1]_ - 71:2

**victim** [25]_ - 48:19_, 50:23_, 51:24_, 51:25_, 52:1_, 67:10_, 67:15_, 67:24_, 81:25_, 82:5_, 90:11_, 90:19_, 90:21_, 101:4_, 104:3_, 108:24_, 108:25_, 109:5_, 109:6_, 109:9_, 109:24_, 110:7_, 110:15_, 113:3_, 113:10

**victims** [2]_ - 67:22_, 68:7

**video** [2]_ - 83:7_, 83:9

**view** [8]_ - 65:13_, 109:14_, 110:7_, 114:7_, 114:12_, 149:3_, 149:7_, 150:18

**viewing** [1]_ - 151:17

**views** [10]_ - 53:17_, 64:16_, 64:17_, 64:21_, 65:1_, 66:5_, 81:18_, 109:7_, 109:11_, 110:9

**violation** [6]_ - 140:24_, 141:5_, 141:8_, 141:22_, 142:8_, 142:17

**violence** [4]_ - 53:9_, 83:24_, 101:9_, 141:4

**violent** [2]_ - 99:21_, 101:4

**Virginia** [3]_ - 10:9_, 10:17_, 10:24

**visas** [1]_ - 113:5

**visit** [1]_ - 149:3

**Vista** [1]_ - 70:18

**voir** [6]_ - 4:14_, 5:25_, 81:15_, 116:21_, 117:22_, 117:25

**volleyball** [1]_ - 18:13

**volunteer** [3]_ - 22:19_, 22:22_, 23:8

W

**wages** [1]_ - 24:11

**wait** [1]_ - 5:23

**waiting** [2]_ - 83:2_, 107:17

**walk** [3]_ - 28:20_, 44:16_, 50:13

**walking** [1]_ - 144:14

**Walmart** [3]_ - 44:2_, 45:2_, 45:4

**warrant** [2]_ - 80:18_, 112:11

**watch** [2]_ - 54:24_, 149:9

**watched** [1]_ - 54:23

**water** [1]_ - 137:16

**ways** [4]_ - 27:3_, 61:12_, 64:2_, 68:8

**weapon** [2]_ - 69:14_, 142:1

**weapons** [3]_ - 69:21_, 71:13

**weather** [1]_ - 54:25

**web** [3]_ - 4:20_, 5:5_, 32:4

**website** [1]_ - 79:15

**weekend** [1]_ - 32:19

**weekends** [2]_ - 116:15_,

116:17

**weeks** [2] - 78:7, 78:17

**weeks'** [1] - 97:6

**weight** [4] - 144:23, 148:1, 151:7, 151:21

**Wesley** [8] - 3:7, 6:11, 140:13, 140:21, 141:3, 141:14, 142:4, 142:13

**West** [2] - 14:3, 19:3

**west** [1] - 14:5

**wet** [2] - 144:14, 144:15

**whatsoever** [6] - 5:1, 25:21, 41:25, 56:23, 79:12, 145:14

**whichever** [1] - 65:23

**whisper** [1] - 126:6

**whispers** [2] - 126:4, 126:5

**whole** [3] - 24:14, 35:1, 115:10

**wife** [1] - 97:4

**willing** [5] - 58:11, 74:7, 113:21, 114:19, 154:1

**wine** [2] - 51:15, 97:21

**Winn** [1] - 14:24

**Winn-Dixie** [1] - 14:24

**wish** [4] - 128:11, 135:22, 151:7, 151:9

**wishes** [3] - 68:14, 75:8, 152:17

**wishing** [1] - 27:17

**witness** [18] - 44:17, 57:7, 82:8, 82:9, 88:13, 90:11, 143:24, 144:14, 145:12, 145:15, 145:16, 146:25, 147:1, 147:3, 147:4, 147:7, 147:8, 154:5

**witness's** [7] - 11:7, 11:9, 147:4, 147:5, 147:6, 147:9, 147:11

**witnesses** [27] - 11:3, 11:5, 13:7, 17:18, 17:19, 35:13, 40:18, 43:3, 57:6, 66:3, 87:19, 88:15, 105:24, 112:7, 139:17, 143:17, 143:24, 146:20, 147:13, 151:10, 151:15, 151:19, 152:14, 152:15, 152:17, 154:21, 155:3

**witnesses'** [1] - 145:8

**woman** [1] - 107:1

**wonderful** [1] - 132:25

**word** [1] - 57:5

**words** [5] - 63:17, 88:6, 99:25, 108:24, 143:21

**workday** [1] - 32:15

**worker** [1] - 20:10

**works** [10] - 16:15, 17:8, 19:21, 25:13, 31:13, 33:17, 37:23, 39:9, 48:12, 93:11

**world** [1] - 42:13

**worthwhile** [1] - 104:2

**wow** [1] - 103:23

**wrap** [2] - 82:11, 97:25

**wrapping** [1] - 66:6

**wrote** [2] - 85:23, 86:7

### Y

**year** [11] - 18:5, 26:20, 36:2, 41:21, 60:16, 72:21, 73:10, 92:2, 95:13, 97:6, 142:7

**year's** [1] - 64:8

**yearbook** [1] - 30:18

**years** [42] - 11:20, 12:17, 14:21, 14:23, 14:25, 15:22, 15:24, 16:19, 20:1, 21:15, 22:23, 23:2, 23:8, 26:9, 28:19, 39:22, 45:5, 46:6, 46:18, 46:24, 49:7, 49:20, 49:21, 50:6, 50:15, 69:8, 69:9, 72:20, 73:22, 74:13, 74:18, 74:19, 85:8, 92:6, 99:21, 101:8, 103:22, 112:23, 115:7, 115:8, 135:25

**yesterday** [16] - 4:14, 4:23, 4:24, 8:23, 52:11, 56:24, 58:2, 62:24, 77:19, 77:20, 78:9, 84:21, 99:9, 108:15, 113:16, 135:8

**York** [2] - 14:13, 26:4

**young** [1] - 91:1

**yourself** [2] - 60:24, 151:12

**yourselves** [2] - 136:22, 148:15

**YouTube** [1] - 149:14

### Z

**zooming** [2] - 19:14, 91:3

**Zuniga** [1] - 153:25