UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 24-cr-80116-AMC-1

UNITED STATES OF AMERICA,                    Fort Pierce, Florida

                    Plaintiff,              September 17, 2025

          vs.                               8:50 a.m. - 5:11 p.m.

RYAN WESLEY ROUTH,

                    Defendant.               Pages 1 to 268
_____

TRANSCRIPT OF JURY TRIAL - DAY 8
BEFORE THE HONORABLE AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:
                              UNITED STATES ATTORNEY'S OFFICE
                              JOHN SHIPLEY, ESQ.
                              MARIA MEDETIS-LONG, ESQ.
                              CHRISTOPHER BROWNE, ESQ.
                              JENNIFER LUCE, ESQ.
                              99 NE 4th Street
                              Miami, Florida 33132

                              U.S. DEPARTMENT OF JUSTICE
                              JAMES M. DONNELLY, ESQ.
                              950 Pennsylvania Avenue, NW
                              Washington, DC 20530

FOR THE DEFENDANT:
                              RYAN WESLEY ROUTH, PRO SE

AS STANDBY COUNSEL:
                              FEDERAL PUBLIC DEFENDER'S OFFICE
                              RENEE SIHVOLA, ESQ.
                              250 S. Australian Avenue
                              Suite 400
                              West Palm Beach, Florida 33401

STENOGRAPHICALLY REPORTED BY:

                              LAURA E. MELTON, RMR, CRR, FPR
                              Official Court Reporter to the
                              Honorable Aileen M. Cannon
                              United States District Court
                              Fort Pierce, Florida

E X A M I N A T I O N S

Witness/Proceedings                                           Page

MICHAEL BROOKS
        DIRECT EXAMINATION BY MS. MEDETIS-LONG          7
        CROSS-EXAMINATION BY MR. ROUTH                 13
AGENT PATRICK LANTRY
        DIRECT EXAMINATION BY MS. MEDETIS-LONG         15
        CROSS-EXAMINATION BY MR. ROUTH                 29
AARON THOMPSON
        DIRECT EXAMINATION BY MR. DONNELLY             32
        CROSS-EXAMINATION BY MR. ROUTH                 57
        REDIRECT EXAMINATION BY MR. DONNELLY           60
RONNIE OXENDINE
        DIRECT EXAMINATION BY MR. DONNELLY             66
        CROSS-EXAMINATION BY MR. ROUTH                102
SPECIAL AGENT MATTHEW PERRY
        DIRECT EXAMINATION BY MR. BROWNE              111
SPECIAL AGENT GARETT FOO
        DIRECT EXAMINATION BY MR. BROWNE              125
        CROSS-EXAMINATION BY MR. ROUTH               166
        REDIRECT EXAMINATION BY MR. BROWNE            169
SPECIAL AGENT LAURA HALLER
        DIRECT EXAMINATION BY MR. BROWNE              170
SAMUEL PLATA
        DIRECT EXAMINATION BY MR. BROWNE              182
        CROSS-EXAMINATION BY MR. ROUTH               192
        REDIRECT EXAMINATION BY MR. BROWNE            202
LAZARO PLATA
        DIRECT EXAMINATION BY MR. BROWNE              205
        CROSS-EXAMINATION BY MR. ROUTH               223
        REDIRECT EXAMINATION BY MR. BROWNE            229

3

GOVERNMENT ADMITTED EXHIBITS

Exhibit                                                             Page

100................................................................ 161
500................................................................ 118
501 through 504................................................... 147
505, 505A through 505D............................................ 163
506................................................................ 140
507, 507A, B, C, and D............................................ 141
508, 508A, 508B, and 508C......................................... 137
509, 509A, 509B, and 510.......................................... 145
511................................................................ 119
512................................................................ 173
513................................................................ 177
520................................................................ 178
522Z............................................................... 167
525................................................................ 128
528, 529, 530, 531, 532A, 532B, and 935.......................... 132
533................................................................ 115
534................................................................ 113
538................................................................ 211
540B............................................................... 187
540C............................................................... 189
544................................................................ 165
732, 734A, B, C, 735A, B, C, and D................................ 19
736A and 737B, 737, and 738....................................... 20
756A and 756B..................................................... 10

DEFENDANT ADMITTED EXHIBITS

Exhibit                                                             Page

NONE

(Call to the Order of the Court.)

THE COURT:  Good morning.  Let's call the case and have appearances.

COURTROOM DEPUTY:  Calling case United States of America v. Ryan Wesley Routh, Case Number 24-cr-80116-Cannon.

Counsel, please state your appearances for the record, starting with the United States.

MR. SHIPLEY:  Good morning, Your Honor.  John Shipley, Christopher Browne, Maria Medetis-Long, James Donnelly, and Jennifer Luce for the United States.

THE COURT:  Thank you.  Everybody may be seated unless they are addressing the Court.

Good morning, Mr. Routh.

MR. ROUTH:  Good morning.

THE COURT:  Please state your appearance.

MR. ROUTH:  Ryan Routh for the defense.

THE COURT:  Thank you.

MS. SIHVOLA:  Good morning, Your Honor.  Renee Sihvola as standby counsel on behalf of Ryan Routh.  Happy Constitution Day.

Ms. Militello is excused per your order at Docket Entry 271.

THE COURT:  Thank you.  Good morning, Ms. Sihvola.

All right.  Any issues to address this morning before we call in the jury?

MS. MEDETIS-LONG:  Not an issue, Your Honor, but a clarification on the government's list.  We're adding Sheriff's Deputy Michael Brooks to the start of the day.  He had a conflict with a state court trial subpoena for tomorrow, so to avoid that, we have pushed him to this morning.  I can reread the order, if the Court would like.

THE COURT:  Yes.  That would be helpful.

MS. MEDETIS-LONG:  Yes.  It will be Sheriff's Deputy Brooks, TFO Lantry, Mr. Thompson, Mr. Oxendine, Special Agent Perry, Special Agent Foo, Special Agent Haller, Samuel Plata, Lazaro Plata.

THE COURT:  Okay.  All right.  Then -- excellent.

Is Mr. Brooks here?

MS. MEDETIS-LONG:  He is, Your Honor.

THE COURT:  Okay.  And he is a sheriff's deputy?

MS. MEDETIS-LONG:  Yes, he is, Your Honor, for PBSO.

THE COURT:  Mr. Routh, did you get the list of the witnesses for today?

MR. ROUTH:  Yes, Your Honor.

THE COURT:  Okay.  Any legal issues you wish to raise?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  All right.  I had a question, Mr. Browne, regarding your interpreters.  Are these court-certified interpreters that you have contracted with?

MR. BROWNE:  Yes, Your Honor.

THE COURT:  Is there a reason why your office didn't request use of the standard court reporter personnel?

MR. BROWNE:  My understanding is for government witnesses that we have to bear the expense of interpretation services and that we can't avail ourselves of court staff.

THE COURT:  Okay.  All right.  Okay.  I will address that later.

In the meantime, I hear all of our jurors are here, so we will get started.

Officer, please invite the jury in.

COURT SECURITY OFFICER:  Yes, Your Honor.

(The jury entered the courtroom at 8:53 a.m.)

THE COURT:  Please have a seat, as well as everybody in the gallery.

Good morning, ladies and gentlemen.  Thank you for your continued patience and diligence and punctuality.  We will resume trial today, and so, Ms. Medetis-Long, please call your next witness.

MS. MEDETIS-LONG:  Of course, Your Honor.  Good morning.  Good morning, ladies and gentlemen.  The United States calls Michael Brooks to the stand.

THE COURT:  Excellent.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and

nothing but the truth, so help you God?

THE WITNESS:  Yes.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  Michael Brooks.  M-I-C-H-A-E-L, B-R-O-O-K-S.

THE COURT:  You may begin.

MS. MEDETIS-LONG:  Thank you, Your Honor.

MICHAEL BROOKS,

having been sworn, testified as follows:

DIRECT EXAMINATION

BY MS. MEDETIS-LONG:

Q.   Good morning, sir.

A.   Good morning.

Q.   Sir, where do you work?

A.   Palm Beach County Sheriff's Office.

Q.   And is that PBSO for short?

A.   Yes.

Q.   And what's your title?

A.   Deputy sheriff.

Q.   And what are your duties and responsibilities as deputy sheriff?

A.   I'm assigned to road patrol in western Palm Beach County, District 5.

Q.   And what did you do before you joined PBSO?

A.   I was a deputy sheriff with the Broward Sheriff's Office.

Q.   And for what time period?

A.   From 2017 to 2020.

Q.   Did you join PBSO in 2020?

A.   Yes.

Q.   And what did you do for Broward County Sheriff's Office?

A.   I was a deputy sheriff assigned to District 8, City of Weston, and a district detective for City of Oakland Park, District 12.

Q.   And before you were with Broward Sheriff's Office -- or Broward County Sheriff's Office, what -- where did you work?

A.   City of Pembroke Pines Police Department.

Q.   And what did you do there?

A.   I was a police officer assigned to road patrol.

Q.   Thank you.

I would like to direct your attention to September 6, 2024. Were you working that day?

A.   Yes.

Q.   And did you have an occasion to respond to 890 North U.S. 27 in South Bay, Florida?

A.   Yes.

Q.   Does the district that you're assigned to patrol for PBSO include South Bay?

A.   Yes.

Q.   On that day of September 6th, what was your reason for responding to that address?

A.   It was for a welfare check related to somebody who may have been having a medical emergency.

Q.   Okay.  And, generally speaking, what -- what is located at that address?

A.   It is a truck stop called GR's, and there is a Mexican restaurant called Dos Amigos.

Q.   And is there anything else there?  Is there a gas station there?

A.   Yes.

Q.   What kind of gas station?

A.   I believe it's a Marathon.

Q.   Okay.  Now, did you respond alone, or did you respond with a partner?

A.   I responded with other deputies.

Q.   Okay.  And upon your response, did you deploy your body-worn camera?

A.   Yes.

       MS. MEDETIS-LONG:  If I could just show, Your Honor, what has not yet been admitted as Government's Exhibit GX756A and B, only to the witness?

       THE COURT:  You may.

BY MS. MEDETIS-LONG:

Q.   Showing you Government's Exhibit 756A, only to the witness.

If you could take a look at that.  And then 756B, Government's Exhibit.

Do you see those two items, sir?

A.    Yes.

Q.    And do you recognize them?

A.    Yes.

Q.    And do they fairly and accurately depict the events of September 6th when you responded to the Marathon gas station truck stop?

A.    Yes.

MS. MEDETIS-LONG:  Your Honor, at this time, the government would move to admit Government's Exhibit 756A and B.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Those two exhibits will be admitted without objection.

(Government Exhibits 756A and 756B were received in evidence.)

MS. MEDETIS-LONG:  At this time, I would ask to publish previously admitted Government's Exhibit 733 to both the witness and the jury?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.    What do we see here, sir?

A.    This is a satellite overview of GR's truck stop.

Q.   And could you circle for us just a few components.  First of all, the gas station.  You can touch your screen and circle.

A.   (Complies.)

Q.   And those buildings with the blue roofs, what -- what are -- what is housed there?

A.   There is Dos Amigos Mexican Restaurant and the convenience store for the gas station.

Q.   Okay.  Does this Government's Exhibit 733 depict the part of the Marathon gas station truck stop to which you responded on September 6, 2024?

A.   I responded to the eastern corner of the property.

Q.   Could you circle that?

A.   (Complies.)

Q.   Okay.

     MS. MEDETIS-LONG:  Your Honor, permission to publish what's been now admitted as Government's Exhibit 756A?

     THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   What do we see there?

A.   That is the eastern corner of the truck stop.

Q.   Is that part of the area to which you responded on September 6th?

A.   Yes.

Q.   And I'm circling the middle vehicle in the series of three vehicles to the left side of this photograph.  What did I just

circle there?

A.    An orange bucket truck.

MS. MEDETIS-LONG:  Okay.  If we could zoom out again, Ms. Luce.

BY MS. MEDETIS-LONG:

Q.    What -- what is this a photo of?

A.    This is from my body-worn camera when I exited my marked patrol vehicle.

Q.    And what is the date and the time, if you could read that for us, on this still of your body camera footage?

A.    September 6, 2024, at 1500 hours, 3:00 p.m.

MS. MEDETIS-LONG:  And if we could show -- permission to publish, Your Honor, Government's Exhibit 756B, now in evidence?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.    Now, what do we see here?

A.    That is Ryan Routh and a black Nissan SUV.

Q.    And where is that still taken from?

A.    The eastern corner of the parking lot from my body-worn camera.

Q.    And what is the date and time of this interaction?

A.    September 6, 2024, at 1500 hours, or 3:00 p.m.

MS. MEDETIS-LONG:  And if we could compare this, Ms. Luce, to Government's Exhibit 733 already in evidence.

BY MS. MEDETIS-LONG:

Q.   On Government's Exhibit 733, which is on the right side of the screen, could you circle where this vehicle was parked?

A.   (Complies.)

Q.   So you just circled what appears to be an over- -- overhead view of a tree; is that correct?

A.   Yes.  It was parked underneath the tree.

MS. MEDETIS-LONG:  Just one moment, Your Honor. Your Honor, permission to publish Government's Exhibit GX710, already in evidence?

THE COURT:  Granted.

MS. MEDETIS-LONG:  Now, Ms. Luce, if we could go to the last page of this exhibit.

BY MS. MEDETIS-LONG:

Q.   What do we see here, sir?

A.   It looks to be the back portion of the truck stop and the parking lot, facing west.

MS. MEDETIS-LONG:  No further questions, Your Honor. The government would tender the witness.

THE COURT:  Thank you.  Any cross-examination, Mr. Routh?

MR. ROUTH:  Sure.

CROSS-EXAMINATION

BY MR. ROUTH:

Q.   Good morning.  Sorry to drag you out.

A.    Good morning.

Q.    Did you find the medical emergency that you were looking for that day?

A.    No.

Q.    You did not?

A.    Correct.

Q.    So somebody called in something and -- and then it was bogus?

A.    We were unable to locate it.

Q.    Right.  Right.  Right.  Okay.  Was I not extremely nice and polite and courteous and kind and...

A.    You were.

Q.    Right on.  All right.  Thank you very much.  No other questions.

          THE COURT:  Any redirect?

          MS. MEDETIS-LONG:  No, thank you, Your Honor.

          THE COURT:  Thank you, Mr. Brooks.  Deputy Brooks, you may be excused.

          THE WITNESS:  Thank you.

          THE COURT:  All right.  Next witness, please.

          MS. MEDETIS-LONG:  Yes, Your Honor, the United States calls Patrick Lantry.

          THE COURT:  Good morning, sir.  Please walk over here to be sworn in.

          COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

COURTROOM DEPUTY:  Please be seated.

THE WITNESS:  Thank you.

COURTROOM DEPUTY:  State your first and last name, and please spell it for the record.

THE WITNESS:  Patrick Lantry, L-A-N-T-R-Y.

MS. MEDETIS-LONG:  Permission to inquire, Your Honor?

THE COURT:  Yes.

AGENT PATRICK LANTRY,

having been sworn, testified as follows:

DIRECT EXAMINATION

BY MS. MEDETIS-LONG:

Q.   Good morning, sir.

A.   Good morning.

Q.   Sir, where do you work?

A.   I work for the Palm Beach County Sheriff's Office.

Q.   And what is your title?

A.   I'm an agent.

Q.   And what are your duties and responsibilities as an agent?

A.   I'm assigned to the Strategic Intelligence Section of the Palm Beach County Sheriff's Office, and I'm also assigned as a task force officer at the FBI Joint Terrorism Task Force in

West Palm Beach.

Q.   And Joint Terrorism Task Force, is that JTTF for short?

A.   Yes.

Q.   And how long have you been a task force officer with PBSO and FBI in the JTTF?

A.   For the last five years.

Q.   And how long have you been with PBSO generally?

A.   About eight years.

Q.   Now, before you were an agent with PBSO, what did you do for PBSO?

A.   I worked at road patrol in District 11.

Q.   For how long?

A.   For about 18 months.

Q.   And geographically speaking, what part of Palm Beach County does District 11 include?

A.   That is the City of South Bay.

Q.   Okay.  And before you joined PBSO, what did you do?

A.   I was a police officer in the New York City Police Department for over 20 years.

Q.   And in particular, what kinds of responsibilities did you have with the New York Police Department?

A.   I was a detective for 15 years.  And my last 10 years, I was also assigned to the JTTF.

Q.   Now I want to direct your attention to September 17, 2024, if I may.  Did you respond to 890 North U.S. 27 in South Bay,

Florida?

A.    Yes, I did.

Q.    And what is at that location?

A.    That is the Marathon gas station.

Q.    Is there anything else there?

A.    Yes.  There is the Long Island Food Market and also a restaurant called Dos Amigos.

Q.    And does that facility do anything else other than act as a gas station?

A.    Yeah.  There is also a truck stop there, in the rear.

Q.    In the rear?

A.    Yes.

Q.    Okay.  Now, when you were a patrol officer for District 11 that included South Bay, had you responded ever to that Marathon gas station truck stop?

A.    Yes.

Q.    About how many times?

A.    Just about every day.

Q.    Is it fair to say that you are familiar with that location?

A.    Yes.

Q.    Now, if one were to travel from South Bay to West Palm Beach, the western part of the county, what road would one take?

A.    From South Bay, you would take State Road 80, which then turns into Southern Boulevard.

Q.   And if you were to take Southern Boulevard all the way west, where would it take you?

A.   You would take that all the way east.

Q.   I'm sorry.  East.  I apologize.

A.   You would take that all the way east.  It would eventually end at Mar-a-Lago.

Q.   Okay.  What is the city immediately to -- adjacent to South Bay to the east?

A.   Belle Glade.

Q.   And where is Royal Palm Beach in relation to South Bay?

A.   It's about 30 miles east from South Bay.

Q.   Would one -- what road would one take to get from South Bay to Royal Palm Beach?

A.   State Road 80 or Southern Boulevard.

Q.   How -- how would you characterize South Bay and the Marathon gas station truck stop?  Is it bustling, urban, or remote?

A.   It's very remote.

       MS. MEDETIS-LONG:  Your Honor, may I have permission to approach the witness with certain exhibits not yet in evidence?

       THE COURT:  Yes.

BY MS. MEDETIS-LONG:

Q.   Sir, I'm going to walk up in a moment and hand you Government's Exhibit 732, Government's Exhibit 734A and B, Government's Exhibit 734C, Government's Exhibit 735A, B, and C

and D, Government's Exhibit 736A and B, and Government's Exhibit 737 and 738.  I would ask that you take a look at these and look up when you are done.

(Tendering items.)

A.   Okay.

Q.   Are you finished looking at those, sir?

A.   Yes, ma'am.

MS. MEDETIS-LONG:  Permission to approach, Your Honor?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   Now, sir, you've had a chance to look at those exhibits. Do those fairly and accurately depict the scene as you saw it -- and when I say "the scene," I mean the Marathon gas station truck stop as you saw it on September 17, 2024?

A.   Yes, they do.

MS. MEDETIS-LONG:  Your Honor, at this time, the government would seek to move into evidence Government's Exhibit 732, 734A, B, C, 735A, B, C, and D, 736A and B, 737, and 738.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  All of those exhibits are admitted without objection.

(Government Exhibits 732, 734A, B, C, 735A, B, C, and D were received in evidence.)

(Government Exhibits 736A and 736B, 737, and 738 were received in evidence.)

MS. MEDETIS-LONG:  What's been previously admitted as Government's Exhibit 733, permission to publish, Your Honor?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   Sir, what do we see here in Government's Exhibit 733?

A.   That would be an aerial view of the Marathon gas station and the truck stop.

Q.   Could you -- this is a touchscreen.  Could you circle where the truck stop is.

A.   This would be the truck stop area (indicating).

Q.   And do non-truck vehicles park there ever, as you would have observed in your 18 months patrolling that area?

A.   Yes.

Q.   Now, have you ever seen vehicles park there for extended periods of time or days on end?

A.   It's -- that would be unusual.

Q.   And that's based on your training and experience patrolling that area?

A.   Yes.

MS. MEDETIS-LONG:  Permission to publish what's been now admitted as Government's Exhibit 737, Your Honor?

THE COURT:  Granted.

///

BY MS. MEDETIS-LONG:

Q.   What do we see there?

A.   That is the front of the Marathon gas station.

MS. MEDETIS-LONG:  Permission to publish Government's Exhibit 734A, now admitted?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   What do we see here?

A.   That would be the furthest, furthermost corner of the truck stop.

Q.   And what do we see depicted here?

A.   That is a light pole, and behind that is a tree.

Q.   And if we could compare this with Government's Exhibit 733 in evidence.  Could you circle on 733 where that tree and light pole are.

A.   That would be in this corner here (indicating).

MS. MEDETIS-LONG:  Permission to publish 734B, Government's Exhibit, already in evidence?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   Now, what do we see here?

A.   That's the -- the base of the light pole with some earplugs.

Q.   What's the color of the earplugs?

A.   Orange.

Q.   And was this photograph taken on September 17, 2024, when you responded to the truck stop gas station?

A.   Yes, it was.

Q.   Okay.

MS. MEDETIS-LONG:  Permission to publish 734C, now in evidence?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   What do we see depicted here?

A.   At the base of the light pole is an empty Vienna sausage can.

Q.   What's the brand?

A.   That's Armour.

MS. MEDETIS-LONG:  Permission to publish Government's Exhibit 736A, now in evidence, Your Honor?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   And what do we see there?

A.   That is the same back corner of the truck stop.

MS. MEDETIS-LONG:  And if we could publish, if we have permission, Your Honor, Government's Exhibit 736B, now in evidence?

THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   What is there?

A.   That's the same -- it's the view from the convenience store to the back corner.

Q.   Circling the series of vehicles here (indicating), the one furthest to the left, what is that?

A.   That is an orange truck.

Q.   Was that there on September 17, 2024?

A.   Yes, it was.

Q.   Now, if we can start with Government's Exhibit 735A.

MS. MEDETIS-LONG:   Permission to publish, Your Honor, already in evidence?

THE COURT:   Granted.

BY MS. MEDETIS-LONG:

Q.   What is this a photo of, sir?

A.   That's a photo of the tree in the other pictures.

MS. MEDETIS-LONG:   Moving to Government's Exhibit 735B, permission to publish, Your Honor?

THE COURT:   Granted.

BY MS. MEDETIS-LONG:

Q.   What is this a photo of?

A.   Again, the same tree with just a lot of debris under the tree.

MS. MEDETIS-LONG:   If we could publish Government's Exhibit 735C, Your Honor?

THE COURT:   Yes.

///

BY MS. MEDETIS-LONG:

Q.   What is that a photograph of?

A.   It's a photograph of the Armour Vienna Sausage can --

Q.   And --

A.   -- under the tree.

Q.   I'm sorry.  What was that?

A.   Under the tree.

          MS. MEDETIS-LONG:  And Government's Exhibit 735D.  Permission to publish?

          THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   What do we see here?

A.   That's the same tree with multiple empty Vienna sausage cans.

          MS. MEDETIS-LONG:  Permission to publish Government's Exhibit 737?

          THE COURT:  Granted.

BY MS. MEDETIS-LONG:

Q.   I believe we may have already seen this photograph, but what is this again?

A.   That is the front of the Marathon gas station.

          MS. MEDETIS-LONG:  Permission to publish Government's Exhibit 738, Your Honor?

          THE COURT:  Granted.

///

BY MS. MEDETIS-LONG:

Q.   What do we see here?

A.   That -- that is the view of the truck stop from the convenience store to the rear.

Q.   So if I -- if you were -- just to understand, if we were standing with our back toward the convenience store, is that the view we're looking at?

A.   Yes.

MS. MEDETIS-LONG:   Permission to publish what's now in evidence as Government's Exhibit 756A?

THE COURT:   Granted.

BY MS. MEDETIS-LONG:

Q.   What do we see here?

A.   That is the rear corner of the truck stop.

Q.   And what is the date on here?

A.   The date is September 6th.

Q.   Circling the series of vehicles to the left of the photograph, what do you see in the center there?

A.   That is an orange truck.

MS. MEDETIS-LONG:   Could we compare this to 736, Government's Exhibit, 736B?

BY MS. MEDETIS-LONG:

Q.   Do you see trucks in both of these exhibits?

A.   Yes, I do.

Q.   756A and 736B?

What is similar about these two photographs?

A.   Both photos have the orange truck.

Q.   And were these photographs taken on different days?

A.   Yes.

MS. MEDETIS-LONG:   Permission to publish again what's now in evidence as 756B, Government's Exhibit?

THE COURT:   Granted.

BY MS. MEDETIS-LONG:

Q.   What do we see here?

A.   That is a picture of a black Nissan Xterra underneath the tree, with the defendant.

Q.   And is that -- where is that located on the property?

A.   That is, again, the rear right corner of the truck stop.

MS. MEDETIS-LONG:   At this time, Your Honor, permission to publish Government's Exhibit 754, previously admitted?  This is a video.

THE COURT:   Granted.

MS. MEDETIS-LONG:   Ms. Luce, if we can go to 4 minutes and 20 seconds.

BY MS. MEDETIS-LONG:

Q.   What is the date stamp on this video?

A.   The date stamp is September 15th.

Q.   And what is the time?

A.   That is 49 minutes after midnight.

Q.   And did you collect this video, sir?

A.    Yes.

Q.    And where did you collect it from?

A.    From the Long Island Food Market surveillance cameras.

Q.    What do we see happening now in this photograph?

A.    There is an SUV approaching from that far corner.

(A video and/or audio was played.)

BY MS. MEDETIS-LONG:

Q.    What vehicle does it appear to be?

A.    That is a black Nissan Xterra.

MS. MEDETIS-LONG:  Ms. Luce, if we could go to 5 minutes.

(A video and/or audio was played.)

BY MS. MEDETIS-LONG:

Q.    What is happening now?

A.    The gentleman getting out of the Xterra.

MS. MEDETIS-LONG:  Can we pause it, please.

BY MS. MEDETIS-LONG:

Q.    Who is the gentleman?

A.    The gentleman is the defendant.

Q.    What time is it?

A.    That is 50 minutes after midnight on September 15th.

MS. MEDETIS-LONG:  Your Honor, permission to publish Government's Exhibit 755, previously admitted?

THE COURT:  Granted.

MS. MEDETIS-LONG:  If we could go to 1 minute and

2 seconds, or just 1 minute of the video.

(A video and/or audio was played.)

BY MS. MEDETIS-LONG:

Q.   What do we see here?

A.   That is the defendant leaving the convenience store.

Q.   Now, based on your experience with this location --

MS. MEDETIS-LONG:  If we could pause the video for a moment.

BY MS. MEDETIS-LONG:

Q.   -- would the convenience store have been open at this time of night?

A.   No.

MS. MEDETIS-LONG:  Could we compare this to Government's Exhibit 733.  733, please.

BY MS. MEDETIS-LONG:

Q.   Could you orient us as to where the vehicle in the video at 7 -- GX755 is located on GX733.

A.   That would be at the rear of this -- of the store there (indicating).

Q.   And do you know the store to have security cameras to the rear of it?

A.   Yes.

MS. MEDETIS-LONG:  Going back to Government's Exhibit 755.  If we could go to 2 minutes and 8 seconds, please.

(A video and/or audio was played.)

BY MS. MEDETIS-LONG:

Q.   What do we see now, sir?

A.   The black Xterra is driving away.

Q.   And what time is it?

A.   That is 54 minutes after midnight on September 15th.

MS. MEDETIS-LONG:   Your Honor, the government has no further questions.  We tender the witness.

THE COURT:   Thank you.

Any cross-examination, Mr. Routh?

MR. ROUTH:   Sure.

CROSS-EXAMINATION

BY MR. ROUTH:

Q.   Good morning.  How are you?

A.   Good morning, sir.

Q.   Did you say a minute ago that it was unusual for people to stay at a truck stop?

A.   No, I said it was unusual for people to park multiple nights at a truck stop.

Q.   Multiple nights.  Okay.

So -- but it is a truck stop, is it not?

A.   Yes, it is.

Q.   Is that not what truck stops do?

A.   Yes, they do.

Q.   So people pay and they park and they spend the night?

A.   Yes, sir.

Q.   So seems pretty normal to me.

A.   Okay.

Q.   Are there normally bugs and ants and little creatures crawling around in the grass in Florida?

A.   Sure.

Q.   So is it possible that someone set out their little cans and residual cues to feed all the ants and the bugs and little creatures?

MS. MEDETIS-LONG:  Objection.  Calls for speculation.

THE COURT:  Overruled.

THE WITNESS:  I'm not aware, sir.

BY MR. ROUTH:

Q.   But, I mean, if someone wanted to feed some animals, they would set out food normally; right?

A.   Sure.

Q.   So -- so it's possible that whomever was merely feeding the little animals out in the world that were hungry, yes?

A.   Yes.

Q.   It's a nice gesture possibly?

A.   Yes, sir.

Q.   So -- but he didn't clean up, did he?

A.   No, he did not.

Q.   He should have.

MR. ROUTH:  Thank you for your time.  No other

questions.

THE COURT:  Any redirect?

MS. MEDETIS-LONG:  No, Your Honor.

THE COURT:  Thank you very much, sir.

THE WITNESS:  Thank you.

THE COURT:  You may be excused.

We will have one more witness, and then we will take a break.

MR. DONNELLY:  Yes, Your Honor.  The government calls Aaron Thompson.

THE COURT:  Thank you.

Good morning, sir.  Please stay standing to be sworn in.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  My first and last name is Aaron Thompson. That would be A-A-R-O-N, T-H-O-M-P-S-O-N.

THE COURT:  You may begin.

MR. DONNELLY:  Thank you, Judge.

AARON THOMPSON,

having been sworn, testified as follows:

DIRECT EXAMINATION

BY MR. DONNELLY:

Q.   Mr. Thompson, good morning.

A.   Good morning.

Q.   Mr. Thompson, can you tell the members of the jury where you live.

A.   I currently live in Greensboro, North Carolina.

Q.   And do you have a job in North Carolina?

A.   Yes, I do.

Q.   And where do you work?

A.   AT&T.

Q.   And where -- what do you do for AT&T?

A.   I'm a sales consultant, so I essentially sell merchandise through AT&T.

Q.   And are you assigned to a particular store, or do you work in the field?

A.   I work at a store.  Specific location, the West Wendover location.

Q.   Is there a number that's assigned to that address?

A.   Yes.

Q.   What's the number that's assigned to that address?

A.   It would be 336-299-7329, I believe.

Q.   That's the telephone number for that store?

A.    Yes.

Q.    Is there a street address for that store?

A.    Oh, oh, a street address.  It would be 4405 West Wendover, Suite B.

Q.    And is that in Greensboro?

A.    Yes, it is.

Q.    Okay.  Sir, I'm going to direct your attention to about -- we're going to start in September of 2024, about September 25th.  Did some agents from the FBI come to visit you at the store?

A.    Yes, they did.

Q.    And did they ask you about a particular customer that you served in August of 2024?

A.    Yes, they did.

Q.    Did they ever tell you why they wanted to know about this customer?

A.    Not necessarily, no.

Q.    Did they ever give you an actual name for the customer?

A.    Yes, they did.

Q.    What was the name they gave you for this customer?

A.    John White.

Q.    And when they told you that name, did you remember that customer?

A.    Yes.

Q.    And did you tell them that you had some information about

the interaction that you had with the customer, John White?

A.   Yes, I did.

Q.   When they -- after they asked you about John White --

A.   Uh-huh.

Q.   -- I'm going to ask you now questions about that interaction with this person that you knew as John White.

A.   Uh-huh.

Q.   Were you working at that store on August the 4th, 2024?

A.   Yes, I was.

Q.   And can you tell the members of the jury, what time did you work that day, if you remember?

A.   I would say between 11:00 and 8:00 or 10:00 and -- 10:00 and 6:00, 10:00 and 7:00, 11:00 -- 11:00 or 10:00.

Q.   10:00 -- 10:00 or 11:00 a.m.?

A.   11:00 to 7:00 p.m., so opening to closing, essentially.

Q.   Okay.  And at some point around 3:00 that afternoon, did this person, John White, come to your store?

A.   Yes, he did.

Q.   And did you interact with him while he was in the store?

A.   Yes, I did.

Q.   And can you give the members of the jury what you remember about the description of the person that you knew as John White that day?

A.   Okay.  Older white male, lanky, lighter-colored hair, so white-ish hair, and relatively, I would say, aloof.

Q.   Okay.

A.   Uh-huh.

Q.   The person that you just described that you knew as John White, I would ask you to take a look around the courtroom and see if you recognize that person in the courtroom today.

A.   Yes.  Yes.

Q.   And can you -- you said "Yes."  Can you please describe for the Court what he is wearing.

A.   Currently, I would say, gray suit, blue tie.

          MR. DONNELLY:  And, Judge, can the record reflect that the witness has identified Mr. Routh, the defendant?

          THE COURT:  It can.

          MR. DONNELLY:  Thank you, Judge.

BY MR. DONNELLY:

Q.   Mr. Thompson, that day when you had this interaction with the person that you then knew as John White --

A.   Uh-huh.

Q.   -- what was the -- what was that interaction like with you and Mr. White at the time?

A.   At the time, I would say it was a bit -- how do I put it -- he was a little -- once again, aloof.  A more calm demeanor throughout the interaction.  But I was able to remember him from just certain things that had gone on that day.

Q.   Okay.  What did he tell you that he wanted while he was at

the store, if anything?

A.   He needed a -- what I remember, he needed a prepaid line of service.  He wanted, specifically, a service where there wasn't any sort of strings attached to it.  That was his direct quote.

Q.   And when he told you that, did you try to sell him some items?

A.   Yes, I did.  Yes.

Q.   What did you try to sell him?

A.   Anything and everything I could, from internet to another phone to other services through AT&T.

Q.   Were you successful in trying to sell him those other items?

A.   No, I was not.

Q.   During the course of your interaction with the person that you knew as Mr. White --

A.   Uh-huh.

Q.   -- did you try to get additional information from him about his -- any identifying information for him?

A.   Yes, I did, yes.

Q.   What types of information were you trying to get from him?

A.   Particularly, a name, because originally, a name was never given -- wasn't given at first.  I had to basic -- essentially ask for that to have more of a chance for any changes to be made in the future.  So, yeah, that would be it.

Q.   Did you notice whether the person that identified himself

as Mr. White, did he have a phone with him at that time?

A. Yes, he did.

Q. Did you try to sell him another phone or just other services?

A. Other services and another phone, yes.

Q. When you were talking with him, and you're trying to get a name from him --

A. Uh-huh.

Q. -- eventually, did he give you that name?

A. Yes.

Q. Did you try to get an address for him?

A. Yes.

Q. And why would you try to get an address as the salesman in a situation like that?

A. Once again, it's to tie back to if a customer has an issue, they can come back into the store, and we're able to verify them by other means if need be.

Q. Okay. Did you try to get a good contact telephone number for him?

A. Yes, I did.

Q. And did you get a good contact telephone number for him at that time?

A. No, I did not.

Q. At some point in time, did you stop trying to sell him other services?

A.    Yes.

Q.    And did you actually make a sale to him on that day?

A.    Yes, I did.

Q.    And what did you sell him that day?

A.    A prepaid line of service.

Q.    And can you describe for the members of the jury, when you buy a prepaid line from AT&T, what's that process look like? What do you actually get in return?

A.    So what you will get is a SIM card.  That SIM card is then placed into a device which can be activated for service.

Q.    And do you recall, did Mr. White at the time, did he make a payment for that purchase?

A.    Yes, he did.

Q.    And do you recall how he paid for that?

A.    I believe it was cash.

Q.    And as a result of that transaction, was there -- were there records generated through the AT&T store about that transaction?

A.    Yes.

Q.    Have you had a chance to take a look at some of those records in the past?

A.    Yes, I have.

Q.    Okay.

     MR. DONNELLY:   And with Your Honor's permission, if we could show what's been previously admitted into evidence as

334A?

THE COURT:  You may.

MR. DONNELLY:  And if we could also publish it for the jury?

THE COURT:  You may.

MR. DONNELLY:  Thank you, Judge.

BY MR. DONNELLY:

Q.   Mr. Thompson, do you recognize what's on the screen before you that's been marked as 334A in evidence?

A.   Yes, I do.

Q.   And can you tell the members of the jury what that is.

A.   It is a receipt from the store.

Q.   And do you recognize any of the specific information that's contained on that receipt?

A.   Yes, I do.

Q.   All right.  If you -- we are going to walk through the receipt a little bit.  I asked you before about a number for the store.  Do you see the telephone number for the store on that receipt?

A.   Yes, I do.

Q.   And can you circle where that is on the receipt for the members of the jury?

A.   No problem (indicating).  It would be right there.  Sorry. Right there (indicating).

Q.   Okay.  Do you also see a part of the address for the store?

A.    Yes, I do.

Q.    And can you circle where that would be on the receipt.

A.    Generally speaking, right here (indicating).  In that area.

Q.    Do you see a part of the receipt that refers to Greensboro, North Carolina?

A.    Yes, I do.

Q.    And can you circle that for the jury as well.

A.    Right there (indicating).  Right above.

Q.    And so have you made two circles around some of the typing that is at the very top of the receipt in 334A?

A.    Correct, yes.

Q.    Moving our way down the receipt, do you see any other information about a tablet --

A.    Yes.

Q.    -- and a cash drawer?

A.    Yes.

Q.    And can you tell the members of the jury what those -- what that information means on that receipt?

A.    Okay.  So the tablet would be my -- the tablet that is assigned to me directly.  And then the cash drawer is the drawer where the money is deposited for the -- what is it -- associates.

Q.    And can you circle where that information appears on this receipt.

A.    No problem (indicating).

Q.   And, again, have you made a circle around the language saying "tablet" and "cash drawer" in this receipt?

A.   Yes, sir.

Q.   Okay.  One step below that, if you could take a look, do you see a section for customer?

A.   Yes, I do.

Q.   And do you see a name that's associated with customer?

A.   Yes.

Q.   And what is the name that's reflected there?

A.   John W.

Q.   Do you see a -- what appears to be a telephone number in the line directly below that?

A.   Yes, I do.

Q.   And can you read for the members of the jury what that telephone number is.

A.   It would be 743-251-7269.

Q.   Mr. Thompson, based on your experience with documents like this, and the sale in this particular case, how did the name John W get onto that receipt?

A.   So that was the name given when I was putting in the application.  So that was the name that had been given to me during that process of selling the prepaid line.

Q.   And did you input that name yourself?

A.   I inputted -- I did input it, but I had asked for a name, essentially, once again, in order to fix any issues that may

come in the future.

Q.   And are you familiar with -- it only says, "John W."

A.   Uh-huh.

Q.   Why is that?

A.   It's security purposes, just because it's proprietary information.  It's sensitive information that if you have both name and phone number, that's how you can access an account.

Q.   And the telephone number that appears below John W, what -- do you know what that telephone number reflects?

A.   It's a -- it's a general number.  We get randomized numbers inside of the -- when we make the application, we get randomized numbers.  So that seems to be what it reflects.

Q.   And when you say that, do you see below there where it says "activation deposit"?

A.   Yes, sir.

Q.   Can you tell the members of the jury what that means on that receipt.

A.   So that's essentially a line hold; it's a placeholder for essentially letting the customer as well as our side know that the activation for this number has been started.

Q.   And next to activation deposit, does it reflect that same telephone number ending in 7269?

A.   Yes, it does.

Q.   And underneath the activation deposit --

A.   Uh-huh.

Q.   -- does it list another section where it lists out prices for those purchases?

A.   Yes, it does.

Q.   Can you tell the members of the jury what you see in that section?

A.   Okay.  So the prepaid activation fee is just a fee for activating the service.  So that's that first line there.  The line underneath, where it says "$60 PNLS," that would be the cost of the plan.  So it was a $60 plan that day.  Underneath that would be the SIM card and the number of that -- the serial number on that SIM card.

Q.   And do you see in that second series of lines there where it talks -- do you see the -- where it says "90EXP"?

A.   Yes, sir.

Q.   And what does that mean?

A.   So what it means is when you come in to do prepaid service, you can fill your account.  If the account -- if that money isn't used within that 90 -- it's a 90-day expiration.  So if the money on the account isn't used within the 90 days, it expires.

Q.   The serial number that you see --

A.   Uh-huh.

Q.   -- listed in the next line down, can you read the number to the members of the jury, what that serial number is.

A.   That number would be 89012804313654275, and it looks like

a 9, I believe.

Q.   And for this purchase, how much was the total amount of the purchase here?

A.   So it looks to be $80.77.

Q.   How did that price break down?

A.   So it breaks down for $15 for the activation fee, $60 for the plan, and then there would be taxes involved.

Q.   And is the activation fee to activate that line with the number 7269?

A.   Yes, it is.

Q.   Moving just a little bit further down that receipt, in 334A --

A.   Uh-huh.

Q.   -- do you recognize where it says at the bottom, is there a section that reads "Cashier"?

A.   Yes, it does.

Q.   And is there a name next to that?

A.   Yes, it is.

Q.   Whose name appears next to the cashier?

A.   It's Aaron.

Q.   Is there a last initial?

A.   T.   Yes.

Q.   And is that you?

A.   Yes, it is.

Q.   Is there a date and a timestamp below your name and where

it says "Cashier"?

A.   Yes, it is.

Q.   And what is the date and the time that's reflected on this receipt?

A.   That would be August 4th, 2024, at about 3:26 p.m.

Q.   And underneath that, is there one additional line?

A.   Yes, it is.

Q.   And what does that additional line read?

A.   "Customer copy."

Q.   And so when you conduct a sale in your store, it may be painfully obvious, but do you provide the customer with a copy of the receipt for the sale?

A.   Yes, we do.

Q.   And did you do that in this case?

A.   Yes, we --yes, I did.

Q.   I'm going to ask you to just -- I'm going to ask just to show you 334B, very quickly.

        MR. DONNELLY:  And, Your Honor, that was already admitted into evidence, and with your permission, I would like to just publish it to the witness and the jury, if possible?

        THE COURT:  You may.

BY MR. DONNELLY:

Q.   And, Mr. Thompson, is this just a close-up of the previous document that we looked at?

A.   Yes, it is.

Q.   Okay.  And turning to what's been previously marked --

MR.  DONNELLY:  Your Honor, if we could publish what's been previously admitted into evidence as Item GX1117?

THE COURT:  You may.

MR.  DONNELLY:  If we could publish that for both the witness and the jury.

THE WITNESS:  Uh-huh.

BY MR.  DONNELLY:

Q.   Do you recognize what you're looking at here?

A.   Yes, I do.

Q.   And can you tell the members of the jury what it is that you're looking at there.

A.   This looks like the -- the information that is processed when the application is started.

Q.   Do you see a section that reads financially -- or "Financial Liable Party"?

A.   Yes.

Q.   And is there a name associated with the financial liable party?

A.   Yes, it is.

Q.   And what is that name that's reflected on the document?

A.   It would be John White.

Q.   Is there a second line with -- that reads "Credit Address"?

A.   Yes, it does.

Q.   And the credit address on there, what is the address

reflected in that line?

A.   So it's 4405 West Wendover Avenue, Greensboro, North Carolina.

Q.   And what is that address?

A.   It's the store address.

Q.   How did that address come to appear on this document?

A.   So when -- it is a requirement to obtain an address.  When the address isn't given, then we have to put the store number as a placeholder.

Q.   Does it list another line below that, "Customer Since"?

A.   Yes.

Q.   And is there a date next to that?

A.   Yes, there is.

Q.   What is that date?

A.   It would be August 4, 2024.

Q.   The following sections, can you describe the following lines and whether there is any information in those lines?

A.   Yes.  There are three -- I guess three lines with information.  The contact home phone, which looks to be a -- once again, another placeholder for when information isn't given; the contact work phone number, which is -- seems -- which is another placeholder; as well as the contact email, which is also another placeholder.

Q.   And does that reflect that that information was not provided to you during the course of the sale?

A.    Correct, yes.

Q.    In the section immediately above that, there appear to be several blank boxes.

A.    Uh-huh.

Q.    What are those blank boxes, if you can tell the jury?

A.    So the blank boxes also reflect -- also reflect information that needs to be -- that can be given.  It's just not mandatory.

Q.    And what are some of those types of information that could be given but were not?

A.    Contact name, social security number, state ID, photo ID number, and photo ID type.

Q.    Just moving further down now under "Billing Party."  Do you see that section of the form?

A.    Yes.

Q.    And does it reflect a name there as well?

A.    Yes, it does.

Q.    Does it also reflect a billing address?

A.    Yes, it does.

Q.    What's the name in the billing address?

A.    The name is John White.  The billing address would be 4405 West Wendover Ave., Greensboro, North Carolina 27407.

Q.    And do you see another section below "Billing Party"?

A.    Uh-huh, yes.  Yes.

Q.    What does that section read?

A.    "User Information."

Q.    The top line --

A.    Uh-huh.

Q.    -- in that section --

A.    Uh-huh.

Q.    -- do you see a line that reads "MSISDN"?

A.    Yes.

Q.    And do you know what that stands for?

A.    I don't know exactly what that stands for, no.

Q.    Do you see something next to that that fills in the box next to it?

A.    Uh-huh.

Q.    Is that a yes?

A.    Yes.  I'm sorry.  Yes.

Q.    Okay.  And can you tell the members of the jury what you see in that box with "MSISDN"?

A.    MSISDN.  Oh, that would be the phone number.

Q.    And when you say "the phone number," what do you mean by "the phone number"?

A.    The phone number that would have been given that day.

MR.  DONNELLY:  And if I could ask, Ms. Luce, if we could just compare 334A with 1117.

BY MR.  DONNELLY:

Q.    And if you look at -- to the right of that screen, do you see -- well, can you look at the two telephone numbers that are

depicted in both of these documents and tell us what you see there.

A.   Those would be the same numbers.   They look identical.

Q.   And just going back to the form in 1117 for a moment, do you see where it says "Payment Type"?

A.   Yes.

Q.   And what does that say?

A.   "Prepaid."

Q.   And one further question with regard to 1117.  Do you see a section that reads "Dealer Info"?

A.   Yes.

Q.   And can you tell the members what's contained within "Dealer Info"?

A.   That would be my dealer code.

Q.   And what is that?  How does it -- what does it read?

A.   "NWYPZ."

Q.   And is that unique to you as an employee of the store at West Wendover for AT&T?

A.   Yes, it is.

        MR. DONNELLY:  And, Ms. Luce, if we could take those down for a moment.

        And, Your Honor -- well, one series of questions first.

BY MR. DONNELLY:

Q.   Mr. Thompson, when you spoke with the agents when they came to the store in September 2024, did they ask you about

observations that you made of John White?

A.   Yes, they did.

Q.   Did they ask you questions about what he was wearing?

A.   Yes.

Q.   Did you remember at that time exactly what he was wearing?

A.   I didn't remember exactly what he was wearing, but I had a general idea.

Q.   And did you tell them that there would be a way that you would be able to remember what he was wearing if you could go back and look at something?

A.   Yes, I did.

Q.   What did you tell the agents that they could go back and look at?

A.   The video camera -- the videotape from that day.

Q.   And did you review a videotape -- when you say "that day," do you mean the day that they came to see you or the day that you interacted with Mr. White?

A.   It would be the day I interacted with Mr. White.

Q.   And did you actually review a video of the store from the day that you interacted with Mr. White?

A.   Yes, I did.

Q.   And did you show the agents what you were talking about?

A.   Yes, I did.

Q.   Have you had a chance to look at that video since then?

A.   Yes.

MR. DONNELLY: And, Your Honor, with your permission, if we could publish for the jury what's already been marked in evidence as a video 352A?

THE COURT: You may.

MR. DONNELLY: And if we could go to the 4-minute mark, Ms. Luce.

(A video and/or audio was played.)

MR. DONNELLY: And if we could just stop right there just for a moment.

BY MR. DONNELLY:

Q.   Mr. Thompson, I'm going to ask you a question -- first of all, do you recognize what's depicted here in 4 -- in 352A?

A.   Yes, I do.

Q.   Can you tell the members of the jury what they're looking at here?

A.   This would be my store, the store that I work in on a day-to-day basis.

Q.   And when you look at this, can you tell the members of the jury where that -- it appears to be a camera view, but can you tell us where the camera is located in the store?

A.   Right next to the door.

Q.   And do you see -- in that picture, do you see yourself at this point?

A.   No, I do not.

Q.   Do you see the person that you recognized as John White?

A.   Yes, I do.

Q.   Can you tell the members of the jury where you see John White in this section of the video.

A.   Currently in the front of the store, with the white shirt, essentially.

Q.   Essentially.  Does he have --

THE COURT:  Leading.  Rephrase, Counsel.

MR. DONNELLY:  I was just -- sorry.

THE COURT:  Open-ended questions that don't assume the answer "essentially."  So let's try this again.

MR. DONNELLY:  I apologize, Your Honor.  I just didn't understand what he said, Your Honor.

THE COURT:  Okay.  Next question.

BY MR. DONNELLY:

Q.   Did you mention what kind of shirt he was wearing?

A.   Yes, I did.

Q.   Okay.  What kind of shirt is it?

A.   A white shirt.

Q.   Okay.  Do you see any pants that he was wearing?

A.   Yes.

Q.   And what kind of pants is he wearing?

A.   Plaid pants.

MR. DONNELLY:  And if we could just play from there.

(A video and/or audio was played.)

MR. DONNELLY:  And if we could now stop it.  If we

could go forward to 13:10 on the video.

(A video and/or audio was played.)

MR. DONNELLY:  If we could just stop it for a moment.

BY MR. DONNELLY:

Q.   Mr. Thompson, do you see the person that you knew as John White in this video, in this section of the video?

A.   Yes.

Q.   Can you tell the members of the jury -- can you just actually use your finger to circle on the video where you see him.

A.   Uh-huh.  (Indicating.)

Q.   And have you circled in the middle of that video?

A.   Yes.

Q.   Okay.

MR. DONNELLY:  And, Ms. Luce, if we can just play it from there.

(A video and/or audio was played.)

BY MR. DONNELLY:

Q.   Is that the person that you recognize as John White?

A.   Yes, it is.

MR. DONNELLY:  Ms. Luce, if we could move forward to 17 minutes.

(A video and/or audio was played.)

MR. DONNELLY:  If we could just stop it for a second.

///

BY MR. DONNELLY:

Q.   Do you see Mr. White in that video again?

A.   Yes, I do.

Q.   And can you circle him again.

A.   No problem.  (Indicating.)

Q.   And, again, have you made a circle in the middle of the -- that screen?

A.   Yes, I have.

MR. DONNELLY:  And, Ms. Luce, if could you continue to play it from here.

(A video and/or audio was played.)

BY MR. DONNELLY:

Q.   And if we could stop it right there, please.

A.   Uh-huh.

Q.   Mr. Thompson, do you see anybody else in the screen now with Mr. White?

A.   Yes.

Q.   And can you tell the members of the jury who is in the screen now?

A.   That would be myself, yeah.

MR. DONNELLY:  And if we could just play it from there, just for a brief time.

(A video and/or audio was played.)

MR. DONNELLY:  And, Ms. Luce, if we could just pause it there for a moment.

BY MR. DONNELLY:

Q.   Can you describe for the members of the jury what they just watched in that short section of the video.

A.   So it would be Mr. White handing me a phone, and we walk over to the table.

Q.   And what did you do at the table?

A.   Essentially, you know, conducted my normal sales pitch and just understanding what the customer needed and was in for.

MR. DONNELLY:  And, Ms. Luce, if we could go forward to the 30-minute mark, and if we could play it from there.

(A video and/or audio was played.)

MR. DONNELLY:  And if we could just stop it now.

BY MR. DONNELLY:

Q.   Mr. Thompson, can you tell the members of the jury -- describe what you just watched in that section of the video.

A.   It looks like we finished up the interaction, and then we were walking out of -- or he is walking out of the store, Mr. White.

Q.   And was that the last time you interacted with the person that you knew as Mr. White?

A.   Yes.

MR. DONNELLY:  Thank you very much.  I have no further questions, Your Honor.  Thank you.

THE COURT:  Thank you.  Cross-examination?

MR. ROUTH:  Sure.

CROSS-EXAMINATION

BY MR. ROUTH:

Q.    Good morning.

A.    Good morning.

Q.    So you got to travel from Greensboro, huh?

A.    Yes, yes.

Q.    That's awesome.

A.    Uh-huh.

Q.    Welcome to Florida.

A.    Thank you.

Q.    Is there no audio with the video?

A.    No.  Typically, no.

Q.    Okay.  All right.  Do you have another location, AT&T store, at the end of Cone Boulevard where Walmart and Lowe's are located?

A.    Lowe's and end of Cone Boulevard --

Q.    And the Walmart parking lot?

A.    Not sure.  Honestly, I'm not sure.  I only know of my -- my store and the surrounding corporate locations.

Q.    Okay.  Okay.

A.    Uh-huh.

Q.    All right.  But you're suggesting that -- that -- that I, or the defendant, or whomever, purchased a phone from you that day?

A.    Service.

Q.   Service?

A.   So it would have been phone service that day, correct.

Q.   So they brought in their own phone and just need it activated; is that what you are saying?

A.   From -- yes, from what it seems from the -- that receipt, that's what it looks like, yes.

Q.   Okay.  Okay.  I mean, it seemed like it was a fairly quick transaction, if we were reading a live feed.  Was that a live feed?  It looked like it was, like, 10 seconds, 20 seconds.

A.   I don't think it was live.  I think there were a bit of -- I think there was a little bit of a -- there was in-between.  There definitely was in-between.  It wasn't that short of an interaction.

          MR. ROUTH:  Your Honor, can I ask the technician if that was just the whole -- the whole video?

          THE COURT:  No.  This is the witness you can ask questions of, sir.

          MR. ROUTH:  Okay.  All right.

BY MR. ROUTH:

Q.   I'm assuming that was the whole video and, you know, I -- you know, a phone was handed and -- and something transpired very quickly, so --

          THE COURT:  Do you have a question, sir?

BY MR. ROUTH:

Q.   So you're suggesting that I proposed the name John White?

A.    Correct.

Q.    I would choose the name White?

A.    Correct.

Q.    Okay.  I do not even know where to go from here.  But, you know -- so you're not aware of an AT&T store at the end of Cone Boulevard at Walmart and -- and Lowe's?

A.    No, sir.  No, sir.

Q.    So it's not possible for someone to go to an AT&T store there in the Walmart parking lot and get a phone and -- and have someone there activate it and plug in a name of John White or whatever, any old name?

MR. DONNELLY:  Objection, Your Honor.  Calls for speculation.

THE COURT:  Sustained.

BY MR. ROUTH:

Q.    If you have another store at the Walmart, could someone not buy a phone there?

A.    Correct, yes.

Q.    Yes.  And then if they needed to go to another store and ask about something the -- how to operate the phone, then in two or three seconds, then that could possibly happen, yes?

A.    That could possibly happen, yes, sir.

Q.    Yeah.  So, you know, I don't -- I don't -- I know you are under oath, you know, so I don't know how trustworthy you are. But is this --

MR. DONNELLY:  Objection, Your Honor.

THE COURT:  Thank you.

Ladies and gentlemen, you should strike that question, which was inappropriate, and not consider it whatsoever.

Next question, sir.

BY MR. ROUTH:

Q.  Do you consider your testimony truthful?

A.  Yes.

MR. DONNELLY:  Objection, Your Honor.

THE COURT:  Sustained.

And thank you.

All right.  Are you about wrapping up, Mr. Routh?

MR. ROUTH:  It would be great if we had video and -- with audio, but, you know, we will have to just assume, assume, assume.

Thank you very much.

THE COURT:  Any redirect?

MR. DONNELLY:  Just very briefly, Your Honor.

THE COURT:  Thank you.

MR. DONNELLY:  If we could bring up 334B again, please, Ms. Luce.  And with Your Honor's permission, to publish it to the jury and to the witness?

THE COURT:  Yes.

REDIRECT EXAMINATION

///

BY MR. DONNELLY:

Q.   Mr. Thompson, in the bottom section of where it lists the sale, do you see a reference to a SIM?

A.   Yes.

Q.   Can you describe for the members of the jury exactly what a SIM is.

A.   A SIM card is a physical card that you insert inside of a phone in order to get cell phone service.

Q.   If a person wants to activate a secondary line --

A.   Uh-huh.

Q.   -- but use the same phone --

A.   Uh-huh.

Q.   -- can they do that, based on your training and your experience with AT&T?

A.   Yes, they can.

Q.   And how would you go about doing that?

A.   So it would either go by activating a physical SIM card, once again, which can be placed into the phone.  If their phone doesn't allow for a secondary physical SIM, you can then -- we can activate an eSIM, an electronic SIM.

Q.   And do you recall whether or not you provided Mr. White with a SIM card on that day?

A.   I did provide him with a SIM card, yes.

Q.   And just referring to the video --

A.   Uh-huh.

Q.   -- when you sat with the agents in September '24, and after that, have you had a chance to review the entire video?

A.   Yes.

Q.   Is it a short video or a longer video?

A.   It's a longer video.

Q.   Is it longer than the pieces that you just watched today?

A.   Yes, it is.

Q.   Can you estimate at all approximately how long that full video is?

A.   Maybe 15 to 25 minutes, in that range.

MR. DONNELLY:   Thank you very much, Judge.   No further questions.

THE COURT:   Thank you.   Thank you.   You may be excused, sir.

THE WITNESS:   Okay.

THE COURT:   All right.   Ladies and gentlemen, we are going to take a 25-minute break and resume at 10:20.

All rise for the jury.

(The jury exited the courtroom at 9:56 a.m.)

THE COURT:   Please have a seat.

Okay.   Anything I need to be aware of regarding the next witness?

MR. DONNELLY:   Nothing that I'm aware of, Judge.

THE COURT:   Okay.   All right, then.   Anything else to raise before we break?   This will be 25 minutes.   Seeing --

MS. MEDETIS-LONG:  Nothing, Your Honor.

THE COURT:  Okay.  Seeing no issues raised, we will take our break.  Thank you.

(A recess was taken from 9:57 a.m. to 10:26 a.m.)

THE COURT:  Please be seated.  Everybody is here.

Okay.  I have an updated exhibit, Government's 522Z?

MR. BROWNE:  Yes, Your Honor.  We provided a redacted copy in the initial set of exhibits that we provided to the defense and the Court.  We have swapped it out now for the copy with the actual text on it.

THE COURT:  Okay.  And it was previously redacted why?

MR. BROWNE:  It was previously redacted in part because we were not sure if we were going to introduce it as an illustrative aid or a substantive exhibit, but based on our practice to date in this case, we think it is a substantive exhibit and not an illustrative aid, so we will be seeking to move it into evidence as a substantive exhibit with the Court's permission.

THE COURT:  All right.  And so is the unredacted image something that was provided to the defense during discovery?

MR. BROWNE:  It was part of the witness's expert report, and it was provided in discovery, and the actual exhibit was just provided right now.

THE COURT:  Okay.  Mr. Routh, do you have a copy of this unredacted exhibit, Government's 522Z?

MR. ROUTH: Yes, Your Honor.

THE COURT: Okay. All right, then. Okay. Let's invite the jurors in, please.

MR. DONNELLY: Judge, I'm sorry. Just very quickly. The next witness is Ronnie Oxendine on the list. And I apologize for -- we spoke with the marshals. He has previously pleaded guilty in the Middle District of North Carolina to a firearms offense. I'm going to show him the firearm here, but I am not going to take it out of the box. It's going to be just shown to him so he can see it.

We have addressed this with the marshals in your courtroom. They have agreed that that would be appropriate under the circumstances. And then I will take that firearm back after he has had a chance to take a look at it.

But I just wanted to alert the Court that that is the situation with this witness. That's how I'm going to handle it with him, and we have talked about it with your marshals.

THE COURT: Okay. Well, that's why I asked whether there needed to be any discussion regarding this witness. To confirm with the deputies in the room, is this arrangement acceptable?

AGENT: Yes, Your Honor.

THE COURT: Okay. Thank you. All right. Mr. Donnelly, I want to make sure that we don't have the same leading recurring issues, so please make a greater effort to

allow the witness to actually tell the story rather than to micromanage the questioning in such a way that bifurcates it and, frankly, doesn't let the story be told in a natural way.

So I'm going to manage this more strictly at this point, but there really cannot be any further leading in the examination of any witness.  Do you understand?

MR. DONNELLY:  Yes.

THE COURT:  Okay.  All right.  Then with that, let's call in the jury, please.

(The jury entered the courtroom at 10:28 a.m.)

THE COURT:  Please be seated.

All right.  Please call your next witness.

MR. DONNELLY:  Yes, Your Honor, the government calls Ronnie Oxendine.

THE COURT:  Thank you.

Mr. Oxendine, please come to the witness stand to be sworn in.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  My name is Ronnie Oxendine.  R-O-N-N-I-E, O-X-E-N-D-I-N-E.

THE COURT:  You may begin.

MR. DONNELLY:  Thank you, Your Honor.

RONNIE OXENDINE,

having been sworn, testified as follows:

DIRECT EXAMINATION

BY MR. DONNELLY:

Q.   Mr. Oxendine, good morning.

A.   Good morning.

Q.   Mr. Oxendine, where do you live?

A.   I live in Climax, North Carolina.

Q.   And is that near a particular city in North Carolina?

A.   It's right out of Greensboro.

Q.   Mr. Oxendine, before we get into the full substance of your testimony, I need to ask you some questions about your background.

A.   Okay.

Q.   Have you been charged with a crime in the Middle District of North Carolina?

A.   Yes, I have.

Q.   What was the crime that you were charged with?

A.   I was in possession of a unregistered firearm.

Q.   And have you pleaded guilty to that crime?

A.   Yes, I have.

Q.   When did you enter that guilty plea?

A.   When did I --

Q.   When did you plead guilty?

A.   I couldn't tell you the actual date.

Q.   Do you recall approximately when it was?

A.   Maybe a month ago.

Q.   And was that -- what court was that in?

A.   It was in Greensboro.  Or -- yes, it was in Greensboro court.

Q.   And was that in federal court or state court?

A.   Federal.

Q.   As part of that, did you have a plea agreement?

A.   Yes.

Q.   And did you have -- were you represented by an attorney during the course of those proceedings?

A.   Yes, I was.

Q.   Did you have a chance to talk to your attorney about the charges that were filed against you?

A.   Yes, I have.

Q.   Did you have a chance to talk to your attorney about the plea agreement that was involved in that case?

A.   Yes, I did.

Q.   Did you have an understanding about what was required of you based upon that plea agreement?

A.   Yes, sir.

Q.    And did you have an understanding as to what the maximum sentence you would be facing for that charge is?

A.    Yes.

Q.    What's the maximum sentence that you're facing in relation to that charge?

A.    It's a $250,000 fine and 10 years' imprisonment.

Q.    Are you familiar with the term "supervised release"?

A.    Yes.

Q.    And what is supervised release?

A.    Supervised release is when you are released but you have to check in to a probation officer.

Q.    And is that before or after a term of imprisonment on that case, do you know?

A.    That would be after the imprisonment.

Q.    And with regard to the plea agreement that we -- that we just talked about, do you have an understanding as to what that plea agreement is and what the different terms of that plea agreement were?

A.    Yes.

Q.    And can you tell the members of the jury what some of the terms of that plea agreement were.

A.    Not really.

Q.    Do you recall whether or not there was something that you had to do in connection with that plea?

A.    Yes.  I had to come down to this courtroom and tell the

truth.

Q.   And if you did not do that, what would happen with your plea agreement?

A.   It would be tooken away from me.

Q.   Were there any other promises made to you with regard to what would happen with your criminal case in connection with that plea agreement?

A.   No.

Q.   Do you understand who it is that ultimately controls your sentence in that case in the Middle District of North Carolina?

A.   It's the judge up in North Carolina.

Q.   Have you had a chance to -- have any promises been made to you by your attorney or any other attorney about what your sentence would ultimately be in that case?

A.   No.

Q.   Have you had a chance to meet with agents in this case?

A.   Yes.

Q.   And at some point, did you become -- did you provide a telephone to agents in this case?

A.   Yes, I have.

Q.   And did they discuss with you some of the things that have been found on your cellular telephone?

A.   Yes, sir.

Q.   And on your cellular telephone, in addition to anything that happened in relation to this case, were there things that

you did that appeared on that telephone that were a problem?

A.   Yes.

Q.   And what were some of the things that appeared on your telephone that they discussed with you?

A.   The purchase of -- of illegal drugs and purchasing different food stamps from people.

Q.   Okay.  Did anybody promise you anything with what would happen with regard to the food stamps or the drugs in that instance?

A.   No.

Q.   Were there other -- were there firearms that appeared on your phone?

A.   Yes.

Q.   And were there any promises with what would happen with regard to any of those firearms that were found on your phone?

A.   No.

Q.   Moving into what we're here for today, are you familiar with a person by the name of Ryan Routh?

A.   Yes, I am.

Q.   And can you tell the members of the jury how you're familiar with Ryan Routh.

A.   He owned a roofing company in Greensboro in the late '90s and early 2000s.

Q.   And did you meet him there?

A.   No.  I would run into him periodically at the supply house

where we both bought materials.

Q.   And did you have a chance to engage with him or talk with him while you were there?

A.   I have never really talked to him other than the one time that I met him.

Q.   Okay.  Did you see him from time to time, though, in that roofing -- in the -- in the supply business?

A.   Yes.

Q.   And did you know him well enough to recognize him?

A.   Yes.

Q.   Do you see that person that you knew as Ryan Routh in the courtroom today?

A.   Yes, I do.

Q.   Can you describe -- can you tell us where he is seated and what it is that he is wearing.

A.   He is sitting over to my left.  He is wearing a gray suit with a striped tie.

MR. DONNELLY:  And, Your Honor, for the record, he -- for the record, he has described the defendant in this case?

THE COURT:  Okay.  The record so reflects.

MR. DONNELLY:  Thank you, Judge.

BY MR. DONNELLY:

Q.   Mr. Oxendine, do you know a person by the name of Tina Cooper?

A.   Yes, I do.

Q.   And who is Tina Cooper?

A.   She works for me.

Q.   And do you know whether or not Tina Cooper knows Ryan Routh?

A.   She used to work for Ryan too.

Q.   And do you know whether she has a relationship with Ryan Routh presently?

A.   Not that I know of.

Q.   Do you know whether or not they had a relationship at some point in the recent past?

A.   Yes.

Q.   And do you know when -- when did you become aware that they had a relationship?

A.   Well, she would talk on the roof about him, that she had talked to him, and she was telling us that he was coming to Greensboro.

Q.   And when did you have those conversations with Tina Cooper?

A.   During July.

Q.   Are you friends with Ryan Routh?

A.   No.

Q.   Are you friends with Tina Cooper?

A.   Yes.

Q.   And do you know whether Tina Cooper and Ryan Routh are friends?

A.   I guess they are.

Q.   You mentioned some discussions that you had with Tina, and I would like to turn your attention to those right now. Beginning at some point, did -- I think you mentioned that there was some conversation with Tina Cooper about Ryan Routh. Can you tell the members of the jury what that conversation was and when it occurred.

A.   She had just -- she had texted me that Ryan was coming to Greensboro.

Q.   And when you say that she texted you, was that on your telephone?

A.   Yes.

Q.   And do you remember what your telephone number was at that time?

A.   336-517-8873.

         MR. DONNELLY:   And, Your Honor, with permission of the Court, if we could publish for the jury what's already been admitted into evidence as GX116?

         THE COURT:   Yes, you may.

         MR. DONNELLY:   Thank you, Your Honor.

         If we could publish that.   And, Ms. Luce, if we could just -- thank you very much.

BY MR. DONNELLY:

Q.   Mr. Oxendine, do you recognize what I'm showing you here?

A.   Yes.

Q.   Have you seen this before?

A.   Yes, I have.

Q.   And this has been marked as Government Exhibit 116 now?

A.   Yes.

Q.   In the blue bubbles there, do you see any information pertaining to your telephone number?

A.   Yes.

Q.   And can you just underline with your finger where you see your telephone number.

A.   (Complies.)

Q.   And do you see any information about that text message, about who you received that message from?

A.   I received it from Tina Cooper.

Q.   And can you show us where you see that information.

A.   (Complies.)

Q.   And did you just underline the two lines in the two bubbles that are to the left of that page?

A.   Yes.

Q.   Do you see a date and time in that text message?

A.   Yes.

Q.   And can you tell us what it reads, that time and the text message, and the date for that text message.

A.   It said, "Hey, you going to be in town between 1:00 and 3:00?"

Q.   And is that what the -- that's the message itself?

A.    Yes.  And --

Q.    Do you see --

A.    And that was at 7/27/2024.

Q.    And is there a time next to that?

A.    6:35.

Q.    And in the next message down, can you tell us, do you see that message?

A.    Yes.

Q.    And who is that message from?

A.    From Tina Cooper.

Q.    And who was it to?

A.    To me.

Q.    And can you tell us what that message says.

A.    It says, "Ryan's plane lands at 1:00 tomorrow."

Q.    And can you tell us the date of that message and the time of that message.

A.    7/27/2024 at 6:36.

        MR.  DONNELLY:   And if we could go to the next page, please.

BY MR.  DONNELLY:

Q.    Do you see more messages on this page of the Government Exhibit 116?

A.    Yes.

Q.    And can you tell us, with the first message there, is that different from the other messages in terms of the color of the

bubble?

A.   Yes.

Q.   And what color bubble are you looking at there?

A.   The green one.

Q.   And can you tell us who sent that message?

A.   Tina sent it to me.

Q.   Does it have a line, from and to?

A.   It says -- well, it says -- yes, it says from my phone to Tina.

Q.   And what is the message that is contained within that bubble?

A.   "I'm at the beach."

Q.   And do you recall sending that message?

A.   Yes.

Q.   And what beach were you at?

A.   Myrtle Beach.

Q.   And does it have a time and a date for that message?

A.   7/27/2024 at 8:29.

Q.   And the next message down, is that a blue or green bubble?

A.   Blue.

Q.   And does it say who the message was from?

A.   It was from Tina to me.

Q.   And what does that message read?

A.   It says, "Okay.  Call me when you get home."

Q.   And is there a time and a date associated with that bubble?

A.   7/27/2024 at 8:35.

Q.   And if we could move down to the bottom.

And do you see a message on your screen now?

A.   Yes.

Q.   And who is that message from?

A.   It was from me to Tina.

Q.   And what does that message read?

A.   "Okay.  Will do."

Q.   And what is the date and time for that message?

A.   7/27/2024 at 9:17.

Q.   Do you recall having further conversations with Tina Cooper around that time?

A.   No.

Q.   Did you speak with her in that time frame?

A.   I talked to her on the phone, I think.  But --

Q.   And when you -- when you talked to her on the phone, what was the conversation about?

A.   I don't really remember, but that following Monday -- she works for me, so we talked at work.

Q.   And at some point, did you have further conversations about a meeting that you were going to have?

A.   Yes.

Q.   And what was the discussion about the meeting?

A.   She was a -- she wanted to purchase a rifle from me, and I brought the rifle up to Greensboro.

Q.   And did she tell you why she wanted to purchase the rifle from you?

A.   No.

Q.   Did she tell you what kind of rifle she wanted to purchase?

A.   She said she wanted a AK-47.

Q.   And did you have an AK-47 at that point in time?

A.   Yes, I did.

Q.   Did you agree to sell her the AK-47?

A.   No.

Q.   Why not?

A.   Because I only had one AK-47.

Q.   Do you own -- how many guns do you own?

A.   Approximately 300.

Q.   Do you have other guns that you were willing to sell her?

A.   Yes.

Q.   And what other types of guns were you willing to sell her?

A.   I told her I would sell her an SKS rifle because they shoot the same bullet.

Q.   You mentioned that you have a number of guns.

A.   Yes.

Q.   Where do you keep those guns?

A.   They -- they're locked in cabinets.

Q.   And how do you keep those guns?

A.   Locked in cabinets.

Q.   Do you -- well, do you care for the guns?

A.    Yes.

Q.    How do you care for those guns?

A.    Every so often, I'll go in there and spray them down with grease.

Q.    And what's the purpose in doing that?

A.    To keep them from rusting.

Q.    When you -- you mentioned that you own several SKSs.

A.    Yes.

Q.    Do you -- have you fired them before?

A.    Some of them, I have.

Q.    And have you -- strike that.

      Do the guns that you have have serial numbers?

A.    Yes.

Q.    And do you know what the purpose of a serial number is?

A.    So the -- you can track the gun to find out where it came from.

Q.    Have you ever bought a gun that does not have a serial number?

A.    No.

Q.    Have you ever removed a serial number from a gun?

A.    No.

Q.    Why would you not purchase a gun that had no serial number on it?

A.    Because I know that it was either stolen or -- or something, because why -- why else would anybody take the

serial number off -- off of a gun?

Q.   When you -- did you agree to meet with Tina Cooper to sell her the gun?

A.   Yes.

Q.   And where was that meeting going to take place?

A.   At my office in Greensboro.

Q.   And did you bring a gun with you to that meeting?

A.   Yes, I did.

Q.   Okay.

     MR. DONNELLY:  With Your Honor's permission, as we discussed, I'm going to approach the witness with GX1, with your permission.

     THE COURT:  Yes.

     MR. DONNELLY:  Thank you, Judge.

BY MR. DONNELLY:

Q.   Mr. Oxendine, I'm going to show you what's been marked as GX1, but I'm just going to show it to you in the box.  And without handling it, I'm just going to ask you to make observations.  And when you're ready, just look up and let me know that you're ready.

A.   Okay.

Q.   (Tendering item.)

A.   Okay.

Q.   Mr. Oxendine, the GX1 that I just showed you, do you recognize what that is?

A.   Yes.

Q.   And what is that?

A.   That's an SKS rifle.

Q.   And do you recognize it from anywhere?

A.   Yes.  That used to be my rifle.

Q.   How do you recognize that to be your rifle?  What is it about that rifle that tells you that that's your rifle?

A.   Because that rifle had an aftermarket bayonet put on the end of it, and I removed the bayonet because I wanted to keep it.

Q.   And when you say there is an aftermarket bayonet, is there a specific piece of the gun that lets you know that that is, in fact, an aftermarket bayonet?

A.   Yes, the little piece that's on the very -- close to the end of the barrel.

MR. DONNELLY:  And if we could just -- Your Honor, with your permission, GX30?  And if I could have Ms. Luce bring that up and publish it to the jury.

THE COURT:  Yes.

BY MR. DONNELLY:

Q.   Mr. Oxendine, if you look at the screen in front of you, do you see what's been marked as GX30 in this case?

A.   Yes.

Q.   And can you tell the members of the jury what that is.

A.   I -- I think that's the one that you just showed me, the

GX1, isn't it?

Q.   Well, that's the question for you.  Is it in a different condition than what I just showed you as GX1?

A.   Yes.

Q.   Okay.  What's different about what you see in GX30 from what I showed you in GX1?

A.   This has got a scope on it.

Q.   Did you -- did you have a scope for this rifle at that -- at the time that we're discussing?

A.   No.

Q.   Do you see in GX30 that bayonet fixture that you described?

A.   Yes.

Q.   Can you circle that where it is on this picture for the jury.

A.   (Complies.)

Q.   And did you just circle an area that's on the rifle to the far right side of the picture?

A.   Yes, I did.

Q.   Thank you.

        MR. DONNELLY:  And if we could take that down, please.

BY MR. DONNELLY:

Q.   You mentioned some of the, I think, aftermarket that you saw on that GX1 that we just showed you.

A.   Yes.

Q.   What do you mean by that?

A.   It didn't come from the factory like that.

Q.   And what do you mean, it didn't come from the factory like that?

A.   Well, when the rifle was -- was made, it had different furniture on it, and it didn't come with a bayonet.

Q.   When you say "furniture," what do you mean by "furniture"?

A.   The black plastic stock that's on there, that's aftermarket stock.

Q.   Did you bring GX1 with you to meet with Tina Cooper?

A.   Yes, I did.

Q.   And do you recall what day that was?

A.   It was July 27th.

Q.   Do you recall, as you sit here today, whether you had any text messages with Tina Cooper on the day that you sold the rifle?

A.   Yes, I did.  I know it was a -- it was the 27th is when she texted me when I was at the beach.  It was the -- I think the 2nd when I met her at the office.

Q.   The 2nd of what?

A.   October.  Or August.

Q.   Do you recall what date it was that you met with her?

A.   Yeah.  August the 2nd.

Q.   Okay.  When you met with her at your office, can you describe for the members of the jury what kind of office setting you're talking about here.  Was it an office building?

Describe what it was.

A.   I got an office building that's got a fenced-in parking lot.

Q.   And where did you meet with Tina Cooper?

A.   In the parking lot.

Q.   And when you met with Tina Cooper, how did she arrive at your office in the parking lot?

A.   She was riding with her daughter in a pickup truck.

Q.   And eventually did somebody show up -- else show up at this meeting?

A.   Yes.

Q.   Who else showed up at this meeting?

A.   Ryan Routh.

Q.   Did you expect to see Ryan Routh that day?

A.   No, I didn't.

Q.   And were you surprised to see him?

A.   Yes, I was.

Q.   What was your reaction when you saw him?

A.   I asked him -- I asked him what the hell he was doing at my office.

Q.   And was there an explanation about why Ryan Routh was there?

A.   Yeah, after -- after I -- I got closer to him, he told me that the rifle was actually for him.

Q.   And did you agree to sell the rifle to him?

A.   Yes.

Q.   Where did you exactly have the rifle when you were involved in this discussion with Ryan Routh and Tina Cooper?

A.   When they pulled up close to my office, there is a trash can right at the door, and I walked up with the rifle and laid it on the trash can.

Q.   And did you agree to sell the rifle, even though it was not to Tina Cooper, that day?

A.   Yes.

Q.   Why did you do that?

A.   I had already told her that I would sell it.  And when I brought it up there, I just -- I went ahead and went through with the deal.

Q.   And when you say you "went through with the deal," what happened when you went through with the deal?

A.   Ryan gave me $350 for the rifle.

Q.   And was that like cash?  Check?  Credit card?  How did he pay?

A.   Cash.

Q.   And did you see any other money exchange hands that day?

A.   Yes.

Q.   And what money did you see exchange hands that day?

A.   He gave Tina $100.

Q.   Did you have a -- I think we talked about this already, but did you have a scope for GX1?

A.   No.

Q.   Did you sell a scope that day?

A.   No.

Q.   Did you sell any rounds of ammunition that day?

A.   No.

Q.   Did you sell a magazine that day?

A.   Yes.

MR. DONNELLY:  With Your Honor's permission, GX2, I'm going to approach the witness under the same conditions?

THE COURT:  Yes.

MR. DONNELLY:  Thank you, Your Honor.

BY MR. DONNELLY:

Q.   And, again, Mr. Oxendine, I'm going to approach you and show you what's been marked as GX2.  When you are done looking at it, just let me know, and then I will come back and resume the questioning.  Okay?

A.   Okay.

Q.   (Tendering item.)

Have you had a chance to look at GX2?

A.   Yes, sir.

Q.   And can you tell the members of the jury what they're looking at or what you saw as GX2?

A.   It's a 30-round magazine for an SKS rifle.

Q.   And is that similar to the magazine that you sold that day?

A.   Yes.

Q.   Does it appear to you to be the same one?

A.   Yes, sir.

Q.   After you took the money, did you see what Ryan Routh did with the gun?

A.   He pulled the bolt back and -- and asked if I had any ammunition to go with the rifle.

Q.   When you say "he pulled the bolt back," what do you mean by "he pulled the bolt back"?

A.   The bolt is kind of the firing mechanism.  You pull it back to load the round into the chamber.

Q.   And based upon what you saw him do, what was your -- what were you thinking at that point in time?

A.   That he knew -- had handled a rifle before.

Q.   Did you have any discussions with Ryan Routh about what he was going to do with that gun?

A.   Yes.

Q.   And what did he tell you about what he was going to do with that gun?

A.   He said that his son had been being intimidated by his roommates, and he just wanted his son to have something to intimidate them back so they would leave him alone.

Q.   And did he mention anything about the serial number?

A.   He said he was going to remove the serial number.

Q.   And did he tell you why?

A.   He said in case anything happened, the rifle wouldn't come

back to me.

Q.   And what was your reaction to that?

A.   I told him that the rifle wouldn't come back to me anyway because the -- I had bought it at a tire store.

Q.   After you sold the gun, did you see where Tina Cooper, Ryan Routh, and Tina's daughter went?

A.   No.   When I -- I walked into the office, and Tina and Ryan were standing in the parking lot talking.

Q.   And I think you mentioned that at some point that day, you had had another conversation with Tina Cooper?

A.   Yes.

Q.   Do you recall what that was about?

A.   That Ryan had called her and told her that there was something loose in the gun, it was jingling around.   And I told Tina more than likely it was the cleaning kit.

Q.   And did you also have text messages with Tina that day?

A.   Yes.

MR. DONNELLY:   And if we could -- Your Honor, with your permission, if we could publish for the jury what's already been marked into evidence as GX9?

THE COURT:   You may.

MR. DONNELLY:   Thank you, Your Honor.

And if we could also -- publish that for the jury -- there it is.   Okay.

///

BY MR. DONNELLY:

Q.   Mr. Oxendine, do you see GX9 on the screen in front of you?

A.   Yes.

Q.   And do you recognize what that is?

A.   That's a cleaning kit for the rifle.

Q.   Okay.  Is that -- what color bubble does that appear in?

A.   Blue.

Q.   And does it have -- does it have an indication as to where that message came from?

A.   It came from Tina Cooper and was -- and was sent to me.

Q.   And does it have a date and time for that text message?

A.   8/2/2024 at 6:26.

Q.   And in that text, can you circle the area where you say that you -- you mentioned the cleaning kit.  Can you circle what you're talking about there.

A.   (Complies.)

     MR. DONNELLY:  And with Your Honor's permission, if we could do a comparison with what has been marked in evidence as GX10 in this case?

     THE COURT:  Yes.

     MR. DONNELLY:  And, Ms. Luce, if you can go to the last page of that exhibit.

BY MR. DONNELLY:

Q.   Do you recognize what is in GX10, which is to the right side of that screen?

A.   Yes, sir.

Q.   And can you tell the members of the jury what you're looking at there?

A.   That's a cleaning kit for the rifle.

     MR. DONNELLY:  Is there one more photograph, Ms. Luce, with regard to GX10?

BY MR. DONNELLY:

Q.   Do you see another photograph to the left of that screen in front of you now?

A.   Yes.

Q.   Can you tell the members of the jury what you see in that photograph.

A.   That's the cleaning kit open.

     MR. DONNELLY:  And, Ms. Luce, if we could go back to the original comparison view with GX10 and GX9.

BY MR. DONNELLY:

Q.   Does the picture on the right appear in the text message to the left?

A.   Yes.

     MR. DONNELLY:  And if we could take that down.  Thank you very much.

BY MR. DONNELLY:

Q.   What was the question with regard to the cleaning kit?

A.   Because Ryan had said that something was jingling in the rifle when he shook the rifle.

MR. DONNELLY:  And I apologize, but if we could bring GX9 back up and publish it for the jury.

BY MR. DONNELLY:

Q.   In the message towards the bottom of that, do you see that message?

A.   Yes.

Q.   Is it blue or green?

A.   It's green.

Q.   And does it list who the message is from?

A.   It's from me, and I sent it to Tina.

Q.   And what does the body -- how does it read?

A.   It says "It is."

Q.   And what is the date and time on the bottom of that message?

A.   It's 8/2/2024 at 6:26.

Q.   And when you said "It is," when you replied to that, why did you just reply "It is"?  What were you responding to?

A.   Because she had called me and asked me -- and told me that something was jingling in the rifle, and I told her, I said, Most likely it's the cleaning kit.

MR. DONNELLY:  If we could go to the next page, please, Ms. Luce.

Oh, I'm sorry.  Down on the bottom of the page -- sorry.

BY MR. DONNELLY:

Q.   To the top of this page, do you see that it's marked page 2 way down on the bottom right-hand corner?  I will circle it. (Indicating.)

A.   Okay, yes.

Q.   Okay.  And the message in the top of that page --

MR. DONNELLY:  If we could zoom in on it, Ms. Luce.

BY MR. DONNELLY:

Q.   -- do you see what's contained in that message?

A.   On the blue one or green one?

Q.   On the blue one.

A.   Yes.

Q.   And what's in the blue message at the top of the screen?

A.   It's got a picture of the cleaning kit.

Q.   And who is that message from?

A.   It's from Tina, and it's -- it's to me.

Q.   And what time is on that message?

A.   8/2/2024 at 6:26 -- 6:27.

Q.   And the next message down is what?

A.   Is -- I sent -- the text message I sent from me to Tina, and I said:  "All SKSs have those."

Q.   And what time and date is on that message?

A.   8/2/2024 at 6:27.

MR. DONNELLY:  If we could go down to the bottom of that page, and zoom in on that last message of three on page 2.

BY MR. DONNELLY:

Q.   Can you see that message and who it's from?

A.   Yes.  It's from Tina.

Q.   And who was it to?

A.   To me.

Q.   And what does the body of that message read?

A.   It says:  "Is it one set of serial numbers on that gun?"

Q.   And what time and date is on that message?

A.   8/2/2024 at 7:50.

        MR. DONNELLY:  And if we could go to the final page of what's been marked as GX9, please.

BY MR. DONNELLY:

Q.   Do you see your response to that question?

A.   Yes.

Q.   And is it in a green box?

A.   Yes, it is.

Q.   Who is it from?

A.   It's from me to Tina.

Q.   And what does it read?

A.   "Should be."

Q.   And what is the time and date on that text message?

A.   8/2/2024 at 9:03.

Q.   Just a couple more questions, if I could, about the rifle.

        MR. DONNELLY:  If we could bring up, and with permission to publish for the jury, what's been marked in evidence as GX12, Your Honor?

THE COURT: You may.

BY MR. DONNELLY:

Q. Mr. Oxendine, I'm going to ask you to look at what has been marked as GX12 in evidence on the screen in front of you.

A. Okay.

Q. Do you recognize or do -- do you see what's in that photograph?

A. Yes.

Q. Can you tell the members of the jury what you see in that photograph.

A. The silver part to the left is the bolt that I was referring to, and the -- the middle with the numbers is the -- is the steel sights; it's the body of the rifle.

Q. And what rifle are you referring to?

A. The SKS.

MR. DONNELLY: And if we could go to -- with Your Honor's permission, to publish GX17 in evidence?

THE COURT: Yes, you may.

BY MR. DONNELLY:

Q. Mr. Oxendine, I'm going to ask you to take a look at GX17 and tell the members of the jury, what do you see in that photograph?

A. That's the foregrip of the rifle.

Q. And when you say "the rifle," what rifle are you referring to?

A.   That looks like the same SKS.

Q.   Do you see anything else in that photograph in terms of this, what surrounds the rifle as you described it?

A.   The -- the black plastic that's called the furniture.

Q.   And what is it about that furniture that attracts your attention?

A.   It looks like the same furniture that was on the rifle that I sold.

Q.   And in terms of what surrounds the rifle itself, do you see anything in the background of that photograph that -- in terms of, like, where it's the -- what -- where the picture is being taken?

A.   It looks like it's in somebody's bedroom.

Q.   And do you see a part of any person in that photograph?

A.   I see somebody's legs and feet.

Q.   Okay.

        MR. DONNELLY:  If we could take that down, please, Ms. Luce.

BY MR. DONNELLY:

Q.   Mr. Oxendine, did you have further text messages after that with Tina Cooper about Ryan Routh?

A.   Yes.

        MR. DONNELLY:  And if we could bring up, Your Honor, for -- which has been marked in evidence as GX117?

        THE COURT:  Yes, you may.

MR. DONNELLY:   Thank you, Your Honor.

BY MR. DONNELLY:

Q.   Mr. Oxendine, do you see what's depicted on the screen in front of you as GX117?

A.   Yes.

Q.   Can you tell the members of the jury what that is.

A.   That is a text message from Tina to me.

Q.   And what does the body of the message read?

A.   It says, "Ryan said you got a .50 caliber for sale."

Q.   And what is the time and date on that message?

A.   8/23/2024 at 9:34.

Q.   And do you recall whether you responded to that text message?

A.   Yes, I did.

Q.   And if we could see, is there a -- how did you respond to that message?

A.   I responded with "I wish I had one too."

Q.   If we could go to the next page, please.  Do you see the message on the -- on the top of page 2 of GX117?

A.   Yes.

Q.   And what is that?

A.   That is a text message from me to Tina.  It says, "I wish I had a .50 caliber rifle."

Q.   And what is the date and time on that response?

A.   8/23/2024 at 11:55.

Q.   When Tina Cooper mentioned a .50 caliber, did you know what she was talking about?

A.   Yes.

Q.   And do you have a .50 caliber rifle?

A.   No.

Q.   Have you ever seen a .50 caliber rifle?

A.   For sale, yes, I have seen them.

Q.   Mr. Oxendine, I'm going to ask you a series of questions now, and direct your attention to around September 15, 2024.

Did you become aware, at some point, that something had happened in Florida that attracted your attention?

A.   Yes, sir.

Q.   And what did you learn about what had happened in Florida on September 15, 2024?

A.   My sister called me and -- and told me about what Ryan had done down in Florida.

Q.   And when -- did she -- did you actually -- did you check other social media and so forth to see what had happened?

A.   Yes.

Q.   When -- at some point, did you have discussions with Tina Cooper around that time?

A.   Yes.

Q.   And if I could direct your attention to --

MR. DONNELLY:  Or with Your Honor's permission, if we could look at GX11, already in evidence?

THE COURT:  Yes.

MR. DONNELLY:  And if we could publish that for the jury, please?

THE COURT:  We may.

MR. DONNELLY:  Thank you, Judge.

BY MR. DONNELLY:

Q.   Mr. Oxendine, I'm asking you to take a look on the screen in front of you and look at what's been marked as GX11 in evidence.  Do you see what that is?

A.   Yes, I do.

Q.   Can you tell the members of the jury what you're looking at there?

A.   A text message from me that I sent to Tina.

Q.   And what did that message say?

A.   I said, "FBI came by the shop."

Q.   And what date was that?

A.   9/19/2024 at 4:36.

Q.   And is that 4:36 a.m. or p.m.?

A.   p.m.

Q.   And do you see a response to that from Tina Cooper?

A.   Yes.

Q.   And what was her response to that?

A.   It said, "Feeling them, see where they're coming from."

MR. DONNELLY:  And if we could go to the next page, please.

BY MR. DONNELLY:

Q.   At the top of page 2 of that Exhibit GX11, do you see another message there?

A.   Yes.

Q.   Can you tell the members of the jury who that message is from.

A.   It was from Tina to me.

Q.   And what does the body of that message read?

A.   It says, "Do not admit to anything.  There is no proof.  If they check your record, they will know how many guns you have bought this year.  I know what I am doing.  I do not know shit and you do not either."

Q.   And what is the date and time for that message?

A.   9/19/2024 at 9:54 p.m.

Q.   What is the next message down on page 2 of GX11?

A.   It says, "Do not open and admit to" -- and "to nothing."

Q.   Who is that from?

A.   From Tina to me.

Q.   And what time is that message sent?

A.   9/19/2024 at 9:54 p.m.

Q.   And the last message on that -- on that page, who is that from?

A.   From Tina to me.

Q.   And what is the body of that text message?

A.   It says, "No proof."

Q.   And what is the date and time for that text message?

A.   9/19/2024 at 9:55 p.m.

Q.   What did you understand that request from Tina Cooper to mean?

A.   To not say anything to the FBI about what we had done.

Q.   Had the FBI already visited you at -- at your office or residence or wherever it was?

A.   Yes.

Q.   And did you talk to them?

A.   Yes, I did.

Q.   When you talked to them, did you lie to them about what had happened?

A.   Yes.

Q.   And how did you lie to them?

A.   I told them that I had originally got the rifle from Ryan, that he had pawned it to me.

Q.   With regard to the sale of the rifle, did you tell them about what happened with regard to the sale of the rifle?

A.   Yes.

Q.   And did you tell them that you had sold it to Ryan Routh?

A.   Yes.

Q.   At some point, did the FBI come back to you in the days that followed?

A.   Yes.

Q.   Did you cooperate with the FBI when they came to visit you?

A.   Yes.

Q.   Did they ask you to see anything?

A.   Yes.

Q.   What did they ask you to see?

A.   They asked me if I had any more SKS rifles.

Q.   And what did you do in response to that?

A.   I took them inside my residence and showed them the -- I had two other SKS rifles.

Q.   Did you show them anything else?

A.   They asked if I had anything -- any illegal weapons there.

Q.   And what did you respond -- how did you respond to that?

A.   I told them I did.

Q.   And what did you do when you said that you did?

A.   I went out to the shed.  I had a sawed-off shotgun out there in the shed.

Q.   And did you -- what did you do with the sawed-off shotgun that you had in the shed?

A.   I unloaded it and handed it to them.

Q.   And at some point in time -- well, did they arrest you for having that sawed-off shotgun?

A.   No.

Q.   Eventually, though, were you charged with having that sawed-off shotgun?

A.   Yes, I was.

Q.   And is that the gun that you pleaded guilty to having back

in North Carolina a couple of months ago?

A.    Yes.

Q.    Did you also let them take a look at your telephone?

A.    Yes.

Q.    And do you know whether they did that or not?

A.    Yes, they did.

Q.    And did they ask you those questions about what they had found on your phone?

A.    Yes.

        MR. DONNELLY:  Judge, I have no further questions for the witness at this time.

        THE COURT:  Thank you.

        Cross-examination?

        MR. ROUTH:  Sure.

                        CROSS-EXAMINATION

BY MR. ROUTH:

Q.    Good afternoon.

A.    Good afternoon.

Q.    Or good morning.  Great to see you again.  So...

        I know you're extremely mad at me, so -- and with good reason.  I'm sorry.  I guess I have a year in on my time.  I could --

        MR. DONNELLY:  Objection, Your Honor.

        THE COURT:  Sustained.

        Ladies and gentlemen, strike that question.  Ask a

question. Don't make commentary from the lectern.

BY MR. ROUTH:

Q. Can I transfer my year of time to your sentence?

MR. DONNELLY: Objection, Your Honor.

THE COURT: Sustained.

Ladies and gentlemen, as I indicated at the outset, you shall not consider punishment in any way in this case. That's solely the province of the Court, not the jury. Those comments are stricken from the record and you should not consider them.

Mr. Routh, you have been advised to comply with the Court's orders, and now this is the second time that you're violating that on this lectern. Can you please refrain from doing so, and if not, then, again, you will have relinquished your opportunity to engage in cross-examination.

What is your choice?

MR. ROUTH: Yeah, I'm sorry, I didn't realize we we're talking about --

THE COURT: Okay. Next question. And this is your last opportunity with this witness.

MR. ROUTH: Okay. All right.

BY MR. ROUTH:

Q. Did you and I not meet on a Sunday morning on Sloan Street at Market and 29 some 20, 25 years ago?

A. I have no idea. Possibly.

Q. You were -- you were -- maybe you were picking up some --

two workers on a Sunday morning to go work on a new house, and I was there checking on Lazaro Plata Senior that had broken his back?

A.   I don't remember that.

Q.   You don't remember?  So...

But -- all right.

So...

All right.  I don't know.  All right.

When you saw me at the supply house, like you said, was I hanging out and chitchatting and having a good time?

A.   I wouldn't say you was having a good time.  You was -- most of the time when I seen you in there, you was in there either inside getting your orders together or you was out in the parking lot talking to the -- to your workers or the forklift drivers.

Q.   So did I seem arrogant or rude or --

A.   You seemed arrogant.

Q.   So could it be that I was just extremely busy and thinking?

A.   Possibly.

Q.   And working hard?

A.   Yes.  Because I'm -- I get the same way sometimes.  So I understand that.

Q.   Right, right, right.  So... Did you know that I had owned a roofing company before, 30 years ago?

A.   I just knew you owned United Roofing.

Q.   So you weren't aware that I had a company parallel to your father, and the IRS and the state shut it down?

A.   Uh-uh.

Q.   Didn't know.  Okay.  All right.

But you're aware that I started another roofing company and -- United Roofing, and --

A.   Yes.

Q.   -- and executed that for the next 25 years?

A.   Yes.

Q.   Are you aware that those decades of work, that -- that I ended up with nothing?

A.   Yes.

Q.   So you -- you know that in Hawaii, I own nothing; everything belongs to my wife?

A.   Uh-huh.

MR. DONNELLY:  Objection, Your Honor.  Calls for speculation.

THE COURT:  Overruled.

BY MR. ROUTH:

Q.   You know that my wife owns everything and I own nothing?

A.   Well, that's what I was told about you.

Q.   That's correct.

Did you know I started another business in Hawaii?

MR. DONNELLY:  Objection, Your Honor.  Beyond the scope of the direct.

THE COURT: Overruled.

THE WITNESS: I was told that you had started some kind of business, building small houses or something.

BY MR. ROUTH:

Q. Correct. Yup.

But I did tell you that the gun was for my son and not for me; correct?

A. Yes, sir, you -- that's what you told me.

Q. So...

Were you aware that I had an employee die working for me when I was roofing?

A. No.

Q. Epifanio? Okay. So...

Have you ever had anybody die working for you?

A. Not working for me, no.

MR. DONNELLY: Objection, Your Honor.

THE COURT: All right. I will sustain the objection.

Please move on to another topic, Mr. Routh.

MR. ROUTH: Okay.

BY MR. ROUTH:

Q. So was the SKS rifle in question, was that a semiautomatic weapon?

A. Yes.

Q. So you just hold -- just keep pulling the trigger and it -- and it continually fired?

A.    It will fire every time you pull the trigger.

Q.    So you didn't have to use the bolt in order to engage the next round?

A.    No, you just use the bolt one time to load it.

Q.    So you're -- you're certain of this?

A.    I have never fired that rifle.

Q.    Oh, you never fired that rifle?

A.    No, I never fired it.

Q.    Oh, okay.  So you hadn't fired this rifle, so you're not -- not aware of how this particular gun functions?

A.    No.

Q.    So I guess in general, SKSs are generally semiautomatic?

A.    Yes.

Q.    Perhaps this one is not?

A.    If you say -- I have never fired the rifle.

Q.    Okay.  All right.  That's fair.

      Since you have 300 guns, do you know that a side rail scope goes on the SKS and the AK-47?

A.    I have never had a side rail.

Q.    So what type of scope goes on an SKS or an AK-47?

A.    I got a scope on another SKS, and it's -- mounts on top just like a regular one.

Q.    Okay.  Okay.  So that one has mounting brackets and so forth and so on?

A.    Yes.

Q.   Did this one have mounting brackets?

A.   No.

Q.   Okay.  Okay.  All right.  All righty.  If somebody is holding a gun or dies holding a gun and the serial number is erased, who does that benefit?

A.   Nobody.

Q.   Nobody.  Okay.  All right.

Have you ever in our 25 years ever known me to hurt anyone?

A.   No.

MR. DONNELLY:  Objection.

THE WITNESS:  I just know you was always loud and stuff, and I had seen you on TV a couple of times, but I never heard of you hurting anybody.

BY MR. ROUTH:

Q.   Was that TV show the Greensboro Spotlight Public Access TV show?

MR. DONNELLY:  Objection, Your Honor.

THE COURT:  Sustained.

BY MR. ROUTH:

Q.   How did you see me on TV?

THE COURT:  Sir, the objection has been sustained.  This topic is off-limits.  It's been deemed irrelevant in other court orders.

BY MR. ROUTH:

Q.   Was I ever mean to anyone?

MR. DONNELLY:  Objection, Your Honor.

THE COURT:  What's the basis of your objection?

MR. DONNELLY:  It is prior ruling, Your Honor.

THE COURT:  Which is?

MR. DONNELLY:  That -- with regard to issues related to character.

THE COURT:  All right.  The particular question asked is not objectionable.

Please answer the question, sir:  "Was I ever mean to anyone?"

THE WITNESS:  You was rude.  I would never say you was actually mean to anybody, but you was rude.

BY MR. ROUTH:

Q.   But as a pertinent character trait, would you characterize me as generally being gentle and peaceful and nonviolent?

A.   I don't know you that well.

Q.   But you have never heard anyone say that I hurt anyone or did anything --

A.   No.

Q.   -- violent?

There is no stories of me hurting anyone?

A.   No.

Q.   So in gen- --

A.   I have heard of you threatening people but never hurting anybody.

Q.   Okay.  Okay.  All right.  All right.  All right.  I'm so sorry you are here.

MR. ROUTH:  So I guess that's it.

THE WITNESS:  That's part of life.

MR. ROUTH:  Well, I wish it weren't, so -- we worked very hard.  You worked very hard.  I worked very hard.

THE COURT:  All right.  Thank you.

Redirect?

MR. DONNELLY:  No, thank you, Your Honor.

THE COURT:  Thank you, sir.  You may be excused.

All right.  We will have one additional witness before lunch.  Please call your next witness.

MR. BROWNE:  Your Honor, the United States calls Matthew Perry.

THE COURT:  Good morning, sir.  Please stay standing to be sworn in.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  Matthew Perry.  M-A-T-T-H-E-W, P-E-R-R-Y.

MR. BROWNE:  May I inquire, Your Honor?

THE COURT:  You may.

SPECIAL AGENT MATTHEW PERRY,

having been sworn, testified as follows:

DIRECT EXAMINATION

BY MR. BROWNE:

Q.   Special Agent Perry, good morning.

A.   Good morning.

Q.   Where do you work, sir?

A.   I work for the Federal Bureau of Investigation.

Q.   And where do you do that?

A.   In Greensboro, North Carolina.

Q.   How long have you been with the FBI?

A.   Over 17 years.

Q.   And what are your current duties and responsibilities at the Greensboro office?

A.   I work on the Joint Terrorism Task Force.

Q.   What kind of cases do you do on the Joint Terrorism Task Force?

A.   International and domestic terrorism matters.

Q.   During the course of this investigation, did you recover physical evidence in the Greensboro area?

A.   Yes, I did.

Q.   And approximately when did you first recover physical evidence in connection with this investigation?

A.    It was on September 18th, 2024.

Q.    And from where did you recover that physical evidence?

A.    In Greensboro, at the home of Lazaro Plata.

        MR. BROWNE:  Your Honor, if we could publish to the witness monitor only --

BY MR. BROWNE:

Q.    I'm going to show you, Special Agent Perry, what's been marked but not admitted as Government's Exhibit 534.

        MR. BROWNE:  Permission to publish to the witness, Your Honor?

        THE COURT:  Yes.  You may.

BY MR. BROWNE:

Q.    Special Agent Perry, do you see Government's Exhibit 534 on the screen in front of you?

A.    I do.

Q.    And do you recognize that?

A.    I do.

Q.    How do you recognize it, sir?

A.    I took that photo.

Q.    And what does the photo depict?

A.    The photo depicts a gray Sterilite box with a green wire coming out from the top.  The lid is closed.

        MR. BROWNE:  Your Honor, at this time I would ask that Government's Exhibit 532 be admitted into evidence.

        THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

MR. BROWNE:  I apologize, Your Honor.  That's 534 on the screen.

THE COURT:  All right.  Government's 534 will be admitted without objection.

(Government Exhibit 534 was received in evidence.)

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

MR. BROWNE:  Can everybody see that?

A JUROR:  (Nods head.)

BY MR. BROWNE:

Q.  All right.  Special Agent Perry, where was this photo taken?

A.  This photo was taken near the shed behind the Platas' -- Lazaro Plata's residence.

Q.  And how is it that you found yourself at Lazaro Plata's residence on, I believe you said, September the 18th?

A.  Yes.  The FBI received information from a local law enforcement sergeant who knew the Platas, that they were in possession of what they believe was potential evidence in the attempted assassination of then-presidential candidate Donald Trump.

MR. BROWNE:  Ms. Luce, would it be possible to zoom into the lid of the item in the center of Government's Exhibit 534?

BY MR. BROWNE:

Q.   Special Agent Perry, do you see something sticking out from the lid of that box?

A.   I do.

Q.   And what is that item?

A.   That's a green wire.

MR. BROWNE:  Ms. Luce, can we reset the zoom on that exhibit, please.  And would it be possible to rotate Government's Exhibit 534, 180 degrees?  And I would ask that you now please zoom into the area of the box where the green wire is.  Perfect.

BY MR. BROWNE:

Q.   Special Agent Perry, can you read the text that appears at the top of Government's Exhibit 534?

A.   Yes.  It says "Sterilite."

Q.   And what is Sterilite?

A.   Sterilite is the manufacturer of the gray box.

MR. BROWNE:  Thank you.  Ms. Luce, you can take that down, please.

BY MR. BROWNE:

Q.   Now, Special Agent Perry, I'm going to show you what has been marked but not yet admitted as Government's Exhibit 533.

MR. BROWNE:  Your Honor, could we broadcast this exhibit to the witness monitor only, please?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   Special Agent Perry, what are we looking at in Government's Exhibit 533?

A.   That's a kayak that -- I took that photo.

Q.   Does it fairly and accurately represent the kayak that you photographed -- was that at the Platas' residence?

A.   It was, yes.

Q.   Okay.  Does it fairly and accurately represent the kayak that was at the Platas' residence on September 18th?

A.   It does, yes.

MR. BROWNE:  Your Honor, I would ask that Government's Exhibit 533 be moved into evidence.

THE COURT:  Any objection, Mr. Routh, to 533?

MR. ROUTH:  No objection.

THE COURT:  533 will be admitted without objection.

(Government Exhibit 533 was received in evidence.)

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   All right.  Special Agent, why did you take a photo of a kayak?

A.   The Platas mentioned that that kayak was left on the property --

A JUROR:  (Indicating.)

THE COURT:  One moment.  I think the jurors can't see

the screen.

A JUROR:  It's flashing.

THE COURT:  Is it visible now?

JURORS:  (Head nods.)

THE COURT:  Okay.  Please continue.

MR. BROWNE:  Thank you, Your Honor.

THE WITNESS:  The --

BY MR. BROWNE:

Q.   Let me ask the question again, just for the record.

A.   I'm sorry.

Q.   No.  That's okay.

So, Special Agent, why did you take a picture of the kayak?

A.   The Platas had indicated that Ryan Routh had left that kayak on their property.

Q.   Now were you able to -- do you speak Spanish?

A.   I do not.

Q.   So do the Platas speak English?

A.   Very little.  I -- Lazaro Plata's son speaks English, and so he acted as the translator that night -- that evening.

Q.   Okay.  And so we have mentioned Lazaro Plata.  It was his residence where you were when --

A.   Yes.

Q.   Okay.  And you mentioned that he had a son who was there?

A.   Yes.

Q.   Were there other family members also at Lazaro Plata's

residence on the 18th of September?

A.   Yes, there were.

Q.   What was the family's demeanor like when you interviewed them through the interpreter?

A.   They -- they were nervous.  They were respectful and cooperative, but they were nervous.

Q.   All right.  I'm going to show you now what's been marked but not admitted as Government's Exhibits 500 and 511.

MR. BROWNE:  Your Honor, may I approach the witness?

THE COURT:  Yes.

MR. BROWNE:  (Tendering items.)

Your Honor, I would ask the Court's permission for Special Agent Perry to stand up and examine Government's Exhibits 500 and 511?

THE COURT:  Yes.  Agent, you can stand and do what you need to do to inspect the items and display them to the jury once they're admitted --

THE WITNESS:  Thank you, Your Honor.

THE COURT:  -- if they're admitted.

BY MR. BROWNE:

Q.   Special Agent Perry, beginning with Government's Exhibit 500, do you see the exhibit sticker affixed to that item?

A.   I do.

Q.   Do you recognize that item?

A.   I do.

Q.   And how do you recognize it, sir?

A.   This is the gray Sterilite bag -- Sterilite box that I recovered from the Platas'.

Q.   Is that the same item depicted in the photograph that you took that is Government's Exhibit 524?

A.   It is.

MR. BROWNE:  Your Honor, I would ask at this time that Government's Exhibit 500 be admitted into evidence.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Government's 500 will be admitted into evidence without objection.

(Government Exhibit 500 was received in evidence.)

BY MR. BROWNE:

Q.   And with respect to Government's Exhibit 511, Special Agent Perry, do you recognize that item?

A.   I do.

Q.   And how do you recognize that, sir?

A.   Those were some of the contents in the box when I recovered it, to include that green wire that was sticking out of it.

THE COURT:  And, to be clear, Mr. Browne, 500 is just the storage container with nothing inside?

MR. BROWNE:  No, ma'am, there are additional exhibits inside Government's Exhibit 500 that I don't intend to publish

through this witness at this time.

THE COURT:  Okay.  So for right now, Government's 500 consists only of the storage container?

MR. BROWNE:  That's correct, Your Honor.

THE COURT:  Okay.

BY MR. BROWNE:

Q.  Special Agent Perry, please take a seat.

A.  (Complies.)

Q.  And tell us if the green wire that you identified is the same wire that is depicted in the photograph that you took of Government's Exhibit 500.

A.  It is.

Q.  So is it fair to say that the contents of Government's Exhibit 511 were previously in the gray box when you first saw it?

A.  Yes.

Q.  Okay.

MR. BROWNE:  Your Honor, at this time, I would ask that Government's Exhibit 511 be moved into evidence as well.

THE COURT:  Okay.  Any objection, Mr. Routh, to Government's 511?

MR. ROUTH:  No objection.

THE COURT:  511 will be admitted without objection.

    (Government Exhibit 511 was received in evidence.)

///

BY MR. BROWNE:

Q.   Special Agent Perry, did you search the gray Sterilite box that is Government's Exhibit 500 at the time you first encountered it?

A.   I did not.

Q.   And why not?

A.   Just, I needed to preserve the evidence.  The Platas wanted it off their -- their property.  And I just wanted to secure it.  I did -- I filled out an FD-597 property receipt to be able to take the box, and then I wanted to make sure that I secured it in FBI holdings in Greensboro and await further instructions.

THE COURT:  One moment.  Ladies and gentlemen, are you able to see the witness clearly with that box there?

A JUROR:   (Shakes head.)

MR. BROWNE:  Your Honor, may I retrieve it and put it on the floor?

THE COURT:  Yes, you may.

BY MR. BROWNE:

Q.   All right.  Special Agent, now that the jury can see you fully, can you tell us, again, what you did.  You didn't search the box; correct?

A.   I did not.  Out of an abundance of caution, awaiting further instructions, I took possession of the box and filled out an FD-597 receipt of property, and gave a copy to the

Platas, and then secured the box in the FBI Greensboro office.

Q.   And I believe you mentioned that the Platas did not want this box on their property?

A.   They did not.

MR. BROWNE:  Just a moment, Your Honor.

Nothing further for this witness, Your Honor.

THE COURT:  Very well.  Any cross-examination?

MR. ROUTH:  No.

THE COURT:  Okay.  Then, thank you, sir.  You may be excused.

THE WITNESS:  Thank you.

THE COURT:  Ladies and gentlemen, we're going to be taking an hour and a half lunch break today.  So we will resume at 1:00.  Please make sure you follow all the Court's continued instructions regarding no discussion, no investigation, and, of course, no making up of anybody's mind until the very end of the case.

All rise for the jury.

(The jury exited the courtroom at 11:33 a.m.)

THE COURT:  Please be seated.

The interpreter issue will be -- will be acceptable, Mr. Browne.  So can you instruct your interpreters to please sit alongside the witness here (indicating), and we will do the consecutive interpretation, which is, you know, question interpreted, and then answer, in a consecutive format.  Any

questions about that?

MR. BROWNE:  No.  Thank you very much, Judge.

THE COURT:  Okay.  All right.  And there will be two of them?

MR. BROWNE:  There will be two.  My understanding is that they alternate during the course of the testimony.

THE COURT:  Okay.

All right.  So any questions, Mr. Routh, regarding how the translation will work?

MR. ROUTH:  No.  No problem.

THE COURT:  Okay.

All right.  Any other issues to address before we break for lunch?

MS. MEDETIS-LONG:  Only -- I'm sorry.

MR. BROWNE:  Sorry.  Just with respect to the items that are at the witness stand, the next witness will address the exact same items and will go through the contents of Government's Exhibit 500.  Would it be possible to do it the same way, Judge, where the witness is able to stand up and actually remove items from the box?

THE COURT:  Yes, that's fine.  Okay.

But just for evidentiary purposes, the exhibit list lists 500 as the storage container, not necessarily with contents inside of it.  And so I just need further clarification on what is part of Government's 500.

MR. BROWNE:  Yes, Your Honor.  So as the Court noted, Government's Exhibit 500 is the gray storage container.

Government's Exhibit 511, which is in evidence, is a separate cardboard box that contains items that were discovered within the gray storage container pursuant to this last witness's testimony.

Currently inside Government's Exhibit 500 are Exhibits 505, as well as 505A through 505D.  Government Exhibit 506.  Government Exhibits 507, as well as 507A through 507D.  Government Exhibit 508, as well as Government's Exhibits 508A through 508C.  Government Exhibit 509, as well as Government Exhibits 509A through 509B.

THE COURT:  So, for example, if the jurors just wanted to see 500 and nothing else, all they would see is an empty gray storage container?

MR. BROWNE:  That's correct, Your Honor.  We plan on isolating -- each of those items that I just described inside the box are in separate marked evidence bags.

THE COURT:  Okay.  Very well.  That clarifies my question.

MR. BROWNE:  I can finish, Your Honor.  510 and 511 are also independent exhibit numbers that are contained within that box as it sits there right now.

THE COURT:  Okay.  All right.  Thank you.

Okay.  So the next witness is going to be Agent Foo; is

that correct?

MR. BROWNE:  That's correct, Your Honor.

THE COURT:  Okay.  And how long do you think overall with Mr. Foo?

MR. BROWNE:  I would estimate approximately 45 minutes to an hour, Your Honor.

THE COURT:  Okay.  All right.  Ms. Medetis-Long, do you have anything to raise?

MS. MEDETIS-LONG:  Only, Your Honor, that we, for chain of custody purposes, are going to remove those boxes that are currently by the witness stand and bring them back for the next witness.

THE COURT:  Okay.  Please do so.

Okay.  Then final opportunity, anything to raise legally, Mr. Routh?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  Then we are in recess until 1:00. Thank you.

(A recess was taken from 11:37 a.m. to 1:05 p.m.)

THE COURT:  All right.  Everybody is here.  You may have a seat.

Any items to bring up?

MR. BROWNE:  Not from the United States, Your Honor.

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  Let's call the jurors in, please.

(The jury entered the courtroom at 1:05 p.m.)

THE COURT:  Thank you.  Please be seated.

Good afternoon, ladies and gentlemen.  I hope you enjoyed your lunch.  We will resume at this point with the next witness.

MR. BROWNE:  Yes, Your Honor.  The United States calls Special Agent Garett Foo.

THE COURT:  Thank you.

Agent Foo, please walk over here to be sworn in.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  My name is Garett Foo.  That's spelled G-A-R-E-T-T, last name, F-O-O.

MR. BROWNE:  May I inquire, Your Honor?

THE COURT:  Yes.

SPECIAL AGENT GARETT FOO,

having been sworn, testified as follows:

DIRECT EXAMINATION

///

BY MR. BROWNE:

Q. Special Agent, where do you work?

A. I work for the FBI out of the Greensboro office.

Q. How long have you been there?

A. For about two years.

Q. And are you on a specialized squad or unit?

A. I am assigned to work crimes against children and human trafficking cases for that office.

Q. Okay. And before the FBI, what did you do?

A. Before the FBI, I was a securities fraud investigator in the state of Virginia.

Q. And, Special Agent Foo, were you asked to examine certain items of physical evidence in connection with the investigation in this case?

A. I was.

Q. Okay. Do you know approximately when that was?

A. That was in September of last year.

Q. I would like to show you, Special Agent, what has been previously admitted as Government's Exhibit 534.

MR. BROWNE: Permission to publish, Your Honor?

THE COURT: Granted.

MR. BROWNE: Can everybody see?

A JUROR: (Nods head.)

BY MR. BROWNE:

Q. Special Agent Foo, do you recognize the item depicted in

Government's Exhibit 534?

A.   I do.

Q.   And what specifically do you recognize in that photo?

A.   I recognize the gray box in the photo.

Q.   I'm now going to show you what's been marked for identification only, and not admitted, as Government's Exhibit 525.

MR. BROWNE:  And, Your Honor, I would ask that we be able to publish that on the witness's monitor only.

THE COURT:  Granted.

BY MR. BROWNE:

Q.   All right, Special Agent Foo.  Do you see Government's Exhibit 525 on your screen?

A.   Yes, sir.

Q.   And do you recognize the item depicted therein?

A.   I do.

Q.   And does that photograph depict the same thing that you previously described as a gray box as depicted in Government's Exhibit 534?

A.   Yes.

Q.   And is that, in fact, the same gray box?

A.   It is.

MR. BROWNE:  Your Honor, at this time I would ask that Government's Exhibit 525 be admitted into evidence.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  525 is admitted without objection.

(Government Exhibit 525 was received in evidence.)

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   All right, Special Agent.  Where was the photograph in Government's Exhibit 525 taken?

A.   This photograph was taken in the Greensboro FBI office, specifically what we call the Safe Streets room.

Q.   Is Safe Streets like an operation or some type of program administered by the FBI?

A.   It is.  It's a task force.

Q.   And were you present at the FBI office in Greensboro when that photo was taken?

A.   I was.

Q.   Now, what was your role, if any, with respect to the item depicted in Government's Exhibit 525?

A.   I was -- I oversaw the inventory of this box.

Q.   Okay.  Explain to the members of the jury, at least in FBI talk, what is an inventory?

A.   I was essentially responsible for documenting and listing the items inside the box.

Q.   And why did the FBI elect to document and list the items inside of that gray box?

A.    The box -- we knew that it was connected to the attempted assassination of Donald Trump.  And so because of that incident and that we knew that this box was connected to that subject at the time, we didn't know what was inside the box, we didn't know if there was anything in the box that could harm us, and so we did an inventory of the box for officer safety purposes.

Q.    And is an inventory for officer safety purposes different from a formal search?

A.    Yes.

Q.    How is it different?

A.    In a formal search, you are listing and thoroughly reviewing the contents of a box like this for evidence collection purposes, whereas, for the inventory that we did at the office for this box in September, it was purely to make sure there was nothing that could harm us inside it.

      And, of course, we wanted to be detailed, just given the nature of the case, as to what was inside the box so no one could say that there was something in the box that wasn't or vice versa.

Q.    And to be clear, did the FBI ultimately obtain a search warrant that authorized the search of the contents of the gray box?

A.    Correct.  The FBI did ultimately obtain a search warrant for that box.

Q.    Going back to the inventory process, what is involved, or

at least what was involved in the inventory process that you were directing?

A.   As far as the process goes, we made sure that when the inventory actually happened, it was in a secure space that was obviously in the FBI office.  We set out construction paper so that the contents of the box would not, you know, directly touch the floor.  We wore gloves.  I basically got personnel, FBI personnel, in the office to assist me with taking photos of the contents and the box itself.

And so we would open the box, we took out certain contents, put it on the construction paper.  We put, like, rulers and such as a frame of reference for the size of the contents.  And then took pictures.

Once we were -- once we completed taking pictures of all the contents of the box, I returned all the contents and made sure that nothing was put into the box that wasn't there previously.

Q.   I'm glad you brought up the gloves, Special Agent.  Do you see that there is a glove box in front of the monitor on the witness stand?

A.   Yeah.

Q.   Do you mind putting on a pair of those gloves, please.

MR. BROWNE:  While you're doing that, Special Agent, Your Honor, I would ask that we be able to publish to the witness monitor only the following exhibits which are not in

evidence.  Government's Exhibits 528, 529, 530, 531, 532A, 532B, and 935.

BY MR. BROWNE:

Q.   Okay.  Special Agent, did you have an opportunity to look at those items that I just listed?

A.   I did.

Q.   Okay.  And do you recognize all of those photos?

A.   I do.

Q.   How do you recognize those photos?

A.   Those were photos that were taken during the inventory of the box.

Q.   And do those photos fairly and accurately depict the contents of the gray box you previously identified as you found them during your inventory?

A.   No.

Q.   Why not?

A.   During the inventory, for instance, we recovered cell phones in the box that were removed so that they could be independently analyzed.  There was ammunition in the box, as well, that was removed for officer safety purposes.  Sharp objects in the box were also removed for safety purposes as well.

Q.   But, to be clear, those items were removed after you had completed your inventory and put everything back in the box; correct?

A.   Correct.

Q.   All right.  So these photographs, however, were taken while you were conducting your inventory of the gray box?

A.   Yes.

Q.   Okay.

MR. BROWNE:  Your Honor, at this time I would ask that the exhibits I previously identified be admitted into evidence.

THE COURT:  Any objection, Mr. Routh, to this series?

MR. ROUTH:  No, no objection.

THE COURT:  Okay.  Government's 528, 529, 530, 531, 532A, 532B, and 935 will be admitted without objection.

(Government Exhibits 528, 529, 530, 531, 532A, 532B, and 935 were received in evidence.)

MR. BROWNE:  Your Honor, permission to publish Government's Exhibit 528?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   Special Agent Foo, what are we looking at here?

A.   These items were removed from the box during the inventory.

Q.   And can you just generally describe the items that are on the screen in Government's Exhibit 528.

A.   The top item to me appears to be some type of improvised barrel.  To the left, it's -- looks like a pipe reducer.  And then in the middle in the bottom -- well, in the middle, it's a .50 caliber round fit inside a pipe with pipe reducers on both

ends, and then just large-caliber rounds on the bottom.

Q.   And you're saying "rounds."  Is that another term for projectile?

A.   Yes.

Q.   And could that also be called a cartridge?

A.   Yes.

Q.   All right.  Turning now to Government's Exhibit 529.

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   Special Agent Foo, is this another picture of the same items that you just described?

A.   Yes.

Q.   And those were found where?

A.   Inside the box during the inventory.

MR. BROWNE:  Permission to publish Government's Exhibit 530, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   All right.  Can you describe to the jury in general terms what we're seeing here.

A.   We are seeing the contents of the box with some of the contents already removed.

Q.   And can you note with your finger by placing an X on the handle area of the box.

A.    (Complies.)

Q.    And do you see what color the actual handles are of the box in this photo?

A.    Yes.

Q.    Okay.  I'm going to show you now what is already in evidence, and that is a physical exhibit marked Government's Exhibit 500.  And I'm also going to show you Government's Exhibit 511, which is already in evidence, another physical exhibit.

        MR. BROWNE:  Permission to approach, Your Honor?

        THE COURT:  Granted.

BY MR. BROWNE:

Q.    (Tendering items.)

        THE COURT:  Ladies and gentlemen, is this obstructing your view?

        And, Mr. Routh, can you still see the witness?

        MR. ROUTH:  Yes, Your Honor.

        THE COURT:  Okay.  Let's do this, Mr. Browne, so that the jurors can fully see the witness.  Mr. Foo, why don't you stand up and equip yourself with one of the portable microphones, and then we can remove the box, put it on the floor, and then lift up any items.

        MR. BROWNE:  Thank you, Your Honor.

        THE COURT:  You can step out of the witness stand, sir, if that's easier.

MR. BROWNE:  May I continue?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   Okay.  Special Agent Foo, to your immediate right is Government's Exhibit 500.  It's already in evidence, but do you recognize that item?

A.   Can I take off the lid?

Q.   Yes.

A.   I do recognize it.

Q.   How do you recognize it?

A.   This is the box that I did the inventory of.

Q.   Okay.  And what about Government's Exhibit 511, which is to the right of Government's Exhibit 500?  Can you inspect that.

A.   (Complies.)

Q.   Special Agent, do you recognize Government's Exhibit 511?

A.   I do.

Q.   And how do you recognize that?

A.   Those were items that were removed from the box during the inventory.

Q.   And are those the types of items that you previously described as items that were originally in the box that were subsequently removed for some reason?

A.   Yes.

Q.   Why specifically were the items in Government's 511 removed from Government's Exhibit 500, if you know?

A.   These items were removed because they were sharp.  We don't want anyone getting poked or stabbed by anything.

Q.   All right, Special Agent.

MR. BROWNE:  Your Honor, at this time I would ask that Special Agent Foo be allowed to remove items of evidence from the box where he is currently standing.  Would that be okay?

THE COURT:  That's fine.

BY MR. BROWNE:

Q.   All right, Special Agent.  So I want to start with Government's Exhibit 508.  Can you remove Government's Exhibit 508 from Government's Exhibit 500.

And while you're doing that, Special Agent Foo, can you also take a look at Government's Exhibits 508A, 508B, and 508C, please.

A.   May I remove it from the bag?

Q.   You may.

A.   (Complies.)

Q.   Okay.  Special Agent, have you had a chance to review those exhibits?

A.   Yes.

Q.   And do you recognize those items?

A.   I do.

Q.   How do you recognize them?

A.   They were removed from the box during the inventory.

MR. BROWNE:  Your Honor, at this time I would ask that

Government's Exhibit 508, 508A, 508B, and 508C be moved into evidence.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Okay.  Those four exhibits will be admitted without objection.

(Government Exhibits 508, 508A, 508B, and 508C were received in evidence.)

MR. BROWNE:  Your Honor, permission to publish?

THE COURT:  Granted.

MR. BROWNE:  Permission to approach the witness stand?

THE COURT:  Granted.

MR. BROWNE:  Madam Courtroom Deputy, can we switch over to the ELMO, please.

BY MR. BROWNE:

Q.   Special Agent Foo, please hand me Government's Exhibit 508A.

A.   (Complies.)

MR. BROWNE:  For the record, on the ELMO is Government's Exhibit 508A.

BY MR. BROWNE:

Q.   Special Agent Foo, what is Government's Exhibit 508A?

A.   It is a vehicle registration card for the State of North Carolina.

Q.   And in whose name was this registration card issued?

A.   Sara Ellen Routh.

Q.   And what is the address listed on this registration card?

A.   The address is 2106 Hiatt Street, Greensboro, North Carolina 27403-2129.

Q.   And where was this registered card found?

A.   This registration card was found in the box during that inventory.

MR. BROWNE:   May I approach, Your Honor?

THE COURT:   Yes.

BY MR. BROWNE:

Q.   I'm going to ask now, Special Agent Foo, that you hand me Government's Exhibits 508A -- excuse me, 508B and 508C.

A.   (Complies.)

MR. BROWNE:   For the record, on the projector is Government's 508B.

BY MR. BROWNE:

Q.   Special Agent, what are we looking at there?

A.   This is literature that comes with a prepaid TCL phone.

Q.   And Government's Exhibit 508C, what is that?

A.   That is literature that comes with a TCL phone.  And the back, it's literature that comes with a Verizon phone.

Q.   And where were those items found?

A.   These items were found in the box during the inventory.

MR. BROWNE:   Permission to approach, Your Honor?

THE COURT:   Granted.

BY MR. BROWNE:

Q.   Special Agent, returning briefly to 508A.  Can you please identify the vehicle ID number as well as the make of the vehicle according to the registration card.

A.   The vehicle ID number is 5N1AN08W87C527755.

Q.   And the make and series, according to this registration card?

A.   The make is a Nissan.

Q.   Is that abbreviated as NISS?

A.   Yes.

     MR.  BROWNE:  Permission to approach, Your Honor?

     THE COURT:  Granted.

BY MR.  BROWNE:

Q.   Special Agent, please return Exhibits 508A through C back to their evidence bag and replace them in Government's Exhibit 508.

A.   (Complies.)

     MR.  BROWNE:  For the record, Your Honor, I'm retrieving Government's Exhibit 511 from the witness stand.

BY MR.  BROWNE:

Q.   All right.  Special Agent, can you now remove what has been marked Government's Exhibit 506 from Government's Exhibit 500.

A.   (Complies.)

Q.   You can leave it in the evidence bag, sir.

     Special Agent Foo, do you recognize Government's

Exhibit 506?

A.    I do.

Q.    How do you recognize it?

A.    This was an item that was removed from the box during the inventory.

MR.  BROWNE:  Permission -- excuse me -- at this time we'd ask that Government's Exhibit 506 be admitted into evidence, Your Honor?

THE COURT:  Any objection, Mr. Routh?

MR.  ROUTH:  No objection.

THE COURT:  Okay.  Admitted without objection.

(Government Exhibit 506 was received in evidence.)

MR.  BROWNE:  Permission for Special Agent Foo to physically publish the exhibit to the jury, Your Honor?

THE COURT:  Granted.

BY MR.  BROWNE:

Q.    All right.  Special Agent Foo, please remove the item contained within Government's Exhibit 506 and show it to the members of the jury.

A.    (Complies.)

Q.    Can you lift it up a little higher, sir.

A.    (Complies.)

Q.    Special Agent Foo, is the item that you previously described as an improvised barrel?

A.    It is.

Q.   You can return it to its packaging.

A.   (Complies.)

Q.   Special Agent, I'm now going to ask you to remove from Government's Exhibit 500 Government's Exhibits 507, 507A, 507B, 507C, and 507D.

A.   (Complies.)

Q.   You can just hold those up to -- excuse me.  I apologize.

Do you recognize those exhibits that I just itemized?

A.   I do.

Q.   And how do you recognize those items?

A.   These were items that were removed from the box during the inventory.

MR. BROWNE:  Your Honor, I would ask that the items I just identified be moved into evidence?

THE COURT:  Any objection, Mr. Routh, to admission of Government's 507, 507A, B, C, and D?

MR. ROUTH:  No objection, Your Honor.

THE COURT:  Okay.  Those exhibits will be admitted without objection.

(Government Exhibits 507, 507A, B, C, and D were received in evidence.)

MR. BROWNE:  I'd ask that Special Agent Foo be permitted to publish them to the jury?

THE COURT:  He may.

///

BY MR. BROWNE:

Q.   All right.  Special Agent, just hold them up, one-by-one, beginning with Government's Exhibit 507A so the members of the jury can see them.

A.   May I -- may I remove them from the bag?

Q.   Yes.

A.   (Complies.)

Q.   Special Agent Foo, describe as best you can what you're showing to the jury.

A.   To me, this appears to be a improvised firing mechanism. So it's a -- I will describe it as a metal rod fitted into a pipe with some type of plastic hardware attached to the end of it.

Q.   Is there another component within the pipe and the metal rod?

A.   Yes.

        THE COURT:  Please address the jury when you are speaking.

        THE WITNESS:  Yes, ma'am.

        This one, in particular, has a spring surrounding the pipe, and within the -- surrounding the rod within the pipe.

BY MR. BROWNE:

Q.   And what color are they?

A.   It's green.

Q.   Does that appear to be factory paint on that?

A.    No.

Q.    What does it look like?

A.    Spray-painted.

Q.    Show now, please, Special Agent, the members of the jury Government's Exhibits 507B, C, and D.  These you don't have to remove from the bag, sir.

A.    (Complies.)

Q.    What is that item?

A.    It's a pipe fitted with a pipe reducer on one end, and something else on the other end.  Maybe like a plastic or rubber component.

Q.    And for the record, what Government's exhibit are you holding?

A.    This is 507B.

Q.    Can you show the jury 507C, please.

A.    (Complies.)

Q.    What are those?

A.    These appear to be modified mouse traps.

Q.    And can you show the members of the jury 507D.

A.    (Complies.)

Q.    What is that?

A.    This is a receipt for Family Dollar.

        MR. BROWNE:  Permission to publish, Your Honor?

        THE COURT:  Granted.

        MR. BROWNE:  May I approach?

THE COURT:  Yes.

MR.  BROWNE:  Permission to use the ELMO?

THE COURT:  Granted.

MR.  BROWNE:  Thank you.

BY MR.  BROWNE:

Q.   Special Agent Foo, can you see there the location of the Family Dollar store as indicated in the receipt that is Government's Exhibit 507D?

A.   Yes.

Q.   And where is that store located?

A.   That store is located on 944 Summit Ave. in Greensboro, North Carolina.

Q.   And can you see (indicating) the date listed on the Family Dollar receipt that is Government's Exhibit 507D?

A.   Yes.

Q.   What is the date?

A.   The date is March 6, 2024.

MR.  BROWNE:  May I approach, Your Honor?

THE COURT:  You may.

BY MR.  BROWNE:

Q.   Special Agent, please return those items to the bag labeled 507.

A.   (Complies.)

Q.   Okay, Special Agent, let's move things forward a little bit more quickly.  Can you please remove items 509, 509A, 509B,

510, and 511 from Government's Exhibit 500.

A.    (Complies.)

Q.    Again, that's Government's Exhibit 509, A, B, 510, and 511.

My apologies, Agent.  I took 511 away, so it's not your fault for not finding it.

Do you recognize Government's Exhibits 509 and 510?

A.    I do.

Q.    How do you recognize them, sir?

A.    These items were removed from the box during the inventory.

MR. BROWNE:  Permission -- oh, excuse me.  I would ask that Government's Exhibits 510 and 511 as well as 509, 509A, and 509B -- excuse me, not including 511, be admitted into evidence, Your Honor?

THE COURT:  So right now you're seeking to move in 509A, B, and 510?

MR. BROWNE:  And 509 as well, Your Honor.

THE COURT:  Okay.  All right.  Mr. Routh, any objection to 509, 509A, 509B, or 510?

MR. ROUTH:  No objection.

THE COURT:  Okay.  Those exhibits will be admitted without objection.

(Government Exhibits 509, 509A, 509B, and 510 were received in evidence.)

BY MR. BROWNE:

Q.    Okay.  Now that those are in evidence, Special Agent, you

can now put all of those evidence bags back into Government's Exhibit 500 and put it on the floor in front of the witness stand, please.

A.   (Complies.)

MR. BROWNE:  Your Honor, can Special Agent Foo now make use of the conventional microphone?

THE COURT:  Yes.

MR. BROWNE:  Please return the portable microphone to the court staff.

BY MR. BROWNE:

Q.   Special Agent Foo, I'm going to show you now what have been marked as Government's Exhibits 501, 502, 503, and 504, not yet admitted.

MR. BROWNE:  Permission to approach, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   (Tendering items.)

Please review those items.  You do not have to take them out of the bag.

A.   (Complies.)

Q.   Are you done reviewing those, sir?

A.   Yes, sir.

Q.   Do you recognize Government's Exhibits 501 through 504?

A.   I do.

Q.   And how do you recognize them?

A.   These cell phones were recovered from the box during the inventory.

MR. BROWNE:  Your Honor, I would ask that Government's Exhibits 501 through 504 be admitted into evidence at this time.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Admitted without objection.

(Government Exhibits 501 through 504 were received in evidence.)

BY MR. BROWNE:

Q.   And can you just describe in very general terms to the members of the jury, what are Government's Exhibits 501 through 504?

A.   Exhibit 501 is a black Verizon cell phone.  Exhibit 502 is a black Verizon cell phone.  Exhibit 503 is a silver AT&T cell phone.  Exhibit 504 is a silver AT&T cell phone.

MR. BROWNE:  Permission to retrieve the exhibits, Your Honor?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   Special Agent, I'm now going to show you a document that has been marked but not admitted as Government's Exhibit 100.

MR. BROWNE:  May I approach, Your Honor?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   (Tendering item.)

Please take a look at Government's Exhibit 100.  Read it and look up when you are done.

Special Agent, have you seen this before?

A.   I have.

Q.   And do you specifically remember seeing the words that you just read on that document?

A.   I do.

Q.   And when did you first see those words?

A.   I first saw these words during the inventory of the box.

MR. BROWNE:  Your Honor, at this time I would ask that Government's Exhibit 100 be admitted into evidence.

THE COURT:  All right.  Ladies and gentlemen, we're going to take a brief break for about ten minutes.

All rise for the jury.

(The jury exited the courtroom at 1:45 p.m.)

THE COURT:  Thank you, Special Agent.  You may be excused briefly for the break.  We will call you back in. Please don't talk about your testimony with anybody over the break.  Thank you.

Okay, Mr. Browne, are you planning on --

Everybody else may be seated.  Are you planning on publishing this now?

MR. BROWNE:  Yes, Your Honor.  Once it's -- assuming

it's going to be admitted, Your Honor, we believe we have laid the proper foundations while conforming to the Court's ruling on this particular document.

THE COURT:  Okay.  So, to be clear, this is the so-called "Dear World" letter?

MR. BROWNE:  That's correct.  This is the excerpt that the Court has authorized to be published to the jury.

THE COURT:  And that is just the first -- is it the first two sentences?  What is it again?

MR. BROWNE:  May I put it on the ELMO, Your Honor?

THE COURT:  Yes.

MR. BROWNE:  Government's Exhibit 100.

THE COURT:  Okay.  So this is an excerpt of a letter that is in total 12 pages long; is that right?

MR. BROWNE:  That's my recollection, Your Honor.

THE COURT:  Okay.  All right.  So this issue came up in a pretrial motion.  The Court previously authorized admission of this excerpt.  We subsequently revisited the matter when the defendant requested use of additional portions of this letter, and then my recollection is that we tabled the matter so the government could decide whether it opposed admission of additional portions of the letter towards the end.

What is the government's position on that at this point?

MR. BROWNE:  Your Honor, we did file a brief

supplement.  We oppose any of the defendant's attempts to introduce his own self-serving writings to include portions of this letter which the Court previously found are not needed for fairness or context or otherwise under Rule 106.

So it's the government's position that not only should this be the only portion of the letter that is admitted, but that the Court should now rule that the defendant can make no reference in cross-examination or in his jury address to any other portion of this letter because doing so would, first, run afoul of the Court's ruling; and second, it would unfairly put the government in a position where it would look like the government was somehow hiding or obscuring the remainder of this letter, which is not the case.

THE COURT:  Okay.  One moment.

All right.  Mr. Routh, I want to give you an opportunity to raise any argument you wish regarding admission of the balance of this letter or any other specified portions.

MR. ROUTH:  If we could just be allowed to introduce the three words on page 12 that says "shred his airplane."  All I'm asking for is three words on the 12th page:  "shred his airplane."

THE COURT:  And why do you think those additional words are necessary to understand or contextualize what is visible now on the ELMO?

MR. ROUTH:  Well, if we can't have the whole letter to

understand the context of what this letter entails, at least those three words give you the idea that it is for shredding his airplane.  I mean, that puts this entire letter in context. Without that, you know, you can assume that it's any -- anything, you know?  Anytime in the last 30, 40, 50 years through -- through Trump's entire life.  I mean, at least we need to at least clarify where this is from.

THE COURT:  Well, why does the phrase "shred his airplane" -- why is that "shred his airplane" reference necessary for a reader to understand just these three sentences?

MR. ROUTH:  Because these three sentences say "this is an assassination attempt."  And then you couple that with to "shred his airplane," I mean, that -- that puts, you know, an airport -- an airplane situation coupled with this assassination attempt.

There is nothing in this letter that discusses a golf course.  This letter just focuses on his airplane.

So, I mean, if you exclude the fact that this -- this letter focuses on Trump's airplane, then you have misconstrued this entire letter.  I mean, how fair is that?  That's not fair at all.

I mean, you need -- at least need to have some context. You've got 12 pages, and you can't give me three words?

THE COURT:  Well, it's not about 12 pages, three words.

It's about following the rules of evidence and the overarching principle, which is that because this is a statement that you have indicated to me in the past was authored by you, you don't have carte blanche to introduce it, because it's otherwise hearsay if offered by you.

That's why I'm trying to understand why this "shred his airplane" reference is so important to understand this segment. I don't see any references here to airplanes or anything associated with airplanes.

Mr. Routh.

MR. ROUTH:  I think anyone that is logical can see that if -- in a letter that says "this is an assassination attempt," and then on the 12th page it says that, you know, someone is going to shred his airplane, you know -- and nowhere in the letter does it state that something was going to transpire on a golf course, then, you know, you -- you have got to have some context.

I mean, how can you take three sentences out of a 12-page letter and think that you've got the entire idea of what's going on in this letter?  I mean, how fair is that?

I mean, we're supposed to be trying to ascertain the truth.  I mean, that's the number 1 rule in the book, ascertain the truth.  And we -- we're -- we've eliminated 11 pages and we can't have three words?

THE COURT:  Okay.  All right.  Mr. Browne, please

present any final argument.  We will take a brief break so I can consider the matter.

MR. BROWNE:  Again, I think the -- number one, the distance between the statement that the government seeks to introduce and what is on the last or second to last page suggests that that is not context at all.  It is so remote from the one statement or the two statements that we intend to use; and secondly, what Mr. Routh is suggesting, without actually admitting it, is that he wrote this letter and that he alone understands the meaning, and that the airplane reference somehow clarifies that meaning, but none of that can be cross-examined.

Once it's in evidence, it's in evidence, and that's why the defendant can't introduce his own statements through his own writing.  So I think that's the other problem, is that we cannot cross-examine or question the intent behind this if the defendant gets to selectively cherry-pick what items he wants from the letter to, quote/unquote, "contextualize this."

THE COURT:  Okay. All right.  Now, the full version of the letter, that's been filed under seal; is that correct, Mr. Browne?

MR. BROWNE:  Yes, Your Honor.

THE COURT:  And then the supplement the government filed on this issue is what number?

MR. BROWNE:  I don't recall, Your Honor.  I don't have

my devices in front of me.  Just give me one moment.

THE COURT:  All right.  We will be in a brief recess until about 2:00 or 2:05.  If you could just tell me what docket entry that supplement is, then we will break.

MR. BROWNE:  I will, Your Honor.

Your Honor, may I use my phone to look up the docket?

THE COURT:  Yes.

(Pause in proceedings.)

MR. BROWNE:  It appears it's Docket Entry 274, Your Honor.

THE COURT:  Okay.  Thank you.

All right.  We are in recess.  Thank you.

(A recess was taken from 1:55 p.m. to 2:34 p.m.)

THE COURT:  All right.  Thank you.  Please have a seat, and thank you for your patience.

Okay.  I have had an opportunity to further review the materials related to this exhibit, which is Exhibit 100; correct, Mr. Browne?

MR. BROWNE:  That's correct, Your Honor.

THE COURT:  Okay.  All right.  And ultimately, the Court's ruling will be, Mr. Routh, that these additional portions you wish to introduce are inadmissible, and I will explain why.

We start from the background presumption that self-serving hearsay statements by a party are not admissible

by that party because that would evade cross-examination in contravention of the hearsay rule.

So presumptively, Mr. Routh, anything you have said in an out-of-court statement which you seek to introduce for its truth, which is what you are trying to do here, is inadmissible hearsay.  The only legal basis you would have to do what you're seeking to do, which is, effectively, to pick and choose or cherry-pick portions of a self-serving statement, is Rule 106, which does allow an adverse party to introduce other parts of the party's statement over a hearsay objection.  But importantly, Rule 106 does not automatically make the entire document admissible once one portion has been introduced.  And so for you to persuade me that some other portion of the statement needs to be admitted, you have to show that that additional material is relevant and necessary to qualify, explain, or place into context the portion already introduced, and you have to do so with specificity.

All of this comes from an Eleventh Circuit decision which you've seen in court filings, and that's Macrina, 109 F.4th 1341.  I would add also that mere topical relationship between the two segments is not enough, in my view.  Put another way, just because some portion of some writing has some arguable topical connection with another part is not enough to satisfy the Macrina test.

And so we get back to the document here in question;

that's a 12-page total letter.  We have the first page which I will read, and it's just the first three sentences.

The government has been clear that these are the only three sentences it wishes to use, and they say the following: "Dear World, This was an assassination attempt on Donald Trump, but I am so sorry I failed you.  I tried my best and gave it all the gumption I could muster.  It is up to you now to finish the job, and I will offer $150,000 to whomever can complete the job."

Okay.  And then you've now told me and you've crystalized that you wish to go to page 12 of this document and pluck three lines from a sentence, and those three -- excuse me, three words are "shred his airplane."  That "shred his airplane" comes from another sentence that says, "I have left touch DNA on this note as well as on the 1,000 parts on my mechanisms to shred his airplane."

Okay.  And so, again, we get back to the question before me, which is, are those three words, "shred his airplane," on page 12 of the letter, somehow necessary to qualify, explain, or place into context the portion introduced on page 1, those three sentences?  And on that issue, mindful of the background rule against admission of self-serving hearsay and the unfairness inherent in doing so, given the inability for the government to cross-examine any such extra portions, I agree with the government.

The first three sentences of this letter do not reference an airplane, they don't incorporate anything to do with an airplane or shredding of an airplane, and they don't in any way lead the reader to some other part of the letter for full understanding.  In other words, there is nothing in the phrase, "shred his airplane," many pages later, with a lot of things in between, that is actually necessary to understand the first three sentences.

Perhaps you have a theory, Mr. Routh, as to why those are connected, but that's a theory which the government would be prevented from cross-examining if you had the ability to do so as you're trying to do by this selective cherry-picking exercise.

And so, in the end, having considered the issue, it seems to me that the rules of evidence really are designed to prevent this type of manipulation.  That doesn't mean at all that you're prevented from introducing any admissible evidence that you think is relevant to this case or to your theory of defense.  But you aren't allowed to do so in the manner you're seeking to do so now.

And so one other point.  I would just note, in scanning the balance of this letter, there are a host of totally irrelevant items throughout that I think underscore the problematic and dangerous concerns that one runs into when trying to selectively pick and choose portions of a letter.

So for all of those reasons, we will move forward now with the jury with just the first three lines of this letter.

One moment, Officer.

Does the government believe that an instruction is necessary to the jury to advise them that they're seeing only a redacted portion of the letter, and that they shouldn't concern themselves with anything else that might have been contained in the letter?

MR. BROWNE:  May I have a moment to confer, Your Honor?

THE COURT:  Yes.

MR. BROWNE:  Your Honor, at this point we don't think it's necessary, because we believe that the defendant is now on notice that there can be no references to inadmissible evidence that's been excluded.  So if, of course, that changes, the defendant runs afoul of the Court's ruling and decides to somehow inject those extra pages into the trial, then we would ask that the Court allow us to revisit this question.  But as of right now, we don't believe that's necessary.

THE COURT:  Okay.  What would the page look like, though?  Can you bring up just that first page again?

MR. BROWNE:  Yes, Your Honor.

THE COURT:  I ask because sometimes we have redacted statements, and it's not unusual to inform the jury that this is only a portion of another document, and they shouldn't concern themselves with what could have been contained in it or

otherwise guess at what was there, just because they may look at it formatting-wise and wonder if it's part of a -- of a bigger document.

MR. BROWNE:  May I use the ELMO to project the letter?

THE COURT:  Yes.

MR. BROWNE:  Government's Exhibit 100 is on the screen, Your Honor.

And for the record, Your Honor, this is not technically a redaction.  We've simply -- we actually just took a piece of paper and covered the inadmissible portions of the letter and made a photocopy.  So I framed my questions in terms of, "Do you recognize the words in this document?" because, of course, the witnesses who have -- who have identified this letter are going to say that, yes, they have read this before, but they're not going to say that they have seen this exact document because they would have seen it in a different context.

So if the Court is more comfortable giving that instruction, Your Honor, we have no objection.  But, again, it's the government's, you know, strong concern that it's going to be the defendant that suggests to the jury that there are parts missing or that they're not being shown the whole picture, so to speak.

THE COURT:  Well, it is factually true that they're not seeing the entire letter.

MR. BROWNE:  That is correct.

THE COURT:  Okay.  So then, all right.  I will instruct the jury that they're seeing a portion of a letter, or a document, I should say, and that pursuant to court rulings, they're to consider only what they're seeing and not guess or speculate at what might be contained in the remainder of the letter.  Any objection to that formulation?

MR.  BROWNE:  Not from the United States.

THE COURT:  Okay.  Let's call the jury in, please.

MR.  BROWNE:  May the witness return to the stand, Your Honor?

THE COURT:  Yes.

(The jury entered the courtroom at 2:42 p.m.)

THE COURT:  Thank you.  Please have a seat.  Agent, you remain under oath.

Thank you for your patience, ladies and gentlemen.  It is not unusual to have issues arise that require the Court's attention.  I just thank you again for your patience.

Please continue, Counselor.

MR.  BROWNE:  Thank you, Your Honor.  May I approach the witness with what has been marked as Government's Exhibit 100?

THE COURT:  You may.

BY MR.  BROWNE:

Q.   (Tendering item.)

Take a look at that again, Special Agent, please.

A.   (Complies.)

Q.   Now, Special Agent Foo, before the break, do you recall testifying that you specifically remembered seeing the words that are on the document marked as Government's Exhibit 100?

A.   Yes.

Q.   And remind the jury, when did you first see those words?

A.   I first saw these words during the inventory of the box.

MR. BROWNE:  Your Honor, at this time I would ask that Government's Exhibit 100 be admitted into evidence.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  Okay.  Government's 100 will be admitted without objection and pursuant to the Court's prior rulings. You may publish.

(Government Exhibit 100 was received in evidence.)

MR. BROWNE:  May I retrieve the exhibit from the stand, Your Honor?

THE COURT:  You may.

MR. BROWNE:  For the record, this is Government's Exhibit 100.  May I make use of the ELMO?

THE COURT:  Yes.

MR. BROWNE:  Publishing Government's Exhibit 100, Your Honor.

THE COURT:  Thank you.

Ladies and gentlemen, what you're seeing here, Government's 100, is a portion of a larger document.  Pursuant

to court rulings, you should not concern yourself or in any way guess at what is contained in any other portion of this document.  You should consider only what you're seeing on this screen, and that is the only admissible evidence.  That's pursuant to court rulings that have been made.

Please continue.

MR.  BROWNE:  Can everyone on the jury see what's on the screen?

JURORS:   (Head nods.)

MR.  BROWNE:  Permission to approach the witness?

THE COURT:  Granted.

BY MR.  BROWNE:

Q.   Special Agent, I am now going to show you what have been previously marked as Government's Exhibits 505, 505A, 505B, 505C, and 505D.  (Tendering items.)  Those items have been marked but not admitted.

Special Agent, can you please review those items and look up when you are done.  And you can leave them in the bag, Special Agent, as long as you can see them.

Special Agent, do you recognize Government's Exhibits 505 and 505A through D?

A.   I do.

Q.   How do you recognize those exhibits?

A.   These items were removed from the box during the inventory.

MR.  BROWNE:  Your Honor, I would ask that Government's

Exhibits 505 and 505A through D be admitted into evidence?

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection, Your Honor.

THE COURT:  Okay.  Those exhibits are admitted without objection.

(Government Exhibits 505, 505A through 505D were received in evidence.)

MR. BROWNE:  May I retrieve the exhibits from the stand?

THE COURT:  Yes.

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   Special Agent, I'm going to show you now on the ELMO projector Government's Exhibit 505A.

What is that, Special Agent?

A.   This is a Verizon -- or this is a recharge card for a Verizon prepaid phone.

Q.   And what appears to be written there in handwriting on Government's Exhibit 505A?  Just give your best guess.

A.   On L-B-I-R-C, and then G-I-B-I-L.

Q.   Showing you now Government's Exhibit 505B.  What is that item, Special Agent Foo?

A.   This is a recharge card for a Verizon prepaid phone.

Q.   And do you see a telephone number that is handwritten on

Government's Exhibit 505B?

A.   I do.

Q.   And what is that telephone number?

A.   561-701-5510.

Q.   Showing you now what's been admitted as Government's Exhibit 505C.

What is that, Special Agent?

A.   This is literature associated with an AT&T prepaid cell phone.

Q.   And finally, Government's Exhibit 505D.  What does that appear to be, sir?

A.   It appears to be an orange sticker or tag.

Q.   As best you can, what words can you make out from that orange sticker or tag?

A.   I can make out the words "inspected," "aloha," "Oahu," and "Hawaii."

MR. BROWNE:  Your Honor, may I return to -- may I return the exhibit into Government's Exhibit 500?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   Last item, Special Agent.  I'm going to show you what has been marked but not admitted as Government's Exhibit 544.

MR. BROWNE:  Your Honor, may I approach?

THE COURT:  Yes, you may.

///

BY MR. BROWNE:

Q.  (Tendering item.)

Special Agent, please review Government's Exhibit 544 by removing it from the manila envelope, and look up when you are done reviewing.

A.  (Complies.)

Q.  Do you recognize Government's Exhibit 544?

A.  I do.

Q.  How do you recognize it, sir?

A.  These are items that were removed from the box during the inventory.

MR. BROWNE:  Your Honor, at this time I would ask that Government's Exhibit 544 be admitted into evidence.

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  544 admitted without objection.

(Government Exhibit 544 was received in evidence.)

BY MR. BROWNE:

Q.  Special Agent Foo, what is Government's Exhibit 544?

A.  Government Exhibit 544 are six high-caliber cartridges or rounds, one of which -- one of those rounds is fitted into a pipe with pipe reducers on both ends of that pipe.

MR. BROWNE:  Your Honor, I would ask that Special Agent Foo be authorized to stand up and show the exhibit to the jurors.

THE COURT:  He may.

MR. BROWNE:  Come right up here in the center, sir.

THE WITNESS:  (Complies.)

BY MR. BROWNE:

Q.  Please return to the witness stand, sir.

A.  (Complies.)

Q.  And could you put Exhibit 544 back in the manila envelope, please.

A.  (Complies.)

MR. BROWNE:  I have no further questions of this witness.

THE COURT:  Thank you.  Any cross-examination?

MR. ROUTH:  Yes, Your Honor.

CROSS-EXAMINATION

BY MR. ROUTH:

Q.  Good afternoon.  Thanks for traveling from Greensboro.

So are you aware of the fact that the box was in storage for over five months?

A.  I was aware that the box was under the control of someone else.  I don't know where exactly it was.

Q.  But they didn't -- they didn't clue you into the time frame, how many months it was in storage?

A.  I was aware that it was in storage for some period of time, yes.

Q.  Right.  As far as all of the parts and pieces in the box,

did you or any of the staff at the FBI assemble those parts?

A.   No, sir.

Q.   None of them?

A.   None.

MR. ROUTH:  Your Honor, can I show Exhibit 522Z?

THE COURT:  One moment.

This is not in evidence, is that correct, Mr. Routh?

MR. ROUTH:  I thought it was admitted.  I'm not sure.

THE COURT:  Mr. Browne, has this been admitted?

MR. BROWNE:  It has not.  We have no objection to it being admitted at this time.

THE COURT:  Okay.  So are you wishing to introduce this exhibit, Mr. Routh?

MR. ROUTH:  Sure.  Sure.

THE COURT:  And what's the number?

MR. ROUTH:  522Z.

THE COURT:  522Z.  Okay, well, then 522Z will be admitted without objection.

(Government Exhibit 522Z was received in evidence.)

BY MR. ROUTH:

Q.   Just my experience in doing electrical work --

THE COURT:  Just one moment.  Let's make sure the screens are activated.

Jurors, can you see this?

JURORS:  (Head nods.)

THE COURT:  Okay.  Continue.

BY MR. ROUTH:

Q.   In my experience doing electrical work, you know, running conduit and running the clamps along the walls, I have never had a clamp that fit securely around a pipe such as -- such as this clamp here.

So you're suggesting that that clamp stayed on that pipe for five months?

A.   That clamp was on the pipe when we conducted the inventory of the box.

Q.   So you're testifying that all -- that clamp is affixed there?

A.   I'm testifying that the clamp was configured to that pipe when the inventory happened, according to the pictures that we took during the inventory.

Q.   And none of your staff assembled any of these parts and pieces?  Everything was assembled when you pulled it out of the box?

A.   Yes, sir.

MR. ROUTH:  Okay.  Thank you very much.  No further questions.

THE COURT:  Redirect?

MR. BROWNE:  Yes, Your Honor, briefly.

May I also make use of the ELMO, Your Honor?

THE COURT:  Yes.

REDIRECT EXAMINATION

BY MR. BROWNE:

Q.   Special Agent Foo, you have never seen this photo before, have you?

A.   No, sir.

Q.   Okay.  And you don't know who took that photo?

A.   I do not.

Q.   And to clarify something you said, when you were asked were these parts assembled, there was nothing that looked like this in the box when you did your inventory; correct?

A.   Correct.

Q.   And, in fact, you have never seen this configuration before in your life, have you?

A.   I have not.

MR. BROWNE:  No further questions.

THE COURT:  Thank you.

Thank you, Agent.  You may be excused.

Who is the next government witness?

MR. BROWNE:  Your Honor, the United States calls Laura Haller.

THE COURT:  All right.  Let's invite Ms. Haller in, please.

MR. BROWNE:  Your Honor, may I retrieve the evidence from the witness stand before Ms. Haller --

THE COURT:  Yes.

MR. BROWNE:  Thank you.

THE COURT:  Ms. Haller, I will just have you wait there momentarily while we retrieve some evidence.

Okay.  You can make your way to the witness stand now, please.

One moment, Ms. Moran.

Go ahead, please.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  I do.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  My name is Laura Haller.  That's L-A-U-R-A, H-A-L-L-E-R.

MR. BROWNE:  May I inquire, Your Honor?

THE COURT:  Yes.

SPECIAL AGENT LAURA HALLER, having been sworn, testified as follows:

DIRECT EXAMINATION

BY MR. BROWNE:

Q.  Good afternoon, Ms. Haller.

A.  Good afternoon.

Q.   Can you tell us where you work?

A.   I work at the Federal Bureau of Investigation.

Q.   And as of today, what do you do there?

A.   I'm a Special Agent.

Q.   What did you do before you became a Special Agent at the FBI?

A.   I was a digital forensic examiner at the FBI.

Q.   Is there another term for a digital forensic examiner within the FBI?

A.   A CART examiner.

Q.   And remind the jurors, what is CART?

A.   It's Computer Analysis Response Team.

Q.   When you were a member of the Computer Analysis Response Team, or CART, where did you work at that time?

A.   I worked in the Charlotte field office in Charlotte, North Carolina.

Q.   And during approximately what time frame did you work as a CART examiner in Charlotte?

A.   From April of 2022 until October of 2024, roughly.

Q.   I'm going to show you what's been admitted into evidence as Government's Exhibit 501.

MR. BROWNE:  Your Honor, may I approach?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   (Tendering item.)

Special Agent, do you recognize that item?

A.   Yes.

Q.   And how do you recognize that, ma'am?

A.   This was a cell phone that I performed an extraction on while I was a CART examiner.

Q.   And can you remind the jurors, what does it mean to perform an extraction on a cellular telephone?

A.   So it basically means taking all of the data out of the cell phone and making it into a format that is readable for a case agent or anybody else to review.

Q.   And in this particular case, in the case of Government's Exhibit 501, how did you take the data out of that cell phone?

A.   I used an extraction tool called Cellebrite UFED.

Q.   And how does Cellebrite UFED work?

A.   It takes the data out of the phone.  It's a program that we plug the phone into.  And then we also use it to what we call process the data on the phone, which basically just means to make it into a human readable format.  So the report will split it up into topics that you're used to looking at on a cell phone, like text messages, call logs, emails, things like that, and it provides it in a format that we can then review.

Q.   Are those topics sometimes referred to as artifacts?

A.   Yes.

Q.   Okay.  Can you tell the jury, and maybe hold up Government's Exhibit 501 while you do it, what type of phone is

this?

A.   (Complies.)  It is a Motorola cell phone.

MR. BROWNE:  And I would like to show you on the witness monitor only, please, Government's Exhibit 512.

And if we could zoom in, please, to the "Summary" field only for the benefit of the witness.

BY MR. BROWNE:

Q.   Special Agent, do you recognize that?

A.   Yes, I do.

Q.   What is Government's Exhibit 512?

A.   This is one of multiple reports derived from the extraction of this cell phone.

Q.   Is that an extraction that you personally performed on Government's Exhibit 501?

A.   Yes, it is.

MR. BROWNE:  Your Honor, I would ask that Government's Exhibit 512 be moved into evidence?

THE COURT:  Mr. Routh, what's your position?

MR. ROUTH:  No objection.

THE COURT:  Okay.  This exhibit will be admitted without objection.

(Government Exhibit 512 was received in evidence.)

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

MR. BROWNE:  Ms. Luce, can we zoom in again in that

Summary field.

BY MR. BROWNE:

Q.   Special Agent, just tell us very briefly what kinds of information can you discern from this particular report about that phone?

A.   So in the Summary field is information that I inputted while I was performing the extraction.  So that's the evidence number that we use, and the case number, and my initials.  And then below that, you can see the type of phone it is, the extraction start and end time, and other information about both the phone and the Cellebrite UFED that I used to extract the phone.

MR. BROWNE:  Okay.  And if we could zoom back out and go to the second page, please, Ms. Luce.

BY MR. BROWNE:

Q.   Okay.  Can you tell the members of the jury where on the second page of Government's Exhibit 512 one can see the phone number assigned to Government's Exhibit 501?

A.   Yes.  So under the bold title, File System, at the top, if you go down, you can see the MSISDN, and then next to it, the value, that is the phone number of the cell phone.

Q.   Could you mark that value with an X by touching your screen.

A.   (Complies.)

Q.   And could you read into the record the phone number

associated with Government's Exhibit 501, please.

A.   Yes.  It's 561-429-0623.

Q.   And you previously mentioned that this was a Motorola-type phone?

A.   Yes.

Q.   And is that evident from the data that is collected by the Cellebrite program?

A.   Yes, it is.

MR. BROWNE:  Okay.  Can we turn to the next page, please, of Government's Exhibit 512.

BY MR. BROWNE:

Q.   What types of artifacts are reflected in Government's Exhibit 512?

A.   There is a message on this phone.

Q.   Okay.  And can we go to the next page, please, and the following.  And based on the color of the bubble that is on the screen, can you tell whether this message was sent from Government's Exhibit 501 or to Government's Exhibit 501?

A.   I can see that based on -- it says "to" another phone number, and then it says "owner" above that.  So that would tell me that the owner of this phone sent the message to that other number.

Q.   Thank you.

And could you please read, for the record, the contents of the text message in Government's Exhibit 512.

A.   "Got a real phone.  In West Palm Beach, meeting her brother, Tad.  Can you Western Union the rest of the money?  Take fees out of my funds.  Whatever cost, no matter."

Q.   Thank you, Special Agent.

MR. BROWNE:  If we could take that down.

And I would ask Your Honor for permission to publish to the witness only what has been marked but not admitted as Government's Exhibit 513?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   Special Agent, can you see Government's Exhibit 513 on your screen?

A.   Yes.

Q.   Do you recognize it?

A.   Yes, I do.

Q.   How do you recognize it?

A.   It's another report that was derived from the extraction of the same cell phone.

Q.   And how do you know that you performed the extraction yourself?

A.   Because my initials are next to the "Examiner Name" portion.

MR. BROWNE:  Your Honor, at this time I would ask that Government's Exhibit 513 be admitted into evidence?

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  513 admitted without objection.

(Government Exhibit 513 was received in evidence.)

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   All right.  Special Agent, if we could turn to the second page, please, of this Government's Exhibit 512.  And can you remind us, once again, where we can find -- I'm on the wrong page.  Do you see where it says vendor and Bluetooth device name?

A.   Yes.

Q.   And these are consistent with Government's Exhibit 501 that you previously told us this was an extraction from?

A.   Yes.

Q.   Okay.

MR. BROWNE:  And if we could go to the next page.

BY MR. BROWNE:

Q.   What types of artifacts are these?

A.   This is a call log on this phone.

Q.   And how many calls are reflected in this call log?

A.   12.

Q.   Okay.  And does this represent each and every single phone call that was placed to or from Government's Exhibit 501?

A.   Yes.

Q.   All right.

MR. BROWNE:  We can take that down, Ms. Luce, please.

Your Honor, at this time I would ask permission to publish to the witness only what's been marked but not admitted as Government's Exhibit 520.

THE COURT:  Okay.

BY MR. BROWNE:

Q.   Special Agent, do you recognize that?

A.   Yes, I do.

Q.   And what is Government's Exhibit 520?

A.   It is another report derived from the extraction of the cell phone.

Q.   Okay.  And did you personally perform the extraction that is on the screen at Government's Exhibit 520?

A.   Yes.

Q.   And from which phone was this extraction taken?

A.   The Motorola that I have here (indicating).

Q.   Okay.

MR. BROWNE:  Your Honor, at this time I would ask that Government's Exhibit 520 be admitted into evidence?

THE COURT:  Any objection?

MR. ROUTH:  No objection.

THE COURT:  520 admitted without objection.

(Government Exhibit 520 was received in evidence.)

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

MR. BROWNE:  Ms. Luce, can we go to page 2 and to page -- I'm sorry.

BY MR. BROWNE:

Q.   And, Ms. Haller, again can you show us where the call number for this particular device appears on page 2 of Government's Exhibit 520.

A.   Yes.  Where it says "MSISDN."

Q.   Can you just mark the exhibit with an X, please.

A.   (Complies.)

Q.   Thank you.

MR. BROWNE:  And if we could go to the next page, Ms. Luce.

BY MR. BROWNE:

Q.   What types of artifacts are these in Government's Exhibit 520?

A.   This shows some web history that was found on this device.

Q.   And explain to the jury what kinds of web history, or what kind of web history is evident from Government's Exhibit 520.

A.   You can see that the Airbnb Palm Beach vacation rentals was a visited site.  You can see that in both web history instances.  So it's airbnb.com.

Q.   And according to the artifacts, on what dates did the user of Government's Exhibit 501 visit the website for Airbnb?

A.   On March 29th of 2024.

MR. BROWNE:  Just a moment, Your Honor.

Tender the witness, Your Honor.

THE COURT:  Thank you.

Mr. Routh, cross-examination?

MR. ROUTH:  I have no questions.

THE COURT:  Okay.  Thank you, Agent.  You may be excused.

The next witnesses, Counselor, do they require any translation services?

MR. BROWNE:  The next two witnesses do require the services of an interpreter, Your Honor.

THE COURT:  Okay.  Then let's do that.

Ladies and gentlemen, we have some Spanish-speaking witnesses.  The procedure will be that we have an interpreter here who will assist in translating their testimony from Spanish into English.  They will be situated over here, and these are folks that are certified to perform this translation work in court.

So, with that, please bring in your next witness.

MR. BROWNE:  Yes, Your Honor.  May I retrieve the exhibit on the stand?

THE COURT:  Yes.

And just for planning, we will go until about 3:45 and take our last break of the day.

MR. BROWNE:  Is it Your Honor's preference that the

interpreters use the handheld microphones or these lanyard microphones?

THE COURT:  Handheld, please.  Those work a little better.

MR. BROWNE:  Thank you, Your Honor.

THE COURT:  Ms. Moran, if you could situate a chair there for the interpreters.  Thank you.

Good afternoon.

THE INTERPRETER:  Good afternoon, Your Honor.

THE COURT:  Thank you.  I have already informed the jurors that you're here to help us with translations.  So please make yourselves comfortable next to the witness.

THE INTERPRETER:  Thank you.

THE COURT:  Is there one other chair we could use?

Thank you.  And while we're doing this, please tell us your names.

THE INTERPRETER:  Yes, Your Honor.  My name is Mary Iacobelli.

THE COURT:  Thank you.

THE INTERPRETER:  And good afternoon, Your Honor.  My name is Fiorella Warger.

THE COURT:  Thank you both.

Okay.  It's a little tight quarters over there, but we will make this work.

All right.  Please call your next witness, and let us

know who he is.

MR. BROWNE:  Yes, Your Honor.  The United States calls Samuel Plata.

THE COURT:  Good afternoon, Mr. Plata.

You can commence the translation.

You will now be sworn in.  Please stay standing.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  Yes, I do.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  My name is Samuel Plata Patricio.

THE COURT:  You may begin.

MR. BROWNE:  Thank you, Your Honor.

SAMUEL PLATA,

having been sworn, testified as follows:

DIRECT EXAMINATION

BY MR. BROWNE:

Q.   Mr. Plata, where do you live?

A.   (By Witness)  In Greensboro, North Carolina.

THE COURT:  Okay.  To make sure that we don't flip-flop with languages, we're going to stick to the Spanish-to-English

translation only, sir.

THE WITNESS:  That's fine.

THE COURT:  Okay.  The question is:  Mr. Plata, where do you live?

THE WITNESS:  Greensboro, North Carolina.

BY MR. BROWNE:

Q.   And how long have you lived there, sir?

A.   About 25 years.

Q.   And were you born in Greensboro?

A.   No.

Q.   Where were you born?

A.   I was born in San Nicolás Hidalgo, Mexico.

Q.   Mr. Plata, how old were you when you came to the United States?

A.   Around 19.

Q.   And why did you decide to leave Mexico?

A.   Well, for -- for -- to have a better life.

Q.   And when you decided to enter the United States, did you have documents or papers that allowed you to enter this country legally?

A.   I entered illegally.

Q.   At some point, Mr. Plata, were you ever -- were you ever able to obtain work in the United States?

A.   Yes.

Q.   And did you eventually settle into having your own

business?

A.   Yes.

Q.   I'm going to shift gears now and ask you:  Have you ever met a man named Ryan Routh?

A.   Yes.  He was my boss.

Q.   And approximately when did you first meet the defendant in this case?

A.   You mean what time?

Q.   Yeah.  About what year?

A.   Like in '90 -- in the '90s.

Q.   And you said that he was your boss.  Can you just explain what that means?  Did you work for him?

A.   I worked with him with -- on roofing.

Q.   Okay.  And approximately how long did you work as an employee of the defendant?

A.   Around -- around five years.

Q.   And during that five-year span, did you ever consider the defendant to be a friend?

A.   Before?  Yes.

Q.   And did there come a time last year, in 2024, that you once again heard about Ryan Routh?

A.   So on the 16th of September, an ex-boss of his sent me a text asking me if this one was the owner of United Roofing.

        THE COURT:  Okay.  One moment.  I'm concerned about eliciting hearsay, so ask a new question.

MR. BROWNE:  That's fine.

BY MR. BROWNE:

Q.   After you were asked this question about the defendant, what happened next?

A.   Well, I later saw the news, and I found out about what had happened.

Q.   At some point, did your family begin discussing the topic of the defendant, Ryan Routh?

A.   My brother called me on Tuesday in the afternoon and said that the men or gentlemen had left a box.

THE COURT:  Next question.

BY MR. BROWNE:

Q.   And what did you do based on that information that you received on that Tuesday afternoon?

A.   I told my brother that I would go on Wednesday to check the box.

Q.   And I'm going to show you now what is in evidence as Government's Exhibit 500.

MR. BROWNE:  Your Honor, if I may have permission to approach the witness, and I would also ask that the witness be given permission to stand up to look at the item?

THE COURT:  Yes, but because the size of this item is obstructing the view of the jurors, just please leave it on the ground and the witness can just view it where it is and then take a seat after that.

MR. BROWNE: Thank you, Your Honor.

BY MR. BROWNE:

Q. (Tendering item.)

THE COURT: Sir, if you want to take a look at that, you may, and then you can have a seat.

THE WITNESS: (Complies.)

BY MR. BROWNE:

Q. Mr. Plata, do you recognize what that is?

A. Yes.

Q. And how do you know what that is?

A. Well, that's the box I opened.

Q. And, Mr. Plata, where did you open this box?

A. In the back of my brother's house.

Q. Is that where you first saw what has been marked as Government's Exhibit 500?

A. Yes.

Q. And, Mr. Plata, I want you to describe what you saw the first time you opened that box.

A. Well, when I first opened the box, the first thing that I saw was a rope, nails, tools.

MR. BROWNE: At this time, Your Honor, I would ask to publish to the witness only what's been marked but not admitted as Government's Exhibit 540B.

THE COURT: Granted.

///

BY MR. BROWNE:

Q.   Mr. Plata, do you see something on your screen?

A.   A photograph.

Q.   And who took that photo, sir?

A.   I did.

Q.   And what does that photo depict?

A.   Well, what it depicts is a pipe and a cartridge.

Q.   Are those items that you personally removed from Government's Exhibit 500?

A.   Yes.

         MR. BROWNE:   Your Honor, at this time I would ask that Government's Exhibit 540B be admitted into evidence?

         THE COURT:   Any objection, Mr. Routh?

         MR. ROUTH:   No objection.

         THE COURT:   540B admitted without objection.

    (Government Exhibit 540B was received in evidence.)

         MR. BROWNE:   Permission to publish, Your Honor?

         THE COURT:   Granted.

         MR. BROWNE:   Can everybody see that?

         A JUROR:   (Nods head.)

BY MR. BROWNE:

Q.   Mr. Plata, whose hand is that in that photo?

A.   That is my hand.

Q.   And why did you take this picture, sir?

A.   As evidence.

Q.   Why did you think you needed evidence of what was inside that box?

A.   Well, because I found that it was strange to see these pipes and the cartridge.

Q.   And, in fact, did you send this photo to somebody else?

A.   Yes.

Q.   Who did you send it to?

A.   To the sheriff, Chad Batten.

Q.   Is that a police officer?

A.   He is a sheriff.

Q.   I want to show you now what has been marked, but not admitted, as Government's Exhibit 540C.

MR. BROWNE:  If we could publish that to the witness only.  Can you make the zoom a little bit closer on the items in the left side of that photo.

BY MR. BROWNE:

Q.   Mr. Plata, do you recognize this?

A.   Yes.

Q.   And how do you recognize it, sir?

A.   Because I found them and I disassembled them, the pipe.

Q.   And did you take this photo?

A.   Yes.

Q.   And the items that are depicted in this photo, did you remove them from that box?

A.   Yes.

MR. BROWNE:  Your Honor, permission -- excuse me.  At this time I would ask that Government's Exhibit 540C be admitted into evidence?

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  540C admitted without objection.

(Government Exhibit 540C was received in evidence.)

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   Mr. Plata, what are we looking at here in this photo that you took?

A.   Cartridges, pipes, cellular phone, and a letter.

Q.   And when you say "cartridges," are you referring to the items I just circled in blue (indicating) on Government's Exhibit 540C?

A.   Yes.

Q.   You said you also found some cell phones in that box, sir?

A.   Four cell phones.

Q.   And you also referenced a letter.

A.   Yes.

Q.   How did you feel when you discovered the bullets and the four cell phones in this box?

A.   I was very scared.

MR. BROWNE:  We can take that off the screen.

BY MR. BROWNE:

Q.   Mr. Plata, I'm going to publish for you what has already been admitted as Government's Exhibit 100.

MR. BROWNE:  Your Honor, may I have permission to publish?

THE COURT:  Granted.

MR. BROWNE:  May I make use of the ELMO, please?

THE COURT:  Yes.

BY MR. BROWNE:

Q.   This is Government's 100.

Mr. Plata, do you read any English at all?

A.   Very little.

Q.   Have you ever seen the words on this piece of paper before?

A.   Yes.

Q.   And are there any words on this piece of paper that you specifically remember reading back in September of 2024?

A.   "It's an assassination attempt on Donald Trump, and the one who finishes the job, I'm offering 150,000 to the one who completes the job."

Q.   Did that number stand out to you at the time?

A.   Yes.

Q.   Why?

A.   Well, because of the amount, 150,000.  A big amount.

Q.   I previously asked you how you felt when you discovered the bullets and the cell phones.  How did you feel when you saw

this item -- or these words in that box?

A.   I even became more scared.

Q.   And what did you do after you discovered the letter, the bullets, the tubes, and the phones?

A.   Well, we decided, we told the sheriff.

Q.   And what happened next?

A.   He made contact with the Secret Service and with the FBI.

Q.   And did the FBI, in fact, come to your brother's house that day?

A.   Yes.

Q.   Did you speak to them?

A.   Yes.

Q.   Did you cooperate with their investigation?

A.   Yes.

Q.   Was that an easy decision to make, to call law enforcement after you found these items in your brother's backyard?

A.   No.  It was very difficult.

Q.   Why was it difficult for you to make the decision to call law enforcement?

A.   Well, because we have -- I mean, we don't want to have problems with the police.

Q.   Are there members of your family whose immigration situation are still up in the air?

A.   Yes.

Q.   But you called the police anyway?

A.   That's right.

MR. BROWNE:  Nothing further, Your Honor.

May I retrieve the exhibit?

THE COURT:  Yes.

All right.  Cross-examination, Mr. Routh?

MR. ROUTH:  Certainly.

THE COURT:  One moment.  Let's permit Mr. Browne to gather his items, and then we will get started.

CROSS-EXAMINATION

BY MR. ROUTH:

Q.   Hola, hermano.  Como estas?

A.   Good, good.

MR. BROWNE:  Objection, Your Honor.  I'm going to object.  I think the Court has made clear that questions are to be asked in English and that the interpreters should be allowed to perform their work.

THE COURT:  Okay.  We need to maintain consistency in the language.  So please don't use any language other than English.  And because we're doing this consecutive translation, you need to speak slowly so we can go through the sequence.

Please begin.

BY MR. ROUTH:

Q.   Did I teach your whole family how to roof and do construction?

A.   Yes.

Q.   One of the first days that we worked together, did you not set up a ladder that wasn't latched and I went up it and fell on the ground?

A.   Yes.

Q.   Did I get mad?

A.   No.

Q.   Do I ever get mad?

A.   Well, not with me.

Q.   Have I ever gotten in a physical fight with anyone?

A.   Well, physically, not.  But one time you were in some argument with Mr. Teodoro, and there was some back and forth, and I believe he was knocked over.

Q.   Were you not the office manager, general manager of the business at that moment in time?

A.   Yes.

Q.   Were you not handling all payroll at that moment in time?

MR. BROWNE:  Objection.  Relevance.

THE COURT:  Overruled for now.

Please answer.

THE WITNESS:  Yes.

BY MR. ROUTH:

Q.   Were the guys complaining about payroll?

A.   They -- they -- well, they were annoyed, angry about the money that you owed them previously.  This was before I came involved in the office.

Q.   I was the boss, so I'm ultimately -- ultimately responsible, yes, but would you say that a pertinent trait of my character is nonviolent?

MR. BROWNE:  Objection.  Form.  Prior order.  Calls for a legal conclusion.

MR. ROUTH:  Do I need to restate?

THE COURT:  All right.  We are almost at our break time anyway.  So this is a good time to take a break, and that will allow the Court to resolve this issue.

So let's rise for the jury.

(The jury exited the courtroom at 3:42 p.m.)

THE COURT:  Please have a seat.

Mr. Plata, do not discuss your testimony over the break.

Okay.  You may all exit the courtroom.  We're going to take a quick restroom break -- quick restroom break until 3:45 or so, and then we will all gather in the courtroom to resolve this issue.  And then once that's finished, we will call in the jury.

Thank you.  We're in a brief recess.

(A recess was taken from 3:43 p.m. to 3:54 p.m.)

THE COURT:  All right.  Please have a seat.

Okay.  The witness is not in the courtroom; correct?

MR. BROWNE:  That's correct, Your Honor, just the interpreters.

THE COURT:  Okay.  There is an objection on the table, and it concerned the last question which stated, quote, "But would you say that a pertinent trait of my character is nonviolence?"  The objection is "calls for a legal conclusion, prior order, and form."

So, Mr. Browne, what is your objection?

MR. BROWNE:  Beginning with calling for a legal conclusion, there is simply no way that Mr. Plata knows whether the defendant's character trait is, quote, "pertinent," end quote, or not, to this legal proceeding.

THE COURT:  Okay.  So if the question were "Isn't it true, Mr. Plata, that I am not a violent person?" --

MR. BROWNE:  Given that he's just asked about two specific instances of his purported nonviolence, that is also in direct violation of the Court's order because he is building on those two --

THE COURT:  Right.  Well, you didn't object to those questions.  So now we're talking about the one that is on the table.

The form, if asked in the way that I just indicated, why would that be violative of the Federal Rules of Evidence?

MR. BROWNE:  If he were to say "Is it true that I am of a nonviolent character?" okay, that's absolutely fine.  But if he opens that door, Your Honor, I'm going to ask questions of this witness about the defendant's propensity for violence that

we've previously noticed up in 404(b), and I'm going to ask him about the circumstances of his issue with Teodoro.  And all of that stuff is -- not only is it not 404(b), but it directly contravenes that questioning.  So if the defendant wants to ask that question, we're absolutely fine with it.  But we'll notify the Court that we intend to elicit the very testimony that we noticed up in the 404(b) motion.

THE COURT:  Okay.  I'm trying to remember now the 404(b) litigation.  I don't remember Teodoro or anything specific.  What does that concern?

MR. BROWNE:  Teodoro was apparently a worker of the defendant's.  And as Mr. Plata just indicated, that they got into some kind of argument that ended up with this defendant running over Teodoro with his vehicle.  And then in another occasion -- and this was again noticed up in the 404(b) -- Mr. Plata told the FBI that the defendant always carried a weapon with him in the vehicle, which he was not allowed to drive because his driver's license was suspended.  And when Mr. Plata used to drive for him, he told Mr. Routh, "If the police find you with that, they're going to shoot you" to which Mr. Routh responded, "I will shoot them first."

THE COURT:  Okay.  All right.  So let me ask you, Mr. Routh, do you still wish to probe your nonviolence or peacefulness with this witness?

MR. ROUTH:  I mean, he has known me for 25 years.  I

mean, I don't know --

THE COURT:  Okay.  I will be maybe more clear.

Do you want to ask him whether he thinks you are not a violent person?

MR. ROUTH:  We can skip that question.

THE COURT:  Do you want to ask him anything about your overall character or reputation for peacefulness, nonviolence, or gentleness?

MR. ROUTH:  Well, I mean, he has known --

THE COURT:  Just say yes or no.

MR. ROUTH:  Yes, yes, I would like to, yes.

THE COURT:  Okay.  And you are -- you're comfortable doing that, even though it might open the door to the -- to the allegations and the subject matter Mr. Browne just referenced about a fight and running over someone, et cetera?

MR. ROUTH:  Sure, sure, sure, sure.

THE COURT:  Okay.  Well, then I'm going to overrule the objection in part.  I do think the form was improper by referencing the terms "pertinent trait."  But you can ask a general question concerning your general reputation or, as you see it, of nonviolence or peacefulness.  You can't, however, Mr. Routh, inquire about any specific instances that you think reflect your alleged nonviolence.  So it's just a general topical question whether this witness thinks you are not violent.  Do you understand that?

MR. ROUTH:  Not fully.  So you're saying we can't reference incidents?

THE COURT:  Correct.  And that's pursuant to the Court's order.  And this is all coming from Rule 405 of the Federal Rules of Evidence, which does allow questioning about general-reputations-type testimony, so long as its relevant.  And I think this would be sufficiently in the relevant category as far as nonviolence.  But what you can't do is introduce specific instances to show what you think is not violent.

MR. ROUTH:  So there is nothing -- so, I mean, just substantiate?  So we are just asking them, just randomly, "Am I a nice guy?"  And that's it?

THE COURT:  Essentially, that's the boundaries of Rule 405.  If you need to refresh yourself, sir, on the Court's ruling which tracks that rule of evidence, I direct you to the Court's order at Docket Entry 252, which specifically goes over Rule 404(a), what it allows, and then segues into Rule 405.  Do you need more time to review that order again?

MR. ROUTH:  So -- but on the counterpoint -- so the prosecution can cite specific incidences, but I cannot?

THE COURT:  As rebuttal, yes, once you open the door to this alleged trait of nonviolence.

MR. ROUTH:  It all sounds futile to me.  So, you know, we can just abort all.

THE COURT:  All right.  So what I'm hearing now is you

do not wish to ask this witness about your alleged nonviolence; is that correct?

MR. ROUTH:  You say we can't speak of specific situations.  So, I mean, we've got 25 years of history and you say it means nothing.  So...

THE COURT:  Well, it's not what I'm saying, sir.  This is the Federal Rules of Evidence which you're well aware you have to follow, along with the Court's orders, which go through these rules in detail.

Again, this is all laid out in Docket Entry 252.  So I think that is sufficient to resolve this matter.

Are you going to have any additional questions for Mr. Plata?

MR. ROUTH:  Sure.  Can I just ask him one or two general questions?

THE COURT:  Yes.  Okay.  Let's call in the witness and the jury, please.

(The jury entered the courtroom at 4:01 p.m.)

THE COURT:  Please have a seat.  Thank you.  Sir, you remain under oath.

Mr. Routh, please continue your cross-examination.

BY MR. ROUTH:

Q.   Sorry about that.

Sammy, were you aware that I had inherited a beach lot that sold for 70,000 and put that money in the business?

A.   I did not know.

Q.   Did you attend Epifanio's funeral?

     THE INTERPRETER:   May I have the question again?

BY MR. ROUTH:

Q.   Did he attend the funeral of my worker that passed away?

     MR. BROWNE:   Objection.   Outside the scope of direct.
Prior order, specific instance 404(a), 405.

     THE COURT:   Overruled.

     THE WITNESS:   Yes.

BY MR. ROUTH:

Q.   Yes, you did?

A.   Yes.

Q.   Okay.   Okay.   Do you know Epifanio's wife Martina?   Is
there any possible way he could find her for me?

     THE INTERPRETER:   This is the interpreter.   May I have
the question again?

BY MR. ROUTH:

Q.   Can he locate Epifanio's wife so I can send support?

A.   You mean, if I can look for her?

Q.   Yes.   Yes.

A.   Yes.

     THE COURT:   Next question.

     MR. ROUTH:   Thank you.

BY MR. ROUTH:

Q.   Have you ever known me to drink a beer or smoke a cigarette

or do drugs or drink anything at all in 30 years?

A.   Nothing, as far as I know, no.

Q.   Did I let the homeless live in the -- in the shed at the office and live in my room and live in the front office?

MR. BROWNE:  Objection.  404(a), 405.  Prior order, specific instance.

THE COURT:  Sustained.

Next topic, Mr. Routh.

BY MR. ROUTH:

Q.   Did I not swallow all the problems --

MR. BROWNE:  Objection.  Same objection.  404(a), 405. Prior ruling, specific instance.

MR. ROUTH:  Okay.

THE COURT:  Sustained.

Do you have any other questions, sir, that wouldn't exceed Rule 404 or 405, as reflected in the Court's order at Docket Entry 252?

MR. ROUTH:  Can I ask if I drove the worst vehicles that the company owned?  Is that a permissible question?

THE COURT:  Okay.  You can ask that question, sir.

The question, Mr. Plata, is:  Did Mr. Routh drive the worst vehicles that the company owned?

THE WITNESS:  Yes.

MR. ROUTH:  Can I ask when he ran the dump truck into a carport?

THE COURT:  All right.

MR. ROUTH:  No?

THE COURT:  Ladies and gentlemen, there are rules of evidence.  The Court has ruled consistent with those requirements, specifically, 404 and 405, that these sorts of questions are inadmissible.

And so, for those reasons, no, Mr. Routh.  If you have any questions that don't violate the Court's order or the Federal Rules of Evidence, then you're welcome to ask them, otherwise you should conclude your cross-examination.

MR. ROUTH:  All right.  I guess we're done.

All right.  Thank you so much.  I'm sorry about your dad passing away.

THE WITNESS:  All right.  Thank you.

THE COURT:  Any redirect?

MR. BROWNE:  Briefly, Your Honor.

REDIRECT EXAMINATION

BY MR. BROWNE:

Q.  Mr. Plata, the defendant asked you about an incident with a gentleman named Teodoro.  Do you remember that question?

A.  Yes.

Q.  And you said something about the fact that after that incident, Teodoro got knocked over?

THE INTERPRETER:  I'm sorry.  Counsel, may I have the question again?

BY MR. BROWNE:

Q.   You said that during that prior incident with this gentleman, Teodoro, that he was knocked over somehow?

A.   He asked me if there had been a problem with payroll when I was in charge of the office, and Mr. Teodoro was complaining about the previous payroll, and I knew that he owed him, so he went to -- to complain about it.

Q.   And what happened when Mr. Teodoro went to complain to the defendant about the money that the defendant owed him?

A.   He had his car.  Mr. Teodoro opened his door and he stood -- he was standing by the door and he went on reverse, so he pushed him.

Q.   And who was driving the car when Mr. Teodoro got pushed over?

A.   Ryan.

Q.   Is that the defendant?

A.   Yes.

Q.   Was he driving the company car?

A.   Yes.

Q.   Okay.  And did he stop immediately and check on Mr. Teodoro?

A.   (Indicating.)  He left.

Q.   You have to answer verbally.  What did he do instead?

A.   He left.

Q.   Did he go pretty fast?

A.   Yes.

MR. BROWNE:  No further questions.

THE COURT:  Mr. Routh, do you wish to engage in any recross-examination of this witness on that subject?

MR. ROUTH:  No, that's okay.

THE COURT:  Okay.  All right, then.  Thank you, sir. Your testimony has concluded.

Please call your next witness.

MR. BROWNE:  Yes, Your Honor.  The United States calls Lazaro Plata, who will be using the services of the Spanish language interpreters.

THE COURT:  Please stay standing to be sworn in.

COURTROOM DEPUTY:  Please raise your right hand.

Do you solemnly swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS:  That's right.

COURTROOM DEPUTY:  Please be seated.

State your first and last name, and please spell it for the record.

THE WITNESS:  Lazaro Plata Patricio.  Do you want me to spell it?

MR. BROWNE:  Yes, please.

THE WITNESS:  L-A-Z-A-R-O, P-L-A-T-A.

MR. BROWNE:  May I inquire, Your Honor?

THE COURT:  Yes.

LAZARO PLATA,

having been sworn, testified as follows:

DIRECT EXAMINATION

BY MR. BROWNE:

Q.   Good afternoon, Mr. Plata.

A.   Good afternoon.

Q.   Where do you live, sir?

A.   I live in Greensboro, North Carolina.

Q.   And how long have you lived in Greensboro?

A.   About over 34 years.

Q.   Have you raised your family there?

A.   That's right.

Q.   And what do you do for a living, sir?

A.   I work in roofing.

Q.   How long have you done that?

A.   It's about 31 years.

Q.   So you've been roofing for about as long as you have been living in North Carolina?

A.   That's right.

Q.   Were you born in North Carolina, sir?

A.   No.

Q.   Where were you born?

A.   Hidalgo, Mexico.

Q.   And when did you enter the United States?

A.    I entered in '89.

Q.    And when you decided to enter the United States, did you have a document or piece of paper that allowed you to come to this country legally?

A.    No.

Q.    How did you come into this country?

A.    Illegally.

Q.    Mr. Plata, at some point did you meet the defendant, Ryan Wesley Routh?

A.    That's right.

Q.    When did you meet him?

A.    Since '92, '93, around that time.

Q.    Would you consider him a friend?

A.    I used to consider -- consider him a friend.

Q.    Something changed?

A.    Since this happened.

Q.    Okay.  I want to talk about "this" happening.  But first, again, describe the nature of your relationship with the defendant.

A.    He was a good friend.

Q.    And how did you meet?

A.    My uncles invited me to the job.

Q.    And that's where you met him, at the job?

A.    Uh-huh.  That's right.

Q.    Were you coworkers?

A.    With my uncles, yes.

Q.    Okay.  At some point did the defendant actually become your boss?

A.    That's right.

Q.    How long -- for how long was he your boss?

A.    During about 12 or 13 years.

Q.    And do you have other members of your family who have worked for the defendant?

A.    That's right.

Q.    Okay.  Not including yourself, Mr. Plata, how many members of your family have worked for the defendant over the years?

A.    About 14 or 15 persons.

Q.    All in your family?

A.    My cousins, yes, that's right.

Q.    Let's talk about just your brothers.  How many brothers do you have who have worked in the roofing business for the defendant?

A.    Five.

Q.    Can you name your brothers who have worked for the defendant, just their first names.

A.    Miguel, Samuel, Ramiro, Hector.

Q.    Is he the fifth?

A.    Yes.

Q.    Okay.  All right.  And they all worked for the defendant in the roofing business; is that right?

A.   That's right.

Q.   Okay.  You indicated that you used to be friends with the defendant but that something changed.

A.   That's right.

Q.   When did your relationship with the defendant change?

A.   Last year, in April.

Q.   I'm going to show you, Mr. Plata, what's been admitted into evidence as Government's Exhibit 513.

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

MR. BROWNE:  Ms. Luce, could we go to the call details, please, on, I believe, page 3.  Thank you.

And could you please zoom in.

Thank you very much.

BY MR. BROWNE:

Q.   Mr. Plata, can you see the image in front of you?

A.   That's right.

Q.   Okay.  I'm pointing at row number 5 (indicating) of Government's Exhibit 513.  Do you see where I have made a line in blue?

A.   Yes.

Q.   Can you read the number beginning with 336 that appears in row 5 of Government's Exhibit 513.

A.   All right.

Q.   Please read it out loud, sir.

A.    336-587-3997.

Q.    Have you seen that phone number before?

A.    It's my number.

Q.    Okay.  And according to Government's Exhibit 513, when was there a call placed to your number, sir?

A.    When?  When what?  What was the question?

Q.    When was that call placed to your number, sir, according to what's in front of you?  Can you see the date and the time?

A.    Yes.  April 6, 2024.

Q.    Okay.  And now I want to turn your attention to row number 3, Mr. Plata.  Can you see the phone number that I have circled there in blue (indicating)?

A.    It's my number.

Q.    Okay.  And, again, according to Government's Exhibit 513 (indicating), do you see what date and time that is?

A.    It's 4/6/2024.

Q.    Mr. Plata, do you remember the defendant calling you on April 6th of last year in the afternoon?

A.    That's right.

Q.    And did you guys talk for about 1 minute and 28 seconds during that phone call?

A.    Yes.

Q.    All right.

        MR. BROWNE:  We can take that down, Ms. Luce.

BY MR. BROWNE:

Q.   Mr. Plata, what happened after the defendant called you on April 6th in the afternoon?

A.   He came to my house.

Q.   I want to show you what's been marked but not admitted as Government's Exhibit 538.

Your Honor, permission to publish to the witness monitor only?

THE COURT:  Granted.

MR. BROWNE:  Madam Courtroom Deputy, this is a video. If it would be possible if the volume is not already on -- actually, before we do that, let me publish it without the video -- without the audio, please.

Ms. Luce, can you make sure the audio is off.  And can you please play Government's Exhibit 538 for the witness.

(A video and/or audio was played.)

MR. BROWNE:  Can you pause it.

BY MR. BROWNE:

Q.   Mr. Plata, do you recognize Government's Exhibit 538?

A.   That's right.

Q.   And what is it?

A.   It's a video.

Q.   Who recorded this video?

A.   I did.

Q.   Okay.

MR. BROWNE:  Your Honor, at this time I would ask that

Government's Exhibit 538 be admitted into evidence?

THE COURT:  Any objection, Mr. Routh?

MR. ROUTH:  No objection.

THE COURT:  538 admitted without objection.

(Government Exhibit 538 was received in evidence.)

MR. BROWNE:  Ms. Luce, can we start from the beginning, please.  And, Madam Courtroom Deputy, I would ask that we publish the video to the jury, Government's Exhibit 538.

Can everybody see the image on the screen?

JURORS:  (Head nods.)

MR. BROWNE:  Ms. Luce, please go ahead and play Government's Exhibit 538.

(A video and/or audio was played.)

MR. BROWNE:  Pause that, please, Ms. Luce.

BY MR. BROWNE:

Q.   Mr. Plata, who is this in the video?

A.   It's Ryan.

Q.   Okay.  And why did you take a video of the defendant on this day?

A.   I just did it.  I thought about doing it.  He lived with some -- several Mexicans in a house.

Q.   Okay.  But why did that fact make you want to take a video of the defendant when he came to your house?

A.   I just did it.  I mean...

Q.   Did the defendant know you were videoing him when you did

so?

A.   No.

Q.   So you did it without his knowledge?

A.   Without his knowledge, that's right.

MR. BROWNE:  Ms. Luce, can you zoom in on the shoe in the video, please.

Okay.  Can we zoom back out.  And can we play the rest of the video, please.

(A video and/or audio was played.)

BY MR. BROWNE:

Q.   Okay.  And, Mr. Plata, what are we looking at here?

A.   I see a car with a kayak.

Q.   Whose car is that?

A.   It's Ryan's, Mr. Ryan's.

Q.   And whose kayak is that?

A.   His.

Q.   Okay.  I want to show you now what's been admitted into evidence as Government's Exhibit 533.

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

BY MR. BROWNE:

Q.   Mr. Plata, do you recognize the image on the right side of your screen?

A.   That's the kayak.

Q.   Whose kayak is it?

A.   Mr. Ryan's.

Q.   And where is that photo taken?

A.   It was taken after he left it there.

Q.   And, just to be clear, who left the kayak there?

A.   He left the kayak without my permission, without my authorization.

Q.   And where did he leave the kayak?

A.   At the back of the house next to a storage.

Q.   Back of whose house, sir?

A.   Mine.

Q.   Okay.  And who lives there at the house with you?

A.   My children and the mother of my children.

     MR. BROWNE:  And if we could go back to the video, Ms. Luce.  Back to the video, ma'am.

     (A video and/or audio was played.)

     MR. BROWNE:  You can stop it.

BY MR. BROWNE:

Q.   And, Mr. Plata, is that your front yard in the video?

A.   Uh-huh, that's right.

Q.   And that's your front porch or front deck?

A.   Yes, yes.

Q.   Mr. Plata, is a kayak the only thing that the defendant left at your house last April?

A.   No.

Q.   What else did he leave there?

A.   He left a box.

MR. BROWNE:  Your Honor, may I approach with Government's Exhibit 500?

THE COURT:  Yes.

MR. BROWNE:  I'm not going to leave it on the witness stand, Your Honor.  I'm just going to show it to him.

THE COURT:  Okay.

BY MR. BROWNE:

Q.   (Showing item.)

A.   That's right.  That's it.

Q.   Mr. Plata, did you open the box right away when he left it at your house?

A.   No.

Q.   Did you ask him what was in the box when he left it at your house?

A.   Well, I did ask him, and he said it was nothing important, no important things.

Q.   Did he tell you anything about what was in that box?

A.   He said he had some books, but nothing important.

Q.   He didn't mention anything about bullets?

A.   No.

Q.   Or cell phones?

A.   No.

Q.   Or documents?

A.   No.

Q.   Or pipes?

A.   No.

Q.   At some point, did you eventually decide to open up the box that the defendant had left at your house?

A.   Well, it was in about three days when I knew well from the television what had happened.

Q.   I have to clarify with you.  So you opened it three days after, on April 9th?

A.   Well, it was, yes, after.  Yes.

Q.   But not three days after he left it at your house?

A.   Well, yes.  He left it on a Sunday.

Q.   Okay.  And then, when did you decide to open the box?

A.   It was on a Wednesday.  I spoke or called my brother.

Q.   Right.  But what made you decide to open it?

A.   Well, because of what was happening on the television.

MR.  BROWNE:  Your Honor, I'm going to ask this question not to elicit what the witness heard, but specifically to explain why he took a particular action.

BY MR.  BROWNE:

Q.   Mr. Plata, what did you see on the television that prompted you to call your brother to help you open the box?

THE COURT:  Ladies and gentlemen, I'm not going to allow that question.

Next question.

MR.  BROWNE:  Okay.

BY MR. BROWNE:

Q.   What did -- did you see something on the news about the defendant that made you want to open the box?

A.   So --

THE COURT:  Same problem.  You're eliciting hearsay. And you should come up with a new question or conclude your examination.

BY MR. BROWNE:

Q.   Okay.  Mr. Plata, what happened when you asked your brother for help to open the box?

A.   So -- so he came to the house, and also my children; they came to the house and we opened the box.

Q.   Okay.  And describe to the jury, in your own words, what you found in the box.

A.   We found letters, cell phone, a pipe with a bullet, wires, and other things.

Q.   I'm going to show you now what's been admitted as Government's Exhibit 100.

MR. BROWNE:  Permission to publish, Your Honor?

THE COURT:  Granted.

MR. BROWNE:  May I use the ELMO, please?

BY MR. BROWNE:

Q.   Mr. Plata, I'm showing you on the screen what's been admitted as Government's Exhibit 100.  Do you read a little bit of English, sir?

A.   Very little.

Q.   And if there are any words on this document that you remember reading when -- after you opened the box with your brother?

A.   Well, there are three phrases.  I remember the "Dear World," and something else that caught my attention was the "Donald Trump," the "$150,000," and in other words -- and, you know, that's what caught my attention.

Q.   And did you see those three phrases on a piece of paper that was inside of that box?

A.   Yes.

Q.   Mr. Plata, how long was that box in your backyard?

A.   Well, I mean, from April until September.

Q.   And is September -- is that when you opened the box with your brother?

A.   Yes.

Q.   I have one more exhibit to show you, Mr. Plata.

A.   Okay.

        MR. BROWNE:  If I could show the witness only, Your Honor, Government's Exhibit 106, which has been marked but not yet admitted?

        THE COURT:  Is this 106?

        MR. BROWNE:  Yes, Your Honor.

        THE COURT:  Mr. Browne, can you check your records.  I show that as admitted.

MR. BROWNE:  My apologies, Your Honor.  I am going off an old list.

Permission to publish Government's 106?

THE COURT:  Granted.

MR. BROWNE:  Can we go to the second page of this, Ms. Luce, and the third page.  All right.  Ms. Luce, can you zoom in on the participants field.

BY MR. BROWNE:

Q.   Mr. Plata, can you see the telephone number that I'm circling here in blue?

A.   Yes.

Q.   And how do you recognize that number?

A.   That is my number.

MR. BROWNE:  And if we could zoom in on the green bubble, please, in Government's Exhibit 106.

BY MR. BROWNE:

Q.   Do you see there where it says "to" and your phone number, Mr. Plata?

A.   That's right.

Q.   Did the defendant send this text message to you on August 30th of 2024?

A.   Yes.  I did receive it, but I didn't pay attention to it.

Q.   Why did you not pay attention to this text message that says "In case I die in the next 10 or 20 years"?

A.   Well, I -- I just didn't pay any attention to it.  It just

went past me.  I didn't pay attention to it.

Q.   Okay.

MR.  BROWNE:  Ms. Luce, can we go to the first page of this exhibit.  Can we zoom in on the two MSISDNs, Ms. Luce.

BY MR.  BROWNE:

Q.   Mr. Plata, do you recognize either of those two phone numbers?

A.   Well, I really didn't pay attention to them because I would receive different text messages from different numbers.

Q.   And when you say you received different text messages from different numbers, were they all sent by the same person?

A.   Yes.

Q.   And who was that person?

A.   Ryan.

MR.  BROWNE:  Just a moment, Your Honor?

BY MR.  BROWNE:

Q.   One last question, sir.  You mentioned that your brother, Ramiro, was one of your brothers that worked for the defendant?

A.   That's right.

Q.   Did your brother, Ramiro, ever tell you that the defendant was planning to travel to Mexico to see him on September the 16th?

THE COURT:  One moment.  Any objection to that question?

MR.  ROUTH:  No objection.

THE COURT:  What -- that question calls for hearsay.

MR. BROWNE:  It's a yes or no question, Your Honor.

THE COURT:  Yes.  And I'm not sure it's appropriate.  So let's take a quick break to flesh that out.

All rise for the jury.

(The jury exited the courtroom at 4:40 p.m.)

THE COURT:  Please have a seat.

If you can advise the witness that he can exit the courtroom now for discussion by the Court with the parties, and then we will invite him in momentarily.  But he cannot talk about his testimony with anyone.

All right.  Thank you, sir.

Okay.  The question -- you may also leave.  Thank you.  If you wish.

THE INTERPRETER:  The interpreters can leave?

Yes, Your Honor.

THE COURT:  The question was:  "Did your brother, Ramiro, ever tell you that the defendant was planning to travel to Mexico to see him on September the 16th?"

Does this not call for hearsay, Mr. Browne?

MR. BROWNE:  In my view, Your Honor, respectfully, no, because it's just a yes or no question.  The evidence is already in the record.  We've admitted the chat between the defendant and his brother, Ramiro.  I can, of course, withdraw the question, simply ask him where his brother lives if the

Court would be okay with that question.

THE COURT:  That's fine.  But I do think your question does call for hearsay.  It's baked into your question, and it's really no way to escape that.  So -- so the question will be not allowed, but you can ask that other permissible question.

We will take a very brief break and then call the jurors back in.

Is this your last witness of the day, Mr. Browne?

MR. BROWNE:  We have another witness ready to go, Your Honor, so we defer to the Court.

THE COURT:  Who is the other person?

MR. BROWNE:  His name is Randy Walters.  He is an expert witness, a destructive device examiner with the ATF.

THE COURT:  Is this a brief witness or a little bit longer?

MR. BROWNE:  I think probably 45 minutes to an hour.

THE COURT:  Okay.  Brief break until -- no longer -- no later than 4:50, and then we will see where the timing ends up.  Thank you.

(A recess was taken from 4:43 p.m. to 4:52 p.m.)

THE COURT:  Everybody is here.  Let's invite the witness in, please, and get the jurors.  Thank you.  Along with the interpreters.

(The jury entered the courtroom at 4:53 p.m.)

THE COURT: Please have a seat. Sir, you remain under oath. Okay.

The last question won't be permitted due to hearsay reasons. So please continue your examination, Counsel.

BY MR. BROWNE:

Q. Mr. Plata, you previously said that you had a brother named Ramiro; correct?

A. That's right.

Q. And he is one of the four brothers who worked for the defendant; correct?

A. Yes.

Q. And did he work for the defendant in North Carolina?

A. Yes.

Q. Does he still live in North Carolina?

A. No.

Q. Where does he live?

A. He is in Mexico, Hidalgo, Mexico.

Q. When did he go back to Hidalgo, Mexico?

A. In 2012.

Q. And has he ever been back to the United States?

A. No.

MR. BROWNE: Nothing further, Your Honor.

THE COURT: Thank you. Cross-examination?

MR. ROUTH: Yes, Your Honor.

///

CROSS-EXAMINATION

BY MR. ROUTH:

Q.   Hello.

A.   Hello.

Q.   Are you mad at me?

A.   Well, how do you want me to feel?

Q.   I want him to be happy.

A.   That's fine.

Q.   So the box was -- was the box stored at his house for over five months?

A.   That's right.

Q.   So would he agree that since the box and the letter were stored five months prior to September 15th, collecting dust, does he think that it's unrelated?

A.   Me?

Q.   Yes.  What does -- what -- does he think that the box pertains to September 15th?

        MR. BROWNE:  Objection.  Calls for speculation, Your Honor.  Lack of foundation.

        THE COURT:  Overruled.

        Answer the question, sir.

        THE WITNESS:  I don't really understand the question.  I mean, about the box, well, yes, it does have to do with September 15th.

BY MR. ROUTH:

Q.   Okay.  The prosecution suggests that the defendant traveled to Florida in the last week of March, and then -- then I came to his house and put the box at his house.  So does the -- does the box and that trip to Florida seem to coincide?

A.   Is he denying that he left the box?

Q.   No, not denying.  Just wanted to see if it made sense to him that a trip to Florida the week prior and then dropping the box off, if the box and the trip to Florida -- Florida corresponded.

A.   I don't understand the question.  I mean, like coincide in what?

Q.   Well, the items in the box, did they pertain to everything in history prior?

THE COURT:  The question needs to be rephrased.  It's entirely too vague, sir.  Rephrase.

BY MR. ROUTH:

Q.   Could --

MR. SHIPLEY:  Your Honor, I'm sorry to interrupt.  I just see a juror trying to get the Court's attention.

A JUROR:  It's very hard to hear her.

THE INTERPRETER:  Oh, I'm sorry.

THE COURT:  Oh, okay.  Thank you.

THE INTERPRETER:  Sorry.

THE COURT:  Thank you for alerting the Court.

THE INTERPRETER:  I'm sorry.

A JUROR:   It's okay.

THE COURT:   We will improve upon that.

Okay.   Rephrase your question, sir.

BY MR. ROUTH:

Q.   Okay.   The box sat there for five months, so nothing from September 15th was put in the box; correct?

A.   Well, that's right.   I imagine.

Q.   You imagine?   Nobody touched the box for five months; correct?

A.   No, nobody touched it.

Q.   So all of the items in the box were from five months prior?

A.   That's right.

Q.   I didn't fax him a letter and tell him to put it in there from the police car on September 15th?

A.   I mean, well, we opened it because of what was -- we opened it because of what was happening.

Q.   Yes.   So it got lost in translation, but I think you understand that there was no way for me to electronically send a document to the box?

MR. BROWNE:   Objection, Your Honor.   This is argument to the jury.

THE COURT:   Okay.   Let's ask a question, Mr. Routh.

MR. ROUTH:   Okay.

BY MR. ROUTH:

Q.   All right.   Did you attend Epifanio's funeral?

MR. BROWNE:  Objection.  Relevance.

BY MR. ROUTH:

Q.  Okay.  Did I ever go on vacation?

THE COURT:  Hold on.  I have to be able to rule, Mr. Routh.

MR. ROUTH:  Okay.  All right.

THE COURT:  Okay.

MR. BROWNE:  Your Honor --

THE COURT:  Briefly, Mr. Routh, can you indicate what relevance the witness's attendance at a funeral would bear on this case?

MR. ROUTH:  I'm just getting back to asking him if he can find Martina for me so I can build his daughter some houses, so that's where I'm going.

THE COURT:  Okay, then I will sustain the objection on relevance grounds.  In other words, this shouldn't be asked, so let's move on to a different topic.

MR. ROUTH:  Okay.

BY MR. ROUTH:

Q.  Did I ever go on vacation?

A.  I don't understand.  I don't understand your question.

Q.  Did I work all the time?

A.  Before.  Well, before.

Q.  Yeah, I'm not working now.

The -- did -- did you and I and the whole family go out to

eat at Kiosco two years ago just to celebrate us working together?

A.   Well, the three brothers, we all went.  That would have been Gerardo, Hector, and myself.

Q.   Right.  So were you around when we built 15 houses in four days?

MR. BROWNE:  Again, 404(a), 405 --

MR. ROUTH:  Okay.

MR. BROWNE:  -- specific instance, prior order.

THE COURT:  Sustained.

MR. ROUTH:  I guess I can't ask if he helped me build my log cabin?

MR. BROWNE:  Objection.

THE COURT:  The same issue is recurring, Mr. Routh.

MR. ROUTH:  All right.

THE COURT:  I direct you again to the Court's prior order on this subject.  It's Docket Entry --

MR. ROUTH:  All right.

THE COURT:  Hold on one moment.  Just for the record, Docket Entry 252, which goes over these issues in detail in accordance with Rule 404 and 405.

So if you have a relevant question that's within the scope of direct, you may ask it, but you can't exceed those rules of evidence.  We've gone over this before, sir.

MR. ROUTH:  Okay.  Can I ask if I donated time and

energy to everyone that asked for help?  Can I ask that general question?

THE COURT:  Any objection to that question?

MR. BROWNE:  No, Your Honor.

THE COURT:  Okay.  Go ahead, sir.  Please answer this: Did Mr. Routh donate time and energy to everyone that asked for help?

THE WITNESS:  Yes.  Yes.

BY MR. ROUTH:

Q.   Did I not give everyone that walked through the door the opportunity to work, no matter who they were?

A.   Yes.  Yes.

Q.   Did I ever complain about anything?

A.   Of what?  I don't understand.  What is it you want to say?

THE COURT:  Next question.

BY MR. ROUTH:

Q.   So did I just work hard seven days a week?

A.   Yes.

Q.   Did I pay all of the injured workers when they got hurt?

A.   Well, yes.

Q.   Did I go and install some roofs for you --

MR. BROWNE:  Objection, Your Honor.

THE COURT:  Okay.  That will conclude your cross-examination, sir.

MR. ROUTH:  Okay.

THE COURT:  Thank you.

MR. ROUTH:  All right.

THE COURT:  Ladies and gentlemen, the Court's issued various rulings in accordance with what I have indicated.  You shouldn't draw any inferences or conclusions based on the Court's rulings, and you should consider only the evidence that is permitted in the courtroom.

With that, any redirect?

MR. BROWNE:  Yes, Your Honor.

REDIRECT EXAMINATION

BY MR. BROWNE:

Q.  Mr. Plata, can you get a little bit closer to the microphone.  Can you lean forward.

A.  (Complies.)

Q.  Do you remember the defendant asked you if he always was welcoming to people who wanted to work at his business?

A.  Yes.

Q.  Did the defendant pay his debts to the people who worked for him?

A.  Debts?  No.

Q.  He owed a lot of people a lot of money, didn't he?

A.  Supposedly.  He paid me what he had to pay me, so I can't say anything, but I heard he did.

Q.  You heard what?  That he owed a lot of people a lot of money?

A.   That's right.

Q.   And the people who he owed money to were people who came to this country and ended up working for him?

MR. ROUTH:  Is this not hearsay?

THE COURT:  All right.  There is a hearsay objection.

MR. BROWNE:  Your Honor, this is character evidence elicited by the defendant about how he purportedly employed all of these people, which shouldn't have been asked in the first place, but, nevertheless, I'm entitled to ask whether he actually paid those people that he had working for him.

THE COURT:  All right.  I will allow the question because it does not solicit hearsay and it is a proper response to the questions elicited by the defendant in his cross-examination.  So --

MR. BROWNE:  May I re-ask the question, Your Honor?

THE COURT:  You can, and then I would like to move on and wrap this up.

BY MR. BROWNE:

Q.   The people who he did not pay, who he owed money to, these were people who came to this country to work for the defendant; is that true?

A.   That's right.

MR. BROWNE:  Thank you, Your Honor.  Nothing further.

THE COURT:  Okay.  Anything further, Mr. Routh, for this witness?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  Then, thank you, sir.  Your testimony has concluded.

THE WITNESS:  Thank you.

THE COURT:  And thank you to the interpreters for their help today.

THE INTERPRETER:  You are welcome.

THE COURT:  Okay.  Ladies and gentlemen, the next witness, I'm told, is not a short witness, or short enough to finish in the time remaining for today.  So we're going to break today, it's 5:05, and begin anew, as we normally do, tomorrow at 9:00 a.m.

Again, please make sure that you do not engage in any discussions regarding this case in any way.  That includes, of course, not discussing this case with anyone on the jury.  And certainly no investigation, no posting, no research about this case.  And no talking with anyone related to this case, and that would include the parties, witnesses, and lawyers in the case.

So with all of those admonitions, I wish you a pleasant evening.  Thank you for your continued patience.  We will see you tomorrow morning.

All rise for the jury.

(The jury exited the courtroom at 5:09 p.m.)

THE COURT:  Okay.  You may all be seated.  Thank you.

Mr. Browne or Ms. Medetis-Long or Mr. Shipley, can you please update the Court as far as witnesses for tomorrow.  I know we didn't get through all of them today.

MS. MEDETIS-LONG:  Certainly, Your Honor.  We will start with Randy Walters tomorrow and continue with Special Agent Nicholas Schnelle; then Special Agent Gregory Turner; and then Detective Kenny Smith, Special Agent Brenden Clements, Special Agent Christian Hlinka, H-L-I-N-K-A.  And if time permits, we would begin with Special Agent Kimberly McGreevy.

THE COURT:  Okay.  All right.  Any anticipated evidentiary issues we can handle or flag now, Ms. Medetis-Long or Mr. Browne?

MS. MEDETIS-LONG:  Nothing for tomorrow, Your Honor.

THE COURT:  Okay.  Anything from the defense?

MR. ROUTH:  No, Your Honor.

THE COURT:  Okay.  So tomorrow, as I previewed, we will be doing our charge conference.  I will very likely be releasing the jurors around 4:30 tomorrow to allow for that charge conference.

And I think that concludes my remarks for this evening.  So have a good evening.

Ms. Militello will be here tomorrow; is that correct, Ms. Sihvola?

MS. SIHVOLA:  That's my understanding, Your Honor.

THE COURT:  Okay.  Thank you.

Have a good night.  We will see you all tomorrow.

(These proceedings concluded at 5:11 p.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate

transcription of the proceedings in the above-entitled matter.


DATE:   09-17-2025          /s/Laura Melton
                            LAURA E. MELTON, RMR, CRR, FPR
                            Official Court Reporter
                            United States District Court
                            Southern District of Florida
                            Fort Pierce, Florida

## $

**$100** [1]_ - 85:23
**$15** [1]_ - 44:6
**$150,000** [2]_ - 156:8_, 217:7
**$250,000** [1]_ - 68:6
**$350** [1]_ - 85:16
**$60** [3]_ - 43:8_, 43:9_, 44:6
**$80.77** [1]_ - 44:4

## '

**'24** [1]_ - 62:1
**'89** [1]_ - 206:1
**'90** [1]_ - 184:10
**'90s** [2]_ - 70:22_, 184:10
**'92** [1]_ - 206:12
**'93** [1]_ - 206:12

## 1

**1** [5]_ - 27:25_, 28:1_, 152:22_, 156:21_, 209:20
**1,000** [1]_ - 156:15
**10** [5] - 3:15_, 16:22_, 58:9_, 68:6_, 218:24
**100** [18]_ - 147:23_, 148:3_, 148:13_, 149:12_, 154:17_, 159:6_, 160:20_, 161:3_, 161:8_, 161:11_, 161:14_, 161:19_, 161:21_, 161:25_, 190:3_, 190:10_, 216:18_, 216:24
**100............................ ..................** [1] - 3:3
**106** [7]_ - 150:4_, 155:8_, 155:11_, 217:20_, 217:22_, 218:3_, 218:15
**109** [1]_ - 155:20
**10:00** [6]_ - 34:12_, 34:13_, 34:14
**10:20** [1]_ - 62:17
**10:26** [1]_ - 63:4
**10:28** [1]_ - 65:10
**11** [4]_ - 16:11_, 16:15_, 17:13_, 152:23
**1117** [3]_ - 49:22_, 50:4_, 50:9

**113** [1] - 3:11
**115** [1] - 3:11
**116** [2]_ - 74:3_, 75:22
**118** [1] - 3:4
**119** [1] - 3:7
**11:00** [5]_ - 34:12_, 34:13_, 34:14_, 34:15
**11:33** [1]_ - 121:19
**11:37** [1]_ - 124:19
**11:55** [1]_ - 96:25
**12** [9]_ - 8:10_, 149:14_, 150:19_, 151:24_, 151:25_, 156:11_, 156:19_, 177:22_, 207:6
**12-page** [2]_ - 152:19_, 156:1
**128** [1] - 3:10
**12th** [2]_ - 150:20_, 152:13
**13** [1]_ - 207:6
**132** [1] - 3:10
**1341** [1]_ - 155:20
**137** [1] - 3:6
**13:10** [1]_ - 54:1
**14** [1]_ - 207:12
**140** [1] - 3:5
**141** [1] - 3:6
**145** [1] - 3:7
**147** [1] - 3:4
**15** [6]_ - 16:22_, 62:10_, 97:9_, 97:14_, 207:12_, 227:5
**150,000** [2]_ - 190:18_, 190:23
**1500** [2]_ - 12:11_, 12:23
**15th** [8]_ - 26:22_, 27:21_, 29:6_, 223:13_, 223:17_, 223:24_, 225:6_, 225:14
**161** [1] - 3:3
**163** [1] - 3:5
**165** [1] - 3:13
**167** [1] - 3:9
**16th** [3]_ - 184:22_, 219:22_, 220:19
**17** [6]_ - 16:24_, 19:14_, 22:1_, 23:6_, 54:22_, 111:14
**173** [1] - 3:8
**177** [1] - 3:8
**178** [1] - 3:9
**18** [2]_ - 16:13_, 20:14

**180** [1]_ - 114:9
**187** [1] - 3:12
**189** [1] - 3:13
**18th** [4]_ - 112:1_, 113:17_, 115:9_, 117:1
**19** [2] - 3:14_, 183:15
**1:00** [4]_ - 74:23_, 75:14_, 121:14_, 124:17
**1:05** [2]_ - 124:19_, 125:1
**1:45** [1]_ - 148:17
**1:55** [1]_ - 154:13

## 2

**2** [9]_ - 28:1_, 28:24_, 92:1_, 92:24_, 96:19_, 99:2_, 99:15_, 179:2_, 179:6
**20** [6] - 3:14_, 16:19_, 26:19_, 58:9_, 103:23_, 218:24
**2000s** [1]_ - 70:23
**2012** [1]_ - 222:19
**2017** [1]_ - 8:4
**2020** [2]_ - 8:4_, 8:5
**2022** [1]_ - 171:19
**2024** [24]_ - 8:17_, 11:10_, 12:11_, 12:23_, 16:24_, 19:14_, 22:1_, 23:6_, 33:8_, 33:13_, 34:8_, 45:5_, 47:15_, 50:25_, 97:9_, 97:14_, 112:1_, 144:17_, 171:19_, 179:25_, 184:20_, 190:16_, 209:9_, 218:21
**2106** [1]_ - 138:3
**211** [1] - 3:12
**24-cr-80116-Cannon** [1]_ - 4:5
**25** [8]_ - 62:10_, 62:25_, 103:23_, 105:8_, 108:8_, 183:8_, 196:25_, 199:4
**25-minute** [1]_ - 62:17
**252** [4]_ - 198:16_, 199:10_, 201:17_, 227:20
**25th** [1]_ - 33:9
**27** [2]_ - 8:21_, 16:25
**271** [1]_ - 4:22
**274** [1]_ - 154:9
**27403-2129** [1]_ - 138:4
**27407** [1]_ - 48:22
**27th** [2]_ - 83:12_, 83:16

**28** [1]_ - 209:20
**29** [1]_ - 103:23
**29th** [1]_ - 179:25
**2:00** [1]_ - 154:3
**2:05** [1]_ - 154:3
**2:34** [1]_ - 154:13
**2:42** [1]_ - 160:12
**2nd** [3]_ - 83:18_, 83:19_, 83:22

## 3

**3** [2]_ - 208:12_, 209:11
**30** [4]_ - 18:11_, 104:24_, 151:5_, 201:1
**30-minute** [1]_ - 56:10
**30-round** [1]_ - 86:23
**300** [2]_ - 78:13_, 107:17
**30th** [1]_ - 218:21
**31** [1]_ - 205:17
**334A** [5]_ - 39:1_, 39:9_, 40:10_, 44:12_, 49:22
**334B** [2]_ - 45:17_, 60:20
**336** [1]_ - 208:22
**336-299-7329** [1]_ - 32:24
**336-517-8873** [1]_ - 73:15
**336-587-3997** [1]_ - 209:1
**34** [1]_ - 205:11
**352A** [2]_ - 52:3_, 52:12
**3:00** [4]_ - 12:11_, 12:23_, 34:16_, 74:24
**3:26** [1]_ - 45:5
**3:42** [1]_ - 194:11
**3:43** [1]_ - 194:21
**3:45** [2]_ - 180:23_, 194:16
**3:54** [1]_ - 194:21

## 4

**4** [3]_ - 26:18_, 47:15_, 52:12
**4-minute** [1]_ - 52:5
**4/6/2024** [1]_ - 209:16
**40** [1]_ - 151:5
**404** [3]_ - 201:16_, 202:5_, 227:21

**404(a** [5]_ - 198:17_, 200:7_, 201:5_, 201:11_, 227:7

**404(b** [5]_ - 196:1_, 196:3_, 196:7_, 196:9_, 196:15

**405** [10]_ - 198:4_, 198:14_, 198:17_, 200:7_, 201:5_, 201:11_, 201:16_, 202:5_, 227:7_, 227:21

**4405** [3]_ - 33:3_, 47:2_, 48:21

**45** [2]_ - 124:5_, 221:17

**49** [1]_ - 26:24

**4:01** [1]_ - 199:18

**4:30** [1]_ - 232:19

**4:36** [2]_ - 98:17_, 98:18

**4:40** [1]_ - 220:6

**4:43** [1]_ - 221:21

**4:50** [1]_ - 221:19

**4:52** [1]_ - 221:21

**4:53** [1]_ - 221:25

**4th** [2]_ - 34:8_, 45:5

*5*

**5** [4]_ - 7:25_, 27:11_, 208:18_, 208:23

**50** [8]_ - 27:21_, 96:9_, 96:23_, 97:1_, 97:4_, 97:6_, 132:25_, 151:5

**500** [31]_ - 117:8_, 117:14_, 117:22_, 118:9_, 118:12, 118:14_, 118:22_, 118:25_, 119:2_, 119:11_, 120:3_, 122:18_, 122:23_, 122:25_, 123:2_, 123:7_, 123:14_, 134:7_, 135:5_, 135:13_, 135:25_, 136:11_, 139:22_, 141:4_, 145:1_, 146:2_, 164:18_, 185:18_, 186:15_, 187:9_, 214:3

**500**............................ [1] - 3:4

**501** [18]_ - 3:4_, 146:12_, 146:23_, 147:4, 147:9_, 147:13_, 147:15_, 171:21_, 172:12_, 172:25_, 173:14_, 174:18_, 175:1_, 175:18_, 177:13_, 177:24_, 179:24

**502** [2]_ - 146:12_, 147:15

**503** [2]_ - 146:12_, 147:16

**504** [6]_ - 146:12_, 146:23_, 147:4, 147:9_, 147:14_, 147:17

**504**............................. ......... [1] - 3:4

**505** [6]_ - 3:5_, 123:8_, 162:14_, 162:20_, 163:1, 163:6

**505A** [8]_ - 3:5_, 123:8_, 162:14_, 162:21_, 163:1, 163:6_, 163:15_, 163:20

**505B** [3]_ - 162:14_, 163:22_, 164:1

**505C** [2]_ - 162:15_, 164:6

**505D** [4]_ - 123:8_, 162:15, 163:6_, 164:10

**505D**......................... .... [1] - 3:5

**506** [6]_ - 123:9_, 139:22_, 140:1, 140:7, 140:12_, 140:18

**506**............................ ...................... [1] - 3:5

**507** [6]_ - 3:6_, 123:9_, 141:4_, 141:16, 141:20_, 144:22

**507A** [6]_ - 3:6_, 123:9_, 141:4_, 141:16, 141:20_, 142:3

**507B** [3]_ - 141:4_, 143:5_, 143:14

**507C** [2]_ - 141:5_, 143:15

**507D** [5]_ - 123:10_, 141:5_, 143:19_, 144:8_, 144:14

**508** [7]_ - 3:6_, 123:10_, 136:10_, 136:11_, 137:1, 137:7_, 139:16

**508A** [11]_ - 3:6_, 123:11_, 136:13_, 137:1, 137:7_, 137:17_, 137:20_, 137:22_, 138:12_, 139:2_, 139:14

**508B** [6]_ - 3:6_, 136:13_, 137:1, 137:7_, 138:12_, 138:15

**508C** [6]_ - 123:11_, 136:13_, 137:1, 137:7_, 138:12_, 138:19

**508C**......................... . [1] - 3:6

**509** [9]_ - 3:7_, 123:11_, 144:25_, 145:3_, 145:6_, 145:11_, 145:16_, 145:18, 145:22

**509A** [7]_ - 3:7_, 123:12_, 144:25_, 145:11_, 145:15_, 145:18, 145:22

**509B** [6]_ - 3:7_, 123:12_, 144:25_, 145:12_, 145:18, 145:22

**510** [8]_ - 123:21_, 145:1_, 145:3_, 145:6_, 145:11_, 145:15_, 145:18, 145:22

**510**............................. [1] - 3:7

**511** [20]_ - 117:8_, 117:14_, 118:16_, 119:14_, 119:19_, 119:21_, 119:23_, 119:24_, 123:3_, 123:21_, 134:8_, 135:12_, 135:15_, 135:24_, 139:19_, 145:1_, 145:3_, 145:4_, 145:11_, 145:12

**511**............................. ...................... [1] - 3:7

**512** [9]_ - 173:4_, 173:10_, 173:17_, 173:22_, 174:17_, 175:10_, 175:13_, 175:25_, 177:8

**512**............................. ...................... [1] - 3:8

**513** [10]_ - 176:8_, 176:11_, 176:24_, 177:2_, 177:3_, 208:8_, 208:19_, 208:23_, 209:4_, 209:14

**513**............................. ...................... [1] - 3:8

**520** [9]_ - 178:5_, 178:10_, 178:14_, 178:20_, 178:23_, 178:24_, 179:7_, 179:16_, 179:19

**520**............................. ...................... [1] - 3:9

**522Z** [7]_ - 63:6_, 63:25_, 167:5_, 167:16_, 167:17_, 167:19

**522Z**............................ ...................... [1] - 3:9

**524** [1]_ - 118:6

**525** [7]_ - 127:7_, 127:13_, 127:24_, 128:2_, 128:3_, 128:8_, 128:18

**525**............................. ...................... [1] - 3:10

**528** [6]_ - 3:10_, 131:1_, 132:10, 132:12_, 132:15_, 132:21

**529** [5]_ - 3:10_, 131:1_, 132:10, 132:12_, 133:7

**530** [5]_ - 3:10_, 131:1_, 132:10, 132:12_, 133:17

**531** [4]_ - 3:10_, 131:1_, 132:10, 132:12

**532** [1]_ - 112:24

**532A** [4]_ - 3:10_, 131:1_, 132:11, 132:12

**532B** [4]_ - 3:10_, 131:2_, 132:11, 132:12

**533** [7]_ - 114:22_, 115:3_, 115:12_, 115:13_, 115:15_, 115:16_, 212:18

**533**............................. ...................... [1] - 3:11

**534** [11]_ - 112:8_, 112:13_, 113:2_, 113:4_, 113:6_, 113:25_, 114:9_, 114:14_, 126:19_, 127:1_, 127:19

**534**............................. ...................... [1] - 3:11

**538** [8]_ - 210:5_, 210:14_, 210:18_, 211:1_, 211:4_, 211:5_, 211:8_, 211:12

**538**............................. ...................... [1] - 3:12

**54** [1]_ - 29:6

**540B** [4]_ - 186:23_, 187:12_, 187:15_, 187:16

**540B**......................... ...................... [1] - 3:12

**540C** [5]_ - 188:12_, 189:2_, 189:6_, 189:7_, 189:16

**540C**......................... ...................... [1] - 3:13

**544** [9]_ - 164:22_, 165:3_, 165:7_, 165:13_, 165:16_, 165:17_, 165:19_, 165:20_, 166:7

**544**............................. ...................... [1] - 3:13

**561-429-0623** [1]_ - 175:2

**561-701-5510** [1]_ - 164:4

**5:05** [1]_ - 231:11

**5:09** [1]_ - 231:24

**5:11** [1]_ - 233:3

**5N1AN08W87C 527755** [1]_ - 139:5

## 6

**6** [6] - 8:17, 11:10, 12:11, 12:23, 144:17, 209:9
**6:00** [1] - 34:13
**6:26** [3] - 89:12, 91:15, 92:17
**6:27** [2] - 92:17, 92:22
**6:35** [1] - 75:5
**6:36** [1] - 75:17
**6th** [6] - 9:1, 10:8, 11:22, 25:16, 209:18, 210:2

## 7

**7** [1] - 28:17
**7/27/2024** [5] - 75:3, 75:17, 76:18, 77:1, 77:10
**70,000** [1] - 199:25
**7269** [2] - 42:22, 44:9
**732** [4] - 3:14, 18:24, 19:18, 19:24
**733** [10] - 10:20, 11:8, 12:25, 13:2, 20:4, 20:7, 21:13, 21:14, 28:14
**734A** [5] - 3:14, 18:24, 19:18, 19:24, 21:5
**734B** [1] - 21:17
**734C** [2] - 18:25, 22:5
**735A** [5] - 3:14, 18:25, 19:18, 19:24, 23:8
**735B** [1] - 23:15
**735C** [1] - 23:23
**735D** [1] - 24:8
**736** [1] - 25:20
**736A** [5] - 3:14, 19:1, 19:18, 20:1, 22:15
**736B** [3] - 22:21, 25:21, 25:25
**737** [6] - 3:14, 19:2, 19:18, 20:1, 20:23, 24:16
**738** [4] - 19:2, 19:19, 20:1, 24:23
**738.............................** [1] - 3:14
**743-251-7269** [1] - 41:16
**754** [1] - 26:15
**755** [2] - 27:23, 28:24

**756A** [7] - 3:15, 9:25, 10:12, 10:17, 11:16, 25:10, 25:25
**756B** [4] - 10:1, 10:17, 12:13, 26:6
**756B........................** **..............** [1] - 3:15
**7:00** [2] - 34:13, 34:15
**7:50** [1] - 93:8

## 8

**8** [2] - 8:8, 28:24
**8/2/2024** [6] - 89:12, 91:15, 92:17, 92:22, 93:8, 93:21
**8/23/2024** [2] - 96:11, 96:25
**80** [2] - 17:24, 18:14
**890** [2] - 8:20, 16:25
**8901280433136542 7 5** [1] - 43:25
**8:00** [1] - 34:12
**8:29** [1] - 76:18
**8:35** [1] - 77:1
**8:53** [1] - 6:12

## 9

**9** [1] - 44:1
**9/19/2024** [4] - 98:17, 99:14, 99:20, 100:2
**90** [2] - 43:18, 43:19
**90-day** [1] - 43:18
**90EXP** [1] - 43:13
**935** [3] - 131:2, 132:11, 132:13
**935.............** [1] - 3:10
**944** [1] - 144:11
**9:00** [1] - 231:12
**9:03** [1] - 93:21
**9:17** [1] - 77:10
**9:34** [1] - 96:11
**9:54** [2] - 99:14, 99:20
**9:55** [1] - 100:2
**9:56** [1] - 62:19
**9:57** [1] - 63:4
**9th** [1] - 215:8

## A

**a.m** [10] - 6:12, 34:14, 62:19, 63:4, 65:10, 98:18, 121:19, 124:19, 231:12
**Aaron** [3] - 31:10, 31:22, 44:20
**AARON** [2] - 31:23, 32:1
**abbreviated** [1] - 139:9
**ability** [1] - 157:11
**able** [11] - 35:22, 37:16, 51:9, 116:15, 120:10, 120:14, 122:19, 127:9, 130:24, 183:23, 226:4
**abort** [1] - 198:24
**absolutely** [2] - 195:23, 196:5
**abundance** [1] - 120:23
**acceptable** [2] - 64:21, 121:21
**Access** [1] - 108:15
**access** [1] - 42:7
**accordance** [2] - 227:21, 229:4
**according** [7] - 139:4, 139:6, 168:14, 179:23, 209:4, 209:7, 209:14
**account** [4] - 42:7, 43:17, 43:19
**accurately** [5] - 10:7, 19:12, 115:5, 115:8, 131:12
**act** [1] - 17:8
**acted** [1] - 116:19
**action** [1] - 215:18
**activate** [4] - 44:8, 59:10, 61:9, 61:20
**activated** [3] - 38:10, 58:4, 167:23
**activating** [2] - 43:7, 61:17
**activation** [7] - 42:14, 42:20, 42:21, 42:24, 43:6, 44:6, 44:8
**actual** [5] - 33:18, 63:10, 63:22, 67:4, 134:2
**add** [1] - 155:20
**adding** [1] - 5:2
**addition** [1] - 69:24
**additional** [11] - 36:17, 45:6, 45:8, 110:11,

118:24, 149:19, 149:22, 150:22, 154:21, 155:15, 199:12
**address** [28] - 4:24, 6:6, 9:2, 9:6, 32:21, 32:23, 33:2, 33:3, 37:11, 37:13, 39:25, 46:23, 46:25, 47:4, 47:5, 47:6, 47:7, 47:8, 48:18, 48:20, 48:21, 122:12, 122:16, 138:2, 138:3, 142:17, 150:8
**addressed** [1] - 64:11
**addressing** [1] - 4:12
**adjacent** [1] - 18:7
**administered** [1] - 128:12
**admissible** [4] - 154:25, 155:12, 157:17, 162:4
**admission** [5] - 141:15, 149:17, 149:21, 150:16, 156:22
**admit** [3] - 10:12, 99:9, 99:16
**ADMITTED** [2] - 3:1, 3:16
**admitted** [83] - 9:21, 10:15, 10:20, 11:16, 19:22, 20:3, 20:23, 21:5, 26:15, 27:23, 38:25, 45:19, 46:3, 73:18, 112:8, 112:24, 113:5, 114:22, 115:15, 117:8, 117:17, 117:19, 118:9, 118:12, 119:23, 126:19, 127:6, 127:24, 128:2, 132:7, 132:11, 137:5, 140:7, 140:11, 141:18, 145:12, 145:20, 146:13, 147:4, 147:8, 147:23, 148:13, 149:1, 150:6, 155:14, 161:8, 161:11, 162:16, 163:1, 163:4, 164:5, 164:22, 165:13, 165:16, 167:8, 167:9, 167:11, 167:18, 171:20, 173:20, 176:7, 176:24, 177:2, 178:4, 178:20, 178:23, 186:22, 187:12, 187:15, 188:12, 189:3, 189:6, 190:3, 208:7, 210:4, 211:1, 211:4, 212:17, 216:17, 216:24, 217:21, 217:25, 220:23
**admitting** [1] - 153:9

**admonitions** [1]_ - 231:20

**adverse** [1]_ - 155:9

**advise** [2]_ - 158:5_, 220:8

**advised** [1]_ - 103:10

**aerial** [1]_ - 20:8

**affirm** [9]_ - 6:24_, 15:1_, 31:15_, 65:19_, 110:18_, 125:11_, 170:9_, 182:8_, 204:14

**affixed** [2]_ - 117:22_, 168:11

**afoul** [2]_ - 150:10_, 158:15

**aftermarket** [5]_ - 81:8_, 81:11_, 81:13_, 82:22_, 83:7

**afternoon** [17]_ - 34:16_, 102:17_, 102:18_, 125:3_, 166:16_, 170:24_, 170:25_, 181:8_, 181:9_, 181:20_, 182:4_, 185:9_, 185:14_, 205:6_, 205:7_, 209:18_, 210:2

**Agent** [95]_ - 5:9_, 5:10_, 111:7_, 112:7_, 112:13_, 113:12_, 114:2_, 114:13_, 114:21_, 115:2_, 115:20_, 116:12_, 117:13_, 117:15_, 117:21_, 118:16_, 119:7_, 120:2_, 120:20_, 123:25_, 125:7_, 126:12_, 126:18_, 126:25_, 127:12_, 128:7_, 130:18_, 130:23_, 131:4_, 132:18_, 133:11_, 135:4_, 135:15_, 136:3_, 136:5_, 136:9_, 136:12_, 136:18_, 137:16_, 137:22_, 138:11_, 138:17_, 139:2_, 139:14_, 139:21_, 139:25_, 140:13_, 140:17_, 140:23_, 141:3_, 141:22_, 142:2_, 142:8_, 143:4_, 144:6_, 144:21_, 144:24_, 145:25_, 146:5_, 146:11_, 147:22_, 148:5_, 148:18_, 160:13_, 160:24_, 161:1_, 162:13_, 162:17_, 162:19_, 162:20_, 163:14_, 163:16_, 163:23_, 164:7_, 164:21_, 165:3_, 165:19_, 165:23_, 169:3_, 169:17_, 171:4_, 172:1_, 173:8_, 174:3_, 176:4_, 176:11_, 177:7_, 178:8_, 180:6_, 232:6_, 232:7_, 232:8_,

232:9

**agent** [8]_ - 15:21_, 15:22_, 16:9_, 125:9_, 126:2_, 145:4_, 171:5_, 172:10

**AGENT** [5] - 15:12_, 64:22, 111:3, 125:22, 170:20

**agents** [7]_ - 33:9_, 50:24_, 51:12_, 51:22_, 62:1_, 69:16_, 69:19

**ago** [6]_ - 29:16_, 67:6_, 102:1_, 103:23_, 104:24_, 227:1

**agree** [6]_ - 78:8_, 80:2_, 84:25_, 85:7_, 156:25_, 223:12

**agreed** [1]_ - 64:12

**agreement** [9]_ - 67:12_, 67:21_, 67:24_, 68:15_, 68:17_, 68:18_, 68:21_, 69:3_, 69:7

**ahead** [4]_ - 85:12_, 170:7_, 211:11_, 228:5

**aid** [2]_ - 63:14_, 63:16

**air** [1]_ - 191:23

**Airbnb** [2]_ - 179:20_, 179:24

**airbnb.com** [1]_ - 179:22

**airplane** [20]_ - 150:19_, 150:21_, 151:3_, 151:9_, 151:14_, 151:15_, 151:18_, 151:20_, 152:7_, 152:14_, 153:10_, 156:13_, 156:14_, 156:16_, 156:19_, 157:2_, 157:3_, 157:6

**airplanes** [2]_ - 152:8_, 152:9

**airport** [1]_ - 151:15

**AK-47** [6]_ - 78:5_, 78:6_, 78:8_, 78:11_, 107:18_, 107:20

**alert** [1]_ - 64:15

**alerting** [1]_ - 224:24

**allegations** [1]_ - 197:14

**alleged** [3]_ - 197:23_, 198:22_, 199:1

**allow** [9]_ - 61:19_, 65:1_, 155:9_, 158:17_, 194:9_, 198:5_, 215:23_, 230:11_, 232:19

**allowed** [8]_ - 136:5_, 150:18_, 157:19_, 183:19_, 192:15_, 196:17_,

206:3_, 221:5

**allows** [1]_ - 198:17

**almost** [1]_ - 194:7

**aloha** [1]_ - 164:15

**alone** [3]_ - 9:14_, 87:21_, 153:9

**alongside** [1]_ - 121:23

**aloof** [2]_ - 34:25_, 35:21

**alternate** [1]_ - 122:6

**America** [1]_ - 4:5

**Amigos** [3]_ - 9:8_, 11:6_, 17:7

**ammunition** [3]_ - 86:4_, 87:6_, 131:19

**amount** [3]_ - 44:2_, 190:23

**Analysis** [2]_ - 171:12_, 171:13

**analyzed** [1]_ - 131:19

**and..** [1]_ - 14:11

**anew** [1]_ - 231:11

**angry** [1]_ - 193:23

**animals** [2]_ - 30:14_, 30:18

**annoyed** [1]_ - 193:23

**answer** [7]_ - 53:10_, 109:9_, 121:25_, 193:19_, 203:23_, 223:21_, 228:5

**anticipated** [1]_ - 232:11

**ants** [2]_ - 30:4_, 30:8

**anytime** [1]_ - 151:5

**anyway** [3]_ - 88:3_, 191:25_, 194:8

**apologies** [2]_ - 145:4_, 218:1

**apologize** [6]_ - 18:4_, 53:11_, 64:6_, 91:1_, 113:2_, 141:7

**appear** [9]_ - 27:8_, 47:6_, 48:2_, 87:1_, 89:6_, 90:17_, 142:25_, 143:18_, 164:11

**appearance** [1]_ - 4:15

**appearances** [2]_ - 4:3_, 4:6

**appeared** [3]_ - 70:1_, 70:3_, 70:11

**application** [3]_ - 41:21_, 42:11_, 46:14

**approach** [21]_ - 18:20_, 19:8_, 80:11_, 86:9_, 86:13_, 117:9_, 134:10_,

137:11_, 138:8_, 138:24_, 139:11_, 143:25_, 144:18_, 146:14_, 147:24_, 160:19_, 162:10_, 164:23_, 171:22_, 185:20_, 214:2

**approaching** [1]_ - 27:5

**appropriate** [2]_ - 64:12_, 220:3

**April** [8]_ - 171:19_, 208:6_, 209:9_, 209:18_, 210:2_, 213:23_, 215:8_, 217:13

**area** [10]_ - 11:21_, 20:12_, 20:14_, 20:20_, 40:3_, 82:16_, 89:13_, 111:22_, 114:10_, 133:25

**arguable** [1]_ - 155:23

**argument** [5]_ - 150:16_, 153:1_, 193:11_, 196:13_, 225:20

**arise** [1]_ - 160:16

**Armour** [2]_ - 22:13_, 24:3

**arrangement** [1]_ - 64:20

**arrest** [1]_ - 101:19

**arrive** [1]_ - 84:6

**arrogant** [2]_ - 104:16_, 104:17

**artifacts** [5]_ - 172:22_, 175:12_, 177:19_, 179:15_, 179:23

**ascertain** [2]_ - 152:21_, 152:22

**assassination** [7]_ - 113:21_, 129:2_, 151:13_, 151:16_, 152:12_, 156:5_, 190:17

**assemble** [1]_ - 167:1

**assembled** [3]_ - 168:16_, 168:17_, 169:9

**assigned** [13]_ - 7:24_, 8:8_, 8:15_, 8:23_, 15:23_, 15:24_, 16:23_, 32:17_, 32:21_, 32:23_, 40:20_, 126:7_, 174:18

**assist** [2]_ - 130:8_, 180:15

**associated** [6]_ - 41:7_, 46:18_, 76:25_, 152:9_, 164:8_, 175:1

**associates** [1]_ - 40:22

**assume** [5]_ - 53:9_,

60:14_, 60:15_, 151:4
**assuming** [2]_ - 58:20_, 148:25
**AT&T** [14]_ - 32:13_, 32:14_, 32:16_, 36:10_, 38:7_, 38:17_, 50:18_, 57:13_, 59:5_, 59:8_, 61:14_, 147:16_, 147:17_, 164:8
**ATF** [1]_ - 221:14
**attached** [2]_ - 36:4_, 142:12
**attempt** [5]_ - 151:13_, 151:16_, 152:12_, 156:5_, 190:17
**attempted** [2]_ - 113:21_, 129:1
**attempts** [1]_ - 150:1
**attend** [3]_ - 200:2_, 200:5_, 225:25
**attendance** [1]_ - 226:10
**attention** [18]_ - 8:17_, 16:24_, 33:7_, 73:3_, 95:6_, 97:9_, 97:11_, 97:23_, 160:17_, 209:10_, 217:6_, 217:8_, 218:22_, 218:23_, 218:25_, 219:1_, 219:8_, 224:19
**attorney** [5]_ - 67:14_, 67:17_, 67:20_, 69:13
**attracted** [1]_ - 97:11
**attracts** [1]_ - 95:5
**audio** [20]_ - 27:6, 27:12_, 28:2_, 29:1_, 52:7, 53:24, 54:2_, 54:17, 54:23_, 55:11, 55:23, 56:11_, 57:11_, 60:14_, 210:12_, 210:13_, 210:15, 211:13_, 212:9, 213:15
**August** [7]_ - 33:13_, 34:8_, 45:5_, 47:15_, 83:20_, 83:22_, 218:21
**authored** [1]_ - 152:3
**authorization** [1]_ - 213:6
**authorized** [4]_ - 129:21_, 149:7_, 149:17_, 165:24
**automatically** [1]_ - 155:11
**avail** [1]_ - 6:5
**Ave** [2]_ - 48:22_, 144:11
**Avenue** [1]_ - 47:2
**avoid** [1]_ - 5:5
**await** [1]_ - 120:11

**awaiting** [1]_ - 120:23
**aware** [16]_ - 30:12_, 59:5_, 62:21_, 62:23_, 72:13_, 97:10_, 105:1_, 105:5_, 105:10_, 106:10_, 107:10_, 166:17_, 166:19_, 166:23_, 199:7_, 199:24
**awesome** [1]_ - 57:7

### B

**B-R-O-O-K-S** [1]_ - 7:7
**background** [4]_ - 66:17_, 95:10_, 154:24_, 156:22
**backyard** [2]_ - 191:16_, 217:12
**bag** [9]_ - 118:3_, 136:15_, 139:15_, 139:24_, 142:5_, 143:6_, 144:21_, 146:19_, 162:18
**bags** [2]_ - 123:18_, 146:1
**baked** [1]_ - 221:3
**balance** [2]_ - 150:17_, 157:22
**barrel** [3]_ - 81:15_, 132:23_, 140:24
**base** [2]_ - 21:22_, 22:10
**based** [11]_ - 20:19_, 28:6_, 41:17_, 61:13_, 63:14_, 67:24_, 87:11_, 175:16_, 175:19_, 185:13_, 229:5
**basic** [1]_ - 36:22
**basis** [3]_ - 52:17_, 109:2_, 155:6
**Batten** [1]_ - 188:8
**Bay** [12]_ - 8:21_, 8:24_, 16:16_, 16:25_, 17:14_, 17:21_, 17:24_, 18:8_, 18:10_, 18:11_, 18:12_, 18:15
**bayonet** [6]_ - 81:8_, 81:9_, 81:11_, 81:13_, 82:11_, 83:5
**Beach** [12]_ - 7:17_, 7:24_, 15:19_, 15:24_, 16:1_, 16:14_, 17:22_, 18:10_, 18:13_, 76:16_, 176:1_, 179:20
**beach** [4]_ - 76:12_, 76:15_, 83:17_, 199:24
**bear** [2]_ - 6:4_, 226:10
**became** [2]_ - 171:5_, 191:2

**become** [4]_ - 69:18_, 72:13_, 97:10_, 207:2
**bedroom** [1]_ - 95:13
**beer** [1]_ - 200:25
**begin** [8]_ - 7:8_, 31:24_, 66:3_, 182:16_, 185:7_, 192:21_, 231:11_, 232:9
**beginning** [6]_ - 73:4_, 117:21_, 142:3_, 195:7_, 208:22_, 211:6
**behalf** [1]_ - 4:19
**behind** [3]_ - 21:12_, 113:14_, 153:16
**Belle** [1]_ - 18:9
**belongs** [1]_ - 105:14
**below** [8]_ - 41:4_, 41:12_, 42:8_, 42:13_, 44:25_, 47:10_, 48:23_, 174:9
**benefit** [2]_ - 108:5_, 173:6
**best** [4]_ - 142:8_, 156:6_, 163:20_, 164:13
**better** [2]_ - 181:4_, 183:17
**between** [8]_ - 34:12_, 58:11_, 58:12_, 74:23_, 153:4_, 155:21_, 157:7_, 220:23
**beyond** [1]_ - 105:24
**bifurcates** [1]_ - 65:2
**big** [1]_ - 190:23
**bigger** [1]_ - 159:3
**billing** [5]_ - 48:13_, 48:18_, 48:20_, 48:21_, 48:23
**bit** [10]_ - 35:20_, 39:17_, 44:11_, 58:10_, 58:11_, 144:24_, 188:14_, 216:24_, 221:15_, 229:12
**black** [8]_ - 12:18_, 26:10_, 27:9_, 29:4_, 83:7_, 95:4_, 147:15_, 147:16
**blanche** [1]_ - 152:4
**blank** [3]_ - 48:3_, 48:5_, 48:6
**blue** [14]_ - 11:4_, 35:9_, 74:5_, 76:19_, 76:20_, 89:7_, 91:7_, 92:9_, 92:10_, 92:12_, 189:15_, 208:20_, 209:12_, 218:10
**Bluetooth** [1]_ - 177:10
**body** [10]_ - 9:18_, 12:7_, 12:10_, 12:20_, 91:11_, 93:5_, 94:13_, 96:8_, 99:8

_, 99:24
**body-worn** [3]_ - 9:18_, 12:7_, 12:20
**bogus** [1]_ - 14:8
**bold** [1]_ - 174:19
**bolt** [7]_ - 87:5_, 87:7_, 87:8_, 87:9_, 94:11_, 107:2_, 107:4
**book** [1]_ - 152:22
**books** [1]_ - 214:19
**born** [5]_ - 183:9_, 183:11_, 183:12_, 205:21_, 205:23
**boss** [6]_ - 184:5_, 184:11_, 184:22_, 194:1_, 207:3_, 207:5
**bottom** [10]_ - 44:14_, 61:2_, 77:2_, 91:4_, 91:13_, 91:23_, 92:2_, 92:23_, 132:24_, 133:1
**bought** [4]_ - 71:1_, 79:17_, 88:4_, 99:11
**Boulevard** [6]_ - 17:25_, 18:1_, 18:14_, 57:14_, 57:16_, 59:6
**boundaries** [1]_ - 198:13
**box** [122]_ - 49:10_, 49:16_, 64:9_, 80:17_, 93:14_, 112:21_, 114:3_, 114:10_, 114:17_, 118:3_, 118:20_, 119:14_, 120:2_, 120:10_, 120:14_, 120:22_, 120:24_, 121:1_, 121:3_, 122:20_, 123:4_, 123:18_, 123:23_, 127:4_, 127:18_, 127:21_, 128:19_, 128:23_, 128:25_, 129:1_, 129:3_, 129:4_, 129:5_, 129:6_, 129:12_, 129:14_, 129:17_, 129:18_, 129:22_, 129:24_, 130:6_, 130:9_, 130:10_, 130:15_, 130:16_, 130:19_, 131:11_, 131:13_, 131:18_, 131:19_, 131:21_, 131:24_, 132:3_, 132:19_, 133:15_, 133:22_, 133:25_, 134:2_, 134:21_, 135:11_, 135:18_, 135:21_, 136:6_, 136:24_, 138:6_, 138:23_, 140:4_, 141:11_, 145:9_, 147:1_, 148:11_, 161:6_, 162:24_, 165:10_, 166:17_, 166:19_, 166:25_, 168:10_, 168:18_, 169:10_, 185:10_, 185:16_, 186:11_, 186:12_, 186:18

_, 186:19_, 188:2_, 188:24_, 189:18_, 189:23 _, 191:1_, 214:1_, 214:11 _, 214:14_, 214:18_, 215:3_, 215:12_, 215:21_, 216:3_, 216:10_, 216:12_, 216:14_, 217:3_, 217:10_, 217:12_, 217:14_, 223:9_, 223:12_, 223:16_, 223:23 _, 224:3_, 224:4_, 224:5_, 224:8_, 224:12_, 225:5_, 225:6_, 225:8_, 225:11_, 225:19

**boxes** [4]_ - 48:3_, 48:5_, 48:6_, 124:10

**brackets** [2]_ - 107:23_, 108:1

**brand** [1]_ - 22:12

**break** [23]_ - 31:8_, 44:5_, 62:17_, 62:25_, 63:3_, 121:13_, 122:12_, 148:15 _, 148:19_, 148:21_, 153:1_, 154:4_, 161:1_, 180:24_, 194:7_, 194:8_, 194:14_, 194:16_, 220:4_, 221:7_, 221:18_, 231:11

**breaks** [1]_ - 44:6

**Brenden** [1]_ - 232:7

**brief** [9]_ - 55:22_, 148:15 _, 149:25_, 153:1_, 154:2 _, 194:20_, 221:7_, 221:15_, 221:18

**briefly** [7]_ - 60:18_, 139:2 _, 148:19_, 168:23_, 174:3_, 202:16_, 226:9

**bring** [11]_ - 60:20_, 80:7_, 81:17_, 83:9_, 91:1_, 93:23_, 95:23_, 124:11_, 124:22_, 158:20_, 180:19

**broadcast** [1]_ - 114:23

**broken** [1]_ - 104:2

**Brooks** [7]_ - 5:3_, 5:9_, 5:13_, 6:21_, 7:6_, 14:17

**BROOKS** [1] - 7:10

**brother** [14]_ - 176:2_, 185:9_, 185:15_, 215:13_, 215:21_, 216:9_, 217:4_, 217:15_, 219:17_, 219:20 _, 220:17_, 220:24_, 220:25_, 222:6

**brother's** [3]_ - 186:13_, 191:8_, 191:16

**brothers** [6]_ - 207:15_, 207:19_, 219:18_, 222:9_, 227:3

**brought** [4]_ - 58:3_,

77:25_, 85:12_, 130:18

**Broward** [4]_ - 8:2_, 8:7_, 8:11_, 8:12

**BROWNE** [320]_ - 5:25_, 6:3_, 63:7_, 63:12_, 63:21 _, 110:13_, 111:1_, 111:6 _, 112:4_, 112:6_, 112:9_, 112:12_, 112:23_, 113:2_, 113:7_, 113:9_, 113:11_, 113:23, 114:1_, 114:7_, 114:12_, 114:18_, 114:20 _, 114:23, 115:1_, 115:11 _, 115:17_, 115:19_, 116:6_, 116:8_, 117:9, 117:11_, 117:20_, 118:8, 118:15_, 118:24_, 119:4_, 119:6_, 119:18_, 120:1_, 120:16_, 120:19_, 121:5_, 122:2_, 122:5_, 122:15_, 123:1_, 123:16_, 123:21_, 124:2_, 124:5_, 124:23_, 125:6_, 125:20_, 126:1_, 126:20_, 126:22_, 126:24 _, 127:8_, 127:11_, 127:23_, 128:4_, 128:6_, 130:23_, 131:3_, 132:6_, 132:14_, 132:17_, 133:8_, 133:10_, 133:16_, 133:19 _, 134:10_, 134:12_, 134:23_, 135:1_, 135:3_, 136:4_, 136:8_, 136:25_, 137:9_, 137:11_, 137:13_, 137:15_, 137:19, 137:21_, 138:8_, 138:10_, 138:14, 138:16_, 138:24_, 139:1_, 139:11_, 139:13_, 139:18 _, 139:20_, 140:6_, 140:13_, 140:16_, 141:13 _, 141:22_, 142:1_, 142:22_, 143:23_, 143:25 _, 144:2_, 144:4_, 144:5_, 144:18_, 144:20_, 145:10 _, 145:16_, 145:24_, 146:5_, 146:8_, 146:10_, 146:14_, 146:16_, 147:3_, 147:11_, 147:18_, 147:21 _, 147:24_, 148:1_, 148:12_, 148:25_, 149:6_, 149:10_, 149:12_, 149:15 _, 149:25_, 153:3_, 153:22_, 153:25_, 154:5_, 154:9_, 154:19_, 158:9_, 158:11_, 158:21_, 159:4_, 159:6_, 159:25_, 160:7_, 160:9_, 160:19_, 160:22_, 161:7_, 161:15_, 161:18_, 161:21_, 162:7_, 162:10_, 162:12_, 162:25_, 163:8_, 163:11, 163:13_, 164:17_, 164:20_, 164:23_, 165:1_,

165:12_, 165:18_, 165:23 _, 166:2_, 166:4_, 166:10 _, 167:10_, 168:23_, 169:2_, 169:15_, 169:19_, 169:23_, 170:1_, 170:18_, 170:23_, 171:22_, 171:24 _, 173:3, 173:7_, 173:16_, 173:23, 173:25_, 174:2_, 174:13_, 174:15_, 175:9_, 175:11_, 176:5_, 176:10_, 176:23_, 177:4_, 177:6_, 177:17_, 177:18_, 178:2_, 178:7_, 178:19_, 178:25_, 179:2_, 179:4_, 179:12, 179:14_, 180:1_, 180:10_, 180:20_, 180:25_, 181:5_, 182:2_, 182:17_, 182:21_, 183:6_, 185:1_, 185:2_, 185:12_, 185:19_, 186:1_, 186:2_, 186:7_, 186:21_, 187:1_, 187:11_, 187:17_, 187:19_, 187:21_, 188:13 _, 188:16_, 189:1_, 189:8 _, 189:10_, 189:25_, 190:1_, 190:4_, 190:7_, 190:9_, 192:2_, 192:13_, 193:17_, 194:4_, 194:24_, 195:7_, 195:13_, 195:22_, 196:11_, 200:6_, 201:5_, 201:11_, 202:16_, 202:18 _, 203:1_, 204:2_, 204:9_, 204:23_, 204:25_, 205:5_, 208:9_, 208:11_, 208:15_, 209:24, 209:25_, 210:9_, 210:16_, 210:17_, 210:25 _, 211:6_, 211:11_, 211:14_, 211:15_, 212:5_, 212:10_, 212:19_, 212:21 _, 213:13_, 213:16_, 213:17_, 214:2_, 214:5_, 214:8_, 215:16, 215:19_, 215:25_, 216:1, 216:8_, 216:19_, 216:21_, 216:22 _, 217:19_, 217:23_, 218:1_, 218:5_, 218:8_, 218:14_, 218:16_, 219:3_, 219:5_, 219:15_, 219:16_, 220:2_, 220:21_, 221:10_, 221:13_, 221:17_, 222:5_, 222:22_, 223:18_, 225:20 _, 226:1_, 226:8_, 227:7_, 227:9_, 227:13_, 228:4_, 228:22_, 229:9_, 229:11_, 230:6_, 230:15_, 230:18_, 230:23

**Browne** [18]_ - 4:9_, 5:23 _, 118:22_, 121:22_, 134:18_, 148:22_, 152:25 _, 153:21_, 154:18_, 167:9_, 192:7_, 195:6_,

197:14_, 217:24_, 220:20 _, 221:9_, 232:1_, 232:13

**bubble** [8]_ - 76:1_, 76:3_, 76:11_, 76:19_, 76:25_, 89:6_, 175:16_, 218:15

**bubbles** [2]_ - 74:5_, 74:16

**bucket** [1]_ - 12:2

**bugs** [2]_ - 30:4_, 30:8

**build** [2]_ - 226:13_, 227:11

**building** [4]_ - 83:25_, 84:2_, 106:3_, 195:15

**buildings** [1]_ - 11:4

**built** [1]_ - 227:5

**bullet** [2]_ - 78:18_, 216:15

**bullets** [4]_ - 189:22_, 190:25_, 191:4_, 214:20

**Bureau** [2]_ - 111:10_, 171:2

**business** [9]_ - 71:7_, 105:23_, 106:3_, 184:1_, 193:14_, 199:25_, 207:16 _, 207:25_, 229:16

**bustling** [1]_ - 18:16

**busy** [1]_ - 104:18

**buy** [2]_ - 38:7_, 59:17

**BY** [212]_ - 7:13_, 9:24_, 10:23_, 11:18_, 12:5_, 12:16_, 13:1_, 13:14_, 13:24_, 15:15_, 18:22_, 19:10_, 20:6_, 21:1_, 21:7 _, 21:20, 22:8_, 22:17_, 22:24_, 23:12_, 23:18_, 24:1_, 24:11_, 24:18_, 25:1_, 25:12_, 25:22_, 26:8_, 26:20_, 27:7_, 27:13, 27:17, 28:3, 28:9, 28:15_, 29:2_, 29:13_, 30:13_, 32:4_, 35:14_, 39:7_, 45:22_, 46:8_, 49:23_, 50:23_, 52:10_, 53:14_, 54:4_, 54:18_, 55:1_, 55:12_, 56:1_, 56:13_, 57:2, 58:19, 58:24 _, 59:15_, 60:6_, 61:1_, 66:8_, 71:23_, 73:23, 75:20_, 80:15_, 81:20_, 82:21_, 86:12_, 89:1_, 89:23_, 90:7_, 90:16_, 90:22_, 91:3, 91:25, 92:7, 92:25, 93:11_, 94:2_, 94:19_, 95:19_, 96:2_, 98:6, 99:1_, 102:16, 103:2, 103:21_, 105:19_,

106:4, 106:20, 108:14, 108:19, 108:24, 109:13, 111:6, 112:6, 112:12, 113:11, 114:1, 114:12, 114:20, 115:1, 115:19, 116:8, 117:20, 118:15, 119:6, 120:1, 120:19, 126:1, 126:24, 127:11, 128:6, 131:3, 132:17, 133:10, 133:19, 134:12, 135:3, 136:8, 137:15, 137:21, 138:10, 138:16, 139:1, 139:13, 139:20, 140:16, 142:1, 142:22, 144:5, 144:20, 145:24, 146:10, 146:16, 147:11, 147:21, 148:1, 160:22, 162:12, 163:13, 164:20, 165:1, 165:18, 166:4, 166:15, 167:20, 168:2, 169:2, 170:23, 171:24, 173:7, 174:2, 174:15, 175:11, 176:10, 177:6, 177:18, 178:7, 179:4, 179:14, 182:21, 183:6, 185:2, 185:12, 186:2, 186:7, 187:1, 187:21, 188:16, 189:10, 190:1, 190:9, 192:10, 192:22, 193:21, 199:22, 200:4, 200:10, 200:17, 200:24, 201:9, 202:18, 203:1, 205:5, 208:15, 209:25, 210:17, 211:15, 212:10, 212:21, 213:17, 214:8, 215:19, 216:1, 216:8, 216:22, 218:8, 218:16, 219:5, 219:16, 222:5, 223:2, 223:25, 224:16, 225:4, 225:24, 226:2, 226:19, 228:9, 228:16, 229:11, 230:18

**C**

**cabin** [1] - 227:12
**cabinets** [2] - 78:22, 78:24
**caliber** [8] - 96:9, 96:23, 97:1, 97:4, 97:6, 132:25, 133:1, 165:20
**calm** [1] - 35:21
**camera** [7] - 9:18, 12:7, 12:10, 12:21, 51:14, 52:19, 52:20
**cameras** [2] - 27:3, 28:20

**candidate** [1] - 113:21
**cannot** [4] - 65:5, 153:16, 198:20, 220:10
**cans** [2] - 24:14, 30:7
**car** [6] - 203:10, 203:13, 203:18, 212:12, 212:13, 225:14
**card** [19] - 38:9, 43:10, 43:11, 61:7, 61:17, 61:22, 61:23, 85:17, 137:23, 137:25, 138:2, 138:5, 138:6, 139:4, 139:7, 163:17, 163:24
**cardboard** [1] - 123:4
**care** [2] - 78:25, 79:2
**Carolina** [24] - 32:9, 32:10, 40:5, 47:3, 48:22, 64:7, 66:12, 66:13, 66:20, 69:10, 69:11, 102:1, 111:12, 137:24, 138:4, 144:12, 171:16, 182:23, 183:5, 205:9, 205:19, 205:21, 222:12, 222:14
**carport** [1] - 201:25
**carried** [1] - 196:16
**CART** [5] - 171:10, 171:11, 171:14, 171:18, 172:5
**carte** [1] - 152:4
**cartridge** [3] - 133:5, 187:7, 188:4
**cartridges** [3] - 165:20, 189:13, 189:14
**case** [35] - 4:2, 4:4, 41:18, 45:14, 63:15, 67:21, 68:13, 69:6, 69:10, 69:14, 69:16, 69:19, 69:25, 71:20, 81:22, 87:25, 89:19, 103:7, 121:17, 126:14, 129:17, 150:13, 157:18, 172:10, 172:11, 174:8, 184:7, 218:24, 226:11, 231:14, 231:15, 231:17, 231:19
**Case** [1] - 4:5
**cases** [2] - 111:18, 126:8
**cash** [6] - 38:15, 40:15, 40:20, 41:2, 85:17, 85:19
**cashier** [3] - 44:15, 44:19, 45:1
**category** [1] - 198:7

**caught** [2] - 217:6, 217:8
**caution** [1] - 120:23
**celebrate** [1] - 227:1
**cell** [23] - 61:8, 131:17, 147:1, 147:15, 147:16, 147:17, 164:8, 172:4, 172:9, 172:12, 172:19, 173:2, 173:12, 174:21, 176:18, 178:12, 189:18, 189:19, 189:23, 190:25, 214:22, 216:15
**Cellebrite** [4] - 172:13, 172:14, 174:11, 175:7
**cellular** [4] - 69:22, 69:24, 172:7, 189:13
**center** [3] - 25:18, 113:24, 166:2
**certain** [5] - 18:20, 35:23, 107:5, 126:12, 130:10
**certainly** [3] - 192:6, 231:16, 232:4
**certified** [2] - 5:24, 180:17
**cetera** [1] - 197:15
**Chad** [1] - 188:8
**chain** [1] - 124:9
**chair** [2] - 181:6, 181:14
**chamber** [1] - 87:10
**chance** [13] - 19:11, 36:23, 38:20, 51:24, 62:2, 64:14, 67:17, 67:20, 69:12, 69:16, 71:2, 86:19, 136:18
**change** [1] - 208:5
**changed** [2] - 206:15, 208:3
**changes** [2] - 36:23, 158:14
**character** [8] - 109:6, 109:14, 194:3, 195:3, 195:9, 195:23, 197:7, 230:6
**characterize** [2] - 18:15, 109:14
**charge** [5] - 68:2, 68:5, 203:5, 232:18, 232:20
**charged** [3] - 66:19, 66:22, 101:22
**charges** [1] - 67:18
**Charlotte** [3] - 171:15, 171:18

**chat** [1] - 220:23
**check** [8] - 9:3, 68:11, 85:17, 97:17, 99:10, 185:15, 203:20, 217:24
**checking** [1] - 104:2
**cherry** [3] - 153:17, 155:8, 157:12
**cherry-pick** [2] - 153:17, 155:8
**cherry-picking** [1] - 157:12
**children** [4] - 126:7, 213:12, 216:11
**chitchatting** [1] - 104:10
**choice** [1] - 103:15
**choose** [3] - 59:2, 155:7, 157:25
**Christian** [1] - 232:8
**Christopher** [1] - 4:9
**cigarette** [1] - 200:25
**circle** [20] - 11:1, 11:2, 11:12, 12:1, 13:3, 20:10, 21:14, 39:21, 40:2, 40:7, 40:23, 41:1, 54:9, 55:4, 55:6, 82:13, 82:16, 89:13, 89:14, 92:2
**circled** [4] - 13:5, 54:12, 189:15, 209:12
**circles** [1] - 40:9
**circling** [4] - 11:24, 23:3, 25:17, 218:10
**Circuit** [1] - 155:18
**circumstances** [2] - 64:13, 196:2
**cite** [1] - 198:20
**city** [3] - 8:8, 18:7, 66:13
**City** [4] - 8:9, 8:13, 16:16, 16:18
**clamp** [6] - 168:5, 168:6, 168:7, 168:9, 168:11, 168:13
**clamps** [1] - 168:4
**clarification** [2] - 5:2, 122:25
**clarifies** [2] - 123:19, 153:11
**clarify** [3] - 151:7, 169:8, 215:7
**clean** [1] - 30:22

cleaning [8]_ - 88:15_, 89:5_, 89:14_, 90:4_, 90:13_, 90:23_, 91:20_, 92:13

clear [8]_ - 118:22_, 129:20, 131:23_, 149:4_, 156:3_, 192:14_, 197:2_, 213:4

clearly [1]_ - 120:14

Clements [1]_ - 232:8

climax [1]_ - 66:12

close [3]_ - 45:23_, 81:14_, 85:4

close-up [1]_ - 45:23

closed [1]_ - 112:22

closer [3]_ - 84:23_, 188:14_, 229:12

closing [1]_ - 34:15

clue [1]_ - 166:21

code [1]_ - 50:14

coincide [2]_ - 224:4_, 224:10

collect [2]_ - 26:25_, 27:2

collected [1]_ - 175:6

collecting [1]_ - 223:13

collection [1]_ - 129:13

color [7]_ - 21:24_, 75:25_, 76:3_, 89:6_, 134:2_, 142:23_, 175:16

colored [1]_ - 34:24

comfortable [3]_ - 159:17_, 181:12_, 197:12

coming [5]_ - 72:16_, 73:8_, 98:23_, 112:22_, 198:4

commence [1]_ - 182:5

commentary [1]_ - 103:1

comments [1]_ - 103:8

Como [1]_ - 192:11

company [7]_ - 70:22_, 104:24_, 105:1_, 105:5_, 201:19_, 201:22_, 203:18

compare [5]_ - 12:24_, 21:13_, 25:20_, 28:13_, 49:22

comparison [2]_ - 89:18_, 90:15

complain [3]_ - 203:7_, 203:8_, 228:13

complaining [2]_ - 193:22_, 203:5

complete [1]_ - 156:8

completed [2]_ - 130:14_, 131:24

completes [1]_ - 190:19

Complies [37]_ - 11:3_, 11:13_, 13:4_, 74:10_, 74:15_, 82:15_, 89:16_, 119:8_, 134:1_, 135:14_, 136:17_, 137:18_, 138:13_, 139:17_, 139:23_, 140:20_, 140:22_, 141:2_, 141:6_, 142:7_, 143:7_, 143:16_, 143:20_, 144:23_, 145:2_, 146:4_, 146:20, 160:25_, 165:6_, 166:3_, 166:6_, 166:9_, 173:2_, 174:24_, 179:10_, 186:6_, 229:14

comply [1]_ - 103:10

component [2]_ - 142:14_, 143:11

components [1]_ - 11:1

Computer [2]_ - 171:12_, 171:13

concern [5]_ - 158:6_, 158:25_, 159:19_, 162:1_, 196:10

concerned [2]_ - 184:24_, 195:2

concerning [1]_ - 197:20

concerns [1]_ - 157:24

conclude [3]_ - 202:10_, 216:6_, 228:23

concluded [3]_ - 204:7_, 231:3_, 233:3

concludes [1]_ - 232:21

conclusion [3]_ - 194:5_, 195:4_, 195:8

conclusions [1]_ - 229:5

condition [1]_ - 82:3

conditions [1]_ - 86:9

conduct [1]_ - 45:10

conducted [2]_ - 56:7_, 168:9

conducting [1]_ - 132:3

conduit [1]_ - 168:4

Cone [3]_ - 57:14_, 57:16_, 59:6

confer [1]_ - 158:9

conference [2]_ - 232:18_, 232:20

configuration [1]_ - 169:12

configured [1]_ - 168:13

confirm [1]_ - 64:20

conflict [1]_ - 5:4

conforming [1]_ - 149:2

connected [3]_ - 129:1_, 129:3_, 157:10

connection [5]_ - 68:24_, 69:6_, 111:25_, 126:13_, 155:23

consecutive [3]_ - 121:24_, 121:25_, 192:19

consider [12]_ - 60:4_, 60:7_, 103:7_, 103:9_, 153:2_, 160:4_, 162:3_, 184:17_, 206:13_, 206:14_, 229:6

considered [1]_ - 157:14

consistency [1]_ - 192:17

consistent [2]_ - 177:13_, 202:4

consists [1]_ - 119:3

constitution [1]_ - 4:19

construction [3]_ - 130:5_, 130:11_, 192:24

consultant [1]_ - 32:15

contact [7]_ - 37:18_, 37:21_, 47:19_, 47:21_, 47:22_, 48:11_, 191:7

contained [10]_ - 39:14_, 50:12_, 76:10_, 92:8_, 123:22_, 140:18_, 158:7_, 158:25_, 160:5_, 162:2

container [6]_ - 118:23_, 119:3_, 122:23_, 123:2_, 123:5_, 123:15

contains [1]_ - 123:4

contents [16]_ - 118:20_, 119:13_, 122:17_, 122:24_, 129:12_, 129:21_, 130:6_, 130:9_, 130:10_, 130:12_, 130:15_, 131:13_, 133:22_, 133:23_, 175:24

context [9]_ - 150:4_, 151:1_, 151:3_, 151:23_, 152:17_, 153:6_, 155:16_, 156:20_, 159:16

contextualize [2]_ - 150:23_, 153:18

continually [1]_ - 106:25

continue [9]_ - 55:9_, 116:5_, 135:1_, 160:18_, 162:6_, 168:1_, 199:21_, 222:4_, 232:5

continued [3]_ - 6:16_, 121:14_, 231:21

contracted [1]_ - 5:24

contravenes [1]_ - 196:4

contravention [1]_ - 155:2

control [1]_ - 166:19

controls [1]_ - 69:9

convenience [6]_ - 11:6_, 23:1_, 25:4_, 25:6_, 28:5_, 28:10

conventional [1]_ - 146:6

conversation [4]_ - 73:5_, 73:6_, 77:17_, 88:10

conversations [3]_ - 72:18_, 77:11_, 77:20

Cooper [25]_ - 71:25_, 72:2_, 72:4_, 72:18_, 72:22_, 72:24_, 73:5_, 74:13_, 75:10_, 77:11_, 80:2_, 83:9_, 83:14_, 84:4_, 84:6_, 85:3_, 85:8_, 88:5_, 88:10_, 89:10_, 95:21_, 97:1_, 97:21_, 98:20_, 100:3

cooperate [2]_ - 100:25_, 191:13

cooperative [1]_ - 117:6

copy [6]_ - 45:9_, 45:11_, 63:8_, 63:9_, 63:24_, 120:25

corner [11]_ - 11:11_, 11:20_, 12:20_, 21:9_, 21:16_, 22:19_, 23:2_, 25:14_, 26:13_, 27:5_, 92:2

corporate [1]_ - 57:19

correct [36]_ - 13:6_, 14:6_, 40:11_, 48:1_, 58:2_, 59:1_, 59:3_, 59:18_, 105:22_, 106:5_, 106:7_, 119:4_, 120:22_, 123:16_, 124:1_, 124:2_, 129:23_, 131:25_, 132:1_, 149:6_, 153:20_, 154:18_, 154:19_, 159:25_, 167:7_, 169:10_, 169:11_, 194:23_, 194:24_, 198:3_, 199:2_, 222:7_, 222:10_, 225:6_, 225:9_, 232:23

corresponded [1]_ - 224:9

cost [2]_ - 43:9_, 176:3

**Counsel** [3]_ - 4:6_, 53:7_, 222:4

**counsel** [2]_ - 4:19_, 202:24

**Counselor** [2]_ - 160:18_, 180:8

**counterpoint** [1]_ - 198:19

**country** [5]_ - 183:19_, 206:4_, 206:6_, 230:3_, 230:20

**county** [1]_ - 17:22

**County** [7]_ - 7:17_, 7:24_, 8:7_, 8:12_, 15:19_, 15:24_, 16:14

**couple** [4]_ - 93:22_, 102:1_, 108:12_, 151:13

**coupled** [1]_ - 151:15

**course** [14]_ - 6:19_, 36:14_, 47:25_, 67:15_, 111:21_, 121:16_, 122:6_, 129:16_, 151:18_, 152:16_, 158:14_, 159:12_, 220:24_, 231:15

**Court** [24]_ - 4:1, 4:12_, 5:6_, 35:8_, 63:9_, 64:15_, 73:17_, 103:8_, 123:1_, 149:7_, 149:17_, 150:3_, 150:7_, 158:17_, 159:17_, 192:14_, 194:9_, 196:6_, 202:4_, 220:9_, 221:1_, 221:11_, 224:24_, 232:2

**court** [16]_ - 5:4_, 5:24_, 6:2_, 6:5_, 67:7_, 67:9_, 67:10_, 108:23_, 146:9_, 155:4_, 155:19_, 160:3_, 162:1_, 162:5_, 180:18

**COURT** [397]_ - 4:2_, 4:11_, 4:15_, 4:17_, 4:23_, 5:7_, 5:12_, 5:15_, 5:17_, 5:20_, 5:22_, 6:1_, 6:6_, 6:11_, 6:13_, 6:22_, 7:8_, 9:23_, 10:13_, 10:15_, 10:22_, 11:17_, 12:15_, 13:11_, 13:20_, 14:15_, 14:17_, 14:20_, 14:23_, 15:11_, 18:21_, 19:9_, 19:20_, 19:22_, 20:5_, 20:24_, 21:6_, 21:19_, 22:7_, 22:16_, 22:23_, 23:11_, 23:17_, 23:24_, 24:10_, 24:17_, 24:24_, 25:11_, 26:7_, 26:17_, 27:24_, 29:9_, 30:11_, 31:2_, 31:4_, 31:6_, 31:11_, 31:24_, 35:12_, 39:2_, 39:5_, 45:21_, 46:4_, 52:4_

_, 53:7_, 53:9_, 53:13_, 56:24_, 58:16_, 58:23_, 59:14_, 60:2_, 60:10_, 60:17_, 60:19_, 60:23_, 62:13_, 62:16_, 62:20_, 62:24_, 63:2_, 63:5_, 63:11_, 63:19_, 63:24_, 64:2_, 64:18_, 64:23_, 65:8_, 65:11_, 65:15_, 66:3_, 71:21_, 73:19_, 80:13_, 81:19_, 86:10_, 88:21_, 89:20_, 94:1_, 94:18_, 95:25_, 98:1_, 98:4_, 102:12_, 102:24_, 103:5_, 103:18_, 105:18_, 106:1_, 106:17_, 108:18_, 108:21_, 109:2_, 109:4_, 109:7_, 110:7_, 110:10_, 110:15_, 111:2_, 112:11_, 112:25_, 113:4_, 113:8_, 114:25_, 115:13_, 115:15_, 115:18_, 115:25_, 116:3_, 116:5_, 117:10_, 117:15_, 117:19_, 118:10_, 118:12_, 118:22_, 119:2_, 119:5_, 119:20_, 119:23_, 120:13_, 120:18_, 121:7_, 121:9_, 121:12_, 121:20_, 122:3_, 122:7_, 122:11_, 122:21_, 123:13_, 123:19_, 123:24_, 124:3_, 124:7_, 124:13_, 124:17_, 124:20_, 124:25_, 125:2_, 125:8_, 125:21_, 126:21_, 127:10_, 127:25_, 128:2_, 128:5_, 132:8_, 132:10_, 132:16_, 133:9_, 133:18_, 134:11_, 134:14_, 134:18_, 134:24_, 135:2_, 136:7_, 137:3_, 137:5_, 137:10_, 137:12_, 138:9_, 138:25_, 139:12_, 140:9_, 140:11_, 140:15_, 141:15_, 141:18_, 141:24_, 142:17_, 143:24_, 144:1_, 144:3_, 144:19_, 145:14_, 145:17_, 145:20_, 146:7_, 146:15_, 147:6_, 147:8_, 147:20_, 147:25_, 148:14_, 148:18_, 149:4_, 149:8_, 149:11_, 149:13_, 149:16_, 150:14_, 150:22_, 151:8_, 151:25_, 152:25_, 153:19_, 153:23_, 154:2_, 154:7_, 154:11_, 154:14_, 154:20_, 158:10_, 158:19_, 158:22_, 159:5_, 159:23_, 160:1_, 160:8_, 160:11_, 160:13_, 160:21_, 161:9_,

161:11_, 161:17_, 161:20_, 161:23_, 162:11_, 163:2_, 163:4_, 163:10_, 163:12_, 164:19_, 164:24_, 165:14_, 165:16_, 166:1_, 166:12_, 167:6_, 167:9_, 167:12_, 167:15_, 167:17_, 167:22_, 168:1_, 168:22_, 168:25_, 169:16_, 169:21_, 169:25_, 170:2_, 170:19_, 171:23_, 173:18_, 173:20_, 173:24_, 176:9_, 176:25_, 177:2_, 177:5_, 178:6_, 178:21_, 178:23_, 179:1_, 180:3_, 180:6_, 180:12_, 180:22_, 181:3_, 181:6_, 181:10_, 181:14_, 181:19_, 181:22_, 182:4_, 182:16_, 182:24_, 183:3_, 184:24_, 185:11_, 185:22_, 186:4_, 186:24_, 187:13_, 187:15_, 187:18_, 189:4_, 189:6_, 189:9_, 190:6_, 190:8_, 192:4_, 192:7_, 192:17_, 193:18_, 194:7_, 194:12_, 194:22_, 195:1_, 195:11_, 195:17_, 196:8_, 196:22_, 197:2_, 197:6_, 197:10_, 197:12_, 197:17_, 198:3_, 198:13_, 198:21_, 198:25_, 199:6_, 199:16_, 199:19_, 200:8_, 200:22_, 201:7_, 201:14_, 201:20_, 202:1_, 202:3_, 202:15_, 204:3_, 204:6_, 204:12_, 205:1_, 208:10_, 210:8_, 211:2_, 211:4_, 212:20_, 214:4_, 214:7_, 215:22_, 216:5_, 216:20_, 217:22_, 217:24_, 218:4_, 219:23_, 220:1_, 220:3_, 220:7_, 220:17_, 221:2_, 221:12_, 221:15_, 221:18_, 221:22_, 222:1_, 222:23_, 223:20_, 224:14_, 224:22_, 224:24_, 225:2_, 225:22_, 226:4_, 226:7_, 226:9_, 226:15_, 227:10_, 227:14_, 227:16_, 227:19_, 228:3_, 228:5_, 228:15_, 228:23_, 229:1_, 229:3_, 230:5_, 230:11_, 230:16_, 230:24_, 231:2_, 231:5_, 231:8_, 231:25_, 232:11_, 232:15_, 232:17_, 233:1

**Court's** [21]_ - 63:17_, 103:11_, 117:12_, 121:14_, 149:2_, 150:10_,

154:21_, 158:15_, 160:16_, 161:12_, 195:15_, 198:4_, 198:14_, 198:16_, 199:8_, 201:16_, 202:8_, 224:19_, 227:16_, 229:3_, 229:6

**court-certified** [1]_ - 5:24

**courteous** [1]_ - 14:11

**Courtroom** [1]_ - 137:13

**courtroom** [24]_ - 6:12_, 35:4_, 35:5_, 62:19_, 64:12_, 65:10_, 68:25_, 71:12_, 121:19_, 125:1_, 148:17_, 160:12_, 194:11_, 194:15_, 194:17_, 194:23_, 199:18_, 210:9_, 211:7_, 220:6_, 220:9_, 221:25_, 229:7_, 231:24

**COURTROOM** [20]_ - 4:4_, 6:23_, 7:3_, 14:25_, 15:5_, 15:7_, 31:14_, 31:19_, 65:18_, 65:23_, 110:17_, 110:22_, 125:10_, 125:15_, 170:8_, 170:13_, 182:7_, 182:12_, 204:13_, 204:18

**cousins** [1]_ - 207:14

**covered** [1]_ - 159:10

**coworkers** [1]_ - 206:25

**crawling** [1]_ - 30:5

**creatures** [2]_ - 30:4_, 30:9

**credit** [3]_ - 46:23_, 46:25_, 85:17

**crime** [3]_ - 66:19_, 66:22_, 66:24

**crimes** [1]_ - 126:7

**criminal** [1]_ - 69:6

**cross** [20]_ - 13:20_, 29:10_, 56:24_, 102:13_, 103:14_, 121:7_, 150:8_, 153:12_, 153:16_, 155:1_, 156:24_, 157:11_, 166:12_, 180:4_, 192:5_, 199:21_, 202:10_, 222:23_, 228:24_, 230:14

**CROSS** [7]_ - 13:23_, 29:12_, 57:1_, 102:15_, 166:14_, 192:9_, 223:1

**cross-examination** [16]_ - 13:20_, 29:10_, 56:24_, 102:13_, 103:14_, 121:7_, 150:8_, 155:1_, 166:12_, 180:4_, 192:5_, 199:21_, 202:10_, 222:23

_, 228:24_, 230:14

**CROSS-EXAMINATION** [7]_ - 13:23_, 29:12_, 57:1_, 102:15_, 166:14_, 192:9_, 223:1

**cross-examine** [2]_ - 153:16_, 156:24

**cross-examined** [1]_ - 153:12

**cross-examining** [1]_ - 157:11

**crystalized** [1]_ - 156:11

**cues** [1]_ - 30:8

**current** [1]_ - 111:15

**custody** [1]_ - 124:10

**customer** [14]_ - 33:12_, 33:16_, 33:18_, 33:20_, 33:23_, 34:1_, 37:15_, 41:5_, 41:7_, 42:19_, 45:9_, 45:11_, 47:10_, 56:8

### D

**D.................** [1] - 3:14
**D.............................** [1] - 3:6
**dad** [1]_ - 202:13
**dangerous** [1]_ - 157:24
**data** [5]_ - 172:8_, 172:12_, 172:15_, 172:17_, 175:6
**date** [34]_ - 12:9_, 12:22_, 25:15_, 25:16_, 26:21_, 26:22_, 44:25_, 45:3_, 47:12_, 47:14_, 63:15_, 67:4_, 74:19_, 74:22_, 75:15_, 76:17_, 76:25_, 77:9_, 83:21_, 89:11_, 91:13_, 92:21_, 93:7_, 93:20_, 96:10_, 96:24_, 98:16_, 99:13_, 100:1_, 144:13_, 144:16_, 144:17_, 209:8_, 209:15
**dates** [1]_ - 179:23
**daughter** [3]_ - 84:8_, 88:6_, 226:13
**day-to-day** [1]_ - 52:17
**days** [10]_ - 20:17_, 26:3_, 43:19_, 100:22_, 193:1_, 215:5_, 215:7_, 215:10_, 227:6_, 228:17
**deal** [3]_ - 85:13_, 85:14_, 85:15

**dealer** [3]_ - 50:10_, 50:13_, 50:14
**dear** [1]_ - 156:5
**Dear** [2]_ - 149:5_, 217:6
**debris** [1]_ - 23:20
**debts** [2]_ - 229:18_, 229:20
**decades** [1]_ - 105:10
**decide** [5]_ - 149:21_, 183:16_, 215:3_, 215:12_, 215:14
**decided** [3]_ - 183:18_, 191:5_, 206:2
**decides** [1]_ - 158:15
**decision** [3]_ - 155:18_, 191:15_, 191:18
**deck** [1]_ - 213:20
**deemed** [1]_ - 108:22
**DEFENDANT** [1] - 3:16
**defendant** [56]_ - 26:11_, 27:19_, 28:5_, 35:11_, 57:23_, 71:19_, 149:19_, 150:7_, 153:14_, 153:17_, 158:12_, 158:15_, 159:20_, 184:6_, 184:15_, 184:18_, 185:3_, 185:8_, 196:4_, 196:13_, 196:16_, 202:19_, 203:9_, 203:16_, 206:8_, 206:19_, 207:2_, 207:8_, 207:11_, 207:17_, 207:20_, 207:24_, 208:3_, 208:5_, 209:17_, 210:1_, 211:18_, 211:23_, 211:25_, 213:22_, 215:4_, 216:3_, 218:20_, 219:18_, 219:20_, 220:18_, 220:24_, 222:10_, 222:12_, 224:1_, 229:15_, 229:18_, 230:7_, 230:13_, 230:20
**defendant's** [4]_ - 150:1_, 195:9_, 195:25_, 196:12
**defense** [5]_ - 4:16_, 63:9_, 63:20_, 157:19_, 232:15
**defer** [1]_ - 221:11
**definitely** [1]_ - 58:12
**degrees** [1]_ - 114:9
**demeanor** [2]_ - 35:22_, 117:3
**denying** [2]_ - 224:5_, 224:6
**Department** [3]_ - 8:13_, 16:19_, 16:21

**depict** [7]_ - 10:7_, 11:8_, 19:12_, 112:20_, 127:17_, 131:12_, 187:6
**depicted** [12]_ - 21:11_, 22:9_, 50:1_, 52:12_, 96:3_, 118:5_, 119:10_, 126:25_, 127:15_, 127:18_, 128:18_, 188:23
**depicts** [2]_ - 112:21_, 187:7
**deploy** [1]_ - 9:17
**deposit** [3]_ - 42:14_, 42:21_, 42:24
**deposited** [1]_ - 40:21
**deputies** [2]_ - 9:16_, 64:20
**deputy** [10]_ - 5:3_, 5:8_, 5:15_, 7:21_, 7:22_, 8:2_, 8:8_, 14:17_, 210:9_, 211:7
**Deputy** [1]_ - 137:13
**DEPUTY** [20]_ - 4:4_, 6:23_, 7:3_, 14:25_, 15:5_, 15:7_, 31:14_, 31:19_, 65:18_, 65:23_, 110:17_, 110:22_, 125:10_, 125:15_, 170:8_, 170:13_, 182:7_, 182:12_, 204:13_, 204:18
**derived** [3]_ - 173:11_, 176:17_, 178:11
**describe** [17]_ - 35:7_, 38:6_, 47:16_, 56:2_, 56:15_, 61:5_, 71:14_, 83:24_, 84:1_, 132:20_, 133:20_, 142:8_, 142:11_, 147:12_, 186:17_, 206:18_, 216:13
**described** [9]_ - 35:3_, 71:19_, 82:11_, 95:3_, 123:17_, 127:18_, 133:12_, 135:21_, 140:24
**description** [1]_ - 34:22
**designed** [1]_ - 157:15
**destructive** [1]_ - 221:14
**detail** [2]_ - 199:9_, 227:20
**detailed** [1]_ - 129:16
**details** [1]_ - 208:11
**detective** [3]_ - 8:9_, 16:22_, 232:7
**device** [5]_ - 38:10_, 177:10_, 179:6_, 179:17_, 221:14

**devices** [1]_ - 154:1
**die** [3]_ - 106:10_, 106:14_, 218:24
**dies** [1]_ - 108:4
**different** [15]_ - 26:3_, 68:17_, 70:6_, 75:25_, 82:2_, 82:5_, 83:4_, 129:7_, 129:10_, 159:16_, 219:9_, 219:10_, 219:11_, 226:17
**difficult** [2]_ - 191:17_, 191:18
**digital** [2]_ - 171:7_, 171:8
**diligence** [1]_ - 6:16
**direct** [12]_ - 8:17_, 16:24_, 33:7_, 36:4_, 97:9_, 97:23_, 105:25_, 195:15_, 198:15_, 200:6_, 227:16_, 227:23
**DIRECT** [9]_ - 7:12_, 15:14_, 32:3_, 66:7_, 111:5_, 125:24_, 170:22_, 182:20_, 205:4
**directing** [1]_ - 130:2
**directly** [4]_ - 40:20_, 41:12_, 130:6_, 196:3
**disassembled** [1]_ - 188:20
**discern** [1]_ - 174:4
**discovered** [4]_ - 123:4_, 189:22_, 190:24_, 191:3
**discovery** [2]_ - 63:20_, 63:22
**discuss** [2]_ - 69:21_, 194:13
**discussed** [2]_ - 70:4_, 80:11
**discusses** [1]_ - 151:17
**discussing** [3]_ - 82:9_, 185:7_, 231:15
**discussion** [5]_ - 64:19_, 77:23_, 85:3_, 121:15_, 220:9
**discussions** [4]_ - 73:2_, 87:14_, 97:20_, 231:14
**display** [1]_ - 117:16
**distance** [1]_ - 153:4
**district** [5]_ - 7:25_, 8:8_, 8:9_, 8:10_, 8:23
**District** [6]_ - 16:11_, 16:15_, 17:13_, 64:7_, 66:19_, 69:10

**DNA** [1] - 156:15
**Docket** [5] - 4:22, 154:9, 198:16, 199:10, 201:17
**docket** [4] - 154:4, 154:6, 227:17, 227:20
**document** [21] - 45:24, 46:21, 47:6, 128:24, 147:22, 148:8, 149:3, 155:12, 155:25, 156:11, 158:24, 159:3, 159:12, 159:15, 160:3, 161:3, 161:25, 162:3, 206:3, 217:2, 225:19
**documenting** [1] - 128:22
**documents** [4] - 41:17, 50:1, 183:19, 214:24
**Dollar** [3] - 143:22, 144:7, 144:14
**domestic** [1] - 111:20
**Donald** [5] - 113:22, 129:2, 156:5, 190:17, 217:7
**donate** [1] - 228:6
**donated** [1] - 227:25
**done** [10] - 19:3, 86:14, 97:16, 100:5, 146:21, 148:4, 162:18, 165:5, 202:11, 205:16
**Donnelly** [2] - 4:9, 64:24
**DONNELLY** [124] - 31:9, 31:25, 32:4, 35:10, 35:13, 35:14, 38:24, 39:3, 39:6, 39:7, 45:18, 45:22, 46:2, 46:5, 46:8, 49:21, 49:23, 50:20, 50:23, 52:1, 52:5, 52:8, 52:10, 53:8, 53:11, 53:14, 53:23, 53:25, 54:3, 54:4, 54:15, 54:18, 54:21, 54:24, 55:1, 55:9, 55:12, 55:21, 55:24, 56:1, 56:9, 56:12, 56:13, 56:22, 59:12, 60:1, 60:9, 60:18, 60:20, 61:1, 62:11, 62:23, 64:4, 65:7, 65:13, 66:4, 66:8, 71:18, 71:22, 71:23, 73:16, 73:20, 73:23, 75:18, 75:20, 80:10, 80:14, 80:15, 81:16, 81:20, 82:20, 82:21, 86:8, 86:11, 86:12,

88:18, 88:22, 89:1, 89:17, 89:21, 89:23, 90:5, 90:7, 90:14, 90:16, 90:20, 90:22, 91:1, 91:3, 91:21, 91:25, 92:6, 92:7, 92:23, 92:25, 93:9, 93:11, 93:23, 94:2, 94:16, 94:19, 95:17, 95:19, 95:23, 96:1, 96:2, 97:24, 98:2, 98:5, 98:6, 98:24, 99:1, 102:10, 102:23, 103:4, 105:16, 105:24, 106:16, 108:10, 108:17, 109:1, 109:3, 109:5, 110:9
**door** [8] - 52:21, 85:5, 195:24, 197:13, 198:21, 203:10, 203:11, 228:10
**Dos** [3] - 9:8, 11:6, 17:7
**down** [27] - 40:12, 43:23, 44:5, 44:6, 44:11, 48:13, 50:21, 68:25, 75:6, 76:19, 77:2, 79:3, 82:20, 90:20, 91:23, 92:2, 92:18, 92:23, 95:17, 97:16, 99:15, 105:2, 114:19, 174:20, 176:5, 178:2, 209:24
**drag** [1] - 13:25
**draw** [1] - 229:5
**drawer** [4] - 40:15, 40:20, 40:21, 41:2
**drink** [2] - 200:25, 201:1
**drive** [3] - 196:18, 196:19, 201:21
**driver's** [1] - 196:18
**drivers** [1] - 104:15
**driving** [3] - 29:4, 203:13, 203:18
**dropping** [1] - 224:7
**drove** [1] - 201:18
**drugs** [3] - 70:5, 70:8, 201:1
**due** [1] - 222:3
**dump** [1] - 201:24
**during** [31] - 36:14, 41:22, 47:25, 63:20, 67:15, 72:19, 111:21, 122:6, 131:10, 131:14, 131:17, 132:19, 133:15, 135:18, 136:24, 138:6, 138:23, 140:4, 141:11, 145:9, 147:1, 148:11, 161:6, 162:24,

165:10, 168:15, 171:17, 184:17, 203:2, 207:6, 209:21
**dust** [1] - 223:13
**duties** [3] - 7:22, 15:22, 111:15

E

**early** [1] - 70:23
**earplugs** [2] - 21:23, 21:24
**easier** [1] - 134:25
**east** [5] - 18:3, 18:4, 18:5, 18:8, 18:11
**eastern** [3] - 11:11, 11:20, 12:20
**easy** [1] - 191:15
**eat** [1] - 227:1
**effectively** [1] - 155:7
**effort** [1] - 64:25
**eight** [1] - 16:8
**either** [5] - 61:17, 79:24, 99:12, 104:12, 219:6
**elect** [1] - 128:24
**electrical** [2] - 167:21, 168:3
**electronic** [1] - 61:20
**electronically** [1] - 225:18
**Eleventh** [1] - 155:18
**elicit** [2] - 196:6, 215:17
**elicited** [2] - 230:7, 230:13
**eliciting** [2] - 184:25, 216:5
**eliminated** [1] - 152:23
**Ellen** [1] - 138:1
**ELMO** [11] - 137:14, 137:19, 144:2, 149:10, 150:24, 159:4, 161:19, 163:14, 168:24, 190:7, 216:21
**email** [1] - 47:23
**emails** [1] - 172:20
**emergency** [2] - 9:4, 14:2
**employed** [1] - 230:7
**employee** [3] - 50:17, 106:10, 184:15
**empty** [3] - 22:10, 24:13,

123:14
**encountered** [1] - 120:4
**end** [15] - 18:6, 20:17, 57:14, 57:16, 59:5, 81:9, 81:15, 121:16, 142:12, 143:9, 143:10, 149:22, 157:14, 174:10, 195:9
**ended** [4] - 53:9, 105:11, 196:13, 230:3
**ending** [1] - 42:22
**ends** [3] - 133:1, 165:22, 221:19
**energy** [2] - 228:1, 228:6
**enforcement** [3] - 113:19, 191:15, 191:19
**engage** [5] - 71:2, 103:14, 107:2, 204:3, 231:13
**English** [8] - 116:17, 116:18, 180:16, 182:25, 190:11, 192:15, 192:19, 216:25
**enjoyed** [1] - 125:4
**entails** [1] - 151:1
**enter** [5] - 67:1, 183:18, 183:19, 205:25, 206:2
**entered** [8] - 6:12, 65:10, 125:1, 160:12, 183:21, 199:18, 206:1, 221:25
**entire** [7] - 62:2, 151:3, 151:6, 151:21, 152:19, 155:11, 159:24
**entirely** [1] - 224:15
**entitled** [1] - 230:9
**Entry** [5] - 4:22, 154:9, 198:16, 199:10, 201:17
**entry** [3] - 154:4, 227:17, 227:20
**envelope** [2] - 165:4, 166:7
**Epifanio** [1] - 106:13
**Epifanio's** [4] - 200:2, 200:13, 200:18, 225:25
**equip** [1] - 134:20
**erased** [1] - 108:5
**escape** [1] - 221:4
**eSIM** [1] - 61:20
**essentially** [12] - 32:15

_, 34:15_, 36:22_, 41:25_, 42:18_, 42:19_, 53:5_, 53:6_, 53:10_, 56:7_, 128:22_, 198:13

**estas** [1]_ - 192:11

**estimate** [2]_ - 62:8_, 124:5

**et** [1]_ - 197:15

**evade** [1]_ - 155:1

**evening** [4]_ - 116:19_, 231:21_, 232:21_, 232:22

**events** [1]_ - 10:7

**eventually** [6]_ - 18:5_, 37:9_, 84:9_, 101:22_, 183:25_, 215:3

**Evidence** [4]_ - 195:21_, 198:5_, 199:7_, 202:9

**evidence** [115]_ - 10:18_, 12:14_, 12:25_, 13:10_, 18:20_, 19:17, 19:25, 20:2_, 21:14_, 21:18_, 22:6_, 22:15_, 22:22_, 23:10_, 25:10_, 26:6_, 38:25_, 39:9_, 45:19_, 46:3_, 52:3_, 63:17_, 73:18_, 88:20_, 89:18_, 93:25_, 94:4_, 94:17_, 95:24_, 97:25_, 98:9_, 111:22_, 111:25_, 112:2_, 112:24_, 113:6_, 113:20_, 115:12_, 115:16_, 118:9_, 118:13, 118:14_, 119:19_, 119:24_, 120:7_, 123:3_, 123:18_, 126:13_, 127:24_, 128:3_, 129:12_, 131:1_, 132:7_, 132:13_, 134:6_, 134:8_, 135:5_, 136:5_, 137:2_, 137:8_, 139:15_, 139:24_, 140:8, 140:12_, 141:14_, 141:21_, 145:13_, 145:23_, 145:25_, 146:1_, 147:4_, 147:10_, 148:13_, 152:1_, 153:13_, 157:15_, 157:17_, 158:13_, 161:8_, 161:14_, 162:4_, 163:1_, 163:7_, 165:13_, 165:17_, 167:7_, 167:19_, 169:23_, 170:3_, 171:20_, 173:17_, 173:22_, 174:7_, 176:24_, 177:3_, 178:20_, 178:24_, 185:17_, 187:12_, 187:16_, 187:25_, 188:1_, 189:3_, 189:7_, 198:15_, 202:4_, 208:8_, 211:1_, 211:5_, 212:18_, 220:22_, 227:24_, 229:6_, 230:6

**evident** [2]_ - 175:6_, 179:19

**evidentiary** [2]_ - 122:22_, 232:12

**ex** [1]_ - 184:22

**ex-boss** [1]_ - 184:22

**exact** [2]_ - 122:17_, 159:15

**exactly** [6]_ - 49:9_, 51:5_, 51:6_, 61:5_, 85:2_, 166:20

**EXAMINATION** [20]_ - 7:12_, 13:23_, 15:14_, 29:12_, 32:3_, 57:1_, 60:24_, 66:7_, 102:15_, 111:5_, 125:24_, 166:14_, 169:1_, 170:22_, 182:20_, 192:9_, 202:17_, 205:4_, 223:1_, 229:10

**examination** [20]_ - 13:20_, 29:10_, 56:24_, 65:6_, 102:13_, 103:14_, 121:7_, 150:8_, 155:1_, 166:12_, 180:4_, 192:5_, 199:21_, 202:10_, 204:4_, 216:7_, 222:4_, 222:23_, 228:24_, 230:14

**examine** [4]_ - 117:13_, 126:12_, 153:16_, 156:24

**examined** [1]_ - 153:12

**Examiner** [1]_ - 176:21

**examiner** [6]_ - 171:7_, 171:8_, 171:10_, 171:18_, 172:5_, 221:14

**examining** [1]_ - 157:11

**example** [1]_ - 123:13

**exceed** [2]_ - 201:16_, 227:23

**excellent** [2]_ - 5:12_, 6:22

**excerpt** [3]_ - 149:6_, 149:13_, 149:18

**exchange** [2]_ - 85:20_, 85:22

**exclude** [1]_ - 151:19

**excluded** [1]_ - 158:14

**excuse** [7]_ - 138:12_, 140:6_, 141:7_, 145:10_, 145:12_, 156:12_, 189:1

**excused** [9]_ - 4:21_, 14:18_, 31:6_, 62:13_, 110:10_, 121:10_, 148:19_, 169:17_, 180:7

**executed** [1]_ - 105:8

**exercise** [1]_ - 157:13

**exhibit** [28]_ - 13:13_,

63:6_, 63:14_, 63:16_, 63:17_, 63:23_, 63:25_, 89:22_, 114:8_, 114:24_, 117:22_, 122:22_, 123:22_, 134:6_, 134:9_, 140:14_, 143:12_, 154:17_, 161:15_, 164:18_, 165:24_, 167:13_, 173:20_, 179:9_, 180:21_, 192:3_, 217:17_, 219:4

**Exhibit** [210] - 3:2, 3:17_, 9:21_, 9:25_, 10:2_, 10:12_, 10:20_, 11:8_, 11:16_, 12:13_, 12:25_, 13:2_, 13:9_, 18:24_, 18:25_, 19:1_, 19:2_, 19:18_, 20:4_, 20:7_, 20:23_, 21:5_, 21:13_, 21:18_, 22:15_, 22:21_, 23:8_, 23:15_, 23:23_, 24:8_, 24:16_, 24:23_, 25:10_, 25:21_, 26:6_, 26:15_, 27:23_, 28:14_, 28:24_, 74:3_, 75:22_, 99:2_, 112:8_, 112:13_, 112:24_, 113:6_, 113:25_, 114:9_, 114:14_, 114:22_, 115:3_, 115:12_, 115:16_, 117:22_, 118:6_, 118:9, 118:14_, 118:16_, 118:25_, 119:11_, 119:14_, 119:19_, 119:24_, 120:3_, 122:18_, 123:2_, 123:3_, 123:7_, 123:9_, 123:10_, 123:11_, 126:19_, 127:1_, 127:7_, 127:13_, 127:19_, 127:24_, 128:3_, 128:8_, 128:18_, 132:15_, 132:21_, 133:7_, 133:17_, 134:7_, 134:8_, 135:5_, 135:12_, 135:13_, 135:15_, 135:25_, 136:10_, 136:11_, 137:1_, 137:17_, 137:20_, 137:22_, 138:19_, 139:16_, 139:19_, 139:22_, 140:1_, 140:7, 140:12_, 140:18_, 141:4_, 142:3_, 144:8_, 144:14_, 145:1_, 145:3_, 146:2_, 147:15_, 147:16_, 147:17_, 147:23_, 148:3_, 148:13_, 149:12_, 154:17_, 159:6_, 160:20_, 161:3_, 161:8_, 161:14_, 161:19_, 161:21_, 163:15_, 163:20_, 163:22_, 164:1_, 164:6_, 164:10_, 164:18_, 164:22_, 165:3_, 165:7_, 165:13_, 165:17_, 165:19_, 165:20_, 166:7_, 167:5_, 167:19_, 171:21_,

172:12_, 172:25_, 173:4_, 173:10_, 173:14_, 173:17_, 173:22_, 174:17_, 174:18_, 175:1_, 175:10_, 175:13_, 175:18_, 175:25_, 176:8_, 176:11_, 176:24_, 177:3_, 177:8_, 177:13_, 177:24_, 178:5_, 178:10_, 178:14_, 178:20_, 178:24_, 179:7_, 179:16_, 179:19_, 179:24_, 185:18_, 186:15_, 186:23_, 187:9_, 187:12_, 187:16_, 188:12_, 189:2_, 189:7_, 189:16_, 190:3_, 208:8_, 208:19_, 208:23_, 209:4_, 209:14_, 210:5_, 210:14_, 210:18_, 211:1_, 211:5_, 211:8_, 211:12_, 212:18_, 214:3_, 216:18_, 216:24_, 217:20_, 218:15

**exhibits** [18]_ - 10:15_, 18:20_, 19:11_, 19:22_, 25:23_, 63:8_, 118:24_, 130:25_, 132:7_, 136:19_, 137:5_, 141:8_, 141:18_, 145:20_, 147:18_, 162:23_, 163:4_, 163:8

**EXHIBITS** [2] - 3:1, 3:16

**Exhibits** [30] - 10:17, 19:24, 20:1_, 117:8_, 117:14_, 123:8_, 123:9_, 123:11_, 123:12_, 131:1, 132:12_, 136:13, 137:7_, 138:12_, 139:14_, 141:4, 141:20_, 143:5_, 145:6_, 145:11, 145:22_, 146:12_, 146:23_, 147:4, 147:9_, 147:13_, 162:14_, 162:20_, 163:1, 163:6

**exit** [2]_ - 194:15_, 220:8

**exited** [7]_ - 12:7_, 62:19_, 121:19_, 148:17_, 194:11_, 220:6_, 231:24

**expect** [1]_ - 84:14

**expense** [1]_ - 6:4

**experience** [6]_ - 20:19_, 28:6_, 41:17_, 61:14_, 167:21_, 168:3

**expert** [2]_ - 63:21_, 221:14

**expiration** [1]_ - 43:18

**expires** [1]_ - 43:20

**explain** [7]_ - 128:20_, 154:23_, 155:16_, 156:20_, 179:18_, 184:11_, 215:18

**explanation** [1]_ - 84:21
**extended** [1]_ - 20:16
**extra** [2]_ - 156:24_, 158:16
**extract** [1]_ - 174:11
**extraction** [13]_ - 172:4_, 172:7_, 172:13_, 173:11_, 173:13_, 174:7_, 174:10_, 176:17_, 176:19_, 177:14 _, 178:11_, 178:13_, 178:16
**extremely** [3]_ - 14:10_, 102:20_, 104:18

F

**F-O-O** [1]_ - 125:19
**F.4th** [1]_ - 155:20
**facility** [1]_ - 17:8
**facing** [3]_ - 13:17_, 68:2 _, 68:4
**fact** [9]_ - 81:13_, 127:21_, 151:19_, 166:17_, 169:12 _, 188:5_, 191:8_, 202:22 _, 211:22
**factory** [3]_ - 83:1_, 83:2_, 142:25
**factually** [1]_ - 159:23
**failed** [1]_ - 156:6
**fair** [6]_ - 17:19_, 107:16_, 119:13_, 151:21_, 152:20
**fairly** [6]_ - 10:7_, 19:12_, 58:7_, 115:5_, 115:8_, 131:12
**fairness** [1]_ - 150:4
**familiar** [5]_ - 17:19_, 42:2_, 68:7_, 70:17_, 70:21
**family** [9]_ - 116:25_, 185:7_, 191:22_, 192:23_, 205:12_, 207:7_, 207:11_, 207:13_, 226:25
**Family** [3]_ - 143:22_, 144:7_, 144:13
**family's** [1]_ - 117:3
**far** [7]_ - 27:5_, 82:17_, 130:3_, 166:25_, 198:8_, 201:2_, 232:2
**fast** [1]_ - 203:25
**father** [1]_ - 105:2
**fault** [1]_ - 145:5
**fax** [1]_ - 225:13

**FBI** [31]_ - 15:25_, 16:5_, 33:9_, 98:15_, 100:5_, 100:6_, 100:22_, 100:25_, 111:13_, 113:18_, 120:11 _, 121:1_, 126:3_, 126:9_, 126:10_, 128:9_, 128:12_, 128:14_, 128:20_, 128:24 _, 129:20_, 129:23_, 130:5_, 130:8_, 167:1_, 171:6_, 171:7_, 171:9_, 191:7_, 191:8_, 196:16
**FD-597** [2]_ - 120:9_, 120:25
**federal** [2]_ - 67:10_, 67:11
**Federal** [6]_ - 111:10_, 171:2_, 195:21_, 198:5_, 199:7_, 202:9
**fee** [4]_ - 43:6_, 44:6_, 44:8
**feed** [4]_ - 30:8_, 30:14_, 58:8_, 58:9
**feeding** [1]_ - 30:17
**fees** [1]_ - 176:3
**feet** [1]_ - 95:15
**fell** [1]_ - 193:2
**felt** [1]_ - 190:24
**fenced** [1]_ - 84:2
**fenced-in** [1]_ - 84:2
**few** [1]_ - 11:1
**field** [6]_ - 32:18_, 171:15 _, 173:5_, 174:1_, 174:6_, 218:7
**fifth** [1]_ - 207:22
**fight** [2]_ - 193:9_, 197:15
**File** [1]_ - 174:19
**file** [1]_ - 149:25
**filed** [3]_ - 67:18_, 153:20 _, 153:24
**filings** [1]_ - 155:19
**fill** [1]_ - 43:17
**filled** [2]_ - 120:9_, 120:24
**fills** [1]_ - 49:10
**final** [3]_ - 93:9_, 124:14_, 153:1
**finally** [1]_ - 164:10
**financial** [2]_ - 46:16_, 46:18
**financially** [1]_ - 46:15
**fine** [9]_ - 68:6_, 122:21_, 136:7_, 183:2_, 185:1_, 195:23_, 196:5_, 221:2_, 223:8

**finger** [3]_ - 54:9_, 74:8_, 133:24
**finish** [3]_ - 123:21_, 156:7_, 231:10
**finished** [3]_ - 19:6_, 56:16_, 194:18
**finishes** [1]_ - 190:18
**Fiorella** [1]_ - 181:21
**fire** [1]_ - 107:1
**firearm** [3]_ - 64:8_, 64:13 _, 66:23
**firearms** [3]_ - 64:8_, 70:11_, 70:15
**fired** [7]_ - 79:9_, 106:25_, 107:6_, 107:7_, 107:8_, 107:9_, 107:15
**firing** [2]_ - 87:9_, 142:10
**first** [43]_ - 7:4_, 11:1_, 15:7_, 31:20_, 31:22_, 36:22_, 43:7_, 50:22_, 52:11_, 65:24_, 75:24_, 110:23_, 111:24_, 119:14 _, 120:3_, 125:16_, 148:10_, 148:11_, 149:8_, 149:9_, 150:9_, 156:1_, 156:2_, 157:1_, 157:8_, 158:2_, 158:20_, 161:5_, 161:6_, 170:14_, 182:13_, 184:6_, 186:14_, 186:18_, 186:19_, 193:1_, 196:21_, 204:19_, 206:17_, 207:20 _, 219:3_, 230:8
**fit** [2]_ - 132:25_, 168:5
**fitted** [3]_ - 142:11_, 143:9 _, 165:21
**five** [11]_ - 16:6_, 166:18_, 168:8_, 184:16_, 184:17_, 207:18_, 223:10_, 223:13 _, 225:5_, 225:8_, 225:11
**five-year** [1]_ - 184:17
**fix** [1]_ - 41:25
**fixture** [1]_ - 82:11
**flag** [1]_ - 232:12
**flashing** [1]_ - 116:2
**flesh** [1]_ - 220:4
**flip** [1]_ - 182:24
**flip-flop** [1]_ - 182:24
**floor** [4]_ - 120:17_, 130:7 _, 134:22_, 146:2
**flop** [1]_ - 182:24
**Florida** [12]_ - 8:21_, 17:1 _, 30:5_, 57:9_, 97:11_, 97:13_, 97:16_, 224:2_, 224:4_, 224:7_, 224:8

**focuses** [2]_ - 151:18_, 151:20
**folks** [1]_ - 180:17
**follow** [2]_ - 121:14_, 199:8
**followed** [1]_ - 100:23
**following** [7]_ - 47:16_, 77:18_, 130:25_, 152:1_, 156:4_, 175:16
**follows** [9] - 7:11, 15:13, 32:2, 66:6, 111:4, 125:23, 170:21, 182:19, 205:3
**FOO** [1] - 125:22
**Foo** [32]_ - 5:10_, 123:25_, 124:4_, 125:7_, 125:9_, 125:18_, 126:12_, 126:25 _, 127:12_, 132:18_, 133:11_, 134:19_, 135:4_, 136:5_, 136:12_, 137:16_, 137:22_, 138:11_, 139:25 _, 140:13_, 140:17_, 140:23_, 141:22_, 142:8_, 144:6_, 146:5_, 146:11_, 161:1_, 163:23_, 165:19_, 165:24_, 169:3
**Food** [2]_ - 17:6_, 27:3
**food** [3]_ - 30:15_, 70:6_, 70:8
**footage** [1]_ - 12:10
**force** [4]_ - 15:25_, 16:4_, 111:19_, 128:13
**Force** [3]_ - 15:25_, 16:2_, 111:17
**foregrip** [1]_ - 94:23
**forensic** [2]_ - 171:7_, 171:8
**forklift** [1]_ - 104:14
**form** [6]_ - 48:14_, 50:4_, 194:4_, 195:5_, 195:20_, 197:18
**formal** [2]_ - 129:8_, 129:11
**format** [4]_ - 121:25_, 172:9_, 172:18_, 172:21
**formatting** [1]_ - 159:2
**formatting-wise** [1]_ - 159:2
**formulation** [1]_ - 160:6
**forth** [3]_ - 97:18_, 107:24 _, 193:11
**forward** [6]_ - 54:1_, 54:21_, 56:9_, 144:24_, 158:1_, 229:13
**foundation** [1]_ - 223:19

**foundations** [1] - 149:2

**four** [5] - 137:5, 189:19, 189:23, 222:9, 227:5

**frame** [4] - 77:14, 130:12, 166:22, 171:17

**framed** [1] - 159:11

**frankly** [1] - 65:3

**fraud** [1] - 126:10

**friend** [4] - 184:18, 206:13, 206:14, 206:20

**friends** [4] - 72:20, 72:22, 72:25, 208:2

**front** [19] - 21:3, 24:21, 53:4, 81:21, 89:2, 90:9, 94:4, 96:4, 98:8, 112:14, 130:19, 146:2, 154:1, 201:4, 208:16, 209:8, 213:18, 213:20

**full** [4] - 62:8, 66:15, 153:19, 157:5

**fully** [3] - 120:21, 134:19, 198:1

**functions** [1] - 107:10

**funds** [1] - 176:3

**funeral** [4] - 200:2, 200:5, 225:25, 226:10

**furniture** [6] - 83:5, 83:6, 95:4, 95:5, 95:7

**furthermost** [1] - 21:9

**furthest** [2] - 21:9, 23:4

**futile** [1] - 198:23

**future** [2] - 36:24, 42:1

### G

**G-I-B-I-L** [1] - 163:21

**gallery** [1] - 6:14

**Garett** [2] - 125:7, 125:18

**GARETT** [2] - 125:19, 125:22

**gas** [15] - 9:9, 9:12, 10:8, 11:2, 11:7, 11:9, 17:4, 17:9, 17:15, 18:16, 19:13, 20:8, 21:3, 22:2, 24:21

**gather** [2] - 192:8, 194:17

**gears** [1] - 184:3

**gen** [1] - 109:23

**general** [12] - 42:10, 51:7, 107:12, 133:20,

147:12, 193:13, 197:20, 197:23, 198:6, 199:15, 228:1

**general-reputations-type** [1] - 198:6

**generally** [6] - 9:5, 16:7, 40:3, 107:12, 109:15, 132:20

**generated** [1] - 38:17

**gentle** [1] - 109:15

**gentleman** [5] - 27:15, 27:18, 27:19, 202:20, 203:3

**gentlemen** [19] - 6:15, 6:20, 60:3, 62:16, 102:25, 103:6, 120:13, 121:12, 125:3, 134:14, 148:14, 160:15, 161:24, 180:13, 185:10, 202:3, 215:22, 229:3, 231:8

**gentleness** [1] - 197:8

**geographically** [1] - 16:14

**Gerardo** [1] - 227:4

**gesture** [1] - 30:20

**given** [13] - 36:22, 41:20, 41:21, 47:8, 47:21, 48:7, 48:10, 49:20, 129:16, 156:23, 185:21, 195:13

**glad** [1] - 130:18

**Glade** [1] - 18:9

**glove** [1] - 130:19

**gloves** [3] - 130:7, 130:18, 130:22

**God** [9] - 7:1, 15:3, 31:17, 65:21, 110:20, 125:13, 170:11, 182:10, 204:16

**golf** [2] - 151:17, 152:16

**GOVERNMENT** [1] - 3:1

**Government** [32] - 10:17, 19:24, 20:1, 74:3, 75:21, 113:6, 115:16, 118:14, 119:24, 123:8, 123:9, 123:10, 123:11, 123:12, 128:3, 132:12, 137:7, 140:12, 141:20, 145:22, 147:9, 161:14, 163:6, 165:17, 165:20, 167:19, 173:22, 177:3, 178:24, 187:16, 189:7, 211:5

**government** [18] - 6:3, 10:12, 13:19, 19:17, 29:7, 31:9, 65:13, 149:21, 150:11, 150:12, 153:4, 153:23, 156:3, 156:24, 156:25, 157:10, 158:4, 169:18

**government's** [5] - 5:2, 131:1, 149:23, 150:5, 159:19

**Government's** [211] - 9:21, 9:25, 10:1, 10:12, 10:20, 11:8, 11:16, 12:13, 12:25, 13:2, 13:9, 18:24, 18:25, 19:1, 19:17, 20:4, 20:7, 20:23, 21:4, 21:13, 21:18, 22:14, 22:21, 23:8, 23:15, 23:22, 24:8, 24:15, 24:22, 25:10, 25:21, 26:6, 26:15, 27:23, 28:14, 28:23, 63:6, 63:25, 112:8, 112:13, 112:24, 113:4, 113:24, 114:9, 114:14, 114:22, 115:2, 115:11, 117:8, 117:13, 117:21, 118:6, 118:9, 118:12, 118:16, 118:25, 119:2, 119:11, 119:13, 119:19, 119:21, 120:3, 122:18, 122:25, 123:2, 123:3, 123:7, 123:10, 126:19, 127:1, 127:6, 127:12, 127:18, 127:24, 128:8, 128:18, 132:10, 132:15, 132:21, 133:7, 133:16, 134:6, 134:7, 135:5, 135:12, 135:13, 135:15, 135:24, 135:25, 136:10, 136:11, 136:13, 137:1, 137:16, 137:20, 137:22, 138:12, 138:15, 138:19, 139:15, 139:19, 139:22, 139:25, 140:7, 140:18, 141:4, 141:16, 142:3, 143:5, 143:12, 144:8, 144:14, 145:1, 145:3, 145:6, 145:11, 146:1, 146:12, 146:23, 147:3, 147:13, 147:23, 148:3, 148:13, 149:12, 159:6, 160:20, 161:3, 161:8, 161:11, 161:18, 161:21, 161:25, 162:14, 162:20, 162:25, 163:15, 163:20, 163:22, 164:1, 164:5, 164:10

164:18, 164:22, 165:3, 165:7, 165:13, 165:19, 171:21, 172:11, 172:25, 173:4, 173:10, 173:14, 173:16, 174:17, 174:18, 175:1, 175:10, 175:12, 175:18, 175:25, 176:8, 176:11, 176:24, 177:8, 177:13, 177:24, 178:5, 178:10, 178:14, 178:20, 179:7, 179:15, 179:19, 179:24, 185:18, 186:15, 186:23, 187:9, 187:12, 188:12, 189:2, 189:15, 190:3, 190:10, 208:8, 208:19, 208:23, 209:4, 209:14, 210:5, 210:14, 210:18, 211:1, 211:8, 211:12, 212:18, 214:3, 216:18, 216:24, 217:20, 218:3, 218:15

**GR's** [2] - 9:7, 10:25

**granted** [52] - 10:22, 11:17, 12:15, 13:11, 19:9, 20:5, 20:24, 21:6, 21:19, 22:7, 22:16, 22:23, 23:11, 23:17, 24:10, 24:17, 24:24, 25:11, 26:7, 26:17, 27:24, 113:8, 115:18, 126:21, 127:10, 128:5, 132:16, 133:18, 134:11, 137:10, 137:12, 138:25, 139:12, 140:15, 143:24, 144:3, 146:15, 162:11, 163:12, 173:24, 176:9, 177:5, 179:1, 186:24, 187:18, 189:9, 190:6, 208:10, 210:8, 212:20, 216:20, 218:4

**grass** [1] - 30:5

**gray** [17] - 35:9, 71:16, 112:21, 114:17, 118:3, 119:14, 120:2, 123:2, 123:5, 123:15, 127:4, 127:18, 127:21, 128:25, 129:21, 131:13, 132:3

**grease** [1] - 79:4

**great** [2] - 60:13, 102:19

**greater** [1] - 64:25

**green** [13] - 76:4, 76:19, 91:7, 91:8, 92:9, 93:14, 112:21, 114:6, 114:10, 118:21, 119:9,

142:24_, 218:14

**Greensboro** [32]_ - 32:9_, 33:5_, 40:4_, 47:2_, 48:22_, 57:5_, 66:14_, 67:8_, 70:22_, 72:17_, 73:9_, 77:25_, 80:6_, 108:15_, 111:12_, 111:16_, 111:22_, 112:3_, 120:11_, 121:1_, 126:3_, 128:9_, 128:14_, 138:3_, 144:11_, 166:16_, 182:23_, 183:5_, 183:9_, 205:9_, 205:10

**Gregory** [1]_ - 232:6

**ground** [2]_ - 185:24_, 193:3

**grounds** [1]_ - 226:16

**guess** [11]_ - 47:18_, 73:1_, 102:21_, 107:12_, 110:3_, 159:1_, 160:4_, 162:2_, 163:20_, 202:11_, 227:11

**guilty** [5]_ - 64:7_, 66:24_, 67:1_, 67:3_, 101:25

**gumption** [1]_ - 156:7

**gun** [19]_ - 79:15_, 79:17_, 79:20_, 79:22_, 80:1_, 80:3_, 80:7_, 81:12_, 87:4_, 87:15_, 87:18_, 88:5_, 88:14_, 93:6_, 101:25_, 106:6_, 107:10_, 108:4

**guns** [11]_ - 78:12_, 78:14_, 78:16_, 78:19_, 78:21_, 78:23_, 78:25_, 79:2_, 79:12_, 99:10_, 107:17

**guy** [1]_ - 198:12

**guys** [2]_ - 193:22_, 209:20

**GX1** [9]_ - 80:11_, 80:17_, 80:24_, 82:1_, 82:3_, 82:6_, 82:23_, 83:9_, 85:25

**GX10** [4]_ - 89:19_, 89:24_, 90:6_, 90:15

**GX11** [4]_ - 97:25_, 98:8_, 99:2_, 99:15

**GX1117** [1]_ - 46:3

**GX116** [1]_ - 73:18

**GX117** [3]_ - 95:24_, 96:4_, 96:19

**GX12** [2]_ - 93:25_, 94:4

**GX17** [2]_ - 94:17_, 94:20

**GX2** [4]_ - 86:8_, 86:14_, 86:19_, 86:22

**GX30** [4]_ - 81:17_, 81:22_, 82:5_, 82:11

**GX710** [1]_ - 13:9

**GX733** [1]_ - 28:17

**GX755** [1]_ - 28:17

**GX756A** [1]_ - 9:21

**GX9** [5]_ - 88:20_, 89:2_, 90:15_, 91:2_, 93:10

H

**H-A-L-L-E-R** [1]_ - 170:17

**H-L-I-N-K-A** [1]_ - 232:8

**hair** [2]_ - 34:24_, 34:25

**half** [1]_ - 121:13

**HALLER** [1] - 170:20

**Haller** [8]_ - 5:10_, 169:20_, 169:21_, 169:24_, 170:2_, 170:16_, 170:24_, 179:5

**hand** [15]_ - 6:23_, 14:25_, 18:23_, 31:14_, 65:18_, 92:2_, 110:17_, 125:10_, 137:16_, 138:11_, 170:8_, 182:7_, 187:22_, 187:23_, 204:13

**handed** [2]_ - 58:21_, 101:18

**handheld** [2]_ - 181:1_, 181:3

**handing** [1]_ - 56:4

**handle** [3]_ - 64:16_, 133:25_, 232:12

**handled** [1]_ - 87:13

**handles** [1]_ - 134:2

**handling** [2]_ - 80:18_, 193:16

**hands** [2]_ - 85:20_, 85:22

**handwriting** [1]_ - 163:19

**handwritten** [1]_ - 163:25

**hanging** [1]_ - 104:10

**happy** [2]_ - 4:19_, 223:7

**hard** [6]_ - 104:20_, 110:6_, 224:20_, 228:17

**hardware** [1]_ - 142:12

**harm** [2]_ - 129:5_, 129:15

**Hawaii** [3]_ - 105:13_, 105:23_, 164:16

**head** [5]_ - 113:10_, 116:4_, 120:15_, 126:23_, 187:20

**Head** [3]_ - 162:9_, 167:25_, 211:10

**hear** [2]_ - 6:8_, 224:20

**heard** [7]_ - 108:13_, 109:17_, 109:24_, 184:21_, 215:17_, 229:23_, 229:24

**hearing** [1]_ - 198:25

**hearsay** [15]_ - 152:5_, 154:25_, 155:2_, 155:6_, 155:10_, 156:23_, 184:25_, 216:5_, 220:1_, 220:20_, 221:3_, 222:3_, 230:4_, 230:5_, 230:12

**Hector** [2]_ - 207:21_, 227:4

**hell** [1]_ - 84:19

**hello** [2]_ - 223:3_, 223:4

**help** [15]_ - 7:1_, 15:3_, 31:17_, 65:21_, 110:20_, 125:13_, 170:11_, 181:11_, 182:10_, 204:16_, 215:21_, 216:10_, 228:1_, 228:7_, 231:6

**helped** [1]_ - 227:11

**helpful** [1]_ - 5:7

**hermano** [1]_ - 192:11

**Hiatt** [1]_ - 138:3

**Hidalgo** [4]_ - 183:12_, 205:24_, 222:17_, 222:18

**hiding** [1]_ - 150:12

**high** [1]_ - 165:20

**high-caliber** [1]_ - 165:20

**higher** [1]_ - 140:21

**himself** [1]_ - 36:25

**history** [6]_ - 179:17_, 179:18_, 179:19_, 179:21_, 199:4_, 224:13

**Hlinka** [1]_ - 232:8

**Hola** [1]_ - 192:11

**hold** [7]_ - 42:18_, 106:24_, 141:7_, 142:2_, 172:24_, 226:4_, 227:19

**holding** [3]_ - 108:4_, 143:13

**holdings** [1]_ - 120:11

**home** [3]_ - 47:19_, 76:24_, 112:3

**homeless** [1]_ - 201:3

**honestly** [1]_ - 57:18

**Honor** [241]_ - 4:8_, 4:18_, 5:1_, 5:14_, 5:16_, 5:19_, 5:21_, 5:25_, 6:11_, 6:19_, 7:9_, 9:20_, 10:11_, 11:15_, 12:13_, 13:8_, 13:9_, 13:18_, 14:16_, 14:21_, 15:10_, 18:19_, 19:8_, 19:16_, 20:4_, 20:23_, 22:15_, 22:21_, 23:9_, 23:16_, 23:23_, 24:23_, 26:14_, 27:22_, 29:7_, 31:3_, 31:9_, 45:18_, 46:2_, 50:22_, 52:1_, 53:11_, 53:12_, 56:23_, 58:14_, 59:12_, 60:1_, 60:9_, 60:18_, 63:1_, 63:7_, 64:1_, 64:22_, 65:13_, 66:4_, 71:18_, 73:16_, 73:20_, 81:16_, 86:11_, 88:18_, 88:22_, 93:25_, 95:23_, 96:1_, 102:23_, 103:4_, 105:16_, 105:24_, 106:16_, 108:17_, 109:1_, 109:3_, 110:9_, 110:13_, 111:1_, 112:4_, 112:10_, 112:23_, 113:2_, 113:7_, 114:23_, 115:11_, 115:17_, 116:6_, 117:9_, 117:12_, 117:18_, 118:8_, 119:4_, 119:18_, 120:16_, 121:5_, 121:6_, 123:1_, 123:16_, 123:21_, 124:2_, 124:6_, 124:9_, 124:16_, 124:23_, 124:24_, 125:6_, 125:20_, 126:20_, 127:8_, 127:23_, 128:4_, 130:24_, 132:6_, 132:14_, 133:8_, 133:17_, 134:10_, 134:17_, 134:23_, 136:4_, 136:25_, 137:9_, 138:8_, 138:24_, 139:11_, 139:18_, 140:8_, 140:14_, 141:13_, 141:17_, 143:23_, 144:18_, 145:13_, 145:16_, 146:5_, 146:14_, 147:3_, 147:19_, 147:24_, 148:12_, 148:25_, 149:1_, 149:10_, 149:15_, 149:25_, 153:22_, 153:25_, 154:5_, 154:6_, 154:10_, 154:19_, 158:9_, 158:11_, 158:21_, 159:7_, 159:8_, 159:18_, 160:10_, 160:19_, 161:7_, 161:16_, 161:22_, 162:25_, 163:3_, 163:11_, 164:17_, 164:23_, 165:12_, 165:23_, 166:13_, 167:5_, 168:23_, 168:24_, 169:19_, 169:23_, 170:18_, 171:22_, 173:16_, 173:23_, 176:6_, 176:23_, 177:4_, 178:3_,

178:19_, 178:25_, 180:1_, 180:2_, 180:11_, 180:20_, 181:5_, 181:9_, 181:17_, 181:20_, 182:2_, 182:17_, 185:19_, 186:1_, 186:21_, 187:11_, 187:17_, 189:1_, 189:8_, 190:4_, 192:2_, 192:13_, 194:24_, 195:24_, 202:16_, 204:9_, 204:25_, 208:9_, 210:6_, 210:25_, 212:19_, 214:2_, 214:6_, 215:16_, 216:19_, 217:20_, 217:23_, 218:1_, 219:15_, 220:2_, 220:16_, 220:21_, 221:11_, 222:22_, 222:24_, 223:19_, 224:18_, 225:20_, 226:8_, 228:4_, 228:22_, 229:9_, 230:6_, 230:15_, 230:23_, 231:1_, 232:4_, 232:14_, 232:16_, 232:25

**Honor's** [8]_ - 38:24_, 60:21_, 80:10_, 86:8_, 89:17_, 94:17_, 97:24_, 180:25

**hope** [1]_ - 125:3

**host** [1]_ - 157:22

**hour** [3]_ - 121:13_, 124:6_, 221:17

**hours** [2]_ - 12:11_, 12:23

**house** [21]_ - 70:25_, 104:1_, 104:9_, 186:13_, 191:8_, 210:3_, 211:21_, 211:23_, 213:8_, 213:9_, 213:11_, 213:23_, 214:12_, 214:15_, 215:4_, 215:10_, 216:11_, 216:12_, 223:9_, 224:3

**housed** [1]_ - 11:5

**houses** [3]_ - 106:3_, 226:14_, 227:5

**human** [2]_ - 126:7_, 172:18

**hungry** [1]_ - 30:18

**hurt** [3]_ - 108:8_, 109:17_, 228:19

**hurting** [3]_ - 108:13_, 109:21_, 109:24

### I

**Iacobelli** [1]_ - 181:18

**ID** [5]_ - 48:11_, 48:12_, 139:3_, 139:5

**idea** [4]_ - 51:7_, 103:24_, 151:2_, 152:19

**identical** [1]_ - 50:3

**identification** [1]_ - 127:6

**identified** [7]_ - 35:11_, 36:25_, 119:9_, 131:13_, 132:7_, 141:14_, 159:13

**identify** [1]_ - 139:3

**identifying** [1]_ - 36:18

**illegal** [2]_ - 70:5_, 101:10

**illegally** [2]_ - 183:21_, 206:7

**illustrative** [2]_ - 63:14_, 63:16

**image** [4]_ - 63:19_, 208:16_, 211:9_, 212:22

**imagine** [2]_ - 225:7_, 225:8

**immediate** [1]_ - 135:4

**immediately** [3]_ - 18:7_, 48:2_, 203:20

**immigration** [1]_ - 191:22

**important** [4]_ - 152:7_, 214:16_, 214:17_, 214:19

**importantly** [1]_ - 155:11

**imprisonment** [3]_ - 68:6_, 68:12_, 68:14

**improper** [1]_ - 197:18

**improve** [1]_ - 225:2

**improvised** [3]_ - 132:22_, 140:24_, 142:10

**in-between** [2]_ - 58:11_, 58:12

**inability** [1]_ - 156:24

**inadmissible** [5]_ - 154:22_, 155:5_, 158:13_, 159:10_, 202:6

**inappropriate** [1]_ - 60:4

**incidences** [1]_ - 198:20

**incident** [4]_ - 129:2_, 202:19_, 202:23_, 203:2

**incidents** [1]_ - 198:2

**include** [5]_ - 8:24_, 16:15_, 118:21_, 150:2_, 231:18

**included** [1]_ - 17:14

**includes** [1]_ - 231:14

**including** [2]_ - 145:12_, 207:10

**incorporate** [1]_ - 157:2

**independent** [1]_ - 123:22

**independently** [1]_ - 131:19

**indicate** [1]_ - 226:9

**indicated** [8]_ - 103:6_, 116:13_, 144:7_, 152:3_, 195:20_, 196:12_, 208:2_, 229:4

**indicating** [12]_ - 23:3_, 54:11_, 55:5_, 92:3_, 115:24_, 121:23_, 144:13_, 189:15_, 203:22_, 208:18_, 209:12_, 209:15

**indicating)** [9]_ - 20:12_, 21:16_, 28:19_, 39:23_, 39:24_, 40:3_, 40:8_, 40:25_, 178:17

**indication** [1]_ - 89:8

**inferences** [1]_ - 229:5

**info** [2]_ - 50:10_, 50:13

**inform** [1]_ - 158:23

**information** [26]_ - 33:25_, 36:17_, 36:18_, 36:20_, 39:13_, 40:13_, 40:18_, 40:23_, 42:6_, 46:13_, 47:17_, 47:19_, 47:20_, 47:24_, 48:6_, 48:9_, 49:1_, 74:5_, 74:11_, 74:14_, 113:18_, 174:4_, 174:6_, 174:10_, 185:13

**informed** [1]_ - 181:10

**inherent** [1]_ - 156:23

**inherited** [1]_ - 199:24

**initial** [2]_ - 44:21_, 63:8

**initials** [2]_ - 174:8_, 176:21

**inject** [1]_ - 158:16

**injured** [1]_ - 228:19

**input** [2]_ - 41:23_, 41:24

**inputted** [2]_ - 41:24_, 174:6

**inquire** [6]_ - 15:10_, 111:1_, 125:20_, 170:18_, 197:22_, 204:25

**insert** [1]_ - 61:7

**inside** [18]_ - 42:11_, 61:7_, 101:7_, 104:13_, 118:23_, 118:25_, 122:24_, 123:7_, 123:17_, 128:23_, 128:25_, 129:4_, 129:15_, 129:17_, 132:25_, 133:15_, 188:1_, 217:10

**inspect** [2]_ - 117:16_, 135:13

**inspected** [1]_ - 164:15

**install** [1]_ - 228:21

**instance** [6]_ - 70:9_, 131:17_, 200:7_, 201:6_, 201:12_, 227:9

**instances** [4]_ - 179:22_, 195:14_, 197:22_, 198:9

**instead** [1]_ - 203:23

**instruct** [2]_ - 121:22_, 160:1

**instruction** [2]_ - 158:4_, 159:18

**instructions** [3]_ - 120:12_, 120:24_, 121:15

**Intelligence** [1]_ - 15:23

**intend** [3]_ - 118:25_, 153:7_, 196:6

**intent** [1]_ - 153:16

**interact** [1]_ - 34:19

**interacted** [4]_ - 51:17_, 51:18_, 51:20_, 56:19

**interaction** [9]_ - 12:22_, 34:1_, 34:6_, 35:15_, 35:18_, 35:22_, 36:14_, 56:16_, 58:13

**international** [1]_ - 111:20

**internet** [1]_ - 36:9

**interpretation** [2]_ - 6:4_, 121:24

**interpreted** [1]_ - 121:25

**INTERPRETER** [12]_ - 181:9_, 181:13_, 181:17_, 181:20_, 200:3_, 200:15_, 202:24_, 220:15_, 224:21_, 224:23_, 224:25_, 231:7

**interpreter** [5]_ - 117:4_, 121:21_, 180:11_, 180:14_, 200:15

**interpreters** [11]_ - 5:23_, 5:24_, 121:22_, 181:1_, 181:7_, 192:15_, 194:25_, 204:11_, 220:15_, 221:24_, 231:5

**interrupt** [1]_ - 224:18

**interviewed** [1]_ - 117:3

**intimidate** [1]_ - 87:21

**intimidated** [1]_ - 87:19

**introduce** [11]_ - 63:13_, 150:2_, 150:18_, 152:4_, 153:5_, 153:14_, 154:22_,

155:4_, 155:9_, 167:12_, 198:8

**introduced** [3]_ - 155:12_, 155:16_, 156:20

**introducing** [1]_ - 157:17

**inventory** [32]_ - 128:19_, 128:21_, 129:6_, 129:7_, 129:13_, 129:25_, 130:1_, 130:4_, 131:10_, 131:14_, 131:17_, 131:24_, 132:3_, 132:19_, 133:15_, 135:11_, 135:19_, 136:24_, 138:7_, 138:23_, 140:5_, 141:12_, 145:9_, 147:2_, 148:11_, 161:6_, 162:24_, 165:11_, 168:9_, 168:14_, 168:15_, 169:10

**Investigation** [2]_ - 111:10_, 171:2

**investigation** [6]_ - 111:21_, 111:25_, 121:15_, 126:13_, 191:13_, 231:16

**investigator** [1]_ - 126:10

**invite** [5]_ - 6:10_, 64:3_, 169:21_, 220:10_, 221:22

**invited** [1]_ - 206:22

**involved** [6]_ - 44:7_, 67:21_, 85:2_, 129:25_, 130:1_, 193:25

**irrelevant** [2]_ - 108:22_, 157:23

**IRS** [1]_ - 105:2

**ish** [1]_ - 34:25

**Island** [2]_ - 17:6_, 27:3

**isolating** [1]_ - 123:17

**issue** [11]_ - 5:1_, 37:15_, 121:21_, 149:16_, 153:24_, 156:21_, 157:14_, 194:9_, 194:18_, 196:2_, 227:14

**issued** [2]_ - 137:25_, 229:3

**issues** [10]_ - 4:24_, 5:20_, 41:25_, 63:2_, 64:25_, 109:5_, 122:12_, 160:16_, 227:20_, 232:12

**item** [30]_ - 46:3_, 80:22_, 86:18_, 113:24_, 114:5_, 117:23_, 117:25_, 118:5_, 118:17_, 126:25_, 127:15_, 128:17_, 132:22_, 135:6_, 140:4_, 140:17_, 140:23_, 143:8_, 148:2_,

160:23_, 163:23_, 164:21_, 165:2_, 171:25_, 172:1_, 185:21_, 185:22_, 186:3_, 191:1_, 214:9

**itemized** [1]_ - 141:8

**items** [54]_ - 10:3_, 19:4_, 36:6_, 36:12_, 117:11_, 117:16_, 122:15_, 122:17_, 122:20_, 123:4_, 123:17_, 124:22_, 126:13_, 128:23_, 128:24_, 131:5_, 131:23_, 132:19_, 132:20_, 133:12_, 134:13_, 134:22_, 135:18_, 135:20_, 135:21_, 135:24_, 136:1_, 136:5_, 136:21_, 138:22_, 138:23_, 141:10_, 141:11_, 141:13_, 144:21_, 144:25_, 145:9_, 146:17_, 146:18_, 153:17_, 157:23_, 162:15_, 162:17_, 162:24_, 165:10_, 187:8_, 188:14_, 188:23_, 189:15_, 191:16_, 192:8_, 224:12_, 225:11

**itself** [3]_ - 74:25_, 95:9_, 130:9

## J

**James** [1]_ - 4:9

**Jennifer** [1]_ - 4:10

**jingling** [3]_ - 88:14_, 90:24_, 91:19

**job** [7]_ - 32:10_, 156:8_, 156:9_, 190:18_, 190:19_, 206:22_, 206:23

**John** [22]_ - 4:8_, 33:21_, 34:1_, 34:3_, 34:6_, 34:17_, 34:22_, 35:4_, 35:16_, 41:10_, 41:19_, 42:2_, 42:8_, 46:22_, 48:21_, 51:1_, 52:25_, 53:3_, 54:6_, 54:19_, 58:25_, 59:10

**join** [1]_ - 8:5

**joined** [2]_ - 8:1_, 16:17

**Joint** [3]_ - 15:25_, 16:2_, 111:17

**joint** [1]_ - 111:18

**JTTF** [3]_ - 16:2_, 16:5_, 16:23

**judge** [1]_ - 69:11

**Judge** [13] - 31:25_, 35:10_, 35:13_, 39:6_, 62:11_, 62:23_, 64:4_, 71:22_,

80:14_, 98:5_, 102:10_, 122:2_, 122:19

**July** [2]_ - 72:19_, 83:12

**juror** [1]_ - 224:19

**JUROR** [8]_ - 113:10_, 115:24_, 116:2_, 120:15_, 126:23_, 187:20_, 224:20_, 225:1

**jurors** [15]_ - 6:8_, 64:3_, 115:25_, 123:13_, 124:25_, 134:19_, 165:25_, 167:24_, 171:11_, 172:6_, 181:11_, 185:23_, 221:8_, 221:23_, 232:19

**JURORS** [4]_ - 116:4_, 162:9_, 167:25_, 211:10

**jury** [105]_ - 4:25_, 6:10_, 6:12_, 10:21_, 32:7_, 34:10_, 34:21_, 38:6_, 39:4_, 39:11_, 39:22_, 40:7_, 40:17_, 41:14_, 42:16_, 43:4_, 43:24_, 45:20_, 46:6_, 46:11_, 48:5_, 49:15_, 52:2_, 52:14_, 52:19_, 53:2_, 54:8_, 55:18_, 56:2_, 56:14_, 60:22_, 61:5_, 62:18_, 62:19_, 65:9_, 65:10_, 68:20_, 70:20_, 73:6_, 73:17_, 81:18_, 81:24_, 82:14_, 83:24_, 86:21_, 88:19_, 88:24_, 90:2_, 90:11_, 91:2_, 93:24_, 94:9_, 94:21_, 96:6_, 98:3_, 98:11_, 99:5_, 103:8_, 117:16_, 120:20_, 121:18_, 121:19_, 125:1_, 128:20_, 133:20_, 140:14_, 140:19_, 141:23_, 142:4_, 142:9_, 142:17_, 143:4_, 143:15_, 143:19_, 147:13_, 148:16_, 148:17_, 149:7_, 150:8_, 158:2_, 158:5_, 158:23_, 159:20_, 160:2_, 160:8_, 160:12_, 161:5_, 162:7_, 172:24_, 174:16_, 179:18_, 194:10_, 194:11_, 194:19_, 199:17_, 199:18_, 211:8_, 216:13_, 220:5_, 220:6_, 221:25_, 225:21_, 231:15_, 231:23_, 231:24

## K

**kayak** [15]_ - 115:4_, 115:5_, 115:8_, 115:21_,

115:22_, 116:12_, 116:14_, 212:12_, 212:15_, 212:24_, 212:25_, 213:4_, 213:5_, 213:7_, 213:22

**keep** [5]_ - 78:21_, 78:23_, 79:6_, 81:9_, 106:24

**Kenny** [1]_ - 232:7

**Kimberly** [1]_ - 232:9

**kind** [12]_ - 9:12_, 14:11_, 53:15_, 53:17_, 53:21_, 78:4_, 83:24_, 87:9_, 106:2_, 111:18_, 179:19_, 196:13

**kinds** [3]_ - 16:20_, 174:3_, 179:18

**Kiosco** [1]_ - 227:1

**kit** [8]_ - 88:15_, 89:5_, 89:14_, 90:4_, 90:13_, 90:23_, 91:20_, 92:13

**knocked** [3]_ - 193:12_, 202:23_, 203:3

**knowledge** [2]_ - 212:3_, 212:4

**known** [4]_ - 108:8_, 196:25_, 197:9_, 200:25

**knows** [2]_ - 72:4_, 195:8

## L

**L-A-N-T-R-Y** [1]_ - 15:9

**labeled** [1]_ - 144:21

**lack** [1]_ - 223:19

**ladder** [1]_ - 193:2

**ladies** [18]_ - 6:15_, 6:20_, 60:3_, 62:16_, 102:25_, 103:6_, 120:13_, 121:12_, 125:3_, 134:14_, 148:14_, 160:15_, 161:24_, 180:13_, 202:3_, 215:22_, 229:3_, 231:8

**Lago** [1]_ - 18:6

**laid** [3]_ - 85:5_, 149:1_, 199:10

**lands** [1]_ - 75:14

**language** [4]_ - 41:1_, 192:18_, 204:11

**languages** [1]_ - 182:25

**lanky** [1]_ - 34:24

**Lantry** [3]_ - 5:9_, 14:22_, 15:9

**LANTRY** [1] - 15:12

**lanyard** [1]_ - 181:1

**large** [1]_ - 133:1

**large-caliber** [1] - 133:1

**larger** [1] - 161:25

**last** [36] - 7:4, 13:13, 15:7, 16:6, 16:22, 31:20, 31:22, 44:21, 56:19, 65:24, 89:21, 92:24, 99:21, 103:19, 110:23, 123:5, 125:16, 125:19, 126:17, 151:5, 153:5, 164:21, 170:14, 180:24, 182:13, 184:20, 195:2, 204:19, 208:6, 209:18, 213:23, 219:17, 221:9, 222:3, 224:2

**latched** [1] - 193:2

**late** [1] - 70:22

**Laura** [2] - 169:20, 170:16

**LAURA** [2] - 170:17, 170:20

**law** [3] - 113:18, 191:15, 191:19

**lawyers** [1] - 231:18

**LAZARO** [2] - 204:24, 205:2

**Lazaro** [10] - 5:11, 104:2, 112:3, 113:15, 113:16, 116:18, 116:20, 116:25, 204:10, 204:21

**LBIRC** [1] - 163:21

**lead** [1] - 157:4

**leading** [3] - 53:7, 64:25, 65:5

**lean** [1] - 229:13

**learn** [1] - 97:13

**least** [6] - 128:20, 130:1, 151:1, 151:6, 151:7, 151:23

**leave** [10] - 87:21, 139:24, 162:18, 183:16, 185:23, 213:7, 213:25, 214:5, 220:13, 220:15

**leaving** [1] - 28:5

**lectern** [2] - 103:1, 103:12

**left** [27] - 11:25, 23:4, 25:17, 71:16, 74:17, 90:8, 90:18, 94:11, 115:22, 116:13, 132:23, 156:14, 185:10, 188:15, 203:22, 203:24

213:3, 213:4, 213:5, 213:23, 214:1, 214:11, 214:14, 215:4, 215:10, 215:11, 224:5

**legal** [6] - 5:20, 155:6, 194:5, 195:4, 195:7, 195:10

**legally** [3] - 124:15, 183:20, 206:4

**legs** [1] - 95:15

**letter** [43] - 149:5, 149:13, 149:19, 149:22, 150:3, 150:6, 150:9, 150:13, 150:17, 150:25, 151:1, 151:3, 151:17, 151:18, 151:20, 151:21, 152:12, 152:15, 152:19, 152:20, 153:9, 153:18, 153:20, 156:1, 156:19, 157:1, 157:4, 157:22, 157:25, 158:2, 158:6, 158:8, 159:4, 159:10, 159:13, 159:24, 160:2, 160:6, 189:13, 189:20, 191:3, 223:12, 225:13

**letters** [1] - 216:15

**letting** [1] - 42:19

**liable** [2] - 46:16, 46:18

**license** [1] - 196:18

**lid** [4] - 112:22, 113:24, 114:3, 135:7

**lie** [2] - 100:11, 100:14

**life** [4] - 110:4, 151:6, 169:13, 183:17

**lift** [2] - 134:22, 140:21

**light** [4] - 21:12, 21:14, 21:22, 22:10

**lighter** [1] - 34:24

**lighter-colored** [1] - 34:24

**likely** [3] - 88:15, 91:20, 232:18

**limits** [1] - 108:22

**line** [20] - 36:2, 38:5, 38:7, 41:12, 41:22, 42:18, 43:7, 43:8, 43:23, 44:8, 45:6, 45:8, 46:23, 47:1, 47:10, 49:2, 49:6, 61:9, 76:7, 208:19

**lines** [7] - 43:12, 47:17, 47:18, 74:16, 156:12, 158:2

**list** [9] - 5:2, 5:17, 43:1,

47:10, 64:5, 91:9, 122:22, 128:24, 218:2

**listed** [4] - 43:23, 131:5, 138:2, 144:13

**listing** [2] - 128:22, 129:11

**lists** [3] - 43:1, 61:2, 122:23

**literature** [4] - 138:18, 138:20, 138:21, 164:8

**litigation** [1] - 196:9

**live** [16] - 32:8, 32:9, 58:8, 58:10, 66:11, 66:12, 182:22, 183:4, 201:3, 201:4, 205:8, 205:9, 222:14, 222:16

**lived** [3] - 183:7, 205:10, 211:20

**lives** [2] - 213:11, 220:25

**living** [2] - 205:14, 205:19

**load** [2] - 87:10, 107:4

**local** [1] - 113:18

**locate** [2] - 14:9, 200:18

**located** [7] - 9:5, 26:12, 28:17, 52:20, 57:15, 144:10, 144:11

**location** [7] - 17:3, 17:19, 28:6, 32:19, 32:20, 57:13, 144:6

**locations** [1] - 57:19

**locked** [2] - 78:22, 78:24

**log** [3] - 177:20, 177:21, 227:12

**logical** [1] - 152:11

**logs** [1] - 172:20

**LONG** [90] - 5:1, 5:8, 5:14, 5:16, 6:19, 7:9, 7:13, 9:20, 9:24, 10:11, 10:19, 10:23, 11:15, 11:18, 12:3, 12:5, 12:12, 12:16, 12:24, 13:1, 13:8, 13:12, 13:14, 13:18, 14:16, 14:21, 15:10, 15:15, 18:19, 18:22, 19:8, 19:10, 19:16, 20:3, 20:6, 20:22, 21:1, 21:4, 21:7, 21:17, 21:20, 22:5, 22:8, 22:14, 22:17, 22:20, 22:24, 23:9, 23:12, 23:15, 23:18, 23:22, 24:1, 24:8,

24:11, 24:15, 24:18, 24:22, 25:1, 25:9, 25:12, 25:20, 25:22, 26:5, 26:8, 26:14, 26:18, 26:20, 27:7, 27:10, 27:13, 27:16, 27:17, 27:22, 27:25, 28:3, 28:7, 28:9, 28:13, 28:15, 28:23, 29:2, 29:7, 30:10, 31:3, 63:1, 122:14, 124:9, 232:4, 232:14

**look** [40] - 10:1, 19:2, 19:3, 19:11, 35:4, 38:7, 38:20, 41:4, 49:24, 49:25, 50:3, 51:10, 51:13, 51:24, 52:18, 64:14, 80:19, 81:21, 86:19, 94:3, 94:20, 97:25, 98:7, 98:8, 102:3, 131:4, 136:13, 143:2, 148:3, 148:4, 150:11, 154:6, 158:19, 159:1, 160:24, 162:17, 165:4, 185:21, 186:4, 200:19

**looked** [3] - 45:24, 58:9, 169:9

**looking** [17] - 14:2, 19:6, 25:7, 46:9, 46:12, 52:14, 76:3, 86:14, 86:22, 90:3, 98:11, 115:2, 132:18, 138:17, 172:19, 189:11, 212:11

**looks** [11] - 13:16, 43:25, 44:4, 46:13, 47:19, 56:16, 58:6, 95:1, 95:7, 95:13, 132:23

**loose** [1] - 88:14

**lost** [1] - 225:17

**loud** [2] - 108:11, 208:25

**Lowe's** [3] - 57:14, 57:16, 59:6

**Luce** [43] - 4:10, 12:4, 12:25, 13:12, 26:18, 27:10, 49:21, 50:20, 52:6, 54:15, 54:21, 55:9, 55:24, 56:9, 60:21, 73:21, 81:17, 89:21, 90:5, 90:14, 91:22, 92:6, 95:18, 113:23, 114:7, 114:18, 173:25, 174:14, 178:2, 179:2, 179:13, 208:11, 209:24, 210:13, 211:6, 211:11, 211:14, 212:5, 213:14, 218:6, 219:3, 219:4

**lunch** [4] - 110:12,
121:13, 122:13, 125:4

**M**

**ma'am** [5] - 19:7,
118:24, 142:19, 172:3,
213:14
**Macrina** [2] - 155:19,
155:24
**mad** [4] - 102:20, 193:5,
193:7, 223:5
**madam** [3] - 137:13,
210:9, 211:7
**magazine** [3] - 86:6,
86:23, 86:24
**maintain** [1] - 192:17
**male** [1] - 34:24
**man** [1] - 184:4
**manage** [1] - 65:4
**manager** [2] - 193:13
**mandatory** [1] - 48:8
**manila** [2] - 165:4,
166:7
**manipulation** [1] -
157:16
**manner** [1] - 157:19
**manufacturer** [1] -
114:17
**Mar** [1] - 18:6
**Mar-a-Lago** [1] - 18:6
**Marathon** [10] - 9:13,
10:8, 11:9, 17:4, 17:15,
18:16, 19:13, 20:8,
21:3, 24:21
**March** [3] - 144:17,
179:25, 224:2
**Maria** [1] - 4:9
**mark** [4] - 52:5, 56:10,
174:22, 179:9
**marked** [37] - 12:7, 39:9,
46:1, 52:2, 74:3,
80:16, 81:22, 86:14,
88:20, 89:18, 92:1,
93:10, 93:24, 94:4,
95:24, 98:8, 112:8,
114:22, 117:7, 123:18,
127:5, 134:6, 139:22,
146:12, 147:23, 160:20,
161:3, 162:14,
162:16, 164:22, 176:7,
178:4, 186:14, 186:22,
188:11, 210:4, 217:20

**market** [1] - 103:23
**Market** [2] - 17:6, 27:3
**marshals** [3] - 64:6,
64:11, 64:17
**Martina** [2] - 200:13,
226:13
**Mary** [1] - 181:18
**material** [1] - 155:15
**materials** [2] - 71:1,
154:17
**matter** [7] - 149:18,
149:20, 153:2, 176:3,
197:14, 199:11, 228:11
**matters** [1] - 111:20
**Matthew** [2] - 110:14,
110:25
**MATTHEW** [2] - 110:25,
111:3
**maximum** [2] - 68:1,
68:4
**McGreevy** [1] - 232:10
**mean** [38] - 19:13, 30:14,
43:15, 49:18, 51:16,
58:7, 82:25, 83:2, 83:6,
87:7, 100:4, 108:25,
109:9, 109:12, 151:3,
151:6, 151:14, 151:19,
151:21, 151:23, 152:18,
152:20, 152:21,
152:22, 157:16, 172:6,
184:8, 191:20, 196:25,
197:1, 197:9, 198:10,
199:4, 200:19, 217:13,
223:23, 224:10, 225:15
**mean..** [1] - 211:24
**meaning** [2] - 153:10,
153:11
**means** [8] - 37:17,
40:18, 42:16, 43:16,
172:8, 172:17, 184:12,
199:5
**meantime** [1] - 6:8
**mechanism** [2] - 87:9,
142:10
**mechanisms** [1] -
156:16
**MEDETIS** [90] - 5:1, 5:8,
5:14, 5:16, 6:19, 7:9,
7:13, 9:20, 9:24,
10:11, 10:19, 10:23,
11:15, 11:18, 12:3,
12:5, 12:12, 12:16,
12:24, 13:1, 13:8,
13:12, 13:14, 13:18,
14:16, 14:21, 15:10,

15:15, 18:19, 18:22,
19:8, 19:10, 19:16,
20:3, 20:6, 20:22, 21:1,
21:4, 21:7, 21:17,
21:20, 22:5, 22:8, 22:14,
22:17, 22:20, 22:24,
23:9, 23:12, 23:15,
23:18, 23:22, 24:1,
24:8, 24:11, 24:15,
24:18, 24:22, 25:1,
25:9, 25:12, 25:20,
25:22, 26:5, 26:8,
26:14, 26:18, 26:20,
27:7, 27:10, 27:13,
27:16, 27:17, 27:22,
27:25, 28:3, 28:7, 28:9,
28:13, 28:15, 28:23,
29:2, 29:7, 30:10, 31:3,
63:1, 122:14, 124:9,
232:4, 232:14
**Medetis** [5] - 4:9, 6:17,
124:7, 232:1, 232:12
**MEDETIS-LONG** [90] -
5:1, 5:8, 5:14, 5:16,
6:19, 7:9, 7:13, 9:20,
9:24, 10:11, 10:19,
10:23, 11:15, 11:18,
12:3, 12:5, 12:12,
12:16, 12:24, 13:1,
13:8, 13:12, 13:14,
13:18, 14:16, 14:21,
15:10, 15:15, 18:19,
18:22, 19:8, 19:10,
19:16, 20:3, 20:6,
20:22, 21:1, 21:4, 21:7,
21:17, 21:20, 22:5,
22:8, 22:14, 22:17,
22:20, 22:24, 23:9,
23:12, 23:15, 23:18,
23:22, 24:1, 24:8,
24:11, 24:15, 24:18,
24:22, 25:1, 25:9,
25:12, 25:20, 25:22,
26:5, 26:8, 26:14,
26:18, 26:20, 27:7,
27:10, 27:13, 27:16,
27:17, 27:22, 27:25,
28:3, 28:7, 28:9, 28:13,
28:15, 28:23, 29:2,
29:7, 30:10, 31:3, 63:1,
122:14, 124:9, 232:4,
232:14
**Medetis-Long** [5] - 4:9,
6:17, 124:7, 232:1,
232:12
**media** [1] - 97:18
**medical** [2] - 9:4, 14:2
**meet** [10] - 69:16, 70:24,
80:2, 83:9, 84:4,

103:22, 184:6, 206:8,
206:11, 206:21
**meeting** [7] - 77:21,
77:23, 80:5, 80:7,
84:10, 84:12, 176:1
**member** [1] - 171:13
**members** [46] - 32:7,
34:10, 34:21, 38:6,
39:11, 39:22, 40:17,
41:14, 42:16, 43:4,
43:24, 46:11, 49:15,
50:12, 52:14, 52:18,
53:2, 54:8, 55:18, 56:2,
56:14, 61:5, 68:20,
70:20, 73:6, 81:24,
83:24, 86:21, 90:2,
90:11, 94:9, 94:21,
96:6, 98:11, 99:5,
116:25, 128:20, 140:19,
142:3, 143:4, 143:19,
147:13, 174:16,
191:22, 207:7, 207:10
**men** [1] - 185:10
**mention** [3] - 53:15,
87:22, 214:20
**mentioned** [14] - 73:2,
73:4, 78:19, 79:7,
82:22, 88:9, 89:14,
97:1, 115:22, 116:20,
116:23, 121:2, 175:3,
219:17
**merchandise** [1] -
32:15
**mere** [1] - 155:20
**merely** [1] - 30:17
**message** [68] - 74:11,
74:12, 74:19, 74:22,
74:25, 75:6, 75:7, 75:9,
75:13, 75:15, 75:16,
75:24, 76:5, 76:10,
76:13, 76:17, 76:19,
76:21, 76:23, 77:3,
77:5, 77:7, 77:9, 89:9,
89:11, 90:17, 91:4,
91:5, 91:9, 91:14, 92:5,
92:8, 92:12, 92:14,
92:16, 92:18, 92:19,
92:21, 92:24, 93:1,
93:5, 93:7, 93:20, 96:7,
96:8, 96:10, 96:13,
96:16, 96:19, 96:22,
98:13, 98:14, 99:3,
99:5, 99:8, 99:13,
99:15, 99:19, 99:21,
99:24, 100:1, 175:14,
175:17, 175:21, 175:25,
218:20, 218:23
**messages** [8] - 75:21,

75:25_, 83:14_, 88:16_, 95:20_, 172:20_, 219:9_, 219:10

**met** [7]_ - 71:5_, 83:18_, 83:21_, 83:23_, 84:6_, 184:4_, 206:23

**metal** [2]_ - 142:11_, 142:14

**Mexican** [2]_ - 9:7_, 11:6

**Mexicans** [1]_ - 211:21

**Mexico** [8]_ - 183:12_, 183:16_, 205:24_, 219:21 _, 220:19_, 222:17_, 222:18

**MICHAEL** [2]_ - 7:6, 7:10

**Michael** [3]_ - 5:3_, 6:21_, 7:6

**micromanage** [1]_ - 65:2

**microphone** [3]_ - 146:6 _, 146:8_, 229:13

**microphones** [3]_ - 134:21_, 181:1_, 181:2

**middle** [6]_ - 11:24_, 54:12_, 55:6_, 94:12_, 132:24

**Middle** [3]_ - 64:7_, 66:19 _, 69:10

**midnight** [3]_ - 26:24_, 27:21_, 29:6

**might** [3]_ - 158:7_, 160:5 _, 197:13

**Miguel** [1]_ - 207:21

**miles** [1]_ - 18:11

**Militello** [2]_ - 4:21_, 232:23

**mind** [2]_ - 121:16_, 130:22

**mindful** [1]_ - 156:21

**mine** [1]_ - 213:10

**minute** [4]_ - 27:25_, 28:1 _, 29:16_, 209:20

**minutes** [12]_ - 26:18_, 26:24_, 27:11_, 27:21_, 28:24_, 29:6_, 54:22_, 62:10_, 62:25_, 124:5_, 148:15_, 221:17

**misconstrued** [1]_ - 151:20

**missing** [1]_ - 159:21

**modified** [1]_ - 143:18

**moment** [26]_ - 13:8_, 18:23_, 28:8_, 50:4_,

50:21_, 52:9_, 54:3_, 55:25_, 115:25_, 120:13_, 121:5_, 150:14_, 154:1_, 158:3_, 158:9_, 167:6_, 167:22_, 170:6_, 180:1_, 184:24_, 192:7_, 193:14_, 193:16_, 219:15_, 219:23 _, 227:19

**momentarily** [2]_ - 170:3_, 220:10

**Monday** [1]_ - 77:18

**money** [14]_ - 40:21_, 43:17_, 43:19_, 85:20_, 85:22_, 87:3_, 176:2_, 193:24_, 199:25_, 203:9_, 229:21_, 229:25_, 230:2_, 230:19

**monitor** [7]_ - 112:5_, 114:24_, 127:9_, 130:19_, 130:25_, 173:4_, 210:6

**month** [1]_ - 67:6

**months** [11]_ - 16:13_, 20:14_, 102:1_, 166:18_, 166:22_, 168:8_, 223:10_, 223:13_, 225:5_, 225:8_, 225:11

**Moran** [2]_ - 170:6_, 181:6

**morning** [34]_ - 4:2_, 4:8 _, 4:13_, 4:14_, 4:18_, 4:23_, 4:24_, 5:5_, 6:15_, 6:20_, 7:14_, 7:15_, 13:25 _, 14:1_, 14:23_, 15:16_, 15:17_, 29:14_, 29:15_, 31:12_, 32:5_, 32:6_, 57:3 _, 57:4_, 66:9_, 66:10_, 102:19_, 103:22_, 104:1_, 110:15_, 111:7_, 111:8_, 231:22

**most** [2]_ - 91:20_, 104:11

**mother** [1]_ - 213:12

**motion** [2]_ - 149:17_, 196:7

**Motorola** [3]_ - 173:2_, 175:3_, 178:17

**Motorola-type** [1]_ - 175:3

**mounting** [2]_ - 107:23_, 108:1

**mounts** [1]_ - 107:21

**mouse** [1]_ - 143:18

**move** [11]_ - 10:12_, 19:17 _, 54:21_, 63:17_, 77:2_, 106:18_, 144:24_, 145:14 _, 158:1_, 226:17_, 230:16

**moved** [5]_ - 115:12_,

119:19_, 137:1_, 141:14_, 173:17

**moving** [5]_ - 23:15_, 40:12_, 44:11_, 48:13_, 70:17

**MR** [577]_ - 4:8_, 4:14_, 4:16_, 5:19_, 5:21_, 5:25 _, 6:3_, 10:14_, 13:22_, 13:24_, 19:21_, 29:11_, 29:13_, 30:13_, 30:25_, 31:9, 31:25_, 32:4_, 35:10 _, 35:13_, 35:14_, 38:24_, 39:3_, 39:6_, 39:7_, 45:18 _, 45:22_, 46:2_, 46:5_, 46:8_, 49:21_, 49:23_, 50:20_, 50:23_, 52:1_, 52:5_, 52:8, 52:10_, 53:8 _, 53:11_, 53:14_, 53:23_, 53:25_, 54:3_, 54:4_, 54:15_, 54:18_, 54:21_, 54:24_, 55:1_, 55:9_, 55:12_, 55:21_, 55:24_, 56:1_, 56:9_, 56:12_, 56:13_, 56:22_, 56:25_, 57:2_, 58:14_, 58:18, 58:19, 58:24_, 59:12_, 59:15_, 60:1_, 60:6_, 60:9 _, 60:13_, 60:18_, 60:20_, 61:1_, 62:11_, 62:23_, 63:7_, 63:12_, 63:21_, 64:1_, 64:4_, 65:7_, 65:13 _, 66:4_, 66:8_, 71:18_, 71:22_, 71:23_, 73:16_, 73:20_, 73:23_, 75:18_, 75:20_, 80:10_, 80:14_, 80:15_, 81:16_, 81:20_, 82:20_, 82:21_, 86:8_, 86:11_, 86:12_, 88:18_, 88:22_, 89:1_, 89:17_, 89:21_, 89:23_, 90:5_, 90:7_, 90:14_, 90:16_, 90:20_, 90:22_, 91:1_, 91:3_, 91:21, 91:25_, 92:6, 92:7_, 92:23, 92:25 _, 93:9, 93:11_, 93:23_, 94:2_, 94:16_, 94:19_, 95:17_, 95:19_, 95:23_, 96:1_, 96:2_, 97:24_, 98:2 _, 98:5_, 98:6_, 98:24, 99:1_, 102:10_, 102:14_, 102:16_, 102:23, 103:2_, 103:4_, 103:16_, 103:20, 103:21_, 105:16_, 105:19 _, 105:24_, 106:4_, 106:16, 106:19, 106:20_, 108:10_, 108:14_, 108:17 _, 108:19_, 108:24_, 109:1_, 109:3_, 109:5_, 109:13_, 110:3_, 110:5_, 110:9_, 110:13_, 111:1_,

111:6_, 112:4, 112:6_, 112:9_, 112:12_, 112:23_, 113:1_, 113:2_, 113:7_, 113:9_, 113:11_, 113:23, 114:1_, 114:7_, 114:12_, 114:18_, 114:20_, 114:23, 115:1_, 115:11_, 115:14_, 115:17_, 115:19_, 116:6_, 116:8_, 117:9, 117:11_, 117:20_, 118:8_, 118:11, 118:15_, 118:24_, 119:4_, 119:6_, 119:18_, 119:22_, 120:1_, 120:16_, 120:19_, 121:5_, 121:8_, 122:2_, 122:5_, 122:10_, 122:15_, 123:1_, 123:16_, 123:21_, 124:2_, 124:5_, 124:16_, 124:23_, 124:24_, 125:6_, 125:20_, 126:1_, 126:20_, 126:22_, 126:24_, 127:8_, 127:11_, 127:23_, 128:1_, 128:4_, 128:6_, 130:23_, 131:3_, 132:6_, 132:9_, 132:14_, 132:17_, 133:8_, 133:10_, 133:16_, 133:19 _, 134:10_, 134:12_, 134:17_, 134:23_, 135:1_, 135:3_, 136:4_, 136:8_, 136:25_, 137:4_, 137:9_, 137:11_, 137:13_, 137:15 _, 137:19, 137:21_, 138:8 _, 138:10_, 138:14, 138:16_, 138:24_, 139:1_, 139:11_, 139:13_, 139:18 _, 139:20_, 140:6_, 140:10_, 140:13_, 140:16 _, 141:13_, 141:17_, 141:22_, 142:1_, 142:22_, 143:23_, 143:25_, 144:2_, 144:4_, 144:5_, 144:18_, 144:20_, 145:10_, 145:16 _, 145:19_, 145:24_, 146:5_, 146:8_, 146:10_, 146:14_, 146:16_, 147:3_, 147:7_, 147:11_, 147:18_, 147:21_, 147:24_, 148:1_, 148:12_, 148:25_, 149:6_, 149:10_, 149:12_, 149:15 _, 149:25_, 150:18_, 150:25_, 151:12_, 152:11 _, 153:3_, 153:22_, 153:25_, 154:5_, 154:9_, 154:19_, 158:9_, 158:11_, 158:21_, 159:4_, 159:6_, 159:25_, 160:7_, 160:9_, 160:19_, 160:22_, 161:7_, 161:10_, 161:15_, 161:18 _, 161:21_, 162:7_, 162:10_, 162:12_, 162:25 _, 163:3_, 163:8_, 163:11, 163:13_, 164:17_, 164:20

_, 164:23_, 165:1_, 165:12_, 165:15_, 165:18_, 165:23_, 166:2_, 166:4_, 166:10_, 166:13_, 166:15_, 167:5_, 167:8_, 167:10_, 167:14_, 167:16, 167:20, 168:2_, 168:20_, 168:23_, 169:2_, 169:15_, 169:19_, 169:23_, 170:1_, 170:18_, 170:23_, 171:22_, 171:24_, 173:3, 173:7_, 173:16_, 173:19_, 173:23_, 173:25_, 174:2_, 174:13_, 174:15_, 175:9_, 175:11_, 176:5_, 176:10_, 176:23_, 177:1_, 177:4_, 177:6_, 177:17_, 177:18_, 178:2_, 178:7_, 178:19_, 178:22_, 178:25_, 179:2_, 179:4_, 179:12, 179:14_, 180:1_, 180:5_, 180:10_, 180:20_, 180:25_, 181:5_, 182:2_, 182:17_, 182:21_, 183:6_, 185:1_, 185:2_, 185:12_, 185:19_, 186:1_, 186:2_, 186:7_, 186:21_, 187:1_, 187:11_, 187:14_, 187:17_, 187:19_, 187:21_, 188:13_, 188:16_, 189:1_, 189:5_, 189:8_, 189:10_, 189:25_, 190:1_, 190:4_, 190:7_, 190:9_, 192:2_, 192:6_, 192:10_, 192:13, 192:22_, 193:17_, 193:21_, 194:4_, 194:6_, 194:24_, 195:7_, 195:13_, 195:22_, 196:11_, 196:25_, 197:5_, 197:9_, 197:11_, 197:16_, 198:1_, 198:10_, 198:19_, 198:23_, 199:3_, 199:14, 199:22_, 200:4_, 200:6_, 200:10_, 200:17_, 200:23, 200:24_, 201:5, 201:9_, 201:11_, 201:13_, 201:18_, 201:24_, 202:2_, 202:11_, 202:16_, 202:18_, 203:1_, 204:2_, 204:5_, 204:9_, 204:23_, 204:25_, 205:5_, 208:9_, 208:11_, 208:15_, 209:24, 209:25_, 210:9_, 210:16_, 210:17_, 210:25_, 211:3_, 211:6_, 211:11_, 211:14_, 211:15_, 212:5_, 212:10_, 212:19_, 212:21_, 213:13_, 213:16_, 213:17_, 214:2_, 214:5_, 214:8_, 215:16, 215:19_, 215:25_, 216:1, 216:8_, 216:19_, 216:21_, 216:22_, 217:19

_, 217:23_, 218:1_, 218:5_, 218:8_, 218:14_, 218:16_, 219:3_, 219:5_, 219:15_, 219:16_, 219:25_, 220:2_, 220:21_, 221:10_, 221:13_, 221:17_, 222:5_, 222:22_, 222:24_, 223:2_, 223:18_, 223:25, 224:16_, 224:18_, 225:4_, 225:20_, 225:23, 225:24_, 226:1, 226:2_, 226:6_, 226:8_, 226:12_, 226:18_, 226:19_, 227:7, 227:8_, 227:9_, 227:11_, 227:13, 227:15_, 227:18_, 227:25_, 228:4_, 228:9, 228:16_, 228:22_, 228:25_, 229:2_, 229:9_, 229:11_, 230:4_, 230:6_, 230:15_, 230:18_, 230:23_, 231:1_, 232:16

**MS** [92]_ - 4:18_, 5:1_, 5:8_, 5:14_, 5:16_, 6:19_, 7:9_, 7:13_, 9:20_, 9:24_, 10:11_, 10:19_, 10:23_, 11:15_, 11:18_, 12:3_, 12:5_, 12:12_, 12:16_, 12:24_, 13:1_, 13:8_, 13:12_, 13:14_, 13:18_, 14:16_, 14:21_, 15:10_, 15:15_, 18:19_, 18:22_, 19:8_, 19:10_, 19:16_, 20:3_, 20:6_, 20:22_, 21:1_, 21:4_, 21:7_, 21:17_, 21:20_, 22:5, 22:8_, 22:14_, 22:17_, 22:20_, 22:24_, 23:9_, 23:12_, 23:15_, 23:18_, 23:22_, 24:1_, 24:8_, 24:11_, 24:15_, 24:18_, 24:22_, 25:1_, 25:9_, 25:12_, 25:20_, 25:22_, 26:5_, 26:8_, 26:14_, 26:18_, 26:20_, 27:7_, 27:10_, 27:13_, 27:16, 27:17_, 27:22_, 27:25_, 28:3_, 28:7, 28:9_, 28:13, 28:15_, 28:23_, 29:2_, 29:7_, 30:10_, 31:3_, 63:1_, 122:14_, 124:9_, 232:4_, 232:14_, 232:25

**MSISDN** [5]_ - 49:6_, 49:16_, 49:17_, 174:20_, 179:8

**MSISDNs** [1]_ - 219:4

**multiple** [4]_ - 24:13_, 29:18_, 29:20_, 173:11

**muster** [1]_ - 156:7

**Myrtle** [1]_ - 76:16

**N**

**nails** [1]_ - 186:20

**Name** [1]_ - 176:21

**name** [51]_ - 7:4_, 15:7_, 31:20_, 31:22_, 33:18_, 33:20_, 33:22_, 36:21_, 37:7_, 37:9_, 41:7_, 41:9_, 41:18_, 41:20_, 41:21_, 41:23_, 41:24_, 42:7_, 44:17_, 44:19_, 44:25_, 46:18_, 46:21_, 48:11_, 48:16_, 48:20_, 48:21_, 58:25_, 59:2_, 59:10_, 59:11_, 65:24_, 66:1_, 70:18_, 71:24_, 110:23_, 125:16_, 125:18_, 125:19_, 137:25_, 170:14_, 170:16_, 177:11_, 181:17_, 181:21_, 182:13_, 182:15_, 204:19_, 207:19_, 221:13

**named** [3]_ - 184:4_, 202:20_, 222:6

**names** [2]_ - 181:16_, 207:20

**natural** [1]_ - 65:3

**nature** [2]_ - 129:17_, 206:18

**near** [2]_ - 66:13_, 113:14

**necessarily** [2]_ - 33:17_, 122:23

**necessary** [8]_ - 150:23_, 151:10_, 155:15_, 156:19_, 157:7_, 158:5_, 158:12_, 158:18

**need** [14]_ - 37:17_, 58:3_, 62:21_, 66:16_, 117:16_, 122:24_, 151:7_, 151:23_, 192:17_, 192:20_, 194:6_, 198:14_, 198:18

**needed** [8]_ - 36:2_, 56:8_, 59:19_, 64:19_, 120:7_, 150:3_, 188:1

**needs** [3]_ - 48:7_, 155:14_, 224:14

**nervous** [2]_ - 117:5_, 117:6

**never** [14]_ - 36:21_, 71:4_, 107:6_, 107:7_, 107:8_, 107:15_, 107:19_, 108:12_, 109:11_, 109:17_, 109:24_, 168:4_, 169:3_, 169:12

**nevertheless** [1]_ -

230:9

**New** [2]_ - 16:18_, 16:21

**new** [3]_ - 104:1_, 184:25_, 216:6

**news** [2]_ - 185:5_, 216:2

**next** [55]_ - 6:18_, 14:20_, 42:21_, 43:23_, 44:17_, 44:19_, 47:12_, 49:10_, 49:11_, 52:21_, 53:13_, 60:5_, 62:22_, 64:5_, 65:12_, 75:4_, 75:6_, 75:18_, 76:19_, 91:21_, 92:18_, 96:18_, 98:24_, 99:15_, 103:18_, 105:8_, 107:3_, 110:12_, 122:16_, 123:25_, 124:11_, 125:4_, 169:18_, 174:20_, 175:9_, 175:15_, 176:21_, 177:17_, 179:12_, 180:8_, 180:10_, 180:19_, 181:12_, 181:25_, 185:4_, 185:11_, 191:6_, 200:22_, 201:8_, 204:8_, 213:8_, 215:24_, 218:24_, 228:15_, 231:8

**nice** [3]_ - 14:10_, 30:20_, 198:12

**Nicholas** [1]_ - 232:6

**Nicolás** [1]_ - 183:12

**night** [4]_ - 28:11_, 29:25_, 116:19_, 233:2

**nights** [2]_ - 29:19_, 29:20

**NISS** [1]_ - 139:9

**Nissan** [4]_ - 12:18_, 26:10_, 27:9_, 139:8

**nobody** [4]_ - 108:6_, 108:7_, 225:8_, 225:10

**non** [1]_ - 20:13

**non-truck** [1]_ - 20:13

**none** [4]_ - 153:11_, 167:3_, 167:4_, 168:16

**NONE** [1]_ - 3:18

**nonviolence** [9]_ - 195:4_, 195:14_, 196:23_, 197:7_, 197:21_, 197:23_, 198:8_, 198:22_, 199:1

**nonviolent** [3]_ - 109:15_, 194:3_, 195:23

**normal** [2]_ - 30:2_, 56:7

**normally** [3]_ - 30:4_, 30:15_, 231:11

**north** [1]_ - 8:20

**North** [25]_ - 16:25_, 32:9_, 32:10_, 40:5_, 47:3_,

48:22_, 64:7_, 66:12_, 66:13_, 66:20_, 69:10_, 69:11_, 102:1_, 111:12_, 137:24_, 138:4_, 144:12_, 171:16_, 182:23_, 183:5_, 205:9_, 205:19_, 205:21_, 222:12_, 222:14

**note** [3]_ - 133:24_, 156:15_, 157:21

**noted** [1]_ - 123:1

**nothing** [33]_ - 7:1_, 15:3_, 31:17_, 62:23_, 63:1_, 65:21_, 99:16_, 105:11_, 105:13_, 105:20_, 110:20_, 118:23_, 121:6_, 123:14_, 125:13_, 129:15_, 130:16_, 151:17_, 157:5_, 169:9_, 170:11_, 182:10_, 192:2_, 198:10_, 199:5_, 201:2_, 204:16_, 214:16_, 214:19_, 222:22_, 225:5_, 230:23_, 232:14

**notice** [2]_ - 36:25_, 158:13

**noticed** [3]_ - 196:1_, 196:7_, 196:15

**notify** [1]_ - 196:5

**nowhere** [1]_ - 152:14

**number** [72]_ - 32:21_, 32:23_, 32:25_, 37:18_, 37:21_, 39:17_, 39:18_, 41:11_, 41:15_, 42:7_, 42:8_, 42:9_, 42:10_, 42:20_, 42:22_, 43:10_, 43:11_, 43:21_, 43:23_, 43:24_, 43:25_, 44:9_, 47:8_, 47:21_, 48:11_, 48:12_, 49:17_, 49:18_, 49:19_, 49:20_, 73:13_, 74:6_, 74:9_, 78:19_, 79:14_, 79:18_, 79:20_, 79:22_, 80:1_, 87:22_, 87:23_, 108:4_, 139:3_, 139:5_, 152:22_, 153:3_, 153:24_, 163:25_, 164:3_, 167:15_, 174:8_, 174:18_, 174:21_, 174:25_, 175:20_, 175:22_, 179:6_, 190:20_, 208:18_, 208:22_, 209:2_, 209:3_, 209:5_, 209:7_, 209:11_, 209:13_, 218:9_, 218:12_, 218:13_, 218:17

**Number** [1]_ - 4:5

**numbers** [11]_ - 42:10_, 42:12_, 49:25_, 50:3_, 79:12_, 93:6_, 94:12_,

123:22_, 219:7_, 219:9_, 219:11

**NWYPZ** [1]_ - 50:16

**O**

**O-X-E-N-D-I-N-E** [1]_ - 66:2

**Oahu** [1]_ - 164:15

**Oakland** [1]_ - 8:9

**oath** [4]_ - 59:24_, 160:14_, 199:20_, 222:2

**object** [2]_ - 192:14_, 195:17

**objection** [106]_ - 10:13_, 10:14_, 10:16_, 19:20_, 19:21_, 19:23_, 30:10_, 59:12_, 60:1_, 60:9_, 102:23_, 103:4_, 105:16_, 105:24_, 106:16_, 106:17_, 108:10_, 108:17_, 108:21_, 109:1_, 109:2_, 112:25_, 113:1_, 113:5_, 115:13_, 115:14_, 115:15_, 118:10_, 118:11_, 118:13_, 119:20_, 119:22_, 119:23_, 127:25_, 128:1_, 128:2_, 132:8_, 132:9_, 132:11_, 137:3_, 137:4_, 137:6_, 140:9_, 140:10_, 140:11_, 141:15_, 141:17_, 141:19_, 145:17_, 145:19_, 145:21_, 147:6_, 147:7_, 147:8_, 155:10_, 159:18_, 160:6_, 161:9_, 161:10_, 161:12_, 163:2_, 163:3_, 163:5_, 165:14_, 165:15_, 165:16_, 167:10_, 167:18_, 173:19_, 173:21_, 176:25_, 177:1_, 177:2_, 178:21_, 178:22_, 178:23_, 187:13_, 187:14_, 187:15_, 189:4_, 189:5_, 189:6_, 192:13_, 193:17_, 194:4_, 195:1_, 195:4_, 195:6_, 197:18_, 200:6_, 201:5_, 201:11_, 211:2_, 211:3_, 211:4_, 219:23_, 219:25_, 223:18_, 225:20_, 226:1_, 226:15_, 227:13_, 228:3_, 228:22_, 230:5

**objectionable** [1]_ - 109:8

**objects** [1]_ - 131:21

**obscuring** [1]_ - 150:12

**observations** [2]_ - 51:1_,

_, 80:19

**observed** [1]_ - 20:14

**obstructing** [2]_ - 134:14_, 185:23

**obtain** [4]_ - 47:7_, 129:20_, 129:23_, 183:23

**obvious** [1]_ - 45:11

**obviously** [1]_ - 130:5

**occasion** [2]_ - 8:20_, 196:15

**occurred** [1]_ - 73:7

**October** [2]_ - 83:20_, 171:19

**off-limits** [1]_ - 108:22

**offense** [1]_ - 64:8

**offer** [1]_ - 156:8

**offered** [1]_ - 152:5

**offering** [1]_ - 190:18

**office** [29]_ - 6:1_, 8:7_, 8:12_, 80:6_, 83:18_, 83:23_, 83:24_, 83:25_, 84:2_, 84:7_, 84:20_, 85:4_, 88:7_, 100:6_, 111:16_, 121:1_, 126:3_, 126:8_, 128:9_, 128:14_, 129:14_, 130:5_, 130:8_, 171:15_, 193:13_, 193:25_, 201:4_, 203:5

**Office** [5]_ - 7:17_, 8:2_, 8:11_, 15:19_, 15:24

**officer** [10]_ - 8:15_, 15:25_, 16:4_, 16:18_, 17:13_, 68:11_, 129:6_, 129:7_, 131:20_, 188:9

**Officer** [2]_ - 6:10_, 158:3

**OFFICER** [1]_ - 6:11

**often** [1]_ - 79:3

**old** [3]_ - 59:11_, 183:13_, 218:2

**older** [1]_ - 34:24

**once** [15]_ - 35:21_, 37:15_, 41:25_, 47:20_, 61:18_, 117:17_, 130:14_, 148:25_, 153:13_, 155:12_, 177:9_, 184:20_, 194:18_, 198:21

**one** [67]_ - 13:8_, 17:21_, 17:22_, 18:12_, 23:3_, 31:7_, 41:4_, 45:6_, 50:9_, 50:22_, 71:4_, 76:4_, 78:11_, 81:25_, 87:1_, 90:5_, 92:9_, 92:10_, 93:6_, 96:17_, 107:4_, 107:14_, 107:22_, 107:23_,

108:1_, 110:11_, 115:25_, 120:13_, 129:17_, 134:20_, 142:2_, 142:20_, 143:9_, 150:14_, 153:3_, 153:7_, 154:1_, 155:12_, 157:21_, 157:24_, 158:3_, 165:21_, 167:6_, 167:22_, 170:6_, 173:11_, 174:17_, 181:14_, 184:23_, 184:24_, 190:17_, 190:18_, 192:7_, 193:1_, 193:10_, 195:18_, 199:14_, 217:17_, 219:17_, 219:18_, 219:23_, 222:9_, 227:19

**one-by-one** [1]_ - 142:2

**open** [15]_ - 28:10_, 53:9_, 90:13_, 99:16_, 130:10_, 186:12_, 197:13_, 198:21_, 214:11_, 215:3_, 215:12_, 215:14_, 215:21_, 216:3_, 216:10

**open-ended** [1]_ - 53:9

**opened** [10]_ - 186:11_, 186:18_, 186:19_, 203:10_, 215:7_, 216:12_, 217:3_, 217:14_, 225:15

**opening** [1]_ - 34:15

**opens** [1]_ - 195:24

**operate** [1]_ - 59:20

**operation** [1]_ - 128:11

**opportunity** [7]_ - 103:14_, 103:19_, 124:14_, 131:4_, 150:16_, 154:16_, 228:11

**oppose** [1]_ - 150:1

**opposed** [1]_ - 149:21

**orange** [7]_ - 12:2_, 21:25_, 23:5_, 25:19_, 26:2_, 164:12_, 164:14

**Order** [1]_ - 4:1

**order** [17]_ - 4:21_, 5:6_, 41:25_, 61:8_, 107:2_, 194:4_, 195:5_, 195:15_, 198:4_, 198:16_, 198:18_, 200:7_, 201:5_, 201:16_, 202:8_, 227:9_, 227:17

**orders** [4]_ - 103:11_, 104:13_, 108:23_, 199:8

**orient** [1]_ - 28:16

**original** [1]_ - 90:15

**originally** [3]_ - 36:21_, 100:15_, 135:21

**otherwise** [4]_ - 150:4_, 152:4_, 159:1_, 202:10

**ourselves** [1]_ - 6:5

**out-of-court** [1] - 155:4
**outset** [1] - 103:6
**outside** [1] - 200:6
**overall** [2] - 124:3, 197:7
**overarching** [1] - 152:1
**overhead** [1] - 13:5
**overrule** [1] - 197:17
**overruled** [6] - 30:11, 105:18, 106:1, 193:18, 200:8, 223:20
**oversaw** [1] - 128:19
**overview** [1] - 10:25
**owed** [7] - 193:24, 203:6, 203:9, 229:21, 229:24, 230:2, 230:19
**own** [11] - 58:3, 78:12, 79:7, 105:13, 105:20, 150:2, 153:14, 153:15, 183:25, 216:13
**owned** [5] - 70:22, 104:23, 104:25, 201:19, 201:22
**owner** [3] - 175:20, 175:21, 184:23
**owns** [1] - 105:20
**OXENDINE** [1] - 66:5
**Oxendine** [21] - 5:9, 64:5, 65:14, 65:16, 66:1, 66:9, 66:11, 66:15, 71:24, 73:24, 80:16, 80:24, 81:21, 86:13, 89:2, 94:3, 94:20, 95:20, 96:3, 97:8, 98:7

**P**

**P-E-R-R-Y** [1] - 110:25
**P-L-A-T-A** [1] - 204:24
**p.m** [25] - 12:11, 12:23, 34:15, 45:5, 98:18, 98:19, 99:14, 99:20, 100:2, 124:19, 125:1, 148:17, 154:13, 160:12, 194:11, 194:21, 199:18, 220:6, 221:21, 221:25, 231:24, 233:3
**packaging** [1] - 141:1
**page** [44] - 13:13, 74:17, 75:18, 75:21, 89:22, 91:21, 91:24, 92:1, 92:5, 92:24, 93:9, 96:18, 96:19, 98:24,

99:2, 99:15, 99:21, 150:19, 150:20, 152:13, 153:5, 156:1, 156:11, 156:19, 156:21, 158:19, 158:20, 174:14, 174:17, 175:9, 175:15, 177:8, 177:10, 177:17, 179:2, 179:3, 179:6, 179:12, 208:12, 218:5, 218:6, 219:3
**Page** [2] - 3:2, 3:17
**pages** [6] - 149:14, 151:24, 151:25, 152:23, 157:6, 158:16
**paid** [3] - 38:14, 229:22, 230:10
**painfully** [1] - 45:11
**paint** [1] - 142:25
**painted** [1] - 143:3
**pair** [1] - 130:22
**Palm** [11] - 7:17, 7:24, 15:19, 15:24, 16:1, 16:14, 17:21, 18:10, 18:13, 176:1, 179:20
**pants** [3] - 53:19, 53:21, 53:22
**paper** [7] - 130:5, 130:11, 159:10, 190:13, 190:15, 206:3, 217:9
**papers** [1] - 183:19
**parallel** [1] - 105:1
**park** [4] - 20:13, 20:16, 29:18, 29:25
**Park** [1] - 8:9
**parked** [2] - 13:3, 13:7
**parking** [9] - 12:20, 13:17, 57:17, 59:9, 84:2, 84:5, 84:7, 88:8, 104:14
**part** [17] - 11:8, 11:21, 16:14, 17:22, 39:25, 40:4, 63:12, 63:21, 67:12, 94:11, 95:14, 110:4, 122:25, 155:23, 157:4, 159:2, 197:18
**participants** [1] - 218:7
**particular** [13] - 16:20, 32:17, 33:12, 41:18, 66:13, 107:10, 109:7, 142:20, 149:3, 172:11, 174:4, 179:6, 215:18
**particularly** [1] - 36:21
**parties** [2] - 220:9, 231:18

**partner** [1] - 9:15
**parts** [7] - 155:9, 156:15, 159:21, 166:25, 167:1, 168:16, 169:9
**party** [7] - 46:16, 46:19, 48:13, 48:23, 154:25, 155:1, 155:9
**party's** [1] - 155:10
**passed** [1] - 200:5
**passing** [1] - 202:13
**past** [4] - 38:21, 72:11, 152:3, 219:1
**patience** [5] - 6:16, 154:15, 160:15, 160:17, 231:21
**Patricio** [2] - 182:15, 204:21
**PATRICK** [1] - 15:12
**Patrick** [2] - 14:22, 15:9
**patrol** [6] - 7:24, 8:15, 8:23, 12:8, 16:11, 17:13
**patrolling** [2] - 20:14, 20:19
**Pause** [1] - 154:8
**pause** [5] - 27:16, 28:7, 55:24, 210:16, 211:14
**pawned** [1] - 100:16
**pay** [11] - 29:25, 85:18, 218:22, 218:23, 218:25, 219:1, 219:8, 228:19, 229:18, 229:22, 230:19
**payment** [2] - 38:12, 50:5
**payroll** [4] - 193:16, 193:22, 203:4, 203:6
**PBSO** [10] - 5:16, 7:18, 8:1, 8:5, 8:23, 16:4, 16:7, 16:9, 16:10, 16:17
**peaceful** [1] - 109:15
**peacefulness** [3] - 196:24, 197:7, 197:21
**Pembroke** [1] - 8:13
**people** [15] - 29:16, 29:18, 29:25, 70:6, 109:24, 229:16, 229:18, 229:21, 229:24, 230:2, 230:8, 230:10, 230:19, 230:20
**per** [1] - 4:21

**perfect** [1] - 114:11
**perform** [4] - 172:6, 178:13, 180:17, 192:16
**performed** [3] - 172:4, 173:13, 176:19
**performing** [1] - 174:7
**perhaps** [2] - 107:14, 157:9
**period** [2] - 8:3, 166:23
**periodically** [1] - 70:25
**periods** [1] - 20:17
**permissible** [2] - 201:19, 221:5
**permission** [77] - 11:15, 12:12, 13:9, 15:10, 18:19, 19:8, 20:4, 20:22, 21:4, 21:17, 22:5, 22:14, 22:21, 23:9, 23:16, 24:9, 24:15, 24:22, 25:9, 26:5, 26:14, 27:22, 38:24, 45:19, 52:1, 60:21, 63:18, 73:16, 80:10, 80:12, 81:17, 86:8, 88:19, 89:17, 93:24, 94:17, 97:24, 112:9, 113:7, 115:17, 117:12, 126:20, 128:4, 132:14, 133:8, 133:16, 134:10, 137:9, 137:11, 138:24, 139:11, 140:6, 140:13, 143:23, 144:2, 145:10, 146:14, 147:18, 162:10, 163:11, 173:23, 176:6, 177:4, 178:3, 178:25, 185:19, 185:21, 187:17, 189:1, 189:8, 190:4, 208:9, 210:6, 212:19, 213:5, 216:19, 218:3
**permit** [1] - 192:7
**permits** [1] - 232:9
**permitted** [3] - 141:23, 222:3, 229:7
**PERRY** [1] - 111:3
**Perry** [16] - 5:10, 110:14, 110:25, 111:7, 112:7, 112:13, 113:12, 114:2, 114:13, 114:21, 115:2, 117:13, 117:21, 118:17, 119:7, 120:2
**person** [22] - 34:6, 34:17, 34:22, 35:3, 35:5, 35:16, 36:14, 36:25, 52:25, 54:5, 54:19, 56:19, 61:9,

70:18_, 71:11_, 71:24_, 95:14_, 195:12_, 197:4_, 219:11_, 219:13_, 221:12

**personally** [3]_ - 173:13_, 178:13_, 187:8

**personnel** [3]_ - 6:2_, 130:7_, 130:8

**persons** [1]_ - 207:12

**persuade** [1]_ - 155:13

**pertain** [1]_ - 224:12

**pertaining** [1]_ - 74:6

**pertains** [1]_ - 223:17

**pertinent** [5]_ - 109:14_, 194:2_, 195:3_, 195:9_, 197:19

**phone** [76]_ - 36:10_, 37:1_, 37:3_, 37:5_, 42:7_, 47:19_, 47:21_, 49:17_, 49:18_, 49:19_, 49:20_, 56:4_, 57:23_, 58:2_, 58:3_, 58:21_, 59:9_, 59:17_, 59:20_, 61:8_, 61:11_, 61:18_, 70:12_, 70:15_, 76:8_, 77:15_, 77:16_, 102:8_, 138:18_, 138:20_, 138:21_, 147:15_, 147:16_, 147:17_, 154:6_, 163:18_, 163:24_, 164:9_, 172:4_, 172:9_, 172:12_, 172:15_, 172:16_, 172:17_, 172:20_, 172:25_, 173:2_, 173:12_, 174:5_, 174:9_, 174:11_, 174:12_, 174:17_, 174:21_, 174:25_, 175:4_, 175:14_, 175:19_, 175:21_, 176:1_, 176:18_, 177:20_, 177:23_, 178:12_, 178:16_, 189:13_, 209:2_, 209:11_, 209:21_, 216:15_, 218:17_, 219:6

**phones** [8]_ - 131:18_, 147:1_, 189:18_, 189:19_, 189:23_, 190:25_, 191:4_, 214:22

**photo** [28]_ - 12:6_, 23:13_, 23:14_, 23:19_, 48:11_, 48:12_, 112:19_, 112:20_, 112:21_, 113:12_, 113:14_, 115:4_, 115:20_, 127:3_, 127:4_, 128:15_, 134:3_, 169:3_, 169:6_, 187:4_, 187:6_, 187:22_, 188:5_, 188:15_, 188:21_, 188:23_, 189:11_, 213:2

**photocopy** [1]_ - 159:11

**photograph** [22]_ -

11:25_, 22:1_, 24:2_, 24:3_, 24:19_, 25:18_, 27:4_, 90:5_, 90:8_, 90:12_, 94:7_, 94:10_, 94:22_, 95:2_, 95:10_, 95:14_, 118:5_, 119:10_, 127:17_, 128:7_, 128:9_, 187:3

**photographed** [1]_ - 115:6

**photographs** [3]_ - 26:1_, 26:3_, 132:2

**photos** [6]_ - 26:2_, 130:8_, 131:7_, 131:9_, 131:10_, 131:12

**phrase** [2]_ - 151:8_, 157:6

**phrases** [2]_ - 217:5_, 217:9

**physical** [10]_ - 61:7_, 61:17_, 61:19_, 111:22_, 111:24_, 112:2_, 126:13_, 134:6_, 134:8_, 193:9

**physically** [2]_ - 140:14_, 193:10

**pick** [4]_ - 153:17_, 155:7_, 155:8_, 157:25

**picking** [2]_ - 103:25_, 157:12

**pickup** [1]_ - 84:8

**picture** [11]_ - 26:10_, 52:22_, 82:13_, 82:17_, 90:17_, 92:13_, 95:11_, 116:12_, 133:11_, 159:22_, 187:24

**pictures** [4]_ - 23:14_, 130:13_, 130:14_, 168:14

**piece** [7]_ - 81:12_, 81:14_, 159:9_, 190:13_, 190:15_, 206:3_, 217:9

**pieces** [3]_ - 62:6_, 166:25_, 168:17

**Pines** [1]_ - 8:13

**pipe** [19]_ - 132:23_, 132:25_, 142:12_, 142:14_, 142:21_, 143:9_, 165:22_, 168:5_, 168:7_, 168:9_, 168:13_, 187:7_, 188:20_, 216:15

**pipes** [3]_ - 188:4_, 189:13_, 215:1

**pitch** [1]_ - 56:7

**place** [4]_ - 80:5_, 155:16_, 156:20_, 230:9

**placed** [5]_ - 38:10_, 61:18_, 177:24_, 209:5_,

209:7

**placeholder** [5]_ - 42:18_, 47:9_, 47:20_, 47:22_, 47:23

**placing** [1]_ - 133:24

**plaid** [1]_ - 53:22

**plan** [4]_ - 43:9_, 44:7_, 123:16

**plane** [1]_ - 75:14

**planning** [5]_ - 148:22_, 148:23_, 180:23_, 219:21_, 220:18

**plastic** [4]_ - 83:7_, 95:4_, 142:12_, 143:10

**PLATA** [2]_ - 182:18, 205:2

**Plata** [57]_ - 5:10_, 5:11_, 104:2_, 112:3_, 116:20_, 182:3_, 182:4_, 182:15_, 182:22_, 183:3_, 183:13_, 183:22_, 186:8_, 186:12_, 186:17_, 187:2_, 187:22_, 188:17_, 189:11_, 190:2_, 190:11_, 194:13_, 195:8_, 195:12_, 196:12_, 196:16_, 196:19_, 199:13_, 201:21_, 202:19_, 204:10_, 204:21_, 205:6_, 206:8_, 207:10_, 208:7_, 208:16_, 209:11_, 209:17_, 210:1_, 210:18_, 211:16_, 212:11_, 212:22_, 213:18_, 213:22_, 214:11_, 215:20_, 216:9_, 216:23_, 217:12_, 217:17_, 218:9_, 218:18_, 219:6_, 222:6_, 229:12

**Plata's** [4]_ - 113:15_, 113:16_, 116:18_, 116:25

**Platas** [7]_ - 113:19_, 115:22_, 116:13_, 116:17_, 120:7_, 121:1_, 121:2

**Platas'** [4]_ - 113:15_, 115:6_, 115:9_, 118:4

**play** [8]_ - 53:23_, 54:15_, 55:10_, 55:21_, 56:10_, 210:14_, 211:11_, 212:7

**played** [16]_ - 27:6, 27:12_, 28:2_, 29:1_, 52:7, 53:24, 54:2_, 54:17, 54:23_, 55:11, 55:23, 56:11_, 210:15, 211:13_, 212:9, 213:15

**plea** [11]_ - 67:1_, 67:12_, 67:21_, 67:24_, 68:15_, 68:17_, 68:21_, 68:24_, 69:3_, 69:7

**plead** [1]_ - 67:3

**pleaded** [3]_ - 64:7_, 66:24_, 101:25

**pleasant** [1]_ - 231:20

**pluck** [1]_ - 156:12

**plug** [2]_ - 59:10_, 172:16

**PNLS** [1]_ - 43:8

**point** [24]_ - 34:16_, 37:24_, 52:23_, 65:5_, 69:18_, 72:11_, 73:4_, 77:20_, 78:6_, 87:12_, 88:9_, 97:10_, 97:20_, 100:22_, 101:19_, 125:4_, 149:24_, 157:21_, 158:11_, 183:22_, 185:7_, 206:8_, 207:2_, 215:3

**pointing** [1]_ - 208:18

**poked** [1]_ - 136:2

**pole** [4]_ - 21:12_, 21:15_, 21:22_, 22:10

**Police** [3]_ - 8:13_, 16:18_, 16:21

**police** [7]_ - 8:15_, 16:18_, 188:9_, 191:21_, 191:25_, 196:20_, 225:14

**polite** [1]_ - 14:11

**porch** [1]_ - 213:20

**portable** [2]_ - 134:20_, 146:8

**portion** [14]_ - 13:16_, 150:6_, 150:9_, 155:12_, 155:13_, 155:16_, 155:22_, 156:20_, 158:6_, 158:24_, 160:2_, 161:25_, 162:2_, 176:22

**portions** [9]_ - 149:19_, 149:22_, 150:2_, 150:17_, 154:22_, 155:8_, 156:25_, 157:25_, 159:10

**position** [4]_ - 149:23_, 150:5_, 150:11_, 173:18

**possession** [3]_ - 66:23_, 113:20_, 120:24

**possible** [9]_ - 30:7_, 30:17_, 45:20_, 59:8_, 113:23_, 114:8_, 122:18_, 200:14_, 210:10

**possibly** [5]_ - 30:20_, 59:21_, 59:22_, 103:24_, 104:19

**posting** [1]_ - 231:16

**potential** [1]_ - 113:20

**practice** [1]_ - 63:15

**preference** [1]_ - 180:25

**prepaid** [11]– 36:2–, 38:5–, 38:7–, 41:22–, 43:6 –, 43:16–, 50:8–, 138:18–, 163:18–, 163:24–, 164:8

**present** [2]– 128:14–, 153:1

**presently** [1]– 72:8

**preserve** [1]– 120:7

**presidential** [1]– 113:21

**presumption** [1]– 154:24

**presumptively** [1]– 155:3

**pretrial** [1]– 149:17

**pretty** [2]– 30:2–, 203:25

**prevent** [1]– 157:16

**prevented** [2]– 157:11–, 157:17

**previewed** [1]– 232:17

**previous** [2]– 45:23–, 203:6

**previously** [27]– 10:20 –, 20:3–, 26:15–, 27:23–, 38:25–, 46:1–, 46:3–, 63:11–, 63:12–, 64:6–, 119:14–, 126:19–, 127:18 –, 130:17–, 131:13–, 132:7–, 135:20–, 140:23–, 149:17–, 150:3–, 162:14–, 175:3–, 177:14–, 190:24–, 193:24–, 196:1–, 222:6

**price** [1]– 44:5

**prices** [1]– 43:1

**principle** [1]– 152:2

**probation** [1]– 68:11

**probe** [1]– 196:23

**problem** [8]– 39:23–, 40:25–, 55:5–, 70:1–, 122:10–, 153:15–, 203:4–, 216:5

**problematic** [1]– 157:24

**problems** [2]– 191:21–, 201:10

**procedure** [1]– 180:14

**proceeding** [1]– 195:10

**proceedings** [3]– 67:15–, 154:8–, 233:3

**process** [6]– 38:7–, 41:22–, 129:25–, 130:1–, 130:3–, 172:17

**processed** [1]– 46:13

**program** [3]– 128:11–, 172:15–, 175:7

**project** [1]– 159:4

**projectile** [1]– 133:3

**projector** [2]– 138:14–, 163:15

**promise** [1]– 70:7

**promises** [3]– 69:5–, 69:12–, 70:14

**prompted** [1]– 215:20

**proof** [2]– 99:9–, 99:25

**propensity** [1]– 195:25

**proper** [2]– 149:2–, 230:12

**property** [8]– 11:11–, 26:12–, 115:23–, 116:14–, 120:8–, 120:9–, 120:25–, 121:3

**proposed** [1]– 58:25

**proprietary** [1]– 42:5

**prosecution** [2]– 198:20–, 224:1

**provide** [3]– 45:11–, 61:23–, 69:18

**provided** [7]– 47:25–, 61:21–, 63:7–, 63:8–, 63:20–, 63:22–, 63:23

**provides** [1]– 172:21

**province** [1]– 103:8

**Public** [1]– 108:15

**publish** [72]– 10:19–, 11:15–, 12:13–, 13:9–, 20:4–, 20:22–, 21:4–, 21:17–, 22:5–, 22:14–, 22:20–, 23:9–, 23:16–, 23:22–, 24:9–, 24:15–, 24:22–, 25:9–, 26:5–, 26:15–, 27:22–, 39:3–, 45:20–, 46:2–, 46:5–, 52:2 –, 60:21–, 73:17–, 73:21–, 81:18–, 88:19–, 88:23–, 91:2–, 93:24–, 94:17–, 98:2–, 112:4–, 112:9–, 113:7–, 115:17–, 118:25–, 126:20–, 127:9–, 128:4–, 130:24–, 132:14–, 133:8–, 133:16–, 137:9–, 140:14–, 141:23–, 143:23–, 161:13 –, 163:11–, 173:23–, 176:6–, 177:4–, 178:4–, 178:25–, 186:22–, 187:17 –, 188:13–, 189:8–, 190:2 –, 190:5–, 208:9–, 210:6–, 210:11–, 211:8–, 212:19–, 216:19–, 218:3

**published** [1]– 149:7

**publishing** [2]– 148:24 –, 161:21

**pull** [2]– 87:9–, 107:1

**pulled** [5]– 85:4–, 87:5–, 87:7–, 87:8–, 168:17

**pulling** [1]– 106:24

**punctuality** [1]– 6:16

**punishment** [1]– 103:7

**purchase** [8]– 38:12–, 44:2–, 44:3–, 70:5–, 77:24 –, 78:1–, 78:4–, 79:22

**purchased** [1]– 57:23

**purchases** [1]– 43:2

**purchasing** [1]– 70:5

**purely** [1]– 129:14

**purported** [1]– 195:14

**purportedly** [1]– 230:7

**purpose** [2]– 79:5–, 79:14

**purposes** [8]– 42:5–, 122:22–, 124:10–, 129:6–, 129:7–, 129:13–, 131:20–, 131:21

**pursuant** [6]– 123:5–, 160:3–, 161:12–, 161:25–, 162:5–, 198:3

**pushed** [3]– 5:5–, 203:12–, 203:13

**put** [19]– 35:20–, 47:8–, 81:8–, 120:16–, 130:11–, 130:16–, 131:24–, 134:21 –, 146:1–, 146:2–, 149:10 –, 150:10–, 155:22–, 166:7–, 199:25–, 224:3–, 225:6–, 225:13

**puts** [2]– 151:3–, 151:14

**putting** [2]– 41:20–, 130:22

### Q

**qualify** [2]– 155:15–, 156:20

**quarters** [1]– 181:23

**questioning** [4]– 65:2–, 86:16–, 196:4–, 198:5

**questions** [33]– 13:18–, 14:14–, 29:8–, 31:1–, 34:5 –, 50:22–, 51:3–, 53:9–, 56:23–, 58:17–, 62:12–, 66:16–, 93:22–, 97:8–, 102:7–, 102:10–, 122:1–,

122:8–, 159:11–, 166:10–, 168:21–, 169:15–, 180:5–, 192:14–, 195:18–, 195:24 –, 199:12–, 199:15–, 201:15–, 202:6–, 202:8–, 204:2–, 230:13

**quick** [4]– 58:7–, 194:16 –, 220:4

**quickly** [4]– 45:17–, 58:22–, 64:4–, 144:25

**quote** [4]– 36:4–, 195:2–, 195:9–, 195:10

**quote/unquote** [1]– 153:18

### R

**rail** [2]– 107:17–, 107:19

**raise** [14]– 5:20–, 6:23–, 14:25–, 31:14–, 62:25–, 65:18–, 110:17–, 124:8–, 124:14–, 125:10–, 150:16 –, 170:8–, 182:7–, 204:13

**raised** [2]– 63:2–, 205:12

**Ramiro** [6]– 207:21–, 219:18–, 219:20–, 220:18 –, 220:24–, 222:7

**ran** [1]– 201:24

**randomized** [2]– 42:10 –, 42:12

**randomly** [1]– 198:11

**Randy** [2]– 221:13–, 232:5

**range** [1]– 62:10

**rather** [1]– 65:1

**re** [1]– 230:15

**re-ask** [1]– 230:15

**reaction** [2]– 84:18–, 88:2

**read** [24]– 12:9–, 41:14–, 43:23–, 45:8–, 48:25–, 50:15–, 76:23–, 77:7–, 91:11–, 93:5–, 93:18–, 96:8–, 99:8–, 114:13–, 148:3–, 148:8–, 156:2–, 159:14–, 174:25–, 175:24 –, 190:11–, 208:22–, 208:25–, 216:24

**readable** [2]– 172:9–, 172:18

**reader** [2]– 151:10–, 157:4

**reading** [3]– 58:8–, 190:16–, 217:3

**reads** [6] - 44:15_, 46:15_, 46:23_, 49:6_, 50:10_, 74:21

**ready** [3]_ - 80:19_, 80:20_, 221:10

**real** [1]_ - 176:1

**realize** [1]_ - 103:16

**really** [8]_ - 65:5_, 68:22_, 71:4_, 77:18_, 157:15_, 219:8_, 221:4_, 223:22

**rear** [7]_ - 17:10_, 17:11_, 25:4_, 25:14_, 26:13_, 28:18_, 28:21

**reason** [4]_ - 6:1_, 9:1_, 102:21_, 135:22

**reasons** [3]_ - 158:1_, 202:7_, 222:4

**rebuttal** [1]_ - 198:21

**receipt** [23]_ - 39:12_, 39:14_, 39:17_, 39:19_, 39:21_, 40:2_, 40:4_, 40:10_, 40:12_, 40:18_, 40:24_, 41:2_, 41:19_, 42:17_, 44:11_, 45:4_, 45:12_, 58:5_, 120:9_, 120:25_, 143:22_, 144:7_, 144:14

**receive** [2]_ - 218:22_, 219:9

**received** [29] - 10:17, 19:25, 20:2_, 74:12_, 74:13_, 113:6_, 113:18_, 115:16, 118:14_, 119:24_, 128:3_, 132:13_, 137:8, 140:12, 141:20_, 145:23, 147:9_, 161:14, 163:6_, 165:17_, 167:19_, 173:22_, 177:3_, 178:24_, 185:14_, 187:16_, 189:7_, 211:5_, 219:10

**recent** [1]_ - 72:11

**recess** [9]_ - 63:4_, 124:17_, 124:19_, 154:2_, 154:12_, 154:13_, 194:20_, 194:21_, 221:21

**recharge** [2]_ - 163:17_, 163:24

**recognize** [61]_ - 10:5_, 35:5_, 39:8_, 39:13_, 44:14_, 46:9_, 52:12_, 54:19_, 71:9_, 73:24_, 80:25_, 81:4_, 81:6_, 89:4_, 89:24_, 94:6_, 112:16_, 112:18_, 117:25_, 118:2_, 118:17_, 118:19_, 126:25_, 127:3_, 127:4_, 127:15_

_, 131:7_, 131:9_, 135:6_, 135:9_, 135:10_, 135:15_, 135:17_, 136:21_, 136:23_, 139:25_, 140:3_, 141:8_, 141:10_, 145:6_, 145:8_, 146:23_, 146:25_, 159:12_, 162:20_, 162:23_, 165:7_, 165:9_, 172:1_, 172:3_, 173:8_, 176:14_, 176:16_, 178:8_, 186:8_, 188:17_, 188:19_, 210:18_, 212:22_, 218:12_, 219:6

**recognized** [1]_ - 52:25

**recollection** [2]_ - 149:15_, 149:20

**record** [27]_ - 4:6_, 7:5_, 15:8_, 31:21_, 35:10_, 65:25_, 71:18_, 71:19_, 71:21_, 99:10_, 103:9_, 110:24_, 116:9_, 125:17_, 137:19_, 138:14_, 139:18_, 143:12_, 159:8_, 161:18_, 170:15_, 174:25_, 175:24_, 182:14_, 204:20_, 220:23_, 227:19

**recorded** [1]_ - 210:22

**records** [3]_ - 38:17_, 38:21_, 217:24

**recover** [3]_ - 111:21_, 111:24_, 112:2

**recovered** [4]_ - 118:4_, 118:20_, 131:17_, 147:1

**recross** [1]_ - 204:4

**recross-examination** [1]_ - 204:4

**recurring** [2]_ - 64:25_, 227:14

**redacted** [5]_ - 63:7_, 63:11_, 63:12_, 158:6_, 158:22

**redaction** [1]_ - 159:9

**redirect** [7]_ - 14:15_, 31:2_, 60:17_, 110:8_, 168:22_, 202:15_, 229:8

**REDIRECT** [4]_ - 60:24_, 169:1_, 202:17_, 229:10

**reducer** [2]_ - 132:23_, 143:9

**reducers** [2]_ - 132:25_, 165:22

**reference** [8]_ - 61:3_, 130:12_, 150:8_, 151:9_, 152:7_, 153:10_, 157:2_, 198:2

**referenced** [2]_ - 189:20_

_, 197:14

**references** [2]_ - 152:8_, 158:13

**referencing** [1]_ - 197:19

**referred** [1]_ - 172:22

**referring** [5]_ - 61:24_, 94:12_, 94:14_, 94:24_, 189:14

**refers** [1]_ - 40:4

**reflect** [8]_ - 35:10_, 42:21_, 47:24_, 48:6_, 48:16_, 48:18_, 197:23

**reflected** [7]_ - 41:9_, 45:3_, 46:21_, 47:1_, 175:12_, 177:21_, 201:16

**reflects** [3]_ - 42:9_, 42:12_, 71:21

**refrain** [1]_ - 103:12

**refresh** [1]_ - 198:14

**regard** [10]_ - 50:9_, 68:15_, 69:5_, 70:8_, 70:15_, 90:6_, 90:23_, 100:17_, 100:18_, 109:5

**regarding** [7]_ - 5:23_, 62:21_, 64:19_, 121:15_, 122:8_, 150:16_, 231:14

**registered** [1]_ - 138:5

**registration** [6]_ - 137:23_, 137:25_, 138:2_, 138:6_, 139:4_, 139:6

**regular** [1]_ - 107:22

**related** [4]_ - 9:3_, 109:5_, 154:17_, 231:17

**relation** [3]_ - 18:10_, 68:4_, 69:25

**relationship** [6]_ - 72:7_, 72:10_, 72:14_, 155:21_, 206:18_, 208:5

**relatively** [1]_ - 34:25

**release** [3]_ - 68:7_, 68:9_, 68:10

**released** [1]_ - 68:10

**releasing** [1]_ - 232:19

**Relevance** [1]_ - 193:17

**relevance** [3]_ - 226:1_, 226:10_, 226:16

**relevant** [5]_ - 155:15_, 157:18_, 198:6_, 198:7_, 227:22

**relinquished** [1]_ - 103:13

**remain** [3]_ - 160:14_,

199:20_, 222:1

**remainder** [2]_ - 150:12_, 160:5

**remaining** [1]_ - 231:10

**remarks** [1]_ - 232:21

**remember** [21]_ - 33:22_, 34:11_, 34:21_, 35:23_, 36:2_, 51:5_, 51:6_, 51:9_, 73:13_, 77:18_, 104:4_, 104:5_, 148:7_, 190:16_, 196:8_, 196:9_, 202:20_, 209:17_, 217:3_, 217:5_, 229:15

**remembered** [1]_ - 161:2

**remind** [4]_ - 161:5_, 171:11_, 172:6_, 177:9

**remote** [3]_ - 18:17_, 18:18_, 153:6

**remove** [14]_ - 87:23_, 122:20_, 124:10_, 134:21_, 136:5_, 136:10_, 136:15_, 139:21_, 140:17_, 141:3_, 142:5_, 143:6_, 144:25_, 188:24

**removed** [19]_ - 79:20_, 81:9_, 131:18_, 131:20_, 131:21_, 131:23_, 132:19_, 133:23_, 135:18_, 135:22_, 135:24_, 136:1_, 136:24_, 140:4_, 141:11_, 145:9_, 162:24_, 165:10_, 187:8

**removing** [1]_ - 165:4

**Renee** [1]_ - 4:18

**rentals** [1]_ - 179:20

**rephrase** [3]_ - 53:7_, 224:15_, 225:3

**rephrased** [1]_ - 224:14

**replace** [1]_ - 139:15

**replied** [1]_ - 91:16

**reply** [1]_ - 91:17

**report** [5]_ - 63:22_, 172:18_, 174:4_, 176:17_, 178:11

**reporter** [1]_ - 6:2

**reports** [1]_ - 173:11

**represent** [3]_ - 115:5_, 115:8_, 177:23

**represented** [1]_ - 67:14

**reputation** [2]_ - 197:7_, 197:20

**reputations** [1]_ - 198:6

**request** [2]_ - 6:2_, 100:3

**requested** [1]_ - 149:19
**require** [3]_ - 160:16_, 180:8_, 180:10
**required** [1]_ - 67:23
**requirement** [1]_ - 47:7
**requirements** [1]_ - 202:5
**reread** [1]_ - 5:5
**research** [1]_ - 231:16
**reset** [1]_ - 114:7
**residence** [8]_ - 100:7_, 101:7_, 113:15_, 113:17_, 115:6_, 115:9_, 116:21_, 117:1
**residual** [1]_ - 30:8
**resolve** [3]_ - 194:9_, 194:17_, 199:11
**respect** [3]_ - 118:16_, 122:15_, 128:17
**respectful** [1]_ - 117:5
**respectfully** [1]_ - 220:21
**respond** [7]_ - 8:20_, 9:14_, 16:25_, 96:15_, 101:11
**responded** [10]_ - 9:16_, 10:8_, 11:9_, 11:11_, 11:21_, 17:14_, 22:2_, 96:12_, 96:17_, 196:21
**responding** [2]_ - 9:2_, 91:17
**Response** [2]_ - 171:12_, 171:13
**response** [7]_ - 9:17_, 93:12_, 96:24_, 98:20_, 98:22_, 101:6_, 230:12
**responsibilities** [4]_ - 7:22_, 15:22_, 16:20_, 111:15
**responsible** [2]_ - 128:22_, 194:2
**rest** [2]_ - 176:2_, 212:7
**restate** [1]_ - 194:6
**restaurant** [3]_ - 9:8_, 11:6_, 17:7
**restroom** [2]_ - 194:16
**result** [1]_ - 38:16
**resume** [5]_ - 6:17_, 62:17_, 86:15_, 121:13_, 125:4
**retrieve** [8]_ - 120:16_, 147:18_, 161:15_, 163:8_, 169:23_, 170:3_, 180:20_,

192:3
**retrieving** [1]_ - 139:18
**return** [9]_ - 38:8_, 139:14_, 141:1_, 144:21_, 146:8_, 160:9_, 164:17_, 164:18_, 166:5
**returned** [1]_ - 130:15
**returning** [1]_ - 139:2
**reverse** [1]_ - 203:11
**review** [11]_ - 51:15_, 51:19_, 62:2_, 136:18_, 146:18_, 154:16_, 162:17_, 165:3_, 172:10_, 172:21_, 198:18
**reviewing** [3]_ - 129:12_, 146:21_, 165:5
**revisit** [1]_ - 158:17
**revisited** [1]_ - 149:18
**riding** [1]_ - 84:8
**rifle** [51]_ - 77:24_, 77:25_, 78:1_, 78:4_, 78:17_, 81:3_, 81:5_, 81:6_, 81:7_, 81:8_, 82:8_, 82:16_, 83:4_, 83:15_, 84:24_, 84:25_, 85:2_, 85:5_, 85:7_, 85:16_, 86:23_, 87:6_, 87:13_, 87:25_, 88:3_, 89:5_, 90:4_, 90:25_, 91:19_, 93:22_, 94:13_, 94:14_, 94:23_, 94:24_, 95:3_, 95:7_, 95:9_, 96:23_, 97:4_, 97:6_, 100:15_, 100:17_, 100:18_, 106:21_, 107:6_, 107:7_, 107:9_, 107:15
**rifles** [2]_ - 101:5_, 101:8
**right-hand** [1]_ - 92:2
**righty** [1]_ - 108:3
**rise** [6]_ - 62:18_, 121:18_, 148:16_, 194:10_, 220:5_, 231:23
**road** [5]_ - 7:24_, 8:15_, 16:11_, 17:22_, 18:12
**Road** [2]_ - 17:24_, 18:14
**rod** [3]_ - 142:11_, 142:15_, 142:21
**role** [1]_ - 128:17
**Ronnie** [3]_ - 64:5_, 65:14_, 66:1
**RONNIE** [2]_ - 66:1, 66:5
**roof** [2]_ - 72:15_, 192:23
**roofing** [12]_ - 70:22_, 71:7_, 104:24_, 104:25_, 105:5_, 105:6_, 106:11_, 184:13_, 205:15_, 205:18

_, 207:16_, 207:25
**Roofing** [1]_ - 184:23
**roofs** [2]_ - 11:4_, 228:21
**room** [3]_ - 64:20_, 128:10_, 201:4
**roommates** [1]_ - 87:20
**rope** [1]_ - 186:20
**rotate** [1]_ - 114:8
**roughly** [1]_ - 171:19
**round** [3]_ - 87:10_, 107:3_, 132:25
**rounds** [5]_ - 86:4_, 133:1_, 133:2_, 165:21
**Routh** [85]_ - 4:5_, 4:13_, 4:16_, 4:19_, 5:17_, 10:13_, 12:18_, 13:21_, 19:20_, 29:10_, 35:11_, 60:12_, 63:24_, 70:18_, 70:21_, 71:11_, 72:5_, 72:8_, 72:20_, 72:24_, 73:5_, 84:13_, 84:14_, 84:21_, 85:3_, 87:3_, 87:14_, 88:6_, 95:21_, 100:20_, 103:10_, 106:18_, 112:25_, 115:13_, 116:13_, 118:10_, 119:20_, 122:8_, 124:15_, 127:25_, 132:8_, 134:16_, 137:3_, 138:1_, 140:9_, 141:15_, 145:17_, 147:6_, 150:15_, 152:10_, 153:8_, 154:21_, 155:3_, 157:9_, 161:9_, 163:2_, 165:14_, 167:7_, 167:13_, 173:18_, 176:25_, 180:4_, 184:4_, 184:21_, 185:8_, 187:13_, 189:4_, 192:5_, 196:19_, 196:21_, 196:23_, 197:22_, 199:21_, 201:8_, 201:21_, 202:7_, 204:3_, 206:9_, 211:2_, 225:22_, 226:5_, 226:9_, 227:14_, 228:6_, 230:24
**ROUTH** [131]_ - 4:14_, 4:16_, 5:19_, 5:21_, 10:14_, 13:22_, 13:24_, 19:21_, 29:11_, 29:13_, 30:13_, 30:25_, 56:25_, 57:2_, 58:14_, 58:18, 58:19, 58:24_, 59:15_, 60:6_, 60:13_, 64:1_, 102:14_, 102:16, 103:2_, 103:16_, 103:20, 103:21_, 105:19_, 106:4_, 106:19, 106:20_, 108:14_, 108:19_, 108:24_, 109:13_, 110:3_, 110:5_, 113:1_, 115:14_, 118:11_, 119:22_, 121:8_, 122:10_, 124:16_, 124:24

_, 128:1_, 132:9_, 134:17_, 137:4_, 140:10_, 141:17_, 145:19_, 147:7_, 150:18_, 150:25_, 151:12_, 152:11_, 161:10_, 163:3_, 165:15_, 166:13_, 166:15_, 167:5_, 167:8_, 167:14_, 167:16, 167:20, 168:2_, 168:20_, 173:19_, 177:1_, 178:22_, 180:5_, 187:14_, 189:5_, 192:6_, 192:10_, 192:22_, 193:21_, 194:6_, 196:25_, 197:5_, 197:9_, 197:11_, 197:16_, 198:1_, 198:10_, 198:19_, 198:23_, 199:3_, 199:14_, 199:22_, 200:4_, 200:10_, 200:17_, 200:23, 200:24, 201:9_, 201:13_, 201:18_, 201:24_, 202:2_, 202:11_, 204:5_, 211:3_, 219:25_, 222:24_, 223:2_, 223:25_, 224:16_, 225:4_, 225:23, 225:24_, 226:2_, 226:6_, 226:12_, 226:18_, 226:19, 227:8_, 227:11, 227:15_, 227:18_, 227:25_, 228:9_, 228:16_, 228:25_, 229:2_, 230:4_, 231:1_, 232:16
**row** [3]_ - 208:18_, 208:23_, 209:10
**Royal** [2]_ - 18:10_, 18:13
**rubber** [1]_ - 143:11
**rude** [3]_ - 104:16_, 109:11_, 109:12
**Rule** [9]_ - 150:4_, 155:8_, 155:11_, 198:4_, 198:14_, 198:17_, 201:16_, 227:21
**rule** [6]_ - 150:7_, 152:22_, 155:2_, 156:22_, 198:15_, 226:4
**ruled** [1]_ - 202:4
**rulers** [1]_ - 130:11
**Rules** [4]_ - 195:21_, 198:5_, 199:7_, 202:9
**rules** [5]_ - 152:1_, 157:15_, 199:9_, 202:3_, 227:24
**ruling** [7]_ - 109:3_, 149:2_, 150:10_, 154:21_, 158:15_, 198:15_, 201:12
**rulings** [6]_ - 160:3_, 161:12_, 162:1_, 162:5_, 229:4_, 229:6
**run** [2]_ - 70:25_, 150:9
**running** [4]_ - 168:3_, 168:4_, 196:14_, 197:15

**runs** [2] - 157:24, 158:15

**rusting** [1] - 79:6

**Ryan** [38] - 4:5, 4:16, 4:19, 12:18, 70:18, 70:21, 71:11, 72:4, 72:6, 72:7, 72:20, 72:24, 73:5, 73:8, 84:13, 84:14, 84:21, 85:3, 85:16, 87:3, 87:14, 88:5, 88:7, 88:13, 90:24, 95:21, 96:9, 97:15, 100:15, 100:20, 116:13, 184:4, 184:21, 185:8, 203:15, 206:9, 211:17, 219:14

**Ryan's** [4] - 75:14, 212:14, 213:1

## S

**safe** [2] - 128:10, 128:11

**safety** [4] - 129:6, 129:7, 131:20, 131:21

**sale** [10] - 38:2, 41:18, 45:10, 45:12, 47:25, 61:3, 96:9, 97:7, 100:17, 100:18

**sales** [2] - 32:15, 56:7

**salesman** [1] - 37:13

**Sammy** [1] - 199:24

**SAMUEL** [1] - 182:18

**Samuel** [4] - 5:10, 182:3, 182:15, 207:21

**San** [1] - 183:12

**Sara** [1] - 138:1

**sat** [2] - 62:1, 225:5

**satellite** [1] - 10:25

**satisfy** [1] - 155:24

**sausage** [2] - 22:10, 24:13

**Sausage** [1] - 24:3

**saw** [15] - 19:12, 19:14, 82:23, 84:18, 86:22, 87:11, 104:9, 119:14, 148:11, 161:6, 185:5, 186:14, 186:17, 186:20, 190:25

**sawed** [4] - 101:14, 101:16, 101:20, 101:23

**sawed-off** [4] - 101:14, 101:16, 101:20, 101:23

**scanning** [1] - 157:21

**scared** [2] - 189:24, 191:2

**scene** [2] - 19:12, 19:13

**Schnelle** [1] - 232:6

**scope** [10] - 82:7, 82:8, 85:25, 86:2, 105:24, 107:17, 107:20, 107:21, 200:6, 227:23

**screen** [33] - 11:2, 13:3, 39:8, 49:24, 55:7, 55:15, 55:19, 77:3, 81:21, 89:2, 89:25, 90:8, 92:12, 94:4, 96:3, 98:7, 112:14, 113:3, 116:1, 127:13, 132:21, 159:6, 162:4, 162:8, 174:23, 175:17, 176:12, 178:14, 187:2, 189:25, 211:9, 212:23, 216:23

**screens** [1] - 167:23

**seal** [1] - 153:20

**search** [7] - 120:2, 120:21, 129:8, 129:11, 129:20, 129:21, 129:23

**seat** [13] - 6:13, 62:20, 119:7, 124:21, 154:14, 160:13, 185:25, 186:5, 194:12, 194:22, 199:19, 220:7, 222:1

**seated** [17] - 4:11, 7:3, 15:5, 31:19, 63:5, 65:11, 65:23, 71:14, 110:22, 121:20, 125:2, 125:15, 148:23, 170:13, 182:12, 204:18, 231:25

**second** [10] - 43:12, 46:23, 54:24, 103:11, 150:10, 153:5, 174:14, 174:17, 177:7, 218:5

**secondary** [2] - 61:9, 61:19

**secondly** [1] - 153:8

**seconds** [7] - 26:19, 28:1, 28:24, 58:9, 59:21, 209:20

**Secret** [1] - 191:7

**Section** [1] - 15:23

**section** [16] - 41:5, 43:1, 43:5, 44:15, 46:15, 48:2, 48:14, 48:23, 48:25, 49:4, 50:10, 53:3, 54:6, 56:3, 56:15, 61:2

**sections** [1] - 47:16

**secure** [2] - 120:8, 130:4

**secured** [2] - 120:11, 121:1

**securely** [1] - 168:5

**securities** [1] - 126:10

**SECURITY** [1] - 6:11

**security** [3] - 28:20, 42:5, 48:11

**see** [160] - 10:3, 10:24, 11:19, 12:17, 13:15, 20:7, 21:2, 21:8, 21:11, 21:21, 22:9, 22:18, 24:12, 25:2, 25:13, 25:18, 25:23, 26:9, 27:4, 28:4, 29:3, 35:5, 39:18, 39:25, 40:4, 40:12, 41:5, 41:7, 41:11, 42:13, 43:4, 43:12, 43:13, 43:21, 46:15, 48:14, 48:23, 49:6, 49:10, 49:16, 49:25, 50:1, 50:5, 50:9, 51:16, 52:22, 52:25, 53:2, 53:19, 54:5, 54:9, 55:2, 55:15, 61:3, 64:10, 71:6, 71:11, 74:5, 74:8, 74:11, 74:14, 74:19, 75:2, 75:6, 75:21, 77:3, 81:22, 82:5, 82:11, 84:14, 84:16, 85:20, 85:22, 87:3, 88:5, 89:2, 90:8, 90:11, 91:4, 92:1, 92:8, 93:1, 93:12, 94:6, 94:9, 94:21, 95:2, 95:9, 95:14, 95:15, 96:3, 96:15, 96:18, 97:18, 98:9, 98:20, 98:23, 99:2, 101:2, 101:4, 102:19, 108:20, 112:13, 113:9, 114:2, 115:25, 117:22, 120:14, 120:20, 123:14, 126:22, 127:12, 130:19, 134:2, 134:16, 134:19, 142:4, 144:6, 144:13, 148:10, 152:8, 152:11, 161:5, 162:7, 162:19, 163:25, 167:24, 174:9, 174:17, 174:20, 175:19, 176:11, 177:10, 179:20, 179:21, 187:2, 187:19, 188:3, 197:21, 208:16, 208:19, 209:8, 209:11, 209:15, 211:9, 212:12, 215:20, 216:2, 217:9, 218:9, 218:17, 219:21, 220:19, 221:19, 224:6, 224:19, 231:21, 233:2

**seeing** [12] - 62:25, 63:2, 133:21, 133:22, 148:7, 158:5, 159:24, 160:2, 160:4, 161:2, 161:24, 162:3

**seek** [2] - 19:17, 155:4

**seeking** [4] - 63:16, 145:14, 155:7, 157:20

**seeks** [1] - 153:4

**seem** [2] - 104:16, 224:4

**segment** [1] - 152:7

**segments** [1] - 155:21

**segues** [1] - 198:17

**selective** [1] - 157:12

**selectively** [2] - 153:17, 157:25

**self** [4] - 150:2, 154:25, 155:8, 156:22

**self-serving** [4] - 150:2, 154:25, 155:8, 156:22

**sell** [18] - 32:15, 36:5, 36:8, 36:11, 37:3, 37:24, 38:4, 78:8, 78:14, 78:16, 78:17, 80:2, 84:25, 85:7, 85:11, 86:2, 86:4, 86:6

**selling** [1] - 41:22

**semiautomatic** [2] - 106:21, 107:12

**send** [5] - 188:5, 188:7, 200:18, 218:20, 225:18

**sending** [1] - 76:13

**senior** [1] - 104:2

**sense** [1] - 224:6

**sensitive** [1] - 42:6

**sent** [12] - 76:5, 76:6, 89:10, 91:10, 92:19, 98:13, 99:19, 175:17, 175:21, 184:22, 219:11

**sentence** [7] - 68:2, 68:4, 69:10, 69:14, 103:3, 156:12, 156:14

**sentences** [9] - 149:9, 151:11, 151:12, 152:18, 156:2, 156:4, 156:21, 157:1, 157:8

**separate** [2] - 123:4, 123:18

**September** [38] - 8:17, 9:1, 10:8, 11:10, 11:22, 12:11, 12:23, 16:24,

19:14_, 22:1_, 23:6_, 25:16_, 26:22_, 27:21_, 29:6_, 33:8_, 33:9_, 50:25_, 62:1_, 97:9_, 97:14_, 112:1_, 113:17_, 115:9_, 117:1_, 126:17_, 129:14_, 184:22_, 190:16_, 217:13_, 217:14_, 219:21_, 220:19_, 223:13_, 223:17_, 223:24_, 225:6_, 225:14

**sequence** [1]_ - 192:20

**sergeant** [1]_ - 113:19

**serial** [13]_ - 43:10_, 43:21_, 43:24_, 79:12_, 79:14_, 79:17_, 79:20_, 79:22_, 80:1_, 87:22_, 87:23_, 93:6_, 108:4

**series** [8]_ - 11:24_, 23:3_, 25:17_, 43:12_, 50:22_, 97:8_, 132:8_, 139:6

**served** [1]_ - 33:13

**Service** [1]_ - 191:7

**service** [10]_ - 36:3_, 38:5_, 38:10_, 43:7_, 43:16_, 57:25_, 58:1_, 58:2_, 61:8

**services** [8]_ - 6:5_, 36:10_, 37:4_, 37:5_, 37:25_, 180:9_, 180:11_, 204:10

**serving** [4]_ - 150:2_, 154:25_, 155:8_, 156:22

**set** [6]_ - 30:7_, 30:15_, 63:8_, 93:6_, 130:5_, 193:2

**setting** [1]_ - 83:25

**settle** [1]_ - 183:25

**seven** [1]_ - 228:17

**several** [3]_ - 48:3_, 79:7_, 211:21

**Shakes** [1]_ - 120:15

**shall** [1]_ - 103:7

**sharp** [2]_ - 131:20_, 136:1

**shed** [5]_ - 101:14_, 101:15_, 101:17_, 113:14_, 201:3

**sheriff** [7]_ - 7:21_, 7:23_, 8:2_, 8:8_, 188:8_, 188:10_, 191:5

**Sheriff's** [5]_ - 7:17_, 8:2_, 8:11_, 15:19_, 15:24

**sheriff's** [5]_ - 5:2_, 5:8_, 5:15_, 8:7_, 8:12

**shift** [1]_ - 184:3

**SHIPLEY** [2]_ - 4:8_, 224:18

**Shipley** [2]_ - 4:8_, 232:1

**shirt** [4]_ - 53:4_, 53:15_, 53:17_, 53:18

**shit** [1]_ - 99:11

**shoe** [1]_ - 212:5

**shook** [1]_ - 90:25

**shoot** [3]_ - 78:17_, 196:20_, 196:21

**shop** [1]_ - 98:15

**short** [7]_ - 7:18_, 16:2_, 56:3_, 58:12_, 62:4_, 231:9

**shotgun** [4]_ - 101:14_, 101:16_, 101:20_, 101:23

**show** [48]_ - 9:20_, 12:12_, 38:25_, 45:17_, 51:22_, 64:8_, 74:14_, 80:16_, 80:17_, 84:9_, 86:14_, 101:9_, 108:15_, 108:16_, 112:7_, 114:21_, 117:7_, 126:18_, 127:5_, 134:5_, 134:7_, 140:18_, 143:4_, 143:15_, 143:19_, 146:11_, 147:22_, 155:14_, 162:13_, 163:14_, 164:21_, 165:24_, 167:5_, 171:20_, 173:3_, 179:5_, 185:17_, 188:11_, 198:9_, 208:7_, 210:4_, 212:17_, 214:6_, 216:17_, 217:17_, 217:19_, 217:25

**showed** [7]_ - 80:24_, 81:25_, 82:3_, 82:6_, 82:23_, 84:12_, 101:7

**Showing** [1]_ - 214:9

**showing** [6]_ - 9:25_, 73:24_, 142:9_, 163:22_, 164:5_, 216:23

**shown** [2]_ - 64:10_, 159:21

**shows** [1]_ - 179:17

**shred** [12]_ - 150:19_, 150:20_, 151:8_, 151:9_, 151:14_, 152:6_, 152:14_, 156:13_, 156:16_, 156:18_, 157:6

**shredding** [2]_ - 151:2_, 157:3

**shut** [1]_ - 105:2

**side** [9]_ - 11:25_, 13:2_, 42:19_, 82:17_, 89:25_, 107:17_, 107:19_, 188:15_, 212:22

**sights** [1]_ - 94:13

**SIHVOLA** [2]_ - 4:18_, 232:25

**Sihvola** [3]_ - 4:18_, 4:23_, 232:24

**silver** [3]_ - 94:11_, 147:16_, 147:17

**SIM** [12]_ - 38:9_, 43:10_, 43:11_, 61:3_, 61:6_, 61:7_, 61:17_, 61:19_, 61:20_, 61:22_, 61:23

**similar** [2]_ - 26:1_, 86:24

**simply** [3]_ - 159:9_, 195:8_, 220:25

**single** [1]_ - 177:23

**sister** [1]_ - 97:15

**sit** [2]_ - 83:13_, 121:23

**site** [1]_ - 179:21

**sits** [1]_ - 123:23

**sitting** [1]_ - 71:16

**situate** [1]_ - 181:6

**situated** [1]_ - 180:16

**situation** [4]_ - 37:14_, 64:16_, 151:15_, 191:23

**situations** [1]_ - 199:4

**six** [1]_ - 165:20

**size** [2]_ - 130:12_, 185:22

**skip** [1]_ - 197:5

**SKS** [11]_ - 78:17_, 81:3_, 86:23_, 94:15_, 95:1_, 101:5_, 101:8_, 106:21_, 107:18_, 107:20_, 107:21

**SKSs** [3]_ - 79:7_, 92:20_, 107:12

**Sloan** [1]_ - 103:22

**slowly** [1]_ - 192:20

**small** [1]_ - 106:3

**Smith** [1]_ - 232:7

**smoke** [1]_ - 200:25

**so-called** [1]_ - 149:5

**so..** [7]_ - 102:19_, 104:5_, 104:7_, 104:23_, 106:9_, 106:13_, 199:5

**social** [2]_ - 48:11_, 97:18

**sold** [6]_ - 83:14_, 86:24_, 88:5_, 95:8_, 100:20_, 199:25

**solely** [1]_ - 103:8

**solemnly** [9]_ - 6:24_, 15:1_, 31:15_, 65:19_, 110:18_, 125:11_, 170:9_, 182:8_, 204:14

**solicit** [1]_ - 230:12

**someone** [8]_ - 30:7_, 30:14_, 59:8_, 59:10_, 59:16_, 152:13_, 166:19_, 197:15

**sometimes** [3]_ - 104:21_, 158:22_, 172:22

**son** [5]_ - 87:19_, 87:20_, 106:6_, 116:18_, 116:23

**sorry** [24]_ - 13:25_, 18:4_, 24:6_, 39:23_, 49:14_, 53:8_, 64:4_, 91:23_, 91:24_, 102:21_, 103:16_, 110:2_, 116:10_, 122:14_, 122:15_, 156:6_, 179:3_, 199:23_, 202:12_, 202:24_, 224:18_, 224:21_, 224:23_, 224:25

**sort** [1]_ - 36:4

**sorts** [1]_ - 202:5

**sounds** [1]_ - 198:23

**South** [12]_ - 8:21_, 8:24_, 16:16_, 16:25_, 17:14_, 17:21_, 17:24_, 18:7_, 18:10_, 18:11_, 18:12_, 18:15

**Southern** [3]_ - 17:25_, 18:1_, 18:14

**space** [1]_ - 130:4

**span** [1]_ - 184:17

**Spanish** [5]_ - 116:15_, 180:13_, 180:16_, 182:25_, 204:10

**Spanish-speaking** [1]_ - 180:13

**Spanish-to-English** [1]_ - 182:25

**speaking** [5]_ - 9:5_, 16:14_, 40:3_, 142:18_, 180:13

**speaks** [1]_ - 116:18

**special** [2]_ - 126:2_, 171:5

**Special** [90]_ - 5:9_, 5:10_, 111:7_, 112:7_, 112:13_, 113:12_, 114:2_, 114:13_, 114:21_, 115:2_, 115:20_, 116:12_, 117:13_, 117:21_, 118:16_, 119:7_, 120:2_, 120:20_, 125:7_, 126:12_, 126:18_, 126:25_, 127:12_, 128:7_, 130:18_, 130:23_, 131:4_,

132:18_, 133:11_, 135:4_, 135:15_, 136:3_, 136:5_, 136:9_, 136:12_, 136:18_, 137:16_, 137:22_, 138:11_, 138:17_, 139:2_, 139:14_, 139:21_, 139:25_, 140:13_, 140:17_, 140:23_, 141:3_, 141:22_, 142:2_, 142:8_, 143:4_, 144:6_, 144:21_, 144:24_, 145:25_, 146:5_, 146:11_, 147:22_, 148:5_, 148:18_, 160:24_, 161:1_, 162:13_, 162:17_, 162:19_, 162:20_, 163:14_, 163:16_, 163:23_, 164:7_, 164:21_, 165:3_, 165:19_, 165:23_, 169:3_, 171:4_, 172:1_, 173:8_, 174:3_, 176:4_, 176:11_, 177:7_, 178:8_, 232:6_, 232:7_, 232:8_, 232:9

**SPECIAL** [3] - 111:3, 125:22, 170:20

**specialized** [1] - 126:6

**specific** [13] - 32:19_, 39:13_, 81:12_, 195:14_, 196:10_, 197:22_, 198:9_, 198:20_, 199:3_, 200:7_, 201:6_, 201:12_, 227:9

**specifically** [10] - 36:3_, 127:3_, 128:10_, 135:24_, 148:7_, 161:2_, 190:16_, 198:16_, 202:5_, 215:17

**specificity** [1] - 155:17

**specified** [1] - 150:17

**speculate** [1] - 160:5

**speculation** [4] - 30:10_, 59:13_, 105:17_, 223:18

**spell** [10] - 7:4_, 15:8_, 31:20_, 65:24_, 110:23_, 125:16_, 170:14_, 182:13_, 204:19_, 204:22

**spelled** [1] - 125:18

**spend** [1] - 29:25

**split** [1] - 172:18

**spotlight** [1] - 108:15

**spray** [2] - 79:3_, 143:3

**spray-painted** [1] - 143:3

**spring** [1] - 142:20

**squad** [1] - 126:6

**stabbed** [1] - 136:2

**staff** [4] - 6:5_, 146:9_, 167:1_, 168:16

**stamp** [2] - 26:21_, 26:22

**stamps** [2] - 70:6_, 70:8

**stand** [24] - 6:21_, 65:16_, 117:13_, 117:15_, 122:16_, 122:19_, 124:11_, 130:20_, 134:20_, 134:24_, 137:11_, 139:19_, 146:3_, 160:9_, 161:15_, 163:9_, 165:24_, 166:5_, 169:24_, 170:4_, 180:21_, 185:21_, 190:20_, 214:6

**standard** [1] - 6:2

**standby** [1] - 4:19

**standing** [8] - 25:6_, 31:12_, 88:8_, 110:15_, 136:6_, 182:6_, 203:11_, 204:12

**stands** [2] - 49:8_, 49:9

**start** [8] - 5:3_, 23:8_, 33:8_, 136:9_, 154:24_, 174:10_, 211:6_, 232:5

**started** [7] - 6:9_, 42:20_, 46:14_, 105:5_, 105:23_, 106:2_, 192:8

**starting** [1] - 4:7

**State** [3] - 17:24_, 18:14_, 137:23

**state** [17] - 4:6_, 4:15_, 5:4_, 7:4_, 15:7_, 31:20_, 48:11_, 65:24_, 67:10_, 105:2_, 110:23_, 125:16_, 126:11_, 152:15_, 170:14_, 182:13_, 204:19

**statement** [7] - 152:2_, 153:4_, 153:7_, 155:4_, 155:8_, 155:10_, 155:14

**statements** [4] - 153:7_, 153:14_, 154:25_, 158:23

**States** [18] - 4:4_, 4:7_, 4:10_, 6:21_, 14:21_, 110:13_, 124:23_, 125:6_, 160:7_, 169:19_, 182:2_, 183:14_, 183:18_, 183:23_, 204:9_, 205:25_, 206:2_, 222:20

**station** [15] - 9:9_, 9:12_, 10:8_, 11:2_, 11:7_, 11:9_, 17:4_, 17:9_, 17:15_, 18:16_, 19:14_, 20:8_, 21:3_, 22:2_, 24:21

**stay** [5] - 29:17_, 31:12_, 110:15_, 182:6_, 204:12

**stayed** [1] - 168:7

**steel** [1] - 94:13

**step** [2] - 41:4_, 134:24

**Sterilite** [7] - 112:21_, 114:15_, 114:16_, 114:17_, 118:3_, 120:2

**stick** [1] - 182:25

**sticker** [3] - 117:22_, 164:12_, 164:14

**sticking** [2] - 114:2_, 118:21

**still** [6] - 12:10_, 12:19_, 134:16_, 191:23_, 196:23_, 222:14

**stock** [2] - 83:7_, 83:8

**stolen** [1] - 79:24

**stood** [1] - 203:11

**stop** [31] - 9:7_, 10:9_, 10:25_, 11:9_, 11:20_, 13:16_, 17:10_, 17:15_, 18:16_, 19:14_, 20:9_, 20:11_, 20:12_, 21:10_, 22:2_, 22:19_, 25:3_, 25:14_, 26:13_, 29:17_, 29:19_, 29:21_, 37:24_, 52:8_, 53:25_, 54:3_, 54:24_, 55:13_, 56:12_, 203:20_, 213:16

**stops** [1] - 29:23

**storage** [10] - 118:23_, 119:3_, 122:23_, 123:2_, 123:5_, 123:15_, 166:17_, 166:22_, 166:23_, 213:8

**store** [44] - 11:7_, 23:1_, 25:4_, 25:6_, 28:5_, 28:10_, 28:18_, 28:20_, 32:17_, 32:19_, 32:25_, 33:2_, 33:10_, 34:8_, 34:17_, 34:19_, 36:1_, 37:16_, 38:17_, 39:12_, 39:18_, 39:25_, 45:10_, 47:5_, 47:8_, 50:17_, 50:25_, 51:19_, 52:16_, 52:20_, 53:4_, 56:17_, 57:14_, 57:19_, 59:5_, 59:8_, 59:16_, 59:19_, 88:4_, 144:7_, 144:10_, 144:11

**stored** [2] - 223:9_, 223:13

**stories** [1] - 109:21

**story** [2] - 65:1_, 65:3

**strange** [1] - 188:3

**Strategic** [1] - 15:23

**Street** [1] - 138:3

**street** [3] - 33:2_, 33:3_, 103:22

**streets** [2] - 128:10_, 128:11

**stricken** [1] - 103:9

**strictly** [1] - 65:4

**strike** [3] - 60:3_, 79:11_, 102:25

**strings** [1] - 36:4

**striped** [1] - 71:17

**strong** [1] - 159:19

**stuff** [2] - 108:12_, 196:3

**subject** [4] - 129:3_, 197:14_, 204:4_, 227:17

**subpoena** [1] - 5:4

**subsequently** [2] - 135:22_, 149:18

**substance** [1] - 66:15

**substantiate** [1] - 198:11

**substantive** [3] - 63:14_, 63:15_, 63:17

**successful** [1] - 36:11

**sufficient** [1] - 199:11

**sufficiently** [1] - 198:7

**suggesting** [4] - 57:22_, 58:25_, 153:8_, 168:7

**suggests** [3] - 153:6_, 159:20_, 224:1

**suit** [2] - 35:9_, 71:16

**suite** [1] - 33:4

**summary** [3] - 173:5_, 174:1_, 174:6

**Summit** [1] - 144:11

**Sunday** [3] - 103:22_, 104:1_, 215:11

**supervised** [3] - 68:7_, 68:9_, 68:10

**supplement** [3] - 150:1_, 153:23_, 154:4

**supply** [3] - 70:25_, 71:7_, 104:9

**support** [1] - 200:18

**supposed** [1] - 152:21

**supposedly** [1] - 229:22

**surprised** [1] - 84:16

**surrounding** [3] - 57:19_, 142:20_, 142:21

**surrounds** [2] - 95:3_, 95:9

**surveillance** [1] - 27:3
**suspended** [1] - 196:18
**sustain** [2] - 106:17, 226:15
**sustained** [9] - 59:14, 60:10, 102:24, 103:5, 108:18, 108:21, 201:7, 201:14, 227:10
**SUV** [2] - 12:18, 27:5
**swallow** [1] - 201:10
**swapped** [1] - 63:9
**swear** [9] - 6:24, 15:1, 31:15, 65:19, 110:18, 125:11, 170:9, 182:8, 204:14
**switch** [1] - 137:13
**sworn** [16] - 7:11, 14:24, 15:13, 31:12, 32:2, 65:17, 66:6, 110:16, 111:4, 125:9, 125:23, 170:21, 182:6, 182:19, 204:12, 205:3
**System** [1] - 174:19

T

**T-H-O-M-P-S-O-N** [1] - 31:23
**table** [4] - 56:5, 56:6, 195:1, 195:19
**tabled** [1] - 149:20
**tablet** [4] - 40:13, 40:19, 41:2
**Tad** [1] - 176:2
**tag** [2] - 164:12, 164:14
**talks** [1] - 43:13
**task** [4] - 15:25, 16:4, 111:18, 128:13
**Task** [3] - 15:25, 16:2, 111:17
**taxes** [1] - 44:7
**TCL** [2] - 138:18, 138:20
**teach** [1] - 192:23
**Team** [2] - 171:12, 171:14
**technically** [1] - 159:8
**technician** [1] - 58:14
**telephone** [24] - 32:25, 37:18, 37:21, 39:18, 41:11, 41:15, 42:8, 42:9, 42:22, 49:25, 69:19, 69:22, 69:24,

70:1, 70:4, 73:11, 73:13, 74:6, 74:9, 102:3, 163:25, 164:3, 172:7, 218:9
**television** [3] - 215:6, 215:15, 215:20
**ten** [1] - 148:15
**tender** [3] - 13:19, 29:8, 180:2
**Tendering** [12] - 19:4, 80:22, 86:18, 117:11, 134:13, 146:17, 148:2, 160:23, 162:15, 165:2, 171:25, 186:3
**Teodoro** [13] - 193:11, 196:2, 196:9, 196:11, 196:14, 202:20, 202:23, 203:3, 203:5, 203:8, 203:10, 203:13, 203:21
**term** [4] - 68:7, 68:12, 133:2, 171:8
**terms** [10] - 68:17, 68:21, 75:25, 95:2, 95:9, 95:10, 133:20, 147:12, 159:11, 197:19
**terrorism** [2] - 111:18, 111:20
**Terrorism** [3] - 15:25, 16:2, 111:17
**test** [1] - 155:24
**testified** [9] - 7:11, 15:13, 32:2, 66:6, 111:4, 125:23, 170:21, 182:19, 205:3
**testifying** [3] - 161:2, 168:11, 168:13
**testimony** [21] - 6:24, 15:1, 31:15, 60:7, 65:19, 66:16, 110:18, 122:6, 123:6, 125:11, 148:20, 170:9, 180:15, 182:8, 194:13, 196:6, 198:6, 204:7, 204:14, 220:11, 231:3
**text** [27] - 63:10, 74:11, 74:19, 74:21, 74:22, 83:14, 88:16, 89:11, 89:13, 90:17, 92:19, 93:20, 95:20, 96:7, 96:12, 96:22, 98:13, 99:24, 100:1, 114:13, 172:20, 175:25, 184:23, 218:20, 218:23, 219:9, 219:10
**texted** [3] - 73:8, 73:10, 83:17
**TFO** [1] - 5:9

**THE** [452] - 4:2, 4:11, 4:15, 4:17, 4:23, 5:7, 5:12, 5:15, 5:17, 5:20, 5:22, 6:1, 6:6, 6:13, 6:22, 7:2, 7:6, 7:8, 9:23, 10:13, 10:15, 10:22, 11:17, 12:15, 13:11, 13:20, 14:15, 14:17, 14:19, 14:20, 14:23, 15:4, 15:6, 15:9, 15:11, 18:21, 19:9, 19:20, 19:22, 20:5, 20:24, 21:6, 21:19, 22:7, 22:16, 22:23, 23:11, 23:17, 23:24, 24:10, 24:17, 24:24, 25:11, 26:7, 26:17, 27:24, 29:9, 30:11, 30:12, 31:2, 31:4, 31:5, 31:6, 31:11, 31:18, 31:22, 31:24, 35:12, 39:2, 39:5, 45:21, 46:4, 46:7, 52:4, 53:7, 53:9, 53:13, 56:24, 58:16, 58:23, 59:14, 60:2, 60:10, 60:17, 60:19, 60:23, 62:13, 62:15, 62:16, 62:20, 62:24, 63:2, 63:5, 63:11, 63:19, 63:24, 64:2, 64:18, 64:23, 65:8, 65:11, 65:15, 65:22, 66:1, 66:3, 71:21, 73:19, 80:13, 81:19, 86:10, 88:21, 89:20, 94:1, 94:18, 95:25, 98:1, 98:4, 102:12, 102:24, 103:5, 103:18, 105:18, 106:1, 106:2, 106:17, 108:11, 108:18, 108:21, 109:2, 109:4, 109:7, 109:11, 110:4, 110:7, 110:10, 110:15, 110:21, 110:25, 111:2, 112:11, 112:25, 113:4, 113:8, 114:25, 115:13, 115:15, 115:18, 115:25, 116:3, 116:5, 116:7, 117:10, 117:15, 117:18, 117:19, 118:10, 118:12, 118:22, 119:2, 119:5, 119:20, 119:23, 120:13, 120:18, 121:7, 121:9, 121:11, 121:12, 121:20, 122:3, 122:7, 122:11, 122:21, 123:13, 123:19, 123:24, 124:3, 124:7, 124:13, 124:17, 124:20, 124:25

125:2, 125:8, 125:14, 125:18, 125:21, 126:21, 127:10, 127:25, 128:2, 128:5, 132:8, 132:10, 132:16, 133:9, 133:18, 134:11, 134:14, 134:18, 134:24, 135:2, 136:7, 137:3, 137:5, 137:10, 137:12, 138:9, 138:25, 139:12, 140:9, 140:11, 140:15, 141:15, 141:18, 141:24, 142:17, 142:19, 143:24, 144:1, 144:3, 144:19, 145:14, 145:17, 145:20, 146:7, 146:15, 147:6, 147:8, 147:20, 147:25, 148:14, 148:18, 149:4, 149:8, 149:11, 149:13, 149:16, 150:14, 150:22, 151:8, 151:25, 152:25, 153:19, 153:23, 154:2, 154:7, 154:11, 154:14, 154:20, 158:10, 158:19, 158:22, 159:5, 159:23, 160:1, 160:8, 160:11, 160:13, 160:21, 161:9, 161:11, 161:17, 161:20, 161:23, 162:11, 163:2, 163:4, 163:10, 163:12, 164:19, 164:24, 165:14, 165:16, 166:1, 166:3, 166:12, 167:6, 167:9, 167:12, 167:15, 167:17, 167:22, 168:1, 168:22, 168:25, 169:16, 169:21, 169:25, 170:2, 170:12, 170:16, 170:19, 171:23, 173:18, 173:20, 173:24, 176:9, 176:25, 177:2, 177:5, 178:6, 178:21, 178:23, 179:1, 180:3, 180:6, 180:12, 180:22, 181:3, 181:6, 181:9, 181:10, 181:13, 181:14, 181:17, 181:19, 181:20, 181:22, 182:4, 182:11, 182:15, 182:16, 182:24, 183:2, 183:3, 183:5, 184:24, 185:11, 185:22, 186:4, 186:6, 186:24, 187:13, 187:15, 187:18, 189:4, 189:6, 189:9, 190:6, 190:8, 192:4, 192:7, 192:17, 193:18, 193:20, 194:7, 194:12, 194:22, 195:1,

195:11_, 195:17_, 196:8_, 196:22_, 197:2_, 197:6_, 197:10_, 197:12_, 197:17_, 198:3_, 198:13_, 198:21_, 198:25_, 199:6_, 199:16_, 199:19_, 200:3_, 200:8_, 200:9_, 200:15_, 200:22_, 201:7_, 201:14_, 201:20_, 201:23_, 202:1_, 202:3_, 202:14_, 202:15_, 202:24_, 204:3_, 204:6_, 204:12_, 204:17_, 204:21_, 204:24_, 205:1_, 208:10_, 210:8_, 211:2_, 211:4_, 212:20_, 214:4_, 214:7_, 215:22_, 216:5_, 216:20_, 217:22_, 217:24_, 218:4_, 219:23_, 220:1_, 220:3_, 220:7_, 220:15_, 220:17_, 221:2_, 221:12_, 221:15_, 221:18_, 221:22_, 222:1_, 222:23_, 223:20_, 223:22_, 224:14_, 224:21_, 224:22, 224:23_, 224:24_, 224:25_, 225:2_, 225:22_, 226:4_, 226:7_, 226:9_, 226:15_, 227:10_, 227:14_, 227:16_, 227:19_, 228:3_, 228:5_, 228:8_, 228:15_, 228:23_, 229:1_, 229:3_, 230:5_, 230:11_, 230:16_, 230:24_, 231:2_, 231:4_, 231:5_, 231:7_, 231:8_, 231:25_, 232:11_, 232:15_, 232:17_, 233:1

**themselves** [2]_ - 158:7_, 158:25

**then-presidential** [1]_ - 113:21

**theory** [3]_ - 157:9_, 157:10_, 157:18

**therein** [1]_ - 127:15

**thinking** [2]_ - 87:12_, 104:18

**thinks** [2]_ - 197:3_, 197:24

**third** [1]_ - 218:6

**Thompson** [15]_ - 5:9_, 31:10_, 31:22_, 32:5_, 32:7_, 35:15_, 39:8_, 41:17_, 45:23_, 50:24_, 52:11_, 54:5_, 55:15_, 56:14_, 61:2

**THOMPSON** [1] - 32:1

**thoroughly** [1]_ - 129:11

**threatening** [1]_ - 109:24

**three** [30]_ - 11:24_, 47:18_, 59:21_, 92:24_, 150:19_, 150:20_, 151:2_, 151:10_, 151:12_, 151:24_, 151:25_, 152:18_, 152:24_, 156:2_, 156:4_, 156:12_, 156:13_, 156:18_, 156:21_, 157:1_, 157:8_, 158:2_, 215:5_, 215:7_, 215:10_, 217:5_, 217:9_, 227:3

**throughout** [2]_ - 35:22_, 157:23

**tie** [3]_ - 35:9_, 37:15_, 71:17

**tight** [1]_ - 181:23

**timestamp** [1]_ - 44:25

**timing** [1]_ - 221:19

**Tina** [45]_ - 71:24_, 72:2_, 72:4_, 72:18_, 72:22_, 72:24_, 73:2_, 73:5_, 74:13_, 75:10_, 76:6_, 76:9_, 76:22_, 77:6_, 77:11_, 80:2_, 83:9_, 83:14_, 84:4_, 84:6_, 85:3_, 85:8_, 85:23_, 88:5_, 88:7_, 88:10_, 88:15_, 88:16_, 89:10_, 91:10_, 92:15_, 92:19_, 93:2_, 93:17_, 95:21_, 96:7_, 96:22_, 97:1_, 97:20_, 98:13_, 98:20_, 99:7_, 99:18_, 99:23_, 100:3

**Tina's** [1]_ - 88:6

**tire** [1]_ - 88:4

**title** [3]_ - 7:20_, 15:20_, 174:19

**today** [13]_ - 5:18_, 6:17_, 35:5_, 62:6_, 70:17_, 71:12_, 83:13_, 121:13_, 171:3_, 231:6_, 231:10_, 231:11_, 232:3

**together** [3]_ - 104:13_, 193:1_, 227:2

**tomorrow** [11]_ - 5:4_, 75:14_, 231:12_, 231:22_, 232:2_, 232:5_, 232:14_, 232:17_, 232:19_, 232:23_, 233:2

**took** [16]_ - 87:3_, 101:7_, 112:19_, 115:4_, 118:6_, 119:10_, 120:24_, 130:10_, 130:13_, 145:4_, 159:9_, 168:15_, 169:6_, 187:4_, 189:12_, 215:18

**tooken** [1]_ - 69:4

**tool** [1]_ - 172:13

**tools** [1]_ - 186:20

**top** [12]_ - 40:10_, 49:2_, 92:1_, 92:5_, 92:12_, 96:19_, 99:2_, 107:21_, 112:22_, 114:14_, 132:22_, 174:19

**topic** [5]_ - 106:18_, 108:22_, 185:7_, 201:8_, 226:17

**topical** [3]_ - 155:20_, 155:23_, 197:24

**topics** [2]_ - 172:19_, 172:22

**total** [3]_ - 44:2_, 149:14_, 156:1

**totally** [1]_ - 157:22

**touch** [3]_ - 11:2_, 130:7_, 156:15

**touched** [2]_ - 225:8_, 225:10

**touching** [1]_ - 174:22

**touchscreen** [1]_ - 20:10

**toward** [1]_ - 25:6

**towards** [2]_ - 91:4_, 149:22

**town** [1]_ - 74:23

**track** [1]_ - 79:15

**tracks** [1]_ - 198:15

**trafficking** [1]_ - 126:8

**training** [2]_ - 20:19_, 61:13

**trait** [6]_ - 109:14_, 194:2_, 195:3_, 195:9_, 197:19_, 198:22

**transaction** [3]_ - 38:16_, 38:18_, 58:8

**transfer** [1]_ - 103:3

**translating** [1]_ - 180:15

**translation** [7]_ - 122:9_, 180:9_, 180:17_, 182:5_, 183:1_, 192:19_, 225:17

**translations** [1]_ - 181:11

**translator** [1]_ - 116:19

**transpire** [1]_ - 152:15

**transpired** [1]_ - 58:21

**traps** [1]_ - 143:18

**trash** [2]_ - 85:4_, 85:6

**travel** [4]_ - 17:21_, 57:5_, 219:21_, 220:18

**traveled** [1]_ - 224:1

**traveling** [1]_ - 166:16

**tree** [11]_ - 13:6_, 13:7_, 21:12_, 21:14_, 23:14_, 23:20_, 23:21_, 24:5_, 24:7_, 24:13_, 26:11

**trial** [3]_ - 5:4_, 6:17_, 158:16

**tried** [1]_ - 156:6

**trigger** [2]_ - 106:24_, 107:1

**trip** [3]_ - 224:4_, 224:7_, 224:8

**truck** [30]_ - 9:7_, 10:9_, 10:25_, 11:9_, 11:20_, 12:2_, 13:16_, 17:10_, 17:15_, 18:16_, 19:14_, 20:9_, 20:11_, 20:12_, 20:13_, 21:9_, 22:2_, 22:19_, 23:5_, 25:3_, 25:14_, 25:19_, 26:2_, 26:13_, 29:17_, 29:19_, 29:21_, 29:23_, 84:8_, 201:24

**trucks** [1]_ - 25:23

**true** [4]_ - 159:23_, 195:12_, 195:22_, 230:21

**Trump** [5]_ - 113:22_, 129:2_, 156:5_, 190:17_, 217:7

**Trump's** [2]_ - 151:6_, 151:20

**trustworthy** [1]_ - 59:24

**truth** [31] - 6:25_, 7:1, 15:2_, 15:3, 31:16_, 31:17, 65:20_, 65:21_, 69:1, 110:19_, 110:20, 125:12_, 125:13_, 152:22_, 152:23_, 155:5_, 170:10_, 170:11, 182:9_, 182:10, 204:15_, 204:16

**truthful** [1]_ - 60:7

**try** [8]_ - 36:5_, 36:8_, 36:17_, 37:3_, 37:11_, 37:13_, 37:18_, 53:10

**trying** [11]_ - 36:11_, 36:20_, 37:6_, 37:24_, 152:6_, 152:21_, 155:5_, 157:12_, 157:25_, 196:8_, 224:19

**tubes** [1]_ - 191:4

**Tuesday** [2]_ - 185:9_, 185:14

**turn** [4]_ - 73:3_, 175:9_, 177:7_, 209:10

**Turner** [1] - 232:7
**turning** [2] - 46:1, 133:7
**turns** [1] - 17:25
**TV** [4] - 108:12, 108:15, 108:20
**two** [23] - 10:3, 10:15, 26:1, 40:9, 49:25, 59:21, 74:16, 101:8, 104:1, 122:3, 122:5, 126:5, 149:9, 153:7, 155:21, 180:10, 195:13, 195:16, 199:14, 219:4, 219:6, 227:1
**type** [11] - 48:12, 50:5, 107:20, 128:11, 132:22, 142:12, 157:16, 172:25, 174:9, 175:3, 198:6
**types** [7] - 36:20, 48:9, 78:16, 135:20, 175:12, 177:19, 179:15
**typically** [1] - 57:12
**typing** [1] - 40:9

### U

**U.S** [2] - 8:20, 16:25
**UFED** [3] - 172:13, 172:14, 174:11
**ultimately** [7] - 69:9, 69:14, 129:20, 129:23, 154:20, 194:1
**unable** [1] - 14:9
**uncles** [2] - 206:22, 207:1
**under** [14] - 23:20, 24:5, 24:7, 48:13, 59:24, 64:13, 86:9, 150:4, 153:20, 160:14, 166:19, 174:19, 199:20, 222:1
**underline** [2] - 74:8, 74:16
**underneath** [6] - 13:7, 26:10, 42:24, 43:8, 43:9, 45:6
**underscore** [1] - 157:23
**unfairly** [1] - 150:10
**unfairness** [1] - 156:23
**Union** [1] - 176:2
**unique** [1] - 50:17
**unit** [1] - 126:6

**United** [19] - 4:4, 4:7, 4:10, 6:21, 14:21, 110:13, 124:23, 125:6, 160:7, 169:19, 182:2, 183:14, 183:18, 183:23, 184:23, 204:9, 205:25, 206:2, 222:20
**united** [2] - 104:25, 105:6
**unless** [1] - 4:11
**unloaded** [1] - 101:18
**unredacted** [2] - 63:19, 63:25
**unregistered** [1] - 66:23
**unrelated** [1] - 223:14
**unusual** [5] - 20:18, 29:16, 29:18, 158:23, 160:16
**up** [56] - 18:23, 19:3, 30:22, 45:23, 56:16, 60:12, 60:20, 69:11, 77:25, 80:19, 81:18, 84:9, 84:12, 85:4, 85:5, 85:12, 91:2, 93:23, 95:23, 103:25, 105:11, 117:13, 121:16, 122:19, 124:22, 130:18, 134:20, 134:22, 140:21, 141:7, 142:2, 148:4, 149:16, 154:6, 156:7, 158:20, 162:18, 165:4, 165:24, 166:2, 172:19, 172:24, 185:21, 191:23, 193:2, 196:1, 196:7, 196:13, 196:15, 215:3, 216:6, 221:19, 230:3, 230:17
**update** [1] - 232:2
**updated** [1] - 63:6
**urban** [1] - 18:16
**user** [2] - 49:1, 179:23

### V

**vacation** [3] - 179:20, 226:3, 226:20
**vague** [1] - 224:15
**value** [2] - 174:21, 174:22
**various** [1] - 229:4
**vehicle** [11] - 11:24, 12:8, 13:3, 27:8, 28:16, 137:23, 139:3, 139:4, 139:5, 196:14,

196:17
**vehicles** [7] - 11:25, 20:13, 20:16, 23:3, 25:17, 201:18, 201:22
**vendor** [1] - 177:10
**verbally** [1] - 203:23
**verify** [1] - 37:16
**Verizon** [6] - 138:21, 147:15, 147:16, 163:17, 163:18, 163:24
**versa** [1] - 129:19
**version** [1] - 153:19
**vice** [1] - 129:19
**video** [58] - 26:16, 26:21, 26:25, 27:6, 27:12, 28:1, 28:2, 28:7, 28:16, 29:1, 51:14, 51:19, 51:24, 52:3, 52:7, 53:3, 53:24, 54:1, 54:2, 54:6, 54:9, 54:12, 54:17, 54:23, 55:2, 55:11, 55:23, 56:3, 56:11, 56:15, 57:11, 58:15, 58:20, 60:13, 61:24, 62:2, 62:4, 62:5, 62:9, 210:9, 210:12, 210:15, 210:21, 210:22, 211:8, 211:13, 211:16, 211:18, 211:22, 212:6, 212:8, 212:9, 213:13, 213:14, 213:15, 213:18
**videoing** [1] - 211:25
**videotape** [2] - 51:14, 51:15
**Vienna** [3] - 22:10, 24:3, 24:13
**view** [12] - 13:6, 20:8, 23:1, 25:3, 25:7, 52:19, 90:15, 134:15, 155:22, 185:23, 185:24, 220:21
**violate** [1] - 202:8
**violating** [1] - 103:12
**violation** [1] - 195:15
**violative** [1] - 195:21
**violence** [1] - 195:25
**violent** [5] - 109:20, 195:12, 197:4, 197:25, 198:9
**Virginia** [1] - 126:11
**visible** [2] - 116:3, 150:23
**visit** [3] - 33:9, 100:25,

179:24
**visited** [2] - 100:6, 179:21
**volume** [1] - 210:10

### W

**wait** [1] - 170:2
**walk** [5] - 14:23, 18:23, 39:16, 56:4, 125:9
**walked** [3] - 85:5, 88:7, 228:10
**walking** [2] - 56:17
**walls** [1] - 168:4
**Walmart** [5] - 57:14, 57:17, 59:6, 59:9, 59:16
**Walters** [2] - 221:13, 232:5
**wants** [3] - 61:9, 153:17, 196:4
**Warger** [1] - 181:21
**warrant** [2] - 129:21, 129:23
**watched** [3] - 56:3, 56:15, 62:6
**weapon** [2] - 106:22, 196:17
**weapons** [1] - 101:10
**wearing** [10] - 35:8, 51:3, 51:5, 51:6, 51:9, 53:15, 53:19, 53:21, 71:15, 71:16
**web** [4] - 179:17, 179:18, 179:19, 179:21
**website** [1] - 179:24
**Wednesday** [2] - 185:15, 215:13
**week** [3] - 224:2, 224:7, 228:17
**welcome** [3] - 57:9, 202:9, 231:7
**welcoming** [1] - 229:16
**welfare** [1] - 9:3
**wendover** [1] - 32:19
**Wendover** [4] - 33:3, 47:2, 48:22, 50:18
**Wesley** [2] - 4:5, 206:9
**West** [7] - 16:1, 17:21, 32:19, 33:3, 47:2, 50:18, 176:1
**west** [3] - 13:17, 18:2,

48:22

**western** [2] - 7:24, 17:22

**Western** [1] - 176:2

**Weston** [1] - 8:9

**whatsoever** [1] - 60:4

**whereas** [1] - 129:13

**white** [17] - 34:24, 34:25, 35:19, 36:15, 37:1, 38:11, 51:17, 51:18, 51:20, 53:4, 53:18, 55:2, 55:16, 56:4, 56:18, 56:20, 61:21

**White** [18] - 33:21, 34:1, 34:3, 34:6, 34:17, 34:22, 35:4, 35:16, 46:22, 48:21, 51:1, 52:25, 53:3, 54:6, 54:19, 58:25, 59:2, 59:10

**white-ish** [1] - 34:25

**whole** [16] - 6:25, 15:2, 31:16, 58:15, 58:20, 65:20, 110:19, 125:12, 150:25, 159:21, 170:10, 182:9, 192:23, 204:15, 226:25

**wife** [4] - 105:14, 105:20, 200:13, 200:18

**willing** [2] - 78:14, 78:16

**wire** [6] - 112:21, 114:6, 114:11, 118:21, 119:9, 119:10

**wires** [1] - 216:15

**wise** [1] - 159:2

**wish** [12] - 5:20, 96:17, 96:22, 110:5, 150:16, 154:22, 156:11, 196:23, 199:1, 204:3, 220:14, 231:20

**wishes** [1] - 156:4

**wishing** [1] - 167:12

**withdraw** [1] - 220:24

**Witness** [1] - 182:23

**witness** [94] - 6:18, 9:22, 9:25, 10:21, 13:19, 14:20, 18:20, 29:8, 31:7, 35:11, 45:20, 46:6, 58:16, 60:22, 62:22, 64:5, 64:16, 64:19, 65:1, 65:6, 65:12, 65:16, 80:11, 86:9, 102:11, 103:19, 110:11, 110:12

, 112:5, 112:9, 114:24, 117:9, 119:1, 120:14, 121:6, 121:23, 122:16, 122:19, 123:25, 124:11, 124:12, 125:5, 130:20, 130:25, 134:16, 134:19, 134:24, 137:11, 139:19, 146:2, 160:9, 160:20, 162:10, 166:5, 166:11, 169:18, 169:24, 170:4, 173:4, 173:6, 176:7, 178:4, 180:2, 180:19, 181:12, 181:25, 185:20, 185:24, 186:22, 188:13, 194:23, 195:25, 196:24, 197:24, 199:1, 199:16, 204:4, 204:8, 210:6, 210:14, 214:5, 215:17, 217:19, 220:8, 221:9, 221:10, 221:14, 221:15, 221:23, 230:25, 231:9

**WITNESS** [44] - 7:2, 7:6, 14:19, 15:4, 15:6, 15:9, 30:12, 31:5, 31:18, 31:22, 46:7, 62:15, 65:22, 66:1, 106:2, 108:11, 109:11, 110:4, 110:21, 110:25, 116:7, 117:18, 121:11, 125:14, 125:18, 142:19, 166:3, 170:12, 170:16, 182:11, 182:15, 183:2, 183:5, 186:6, 193:20, 200:9, 201:23, 202:14, 204:17, 204:21, 204:24, 223:22, 228:8, 231:4

**witness's** [4] - 63:21, 123:6, 127:9, 226:10

**witnesses** [8] - 5:18, 6:4, 159:13, 180:8, 180:10, 180:14, 231:18, 232:2

**wonder** [1] - 159:2

**words** [26] - 148:7, 148:10, 148:11, 150:19, 150:20, 150:22, 151:2, 151:24, 151:25, 152:24, 156:13, 156:18, 157:5, 159:12, 161:2, 161:5, 161:6, 164:13, 164:15, 190:13, 190:15, 191:1, 216:13, 217:2, 217:7, 226:16

**wore** [1] - 130:7

**worker** [2] - 196:11, 200:5

**workers** [3] - 104:1, 104:14, 228:19

**works** [2] - 72:3, 77:19

**World** [3] - 149:5, 156:5, 217:6

**world** [1] - 30:18

**worn** [3] - 9:18, 12:7, 12:20

**worst** [2] - 201:18, 201:22

**wrap** [1] - 230:17

**wrapping** [1] - 60:12

**writing** [2] - 153:15, 155:23

**writings** [1] - 150:2

**written** [1] - 163:19

**wrote** [1] - 153:9

**X**

**Xterra** [4] - 26:10, 27:9, 27:15, 29:4

**Y**

**yard** [1] - 213:18

**year** [9] - 99:11, 102:21, 103:3, 126:17, 184:9, 184:17, 184:20, 208:6, 209:18

**years** [23] - 16:6, 16:8, 16:19, 16:22, 103:23, 104:24, 105:8, 108:8, 111:14, 126:5, 151:6, 183:8, 184:16, 196:25, 199:4, 201:1, 205:11, 205:17, 207:6, 207:11, 218:24, 227:1

**years'** [1] - 68:6

**York** [2] - 16:18, 16:21

**yourself** [8] - 41:23, 52:22, 113:16, 134:20, 162:1, 176:20, 198:14, 207:10

**yourselves** [1] - 181:12

**yup** [1] - 106:5

**Z**

**zoom** [16] - 12:3, 92:6, 92:24, 113:23, 114:7, 114:10, 173:5, 173:25, 174:13, 188:14, 208:13, 212:5, 212:7, 218:7, 218:14, 219:4